UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

Case No. 4:23-cv-1175

Darlene Cerezo Swaffar, Pro Se
Plaintiff - Intervenor

v.

MEDIA MATTERS FOR AMERICA,
a Washington, D.C. non-profit corporation,
and ERIC HANANOKI, Defendants

**FILED**
**November 29, 2023**
KAREN MITCHELL
CLERK, U.S. DISTRICT
COURT   bb

## MOTION TO INTERVENE IN XCORP VS MEDIA MATTERS

Comes Now Plaintiff Darlene Cerezo Swaffar hereby moving to intervene in the above-referenced case, Case No. 4:23-cv-1175 before the Honorable Judge Mark T. Pittman, between X Corp and Media Matters, pursuant to Rule 24 of the Federal Rules of Civil Procedure.

### I. Introduction

As a Florida resident and former Conservative Candidate who ran for Congress in Florida District 23 and was directly affected by Media Matters' continuous defamation, I seek intervention to safeguard the rights significantly impacted by the Defendant's defamatory campaign.

To reach a conclusion, it's crucial to delve into the central issue. Media Matters' orchestrated targeted slander represents a deliberate campaign driven by intentions rooted in their affiliations with donor sources. This concerted effort by Media Matters systematically aims to

tarnish reputations and impede the democratic process. Unraveling the intricate connections between Media Matters and its donors exposes nefarious intentions geared towards predetermined outcomes through their expansive network and coordinated endeavors.

## II. Statement of Facts

1. **Targeted Defamation Campaign by Media Matters**

   Media Matters' persistent targeting of Plaintiff spans more than four years, labeling conservative individuals, such as myself, as conspiracy theorists through slanderous articles and posts.

   Media Matters has persistently pursued the defamation of my character in a targeted and stalking manner, as evidenced in **Exhibit I and Exhibit II.**

   These deliberate attempts to brand and defame individuals as conspiracy theorists have directly impacted electoral processes, effectively amounting to a form of election interference.

2. **Origins and Activities of Media Matters for America (MMfA)**

   Part of the "Censorship Industrial Complex," Media Matters for America (MMfA) was founded in 2004 by David Brock, initially receiving $2 million from progressive donors like Susie Tompkins Buell, Leo Hindery, and James Hormel. The organization was established to counter conservative media bias and misinformation. MMfA positions itself as a fact-checker, often critiquing conservative commentators and networks like Fox News. This history of targeting conservative matters and candidates is crucial in

understanding the grounds for filing a Motion to Intervene in the case between XCorp and Media Matters.  **See Exhibit III.**

3. **Financial Ties: Media Matters and Arabella Advisors:**

Last year Media Matters received a significant $250,000 donation from Arabella Advisors through their Hopewell Fund. Arabella Advisors is known for supporting progressive agendas, suggesting an alignment of interests. This shared interest raises concerns about the motives behind Media Matters' defamatory campaigns.  **See Exhibit IV.**

4. **Foreign Financial Influence and Concerns of Interference:**

Investigative journalism, notably by New York Times Reporter Ken Vogel, unveiled substantial funding from Swiss billionaire Hansjörg Wyss's foundation to Arabella Advisors and its associated networks. Arabella Advisors operates as a political entity, actively shaping narratives and influencing public opinion, especially in left-leaning political endeavors. Wyss's history of attempting major media acquisitions, coupled with sizable contributions to partisan initiatives managed by Arabella, raises significant concerns about potential foreign interference within domestic electoral processes.

This association underscores the need to scrutinize foreign involvement in shaping domestic media narratives, aligning with the principles emphasized in Executive Order 13848, safeguarding American elections against foreign manipulation and interference. **See Exhibit V**

5. **Dark Money Influence and Partisan Agendas:**

Arabella Advisors' connections to left-leaning entities like Soros' Open Society Foundations and the Ford Foundation underscore a shared progressive agenda. Investigations into Arabella Advisors' extensive financial activities unveil significant contributions shaping political narratives and influencing electoral outcomes. This close association between Arabella Advisors, its substantial financial backing, and its political objectives—targeting conservatives while supporting Democratic causes—directly aligns with Media Matters' slanderous attacks.

