**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| **X CORP.,**<br>                **Plaintiff,**<br><br>        **v.**<br><br>**MEDIA MATTERS FOR AMERICA,**<br>**et al.,**<br>                **Defendants.** | **Civil Action No. 4:23-cv-01175-O** |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .............................................................................................................. 1

BACKGROUND ............................................................................................................... 2

ARGUMENT .................................................................................................................... 4

    **I.  This Court lacks personal jurisdiction over Defendants.** ................................ **4**

        A.  Jurisdiction is unavailable because Media Matters operates a passive website ........... 6

        B.  Jurisdiction is unavailable because Defendants did not direct their statements to Texas. ................................................................................................. 7

        C.  Exercise of personal jurisdiction here would not be fair and reasonable. ................. 11

    **II.  This Court is an inappropriate venue for this dispute.** ................................... **12**

    **III. The complaint fails to state a claim.** .............................................................. **14**

        A.  X has not stated a claim for interference with contract. ............................................. 15

        B.  X has not stated a claim for business disparagement ................................................ 19

        C.  X has not stated a claim for interference with prospective economic advantage. ....... 23

CONCLUSION ............................................................................................................... **25**

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*ACS Invs., Inc. v. McLaughlin,*
   943 S.W.2d 426 (Tex. 1997) ................................................................... 17

*Adidas Am. Inc. v. Shoebacca Ltd.,*
   No. 3:20-CV-03248-N, 2021 WL 4399745 (N.D. Tex. Sept. 27, 2021) ................................. 16

*Admar Int'l, Inc. v. Eastrock, L.L.C.,*
   18 F.4th 783 (5th Cir. 2021) ................................................................. 6, 8

*Ambraco, Inc. v. Bossclip B.V.,*
   570 F.3d 233 (5th Cir. 2009) ..................................................................... 2

*Amey v. Barrera,*
   No. 13-01-00130-CV, 2004 WL 63588 (Tex. App.—Corpus Christi Jan. 15,
   2004, no pet.) ................................................................................. 16

*Arias-Benn v. State Farm Fire & Cas. Ins. Co.,*
   495 F.3d 228 (5th Cir. 2007) ..................................................................... 2

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ..................................................................... 14, 15, 24

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.,*
   571 U.S. 49 (2013) ............................................................................. 13

*Baty v. ProTech Ins. Agency,*
   63 S.W.3d 841 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) ................................. 24

*BDO Seidman LLP v. Alliantgroup, L.P.,*
   No. H-08-905, 2009 WL 1322555 (S.D. Tex. May 11, 2009) .......................................... 21

*Beasley v. Krafcisin,*
   No. 3:13-CV-4972-M-BF, 2014 WL 4651996 (N.D. Tex. Sept. 17, 2014),
   *aff'd*, 609 F. App'x 215 (5th Cir. 2015) ........................................................ 14

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ..................................................................... 14, 15, 23

*Blacks in Tech. Int'l v. Greenlee,*
   No. 3:20-CV-3008-X, 2023 WL 4186376 (N.D. Tex. June 26, 2023) ................................... 17

*Braspetro Oil Servs. Co. v. Modec (USA), Inc.,*
   240 F. App'x 612 (5th Cir. 2007) ................................................................ 12

ii

*Broughton v. Livingston Indep. Sch. Dist.*,
  2010 WL 3056862 (E.D. Tex. July 29, 2010) ...............................................20, 21

*C.E. Servs., Inc. v. Control Data Corp.*,
  759 F.2d 1241 (5th Cir. 1985) .......................................................................17

*Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*,
  No. 4:23-CV-0206-P, 2023 WL 2975164 (N.D. Tex. Apr. 17, 2023)..............12, 13

*Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*,
  24 F.4th 491 (5th Cir. 2022) ...........................................................................4

*El Paso Healthcare Sys., Ltd. v. Murphy*,
  518 S.W.3d 412 (Tex. 2017).....................................................................16, 17

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
  238 F. Supp. 3d 799 (S.D. Tex. 2017) ...........................................................24

*Fidrych v. Marriott Int'l, Inc.*,
  952 F.3d 124 (4th Cir. 2020) ...........................................................................9

*Forbes Inc. v. Granada Biosciences, Inc.*,
  124 S.W.3d 167 (Tex. 2003)................................................................20, 21, 22

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
  141 S. Ct. 1017 (2021)..............................................................................4, 5, 12

*Funes v. Villatoro*,
  352 S.W.3d 200 (Tex. App. 2011)...................................................................18

*Funk v. Stryker Corp.*,
  631 F.3d 777 (5th Cir. 2011) .........................................................................19

*Georgiou v. Battery Junction Corp.*,
  646 F. Supp. 3d 781 (N.D. Tex. 2022) ....................................................5, 6, 9, 10

*GoLabs, Inc. v. Hangzhou Chic Intelligent Tech. Co.*,
  No. 3:19-CV-1019-N, 2020 WL 1325209 (N.D. Tex. Mar. 20, 2020)...................17

*Hurlbut v. Gulf Atl. Life Ins. Co.*,
  749 S.W.2d 762 (Tex. 1987)......................................................................19, 22

*Immobiliere Jeuness Establissement v. Amegy Bank Nat'l Ass'n*,
  525 S.W.3d 875 (Tex. App.—Houston [14th Dist.] 2017, no pet.).....................18

*John Paul Mitchell Sys. v. Randalls Food Markets, Inc.*,
  17 S.W.3d 721 (Tex. App.—Austin 2000, pet. denied)........................................16

*Johnson v. TheHuffingtonPost.com, Inc.*,
  21 F.4th 314 (5th Cir. 2021) ............................................5, 6, 7, 8, 9, 10, 11, 12

*Landry's, Inc. v. Animal Legal Def. Fund,*
  631 S.W.3d 40 (Tex. 2021).........................................................................22, 23

*Lighthouse MGA, L.L.C. v. First Premium Ins. Grp., Inc.,*
  448 F. App'x 512 (5th Cir. 2011) .......................................................................12

*Mikhail v. Maritz,*
  189 F.3d 468 (5th Cir. 1999) .............................................................................17

*Monkton Ins. Servs., Ltd. v. Ritter,*
  768 F.3d 429 (5th Cir. 2014) ...........................................................................4, 5

*Moser v. Omnitrition Int'l Inc.,*
  2018 WL 1368789 (N.D. Tex. Mar. 16, 2018)....................................................22

*New York Life Ins. Co. v. Miller,*
  114 S.W.3d 114 (Tex. App. 2003).......................................................................17

*New York Times Co. v. Sullivan,*
  376 U.S. 254 (1964)......................................................................................20, 21

*Nix v. Major League Baseball,*
  62 F.4th 920 (5th Cir. 2023) ...............................................................15, 16, 18

*Panda Brandywine Corp. v. Potomac Elec. Power Co.,*
  253 F.3d 865 (5th Cir. 2001) ...............................................................................9

*Phoneternet, L.L.C. v. LexisNexis Risk Sols., Inc.,*
  816 F. App'x 909 (5th Cir. 2020) .......................................................................25

*Protective Life Ins. Co. v. Jones,*
  No. 4:19-CV-179-Y, 2019 WL 7943638 (N.D. Tex. Aug. 19, 2019) ....................17

