# UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | |
|---|---|
| **X CORP.**, a Nevada corporation,<br>　　　　Plaintiff,<br><br>　　vs.<br><br>**MEDIA MATTERS FOR AMERICA**, a Washington, D.C. non-profit corporation, **ERIC HANANOKI**, and **ANGELO CARUSONE**,<br>　　　　Defendants. | Case No. 4:23-cv-01175-O |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' RENEWED MOTION TO STAY DISCOVERY

JUDD E. STONE II
CHRISTOPHER D. HILTON
ARI CUENIN
**STONE | HILTON PLLC**
1115 W. Slaughter Lane
Austin, TX 78748
Telephone: (737) 465-7248
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com

JOHN C. SULLIVAN
**S|L Law PLLC**
610 Uptown Boulevard
Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
john.sullivan@the-sl-lawfirm.com

Defendants Media Matters for America (Media Matters), Eric Hananoki, and Angelo Carusone cannot show good cause for the Court to intervene in the normal course of discovery under the Federal Rules of Civil Procedure and stay proceedings pending a decision on their Motion to Dismiss (ECF No. 40). Defendants' Motion to Dismiss is meritless. Moreover, the discovery that Defendants seek to avoid is neither overly broad nor unduly burdensome. X's first set of discovery targets discoverable information that any reasonable defendant should expect to produce in a case such as this. Finally, Defendants seek only to delay the inevitable, as they concede that at least some court has jurisdiction over this dispute. Because Defendants seek only an unnecessary delay that is sure to do nothing other than increase the time and expense required to resolve this matter, the Court should deny Defendants' Motion to Stay Discovery.

## BACKGROUND

In the fall of 2023, Media Matters' crusade against X, its owner, and its senior leadership culminated in a series of articles and television appearances in which Carusone, Hananoki, and others attacked X using screenshots of intentionally manipulated content and false, malicious, and inflammatory statements about X and the content appearing on the platform. *E.g.*, Am. Compl. ¶¶ 30-38, 46-54. As a result of that tortious conduct, major advertisers withdrew from X's platform—precisely the outcome Media Matters intended, desired, knew would occur, and publicly lauded. *See id.* ¶¶ 30-38, 61-64. Because of the ongoing damage caused by Defendants' lies, X Corp. brought claims for business disparagement, tortious interference with contract, and tortious interference with prospective economic advantage. *Id.* ¶¶ 65-88.

X filed its Original Complaint in this matter in November 2023 against Media Matters and Hananoki. ECF No. 1. In December, the parties held their Rule 26(f) conference and filed a joint report, ECF No. 13, and the Court issued a scheduling order with a discovery deadline of July 29,

2024, and a trial date of January 6, 2025, ECF No. 14. On February 5, 2024, after the discovery period opened, X began serving written discovery requests. Fed. R. Civ. P. 26(d)(1); ECF No. 44 at 8.[1] Defendants then timely filed their responsive pleading in the form of a Motion to Dismiss, ECF No. 31, and their original Motion to Stay on February 20, ECF No. 35. On February 27, X filed its First Amended Complaint, adding Defendant Carusone, ECF No. 37, which mooted both of Defendants' motions, ECF No. 39. In response, Defendants filed a renewed Motion to Dismiss, ECF No. 40, and their Renewed Motion to Stay Discovery, ECF No. 43. Both should be denied.

## STANDARD OF LAW

District judges have inherent power to control the proceedings in their courts. *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987). That includes ordering a stay of discovery when a movant shows good cause. *Gillani Consulting, Inc. v. Ferguson Entrs., Inc.*, No. 3:07-cv-1488-O, 2008 WL 11425717, at *1 (N.D. Tex. Nov. 10, 2008) (O'Connor, J.). But a stay should not be automatically granted, even when a motion to dismiss is pending, and a stay should be the exception, not the rule. *Id.*; *see also Griffin v. Am. Zurich Ins. Co.*, No. 3:14-cv-2470-P, 2015 WL 11019132, at *2 (N.D. Tex. March 18, 2015) (Ramirez, M.J.) ("Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect." (citation omitted)). Importantly, a stay should not be granted just because a party believes it will prevail on some dispositive motion. *E.g.*, *Griffin*, 2015 WL 11019132, at *2. After all, every defendant believes that the case against him should be dismissed for one reason or another.

