**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| X CORP., <br><br>            Plaintiff, <br><br>     v. <br><br> MEDIA MATTERS FOR AMERICA, et al., <br><br>          Defendants. | Civil Action No. 4:23-cv-01175-O |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

    I.      Defendants' website and other alleged contacts with Texas do not establish
          personal jurisdiction. ............................................................................................ 2

    II.    Venue is improper in this district. ........................................................................ 6

    III.   X's complaint fails to state any viable claim. ..................................................... 8

CONCLUSION .................................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acumen Enters., Inc. v. Morgan*,
  No. 3:11-CV-619-L, 2011 WL 5822252 (N.D. Tex. Nov. 15, 2011)........................................7

*Broughton v. Livingston Indep. Sch. Dist.*,
  No. 9:08-cv-175, 2010 WL 3056862 (E.D. Tex. July 29, 2010)..............................................10

*Calder v. Jones*,
  465 U.S. 783 (1984)...............................................................................................................3

*Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*,
  No. 4:23-CV-0206-P, 2023 WL 2975164 (N.D. Tex. Apr. 17, 2023)......................................6

*Christopher v. Perry Fam. Ltd. P'ship v. Whatever, L.L.C.*,
  No. CV H-08-1387, 2008 WL 11389239 (S.D. Tex. Aug. 11, 2008) ......................................7

*Clemens v. McNamee*,
  615 F.3d 374 (5th Cir. 2010) ...............................................................................................5

*Dagel v. Resident News, LLC*,
  No. 3:11- CV-00663-L, 2011 WL 3518281 (N.D. Tex. Aug. 10, 2011)..................................7

*Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*,
  24 F.4th 491 (5th Cir. 2022)  ................................................................................................6

*Dunbar v. Evine Live, Inc.*,
  No. 17CV1527, 2018 WL 382027 (W.D. Pa. Jan. 11, 2018) ..................................................7

*El Paso Healthcare Sys., Ltd. v. Murphy*,
  518 S.W.3d 412 (Tex. 2017).................................................................................................9

*Fielding v. Hubert Burda Media, Inc.*,
  415 F.3d 419 (5th Cir. 2005) .......................................................................................3, 5, 6

*Flu Shots of Tex., Ltd. v. Lopez*,
  No. 3:13- CV-144-O, 2013 WL 2449175 (N.D. Tex. June 5, 2013)........................................7

*Herman v. Cataphora, Inc.*,
  730 F.3d 460 (5th Cir. 2013) ..............................................................................................2, 6

*Johnson v. TheHuffingtonPost.com, Inc.*,
  21 F.4th 314 (5th Cir. 2021) ...........................................................................................1, 2, 6

*Moser v. Omnitrition Int'l Inc.*,
  No. 3:16-CV-2558-L, 2018 WL 1368789 (N.D. Tex. Mar. 16, 2018) ....................................10

*Mullins v. TestAmerica*,
  564 F.3d 386 (5th Cir. 2009) ...................................................................................................6

*Nix v. Major League Baseball*,
  62 F.4th 920 (5th Cir. 2023) ................................................................................................8, 9

*Phoneternet, L.L.C. v. LexisNexis Risk Sols., Inc.*,
  816 F. App'x 909 (5th Cir. 2020) ..........................................................................................10

*Revell v. Lidov*,
  317 F.3d 467 (5th Cir. 2002) ...................................................................................................6

*Sangha v. Navig8 ShipManagement Priv. Ltd.*,
  882 F.3d 96 (5th Cir. 2018)  ....................................................................................................6

*Space Expl. Techs. Corp. v. NLRB*,
  No. 1:24-CV-00001, 2024 WL 974568 (S.D. Tex. Feb. 15, 2024) ..........................................7

*Tabletop Media, LLC v. Citizen Sys. Am. Corp.*,
  No. 3:16-CV-1304-C, 2016 WL 11522083 (N.D. Tex. Sept. 21, 2016) ...................................7

*Trois v. Apple Tree Auction Ctr., Inc.*,
  882 F.3d 485 (5th Cir. 2018) ...................................................................................................6

*United Biologics, L.L.C. v. Allergy & Asthma Network/Mothers of Asthmatics, Inc.*,
  819 F. App'x 204 (5th Cir. 2020) ............................................................................................9

