UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| X CORP.,<br>                Plaintiff,<br><br>     v.<br><br>MEDIA MATTERS FOR AMERICA, et al.,<br>                Defendants. | Civil Action No. 4:23-cv-01175-O |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY DISCOVERY PENDING RULING ON DEFENDANTS' MOTION TO DISMISS**

**INTRODUCTION**

In X's rush to rifle through its adversaries' donor lists, strategic communications, and other privileged affairs, it fails to offer any meaningful argument for why a stay of discovery pending resolution of Defendants' motion to dismiss is not justified under the applicable stay factors. *Von Drake v. Nat'l Broad. Co.*, No. 3-04-CV-0652R, 2004 WL 1144142, at *1 (N.D. Tex. May 20, 2004). The Court should reject X's lackluster opposition. Even a "cursory review" of Defendants' motion to dismiss reveals that Defendants have advanced, at the very least, "substantial arguments for dismissal of many, if not all, of plaintiff's claims." *Id.* at *2. X's sweeping and harassing discovery requests—which have only escalated while Defendants' stay motion has been pending—have nothing to do with the claims in this case, which are not plausible (and thus will not lead to discovery) in any jurisdiction. To conserve the resources of the parties and this Court, Defendants respectfully request a stay of discovery until the pending motion to dismiss is resolved.

**ADDITIONAL BACKGROUND**

After X served its first set of 29 requests for production on Defendants Media Matters and Eric Hananoki on February 5, 2024, *see* App. 7–19, Defendants served their responses and objections on March 11, including a statement that Defendants would not produce any documents in response to Plaintiff's discovery requests until both an ESI agreement and protective order were in place—both of which counsel for X had agreed to draft but had yet to provide. *See* App. 33–65. X ignored the March 11 objections for nearly three weeks. In the meantime, on March 29, X served an additional set of 18 requests for production on all Defendants, *see* App. 82–94, along with 29 requests for production on Defendant Angelo Carusone, *see* App. 20–32. X's counsel eventually scheduled a meet-and-confer on Defendants' discovery objections for April 3, but then failed to appear at the scheduled time. *See* App. 66–81. The conferral was finally held on April 9, where

counsel for all parties expressed a shared interest in this Court's expeditious resolution of the motion to stay discovery.[1]

## ARGUMENT

I. **Defendants' motion to dismiss identifies multiple fatal defects in X's amended complaint.**

Defendants' motion to dismiss identifies three independent bases to dismiss X's amended complaint: personal jurisdiction is lacking in this state; venue is lacking in this district; and none of X's three claims plausibly alleges a violation of any law. *See* Defs.' Br. in Supp. of Mot. to Dismiss Pls.' Am. Compl., ECF No. 41 ["MTD"]. For these purposes, this Court need not confirm that the motion to dismiss is meritorious on every argument—or even on a single argument, any one of which would be dispositive—before granting the stay. Because the purpose of the stay is to pause discovery *while* the Court undertakes its careful review of the motion to dismiss, a stay is warranted where a mere "cursory review" of the filings suggests "it is certainly possible that Plaintiff['s] claims may be dismissed." *MC Asset Recovery, LLC v. Castex Energy, Inc.*, No. 4:07-CV-076-Y, 2007 WL 9718311, at *3 (N.D. Tex. Aug. 6, 2007).

Although X acknowledges that the stay inquiry examines whether Defendants' arguments for dismissal are "substantial" enough to justify a stay, Pls.' Resp. to Defs.' Renewed Mot. to Stay Discovery at 3, ECF No. 46 ["Resp."], it fails to engage *at all* with the actual merits of Defendants' motion to dismiss. This is hardly surprising: X's amended complaint is foreclosed by multiple, binding Fifth Circuit cases demonstrating that this Court lacks personal jurisdiction over Defendants, MTD at 4–11, fails to show that *any* portion—let alone a substantial portion—of the underlying events took place in and thus trigger venue in this district, *id.* at 11–13, and fails to

---

[1] X circulated a draft protective order on Monday, April 8, 2024. As of this filing, X still has not circulated its proposed ESI agreement.

