## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| X CORP., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-01175-O |
| | § | |
| MEDIA MATTERS FOR AMERICA, et al., | § | |
| | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court are Defendants' Renewed Motion to Stay Discovery (ECF No. 43), filed March 11, 2024; Plaintiff's Response in Opposition (ECF No. 46), filed April 1, 2024; and Defendants' Reply in Support (ECF No. 52), filed April 15, 2024. Having considered the briefing and applicable law, the Court **DENIES** Defendants' Motion.

### I.    LEGAL STANDARD

Federal district courts possess the inherent power to control proceedings in their courts. *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). This includes broad discretion to regulate discovery. *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987); *Brown v. Thompson*, 430 F.2d 1214, 1216 (5th Cir. 1970). The power to stay any part of a case—or even the entire proceeding— is incidental to a court's power to dispose of cases to promote fair and efficient adjudication. *United States v. Breyer*, 41 F.3d 884, 893 (3d Cir. 1994). Despite this discretion, a stay should not be automatically granted. *Gillani Consulting, Inc. v. Ferguson Entrs., Inc.*, No. 3:07-cv-1488-O, 2008 WL 11425717, at *1 (N.D. Tex. Nov. 10, 2008) (O'Connor, J.); *see also Valenzuela v. Crest-Mex Corp.*, No. 16-1129, 2017 WL 2778104, at *5 (N.D. Tex. June 26, 2017) ("[A] stay is not automatically granted whenever a motion to dismiss is pending." (cleaned up)). That is because a

stay of discovery is an "extraordinary step." *Valenzuela*, 2017 WL 2778104, at *5. If the Federal Rules of Civil Procedure contemplated that pending motions to dismiss would stay discovery, they would contain a provision to that effect. Because no such provision exists, courts should only exercise "discretion to stay discovery 'for good cause shown.'" *Von Drake v. Nat'l Broad. Co*., No. 3-04-CV-0652R, 2004 WL 1144142, at *1 (N.D. Tex. May 20, 2004) (quoting FED. R. CIV. P. 26(c)).

Good cause exists when there is a "clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay . . . will work damage to someone else." *Landis*, 299 U.S. at 255. More concretely, courts actualize this sentiment by relying on three factors when determining whether to grant a discretionary stay: "(1) the breadth of discovery sought; (2) the burden of responding to such discovery; and (3) the strength of the dispositive motion filed by the party seeking a stay." *Von Drake*, 2004 WL 1144142, at *1.

The party seeking the stay bears the burden of showing good cause. *Griffin v. Am. Zurich Ins. Co.*, No. 3:14-cv-2479-O, 2015 WL 11019132, at *3 (N.D. Tex. Mar. 18, 2015) (Ramirez, M.J.). To do so, the requesting party must make a "particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Sneed v. Abbot*, No. 21-279-JWD-RLB, 2021 WL 2877239, at *5 (M.D. La. June 29, 2021). Upon making a sufficient showing of good cause, a district court may limit discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). Indeed, "[d]iscovery is not justified when cost and inconvenience will be its sole result." *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 436 (5th Cir. 1990). Courts in the Fifth Circuit routinely decline to stay discovery pending the resolution of another motion because this alone

falls short of demonstrating good cause.[1] This Court is no exception.[2] Only upon a *sufficient* showing of good cause will this Court deviate from its usual practice by exercising discretion to stay discovery.[3]

## II.  ANALYSIS

### A.  Strength of the Dispositive Motion

The first factor does not warrant a stay of discovery. Defendants contend that the strength of their motion to dismiss is a sufficient reason for a stay.[4] However, a stay of discovery pending the outcome of a motion to dismiss is the exception rather than the rule. Courts typically apply this factor by conducting a "cursory review" of the dispositive motion to assess whether the arguments are so "substantial" to justify a stay. *Von Drake*, 2004 WL 1144142, at *2. This "standard is a

---

[1] *See, e.g.*, *Valenzuela*, 2017 WL 2778104, at *5 ("[A]lthough the motion to compel arbitration might, if granted, result in the complete dismissal of this case as pending in this Court, that possibility alone does not, considering all the other factors discussed above, justify taking the extraordinary step of staying discovery."); *Ashford Inc. v. United Here.*, No. 3:15-cv-0262-M, 2015 WL 11121019, at *2 (N.D. Tex. May 12, 2015) (Lynn, J.) (denying discovery stay because "the Court has a general interest in efficiently managing its docket, an interest that is rarely served by staying discovery pending the outcome of an arguably meritorious dispositive motion"); *Glazer's Wholesale Drug Co. v. Klein Foods, Inc.*, No. 3:08-cv-00774-L, 2008 WL 2930482, at *1 (N.D. Tex. July 23, 2008) ("The court declines to stay discovery merely because defendant believes it will prevail on its motion to dismiss."); *United States. ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, 571 F. Supp. 2d 766, 767–68 (W.D. Tex. 2008) (declining to stay discovery for pending Rule 12(b)(6) motion).

