# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **X CORP**., a Nevada corporation, | § | |
| Plaintiff, | § § § | |
| vs. | § § | **Case No. 4:23-cv-01175-O** |
| **MEDIA MATTERS FOR AMERICA,** a Washington, D.C. non-profit corporation, **ERIC HANANOKI**, and **ANGELO CARUSONE**, | § § § § § | |
| Defendants. | § § § | |

---

## BRIEF IN SUPPORT OF MOTION TO COMPEL
## PRODUCTION OF DOCUMENTS

---

JUDD E. STONE II
CHRISTOPHER D. HILTON
ARI CUENIN
ALEXANDER M. DVORSCAK
**STONE | HILTON PLLC**
1115 W. Slaughter Lane
Austin, TX 78748
(737) 465-3897

JOHN C. SULLIVAN
**S|L LAW PLLC**
610 Uptown Boulevard
Suite 2000
Cedar Hill, TX 75104
(469) 523-1351

COUNSEL FOR PLAINTIFF

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

FACTUAL AND PROCEDURAL BACKGROUND.................................................... 1

ARGUMENT AND AUTHORITIES ............................................................................. 3

    I.  Defendants flatly refuse to produce discoverable information based on meritless and relevance, vagueness, and burden objections, which they have also failed to preserve. ....... 3

        A.  Each disputed request in this category seeks relevant, nonprivileged information that is proportional to the needs of the case................................................................. 3

        B.  X's requests are not vague. .................................................................................. 6

        C.  X's requests are not unduly burdensome or harassing.................................................. 7

        D.  Defendants' anemic boilerplate is insufficient to preserve their objections. .................... 8

    II.  Where Defendants have promised to produce documents "subject to" their objections, their objections are waived............................................................................................. 10

        A.  Defendants' privilege objections are unsupported boilerplate........................................ 12

        B.  In addition to procedural defects, Defendants' privileges fail on their merits............... 13

            1.  Defendants misunderstand the "reporter's privilege" that they assert. ........................ 13

            2.  Defendants' asserted associational privilege does not bar non-state actor discovery. . 15

CONCLUSION................................................................................................................ 17

CERTIFICATE OF SERVICE ........................................................................................ 19

## TABLE OF AUTHORITIES

**Cases**

*Alvarez v. Alid (Texas) LLC*,
  No. 3:13-cv-04122, 2014 WL 3624929 (N.D. Tex. Jul. 22 2014) ........................................... 4

*Americans for Prosperity Foundation v. Bonta*,
  594 U.S. 595 (2021) ............................................................................................................... 16

*City of Newport v. Fact Concerts, Inc.*,
  453 U.S. 247 (1981) ................................................................................................................. 4

*Crow v. ProPetro Services, Inc.*,
  No. 7:15-cv-00149, 2016 WL 9776368 (N.D. Tex. June 6, 2016) ......................................... 10

*Curtis v. Metro. Life Ins. Co.*,
  No. 3:15-cv-02328, 2016 WL 687164 (N.D. Tex. Feb. 19, 2016) ........................................... 6

*Gueye v. Mike Bloomberg 2020 Inc.*,
  2021 WL 3910341 (N.D. Tex. Mar. 12, 2021) ................................................................. 16, 17

*Hardy v. Gissendaner*,
  508 F.2d 1207 (5th Cir. 1975) ............................................................................................... 16

*Heller v. City of Dall.*,
  303 F.R.D. 466 (N.D. Tex. 2014) ........................................................................... 9, 10, 11, 12

*Henry v. First Nat. Bank of Clarksdale*,
  444 F.2d 1300 (5th Cir. 1971) ............................................................................................... 16

*Holland v. Centennial Homes, Inc.*,
  No. 3:92-CV-1533-T, 1993 WL 755590 (N.D. Tex. Dec. 21, 1993) ..................................... 14

*In re Santa Fe Int'l Corp.*,
  272 F.3d 705 (5th Cir. 2001) ................................................................................................. 13

*In re Selcraig*,
  705 F.2d 789 (5th Cir. 1983) ........................................................................................... 13, 14

*Janvey v. GMAG LLC*,
  No. 3:15-CV-00401, 2016 WL 11782222 (N.D. Tex. Oct. 7, 2016) ....................................... 8

*Karem v. Priest*,
  744 F. Supp. 136 (W.D. Tex. 1990) ....................................................................................... 13

*Keefe v. City of Minneapolis*,
  No. CIV. 09-2941 DSD/SER, 2012 WL 7766299 (D. Minn. May 25, 2012) ......................... 14

*Kitzmiller v. Dover Area Sch. Dist.*,
  379 F. Supp. 2d 680 (M.D. Pa. 2005) .................................................................................... 14

*Le v. Lockheed Martin Corp.*,
  No. 4:24-cv-00031, 2024 WL 832374 (N.D. Tex. Feb. 6, 2024) ............................................. 4

