# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

X CORP.,

          Plaintiff,

     v.

MEDIA MATTERS FOR AMERICA,
et al.,

         Defendants.

Civil Action No. 4:23-cv-01175-O

# DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO COMPEL
# PRODUCTION OF DOCUMENTS

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES .............................................................................................. ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

    I.    X's motion is untimely. ......................................................................................... 2

        A.  Many of X's arguments are moot. .................................................................. 2

        B.  X's arguments about the application of privilege to documents responsive to its requests are premature. ................................................................................. 4

    II.    X's argument that the First Amendment privilege does not apply in these proceedings is wrong. ........................................................................................... 5

    III.    X seeks documents that are far outside the scope of legitimate discovery. ........... 9

        A.  RFP Nos. 3, 17, 18, 21, and 35 are harassing requests for irrelevant donor information. ..................................................................................................... 10

        B.  RFP Nos. 13, 14, 15, and 16 are harassing and disproportionate requests for irrelevant financial information. ................................................................... 13

        C.  RFP Nos. 23, 24, 37, and 38 are harassing requests for irrelevant information about Media Matters employees. ........................................................................ 18

        D.  RFP No. 46 is a harassing request for irrelevant information about Media Matters's personnel matters. ......................................................................... 21

CONCLUSION ................................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ams. for Prosperity Found. v. Bonta*,
  594 U.S. 595 (2021)............................................................................................11

*Anderson v. Hale*,
  No. 00 C 2021, 2001 WL 503045 (N.D. Ill. May 10, 2001) ..............................6

*Briones v. Smith Dairy Queens Ltd.*,
  No. CIV.A. V-08-48, 2008 WL 4630485 (S.D. Tex. Oct. 16, 2008) ....................17

*Britt v. Super. Ct. of San Diego Cnty.*,
  574 P.2d 766 (Cal. 1978)......................................................................................6

*Callais v. United Rentals N. Am.*,
  No. CV 17-312-BAJ-RLB, 2018 WL 6517446 (M.D. La. Dec. 11, 2018) ......................16, 17

*Carrier v. Ravi Zacharias Int'l Ministries, Inc.*,
  No. 1:21-CV-3161-TWT, 2023 WL 2355891 (N.D. Ga. Mar. 3, 2023) ..................5

*Charles v. Tex. Lottery Comm'n*,
  No. A-06-CA-158 LY, 2006 WL 8445908 (W.D. Tex. Nov. 1 2006) ....................4

*Cuomo v. Clearing House Ass'n, LLC*,
  557 U.S. 519 (2009)............................................................................................13

*United States ex rel. Eichner v. Ocwen Loan Servicing, LLC*,
  No. 4:19-CV-524, 2024 WL 843900 (E.D. Tex. Feb. 28, 2024)............................4

*Flynn v. Square One Distrib., Inc.*,
  No. 6:16-mc-25-ORL-37TBS, 2016 WL 2997673 (M.D. Fla. May 25, 2016) ........6

*Grandbouche v. Clancy*,
  825 F.2d 1463 (10th Cir. 1987) ............................................................................5

*Gueye v. Mike Bloomberg 2020 Inc.*,
  Nos. 4:20-cv-00487-BP through 4:20-cv-00490-BP, 2021 WL 3910341
  (N.D. Tex. Mar. 12, 2021) ................................................................................7, 8

*Hamilton v. Geithner*,
  No. 1:08cv1112 (JCC), 2009 WL 2240358 (E.D. Va. July 23, 2009)....................13

*Hardy v. Gissendaner*,
  508 F.2d 1207 (5th Cir. 1975) ..............................................................................8

*Henry v. First National Bank of Clarksdale*,
  444 F.2d 1300 (5th Cir. 1971) ..............................................................................8

*Hickman v. Taylor*,
  329 U.S. 495 (1947)............................................................................................11

*In re House of Yahweh*,
    266 S.W.3d 668 (Tex. App. 2008) ........................................................................16

*Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*,
    No. 75 CIV. 5388 (MJL), 1985 WL 315 (S.D.N.Y. Feb. 28, 1985) ...........................6

*In re Jacobs*,
    300 S.W.3d 35 (Tex. App. 2009) ..........................................................................16

*La Union Del Pueblo Entero v. Abbott*,
    No. SA-21-CV-00844-XR, 2022 WL 17574079 (W.D. Tex. Dec. 9, 2022) .................4, 5, 7

*Local Union No. 48 of Sheet Metal Workers International Ass'n v. Hardy Corp.*,
    332 F.2d 682 (5th Cir. 1964) .................................................................................8

*McVay v. Halliburton Energy Servs. Inc.*,
    No. 3:07-CV-1101-O, 2010 WL 11583175 (N.D. Tex. June 18, 2010) ....................15

*Media Matters for Am. v. Paxton*,
    No. 24-cv-147 (APM), 2024 WL 1773197 (D.D.C. Apr. 12, 2024) .........................11

*Midwest Feeders, Inc. v. Bank of Franklin*,
    No. 5:14-cv-78-DCB-MTP, 2015 WL 11117899 (S.D. Miss. Nov. 19, 2015) .........4

*Mimms v. CVS Pharmacy, Inc.*,
    889 F.3d 865 (7th Cir. 2018) ...............................................................................12

*Mize v. McGraw-Hill, Inc.*,
    82 F.R.D. 475 (S.D. Tex. 1979) ..........................................................................7, 8

*In re Motor Fuel Temperature Sales Pracs. Litig.*,
    641 F.3d 470 (10th Cir. 2011) ...............................................................................5

*NAACP v. State of Alabama ex rel. Patterson*,
    357 U.S. 449 (1958) ..............................................................................................6

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ............................................................................................12

*Nw. Austin Mun. Util. Dist. No. One v. Holder*,
    557 U.S. 193 (2009) ............................................................................................11

*Ohno v. Yasuma*,
    723 F.3d 984 (9th Cir. 2013) .................................................................................8

*Perry v. Schwarzenegger*,
    591 F.3d 1147 (9th Cir. 2010) ........................................................................5, 7, 9

*Price v. Lockheed Martin Corp.*,
    No. 4:04CV123LN, 2006 WL 1686568 (S.D. Miss. June 19, 2006) ....................14, 17

