## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

**X CORP.,**

  **Plaintiff,**

  **v.**

**MEDIA MATTERS FOR AMERICA, et al.,**

  **Defendants.**

**Civil Action No. 4:23-cv-01175-O**

## APPENDIX OF EXHIBITS TO DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Defendants Media Matters for America, Angelo Carusone, and Eric Hananoki present the following exhibits to accompany their Response to Plaintiff's Motion to Compel Production of Documents:

| Exhibit No. | Description | Appendix Page Number |
|---|---|---|
| 1 | Defendants Media Matters for America and Eric Hananoki's Amended Responses and Objections to Plaintiff's First Set of Requests for Production | 3–33 |
| 2 | Defendant Angelo Carusone's Amended Responses and Objections to Plaintiff's First Set of Requests for Production to Defendant Angelo Carusone | 34–64 |
| 3 | Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone's Responses and Objections to Plaintiff's Second Set of Requests for Production | 65–81 |
| 4 | IRS Form 990 (2023) | 82–94 |
| 5 | Email Exchange Between Counsel re: X/MMFA: Meet and Confer | 95–141 |
| 6 | Declaration of Andrew LeGrand | 142–146 |

Dated: May 29, 2024

Respectfully submitted,
*/s/ Andrew LeGrand*

GIBSON, DUNN & CRUTCHER LLP
Andrew LeGrand (TX 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com

ELIAS LAW GROUP LLP
Abha Khanna* (WA 42612)
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Theodore J. Boutrous, Jr.* (CA 132099)
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Jacob D. Shelly* (DC 90010127)
Daniela Lorenzo* (NY 5780457)
250 Massachusetts Avenue NW, Suite 400
Washington, DC 20001
T: (202) 968-4490
F: (202) 986-4498
jshelly@elias.law
dlorenzo@elias.law

Amer S. Ahmed* (NY 4382040)
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

* Admitted *pro hac vice*

*Counsel for Defendants Media Matters for America, Angelo Carusone, and Eric Hananoki*

## CERTIFICATE OF SERVICE

On May 29, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Andrew LeGrand*
Andrew LeGrand

2

# Exhibit 1

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

|  |  |
|---|---|
| X CORP., | |
| *Plaintiff*, | |
| v. | Civil Action No. 4:23-cv-01175-O |
| MEDIA MATTERS FOR AMERICA, *et al.*, | |
| *Defendants*. | |

## DEFENDANTS MEDIA MATTERS FOR AMERICA AND ERIC HANANOKI'S AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION

Defendants Media Matters for America ("Media Matters") and Mr. Eric Hananoki,[1] through their undersigned counsel, submit these amended responses and objections to Plaintiff X Corp.'s First Set of Requests for Production ("Discovery Requests" or "Requests"), initially served on March 11, 2024. Defendants' amendments are made based on conferral among counsel.

## PRELIMINARY STATEMENT

The responses set forth herein are based on the information and documents reasonably available to Defendants at this time, but discovery in this matter, including Defendants'

---

[1] Plaintiff's First Set of Requests for Production were served on February 5, 2024, prior to when Plaintiff amended its complaint to include Angelo Carusone as a defendant. Therefore, these Responses and Objections are not on behalf of Mr. Carusone. All references to Defendants herein are to Media Matters and Mr. Hananoki only.

1

investigation into the issues raised in this lawsuit and documents responsive to Plaintiff's Discovery Requests is still ongoing. Defendants reserve their right to alter, supplement, amend, correct, clarify, or otherwise modify these responses and objections, to assert additional objections or privileges in any subsequent supplemental response(s) and/or on a document-by-document basis, or to move for a Court order if deemed appropriate.

By making the accompanying responses and objections to Plaintiff's Discovery Requests, Defendants do not waive, and hereby expressly reserve, their right to assert all objections as to the admissibility of such responses and documents into evidence in this action, or in any other proceedings.

Produced materials will adhere to formal ESI protocol, privilege material agreement, and any protective order agreed to by Counsel for Plaintiff and Defendants and entered by the Court and will be produced on a rolling basis. As of the date of these Amended Responses and Objections, the Parties have yet to agree upon or submit for the Court's approval any of these documents. Any previous or forthcoming production by Defendants is made without waiver of their rights and privileges according to those documents once they are finalized and entered by the Court.

Moreover, Defendants maintain that this Court has no personal jurisdiction over Media Matters or Eric Hananoki and that the Northern District of Texas is not the proper venue for this dispute. *See* Defendants' Brief in Support of their Motion to Dismiss, ECF 41 at Sections I and II; Defendants' Reply in Support of their Motion to Dismiss, ECF 51 at Sections I and II. Defendants provide these responses and objections subject to and without waiving any of their arguments for dismissal.

## RESPONSES TO INDIVIDUAL REQUESTS

**REQUEST FOR PRODUCTION NO. 1**:  All versions of the November 16, 2023 Article, including but not limited to all drafts, outlines, or notes thereof and any subsequent edits, updates, and/or amendments thereto, and including all prior versions previously available on the Website.

**OBJECTIONS**: The Request does not define the term "notes," but Defendants interpret the term as used here consistent with its ordinary meaning to ask for written records created in the process of reporting, writing, and publishing the November 16, 2023 Article. In its May 24, 2024 Motion to Compel, Plaintiff indicated that it agrees with Defendants' definition. *See* ECF 60, Pl.'s Mot. to Compel, at 7.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 2**:   All source materials, research, screenshots, Platform account data, and other documents or communications relied on, referenced, created, or considered by You in conceiving of, investigating, working on, writing, publishing, and disseminating the November 16, 2023 Article.

**OBJECTIONS**: The Request does not define the term "Platform account data." After conferring with Plaintiff, Defendants interpret the term as used here to ask for usernames, posts, chats, and comments of, as well as emails generated from, accounts on the X Platform relied on, referenced, created, or considered in investigating, working on, writing, publishing, and disseminating the referenced article. *See also* ECF 60, Pl.'s Mot. to Compel, at 7. Plaintiff also

3

includes "login information" in their definition of Platform account data, but Defendants object to this as not relevant and disproportionate to the needs of the case since it seeks sensitive username and password information. Defendants further object to this Request because it seeks Platform account data that is already within X's possession and is therefore more convenient, less burdensome, and less expensive for X to access outside of discovery.

**RESPONSE**: The Parties are still discussing the extent to which some or all of the Platform account data is in the custody, possession, and control of X and more easily accessible by X. Once the Parties have resolved that question, Defendants will provide Plaintiff with the relevant account handles.

Defendants will otherwise produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 3**:  All documents and communications related to the November 16, 2023 Article, including but not limited to internal communications, communications with the public (including social media posts), communications with donors, communications with journalists, and communications with the advertisers mentioned in the November 16, 2023 Article.

**OBJECTION**: Defendants object to the disclosure of donor identification information as harassing. Disclosure of donor identifying information can lead to donors being harassed for and

deterred from affiliating with organizations they support.[2]  Indeed, Elon Musk himself has called

Media Matters "an evil propaganda machine that can go to hell" and vowed that X "will pursue

not just the organization but anyone funding that organization. I want to be clear about that anyone

funding that organization, will be, we will pursue them".[3]  Plaintiff's request for this information

is inappropriate and not proportional to the needs of this case.

**RESPONSE**: Based on this objection, Defendants will not produce identifying donor

information in response to this request. Defendants will otherwise produce on a rolling basis any

responsive, nonprivileged documents in their possession, custody, or control that they are able to

locate following a reasonable search. Defendants are in the process of collecting and reviewing

documents and are not presently withholding any responsive documents that they have identified.

Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 4**:   All audio and video recordings of You discussing or

referencing in any way the November 16, 2023 Article, including but not limited to documents

---

[2] *See, e.g.*, *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 616–17 (2021) ("The petitioners here, for example, introduced evidence that they and their supporters have been subjected to bomb threats, protests, stalking, and physical violence. App. in No. 19–251, at 256, 291–292. Such risks are heightened in the 21st century and seem to grow with each passing year, as 'anyone with access to a computer [can] compile a wealth of information about' anyone else, including such sensitive details as a person's home address or the school attended by his children") (internal citation omitted); *see also Koch Ally Says He Received Death Threats*, Matt Reynolds, Courthouse News (Feb.25, 2016) (libertarian businessman whose affiliation with the Americans for Prosperity Foundation was leaked said "he received death threats and had considered quitting the foundation because he was worried about his family's safety and the adverse effect of protests outside his North Carolina stores") (last accessed May 28, 2024).

[3] *@TheChiefNerd*, X.com (Dec. 10, 2023, 4:24 PM), [https://perma.cc/6L3M-SHX3] (last accessed May 28, 2024).

reflecting any URLs for any such recordings of You that are in the possession, custody, or control of third parties.

**OBJECTIONS**: Defendants object to this Request because it purports to seek materials "in the possession, custody, or control of third parties" and therefore falls outside the scope of Fed. R. Civ. P. 26 and 34.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents. Defendants will not search for or produce any documents that are in the possession, custody, or control of third parties.

**REQUEST FOR PRODUCTION NO. 5**:  All documents and communications discussing or mentioning X, the Platform, Elon Musk, or Linda Yaccarino, including but not limited to email updates, "Action Updates," or "Weekly Updates," that were sent out via any email, text, phone, social media, or other distribution list that You maintain.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 6**: All documents and communications concerning content moderation on the Platform.

    **RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 7**: All documents and communications concerning advertising on the Platform, including but not limited to documents and communications concerning any particular advertiser or potential advertiser on the Platform.

    **OBJECTION**: The Request does not define "advertiser," but Defendants interpret the term to mean all X advertisers listed in Plaintiff's amended complaint. To the extent Plaintiff means something different, Defendants object to this Request as vague because Defendants do not know the identity of all the entities that have advertised on X, much less all entities that X may view as a "potential advertiser".

    **RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Based on the objection above, Defendants will not search for or produce any documents concerning advertisers not listed in X's amended complaint. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

7

**REQUEST FOR PRODUCTION NO. 8**:   All communications with X's advertisers concerning the Platform, including but not limited to communications regarding their decision to advertise on the Platform.

**OBJECTION**: The Request does not define "X's advertisers," but Defendants interpret the term to mean all X advertisers listed in Plaintiff's amended complaint**.** To the extent Plaintiff means something different, Defendants object to this Request as vague because Defendants do not know the identity of all of X's advertisers.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Based on the objection above, Defendants will not search for or produce any documents concerning advertisers not listed in X's amended complaint. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 9**:   All communications with X's advertisers about advertising with or financially supporting You.

**OBJECTION**: The Request does not define "X's advertisers," but Defendants interpret the term to mean all advertisers listed in X's amended complaint**.** To the extent Plaintiff means something different, Defendants object to this Request as vague because Defendants do not know the identity of all of X's advertisers.

**RESPONSE**: Neither Media Matters nor Eric Hananoki has any documents responsive to this request for the advertisers listed in X's amended complaint.

**REQUEST FOR PRODUCTION NO. 10**: All posts, comments, direct messages, and any other account data of any kind whatsoever posted by You on the Platform, including but not limited to the @mmfa and @ehananoki accounts and any accounts used in the creation of the November 16, 2023 Article.

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires a blanket production of "[a]ll posts, comments, direct messages, and any other account data of any kind whatsoever" of various accounts, even where the information it seeks is immaterial or unrelated to any of Plaintiff's tort claims, to any computation of damages, or to any of Defendants' defenses. Defendants further object to this Request because it seeks data that is already within X's possession and is therefore more convenient, less burdensome, and less expensive for X to access outside of discovery.

**RESPONSE**: The Parties are still discussing the extent to which some or all of the Platform account data is in the custody, possession, and control of X and more easily accessible by X. Once the Parties have resolved that question, Defendants will provide Plaintiff with account handles related to the claims and issues in this case and otherwise produce on a rolling basis any responsive, nonprivileged materials related to the claims and issues in this case that are in their possession, custody, or control and that they are able to locate following a reasonable search.

**REQUEST FOR PRODUCTION NO. 11**: All communications with appointed or elected public officials, candidates for public office, candidate campaign committees, political party committees, PACs, 501(c)(4) groups, and any other political actors or political operatives.

    **OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires a blanket production of "[a]ll communications" with an unquantifiable number of potential individuals and entities on unspecified topics, even where these are immaterial and unrelated to any of Plaintiff's tort claims, to any computation of damages, or to any of Defendants' defenses. Indeed, there are over 500,000 public officials in the U.S.,[4] not counting individuals not currently in office or candidates; over 70,000 registered 501(c)(4)s[5]; and over 8,500 PACs.[6]

    **RESPONSE**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time. Pursuant to X's representations at the May 27, 2024 meet-and-confer, Defendants await a revised request that is tailored to the claims and defenses at issue in this case.

---

[4] *How many politicians are there in the USA? (Infographic),* PoliEngine, https://poliengine.com/blog/how-many-politicians-are-there-in-the-us (last accessed May 27, 2024).

[5] *How many nonprofits are there in the US?*, USA Facts (Nov. 2024), shttps://usafacts.org/articles/how-many-nonprofits-are-there-in-the-us/ (last accessed May 27, 2024).

[6] *Committees*, Federal Election Commission, https://www.fec.gov/data/committees/?committee_type=O (last accessed May 27, 2024); *see also Committees*, Federal Election Commission, https://www.fec.gov/data/committees/?committee_type=V&committee_type=W (last accessed May 27, 2024).

**REQUEST FOR PRODUCTION NO. 12**: All IRS Form 990s for Media Matters, regardless of time period, since the founding of Media Matters.

**RESPONSE**: Defendants have produced and will continue to produce on a rolling basis Media Matters's Form 990 tax returns.

**REQUEST FOR PRODUCTION NO. 13**: All annual financial statements for Media Matters, regardless of time period, since the founding of Media Matters.

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires a blanket production of "[a]ll annual financial statements for Media Matters" since the organization's founding twenty years ago, with no indication of why this information would be material or related to the claims or defenses at issue in this case. Indeed, the Platform was not founded until 2006, two years *after* Media Matters was founded. While federal courts allow plaintiffs bringing punitive damages to engage in pretrial discovery of financial information, *Briones v. Smith Dairy Queens, Ltd.*, No. 08-48, 2008 WL 4630485, at *5 (S.D. Tex. Oct. 16, 2008), this does not provide plaintiff "*carte blanche* to obtain all information [it] seeks," *Barback v. Fisher*, No. CV 20-515-SDD-EWD, 2022 WL 965914, at *8 (M.D. La. Mar. 30, 2022). Indeed, courts allowing the discovery of financial information for punitive damages generally limit the temporal scope of those documents. *See, e.g.*, *Callais v. United Rentals North America*, No. 17-312, 2018 WL 6517446, at *6 (M.D. La. Dec. 11, 2018) (compelling production of annual reports, financial statements, and federal income tax returns for a three-year period); *Briones*, 2008 WL

11

4630485, at *5 (limiting the plaintiff's discovery of the defendant's financial information to 2007 and 2008, where an alleged discriminatory act took place in 2007 and the discovery was requested in 2008). A time period that would not produce relevant documents to the issue at hand is not reasonable and may be overly broad. *See, e.g.*, *Barback v. Fisher*, No. CV 20-515-SDD-EWD, 2022 WL 965914, at *9 (M.D. La. Mar. 30, 2022). Moreover, Defendants object to this request as duplicative of Request for Production No. 12, as Media Matters's 990 forms contain comprehensive information on Media Matter's annual finances. *See, e.g.*, *Vertex Aerospace, LLC v. Womble Bond Dickinson*, LLP, No. 309CV00704HTWLGI, 2022 WL 1830715, at *11 (S.D. Miss. Apr. 26, 2022) (holding request into assets and liabilities were disproportionate to the needs of the case, given the company's insurance coverage and its ability to provide a certified statement of its net worth).

**RESPONSE**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time. Defendants direct Plaintiff to Media Matters's 990 forms, most of which have already been produced to Plaintiff. Any remaining 990 forms will also be produced. These forms provide a comprehensive financial picture of Media Matters, including its net worth.

**REQUEST FOR PRODUCTION NO. 14**: All Your bank statements and all documents sufficient to show Your financial condition during the time period.

**OBJECTIONS**: Defendants object to this Request as being overly broad, vague, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires a blanket production of "[a]ll bank statements and all documents

12

sufficient to show [Defendants'] financial condition," with no indication of why this information—including personal financial information of an individual reporter—would be material or related to the claims or defenses at issue in this case. While federal courts allow plaintiffs bringing punitive damages to engage in pretrial discovery of financial information, *Briones v. Smith Dairy Queens, Ltd.*, No. 08-48, 2008 WL 4630485, at *5 (S.D. Tex. Oct. 16, 2008), this does not provide plaintiff "*carte blanche* to obtain all information [it] seeks," *Barback v. Fisher*, No. CV 20-515-SDD-EWD, 2022 WL 965914, at *8 (M.D. La. Mar. 30, 2022). *See, e.g.*, *Briones*, 2008 WL 4630485, at *7 (limiting discovery of relevant financial information to defendant's annual reports and/or financial statements); *see also Smith v. DeTar Hosp. LLC*, No. CIV.A. V-10-83, 2011 WL 6217497, at *8 (S.D. Tex. Dec. 14, 2011) (limiting financial disclosures to defendant's most recent financial statement stating their current net worth and finding that all other discovery requests relating to net worth—including itemization of assets and liabilities, description of homes, real estate, and other possessions, salary, total earnings, W-2s and other documents, and financial statements over several years—were overly burdensome, excessive, and unnecessary); *Tingle v. Hebert*, No. CV 15-626-JWD-EWD, 2017 WL 2335646, at *7 (M.D. La. May 30, 2017) (finding a request for "'any and all documents' regarding virtually everything [defendant] owns" was "unreasonably burdensome"); *Regions Ins., Inc. v. Alliant Ins. Servs., Inc.*, No. 3:13-CV-667-HTW-LRA, 2015 WL 1886852, at *7 (S.D. Miss. Apr. 24, 2015) (holding defendant was only required to provide a current net worth statement, certified by independent auditors, with any supporting documentation that the auditors include with its statement); *Hunter v. Copeland*, No. CIV.A. 03-2584, 2004 WL 1562832, at *5 (E.D. La. July 12, 2004) (finding a request for "statements for all credit cards used by [an employee]" overly broad because it exceeded the limited subject matter of the litigation).

**RESPONSE**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time. Defendants direct Plaintiff to Media Matters's 990 forms, most of which have already been produced to Plaintiff. Any remaining 990 forms will also be produced. These forms provide a comprehensive financial picture of Media Matters, including its net worth.

**REQUEST FOR PRODUCTION NO. 15**: All materials regarding Your insurers, insurance policies, indemnity rights, or any other third-party payors who may be liable or willing to satisfy any judgment, liability, or obligation of any kind whatsoever that You may currently owe, that You may owe in the future, or that You have owed during the time period, including but not limited to any monetary judgment in this matter.

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires a blanket production of "[a]ll materials regarding Your insurers, insurance policies, indemnity rights, or any other third-party payors who may be liable or willing to satisfy any judgment, liability, or obligation *of any kind whatsoever*," even where the information would be immaterial or unrelated to any of Plaintiff's tort claims, to any computation of damages, or to any of Defendants' defenses such as employee medical and dental insurance policies.

**RESPONSE**: Defendants direct Plaintiff to Section IV of Defendants' Initial Disclosures, served to counsel on March 8, 2024 via email, Defendants' Amended Initial Disclosures, served to counsel on May 8, 2024, and any subsequent revisions to Defendants' Initial Disclosures, which, pursuant to Federal Rule of Civil Procedure 26 (a)(1)(A)(iv), lists "any insurance agreement under

14

**17**

which an insurance business may be liable to satisfy all or part of a possible judgment in th[is] action or to indemnify or reimburse for payments made to satisfy the judgment [in this litigation]." Defendants will produce any responsive, non-privileged documents related to the issues in this litigation. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 16**: Documents sufficient to show Your expenses and the identity of the recipients of such expenditures, including but not limited to expenses on salaries, travel, equipment, real property, solicitation of donations, and any other expenses whatsoever.

    **OBJECTIONS**: Defendants object to this Request as being overly broad, vague, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires producing a high-volume of sensitive financial information— including a limitless amount of unrestricted "expenses"—that are immaterial or unrelated to any of Plaintiff's tort claims, to any computation of damages, or to any of Defendants' defenses. While federal courts allow plaintiffs bringing punitive damages to engage in pretrial discovery of financial information, *Briones v. Smith Dairy Queens, Ltd.*, No. 08-48, 2008 WL 4630485, at *5 (S.D. Tex. Oct. 16, 2008), this does not provide plaintiff "*carte blanche* to obtain all information [it] seeks," *Barback v. Fisher*, No. CV 20-515-SDD-EWD, 2022 WL 965914, at *8 (M.D. La. Mar. 30, 2022). *See, e.g.*, *Briones*, 2008 WL 4630485, at *7 (limiting discovery of relevant financial information to defendant's annual reports and/or financial statements); *see also Smith v. DeTar Hosp. LLC*, No. CIV.A. V-10-83, 2011 WL 6217497, at *8 (S.D. Tex. Dec. 14, 2011) (limiting

financial disclosures to defendant's most recent financial statement stating their current net worth and finding that all other discovery requests relating to net worth—including itemization of assets and liabilities, description of homes, real estate, and other possessions, salary, total earnings, W-2s and other documents, and financial statements over several years—were overly burdensome, excessive, and unnecessary); *Tingle v. Hebert*, No. CV 15-626-JWD-EWD, 2017 WL 2335646, at *7 (M.D. La. May 30, 2017) (finding a request for "'any and all documents' regarding virtually everything [defendant] owns" was "unreasonably burdensome"); *Regions Ins., Inc. v. Alliant Ins. Servs., Inc.*, No. 3:13-CV-667-HTW-LRA, 2015 WL 1886852, at *7 (S.D. Miss. Apr. 24, 2015) (holding defendant was only required to provide a current net worth statement, certified by independent auditors, with any supporting documentation that the auditors include with its statement); *Hunter v. Copeland*, No. CIV.A. 03-2584, 2004 WL 1562832, at *5 (E.D. La. July 12, 2004) (finding a request for "statements for all credit cards used by [an employee]" overly broad because it exceeded the limited subject matter of the litigation); *Hunter v. Copeland*, No. CIV.A. 03-2584, 2004 WL 1562832, at *5 (E.D. La. July 12, 2004) (finding a request for "documents evidencing transfers of money" to an employee, which largely included salary payments, to be overly broad).

**RESPONSE**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time. Defendants direct Plaintiff to Media Matters's 990 forms, most of which have already been produced to Plaintiff. Any remaining 990 forms will also be produced. These forms provide a comprehensive financial picture of Media Matters, including its net worth.

**REQUEST FOR PRODUCTION NO. 17**: Documents sufficient to show the identity of all Your donors or any others who provide financial support of any kind, their residence, the time and place of their donation or provision of financial support, and the amount of their donations or other financial support.

OBJECTIONS: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request seeks a high-volume of sensitive financial information "of any kind" that is immaterial or unrelated to any of Plaintiff's tort claims, to any computation of damages, or to any of Defendants' defenses. *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 507–08, 67 S. Ct. 385, 392, 91 L. Ed. 451 (1947) ("[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries. As indicated by Rules 30(b) and (d) and 31(d), limitations inevitably arise when it can be shown that the examination is being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry. And as Rule 26(b) provides, further limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege."). Moreover, disclosure of donor identifying information can lead to donors being harassed for and deterred from affiliating with organizations they support.[7]

---

[7] *See, e.g.*, *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 616–17 (2021) ("The petitioners here, for example, introduced evidence that they and their supporters have been subjected to bomb threats, protests, stalking, and physical violence. App. in No. 19–251, at 256, 291–292. Such risks are heightened in the 21st century and seem to grow with each passing year,

17

Indeed, Elon Musk himself has called Media Matters "an evil propaganda machine that can go to hell" and vowed that X "will pursue not just the organization but anyone funding that organization. I want to be clear about that anyone funding that organization, will be, we will pursue them".[8] Plaintiff's request for this information is inappropriate and not proportional to the needs of this case.

**RESPONSE**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time. Defendants direct Plaintiff to Media Matters's 990 forms, most of which have already been produced to Plaintiff. Any remaining 990 forms will also be produced. These forms provide a comprehensive financial picture of Media Matters, including its net worth.

**REQUEST FOR PRODUCTION NO. 18**: Any document or communication reflecting Your attempts to solicit donations or financial support of any kind, including but not limited to any discussions with any donors or any others who provided, considered providing, or were asked to provide financial support of any kind.

---

as 'anyone with access to a computer [can] compile a wealth of information about' anyone else, including such sensitive details as a person's home address or the school attended by his children") (internal citation omitted); *see also Koch Ally Says He Received Death Threats*, Matt Reynolds, Courthouse News (Feb.25, 2016) (libertarian businessman whose affiliation with the Americans for Prosperity Foundation was leaked said "he received death threats and had considered quitting the foundation because he was worried about his family's safety and the adverse effect of protests outside his North Carolina stores") (last accessed May 28, 2024).

[8]*@TheChiefNerd*, X.com (Dec. 10, 2023, 4:24 PM), [https://perma.cc/6L3M-SHX3] (last accessed May 28, 2024).

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request seeks information about any communications soliciting financial support "of any kind" that is immaterial or unrelated to any of Plaintiff's tort claims, to any computation of damages, or to any of Defendants' defenses. *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 507–08, 67 S. Ct. 385, 392, 91 L. Ed. 451 (1947) ("[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries. As indicated by Rules 30(b) and (d) and 31(d), limitations inevitably arise when it can be shown that the examination is being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry. And as Rule 26(b) provides, further limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege."). Moreover, disclosure of donor identifying information can lead to donors being harassed for and deterred from affiliating with organizations they support.[9] Indeed, Elon Musk himself has called Media Matters "an evil propaganda machine that can go to hell" and vowed that X "will pursue not just the organization but anyone funding

---

[9] *See, e.g.*, *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 616–17 (2021) ("The petitioners here, for example, introduced evidence that they and their supporters have been subjected to bomb threats, protests, stalking, and physical violence. App. in No. 19–251, at 256, 291–292. Such risks are heightened in the 21st century and seem to grow with each passing year, as 'anyone with access to a computer [can] compile a wealth of information about' anyone else, including such sensitive details as a person's home address or the school attended by his children") (internal citation omitted); *see also Koch Ally Says He Received Death Threats*, Matt Reynolds, Courthouse News (Feb.25, 2016) (libertarian businessman whose affiliation with the Americans for Prosperity Foundation was leaked said "he received death threats and had considered quitting the foundation because he was worried about his family's safety and the adverse effect of protests outside his North Carolina stores") (last accessed May 28, 2024).

19

that organization. I want to be clear about that anyone funding that organization, will be, we will

pursue them."[10] Plaintiff's request for this information is inappropriate and not proportional to the

needs of this case.

    **RESPONSE**: Based on the foregoing objections, Defendants will not produce documents

in response to this Request at this time.


    **REQUEST FOR PRODUCTION NO. 19**: Documents sufficient to identify the recipients of any

communications or email updates, "Action Updates," or "Weekly Updates" sent out via any email

list that You maintain, as well as any information related to those recipients' locations, including

but not limited to any self-reported location data and their IP addresses.

    **OBJECTION**: Defendants object to this Request as being overly broad, not reasonably

particularized, harassing, and disproportionate to the needs of this case, and for seeking documents

not relevant to any claim or defense asserted in this litigation. The identities of individuals who

subscribe to Defendants' email lists are not relevant to any claims or defenses in this case, and

their disclosure is reasonably likely to subject recipients to harassment. *See NAACP v. State of Ala.

ex rel. Patterson*, 357 U.S. 449, 462 (1958) (recognizing disclosure of nonprofit organization's

membership lists would likely result in harassment).

    **RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged

documents in their possession, custody, or control that they are able to locate following a

reasonable search for documents that identify the location of recipients of any communications or

---

[10]*@TheChiefNerd*, X.com (Dec. 10, 2023, 4:24 PM), [https://perma.cc/6L3M-SHX3] (last
accessed May 28, 2024).

email updates, "Action Updates," or "Weekly Updates" sent by Defendants via any email list. Defendants will not provide documents that disclose identifying information of individual recipients.

