UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **X CORP**., a Nevada corporation, | § § § § | |
| *Plaintiff,* | § § | |
| vs. | § § | **Case No. 4:23-cv-01175-O** |
| **MEDIA MATTERS FOR AMERICA,** a Washington, D.C. non-profit corporation, **ERIC HANANOKI**, and **ANGELO CARUSONE**, | § § § § § | |
| *Defendants.* | § § § | |

---

**STIPULATION AND ORDER FOR THE EXCHANGE AND
PRODUCTION OF ELECTRONICALLY STORED INFORMATION**

---

This Stipulation Regarding the Exchange and Production of Documents and Electronically Stored Information ("ESI") ("Stipulation") shall govern the format of production of documents and information in the above-captioned case (the "Action") between Plaintiff X Corp., and Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone (each, individually, a "Party" and, collectively, the "Parties").

I.    **GENERAL PROVISIONS**

 A.  **Modification**

To the extent it is not unduly burdensome (in which case the Parties shall confer to discuss alternative production specifications), and subject to modification as agreed by the Parties, the Parties will prepare their production documents in accordance with the agreed-upon specifications set forth below. These instructions supersede any earlier instructions given by the parties.

### B. Preservation

The parties acknowledge that they have a legal obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody, or control. The Parties shall have a continuing obligation to take reasonable and proportional steps to identify and preserve custodial and non-custodial data sources that may contain information that is relevant to the claims and defenses in this litigation. If a producing Party is aware of inaccessible data that is likely to contain unique, discoverable ESI, that Party will identify the source from which it claims the data is not reasonably accessible to the other Party. All parties shall supplement their disclosures in accordance with Rule 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made.

### C. Objections Preserved

Nothing in this Stipulation shall be interpreted to require disclosure of relevant information protected by the attorney-client privilege, attorney work-product doctrine, First Amendment Privilege, reporter's privilege, shield laws, or any other applicable privilege or immunity. Except as provided expressly herein, the Parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of documents and ESI.

## II. PRODUCTION OF HARD COPY DOCUMENTS AND ELECTRONICALLY STORED INFORMATION ("ESI")

All documents and files, including hard copy documents that are scanned and electronically stored documents, will be produced in electronic form. For productions made from the date of this Agreement onward, Plaintiff agrees to produce documents to Defendants as full color PDFs with a corresponding load file whenever practicable and Defendants agree to produce documents

2

containing color in JPG format and any bitonal documents in TIFF format with a corresponding load file.

### A. Hard Copy Documents

Where necessary and practicable, hard copy documents that contain any color will be scanned in color to ensure full information is communicated in the scanned copy. Scanned color documents will be provided in full color PDF or full color JPG file format with a corresponding load file.

Where a hard copy document or group of documents has an identification spine, "post-it note," or any other label, the information on the label shall be scanned and produced in full color PDF or full color JPG file format with a corresponding load file.

Absent undue burden, a producing Party shall, when scanning paper documents, avoid merging distinct documents into a single record, and avoid splitting single documents into multiple records (i.e., paper documents should be logically unitized). To the extent practicable, hard copy documents shall be unitized using logical document determinations or "LDD."

### B. Production Format

All documents are to be sequentially Bates numbered and produced in electronic form. Multi-page documents must bear a sequential Bates number on every page. Documents may include scanned versions of hard copy documents, word-processing documents, spreadsheets, presentations, social media files, images, and electronic calendar invites. Wherever practicable, documents that contain any color should be imaged and produced in a full color PDF or JPG file format with a corresponding load file, with related searchable text, metadata, and bibliographic information. Wherever practicable, bitonal documents should be imaged and produced in a PDF or TIFF format, with a corresponding load file containing related searchable text, metadata, and bibliographic information.

Documents produced as TIFFs should be in the form of single-page, black and white, Group IV TIFFs at 300 dpi with an .opt image cross-reference file and a delimited database load file (i.e., .dat). If an original document contains relevant information in color necessary to understand the meaning or content of the document, the document should be produced as single-page, 300 DPI with a minimum quality level of 75, 24-bit, color JPG images or in a full color PDF. Each TIFF image should be named as its corresponding Bates number. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). TIFF image files should be provided in a self-identified "Images" folder.

Wherever possible, passwords and encryption must be removed from electronic documents prior to production.

If a document contains track changes, redlines, comments, presentation notes, or hidden fields, such information must be viewable in the imaged document. Only where making such information viewable is not possible, the document must be produced in its native format.

