## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **X CORP**., a Nevada corporation, | § § § | |
| *Plaintiff,* | § § | |
| vs. | § § | Case No. 4:23-cv-01175-O |
| **MEDIA MATTERS FOR AMERICA,** a Washington, D.C. non-profit corporation, **ERIC HANANOKI**, and **ANGELO CARUSONE**, | § § § § § | |
| *Defendants.* | § § | |

---

## PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO COMPEL CORRECTED CERTIFICATE OF INTERESTED PERSONS

---

JUDD E. STONE II
CHRISTOPHER D. HILTON
ARI CUENIN
ALEXANDER M. DVORSCAK
**STONE | HILTON PLLC**
600 Congress, Suite 2350
Austin, TX 78701
Telephone: (737) 465-3897

JOHN C. SULLIVAN
Texas Bar No. 24083920
**S|L LAW PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351

*Counsel for Plaintiff X Corp.*

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................. ii

TABLE OF AUTHORITIES ........................................................................................... iii

FACTUAL AND PROCEDURAL BACKGROUND................................................... 2

ARGUMENT AND AUTHORITIES ............................................................................ 4

    I.   Defendants' Motion Is Procedurally Improper. .................................................. 4

    II.  X Has Already Complied with Its Obligations to Disclose Interested Persons ................. 5

        A.  X's Certificate of Interested Persons (ECF No. 3) complies with the Federal Rules of Civil Procedure and the Court's local rules .................................................. 5

        B.  Defendants improperly seek disclosure of persons or entities who are not "financially interested in the outcome of the case." .................................................. 11

    III. The Court Should Award Fees for X's Efforts Responding to Defendants' Meritless Motion .................................................................................................. 16

CONCLUSION............................................................................................................... 18

CERTIFICATE OF SERVICE .................................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Dallas Cnty.*,
No. 3:05-CV-1248-G, 2007 WL 1148994 (N.D. Tex. Apr. 18, 2007) .................................... 11

*Apodaca v. Young Am. Ins. Co.*,
No. 1:18-CV-00399-RB-JHR, 2019 WL 6134718 (D.N.M. Nov. 19, 2019) ............................ 8

*Bldg. Four Shady Oaks Mgmt. LP v. Fed. Deposit Ins. Co.*,
No. 3:10-CV-0970-O, 2011 WL 13229001 (N.D. Tex. June 10, 2011) .................................. 16

*Cleary v. Am. Airlines, Inc.*,
No. 4:21-CV-135-P, 2021 WL 3721457 (N.D. Tex. Feb. 18, 2021) ................................. 13, 17

*CRS Recovery Inc. v. Laxton*,
No. C 06-7093 CW, 2008 WL 4408001 (N.D. Cal., Sept. 26, 2008) ..................................... 17

*Del Vecchio v. Ill. Dep't of Corr.*,
31 F.3d 1363 (7th Cir. 1994) ................................................................................................ 10

*Domain Prot., L.L.C. v. Sea Wasp, L.L.C.*,
23 F.4th 529 (5th Cir. 2022) ................................................................................................... 4

*Donoff v. Delta Air Lines, Inc.*,
No. 18-81258-CV, 2020 WL 3268500 (S.D. Fla. Feb. 4, 2020) ......................................... 8, 16

*Hill v. Hunt*,
No. 3:07–cv–2020–O, 2012 WL 12985445 (N.D. Tex. May 15, 2012).................................... 2

*In re Billedeaux*,
972 F.2d 104 (5th Cir. 1992) ................................................................................................... 7

*In re Initial Pub. Offering Sec. Litig.*,
174 F. Supp. 2d 70 (S.D.N.Y. 2001) ..................................................................................... 17

*In re Kan. Pub. Emps. Ret. Sys.*,
85 F.3d 1353 (8th Cir. 1996) ................................................................................................ 10

*In re N.M. Nat. Gas Antitrust Litig.*,
620 F.2d 794 (10th Cir. 1980) .............................................................................................. 14

*In re Placid Oil Co.*,
802 F.2d 783 (5th Cir.1986) .............................................................................................. 9, 10

*In re Tesla, Inc. Sec. Litig.*,
477 F.Supp.3d 903 (2020) ..................................................................................................... 12

*In re United States*,
666 F.2d 690 (1st Cir. 1981).................................................................................................... 7

*In re Va. Elec. & Power Co.*,
539 F.2d 357 (4th Cir. 1976) .............................................................................................. 8, 9

*Kidder, Peabody & Co. v. Maxus Energy Corp.*,
  925 F.2d 556 (2d Cir. 1991) ................................................................. 8

*La. Corral Mgmt., LLC v. Axis Surplus Ins. Co.*,
  No. CV 22-2398, 2023 WL 2162382 (E.D. La. Feb. 22, 2023) ................................. 9

*Lopez v. United States*,
  No. CR M-03-857-6, 2013 WL 12371039 (S.D. Tex. Sept. 17, 2013) ......................... 7

*Matter of Billedeaux*,
  972 F.2d 104 (5th Cir. 1992) ................................................................. 7

*MDCM Holdings, Inc. v. Credit Suisse First Boston Corp.*,
  205 F.Supp.2d 158 (S.D.N.Y. 2002) ......................................................... 8

