UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **X CORP.**, a Nevada corporation,<br><br>      Plaintiff,<br><br>  vs.<br><br>**MEDIA MATTERS FOR AMERICA**, a Washington, D.C. non-profit corporation, **ERIC HANANOKI**, and **ANGELO CARUSONE**,<br><br>      Defendants. | Case No. 4:23-cv-01175-O |

### DECLARATION OF ADEEB SAHAR

1. My name is Adeeb Sahar. I am the Global Head of Commercial, Corporate, and International Law at X Corp.

2. I am aware of the lawsuit styled *X Corp. v. Media Matters for America*, No. 4:23-cv-01175-O, in which X Corp. is the plaintiff and Media Matters for America, Eric Hananoki, and Angelo Carusone are defendants. I understand that the lawsuit alleges that in November 2023, Defendant Media Matters for America disseminated false and defamatory articles about X's social media platform that interfered with X's business relationships with its advertisers.

3. I am also aware that on November 20, 2023, X Corp. filed a Certificate of Interested Persons in accordance with this Court's rules and the Federal Rules of Civil Procedure. I have reviewed that document. The Certificate of Interested Persons states that no parent or publicly held corporation owns more than 10% of X Corp.'s stock. I am familiar with the ownership of X Corp. and understand this statement to be a true statement.

4. The Certificate of Interested Persons also requests a complete list of all persons, associations of persons, firms, partnerships, corporations, guarantors, insurers, affiliates, parent or

subsidiary corporations, or other legal entities that are financially interested in the outcome of the case. In response, the Certificate of Interested Persons lists "X Corp., X Corp.'s stockholders." I am familiar with the persons, associations of persons, firms, partnerships, corporations, guarantors, insurers, affiliates, parent or subsidiary corporations, or other legal entities that have a financial interest in the plaintiff to this case and the subject matter at issue, and I understand the list of interested persons as including "X Corp., X Corp.'s stockholders" to be complete and accurate.

5. I am aware that Defendants contend that Tesla's shareholders have a financial interest in this case by virtue of Elon Musk allegedly "blurr[ing] the lines between Tesla and X." I am familiar with Mr. Musk's ownership interests in Tesla and X. Mr. Musk is the controlling shareholder, Executive Chairman, and Chief Technology Officer of X Corp. Mr. Musk also holds shares in Tesla. While it is true that Mr. Musk is a stockholder of X Corp. and Tesla, I have reviewed the sources cited by Defendants in their motion and they do not indicate that Tesla has a financial interest in the outcome of this case.

6. I am also familiar with facts regarding Defendants' narrative of alleged commingling between Tesla and X. These representations, as well as the sources purportedly supporting them, are incorrect in multiple ways. For example, Defendants contend that Tesla is purportedly "sharing" its office space with X. This is false. In fact, X leased its unused office space on a sub-tenant basis to Tesla pursuant to an agreement negotiated at arms' length.

7. Defendants' assertion that Tesla and X are "sharing office space" is likewise false. I have reviewed Defendants' assertion that "at least two X employees whom Defendants have identified as potential custodians, Lead Client Partners Matt Madrazo and Jonathan Phelps, are reported to be '[w]orking occasionally out of Tesla's D.C. offices.'" I am familiar with office-space arrangements at Tesla's D.C. offices. Defendants' portrayal thereof is incorrect. The Twitter DC

office was too large and not fully occupied after Twitter, Inc.'s merger with entities controlled by Mr. Musk, so Tesla leased half of it from Twitter, Inc., later X Corp. The two sides are separated by locked doors, and the two individuals identified by Defendants have only ever worked on the Twitter/X side of that locked door.

8. I have also reviewed the alleged basis for Defendants' contention that Mr. Musk "often blurs the lines between Tesla and his other endeavors" including "between Tesla and X." Defendants contend that Mr. Musk "reassigned at least one senior finance employee from Tesla to Twitter on a permanent basis." I have reviewed the news article cited by Defendants in support of that assertion, which references the employment of Dhruv Batura. The article states, "Court filings revealed that Dhruv Batura, who had worked at Tesla since late 2013 and was a senior manager of business operations finance there, is now a senior director of finance at X Corp." I am familiar with Mr. Batura's employment, as well as the employment by Twitter and/or X, on or after Mr. Musk acquired Twitter, of other individuals previously employed by Tesla . Defendants' portrayal of that employment history is false. No Tesla employee was reassigned to employment at X; rather, a small number of Tesla employees voluntarily chose to become employed by X.

9. I have also reviewed Defendants' assertions that various circumstances involving X will have "clear implications for Tesla's share price." Those assertions are speculative, conjectural, and tenuous.

I declare under penalty of perjury that the foregoing statements are true and correct.

Executed: July 8, 2024.

*Adeeb Sahar*
Adeeb Sahar (Jul 8, 2024 21:00 PDT)

Adeeb Sahar
Global Head of Commercial, Corporate, and International Law,
X Corp.