Media Matters' targeted campaign against conservative individuals, including the Plaintiff, is intricately linked with substantial financial support from The Hopewell Fund managed by Arabella Advisors, known for affiliations with left-leaning causes. This intricate interplay between Arabella Advisors' substantial financial resources and its political motives to influence electoral outcomes mirrors the fueling of Media Matters' slanderous attacks. Arabella's strategic funding, derived from entities like Soros' Open Society Foundations and the Ford Foundation, aligns with a progressive agenda. This financial synergy empowers Media Matters' damaging campaign against conservative individuals, including the Plaintiff, undermining electoral integrity, violating laws, and raising significant concerns of interference in the democratic process.

### III. Cause of Action

Media Matters for America's continuous and deliberate defamation campaign against conservative individuals, including myself, constitutes a flagrant violation of defamation laws and election regulations, significantly impacting electoral integrity and individual rights. Their

relentless targeting and false portrayal as conspiracy theorists have resulted in severe financial and emotional harm, infringing upon fundamental democratic participation rights.

1. **Violation of Defamation Laws:** Media Matters' persistent labeling of conservative individuals as conspiracy theorists through slanderous articles and posts directly violates defamation laws, including Florida Statutes § 770.01 and established case law such as Milkovich v. Lorain Journal Co. Their actions have systematically undermined the reputation and credibility of conservative candidates in a manner that violates these legal standards.

2. **Breach of Election Regulations:** Media Matters' deliberate dissemination of false information, specifically targeting conservative candidates, violates statutes under Florida and Texas laws that prohibit knowingly false statements about candidates in connection with elections (Florida Statutes § 104.271 and Texas Title 4 Sec. 73.001). This calculated targeting interferes with fair campaign practices and potentially constitutes election fraud under Texas Title 16 Sec. 276.013.

3. **Infringement on Personal and Electoral Rights:** Media Matters' campaign has inflicted substantial financial losses, impeded donors' support and partnership opportunities while incurring excessive expenses in reputation management. Furthermore, the emotional distress and reputational harm inflicted by false allegations have hindered effective political participation and created a chilling effect on individuals seeking public office, violating the right to engage in democratic processes free from baseless attacks and intimidation.

In granting my motion to intervene, the court would enable XCorp to establish a compelling pattern of harassment, targeted defamation, and slander perpetrated by Media

Matters, thereby aiding in XCorp's case against the Defendant. My intervention would provide firsthand evidence of the consistent modus operandi employed by Media Matters, further solidifying the claims made by XCorp regarding the systematic attacks conducted by the Defendant.

### IV. Legal Standing

1. **Legal Standing for Intervention:**

    A. Under Federal Rule of Civil Procedure 24(a)(2), intervention by non-parties is permissible when such a party possesses a discernible interest directly related to the subject matter of the action, and the outcome of the case could significantly impact that interest unless adequately represented by existing parties.

    B. Similar interventions have been deemed appropriate in previous cases such as Ford v. City of Huntsville (242 F.3d 235, 240, 5th Cir. 2001); In re Lease Oil Antitrust Litig. (570 F.3d 244, 250, 5th Cir. 2009), such as Wal–Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n (834 F.3d 562, 566, 5th Cir. 2016), underscoring the legitimacy and necessity of timely interventions in cases of this nature. Additionally, consistent with precedents set in Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez (458 U.S. 592, 607, 1982), the State of Texas unquestionably possesses a parens patriae interest in the health, safety, and well-being of its citizens, reinforcing the legitimacy of my intervention request under Rule 24(a)(2).

    C. Applying this standard to the ongoing litigation, it's evident that my intervention is warranted on several compelling grounds. The ongoing targeted slander campaign orchestrated by Media Matters directly affects my rights and interests as a conservative candidate previously affected by their defamation, and the resolution of

this case could substantially impair my ability to seek remedy and redress for the damages caused by the defendant's defamatory campaign.