*Revell v. Lidov,*
  317 F.3d 467 (5th Cir. 2002) ............................................................4, 5, 6, 8, 9, 10

*Rimkus Consulting Grp., Inc. v. Cammarata,*
  688 F. Supp. 2d 598 (S.D. Tex. 2010) ...................................................16, 20, 21

*Seiferth v. Helicopteros Atuneros, Inc.,*
  472 F.3d 266 (5th Cir. 2006) .............................................................................11

*Small Bus. Assistance Corp. v. Clear Channel Broad., Inc.,*
  210 F.3d 278 (5th Cir. 2000) .............................................................................23

*Sonnier v. State Farm Mut. Auto Ins. Co.,*
  509 F.3d 673 (5th Cir. 2007) .............................................................................15

*Stuart v. Spademan,*
  772 F.2d 1185 (5th Cir. 1985) .............................................................................2

*Tabletop Media, LLC v. Citizen Sys. Am. Corp.*,
   No. 3:16-CV-1304-C, 2016 WL 11522083 (N.D. Tex. Sept. 21, 2016) ...............................13

*Teel v. Deloitte & Touche LLP*,
   No. 3:15-CV-2593-G, 2015 WL 9478187 (N.D. Tex. Dec. 29, 2015)...................................19

*United Biologics, L.L.C. v. Allergy & Asthma Network/Mothers of Asthmatics, Inc.*,
   819 F. App'x 204 (5th Cir. 2020) ............................................................................17

*USPlabs Jack3d, LLC v. MMRNV, LLC*,
   No. 3:12-CV-1605-O, 2012 WL 12893435 (N.D. Tex. Oct. 31, 2012) ...........................5, 10

*Wal-Mart Stores, Inc. v. Sturges*,
   52 S.W.3d 711 (Tex. 2001)...................................................................................24

*Walden v. Fiore*,
   571 U.S. 277 (2014)............................................................................................10

*Wolf v. Cowgirl Tuff Co.*,
   No. 1:15-CV-1195 RP, 2016 WL 4597638 (W.D. Tex. Sept. 2, 2016)...................................18

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980)............................................................................................12

**Statutes**

28 U.S.C § 1391(a) ...............................................................................................12

28 U.S.C § 1391(b) ............................................................................................13, 14

**Other Authorities**

Fed. R. Civ. P. 8 .................................................................................................14

Fed. R. Civ. P. 12(b) ..........................................................................................1, 2

Hannah Murphy, *IBM pulls adverts for X after reporting finding they ran next to
   Nazi Content*, Financial Times (Nov. 16, 2023) ......................................................19

Restatement (Third) of Torts: Liab. for Econ. Harm § 17 (2020) ..........................16, 17

Rule 12(b)(3)....................................................................................................12

*Terms of Service*, X.com (Sept. 29, 2023), https://twitter.com/en/tos
   [https://perma.cc/Q69W-8E6C] .........................................................................3

## INTRODUCTION

This Court lacks personal jurisdiction over Defendants Media Matters for America ("Media Matters"), a Washington, DC-based media organization, and its Maryland-based investigative reporter Eric Hananoki. Plaintiff X Corp. ("X") sues for statements made by Mr. Hananoki in an article published on the Media Matters website. But it is blackletter law that a statement made on a passive website—one that just posts information that people can see—cannot support specific jurisdiction in Texas simply because readers in Texas could access the statement as easily as readers in other states.  And this is all X alleges—that it has lost favor with some unspecified number of advertisers and individuals, some unspecified number of which are located in Texas, because of statements Defendants made on the internet.

X does not and cannot allege a single fact supporting jurisdiction over either Defendant. X does not allege that Media Matters or Hananoki are "at home" in Texas. It does not allege that Media Matters or Hananoki performed any act in Texas. It does not allege that Media Matters or Hananoki specifically directed any statement toward a Texas audience, used Texas sources in drafting any statement, or even mentioned Texas in any statement. X has thus failed to carry its burden to show personal jurisdiction over Defendants.

For these same reasons, venue is also improper in this Court. Plaintiffs may sue defendants only in courts where the basic constitutional requirements for personal jurisdiction and the limitations imposed by the federal venue statutes are met. These include, at a bare minimum, adequate contacts with the forum for the defendant to reasonably anticipate being haled into court there. This case does not come close to clearing that threshold. Neither party is based in Texas and the allegations at issue in this case have zero connection to Texas. X has thus failed to provide any convincing justification for litigating this dispute in Texas. On this basis alone, this Court should dismiss the complaint under Federal Rule of Civil Procedure 12(b)(3).

In any event, X's complaint suffers from the additional defect of failing to state a claim. X alleges that Defendants committed interference with contract—but X never alleges that Defendants induced a breach of any contract, as that tort requires. X alleges that Defendants committed business disparagement—but the complaint fails to plausibly allege false statements made with the requisite degree of fault, and never explains how it was Defendants' statements, as opposed to many other controversies of public record affecting X's and Elon Musk's reputations, that caused any special damages. Finally, X alleges that Defendants committed interference with prospective economic advantage—but that claim is not available under Texas law, and even if X meant to allege that Defendants committed interference with prospective business relations (a related tort), X fails to allege any *independently* tortious act, as that tort requires.

In short, X's complaint fails in just about every way that a complaint can possibly fail—no jurisdiction; no venue; no claims. *See* Fed. R. Civ. P. 12(b)(2)–(3), (6). The Court should dismiss.

## BACKGROUND[1]

Media Matters is a web-based, nonprofit research and information center dedicated to monitoring, analyzing, and correcting misinformation in U.S. media. Decl. of Cynthia Padera ("Padera Decl."), App. 5, ¶ 5; *see also id.*, App. 7, ¶ 18. Media Matters's place of incorporation and principal place of business is Washington, D.C., where it maintains its sole office and is registered to conduct business. *Id.*, App. 6, ¶¶ 7–9. Media Matters is not registered in Texas, does

---

[1] For purposes of this motion, the background facts relevant to X's claims are drawn from X's complaint, and the facts relevant to jurisdiction and venue are drawn from the declarations that accompany this motion. *See Arias-Benn v. State Farm Fire & Cas. Ins. Co.*, 495 F.3d 228, 230 (5th Cir. 2007) (accepting as true well-pleaded facts alleged in complaint to determine whether plaintiff stated a claim sufficient to avoid dismissal); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) (recognizing courts may determine jurisdictional issue by receiving declarations and similar evidence); *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009) (recognizing courts may determine venue by receiving declarations and similar evidence).

not have any physical presence in Texas, and does not employ any staff who regularly work in Texas. *Id.*, App. 6–7, ¶¶ 10–17.