It is Defendants' burden to show the need for a stay, including the requirement to make a "particular and specific demonstration of fact as distinguished from stereotyped and conclusory

---

[1] Citations to ECF documents pincite to the ECF-generated pagination.

2

statements." *Sneed v. Abbot*, No. 21-279-JWD-RLB, 2021 WL 2877239, at *5 (M.D. La. June 29, 2021). In this circuit, courts commonly consider "(1) the breadth of discovery sought; (2) the burden of responding to such discovery; and (3) the strength of the dispositive motion filed by the party seeking a stay." *Id.* Courts usually apply the third factor by conducting a "cursory review" of the dispositive motion to see whether the arguments are so "substantial" as to justify a stay. *Von Drake v. Nat'l Broadcasting Co., Inc.*, No. 3-04-cv-0652R, 2004 WL 1144142, at *2 (N.D. Tex. May 20, 2004) (Kaplan, M.J.); *MC Asset Recovery, LLC v. Castex Energy, Inc.*, No. 4:07-cv-076-Y, 2007 WL 9718311, at *3 (N.D. Tex. Aug. 6, 2007) (Means, J.).

## ARGUMENT

None of the relevant factors support a stay. First, far from being so substantial as to justify a stay, Defendants' Motion to Dismiss is meritless. A stay of discovery pending a Rule 12 motion is the exception, not the rule, and Defendants' Motion is unexceptional. Second, the discovery requests that X has propounded are proportional to the case and seek discoverable documents and information. Third, and contrary to Defendants' suggestion, X *would* be prejudiced by a stay, and the Court should not countenance Defendants' delay tactics.

**I. Defendants' Motion to Dismiss is meritless.**

Defendants tell the Court that even a "cursory review" of the briefing in this case will demonstrate the strength of their arguments, but in fact the opposite is true: this case was properly brought in the Northern District of Texas and has been adequately pleaded. This factor does not weigh in Defendants' favor.

Defendants seek dismissal based on lack of personal jurisdiction, improper venue, and failure to state a claim. ECF No. 41 at 8-9. X's Response to Defendants' Motion to Dismiss, ECF No. 45, need not be recited here. But the authority Defendants rely on in their Motion do not demand a stay in this case. In *Von Drake*, 2004 WL 1144142, at *1-2 (cited in ECF No. 43 at 5),

3

the court granted a stay of discovery in an age discrimination case. There, the plaintiff was pro se and was a known vexatious litigant, having filed more than 26 lawsuits in a five-year period—one court "chastised him for attempting to make a mockery of the federal system." *Id.* at *2 n.2 (cleaned up). Because the discovery sought was "overly broad and harassing" and because the motion to dismiss was likely to dispose of "many, if not all, of [the] plaintiff's claims," the "unique circumstances" warranted a stay. *Id.* at *2. *Von Drake* has no bearing on the circumstances of this case: X Corp. is not a vexatious pro-se litigant, nor has it propounded broad and harassing requests untethered to meritorious claims.

Similarly, in *Johnson v. Ashmore*, No. 3:15-cv-2475-K, 2016 WL 8453918, at *1 (N.D. Tex. Jan. 22, 2016) (Stickney, M.J.) (cited in ECF No. 43 at 5-6), the defendant moved for dismissal based on lack of diversity jurisdiction because the plaintiff had "repeatedly asserted in previous court filings that the amount in controversy in [the] dispute [did] not exceed $75,000." *Id.* Because of the strength of that motion and because "questions of subject matter jurisdiction must be decided first," the court stayed discovery. *Id.* Here, there is no question of *subject matter* jurisdiction, let alone anything that would amount to an admission by X that jurisdiction is lacking. And even if the Court agrees with Defendants that personal jurisdiction or venue are lacking— though both are present here, and certainly each is adequately alleged such that discovery should be permitted to continue, ECF No. 45 at 11-20—Defendants themselves agree that *some* federal court will have authority over this dispute. *See* ECF No. 32 at 20; ECF No. 41 at 20. There is no reason, then, that discovery under the federal rules should be abated. *See Venable's Constr., Inc. v. ONEOK Arbuckle II Pipeline, L.L.C.*, No. 2:20-cv-18-Z-BR, 2020 WL 11891326, at *3 (N.D. Tex. April 30, 2020) (Reno, M.J.) (collecting cases) ("Because this case will surely go forward, either in this district or in another, discovery should proceed." (citation omitted)).