*Wal-Mart Stores, Inc. v. Sturges*,
  52 S.W.3d 711 (Tex. 2001)....................................................................................................10

*Walden v. Fiore*,
  571 U.S. 277 (2014).................................................................................................................5

*Ward v. Rhode*,
  544 F. App'x 349 (5th Cir. 2013).............................................................................................6

*WickFire, L.L.C. v. Woodruff*,
  989 F.3d 343 (5th Cir. 2021) ...................................................................................................9

**Statutes**

28 U.S.C. § 1391(b)(2) .................................................................................................................6

**Other Authorities**

Fed. R. Civ. P. 11(b) ....................................................................................................................8

**INTRODUCTION**

Even with the benefit of an amended complaint, X's response confirms what was evident from the start: Its claims may not proceed in this Court.

X all but concedes that binding Fifth Circuit precedent forecloses its theory that publication on the Media Matters website alone allows this Court to exercise personal jurisdiction over Defendants. *See Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 318 (5th Cir. 2021). So X tries a different approach by pointing to alleged contacts that Defendants had with Texas beyond the website. But those contacts (tacked onto X's complaint after Defendants' first motion to dismiss) are nothing but fantasy. As Defendants swear in multiple declarations submitted with their motions to dismiss, Defendants did not contact Texas-based businesses about the challenged reporting, nor did they solicit Texas citizens to subscribe to Media Matters's content. X conspicuously fails to acknowledge any of these sworn declarations. X's own alleged contacts in Texas, meanwhile, cannot serve as the basis of personal jurisdiction under settled Supreme Court and Fifth Circuit law. X's view would subject an expressive media website to personal jurisdiction in *any* forum if any person referenced in its stories has a tenuous connection to that forum. That erroneous result has been uniformly rejected.

For similar reasons, X fails to meet its independent burden to establish that venue is proper. X cannot establish that *any* of the events—let alone a substantial part of the events—took place in this district. X's lawsuit is thus decidedly in the wrong place.

X's claims also fail on their merits, and X does little to salvage them. X's allegations stop well short of claiming that any advertiser breached a contract with X (as is required to state a tortious interference claim), or that Media Matters's reporting was untrue (as is required to state a disparagement claim). X's failure to include such elements, even after being alerted to their omission in Defendants' first motion to dismiss, is dispositive.

X has proven unable to address any of these fatal defects. The amended complaint should be dismissed with prejudice.

## ARGUMENT

### I.     Defendants' website and other alleged contacts with Texas do not establish personal jurisdiction.

X all but concedes that under a straightforward application of *TheHuffingtonPost.com*, this Court lacks personal jurisdiction over Defendants. *See* Pls.' Resp. to Defs.' Mot. to Dismiss ("Resp.") at 7, ECF No. 45. Rightly so. In cases in which "a defendant's website is the claimed basis for specific jurisdiction," courts "first look to the website's interactivity." *TheHuffingtonPost.com*, 21 F.4th at 318. "If the site is passive—it just posts information that people can see—jurisdiction is unavailable, full stop." *Id.* X failed to allege that Media Matters's website is interactive because X could not plausibly make out such an allegation—the Media Matters website strictly limits what visitors can do and offers no avenue for viewer interaction. Personal jurisdiction fails for this reason alone. Defs.' Br. in Supp. of Mot. to Dismiss Am. Compl. ("MTD") at 6, ECF No. 41.

But even if some aspect of the Media Matters website were construed as interactive, X fails to satisfy the tandem requirement that the challenged statements on the website be targeted at Texas. As the Fifth Circuit has explained, the "key question . . . is whether the forum state was 'the focal point both of the [alleged tort] and of the harm suffered.'" *TheHuffingtonPost.com*, 21 F.4th at 318 (quoting *Calder v. Jones*, 465 U.S. 783, 789 (1984)); *see also id.* at 318 (dismissing for lack of personal jurisdiction because the article "never mentioned Texas, never discussed [plaintiff's] activities there, and was not aimed at Texans any more than at residents of other states"). X does not meaningfully dispute that the challenged article on the Media Matters website did not make *Texas* the "focal point" of its reporting in any way, which is the crux of the personal-

2

jurisdiction inquiry in this Circuit. *Herman v. Cataphora, Inc.*, 730 F.3d 460, 465 (5th Cir. 2013) ("In applying the *Calder* analysis, we have emphasized the importance of the 'focal point' language."). For good reason: Any such interpretation would be facially implausible because the focal point of the article is the Nevada-incorporated, California-based company X and the content appearing on its social-media platform.