2

plead the most basic elements of each of its legal claims, *id.* at 13–25; *see also* Defs.' Reply Br. in Supp. of Mot. to Dismiss at 8–10, ECF No. 51 ["MTD Reply"]. The deficiencies in X's amended complaint are both extensive and readily apparent. X's failure to so much as address these arguments in its response brief is telling and counsels in favor of a stay. *See Sneed v. Abbot*, No. CV 21-279-JWD-RLB, 2021 WL 2877239, at *4 (M.D. La. June 29, 2021) (staying discovery where motion to dismiss "raises strong arguments . . . that appear to be a close call").

Rather than confronting the actual circumstances here, X attempts to limit the circumstances in which a stay of discovery is warranted to only those presented in the cases Defendants cited in support of a stay. *See* Defs.' Renewed Mot. to Stay Discovery at 5–6, ECF No. 43 ["Mot."]. But X fails to meaningfully distinguish any of those cases. For instance, X makes much of the fact that the court in *Johnson v. Ashmore*, No. 3:15-cv-2475-K, 2016 WL 8453918 (N.D. Tex. Jan. 22, 2016), suffered a lack of subject-matter jurisdiction rather than personal jurisdiction. *See* Resp. at 4. But the Supreme Court has expressly rejected the notion that "subject-matter jurisdiction is ever and always the more 'fundamental'" issue because "[p]ersonal jurisdiction, too, is 'an essential element'" of a district court's jurisdiction, "without which the court is 'powerless to proceed to an adjudication.'" *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (quoting *Emp'rs Reinsurance Corp. v. Bryant*, 299 U.S. 374, 382 (1937)); *see also Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 232 (5th Cir. 2012) (emphasizing that both "subject matter jurisdiction and personal jurisdiction claims are 'threshold grounds for denying audience to a case on the merits'" (citing *Ruhrgas AG*, 526 U.S. at 584–85)).

X insists that the distinction between subject-matter jurisdiction and personal jurisdiction matters because, in its view, "Defendants themselves agree that *some* federal court will have authority over this dispute." Resp. at 4. But Defendants decidedly *disagree* that any court could

3

hear this case because no matter where the case is litigated, Defendants have not pleaded (and cannot plead) viable claims. *See* MTD at 13–25; *see also* MTD Reply at 8-10. That is why the case X identifies in support—*Venable's Construction, Inc. v. ONEOK Arbuckle II Pipeline, L.L.C.*, No. 2:20-cv-18-Z-BR, 2020 WL 11891326 (N.D. Tex. April 30, 2020)—does not help X. The defendant in that case sought a stay of discovery pending resolution of a *motion to transfer*—not a motion to dismiss—so the only question was in which jurisdiction the discovery would take place. *Id.* at *3. The court emphasized this very distinction in the same paragraph that X cites. *See id.* ("ONEOK's pending Motion to Transfer is distinguishable from some of the cases in which motions to stay discovery have been granted due to pending motions—*such as a motion to dismiss*—which 'might preclude the need for the discovery altogether.'" (emphasis added) (quoting *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 435 (5th Cir. 1990)).

Even if Defendants could be subject to personal jurisdiction and venue elsewhere, that does not mean that discovery would necessarily proceed in other fora. Not only would X have to plausibly allege the elements of different state-law claims, many jurisdictions apply anti-SLAPP statutes to protect defendants from discovery burdens in meritless lawsuits like this one. *See, e.g.*, *X Corp. v. Ctr. for Countering Digital Hate, Inc.*, No. 23-CV-03836-CRB, 2024 WL 1246318, at *9, *23, *27 (N.D. Cal. Mar. 25, 2024) ["*CCDH I*"] (applying California's anti-SLAPP statute to strike claims and preclude discovery).