[2] *See, e.g.*, April 4, 2024 Order, *Ferguson et al v. Lockheed Martin Corporation*, No. 4:24-cv-00025-O (N.D. Tex. Jan. 22, 2024) (ECF No. 126) (denying an opposed motion to stay discovery after determining that none of the factors warranted the stay); April 10, 2024 Order, *de Moor., et al. v. Anthem Blue Cross, et al.*, No. 4:23-cv-00968-O (N.D. Tex. Sept. 2, 2023) (ECF No. 59) (denying a joint motion to stay discovery after determining that none of the factors warranted the stay); *Griffin*, 2015 WL 11019132, at *3 (denying a request to stay discovery when the moving party "d[id] not present evidence regarding the breadth of any discovery that is being sought or the burden of responding to that discovery, or any abusive litigation tactics by the plaintiff"); *Gillani Consulting, Inc.*, 2008 WL 11425717, at *3 (accepting the magistrate judge's recommendation that the motion to stay should be denied).

[3] *See, e.g.*, April 10, 2024 Order, *Marble, et al. v. NS JPF Lender, LLC, et al.*, No. 7:24-cv-00034-O (N.D. Tex. Mar. 13, 2024) (ECF No. 92) (granting a stay of all deadlines, including discovery, in light of the writ of mandamus pending in the Tenth Circuit regarding the transfer of venue); April 10, 2024 Order, *NS JPF Lender, LLC v. James Marble, et al.*, No. 7:24-cv-00035-O (N.D. Tex. Mar. 13, 2024) (ECF No. 27) (same).

[4] Defs.' Br. in Support of Renewed Mot. to Stay Discovery 5–7, ECF No. 43.

demanding one" because a stay "is an 'intrusion into the ordinary processes of administration and judicial review.'" *Uniloc 2017 LLC v. Samsung Elecs. Am., Inc.*, No. 2:19-cv-00259, 2020 WL 1433960, at *3 (E.D. Tex. Mar. 24, 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 427 (2009)). That is why a stay should not be granted simply because a party believes it will prevail on its dispositive motion. *Griffin*, 2015 WL 11019132, at *2. In this case, none of these arguments regarding the merits of Defendants' motion to dismiss warrant a stay of discovery.

According to Defendants, a stay of discovery is warranted due to its motion to dismiss arguments: lack of personal jurisdiction, improper venue, and failure to state a claim.[5] Looking first at personal jurisdiction, Defendants argue that binding Fifth Circuit precedent—*Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314 (5th Cir. 2021)—forecloses the exercise of personal jurisdiction in this case.[6] Defendants believe that "[b]ecause neither Defendant is based in Texas and the articles at issue concerning California-based X were written in Maryland, published in Washington, DC, and made generally available on a passive website, jurisdiction in Texas 'is unavailable, full stop.'"[7] However, Plaintiffs argue that, unlike the plaintiff in *Johnson*, "X asserts far more than Media Matters' website's availability in Texas to establish personal jurisdiction."[8] Plaintiffs contend the facts in this case are distinguishable from *Johnson* because, among other things, "Defendants' outlets for their tortious content are not limited to the Media Matters Website."[9] For example, Plaintiffs allege that "MMFA distributed its newsletter to hundreds or thousands of readers in the Northern District, and Media Matters' president, Angelo Carusone, substantially repeated Media Matters' false claims on cable television at least three separate times,

---

[5] *Id.* at 5–8.
[6] *Id.*
[7] *Id*. at 6 (quoting *Johnson*, 21 F.4th at 318).
[8] Pl.'s Resp. to Defs.' Mot. to Dismiss 7, ECF No. 45.
[9] *Id.*

among many other repeated Texas-directed communications by the organization."[10] In light of such allegations, the Court cannot conclude after a cursory review that Defendants' personal jurisdictional argument is so substantially correct that they will likely prevail on their motion to dismiss.