*Loc. Union No. 48 of Sheet Metal Workers Int'l Ass'n v. Hardy Corp.*,
  332 F.2d 682 (5th Cir. 1964) ................................................................................................. 17

*Lopez v. Don Herring Ltd.*,
    327 F.R.D. 567 (N.D. Tex. 2018) ........................................................................... 11

*Mahalingam v. Wells Fargo Bank, N.A.*,
    No. 3:22-CV-1076-L, 2023 WL 3575645 (N.D. Tex. May 19, 2023) ..................... 12

*Mize v. McGraw-Hill, Inc.*,
    82 F.R.D. 475 (S.D. Tex. 1979) ....................................................................... 16, 17

*Naoko Ohno v. Yuko Yasuma*,
    723 F.3d 984 (9th Cir. 2013) ................................................................................. 17

*NAACP v. Alabama ex rel. Patterson*,
    357 U.S. 449 (1958) .............................................................................................. 15

*Orchestrate HR, Inc. v. Trombetta*,
    178 F. Supp. 3d 476 (N.D. Tex. 2016) ................................................................. 10

*Perry v. Schwarzenegger*,
    591 F.3d 1147 (9th Cir. 2010) ............................................................................... 16

*RealPage, Inc. v. Enter. Risk Control, LLC*,
    No. 4:16-CV-00737, 2017 WL 1165688 (E.D. Tex. Mar. 29, 2017) ..................... 11

*Shelley v. Kraemer*,
    334 U.S. 1 (1948) ............................................................................................ 16, 17

*Sw. Insulation, Inc. v. Gen. Insulation Co.*,
    No. 4:15-cv-00601, 2016 WL 9244822 (N.D. Tex. April 25, 2016) ........................ 9

*United States v. Smith*,
    135 F.3d 963 (5th Cir. 1998) ................................................................................. 13

*Whole Woman's Health v. Smith*,
    896 F.3d 362 (5th Cir. 2018) ................................................................................. 15

**Rules**

Fed. R. Civ. P. 26(b)(5)(A)(ii) ...................................................................................... 13

Fed. R. Civ. P. 26(g) ...................................................................................................... 9

Fed. R. Civ. P. 26(g)(3) ................................................................................................ 12

**Other Authorities**

"Take Action," MEDIA MATTERS FOR AMERICA,
    https://www.mediamatters.org/take-action (last visited May 24, 2024) .................... 6

FINANCIAL SUPPORT, COLLINS DICTIONARY,
    https://www.collinsdictionary.com/ us/dictionary/english/financial-support
    (last accessed May 24, 2024) .................................................................................... 6

Early in discovery, Plaintiff X Corp. served targeted requests for production on Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone. When Defendants stonewalled, X began a lengthy meet-and-confer process to understand and, if possible, address their objections. Those efforts were almost completely fruitless. Notwithstanding a looming discovery deadline, Defendants still have not produced most of the responsive documents that they possess. That poses a problem requiring this Court's intervention. The withheld documents are essential to understanding the central allegation that X raises in its amended complaint: Defendants' tortious interference with X's advertisers through the publication of two deeply misleading articles about the company's social media platform. *See* Am. Compl. ¶¶ 30-38, 46-54.

In the absence of responsive documents, this case is at a standstill. X cannot retain experts, let alone depose key witnesses, without an understanding of the universe of relevant documents that Defendants are improperly withholding without any basis in the Federal Rules of Civil Procedure. The Court should therefore compel Defendants to promptly make a complete production responsive to X's requests with sufficient time for the parties to timely finish discovery.

## FACTUAL AND PROCEDURAL BACKGROUND

In the fall of 2023, Defendant Hananoki wrote, Defendant Media Matters published, and Defendant Carusone trumpeted a series of articles that attacked X with false and pernicious statements about X and the content appearing on X's platform. Am. Compl. ¶¶ 30-38, 46-54. As a result of that tortious conduct, major advertisers withdrew from X's platform. *Id.* ¶¶ 30-38, 61-64. Because of the ongoing damage caused by Defendants' lies, X brought claims for business disparagement, tortious interference with contract, and tortious interference with prospective economic advantage. *Id.* ¶¶ 65-88.

On February 5, 2024, after the discovery period opened, X began serving written discovery requests. X's first set of written discovery included 29 requests for production. Those requests largely concern categories of documents and other evidence related to the articles, X Corp., and the X platform. *See* Appx. 12-13. Others request information relevant to Media Matters' finances, financial condition, and insurance coverage—matters clearly relevant to any litigation in which a plaintiff seeks damages. Appx. 13-14 (Requests 12-18). And the rest seek information relevant to Defendants' states of mind, communications with like-minded persons and organizations, and other information expected to show knowledge, intent, motive, and other relevant, permissible matters. *See* Appx. 13-14 (Requests 11, 19-20). X's second set of written discovery relates to similar issues, as well as those issues that Defendants have raised in their motions to the court. Appx. 38-41 (Requests 30-47).