*Pulte Home Corp. v. Montgomery County*,
    No. GJH-14-3955, 2017 WL 1104670 (D. Md. Mar. 24, 2017) ...........................6

*Regions Ins., Inc. v. Alliant Ins. Servs., Inc.*,
    No. 3:13-CV-667-HTW-LRA, 2015 WL 1886852 (S.D. Miss. Apr. 24, 2015)....................16

*Shelley v. Kraemer*,
    334 U.S. 1 (1948).........................................................................................................6

*Sierra Club v. Union Elec. Co.*,
    No. 4:14-cv-00408-AGF, 2015 WL 9583394 (E.D. Mo. Dec. 31, 2015).................................6

*Smith v. DeTar Hosp. LLC*,
    No. CA-V-10-83, 2011 WL 6217497 (S.D. Tex. Dec. 14, 2011)...........................................15

*Sullivan v. Schlumberger Ltd.*,
    No. 4:20-CV-00662, 2021 WL 3206778 (E.D. Tex. July 29, 2021) .....................................17

*Tingle v. Hebert*,
    No. CV 15-626-JWD-EWD, 2017 WL 2335646 (M.D. La. May 30, 2017).........................15

*Vertex Aerospace, LLC v. Womble Bond Dickinson, LLP*,
    No. 309CV00704HTWLGI, 2022 WL 1830715 (S.D. Miss. Apr. 26, 2022) .........................17

*Whole Woman's Health v. Smith*,
    896 F.3d 362 (5th Cir. 2018) ....................................................................................7, 9

**Rules**

Fed. R. Civ. P. 26(b)(1)................................................................................................9, 13, 19

Fed. R. Civ. P. 26(b)(2)(B) ....................................................................................................9

Fed. R. Civ. P. 26(b)(2)(C) .............................................................................................10, 20

**Other Authorities**

@ElonMusk, X.com (Nov. 18, 2023, 2:01 AM),
    https://x.com/elonmusk/status/1725771191644758037
    [https://perma.cc/X4HN-PLJ4]....................................................................................11

@TheChiefNerd, X.com (Dec. 10, 2023, 4:24 PM),
    https://x.com/thechiefnerd/status/1733960832571122115?s=46&t=PN52ydwT
    vFusTeuJ-h77RA [https://perma.cc/6L3M-SHX3] ........................................................11

## INTRODUCTION

X Corp.'s motion to compel is untimely and meritless. It arrived while the parties were in the middle of negotiating the various disputes raised in X's motion, despite Defendants' explicit representation that amended responses and objections to X's requests for production (RFPs) would be imminently forthcoming. Defendants served those on May 28, as promised, mooting almost all of X's concerns. X's motion is premature for the additional reason that Defendants have not yet identified a single document that is being withheld on the basis of any privilege. X inexplicably demands that "Defendants must be compelled to provide a privilege log," Pl.'s. Br. in Supp. of Mot. to Compel Produc. of Docs. at 13, ECF No. 60 ("Br."), when (1) Defendants have made clear throughout this process that they will log any privileged documents, and (2) X has not taken any steps to "come to terms on a mutually acceptable protocol for the handling of privileged material"—a prerequisite to the exchange of any privilege log set forth in X's *own instructions* in its requests for production, *see* App. of Exs. to Pl.'s Mot. to Compel Produc. of Docs. at 10, 23, 36, ECF No. 60-1 ("X App."). Thus, for the several categories of requests for which Defendants have made clear that they are not currently withholding any responsive documents, X's rush to compel is unripe.

Two sets of issues are, however, ready for this Court's resolution. *First*, X's effort to deprive Defendants of any recourse to their First Amendment rights in discovery disputes is contradicted by case law all across the country—including in the Fifth Circuit—and should be rejected out of hand. X's attempt to harness the coercive power of this Court to compel Defendants to produce their most sensitive internal documents requires state action that implicates core constitutional guarantees. This Court should not be the first to hold otherwise. *Second*, for the discrete subset of requests where the parties' impasse is clear, X has no basis to compel production. These requests flout the guardrails that protect litigants from abusive and harassing discovery into

1

their most sensitive documents, particularly where those documents are wholly irrelevant to the claims or defenses in the case. For example, X seeks the identity of *every Media Matters donor* and other financial minutiae far beyond what courts allow in analogous cases, as well as personal records and correspondence that have *nothing* to do with the underlying dispute. For any and all of these reasons, the motion should be denied.

## ARGUMENT

### I.      X's motion is untimely.

Many of X's contentions are moot, as the purported disputes had already been resolved—or otherwise could have been resolved—before X rushed to file its motion. Other contentions are unripe for this Court's attention, as X has not yet agreed to a protocol for handling privileged information, let alone received a log identifying privileged documents that Defendants might be compelled to produce.

#### A.      Many of X's arguments are moot.

A brief summary of the conferral process is necessary to clarify why this Court need not adjudicate many of the issues raised in X's motion. During two initial conferrals on April 9 and May 1, and through related correspondence, counsel for Defendants explained that a large team of attorneys was collecting, reviewing, and producing documents[1]; they clarified that Defendants were not limiting searches or productions for any request except for discrete categories where

---

[1] To date, Defendants have collected over 5.5 Terabytes of data, enlisted nearly 50 people to review documents, and produced over 2,000 documents and over 2,000 videos comprising approximately 564 gigabytes of data. *See* Defs.' App. at 146. X's assertion that Defendants have "stonewalled" is fanciful, Br. at 1; responding to X's unbounded discovery requests is an enormous undertaking that Defendants are engaging with every resource at their disposal. *See* Defs.' App. at 146. Defendants intend to comply with all deadlines in the Court's scheduling order, ECF No. 14, and X has no basis to arbitrarily demand documents on an accelerated (and apparently non-mutual) schedule. *See* Br. at 1.