**REQUEST FOR PRODUCTION NO. 20**: Documents sufficient to show Media Matters' organizational structure, including Board membership, leadership structure, and that of any affiliated or related entities.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 21**: All documents and communications regarding Your sources of funding for research, investigation, reporting, publication, or any other work related to X, the Platform, Elon Musk, or Linda Yaccarino.

**OBJECTIONS**: Defendants object to this Request as harassing. *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 507–08, 67 S. Ct. 385, 392, 91 L. Ed. 451 (1947) ("[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries. As indicated by Rules 30(b) and (d) and 31(d), limitations inevitably arise when it can be shown that the examination is being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry. And as Rule 26(b) provides, further limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege."). Disclosure

21

of donor identifying information can lead to donors being harassed for and deterred from affiliating with organizations they support.[11]  Indeed, Elon Musk himself has called Media Matters "an evil propaganda machine that can go to hell" and vowed that X "will pursue not just the organization but anyone funding that organization. I want to be clear about that anyone funding that organization, will be, we will pursue them".[12]  Plaintiff's request for this information is inappropriate and not proportional to the needs of this case.

**RESPONSE**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time. In any event, Media Matters does not receive any dedicated funding that is restricted for research, investigation, reporting, publication, or any other work related to X, the Platform, Elon Musk, or Linda Yaccarino.

**REQUEST FOR PRODUCTION NO. 22**: All documents concerning, and communications with, any third-party public relations, advertising, marketing, communications, or similar firm that

---

[11] *See, e.g.*, *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 616–17 (2021) ("The petitioners here, for example, introduced evidence that they and their supporters have been subjected to bomb threats, protests, stalking, and physical violence. App. in No. 19–251, at 256, 291–292. Such risks are heightened in the 21st century and seem to grow with each passing year, as 'anyone with access to a computer [can] compile a wealth of information about' anyone else, including such sensitive details as a person's home address or the school attended by his children") (internal citation omitted); *see also Koch Ally Says He Received Death Threats*, Matt Reynolds, Courthouse News (Feb.25, 2016) (libertarian businessman whose affiliation with the Americans for Prosperity Foundation was leaked said "he received death threats and had considered quitting the foundation because he was worried about his family's safety and the adverse effect of protests outside his North Carolina stores") (last accessed May 28, 2024).

[12] *@TheChiefNerd*, X.com (Dec. 10, 2023, 4:24 PM), [https://perma.cc/6L3M-SHX3] (last accessed May 28, 2024).

You have contracted with, or that you have contacted in any capacity about the November 16, 2023 Article.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 23**: All documents and communications related to or reflecting any travel by Eric Hananoki from October 20, 2023, to December 15, 2023.

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, and as seeking documents not relevant to any claim or defense asserted in this litigation. This Request impermissibly requires blanket production of "[a]ll documents and communications related to or reflecting *any* travel" by Mr. Hananoki during the specified time period, even where not reasonably related to the issues in dispute in this case or the parties' defenses. This request also is harassing to Mr. Hananoki, as he is being asked to search through and disclose any and all documents—including flights, hotels, meal receipts, texts, calls, photographs, and more—related to any travel, including personal travel with his family that has no relevance to the claims or defenses being litigated in this case and despite Defendants' assurances that Mr. Hananoki did not conduct any work-related travel during the time period. Indeed, Defendants understand from the Parties' meet-and-confers that Plaintiff seeks to account for Mr. Hananoki's whereabouts and activities during this time period without qualification. Moreover, Defendants further object to this Request as

23

duplicative of and/or cumulative of other document requests, including Document Requests Nos. 1, 2, 3, 4, 5, 6, 7, 9, 10, 14, 15, 16,17, 18, 19, 20, 21, 22, 24, 25, 28, 30, 31, 32, 33, 34, 36, 37 38, 39, 40, 41, 42, 43, 44, 45, 46, and 47. Any relevant information Plaintiff seeks with this request, beyond what Defendants have already certified, are captured by X's many other broad requests.

     **RESPONSE**: Defendants do not possess any responsive documents relevant to any claim or defense in this litigation because, as Defendants made clear to Plaintiff in their email of May 2, 2024, Mr. Hananoki did not conduct any travel from October 20, 2023, to December 15, 2023 undertaken in relation to his research or drafting of the November 16, 2023 article. In addition, he did not travel to Texas in any capacity during this time.

**REQUEST FOR PRODUCTION NO. 24**: All of Your calendars, journals, schedules, activity logs, visitors' logs, diaries, or appointments from October 20, 2023, to December 15, 2023.

     **OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request impermissibly requires blanket production of "[a]ll calendars, journals, schedules, activity logs, visitors' logs, diaries, or appointments" during the specified time period, even where not reasonably related to the issues in dispute in this case. This request is also harassing because it is asking Defendants to essentially account for all of their activities and appointments, including personal activities and appointments, without qualification.

     **RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents related to any of X's employees, policies, or advertisers listed in the amended complaint or the issues raised in the amended complaint that are in their possession, custody, or control and

24

that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 25**: All documents and communications related to or reflecting Your involvement in or knowledge of X and any related entities, individuals, and platforms.

**OBJECTIONS**: The terms "any related entities, individuals, and platforms" are vague and undefined. Defendants will accordingly interpret "related entities" to include X Holdings Corp., X's holding company. Defendants will interpret "related individuals" to mean former and current X or Twitter employees, executives, and board members. Defendants will interpret "related platforms" to include Twitter. To the extent Plaintiff means something else with any of these terms, Defendants object to the request as vague absent identification from Plaintiff of who and what it considers to be "related entities, individuals, and platforms."

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control, based on their understanding of the relevant terms, that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 26**: All documents and communications related to or reflecting Media Matters' Board's involvement in or knowledge of X and any related entities, individuals, and platforms.

**OBJECTIONS**: The terms "any related entities, individuals, and platforms" are vague and undefined. Defendants will accordingly interpret "related entities" to include X Holdings Corp., X's holding company. Defendants will interpret "related individuals" to mean former and current X or Twitter employees, executives, and board members. Defendants will interpret "related platforms" to include Twitter. To the extent Plaintiff means something else with any of these terms, Defendants object to the request as vague absent identification from Plaintiff of who and what it considers to be "related entities, individuals, and platforms." Defendants also object to this request because it seeks materials outside of Defendants' possession, custody, or control in violation of Fed. R. Civ. P. 26 and 34.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control, based on their understanding of the relevant terms, that they are able to locate following a reasonable search and in light of Defendants interpretation of the terms. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 27**: All documents and communications related to or reflecting Media Matters' donors' involvement in or knowledge of X and any related entities, individuals, and platforms.

**OBJECTIONS**: The terms "any related entities, individuals, and platforms" are vague and undefined. Defendants will accordingly interpret "related entities" to include X Holdings Corp., X's holding company. Defendants will interpret "related individuals" to mean former and current X or Twitter employees, executives, and board members. Defendants will interpret "related platforms" to include Twitter. To the extent Plaintiff means something else with any of these terms, Defendants object to the request as vague absent identification from Plaintiff of who and what it considers to be "related entities, individuals, and platforms." Defendants also object to this request because it seeks materials outside of Defendants' possession, custody, or control in violation of Fed. R. Civ. P. 26 and 34(a). Defendants further object to the disclosure of donor identification information as harassing. Disclosure of donor identifying information can lead to donors being harassed for and deterred from affiliating with organizations they support.[13]  Indeed, Elon Musk himself has called Media Matters "an evil propaganda machine that can go to hell" and vowed that X "will pursue not just the organization but anyone funding that organization. I want to be clear

---

[13] *See, e.g.*, *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 616–17 (2021) ("The petitioners here, for example, introduced evidence that they and their supporters have been subjected to bomb threats, protests, stalking, and physical violence. App. in No. 19–251, at 256, 291–292. Such risks are heightened in the 21st century and seem to grow with each passing year, as 'anyone with access to a computer [can] compile a wealth of information about' anyone else, including such sensitive details as a person's home address or the school attended by his children") (internal citation omitted); *see also Koch Ally Says He Received Death Threats*, Matt Reynolds, Courthouse News (Feb.25, 2016) (libertarian businessman whose affiliation with the Americans for Prosperity Foundation was leaked said "he received death threats and had considered quitting the foundation because he was worried about his family's safety and the adverse effect of protests outside his North Carolina stores") (last accessed May 28, 2024).

about that anyone funding that organization, will be, we will pursue them".[14] Plaintiff's request for this information is inappropriate and not proportional to the needs of this case.

**RESPONSE**: Defendants will produce on a rolling basis, any responsive, nonprivileged documents in their possession, custody, or control, based on their understanding of the relevant terms, that they are able to locate following a reasonable search. Defendants will not search for or produce materials outside of Defendants' possession, custody, or control, nor will Defendants produce identifying donor information in response to this request. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 28**: All documents and communications related to or reflecting Media Matters' employees' involvement in or knowledge of X and any related entities, individuals, and platforms.

**OBJECTIONS**: The terms "any related entities, individuals, and platforms" are vague and undefined. Defendants will accordingly interpret "related entities" to include X Holdings Corp., X's holding company. Defendants will interpret "related individuals" to mean former and current X or Twitter employees, executives, and board members. Defendants will interpret "related platforms" to include Twitter. To the extent Plaintiff means something else with any of these terms, Defendants object to the request as vague absent identification from Plaintiff of who and what it

---

[14] *@TheChiefNerd*, X.com (Dec. 10, 2023, 4:24 PM), [https://perma.cc/6L3M-SHX3] (last accessed May 28, 2024).

considers to be "related entities, individuals, and platforms." Defendants also object to this request because it seeks materials outside of Defendants' possession, custody, or control in violation of Fed. R. Civ. P. 26 and 34(a).

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control, based on their understanding of the relevant terms, that they are able to locate following a reasonable search through the relevant custodians' files. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 29**: All documents and communications related to or reflecting Media Matters' advertisers' and agencies' involvement in or knowledge of X and any related entities, individuals, and platforms.

**OBJECTIONS**: The terms "any related entities, individuals, and platforms" are vague and undefined. Defendants will accordingly interpret "related entities" to include X Holdings Corp., X's holding company. Defendants will interpret "related individuals" to mean former and current X or Twitter employees, executives, and board members. Defendants will interpret "related platforms" to include Twitter. To the extent Plaintiff means something else with any of these terms, Defendants object to the request as vague absent identification from Plaintiff of who and what it considers to be "related entities, individuals, and platforms." Defendants also object to this request because it seeks materials outside of Defendants' possession, custody, or control in violation of Fed. R. Civ. P. 26 and 34(a).

29

**RESPONSE**: Defendants do not possess any documents that are responsive to this Request because Media Matters does not have any advertisers or agencies.

**GIBSON, DUNN & CRUTCHER LLP**
Andrew LeGrand (TX 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.* (CA 132099)
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed* (NY 4382040)
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

**ELIAS LAW GROUP LLP**
Abha Khanna* (WA 42612) 1700
Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Jacob D. Shelly* (DC 90010127)
Daniela Lorenzo* (NY 5780457) 250
Massachusetts Ave, NW Suite 400
Washington, D.C. 20001
T: (202) 968-4490
F: (202) 986-4498
jshelly@elias.law
dlorenzo@elias.law
* Admitted *pro hac vice*

*Counsel for Defendants Media Matters for America and Eric Hananoki*

30

**33**

# Exhibit 2

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | |
|---|---|
| X CORP., | |
| *Plaintiff*, | |
| v. | Civil Action No. 4:23-cv-01175-O |
| MEDIA MATTERS FOR AMERICA, *et al.*, | |
| *Defendants*. | |

## DEFENDANT ANGELO CARUSONE'S AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT ANGELO CARUSONE

Defendant Angelo Carusone, through his undersigned counsel, submits these amended responses and objections to Plaintiff X Corp.'s First Set of Requests for Production to Defendant Angelo Carusone ("Discovery Requests" or "Requests").

## PRELIMINARY STATEMENT

The responses set forth herein are based on the information and documents reasonably available to Defendant at this time, but discovery in this matter, including Defendant's investigation into the issues raised in this lawsuit and documents responsive to Plaintiff's Discovery Requests is still ongoing. Defendant reserves his right to alter, supplement, amend, correct, clarify, or otherwise modify these responses and objections, to assert additional objections or privileges, in any subsequent supplemental response(s), or to move for a Court order if deemed appropriate.

1

By making the accompanying responses and objections to Plaintiff's Discovery Requests, Defendant does not waive, and hereby expressly reserves, his right to assert all objections as to the admissibility of such responses and documents into evidence in this action, or in any other proceedings.

Produced materials will adhere to formal ESI protocol, privilege material agreement, and any protective order agreed to by Counsel for Plaintiff and Defendants and entered by the Court and will be produced on a rolling basis. As of the date of these Amended Responses and Objections, the Parties have yet to agree upon or submit for the Court's approval any of these documents. Any previous or forthcoming production by Defendant is made without waiver of his rights and privileges according to those documents once they are finalized and entered by the Court.

Moreover, Defendant maintains that this Court has no personal jurisdiction over him and that the Northern District of Texas is not the proper venue for this dispute. *See* Defendants' Brief in Support of their Motion to Dismiss, ECF 41 at Sections I and II; Defendants' Reply in Support of their Motion to Dismiss, ECF 51 at Sections I and II. Defendant provides these responses and objections subject to and without waiving any of his arguments for dismissal.

## **GENERAL OBJECTIONS**

Defendant objects to Plaintiff's definition of "You" and "Your" to the extent it includes requests for documents that are in the custody of Media Matters for America or Mr. Eric Hananoki. To avoid unnecessary and burdensome duplication, requests for documents controlled by Media Matters for America or Mr. Hananoki should be directed to those parties.

## **RESPONSES TO INDIVIDUAL REQUESTS**

**REQUEST FOR PRODUCTION NO. 1**: All versions of the November 16, 2023 Article, including but not limited to all drafts, outlines, or notes thereof and any subsequent edits, updates, and/or amendments thereto, and including all prior versions previously available on the Website.

**OBJECTIONS**: The Request does not define the term "notes," but Defendant interprets the term as used here consistent with its ordinary meaning to ask for written records created in the process of reporting, writing, and publishing the November 16, 2023 Article. In its May 24, 2024 Motion to Compel, Plaintiff indicated that it agrees with Defendant's definition. *See* ECF 60, Pl.'s Mot. to Compel, at 7.

**RESPONSE**: Defendant will produce on a rolling basis any responsive, nonprivileged documents in his possession, custody, or control that he is able to locate following a reasonable search. Defendant is in the process of collecting and reviewing documents and is not presently withholding any responsive documents that he has identified. Defendant will supplement this response if he identifies and withholds any responsive documents.

**REQUEST FOR PRODUCTION NO. 2**:   All source materials, research, screenshots, Platform account data, and other documents or communications relied on, referenced, created, or considered by You in conceiving of, investigating, working on, writing, publishing, and disseminating the November 16, 2023 Article.

**OBJECTIONS**: The Request does not define the term "Platform account data." After conferring with Plaintiff, Defendant interprets the term as used here to ask for usernames, posts, chats, and comments of, as well as emails generated from, accounts on the X Platform relied on, referenced, created, or considered in investigating, working on, writing, publishing, and disseminating the referenced article. *See also* ECF 60, Pl.'s Mot. to Compel, at 7. Plaintiff also includes "login information" in their definition of Platform account data, but Defendant objects to this as not relevant and disproportionate to the needs of the case since it seeks sensitive username and password information. Defendant further objects to this Request because it seeks Platform

account data that is already within X's possession and is therefore more convenient, less burdensome, and less expensive for X to access outside of discovery.

**RESPONSE**: The Parties are still discussing the extent to which some or all of the Platform account data is in the custody, possession, and control of X and more easily accessible by X. Once the Parties have resolved that question, Defendant will provide Plaintiff with the relevant account handles.

Defendant will otherwise produce on a rolling basis any responsive, nonprivileged documents in his possession, custody, or control that he is able to locate following a reasonable search. Defendant is in the process of collecting and reviewing documents and is not presently withholding any responsive documents that he has identified. Defendant will supplement this response if he identifies and withholds any responsive documents.

**REQUEST FOR PRODUCTION NO. 3**:  All documents and communications related to the November 16, 2023 Article, including but not limited to internal communications, communications with the public (including social media posts), communications with donors, communications with journalists, and communications with the advertisers mentioned in the November 16, 2023 Article.

**OBJECTION**: Defendants object to the disclosure of donor identification information as harassing. Disclosure of donor identifying information can lead to donors being harassed for and

deterred from affiliating with organizations they support.[1]  Indeed, Elon Musk himself has called

Media Matters "an evil propaganda machine that can go to hell" and vowed that X "will pursue

not just the organization but anyone funding that organization. I want to be clear about that anyone

funding that organization, will be, we will pursue them".[2] Plaintiff's request for this information

is inappropriate and not proportional to the needs of this case.

      **RESPONSE**: Based on this objection, Defendants will not produce identifying donor

information in response to this request. Defendant will otherwise produce on a rolling basis any

responsive, nonprivileged documents in his possession, custody, or control that he is able to locate

following a reasonable search. Defendant is in the process of collecting and reviewing documents

and is not presently withholding any responsive documents that he has identified. Defendant will

supplement this response if he identifies and withholds any responsive documents.

**REQUEST FOR PRODUCTION NO. 4**:   All audio and video recordings of You discussing or

referencing in any way the November 16, 2023 Article, including but not limited to documents

------

[1] *See, e.g.*, *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 616–17 (2021) ("The petitioners here, for example, introduced evidence that they and their supporters have been subjected to bomb threats, protests, stalking, and physical violence. App. in No. 19–251, at 256, 291–292. Such risks are heightened in the 21st century and seem to grow with each passing year, as 'anyone with access to a computer [can] compile a wealth of information about' anyone else, including such sensitive details as a person's home address or the school attended by his children") (internal citation omitted); *see also Koch Ally Says He Received Death Threats*, Matt Reynolds, Courthouse News (Feb.25, 2016) (libertarian businessman whose affiliation with the Americans for Prosperity Foundation was leaked said "he received death threats and had considered quitting the foundation because he was worried about his family's safety and the adverse effect of protests outside his North Carolina stores") (last accessed May 28, 2024).

[2] *@TheChiefNerd*, X.com (Dec. 10, 2023, 4:24 PM), [https://perma.cc/6L3M-SHX3] (last accessed May 28, 2024).

reflecting any URLs for any such recordings of You that are in the possession, custody, or control of third parties.

**OBJECTIONS**: Defendant objects to this Request because it purports to seek materials "in the possession, custody, or control of third parties" and therefore falls outside the scope of Fed. R. Civ. P. 26 and 34.

**RESPONSE**: Defendant will produce on a rolling basis any responsive, nonprivileged documents in his possession, custody, or control that he is able to locate following a reasonable search. Defendant is in the process of collecting and reviewing documents and is not presently withholding any responsive documents that he has identified. Defendant will supplement this response if he identifies and withholds any responsive documents. Defendant will not search for or produce any documents that are in the possession, custody, or control of third parties.

**REQUEST FOR PRODUCTION NO. 5**:  All documents and communications discussing or mentioning X, the Platform, Elon Musk, or Linda Yaccarino, including but not limited to email updates, "Action Updates," or "Weekly Updates," that were sent out via any email, text, phone, social media, or other distribution list that You maintain.

**RESPONSE**: Defendant will produce on a rolling basis any responsive, nonprivileged documents in his possession, custody, or control that he is able to locate following a reasonable search. Defendant is in the process of collecting and reviewing documents and is not presently withholding any responsive documents that he has identified. Defendant will supplement this response if he identifies and withholds any responsive documents.

**REQUEST FOR PRODUCTION NO. 6**:   All   documents   and   communications   concerning content moderation on the Platform.

      **RESPONSE**: Defendant will produce on a rolling basis any responsive, nonprivileged documents in his possession, custody, or control that he is able to locate following a reasonable search. Defendant is in the process of collecting and reviewing documents and is not presently withholding any responsive documents that he has identified. Defendant will supplement this response if he identifies and withholds any responsive documents.

**REQUEST FOR PRODUCTION NO. 7**:   All   documents   and   communications   concerning advertising on the Platform, including but not limited to documents and communications concerning any particular advertiser or potential advertiser on the Platform.

      **OBJECTION**: The Request does not define "advertiser," but Defendant interprets the term to mean all X advertisers listed in Plaintiff's amended complaint. To the extent Plaintiff means something different, Defendant objects to this Request as vague because Defendant does not know the identity of all the entities that have advertised on X, much less all entities that X may view as a "potential advertiser."

      **RESPONSE**: Defendant will produce on a rolling basis any responsive, nonprivileged documents in his possession, custody, or control that he is able to locate following a reasonable search. Based on the objection above, Defendant will not search for or produce any documents concerning advertisers not listed in X's amended complaint.  Defendant is in the process of collecting and reviewing documents and is not presently withholding any responsive documents that he has identified. Defendant will supplement this response if he identifies and withholds any responsive documents.

**REQUEST FOR PRODUCTION NO. 8**:   All communications with X's advertisers concerning the Platform, including but not limited to communications regarding their decision to advertise on the Platform.

OBJECTION: The Request does not define "advertisers," but Defendant interprets the term to mean all X advertisers listed in Plaintiff's amended complaint. To the extent Plaintiff means something different, Defendant objects to this Request as vague because Defendant does not know the identity of all the entities that have advertised on X, much less all entities that X may view as a "potential advertise.

RESPONSE: Defendant will produce on a rolling basis any responsive, nonprivileged documents in his possession, custody, or control that he is able to locate following a reasonable search. Based on the objection above, Defendant will not search for or produce any documents concerning advertisers not listed in X's amended complaint. Defendant is in the process of collecting and reviewing documents and is not presently withholding any responsive documents that he has identified. Defendant will supplement this response if he identifies and withholds any responsive documents.

**REQUEST FOR PRODUCTION NO. 9**:   All communications with X's advertisers about advertising with or financially supporting You.

OBJECTION: The Request does not define "advertisers," but Defendant interprets the term to mean all X advertisers listed in Plaintiff's amended complaint. To the extent Plaintiff means something different, Defendant objects to this Request as vague because Defendant does not know the identity of all the entities that have advertised on X.

**RESPONSE**: X's advertisers do not "advertis[e] with or financially support[]" Defendant. Therefore, Defendant does not have documents to produce in response to this Request at this time.

**REQUEST FOR PRODUCTION NO. 10**: All posts, comments, direct messages, and any other account data of any kind whatsoever posted by You on the Platform, including but not limited to the @mmfa and @ehananoki accounts and any accounts used in the creation of the November 16, 2023 Article.

**OBJECTIONS**: Defendant objects to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires a blanket production of "[a]ll posts, comments, direct messages, and any other account data of any kind whatsoever" of various accounts, even where the information it seeks is immaterial or unrelated to any of Plaintiff's tort claims, to any computation of damages, or to any of Defendants' defenses. Defendant further objects to this Request because it seeks data that is already within X's possession and is therefore more convenient, less burdensome, and less expensive for X to access outside of discovery.

**RESPONSE**: The Parties are still discussing the extent to which some or all of the Platform account data is in the custody, possession, and control of X and more easily accessible by X. Once the Parties have resolved that question, Defendant will provide Plaintiff with account handles related to the claims and issues in this case and otherwise produce on a rolling basis any responsive, nonprivileged materials related to the claims and issues in this case that are in their possession, custody, or control and that they are able to locate following a reasonable search.

**REQUEST FOR PRODUCTION NO. 11**: All communications with appointed or elected public officials, candidates for public office, candidate campaign committees, political party committees, PACs, 501(c)(4) groups, and any other political actors or political operatives.

**OBJECTIONS**: Defendant objects to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires a blanket production of "[a]ll communications" with an unquantifiable number of potential individuals and entities on unspecified topics, even where these are immaterial and unrelated to any of Plaintiff's tort claims, to any computation of damages, or to any of Defendants' defenses. Indeed, there are over 500,000 public officials in the U.S.,[3] not counting individuals not currently in office or candidates; over 70,000 registered 501(c)(4)s[4]; and over 8,500 PACs.[5]

**RESPONSE**: Based on the foregoing objections, Defendant will not produce documents in response to this Request at this time. Pursuant to X's representations at the May 27, 2024 meet-and-confer, Defendant awaits a revised request that is tailored to the claims and defenses at issue in this case.

--------

[3] *How many politicians are there in the USA? (Infographic),* PoliEngine, https://poliengine.com/blog/how-many-politicians-are-there-in-the-us (last accessed May 27, 2024).

[4] *How many nonprofits are there in the US?*, USA Facts (Nov. 2024), shttps://usafacts.org/articles/how-many-nonprofits-are-there-in-the-us/ (last accessed May 27, 2024).

[5] *Committees*, Federal Election Commission, https://www.fec.gov/data/committees/?committee_type=O (last accessed May 27, 2024); *see also Committees*, Federal Election Commission, https://www.fec.gov/data/committees/?committee_type=V&committee_type=W (last accessed May 27, 2024).

**REQUEST FOR PRODUCTION NO. 12**: All IRS Form 990s for Media Matters, regardless of time period, since the founding of Media Matters.

**OBJECTIONS**: Defendant objects to this Request because Media Matters, not Mr. Carusone, is the proper Defendant for this Request.

**RESPONSE**: Defendant Media Matters stated that it has produced and will continue to produce on a rolling basis Media Matters's Form 990 tax returns. Defendant does not have any additional Form 990 tax returns to produce that will not be covered by Media Matters's productions.

**REQUEST FOR PRODUCTION NO. 13**: All annual financial statements for Media Matters, regardless of time period, since the founding of Media Matters.

**OBJECTIONS**: Defendant objects to this Request as being overly broad, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires a blanket production of "[a]ll annual financial statements for Media Matters" since the organization's founding twenty years ago, with no indication of why this information would be material or related to the claims or defenses at issue in this case. Indeed, the Platform was not founded until 2006, two years *after* Media Matters was founded. While federal courts allow plaintiffs bringing punitive damages to engage in pretrial discovery of financial information, *Briones v. Smith Dairy Queens, Ltd.*, No. 08-48, 2008 WL 4630485, at *5 (S.D. Tex. Oct. 16, 2008), this does not provide plaintiff "*carte blanche* to obtain all information [it] seeks," *Barback v. Fisher*, No. CV 20-515-SDD-EWD, 2022 WL 965914, at *8 (M.D. La. Mar. 30, 2022). Indeed,

11

courts allowing the discovery of financial information for punitive damages generally limit the temporal scope of those documents. *See, e.g.*, *Callais v. United Rentals North America*, No. 17-312, 2018 WL 6517446, at *6 (M.D. La. Dec. 11, 2018) (compelling production of annual reports, financial statements, and federal income tax returns for a three-year period); *Briones*, 2008 WL 4630485, at *5 (limiting the plaintiff's discovery of the defendant's financial information to 2007 and 2008, where an alleged discriminatory act took place in 2007 and the discovery was requested in 2008). A time period that would not produce relevant documents to the issue at hand is not reasonable and may be overly broad. *See, e.g.*, *Barback v. Fisher*, No. CV 20-515-SDD-EWD, 2022 WL 965914, at *9 (M.D. La. Mar. 30, 2022). Moreover, Defendant objects to this request as duplicative of Request for Production No. 12, as Media Matters's 990 forms contain comprehensive information on Media Matter's annual finances. *See, e.g.*, *Vertex Aerospace, LLC v. Womble Bond Dickinson*, LLP, No. 309CV00704HTWLGI, 2022 WL 1830715, at *11 (S.D. Miss. Apr. 26, 2022) (holding request into assets and liabilities were disproportionate to the needs of the case, given the company's insurance coverage and its ability to provide a certified statement of its net worth).

 **RESPONSE**: Based on the foregoing objections, Defendant will not produce documents in response to this Request at this time. Defendant directs Plaintiff to Media Matters's 990 forms, most of which have already been produced to Plaintiff. Any remaining 990 forms will also be produced. These forms provide a comprehensive financial picture of Media Matters, including its net worth.