Whenever practicable, each imaged PDF must be unitized by file (rather than by page). Parent-child or family relationships (i.e., the association between an attachment and its parent document) should be preserved to the extent they exist in the way the documents are maintained in the ordinary course of business. When applicable, parent emails and any of their attachments should be produced as separate, sequential documents. When applicable, parent-child relationships must be preserved, all families must be provided in sequential order of the parent document followed by all child documents, and the accompanying load file must indicate and memorialize the "parent" and "child" relationship between such documents. The Parties agree that if any part of an email or its attachments is responsive, the entire family of documents will be produced,

except as to any emails or attachments that may be withheld, in whole or in part, on the basis of privilege.

A producing Party shall explain the basis for any such withholding or redaction, including the general basis or category of documents to which withholding and/or redaction applies.

If a native file type is not conducive to imaging because of file type (e.g., .xlsx), those files should be produced in their native format, along with a PDF "placeholder" indicating and assigning a Bates number, and the Bates number should be included in the file name to the native file.

If a native file type is an audio-visual file (e.g. .mp3, .mp4), those files should be produced in their native format, along with a PDF Bates number "placeholder" indicating and assigning a Bates number, and the Bates number should also be included in the file name of the native file.

## C. Database Load Files, Metadata, and Coding Fields

Unless otherwise agreed to by the Parties, produced documents should be provided with Concordance-compatible image and data load files (i.e., .OPT and .DAT files) using standard Concordance delimiters. Concordance-compatible image and data load files (i.e., .OPT and .DAT files) should be provided in a self-identified "Data" folder. The database load file should contain, at minimum, the following fields: "BEGNO," "ENDNO," "BEGATTACH," "ENDATTACH," "CUSTODIAN," and "CONFIDENTIALITY." The load file should also contain any other fields and metadata stored in the ordinary course of business and otherwise available. To the extent available and otherwise practicable, the metadata and coding fields set forth in Appendix I that can be extracted from an electronic document shall be produced for that document within the load file. Audio-visual files should be produced in their native format and should be provided with metadata files that should contain, at minimum, the following fields: "BEGNO," "ENDNO," "BEGATTACH," "ENDATTACH," "CUSTODIAN," and "CONFIDENTIALITY." To the extent available and otherwise practicable, the metadata and coding fields set forth in Appendix I

that can be extracted from an audio-visual file shall be produced for that document within the metadata files.

### D.  Custodian Identification

The Parties will utilize reasonable best efforts to ensure that paper records for a particular custodian or department-level custodian, which are included in a single production, are produced in consecutive Bates stamp order. Multiple custodians in the "All Custodians" field shall be separated by a semicolon.

### E.  Embedded Hyperlinks

The parties agree that hyperlinked documents within an otherwise produced document (e.g., an email with a link to a cloud-stored Word or Google document) are not attachments or part of document family as described *supra* at II.B and will not be treated as such. However, if such hyperlinked documents are otherwise within the Party's custody and control (e.g., a hyperlink within an email to a cloud-stored Word document or spreadsheet), the Parties shall separately produce any responsive, non-privileged documents. The Parties are not required to produce copies of hyperlinked documents when they are not in a Party's custody or control, or if the hyperlink is to a publicly accessible website, file, or document. If a hyperlinked document is to be produced in accordance with this section, the producing Party will produce the version of these documents as they exist at the time they are collected, which is how they are stored in the ordinary course of business. The receiving party may request historical versions of documents as specifically needed and the parties will meet and confer if there is a disagreement.

### F.  De-Duplication

A Party is only required to produce a single copy of a responsive document, and a producing Party is required to de-duplicate responsive ESI using MD5 or SHA-1 hash values at the parent level. "Near duplicate" documents shall be produced rather than removed. The

producing Party need only produce a single copy of a particular ESI. However, (1) attachments to emails shall not be eliminated from their parent emails, and (2) hard-copy documents shall not be eliminated as duplicates of responsive ESI. In addition, each Party shall make reasonable efforts to remove duplicate data across custodians for each produced document and to produce searchable metadata in the "All Custodians" and "Duplicate File Path" fields for each produced document sufficient for the receiving party to identify all custodians and file paths of a particular document that were eliminated from review or production through de-duplication.

### G. Bates Numbering

Each full color PDF, TIFF or JPG image should be assigned a unique Bates number in the lower right corner of the pages. The Bates number, to the extent practicable, must not obliterate, conceal, or interfere with any information from the source document. Confidentiality designations, if any, will be located on the bottom left of each page.

### H. Confidentiality Designations

Confidentiality designations shall be made pursuant to a Protective Order entered by the Court, to the extent such an order is entered by the Court. This document does not otherwise affect or modify any Parties' rights or obligations under a Protective Order.