*Miller v. Dunn*,
  No. 3:23-CV-01696-E-BN, 2024 WL 1303942 (N.D. Tex. Mar. 27, 2024) ..................... 7

*Nieves v. John Bean Tecns. Corp.*,
  No. 3:13–CV–4059–D, 2014 WL 2587577 (N.D. Tex. June 10, 2014) ........................ 13

*Plotzker v. Lamberth*,
  No. 3:08-CV-00027, 2008 WL 4706255 (W.D. Va. Oct. 22, 2008) ........................... 5

*Sensley v. Arbritton*,
  385 F.3d 591 (5th Cir. 2004) ........................................................... 1, 7, 9

*Sollenbarger v. Mountain States Tel. & Tel. Co.*,
  706 F. Supp. 776 (D.N.M. 1989) ......................................................... 9, 14

*Sw. Insulation, Inc. v. Gen. Insulation Co.*,
  No. 4:15-CV-601-O, 2016 WL 9244822 (N.D. Tex. Apr. 25, 2016) ......................... 16

*Tornetta v. Musk*,
  310 A.3d 430 (Del. Ch. 2024) ............................................................ 11

*Tramonte v. Chrysler Corp.*,
  136 F.3d 1025 (5th Cir. 1998) ............................................................. 9

*United States v. DeTemple*,
  162 F.3d 279 (4th Cir. 1998) .............................................................. 7

*United States v. Jordan*,
  49 F.3d 152 (5th Cir. 1995) ............................................................... 7

*United States v. Sypher*,
  No. 3:09-CR-00085, 2010 WL 5393849 (W.D. Ky. Dec. 22, 2010) ........................ 9, 10

*United States v. Thompson*,
  76 F.3d 442 (2d Cir. 1996) ................................................................ 7

**Statutes**

28 U.S.C. § 455 ........................................................................... *passim*

**Rules**

Fed. R. Civ. P. 7.1 ........................................................................................... 4, 5, 7, 10

Fed. R. Civ. P. 12 .................................................................................................... 3

Fed. R. Civ. P. 26 ................................................................................................ 3, 16

Fed. R. Civ. P. 37 ................................................................................................ 4, 16

**Other Authorities**

Benjamin Lindsay, *Advertisers Flee X, Tesla Shares Drop 4% as Elon Musk Retweets
    Antisemitic Post*, The Wrap (Nov. 16, 2023), https://perma.cc/ZPR2-YUQX ........................ 15

H.R. Rep. No. 93–1453 (1974),
    reprinted in 1974 U.S.C.C.A.N. 6351 ........................................................................ 17

Kit Norton, *Did Elon Musk's Apparent Antisemitism Trip Up Tesla's Rebound?*, Investor's
    Business Daily (Nov. 17, 2023), https://perma.cc/3HZH-H8V6 .............................................. 15

Yue Qiu & Tracy Yue Wang, *Skilled Labor Risk and Compensation Policies* (2017),
    https://www.ou.edu/content/dam/price/Finance/CFS/paper/pdf/Wang%20Paper.pdf ............. 12

X's Certificate of Interested Persons is sufficient exactly as it is. In it, X discloses that "X Corp." and "X Corp.'s stockholders" have a financial interest in this litigation and that no parent or publicly held corporation owns more than 10% of X Corp.'s stock. Defendants' belated protests that these straightforward disclosures (which track their own, ECF No. 34) are incomplete lack any basis in law or fact. Indeed, Defendants cite no evidence that there was "commingling" of resources between X Corp. and Tesla, a company in which X Corp. stockholder Elon Musk owns an interest—let alone a "reasonable perception that both X and Tesla are stand-ins for Musk." Mot. 1. In any event, Defendants fail to cite a single case supporting the argument that some vague, hypothetical "commingling" gives Tesla a "financial interest in this case." Mot. 1.

Tesla is not a party to this case and has no interest in the subject matter of the litigation, as the business relationships at issue concern only X Corp.'s contracts with X's advertisers. Defendants allege that Musk financed the purchase of Twitter, Inc. (which later became X Corp.) by selling "a substantial portion of all Tesla" stock and that this contributed to "a 52 percent decline in the stock's value." Mot. 9. But the alleged drop in share values after Musk sold Tesla stock to buy Twitter could have been affected by countless factors other than litigation. Any purported connection between Tesla's share price and this litigation (or vice versa) is even more tenuous. And Defendants' speculation about it is unsupported. Even assuming that this litigation could have some future indirect effect on Tesla shareholders by virtue of Musk's financial interest in Tesla, that indirect relationship is far too "remote, contingent [and] speculative" to provide any colorable ground for recusal. *Sensley v. Arbritton*, 385 F.3d 591, 600 (5th Cir. 2004). That is all the Court needs to decide to deny Defendants' motion.

Beyond those flaws, Defendants do not even attempt to explain why they filed their motion so late in the litigation. By their own account, they have known about the purported

– 1 –

interconnectedness of Tesla and X since the outset of the lawsuit. This Court's local rules and the federal recusal statutes do not countenance this sort of gamesmanship. The Court has even noted "the need to ensure that a party does not seek recusal only after an adverse ruling or [] otherwise reserve its use for some perceived strategic gain." *Hill v. Hunt*, No. 3:07–cv–2020–O, 2012 WL 12985445, at *7 (N.D. Tex. May 15, 2012) (O'Connor, J.). Because that is exactly what is happening here, X respectfully requests that this Court deny Defendants' meritless motion and award X its legal fees incurred in opposing it.