**D.** Additionally, the timely nature of this intervention is crucial as it aligns with the Court's schedule, ensuring no delays or prejudice to the existing parties in this litigation. Moreover, this intervention not only presents a question of law or fact aligned with the main action but also offers a unique perspective and evidence critical to a comprehensive and fair adjudication. Hence, the intervention request adheres to the principles outlined in Rule 24(a)(2) and substantiates a legitimate interest deserving protection within the proceedings.

2. **Violation of Defamation Laws:**

Media Matters' deliberate actions targeting conservative candidates, including myself, for Congress or other political positions have breached several laws. They've violated defamation laws under Florida Statutes § 770.01 and the standards established by the case law of Milkovich v. Lorain Journal Co., impacting this case and affirming the violations under Florida law. Their ongoing publication of false information violates statutes in Florida and Texas that prohibit knowingly false statements about candidates in connection with elections, including Florida Statutes § 104.271 and Texas Title 4 Sec. 73.001.

3. **Violation of Election and Stalking Laws:**

These actions directly impact the integrity of elections and fair campaign practices. Moreover, Media Matters' conduct may also be in violation of Texas Title 16 Sec.

276.013 on Election Fraud, specifically concerning intentionally misleading information and providing false information to voters, as well as Tex. Pen. Code § 42.072 on Stalking.

In summary of Legal Standing, the Defendant Media Matters' targeted attacks against conservative candidates have been systematic, deliberate, and potentially in violation of several laws, including defamation, campaign and election laws, privacy laws, copyright and fair use acts, and anti-trust and monopoly laws.

### V. Grounds for Intervention and Harm to Plaintiff

As an intervening party, my firsthand experience sheds light on Media Matters' deliberate efforts to manipulate public opinion and disrupt the electoral process. Their misconduct hasn't just caused significant financial and emotional harm but has also cast a chilling effect on prospective candidates, dissuading good citizens from participating in the democratic process.

The relentless and unfounded attacks orchestrated by the Defendants have inflicted substantial financial losses, including a depletion of donors and missed opportunities for partnerships and speaking engagements. Moreover, the need to counter false allegations has incurred significant expenses in reputation management, impeding the financial viability of campaigns and deterring potential candidates from entering the political arena.

Equally damaging is the emotional toll, resulting in heightened stress, anxiety, and reputational harm stemming from the propagation of baseless rumors. The repercussions of these false allegations, amplified through social media, pose enduring threats to personal reputation and emotional well-being. Such distress not only hampers the current campaign efforts but also

discourages individuals of good character from pursuing public office due to fear of facing similar unwarranted attacks.

This pattern of systematic slander not only inflicts immediate harm but also erodes the foundation of democracy by discouraging well-intentioned citizens from engaging in the political process, ultimately depriving the public of diverse and valuable perspectives in governance.

## VI. Conclusion

As responsible citizens, it is our inherent duty to uphold the integrity of our democratic processes, defending against any corrupt actions that undermine the foundational freedoms of our society, consistent with the principles enshrined in the 5th and 14th Amendments, particularly within the electoral realm.

In safeguarding our democracy, it becomes imperative to shield our honor from baseless attacks and unfounded slander, as these not only tarnish personal reputation but also erode public trust in the integrity of our electoral processes.

Furthermore, Media Matters' deliberate campaign to destroy the reputations of conservative candidates or targeted victims stems from nefarious intentions fueled by their connections and sources of support. Their actions represent a coordinated effort to manipulate public opinion and undermine the credibility of those they target.

Therefore, in consideration of the facts and grounds, I respectfully request that the Honorable Judge Mark T. Pittman grant my motion to intervene as of right or, alternatively, to intervene permissively, and grant Plaintiff Swaffar all the ` rights and responsibilities as a party to the lawsuit. Granting the order for my motion is not only a solution to bolster this case but also

a step toward exposing the calculated tactics employed by Media Matters. It provides an opportunity to contribute substantively to the case, offering critical evidence and perspectives to ensure a fair and just adjudication.