Mr. Hananoki is Media Matters's Senior Investigative Reporter. Decl. of Eric Hananoki ("Hananoki Decl."), App. 10, ¶ 2. His work focuses on documenting extremism—including white nationalism, antisemitism, and Islamophobia—in the public square. *Id.*, App. 10, ¶ 4. As a part of that long-running coverage, he has written numerous articles about X and its owner Elon Musk. *Id.*, App. 10–11, ¶ 5. On November 16, 2023, Media Matters published on its website an article (the "November 16 article") by Mr. Hananoki that documented Mr. Musk's apparent endorsement of an antisemitic conspiracy theory, as well as instances of third-party advertisements appearing next to antisemitic and other extremist messages on X. *Id.*, App. 11, ¶ 6; Compl. ¶ 25, ECF No. 1. Media Matters published a similar article the next day (the "November 17 article"), where Mr. Hananoki reported additional instances of advertisements appearing next to hateful content on the platform. Hananoki Decl., App. 11, ¶ 6; Compl. ¶ 4 n.1. The November 16 and 17 articles—which were researched and written in Maryland, Hananoki Decl., App. 11, ¶ 9—never mention Texas. *Id.*, App. 12, ¶ 11. Mr. Hananoki did not speak with any Texas residents or Texas businesses in preparing the articles at issue, nor did he travel to Texas in preparing them (or any other article he has written for Media Matters). *Id.*, App. 11–12, ¶¶ 8–10, 12–13. Media Matters's website does not permit visitors to comment on these (or any other) articles. Padera Decl., App. 8, ¶¶ 20–22.

X is organized under Nevada law and maintains its principal place of business in San Francisco, California, where its own terms of service require users of its platform to litigate any disputes. Compl. ¶ 15; *Terms of Service*, X.com (Sept. 29, 2023).[2] X alleges that it has offices in Texas, but it does not allege that its Texas offices are in this District. Compl. ¶ 15. X admits that

---

[2] Available at https://twitter.com/en/tos [https://perma.cc/Q69W-8E6C].

its content moderation efforts *do not*, in fact, fully prevent advertisements running on the platform from appearing next to incendiary user posts. Compl. ¶¶ 6–7, 13, 25 (noting that these pairings do sometimes happen). But in response to the decisions of various multinational companies to discontinue advertising on X, as well as Defendants' reporting on Mr. Musk's own conduct and commentary, X filed this action against Defendants in the Northern District of Texas on November 20, 2023. Compl. ¶ 39. The complaint does not allege that any of these advertisers breached a contract with X, let alone due to Defendants' reporting.

## ARGUMENT

I. **This Court lacks personal jurisdiction over Defendants.**

The complaint must be dismissed because X has failed to satisfy its "burden to make a prima facie showing that personal jurisdiction is proper." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014). Personal jurisdiction extends only as far as constitutional due process allows. *See Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 495 (5th Cir. 2022) (recognizing Texas long-arm statute extends to limits of federal due process). The Fourteenth Amendment's Due Process Clause permits this Court to exercise personal jurisdiction over nonresident defendants, like Media Matters and Mr. Hananoki, only in cases where "(1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Revell v. Lidov*, 317 F.3d 467, 469–70 (5th Cir. 2002) (cleaned up).

In the context of general jurisdiction, due process is satisfied where a defendant is "essentially at home" in the forum state. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct.

1017, 1024 (2021) (quoting *Goodyear Dunlop Tires Operations, S. A v. Brown*, 564 U.S 915, 919 (2011)). That is plainly not the case here, and X does not allege otherwise.[3]

Specific jurisdiction is also lacking in this case. Specific jurisdiction must satisfy three conditions: "*First*, the defendant must purposefully avail itself of the privilege of conducting activities in the forum State." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 317 (5th Cir. 2021) (cleaned up). "*Second*, the plaintiff's claim must arise out of or relate to those purposeful contacts." *Id.* at 317–18 (cleaned up). *Third*, exercise of the court's jurisdiction "must be 'fair and reasonable' to the defendant." *Id.* at 318.[4]

X does not plausibly allege these elements, nor could it. As case law from the Fifth Circuit and this court make abundantly clear, a defendant does not purposefully avail itself of the forum state by posting information on a passive website that can be accessed from any state. *See id.* at 318 ("If the site is passive—it just posts information that people can see—jurisdiction is unavailable, full stop."); *Georgiou v. Battery Junction Corp.*, 646 F. Supp. 3d 781, 789–90 (N.D. Tex. 2022). Nor does a defendant engage in minimum contacts with the forum state when its comments are aimed nationwide, not directed at the forum state as a focal point. *Revell*, 317 F.3d at 472–73; *USPlabs Jack3d, LLC v. MMRNV, LLC*, No. 3:12-CV-1605-O, 2012 WL 12893435, at *3–4 (N.D. Tex. Oct. 31, 2012) (statements made over local radio in Nevada and republished to a

---

[3] The paradigmatic examples of contacts sufficient to confer general jurisdiction are where an individual is domiciled and where a corporation has its place of incorporation or principal place of business. *Ford*, 141 S. Ct. at 1024. As the complaint correctly acknowledges, Media Matters is "incorporated under the laws of," and has its principal place of business in, the District of Columbia. Compl. ¶ 16. Mr. Hananoki is domiciled in Maryland. Compl. ¶ 17. Defendants do not have continuous and systematic contacts with Texas, and X does not allege any.

[4] If X were able to "successfully establish the first two prongs, then the burden shifts to [Defendants] to show that exercising jurisdiction would be unfair or unreasonable." *Monkton Ins. Servs., Ltd.*, 768 F.3d at 433. X has failed to establish either prong here, but Defendants demonstrate for good measure that the exercise of jurisdiction would also be unfair and unreasonable. *See infra* Section I.C.

nationwide audience online were not directed at Texas as a focal point). And that is precisely what happened here. Defendants posted articles about X on a passive website equally available and relevant to audiences all over the country. *See Revell*, 317 F.3d at 475 (story "presumably directed at the entire world" did not suffice for jurisdiction in Texas). Defendants' reporting "about [X] has no ties to Texas. The story does not mention Texas. . . . [A]nd it used no Texan sources." *TheHuffingtonPost.com*, 21 F.4th at 319. As this Court and the Fifth Circuit have made clear time and again, under these circumstances personal jurisdiction is improper.

A.       **Jurisdiction is unavailable because Media Matters operates a passive website.**

It is fundamental that a defendant is not subject to jurisdiction in a forum simply because it operates a website that can be accessed from that forum. "The analysis applicable to a case involving jurisdiction based on the Internet should not be different at its most basic level from any other personal jurisdiction case." *Georgiou*, 646 F. Supp. 3d at 789. In other words, a defendant whose conduct takes place online must still purposefully avail itself of the forum to justify the exercise of personal jurisdiction. *See Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 786 (5th Cir. 2021). For "cases in which a defendant's website is the claimed basis for specific jurisdiction vis-à-vis an intentional tort," this Court "first look[s] to the website's interactivity" in determining the existence of minimum contacts with the forum. *TheHuffingtonPost.com*, 21 F.4th at 318. "[A] defendant has purposefully availed itself of the benefits and protections of the forum state if it enters into contracts with residents of the foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet." *Admar*, 18 F.4th at 786 (cleaned up). "If the site is passive—it just posts information that people can see—jurisdiction is unavailable, full stop." *TheHuffingtonPost.com*, 21 F.4th at 318. "Between those extremes, purposeful availment turns on the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Admar*, 18 F.4th at 786 (cleaned up).