In *Bass v. Stryker Corp.*, No. 4:09-cv-632-Y, 2010 WL 11619575, at *1 (N.D. Tex. May 3, 2010) (Means, J.) (cited in ECF No. 43 at 5), the plaintiff "attempted to plead around" preemption issues to state a products liability claim related to a medical device. As that court pointed out, *id.* at *1, and as others have, the federal preemption issues at play in such a case "require[] navigating a legal quagmire" through which only a "narrow gap" exists, *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1276 (10th Cir. 2021) (Carson, C.J.). Because "only very narrow categories of claims escape" preemption and because the court thought the defendant was likely to prevail, it granted a stay. *Bass*, 2010 WL 11619575, at *1-2. No such tedious issues are present in this case; Defendants' grounds for dismissal could be understood by any first-year law student in a federal courts class.[2]

Because Defendants' Motion to Dismiss is not nearly as strong as they claim, the required "cursory review" of this case does not present circumstances in which a court should deviate from the normal course of litigation.

**II. The broad scope of discovery amply covers the ordinary and reasonably expected requests X has issued.**

Defendants may find the breadth of discovery permitted by the Federal Rules of Civil Procedure unpleasant in this case, but they are not therefore permitted to avoid discovery altogether. The Federal Rules make clear that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).

---

[2] Additionally, in *MC Asset Recovery, LLC v. Castex Energy, Inc.*, No. 4:07-CV-076-Y, 2007 WL 9718311 (N.D. Tex. Aug. 6, 2007) (Means, J.), the plaintiffs served 240 requests for production on the defendant. at *2 (cited in ECF No. 43 at 5). And the defendant attached documents to its motion to dismiss that showed the contracts on which the plaintiff had sued were not the only relevant agreements between the parties. *Id.* Based on those documents and on the volume of discovery requested, the court granted a stay. *Id.* at *2-3. Analogous circumstances are not present in this matter.

5

And "[i]nformation within the scope of discovery need not be admissible in evidence to be discoverable." *Id*. As to timing, the parties may engage in discovery at any time after their Rule 26(f) conference. *Id.* R. 26(d)(1). The discovery rules "are to be broadly and liberally construed," and discovery is permissible so long as it "appears reasonably calculated to lead to the discovery of admissible evidence." *In re LeBlanc*, 559 F. App'x 389, 392 (5th Cir. 2014) (citations omitted). And "relevant" matters include "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Hutcheson v. Dallas County*, No. 3:17-cv-2021-BN, 2019 WL 1957997, at *4 (N.D. Tex. May 2, 2019) (Horan, J.) (cleaned up). Thus, a court should only disallow discovery if "it is clear that the information sought can have no possible bearing on the subject matter of the action." *Green v. Toyota Motor Corp.*, No. 3:11-cv-0207-N, 2012 WL 13065682, at *2 (N.D. Tex. July 18, 2012) (Godbey, J.) (citation omitted) (emphasis added).

X's first set of written discovery included 29 requests for production. Those requests largely concern categories of documents and other evidence related to the Hananoki article, X Corp., and the X platform. *See* ECF No. 44 at 16-17, 18-19 (Requests 1-10, 21-29). Others request information relevant to Media Matters' finances, financial condition, and insurance coverage—matters clearly relevant to any litigation in which a plaintiff seeks damages. *See id.* at 17-18 (Requests 12-18). And the rest seek information relevant to Defendants' states of mind, communications with like-minded persons and organizations, and other information expected to show knowledge, intent, motive, and other relevant, permissible matters. *See id.* at 17, 18 (Requests 11, 19-20). X's second set of written discovery relates to similar issues, as well as those issues that Defendants have raised in their motions to the court.