X retreats to the position that this case is about "far more" than Media Matters's website, but its amended complaint says otherwise. X's complaint turns on the allegation that Defendants "published a false, disparaging, and misleading article" on the website, Am. Compl. ¶ 46; details the "body of the piece" and the "side-by-side images depicting advertisers' posts on X Corp.'s social media platform beside Neo-Nazi and white-nationalist fringe content" contained therein, *id*. ¶¶ 7, 47; and, most glaringly, alleges that its sued-for harm—companies ceasing to advertise with X—was the "result" of the online "publication" of "the November 2023 article." *Id*. ¶¶ 61–63. Thus, X's alternative non-website arguments for jurisdiction are at best only tangentially related to its claims and at worst post-hoc attempts to work around the wall of Fifth Circuit precedent otherwise foreclosing jurisdiction in this Court.

At any rate, X's alternative bases for jurisdiction are wrong on the facts, on the law, or both.

*First*, X claims that Media Matters distributed its electronic newsletter to readers in Texas, Resp. at 7, but the fact that some minimal percentage of a media publication is circulated in the forum state does not establish personal jurisdiction. *See, e.g.*, *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 422, 427 (5th Cir. 2005) (no personal jurisdiction in suit against magazine publishers where only between 3% and 6% of magazine circulation was in Texas). Because, as of November 2023, "only a small percentage of Media Matters's newsletter subscribers had provided

address information indicating that they were based in Texas," App. of Exs. Accompanying MTD ("MTD App.") at 8–9, ¶ 22, ECF No. 42, the mere fact that some citizens who received the newsletter were in Texas does not suffice for jurisdiction.

*Second*, X points to public statements made by Mr. Carusone, Resp. at 7, but those statements were made on MSNBC—a cable station that, like Media Matters's website, can be viewed virtually anywhere in the world with an internet connection—and the amended complaint does not identify a single statement by Mr. Carusone that mentions Texas or appears directed at a Texas audience. *See* Am. Compl. ¶¶ 13, 17, 30 (collecting alleged statements by Mr. Carusone generally critical of X's content moderation efforts).

*Third*, X's effort to stack two Texas corporations—Oracle and AT&T—to reach the jurisdictional minimum quickly falls apart. *See* Resp. at 7. X alleges that the challenged articles mention Apple, Bravo, IBM, Oracle, NBCUniversal, and Comcast as companies that advertise on X. *See* Am. Compl. ¶¶ 14, 46. Of these, only Oracle is alleged to be based in Texas. *Id.* ¶ 24. But the amended complaint admits that "Oracle did *not* withdraw its ads" following Media Matters's publication of the challenged statements, *id.* ¶ 14 (emphasis added), meaning that Oracle's activity provides no basis for jurisdiction. The amended complaint is altogether silent as to whether AT&T stopped advertising on the X platform, and—crucially—X makes no allegation that any of Defendants' statements even *mentioned* AT&T. *See id.* ¶¶ 8, 14, 32, 46, 47, 54, 61. Indeed, Oracle and AT&T are so irrelevant to this case that none of the allegations in any of X's three claims so much as references either company. *Cf. id.* ¶¶ 66 (naming other companies).

In any event, X identifies no basis for treating a news article's passing mention of various third-party multinational companies as purposeful availment allowing the article's author, publisher, or publisher's president to be sued in every state where the companies may be

headquartered. Because Defendants' statements "did not concern activity in Texas; nor were they made in Texas or directed to Texas residents any more than residents of any state," *Clemens v. McNamee*, 615 F.3d 374, 380 (5th Cir. 2010), Texas was not the focal point of Defendants' statements, precluding personal jurisdiction.

*Fourth*, X owner Elon Musk's domicile in Texas is irrelevant because Mr. Musk is not a party to this suit, and, in any event, courts determine personal jurisdiction based on the actions of *defendants*, not based on the personal residence of a corporate plaintiff's private owner. *Contra* Resp. at 7–8. The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). "To employ [X's] approach would turn the jurisdictional analysis on its head, focusing attention not on where the alleged tortfeasor directed its activity, but on where the victim could identify tangential harms." *Fielding*, 415 F.3d at 427. And even when X alludes to "reputation-based 'effects'" suffered by Mr. Musk, it provides no explanation how any injury suffered by Mr. Musk could "harm X in Texas specifically." Resp. at 8. Defendants—and the Court—cannot be expected to guess.