X also makes the distinction without a difference that *Bass v. Stryker Corp.*, No. 4:09-cv-632-Y, 2010 WL 11619575 (N.D. Tex. May 3, 2010), was a preemption case, *see* Resp. at 5. X cannot credibly contend that temporary stays of discovery are limited to cases involving preemption defenses, *see* Mot. at 5–6 (collecting cases from other contexts), or to cases involving complicated issues that X finds "tedious," Resp. at 5. Indeed, the fact that the problems with X's

4

amended complaint "could be understood by any first-year law student," *id.*, weighs in *favor* of a stay, both because the deficiencies are so glaring and the timeline needed to adjudicate them is relatively brief. *See Sneed*, 2021 WL 2877239 at *4 (noting "good cause" for a stay where "the stay is for a short period of time" (cleaned up)).

Finally, X's attempt to distinguish *Von Drake* as a case about a "vexatious litigant," *id.* at 4, is, in fact, no distinction at all. After all, this is not the first time X has brought claims against a perceived adversary in the wrong forum and without any legal basis. Just last month, another federal court dismissed a case closely resembling this one, where X sued multiple nonprofit organizations for allegedly creating "faulty narratives regarding X Corp. and the X service, with the express goal of seeking to harm X Corp.'s business by driving advertisers away from the platform." *CCDH I*, 2024 WL 1246318, at *2 (granting motion to dismiss for failure to state a claim); *X Corp. v. Ctr. for Countering Digital Hate Ltd.*, No. 23-CV-03836-CRB, 2024 WL 1245993 at *1 (N.D. Cal. Mar. 25, 2024) ["*CCDH II*"] (separately addressing and granting motion to dismiss for lack of personal jurisdiction and failure to state a claim).[2] The holdings in that case center on issues strikingly similar to the ones Defendants raise here. The court found that it lacked personal jurisdiction (where X failed to allege that defendant organization was meaningfully connected to the forum) and struck X's breach of contract claims (where X failed to plead the necessary elements) and tort claims (where X failed to allege causation and sought impermissible damages). *See CCDH II*, 2024 WL 1245993, at *7; *CCDH I*, 2024 WL 1246318, at *12, *19.[3]

---

[2] Notably, the court in *CCDH* refused to allow X the opportunity to amend its complaint where X's motivation in amending was "so clear"—to force defendant organization "to spend more time and money defending itself before it can hope to get out from under this potentially ruinous litigation." *CCDH I*, 2024 WL 1246318, at *23.

[3] A different district court also recently granted the defendants' motion to transfer venue in a case filed by another company owned by X's owner, noting that "it would not be accurate to say that

5

In short, X's feeble attempts to distinguish the merits of other cases cannot mask its failure to address the merits of Defendants' motion to dismiss in *this* case, which plainly reveals that Defendants have "substantial arguments" for dismissal of X's complaint. *Von Drake*, 2004 WL 1144142, at *2.

## II.   X's discovery requests are broad, burdensome, and harassing.

"Discovery is not justified when cost and inconvenience will be its sole result." *Landry*, 901 F.2d at 436 (affirming stay of discovery). That result is inevitable here, where X has requested a virtually unbounded number of documents, and each request is overly broad, vague, unduly burdensome, harassing, or seeks privileged materials (or, in many cases, suffers all of these problems). *See* App. 33–65. X's attempts to portray its discovery requests as narrow and reasonable are belied by the plain language of the requests.[4]

On their face, several of X's requests seek broad categories of information that go far beyond the claims and defenses at issue in this case.[5] For instance, X's document requests extend

---

this claim derived directly from any communications to Texas." *See* Order Granting Defs.' Mot. to Transfer Venue, *Space Exploration Tech. Corp. v. NLRB*, No. 1:24-cv-00001, 2024 WL 974568, at *3 (S.D. Tex. Feb. 15, 2024) ("The events touching this district are incidental to the principal events occurring elsewhere and constitute a relatively small portion of the total body of events.").