Defendants also contend that a stay of discovery is warranted due to its motion to dismiss based on the argument that venue in this district is entirely improper for many of the same reasons outlined in their personal jurisdiction argument.[11] But for the same reasons a stay is not warranted based on the strength of the personal jurisdiction argument, a cursory review of Defendants' motion to dismiss likewise does not support a stay of discovery based on improper venue. Defendants argue that "the Northern District of Texas is not 'a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.'"[12] However, Plaintiffs allege that "'substantial' activities took place in [the Northern District]."[13] To be sure, this disagreement about whether or not a substantial part of the relevant activities occurred in the Northern District warrants careful review. Even so, "[c]ourts have provided the plaintiff with the benefit of the doubt when determining the governing facts," *Dupree v. Valero Energy Corp.*, No. Civ.A. 03-1834, 2003 WL 22466234, at *1 (E.D. La. Oct. 29, 2003), and "tend to liberally construe the 'substantial part of the events' option for proper venue," *Founders Ins. Co. v. Billy's Bar & Grill, LLC*, No. 3:18-CV 00367-M, 2019 WL 5425478, at *6 (N.D. Tex. Oct. 23, 2019) (Lynn, J.). This Court does the same at this stage, particularly given that a cursory review of the motion to dismiss does not obviously reveal that venue is improper.

---

[10] *Id.*

[11] Defs.' Br. in Support of Renewed Mot. to Stay Discovery 6, ECF No. 43.

[12] Defs.' Br. in Support of Mot. to Dismiss 12, ECF No. 40 (quoting 28 U.S.C. § 1391(b)(2)).

[13] Pl.'s Resp. in Opp. to Defs.' Mot. to Dismiss 10, ECF No. 45 (quoting *Feline Instincts, LLC v. Feline Future Cat Food Co.*, No. 4:09-cv-644-Y, 2010 WL 2942188, at *4 (N.D. Tex. Dec. 6, 2010)).

Defendants point to a venue case from the Southern District of Texas—not binding on this Court—involving a separate company also controlled by X's owner, Elon Musk.[14] That case was transferred to the Northern District of California based on the conclusion that the Texas forum was an improper venue because none of the parties resided in the district and the principal events giving rise to the claims occurred elsewhere. *Space Exploration Techs. Corp. v. NLRB*, No. 1:24-cv-00001, 2024 WL 974568 (S.D. Tex. Feb. 15, 2024). This venue decision was appealed to the Fifth Circuit on a petition for writ of mandamus, which was denied in a single-line, unpublished order. *See In re Space Expl. Techs., Corp.*, 96 F.4th 733, 733 (5th Cir. 2024) (per curiam) ("The petition for a writ of mandamus is DENIED."). Judge Elrod dissented, noting that "Section 1391(e)(1)(B) does not ask the district court to determine whether the current venue is the best venue. *Id.* at 735 (Elrod, J., dissenting) (citation omitted)). Instead, Judge Elrod emphasized that "[t]he plain text of the [venue] statute permits a plaintiff to bring an action against the United States in any district where 'a substantial part of the events or omissions giving rise to the claim occurred.'" *Id.* (quoting 28 U.S.C. § 1391(e)(1)(B)).

Eight judges either reiterated these sentiments in an opinion dissenting from the denial of rehearing en banc or determined the matter should be heard by the full circuit court. *In re Space Expl. Techs., Corp.*, No. 24-40103, 2024 WL 1685096 (per curiam) ("In the en banc poll, eight judges voted in favor of rehearing . . . and eight judges voted against rehearing."); *id.* at *1 (Jones, J., et al.) ("It is hard to improve on Judge Elrod's dissent from the single-line panel order transferring this case to the Central District of California."). Two things should be noted here. First, the Court highlights this context to illustrate the close call regarding venue in that case. Further, the Fifth Circuit's review of that case was in a mandamus posture, meaning that relief was

---

[14] Defs.' Br. in Support of Renewed Mot. to Stay Discovery 6, ECF No. 43.

available only when clear, indisputable, and appropriate, which is why mandamus is an extraordinary remedy. *See Def. Distributed v. Bruck*, 30 F.4th 414, 427 (5th Cir. 2022) ("A writ of mandamus is 'a drastic and extraordinary remedy reserved for really extraordinary cases.'"). All that can be discerned is that *Space Exploration* is not an extraordinary case where mandamus was warranted. Next, the venue analysis provided by Judge Jones and Judge Elrod is persuasive and not otherwise countered in the mandamus opinions, albeit in a case involving venue against the federal government. *In re Space Expl. Techs., Corp.*, 96 F.4th at 733; *In re Space Expl. Techs., Corp.*, 2024 WL 1685096, at *1.