In their responses to these requests, Defendants have asserted virtually every conceivable basis for withholding production. Appx. 42-77, 114-138 (Defendants' objections and responses). They flatly refuse to ever produce *anything* in response to 14 out of X's 47 requests. For the remaining 33, they assert a variety of inapplicable privileges and unsupported, boilerplate objections, and impermissibly promise to produce documents "subject to" those objections. Although Defendants claim in their responses not to be "presently withholding responsive documents," they have made only two small document productions, despite receiving X's first set of requests months ago. In conferences among counsel, Defendants have stated their intention to make rolling productions on a bi-weekly basis—but Defendants will not commit to timely production of all relevant documents such that discovery can be completed during the Court's discovery period. Weeks of back-and-forth among counsel have not resolved these disagreements, necessitating this motion. Appx. 139-174 (exchanges between counsel).

## ARGUMENT AND AUTHORITIES

I. **Defendants flatly refuse to produce discoverable information based on meritless relevance, vagueness, and burden objections, which they have also failed to preserve.**

Defendants have refused to produce any documents in response to X's Request Nos. 9, 11, 13-14, 16-18, 21, 35, 37-38, 43, and 46-47. *See* Appx. 53-68, 116-136. They also seek to impermissibly limit Request Nos. 15, 23, and 42. *See id.* The stated basis for this refusal is relevance, vagueness, and undue burden/harassment. But as to each objection, Defendants' objections are meritless—and even if there was any arguable merit to their objections, they are waived for their failure to sufficiently state the basis of their objections. The Court should overrule all Defendants' objections to these requests and compel production in full.

Defendants also assert blanket privileges on these requests. Such assertion is improper for the reasons discussed below in Part III, and Defendants have therefore waived the related privileges, for the reasons explained below.

### A. Each disputed request in this category seeks relevant, nonprivileged information that is proportional to the needs of the case.

Defendants have questioned the relevance of these requests in writing and during conferences among counsel. Despite Plaintiff having explained the relevance, Defendants persist in their objections. Because these requests seek relevant documents, Defendants' objections should be overruled.

*Request No. 9*: X seeks documents and communications with X's advertisers. Appx. 26. Given that X's claim is that Defendants tortiously interfered with X's existing and prospective contracts with its advertisers, X is entitled to full and complete discovery into what Defendants said to X's advertisers. This will provide direct evidence of Defendants' interference with X's contracts and business relations. Additionally, responsive documents regarding advertising or

support for Defendants will likely show Defendants' states of mind, motivations, and intentions, as well as evidence of their knowledge of facts and anticipation of consequences relevant to liability and punitive damages.

*Request Nos. 11, 17-18, 21, and 35*: X seeks communications with public officials and related entities, documents related to donors and their financial support, and documents and communications related to Media Matters' solicitations and sources of funding. Appx. 26-28. Responsive documents will uncover evidence of Defendants' motives and intentions, individuals with whom they worked on the articles and who funded the project, and reveal Defendants' personal and political vendetta against X. These targeted requests will capture or lead to evidence relevant to Defendants' subjective intent to harm X supporting elements of X's tortious interference and business disparagement claims.

*Request Nos. 13-16*: X seeks relevant financial information and related materials. Appx. 26-27. Defendants' financial information is discoverable and proportional because X seeks punitive damages. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270 (1981) ("[E]vidence of a tortfeasor's wealth is traditionally admissible as a measure of the amount of punitive damages that should be awarded"); *Le v. Lockheed Martin Corp.*, No. 4:24-cv-00031, 2024 WL 832374, at *1 (N.D. Tex. Feb. 6, 2024) (Ray, Mag. J.) ("[C]ourts have consistently ordered discovery of the defendant's net worth where punitive damages are sought."); *Alvarez v. Alid (Tex.) LLC*, No. 3:13-cv-04122, 2014 WL 3624929, at *2–3 (N.D. Tex. Jul. 22 2014) (Horan, Mag. J.) ("[A] party seeking discovery of net-worth information need not satisfy any evidentiary prerequisite, such as making a *prima facie* showing of entitlement to punitive damages."). X is thus entitled to discovery related to Media Matters' received donations, income, expenditures, financial obligations, and net worth. Also, Defendants' initial disclosures are insufficient given the

possibility that responsive documents will show third-parties or other donors who are not insurers but who are nevertheless funding Defendants' tortious conduct or insulating them from the consequences.