Defendants noted they did not intend to produce any documents; and they sought reciprocal case law, clarity, and compromise from X on several disputed requests where Defendants had explained their position and proposed revised responses. *See* Defs.' App. at 118–121, 125–29, 131–35. After X's counsel announced on May 23 that it intended to move to compel, counsel for Defendants reiterated that X had yet to identify a single case disputing Defendants' objections, and that any privilege dispute was premature because Defendants had yet to identify or log the withholding of a single document. *Id.* at 105–07, 109–10. To formalize the explanations presented over several weeks of calls and correspondence, Defendants also alerted X that they would amend their responses by May 28 to resolve any possible dispute over the use of general objections. *Id.* at 102. But X could not be budged from its file-first-discuss-later approach, and docketed its motion on May 24. *See* Mot. to Compel Produc. of Docs., ECF No. 59.

As promised, Defendants served amended discovery responses on May 28 that removed the general objections that are the subject of much of X's motion. *See* Defs.' App. at 3–33, 34–64, 65–81. And as promised, the responses memorialized the various compromises and concessions that Defendants have made over the series of meet-and-confers. Accordingly, X's arguments regarding RFP Nos. 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 12, 19, 20, 22, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 36, 39, 40, 41, 42, 43, 44, 45, and 47 are now moot or (to the extent further disputes may arise) otherwise unripe.[2]

---

[2] If X contests any of Defendants' amended responses, it should raise those issues in a subsequent good faith conferral with Defendants, and, if the parties remain at impasse, in a separate motion so that Defendants may be heard (by X, and, if necessary, by the Court) to defend their position and respond to any objections.

**B.      X's arguments about the application of privilege to documents responsive to its requests are premature.**

X's request for a ruling on Defendants' anticipated assertions of privilege before Defendants have logged the withholding of any document is premature. *See* Defs.' App. at 109–10 (highlighting caselaw). Indeed, courts in the Fifth Circuit regularly deny motions to compel as premature under these circumstances. *See, e.g.*, *United States ex rel. Eichner v. Ocwen Loan Servicing, LLC*, No. 4:19-CV-524, 2024 WL 843900, at *7 (E.D. Tex. Feb. 28, 2024); *Midwest Feeders, Inc. v. Bank of Franklin*, No. 5:14-cv-78-DCB-MTP, 2015 WL 11117899, at *3 (S.D. Miss. Nov. 19, 2015); *see also Charles v. Tex. Lottery Comm'n*, No. A-06-CA-158 LY, 2006 WL 8445908, at *2 n.1 (W.D. Tex. Nov. 1 2006) (noting "as the [Defendant] has not submitted a privilege log to Plaintiff, [] it is therefore not clear that there is presently any dispute regarding the documents claimed to be . . . privileged"). This is because "assertions of privilege must 'be specifically asserted' on a document-by-document basis," as "the relevance and need for the document clearly depend on the contents of the document itself." *La Union Del Pueblo Entero v. Abbott*, No. SA-21-CV-00844-XR, 2022 WL 17574079, at *9 (W.D. Tex. Dec. 9, 2022) (quoting *Taylor Lohmeyer Law Firm P.L.L.C. v. United States*, 957 F.3d 505, 510 (5th Cir. 2020)).

Despite Defendants having raised this point (and the preceding caselaw) to X several times, it remains unclear whether (and if so, why) X disagrees. Notably, X's own requests for production instruct that Defendants' production "shall be governed" by "a mutually acceptable protocol for the handling of privileged material that the parties will memorialize in a proposed court order." X App. at 10, 23, 36. No such protocol has been agreed upon or adopted by the Court. In fact, the parties have not even reached agreement on an order for the exchange and production of electronically stored information ("ESI")—which will govern certain privilege issues—or for a

4

protective order—which will inform the categories of data likely to remain nonpublic.[3] X's rush to compel Defendants' production of documents is belied by its unexplained delay in finalizing any of the documents that will govern the discovery process. Defs.' App. at 144–65.[4]

After the parties finish negotiating a privileged-documents protocol, an ESI protocol, and a protective order, and after Defendants log any responsive documents as privileged, and after the parties meaningfully confer on that assertion, *then* this Court's time and resources may be necessary to resolve any dispute. Until then, there is no assertion of privilege to adjudicate because no party is withholding any document on the basis of privilege.

## II.   X's argument that the First Amendment privilege does not apply in these proceedings is wrong.

Because X's attempt to graft a state-party requirement onto the privilege presents a purely legal issue that is unlikely to be affected by any additional facts, Defendants do not oppose the Court's resolution of the issue at this time. The law is clear, as courts across the country that have explicitly reached this issue have been unanimous: "the First Amendment privilege applies to discovery orders issued in litigation involving only private parties." *In re Motor Fuel Temperature Sales Pracs. Litig.*, 641 F.3d 470, 481 (10th Cir. 2011). This is because a court order "compelling discovery and the trial court's enforcement of that order provide the requisite governmental action that invokes First Amendment scrutiny." *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987); *see also Carrier v. Ravi Zacharias Int'l Ministries, Inc.*, No. 1:21-CV-3161-TWT, 2023

---

[3] Although "protective orders limiting dissemination of information protected by the First Amendment privilege 'cannot eliminate' the First Amendment injury resulting from compelled disclosure," *Abbott*, 2022 WL 17574079, at *9 (quoting *Perry v. Schwarzenegger*, 591 F.3d 1147, 1164 (9th Cir. 2010)), the scope of a protective order may be relevant to a party's assertion of privilege, *see Perry*, 591 F.3d at 1164.

[4] Despite Defendants' concerns about the ongoing lack of these necessary protocols, they have adhered to their promise of biweekly document productions. To date, Defendants are not withholding any documents necessitating a privilege log or anything similar.