**REQUEST FOR PRODUCTION NO. 14**: All Your bank statements and all documents sufficient to show Your financial condition during the time period.

**OBJECTIONS**: Defendant objects to this Request as being overly broad, vague, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires a blanket production of "[a]ll bank statements and all documents sufficient to show [Defendants'] financial condition," with no indication of why this information— including personal financial information of an individual reporter—would be material or related to the claims or defenses at issue in this case. While federal courts allow plaintiffs bringing punitive damages to engage in pretrial discovery of financial information, *Briones v. Smith Dairy Queens, Ltd.*, No. 08-48, 2008 WL 4630485, at *5 (S.D. Tex. Oct. 16, 2008), this does not provide plaintiff "*carte blanche* to obtain all information [it] seeks," *Barback v. Fisher*, No. CV 20-515-SDD-EWD, 2022 WL 965914, at *8 (M.D. La. Mar. 30, 2022). *See, e.g.*, *Briones*, 2008 WL 4630485, at *7 (limiting discovery of relevant financial information to defendant's annual reports and/or financial statements); *see also Smith v. DeTar Hosp. LLC*, No. CIV.A. V-10-83, 2011 WL 6217497, at *8 (S.D. Tex. Dec. 14, 2011) (limiting financial disclosures to defendant's most recent financial statement stating their current net worth and finding that all other discovery requests relating to net worth—including itemization of assets and liabilities, description of homes, real estate, and other possessions, salary, total earnings, W-2s and other documents, and financial statements over several years—were overly burdensome, excessive, and unnecessary); *Tingle v. Hebert*, No. CV 15-626-JWD-EWD, 2017 WL 2335646, at *7 (M.D. La. May 30, 2017) (finding a request for "'any and all documents' regarding virtually everything [defendant] owns" was "unreasonably burdensome"); *Regions Ins., Inc. v. Alliant Ins. Servs., Inc.*, No. 3:13-CV-667-HTW-LRA, 2015 WL 1886852, at *7 (S.D. Miss. Apr. 24, 2015) (holding defendant was only required to provide a current net worth statement, certified by independent auditors, with any supporting documentation

13

that the auditors include with its statement); *Hunter v. Copeland*, No. CIV.A. 03-2584, 2004 WL 1562832, at *5 (E.D. La. July 12, 2004) (finding a request for "statements for all credit cards used by [an employee]" overly broad because it exceeded the limited subject matter of the litigation).

    **RESPONSE**: Based on the foregoing objections, Defendant will not produce documents in response to this Request at this time. Defendant directs Plaintiff to Media Matters's 990 forms, most of which have already been produced to Plaintiff. Any remaining 990 forms will also be produced. These forms provide a comprehensive financial picture of Media Matters, including its net worth.

**REQUEST FOR PRODUCTION NO. 15**: All materials regarding Your insurers, insurance policies, indemnity rights, or any other third-party payors who may be liable or willing to satisfy any judgment, liability, or obligation of any kind whatsoever that You may currently owe, that You may owe in the future, or that You have owed during the time period, including but not limited to any monetary judgment in this matter.

    **OBJECTIONS**: Defendant objects to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires a blanket production of "[a]ll materials regarding Your insurers, insurance policies, indemnity rights, or any other third-party payors who may be liable or willing to satisfy any judgment, liability, or obligation *of any kind whatsoever*," even where the information would be immaterial or unrelated to any of Plaintiff's tort claims, to any computation of damages, or to any of Defendants' defenses such as employee medical and dental insurance policies.

**RESPONSE**: Defendant directs Plaintiff to Section IV of Defendants' Initial Disclosures, served to counsel on March 8, 2024 via email, and any subsequent revisions to Defendants' Initial Disclosures, which, pursuant to Federal Rule of Civil Procedure 26 (a)(1)(A)(iv), lists "any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in th[is] action or to indemnify or reimburse for payments made to satisfy the judgment [in this litigation]." Defendant will produce any responsive, non-privileged documents related to the issues in this litigation. Defendant is in the process of collecting documents for review and is not presently withholding any responsive documents that he has identified. Defendant will supplement this response if he identifies and withholds any responsive documents.

**REQUEST FOR PRODUCTION NO. 16**: Documents sufficient to show Your expenses and the identity of the recipients of such expenditures, including but not limited to expenses on salaries, travel, equipment, real property, solicitation of donations, and any other expenses whatsoever.

**OBJECTIONS**: Defendant objects to this Request as being overly broad, vague, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires producing a high-volume of sensitive financial information—including a limitless amount of unrestricted "expenses"—that are immaterial or unrelated to any of Plaintiff's tort claims, to any computation of damages, or to any of Defendants' defenses. While federal courts allow plaintiffs bringing punitive damages to engage in pretrial discovery of financial information, *Briones v. Smith Dairy Queens, Ltd.*, No. 08-48, 2008 WL 4630485, at *5 (S.D. Tex. Oct. 16, 2008), this does not provide plaintiff "*carte blanche* to obtain all information [it] seeks," *Barback v. Fisher*, No. CV 20-515-SDD-EWD, 2022 WL 965914, at *8 (M.D. La. Mar.

15

**49**

30, 2022). *See, e.g.*, *Briones*, 2008 WL 4630485, at *7 (limiting discovery of relevant financial information to defendant's annual reports and/or financial statements); *see also Smith v. DeTar Hosp. LLC*, No. CIV.A. V-10-83, 2011 WL 6217497, at *8 (S.D. Tex. Dec. 14, 2011) (limiting financial disclosures to defendant's most recent financial statement stating their current net worth and finding that all other discovery requests relating to net worth—including itemization of assets and liabilities, description of homes, real estate, and other possessions, salary, total earnings, W-2s and other documents, and financial statements over several years—were overly burdensome, excessive, and unnecessary); *Tingle v. Hebert*, No. CV 15-626-JWD-EWD, 2017 WL 2335646, at *7 (M.D. La. May 30, 2017) (finding a request for "'any and all documents' regarding virtually everything [defendant] owns" was "unreasonably burdensome"); *Regions Ins., Inc. v. Alliant Ins. Servs., Inc.*, No. 3:13-CV-667-HTW-LRA, 2015 WL 1886852, at *7 (S.D. Miss. Apr. 24, 2015) (holding defendant was only required to provide a current net worth statement, certified by independent auditors, with any supporting documentation that the auditors include with its statement); *Hunter v. Copeland*, No. CIV.A. 03-2584, 2004 WL 1562832, at *5 (E.D. La. July 12, 2004) (finding a request for "statements for all credit cards used by [an employee]" overly broad because it exceeded the limited subject matter of the litigation); *Hunter v. Copeland*, No. CIV.A. 03-2584, 2004 WL 1562832, at *5 (E.D. La. July 12, 2004) (finding a request for "documents evidencing transfers of money" to an employee, which largely included salary payments, to be overly broad).

**RESPONSE**: Based on the foregoing objections, Defendant will not produce documents in response to this Request at this time. Defendant directs Plaintiff to Media Matters's 990 forms, most of which have already been produced to Plaintiff. Any remaining 990 forms will also be

produced. These forms provide a comprehensive financial picture of Media Matters, including its net worth.

**REQUEST FOR PRODUCTION NO. 17**: Documents sufficient to show the identity of all Your donors or any others who provide financial support of any kind, their residence, the time and place of their donation or provision of financial support, and the amount of their donations or other financial support.

      **OBJECTIONS**: Defendant objects to this Request as being overly broad, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request seeks a high-volume of sensitive financial information "of any kind" that is immaterial or unrelated to any of Plaintiff's tort claims, to any computation of damages, or to any of Defendants' defenses. *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 507–08, 67 S. Ct. 385, 392, 91 L. Ed. 451 (1947) ("[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries. As indicated by Rules 30(b) and (d) and 31(d), limitations inevitably arise when it can be shown that the examination is being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry. And as Rule 26(b) provides, further limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege."). Moreover, disclosure of donor identifying information can

17

lead to donors being harassed for and deterred from affiliating with organizations they support.[6]

Indeed, Elon Musk himself has called Media Matters "an evil propaganda machine that can go to

hell" and vowed that X "will pursue not just the organization but anyone funding that organization.

I want to be clear about that anyone funding that organization, will be, we will pursue them".[7]

Plaintiff's request for this information is inappropriate and not proportional to the needs of this

case.

      **RESPONSE**: Based on the foregoing objections, Defendant will not produce documents

in response to this Request at this time. Defendant directs Plaintiff to Media Matters's 990 forms,

most of which have already been produced to Plaintiff. Any remaining 990 forms will also be

produced. These forms provide a comprehensive financial picture of Media Matters, including its

net worth.


**REQUEST FOR PRODUCTION NO. 18**: Any document or communication reflecting Your

attempts to solicit donations or financial support of any kind, including but not limited to any

---

[6] *See, e.g.*, *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 616–17 (2021) ("The petitioners here, for example, introduced evidence that they and their supporters have been subjected to bomb threats, protests, stalking, and physical violence. App. in No. 19–251, at 256, 291–292. Such risks are heightened in the 21st century and seem to grow with each passing year, as 'anyone with access to a computer [can] compile a wealth of information about' anyone else, including such sensitive details as a person's home address or the school attended by his children") (internal citation omitted); *see also Koch Ally Says He Received Death Threats*, Matt Reynolds, Courthouse News (Feb.25, 2016) (libertarian businessman whose affiliation with the Americans for Prosperity Foundation was leaked said "he received death threats and had considered quitting the foundation because he was worried about his family's safety and the adverse effect of protests outside his North Carolina stores") (last accessed May 28, 2024).

[7] *@TheChiefNerd*, X.com (Dec. 10, 2023, 4:24 PM), [https://perma.cc/6L3M-SHX3] (last accessed May 28, 2024).

discussions with any donors or any others who provided, considered providing, or were asked to provide financial support of any kind.

**OBJECTIONS**: Defendant objects to this Request as being overly broad, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request seeks information about any communications soliciting financial support "of any kind" that is immaterial or unrelated to any of Plaintiff's tort claims, to any computation of damages, or to any of Defendants' defenses. *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 507–08, 67 S. Ct. 385, 392, 91 L. Ed. 451 (1947) ("[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries. As indicated by Rules 30(b) and (d) and 31(d), limitations inevitably arise when it can be shown that the examination is being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry. And as Rule 26(b) provides, further limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege."). Moreover, disclosure of donor identifying information can lead to donors being harassed for and deterred from affiliating with organizations they support.[8] Indeed, Elon Musk himself has called Media Matters "an evil propaganda machine

---

[8] *See, e.g.*, *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 616–17 (2021) ("The petitioners here, for example, introduced evidence that they and their supporters have been subjected to bomb threats, protests, stalking, and physical violence. App. in No. 19–251, at 256, 291–292. Such risks are heightened in the 21st century and seem to grow with each passing year, as 'anyone with access to a computer [can] compile a wealth of information about' anyone else, including such sensitive details as a person's home address or the school attended by his children")

19

that can go to hell" and vowed that X "will pursue not just the organization but anyone funding that organization. I want to be clear about that anyone funding that organization, will be, we will pursue them."[9] Plaintiff's request for this information is inappropriate and not proportional to the needs of this case.

 **RESPONSE**: Based on the foregoing objections, Defendant will not produce documents in response to this Request at this time.


**REQUEST FOR PRODUCTION NO. 19**: Documents sufficient to identify the recipients of any communications or email updates, "Action Updates," or "Weekly Updates" sent out via any email list that You maintain, as well as any information related to those recipients' locations, including but not limited to any self-reported location data and their IP addresses.

 **OBJECTION**: Defendant objects to this Request as being overly broad, not reasonably particularized, harassing, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. The identities of individuals who subscribe to Media Matters's email lists are not relevant to any claims or defenses in this case, and their disclosure is reasonably likely to subject recipients to harassment. *See NAACP v. State of Ala.*

---

(internal citation omitted); *see also Koch Ally Says He Received Death Threats*, Matt Reynolds, Courthouse News (Feb.25, 2016) (libertarian businessman whose affiliation with the Americans for Prosperity Foundation was leaked said "he received death threats and had considered quitting the foundation because he was worried about his family's safety and the adverse effect of protests outside his North Carolina stores") (last accessed May 28, 2024).

[9]*@TheChiefNerd*, X.com (Dec. 10, 2023, 4:24 PM), [https://perma.cc/6L3M-SHX3] (last accessed May 28, 2024).

20

*ex rel. Patterson*, 357 U.S. 449, 462 (1958) (recognizing disclosure of nonprofit organization's membership lists would likely result in harassment).

> **RESPONSE**: Defendant will produce on a rolling basis any responsive, nonprivileged documents in his possession, custody, or control that he is able to locate following a reasonable search for documents that identify the location of recipients of any communications or email updates, "Action Updates," or "Weekly Updates" sent by Defendants via any email list. Defendants will not provide documents that disclose identifying information of individual recipients.

**REQUEST FOR PRODUCTION NO. 20**: Documents sufficient to show Media Matters' organizational structure, including Board membership, leadership structure, and that of any affiliated or related entities.

> **RESPONSE**: Defendant will produce on a rolling basis any responsive, nonprivileged documents in his possession, custody, or control that he is able to locate following a reasonable search. Defendant is in the process of collecting and reviewing documents and is not presently withholding any responsive documents that he has identified. Defendant will supplement this response if he identifies and withholds any responsive documents.

**REQUEST FOR PRODUCTION NO. 21**: All documents and communications regarding Your sources of funding for research, investigation, reporting, publication, or any other work related to X, the Platform, Elon Musk, or Linda Yaccarino.

> **OBJECTIONS**: Defendant objects to this Request as harassing. *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 507–08, 67 S. Ct. 385, 392, 91 L. Ed. 451 (1947) ("[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries. As indicated by Rules 30(b) and (d)

and 31(d), limitations inevitably arise when it can be shown that the examination is being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry. And as Rule 26(b) provides, further limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege."). Disclosure of donor identifying information can lead to donors being harassed for and deterred from affiliating with organizations they support.[10]  Indeed, Elon Musk himself has called Media Matters "an evil propaganda machine that can go to hell" and vowed that X "will pursue not just the organization but anyone funding that organization. I want to be clear about that anyone funding that organization, will be, we will pursue them".[11]  Plaintiff's request for this information is inappropriate and not proportional to the needs of this case.

**RESPONSE**: Based on the foregoing objections, Defendant will not produce documents in response to this Request at this time. In any event, Media Matters does not receive any dedicated funding that is restricted for research, investigation, reporting, publication, or any other work related to X, the Platform, Elon Musk, or Linda Yaccarino.

---

[10] *See, e.g.*, *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 616–17 (2021) ("The petitioners here, for example, introduced evidence that they and their supporters have been subjected to bomb threats, protests, stalking, and physical violence. App. in No. 19–251, at 256, 291–292. Such risks are heightened in the 21st century and seem to grow with each passing year, as 'anyone with access to a computer [can] compile a wealth of information about' anyone else, including such sensitive details as a person's home address or the school attended by his children") (internal citation omitted); *see also Koch Ally Says He Received Death Threats*, Matt Reynolds, Courthouse News (Feb.25, 2016) (libertarian businessman whose affiliation with the Americans for Prosperity Foundation was leaked said "he received death threats and had considered quitting the foundation because he was worried about his family's safety and the adverse effect of protests outside his North Carolina stores") (last accessed May 28, 2024).

[11] *@TheChiefNerd*, X.com (Dec. 10, 2023, 4:24 PM), [https://perma.cc/6L3M-SHX3] (last accessed May 28, 2024).

**REQUEST FOR PRODUCTION NO. 22**: All documents concerning, and communications with, any third-party public relations, advertising, marketing, communications, or similar firm that You have contracted with, or that you have contacted in any capacity about the November 16, 2023 Article.

     **RESPONSE**: Defendant will produce on a rolling basis any responsive, nonprivileged documents in his possession, custody, or control that he is able to locate following a reasonable search. Defendant is in the process of collecting documents for review and is not presently withholding any responsive documents that he has identified. Defendant will supplement this response if he identifies and withholds any responsive documents.

**REQUEST FOR PRODUCTION NO. 23**: All documents and communications related to or reflecting any travel by Eric Hananoki from October 20, 2023, to December 15, 2023.

     **OBJECTIONS**: Defendant objects to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, and as seeking documents not relevant to any claim or defense asserted in this litigation. This Request impermissibly requires blanket production of "[a]ll documents and communications related to or reflecting *any* travel" by Mr. Hananoki during the specified time period, even where not reasonably related to the issues in dispute in this case or the parties' defenses. This request also is harassing to Mr. Hananoki, as he is being asked to search through and disclose any and all documents— including flights, hotels, meal receipts, texts, calls, photographs, and more—related to any travel, including personal travel with his family that has no relevance to the claims or defenses being litigated in this case and despite Defendants' assurances that Mr. Hananoki did not conduct any

23

work-related travel during the time period. Indeed, Defendant understand from the Parties' meet-and-confers that Plaintiff seeks to account for Mr. Hananoki's whereabouts and activities during this time period without qualification. Moreover, Defendant further object to this Request as duplicative of and/or cumulative of other document requests, including Document Requests Nos. 1, 2, 3, 4, 5, 6, 7, 9, 10, 14, 15, 16,17, 18, 19, 20, 21, 22, 24, 25, 28, 30, 31, 32, 33, 34, 36, 37 38, 39, 40, 41, 42, 43, 44, 45, 46, and 47. Any relevant information Plaintiff seeks with this request, beyond what Defendants have already certified, are captured by X's many other broad requests. Defendant also objects because Mr. Eric Hananoki, not Mr. Carusone, is the proper Defendant for this Request.

**RESPONSE**: Based on the foregoing objections, Defendant will not produce documents in response to this Request at this time.

**REQUEST FOR PRODUCTION NO. 24**: All of Your calendars, journals, schedules, activity logs, visitors' logs, diaries, or appointments from October 20, 2023, to December 15, 2023.

**OBJECTIONS**: Defendant objects to this Request as being overly broad, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request impermissibly requires blanket production of "[a]ll calendars, journals, schedules, activity logs, visitors' logs, diaries, or appointments" during the specified time period, even where not reasonably related to the issues in dispute in this case. This request is also harassing because it is asking Defendant to essentially account for all of their activities and appointments, including personal activities and appointments, without qualification.

**RESPONSE**: Defendant will produce on a rolling basis any responsive, nonprivileged documents in his possession, custody, or control that he is able to locate following a reasonable search to the extent they relate to X or any of its employees, policies, or advertisers listed in the amended complaint, or to the November 16 and 17 articles. Defendant is in the process of collecting documents for review and is not presently withholding any responsive documents that he has identified. Defendant will supplement his response if he identifies and withholds any responsive documents.

**REQUEST FOR PRODUCTION NO. 25**: All documents and communications related to or reflecting Your involvement in or knowledge of X and any related entities, individuals, and platforms.

**OBJECTIONS**: The terms "any related entities, individuals, and platforms" are vague and undefined. Defendant will accordingly interpret "related entities" to include X Holdings Corp., X's holding company. Defendant will interpret "related individuals" to mean former and current X or Twitter employees, executives, and board members. Defendant will interpret "related platforms" to include Twitter. To the extent Plaintiff means something else with any of these terms, Defendant objects to the request as vague absent identification from Plaintiff of who and what it considers to be "related entities, individuals, and platforms."

**RESPONSE**: Defendant will produce on a rolling basis any responsive, nonprivileged documents in his possession, custody, or control based on their understanding of the relevant terms, that they are able to locate following a reasonable search. Defendant will not search for or produce materials outside of Defendant's possession, custody, or control. Defendant is in the process of collecting documents for review and is not presently withholding any responsive documents that

he has identified. Defendant will supplement this response if he identifies and withholds any responsive documents.


**REQUEST FOR PRODUCTION NO. 26**: All documents and communications related to or reflecting Media Matters' Board's involvement in or knowledge of X and any related entities, individuals, and platforms.

platforms.

    **OBJECTIONS**: The terms "any related entities, individuals, and platforms" are vague and undefined. Defendant will accordingly interpret "related entities" to include X Holdings Corp., X's holding company. Defendant will interpret "related individuals" to mean former and current X or Twitter employees, executives, and board members. Defendant will interpret "related platforms" to include Twitter. To the extent Plaintiff means something else with any of these terms, Defendant object to the request as vague absent identification from Plaintiff of who and what it considers to be "related entities, individuals, and platforms." Defendant also objects to this request because it seeks materials outside of Defendant's possession, custody, or control in violation of Fed. R. Civ. P. 26 and 34."

    **RESPONSE**: Defendant will produce on a rolling basis any responsive, nonprivileged documents in his possession, custody, or control based on their understanding of the relevant terms, that they are able to locate following a reasonable search. Defendant will not search for or produce materials outside of Defendant's possession, custody, or control. Defendant is in the process of collecting documents for review and is not presently withholding any responsive documents that he has identified. Defendant will supplement this response if he identifies and withholds any responsive documents.

26

**REQUEST FOR PRODUCTION NO. 27**: All documents and communications related to or reflecting Media Matters' donors' involvement in or knowledge of X and any related entities, individuals, and platforms.

OBJECTIONS: The terms "any related entities, individuals, and platforms" are vague and undefined. Defendant will accordingly interpret "related entities" to include X Holdings Corp., X's holding company. Defendant will interpret "related individuals" to mean former and current X or Twitter employees, executives, and board members. Defendant will interpret "related platforms" to include Twitter. To the extent Plaintiff means something else with any of these terms, Defendant object to the request as vague absent identification from Plaintiff of who and what it considers to be "related entities, individuals, and platforms." Defendant also objects to this request because it seeks materials outside of Defendant's possession, custody, or control in violation of Fed. R. Civ. P. 26 and 34. Defendant further objects to the disclosure of donor identification information as harassing. Disclosure of donor identifying information can lead to donors being harassed for and deterred from affiliating with organizations they support.[12]  Indeed, Elon Musk himself has called

---

[12] *See, e.g.*, *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 616–17 (2021) ("The petitioners here, for example, introduced evidence that they and their supporters have been subjected to bomb threats, protests, stalking, and physical violence. App. in No. 19–251, at 256, 291–292. Such risks are heightened in the 21st century and seem to grow with each passing year, as 'anyone with access to a computer [can] compile a wealth of information about' anyone else, including such sensitive details as a person's home address or the school attended by his children") (internal citation omitted); *see also Koch Ally Says He Received Death Threats*, Matt Reynolds, Courthouse News (Feb.25, 2016) (libertarian businessman whose affiliation with the Americans for Prosperity Foundation was leaked said "he received death threats and had considered quitting the foundation because he was worried about his family's safety and the adverse effect of protests outside his North Carolina stores") (last accessed May 28, 2024).

Media Matters "an evil propaganda machine that can go to hell" and vowed that X "will pursue not just the organization but anyone funding that organization. I want to be clear about that anyone funding that organization, will be, we will pursue them".[13] Plaintiff's request for this information is inappropriate and not proportional to the needs of this case.

    **RESPONSE**: Defendant will produce on a rolling basis any responsive, nonprivileged documents in his possession, custody, or control based on their understanding of the relevant terms, that they are able to locate following a reasonable search. Defendant will not search for or produce materials outside of Defendant's possession, custody, or control, nor will Defendants produce identifying donor information in response to this request. Defendant is in the process of collecting documents for review and is not presently withholding any responsive documents that he has identified. Defendant will supplement this response if he identifies and withholds any responsive documents.

**REQUEST FOR PRODUCTION NO. 28**: All documents and communications related to or reflecting Media Matters' employees' involvement in or knowledge of X and any related entities, individuals, and platforms.

    **OBJECTIONS**: The terms "any related entities, individuals, and platforms" are vague and undefined. Defendant will accordingly interpret "related entities" to include X Holdings Corp., X's holding company. Defendant will interpret "related individuals" to mean former and current X or Twitter employees, executives, and board members. Defendant will interpret "related platforms"

---

[13]*@TheChiefNerd*, X.com (Dec. 10, 2023, 4:24 PM), [https://perma.cc/6L3M-SHX3] (last accessed May 28, 2024).

to include Twitter. To the extent Plaintiff means something else with any of these terms, Defendants object to the request as vague absent identification from Plaintiff of who and what it considers to be "related entities, individuals, and platforms." Defendant also objects to this request because it seeks materials outside of Defendant's possession, custody, or control in violation of Fed. R. Civ. P. 26 and 34."

**RESPONSE**: Defendant will produce on a rolling basis any responsive, nonprivileged documents in his possession, custody, or control based on their understanding of the relevant terms, that they are able to locate following a reasonable search through the relevant custodians' files. Defendant will not search for or produce materials outside of Defendant's possession, custody, or control. Defendant is in the process of collecting documents for review and is not presently withholding any responsive documents that he has identified. Defendant will supplement this response if he identifies and withholds any responsive documents.

**REQUEST FOR PRODUCTION NO. 29**: All documents and communications related to or reflecting Media Matters' advertisers' and agencies' involvement in or knowledge of X and any related entities, individuals, and platforms.

**OBJECTIONS**: The terms "any related entities, individuals, and platforms" are vague and undefined. Defendant will accordingly interpret "related entities" to include X Holdings Corp., X's holding company. Defendant will interpret "related individuals" to mean former and current X or Twitter employees, executives, and board members. Defendant will interpret "related platforms" to include Twitter. To the extent Plaintiff means something else with any of these terms, Defendants object to the request as vague absent identification from Plaintiff of who and what it considers to be "related entities, individuals, and platforms." Defendant also objects to this request because it

seeks materials outside of Defendant's possession, custody, or control in violation of Fed. R. Civ.

P. 26 and 34."

      **RESPONSE**: Defendant does not possess any documents that are responsive to this

Request because Media Matters does not have any advertisers or agencies.

**GIBSON, DUNN & CRUTCHER LLP**
Andrew LeGrand (TX 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.* (CA 132099)
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed* (NY 4382040)
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

**ELIAS LAW GROUP LLP**
Abha Khanna* (WA 42612)
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Jacob D. Shelly* (DC 90010127)
Daniela Lorenzo* (NY 5780457)
250 Massachusetts Ave, NW Suite 400
Washington, D.C. 20001
T: (202) 968-4490
F: (202) 986-4498
jshelly@elias.law
dlorenzo@elias.law

  * Admitted *pro hac vice*

*Counsel for Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone*

# Exhibit 3

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

|  |  |
|---|---|
| X CORP., | |
| *Plaintiff*, | |
| v. | Civil Action No. 4:23-cv-01175-O |
| MEDIA MATTERS FOR AMERICA, *et al.*, | |
| *Defendants*. | |

### DEFENDANTS MEDIA MATTERS FOR AMERICA, ERIC HANANOKI, AND ANGELO CARUSONE'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION

Defendants Media Matters for America ("Media Matters"), Mr. Eric Hananoki, and Mr. Angelo Carusone, through their undersigned counsel, submit these responses and objections to Plaintiff X Corp.'s Second Set of Requests for Production ("Discovery Requests" or "Requests").

### PRELIMINARY STATEMENT

The responses set forth herein are based on the information and documents reasonably available to Defendants at this time, but discovery in this matter, including Defendants' investigation into the issues raised in this lawsuit and documents responsive to Plaintiff's Discovery Requests, is still ongoing. Defendants reserve their right to alter, supplement, amend, correct, clarify, or otherwise modify these responses and objections, to assert additional objections or privileges in any subsequent supplemental response(s) and/or on a document-by-document basis, or to move for a Court order if deemed appropriate.

1

By making the accompanying responses and objections to Plaintiff's Discovery Requests, Defendants do not waive, and hereby expressly reserve, their right to assert all objections as to the admissibility of such responses and documents into evidence in this action, or in any other proceedings.

Produced materials will adhere to formal ESI protocol, privilege material agreement, and any protective order agreed to by Counsel for Plaintiff and Defendants and entered by the Court, and will be produced on a rolling basis. As of the date of these Amended Responses and Objections, the Parties have yet to agree upon or submit for the Court's approval any of these documents. Any previous or forthcoming production by Defendants is made without waiver of their rights and privileges according to those documents once they are finalized and entered by the Court.