### I. Redactions

The Producing Party can redact documents only for privilege and otherwise protected and/or personally identifiable information. When a document is redacted, the document will be produced in full color PDF, TIFF or JPG image unless otherwise agreed to by the Parties (e.g., if a native document that requires redaction is difficult to convert to full color PDF, TIFF or JPG or is not reasonably usable when converted to full color PDF, TIFF or JPG format, the Producing Party can redact in native format but must also preserve an unredacted copy of such document in the event that the redaction is successfully challenged before the Court). The full color PDF, TIFF

or JPG image for a document produced in redacted form will include a label identifying the redacted area of the document and reason for redaction.

### J.   Social Media

ESI from social media sites (e.g., posts on X) may be produced in the following formats: (1) relevant log file ("a log file"), (2) a link from either the applicable social media platform or an online archiving tool to the relevant post ("an archive link"), or, (3) if producing only the log file or archived link would result in the omission of the posts and ads that abut the post and such abutting posts or ads are relevant and responsive, as imaged "screenshots" or "screen captures" converted to PDF files with extracted or OCR text ("a screenshot"). Any screenshots must include, at minimum, the following information: username, date and time of the social media post, and the entirety of the social media post. If replies to a post are produced, the produced file should include the original post to which the reply was responding. With regard to any screenshots, the parties shall ensure that the metadata of such screenshot remains intact to reveal and preserve the time and date on which the screenshot was captured. With regard to archive links, the Parties agree that acceptable online archiving tools are: The Wayback Machine (archive.org), Page Vault (www.page-vault.com) and Permalinks (Perma.cc). The need for additional context for any social media post produced by the parties (for example, for images of abutting posts or advertisement), regardless of the format of production, will be evaluated on a case-by-case basis. The parties shall meet and confer about any such requests for additional context with regard to any social media post produced by either party in good faith. Provided all requirements in this subsection are met, the parties will not contest the authenticity of properly produced ESI from social media without cause. Pursuant to this agreement, it is the intention of the parties that any party objecting to the authenticity of ESI from social media produced in accordance with this section bears the burden of establishing that such ESI is not authentic.

ESI from social media sites may also be produced in the format provided by each social media platform's "download" or "archive" features, which allow users to preserve any data saved on their social media profiles or accounts.

### K.  Text and/or Chat Messaging

Mobile text messages may be produced by capturing information through "screen shots," "screen captures," or "screen recordings" and converting the same into images or videos along with corresponding extracted text or OCR, or through forensic extraction or extraction through the use of third-party software, as long as such screen capture, image, or extraction depicts the sender, recipient, date, and time of the text or chat message.

### L.  Compressed Files

Compressed file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

### M. Production Method

Documents shall be exchanged through secure file transfer protocols ("sFTP").  The production media shall be labeled with the Volume Number along with the Bates Number range(s) of the materials, and where not practicable to do so, may be provided in an accompanying letter. Any party producing documents that may contain non-public personal information via sFTP shall notify the other side in the transmittal communication that the production may contain non-public personal information. If a Producing Party encrypts or "locks" the production, the Producing Party shall send, under separate cover, an explanation of how to decrypt the files.

**III.    PROCESSING OF THIRD-PARTY DOCUMENTS**

A Party that issues a non-party subpoena ("Issuing Party") shall include a copy of this Stipulation with the subpoena and request that the non-party produce documents in accordance with the specifications set forth herein.

The Issuing Party is responsible for producing to the other Party any documents obtained pursuant to a subpoena within twenty-one (21) calendar days of receipt. If a non-party refuses to produce documents in accordance with the specifications set forth herein, the Issuing Party has no obligation to conform the non-party's production to such specifications. If a non-party does not include Bates numbering on its documents, the Issuing Party will add Bates numbering to the documents before producing them to the other Party using a Bates Number that indicates that the document subset was produced by a third-party.

Nothing in this Stipulation is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or third parties to object to a subpoena.

**IV.    PRIVILEGE AND PRIVILEGE LOGS**

**A.  Privilege Log**

The Parties agree that certain privileged communications or documents need not be included in a privilege log: (a) any communication or document that post-dates the filing of the original/initial civil complaint by X, including any litigation or arbitration brought by X against Media Matters in the U.S. or abroad from November 20, 2023 onward, where such communication relates to such litigation and includes the Parties' current litigation counsel; (b) any communication with such litigation counsel in advance of the filing of such civil complaint that relates to the anticipated filing of such complaint; (c) any work product of counsel and parties as a result of anticipated litigation in this or similar arbitrations or litigations, including any litigation or arbitration brought by X against Media Matters in the U.S. or abroad from November 20, 2023

10

onward; and (d) any communications internal to a law firm or between law firms working as co-counsel on behalf of a party.