## FACTUAL AND PROCEDURAL BACKGROUND

In the fall of 2023, Defendant Hananoki wrote, Defendant Media Matters published, and Defendant Carusone trumpeted a series of articles that attacked X with false and pernicious statements about X and the content appearing on X's platform. Am. Compl. ¶¶ 30-38, 46-54. As a result of that tortious conduct, major advertisers withdrew from X's platform. *Id.* ¶¶ 30-38, 61-64. Because of the ongoing damage caused by Defendants' lies, X filed this lawsuit in November 2023, bringing claims for business disparagement, tortious interference with contract, and tortious interference with prospective economic advantage. *Id.* ¶¶ 65-88.

In connection with its initial complaint, and in compliance with local and federal rules, X filed a certificate of interested persons listing X Corp. and X Corp.'s shareholders (which do not include Tesla) as the "persons, associations of persons, firms, partnerships, corporations, guarantors, insurers, affiliates, parent or subsidiary corporations, or other legal entities that are financially interested in the outcome of the case." ECF No. 3; *see* L.R. 3.1(c).

Since X filed its initial complaint, the Court has resolved several motions. First, in March 2024, Defendants sought to stay all discovery in this case. ECF No. 43. Defendants argued that no discovery should proceed based on various jurisdictional and merits grounds raised in a motion to

dismiss filed under Rule 12 of the Federal Rules of Civil Procedure. *See* ECF No. 41. The following month, the Court denied that motion. ECF No. 54. The Court concluded that Defendants failed to show good cause for the exceptional remedy of staying discovery, based on the weakness of Defendants' motion to dismiss, the necessity of discovery sought, the lack of demonstrated hardship to Defendants, and the burdens on the docket of the Fort Worth Division that would result from a stay. ECF No. 54 at 9-15.

Next, in February 2024, after the discovery period opened, X began serving written discovery requests. Fed. R. Civ. P. 26(d)(1). In their responses to these requests, Defendants asserted virtually every conceivable basis for withholding production, flatly refusing to produce *anything* in response to 14 out of X's 49 requests and generally objecting to production on various other grounds. Consequently, in May 2024, X moved to compel production. ECF Nos. 59, 60. In early June 2024, this Court granted X's motion to compel in part and denied it in part. ECF No. 64. In relevant part, the Court ordered Defendants to "deliver all documents in its possession and control responsive to RFP Nos. 13-16, 23-24, 37-38, and 46 to Plaintiff," to "create and deliver a privilege log of any documents being withheld from production to Plaintiff," and to serve amended discovery responses and confer about the extent of any dispute about the remaining RFPs. ECF No. 64 at 3. Finally, the parties filed a joint motion to amend the scheduling order that sought, among other things, to extend the trial date from January 2025 to September 2025. ECF No. 66. The Court extended some of the case deadlines but denied the request to extend the trial date by eight months. ECF No. 69. The Court instead set a new trial date in April 2025. ECF No. 69.

Only after receiving adverse rulings on these crucial discovery and scheduling matters did Defendants seek to compel a corrected certificate of interested persons. Defendants ask this Court to "compel X to file an accurate and complete certificate of interested persons that discloses the

– 3 –

financial interest of Tesla and its shareholders in this matter, as well as any other previously undisclosed persons or entities with a financial interest in this case." Mot. 3. But Defendants' motion identifies the only "oversight at issue [a]s X's failure to notify the Court of Tesla's financial interest" in this matter." Mot. 3. According to Defendants, they do not seek to move for recusal of the Court on that basis at this time. But the plain import of Defendants' motion is to force the Court's disqualification. Invoking 28 U.S.C. § 455, the federal statute governing judicial disqualification and recusal, Defendants argue that "disclosure of [Tesla] would have enabled the Court to make a recusal decision *sua sponte*." Mot. 3 n.2.

## ARGUMENT AND AUTHORITIES

### I.   Defendants' Motion Is Procedurally Improper.

At the outset, Defendants' motion should be denied because it seeks relief unavailable under the Federal Rules of Civil Procedure. The disclosure requirements set forth in the Federal Rules and Local Rule 3.1 build upon the recusal concerns embodied in the Code of Conduct for United States Judges. *Domain Prot., L.L.C. v. Sea Wasp, L.L.C.*, 23 F.4th 529, 542 (5th Cir. 2022). Thus, the "corporate relationships that must be disclosed under Rule 7.1 are those that might warrant a judge's disqualification based on a holding in such an entity." *Id.* (citing Fed. R. Civ. P. committee note on rules—2002 (explaining that the disclosure requirement "reflects the 'financial interest' standard" that governs disqualification under "Canon 3C(1)(c) of the Code of Conduct for United States Judges").