### VII. Prayer for Relief

WHEREFORE, based on the foregoing arguments and authorities, Plaintiff Darlene Cerezo Swaffar, respectfully requests that the Honorable Judge Mark T. Pittman, issue an Order for this Motion to Intervene. Specifically, the Plaintiff seeks

1. Actual and consequential damages caused by Defendants' misconduct, including but not limited to all general and special damages.
2. Lost business and lost election opportunities, including additional punitive damages, as this Court deems just and proper.
3. An injunction ordering immediate removal of false content related to Plaintiff's candidacy from Defendants' websites and social media platforms.

I hereby swear or affirm under penalty of perjury that the foregoing is true and correct to the best of my knowledge. /s/ Darlene Cerezo Swaffar., Pro Se litigant.

DATED this 27th day of November 2023.

Respectfully Submitted,
/s/ Darlene Cerezo Swaffar
2745 W. Hillsboro Blvd, Suite 1
Deerfield Beach, FL 33442
darleneswaffar@gmail.com

Darlene Cerezo Swaffar
2745 W. Hillsboro Blvd, Suite 1
Deerfield Beach, FL 33442

November 27, 2023

Clerk of the Court United States District Court
For The Northern District of Tex
Fort Worth Division
501 W 10th Sreet, Room 310
Fort Worth, TX 76102-3673

**Re: Case No. 4:23-cv-1175 - Motion to Intervene and Exhibits**

Dear Clerk of the Court,

Enclosed please find the Motion to Intervene, along with accompanying Exhibits, in relation to Case No. 4:23-cv-1175, XCorp v. Media Matters. I respectfully request the admission of these documents into the court record.

The enclosed documents consist of:

Motion to Intervene filed by Plaintiff Darlene Cerezo Swaffar on November 27, 2023.

Exhibits I to V supporting the Motion to Intervene, providing crucial evidence and supporting materials integral to the motion.

I am a Florida resident and former Conservative Candidate directly affected by Media Matters' defamation, seeking to intervene in the aforementioned case to safeguard the rights significantly impacted by the Defendant's defamatory campaign.

Should the Court require any further information or clarification regarding the enclosed documents, please do not hesitate to contact me at 786-208-1221 or darleneswaffar@gmail.com.

Thank you for your attention to this matter.

Respectfully submitted,

*Darlene Cerezo Swaffar*
Darlene Cerezo Swaffar

Darlene Swaffar
2745 W. Hillsboro Blvd, Ste 1
Deerfield Beach, FL 33442

United States District Court
For the Northern District of Texas
Fort Worth Division
501 W. 10th Street, Room 310
Fort Worth, TX 76102-3673

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express® shipments. Misuses may be a violation of federal law. This package is not for resale. EP13F © U.S. Postal Service; July 2022; All rights reserved.

**PRIORITY MAIL EXPRESS®**

UNITED STATES POSTAL SERVICE®

PME 1-Day
DEERFIELD BEACH, FL 33441
NOV 27, 2023
$28.75
R2309W155176-11
76102
RDC 07

EI 697 968 428 US

**CUSTOMER USE ONLY**
FROM: (PLEASE PRINT) PHONE: 954-205-1221
Darlene Swafar
2745 W. Hillsboro Blvd.
Suite 1
Deerfield Beach, FL 33442

**DELIVERY OPTIONS (Customer Use Only)**
☐ SIGNATURE REQUIRED
☐ No Saturday Delivery
☐ Sunday/Holiday Delivery Required

TO: (PLEASE PRINT) PHONE: 817-850-6600
United States District Court
Northern District of Texas
501 W. 10th Street, Room 310
Fort Worth, TX 76102-3673

**ORIGIN (POSTAL SERVICE USE ONLY)**
PO ZIP Code: 33442
Scheduled Delivery Date: 11/28/23
Postage: $28.75
Date Accepted: 11/27/23
Time Accepted: 2:32 PM
Weight: Flat Rate
Total Postage & Fees: $28.75

FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

NOV 29 2023
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT

PS10001000006
USPS.COM/PICKUP

EP13F July 2022
OD: 12 1/2 x 9 1/2

This package is made from post-consumer waste. Please recycle - again.