6

Media Matters's website is not interactive, and critically, X does not allege otherwise. The website strictly limits what visitors can do. Other than reading articles, which is the website's primary offering, visitors may apply for jobs, donate, subscribe to email updates and newsletters, sign up for campaigns or petitions, and view Media Matters's contact information. Padera Decl., App. 7, ¶ 19. Media Matters specifically disabled visitor comment sections in 2023—well before the events of this case. *Id.*, App. 8, ¶¶ 21–22. Thus, the articles at issue provide no avenue whatsoever for viewer interaction. *Id.*, App. 8, ¶ 20. X has cited no facts or caselaw in support of a finding of interactivity here, and Defendants are not aware of any.

X does not allege that Media Matters's website is interactive, nor does the complaint describe any features of Media Matters's website that could be relevant to determining its interactivity. *See* Compl. ¶ 16 (stating only that Media Matters "is a web-based publisher"). This conspicuous omission defeats jurisdiction, "full stop." *TheHuffingtonPost.com*, 21 F.4th at 318.

**B.      Jurisdiction is unavailable because Defendants did not direct their statements to Texas.**

Even if X had alleged interactivity, a website's "interactivity isn't enough," on its own, to subject its creator to personal jurisdiction in a foreign forum. *Id.* at 320. The plaintiffs "also must show that [Defendants'] story targeted Texas in some way." *Id.* "The key question . . . is whether the forum state was 'the focal point both of the [alleged tort] and of the harm suffered.'" *Id.* at 318 (quoting *Calder v. Jones*, 465 U.S. 783, 789 (1984)) (alteration in original). That is obviously not the case here.

The Fifth Circuit applies this test strictly. In *TheHuffingtonPost.com*, the plaintiff, a Texas citizen, sued an online publisher for libel after the publisher reported that the plaintiff was a "noted Holocaust denier and white nationalist." 21 F.4th at 316. The Fifth Circuit affirmed the dismissal for lack of personal jurisdiction, notwithstanding allegations that the publisher's website was

visible in Texas; that the website marketed ad-free browsing and merchandise to all visitors, including Texans; that advertisers from Texas contracted with the publisher; and that the publisher collected information about its viewers, including their location. *Id.* at 317. Jurisdiction was unavailing, the court explained, because the disputed story "has no ties to Texas," "does not mention Texas," recounts events "that took place outside Texas," and "used no Texan sources." *Id.* at 319. Because the publisher "did not aim the alleged libel at Texas or reach into Texas to share it there," the court could not hear the claim. *Id.* at 323.

The Fifth Circuit reached a similar conclusion in *Revell*, where the Texan plaintiff complained of a Columbia University web publication that accused him specifically of complicity in a terrorist attack. 317 F.3d at 469. Again, the Fifth Circuit affirmed the dismissal for lack of personal jurisdiction because "the article never mentioned Texas, never discussed [plaintiff's] activities there, and was not aimed at Texans any more than at residents of other states." *TheHuffingtonPost.com*, 21 F.4th at 318 (summarizing *Revell*). In fact, the court explained, the article "was presumably directed at the entire world, or perhaps just concerned U.S. citizens. But certainly it was not directed specifically at Texas, which ha[d] no especial relationship to" the terrorist attack. *Revell*, 317 F.3d at 475; *see also Admar*, 18 F.4th at 787 (dismissing for lack of personal jurisdiction even where—unlike here—the defendant's website was interactive, because "a defendant does not have sufficient minimum contacts with a forum state just because its website is accessible there").

The same is true here. Even if Media Matters's website were interactive, none of the facts that give rise to X's claims has anything to do with Texas. Mr. Hananoki conducted all activities related to the preparation, writing, and publication of the articles in his home in Maryland. Hananoki Decl., App. 10–11, ¶¶ 3, 9. Neither he nor any other Media Matters employees involved

in the articles conducted any related activities in Texas. *Id.*, App. 11, ¶ 8; *see also* Padera Decl.,

App. 6–7, ¶¶ 14–17. Nor have Defendants, "through the[ir] Internet postings, manifest[ed] an

intent to *target* and *focus* on [Texas] readers." *Revell*, 317 F.3d at 475 (quoting *Young v. New*

*Haven Advocate*, 315 F.3d 256, 262 (4th Cir. 2022)); *see also* Hananoki Decl., App. 12, ¶ 13.

Media Matters's content is generally accessible to all users of the internet, both in and out of Texas.

But "[a]ccessibility alone cannot sustain [personal] jurisdiction. If it could, lack of personal

jurisdiction would be no defense at all." *TheHuffingtonPost.com*, 21 F.4th at 320; *see also Fidrych*

*v. Marriott Int'l, Inc.*, 952 F.3d 124, 143 (4th Cir. 2020) (explaining "general availability of [a]

website" in a state "does not create substantial connection . . . necessary to support the exercise of

jurisdiction").

　　And, again, X does not allege otherwise. Instead, the entirety of X's jurisdictional

allegations can be found in three cursory sentences in Paragraph 19 of the complaint:

> This Court has personal jurisdiction over Media Matters because Media Matters'
> campaign against X Corp. was purposefully directed at, among others,
> relationships with advertisers who are located in, have a significant presence in,
> or transact substantial business in Texas. Likewise, this Court has personal
> jurisdiction over Media Matters because its attempts to harm X Corp.'s
> reputation potentially threatened X Corp.'s relationships with its hundreds of
> millions of users, including millions of Texas users. This Court has personal
> jurisdiction over Hananoki for substantially the same reasons.

"[T]he prima-facie-case requirement does not require the court to credit [these] conclusory

allegations, even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253

F.3d 865, 869 (5th Cir. 2001). X fails to "'offer evidence or non-conclusory allegations that Texas

residents have actually interacted with the website' in order to establish the requisite minimum

contacts for personal jurisdiction." *Georgiou*, 646 F. Supp. 3d at 790. Indeed, X has not identified

*any* specific individual or advertiser located in Texas who has ever read the articles at issue. "[I]n

the Fifth Circuit, the mere possibility that forum residents have visited a website—even an

9

extremely interactive one—does not alone constitute minimum contacts between the website's owner and the forum." *Id.* (cleaned up).

But even if credited, as a matter of law these allegations are not sufficient to establish personal jurisdiction. Personal jurisdiction does not hinge on how an out-of-state defendant's statements about an out-of-state plaintiff may have affected the out-of-state plaintiff's relationships with third parties who "are located in, have a significant presence in, or transact substantial business" in the forum state. Instead, personal jurisdiction requires that the "defendant *himself* purposefully forged" sufficient contacts with the forum state. *TheHuffingtonPost.com*, 21 F.4th at 317 (cleaned up). Both the Supreme Court and the Fifth Circuit have "consistently rejected attempts to satisfy the *defendant-focused* 'minimum contacts' inquiry by demonstrating contacts between the *plaintiff (or third parties)* and the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphases added). And so has this Court. *See USPlabs*, 2012 WL 12893435, at *3 (rejecting plaintiff's argument that defendant's statements were directed at Texas because defendant "would know that the effects" of the statements "would cause injury in Texas"—where the plaintiff operated its business).