6

In their Motion to Stay, Defendants complain only of a few of X's requests for production. ECF No. 43 at 7-8 As an initial matter, the proper means to resolve the alleged overbreadth issues identified in Defendants' motion is to object and confer with opposing counsel, not to run to the court asking to shut down discovery altogether. Indeed, Defendants have objected, and any disputes should be resolved through a motion to compel following a conference, if necessary; that motion, not this one, is the proper vehicle for this court to oversee discovery in this case. Unlike the unique and extreme examples raised by Defendants, *see supra* Part I, discovery conferences and motions to compel are the normal and appropriate tools for addressing concerns about the breadth and content of discovery requests. Nothing about X's Amended Complaint or its discovery requests requires the drastic remedy Defendants seek.

Even if the Court were to entertain the few specific issues raised by Defendants in the context of this Motion to Stay—and it need not—Defendants' arguments are still unavailing. First, as to burden, Defendants call it "inexplicabl[e]" that X would seek documents going back to April 2021. ECF No. 43 at 7. But April 2021 was less than three years ago—certainly not an extraordinary look-back period for discovery requests. Furthermore, that date was a *limiting* instruction which made clear that X was not seeking documents older than that date—it was not included to require the production of irrelevant or unnecessary documents. ECF No. 44 at 15. More to the point, April 2021 is less than one year before Mr. Musk began buying shares of X Corp.'s predecessor, Twitter Inc. The April 2021 temporal limit for most requests is therefore reasonably calculated and narrowly tailored to demonstrate Defendants' changing perceptions and reporting regarding the platform, starting shortly before Mr. Musk's ownership of the company and continuing through the present.

7

Second, as to breadth, Defendants identify a few requests they say target information outside the scope of discovery. Not so. Defendants complain that X's request for communications with public officials, candidates, and related persons is "plainly irrelevant to this suit." ECF No. 43 at 7. But those communications are directly relevant to discovering and establishing Defendants' states of mind, motives, and purposes in waging their politically motivated crusade against X. It is Defendants, not X, who put their anti-conservative agenda at the forefront of their actions. *See, e.g.*, *"*About Us," MEDIA MATTERS FOR AMERICA, https://www.mediamatters.org/about-us (last visited March 29, 2024) ("Media Matters for America is a web-based, not-for-profit, 501 (c)(3) progressive research and information center dedicated to comprehensively monitoring, analyzing, and correcting conservative misinformation in the U.S. media."). Accordingly, understanding Defendants' political affinities and affiliations and whether those factors caused, motivated, or funded their shocking disregard of journalistic ethics is a core issue in this litigation.

Next, Defendants complain that their communications with X's advertisers and Defendants' activities on the X platform are "well beyond the scope of the complaint and the needs of the case." *Id.* at 7-8. But this assertion blinks reality. The communications that Defendants had with the very third parties they sought to drive away from the X platform are relevant to this case, as are their activities on the platform—these lie at the core of their tortious conduct.

Finally, Defendants resist X's requests for financial information. As an initial matter, much of Media Matters' financial information is public record, and asking for related information presents no exceptional burden to a company that has already had to prepare extensive financial disclosure documents. *See* "Financials," MEDIA MATTERS FOR AMERICA, https://www.mediamatters.org/about-us/financials (last visited March 29, 2024). Moreover, financial information is discoverable in a suit seeking punitive damages. *City of Newport v. Fact*

8

*Concerts, Inc.*, 453 U.S. 247, 270 (1981) ("[E]vidence of a tortfeasor's wealth is traditionally admissible as a measure of the amount of punitive damages that should be awarded . . . ."); *Alvarez v. Alid (Texas) LLC*, No. 3:13-cv-4122-L, 2014 WL 3624929, at *2-3 (N.D. Tex. Jul. 22 2014) (Horan, M.J.) ("[A] party seeking discovery of net-worth information need not satisfy any evidentiary prerequisite, such as making a *prima facie* showing of entitlement to punitive damages . . . ."); *Le v. Lockheed Martin Corp.*, No. 4:24-cv-00031-O, 2024 WL 832374, at *1 (N.D. Tex. Feb. 6, 2024) (Ray, M.J.) ("[C]ourts have consistently ordered discovery of the defendant's net worth where punitive damages are sought."). Here, X asserts causes of action that carry the possibility of punitive damages. ECF No. 37 at p. 26. Therefore, X is entitled to discovery of "the net worth of the defendant," Tex. Civ. Prac. & Rem. Code § 41.011(a)(6), so that it may attempt to prove entitlement to and the appropriate amount of punitive damages, *id.* at § 41.003(a).