*Finally*, Defendants have already made clear that they have not contacted anyone in Texas—not potential content-subscribers, not donors, not sources, and not companies that advertise on X—in any way related to the reporting that is the subject of this lawsuit. *See* MTD App. at 8–9 ¶¶ 20, 22; *id.* at 12–13 ¶¶ 8–13; *id.* at 15–16 ¶¶ 4, 6. X's continued musings about what seems "implausible," Resp. at 8, is inappropriate now that sworn evidence is in the record.

Personal jurisdiction in this forum is simply lacking. The cases that X cites in its brief confirm this. Of the eight precedential Fifth Circuit cases that X cites on personal jurisdiction, *see*

5

Resp. at 4–9, *seven* found personal jurisdiction lacking for reasons equally applicable here.[1] And

the eighth case is easily distinguishable.[2] This Court should reject X's attempt to effectively

manufacture nationwide jurisdiction in contravention of settled Fifth Circuit precedent.

## II.     Venue is improper in this district.

X cannot satisfy its "burden to prove that venue is proper." *Career Colls. & Schs. of Tex.

v. U.S. Dep't of Educ.*, No. 4:23-CV-0206-P, 2023 WL 2975164, at *1 (N.D. Tex. Apr. 17, 2023).

Venue is lacking in this district because *none* of the events—let alone a "substantial part" of the

events—giving rise to X's claims occurred here. 28 U.S.C. § 1391(b)(2).

Try as it might, X cannot cobble together any connection to this district. Defendants'

posting of the challenged statements on Media Matters's website do not suffice for venue because

---

[1] *See, e.g.*, *Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 497 (5th Cir. 2022) (cited Resp. at 5) (no jurisdiction because, even though defendants' "allegedly tortious conduct may have affected [plaintiff] in Texas "none of this conduct occurred in Texas" (emphases omitted)); *TheHuffingtonPost.com*, 21 F.4th at 319 (cited Resp. at 4, 6–7) (no jurisdiction where online publication did not target Texas); *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 489 (5th Cir. 2018) (cited Resp. at 5) (no jurisdiction over contract claim even where defendant's president joined phone calls with Texas-based plaintiff related to the disputed contract); *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 103 (5th Cir. 2018) (cited Resp. at 4) (no jurisdiction even though plaintiff alleged that challenged communications were "targeted at a contract formed in Texas" and "concerned work that was to be performed in Texas"); *Ward v. Rhode*, 544 F. App'x 349, 353 (5th Cir. 2013) (cited Resp. at 5) (no jurisdiction over defamation claims stemming from blog posts because the plaintiff did not show that "(1) the subject matter of and (2) the sources relied upon for the article were in the forum state" (quotation omitted)); *Herman*, 730 F.3d at 465–66 (cited Resp. at 5) (no jurisdiction where challenged statements never mentioned forum state and online publication did not have disproportionately high forum-state readership); *Fielding*, 415 F.3d at 426–27 (cited Resp. at 5) (no jurisdiction even where defendants used Texas sources in conducting their research for the challenged articles, hired a Texas-based contractor to procure information used in the articles, and explicitly mentioned Texas in the reporting); *Revell v. Lidov*, 317 F.3d 467, 475–76 (5th Cir. 2002) (no jurisdiction over online publication that did not target Texas).

[2] *See Mullins v. TestAmerica*, 564 F.3d 386, 402 (5th Cir. 2009) (cited Resp. at 5) (finding jurisdiction where the defendant "allegedly thwarted" the Texas plaintiff's right to payment under contracts "governing the sale of . . . a Texas company," "executed . . . in Texas," and "governed by Texas law"). X does not allege any of those variables here.

the website is not a "communication[] directed to the Northern District," *contra* Resp. at 11—the

online articles are accessible nationwide. And as set forth in Defendants' sworn statements—which

X fails to address—Defendants have not solicited subscribers in relation to the disputed statements.