[4] X complains that Defendants did not resolve this motion to stay through a meet-and-confer. Resp. at 7. But that argument makes no sense. How a party should resolve discovery disputes as they arise *during discovery* does not bear on whether burdensome requests justify a stay of discovery pending resolution of a motion to dismiss. *See Von Drake*, 2004 WL 1144142, at *1. As in its opening brief, Defendants highlight here an illustrative—but not exhaustive—sample of X's inappropriate requests because the very purpose of Defendants' stay motion is to avoid the burden and expense of conferrals and extensive motions practice on every single discovery request that X has issued.

[5] Under the 2015 amendment to Rule 26, the scope of discovery extends only to "nonprivileged matter that is relevant to any party's *claim or defense* and proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1) (emphasis added), and not broadly to "any matter relevant to the *subject matter* involved in the action," Fed. R. Civ. P. 26(b) committee note to 2015 amendment (emphasis added).

6

far beyond documents related to Mr. Hananoki's article, advertisement placement on X, or even reporting related to the platform's general content moderation efforts. *See, e.g.*, App. 7–19, Req. No. 5 (requesting, without limitation, "[a]ll documents and communications discussing or mentioning X, the Platform, Elon Musk, or Linda Yaccarino"). Similarly, the requests for documents that mention advertising on X are not limited to the claims here, which relate to advertisers' decisions whether to advertise on X and X's placement of advertising adjacent to hateful content on the platform. *See, e.g.*, App. 82–94, Req. No. 12 (requesting, without limitation and regardless of subject matter, "[a]ll materials and communications with or regarding any X account or X advertiser" appearing in the November 16 or 17 articles). Scouring every document in Defendants' possession that could come within the scope of these expansive requests would be enormously burdensome. And X does not even limit its requests to documents within Defendants' possession, explicitly requesting materials that are "in the possession, custody, or control of third parties." App. 7–19, Req. No. 4; *cf. id.,* Req. No. 27 (seeking documents and communications "reflecting Media Matters' *donors*' involvement in or knowledge of X" (emphasis added)).

Likewise, while X describes its requests as relevant to "Media Matters' finances, financial condition, and insurance coverage," Resp. at 6, its requests go far beyond Media Matters's IRS Form 990 records (which are available publicly) and insurance policies (which Defendants provided in their initial disclosures). The requests instead include a full suite of internal financial documents dating back to Media Matters's founding in 2004. *See* App. 7–19, Req. No. 13. X even demands that Defendants provide the *names* of every person who has donated to Defendants over the past three years. *See id.*, Req. No. 17. This material is plainly privileged. *See, e.g.*, *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2385 (2021); *Miller v. Transam. Press, Inc.*, 682 F.2d 932, 932 (5th Cir. 1980) (per curiam). Privilege also bars X's sweeping requests into Defendants'

7

"communications with like-minded persons and organizations," Resp. at 6; *see, e.g.*, *Whole Women's Health v. Smith*, 896 F.3d 362, 372 (5th Cir. 2018), and the bulk of X's requests for materials, including sources, that are integral to Defendants' journalism, *see, e.g.*, *La Union Del Pueblo Entero v. Abbott*, No. SA-21-CV-00844-XR, 2022 WL 17574079, at *6 (W.D. Tex. Dec. 9, 2022) (citing *NAACP v. Alabama*, 357 U.S. 449, 460 (1958)); *In re Selcraig*, 705 F.2d 789, 792 (5th Cir. 1983). Identifying these documents and then litigating the multiple layers of privilege would be extremely burdensome and time-consuming not only for Defendants, but for X and the Court as well.