What is clear is that even slight differences in factual circumstances may move the needle on the venue determination in a given case. A cursory review of the venue arguments here reveals the need to fully evaluate whether any meaningful differences exist. But at this juncture, a stay of discovery is not warranted on this basis.

Finally, Defendants argue that "none of the allegations in X's complaint states a cognizable claim upon which this Court could properly grant relief."[15] Specifically, Defendants argue that Plaintiff's complaint fails to state a claim for three reasons: (1) X has not stated a claim for interference with contract, (2) X has not stated a claim for business disparagement, and (3) X has failed to allege special damages.[16] Plaintiff counters that it has plausibly alleged that Defendants are liable for their unlawful conduct and present facts supporting tortious interference with existing contracts, business disparagement, and tortious interference with economic advantage.[17] Plaintiff also contends that it plausibly alleges special damages in the form of "direct pecuniary loss attributable to the false communications of the defendants" that includes "lost revenue" and "loss

---

[15] Defs.' Br. in Support of Renewed Mot. to Stay Discovery 6, ECF No. 43.
[16] Defs.' Br. in Support of Mot. to Dismiss 13–25, ECF No. 41.
[17] Pl.'s Resp. in Opp. to Defs.' Mot. to Dismiss 13–25, ECF No. 45.

of brand equity."[18] On the surface, it appears that Plaintiff sufficiently pleads facts supporting its claims. Given the need for the Court to closely evaluate the merits of these claims, a stay of discovery is not warranted based on the strength of the failure-to-state-a-claim argument.

Notably, Defendants assert its argument regarding the merits of Plaintiff's claims last.[19] And it appears, after the Court's initial review, to be the weakest ground for dismissal. In fact, Defendants' reply brief focuses almost entirely on their personal jurisdiction and venue argument, with only faint implicit references to the failure-to-state-a-claim argument.[20] If the Court's initial assessment proves correct about this argument, even a dismissal based on a threshold issue like personal jurisdiction or venue will not end this lawsuit. Instead, this lawsuit would merely proceed in another federal forum. That means that discovery would continue absent dismissal on the merits of Plaintiff's claims—a reality that undermines the need for a stay of discovery in this case.[21] *Cf. Graham v. Dyncorp Int'l, Inc.*, No. 3:13-cv-65, 2013 WL 11331000, at *1 (S.D. Tex. Aug. 8, 2013) (Costa, J.) ("Because this case will surely go forward, either in this district or in another, discovery should proceed."); *Venable's Constr., Inc. v. ONEOK Arbuckle II Pipeline, L.L.C.*, No. 2:20-cv-18-Z-BR, 2020 WL 11891326, at *3 (N.D. Tex. Apr. 30, 2020) (Reno, M.J.) (same).

Therefore, upon a "cursory review" of Defendants' motion to dismiss, the Court cannot locate any arguments that are so "substantial" to justify a stay. *Von Drake*, 2004 WL 1144142, at *2. Because the mere existence of a pending motion to dismiss—even if potentially meritorious—

---

[18] *Id.* at 23–24.,

[19] Defs.' Br. in Support of Mot. to Dismiss i, ECF No. 41.

[20] Defs.' Reply in Support of Mot. to Stay Discovery 2–6, ECF No. 52

[21] In their reply, Defendants contend that their personal jurisdiction and venue arguments "do[] not mean that discovery would necessarily proceed in other fora." Defs.' Reply in Support of Mot. to Stay Discovery 4, ECF No. 52. But the only support Defendants provide is that "many jurisdictions apply anti-SLAPP statutes to protect defendants from discovery burdens in meritless lawsuits like this one." *Id.* (citation omitted). Although true, Defendants make no showing to support this assertion. Given that the Court is unconvinced from its cursory review of the merits argument that a stay of discovery is warranted, the same is likely true for the applicability of any anti-SLAPP statutes.

is insufficient to warrant a stay, the Court declines to do so here. Accordingly, Defendants have failed to carry their burden of showing good cause. *Griffin*, 2015 WL 11019132, at *3.[22] Critically, these preliminary determinations regarding the strength of Defendant's motion to dismiss should not be taken to suggest one way or another which party will ultimately prevail, but to instead convey the need for further examination. It is this need for additional scrutiny that weighs against a stay.