*Request Nos. 23, 37-38, and 43*: X seeks information about Defendants' actions taken to write and publish the November 2023 articles and commit their other tortious acts. Appx. 28, 39. These requests seek communications with Hananoki and Gertz (a senior fellow at Media Matters) immediately before Elon Musk's purchase of X through the tortious conduct, Hananoki's travel during the relevant time, and Defendants' subsequent coverage after their initial tortious act. The articles that Hananoki wrote lie at the heart of this case, and communications with him are clearly relevant to establishing, at a minimum, motive, intent, and liability. Likewise, Hananoki's travel during the time he was working on the articles, who he met, and what they discussed is reasonably calculated to uncover information, including potential witnesses' identities, relevant documents, and other evidence supporting personal jurisdiction and venue. This information is also relevant to understanding the motivations, funding, and support behind Defendants' crusade against X.

*Request Nos. 46 and 47*: X seeks documents related to Defendants' past bad behavior, including libel, malicious, or discriminatory conduct. Appx. 40-41. These documents will reveal whether Defendants had policies and procedures in place to prevent reporting falsehoods or whether they fostered a culture tolerating and encouraging such behavior. Other instances where Defendants have lied, discriminated, or otherwise defamed in the past are relevant to determining whether they did so again here, as well as supporting their knowledge, intent, and malice. Thus, responsive documents will support, at a minimum, X's claim for punitive damages. Further, Defendants cannot block discovery by speculating on a document's ultimate admissibility at trial,

and Defendants' witnesses may open the door to the use of these documents during their testimony. *See* Fed. R. Civ. P. 26(b)(1).

### B.   X's requests are not vague.

Relatedly, Defendants insist (in response to Request Nos. 1, 2, 7, 9, 10, 14, 16-18, 22, 25-30, 35, and 41-45) that terms in X's requests are vague. In doing so, Defendants were obligated to provide their understanding of the term. *See Curtis v. Metro. Life Ins. Co.*, No. 3:15-cv-02328, 2016 WL 687164, at *5–6 (N.D. Tex. Feb. 19, 2016) (Horan, Mag. J.). For many of their objections (Request Nos. 7, 10, 14, 16-18, 22, 35, and 41-45), Defendants do not even identify which term is objectionably vague. Those objections should be overruled as a matter of course. *See id.*

In other instances, Defendants do not explain how straightforward terms in X's requests are vague. For example, Request No. 9 asks for "all communications with X's advertisers about advertising with or financially supporting" Defendants. Appx. 26. Defendants claim that "financially supporting" is vague. Appx. 54. It is hard to take that objection seriously. As one dictionary has defined it, the meaning of "financial support" includes donating money to, purchasing services from, or otherwise contributing money to encourage or assist that organization. *See* FINANCIAL SUPPORT, COLLINS DICTIONARY, https://www.collinsdictionary.com/us/dictionary/english/financial-support (last accessed May 24, 2024). Defendants' counsel did not offer a substantially differing understanding of the term during conferences or explain why the term "financially supporting"—a term that Media Matters itself uses in connection with its own fundraising efforts[*]—is in any way vague. Defendants should not be allowed to evade their discovery obligations based on vagueness objections that are themselves difficult to decipher.

---

[*] *See, e.g.*, "Take Action," MEDIA MATTERS FOR AMERICA, https://www.mediamatters.org/take-action (last visited May 24, 2024) ("Sign up here to join the effort to encourage Hannity's advertisers to stop financially supporting his propaganda.").

In two instances, Defendants put forward enough information for X to understand their vagueness concerns: X's request for "notes" (Request Nos. 1, 30) and "platform account data" (Request Nos. 2, 31). X actually agrees with Defendants that "notes" means "written records created in the process of reporting, writing, and publishing the November 16, 2023 Article." X disagrees, however, that "Platform account data" is limited to just the "usernames of accounts on the X Platform relied on, referenced, created, or considered in investigating, working on, writing, publishing, and disseminating the referenced article"—instead, X submits that properly construed, this term means login information, messages sent and received, login dates, and related information, as well as communications from the Platform itself, such as automatically generated emails regarding activity on each user account. Counsel for the parties have discussed both terms, and reached agreement as to "notes," but Defendants have not committed to producing "Platform account data" as properly understood. Accordingly, Defendants' unsupported and unsupportable vagueness objections should be overruled.

### C.    X's requests are not unduly burdensome or harassing.

With respect to these bases for complete non-production, Defendants' objections include near-identical boilerplate in virtually every response. For example, in 35 out of 47 requests (Request Nos. 5-19, 21, 23-29, 34-38, and 41-47), Defendants object: "this Request [is] overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation." *See, e.g.*, Appx. 25 (Request No. 5). No supporting basis is stated. *See also* ECF No. 54 at 9 ("Defendants do not explain *why* this request is overbroad. It may well be the case that this request is appropriate in the circumstances of this case.") For nine of their 35 objections (Request Nos. 11-14, 16-18, 21, and 35), Defendants add "harassing" for good measure, but never explain why those eight requests are "harassing" or otherwise distinct from the others. *See* Appx.