WL 2355891, at *4 (N.D. Ga. Mar. 3, 2023) (recognizing, in dispute between private parties, that "courts have consistently recognized a qualified associational privilege in the discovery context"); *Pulte Home Corp. v. Montgomery County*, No. GJH-14-3955, 2017 WL 1104670, at *3 (D. Md. Mar. 24, 2017) (holding, in dispute between private parties, that "First Amendment protections apply in the context of discovery orders"); *Flynn v. Square One Distrib., Inc.*, No. 6:16-mc-25-ORL-37TBS, 2016 WL 2997673, at *2 n.4 (M.D. Fla. May 25, 2016) (similar); *Sierra Club v. Union Elec. Co.*, No. 4:14-cv-00408-AGF, 2015 WL 9583394, at *2 (E.D. Mo. Dec. 31, 2015) (similar); *Anderson v. Hale*, No. 00 C 2021, 2001 WL 503045, at *3 (N.D. Ill. May 10, 2001) ("This same balancing test [for the government to overcome the associational privilege] equally applies to cases involving two private parties."); *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, No. 75 CIV. 5388 (MJL), 1985 WL 315, at *9 n.16 (S.D.N.Y. Feb. 28, 1985) (rejecting argument that First Amendment privilege does not apply in discovery disputes between private parties); *cf. Britt v. Super. Ct. of San Diego Cnty.*, 574 P.2d 766, 774 (Cal. 1978) (en banc) (holding "the threat to First Amendment rights may be more severe in a discovery context, since the party directing the inquiry is a litigation adversary who may well attempt to harass his opponent and gain strategic advantage by probing deeply into areas which an individual may prefer to keep confidential").

These principles follow directly from Supreme Court precedent. In *Shelley v. Kraemer*, 334 U.S. 1, 14–15 (1948), the Court recognized that the action of "courts and of judicial officers in their official capacities is to be regarded as action of the State within the meaning of" the Constitution's state action requirements. Similarly, in *NAACP v. State of Alabama ex rel. Patterson*, 357 U.S. 449, 463 (1958), where the Supreme Court reviewed a state court order requiring a private organization to disclose its membership lists, the Court recognized "[i]t is not

of moment that the State has here acted solely through its judicial branch, for whether legislative or judicial, it is still the application of state power which we are asked to scrutinize."

Courts in the Fifth Circuit take the First Amendment privilege as a given, reviewing privilege assertions among private parties as a routine matter. *See, e.g.*, *Whole Woman's Health v. Smith*, 896 F.3d 362, 370 (5th Cir. 2018) (favorably reviewing First Amendment privilege claim by private third party in response to discovery requests from private plaintiffs); *Abbott*, 2022 WL 17574079, at *9 ("Private Plaintiffs must establish a substantial need for the withheld documents that outweighs the intrusion into the [private] Defendant Intervenors' constitutional rights."); *Gueye v. Mike Bloomberg 2020 Inc.*, Nos. 4:20-cv-00487-BP through 4:20-cv-00490-BP, 2021 WL 3910341, *2 (N.D. Tex. Mar. 12, 2021) (adjudicating First Amendment privilege dispute between private parties); *Mize v. McGraw-Hill, Inc.*, 82 F.R.D. 475, 478 (S.D. Tex. 1979) (recognizing invocation of First Amendment privilege was sufficient to defeat motion to compel in suit between private parties).

Faced with this one-sided caselaw, X fails to cite a single case—in the Fifth Circuit or anywhere else—prohibiting litigants from invoking the privilege. Instead, it misunderstands key authority, cites inapposite cases, and attempts meaningless distinctions of relevant precedent. Highlighting *Perry*, for example, the seminal Ninth Circuit case that recognized the First Amendment privilege in a discovery dispute between private parties, X contends "the state action in that case was obvious" because "the defendants included numerous government parties, including then-governor Arnold Schwarzenegger." Br. at 16. Equally obvious, however, is that none of those governmental parties were involved in the discovery dispute at issue—private plaintiffs sought the production of private defendant-intervenors' internal campaign communications. *Perry*, 591 F.3d at 1152.

Next, X lists a slew of cases that have nothing to do with the First Amendment privilege or discovery disputes at all. *See* Br. at 16–17 (citing cases). *Henry v. First National Bank of Clarksdale*, 444 F.2d 1300, 1312 (5th Cir. 1971), held that the mere filing of a state court antitrust suit was not "state action" for purposes of civil rights statutes. *Hardy v. Gissendaner*, 508 F.2d 1207, 1210–11 (5th Cir. 1975), held that Alabama's holder-in-due-course statute did not justify mortgagors' constitutional claim where the statute was applied without discrimination. *Local Union No. 48 of Sheet Metal Workers International Ass'n v. Hardy Corp.*, 332 F.2d 682, 685–86 (5th Cir. 1964), turned on the court's interpretation of the word "coerce" in the National Labor Relations Act. And in *Ohno v. Yasuma*, 723 F.3d 984, 987 (9th Cir. 2013), the Ninth Circuit held that enforcement of a Japanese damages award under California's Uniform Foreign–Country Money Judgments Recognition Act did not transform the underlying foreign court's judgment into domestic state action. None of these cases illuminate the parties' discovery dispute.

Returning to cases that do address the First Amendment privilege in discovery disputes, X seeks to distinguish *Gueye* as a case where the assertion of privilege was unsuccessful, Br. at 17, but the mere fact that litigants may not win on every conceivable assertion of privilege does not suggest that the privilege is altogether unavailable in private litigation. Instead, the court's careful application of the *Perry* test in that case indicates the opposite. *Gueye*, 2021 WL 3910341, at *2–3. Finally, X seeks to distinguish *Mize* as a case about the reporter's privilege. Br. at 17. In *Mize*, a private plaintiff suing a publisher for defamation sought to compel disclosure of the identity of a confidential source used in preparing a challenged article, and the motion to compel was denied because the information was privileged under the First Amendment. 82 F.R.D. at 476. There is no material distinction from the present case.

8

In short, courts have uniformly rejected X's suggestion that private litigants are prohibited from invoking the First Amendment privilege. Instead, every cited case now before the Court either expressly holds the exact opposite or otherwise reaches the merits of the privilege claims. This Court should reject X's invitation to become an outlier of one. The Court should confirm that Defendants retain core First Amendment rights that may privilege certain documents from compelled production, and that courts retain authority to adjudicate these disputes as they arise.[5]

### III.   X seeks documents that are far outside the scope of legitimate discovery.

The Federal Rules limit the scope of discovery to nonprivileged matters that are "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Applying this test, courts are to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* "A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). Courts "must limit the frequency or extent of discovery otherwise allowed" if "the discovery sought is unreasonably cumulative or

---

[5] While Defendants maintain that the actual application of the First Amendment privilege is unripe until this Court determines the relevance of the information requested, *see infra* at Argument III.A–D, and until Defendants serve their forthcoming privilege log, *see supra* at Argument I.B, if the Court seeks to expedite resolution of the anticipated dispute, Defendants respectfully request an opportunity to submit evidence, including affidavits, confirming the burden that disclosure of various categories of requested documents would impose on Defendants, their donors, and other affiliates. *See Perry*, 591 F.3d at 1161 (when evaluating assertions of the First Amendment privilege, courts "balance the burdens imposed on individuals and associations against the significance of the interest in disclosure to determine whether the interest in disclosure outweighs the harm"). As relevant here, the Fifth Circuit has specifically warned against discovery orders that force private parties "to turn over *to a public policy opponent* its internal communications" and other sensitive documents. *Whole Women's Health*, 896 F.3d at 373.

duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[,]" or if "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). Because all of X's discovery requests that are ripe for adjudication flagrantly violate these rules, its motion to compel should be denied.