Moreover, Defendants maintain that this Court has no personal jurisdiction over Media Matters, Eric Hananoki, or Angelo Carusone, and that the Northern District of Texas is not the proper venue for this dispute. *See* Defendants' Brief in Support of their Motion to Dismiss, ECF 41 at Sections I and II; Defendants' Reply in Support of their Motion to Dismiss, ECF 51 at Sections I and II. Defendants provide these responses and objections subject to and without waiving any of their arguments for dismissal.

<u>**RESPONSES TO INDIVIDUAL REQUESTS**</u>

<u>**REQUEST FOR PRODUCTION NO. 30**</u>: All versions of the November 17, 2023 Article, including but not limited to all drafts, outlines, or notes thereof and any subsequent edits, updates, and/or amendments thereto, and including all prior versions previously available on the Website.

**OBJECTIONS**: The Request does not define the term "notes," but Defendants interpret the term as used here consistent with its ordinary meaning to ask for written records created in the process of reporting, writing, and publishing the November 17, 2023 Article. In its May 24, 2024

2

Motion to Compel, Plaintiff indicated that it agrees with Defendants' definition. *See* ECF 60, Pl.'s Mot. to Compel, at 7.

      **RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 31**: All source materials, research, screenshots, Platform account data, and other documents or communications relied on, referenced, created, or considered by You in conceiving of, investigating, working on, writing, publishing, and disseminating the November 17, 2023 Article.

      **OBJECTIONS**: The Request does not define the term "Platform account data." After conferring with Plaintiff, Defendants interpret the term as used here to ask for usernames, posts, chats, and comments of, as well as emails generated from, accounts on the X Platform relied on, referenced, created, or considered in investigating, working on, writing, publishing, and disseminating the referenced article. *See also* ECF 60, Pl's Mot. to Compel, at 7. Defendants also include "login information" in their definition of Platform account data, but Defendants object to this as not relevant and disproportionate to the needs of the case since it seeks sensitive username and password information. Defendants further object to this Request because it seeks Platform account data that is already within X's possession and is therefore more convenient, less burdensome, and less expensive for X to access outside of discovery.

**RESPONSE**: The Parties are still discussing the extent to which some or all of the Platform account data is in the custody, possession, and control of X and more easily accessible by X. Once the Parties have resolved that question, Defendants will provide Plaintiff with the relevant account handles.

Defendants will otherwise produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 32**: All documents and communications related to the November 17, 2023 Article, including but not limited to internal communications, communications with the public (including social media posts), communications with donors, communications with journalists, and communications with the advertisers mentioned in the November 17, 2023 Article.

**OBJECTION**: Defendants object to the disclosure of donor identification information as harassing. Disclosure of donor identifying information can lead to donors being harassed for and deterred from affiliating with organizations they support.[1]   Indeed, Elon Musk himself has called

---

[1] *See, e.g.*, *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 616–17 (2021) ("The petitioners here, for example, introduced evidence that they and their supporters have been subjected to bomb threats, protests, stalking, and physical violence. App. in No. 19–251, at 256, 291–292. Such risks are heightened in the 21st century and seem to grow with each passing year,

Media Matters "an evil propaganda machine that can go to hell" and vowed that X "will pursue not just the organization but anyone funding that organization. I want to be clear about that anyone funding that organization, will be, we will pursue them".[2] Plaintiff's request for this information is inappropriate and not proportional to the needs of this case.

        **RESPONSE**: Based on this objection, Defendants will not produce identifying donor information in response to this request. Defendants will otherwise produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 33**: All audio and video recordings of You discussing or referencing in any way the November 17, 2023 Article, including but not limited to documents reflecting any URLs for any such recordings of You that are in the possession, custody, or control of third parties.

---

as 'anyone with access to a computer [can] compile a wealth of information about' anyone else, including such sensitive details as a person's home address or the school attended by his children") (internal citation omitted); *see also Koch Ally Says He Received Death Threats*, Matt Reynolds, Courthouse News (Feb.25, 2016) (libertarian businessman whose affiliation with the Americans for Prosperity Foundation was leaked said "he received death threats and had considered quitting the foundation because he was worried about his family's safety and the adverse effect of protests outside his North Carolina stores") (last accessed May 28, 2024).

[2]*@TheChiefNerd*, X.com (Dec. 10, 2023, 4:24 PM), [https://perma.cc/6L3M-SHX3] (last accessed May 28, 2024).

**OBJECTIONS**: Defendants object to this Request because it purports to seek materials "in the possession, custody, or control of third parties" and therefore falls outside the scope of Fed. R. Civ. P. 26 and 34.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents. Defendants will not search for or produce any documents that are in the possession, custody, or control of third parties.

**REQUEST FOR PRODUCTION NO. 34**: All materials regarding or communications with You or any other Media Matters employee, contractor, or agent mentioning or regarding in any way this Matter, Elon Musk, Linda Yaccarino, X, Twitter, or the Platform, including misinformation, brand safety, or ad pairing on the Platform.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in its possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 35**: All materials regarding or communications with any donor or potential donor to Media Matters mentioning or regarding in any way this Matter, Elon

Musk, Linda Yaccarino, X, Twitter, or the Platform, including misinformation, brand safety, or ad pairing on the Platform.

**OBJECTIONS**: Defendants object to this Request as harassing. *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 507–08, 67 S. Ct. 385, 392, 91 L. Ed. 451 (1947) ("[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries. As indicated by Rules 30(b) and (d) and 31(d), limitations inevitably arise when it can be shown that the examination is being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry. And as Rule 26(b) provides, further limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege."). Disclosure of donor identifying information can lead to donors being harassed for and deterred from affiliating with organizations they support.[3] Indeed, Elon Musk himself has called Media Matters "an evil propaganda machine that can go to hell" and vowed that X "will pursue not just the organization but anyone funding that organization. I want to be clear about that anyone funding that

_____

[3] *See, e.g.*, *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 616–17 (2021) ("The petitioners here, for example, introduced evidence that they and their supporters have been subjected to bomb threats, protests, stalking, and physical violence. App. in No. 19–251, at 256, 291–292. Such risks are heightened in the 21st century and seem to grow with each passing year, as 'anyone with access to a computer [can] compile a wealth of information about' anyone else, including such sensitive details as a person's home address or the school attended by his children") (internal citation omitted); *see also Koch Ally Says He Received Death Threats*, Matt Reynolds, Courthouse News (Feb.25, 2016) (libertarian businessman whose affiliation with the Americans for Prosperity Foundation was leaked said "he received death threats and had considered quitting the foundation because he was worried about his family's safety and the adverse effect of protests outside his North Carolina stores") (last accessed May 28, 2024).

7

organization, will be, we will pursue them".[4] Plaintiff's request for this information is inappropriate and not proportional to the needs of this case.

 **RESPONSE**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time.


**REQUEST FOR PRODUCTION NO. 36**: All materials, including but not limited to notes, transcripts, or recordings, whether published, broadcast, or otherwise, or all media or public appearances made by You wherein You discussed or mentioned this Matter, Elon Musk, Linda Yaccarino, X, Twitter, or the Platform, including misinformation, brand safety, or ad pairing on the Platform.

 **RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in its possession, custody, or control that they are able to locate following a reasonable search. Defendants will not search for or produce materials outside of Defendants' possession, custody, or control. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.


**REQUEST FOR PRODUCTION NO. 37**: All materials regarding or communications with Eric Hananoki.

---

[4] *@TheChiefNerd*, X.com (Dec. 10, 2023, 4:24 PM), [https://perma.cc/6L3M-SHX3] (last accessed May 28, 2024).

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request impermissibly requires blanket production of "[a]ll materials regarding or communications with Eric Hananoki," even where not reasonably related to the issues in dispute in this case. Defendants further object to this Request as duplicative of and/or cumulative of other discovery requests, including Request Nos. 1, 2, 3, 4, 5, 6, 7, 9, 10, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 28, 30, 31, 32, 33, 34, 36, 38, 39, 40, 41, 42, 43, 44, 45, 46, and 47.

**RESPONSE**: Many of documents Defendants produce in response to other Requests will be responsive to this Request as well, as noted above. Based on the foregoing objections, however, Defendants will not conduct a separate search or create separate productions for this Request at this time.

**REQUEST FOR PRODUCTION NO. 38**: All materials regarding or communications with Matt Gertz.

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request impermissibly requires blanket production of "[a]ll materials regarding or communications with Matt Gertz," even where not reasonably related to the issues in dispute in this case. Indeed, Mr. Gertz did not author either the November 16 or November 17 articles and is only referenced in two footnotes of Plaintiff's Amended Complaint, both citing to the same article. *See* ECF 37, Am. Compl. at n.4 and n.20. Defendants further object to this Request as duplicative

9

of and/or cumulative of other discovery requests, including Discovery Request Nos. 5, 6, 7, 20, 28, 34, 36, 39, 41, 42, 44, and 45.

**RESPONSE**: Documents Defendants produce in response to other Requests may be responsive to this Request as well, as noted above. Based on the foregoing objections, however, Defendants will not conduct a separate search or create separate productions for this Request at this time.

**REQUEST FOR PRODUCTION NO. 39**: All materials reflecting or regarding any policies, practices, procedures, codes of conduct, ethical standards, or other guidelines for appropriate investigation and reporting for Media Matters' articles, including but not limited to policies concerning fact-checking, defamation, and contacting sources or subjects of articles.

**RESPONSE**: Defendants will produce on a rolling basis, any responsive, nonprivileged documents in its possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 40**: All materials and communications regarding the X account(s) used in creating the November 16, 2023 Article or the November 17, 2023 Article, including but not limited to any emails from the Platform (including automatic or system-generated emails).

**OBJECTIONS**: Defendants interpret "materials" to include Platform account data. Defendants object to this Request because it seeks Platform account data that is already within X's

10

possession and is therefore more convenient, less burdensome, and less expensive for X to access outside of discovery. Defendants also object to this Request as duplicative of and/or cumulative of other discovery requests, including Discovery Request Nos. 2, 10, and 31.

**RESPONSE**: Defendants interpret "materials" to include Platform account data. The Parties are still discussing the extent to which some or all of the Platform account data is in the custody, possession, and control of X and more easily accessible by X. Once the Parties have resolved that question, Defendants will provide Plaintiff with the relevant account handles and otherwise produce on a rolling basis any responsive, nonprivileged materials that are in their possession, custody, or control and that they are able to locate following a reasonable search.

**REQUEST FOR PRODUCTION NO. 41**: All materials and communications with or regarding any X account or X advertiser appearing the [sic] November 16, 2023 Article or the November 17, 2023 Article.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in its possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 42**: All materials regarding or communications with any individual or entity named in the November 16, 2023 Article, the November 17, 2023 Article, and any subsequent coverage, including communications with any entity's board of directors,

11

employees, agents, attorneys, representatives, and all other persons acting or purporting to act on behalf of any such entity.

**OBJECTIONS**: Defendants object to the phrase "any subsequent coverage," which is vague, overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, as it would purport to include every article MMFA has written or published since November 16, 2023.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged materials regarding or communications with any individual or entity named in the November 16, 2023 Article or the November 17, 2023 Article in its possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 43**: All materials regarding or communications with any sources for the November 16, 2023 Article, the November 17, 2023 Article, and any subsequent coverage.

**OBJECTIONS**: Defendants object to the phrase "any subsequent coverage," which is vague, overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, as it would purport seek information pertaining to every source for every article MMFA has written or published since November 17, 2023.  Defendants object to this Request as duplicative of and/or cumulative of other discovery requests, including Request Nos. 2, 3, 31, and 32.

12

**RESPONSE**:  Defendants are not in possession of any responsive documents because Defendants did not rely on any sources in drafting the November 16 and November 17, 2023 articles.

**REQUEST FOR PRODUCTION NO. 44**: Documents sufficient to show the identity of the author of and every contributor to articles that are attributed to "Media Matters Staff" or that are unattributed referring to this Matter, Elon Musk, Linda Yaccarino, X, Twitter, the November 16, 2023 Article, the November 17, 2023 Article, or the Platform, including misinformation, brand safety, ad pairing, anti-Semitism, racism, Nazis or Nazi ideology and content, white nationalism, white supremacism, or the "alt-right" on the Platform.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in its possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 45**: All materials or communications that reference in any way this Matter, Elon Musk, Linda Yaccarino, X, Twitter, or the Platform, including misinformation, brand safety, or ad pairing on the Platform, and use any of the following terms or any variant of any of the following terms: Hitler, Nazi, racist, racism, alt-right, antisemite, antisemitism, anti-Semite, anti-Semitism, red line, replacement theory, white supremacy, white nationalism, white pride, Pepe, frog Twitter, the Holocaust, bigotry, hate, hatred, hateful speech, Charlottesville, tiki torch, January 6, January 6th, Jan. 6, Jan. 6th, 1/6, J6, minorities, hordes, jew,

jewish, Israel, Israeli, IDF, Israeli Defense Force, Palestine, Palestinian, "from the river to the sea," October 7, 10/7, jihad, day of jihad, Hamas, Gaza, Islam, Islamic, Palestinian Islamic Jihad, PIJ, Islamophobia, Zionism, Zionist, Zion, blue chip, brand, free speech, First Amendment, Texas, Fort Worth, Dallas, Austin.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in its possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 46**: All materials reflecting or relating to any reports, accusations, files, notes, personnel records, complaints, mediations, arbitrations, lawsuits (including potential or threatened lawsuits that were never filed), or investigations involving allegations that You took adverse employment actions or otherwise discriminated against or took any action against another person or persons on the basis of a protected class, including but not limited to race, color, national origin, religion, sex, sexual orientation, language status, or pregnancy status.

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case. Indeed, none of the employment related materials X seeks in its request are relevant to any of its tort claims or computation of damages, or to Defendants' defenses. *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 507–08, 67 S. Ct. 385, 392, 91 L. Ed. 451 (1947) ("[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries. As indicated by Rules 30(b) and (d) and 31(d), limitations

14

inevitably arise when it can be shown that the examination is being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry. And as Rule 26(b) provides, further limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege.").

**RESPONSE**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time.

**REQUEST FOR PRODUCTION NO. 47**: All materials reflecting or relating to any reports, accusations, files, notes, personnel records, complaints, mediations, arbitrations, lawsuits (including potential or threatened lawsuits that were never filed), or investigations involving allegations against You regarding business disparagement, defamation, or libel.

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case. *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 507–08, 67 S. Ct. 385, 392, 91 L. Ed. 451 (1947) ("[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries. As indicated by Rules 30(b) and (d) and 31(d), limitations inevitably arise when it can be shown that the examination is being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry. And as Rule 26(b) provides, further limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege."). Moreover, Defendants, like all media organizations, are frequently contacted by individuals who criticize or threaten Defendants regarding their reporting despite having no credible basis and despite never going through with legal action. Searching, reviewing, and producing all of these documents would result in a high volume of irrelevant and not responsive documents. *See, e.g.*, *Samsung Elecs. Am.,*

*Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 284 (N.D. Tex. 2017) (noting "a court can—and must—limit proposed discovery that it determines is not proportional to the needs of the case, considering" among other things,  "the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit").

**RESPONSE**: Notwithstanding these objections, Defendants will produce on a rolling basis any responsive publicly available legal filings in its possession, custody, or control that they are able to locate following a reasonable search.

**GIBSON, DUNN & CRUTCHER LLP**
Andrew LeGrand (TX 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.* (CA 132099)
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed* (NY 4382040)
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

**ELIAS LAW GROUP LLP**
Abha Khanna* (WA 42612)
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Jacob D. Shelly* (DC 90010127)
Daniela Lorenzo* (NY 5780457)
250 Massachusetts Ave, NW Suite 400
Washington, D.C. 20001
T: (202) 968-4490
F: (202) 986-4498
jshelly@elias.law
dlorenzo@elias.law

\* Admitted *pro hac vice*

*Counsel for Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone*

16

# Exhibit 4

| Form **990** | **Return of Organization Exempt From Income Tax** | OMB No. 1545-0047 |
|---|---|---|
| | Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except private foundations) | **2023** |
| Department of the Treasury<br>Internal Revenue Service | Do not enter social security numbers on this form as it may be made public.<br>Go to *www.irs.gov/Form990* for instructions and the latest information. | **Open to Public Inspection** |

**A** For the 2023 calendar year, or tax year beginning _____ , 2023, and ending _____ , 20 ____

| **B** Check if applicable: | **C** Name of organization | **D** Employer identification number |
|---|---|---|
| ☐ Address change | Doing business as | |
| ☐ Name change | Number and street (or P.O. box if mail is not delivered to street address)      Room/suite | **E** Telephone number |
| ☐ Initial return | | |
| ☐ Final return/terminated | City or town, state or province, country, and ZIP or foreign postal code | |
| ☐ Amended return | | **G** Gross receipts $ |
| ☐ Application pending | **F** Name and address of principal officer: | **H(a)** Is this a group return for subordinates? ☐ Yes ☐ No |

**H(b)** Are all subordinates included? ☐ Yes ☐ No
If "No," attach a list. See instructions.

**I** Tax-exempt status:  ☐ 501(c)(3)  ☐ 501(c) ( ) (insert no.)  ☐ 4947(a)(1) or  ☐ 527

**J** Website: ▶ _____

**H(c)** Group exemption number ▶ _____

**K** Form of organization: ☐ Corporation ☐ Trust ☐ Association ☐ Other ▶      **L** Year of formation:      **M** State of legal domicile:

## Part I   Summary

**Activities & Governance**

| | | | |
|---|---|---|---|
| 1 | Briefly describe the organization's mission or most significant activities: | | |
| 2 | Check this box ▶ ☐ if the organization discontinued its operations or disposed of more than 25% of its net assets. | | |
| 3 | Number of voting members of the governing body (Part VI, line 1a) . . . . . . . . | **3** | |
| 4 | Number of independent voting members of the governing body (Part VI, line 1b) . . . | **4** | |
| 5 | Total number of individuals employed in calendar year 2023 (Part V, line 2a) . . . | **5** | |
| 6 | Total number of volunteers (estimate if necessary) . . . . . . . . . . . | **6** | |
| 7a | Total unrelated business revenue from Part VIII, column (C), line 12 . . . . . . | **7a** | |
| b | Net unrelated business taxable income from Form 990-T, Part I, line 11 . . . . . . | **7b** | |

**Revenue**

| | | Prior Year | Current Year |
|---|---|---|---|
| 8 | Contributions and grants (Part VIII, line 1h) . . . . . . . . | | |
| 9 | Program service revenue (Part VIII, line 2g) . . . . . . . . | | |
| 10 | Investment income (Part VIII, column (A), lines 3, 4, and 7d) . . . | | |
| 11 | Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) . . | | |
| 12 | Total revenue—add lines 8 through 11 (must equal Part VIII, column (A), line 12) | | |

**Expenses**

| | | Prior Year | Current Year |
|---|---|---|---|
| 13 | Grants and similar amounts paid (Part IX, column (A), lines 1–3) . . . . | | |
| 14 | Benefits paid to or for members (Part IX, column (A), line 4) . . . . | | |
| 15 | Salaries, other compensation, employee benefits (Part IX, column (A), lines 5–10) | | |
| 16a | Professional fundraising fees (Part IX, column (A), line 11e) . . . . | | |
| b | Total fundraising expenses (Part IX, column (D), line 25) ▶ _____ | | |
| 17 | Other expenses (Part IX, column (A), lines 11a–11d, 11f–24e) . . . | | |
| 18 | Total expenses. Add lines 13–17 (must equal Part IX, column (A), line 25) | | |
| 19 | Revenue less expenses. Subtract line 18 from line 12 . . . . . . | | |

**Net Assets or Fund Balances**

| | | Beginning of Current Year | End of Year |
|---|---|---|---|
| 20 | Total assets (Part X, line 16) . . . . . . . . . . . | | |
| 21 | Total liabilities (Part X, line 26) . . . . . . . . . . | | |
| 22 | Net assets or fund balances. Subtract line 21 from line 20 . . . . | | |

## Part II   Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

| **Sign Here** | Signature of officer | Date |
|---|---|---|
| | Type or print name and title | |

| **Paid Preparer Use Only** | Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|---|
| | Firm's name ▶ | | | Firm's EIN ▶ | |
| | Firm's address ▶ | | | Phone no. | |

May the IRS discuss this return with the preparer shown above? See instructions . . . . . . . . . . . ☐ Yes ☐ No

**For Paperwork Reduction Act Notice, see the separate instructions.**      Cat. No. 11282Y      Form **990** (2023)

Form 990 (2023)

| **Part III** | **Statement of Program Service Accomplishments** |
|---|---|

Check if Schedule O contains a response or note to any line in this Part III . . . . . . . . . . . . . . ☐

**1** Briefly describe the organization's mission:

----------------------------------------------------------------------------------------------------

----------------------------------------------------------------------------------------------------

----------------------------------------------------------------------------------------------------

----------------------------------------------------------------------------------------------------

**2** Did the organization undertake any significant program services during the year which were not listed on the prior Form 990 or 990-EZ? . . . . . . . . . . . . . . . . . . . . . . . . . ☐ **Yes** ☐ **No**

If "Yes," describe these new services on Schedule O.

**3** Did the organization cease conducting, or make significant changes in how it conducts, any program services? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ **Yes** ☐ **No**

If "Yes," describe these changes on Schedule O.

**4** Describe the organization's program service accomplishments for each of its three largest program services, as measured by expenses. Section 501(c)(3) and 501(c)(4) organizations are required to report the amount of grants and allocations to others, the total expenses, and revenue, if any, for each program service reported.

**4a** (Code: _____ ) (Expenses $ _____ including grants of $ _____ ) (Revenue $ _____ )

----------------------------------------------------------------------------------------------------

----------------------------------------------------------------------------------------------------

----------------------------------------------------------------------------------------------------

----------------------------------------------------------------------------------------------------

----------------------------------------------------------------------------------------------------

----------------------------------------------------------------------------------------------------

----------------------------------------------------------------------------------------------------

----------------------------------------------------------------------------------------------------

----------------------------------------------------------------------------------------------------

----------------------------------------------------------------------------------------------------

**4b** (Code: _____ ) (Expenses $ _____ including grants of $ _____ ) (Revenue $ _____ )

----------------------------------------------------------------------------------------------------

----------------------------------------------------------------------------------------------------

----------------------------------------------------------------------------------------------------

----------------------------------------------------------------------------------------------------

----------------------------------------------------------------------------------------------------

----------------------------------------------------------------------------------------------------

----------------------------------------------------------------------------------------------------

----------------------------------------------------------------------------------------------------

----------------------------------------------------------------------------------------------------

----------------------------------------------------------------------------------------------------

**4c** (Code: _____ ) (Expenses $ _____ including grants of $ _____ ) (Revenue $ _____ )

----------------------------------------------------------------------------------------------------

----------------------------------------------------------------------------------------------------

----------------------------------------------------------------------------------------------------

----------------------------------------------------------------------------------------------------

----------------------------------------------------------------------------------------------------

----------------------------------------------------------------------------------------------------

----------------------------------------------------------------------------------------------------

----------------------------------------------------------------------------------------------------

----------------------------------------------------------------------------------------------------

----------------------------------------------------------------------------------------------------

**4d** Other program services (Describe on Schedule O.)

(Expenses $ _____ including grants of $ _____ ) (Revenue $ _____ )

**4e** Total program service expenses ▶

Form 990 (2023)                                                                        Page **3**

| **Part IV** | **Checklist of Required Schedules** | | | |
|---|---|---|---|---|
| | | | **Yes** | **No** |
| **1** | Is the organization described in section 501(c)(3) or 4947(a)(1) (other than a private foundation)? If "Yes," complete Schedule A  . . . . . . . . . . . . . . . . . . . . . . . . . . | **1** | | |
| **2** | Is the organization required to complete Schedule B, Schedule of Contributors? See instructions  . . . . | **2** | | |
| **3** | Did the organization engage in direct or indirect political campaign activities on behalf of or in opposition to candidates for public office? If "Yes," complete Schedule C, Part I  . . . . . . . . . . . . . . | **3** | | |
| **4** | **Section 501(c)(3) organizations.** Did the organization engage in lobbying activities, or have a section 501(h) election in effect during the tax year? If "Yes," complete Schedule C, Part II  . . . . . . . . . | **4** | | |
| **5** | Is the organization a section 501(c)(4), 501(c)(5), or 501(c)(6) organization that receives membership dues, assessments, or similar amounts as defined in Rev. Proc. 98-19? If "Yes," complete Schedule C, Part III  . . | **5** | | |
| **6** | Did the organization maintain any donor advised funds or any similar funds or accounts for which donors have  the right to provide advice on the distribution or investment of amounts in such funds or accounts? If "Yes," complete Schedule D, Part I  . . . . . . . . . . . . . . . . . . . . . . . | **6** | | |
| **7** | Did the organization receive or hold a conservation easement, including easements to preserve open space, the environment, historic land areas, or historic structures? If "Yes," complete Schedule D, Part II  . . | **7** | | |
| **8** | Did the organization maintain collections of works of art, historical treasures, or other similar assets? If "Yes," complete Schedule D, Part III  . . . . . . . . . . . . . . . . . . . . . . | **8** | | |
| **9** | Did the organization report an amount in Part X, line 21, for escrow or custodial account liability; serve as a custodian for amounts not listed in Part X; or provide credit counseling, debt management, credit repair, or debt negotiation services? If "Yes," complete Schedule D, Part IV  . . . . . . . . . . . . . | **9** | | |
| **10** | Did the organization, directly or through a related organization, hold assets in donor-restricted endowments or in quasi-endowments? If "Yes," complete Schedule D, Part V  . . . . . . . . . . . . . | **10** | | |
| **11** | If the organization's answer to any of the following questions is "Yes," then complete Schedule D, Parts VI, VII, VIII, IX, or X, as applicable. | | | |
| **a** | Did the organization report an amount for land, buildings, and equipment in Part X, line 10? If "Yes," complete Schedule D, Part VI  . . . . . . . . . . . . . . . . . . . . . . . . | **11a** | | |
| **b** | Did the organization report an amount for investments—other securities in Part X, line 12, that is 5% or more of its total assets reported in Part X, line 16? If "Yes," complete Schedule D, Part VII  . . . . . . . | **11b** | | |
| **c** | Did the organization report an amount for investments—program related in Part X, line 13, that is 5% or more of its total assets reported in Part X, line 16? If "Yes," complete Schedule D, Part VIII  . . . . . . . | **11c** | | |
| **d** | Did the organization report an amount for other assets in Part X, line 15, that is 5% or more of its total assets reported in Part X, line 16? If "Yes," complete Schedule D, Part IX  . . . . . . . . . . . . | **11d** | | |
| **e** | Did the organization report an amount for other liabilities in Part X, line 25?  If "Yes," complete Schedule D, Part X | **11e** | | |
| **f** | Did the organization's separate or consolidated financial statements for the tax year include a footnote that addresses the organization's liability for uncertain tax positions under FIN 48 (ASC 740)? If "Yes," complete Schedule D, Part X | **11f** | | |
| **12a** | Did the organization obtain separate, independent audited financial statements for the tax year? If "Yes," complete Schedule D, Parts XI and XII  . . . . . . . . . . . . . . . . . . . . . | **12a** | | |
| **b** | Was the organization included in consolidated, independent audited financial statements for the tax year? If "Yes," and if the organization answered "No" to line 12a, then completing Schedule D, Parts XI and XII is optional | **12b** | | |
| **13** | Is the organization a school described in section 170(b)(1)(A)(ii)? If "Yes," complete Schedule E  . . . . | **13** | | |
| **14a** | Did the organization maintain an office, employees, or agents outside of the United States?  . . . . . | **14a** | | |
| **b** | Did the organization have aggregate revenues or expenses of more than $10,000 from grantmaking, fundraising, business, investment, and program service activities outside the United States, or aggregate foreign investments valued at $100,000 or more? If "Yes," complete Schedule F, Parts I and IV .  . . . . . | **14b** | | |
| **15** | Did the organization report on Part IX, column (A), line 3, more than $5,000 of grants or other assistance to or for any foreign organization? If "Yes," complete Schedule F, Parts II and IV  . . . . . . . . . . | **15** | | |
| **16** | Did the organization report on Part IX, column (A), line 3, more than $5,000 of aggregate grants or other assistance to or for foreign individuals? If "Yes," complete Schedule F, Parts III and IV .  . . . . . . | **16** | | |
| **17** | Did the organization report a total of more than $15,000 of expenses for professional fundraising services on Part IX, column (A), lines 6 and 11e? If "Yes," complete Schedule G, Part I. See instructions  . . . . | **17** | | |
| **18** | Did the organization report more than $15,000 total of fundraising event gross income and contributions on Part VIII, lines 1c and 8a? If "Yes," complete Schedule G, Part II  . . . . . . . . . . . . . | **18** | | |
| **19** | Did the organization report more than $15,000 of gross income from gaming activities on Part VIII, line 9a? If "Yes," complete Schedule G, Part III  . . . . . . . . . . . . . . . . . . . . | **19** | | |
| **20a** | Did the organization operate one or more hospital facilities? If "Yes," complete Schedule H  . . . . . | **20a** | | |
| **b** | If "Yes" to line 20a, did the organization attach a copy of its audited financial statements to this return?  . | **20b** | | |
| **21** | Did the organization report more than $5,000 of grants or other assistance to any domestic organization or domestic government on Part IX, column (A), line 1? If "Yes," complete Schedule I, Parts I and II  . . . . | **21** | | |