### B.  No Waiver by Disclosure

Subject to the provisions of this Order, if a Party (the "Disclosing Party") discloses information that the Disclosing Party thereafter claims to be privileged ("Privileged Information"), the disclosure of that Privileged Information will not constitute or be deemed a waiver or forfeiture—in this or any other federal or state action—of any claim of privilege or work product protection that the Disclosing Party would otherwise be entitled to assert with respect to the Privileged Information and its subject matter.

Disclosing Party must promptly notify the Party receiving the Privileged Information ("the Receiving Party"), in writing, that it has disclosed that Privileged Information without intending a waiver by the disclosure and explain why the Privileged Information is privileged.  Upon such notification, the Receiving Party must – unless it contests the privilege claim – promptly (i) notify the Disclosing Party that it will make best efforts to identify and return, sequester, or destroy (or in the case of electronically stored information, delete) the Privileged Information and any reasonably accessible copies it has, and (ii) provide written certification that it will cease further review, dissemination, and use of the Privileged Information.  If the Disclosing Party wishes to remove files or metadata from a production deliverable, it shall provide an overlay production to replace any affected deliverables.

### C.  Contesting Claim of Privilege

If the Receiving Party contests the privilege claim, the Receiving Party must first meet and confer with the Disclosing Party.  If the Parties reach an impasse following the meet-and-confer, the Parties shall submit a joint letter to the Court outlining the dispute (a "Privilege Disclosure Letter"). Pending resolution of the Privilege Disclosure Letter, the Receiving Party must not use

the challenged information in any way and must not disclose the challenged information to any person or use the challenged information. The Disclosing Party retains the burden of establishing the privileged or protected nature of the Privileged Information. This Order does not preclude a Party from voluntarily waiving the privilege protection.

## V.    MISCELLANEOUS PROVISIONS

This Stipulation is intended solely to address the format of document productions and the handling of logging certain privileged documents. Nothing in this Stipulation is intended to affect the rights of any Party to object to any requests or demand for production. Nothing in this Stipulation shall constitute, or operate as, a waiver of any rights of any Party to object to, or to avoid, discovery or disclosure, in whole or in part, under the laws of the United States, the Federal Rules of Civil Procedure, the Local Rules of the Northern District of Texas, or any other applicable law, rule, or order.

The Parties to the Action shall make good faith efforts to comply with and resolve any differences concerning compliance with this Stipulation. If a producing Party, notwithstanding their good faith efforts, cannot comply with a material aspect of this Stipulation or if compliance with such material aspect would be unreasonable, such Party shall inform the receiving Party in writing as to why compliance with the Stipulation is impossible or unreasonable as soon as reasonably practicable. No Party may seek relief from the Court concerning compliance with the Stipulation unless it has first conferred with the other parties.

When documents produced in accordance with this Stipulation are used in any proceeding herein, including depositions, hearings, or trial, the image copy of documents shall be the copy used.  Extracted text files shall not be used in any proceeding as a substitute for the image of any document.  This paragraph does not apply to any summary exhibits or summary demonstratives.

Nothing herein is intended to, nor shall be construed to, diminish or otherwise affect any

Party's discovery obligations.


Dated: June 12, 2024                                    Respectfully submitted,


Agreed as to form and substance:

Counsel for Plaintiff:                                 Counsel for Defendants:

/s/ *Christopher D. Hilton*                            /s/ *Andrew LeGrand*
Judd E. Stone II                                       Andrew LeGrand Texas Bar No. 24070132
Texas Bar No. 24076720                                 **GIBSON, DUNN & CRUTCHER LLP**
Christopher D. Hilton                                  2001 Ross Avenue, Suite 2100
Texas Bar No. 24087727                                 Dallas, TX
Ari Cuenin                                             75201-2923
Texas Bar No. 24078385                                 Telephone: (214) 698-3100
Alexander M. Dvorscak                                  Email: alegrand@gibsondunn.com
Texas Bar No. 24120461
**STONE | HILTON PLLC**                                Theodore J. Boutrous, Jr.*
1115 W. Slaughter Lane                                 Jay P. Srinivasan*
Austin, TX 78748                                       333 South Grand Avenue
Telephone: (737) 465-7248                              Los Angeles, CA 90071
judd@stonehilton.com                                   Telephone: (213) 229-7000
chris@stonehilton.com                                  Email: tboutrous@gibsondunn.com
ari@stonehilton.com                                    Email: jsrinivasan@gibsondunn.com
alex@stonehilton.com
                                                       Amer S. Ahmed*
John C. Sullivan                                       Anne Champion*
Texas Bar No. 24083920                                 200 Park Avenue
**S|L Law PLLC**                                       New York, New York 10166
610 Uptown Boulevard, Suite 2000                       Telephone: (212) 351-4000
Cedar Hill, TX 75104                                   Email: aahmed@gibsondunn.com
Telephone: (469) 523-1351                              Email: achampion@gibsondunn.com
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com                       **ELIAS LAW GROUP LLP**
                                                       Abha Khanna*
                                                       1700 Seventh Avenue, Suite 2100
                                                       Seattle, WA 98101
                                                       Telephone: (206) 656-0177
                                                       Email: akhanna@elias.law
                                                       Aria C. Branch*
                                                       Christopher D. Dodge*
                                                       Jacob D. Shelly*