The Federal Rules provide no party enforcement mechanism for that rule. Rule 7.1 itself provides no enforcement mechanism. Nor do this Court's local rules provide a mechanism for compelling disclosures in compliance with Rule 7.1 or Local Rule 3.1. Federal Rule of Civil Procedure 37, which provides grounds for moving to compel various disclosures, does not apply

because it references only discovery disclosures under Rule 26. The leading treatise on the Federal

Rules of Civil Procedure, Wright & Miller, indicates no discussion of mechanisms for compelling

disclosures under Rule 7.1. Corporate disclosure forms are not even required to be served on other

parties, so it is unsurprising that no rule expressly permits parties to compel them. *See, e.g.*,

*Plotzker v. Lamberth*, No. 3:08-CV-00027, 2008 WL 4706255, at *12 (W.D. Va. Oct. 22, 2008)

("Because corporate disclosure forms are intended to be used by judges in determining whether

disqualification is necessary, they are not required to be served on other parties."). Given that X

*did* serve corporate disclosure statements on Defendants, Defendants have no basis to seek any

further relief.

## II.     X Has Already Complied with Its Obligations to Disclose Interested Persons.

### A.     X's Certificate of Interested Persons (ECF No. 3) complies with the Federal Rules of Civil Procedure and the Court's local rules.

Federal Rule of Civil Procedure 7.1 requires a corporate party to identify "any parent

corporation and any publicly held corporation owning 10% or more of its stock." Fed. R. Civ. P.

7.1(a)(1)(A). And the Northern District of Texas's Local Rule 3.1(c) requires "a separately signed

certificate of interested persons—in a form approved by the clerk—that contains—in addition to

the information required by Fed. R. Civ. P. 7.1(a)—a complete list of all persons, associations of

persons, firms, partnerships, corporations, guarantors, insurers, affiliates, parent or subsidiary

corporations, or other legal entities that are financially interested in the outcome of the case."

X's Certificate of Interested Persons identifies that "no parent or publicly held corporation

owns more than 10% of X Corp.'s stock." ECF 3 at 1. Accordingly, the Certificate complies with

Fed. R. Civ. P. 7.1. The Certificate also complies with Local Rule 3.1 because X Corp. is the only

entity with a direct financial interest in the outcome of this case. After all, it is X's disrupted

business relationships with advertisers that form the basis for all the claims in this case. And

because X Corp. has no publicly traded corporate parent, the only relevant persons who are arguably indirectly financially interested in the outcome of the case are the shareholders of X Holdings Corp., X Corp.'s private parent holding company. X undisputedly disclosed both X and X's shareholders in its Rule 3.1 certificate. ECF No. 3. Defendants' own certificate of interested persons tracks these disclosures. ECF No. 34.

Defendants appear to concede (at 2) that Local Rule 3.1 incorporates the same definition of "financial interest" found in the U.S. Code. *See* 28 U.S.C. § 455(d)(4) (financial interest "means ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party"). They insist that "Federal law requires that a judge must recuse whenever '[h]e knows that he . . . has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding,'" and should also "disqualify[] [himself] whenever [his] 'impartiality might reasonably be questioned.'" Mot. 2 (quoting 28 U.S.C. § 455(a), (b)(4)). Defendants argue that "[b]ecause of X's failure to disclose all individuals and entities who maintain a financial interest in this case, this Court could not have 'know[n]' that its financial interest in Tesla 'could be substantially affected by the outcome of the proceeding,' let alone the extent to which its impartiality 'might reasonably be questioned.'" *Id.*

As an initial matter, Defendants do not argue that Tesla directly or indirectly holds equity in X (which it does not), and they offer no briefing as to why any other person or entity should be listed in X's Rule 3.1 certificate. Insofar as Defendants suggest that the Certificate should have detailed any private ownership interests of X, that argument is waived for inadequate briefing.

Instead, Defendants take the insupportable position that Tesla, a non-party company, has a financial interest in this case because X shareholder Elon Musk owns Tesla shares. This view badly

misunderstands the disclosure rules and their purpose. The purpose of the disclosure rules is to permit the Court to evaluate the need for recusal. *See* L.R. 3.1(c); *see also* Fed. R. Civ. P. 7.1, Comm. Notes on Rules, 2002 (noting that the information required by Fed. R. Civ. P. 7.1 "will support properly informed disqualification decisions"). This inquiry "ask[s] how things appear to the well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person." *United States v. Jordan*, 49 F.3d 152, 156 (5th Cir. 1995). Courts have long recognized "remote, contingent, indirect or speculative interests" do not require recusal. *United States v. Thompson*, 76 F.3d 442, 451 (2d Cir. 1996). Recusal cannot be based on tenuous interests as "[a] 'remote, contingent, or speculative' interest is not one 'which reasonably brings into question a judge's partiality.'" *Miller v. Dunn*, No. 3:23-CV-01696-E-BN, 2024 WL 1303942, at *4 (N.D. Tex. Mar. 27, 2024) (quoting *In re Billedeaux*, 972 F.2d 104, 106 (5th Cir. 1992)). If "an interest is not direct, but is remote, contingent or speculative, it is not the kind of interest" that could require recusal." *Sensley*, 385 F.3d at 600 (quotation and citation omitted). Similarly, a judge need not "recuse himself because of 'unsupported, irrational, or highly tenuous speculation.'" *Lopez v. United States*, No. CR M-03-857-6, 2013 WL 12371039, at *3 (S.D. Tex. Sept. 17, 2013), *report and recommendation adopted*, No. CR M-03-857-6, 2013 WL 12371041 (S.D. Tex. Oct. 28, 2013) (quoting *United States v. DeTemple*, 162 F.3d 279, 287 (4th Cir. 1998); *In re United States*, 666 F.2d 690, 694 (1st Cir. 1981)). The supposed "interest" of Tesla urged by Defendants here is likewise so tenuous and speculative that it is no interest at all under this precedent.