X's bare accusation that an article written by Mr. Hananoki in Maryland and published on Washington, DC-based Media Matters's website could threaten "relationships" between California-based X and "multinational advertisers," Compl. ¶¶ 4, 19, does nothing to support personal jurisdiction in Texas. Just like the plaintiffs in *TheHuffingtonPost.com*, *Revell*, and *USPlabs*, X has altogether failed to allege that Defendants' statements *purposefully targeted* the forum state.[5] The Due Process Clause would be a dead letter if a media company could be haled

---

[5] This case is clearer because unlike the plaintiffs in those cases, X is not a Texas resident. *Compare TheHuffingtonPost.com*, 21 F.4th at 316 (Texas plaintiff), *Revell*, 317 F.3d at 469 (Texas plaintiff), and *USPlabs*, 2012 WL 12893435, at *3 (Texas plaintiff), *with* Compl. ¶ 15 (California plaintiff).

into federal court anywhere in the United States simply for mentioning a third-party company with nationwide operations. Because the only Texas connections that X alleges are its own or those of (unidentified) third parties—but not Defendants'—the complaint fails to satisfy X's burden of identifying a prima facie case for personal jurisdiction.

### C.    Exercise of personal jurisdiction here would not be fair and reasonable.

Courts consider several factors to determine a forum's reasonableness:

> (1) the burden on the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the several states in furthering fundamental social policies.

*Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 276 (5th Cir. 2006). Litigating this action would unreasonably burden Defendants, who operate far from Texas and do not travel there for work. Padera Decl., App. 6–7, ¶¶ 7–17; Hananoki Decl., App. 11, ¶ 8. "None of the alleged ties with Texas gives [Media Matters] fair warning that it should expect a libel suit there." *TheHuffingtonPost.com*, 21 F.4th at 320. Even X lacks any notable connection to Texas—X is incorporated under the laws of Nevada and has its principal place of business in California. Compl. ¶ 15. In fact, X's own terms of service disclaim any interest in resolving disputes in Texas. *See supra* n.2 ("All disputes related to these Terms or the Services will be brought solely in the federal or state courts located in San Francisco County, California[.]").

Nor does the State of Texas have any particular interest in the resolution of this dispute— the alleged conduct neither took place in Texas, nor did it have a significant impact in Texas. Indeed, both the interest of the interstate judicial system in efficient resolution of controversies and the shared interests of the several states undermine the exercise of personal jurisdiction here. "Exercising jurisdiction over [Media Matters] would collapse the distinction between specific and general jurisdiction" and "would vitiate the sovereign interests of the states where defendants like

11

[Media Matters] are 'at home.'" *TheHuffingtonPost.com*, 21 F.4th at 323–24; *see also Ford*, 141 S. Ct. at 1025 (recognizing that "[o]ne State's sovereign power to try a suit . . . may prevent sister States from exercising their like authority" (cleaned up)); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294 (1980) ("[T]he Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment."). Taken together, these factors clearly show that Texas is not a fair or reasonable forum for this lawsuit.

## II.   This Court is an inappropriate venue for this dispute.

If the Court concludes it lacks jurisdiction, it must dismiss. In addition, the federal venue statutes provide another independent basis for dismissal, because the Northern District of Texas is an improper forum for this dispute under the plain dictates of 28 U.S.C § 1391(a). "Put simply, if a plaintiff cannot defend its choice of venue, the case does not belong there in the first place." *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, No. 4:23-CV-0206-P, 2023 WL 2975164, *1 (N.D. Tex. Apr. 17, 2023). This is the case here.[6]

Plaintiffs may bring suit only in a limited number of venues: (1) a judicial district in which any defendant resides, if all defendants are residents of the State the district is in; (2) a judicial district where a substantial part of the events underlying the claim took place, or a substantial part of property that is subject to the action is situated; or (3) if there is no such district, any judicial

---

[6] In determining whether a plaintiff has sued in the appropriate venue, "the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007). However, courts may consider evidence in the record beyond the facts alleged in the complaint and its attachments, including affidavits or evidence submitted by defendants in support of their motion to dismiss. *See Lighthouse MGA, L.L.C. v. First Premium Ins. Grp., Inc*., 448 F. App'x 512, 514 (5th Cir. 2011) (courts evaluating challenges to venue under Rule 12(b)(3) are "permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments").

district in which any defendant is subject to personal jurisdiction as to the action. 28 U.S.C § 1391(b). When defendants successfully challenge venue, "the case *must* be dismissed or transferred." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55–56 (2013) (emphasis added). X cannot satisfy its "burden to prove that venue is proper." *Career Colls. & Schs. of Tex.*, 2023 WL 2975164, *1.

*First*, Section 1391(b)'s first prong does not apply because, as X concedes, Compl. ¶¶ 16—17, neither Defendant resides in Texas. *See also* Padera Decl., App. 6–7, ¶¶ 7–16; Hananoki Decl., App. 10, ¶ 3.

*Second*, the Northern District of Texas is not "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Indeed, the complaint does not point to *any* "events or omissions" taking place in Texas at all. *See* Compl. ¶ 12 (identifying "some of X's largest advertisers" without alleging any Texas ties); *id.* ¶¶ 25-26, 32 (referencing advertisers without alleging any Texas ties); *id.* ¶¶ 39-40 (describing advertisers' withdrawal of ads from X, without alleging any Texas ties); *see generally*, Compl. (no specific allegations connecting any identified advertisers or former advertisers to the Northern District of Texas). The decision of some multinational advertisers to cease all advertising (not just Texas-based advertising) on X, which itself is not based in Texas, could have had no more than an incidental effect in this District—a far cry from the "substantial" connection that venue law requires. Nor is the Northern District of Texas a judicial district in which "a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). This clause is applicable only to "'suits involving property disputes or in rem actions,' and not 'to suits alleging financial damages to a corporation.'" *Tabletop Media, LLC v. Citizen Sys. Am. Corp.*, No. 3:16-

13

CV-1304-C, 2016 WL 11522083, at *2 (N.D. Tex. Sept. 21, 2016) (quoting *Falcoal, Inc. v. Turkiye Komur Isletmeleri Kurumu*, 660 F. Supp. 1536, 1542–43 (S.D. Tex. 1987)).

*Finally*, for all the reasons discussed above, Defendants are also not subject to personal jurisdiction in the Northern District of Texas. *See* 28 U.S.C. § 1391(b)(3). Further, 1391(b)'s third prong is an option for venue only "*if* there is *no district*" that satisfies either the first or second prong of 28 U.S.C § 1391(b); *Beasley v. Krafcsin*, No. 3:13-CV-4972-M-BF, 2014 WL 4651996, at *3 (N.D. Tex. Sept. 17, 2014) (declining to find venue proper under third prong where action could have been brought in district where substantial part of relevant acts occurred), *aff'd*, 609 F. App'x 215 (5th Cir. 2015). But there are judicial districts where this case could properly be brought under Section 1391(b)(2). These include the judicial districts where the articles were written and published—in Maryland and Washington, D.C. In addition, Defendants would not dispute venue in the Northern District of California, where X's headquarters are located and which is ordinarily X's own preferred choice of forum. Compl. ¶ 15.[7]

## III.    The complaint fails to state a claim.

Even were the Court to find that jurisdiction and venue are both proper, X's complaint still must be dismissed because X fails to plead "enough facts to state a claim to relief that is plausible on its face," as required by Rule 8. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and

---

[7] As noted, X's own terms of service require disputes to "be brought solely in the federal or state courts located in San Francisco County, California." *See supra* n.2.

plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). In reviewing a motion to dismiss for failure to state a claim, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. The federal rules "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678.