In sum, Defendants have not carried their burden to make a "particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements" for any of their objections. *Sneed*, 2021 WL 2877239, at *5. Here, Defendants have made nothing more than conclusory statements about the burden they might suffer, saying things like "[r]esponding to X's wide-ranging discovery requests will be extremely burdensome and costly" and "[s]imply identifying and collecting documents from the appropriate custodians promises to be a resource-intensive process." ECF No. 43 at 8. These are not the specific demonstrations of unusual and disproportionate burden that are required to obtain a stay. And to the extent that Defendants would seek to narrow the precious few requests they have specifically complained about in their Motion, they may do so by the ordinary means without needlessly halting this litigation in its tracks. The breadth and burden factors do not support a stay in light of the requests propounded.

**III. Plaintiff will be prejudiced by an indefinite stay of discovery.**

A delay of the magnitude Defendants request will prejudice X, unnecessarily stall this litigation, and all but certainly result in the need for modifications of the Court's well-considered scheduling order. Defendants argue that X cannot possibly show prejudice from an indefinite stay of all discovery simply because the parties exchanged short extensions earlier this month. ECF No. 43 at 8. But X requested that *both* parties exchange extensions of the initial disclosure deadline, and X granted *Defendants* an extension of their deadline to respond to X's requests for production. ECF No. 44 at 21-23. The fact that the parties granted each other short courtesy extensions does not, in any way, show that X will not be prejudiced by an indefinite and total stay of discovery.

Such courtesies amongst counsel are common and expected by courts. But a stay of all discovery is an entirely different request, and it is the exception, not the rule. *Gillani Consulting.*, 2008 WL 11425717, at *1. Furthermore, as explained above, any discovery conducted in this district will serve the case and the parties even if this case is transferred on personal jurisdiction or venue grounds. *Venable's Constr.*, 2020 WL 11891326, at *3 (collecting cases). There is no reason to pause discovery here, only to inevitably have it restarted in this or another district, and doing so will only delay X's ability to be made whole and delay the judiciary's ability to clear this case from the federal docket.

A stay will not serve to preserve party resources *or* judicial resources. *Contra* ECF No. 43 at 9. Rather, attorney fees, costs, and headaches will only continue to pile up in the meantime. This case is not likely to be dismissed, as explained above and detailed in X's Response to the Motion to Dismiss. And a stay would only delay consideration of any discovery disputes for a later day—that would not save resources.

## CONCLUSION

For these reasons, Plaintiff X Corp. respectfully requests that the Court deny Defendants' Motion to Stay Discovery, thereby encouraging an expedient resolution of this matter.

March 29, 2024                                        Respectfully submitted.

                                                      /s/ Christopher D. Hilton
                                                      Judd E. Stone II
                                                      Texas Bar No. 24076720
                                                      Christopher D. Hilton
                                                      Texas Bar No. 24087727
                                                      Ari Cuenin
                                                      Texas Bar No. 24078385
                                                      **STONE | HILTON PLLC**
                                                      1115 W. Slaughter Lane
                                                      Austin, TX 78748
                                                      Telephone: (737) 465-7248
                                                      judd@stonehilton.com
                                                      chris@stonehilton.com
                                                      ari@stonehilton.com

                                                      John C. Sullivan
                                                      Texas Bar No. 24083920
                                                      **S|L LAW PLLC**
                                                      610 Uptown Boulevard, Suite 2000
                                                      Cedar Hill, TX 75104
                                                      Telephone: (469) 523-1351
                                                      Facsimile: (469) 613-0891
                                                      john.sullivan@the-sl-lawfirm.com

## CERTIFICATE OF SERVICE

  I hereby certify that this document was served on all counsel of record via CM/ECF on April 1, 2024.

                */s/ Christopher D. Hilton*
                Christopher D. Hilton