MTD App. at 13 ¶ 13. Media Matters's distribution of newsletters, moreover, does not trigger

venue because X does not allege that the miniscule share of recipients in this district played a

substantial part—or any part—in contributing to X's injury. *Cf. Space Expl. Techs. Corp. v. NLRB*,

No. 1:24-CV-00001, 2024 WL 974568, at *2 (S.D. Tex. Feb. 15, 2024) (holding "incidental

effects" in Texas of open letter written in California insufficient to support venue in Texas). And

Defendants' mention of Oracle, a single Texas company not alleged to be in this district, that did

*not* stop advertising on X, does not constitute a substantial part of the events giving rise to claims

related to companies that *did* stop advertising on X. *Contra* Resp. at 10–11.

X resorts to collecting cases that, again, are of no use to its position. In *Tabletop Media,

LLC v. Citizen Sys. Am. Corp.*, No. 3:16-CV-1304-C, 2016 WL 11522083, *3 (N.D. Tex. Sept. 21,

2016) (cited Resp. at 11), the court held that venue was *improper* in the Northern District of Texas

because, like here, the complaint did not allege that the contracts at issue were to be performed in

this district. And the cases X identifies where venue was found to be proper are all far afield.[3] Not

---

[3] *See Flu Shots of Tex., Ltd. v. Lopez*, No. 3:13- CV-144-O, 2013 WL 2449175, at *3 (N.D. Tex. June 5, 2013) (defendants came into district twice and ordered supplies relevant to the claims from the Dallas area); *Dagel v. Resident News, LLC*, No. 3:11- CV-00663-L, 2011 WL 3518281, at *5 (N.D. Tex. Aug. 10, 2011) (defendants deliberately sought out Texas company "by phone and e-mail and negotiated for an ongoing, interactive, contractual relationship" they knew would be performed in Texas); *Dunbar v. Evine Live, Inc.*, No. 17CV1527, 2018 WL 382027, at *2 (W.D. Pa. Jan. 11, 2018) (defendant ski resorts sought to attract visitors from neighboring Western District of Pennsylvania, where plaintiff suffered injury); *Acumen Enters., Inc. v. Morgan*, No. 3:11-CV-619-L, 2011 WL 5822252, at *5 (N.D. Tex. Nov. 15, 2011) (in trademark infringement case, defendant registered a website domain likely to be confused with a Texas business and emailed customers in Texas, injuring the Texas business in Texas); *Christopher v. Perry Fam. Ltd. P'ship v. Whatever, L.L.C.*, No. CV H-08-1387, 2008 WL 11389239, at *1 (S.D. Tex. Aug. 11,

one resembles the facts here, where neither X nor Defendants reside in Texas, the challenged

statements were not made in Texas, and X has not identified any affected contracts that were to be

performed in Texas.

At bottom, X does not allege that any *Texas-based* company paused its advertising on X,

that any company paused advertising on X *in Texas*, or that any company paused advertising on X

because of reactions to the challenged statements *by Texas readers*. Because a substantial part of

the events giving rise to X's claims did not occur *in this state*, let alone in this district, venue here

is inappropriate.

## III.     X's complaint fails to state any viable claim.

X's complaint should be dismissed for the independent reason that it fails to state basic

elements of its alleged claims.

**No interference with contract.** An interference with contract claim requires a plaintiff to,

among other things, allege an "existing contract subject to interference." *Nix v. Major League

Baseball*, 62 F.4th 920, 934 (5th Cir. 2023) (quoting *Prudential Ins. Co. of Am. v. Fin. Rev. Servs.,

Inc.*, 29 S.W.3d 74, 77 (Tex. 2000)); MTD at 14. Instead of pointing to specific instances in which

its complaint alleges the existence of a contract (it does not), X takes the remarkable position that

Media Matters satisfied that burden for X by "reporting" on X's contracts. Resp. at 14. What Media

Matters reported on does not relieve X of its independent burden to allege a factual basis for a

valid contract with which Media Matters allegedly interfered. *See* Fed. R. Civ. P. 11(b). X also

may not rely on the fact that it allegedly did business with advertisers in the past or on an at-will

basis because that does not identify with specificity any contract with which Media Matters

---

2008) (trademark infringement dispute between steakhouse restaurants where a substantial share
of the customer confusion occurred in Southern District of Texas).

interfered and thus "fails to state a claim for tortious interference with existing contractual relations." *Nix*, 62 F.4th at 935; *see El Paso Healthcare Sys., Ltd. v. Murphy*, 518 S.W.3d 412, 421–22 (Tex. 2017) (holding that nurse could not prevail on claim because "an obligation to provide employment was not a term of Murphy's existing contract"); MTD at 14–16.