X's actions since Defendants filed their motion to stay confirm that X's aggressive and inappropriate discovery tactics will only escalate while the Court resolves the motion to dismiss. Despite Defendants' numerous objections to Plaintiff's first set of responses, App. 33–65 (including objections on the bases of relevance and privilege), and the issues raised in Defendants' motion to stay, *see generally* Mot., X has doubled down on its overreaching and invasive requests in another broad and harassing set of requests for production. *Von Drake*, 2004 WL 1144142, at *2 (granting motion to stay where "many" discovery requests were "overly broad and harassing"). X's latest set of requests seeks irrelevant, burdensome, and privileged categories of documents on entirely new topics, such as records relating to employment actions by Media Matters and legal actions against Media Matters (including never-filed lawsuits). *See, e.g.*, App. 82–94, Req. Nos. 17, 18. This set also includes requests on topics over which Defendants have already asserted repeated objections. *See, e.g.*, *id.,* Req. No. 6 (seeking donor communications, including communications not relevant to claims or defenses in this case); *id.,* Req. No. 14 (requesting communications with reporter sources). X has no right to any of this discovery—let alone before this Court resolves Defendants' motion to dismiss.

8

**III.     X will not be prejudiced by a stay of discovery.**

X fails to advance any reason it would be prejudiced by a temporary stay of discovery. Resp. at 10. This is consistent with its own slow-walking of the discovery process. *See supra,* Additional Background, at 1-2.

In any event, X will not be prejudiced because Defendants' motion to dismiss involves straightforward legal issues that can be resolved expeditiously, *see* Resp. at 5 (seeming to agree), minimizing the need for a disruptively long stay, *but see* Resp. at 10 (criticizing the "magnitude" of delay that would result from Defendants' stay request without explaining the magnitude). And X's assertion that a stay would pile up "attorney fees, costs, and headaches" is illogical. If parties are able to avoid—for even a short time—undertaking a large-scale document collection and review process before the case is dismissed, it logically follows that *all* parties' resources will be saved.

Indeed, X's intrusive requests have already imposed significant costs on Defendants' time and resources, and as X prepares for the extensive motions practice it has made clear it intends to seek to compel the production of privileged documents, *see* Resp. at 7, these costs will soon be imposed on the Court's own time and resources. There is no need for anyone to shoulder these burdens unless and until the Court is satisfied that X's amended complaint can survive Defendants' motion to dismiss.

## CONCLUSION

Defendants respectfully request that the Court stay discovery until resolution of their pending motion to dismiss.

Dated: April 15, 2024.

Respectfully submitted,
*/s/ Andrew LeGrand*

9

| | |
|---|---|
| GIBSON, DUNN & CRUTCHER LLP<br>Andrew LeGrand (TX 24070132)<br>2001 Ross Avenue, Suite 2100<br>Dallas, TX 75201<br>T: (214) 698-3100<br>F: (214) 571-2960<br>alegrand@gibsondunn.com<br><br>Theodore J. Boutrous, Jr.** (CA 132099)<br>333 South Grand Avenue<br>Los Angeles, CA 90071<br>T: (213) 229-7000<br>F: (213) 229-7520<br>tboutrous@gibsondunn.com<br><br>Amer S. Ahmed* (NY 4382040)<br>200 Park Avenue<br>New York, New York 10166<br>T: (212) 351-4000<br>F: (212) 351-4035<br>aahmed@gibsondunn.com | ELIAS LAW GROUP LLP<br>Abha Khanna* (WA 42612)<br>1700 Seventh Avenue, Suite 2100<br>Seattle, WA 98101<br>T: (206) 656-0177<br>F: (206) 656-0180<br>akhanna@elias.law<br><br>Jacob D. Shelly* (DC 90010127)<br>Elena Rodriguez Armenta* (DC 90018798)<br>250 Massachusetts Avenue NW, Suite 400<br>Washington, DC 20001<br>T: (202) 968-4490<br>F: (202) 986-4498<br>jshelly@elias.law<br>erodriguezarmenta@elias.law<br><br>*Admitted *pro hac vice*<br>** *Pro hac vice* application forthcoming |

*Counsel for Defendants Media Matters for America, Angelo Carusone, and Eric Hananoki*

## CERTIFICATE OF SERVICE

On April 15, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Andrew LeGrand*
Andrew LeGrand