### B. Breadth of Discovery Sought

The second factor also does not indicate that a stay is justified. Defendants argues that the "the sheer breadth of X's discovery requests weighs heavily in favor of a stay of discovery."[23] But Defendants do not explain how it will suffer hardship or inequity if a stay of discovery is denied. Instead, Defendants merely suggests that the scope is "extremely burdensome and costly" and "a far-reaching fishing expedition that imposes significant burden on Defendants in an attempt to obtain sensitive documents."[24] For example, Defendants state that "X's discovery requests purport to require Defendants to collect, review, and produce documents and communications not only from Mr. Hananoki . . . but also from each of Media Matters'[] board members, employees, agents, attorneys, and representatives."[25] No doubt, this is a time-intensive request. But Defendants do not explain *why* this request is overbroad. It may well be the case that this request is appropriate in the circumstances of this case. Without more, the Court cannot determine that this request is

---

[22] Although Defendants take issue in their reply brief with "X's feeble attempts to distinguish the merits of other cases" such that it "cannot mask its failure to address the merits of Defendants' motion to dismiss in *this* case," Defendants misunderstand who carries the burden. *Id.* at 6. As the party seeking the stay, Defendants—not Plaintiff—bear the burden of showing good cause. *Griffin*, 2015 WL 11019132, at *3. Even if Plaintiff elected not to respond to Defendants' request for a stay of discovery, it still remains true that Defendants have not sufficiently established good cause based on the relevant factors.

[23] Defs.' Br. in Support of Renewed Mot. to Stay Discovery 7, ECF No. 43.

[24] *Id.* at 8.

[25] *Id.*

overbroad. At most, Defendants' argument amounts to "the usual inconveniences and costs that are associated with discovery practice." *Ashford Inc.*, 2015 WL 11121019, at *2. This is not enough.

To the contrary, X claims that its discovery requests are appropriately tailored to identify information that is reasonably calculated to lead to admissible evidence.[26] There is nothing before the Court at this time to suggest X's representation is inaccurate. Although Defendants claim the scope of discovery is overly broad,[27] they have not once sought judicial intervention to limit or quash discovery since the filing of this case, only to stay discovery. Upon review of the docket there are no pending discovery disputes and the parties appear to have capably managed discovery on their own without Court intervention and discovery appears to be "self-executing." *Dondi Properties Corp. v. Com. Sav. & Loan Ass'n*, 121 F.R.D. 284, 289 (N.D. Tex. 1988) (emphasizing that "in general the rules dealing with discovery in federal cases are to be self-executing"). To the extent that discovery later exceeds acceptable bounds and necessitates the Court's involvement, Defendants are not without remedy: they can move the Court under Rule 26 to limit unduly burdensome or excessive discovery should such a future need arise. For now, the Court relies on the record before it and nowhere in the present briefing do Defendants explain how specific discovery requests are overbroad to the point of warranting a stay of all discovery. Absent a clear need to avoid resolving unnecessary disputes pending resolution of the motion to dismiss, the Court finds no reason to stay discovery.

### C.  Burden of Responding to Discovery

---

[26] Pl.'s Resp. in Opp. to Defs.' Renewed Mot. to Stay Discovery 6–7, ECF No. 46.
[27] Defs.' Re. in Support of Mot. to Stay Discovery 6–8, ECF No. 52.

Finally, the third factor also does not weigh in favor of a stay. Defendants claim that "[r]esponding to X's wide-ranging discovery requests will be extremely burdensome and costly."[28] However, Defendants' burden argument largely rests on its subjective belief that it will prevail on the motion to dismiss.[29] But the party resisting discovery bears the responsibility of actually establishing the undue burden. *Sneed*, 2021 WL 2877239, at *5. Conclusory and halfhearted assertions of undue burden—or reliance on the other factors—fall short of demonstrating good cause. *Cf. Ashford Inc.*, 2015 WL 11121019, at *2 (declining to enter a stay based on the burden argument that "the usual inconveniences and costs that are associated with discovery practice"); *see also Lord v. University of Miami,* No. 13-225000-CIV, 2021 WL 9859769, at *3 (S.D. Fla. Oct. 27, 2021) (denying defendant's motion to stay discovery because "Defendant has not made any particularized showing that it will be unfairly burdened without a stay").