56-60, 61-65, 67-68, 122-23. Defendants provide no reason why these requests are harassing, and indeed they cannot—X is not harassing Defendants and, instead, is only engaging in discovery to request all relevant documents that will expose and demonstrate Defendants' tortious behavior.

Likewise, in none of their 35 "burdensome" objections do Defendants identify any actual production burden, let alone providing a cost estimate. *See, e.g.*, Dkt. 54 at 11 ("[T]he party resisting discovery bears the responsibility of actually establishing the undue burden"). They do not explain how the requests are "disproportionate to the needs of this case," either by identifying the number of responsive documents or how production is "disproportionate" to a dispute with over $100 million at issue. *Janvey v. GMAG LLC*, No. 3:15-CV-00401, 2016 WL 11782222, at *4 (N.D. Tex. Oct. 7, 2016) (Bryant, Mag. J.) ("[T]he substantial amount in controversy weighs in favor of allowing the discovery, even where time and cost estimates may be significant.").

In attempts to understand Defendants' objections, Plaintiff has requested basic information regarding production, such as the identities of custodians, sources and volume of data collection, and other information that is routinely exchanged among counsel in cases involving voluminous discovery. Defendants' counsel also flatly refused to provide any of this information, instead demanding that Plaintiff send an interrogatory asking for things like custodians and collection criteria. All that Defendants have said is that they have collected 3.5TB of data, which is a meaningless number without any context regarding Defendants' custodians and collection efforts. Accordingly, Defendants have fallen well short of demonstrating the unduly burdensome and harassing nature of these or any requests. These objections should also be overruled.

### D.   Defendants' anemic boilerplate is insufficient to preserve their objections.

Even if any of Defendants' objections had any merit—they do not—Defendants' insufficient discovery responses have resulted in them waiving their objections entirely. Courts in this District have long warned parties that these sorts of "general, generic objections violate the

Federal Rules and are invalid." *Heller v. City of Dall.*, 303 F.R.D. 466, 483 (N.D. Tex. 2014) (Horan, Mag. J.). They "are meaningless and constitute a waste of time for opposing counsel and the court." *Id.* "In the face of such objections, it is impossible to know whether information has been withheld and, if so, why." *Id.* (quotation omitted). A "failure to particularize objections leads to one of two conclusions: either [respondent] lacked a factual basis to make the objections they did, which would violate Rule 26(g), or they complied with Rule 26(g), made a reasonable inquiry before answering and discovered facts that would support a legitimate objection, but they were waived for failure to specify them as required." *Id.* at 484 (quotation omitted). Accordingly, a party must "show specifically how each discovery request is not relevant or otherwise objectionable" and "com[e] forward with specific information." *Sw. Insulation, Inc. v. Gen. Insulation Co.*, No. 4:15-cv-00601, 2016 WL 9244822, at *3 (N.D. Tex. April 25, 2016) (O'Connor, J.).

For example, in *Heller*, the party resisting discovery included boilerplate language claiming privilege: "to the extent they seek disclosure [of] matters protected by attorney-client privilege, work product doctrine, legislative privilege, or other exemptions or privileges recognized, among other things, by applicable law and/or rules of evidence and civil procedure." 303 F.R.D. at 482. Such language "is an off-the-shelf and decidedly non-specific objection that gains the responding party nothing without . . . explaining precisely how that request exceeds or conflicts with the scope of permissible discovery." *Id.* at 484. Likewise, for boilerplate undue burden objections, "the very act of making such boilerplate objections is prima facie evidence of a Rule 26(g) violation." *Id.* at 490 ("[I]f the lawyer had paused, made a reasonable inquiry, and discovered facts that demonstrated the burdensomeness or excessive cost of the discovery request, he or she should have disclosed them in the objection, as both Rule 33 and 34 responses must state

objections with particularity, on pain of waiver."); *see also Orchestrate HR, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 507–08 (N.D. Tex. 2016) (Horan, Mag. J.).

Likewise, in *Crow v. ProPetro Services, Inc.*, a party served boilerplate responses, objecting "the request is ambiguous and fails to identify with specificity the documents requested" and "this request is vague, ambiguous, overly broad, and unduly burdensome, and it seeks documents that are not relevant or reasonably calculated to lead to the discovery of admissible evidence." No. 7:15-cv-00149, 2016 WL 9776368, at *4 (N.D. Tex. June 6, 2016) (Counts, Mag. J.). Because that party had "failed to support its objections" and did not "show how the requested discovery was overly broad, burdensome, or oppressive," the Court rejected those objections as waived. *Id.*

So too here. Because Defendants provided no support for their relevance, vagueness, and burden/harassment objections, their "boilerplate objections" are "waived." *Id.* at *4. Moreover, because the objections fail to "explain[] precisely how that request exceeds or conflicts with the scope of permissible discovery" the objections should be overruled. *See Heller*, 303 F.R.D. at 484. Accordingly, X requests the Court overrule all of Defendants' objections to Request Nos. 5–19, 21, 23–29, 34–38, and 41–47, and compel Defendants to produce all documents responsive to those requests.