A.   **RFP Nos. 3, 17, 18, 21, and 35 are harassing requests for irrelevant donor information.**[6]

By X's own telling, "the central allegation that X raises in its amended complaint [is] Defendants' tortious interference with X's advertisers through the publication of two deeply misleading articles about the company's social media platform." Br. at 1. But many of X's requests have nothing to do with this subject matter. Instead, X trains its sights on what X-owner Elon Musk has made clear was the goal all along of this "thermonuclear lawsuit": destroying Media Matters

---

[6] RFP No. 3 requests "All documents and communications related to the November 16, 2023 Article, including but not limited to internal communications, communications with the public (including social media posts), communications with donors, communications with journalists, and communications with the advertisers mentioned in the November 16, 2023 Article." Defs.' App. at 7, 38.

RFP No. 17 requests "Documents sufficient to show the identity of all Your donors or any others who provide financial support of any kind, their residence, the time and place of their donation or provision of financial support, and the amount of their donations or other financial support." *Id.* at 20, 51.

RFP No. 18 requests "Any document or communication reflecting Your attempts to solicit donations or financial support of any kind, including but not limited to any discussions with any donors or any others who provided, considered providing, or were asked to provide financial support of any kind." *Id.* at 21, 52–53.

RFP No. 21 requests "All documents and communications regarding Your sources of funding for research, investigation, reporting, publication, or any other work related to X, the Platform, Elon Musk, or Linda Yaccarino." *Id.* at 24, 55.

RFP No. 35 requests "All materials regarding or communications with any donor or potential donor to Media Matters mentioning or regarding in any way this Matter, Elon Musk, Linda Yaccarino, X, Twitter, or the Platform, including misinformation, brand safety, or ad pairing on the Platform." *Id.* at 71.

for its critical reporting.[7] To achieve this goal, X is targeting Media Matters's financial jugular by seeking to expose every one of the organization's donors, even where the donors have not sponsored any work related to any issues in this case.[8]

"[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries," and may not be "conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry." *Hickman v. Taylor*, 329 U.S. 495, 507–08 (1947). "And as Rule 26(b) provides, further limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege." *Id.* Donor identities are extremely sensitive in ways virtually certain to implicate privilege. *See, e.g.*, *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 616–17 (2021). This Court can avoid altogether the need to adjudicate those anticipated disputes by recognizing that requests for donor identities are inappropriately harassing and irrelevant. *See, e.g.*, *Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 205 (2009) ("It is a well-established principle governing the prudent exercise of this Court's jurisdiction that normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the [issue].") (citing *Escambia County v. McMillan*, 466 U.S. 48, 51 (1984) (per curiam)).

To justify its demand for these maximally sensitive documents—the names, personal residences, and communications of individuals who donate to Media Matters, a nonprofit that has attracted powerful and deep-pocketed enemies, *see, e.g.*, *Media Matters for Am. v. Paxton*, No.

---

[7] @ElonMusk, X.com (Nov. 18, 2023, 2:01 AM),
https://x.com/elonmusk/status/1725771191644758037 [https://perma.cc/X4HN-PLJ4].

[8] *See* @TheChiefNerd, X.com (Dec. 10, 2023, 4:24 PM),
https://x.com/thechiefnerd/status/1733960832571122115?s=46&t=PN52ydwTvFusTeuJ-h77RA
[https://perma.cc/6L3M-SHX3] (Mr. Musk vowing that X "will pursue not just the organization, but anyone funding that organization. I want to be clear about that. Anyone funding that organization, will be, we will pursue them.").

24-cv-147 (APM), 2024 WL 1773197, at *20 (D.D.C. Apr. 12, 2024) (enjoining Texas Attorney General from further retaliating against Defendants for their political reporting)—X musters two conclusory sentences. It asserts, first, that "[r]esponsive documents will uncover evidence of Defendants' motives and intentions, individuals with whom they worked on the articles and who funded the project, and reveal Defendants' personal and political vendetta against X." Br. at 4. But X fails to explain how the home addresses of Media Matters donors would be relevant to Defendants' mental states. And whatever the motives and intentions of Media Matters's donors, the *identities* of those donors will in no way reveal *Media Matters's* motives and intentions. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964) ("[T]he state of mind required for actual malice would have to be brought home to the persons in the [news] organization having responsibility for the publication" of the challenged material.); *see also, e.g.*, *Mimms v. CVS Pharmacy, Inc.*, 889 F.3d 865, 868 (7th Cir. 2018) ("It is the state of mind of the speaker that is relevant."). Whatever X's theory tying donor information to Media Matters's motives, any such theory has not been shared with Defendants during conferrals and is missing from X's requests and motion.

X's second sentence of explanation states that the "requests will capture or lead to evidence relevant to Defendants' subjective intent to harm X supporting elements of X's tortious interference and business disparagement claims." Br. at 4. This assertion replicates the first and similarly fails to explain how the identity of every donor—no matter what amount they gave, no matter where they live, no matter what restrictions may have accompanied their funds—could be

relevant to Defendants' subjective intent. Such conclusory pablum fails to meaningfully bring X's requests within the scope of Rule 26.[9]

Donor identities are not "importan[t to] the issues at stake in the action," and the burden of the proposed discovery—on Defendants, and, given the invitation to harassment, on the donors themselves—clearly "outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Judges are trusted to prevent 'fishing expeditions' or an undirected rummaging through . . . records for evidence of some unknown wrongdoing." *Cuomo v. Clearing House Ass'n, LLC*, 557 U.S. 519, 531 (2009). Because X's requests for donor identities are based on no more than a "purely speculative hope that" they will "reveal a long-running and intricately-planned conspiracy," the motion to compel should be denied. *Hamilton v. Geithner*, No. 1:08cv1112 (JCC), 2009 WL 2240358, at \*2 (E.D. Va. July 23, 2009).