Form 990 (2023)                                                                                                    Page **4**

| Part IV | Checklist of Required Schedules *(continued)* |
|---|---|

|  |  |  | Yes | No |
|---|---|---|---|---|
| 22 | Did the organization report more than $5,000 of grants or other assistance to or for domestic individuals on Part IX, column (A), line 2? *If "Yes," complete Schedule I, Parts I and III* . . . . . . . . . . | **22** | | |
| 23 | Did the organization answer "Yes" to Part VII, Section A, line 3, 4, or 5, about compensation of the organization's current and former officers, directors, trustees, key employees, and highest compensated employees? *If "Yes," complete Schedule J* . . . . . . . . . . . . . . . . . . . . . . | **23** | | |
| 24a | Did the organization have a tax-exempt bond issue with an outstanding principal amount of more than $100,000 as of the last day of the year, that was issued after December 31, 2002? *If "Yes," answer lines 24b through 24d and complete Schedule K. If "No," go to line 25a* . . . . . . . . . . . . . . | **24a** | | |
| b | Did the organization invest any proceeds of tax-exempt bonds beyond a temporary period exception? . . | **24b** | | |
| c | Did the organization maintain an escrow account other than a refunding escrow at any time during the year to defease any tax-exempt bonds? . . . . . . . . . . . . . . . . . . . . . . . | **24c** | | |
| d | Did the organization act as an "on behalf of" issuer for bonds outstanding at any time during the year? . . | **24d** | | |
| 25a | **Section 501(c)(3), 501(c)(4), and 501(c)(29) organizations.** Did the organization engage in an excess benefit transaction with a disqualified person during the year? *If "Yes," complete Schedule L, Part I* . . . . | **25a** | | |
| b | Is the organization aware that it engaged in an excess benefit transaction with a disqualified person in a prior year, and that the transaction has not been reported on any of the organization's prior Forms 990 or 990-EZ? *If "Yes," complete Schedule L, Part I* . . . . . . . . . . . . . . . . . . . . . . | **25b** | | |
| 26 | Did the organization report any amount on Part X, line 5 or 22, for receivables from or payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons? *If "Yes," complete Schedule L, Part II* . . | **26** | | |
| 27 | Did the organization provide a grant or other assistance to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor or employee thereof, a grant selection committee member, or to a 35% controlled entity (including an employee thereof) or family member of any of these persons? *If "Yes," complete Schedule L, Part III* . . . . . . . . . . . . . . . . . . . . | **27** | | |
| 28 | Was the organization a party to a business transaction with one of the following parties? (See the Schedule L, Part IV, instructions for applicable filing thresholds, conditions, and exceptions.) | | | |
| a | A current or former officer, director, trustee, key employee, creator or founder, or substantial contributor? *If "Yes," complete Schedule L, Part IV* . . . . . . . . . . . . . . . . . . . . | **28a** | | |
| b | A family member of any individual described in line 28a? *If "Yes," complete  Schedule L, Part IV* . . . . | **28b** | | |
| c | A 35% controlled entity of one or more individuals and/or organizations described in line 28a or 28b? *If "Yes," complete Schedule L, Part IV* . . . . . . . . . . . . . . . . . . . . . . | **28c** | | |
| 29 | Did the organization receive more than $25,000 in noncash contributions? *If "Yes," complete Schedule M* | **29** | | |
| 30 | Did the organization receive contributions of art, historical treasures, or other similar assets, or qualified conservation contributions? *If "Yes," complete Schedule M* . . . . . . . . . . . . . . . | **30** | | |
| 31 | Did the organization liquidate, terminate, or dissolve and cease operations? *If "Yes," complete Schedule N, Part I* | **31** | | |
| 32 | Did the organization sell, exchange, dispose of, or transfer more than 25% of its net assets? *If "Yes," complete Schedule N, Part II* . . . . . . . . . . . . . . . . . . . . . . . . . | **32** | | |
| 33 | Did the organization own 100% of an entity disregarded as separate from the organization under Regulations sections 301.7701-2 and 301.7701-3? *If "Yes," complete Schedule R, Part I* . . . . . . . . . | **33** | | |
| 34 | Was the organization related to any tax-exempt or taxable entity? *If "Yes," complete Schedule R, Part II, III, or IV, and Part V, line 1* . . . . . . . . . . . . . . . . . . . . . . . . . . | **34** | | |
| 35a | Did the organization have a controlled entity within the meaning of section 512(b)(13)? . . . . . . | **35a** | | |
| b | If "Yes" to line 35a, did the organization receive any payment from or engage in any transaction with a controlled entity within the meaning of section 512(b)(13)? *If "Yes," complete Schedule R, Part V, line 2* . . | **35b** | | |
| 36 | **Section 501(c)(3) organizations.** Did the organization make any transfers to an exempt non-charitable related organization? *If "Yes," complete Schedule R, Part V, line 2* . . . . . . . . . . . . | **36** | | |
| 37 | Did the organization conduct more than 5% of its activities through an entity that is not a related organization and that is treated as a partnership for federal income tax purposes? *If "Yes," complete Schedule R, Part VI* | **37** | | |
| 38 | Did the organization complete Schedule O and provide explanations on Schedule O for Part VI, lines 11b and 19? **Note:** All Form 990 filers are required to complete Schedule O. . . . . . . . . . . . | **38** | | |

| Part V | Statements Regarding Other IRS Filings and Tax Compliance |
|---|---|

Check if Schedule O contains a response or note to any line in this Part V . . . . . . . . . . □

|  |  |  | | Yes | No |
|---|---|---|---|---|---|
| 1a | Enter the number reported in box 3 of Form 1096. Enter -0- if not applicable . . . | **1a** | | | |
| b | Enter the number of Forms W-2G included on line 1a. Enter -0- if not applicable . . | **1b** | | | |
| c | Did the organization comply with backup withholding rules for reportable payments to vendors and reportable gaming (gambling) winnings to prize winners? . . . . . . . . . . . . . . . | | **1c** | | |

Form 990 (2023)                                                             **Page 5**

| **Part V** | **Statements Regarding Other IRS Filings and Tax Compliance** *(continued)* | | **Yes** | **No** |
|---|---|---|---|---|
| **2a** | Enter the number of employees reported on Form W-3, Transmittal of Wage and Tax Statements, filed for the calendar year ending with or within the year covered by this return | **2a** | | |
| **b** | If at least one is reported on line 2a, did the organization file all required federal employment tax returns? . | **2b** | | |
| **3a** | Did the organization have unrelated business gross income of $1,000 or more during the year? . . . . | **3a** | | |
| **b** | If "Yes," has it filed a Form 990-T for this year? *If "No" to line 3b, provide an explanation on Schedule O* | **3b** | | |
| **4a** | At any time during the calendar year, did the organization have an interest in, or a signature or other authority over, a financial account in a foreign country (such as a bank account, securities account, or other financial account)? | **4a** | | |
| **b** | If "Yes," enter the name of the foreign country _____ See instructions for filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR). | | | |
| **5a** | Was the organization a party to a prohibited tax shelter transaction at any time during the tax year? . . | **5a** | | |
| **b** | Did any taxable party notify the organization that it was or is a party to a prohibited tax shelter transaction? | **5b** | | |
| **c** | If "Yes" to line 5a or 5b, did the organization file Form 8886-T? . . . . . . . . . . . . | **5c** | | |
| **6a** | Does the organization have annual gross receipts that are normally greater than $100,000, and did the organization solicit any contributions that were not tax deductible as charitable contributions? . . . . . | **6a** | | |
| **b** | If "Yes," did the organization include with every solicitation an express statement that such contributions or gifts were not tax deductible? . . . . . . . . . . . . . . . . . . . . | **6b** | | |
| **7** | **Organizations that may receive deductible contributions under section 170(c).** | | | |
| **a** | Did the organization receive a payment in excess of $75 made partly as a contribution and partly for goods and services provided to the payor? . . . . . . . . . . . . . . . . . . | **7a** | | |
| **b** | If "Yes," did the organization notify the donor of the value of the goods or services provided? . . . | **7b** | | |
| **c** | Did the organization sell, exchange, or otherwise dispose of tangible personal property for which it was required to file Form 8282? . . . . . . . . . . . . . . . . . . . . | **7c** | | |
| **d** | If "Yes," indicate the number of Forms 8282 filed during the year . . . . . . . \| **7d** \| | | | |
| **e** | Did the organization receive any funds, directly or indirectly, to pay premiums on a personal benefit contract? | **7e** | | |
| **f** | Did the organization, during the year, pay premiums, directly or indirectly, on a personal benefit contract? . | **7f** | | |
| **g** | If the organization received a contribution of qualified intellectual property, did the organization file Form 8899 as required? | **7g** | | |
| **h** | If the organization received a contribution of cars, boats, airplanes, or other vehicles, did the organization file a Form 1098-C? | **7h** | | |
| **8** | **Sponsoring organizations maintaining donor advised funds.** Did a donor advised fund maintained by the sponsoring organization have excess business holdings at any time during the year? . . . . . . | **8** | | |
| **9** | **Sponsoring organizations maintaining donor advised funds.** | | | |
| **a** | Did the sponsoring organization make any taxable distributions under section 4966? . . . . . . | **9a** | | |
| **b** | Did the sponsoring organization make a distribution to a donor, donor advisor, or related person? . . . | **9b** | | |
| **10** | **Section 501(c)(7) organizations.** Enter: | | | |
| **a** | Initiation fees and capital contributions included on Part VIII, line 12 . . . . . . \| **10a** \| | | | |
| **b** | Gross receipts, included on Form 990, Part VIII, line 12, for public use of club facilities . \| **10b** \| | | | |
| **11** | **Section 501(c)(12) organizations.** Enter: | | | |
| **a** | Gross income from members or shareholders . . . . . . . . . . . \| **11a** \| | | | |
| **b** | Gross income from other sources. (Do not net amounts due or paid to other sources against amounts due or received from them.) . . . . . . . . . . \| **11b** \| | | | |
| **12a** | **Section 4947(a)(1) non-exempt charitable trusts.** Is the organization filing Form 990 in lieu of Form 1041? | **12a** | | |
| **b** | If "Yes," enter the amount of tax-exempt interest received or accrued during the year . \| **12b** \| | | | |
| **13** | **Section 501(c)(29) qualified nonprofit health insurance issuers.** | | | |
| **a** | Is the organization licensed to issue qualified health plans in more than one state? . . . . . . | **13a** | | |
| | **Note:** See the instructions for additional information the organization must report on Schedule O. | | | |
| **b** | Enter the amount of reserves the organization is required to maintain by the states in which the organization is licensed to issue qualified health plans . . . . . \| **13b** \| | | | |
| **c** | Enter the amount of reserves on hand . . . . . . . . . . . . . \| **13c** \| | | | |
| **14a** | Did the organization receive any payments for indoor tanning services during the tax year? . . . . | **14a** | | |
| **b** | If "Yes," has it filed a Form 720 to report these payments? *If "No," provide an explanation on Schedule O* . | **14b** | | |
| **15** | Is the organization subject to the section 4960 tax on payment(s) of more than $1,000,000 in remuneration or excess parachute payment(s) during the year? . . . . . . . . . . . . . . . | **15** | | |
| | If "Yes," see the instructions and file Form 4720, Schedule N. | | | |
| **16** | Is the organization an educational institution subject to the section 4968 excise tax on net investment income? | **16** | | |
| | If "Yes," complete Form 4720, Schedule O. | | | |
| **17** | **Section 501(c)(21) organizations.** Did the trust, or any disqualified or other person, engage in any activities that would result in the imposition of an excise tax under section 4951, 4952, or 4953? . . . . . . | **17** | | |
| | If "Yes," complete Form 6069. | | | |

Form 990 (2023)  Page **6**

| **Part VI** | **Governance, Management, and Disclosure.** *For each "Yes" response to lines 2 through 7b below, and for a "No" response to line 8a, 8b, or 10b below, describe the circumstances, processes, or changes on Schedule O. See instructions.* |
|---|---|

Check if Schedule O contains a response or note to any line in this Part VI . . . . . . . . . . ☐

**Section A. Governing Body and Management**

| | | | | Yes | No |
|---|---|---|---|---|---|
| **1a** | Enter the number of voting members of the governing body at the end of the tax year . | **1a** | | | |
| | If there are material differences in voting rights among members of the governing body, or if the governing body delegated broad authority to an executive committee or similar committee, explain on Schedule O. | | | | |
| **b** | Enter the number of voting members included on line 1a, above, who are independent  . | **1b** | | | |
| **2** | Did any officer, director, trustee, or key employee have a family relationship or a business relationship with any other officer, director, trustee, or key employee? | | **2** | | |
| **3** | Did the organization delegate control over management duties customarily performed by or under the direct supervision of officers, directors, trustees, or key employees to a management company or other person? . | | **3** | | |
| **4** | Did the organization make any significant changes to its governing documents since the prior Form 990 was filed? | | **4** | | |
| **5** | Did the organization become aware during the year of a significant diversion of the organization's assets? . | | **5** | | |
| **6** | Did the organization have members or stockholders? . . . . . . . . . . . . . | | **6** | | |
| **7a** | Did the organization have members, stockholders, or other persons who had the power to elect or appoint one or more members of the governing body? . . . . . . . . . . . . . . | | **7a** | | |
| **b** | Are any governance decisions of the organization reserved to (or subject to approval by) members, stockholders, or persons other than the governing body? . . . . . . . . . . | | **7b** | | |
| **8** | Did the organization contemporaneously document the meetings held or written actions undertaken during the year by the following: | | | | |
| **a** | The governing body? . . . . . . . . . . . . . . . . . . . . . . | | **8a** | | |
| **b** | Each committee with authority to act on behalf of the governing body? . . . . . . . . | | **8b** | | |
| **9** | Is there any officer, director, trustee, or key employee listed in Part VII, Section A, who cannot be reached at the organization's mailing address? *If "Yes," provide the names and addresses on Schedule O* . . . . | | **9** | | |

**Section B. Policies** *(This Section B requests information about policies not required by the Internal Revenue Code.)*

| | | | Yes | No |
|---|---|---|---|---|
| **10a** | Did the organization have local chapters, branches, or affiliates? . . . . . . . . . . | **10a** | | |
| **b** | If "Yes," did the organization have written policies and procedures governing the activities of such chapters, affiliates, and branches to ensure their operations are consistent with the organization's exempt purposes? | **10b** | | |
| **11a** | Has the organization provided a complete copy of this Form 990 to all members of its governing body before filing the form? | **11a** | | |
| **b** | Describe on Schedule O the process, if any, used by the organization to review this Form 990. | | | |
| **12a** | Did the organization have a written conflict of interest policy? *If "No," go to line 13* | **12a** | | |
| **b** | Were officers, directors, or trustees, and key employees required to disclose annually interests that could give rise to conflicts? | **12b** | | |
| **c** | Did the organization regularly and consistently monitor and enforce compliance with the policy? *If "Yes," describe on Schedule O how this was done* . . . . . . . . . . . . . . . | **12c** | | |
| **13** | Did the organization have a written whistleblower policy? . . . . . . . . . . . . | **13** | | |
| **14** | Did the organization have a written document retention and destruction policy? . . . . . . | **14** | | |
| **15** | Did the process for determining compensation of the following persons include a review and approval by independent persons, comparability data, and contemporaneous substantiation of the deliberation and decision? | | | |
| **a** | The organization's CEO, Executive Director, or top management official  . . . . . . . | **15a** | | |
| **b** | Other officers or key employees of the organization . . . . . . . . . . . . . | **15b** | | |
| | If "Yes" to line 15a or 15b, describe the process on Schedule O. See instructions. | | | |
| **16a** | Did the organization invest in, contribute assets to, or participate in a joint venture or similar arrangement with a taxable entity during the year? . . . . . . . . . . . . . . . | **16a** | | |
| **b** | If "Yes," did the organization follow a written policy or procedure requiring the organization to evaluate its participation in joint venture arrangements under applicable federal tax law, and take steps to safeguard the organization's exempt status with respect to such arrangements? . . . . . . . . . | **16b** | | |

**Section C. Disclosure**

| | |
|---|---|
| **17** | List the states with which a copy of this Form 990 is required to be filed |
| **18** | Section 6104 requires an organization to make its Forms 1023 (1024 or 1024-A, if applicable), 990, and 990-T (section 501(c)(3)s only) available for public inspection. Indicate how you made these available. Check all that apply. |
| | ☐ Own website   ☐ Another's website   ☐ Upon request   ☐ Other *(explain on Schedule O)* |
| **19** | Describe on Schedule O whether (and if so, how) the organization made its governing documents, conflict of interest policy, and financial statements available to the public during the tax year. |
| **20** | State the name, address, and telephone number of the person who possesses the organization's books and records. |

Form 990 (2023)                                                                                                          Page **7**

| **Part VII** | **Compensation of Officers, Directors, Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors** |
|---|---|

Check if Schedule O contains a response or note to any line in this Part VII   .   .   .   .   .   .   .   .   .   .   .   .   ☐

**Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**

**1a** Complete this table for all persons required to be listed. Report compensation for the calendar year ending with or within the organization's tax year.

• List all of the organization's **current** officers, directors, trustees (whether individuals or organizations), regardless of amount of compensation. Enter -0- in columns (D), (E), and (F) if no compensation was paid.

• List all of the organization's **current** key employees, if any. See the instructions for definition of "key employee."

• List the organization's five **current** highest compensated employees (other than an officer, director, trustee, or key employee) who received reportable compensation (box 5 of Form W-2, box 6 of Form 1099-MISC, and/or box 1 of Form 1099-NEC) of more than $100,000 from the organization and any related organizations.

• List all of the organization's **former** officers, key employees, and highest compensated employees who received more than $100,000 of reportable compensation from the organization and any related organizations.

• List all of the organization's **former directors or trustees** that received, in the capacity as a former director or trustee of the organization, more than $10,000 of reportable compensation from the organization and any related organizations.

See the instructions for the order in which to list the persons above.

☐ Check this box if neither the organization nor any related organization compensated any current officer, director, or trustee.

| (A)<br>Name and title | (B)<br>Average hours per week (list any hours for related organizations below dotted line) | (C)<br>Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D)<br>Reportable compensation from the organization (W-2/1099-MISC/1099-NEC) | (E)<br>Reportable compensation from related organizations (W-2/1099-MISC/1099-NEC) | (F)<br>Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| (1) | | | | | | | | | | |
| (2) | | | | | | | | | | |
| (3) | | | | | | | | | | |
| (4) | | | | | | | | | | |
| (5) | | | | | | | | | | |
| (6) | | | | | | | | | | |
| (7) | | | | | | | | | | |
| (8) | | | | | | | | | | |
| (9) | | | | | | | | | | |
| (10) | | | | | | | | | | |
| (11) | | | | | | | | | | |
| (12) | | | | | | | | | | |
| (13) | | | | | | | | | | |
| (14) | | | | | | | | | | |

Form 990 (2023) | | Page **8**

| Part VII | Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees *(continued)* |
|---|---|

| (A)<br>Name and title | (B)<br>Average hours per week (list any hours for related organizations below dotted line) | (C)<br>Position<br>(do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D)<br>Reportable compensation from the organization (W-2/1099-MISC/1099-NEC) | (E)<br>Reportable compensation from related organizations (W-2/1099-MISC/1099-NEC) | (F)<br>Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| (15) | | | | | | | | | | |
| (16) | | | | | | | | | | |
| (17) | | | | | | | | | | |
| (18) | | | | | | | | | | |
| (19) | | | | | | | | | | |
| (20) | | | | | | | | | | |
| (21) | | | | | | | | | | |
| (22) | | | | | | | | | | |
| (23) | | | | | | | | | | |
| (24) | | | | | | | | | | |
| (25) | | | | | | | | | | |

**1b** **Subtotal** . . . . . . . . .

  **c** **Total from continuation sheets to Part VII, Section A** . . . . .

  **d** **Total (add lines 1b and 1c)** . . . . . . .

**2** Total number of individuals (including but not limited to those listed above) who received more than $100,000 of reportable compensation from the organization

| | | Yes | No |
|---|---|---|---|
| **3** | Did the organization list any **former** officer, director, trustee, key employee, or highest compensated employee on line 1a? *If "Yes," complete Schedule J for such individual* . . . . . . . . . . . **3** | | |
| **4** | For any individual listed on line 1a, is the sum of reportable compensation and other compensation from the organization and related organizations greater than $150,000? *If "Yes," complete Schedule J for such individual* . . . . . . . . . . . . . . . . **4** | | |
| **5** | Did any person listed on line 1a receive or accrue compensation from any unrelated organization or individual for services rendered to the organization? *If "Yes," complete Schedule J for such person* . . . . . . **5** | | |

**Section B. Independent Contractors**

**1** Complete this table for your five highest compensated independent contractors that received more than $100,000 of compensation from the organization. Report compensation for the calendar year ending with or within the organization's tax year.

| (A)<br>Name and business address | (B)<br>Description of services | (C)<br>Compensation |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

**2** Total number of independent contractors (including but not limited to those listed above) who received more than $100,000 of compensation from the organization

Form **990** (2023)

Form 990 (2023)                                                         **Page 9**

| **Part VIII** | **Statement of Revenue** | | | | |
|---|---|---|---|---|---|

Check if Schedule O contains a response or note to any line in this Part VIII . . . . . . . . . . . □

| | | | (A) Total revenue | (B) Related or exempt function revenue | (C) Unrelated business revenue | (D) Revenue excluded from tax under sections 512–514 |
|---|---|---|---|---|---|---|
| **Contributions, Gifts, Grants, and Other Similar Amounts** | **1a** Federated campaigns . . . . | **1a** | | | | |
| | **b** Membership dues . . . . | **1b** | | | | |
| | **c** Fundraising events . . . . | **1c** | | | | |
| | **d** Related organizations . . . | **1d** | | | | |
| | **e** Government grants (contributions) | **1e** | | | | |
| | **f** All other contributions, gifts, grants, and similar amounts not included above | **1f** | | | | |
| | **g** Noncash contributions included in lines 1a–1f . . . . . . . | **1g** $ | | | | |
| | **h** **Total.** Add lines 1a–1f . . . . . . . . . ▸ | | | | | |
| **Program Service Revenue** | | | Business Code | | | |
| | **2a** _____ | | | | | |
| | **b** _____ | | | | | |
| | **c** _____ | | | | | |
| | **d** _____ | | | | | |
| | **e** _____ | | | | | |
| | **f** All other program service revenue . | | | | | |
| | **g** **Total.** Add lines 2a–2f . . . . . . . . . ▸ | | | | | |
| **Other Revenue** | **3** Investment income (including dividends, interest, and other similar amounts) . . . . . . . . . . ▸ | | | | | |
| | **4** Income from investment of tax-exempt bond proceeds ▸ | | | | | |
| | **5** Royalties . . . . . . . . . . . . . ▸ | | | | | |
| | | | (i) Real | (ii) Personal | | |
| | **6a** Gross rents . . . | **6a** | | | | |
| | **b** Less: rental expenses | **6b** | | | | |
| | **c** Rental income or (loss) | **6c** | | | | |
| | **d** Net rental income or (loss) . . . . . . . . ▸ | | | | | |
| | | | (i) Securities | (ii) Other | | |
| | **7a** Gross amount from sales of assets other than inventory | **7a** | | | | |
| | **b** Less: cost or other basis and sales expenses . | **7b** | | | | |
| | **c** Gain or (loss) . . | **7c** | | | | |
| | **d** Net gain or (loss) . . . . . . . . . . ▸ | | | | | |
| | **8a** Gross income from fundraising events (not including $ _____ of contributions reported on line 1c). See Part IV, line 18 . . . | **8a** | | | | |
| | **b** Less: direct expenses . . . . | **8b** | | | | |
| | **c** Net income or (loss) from fundraising events . . . ▸ | | | | | |
| | **9a** Gross income from gaming activities. See Part IV, line 19 . . | **9a** | | | | |
| | **b** Less: direct expenses . . . . | **9b** | | | | |
| | **c** Net income or (loss) from gaming activities . . . ▸ | | | | | |
| | **10a** Gross sales of inventory, less returns and allowances . . . | **10a** | | | | |
| | **b** Less: cost of goods sold . . | **10b** | | | | |
| | **c** Net income or (loss) from sales of inventory . . . . ▸ | | | | | |
| **Miscellaneous Revenue** | | | Business Code | | | |
| | **11a** _____ | | | | | |
| | **b** _____ | | | | | |
| | **c** _____ | | | | | |
| | **d** All other revenue . . . . . . | | | | | |
| | **e** **Total.** Add lines 11a–11d . . . . . . . . ▸ | | | | | |
| | **12** **Total revenue.** See instructions . . . . . . . ▸ | | | | | |

91

Form 990 (2023)                                                                                                          Page **10**

| **Part IX** | **Statement of Functional Expenses** |

*Section 501(c)(3) and 501(c)(4) organizations must complete all columns. All other organizations must complete column (A).*

Check if Schedule O contains a response or note to any line in this Part IX . . . . . . . . . . . ☐

| *Do not include amounts reported on lines 6b, 7b, 8b, 9b, and 10b of Part VIII.* | **(A)** Total expenses | **(B)** Program service expenses | **(C)** Management and general expenses | **(D)** Fundraising expenses |
|---|---|---|---|---|
| **1** Grants and other assistance to domestic organizations and domestic governments. See Part IV, line 21 . | | | | |
| **2** Grants and other assistance to domestic individuals. See Part IV, line 22 . . | | | | |
| **3** Grants and other assistance to foreign organizations, foreign governments, and foreign individuals. See Part IV, lines 15 and 16 | | | | |
| **4** Benefits paid to or for members . . | | | | |
| **5** Compensation of current officers, directors, trustees, and key employees . . . . | | | | |
| **6** Compensation not included above to disqualified persons (as defined under section 4958(f)(1)) and persons described in section 4958(c)(3)(B) . . | | | | |
| **7** Other salaries and wages . . . . | | | | |
| **8** Pension plan accruals and contributions (include section 401(k) and 403(b) employer contributions) | | | | |
| **9** Other employee benefits . . . . . | | | | |
| **10** Payroll taxes . . . . . . . . | | | | |
| **11** Fees for services (nonemployees): | | | | |
| **a** Management . . . . . . . . | | | | |
| **b** Legal . . . . . . . . . . | | | | |
| **c** Accounting . . . . . . . . | | | | |
| **d** Lobbying . . . . . . . . . | | | | |
| **e** Professional fundraising services. See Part IV, line 17 | | | | |
| **f** Investment management fees . . . | | | | |
| **g** Other. (If line 11g amount exceeds 10% of line 25, column (A), amount, list line 11g expenses on Schedule O.) | | | | |
| **12** Advertising and promotion . . . . | | | | |
| **13** Office expenses . . . . . . . | | | | |
| **14** Information technology . . . . . | | | | |
| **15** Royalties . . . . . . . . . | | | | |
| **16** Occupancy . . . . . . . . | | | | |
| **17** Travel . . . . . . . . . . | | | | |
| **18** Payments of travel or entertainment expenses for any federal, state, or local public officials | | | | |
| **19** Conferences, conventions, and meetings . | | | | |
| **20** Interest . . . . . . . . . . | | | | |
| **21** Payments to affiliates . . . . . | | | | |
| **22** Depreciation, depletion, and amortization . | | | | |
| **23** Insurance . . . . . . . . . | | | | |
| **24** Other expenses. Itemize expenses not covered above. (List miscellaneous expenses on line 24e. If line 24e amount exceeds 10% of line 25, column (A), amount, list line 24e expenses on Schedule O.) | | | | |
| **a** ------------------------------------ | | | | |
| **b** ------------------------------------ | | | | |
| **c** ------------------------------------ | | | | |
| **d** ------------------------------------ | | | | |
| **e** All other expenses | | | | |
| **25** **Total functional expenses.** Add lines 1 through 24e | | | | |
| **26** **Joint costs.** Complete this line only if the organization reported in column (B) joint costs from a combined educational campaign and fundraising solicitation. Check here ☐ if following SOP 98-2 (ASC 958-720) | | | | |