13

Elena A. Rodriguez Armenta*
Daniela Lorenzo*
Omeed Alerasool
250 Massachusetts Ave. NW,
Suite 400
Washington, DC 20001
T: (202) 968-4652
abranch@elias.law
cdodge@elias.law
jshelly@elias.law
erodriguezarmenta@elias.law
dlorenzo@elias.law
oalerasool@elias.law

**Appendix I: ESI Metadata Fields**

| Metadata Table | | |
|---|---|---|
| **Field Name** | **Sample Data** | **Description** |
| BEGNO | P000000222 | First Bates number of native file document/email |
| ENDNO | P000000222 | Last Bates Number of native file document/email (single-page documents will list beginning and ending Bates number) |
| BEGATTACH | P000000222 | Beginning Bates number of parent document. |
| ENDATTACH | P000000229 | Ending Bates number of last attachment/child document |
| CUSTODIAN | Adams, John; johnadams@1776.gov | Email: mailbox in which the file was located Native: Individual who originated the document |
| ATTACHMENT COUNT | 2 | Total number of attachments to each email |
| PGCOUNT | 1 | Total pages of each original document/email |
| ALL CUSTODIANS | Franklin, Ben; Hancock, John, Whipple, William | When global deduplication has been employed, the custodians who had duplicates of the identical document |
| AUTHOR | Jefferson, Thomas | Author of native document (MS Word, etc.) |
| FROM | Adams, John | Email author/sender |
| TO | Hancock, John [mailto: HANCOCK@JOHNHANCOCK.com] | Recipient(s) of email separated by semicolon |
| CC | Franklin, Ben [mailto: bennyf@1776.com] | Carbon copy recipient(s) of email |
| BCC | NA | Blind carbon copy recipient(s) of email |
| SUBJECT | Declaration w/ edits | Email: subject line Native: document title |

| MD5/SHA1 | E4d909c290d0fb1ca068ffaddf22 cbd0 | Hash code created for file in connection with deduplication |
|---|---|---|
| MEETING START DATE/TIME | 7/3/1776 3:00 PM | For calendar invites, the starting date and time. |
| MEETING END DATE/TIME | 7/4/1776 4:00PM | For calendar invites, the ending date and time. |
| DATE_SENT | 7/3/1776 | Email: date the email was sent |
| TIME_SENT | 12:59 AM | Email: time at which email was sent on date in date field |
| DATE_RECEIVED | 01/01/2020 | Email: date the email was received |
| TIME RECEIVED | 6:02 PM | Email: time at which email was received on date in date field |
| FILE_EXTEN | i.e., MSG, DOCX, PDF, etc. | File extension of email or native document |
| FILE TYPE | Email or attachment | Whether it is a parent email or attachment. |
| DATE_CREATED | 6/1/2009 | Date native document was created |
| TIME_CREATED | 7:32 AM | Time native document was created |
| DATE_MOD | 10/12/2010 | Date native document was last modified |
| TIME_MOD | 5:30 PM | Last modification time |
| TEXT LINK | D:\1969\ P000000222.txt | UNC path to text files of extracted/OCR text (unless redacted) |
| NATIVE PATH | \\Prod001\Natives\ABC0000001 .xls | Path to native file |
| FILE NAME | 1d0cbe9510845fbfbe23519a8 902d.mail | Filename of the original source ESI as stored by the custodian. |
| TIMEZONE | EST | Time zone of documents |
| CONFIDENTIALITY | Highly Confidential | Confidentiality designation assigned to the document. |
| REDACTED | Yes | Identifies documents that were produced with redactions. |

16