Nor is the interest asserted by Defendants the kind of "financial interest" contemplated by the recusal statute. The statute defines "financial interest" as "ownership of a *legal or equitable interest*, however small, or a relationship as director, adviser, or other active participant in the affairs of a party." 28 U.S.C. § 455(d)(4)(i) (emphasis added); *see also In re Va. Elec. & Power*

– 7 –

*Co.*, 539 F.2d 357, 366 (4th Cir. 1976) (holding that a case's possible future impact on the price of utility bills was remote and contingent and thus not disqualifying). Where "no publicly held company owns 10% or more of" a plaintiff's stock, the mere existence of another entity's financial interest in the plaintiff is not sufficient to trigger disqualification. *See, e.g.*, *MDCM Holdings, Inc. v. Credit Suisse First Boston Corp.*, 205 F.Supp.2d 158, 163 (S.D.N.Y. 2002) ("The key question is whether the company in which the judge owns stock has effective control over the party to the litigation—that is, at least 50% of the voting stock or a majority of the capital interest in the party."). Thus, for example, a judge's ownership of stock in a corporation that "holds 80% of the outstanding stock of [a party to the case] through one of its wholly owned subsidiaries" would raise disqualification concerns. *Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 561 (2d Cir. 1991). In contrast, where a corporation does not exercise control over any of the party litigants, a judge's ownership of stock in that corporation does not trigger the disqualification provision of section 455(b)(4). *See MDCM Holdings, Inc.*, 205 F. Supp. 2d at 162-63.

Where, as here, there are "no indicia of control" by a company over the plaintiff, there can be "no basis for recusal" based on ownership of shares in that company. *Donoff v. Delta Air Lines, Inc.*, No. 18-81258-CV, 2020 WL 3268500, at *4–5 (S.D. Fla. Feb. 4, 2020). Defendants do not (and cannot) argue that Tesla exerts any control over X or is a shareholder of X—let alone a corporate entity holding more than 10% of X stock. Nothing indicates that Tesla has a "legal or equitable interest" in X (it does not). 28 U.S.C. § 455(d)(4)(i). Defendants do not argue that Tesla and X "enjoyed a mutual right of control, a right to share in profits, or a duty to share in losses" (they do not). *Apodaca v. Young Am. Ins. Co.*, No. 1:18-CV-00399-RB-JHR, 2019 WL 6134718, at *2 (D.N.M. Nov. 19, 2019). Nothing indicates that Tesla is "entitled to recover financially" from this litigation or that Tesla has a "direct financial interest" in Plaintiff or its claims (it does not).

– 8 –

*Tramonte v. Chrysler Corp.*, 136 F.3d 1025, 1029 (5th Cir. 1998). Thus, any purported interest in this litigation by virtue of Tesla stock ownership is a "remote, contingent, or speculative interest [that] is not a disqualifying financial interest under the statute." *Id.* at 1029 (citing *In re Placid Oil Co.*, 802 F.2d 783, 786-87 (5th Cir.1986) (holding that a judge's investment in a non-party bank did not require his recusal from a case with a different bank as a party, even though that case might have affected the banking industry). Even if Tesla shareholders hoped to benefit in some way from the outcome in this case, that hope is not a legal or equitable right to recovery—rather, it "'is closely analogous to what is known as a 'bare expectancy' in property law'" and does not trigger a financial interest within the meaning of 28 U.S.C. § 455. *Sollenbarger v. Mountain States Tel. & Tel. Co.*, 706 F. Supp. 776, 782 (D.N.M. 1989) (quoting *In re Va. Elec. & Power Co.*, 539 F.2d at 366-67).

Likewise, Defendants' suggestions that a judgment for or against X could affect Tesla financially and "that there is a causal connection between" the value of X and the value of Tesla stock are "remote, contingent, [and] speculative." *La. Corral Mgmt., LLC v. Axis Surplus Ins. Co.*, No. CV 22-2398, 2023 WL 2162382, at *3 (E.D. La. Feb. 22, 2023). "They are therefore 'not the kind of interest[s] which reasonably bring[] into question a judge's partiality.'" *Id.* (quoting *Sensley*, 385 F.3d at 600). No additional disclosures are needed because no interest in Tesla could require recusal on that basis. *See id.* Courts regularly reject attempts to tie remote, downstream financial effects to the financial interests of the parties actually before the court. *See, e.g.*, *United States v. Sypher*, No. 3:09-CR-00085, 2010 WL 5393849, at *4 (W.D. Ky. Dec. 22, 2010) (rejecting contention that recusal was required when a judge was allegedly invested in a bank that backed a basketball arena, whose success depended on the success of the University of Louisville basketball team, whose success depended on the "continued coaching success of the victim in the

case). Where the alleged interest is not the "subject in controversy" and the alleged ownership concerns parties not before the court, tenuous connections between various owners and entities are too "remote, contingent, or speculative . . . [to] require recusal." *Id.* Defendants suggest possibilities that are indirect and so "remote, contingent, and speculative" that they cannot constitute a financial interest of Tesla in the outcome of the case. *See In re Placid Oil Co.*, 802 F.2d at 786-87; *see also Del Vecchio v. Ill. Dep't of Corr.*, 31 F.3d 1363, 1374 (7th Cir. 1994).