X does not state a claim for any of its three counts. Because X has failed to provide Defendants with "fair notice of what the claim is," *Twombly*, 550 U.S. at 555 (cleaned up), each count must be dismissed.

### A.      X has not stated a claim for interference with contract.

X's complaint wholly fails to plead—never mind plausibly allege—basic elements of its claim for interference with contract. *See* Compl. ¶¶ 42–44 (First Cause of Action). Under Texas law, "[t]he elements of tortious interference with existing contractual relations are '(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss.'" *Nix v. Major League Baseball*, 62 F.4th 920, 934 (5th Cir. 2023) (quoting *Prudential Ins. Co. of Am. v. Fin. Rev. Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000)), *cert. denied*, 144 S. Ct. 165 (2023). X fails to adequately plead at least the first three elements.

Off the bat, X fails to allege "an existing contract subject to interference"—the very first element. *Nix*, 62 F.4th at 934. Indeed, the complaint does not even use the word "contract" until it makes its legal allegations in the First Cause of Action*, see* Compl. ¶¶ 42–44, and nowhere alleges that any advertisers had any obligation to place advertisements on X for a specified term or up to a minimum spend. Because X has simply "not identified a written or an enforceable oral contract

15

with" any advertiser, there is no basis to infer that X's advertisers "had a contractual obligation to continue using [X's] services." *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 675 (S.D. Tex. 2010). X cannot sustain its first claim without alleging the existence of such a contract. *Id.* at 674 ("A cause of action for tortious interference with a contract will not lie in the absence of a contract." (collecting cases)).

Merely claiming that certain advertisers purchased advertising space on X in the past—and anticipating they would continue to do so in the future—is not enough to plead an interference with contract claim under Texas law. *See Amey v. Barrera*, No. 13-01-00130-CV, 2004 WL 63588, at *10 (Tex. App.—Corpus Christi Jan. 15, 2004, no pet.) (concluding "there were no contracts subject to interference" where third parties could "continue buying" products from a vendor so long as they wished but "could change vendors at any time"). X has made no allegation that it had "a legal right to future performance" from its advertisers under a contractual obligation, and instead "just [had] a hope" that advertisers "will continue" to purchase from it in the future. Restatement (Third) of Torts: Liab. for Econ. Harm § 17 (2020). X cannot state an interference with contract claim for "benefits that [X] hoped to receive but on which [X] had no right to insist." *Id.*

X also fails to allege the second element—"a willful and intentional act of interference with contract"—which "requires demonstration that the defendant knowingly induced one of the contracting parties to *breach its obligations* under a contract." *Nix*, 62 F.4th at 934 (emphasis added) (quotation marks omitted). The Texas Supreme Court has held that "[t]o prevail on a claim for tortious interference with an existing contract," a plaintiff must "present evidence" that a defendant "induced [another entity] to 'breach the contract,'" *El Paso Healthcare Sys., Ltd. v. Murphy*, 518 S.W.3d 412, 421–22 (Tex. 2017); *see also John Paul Mitchell Sys. v. Randalls Food Markets, Inc.*, 17 S.W.3d 721, 730–31 (Tex. App.—Austin 2000, pet. denied); *Adidas Am. Inc. v.*

16

*Shoebacca Ltd.*, No. 3:20-CV-03248-N, 2021 WL 4399745, at *2 (N.D. Tex. Sept. 27, 2021). Yet *nowhere* in the complaint does X allege that any of its advertisers *breached* any contract by choosing to no longer spend money advertising on X. That deficiency alone requires dismissal under Texas law. *See, e.g.*, *Blacks in Tech. Int'l v. Greenlee*, No. 3:20-CV-3008-X, 2023 WL 4186376, at *10 (N.D. Tex. June 26, 2023) (granting judgment on pleadings where plaintiff's "alleged injuries cannot support" claim for interference with contract because "there was no breach"); *GoLabs, Inc. v. Hangzhou Chic Intelligent Tech. Co.*, No. 3:19-CV-1019-N, 2020 WL 1325209, at *2 (N.D. Tex. Mar. 20, 2020) (dismissing interference with contract counterclaim for failure to allege breach); *Protective Life Ins. Co. v. Jones*, No. 4:19-CV-179-Y, 2019 WL 7943638, at *2 (N.D. Tex. Aug. 19, 2019) (finding "claim for tortious interference with contractual relation fails" because plaintiff "failed to allege any breach"). Simply put, X's interference with contract "claim fails for lack of any indication . . . that [its advertisers] breached their contracts" with X. *C.E. Servs., Inc. v. Control Data Corp.*, 759 F.2d 1241, 1248 (5th Cir. 1985); *see also Murphy*, 518 S.W.3d at 422 (holding "tortious-interference claim must fail" where there was no breach of contractual obligation).[8]

---

[8] Texas law is unambiguous that "merely inducing a contract obligor to do what it has a right to do is not actionable interference." *ACS Invs., Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997) (collecting cases); *see also New York Life Ins. Co. v. Miller*, 114 S.W.3d 114, 125 (Tex. App. 2003) (same); *accord* Restatement (Third) of Torts: Liab. for Econ. Harm § 17 (2020) ("Liability does not arise under this Section when the defendant's interference causes the termination of a contract at will—in other words, a contract that either party has the right to end at any time."). The Fifth Circuit has repeatedly recognized the same. *E.g.*, *C.E. Servs.*, 759 F.2d at 1248 (explaining that inducing "another to exercise his right to dissolve a contract at will or to terminate contractual relations on notice does not constitute tortious interference with contract under Texas law"); *Mikhail v. Maritz*, 189 F.3d 468 (5th Cir. 1999) (similar); *United Biologics, L.L.C. v. Allergy & Asthma Network/Mothers of Asthmatics, Inc.*, 819 F. App'x 204, 210 (5th Cir. 2020) (similar). Accordingly, even if X had alleged that its advertisers exercised their rights to withdraw from a contract due to Defendants' reporting—and it nowhere makes such an allegation—it would still fail to plausibly allege this second element. !

Even if X *did* allege breach, that alone does not meet the second element—it must also plausibly allege Defendants "knowingly induced one of the contracting parties" to breach. *Funes v. Villatoro,* 352 S.W.3d 200, 213 (Tex. App. 2011). But X's anemic complaint contains *no allegations at all* to that effect, never mind plausible ones. For example, it does not allege that Defendants contacted any of X's advertisers or publicly criticized them for continuing to advertise on X, nor does X allege Defendants offered any "inducement" to these companies to stop advertising on X, and certainly not in any way related to the November 16 or November 17 articles. Instead, the complaint simply assumes a causal effect between Defendants' reporting and advertisers' decisions to stop advertising on X. Such a conclusory allegation that certain advertisers withdrew from X "after publication of the article," Compl. ¶ 39, is a far cry from plausibly alleging Defendants "must have carried out the interfering act with 'the desire[] to interfere with [the] contract or [the belief] that interference was substantially certain to result from its action." *Wolf v. Cowgirl Tuff Co.*, No. 1:15-CV-1195 RP, 2016 WL 4597638, at *4 (W.D. Tex. Sept. 2, 2016) (alternations in original) (citing *Sw. Bell Tel. Co. v. John Carlo Texas, Inc.*, 843 S.W.2d 470, 472 (Tex. 1992)). !