X's failure to allege that any contractual party "breach[ed] its obligations under [the] contract" also dooms this claim. *Nix*, 62 F.4th at 934 (quotation omitted). X's insistence that this tort does not require a breach runs headfirst into the Fifth Circuit's finding that the Texas Supreme Court's clarification of the law "leaves little doubt that a breach *must* result from the defendant's conduct in order for the plaintiff to prevail" on an interference claim. *WickFire, L.L.C. v. Woodruff*, 989 F.3d 343, 354 (5th Cir. 2021) (emphasis added) (citing *Murphy*, 518 S.W.3d at 421–22). Myriad decisions have thus dismissed interference claims that fail to allege breach. *See* MTD at 16–17 (collecting cases).[4]

Because X plainly lacks the ability to allege breach of a specific contract, it attempts to rework the standard by relying on an unpublished Fifth Circuit opinion (*United Biologics, L.L.C. v. Allergy & Asthma Network/Mothers of Asthmatics, Inc.*, 819 F. App'x 204, 210 (5th Cir. 2020)), that is plainly out of step with *Nix* and *Wickfire*—both of which squarely rejected claims for lack of breach. *Nix*, 62 F.4th at 935 (dismissing claim that "does not allege any breach"); *Wickfire*, 989 F.3d at 354 (similar). X's interference claim is "infirm as a matter of law" and should be dismissed. *Wickfire*, 989 F.3d at 354; MTD at 14–19.

**No business disparagement.** X's only defense of its business disparagement claim is that it raises fact issues that should not be resolved at the motion-to-dismiss stage. But the claim fails

---

[4] Thus, X's pleading deficiencies have nothing to do with differing federal and state pleading requirements, as X half-heartedly suggests. Resp. at 14. Texas law controls—and requires breach.

even after assuming the facts as alleged. A plaintiff must *plausibly* state its claim. *Moser v. Omnitrition Int'l Inc.*, No. 3:16-CV-2558-L, 2018 WL 1368789, at \*2 (N.D. Tex. Mar. 16, 2018). X runs afoul of that pleading standard. It conclusorily asserts that Defendants knew their statements were false (but offers no factual support), and that it was Defendants' statements that made advertisers back away from X, without addressing the obvious alternative explanation that other long-publicized factors (like the erratic behavior of its owner) caused that result. *See* MTD at 19–24. And, critically, there is no factual dispute that the X platform can—*and did*—place advertisements next to extremist content, barring X's disparagement claim for failure to allege "falsity." *Broughton v. Livingston Indep. Sch. Dist.*, No. 9:08-cv-175, 2010 WL 3056862, \*11 (E.D. Tex. July 29, 2010).

**No interference with prospective economic advantage.** Conceding that its originally alleged cause of action does not exist, X recasts this claim as one for interference with prospective business relations. Resp. at 25. But such claims require plaintiffs to allege an *independently* tortious act—and the other torts that X alleges fail for the reasons stated above. *See Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001). This claim should also be dismissed. *Cf. Phoneternet, L.L.C. v. LexisNexis Risk Sols., Inc.*, 816 F. App'x 909, 914 (5th Cir. 2020) (affirming dismissal of similar claim).

## CONCLUSION

The Court should dismiss X's complaint with prejudice.

Respectfully submitted,                          Dated: April 12, 2024.

*/s/  Andrew LeGrand*

10

**GIBSON, DUNN & CRUTCHER LLP**
Andrew LeGrand (TX 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.** (CA 132099)
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed* (NY 4382040)
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

**ELIAS LAW GROUP LLP**
Abha Khanna* (WA 42612)
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Jacob D. Shelly* (DC 90010127)
Daniela Lorenzo* (NY 5780457)
250 Massachusetts Avenue NW, Suite 400
Washington, DC 20001
T: (202) 968-4490
F: (202) 986-4498
jshelly@elias.law
dlorenzo@elias.law

\* Admitted *pro hac vice*
\*\* *Pro hac vice* application forthcoming

*Counsel for Defendants Media Matters for America, Angelo Carusone, and Eric Hananoki*

11

## CERTIFICATE OF SERVICE

On April 12, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Andrew LeGrand*
Andrew LeGrand