Defendants have not made a sufficient showing that it will be unfairly burdened by responding to X's discovery requests in the normal course. Specifically, Defendants have failed to specify, describe, or quantify the potential expenses and time necessary to respond to X's discovery requests. Nor do Defendants detail "the burden of responding to that discovery, or any abusive litigation tactics by the plaintiff." *Griffin*, 2015 WL 11019132, at *3. That Defendants believe discovery will be "extremely burdensome and costly" is not enough.[30] As the party resisting discovery, Defendants bear the responsibility for specifically demonstrating undue burden. Without detailing the nature and extent of any such burden it will suffer, Defendants fall

---

[28] Defs.' Br. in Support of Renewed Mot. to Stay Discovery 8, ECF No. 43.
[29] *See id.* ("X's discovery is a far-reaching fishing expedition that imposes significant burden on Defendants in an attempt to obtain sensitive documents before the case is dismissed *as required by Fifth Circuit law*." (emphasis added). But *Johnson*—the Fifth Circuit case on which Defendants rely—may be distinguishable from the present facts. *See* Pl.'s Resp. to Defs.' Mot. to Dismiss 7, ECF No. 45 ("X asserts far more than Media Matters' website's availability in Texas to establish personal jurisdiction" and "Defendants' outlets for their tortious content are not limited to the Media Matters Website.").
[30] Defs.' Br. in Support of Renewed Mot. to Stay Discovery 8, ECF No. 43.

short of explaining how this factor weighs in its favor. Combined with the absence of a "clear case of hardship or inequity," that "there is even a fair possibility that the stay . . . will work damage to [Defendants]" only further marshals against a stay. *Landis*, 299 U.S. at 254. For these reasons, the Court determines that this factor does not support granting a stay of discovery.

### D.  Fort Worth's Docket

In addition to the above factors, the Court also has discretion to manage its docket "with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016). This discretion is "incidental to the power inherent in every court to control the disposition of the causes on its docket." *Landis*, 299 U.S. at 254–55. Because the Fort Worth Division features one of the busiest dockets in the nation based on filings per judge, the Court cannot efficiently and expeditiously resolve cases by handing out discretionary stays when good cause is lacking or borderline.

Fort Worth is the thirteenth largest city in the United States due to a population quickly approaching one million.[31] This makes Fort Worth larger than most major cities—including San Francisco, Seattle, Denver, Nashville, Las Vegas, Boston, Baltimore, and Kansas City, to name a few.[32] Due to its rapid growth, Fort Worth added more residents than any other big city from 2021 to 2022.[33] And, in the next couple of years, Fort Worth is on track to surpass Austin as the tenth largest city in the United States.[34] These statistics are striking without including all counties that

---

[31]    *City and Town Population Totals: 2020–2022*, U.S. CENSUS BUREAU, https://www.census.gov/data/tables/time-series/demo/popest/2020s-total-cities-and-towns.html.
[32] *Id.*
[33] *Id.*
[34] *See id.* (logging Fort Worth's population growth from 2020 to 2022 at approximately 23,000 compared to Austin's much slower growth of approximately 9,000 during the same period).

fall within the boundaries of the Fort Worth Division—Tarrant County alone boasts a population of just shy of 2.2 million.[35]

Despite its size, the Fort Worth Division has only two active judges.[36] By comparison, judicial divisions based around Texas cities with roughly 10% of Fort Worth's population—such as Tyler (approximately 108,000 people) and Beaumont (approximately 112,000 people)—also have the same number of active district judges.[37] Even including the surrounding counties, the Tyler Division (approximately 774,000 people)[38] and the Beaumont Division (approximately 548,000 people)[39] are a fraction the size of just Tarrant County (approximately 2.2 million people)

---

[35] *Tarrant County*, U.S. CENSUS BUREAU, https://www.census.gov/quickfacts/fact/table/tarrantcountytexas/PST045223.

[36] *Fort Worth Division*, U.S. DISTRICT COURT NORTHERN DISTRICT OF TEXAS, https://www.txnd.uscourts.gov/location/fort-worth (two active district judges)

[37] *See Tyler Division*, U.S. DISTRICT COURT EASTERN DISTRICT OF TEXAS, https://www.txed.uscourts.gov/?q=location/tyler (two active district judges); *Beaumont Division*, U.S. DISTRICT COURT EASTERN DISTRICT OF TEXAS, https://www.txed.uscourts.gov/?q=location/beaumont (two active district judges).