## II.  Where Defendants have promised to produce documents "subject to" their objections, their objections are waived.

For those document requests where Defendants have agreed to produce responsive documents, *e.g.*, Appx. 49-53, 64-65 (RFP Nos. 5-8, 15, 19), virtually all of them contain the same boilerplate described above. On their merits, these objections should be overruled for the same reasons described above. But for most requests, including Request No. 1, Defendants agree to produce documents on a rolling basis "subject to, and without waiving these objections," after "a

– 10 –

reasonable search." *See, e.g.*, Appx. 45. None of these kinds of responses state what categories of documents, if any, that Defendants are withholding based on those objections. Nor do Defendants identify the bounds or process by which their limitation of documents searched was "reasonable." *Id.* During meet and confers, Defendants' counsel refused to disclose what custodians or search terms were being used as limiting factors. *See* Appx. 152-53. There is accordingly no way for X to know what responsive documents Defendants are withholding.

As *Heller* explained, responding "subject to" or "without waiving" "has no basis at all in the Federal Rules of Civil Procedure" and is improper. 303 F.R.D. at 486–87 ("[It] is manifestly confusing (at best) and misleading (at worse).") (quotation omitted); *see also RealPage, Inc. v. Enter. Risk Control, LLC*, No. 4:16-CV-00737, 2017 WL 1165688, at *3 (E.D. Tex. Mar. 29, 2017) ("Rule 34 does not allow this kind of hedging."). This is because "responding to a document request or interrogatory [subject to and without waiving objections] leaves the requesting party guessing and wondering as to the scope of the documents or information that will be provided as responsive will be." *Heller*, 303 F.R.D. at 487. Accordingly, "[i]f a discovery request is overbroad, the responding party must . . . explain the scope of what the responding party is answering or responding to." *Id.* at 488. "Similarly, if answering or responding to a discovery request would impose an undue burden, the responding party must . . . only answer or respond to the part or extent, if any, of the request that would not involve an undue burden." *Id.* at 489. That Defendants are still in the process of reviewing documents does not change this analysis—the objections are still waived. *See Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 583 (N.D. Tex. 2018) (Horan, Mag. J.) ("General, boilerplate, and unsupported objections [to which documents are produced 'subject to'] preserve nothing and—regardless of a party or an attorney's concerns about what they do not

know or have not yet located or may later find—are 'improper and ineffective.'" (quoting *Heller*, 303 F.R.D. at 483–84)).

Although courts caution that making objections in this manner can be sanctionable, X asks only that this Court overrule Defendants' objections. *See, e.g.*, *Mahalingam v. Wells Fargo Bank, N.A.*, No. 3:22-CV-1076-L, 2023 WL 3575645, at *14 (N.D. Tex. May 19, 2023) (Horan, Mag. J.) ("The Court has warned that counsel who fail to comply the Federal Rules' and case law's requirements for discovery responses and objections may face sanctions—including under Rule 26(g)(3) —and does so here again."). Accordingly, to the extent that Defendants seek to withhold any documents on the basis of these objections, they must be compelled instead to produce all responsive materials, and Defendants should be required to provide sufficient information to X's counsel to allow a legitimate evaluation regarding the reasonableness of their collection and production efforts.

## III. Defendants' Privilege Objections Should Be Overruled.

### A. Defendants' privilege objections are unsupported boilerplate.

Defendants' privilege-based objections fare no better. Defendants do not even *specify* each of their claimed privileges, let alone assert them sufficiently for this Court to rule on them. Instead, for every objection, Defendants assert the following catchall: attorney-client privileges, work-product protections, "and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26." *See, e.g.*, Appx. 45 (RFP No. 1).

Even where Defendants attempt to identify a specific First Amendment privilege objection, they still act in a scattershot manner: sometimes claiming a reporter's privilege (*e.g.*, RFP No. 1), sometimes against the purported chilling of their speech and associational rights, (*e.g.*, RFP No. 3), and sometimes against production of donor information. (*e.g.*, RFP No. 17). Defendants never describe what the First Amendment privileges, invoked by rote repetition, ostensibly protect.

Because Defendants do not assert privilege objections with any specificity and indeed attempt a catchall privilege objection applicable to each request, the privilege claims should be disregarded. *See In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001) ("A party asserting a privilege exemption from discovery bears the burden of demonstrating its applicability."). And for the requests where Defendants have asserted a blanket privilege as a basis for complete non-production of documents, Defendants' privilege objections should be overruled in their entirety, or at a minimum, Defendants must be compelled to provide a privilege log. Fed. R. Civ. P. 26(b)(5)(A)(ii). X accordingly requests that the Court overrule the boilerplate and catchall privilege objection that Defendants asserted in every response and compel production of any responsive documents Defendants were otherwise intending to withhold on that basis.