### B.   RFP Nos. 13, 14, 15, and 16 are harassing and disproportionate requests for irrelevant financial information.[10]

RFP Nos. 13, 14, 15, and 16 seek financial information about Defendants that is grossly excessive to the needs of this case—particularly where Defendants have already provided X with

---

[9] As an afterthought—literally the last line of their argument—X floats the possibility that donor residences could be relevant to jurisdiction. *See* Br. at 17. To the extent X seeks discovery into whether Defendants have solicited Texas donors to fund Media Matters' journalism about X— Defendants have not, which remains undisputed for purposes of the pending motion to dismiss, *see* Mot. to Dismiss Am. Compl. at 9, ECF No. 41—information identifying the names of actual or prospective donors would not be relevant to that inquiry.

[10] RFP No. 13 requests "All annual financial statements for Media Matters, regardless of time period, since the founding of Media Matters." Defs.' App. at 14, 45.

RFP No. 14 requests "All Your bank statements and all documents sufficient to show Your financial condition during the time period." *Id.* at 15, 46.

RFP No. 15 requests "All materials regarding Your insurers, insurance policies, indemnity rights, or any other third-party payors who may be liable or willing to satisfy any judgment, liability, or obligation of any kind whatsoever that You may currently owe, that You may owe in the future,

sufficient information to determine Media Matters's net worth, and where Defendants are willing to provide further information about Defendants' net worth under penalty of perjury should this Court require it.

While plaintiffs seeking punitive damages in Texas are generally entitled to discovery into a defendant's net worth, none of the cases that X cites permit a plaintiff who alleges punitive damages to "have *carte blanche* access to the private financial life a defendant." *Price v. Lockheed Martin Corp.,* No. 4:04CV123LN, 2006 WL 1686568, at *3 (S.D. Miss. June 19, 2006). But that is precisely what X seeks here—a roving inquiry into Defendants' internal financial lives, with some requests seeking documents dating back decades. Specifically, in addition to seeking *twenty years*' worth of Defendants' IRS Form 990s (RFP No. 12), an excessive request that Defendants have nonetheless responded to and which specifically identifies Media Matters's net worth, *see* Defs.' App. at 94, X also seeks "all annual financial statements . . . since the founding of Media Matters" (RFP No. 13), "all [] bank statements and all documents" that show Defendants' financial condition since April 2021 (RFP No. 14), all insurance and similar policies related to any "obligation of any kind whatsoever" (RFP No. 15), and all documents that show Defendants' "expenses and identity of the recipients of such expenditures, including but not limited to expenses on salaries, travel, equipment, real property, solicitation of donations, and any other expenses whatsoever," since April 2021 (RFP 16).[11]

---

or that You have owed during the time period, including but not limited to any monetary judgment in this matter." *Id.* at 17, 48.

RFP No. 16 requests "Documents sufficient to show Your expenses and the identity of the recipients of such expenditures, including but not limited to expenses on salaries, travel, equipment, real property, solicitation of donations, and any other expenses whatsoever." *Id.* at 18, 49.

[11] In addition to including Defendants' net worth, Defendants' IRS 990 form also requires an organization to list its contributions and grants, income, total revenue, total expenses, total assets,

The substance of these requests, even ignoring their excessive temporal reach, far exceeds the information that a plaintiff seeking a defendant's net worth is entitled to in discovery. Determining a defendant's net worth is not a complicated enterprise. To the contrary, "[n]et worth is calculated by subtracting assets less liabilities." *McVay v. Halliburton Energy Servs. Inc.*, No. 3:07-CV-1101-O, 2010 WL 11583175, at *3 (N.D. Tex. June 18, 2010) (O'Connor, J.). For this reason, courts routinely deny requests seeking more detailed private information about a defendant's financial picture when such information is unnecessary to determining a defendant's net worth. In *Smith v. DeTar Hosp. LLC*, No. CA-V-10-83, 2011 WL 6217497 (S.D. Tex. Dec. 14, 2011), for example, a plaintiff seeking punitive damages in a defamation case sought wide-ranging financial information from the defendant, including an itemization of assets and liabilities, description of homes, real estate, and other possessions, salary, total earnings, W-2s and other documents, and financial statements over several years. *Id.* at *1, *7. The court denied the discovery requests because they were "overly burdensome, excessive, and unnecessary," and instead required the defendants only to respond to an interrogatory stating their current net worth and to produce the most recent financial statement showing such information. *Id.* at *8.

Similarly, in *Tingle v. Hebert*, No. CV 15-626-JWD-EWD, 2017 WL 2335646 (M.D. La. May 30, 2017), the court required a defendant facing a punitive damage claim to produce basic tax documents for the years relevant to the claim at issue but then *denied* further discovery into the party's financial assets, including a request for "any and all documents" regarding the defendant's assets and their fair market value, as "overly broad, invasive, and unreasonably burdensome." *Id.*

---

total liabilities, net assets, and more. *See* Defs.' App. at 83, 91–94. This information more than captures any information that X would be entitled to and satisfies the categories of information that X identifies in its motion. *See* Br. at 4 (arguing X is entitled to information regarding Defendants' "received donations, income, expenditures, [and] financial obligations").

at *7; *see also Callais v. United Rentals N. Am.*, No. CV 17-312-BAJ-RLB, 2018 WL 6517446, at *6 (M.D. La. Dec. 11, 2018) (denying request for defendant to produce "any and all documents that support, contradict, or related to defendant's net profit/loss" as overly broad and instead compelling production only of basic financial documents for a specified time period). Here too, X's requests for *all* annual financial statements (RFP No. 13), *all* bank statements and *all* documents showing Defendants' "financial condition," (RFP No. 14), *all* insurance policies unrelated to any judgment that may result from this litigation (RFP No. 15), and documents showing *all* of Defendants' expenses in various categories and the recipients of those expenses (RFP No. 16) are overly broad and burdensome and should be denied as disproportionate to the needs of this case. *Cf. In re House of Yahweh*, 266 S.W.3d 668, 673–74 (Tex. App. 2008) (holding trial court "abuse[d] its discretion by ordering the production of financial records," including property lists, bank statements, stock ownership statements, donation records, income tax returns, asset lists, and income and budget forecasts "that would not necessarily evidence net worth" or were otherwise cumulative).