Form 990 (2023)                                                                                                                    Page **11**

| Part X | Balance Sheet |
|---|---|

Check if Schedule O contains a response or note to any line in this Part X   .   .   .   .   .   .   .   .   .   .   .   . ☐

|  |  |  | (A) Beginning of year |  | (B) End of year |
|---|---|---|---|---|---|
| **Assets** | **1** | Cash—non-interest-bearing   .   .   .   .   .   .   . | | **1** | |
| | **2** | Savings and temporary cash investments   .   .   .   .   . | | **2** | |
| | **3** | Pledges and grants receivable, net   .   .   .   .   .   . | | **3** | |
| | **4** | Accounts receivable, net   .   .   .   .   .   .   .   . | | **4** | |
| | **5** | Loans and other receivables from any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons   .   .   .   . | | **5** | |
| | **6** | Loans and other receivables from other disqualified persons (as defined under section 4958(f)(1)), and persons described in section 4958(c)(3)(B) | | **6** | |
| | **7** | Notes and loans receivable, net   .   .   .   .   .   .   . | | **7** | |
| | **8** | Inventories for sale or use   .   .   .   .   .   .   .   . | | **8** | |
| | **9** | Prepaid expenses and deferred charges   .   .   .   .   . | | **9** | |
| | **10a** | Land, buildings, and equipment: cost or other basis. Complete Part VI of Schedule D   .   .   . **10a** | | | |
| | **b** | Less: accumulated depreciation   .   .   .   . **10b** | | **10c** | |
| | **11** | Investments—publicly traded securities   .   .   .   .   . | | **11** | |
| | **12** | Investments—other securities. See Part IV, line 11   .   . | | **12** | |
| | **13** | Investments—program-related. See Part IV, line 11   .   . | | **13** | |
| | **14** | Intangible assets   .   .   .   .   .   .   .   .   .   . | | **14** | |
| | **15** | Other assets. See Part IV, line 11   .   .   .   .   .   . | | **15** | |
| | **16** | **Total assets.** Add lines 1 through 15 (must equal line 33)   .   .   .   . | | **16** | |
| **Liabilities** | **17** | Accounts payable and accrued expenses   .   .   .   .   . | | **17** | |
| | **18** | Grants payable   .   .   .   .   .   .   .   .   .   . | | **18** | |
| | **19** | Deferred revenue   .   .   .   .   .   .   .   .   .   . | | **19** | |
| | **20** | Tax-exempt bond liabilities   .   .   .   .   .   .   .   . | | **20** | |
| | **21** | Escrow or custodial account liability. Complete Part IV of Schedule D   . | | **21** | |
| | **22** | Loans and other payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons   .   .   . | | **22** | |
| | **23** | Secured mortgages and notes payable to unrelated third parties   .   . | | **23** | |
| | **24** | Unsecured notes and loans payable to unrelated third parties   .   .   . | | **24** | |
| | **25** | Other liabilities (including federal income tax, payables to related third parties, and other liabilities not included on lines 17–24). Complete Part X of Schedule D   .   .   .   .   .   .   .   .   .   .   .   . | | **25** | |
| | **26** | **Total liabilities.** Add lines 17 through 25   .   .   .   .   .   . | | **26** | |
| **Net Assets or Fund Balances** | | **Organizations that follow FASB ASC 958, check here** ☐ **and complete lines 27, 28, 32, and 33.** | | | |
| | **27** | Net assets without donor restrictions   .   .   .   .   .   . | | **27** | |
| | **28** | Net assets with donor restrictions   .   .   .   .   .   .   . | | **28** | |
| | | **Organizations that do not follow FASB ASC 958, check here** ☐ **and complete lines 29 through 33.** | | | |
| | **29** | Capital stock or trust principal, or current funds   .   .   .   . | | **29** | |
| | **30** | Paid-in or capital surplus, or land, building, or equipment fund   .   .   . | | **30** | |
| | **31** | Retained earnings, endowment, accumulated income, or other funds   . | | **31** | |
| | **32** | Total net assets or fund balances   .   .   .   .   .   .   . | | **32** | |
| | **33** | Total liabilities and net assets/fund balances   .   .   .   .   . | | **33** | |

Form **990** (2023)

Form 990 (2023)                                                                                                    Page **12**

| Part XI | Reconciliation of Net Assets |
|---|---|

Check if Schedule O contains a response or note to any line in this Part XI . . . . . . . . . . . ☐

| | | | |
|---|---|---|---|
| 1 | Total revenue (must equal Part VIII, column (A), line 12) . . . . . . . . . . | **1** | |
| 2 | Total expenses (must equal Part IX, column (A), line 25) . . . . . . . . . . | **2** | |
| 3 | Revenue less expenses. Subtract line 2 from line 1 . . . . . . . . . . . . | **3** | |
| 4 | Net assets or fund balances at beginning of year (must equal Part X, line 32, column (A)) . . . | **4** | |
| 5 | Net unrealized gains (losses) on investments . . . . . . . . . . . . . | **5** | |
| 6 | Donated services and use of facilities . . . . . . . . . . . . . . . | **6** | |
| 7 | Investment expenses . . . . . . . . . . . . . . . . . . . . | **7** | |
| 8 | Prior period adjustments . . . . . . . . . . . . . . . . . . . | **8** | |
| 9 | Other changes in net assets or fund balances (explain on Schedule O) . . . . . . . . | **9** | |
| 10 | Net assets or fund balances at end of year. Combine lines 3 through 9 (must equal Part X, line 32, column (B)) | **10** | |

| Part XII | Financial Statements and Reporting |
|---|---|

Check if Schedule O contains a response or note to any line in this Part XII . . . . . . . . . . . . . ☐

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Accounting method used to prepare the Form 990: ☐ Cash   ☐ Accrual   ☐ Other _____ | | | |
| | If the organization changed its method of accounting from a prior year or checked "Other," explain on Schedule O. | | | |
| 2a | Were the organization's financial statements compiled or reviewed by an independent accountant? . . . | **2a** | | |
| | If "Yes," check a box below to indicate whether the financial statements for the year were compiled or reviewed on a separate basis, consolidated basis, or both. | | | |
| | ☐ Separate basis   ☐ Consolidated basis   ☐ Both consolidated and separate basis | | | |
| b | Were the organization's financial statements audited by an independent accountant? . . . . . . . | **2b** | | |
| | If "Yes," check a box below to indicate whether the financial statements for the year were audited on a separate basis, consolidated basis, or both. | | | |
| | ☐ Separate basis   ☐ Consolidated basis   ☐ Both consolidated and separate basis | | | |
| c | If "Yes" to line 2a or 2b, does the organization have a committee that assumes responsibility for oversight of the audit, review, or compilation of its financial statements and selection of an independent accountant? . | **2c** | | |
| | If the organization changed either its oversight process or selection process during the tax year, explain on Schedule O. | | | |
| 3a | As a result of a federal award, was the organization required to undergo an audit or audits as set forth in the Uniform Guidance, 2 C.F.R. Part 200, Subpart F? | **3a** | | |
| b | If "Yes," did the organization undergo the required audit or audits? If the organization did not undergo the required audit or audits, explain why on Schedule O and describe any steps taken to undergo such audits . | **3b** | | |

Form **990** (2023)

# Exhibit 5

| From: | Aria Branch |
|---|---|
| To: | Chris Hilton; LeGrand, Andrew; Alex Dvorscak; Ahmed, Amer S.; Abha Khanna |
| Cc: | Boutrous Jr., Theodore J.; Elena Rodriguez Armenta; Champion, Anne; Vidyarthi, Apratim; Omeed Alerasool; Jacob Shelly; Chris Dodge; Daniela Lorenzo; Ogale, Arjun; Judd E. Stone, II; Ari Cuenin; Bonnie Chester; Cody Coll; john.sullivan@the-sl-lawfirm.com; Tom Albright; Michael Abrams; Togias, Iason |
| Subject: | RE: X/MMFA: Meet and Confer |
| Date: | Monday, May 27, 2024 12:21:51 PM |

Chris,

We won't belabor the points raised in your email and will instead look forward to discussing these issues today, per the Court's order.

However, I continue to be taken aback and disappointed by your repeated falsehoods about my statements, and I believe they embody and are colored by the exact opposite of the collegiality and professional courtesy referenced in the *Dondi Properties* case cited by the Court. As you have pointed out, at that time of our first meet and confer, Defendants' motion to stay discovery was pending, and we had yet to (and still have yet to) agree to a Protective Order and ESI protocol. On our call, I made clear that we were eager to agree to a Protective Order and ESI Protocol so that we could begin discovery in earnest. And I stated that our clients were understandably concerned about engaging in expensive and intrusive discovery, given the tremendous breadth of your requests, in light of the possibility that discovery could be stayed in the near future.  I did not, however, at any point represent that our "clients were not diligently working to respond to discovery nor that they had no desire to do so given the pending motion to stay and motion to dismiss." I said the exact opposite – that we were engaged in document collection from relevant custodians and that we would get back to you on the anticipated date of our first production of documents. At one point, I explicitly stated that we "intend to comply with the scheduling order" and that I wanted to assure you that we were not "sitting on our hands." Our conduct since that call has been entirely consistent with the statements I made, as we have since produced documents (consistent with the timing we provided) and we have repeatedly affirmed that we have every intention and desire of complying with our discovery obligations.

We also want to clarify that Defendants have given you the names of our main custodians and assured you that "we have collected documents from [other] appropriate custodians who were involved in the research, drafting, and editing of the challenged article." As we noted in our earlier email, we also are willing to discuss a mutual exchange of custodians and search terms during our call today.

Regards,

**Aria C. Branch**
Partner
Elias Law Group LLP
250 Massachusetts Avenue NW, Suite 400
Washington DC 20001
202-968-4518

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** Chris Hilton <chris@stonehilton.com>
**Sent:** Monday, May 27, 2024 9:21 AM
**To:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Alex Dvorscak <alex@stonehilton.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; Abha Khanna <akhanna@elias.law>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Aria Branch <abranch@elias.law>; Ogale, Arjun <AOgale@gibsondunn.com>; Judd E. Stone, II <judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester <Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Tom Albright <tom@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Togias, Iason <ITogias@gibsondunn.com>
**Subject:** Re: X/MMFA: Meet and Confer

Andrew,

The continued posturing about our efforts to confer is not helpful. Today will be at least our fourth call on these issues, in addition to many emails. You were not on two of those calls, and you did not participate in the substantive discussion during the third. On the first call, your co-counsel Ms. Branch advised us that your clients were not diligently working to respond to discovery, and had no desire to do so, given the pending motion to stay and motion to dismiss. Since then we have repeatedly explained our concerns to your team, and we have received something like 5000 pages of documents, despite your team's repeated claims to have collected 3.5 TB of data.

Defendants' solution to these discovery issues has repeatedly been a request for us to narrow the scope of our RFPs. Of course we are open to that discussion. But so far that discussion has been uninformed. We have almost no idea what your collection efforts have included up to this point, not even a simple custodian list. We are not going to limit the scope of our requests simply because you keep asking. If Defendants demonstrate how specific limits on particular RFPs will significantly streamline the discovery process, and are willing to discuss the information that would be excluded by those limits, then I'm certain we can have a productive conversation, even if we don't ultimately agree.

Regarding your suggestion that we have somehow not conferred with you regarding privilege over the course of these converstaions, you are simply mistaken. We have asked you to produce a case that demonstrates the state action which would implicate the first amendment. The authorities defendants have provided do not do so. We have asked you to produce a case that creates a reporter's privilege other than Selcraig, which we think is inapplicable and would at most cover a source's identity by its own terms. Defendants have not done so. We have asked you to explain your associational privilege other than citing Banta and NAACP, which involve state action and wholly dissimilar circumstances. Defendants have not done so. It is defendants' burden to demonstrate the privilege, and we are unconvinced.

If you'd like to call me to have a private discussion regarding your concerns, you can do so at 737-465-3897. I am traveling with my family today but I will make time to talk to you.

Thanks,
Chris

---

**From:** LeGrand, Andrew <ALeGrand@gibsondunn.com>
**Sent:** Sunday, May 26, 2024 5:52 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; Abha Khanna <akhanna@elias.law>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Chris Hilton <chris@stonehilton.com>; Aria Branch <abranch@elias.law>; Ogale, Arjun <AOgale@gibsondunn.com>; Judd E. Stone, II <judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester <Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com <john.sullivan@the-sl-lawfirm.com>; Tom Albright <tom@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Togias, Iason <ITogias@gibsondunn.com>
**Subject:** RE: X/MMFA: Meet and Confer

Alex,

We are available to confer Monday between 12:30 and 1:30 ET.

Regarding the disputes you highlighted in your email.

1. Per our email on Friday before you filed the motion to compel, we already intended to amend our responses on Tuesday to formalize what we have already conveyed to you at multiple meet and confers: we are not categorically withholding or refusing to produce documents for each request as Plaintiff suggests. We have made explicit in our responses which requests we are not producing documents for. For the rest, we have collected and are reviewing documents based on Plaintiff's request—not our objections—and will produce accordingly, only withholding documents based on privilege, which we will then log for Plaintiff's review.
   1. Our amendment should moot Plaintiff's concerns. Please let us know if that is not the case.
   2. If Plaintiff would like to do a mutual exchange of custodians and search terms, we are happy to discuss this tomorrow.
2. Thank you for identifying the requests you have remaining concerns over. As we noted during our last meeting, this is helpful to give us an understanding of where disagreements remain. We remain willing and eager to discuss these requests to attempt to find a common ground. We would like to reiterate, however, especially in light of the Court's order and the cases it cited, that there needs to be a mutual willingness to come together to resolve these issues. We will be prepared to reiterate our concerns about Plaintiff's request with an eye towards ways we can narrow our objections, as we have already done with several other requests. In turn, we expect

that Plaintiff will come prepared to discuss why it feels it needs the broad discovery it seeks and an openness to tailoring its requests to what is most relevant to the case.

3. Defendants have met our burden to confer in good faith about this issue. We have given Plaintiff a number of cases regarding our position on privilege both in our responses and after, and have expressed on several occasions, both in writing and in meetings, our desire to better understand the reasoning behind Plaintiff's opposition. Plaintiff in turn has refused to provide us with any supporting cases of its own or to show any support for its position outside of giving blanket disagreement. Indeed, at the last meet and confer, Plaintiff noted that it was not its burden to share its cases or support with us despite multiple requests from Defendants. We remain open to continuing this conversation to come to a mutually agreeable resolution but reiterate that it must be a two-sided discussion.

Best,
Andrew

**Andrew LeGrand**
Partner

T: +1 214.698.3405 | M: +1 469.658.5686
ALeGrand@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201-2923

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Sunday, May 26, 2024 9:53 AM
**To:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; Abha Khanna <akhanna@elias.law>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Chris Hilton <chris@stonehilton.com>; Aria Branch <abranch@elias.law>; Ogale, Arjun <AOgale@gibsondunn.com>; Judd E. Stone, II <judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester <Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm; Tom Albright <tom@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Togias, Iason <ITogias@gibsondunn.com>
**Subject:** RE: X/MMFA: Meet and Confer

[WARNING: External Email]

Counsel,

We have reviewed the Court's recent order (Dkt. 61). We would like to meet-and-

confer again on Monday or Tuesday of next week.

We reiterate our position that we are in disagreement on every RFP. However, we see three broad categories of disputes:

1. For requests where you have agreed to produce documents—we believe this can be resolved if you:
   a. Withdraw your non-privilege related objections to RFPs 1-8, 10, 19-20, 22, 24-28, 30-34, 36, 39-42, and 44-45 and serve us amended responses; and
   b. Disclose your custodians and search terms so we may understand the scope of your production.
2. For requests where you are refusing to produce documents—we have grouped the RFPs by category in our Motion. My suggestion is we go through these categories on the meet-and-confer to confirm that we remain in disagreement requiring Court resolution:
   a. RFP 9;
   b. RFPs 11, 17-18, 21, and 35;
   c. RFPs 13-16;
   d. RFPs 23, 37-38, and 43; and
   e. RFPs 46 and 47.
3. Privilege—we again reiterate our belief that none of the First Amendment privileges you have asserted are applicable in this case. Please let us know if there is any additional case we have not already reviewed, otherwise this issue will have to be resolved by the Court if you will not agree to withdraw your privilege objections.

Best,
-Alex
STONE | HILTON PLLC
alex@stonehilton.com | (518) 772-8657

---

**From:** Chris Hilton <chris@stonehilton.com>
**Sent:** Friday, May 24, 2024 3:03 PM
**To:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Alex Dvorscak <alex@stonehilton.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; Abha Khanna <akhanna@elias.law>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Aria Branch <abranch@elias.law>; Ogale, Arjun <AOgale@gibsondunn.com>; Judd E. Stone, II <judd@stonehilton.com>; Ari Cuenin

<ari@stonehilton.com>; Bonnie Chester <Bonnie@stonehilton.com>; Cody Coll
<cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Tom Albright
<tom@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Togias, Iason
<ITogias@gibsondunn.com>
**Subject:** Re: X/MMFA: Meet and Confer

Andrew,

Leaving aside the many other misstatements and mischaracterizations in your email,
you and your colleagues' repeated suggestion that our conferencing this motion has
been inadequate blinks reality. Perhaps it feels piecemeal to you because you have
not been on every call or responded to emails along with the 13+ other defense
attorneys who have participated in this process. We have been working with your
team for literally months.

We are moving on every single RFP because Defendants have asserted meritless
objections in response to every RFP and so far refused to withdraw them. You have
refused to provide ANY response for over a dozen RFPs, you have asserted
objections that you refuse to withdraw or explain while also confusingly assuring us
that you are ignoring your own objections for production purposes, you have refused
to provide even basic information about your collection efforts to support your burden
objections, and you are asserting privileges that do not exist or apply. These disputes
are ripe for court intervention.

We have been practicing in NDTX for many years also, and it is not our experience
that sharing motions before they are filed is common practice. We reaffirm our
commitment to continue the discussion after the motion is filed and hopefully narrow
the scope of disagreement for the court.

Have a great weekend,
Chris


Get Outlook for iOS

---

**From:** LeGrand, Andrew <ALeGrand@gibsondunn.com>
**Sent:** Friday, May 24, 2024 2:36:23 PM
**To:** Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Alex Dvorscak <alex@stonehilton.com>;
Ahmed, Amer S. <AAhmed@gibsondunn.com>; Abha Khanna <akhanna@elias.law>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta
<erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed
Alerasool <oalerasool@elias.law>; Jacob Shelly <jshelly@elias.law>; Chris Dodge
<cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Aria Branch <abranch@elias.law>;
Ogale, Arjun <AOgale@gibsondunn.com>; Chris Hilton <chris@stonehilton.com>; Judd E. Stone, II
<judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester
<Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com
<john.sullivan@the-sl-lawfirm.com>; Tom Albright <tom@stonehilton.com>; Michael Abrams

**101**

<michael@stonehilton.com>; Togias, Iason <ITogias@gibsondunn.com>
**Subject:** RE: X/MMFA: Meet and Confer

Alex and Chris,

Thank you for meeting with us earlier today. We wanted to touch base about where we landed and next steps.

Plaintiff informed us they intend to file a motion to compel in the coming days seeking production of certain categories of documents that are currently in dispute. As we stated on the call, and reiterate now, Defendants remain open to continuing to discuss any areas of dispute. While it is true that the parties have discussed some of these disagreements, these discussions have been piecemeal, and Defendants have made several concessions over the past weeks to help move the parties towards a mutually beneficial resolution. We are thus unsure of where the parties' disagreements currently stand or the reasons for them and, therefore, of what further concessions can be made so that the parties can resolve disputes without adding to the Court's busy docket.

Accordingly, as we discussed on the call, we request that you send us a list of the RFPs that Plaintiff intends to raise with the Court. Defendants also asked Plaintiff to send, as is typically done in the NDTX, a copy of their motion to compel ahead of filing. The purpose of this is for Defendants to have a clear understanding of what Plaintiffs believe is ripe for court intervention and Plaintiff's position on those issues to see if further agreement can be reached. Plaintiff represented that they would likely file the motion first and have any further conversations about the motion after it was filed, but that they would discuss internally to assess their willingness to send Defendants a list of disputed RFPs and/or a preemptive copy of their motion.

Defendants also clarified that they are not withholding documents based on general objections. Plaintiff asked whether Defendants can formalize that in the form of amended responses. We can commit to providing amended responses by Tuesday, May 28.

Similarly, Defendants are eager to engage meaningfully in discussions over Plaintiff's continued privilege objections. We have provided Plaintiff with several authorities supporting our position, separate and apart from what is in our responses and objections. Plaintiff has stated that they disagree with our position and that the law is different than what we argue but have not offered support for that position. We asked on the call—and reiterate our request here—for you to send any authority supporting or explaining your position. Plaintiffs indicated they are aware of authority but believe the parties are too far apart for it to make any difference, and also stated it was not their burden to provide Defendants with authority in support of their position. As we noted, Defendants cannot meaningfully assess Plaintiff's arguments to determine whether modification of our privilege objections are warranted without a fulsome understanding about Plaintiff's position. We remain willing to continue these conversations to reach a mutually beneficial conclusion.

Plaintiff also requested assurance on when Defendants would produce documents in advance of the discovery deadline. As Defendants have made clear, given Plaintiff's incredibly broad requests, Defendants have collected over 3.5 Terabytes of data to date. We have a team of staff attorneys and associates from two firms reviewing the data around the clock and have been making—and will continue to make—bi-weekly productions, as

promised. Defendants have represented repeatedly that we intend to comply with court ordered deadlines and have no intention of waiting until the end of discovery to produce documents.

We of course understand Plaintiff's desire to have documents before depositions are conducted and expert reports are due. Defendants have the same desires with respect to Plaintiffs' forthcoming document productions as well. We remain open to discussing ways to meet the parties' needs, such as by bifurcating the schedule so that expert discovery and depositions take place after all documents are exchanged or extending the case schedule deadlines. Given the expanded scope of the discovery served in this case, which we believe goes beyond what was represented at the beginning of this action, we think the Court would be amenable to such modifications. *See, e.g.*, ECF 14 at pp. 9-10 (Any request that the trial date of this case be modified must be made (a) in writing to the Court, (b) before the deadline for completion of discovery, and (c) in accordance with the United States District Court for the Northern District of Texas Civil Justice Expense and Delay Reduction Plan ¶V and Local Rule 40.1). While we understand why Plaintiff pushed for a faster discovery and case schedule than Defendants, *see, e.g.*, ECF 13 at ¶ 8 (compare Plaintiff's proposed close of discovery date of August 12 with Defendant's staggered deadlines ending February 12), we think the sheer scope of discovery in this case and the parties desire to have documents produced before depositions and expert reports take place may necessitate longer schedule. Defendants also remain open to discussing other solutions Plaintiff may have.

Defendants remain willing and eager to continue meaningfully conferring in good faith to come to mutually beneficial compromises that help serve the needs of the parties without further burdening the Court's docket with discovery-related motion practice.

Best,
Andrew

**Andrew LeGrand**
Partner

T: +1 214.698.3405 | M: +1 469.658.5686
ALeGrand@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201-2923

-----Original Appointment-----
**From:** Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>
**Sent:** Thursday, May 23, 2024 6:35 PM
**To:** Vidyarthi, Apratim; Alex Dvorscak; Ahmed, Amer S.; Abha Khanna
**Cc:** LeGrand, Andrew; Boutrous Jr., Theodore J.; Elena Rodriguez Armenta; Champion, Anne; Omeed Alerasool; Jacob Shelly; Chris Dodge; Daniela Lorenzo; Aria Branch; Ogale, Arjun; Chris Hilton; Judd E. Stone, II; Ari Cuenin; Bonnie Chester; Cody Coll; john.sullivan@the-sl-lawfirm.com; Tom Albright; Michael Abrams; Togias, Iason
**Subject:** X/MMFA: Meet and Confer

**When:** Friday, May 24, 2024 12:00 PM-12:30 PM (UTC-05:00) Eastern Time (US & Canada).
**Where:** https://gibsondunn.zoom.us/j/95953110450?pwd=YkxCL1U5Vko3OXIydkVTaUNPSWtUZz09

Hi there,

Apratim Vidyarthi is inviting you to a scheduled Zoom meeting.

# Join Zoom Meeting

| | |
|---|---|
| iPhone One Tap: | US: +16465189805,,95953110450# or +16465588656,,95953110450# |
| Meeting URL: | https://gibsondunn.zoom.us/j/95953110450?pwd=YkxCL1U5Vko3OXIydkVTaUNPSWtUZz09 |
| Meeting ID: | 959 5311 0450 |
| Passcode: | 030679 |

## Join by Telephone

For higher quality, dial a number based on your current location.

| Dial: | +1 646 518 9805 US (New York) |
|---|---|
| | +1 646 558 8656 US (New York) |
| | +1 301 715 8592 US (Washington DC) |
| | +1 213 338 8477 US (Los Angeles) |
| | +1 346 248 7799 US (Houston) |
| | +1 669 219 2599 US (San Jose) |
| | +1 669 900 6833 US (San Jose) |
| | +1 720 928 9299 US (Denver) |
| | 888 788 0099 US Toll-free |
| | 833 548 0276 US Toll-free |
| | 833 548 0282 US Toll-free |
| | 833 928 4608 US Toll-free |
| | 833 928 4609 US Toll-free |
| | 833 928 4610 US Toll-free |
| | 877 853 5247 US Toll-free |
| Meeting ID: | 959 5311 0450 |

International numbers

## Join from a H.323/SIP room system

| H.323: | 162.255.37.11 (US West) OR 162.255.36.11 (US East) |
|---|---|
| Meeting ID: | 959 5311 0450 |

**104**

| | |
|---|---|
| Passcode: | 030679 |
| SIP: | 95953110450.030679@zoomcrc.com |

---

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Thursday, May 23, 2024 5:29 PM
**To:** Ahmed, Amer S. <AAhmed@gibsondunn.com>; Abha Khanna <akhanna@elias.law>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Aria Branch <abranch@elias.law>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Ogale, Arjun <AOgale@gibsondunn.com>; Chris Hilton <chris@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester <Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Tom Albright <tom@stonehilton.com>; Michael Abrams <michael@stonehilton.com>
**Subject:** RE: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

**[WARNING: External Email]**

We can meet and confer tomorrow at noon eastern.
Please circulate a Zoom link or dial-in.