Courts are "reluctant to fashion a rule requiring judges to recuse themselves from all cases that might remotely affect nonparty companies in which they own stock." *In re Kan. Pub. Emps. Ret. Sys.*, 85 F.3d 1353, 1362 (8th Cir. 1996). That approach must be rejected because it "would paint with too broad a stroke." *Id.* "By way of example, a judge holding stock in General Motors should not have to recuse from a case involving Ford Motor Company because some ruling he may make might be used as persuasive authority in a case against GM." *Id.* (citing *In re Placid*, 802 F.2d at 786-87). "As a general matter, the administratively daunting task of identifying such tangential 'interests' outweighs any benefit of eliminating the remote possibility of consequential bias." *In re Kan. Pub. Emps. Ret. Sys.*, 85 F.3d at 1362. Also, as the 2002 Committee Notes on Federal Rule of Civil Procedure 7.1 explain, "[u]nnecessary disclosure requirements place a burden on the parties and on courts." Fed. R. Civ. P. 7.1, Comm. Notes on Rules, 2002. "Unnecessary disclosure of volumes of information may create a risk that a judge will overlook the one bit of information that might require disqualification, and also may create a risk that unnecessary disqualifications will be made rather than attempt to unravel a potentially difficult question." *Id.* It follows that corporate parties are entrusted with a measure of judgment as to what information the Court needs to determine the propriety of recusal under Federal Rule of Civil Procedure 7.1 and Local Rule 3.1(c).

At bottom, this is a case involving Defendants' tortious interference with the business relationships and business disparagement of exactly one entity—X Corp., the Plaintiff. Tesla does not have a financial interest in this case. There is no person or persons who have any financial interest in X Corp. other than its shareholders. Defendants do not argue X Corp. has some other undisclosed corporate parent or that any entity controls more than 10% of X Corp.'s shares. No authority requires what Defendants seek—compelled disclosure of downstream financial interests of non-party investors. Defendants' motion is a transparent play to force the Court's disqualification "sua sponte" by listing Elon Musk's investments. Mot. 3 n.2. But no disclosure sought by Defendants could produce that outcome here.

### B.    Defendants improperly seek disclosure of persons or entities who are not "financially interested in the outcome of the case."

Tesla is not "financially interested in the outcome of the case," and the asserted grounds for that proposition in Defendants' motion are meritless. Defendants' X-to-Musk-to-Tesla triple play proceeds in four parts: Defendants argue that "Elon Musk exercises total control over X, putting him and his conduct at the heart of this lawsuit"; that Musk "exercises near-total control over Tesla"; that "Musk has blurred many lines between Tesla and X"; and thus "Tesla's brand image and stock price have closely tracked Musk's activities at X." Mot. 3-9. But Defendants lack any actual evidence to support their assertions. For instance, Defendants rely heavily (at 4, 9) on unrelated, non-binding compensation-plan litigation in *Tornetta v. Musk*, 310 A.3d 430, 504 (Del. Ch. 2024), which has nothing to do with X. Defendants contend that Musk "blurs the lines between Tesla and his other endeavors." Mot. 9 (citing *Tornetta*, 310 A.3d at 506). But "Rule 201 generally would not permit a court to take judicial notice of findings of fact from other proceedings because those facts are usually disputed and almost always disputable." *Anderson v. Dallas Cnty.*, No. 3:05-CV-1248-G, 2007 WL 1148994, at *3 (N.D. Tex. Apr. 18, 2007) (Fish, J.). Given that neither

– 11 –

Defendants nor any of Defendants' sources examine whether, let alone conclude, the distinct corporate entities should be disregarded, the Court should decline to credit weight to other courts' fact-finding or Defendants' smattering of tendentious, hearsay news articles. In any event, no evidence of purported "blurring" exists in connection with this case.

Defendants' other attempts to portray Tesla and X as inextricably linked are likewise unsupported and speculative. Defendants (at 9) attempt to connect this lawsuit to Tesla by alleging that Tesla's share price dropped after Musk sold Tesla stock to buy Twitter. But any suggestion that Tesla's share price dropped *because* Musk sold Tesla shares to invest in Twitter is tenuous at best. The more natural explanation of why Tesla stock allegedly fell after Musk sold shares of Tesla is because it would have signaled that he believed Tesla stock was overvalued. Nothing suggests that the market reacted to the fact that Musk used funds from the sale of Tesla stock to purchase Twitter, let alone anything to do with Musk's ownership of Twitter or X.