X also fails to plausibly allege that Defendants "proximately caused" any alleged injury— the third element. *Nix*, 62 F.4th at 934. "Proximate cause itself requires proof of both cause-in-fact and foreseeability." *Immobiliere Jeuness Establissement v. Amegy Bank Nat'l Ass'n*, 525 S.W.3d 875, 880 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (quoting *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 477 (Tex. 1995)). "The test for cause-in-fact is whether the tortious conduct was a substantial factor in bringing about the alleged injury, *i.e.*, a factor without which the injury would not have occurred." *Id.* X cannot plausibly allege Defendants' reporting was a but-for factor of any alleged injury. To the contrary, X's complaint itself introduces public

reporting that—immediately prior to the withdrawal of various advertisers—Mr. Musk publicly endorsed an antisemitic conspiracy theory that Jewish people are trying to replace native-born white Americans with "hordes of minorities." *See* Compl. ¶¶ 4, 25 n.4. X's handpicked article in its complaint reports that many advertisers were "concerned about posts made by Musk himself," including one in which he "appeared to agree with a post espousing an antisemitic theory," and "wary of being placed next to toxic content, pulled their advertising" from the platform in growing numbers ever since Mr. Musk's acquisition in 2022. Hannah Murphy, *IBM pulls adverts for X after reporting finding they ran next to Nazi Content*, Financial Times (Nov. 16, 2023) (cited at Compl. ¶ 12 n.2).[9] And while X alleges that the various advertisers that withdrew from the platform "referenced antisemitic content in their withdrawal from X," Compl. ¶ 39, it fails to acknowledge that it was *Mr. Musk's own remarks* that were the subject of advertiser concerns. For that reason it has failed to plausibly allege proximate causation as well.

## B.      X has not stated a claim for business disparagement.

X's complaint also fails to plead and plausibly allege a cognizable claim for business disparagement. *See* Compl. ¶¶ 45–50 (Second Cause of Action). To prevail on a business disparagement claim in Texas, plaintiffs must show defendants published false and disparaging words—with malice and without a privilege defense—that caused special damages. *See Hurlbut v. Gulf Atl. Life Ins. Co.,* 749 S.W.2d 762, 766–67 (Tex. 1987); *see also Teel v. Deloitte & Touche LLP*, No. 3:15-CV-2593-G, 2015 WL 9478187, at *3–4 (N.D. Tex. Dec. 29, 2015). The disputed statements *must* be false; the claim cannot survive if statements are true or substantially true.

---

[9] X incorporated various public reports—including Defendants'—about Mr. Musk's apparent endorsement of an antisemitic conspiracy theory into the complaint *See* Compl. ¶¶ 4, 12 n.2, 25 n.4. The Court may, of course, consider any "documents incorporated into the complaint by reference." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.* 551 U.S. 308, 322 (2007)).

*Broughton v. Livingston Indep. Sch. Dist.*, 2010 WL 3056862, at \*10 (E.D. Tex. July 29, 2010). Whether defendants' statements "are disparaging is a question of law," and must, at a minimum, be defamatory. *Id.* Allegedly defamatory statements must be viewed in context; "they may be false, abusive, unpleasant, or objectionable to the plaintiff and still not be defamatory in light of the surrounding circumstances." *Id.* (cleaned up). Moreover, plaintiffs *must* show defendants knew their "statements were false or acted with reckless disregard for their falsity" because business disparagement claims always require actual malice. *Rimkus Consulting Grp., Inc.*, 688 F. Supp. 2d at 671 (citing *Hurlbut,* 749 S.W.2d at 766). Actual malice is a "relatively demanding standard" and is doubly required where a plaintiff is a public figure suing a media defendant. *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 171 (Tex. 2003); *see also New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). Reckless disregard is a subjective standard established by evidence that the defendant had serious doubts as to the truth of their statements at the time of publication. *Forbes*, 124 S.W.3d at 171. Here, X has failed to allege facts sufficient to sustain this claim.

### 1. *Defendants' statements were true.*

X's business disparagement claim cannot survive because X cannot plausibly allege that Defendants' statements are false. *Broughton*, 2010 WL 3056862, at \*11. X never claims in the complaint that Defendants fabricated the images reproduced in their articles. Far from it: X expressly acknowledges (as it must) that it is *possible* for the platform to display advertisements next to extremist content, even as it claims these pairings are "rare." *See* Compl. ¶¶ 7, 13, 35; *see also* ¶ 6 (indicating that one percent "of X's measured ad placement in 2023 [] appeared adjacent to content [*not*] scoring above the Global Alliance for Responsible Media's brand safety floor").

X's only quarrel appears to focus on *how often* these pairings occurred and whether they are "organic," but nothing in the complaint—let alone the disputed articles—suggests that Media Matters or Mr. Hananoki opined on the overall quantity of pairings. Furthermore, if X's supposed

safeguards worked, *id.* ¶ 25, it would have been impossible for Defendants to "exploit[] . . . X's user features" to bring about the pairings, *id.*, since Defendants have no authority or control over X, its algorithm, or its advertisement placement. X's allegation, therefore, that Defendants "created" the pairings, *id.* ¶ 26, is simply not plausible.

In short, X alleges that Defendants reported that advertisements appeared next to extremist content on X. *See id.* ¶ 11. But X also concedes that advertisements do, in fact, sometimes appear next to extremist content on X. *See id.* ¶¶ 6, 7, 13, 25. Because X's own pleadings admit that the gist of the reporting is substantially true—even if X finds it to be unpleasant or objectionable, *Broughton*, 2010 WL 3056862, at \*10—the business disparagement claim must be dismissed.

## 2.     *Media Matters and Mr. Hananoki did not act with actual malice.*

X also fails to plausibly allege that Defendants acted with actual malice. Actual malice "'is a term of art.' It is not ill will, spite, or evil motive." *Forbes*, 124 S.W.3d at 171 (quoting *Huckabee v. Time Warner,* 19 S.W.3d 413, 420 (Tex. 2000)). Actual malice requires proof that the defendant made a statement "with knowledge that it was false or with reckless disregard of whether it was true or not. *New York Times,* 376 U.S. 254 at 279–80). Even where statements are "not strictly true," if they are "substantially so and not made with reckless disregard of the truth," there is no actual malice. *BDO Seidman LLP v. Alliantgroup, L.P.*, No. H-08-905, 2009 WL 1322555, at \*12 (S.D. Tex. May 11, 2009).

Given that X does not plausibly allege that Defendants' statements were false, it necessarily follows that X cannot plausibly allege that Defendants "knew [their] statements were false." *Rimkus Consulting Grp.*, 688 F. Supp. 2d 598 at 671. But even beyond that truism, X fails to allege any facts that could plausibly support a finding that Defendants acted with actual malice; instead, X relies on nothing more than conclusory statements, contending, for example, that Defendants' statements were "not true and, Media Matters knew it." Compl. ¶ 25. But this recitation does "not

allow the court to infer more than the mere possibility of wrongdoing" and is not enough to state a proper claim. *Moser v. Omnitrition Int'l Inc.*, 2018 WL 1368789, at *2 (N.D. Tex. Mar. 16, 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Finally, both the U.S. and Texas Supreme Courts have "repeatedly held" that a media defendant's mere "choice of words or content," even where they are misleading, "do[] not [alone] amount to actual malice." *Forbes*, 124 S.W.3d at 174–76 (summarizing and distinguishing Texas and Supreme Court cases where media defendants were accused of actual malice). This is because courts are wary of "the risk of undue self-censorship and the suppression of truthful material," and thereby afford media defendants protection from being haled into court and baselessly accused of wrongdoing, as X has done here. *Forbes*, 124 S.W.3d at 176 (quoting *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 513 (1984)).