[38] *Anderson County*, U.S. CENSUS BUREAU, https://www.census.gov/quickfacts/fact/table/andersoncountytexas/PST045223; *Cherokee County*, U.S. CENSUS BUREAU, https://www.census.gov/quickfacts/fact/table/cherokeecountytexas/INC110222; *Gregg County*, U.S. CENSUS BUREAU, https://www.census.gov/quickfacts/fact/table/greggcountytexas/PST045223; *Henderson County*, U.S. CENSUS BUREAU, https://www.census.gov/quickfacts/fact/table/hendersoncountytexas/PST045223; *Panola County*, U.S. CENSUS BUREAU, https://www.census.gov/quickfacts/fact/table/panolacountytexas/PST045223; *Rains County*, U.S. CENSUS BUREAU, https://www.census.gov/quickfacts/fact/table/rainscountytexas/PST045222; *Rusk County*, U.S. CENSUS BUREAU, https://www.census.gov/quickfacts/ruskcountytexas; *Smith County*, U.S. CENSUS BUREAU, https://www.census.gov/quickfacts/fact/table/smithcountytexas/PST045223; *Van Zandt County*, U.S. CENSUS BUREAU, https://www.census.gov/quickfacts/fact/table/vanzandtcountytexas/PST045223; *Wood County*, U.S. CENSUS BUREAU, https://www.census.gov/quickfacts/fact/table/woodcountytexas/PST045223.

[39] *Hardin County*, U.S. CENSUS BUREAU, https://www.census.gov/quickfacts/fact/table/hardincountytexas/PST045222; *Jasper County*, U.S. CENSUS BUREAU, https://www.census.gov/quickfacts/fact/table/jaspercountytexas/PST045223; *Jefferson County*, U.S. CENSUS BUREAU, https://www.census.gov/quickfacts/fact/table/jeffersoncountytexas/PST045223; *Liberty County*, U.S. CENSUS BUREAU, https://www.census.gov/quickfacts/fact/table/libertycountytexas/PST045222; *Newton County*, U.S. CENSUS BUREAU, https://www.census.gov/quickfacts/fact/table/newtoncountytexas/PST045223; *Orange County*, U.S. CENSUS BUREAU, https://www.census.gov/quickfacts/fact/table/orangecountytexas/PST045223.

without including the other counties that make up the Fort Worth Division.[40] This makes Fort Worth one of the largest and busiest judicial divisions in the country with so few judgeships.[41] One need not exert much effort to quickly realize how this misalignment of population size and total judgeships leads to an especially busy docket.

A comparison of Fort Worth with neighboring Dallas further underscores this point. Notwithstanding the mere thirty miles between the two courthouses, Fort Worth's case numbers per judgeship far exceed those in Dallas. Adding to this difference, this Court also manages an *additional* division—Wichita Falls—which increases its overall case numbers. A review of recent internal statistical reports reveals that the criminal case numbers for this Court are, on average, three times higher than those for each active judge in Dallas.[42] This number rises even higher when this Court's criminal cases in Wichita Falls are also taken into account.[43] On the civil side, the numbers are similarly high, with this Court managing, on average, double the number of cases handled by its Dallas counterparts.[44]

---

[40] *Tarrant County*, U.S. CENSUS BUREAU, https://www.census.gov/quickfacts/fact/table/tarrantcountytexas/PST045223.

[41] By the Court's count, there are 44 divisions in the country with only two active judges. Of these divisions, ten fall within the top 15% busiest districts in the country based on number of civil filings reported by the Administrative Office of the United States Courts for 2022–2023. *Statistical Tables for the Federal Judiciary Table C*, U.S. COURTS (Dec. 31, 2023), https://www.uscourts.gov/statistics/table/c/statistical-tables-federal-judiciary/2023/12/31. The remaining 34 two-judge divisions, like Tyler and Beaumont, appear to serve comparatively smaller populations, receive fewer total filings, or both.