**B.      In addition to procedural defects, Defendants' privileges fail on their merits.**

  **1.      Defendants misunderstand the "reporter's privilege" that they assert.**

Defendants abuse the notion of a "reporter's privilege" that would shield the requested documents from production. The Fifth Circuit has recognized exactly one privilege for a journalist: a *qualified* privilege against having to divulge a confidential source's *identity*. *In re Selcraig*, 705 F.2d 789, 792–93 (5th Cir. 1983); *see* Appx. 45 (relying on *Selcraig*). Courts have rejected a broader privilege *even in a criminal context*. *Selcraig*, 705 F.2d at 799 n.15; *Karem v. Priest*, 744 F. Supp. 136, 137 (W.D. Tex. 1990). Regardless, this privilege does nothing for Media Matters or Carusone: it must be invoked *by the reporter*. *See Selcraig*, 705 F.2d at 798; *Karem*, 744 F. Supp. at 138. For example, in *United States v. Smith*, the Fifth Circuit explained that there was "little support" for a television station's attempt to assert a reporter's privilege—that at most covered the "rights of the newsmen." 135 F.3d 963, 970 (5th Cir. 1998).

Thus, insofar as Defendants invoke the limited privilege recognized in *Selcraig*, *e.g.*, Appx. 45-46, 116-17, they cannot even benefit from that case's limited holding. Defendants never clarify

exactly what responsive documents sought by X they believe are covered by the "reporter's privilege." The premise of Defendants' case is that Media Matters merely reported what could be seen on the X platform by "ordinary" users, for which there "is no intrusion into newsgathering or special functions of the press" since reporters recounting what they have "seen or heard" in public can be questioned as a "witness like any other member of the public." *Kitzmiller v. Dover Area Sch. Dist.*, 379 F. Supp. 2d 680, 687 (M.D. Pa. 2005) (citations omitted). Defendants should be estopped from arguing otherwise in a self-serving assertion of privilege.

Regardless, here, the requested discovery into Hananoki's notes, drafts, and sources is necessary—and can overcome the qualified nature of the non-absolute privilege—because Hananoki is a party and information about his reporting is central to both the jurisdictional and merits claims in this case, and especially with respect to the disputed intent elements of each of X's claims. *Cf., e.g.*, *Holland v. Centennial Homes, Inc.*, No. 3:92-CV-1533-T, 1993 WL 755590, at *6 (N.D. Tex. Dec. 21, 1993) (Sanderson, Mag. J.) ("Discovery of the private work product of a reporter should not be compelled upon the mere speculation of possible impeaching material alone, especially in a civil case where the reporter is neither a party nor a witness to the facts upon which the lawsuit is based."). As both a party and a witness, X is entitled at a minimum to such discovery from Hananoki. *Cf. Keefe v. City of Minneapolis*, No. CIV. 09-2941 DSD/SER, 2012 WL 7766299, at *4 (D. Minn. May 25, 2012) (contrasting this scenario with discovery sought from a reporter who was "neither a party nor a witness to any of the underlying facts"). Of course, Defendants have yet to produce a log even attempting to quantify the number of individuals for whom the disclosure of identity could even arguably vitiate a privilege.

Even if Defendants could rely on *Selcraig's* limited privilege, nothing prevents production of materials (*in camera*, if necessary) that work around that narrow constraint. Only a miniscule

– 14 –

percentage of what X requested even arguably requires the disclosure of the disputed identities. For example, donor identifiers provide no basis for a claim of a reporter's privilege, and the substance of what sources said is not protected even if *Selcraig* was applicable. And Hananoki's notes and drafts are not privileged because of a source's identity alone, which could be redacted in any case.

### 2. Defendants' asserted associational privilege does not bar non-state actor discovery.

Defendants' associational privilege claim fares no better. The Court may charitably ignore Defendants' attempted comparison of their tortious conduct to the NAACP facing possible dissolution by Alabama's attempt to obtain a donor list in the Civil Rights Era. *See NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460 (1958). Media Matters makes no comparable showing of its membership to the people combatting segregation, for whom "compelled disclosure of . . . membership is likely to affect adversely the ability of [the NAACP] and its members to pursue their collective effort to foster beliefs which they admittedly have the right to advocate." *Id.* at 462–63. Such egregious revisionism lends no help to Media Matters, which can claim no comparable state action.

An associational privilege is, at most, qualified. The Fifth Circuit in *Whole Woman's Health v. Smith* instructed that the *internal* communications of an organization may be protected in limited factual circumstances. 896 F.3d 362, 372 (5th Cir. 2018). There, the panel also noted that the party resisting discovery had "already cooperated extensively in discovery in a way that minimizes any adverse impact on the plaintiffs' ability" to conduct necessary cross-examination. *Id.* at 374. Here, Defendants seek to avoid discovery into matters related to its donors altogether. Media Matters cannot claim a categorical First Amendment privilege—let alone in this context, where the location of donors, persons from whom Media Matters solicited information, and

– 15 –

individuals contacted regarding Media Matters' "reporting" are relevant jurisdictional facts that Defendants have placed at issue.