Moreover, "[a]llowing litigants to delve without limitation into personal finances not only raises serious privacy concerns, but also provides an opportunity for 'needless abuse and harassment.'" *In re Jacobs*, 300 S.W.3d 35, 46 (Tex. App. 2009) (quoting *Wal–Mart Stores, Inc. v. Alexander,* 868 S.W.2d 322, 331–32 (Tex. 1993) (Gonzalez, J., concurring)). X's attempt to conduct a virtual audit of every Defendant's income and expenses on such a granular level is nothing short of an attempt to harass, intimidate, and crush its adversaries.

If this Court finds Defendants' IRS 990 statements insufficient, Defendants are willing to produce a sworn statement of their current net worth, which should negate the need for any further, probing discovery on the matter. *See, e.g.*, *Regions Ins., Inc. v. Alliant Ins. Servs., Inc.*, No. 3:13-

16

CV-667-HTW-LRA, 2015 WL 1886852, at *3–7 (S.D. Miss. Apr. 24, 2015) (denying requests seeking all financial statements, all documents, and all schedules relating to defendant's net worth for a punitive damages claim, and requiring the defendant only to produce a current certified statement of net worth); *Vertex Aerospace, LLC v. Womble Bond Dickinson, LLP*, No. 309CV00704HTWLGI, 2022 WL 1830715, at *11 (S.D. Miss. Apr. 26, 2022) (denying requests for detailed financial information and requiring defendant to provide only a certified statement of current net worth); *Price*, 2006 WL 1686568, at *3 (denying plaintiff's request for detailed financial information and requiring the defendant instead to produce a "sworn financial statement, fairly outlining, under the penalty of perjury, the Defendant's assets, liabilities, and net worth").

Finally, if the Court does not deny the motion to compel as to RFP Nos. 13, 14, 15, and 16 outright, it should at a minimum limit the temporal period for which Defendants must produce documents to the relevant time periods at issue: 2023, the year in which the alleged defamation occurred, and 2024, when those financial reports become available. *See Sullivan v. Schlumberger Ltd.*, No. 4:20-CV-00662, 2021 WL 3206778, at *4 (E.D. Tex. July 29, 2021) (limiting discovery of relevant financial information for punitive damages claim to only the "most recent calculation of net worth" and not to cumulative requests for the defendant's net worth in prior years); *Briones v. Smith Dairy Queens Ltd.*, No. CIV.A. V-08-48, 2008 WL 4630485, at *5 (S.D. Tex. Oct. 16, 2008) (limiting the plaintiff's discovery of the defendant's financial information to 2007 and 2008, where an alleged discriminatory act took place in 2007 and the discovery was requested in 2008); *Callais*, 2018 WL 6517446, at *6 (limiting the plaintiff's discovery of annual reports, financial statements, and federal income tax returns to the relevant three-year period). Such information should be unnecessary, however, considering Defendants' existing production of multiple years of

tax documents which relay Media Matters's net worth, and Defendants' willingness to produce additional sworn statements of net worth if this Court finds it necessary.

> **C.      RFP Nos. 23, 24, 37, and 38 are harassing requests for irrelevant information about Media Matters employees.[12]**

This tort suit does not give X the right to sift through Defendants' employees' personal papers—particularly those who have nothing to do with this case. That is not legitimate discovery; it is harassment by one of the world's richest men against a nonprofit organization that has met his wrath. When Defendants inquired into the relevance of X's request for Mr. Hananoki's travel documents (RFP No. 23), X suggested that the information could reveal whether Mr. Hananoki was meeting with article sources, X advertisers, or other claim-related individuals around the time that the disputed articles were written and published. In response, Defendants certified that "Mr. Hananoki did not conduct any travel from October 20, 2023, to December 15, 2023 undertaken in relation to his research or drafting of the November 16, 2023 article." Defs.' App. at 119. When X suggested that the information could be relevant to this Court's jurisdiction, Defendants told X that "Mr. Hananoki also did not travel to Texas in any capacity during this time." *Id.* Nevertheless, X insisted that it wanted *everything* that fell within the ambit of the request as written, accounting for Mr. Hananoki's activities and whereabouts at all times during that period regardless of their relevance to the claims at issue. That would presumably include every correspondence about Mr.

---

[12] RFP No. 23 requests "All documents and communications related to or reflecting any travel by Eric Hananoki from October 20, 2023, to December 15, 2023." Defs.' App. at 26, 57.

RFP No. 24 requests "All of Your calendars, journals, schedules, activity logs, visitors' logs, diaries, or appointments from October 20, 2023, to December 15, 2023." *Id.* at 27, 58.

RFP No. 37 requests "All materials regarding or communications with Eric Hananoki." *Id.* at 73.

RFP No. 38 requests "All materials regarding or communications with Matt Gertz." *Id.* at 74.

Hananoki's personal travel over the Thanksgiving holiday and every associated document, down to gas station receipts and sightseeing photos. Rule 26 does not permit that gross intrusion.

RFP No. 24 is similarly unreasonable, seeking, without qualification, "All" of Defendants' "calendars, journals, schedules, activity logs, visitors' logs, diaries, or appointments." *Id.* at 27, 58. Defendants have explained that they will produce documents that "relate to X or any of its employees, policies, or advertisers listed in the amended complaint, or to the November 16 and 17 articles." *Id.* at 59; *see also id.* at 27. Apparently unsatisfied with these claims-related documents, X seeks more. According to the plain text of the request, which X refuses to modify, X demands Defendants' exercise logs, doctors' appointment reminders, personal journals, parent-teacher conference schedules, evidence of private visits with individuals who have nothing to do with this case, and so much more. X cannot point to any authority entitling it to this information.