Best,
-Alex
Stone | Hilton pllc
alex@stonehilton.com | (518) 772-8657

---

**From:** Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Sent:** Thursday, May 23, 2024 3:57 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Abha Khanna <akhanna@elias.law>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Aria Branch <abranch@elias.law>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Ogale, Arjun <AOgale@gibsondunn.com>; Chris Hilton <chris@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester <Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Tom Albright <tom@stonehilton.com>; Michael Abrams <michael@stonehilton.com>
**Subject:** RE: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

Hi Alex,

To clarify, Defendants' counsel can be available between 12:00 pm and 5:00 pm ET tomorrow, May 24, if you are willing to negotiate ways to narrow the scope of these requests and/or provide some authority for your legal position. To the extent your concerns pertain to Defendants' RFP objections other than the claims of privilege, I want to reiterate what we explained in our previous meet-and-confer and in my May 2 email—that Defendants are not withholding any responsive documents for reasons other than privilege. We look forward to learning your availability and discussing further tomorrow.

Kind regards,

Amer

**Amer S. Ahmed**
Partner

T: +1 212.351.2427 | M: +1 917.921.7295
AAhmed@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193

| | |
|---|---|
| **From:** | Ahmed, Amer S. |
| **To:** | Alex Dvorscak; Abha Khanna |
| **Cc:** | LeGrand, Andrew; Boutrous Jr., Theodore J.; Elena Rodriguez Armenta; Champion, Anne; Omeed Alerasool; Jacob Shelly; Chris Dodge; Daniela Lorenzo; Aria Branch; Vidyarthi, Apratim; Ogale, Arjun; Chris Hilton; Judd E. Stone, II; Ari Cuenin; Bonnie Chester; Cody Coll; john.sullivan@the-sl-lawfirm.com; Tom Albright; Michael Abrams |
| **Subject:** | RE: X/MMFA: Plaintiff Position on Motion to Stay Discovery? |
| **Date:** | Thursday, May 23, 2024 4:08:45 PM |

Alex,

On the contrary, as the final sentence of my email made clear, we strongly feel court intervention is premature at this stage and think it would be quite useful to continue to confer because we have not exhausted all of our avenues for discussion. As I noted in my email, Plaintiff has continuously refused to provide us with any case law supporting its position and refuses to engage in any discussions about tailoring its requests to the needs of this case. This has made it impossible for us to meaningfully confer and resolve any lingering disagreements. We would welcome such a good-faith exchange of legal authority. The parties have also not "come to terms on a mutually acceptable protocol for the handling of privileged material" nor have any documents been withheld from production on any grounds. We and the parties should continue to engage in good faith discussions to resolve the issues without burdening the court's very busy docket with further motion practice.

Kind regards,

Amer


**Amer S. Ahmed**
Partner

T: +1 212.351.2427 | M: +1 917.921.7295
AAhmed@gibsondunn.com


**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193

---

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Thursday, May 23, 2024 3:48 PM
**To:** Ahmed, Amer S. <AAhmed@gibsondunn.com>; Abha Khanna <akhanna@elias.law>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Aria Branch <abranch@elias.law>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Ogale, Arjun <AOgale@gibsondunn.com>; Chris Hilton <chris@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester <Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Tom Albright <tom@stonehilton.com>; Michael Abrams <michael@stonehilton.com>

**107**

**Subject:** RE: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

[WARNING: External Email]

Hi Amer,

I understand from your email that you do not intend on offering a time for an additional conference. Instead, given the length of our correspondence and conferences, I assume you agree with my suggestion that the parties have already exhausted the potential for compromise and need the Court's guidance to resolve these issues.

I will note your opposition in the certificate of conference to our motion.

Best,
-Alex
STONE | HILTON PLLC
alex@stonehilton.com | (518) 772-8657

**108**

**From:** Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Sent:** Thursday, May 23, 2024 1:36 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Abha Khanna <akhanna@elias.law>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J.
<TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>;
Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob
Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>;
Aria Branch <abranch@elias.law>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Ogale, Arjun
<AOgale@gibsondunn.com>; Chris Hilton <chris@stonehilton.com>; Judd E. Stone, II
<judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester
<Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com;
Tom Albright <tom@stonehilton.com>; Michael Abrams <michael@stonehilton.com>
**Subject:** RE: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

Hello Alex,

It is regrettable that your email mischaracterizes the parties' discussions and misstates the record.

First, in both my April 26 and May 2 correspondence—and during our May 1 meet and confer—we
asked whether X is aware of any cases that contradict our assertions of privilege. You have yet to
provide any. We have no way to deliberate over the scope of our disagreement (let alone reconsider
any objections, if necessary) if you are unable to identify any contrary legal authority. Indeed, it
would contradict the purpose of a meet-and-confer if our very first opportunity to review any cases
you have in mind is in response to a motion to compel.

In contrast to your reticence, my April 26 email identified three illustrative cases in response to your
request for caselaw supporting our position that the invocation of First Amendment privileges is not
barred in discovery disputes between private parties for want of state action. (This list supplemented
three other cases, including the Ninth Circuit's decision in *Perry v. Schwarzenegger*, that I identified
in my April 12 email.) Regardless of how the particular fact-bound discovery dispute in *Gueye v. Mike
Bloomberg 2020, Inc.*, was resolved, *Gueye* was a N.D. Tex. case involving a discovery dispute
between private parties that applied First Amendment principles derived from *Perry* and was
adjudicated without any mention of the state action concerns that you have raised. Do you
disagree? And do you have any other basis for Mr. Hilton's uncited assertion on April 24 that "the

law in the Fifth Circuit on this issue is significantly different"?

Second, you know from your participation in the May 1 conferral that Defendants have *never* indicated that they "do not intend to complete document production during the Court's discovery period." That misrepresentation is especially striking given that the conferral concluded with multiple counsel for Defendants correcting Mr. Hilton's assertion that Defendants intend to shirk their discovery obligations. We explained that a large team of attorneys is reviewing documents virtually around the clock, but—because of the extraordinary breadth of X's requests, and X's refusal to narrow the scope of any of these requests during our conferrals—we cannot guarantee when the production will be completed. (Nor have our productions to date been "small." We have adhered to the rolling biweekly production schedule that we previously indicated and have already produced nearly 5,000 pages of documents and over 100 video files. More will be forthcoming on Tuesday.) The best way for X to ensure an expeditious conclusion to document production would be to limit its requests to non-privileged information relevant to the claims and defenses at issue in this case, as the Federal Rules' proportionality standard requires.

Third, your request for a ruling on our assertions of privilege before we have logged the withholding of a single document is premature. *See, e.g.*, *United States ex rel. Eichner v. Ocwen Loan Servicing, LLC*, No. 4:19-CV-524, 2024 WL 843900, *7 (E.D. Tex. Feb. 28, 2024) (denying motion to compel as premature where parties had not yet exchanged privilege logs); *Midwest Feeders, Inc. v. Bank of Franklin*, No. 5:14cv78-DCB-MTP, 2015 WL 11117899, *3 (S.D. Miss. Nov. 19, 2015) (same); *Charles v. Texas Lottery Comm'n*, A-06-CA-158 LY, 2006 WL 8445908, *2 n.1 (W.D. Tex. Nov. 1 2006) (noting "as the [Defendant] has not submitted a privilege log to Plaintiff, [] it is therefore not clear that there is presently any dispute regarding the documents claimed to be [privileged]"). Once the parties "come to terms on a mutually acceptable protocol for the handling of privileged material that the parties will memorialize in a proposed court order" (per your RFP instructions), Defendants will produce their privilege log and counsel will be available to confer about any disputes at that time. To be clear, in light of the above, we do not agree that it is "necessary to tee up these disputes for court resolution" because any such rush to court would be entirely premature.

Kind regards,

Amer


**Amer S. Ahmed**
Partner

T: +1 212.351.2427 | M: +1 917.921.7295
AAhmed@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193

**From:** Alex Dvorscak <alex@stonehilton.com>

**110**

**Sent:** Wednesday, May 22, 2024 1:54 PM
**To:** Ahmed, Amer S. <AAhmed@gibsondunn.com>; Abha Khanna <akhanna@elias.law>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J.
<TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>;
Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob
Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>;
Aria Branch <abranch@elias.law>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Ogale, Arjun
<AOgale@gibsondunn.com>; Chris Hilton <chris@stonehilton.com>; Judd E. Stone, II
<judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester
<Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com;
Tom Albright <tom@stonehilton.com>; Michael Abrams <michael@stonehilton.com>
**Subject:** RE: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

[WARNING: External Email]

I noticed an error in my below message—it should read: please propose a time for
a conference that can take place before 5:00 p.m. CT tomorrow, **May 23**.

Best,
-Alex
Stone | Hilton pllc
alex@stonehilton.com | (518) 772-8657

---

**From:** Alex Dvorscak
**Sent:** Wednesday, May 22, 2024 12:43 PM
**To:** Ahmed, Amer S. <AAhmed@gibsondunn.com>; Abha Khanna <akhanna@elias.law>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J.
<TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>;
Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob
Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>;
Aria Branch <abranch@elias.law>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Ogale, Arjun
<AOgale@gibsondunn.com>; Chris Hilton <chris@stonehilton.com>; Judd E. Stone, II
<judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester
<Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com;
Tom Albright <tom@stonehilton.com>; Michael Abrams <michael@stonehilton.com>
**Subject:** RE: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

Hi Amer,

As we've previously detailed (in our email dated May 2, for example), Defendants
have raised a host of inapplicable and invalid objections to X's requests for
production that are unsupported by the Federal Rules of Civil Procedure. In
addition, although Defendants have made wide-ranging privilege assertions, those
assertions lack any support in the caselaw you provided to us on April 26. In fact,

**111**

some of the cases you cited counsel against the very privilege assertions you have made. *E.g.*, *Gueye v. Mike Bloomberg 2020 Inc.*, 2021 WL 3910341, at *2-*3 (N.D. Tex. Mar. 12, 2021) (Ray, Mag. J.)

At this juncture, it appears to us that Defendants are using these unfounded objections to stymie the timely completion of fact discovery. Indeed, Defendants have represented that they do not intend to complete document production during the Court's discovery period, and from the two small productions Defendants have made so far, we have no reason to expect otherwise absent court intervention.

For these reasons, X believes it is necessary to tee up these disputes for court resolution. We will be filing a motion to compel that requests that the Court overrule Defendants' objections and timely produce all responsive documents in Defendants' possession prior to the close of discovery. Please let us know if you would like to confer again before we file our motion or whether you believe our prior discussions have exhausted the potential for compromise. If you would like to confer, please propose a time for a conference that can take place before 5:00 p.m. CT tomorrow, **May 23**. We will otherwise presume Defendants are opposed and note as such in our motion.

We will get back to you separately regarding the protective order.

Best,
-Alex
Stone | Hilton pllc
alex@stonehilton.com | (518) 772-8657

---

**From:** Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Sent:** Wednesday, May 15, 2024 8:18 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Abha Khanna <akhanna@elias.law>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Aria Branch <abranch@elias.law>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Ogale, Arjun <AOgale@gibsondunn.com>; Chris Hilton <chris@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester <Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Tom Albright <tom@stonehilton.com>; Michael Abrams <michael@stonehilton.com>
**Subject:** RE: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

Alex,

We remain confused as to why you thought it appropriate to ignore wholesale our proposed protective order edits—without even requesting a meet-and-confer to talk through them—and unilaterally propose a new protective order. As you know, despite the existence of model protective orders, parties are free to enter into protective orders that best suit the needs of their particular litigation and their clients. The standard form includes a lot of language that is not relevant to the issues being litigated in this case or to the discovery being sought. For example, documents containing "sensitive trade secret information, or information capable of being utilized for the preparation or prosecution of a patent application" are unlikely to be at issue. Defendants' proposed modifications, therefore, omit language within the standard form that is not relevant to the issues being litigated in this case and instead focuses on documents and disclosures that are pertinent given the discovery that is already being sought. You took the same approach when it came to the "model" ESI order.

We are also confused regarding Plaintiff's concern over marking donor information confidential. The standard order already presumes that financial information will be confidential, and donors are, by definition, financial contributors. What basis does X have for asserting that the personal identifying information of non-party donors—the identities of who even the IRS regards as confidential, and which Defendants maintain are privileged—must not only be produced, but remain presumptively public in order for X to prosecute its case?

Defendants also do not agree that in-house counsel or an extended list of organizational employees should get access to confidential or attorneys' eyes-only documents. These individuals would still get access to the overwhelming majority of discovery exchanged in this case. However, given the well-documented hostility Plaintiff and its owner have shown towards Defendants, and given the fact that X is suing MMFA (and has threatened lawsuits) in numerous international jurisdictions with differing discovery rules, we do not think it appropriate or necessary for individuals within X to get access to the very limited category of confidential and AEO documents. MMFA, in turn, will not have access to Plaintiff's most sensitive files. Moreover, if the parties identify an individual who needs access to the information and who is not already allowed access under the protective order, the parties can discuss releasing information on a case-by-case basis under paragraph 11(c) of the order. Given the very limited category of documents that could be marked confidential or AEO and the ability for parties to negotiate after the fact, we think the revised order will strike a better balance of protecting both parties during discovery while still honoring the open and public nature of our court system.

Attached is the protective order you sent us with our edits and some additional thoughts added on top. Please let us know if you would like to discuss.

Kind regards,

Amer

**Amer S. Ahmed**
Partner

T: +1 212.351.2427 | M: +1 917.921.7295
AAhmed@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193

---

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Monday, May 13, 2024 4:13 PM
**To:** Ahmed, Amer S. <AAhmed@gibsondunn.com>; Abha Khanna <akhanna@elias.law>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J.
<TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>;
Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob
Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>;
Aria Branch <abranch@elias.law>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Ogale, Arjun
<AOgale@gibsondunn.com>; Chris Hilton <chris@stonehilton.com>; Judd E. Stone, II
<judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester
<Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com;
Tom Albright <tom@stonehilton.com>; Michael Abrams <michael@stonehilton.com>
**Subject:** RE: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

[WARNING: External Email]

Hi Amer,

I'm reattaching the document I sent on Friday, as it is not the form order, but
instead contains several proposed revisions in track changes.

Regarding Defendants' previously proposed revisions, we reviewed them and do
not agree that it is proper to expand the definition of confidential or attorney's
eyes only from the Court's standard order. If you have a basis for including, for
example, donor identities under the AEO designation, that was not apparent to us.
Nor did we agree with Defendants' other proposed revisions that would restrict
inhouse counsel from participating in the litigation—accordingly, they were not
included in this draft. We believe that our revised order will strike the best balance
of protection to both parties during discovery while still honoring the open and
public nature of our court system.

The revisions we added to the Court's document are only there for three
purposes:

     (1) to clarify that this order doesn't affect the presentation of evidence at

trial or during depositions (the transcript of which can be marked);
(2) to allow inhouse counsel for MM and X to view all potential trial
exhibits so that they can fully participate in the litigation; and
(3) to ensure that anyone who drafted/received confidential info is not
inadvertently barred from reviewing the confidential info by this order.

I am happy to set up a call to discuss the proposed revisions in more detail.

Best,
-Alex Dvorscak
STONE | HILTON PLLC
alex@stonehilton.com | (518) 772-8657

---

**From:** Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Sent:** Monday, May 13, 2024 11:47 AM
**To:** Alex Dvorscak <alex@stonehilton.com>; Abha Khanna <akhanna@elias.law>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J.
<TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>;
Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob
Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>;
Aria Branch <abranch@elias.law>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Ogale, Arjun
<AOgale@gibsondunn.com>; Chris Hilton <chris@stonehilton.com>; Judd E. Stone, II
<judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester
<Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com;
Tom Albright <tom@stonehilton.com>; Michael Abrams <michael@stonehilton.com>
**Subject:** RE: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

Alex,

While we disagree that the time period needs to be the same given that the discovery
needs of the parties are different, we will agree to the original April 14, 2021 date.

Regarding the protective order, we are confused. You all sent us a NDTX proposed
order.  We then sent back on April 26 a redline proposing our edits (reattached for
your convenience).  Why are we now receiving a new protective order without any of
our markups?  Please coordinate with your team and advise.

Kind regards,

Amer

**Amer S. Ahmed**
Partner

<u>T: +1 212.351.2427</u> | <u>M: +1 917.921.7295</u>
<u>AAhmed@gibsondunn.com</u>

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193

---

**From:** Alex Dvorscak <<u>alex@stonehilton.com</u>>
**Sent:** Friday, May 10, 2024 12:51 PM
**To:** Ahmed, Amer S. <<u>AAhmed@gibsondunn.com</u>>; Abha Khanna <<u>akhanna@elias.law</u>>
**Cc:** LeGrand, Andrew <<u>ALeGrand@gibsondunn.com</u>>; Boutrous Jr., Theodore J.
<<u>TBoutrous@gibsondunn.com</u>>; Elena Rodriguez Armenta <<u>erodriguezarmenta@elias.law</u>>;
Champion, Anne <<u>AChampion@gibsondunn.com</u>>; Omeed Alerasool <<u>oalerasool@elias.law</u>>; Jacob
Shelly <<u>jshelly@elias.law</u>>; Chris Dodge <<u>cdodge@elias.law</u>>; Daniela Lorenzo <<u>dlorenzo@elias.law</u>>;
Aria Branch <<u>abranch@elias.law</u>>; Vidyarthi, Apratim <<u>AVidyarthi@gibsondunn.com</u>>; Ogale, Arjun
<<u>AOgale@gibsondunn.com</u>>; Chris Hilton <<u>chris@stonehilton.com</u>>; Judd E. Stone, II
<<u>judd@stonehilton.com</u>>; Ari Cuenin <<u>ari@stonehilton.com</u>>; Bonnie Chester
<<u>Bonnie@stonehilton.com</u>>; Cody Coll <<u>cody@stonehilton.com</u>>; <u>john.sullivan@the-sl-lawfirm.com</u>;
Tom Albright <<u>tom@stonehilton.com</u>>; Michael Abrams <<u>michael@stonehilton.com</u>>
**Subject:** RE: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

[WARNING: External Email]

Hi Amer —

We will confer with our client and get back to you regarding your deposition
requests.

Please let us know if you have a position on our suggested compromise of using
September 1, 2021 as the cutoff date for responsive documents. I'll note that in
your discovery requests you also sought documents dating back to April 14, 2021,
and so would request that any compromise be applied mutually.

I have also attached a proposed protective order that is redlined off the Court's
standard form protective order.

Best,
-Alex
STONE | HILTON PLLC
<u>alex@stonehilton.com</u> | (518) 772-8657

---

**From:** Ahmed, Amer S. <<u>AAhmed@gibsondunn.com</u>>
**Sent:** Thursday, May 9, 2024 5:28 PM

**116**

**To:** Alex Dvorscak <alex@stonehilton.com>; Abha Khanna <akhanna@elias.law>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J.
<TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>;
Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob
Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>;
Aria Branch <abranch@elias.law>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Ogale, Arjun
<AOgale@gibsondunn.com>; Chris Hilton <chris@stonehilton.com>; Judd E. Stone, II
<judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester
<Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com>;
Tom Albright <tom@stonehilton.com>
**Subject:** RE: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

Counsel:

In light of the tight discovery schedule, we thought it prudent to reach out now about
scheduling depositions for various X employees, so that you have plenty of notice.
Below is a list of individuals we intend to depose. Could you please let us know when
in the timeframe June 17-July 25 these individuals are available to sit for depositions?

- Brett Weitz
- Elizabeth Palumbo
- Elon Musk
- Joe Benarroch
- Jonathan Phelps
- Kylie McRoberts
- Linda Yaccarino
- Matt Madrazo
- Monique Pintarelli
- Rob Hayes
- Siddharth Rao
- Yale Cohen

Thanks very much.

Kind regards,

Amer

**Amer S. Ahmed**
Partner

T: +1 212.351.2427 | M: +1 917.921.7295
AAhmed@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193

**117**

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Friday, May 3, 2024 11:46 AM
**To:** Ahmed, Amer S. <AAhmed@gibsondunn.com>; Abha Khanna <akhanna@elias.law>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Aria Branch <abranch@elias.law>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Ogale, Arjun <AOgale@gibsondunn.com>; Chris Hilton <chris@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester <Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Tom Albright <tom@stonehilton.com>
**Subject:** RE: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

<span style="color:red">**[WARNING: External Email]**</span>

Hi Amer,

Thanks for your response. While we disagree with your many misstatements and mischaracterizations of the parties' positions, there's no need to go through that now. We will respond to those issues if/when needed.

Regarding the open action items on our end:
- We have a response to your number (1) below. As a compromise, we would accept September 1, 2021 instead of April 14, 2021. Please let us know it that is acceptable.
- I have attached a draft ESI order for your review. Please let me know if y'all agree or have any comments.
- I will also follow up with a proposed protective order shortly.

Best,
-Alex

STONE | HILTON PLLC
alex@stonehilton.com | (518) 772-8657

---

**From:** Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Sent:** Thursday, May 2, 2024 7:15 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Abha Khanna <akhanna@elias.law>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>;

Aria Branch <abranch@elias.law>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Ogale, Arjun <AOgale@gibsondunn.com>; Chris Hilton <chris@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester <Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Tom Albright <tom@stonehilton.com>
**Subject:** RE: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

Alex,

We write to follow-up on pending action items and to respond to some of the points you raise below.

*First*, regarding the production we served on Tuesday, April 30, we can confirm that the documents on the Kiteworks platform are properly loaded and are downloading. The system also indicates that the production was downloaded on your end yesterday afternoon. We assume this means there is nothing further to do on this end. If anyone else from your team needs access to the platform, please let us know.

*Second*, as you noted in your email, during yesterday's call, you indicated that you will 1) propose a new start date for responsive documents that will be closer in time to the events in dispute than your current request for documents created as early as April 14, 2021; 2) confirm with Plaintiff what Platform account data is already in its possession, which may help resolve disputes over requests that seek such data from Defendants; and 3) follow-up with any additional caselaw regarding your position on privilege considerations. We look forward to this information.

*Third*, regarding RFP 23, we can confirm that Mr. Hananoki did not travel to Texas during the time period outlined in RFP 23 for leisure or work. Defendants therefore modify their response to RFP 23 to be (in <span style="color:red">red</span>):

Subject to, and without waiving these objections, Defendants do not possess any responsive documents because Mr. Hananoki did not conduct any travel from October 20, 2023, to December 15, 2023 undertaken in relation to his research or drafting of the November 16, 2023 article. <span style="color:red">Mr. Hananoki also did not travel to Texas in any capacity during this time.</span>

We believe this amendment is sufficient to obviate any further dispute on this RFP. Please confirm.

*Fourth*, Defendants take issue with the way you characterize yesterday's meeting. For instance, you write:

"Defendants are limiting their production to a reasonable search based on their chosen search terms and custodians, rather than capturing the entire universe of potentially responsive documents." As we reiterated numerous times yesterday, this description is not accurate. Defendants are running broad searches through the 3.5 Terabytes of data we have collected that capture—to the very best of our ability—all of Plaintiff's requests as written. These searches are **not** limited by Defendants' objections and responses, save for the categories of documents potentially responsive to discrete inappropriate requests where Defendants clearly indicated in written objections/responses that they will not be

**119**

producing documents at this time. We are also manually reviewing the extensive collection you requested of audio and video files that are not amenable to search terms, which, as you can imagine, is a time-consuming process. We will produce all responsive, non-privileged documents that we identify as part of our search. For privileged documents that we withhold, we will send X a privilege log explaining what was held back and why.

This approach conforms with traditional discovery processes. The only way to capture the universe of potentially responsive documents is a reasonable search based on the scope of the request. Indeed, the only other alternative would be for Defendants to review every single document in their possession, regardless of its relationship to any of Plaintiffs' requests. Therefore, your objection to Defendants conducting a "reasonable" search is confusing, to say the least. We are not aware of any authority requiring parties to perform an *un*reasonable search. If you believe otherwise, please send us the relevant citations.

You also write that "Defendants will not tell X their search terms, custodians, or otherwise describe their search process, but indicated that they might disclose them in response to a specific ROG asking for that information." But Defendants have provided Plaintiff with primary custodian names as a courtesy, and the first time that Plaintiff even brought up search terms was during yesterday's meeting. At no point before then had Plaintiff asked for search terms, proposed search terms, or offered to negotiate search terms. And Plaintiff has not put forth any explanation for why it appears to believe that Defendants are not conducting discovery in good faith such that its choices of custodians or search terms are improper. We remain willing to answer any properly-served discovery requests, but we do not understand that Plaintiff has any right to otherwise insist on collecting more information about Defendants, their employees, or their processes.

We also disagree with Plaintiff's characterization that Defendants "will not estimate the length of time before their production will be completed" or "the contents of any given production before it occurs." Far from withholding this information, we explained that these kinds of questions cannot be answered with any reliability in advance of conducting the necessary review. We explained that most of your requests are broad and overlapping, so this is not the kind of case where we might produce documents in response to each request sequentially. Nor can we predict the total time necessary to review every document in the 3.5 Terabyte database that we have collected, especially given that so many of your requests encroach on privileged materials that will need to be studied, potentially redacted, and logged.

*Finally*, it is clear based on our communications to date that Plaintiff shows a continued unwillingness to engage in good-faith discussions on narrowing Plaintiff's many overbroad, disproportionate, and irrelevant requests. Despite Defendants' demonstrated willingness to confer and revise several of our responses to X's discovery requests in order to resolve disputes without taxing the Court's limited resources, Plaintiff has not engaged in meaningful discussions and has, to date, refused to work with Defendants to modify a single one of Plaintiff's 47 discovery requests in any way. As Defendants have noted time and time again, Defendants remain open to discussing ways to alleviate the burdens of discovery while still meeting the needs of this case. As we discussed yesterday, Plaintiff's desire both for overbroad discovery and an expedited timeline are necessarily in friction, and yet Plaintiff has refused to negotiate on either point.

Kind regards,

**120**

Amer

**Amer S. Ahmed**
Partner

T: +1 212.351.2427 | M: +1 917.921.7295
AAhmed@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193

---

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Thursday, May 2, 2024 11:49 AM
**To:** Ahmed, Amer S. <AAhmed@gibsondunn.com>; Abha Khanna <akhanna@elias.law>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J.
<TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>;
Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob
Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>;
Aria Branch <abranch@elias.law>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Ogale, Arjun
<AOgale@gibsondunn.com>; Chris Hilton <chris@stonehilton.com>; Judd E. Stone, II
<judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester
<Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com;
Tom Albright <tom@stonehilton.com>
**Subject:** RE: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

**[WARNING: External Email]**

Hi all,

Thanks for taking the time to meet with us yesterday. I believe our conference
helped clarify a lot of the parties' issues. And so, I wanted to quickly summarize
our understanding of what was discussed.

1. **General Issues:**
   - Tech issues with first production:
     o Parties will work to connect IT folks to ensure file transfer.
   - ESI Order:
     o X will get y'all a draft ESI order shortly for discussion.
   - Date Limitation:
     o X will propose a compromise date for production that is later
       than April 2021 but before April 2022.

2. **Specific Requests:**

- Request for "platform account data:"
  - o Disagreement over what this request entails.
  - o Defendants stated their position that they do not intend to propose anything X has access to.
  - o X disagrees but will look further into this further.
- RFP 9:
  - o Parties disagree on relevance, and this issue will likely require Court resolution.
- X's Request for Hananoki's travel:
  - o Defendants offered to produce documents showing any travel to Texas and work travel.
  - o X does not agree to any limitation but requested Defendants amend their responses to reflect that they will at least produce documents related to travel to Texas or travel for work.
- Reporter's Privilege:
  - o Parties disagree on the extent of privilege, and this issue will likely require Court resolution.
  - o Defendants will follow up with any additional caselaw of which they are aware.
- RFPs #46 and 47:
  - o Parties disagree on relevance, and this issue will likely require Court resolution.

3. **Defendants' Production:**
  - Custodians and Search terms:
    - o Defendants are limiting their production to a reasonable search based on their chosen search terms and custodians, rather than capturing the entire universe of potentially responsive documents.
    - o Defendants will not tell X their search terms, custodians, or otherwise describe their search process, but indicated that they might disclose them in response to a specific ROG asking for that information.
    - o Defendants are not withholding any documents on a categorical basis except where explicitly stated in their responses.
  - Rolling production:
    - o Defendants have promised to make a rolling production of documents, hopefully on a 2-week basis.

- o X indicated its concern that all responsive documents will not be produced during the discovery period.
- o Defendants will not estimate the length of time before their production will be completed.
- o Defendants will not estimate the contents of any given production before it occurs.
- o Defendants will provide a cover letter contemporaneous with any production that describes its contents.