Still other assertions in Defendants' motion are false and likewise worth no weight. For example, Defendants argue that "Plaintiff X is under Elon Musk's direct and personal control" and that Tesla's SEC "Form 10-K warns investors about the company's dependence on Musk. Mot. 3-4. X, of course has a separate CEO (Linda Yaccarino), and key-man risk is a common feature of 10-K forms and not unique to Tesla. *See generally* Yue Qiu & Tracy Yue Wang, Skilled Labor Risk and Compensation Policies (2017), *available at* https://www.ou.edu/content/dam/price/Finance/CFS/paper/pdf/Wang%20Paper.pdf. Defendants' nebulous assertion of overlap between X and Tesla is unfounded. Tesla is a public company with tens of thousands of stockholders (with Musk only a minority shareholder), is listed on major stock exchanges, has its own board of directors, conducts separate board meetings, and has its own external auditors. *See generally In re Tesla, Inc. Sec. Litig.*, 477 F. Supp. 3d 903 (2020)); Tesla,

Inc. Schedule 10-K. Defendants contend that "Musk also reassigned at least one senior finance employee from Tesla to Twitter on a permanent basis" and that X employees, "Lead Client Partners Matt Madrazo and Jonathan Phelps, are reported to be working occasionally out of Tesla's D.C. offices." Mot. 6-7. Defendants assert that Musk has "mulled placing X and Tesla under a common holding company." Mot. 7. But these narratives are simply false and based on inaccurate reporting: for instance, they ignore the fact that a small number of Tesla employees voluntarily took jobs at Twitter/X (rather than being "reassigned") and that the Twitter D.C. office was too large and had extra unused capacity, so Tesla leased half of it from Twitter/X via an arms' length contract. Ex. A, Declaration of Adeeb Sahar ¶¶ 6-8. The two sides are separated by locked doors, and Madrazo and Phelps have only ever worked on the Twitter/X side. *Id.* ¶ 7. Defendants offer no basis to ignore the fact that Tesla and X are entirely separate legal entities.

Defendants merely insist that "[t]his Court's Local Rules require a plaintiff's complete and accurate disclosure of interested persons to ensure that judges can make informed recusal decisions." Mot. 12 (citing L.R. 3.1(c), 3.2(e); *see also Nieves v. John Bean Tecns. Corp.*, No. 3:13–CV–4059–D, 2014 WL 2587577, at *2 & n.5 (N.D. Tex. June 10, 2014)). But Defendants offer no textual analysis whatsoever of what "financial interest" means under Local Rule 3.1. As explained above, that term is read consistently with the federal law governing disqualification and recusal, which does not apply here. Defendants contend that "strict compliance with L.R. 3.1(c)" is required by case law. Mot. 12 (citing *Cleary v. Am. Airlines, Inc.*, No. 4:21-CV-135-P, 2021 WL 3721457, at *1-2 (N.D. Tex. Feb. 18, 2021)). But that case is inapposite because the certificate at issue in that case failed to list *anyone* as financially interested. That is hardly the situation here, where the Certificate properly disclosed X Corp. and X Corp.'s shareholders as interested persons. Indeed, there is no limit to the disclosures that would be required under Defendants' theory.

– 13 –

According to Defendants, "Musk often blurs the lines between Tesla and his other endeavors." Mot. at 6. But that argument proves too much: Defendants would presumably need to disclose any of Elon Musk's companies, all companies in which he owns stock, and all companies that those companies invest in or do business with, in every litigation involving any of those companies. Defendants offer the Court no principled way to cabin the required disclosures.

Nor does the mere prospect of "rulings" by the Court on matters involving Musk render *Tesla* a financially interested party. Defendants cite no "ruling" the Court could make in this case that would give Tesla a "legal or equitable" interest in X or Musk. 28 U.S.C. § 455(d)(4)(i). Remarkably, Defendants do not even *cite* the relevant legal standard for showing a disqualifying financial interest. Defendants instead suggest that *any* ruling that might have an "impact" on X could have a downstream effect on Tesla and its shareholders. Mot. 22 (citing *Sollenbarger*, 706 F. Supp. at 783. But in the *Sollenbarger* case, the court had cited favorably to decisions explaining that "a remote, contingent benefit, such as a possible beneficial effect on future utility bills is not a 'financial interest' within the meaning of the [recusal] statute." *Sollenbarger*, 706 F. Supp. at 782 (quoting *In re N.M. Nat. Gas Antitrust Litig.*, 620 F.2d 794, 796 (10th Cir. 1980)). That tenuous future prospect is all that Defendants allege here, if even that. To the extent a verdict in X's favor in this case results in its recoupment of lost revenues, none of those revenues would accrue to Tesla.

And the asserted impact of this litigation on Tesla and its "brand image" is speculative. Mot. 11. Although Defendants cite several conclusory news articles purporting to comment on price trends, there are countless variables that affect prices and trends in values of corporate securities. For example, Defendants claim that Musk's statements "catalyzed the whole lawsuit" and that Tesla shares post-sale "fell *nearly four percent* the day after Musk endorsed an antisemitic

conspiracy theory on X." Mot. at 14. But Defendants conduct no statistical analysis controlling for market or industry price movements that day or accounting for other events that may have impacted Tesla's stock price.