### 3.    *X has failed to allege special damages.*

X has failed to plausibly allege another "essential part" of its claim for business disparagement—that it incurred special damages caused by Defendants' conduct. *Hurlbut*, 749 S.W.2d at 767. X's claim is based entirely on the timing of when some unknown number of advertisers declined to continue advertising on X (*i.e.*, after the November 16 article). But Texas law is clear that where multiple explanations could exist for lost business, the plaintiff claiming business disparagement must allege facts showing that allegedly defamatory statements—as opposed to *other* factors—actually caused the lost business. *See Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 54–55 (Tex. 2021) (granting motion to dismiss under TCPA for failure to allege facts connecting alleged defamation to lost business).

The timing of the complained-of advertiser flight from X is easily explained both by Mr. Musk's own erratic conduct and a year's worth of reporting by other media outlets about the rise of hate speech on the platform, which led dozens of other advertisers (not identified in the

complaint) to abandon X. *See* article cited at Compl. ¶ 12 n.2, 25 n.4 (noting that "[m]any brands, wary of being placed next to toxic content, pulled their advertising" after Musk acquisition). Indeed, X concedes that some advertisers "referenced antisemitic content in their withdrawal from X." Compl. ¶ 39. Given that Mr. Musk's own apparently antisemitic remarks were widely publicized at the time of the article, there is simply no way to know which of the many controversies surrounding X and its owner persuaded advertisers to part company with them. "A 'jury cannot reasonably infer that defamation caused cancellations when the cancellations could have occurred for any number of reasons.'" *Landry's*, 631 S.W.3d at 55 (quoting *Burbage v. Burbage*, 447 S.W.3d 249, 262 (Tex. 2014) (brackets omitted)). Nor does anything in the complaint explain why sophisticated Fortune 500 companies (Apple, NBCUniversal, IBM, Compl. ¶ 39) would not come to their own conclusions about the continued value of their advertising relationships with X. It is thus no surprise that X fails to make any allegations "that anyone at [the advertising companies] ever read the [Media Matters] stories about [X], much less based their decision to cancel on statements in those stories attributed to the defendants." *Landry's*, 631 S.W.3d at 54–55. By failing to account for these public facts—which are repeatedly mentioned in articles that X itself cites in its complaint—the complaint fails to exclude the "obvious alternative explanation," *Twombly*, 550 U.S. at 567, for advertisers' decisions: in the aftermath of Mr. Musk's inflammatory remarks and a year of negative reporting about Twitter's extremist content, they independently decided to terminate their relationships with X.

C.     **X has not stated a claim for interference with prospective economic advantage.**

X also fails to state a claim for interference with prospective economic advantage. *See* Compl. ¶¶ 51–57 (Third Cause of Action). Indeed, the Fifth Circuit has expressed strong "reservations that tortious interference with prospective economic advantage exists, as such, under Texas law." *Small Bus. Assistance Corp. v. Clear Channel Broad., Inc.*, 210 F.3d 278, 280 n.1 (5th

Cir. 2000); *see In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 238 F. Supp. 3d 799, 814 (S.D. Tex. 2017) ("Dismissal under Rule 12(b)(6) is proper . . . where the plaintiff fails to allege a cognizable legal theory."), *aff'd sub nom. Lampkin v. UBS Fin. Servs., Inc.*, 925 F.3d 727 (5th Cir. 2019).

The allegations in the complaint's third cause of action would also fail to state a claim for any seemingly related common law tort, such as interference with prospective business relations. Texas courts have identified the following elements for that claim:

1. a reasonable probability that the plaintiff would have entered into a business relationship;
2. an independently tortious or unlawful act by the defendant that prevented the relationship from occurring;
3. the defendant did such act with a conscious desire to prevent the relationship from occurring or the defendant knew the interference was certain or substantially certain to occur as a result of the conduct; and
4. the plaintiff suffered actual harm or damages as a result of the defendant's interference.

*Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 860 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

X offers no more than "[t]hreadbare recitals" of these elements, "supported by mere conclusory statements, [which] do not suffice." *Iqbal*, 556 U.S. at 678. *Compare Baty*, 63 S.W.3d at 860 (identifying elements), *with* Compl. ¶¶ 51–57 (conclusory repetition of elements). And the third cause of action does not identify any *independently* tortious or unlawful act allegedly committed by Defendants. *See Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001) (explaining that "independently tortious" means "conduct that would violate some *other* recognized tort duty" (emphasis added)). At most, X accuses Defendant Media Matters (but not Mr. Hananoki) of "extensive deception and misrepresentation," Compl. ¶ 54. But even accepting that vague allegation as true in this posture, X has not alleged that abstract deception and misrepresentation are independently unlawful, nor that publication of the November 16 article

would be actionable under a recognized tort. To the contrary, X's claim for the tort of business disparagement fails to make it out of the gate, as would any attempt to plead defamation in the circumstances here. *See supra* Section III.B. The Court should dismiss this claim as well. *Cf. Phoneternet, L.L.C. v. LexisNexis Risk Sols., Inc.*, 816 F. App'x 909, 914 (5th Cir. 2020) (affirming dismissal of tortious interference with prospective business relations claim where plaintiff "failed to allege adequately an independent tort or any other meritorious claim").

## CONCLUSION

There are several independently sufficient reasons to dismiss X's complaint. First, as explained above, this Court lacks specific jurisdiction over Defendants because the statements at issue were posted on a passive website, were not at all directed toward Texas, and did not involve Texas in any way. Second, exercising jurisdiction under these circumstances would be fundamentally unfair to Defendants, who lacked any indication that they could be amenable to suit in Texas for posting comments on an internationally available website. Third, even if this Court had jurisdiction to hear this case, venue is plainly lacking. Finally, X has failed to sufficiently plead any of its claims. For any and all of these reasons, this Court should dismiss X's complaint.


Respectfully submitted,                        Dated: February 6, 2024.

*/s/ Andrew LeGrand*

GIBSON, DUNN & CRUTCHER LLP
Andrew LeGrand (TX 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.** (CA 132099)
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed** (NY 4382040)
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

ELIAS LAW GROUP LLP
Abha Khanna* (WA 42612)
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Jacob D. Shelly* (DC 90010127)
Omeed Alerasool* (DC 90006578)
250 Massachusetts Avenue NW, Suite 400
Washington, DC 20001
T: (202) 968-4490
F: (202) 986-4498
jshelly@elias.law
oalerasool@elias.law

\* Admitted *pro hac vice*
\*\* *Pro hac vice* application forthcoming

*Counsel for Defendants Media Matters for America and Eric Hananoki*

26

**CERTIFICATE OF SERVICE**

On February 6, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Andrew LeGrand*
Andrew LeGrand