[42] The Court reviewed data from October 2022 to January 2024. *See October 2022–September 2023 Year to Date Statistical Report*, U.S. DISTRICT COURT NORTHERN DISTRICT OF TEXAS (criminal case numbers 3.12 times higher than the average active Dallas judge); *October 2023 Statistical Report*, U.S. DISTRICT COURT NORTHERN DISTRICT OF TEXAS (criminal case numbers 3.62 times higher than the average active Dallas judge); *November 2023 Statistical Report*, U.S. DISTRICT COURT NORTHERN DISTRICT OF TEXAS (criminal case numbers 2.8 times higher than the average active Dallas judge); *December 2023 Statistical Report*, U.S. DISTRICT COURT NORTHERN DISTRICT OF TEXAS (criminal case numbers 3.11 times higher than the average active Dallas judge); *January 2024 Statistical Report*, U.S. DISTRICT COURT NORTHERN DISTRICT OF TEXAS (criminal case numbers 4 times higher than the average active Dallas judge).

[43] *Id.*

[44] The Court reviewed data from October 2022 to January 2024. *See October 2022–September 2023 Year to Date Statistical Report*, U.S. DISTRICT COURT NORTHERN DISTRICT OF TEXAS (civil case numbers 2.14 times higher than the average active Dallas judge); *October 2023 Statistical Report*, U.S. DISTRICT COURT

The Court recites these statistics not to complain, but to instead simply *explain* why it can ill afford to accommodate unwarranted stays absent a true showing of good cause. It must keep each case moving at a prompt pace in order to effectively manage the docket. And if a decision to grant a stay of discovery is a close call, these docket considerations weigh in favor of cases proceeding to avoid the additional congestion that will assuredly follow delays. That is why this case—like every other case on the Court's docket—must continue to progress absent a clearly sufficient reason to the contrary.[45]

Continued progress also comports with the Court's obligation to ensure cases move at a diligent page toward final resolution. *See* FED. R. CIV. P. 1 (identifying the duty to "secure the just, *speedy*, and inexpensive determination of every action and proceeding" (emphasis added)). Any delays imposed by a stay would undermine speedy resolution. *See Fed. Nat'l Mortg. Ass'n v. K.O. Realty, Inc.*, No. 3:13-cv-2781-L, 2014 WL 12588308, at *1 (N.D. Tex. Feb. 4, 2014) (Lindsay, J.) ("[S]taying discovery pending resolution of a motion to dismiss is not an efficient means of managing litigation because it unnecessarily prolongs the ultimate resolution of the parties' claims.").

## III.    CONCLUSION

---

NORTHERN DISTRICT OF TEXAS (civil case numbers 2.35 times higher than the average active Dallas judge); *November 2023 Statistical Report*, U.S. DISTRICT COURT NORTHERN DISTRICT OF TEXAS (civil case numbers 2.15 times higher than the average active Dallas judge); *December 2023 Statistical Report*, U.S. DISTRICT COURT NORTHERN DISTRICT OF TEXAS (civil case numbers 1.44 times higher than the average active Dallas judge); *January 2024 Statistical Report*, U.S. DISTRICT COURT NORTHERN DISTRICT OF TEXAS (civil case numbers 2 times higher than the average active Dallas judge).

[45] Consistent with ensuring a steady progression of cases, it is also this Court's practice to requiring Rule 26 conferences and subsequent scheduling proposals even if a motion to dismiss is pending. And when parties in cases with a pending motion to dismiss seek a stay until after resolution of such a motion, this Court routinely declines to issue a stay absent sufficient good cause. *See, e.g.*, October 19, 2024 Order, *Wright v. Venus Concept USA, Inc.*, No. 4:23-cv-00986-O (N.D. Tex. Sept. 27, 2023) (ECF No. 6) (denying a joint request to stay the deadlines to meet and confer and submit a propose schedule until after a ruling on the motion to dismiss).

Because none of the factors support a stay of discovery pending resolution of the motion to dismiss, the Court finds that Defendants fail to establish good cause. In addition to the absence of sufficient good cause to warrant a stay, the Court must also exercise its discretion "with a view toward the efficient and expedient resolution of cases" if it is to effectively manage its docket. *Dietz*, 579 U.S. at 47. Therefore, given this general interest in efficiently managing its docket—an interest that is rarely served by staying discovery pending the outcome of an arguably meritorious dispositive motion—and the absence of good cause, the Court exercises its discretion to **DENY** Defendants' Renewed Motion to Stay Discovery (ECF No. 43).

**SO ORDERED** on this **26th day** of **April, 2024**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**