Defendants also cannot rely on *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595 (2021). Like Alabama in *NAACP*, California was a state actor in *Bonta*, thus triggering the First Amendment's application. *Id.* at 616. There is simply no "state action" here that could even arguably support such an association privilege. *Id.* The same is true of Defendants' misplaced reliance on *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010), given that the state action in that case was obvious: the defendants included numerous government parties, including then-governor Arnold Schwarzenegger, in a challenge to California's same-sex marriage law.

That this Court might compel discovery does not provide the relevant state action. Otherwise, *everyone* would enjoy a privilege against discovery on speech/association grounds *for every reason*. Under Fifth Circuit precedent, "there is no 'state action' to be found in the mere filing of a private civil tort action in state court." *Henry v. First Nat. Bank of Clarksdale*, 444 F.2d 1300, 1312 (5th Cir. 1971). That reality has left Defendants bereft of case law supporting their reliance on the First Amendment in conferencing this motion. And their assertion that "the judicial process . . . represents state action, even in cases between private parties" is contrary to law. Appx. 162 (Apr. 26, 2024 Email from A. Ahmed) (citing *Shelley v. Kraemer*, 334 U.S. 1, 14–15 (1948); *Gueye v. Mike Bloomberg 2020 Inc.*, 2021 WL 3910341, at *2 (N.D. Tex. Mar. 12, 2021) (Ray, Mag. J.); *Mize v. McGraw-Hill, Inc.*, 82 F.R.D. 475, 476-78 (S.D. Tex. 1979)). Courts across the country, including the Fifth Circuit, have rejected the argument that mere coercive state judicial process constitutes state action. *E.g.*, *Hardy v. Gissendaner*, 508 F.2d 1207, 1210–11 (5th Cir. 1975); *Loc. Union No. 48 of Sheet Metal Workers Int'l Ass'n v. Hardy Corp.*, 332 F.2d 682, 685–86 (5th Cir. 1964). Indeed, "*Shelley*'s attribution of state action to judicial enforcement has

– 16 –

generally been confined to the context of discrimination claims under the Equal Protection Clause." *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 998–1000 (9th Cir. 2013). "In the context of First Amendment challenges to speech-restrictive provisions in private agreements or contracts, domestic judicial enforcement of terms that could not be enacted by the government has not ordinarily been considered state action." *Id.*

Neither of Defendants' two, non-binding district-court cases depart from that great weight of authority in the context of discovery. *Gueye* actually *denied* an assertion of privilege by rejecting essentially the same argument advanced by Defendants here. 2021 WL 3910341, at *2–3. And the other, *Mize*, is not an associational-privilege case: it merely applies an ostensible *reporter*'s privilege in civil cases by reference to criminal grand-jury proceedings (where there is obvious state action). 82 F.R.D. at 476. Even if this Court considered the non-binding *Mize* decision, it stands for nothing more than that courts should consider case-by-case the "extent to which pretrial discovery had been conducted, the fruits of that discovery, and the resulting demonstrated need or lack of need for compelling disclosure of the news reporter's confidential source." *Id.* at 477. Unlike the movant in *Mize*, X has diligently sought discovery, only to be hampered by Defendants despite "showing that the identity of the news source goes to the heart of the plaintiff's claim." *Id.* at 478. X has requested information regarding Media Matters' donors and its finances for obvious and allowed reasons: (1) to see how Defendants have availed themselves of Texas; (2) to see if they are profiting from their disparagement; and (3) to see their financial condition. At a minimum, these factors are relevant to establish jurisdiction, compensatory damages, and punitive damages.

## CONCLUSION

X respectfully requests that the Court overrule Defendants' objections and order Defendants to promptly produce all materials responsive to X's requests for production. For any privilege claims that the Court concludes Defendants retain following a ruling on this motion, X

requests that the Court order Defendants to contemporaneously provide a privilege log identifying all such assertions of privilege with specificity.

Dated: May 24, 2024.

Respectfully submitted,

*/s/ Christopher D. Hilton*
Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
Ari Cuenin
Texas Bar No. 24078385
Alexander M. Dvorscak
Texas Bar No. 24120461
**STONE | HILTON PLLC**
1115 W. Slaughter Lane
Austin, TX 78748
Telephone: (737) 465-3897
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
alex@stonehilton.com

John C. Sullivan
Texas Bar No. 24083920
**S|L LAW PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on May 24, 2024, a copy of this document was served on all counsel of record through the Court's CM/ECF system in accordance with the Federal Rules of Civil Procedure.

*/s/ Alexander M. Dvorscak*
Alexander M. Dvorscak