RFP No. 37, in turn, requests *from Mr. Hananoki* "All materials regarding or communications with Eric Hananoki." *Id.* at 73. By its terms, X demands that Mr. Hananoki produce every single communication he has sent or received—every credit card solicitation delivered to his mailbox, every email with his children's pediatrician, every text message with his wife—for the past three years. And not just communications, but also all other "materials regarding" himself, which would ostensibly include everything from medical prescriptions to family pictures.

Nor is this request warranted as to Defendants Media Matters or Mr. Carusone, who are certain to have "materials regarding" and "communications with" Mr. Hananoki that are entirely irrelevant to the issues at stake in the action, and where the burden and expense of the proposed discovery vastly outweighs any conceivable benefit. *See* Fed. R. Civ. P. 26(b)(1). X's position that Defendants are obligated to produce everything in their possession—and then leave it to X to

decide what is relevant—would impose an immense burden on Defendants and would unnecessarily intrude on Defendants' private and personal lives for reasons unrelated to the case. Defendants have asked X to explain what claim-related documents pertaining to Mr. Hananoki would not otherwise be responsive to RFP Nos. 1, 2, 3, 4, 5, 6, 7, 9, 10, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 28, 30, 31, 32, 33, 34, 36, 38, 39, 40, 41, 42, 43, 44, 45, 46, and 47. Defs.' App. at 74. Because X has no answer to this question, it has no basis to compel production. *See* Fed. R. Civ. P. 26(b)(2)(C) (courts "must limit the frequency or extent of discovery otherwise allowed" if "the discovery sought is unreasonably cumulative or duplicative").

As unreasonable as X's requests related to Mr. Hananoki are, its requests related to non-party Matt Gertz are even more so—and are far afield of its tort claims. Mr. Gertz had no role in authoring the articles at issue in this case. The only reference to Mr. Gertz in the amended complaint is a footnote citation to a single article that Mr. Gertz wrote for Media Matters that provided hyperlinks to Mr. Hananoki's reporting, statements by X officials, and other X-related news. *See* Am. Compl. ¶¶ 6 n.4, 66 n.20, ECF No. 37. If Mr. Gertz has discoverable documents related to the issues in this case, they will be collected, reviewed, and produced as part of Defendants' process of responding to other requests. *See, e.g.*, RFP Nos. 1–4, 30–33 (seeking all documents related to the researching, drafting, publishing, and discussion of the November 16 and November 17 articles); *see also* RFP Nos. 5, 25, 28, 34 (seeking all documents related to Defendants' and their employees' knowledge of X, Elon Musk, and Linda Yaccarino). Any other demand for "materials regarding or communications with Matt Gertz" vindictively targets Mr. Gertz for reasons entirely unconnected to the claims at hand. Because the only additional documents that are uniquely responsive to RFP No. 38 would be irrelevant to any claim or defense, X is not entitled to compel their production.

**D.    RFP No. 46 is a harassing request for irrelevant information about Media Matters's personnel matters.[13]**

X tries—and fails—to justify RFP No. 46, its request to ransack Defendants' Human Resources files. Needless to say, X has not sued Defendants for employment discrimination, nor do the tort claims it brings here have any overlap with the employment-related matters it seeks to compel in RFP No. 46. X purports to seek documents related to "Defendants' past bad behavior," Br. at 5, but there is no generic "bad behavior" tort under Texas common law. Whether any former Media Matters employee accused Defendants of pregnancy-status discrimination, for example, is no more relevant to this suit than whether Media Matters has ever been accused in a slip-and-fall injury on its premises, or whether Mr. Hananoki has ever received a speeding ticket. X purports to desire documents that will reveal whether "Defendants had policies and procedures in place to prevent reporting falsehoods," *id.*, but personnel records are clearly not the place to find journalism policies and procedures.[14]

Similarly, X contends that "instances where Defendants have lied, discriminated, or otherwise defamed in the past are relevant to determining whether they did so again here." *Id.* But Defendants are not accused of "discriminat[ing]" against X, and RFP No. 46 does not otherwise relate to false statements or defamation. X alleged that Defendants committed tortious interference

---

[13] RFP No. 46 requests "All materials reflecting or relating to any reports, accusations, files, notes, personnel records, complaints, mediations, arbitrations, lawsuits (including potential or threatened lawsuits that were never filed), or investigations involving allegations that You took adverse employment actions or otherwise discriminated against or took any action against another person or persons on the basis of a protected class, including but not limited to race, color, national origin, religion, sex, sexual orientation, language status, or pregnancy status." Defs.' App. at 79.

[14] Those are expressly covered by RFP No. 39, which seeks "All materials reflecting or regarding any policies, practices, procedures, codes of conduct, ethical standards, or other guidelines for appropriate investigation and reporting for Media Matters' articles, including but not limited to policies concerning fact-checking, defamation, and contacting sources or subjects of articles." Defs.' App. at 75.

with contract, business disparagement, and interference with prospective economic advantage. Am. Compl. ¶¶ 65–88. None of these torts have anything to do with identity-based discrimination or Media Matters's employment matters, and so nothing in RFP No. 46 is relevant to any claims or defenses in this action.

## CONCLUSION

The Court should deny X's motion to compel and hold that Defendants are not precluded from invoking the First Amendment privilege in future discovery disputes.

Dated: May 29, 2024.

Respectfully submitted,
*/s/ Andrew LeGrand*

GIBSON, DUNN & CRUTCHER LLP
Andrew LeGrand (TX 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.* (CA 132099)
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed* (NY 4382040)
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

ELIAS LAW GROUP LLP
Abha Khanna* (WA 42612)
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Jacob D. Shelly* (DC 90010127)
Daniela Lorenzo* (NY 5780457)
250 Massachusetts Avenue NW, Suite 400
Washington, DC 20001
T: (202) 968-4490
F: (202) 986-4498
jshelly@elias.law
dlorenzo@elias.law

* Admitted *pro hac vice*

*Counsel for Defendants Media Matters for America, Angelo Carusone, and Eric Hananoki*

**CERTIFICATE OF SERVICE**

On May 29, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Andrew LeGrand*
Andrew LeGrand