Please let me know if there's anything you believe I left out. Otherwise, you can look for a follow up email from us soon with that draft ESI order for discussion.

Best,
-Alex

**Alexander M. Dvorscak**
Attorney
STONE | HILTON PLLC
1115 W. Slaughter Ln.
Austin, Texas 78748
alex@stonehilton.com | (518) 772-8657
www.stonehilton.com

CONFIDENTIALITY NOTICE:
This e-mail transmission (and/or the attachments accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege and/or the work-product doctrine. The information is intended only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. Any unauthorized interception of this transmission is illegal. If you have received this transmission in error, please promptly notify the sender by reply e-mail, and then destroy all copies of the transmission.

**From:** Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Sent:** Tuesday, April 30, 2024 7:15 PM
**To:** Chris Hilton <chris@stonehilton.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Abha Khanna <akhanna@elias.law>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Aria Branch <abranch@elias.law>; Judd E. Stone, II <judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester <Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Tom Albright <tom@stonehilton.com>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Ogale, Arjun <AOgale@gibsondunn.com>; Alex Dvorscak <alex@stonehilton.com>
**Subject:** Re: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

Sounds good - we'll look out for a calendar invitation and link from you.

**Amer S. Ahmed (he/him)**
Partner

T: +1 212.351.2427 | M: +1 917.921.7295
AAhmed@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193

On Apr 29, 2024, at 5:59 PM, Chris Hilton <chris@stonehilton.com> wrote:

**[WARNING: External Email]**

Yes, that works for us. Thanks.

---

**From:** Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Sent:** Monday, April 29, 2024 4:37 PM
**To:** Chris Hilton <chris@stonehilton.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Abha Khanna <akhanna@elias.law>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Aria Branch <abranch@elias.law>; Judd E. Stone, II <judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester <Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com <john.sullivan@the-sl-lawfirm.com>; Tom Albright <tom@stonehilton.com>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Ogale, Arjun <AOgale@gibsondunn.com>
**Subject:** RE: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

Hi Chris – How does 2pm ET on Wednesday 5/1 work on your end?  Thanks.

**Amer S. Ahmed**
Partner

T: +1 212.351.2427 | M: +1 917.921.7295
AAhmed@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193

**From:** Chris Hilton <chris@stonehilton.com>
**Sent:** Sunday, April 28, 2024 10:31 AM
**To:** Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Abha Khanna <akhanna@elias.law>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Aria Branch <abranch@elias.law>; Judd E. Stone, II <judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester <Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Tom Albright <tom@stonehilton.com>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Ogale, Arjun <AOgale@gibsondunn.com>
**Subject:** Re: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

[WARNING: External Email]

Thanks for your response, Amer. In light of the Court's order on Friday and the additional information you've provided here, we'd like to meet and confer this week on Tuesday or Wednesday. Please let us know your availability on those days.

Thanks,
Chris

---

**From:** Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Sent:** Friday, April 26, 2024 4:09 PM
**To:** Chris Hilton <chris@stonehilton.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Abha Khanna <akhanna@elias.law>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Aria Branch <abranch@elias.law>; Judd E. Stone, II <judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester <Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com <john.sullivan@the-sl-lawfirm.com>; Tom Albright <tom@stonehilton.com>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Ogale, Arjun <AOgale@gibsondunn.com>
**Subject:** RE: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

Chris,

Thank you for responding to my email of April 12, 2024, which incorporated proposals for resolving certain discovery issues. As we discussed during our

**125**

April 9 meet and confer and noted throughout our responses and objections, Plaintiff's 47 requests are largely over-broad, irrelevant, and disproportionate to the needs of this case. Defendants are committed to complying with the Court's scheduling order and, accordingly, remain willing and eager to discuss ways in which Plaintiff may narrow its requests to correspond to the claims being litigated, thus making the document collection and review process more expeditious—to the benefit of all parties.

At the same time, despite their position that the Court lacks jurisdiction to hear Plaintiff's claims, which are meritless in any event, Defendants have been working over the last several weeks to gather and review responsive, relevant documents and plan to begin producing documents in a matter of days, as we have already explained. As a result of Plaintiff's many expansive and intrusive requests, Defendants have collected approximately 3.5 Terabytes of data to date. Processing and reviewing this much data is, understandably, time consuming and labor intensive, and Defendants anticipate needing to continue their document collection and review efforts in the coming weeks to ensure compliance with their discovery obligations. Given the undue burden imposed by these overbroad requests, Defendants update their responses, as noted below, to object to requests for documents created before Mr. Musk purchased Twitter on April 14, 2022. Regarding your question about custodians, the names we have identified are illustrative not exhaustive and we have collected documents from appropriate custodians who were involved in the research, drafting, and editing of the challenged article. If you have concerns about specific individuals that you believe should be custodians, please provide us those names and we can confirm whether they are custodians or, as appropriate, why they are not.

Defendants have also shown their willingness to work with Plaintiff in good faith to resolve discovery disputes by, for example, agreeing to narrow their initial responses and objections to some of Plaintiff's requests, despite Plaintiff's flat-out refusal to discuss narrowing even its broadest requests in return. In the spirit of continuing to work with Plaintiff on a resolution to any discovery disputes, we further agree to modify the following requests for production as follows (additions in red):

**RFP No. 5**: Defendants agree to modify their objections and responses as follows:
1. Request: All documents and communications discussing or mentioning X, the Platform, Elon Musk, or Linda Yaccarino, including but not limited to email updates, "Action Updates," or "Weekly Updates," that were sent out via any email, text, phone, social media, or other distribution list that You maintain.
2. Objections: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. For example, this Request impermissibly requires blanket production of "[a]ll documents and communications" that in any way mention X, the Platform, Elon Musk, or Linda Yaccarino, even where not reasonably

related to the issues in dispute in this case. Moreover, Plaintiff's request seeks documents dating back to April 14, 2021, more than two and a half years before the challenged article was published and a year before Elon Musk took over the Platform. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the First Amendment privilege, reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Defendants also object to this Request to the extent that it seeks publicly available documents and/or documents that are otherwise available to Plaintiff such that responsive materials may be obtained from another source that is more convenient, less burdensome, or less expensive.

3. <u>Responses</u>: ~~Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time.~~ Subject to, and without waiving these objections, Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control from April 14, 2022 onward that they are able to locate following a reasonable search. Defendants will not search public sources for responsive materials and will not search for or produce materials under third parties' possession, custody, or control. Defendants are in the process of collecting documents for review and are not presently withholding any responsive documents that they have identified subject to these objections. Defendants will supplement this response if they identify and withhold any responsive documents.

**RFP No. 6**:

1. <u>Request</u>: All documents and communications concerning content moderation on the Platform.

2. <u>Objections</u>: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. For example, this Request impermissibly requires blanket production of "[a]ll documents and communications" related to any content moderation policies on the Platform and is not reasonably limited to materials relevant to the issues in dispute in this case. Moreover, Plaintiffs' request seeks documents dating back to April 14, 2021, more than two and a half years before the challenged article was published and a year before Elon Musk took over the Platform. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the First Amendment privilege, reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Defendants also object to this Request to the extent that it seeks publicly available documents and/or documents that are otherwise available to Plaintiff such that responsive materials may be obtained from another source that is more convenient, less burdensome, or less expensive.

3. <u>Responses</u>: ~~Based on the foregoing objections, Defendants will not~~

~~produce documents in response to this Request at this time.~~ Subject to, and without waiving these objections, Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control from April 14, 2022 onward that they are able to locate following a reasonable search. Defendants will not search public sources for responsive materials and will not search for or produce materials under third parties' possession, custody, or control. Defendants are in the process of collecting documents for review and are not presently withholding any responsive documents that they have identified subject to these objections. Defendants will supplement this response if they identify and withhold any responsive documents.

**RFP No. 10**:
1. <u>Request</u>: All posts, comments, direct messages, and any other account data of any kind whatsoever posted by You on the Platform, including but not limited to the @mmfa and @ehananoki accounts and any accounts used in the creation of the November 16, 2023 Article.
2. <u>Objections</u>: Defendants object to this Request as being overly broad, vague, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires a blanket production of "[a]ll posts, comments, direct messages, and any other account data of any kind whatsoever" of various accounts, even where the information it seeks is vague, immaterial, or unrelated to the claims or defenses at issue in this case. Moreover, Plaintiffs' request seeks documents dating back to April 14, 2021, more than two and a half years before the challenged article was published and a year before Elon Musk took over the Platform. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the First Amendment privilege, reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Defendants also object to this Request to the extent that it seeks publicly available documents and/or documents that are otherwise available to Plaintiff such that responsive materials may be obtained from another source that is more convenient, less burdensome, or less expensive, including X account information within X Corp.'s possession.
3. <u>Responses</u>: ~~Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time.~~ Subject to, and without waiving these objections, Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control from April 14, 2022 onward that they are able to locate following a reasonable search. Defendants will not search public sources for responsive materials and will not search for or produce materials under third parties' possession, custody, or control. Defendants are in the process of collecting documents for review and are not presently withholding any responsive documents that they have identified subject to these objections. Defendants will supplement this response if they identify and withhold any responsive documents.

Regarding RFP no. 2, you continue to expand the scope of "Platform account data." Because Plaintiff owns and controls the X platform, please explain why—once Defendants identify the relevant accounts, which we are willing to do—Plaintiff would be unable (despite being better placed) to compile the relevant platform data that it seeks. We appear to have a disagreement over RFP no. 9 but are willing to continue to discuss ways in which we can reach a mutually agreeable resolution. Regarding RFP no. 23, we ask that Plaintiff to explain why any and all travel undertaken by Mr. Hananoki during the identified period (which includes the Thanksgiving holiday period)—even travel unrelated to his work on the challenged article—is relevant to the issues in this case and should be subject to discovery. Better understanding Plaintiff's position on these issues will help us determine how best to respond to Plaintiff's request and avoid a potential dispute.

Plenty of controlling and in-jurisdiction cases have recognized that use of the judicial process (as would be necessary to resolve discovery disputes concerning documents withheld on the ground of First Amendment privilege) represents state action, even in cases between private parties. *See, e.g.*, *Shelley v. Kraemer*, 334 U.S. 1, 14-15 (1948); *Gueye v. Mike Bloomberg 2020 Inc.*, 2021 WL 3910341, at *2 (N.D. Tex. Mar. 12, 2021) (favorably citing *Perry* in adjudicating discovery dispute between private parties); *Mize v. McGraw-Hill, Inc.*, 82 F.R.D. 475 (S.D. Tex. 1979) (recognizing invocation of First Amendment privilege was sufficient to defeat motion to compel in suit between private parties). Given your statement that "the law in the Fifth Circuit is significantly different," please provide any authority rejecting a First Amendment privilege for state action reasons in a discovery dispute between private parties. We are happy to review any such cases and continue this discussion.

Lastly, as promised, attached are our proposed edits to the ND Texas protective order.

We look forward to your responses.

Kind regards,

Amer


**Amer S. Ahmed**
Partner

T: +1 212.351.2427 | M: +1 917.921.7295
AAhmed@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193

**129**

**From:** Chris Hilton <chris@stonehilton.com>
**Sent:** Wednesday, April 24, 2024 11:09 AM
**To:** Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Abha Khanna <akhanna@elias.law>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Aria Branch <abranch@elias.law>; Judd E. Stone, II <judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester <Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Tom Albright <tom@stonehilton.com>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Ogale, Arjun <AOgale@gibsondunn.com>
**Subject:** Re: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

[WARNING: External Email]

Amer,

Thank you for your email.

I appreciate you providing a partial list of custodians. We requested and had been expecting a full custodian list, not just a selection of primary custodians. We request that you provide complete information about all your custodians, including their names, sources collected, and volume of data collected per custodian. Please provide this information no later than Friday, April 26.

A significant issue that we discussed during our call was the Court's scheduling order. In particular, I emphasized that Defendants have an obligation to produce documents and provide discovery under the Court's current schedule, regardless of your belief in the merits of your arguments. Although we look forward to you actually beginning production on April 30, that promise alone is not sufficient to address our concerns. I requested that Defendants explain how meeting the current schedule is possible given the delays in production thus far. I assume that your failure to address the topic means that you are not going to provide any additional information on this topic beyond your bare assurance on our call that you will comply with the Court's deadlines. If you have any additional information to provide in this regard, please also provide it no later than Friday, April 26.

In response to the other specific issues we discussed that you touch on in your email:

- We appreciate your modification of your objection to RFP #2. However, we believe that your proposal still does not capture all relevant information. In particular, we mentioned on the phone that we are also interested in emails or other communications from the platform, including automatically generated emails and communications. You should collect and produce any data or information whatsoever related to any accounts

**130**

on the Platform that were involved in the creation of the November 16, 2023 Article.

- It appears that we have a disagreement with respect to RFP #9.
- While we appreciate your modification of your response to RFP #23, we believe that your limited response is unwarranted. All of Mr. Hananoki's travel during that very limited time period is relevant, and you should produce all of the information that we have requested. Accordingly, it appears that we have a disagreement with respect to this request.
- Thank you for the additional authority regarding your First Amendment privilege objections. As you know, the law in the Fifth Circuit on this issue is significantly different. If you have any Fifth Circuit cases that we may have overlooked, please let us know no later than Friday, April 26. Until you bring something else to our attention, it appears that we have a disagreement on this issue.

While we appreciate your following up on those issues, there was much more that we discussed on our call. There any many other RFPs where you have indicated that you will not produce any documents whatsoever based on your objections. We discussed those RFPs in detail, and you have not changed your position regarding most of them. Accordingly, it appears that we have a disagreement regarding those RFPs.

In light of the above and our conversation on April 9, we believe that at least some of these issues are ripe for litigation. If you believe that additional conversations would be productive in narrowing the disagreements between us, you have my number and I am happy to discuss these issues any time.

Thanks,
Chris

Christopher D. Hilton
Stone | Hilton
P.O. Box 150112
Austin, TX 78715
(737) 465-3897

---

**From:** Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Sent:** Friday, April 12, 2024 7:58 PM
**To:** Chris Hilton <chris@stonehilton.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Abha Khanna <akhanna@elias.law>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo

**131**

<dlorenzo@elias.law>; Aria Branch <abranch@elias.law>; Judd E. Stone, II
<judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester
<Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-
lawfirm.com <john.sullivan@the-sl-lawfirm.com>; Tom Albright
<tom@stonehilton.com>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Ogale,
Arjun <AOgale@gibsondunn.com>
**Subject:** RE: X/MMFA: Plaintiff Position on Motion to Stay Discovery?


Chris,


We write to follow up on the various topics we discussed during our meet and
confer on Tuesday, April 9, 2024. As we discussed, while we continue to
maintain—as the Reply brief filed this evening in support of our Rule 12 Motion
makes clear—that there is no basis for the Court to exercise jurisdiction over
Defendants, the Northern District of Texas is an improper venue, the alleged
claims are meritless, and discovery under these special circumstances is improper,
Defendants have nonetheless been working over the last several weeks to gather
and review responsive, relevant documents.


In that process, we have retained a document collection and document hosting and
review vendor, identified primary custodians with documents that are relevant to
X's requests for production (including Angelo Carusone, Ben Dimiero, Cynthia
Padera, and Eric Hananoki), and collected thousands of gigabytes of data across
various mediums including emails, cloud storage platforms, calendars, chatrooms,
Media Matters's website, computer files, notes applications, and social media
accounts. We are continuing our collection of files within these and other
mediums, but given the volume and breadth of the requests, we expect this
collection to be an ongoing process over the next several weeks. We are also in
the process of reviewing materials that we have collected so far for
responsiveness and privilege.


Without waiving any objections, and subject to a ruling on our pending motion to
stay discovery if one issues in the interim, Defendants plan to begin producing
responsive, non-privileged documents on a rolling basis no later than April 30,
2024.


We would also like to clarify our position on the three discovery requests that we
agreed to follow up on during our meet and confer (changes in red):


**RFP No. 2**. Defendants agree to modify their objections and responses to RFP

132

No. 2 as follows:

1. <u>Request</u>: All source materials, research, screenshots, Platform account data, and other documents or communications relied on, referenced, created, or considered by You in conceiving of, investigating, working on, writing, publishing, and disseminating the November 16, 2023 Article.

2. <u>Objection</u>: The Request does not define the term "Platform account data," and Defendants interpret the term as used here to ask for usernames, posts, chats, and comments of accounts on the X Platform relied on, referenced, created, or considered in investigating, working on, writing, publishing, and disseminating the referenced article. To the extent Plaintiff means something else by the term, Defendants object to this Request as vague and ambiguous. Defendants further object to this Request because it seeks sensitive information protected by the First Amendment privilege and reporter's privilege, including by asking Defendants to divulge protected source material. *See, e.g.*, *In re Selcraig*, 705 F.2d 789, 792 (5th Cir. 1983) (recognizing "the first amendment shields a reporter from being required to disclose the identity of persons who have imparted information . . . in confidence."); *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 460 (1958) (recognizing "the close nexus between the freedoms of speech and assembly" protected party from disclosure of associational documents). Defendants also object to this Request to the extent it seeks documents or communications that are protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Defendants further object to the extent that this Request seeks publicly available documents and/or documents that are otherwise available to Plaintiff such that responsive materials may be obtained from another source that is more convenient, less burdensome, or less expensive, such as information about accounts on X or sources and links embedded within the November 16, 2023 article.

3. <u>Responses</u>: Subject to, and without waiving these objections, Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting documents for review and are not presently withholding any responsive documents that they have identified subject to these objections. Defendants will supplement this response if they identify and withhold any responsive documents.


**RFP No. 9**. Defendants stand on their objections and responses to RFP no. 9. X Corp failed to explain during our meet and confer how an overbroad request seeking "[a]ll communications with X's advertisers about advertising with or financially supporting You" is at all relevant to the issues and claims being litigated in this case. If X Corp is willing to narrow the scope of its requests, Defendants are willing to consider revising our objections and responses.

**RFP No. 23**. Defendants agree to modify their objections and responses to RFP No. 23 as follows:

1. Request: All documents and communications related to or reflecting any travel by Eric Hananoki from October 20, 2023, to December 15, 2023

2. Objection: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. For example, this Request impermissibly requires blanket production of "[a]ll documents and communications related to or reflecting any travel" by Mr. Hananoki during the specified time period, even where not reasonably related to the issues in dispute in this case. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the First Amendment privilege, reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26.

3. Responses: ~~Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time.~~ Subject to, and without waiving these objections, Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search regarding documents and communications related to or reflecting any travel by Eric Hananoki from October 20, 2023, to December 15, 2023 undertaken in relation to Mr. Hananoki's research or drafting of the November 16, 2023 article. Defendants are in the process of collecting documents for review and are not presently withholding any responsive documents that they have identified subject to these objections. Defendants will supplement this response if they identify and withhold any responsive documents.

Also as discussed during our meet and confer, we would like to reiterate our position on the First Amendment privilege and its application in this action. The First Amendment privilege protects parties from compelled disclosures, *regardless* of whether the party seeking discovery is a private party or a state actor. *See, e.g.*, *In re Motor Fuel Temperature Sales Pracs. Litig.*, 641 F.3d 470, 481 (10th Cir. 2011) (holding, in a dispute between trade groups, "that the First Amendment privilege applies to the *district court's discovery order*, which requires trade groups and their members *to disclose to a private party* their communications regarding [lobbying] strategy") (emphasis added); *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160-61, 1165 (9th Cir. 2010) (applying First Amendment privilege in dispute between two private parties); *see also Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2385–86 (2021).

**134**

Note that we are still awaiting X Corp's proposed revisions to the protective order (the Attorneys' Eyes Only provision), which it alluded to during our meet and confer, so that we may consider those revisions. We are also awaiting X Corp's draft ESI protocol.

Defendants remain willing and open to continuing discovery discussions, and view this as an ongoing conversation as both parties attempt to balance our various obligations and competing interests. Please let us know if you would like to discuss.

Kind regards,

Amer

**Amer S. Ahmed**
Partner

T: +1 212.351.2427 | M: +1 917.921.7295
AAhmed@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193

---

**From:** Chris Hilton <chris@stonehilton.com>
**Sent:** Tuesday, April 9, 2024 10:32 AM
**To:** Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Abha Khanna <akhanna@elias.law>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Aria Branch <abranch@elias.law>; Judd E. Stone, II <judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester <Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Tom Albright <tom@stonehilton.com>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>
**Subject:** Re: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

**135**

**[WARNING: External Email]**

Chris Hilton is inviting you to a scheduled Zoom meeting.


Topic: Chris Hilton's Zoom Meeting

Time: Apr 9, 2024 10:00 AM Central Time (US and Canada)


Join Zoom Meeting

https://zoom.us/j/93717820766?
pwd=SVVRRzJUT21sTVdQNXQ1VW0rNlVEZz09


Meeting ID: 937 1782 0766

Passcode: 309640


---


One tap mobile

+13462487799,,93717820766#,,,,*309640# US (Houston)

+17193594580,,93717820766#,,,,*309640# US


---


Dial by your location

• +1 346 248 7799 US (Houston)

• +1 719 359 4580 US

• +1 253 205 0468 US

• +1 253 215 8782 US (Tacoma)

**136**

• +1 669 444 9171 US

• +1 669 900 9128 US (San Jose)

• +1 309 205 3325 US

• +1 312 626 6799 US (Chicago)

• +1 360 209 5623 US

• +1 386 347 5053 US

• +1 507 473 4847 US

• +1 564 217 2000 US

• +1 646 558 8656 US (New York)

• +1 646 931 3860 US

• +1 689 278 1000 US

• +1 301 715 8592 US (Washington DC)

• +1 305 224 1968 US


Meeting ID: 937 1782 0766

Passcode: 309640


Find your local number: https://zoom.us/u/ac4POFCg4l

---

**From:** Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Sent:** Tuesday, April 9, 2024 9:10 AM
**To:** Chris Hilton <chris@stonehilton.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Abha Khanna <akhanna@elias.law>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Aria Branch <abranch@elias.law>; Judd E. Stone, II <judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester <Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>;

**137**

john.sullivan@the-sl-lawfirm.com <john.sullivan@the-sl-lawfirm.com>; Tom
Albright <tom@stonehilton.com>; Vidyarthi, Apratim
<AVidyarthi@gibsondunn.com>
**Subject:** Re: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

Chris - we are still waiting on dial in information for our 11am call. Please
advise.

**Amer S. Ahmed (he/him)**
Partner

T: +1 212.351.2427 | M: +1 917.921.7295
AAhmed@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193

On Apr 8, 2024, at 11:10 AM, Chris Hilton
<chris@stonehilton.com> wrote:

**[WARNING: External Email]**

Amer,

Tomorrow at 11 AM works. Attached is the NTDX default protective
order and third party agreement. We'll endeavor to provide a
proposed ESI order.

Thanks,

Chris

---

This message may contain confidential and privileged information for the sole use of
the intended recipient. Any review, disclosure, distribution by others or forwarding
without express permission is strictly prohibited. If it has been sent to you in error,
please reply to advise the sender of the error and then immediately delete this

message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this

139

message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error,

please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

# Exhibit 6

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

X CORP.,

              Plaintiff,

      v.

MEDIA MATTERS FOR AMERICA,
et al.,

              Defendants.

Civil Action No. 4:23-cv-1175-O

## DECLARATION OF ANDREW LEGRAND
## IN SUPPORT OF DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO
## COMPEL PRODUCTION OF DOCUMENTS

I, Andrew LeGrand, declare as follows:

1.      I am over the age of 18, am competent to testify, and have personal knowledge of the facts and information set forth in this declaration.

2.      I am a Partner in the Dallas office of Gibson, Dunn & Crutcher LLP.

3.      I represent Media Matters for America ("Media Matters") in the above-captioned suit.

**Conferral between the parties**

4.      The parties met and conferred on Plaintiff's various discovery requests on April 9, May 1, May 24, and May 27, and engaged in various email exchanges during this process as well. Defs.' App. at 96–97, 103–05, 109–10, 136–38.

5.      On May 23, Counsel for Plaintiff stated that it intended to move to compel documents. After some corresponding, counsel for Defendants requested that the parties confer on

**143**

May 24 to resolve or better understand the basis of Plaintiff's concerns and the disputed issues.

6.      During and after the May 24 meeting, Defendants requested a list of the specific requests on which Plaintiff intended to seek judicial intervention. Plaintiff did not provide that list verbally or in writing prior to filing its motion to compel later that day.

7.      Following the Court's May 25 order, counsel for Plaintiff requested an additional meeting. The parties conferred on Monday, May 27.

**ESI Protocol, Protective Order, and Privileged-Documents Protocol**

8.      As part of our January 5 Rule 12(f) conference, the parties discussed entering into a mutually agreeable ESI protocol and agreement on how to handle privileged documents.

9.      In Plaintiff's February 5 request for production, these agreements are referenced in instructions 4 and 5, and Plaintiff noted that each agreement would be "memorialize[d] in a proposed court order."

10.      On March 29, almost three weeks after Defendants served their responses and objections to Plaintiff's February 5 requests for production and almost three months after the parties' discovery conference, Plaintiff's counsel requested to confer with Defendants about their responses; about the ESI protocol; and about a proposed order regarding the handling and protection of privileged or trial-preparation materials. The parties agreed to meet on April 9.

11.      On April 3, counsel for Defendants, Amer Ahmed, asked Plaintiff to send Defendants any proposed changes it had to the Northern District of Texas protective order model and model ESI protocol ahead of their April 9 meeting "to move things along."

12.      On April 8, Mr. Hilton circulated the standard Northern District of Texas protective order model as a PDF, without any annotations from Plaintiff. He also noted that Plaintiff would "endeavor to provide a proposed ESI order."

13.     On April 12, Mr. Ahmed sent an email recapping the parties' discussion on April 9. In this email, Mr. Ahmed wrote that Defendants were "still awaiting X Corp's proposed revisions to the protective order (the Attorneys' Eyes Only provision), which it alluded to during our meet and confer, so that we may consider those revisions. We are also awaiting X Corp's draft ESI protocol."

14.     On April 24, Plaintiff responded to Mr. Ahmed's April 12 email, but did not mention the ESI protocol, the protective order, or any privilege documents agreement.

15.     On April 26, without having received any proposed revisions from Plaintiff, Mr. Ahmed circulated Defendants' proposed revisions to the standard protective order.

16.     After the parties May 1 meet-and-confer, Plaintiff's counsel promised to provide a draft ESI order shortly.

17.     On May 3, Plaintiff's counsel circulated a proposed ESI protocol and noted that they would "follow up with a proposed protective order shortly."

18.     On May 10, Plaintiff's counsel circulated proposed edits to the standard protective order that, with no explanation, completely disregarded Defendants' April 26 suggestions to the same document.

19.     Defendants followed up on May 13, re-attaching Defendants' proposed edits of April 26 with a request for an explanation why those edits had been disregarded.  That same day, Plaintiff responded, re-attaching its May 10 protective order edits, and explaining that the reason it had disregarded Defendants' proposals was because it did not agree with them.

20.     Defendants replied to Plaintiff on May 15 providing both proposed revisions to Plaintiff's protective order and accompanying explanations for the changes.

21.     On May 22, Defendant also provided Plaintiff with edits to its proposed ESI

protocol.

22.     Plaintiff did not reply to Defendant's proposed ESI protocol or protective order until May 28, after it filed its motion to compel. To date, the parties have not entered into any ESI, protective order, or privileged document agreement.

23.     Defendants have made three document productions despite their concerns over not having formal protocols governing discovery in this case.

**Discovery efforts**

24.     Defendants have undertaken a diligent effort to collect and review documents in light of this Court's scheduling order.

25.     Defendants have collected over 5.5 Terabytes of data to date across many relevant custodians and are still in the process of collecting additional documents. Defendants have produced over 2,000 documents consisting of nearly 8,000 pages and over 2,000 videos comprising approximately 564 gigabytes of data.

26.     Defendants have engaged a team of 14 staff attorneys and 33 associates across two law firms to conduct document review.

Under 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.


Executed on:  May 29, 2024                         


 */s/ Andrew LeGrand*                           
Andrew LeGrand