Indeed, even the articles Defendants cite here point to alternative explanations, such as normal profit-taking as Tesla rebounded. *See, e.g.*, Kit Norton, Did Elon Musk's Apparent Antisemitism Trip Up Tesla's Rebound?, Investor's Business Daily (Nov. 17, 2023), https://perma.cc/3HZH-H8V6; Benjamin Lindsay, Advertisers Flee X, Tesla Shares Drop 4% as Elon Musk Retweets Antisemitic Post, The Wrap (Nov. 16, 2023), https://perma.cc/ZPR2-YUQX. Defendants' reliance (at 18) on the prospect that Elon Musk may have to sit for a deposition is likewise too speculative to link Tesla and X. It is entirely unsurprising that, in other litigation, whether "Musk must testify is a recurring point of dispute in the myriad lawsuits he has been involved in." Mot. 18. Given the scope of Musk's wealth and business activities, there is no principled reason why sitting for a deposition in any given case renders Tesla financially interested in X. Indeed, were it otherwise, any company with an executive or board member who sat on the board of another company would have to list that other company as "financially interested" because of the potential the executive or board member might be deposed. Defendants cite no support for that proposition, and there is none. Defendants assert that various court rulings in this case "will have clear implications for Tesla's share price." Mot. 20. But their scurrilous accusations about Musk's personal activities, business decisions, and time "devoted to X versus his other enterprises," Mot. 20, come nowhere close to establishing the non-speculative, non-remote financial interest between Tesla and X that would justify disclosure—let alone recusal.

### III.   The Court Should Award Fees for X's Efforts Responding to Defendants' Meritless Motion.

X should recover its fees for responding to Defendants' meritless charges. If Defendants' motion is procedurally proper at all under the Federal Rules, *but see supra* Part I, the only arguably relevant federal rule for compelling disclosures, Federal Rule of Civil Procedure 37, includes a fee-shifting provision. "If the motion [to compel] is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party . . . who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(B). Prevailing party fees are appropriate where the movant's attempt to compel was unjustified. *See, e.g.*, *Sw. Insulation, Inc. v. Gen. Insulation Co.*, No. 4:15-CV-601-O, 2016 WL 9244822, at *6 (N.D. Tex. Apr. 25, 2016) (O'Connor, J.) (ordering, in calling for addition briefing, that "Defendant must explain whether its nondisclosure, responses, and objections were 'substantially justified'"); *Bldg. Four Shady Oaks Mgmt. LP v. Fed. Deposit Ins. Co.*, No. 3:10-CV-0970-O, 2011 WL 13229001 (N.D. Tex. June 10, 2011) (O'Connor, J.) (ordering an award of fees for motion to compel).

Defendants' motion has nothing to do with vindicating this Court's rules. It has everything to do with Defendants' attempt to disqualify this Court from presiding over this case. The parties have been actively litigating this case since November 2023 and "substantial effort has been expended by the Parties and the Court." *Donoff*, 2020 WL 3268500, at *4-5. Moreover, "the timing of filing," just after this Court issued adverse rulings denying Defendants' motion to stay discovery and compelling discovery from Defendants on X's motion, "suggests forum shopping by a discontented litigant." *Id.* A "district judge is as much obliged not to recuse unnecessarily as to recuse when necessary." *Id.* "[E]ach judge must be alert to avoid the possibility that those who

– 16 –

would question [his] impartiality are in fact seeking to avoid the consequences of [his] expected adverse decision. Disqualification for lack of impartiality must have a reasonable basis." *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 70, 98-99 (S.D.N.Y. 2001) (quoting H.R. Rep. No. 93–1453, at 5 (1974), reprinted in 1974 U.S.C.C.A.N. 6351, 6355). A "litigant's fear that a judge may decide a question against him" does not translate into a "'reasonable fear' that the judge will not be impartial." *Id.* "Litigants ought not have to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choice." *Id.*

As courts have recognized in the past, motions to compel supplementation of corporate disclosure statements will not be granted where they are made for strategic purposes. *See, e.g.*, *CRS Recovery Inc. v. Laxton*, No. C 06-7093 CW, 2008 WL 4408001, *1 (N.D. Cal., Sept. 26, 2008). Nor do the sparse authorities in the motion support Defendants' position. The Northern District case law cited by Defendants discusses the importance of interested-person disclosures only in the most general terms and faults a party for failing to identify *any* interested persons in a Rule 3.1 certificate. *Cleary*, 2021 WL 3721457, at *1-2. Here, the claims involve harm to X's advertising agreements and relationships and there is no dispute that the real party in interest, X Corp., is the plaintiff. Accordingly, the Court should deny Defendants' motion and award fees.

**CONCLUSION**

X respectfully requests that the Court deny Defendants' Motion to Compel Corrected Certificate of Interested Persons and award X its legal fees incurred in opposing the motion.

Dated: July 8, 2024

Respectfully submitted,

*/s/ Christopher D. Hilton*
Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
Ari Cuenin
Texas Bar No. 24078385
Alexander M. Dvorscak
Texas Bar No. 24120461
**STONE | HILTON PLLC**
600 Congress, Suite 2350
Austin, TX 78701
Telephone: (737) 465-3897
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
alex@stonehilton.com

John C. Sullivan
Texas Bar No. 24083920
**S|L LAW PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2024, I served a copy of this document on all counsel of record in accordance with the Federal Rules of Civil Procedure.

*/s/ Christopher D. Hilton*
Christopher D. Hilton