UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| X CORP.,<br><br>            Plaintiff,<br><br>      v.<br><br>MEDIA MATTERS FOR AMERICA, et al.,<br><br>            Defendants. | Civil Action No. 4:23-cv-01175-O |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL CORRECTED CERTIFICATE OF INTERESTED PERSONS**

TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1

ARGUMENT ............................................................................................................................ 2

I.     X's certificate of interested persons is deficient because it deprives the Court of information necessary to an informed recusal decision. ..................................................... 2

    A.   None of X's off-point authorities forecloses recusal as a matter of law ...................... 3

    B.   The facts confirm that Tesla's shareholders are or appear to be interested in the outcome of this litigation. ....................................................................................... 6

II.    The motion to compel is procedurally proper. ................................................................. 8

III.   The Court should not award fees. ..................................................................................... 9

CONCLUSION ....................................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anoke v. Twitter, Inc.*,
  No. 3:23-cv-2217 (N.D. Cal. June 6, 2023) .................................................................................8

*Apodaca v. Young Am. Ins. Co.*,
  No. 1:18-CV-399, 2019 WL 6134718 (D.N.M. Nov. 19, 2019) ................................................4

*Carr v. IF&P Holding Co. LLC*,
  No. 22-480, 2024 WL 1675185 (E.D. La. Apr. 18, 2024) ..........................................................9

*Cleary v. Am. Airlines Inc.*,
  No. 4:21-CV-135-P, 2021 WL 3721457 (N.D. Tex. Feb. 18, 2021) ..........................................9

*In re Cont'l Airlines Corp.*,
  901 F.2d 1259 (5th Cir. 1990) ....................................................................................................2

*Donoff v. Delta Air Lines*,
  No. 18-81258, 2020 WL 3268500 (S.D. Fla. Feb. 4, 2020) .......................................................4

*Driver Opportunity Partners I, LP v. Ameriserv Fin., Inc.*,
  No. 3:22-CV-237, 2023 WL 4711158 (W.D. Pa. July 24, 2023) ...............................................9

*Hill v. Hunt*,
  No. 3:07-CV-2020-O, 2012 WL 12985445 (N.D. Tex. May 15, 2012) ....................................2

*La. Corral Mgmt., LLC v. Axis Surplus Ins. Co.*,
  No. CV 22-2398, 2023 WL 2162382 (E.D. La. Feb. 22, 2023) .................................................5

*McMillian v. Musk*,
  No. 3:23-cv-3461 (N.D. Cal. May 29, 2024) .............................................................................8

*MDCM Holdings, Inc. v Credit Suisse First Boston Corp.*,
  205 F. Supp. 2d 158 (S.D.N.Y. 2002) ........................................................................................4

*Nieves v. John Bean Techs. Corp.*,
  No. 3:13-CV-4059-D, 2014 WL 2587577 (N.D. Tex. June 10, 2014) ......................................9

*Patterson v. Mobil Oil Corp.*,
  335 F.3d 476 (5th Cir. 2003) ......................................................................................................2

*In re Placid Oil Co.*,
  802 F.2d 783 (5th Cir. 1986) ......................................................................................................5

*Steel Erectors, Inc. v. AIM Steel Int'l, Inc.*,
    312 F.R.D. 673 (S.D. Ga. 2016) ..................................................................................9

*Tornetta v. Musk*,
    310 A.3d 430 (Del. Ch. 2024)......................................................................................7

*Tramonte v. Chrysler Corp.*,
    136 F.3d 1025 (5th Cir. 1998) .....................................................................................4

*United States v. Jordan*,
    49 F.3d 152 (5th Cir. 1995) ................................................................................3, 5, 8

*United States v. Sypher*,
    No. 3:09-cr-0085, 2010 WL 5393849 (W.D. Ky. Dec. 22, 2010)...............................5

**Statutes**

28 U.S.C. § 455(a) ............................................................................................................2, 4, 8

28 U.S.C. § 455(b)(4) ...................................................................................................2, 3, 4, 5

**Other Authorities**

Fed. R. Civ. P. 7.1............................................................................................................................3

Local Rule 3.1(c) ............................................................................................ *passim*

N.D. Cal. Local Rule 3-15 .........................................................................................................8

# INTRODUCTION

X Corp.'s defense of its certificate of interested persons is heavy on indignation but hollow on the law and wrong on the facts. For all its bluster, X does not dispute that Elon Musk—his management choices, his personal views, and his public statements—will be at the center of this litigation. Nor could it, since X's own Amended Complaint says this case is about "Defendants' targeting of Elon Musk individually." Am. Compl. ¶ 27, ECF No. 37; *see also id.* ¶¶ 1, 4, 30, 32–36. It follows that the case will impact Tesla, too: after all, "Tesla *is* Elon."[1]

X entirely fails to show otherwise. It claims that Musk's purchase of Twitter did not impact Tesla's share price. ECF No. 78 at 12 ("Opp'n"). But Musk himself made the connection when he sold Tesla stock to finance the deal, and Tesla's most recent Form 10-K warns that Musk may sell more Tesla shares in the future to finance "other ventures"—namely, X.[2] X says that Musk is just a "minority shareholder" of Tesla. Opp'n 12. But Tesla itself says that Musk is its "Technoking"— a position Musk has compared to being a monarch—and its shareholders awarded him a kingly pay package just last month. Most tellingly, X cannot explain why, after Musk endorsed the antisemitic tweet central to this case, *Tesla's* share price fell. The headlines speak for themselves: "Advertisers Flee X, Tesla Shares Drop 4% as Elon Musk Retweets Antisemitic Post."[3]

This Court will soon be asked to decide whether Musk must testify about that market-moving statement, other inflammatory remarks, and business decisions about X's content controls. Undisputed facts—including statements from Musk and Telsa—lay bare the interest Tesla shareholders have in this case. X's attempt to shield the Court from that information falls flat.

---

[1] Faiz Siddiqui & Trisha Thadani, *Tesla shareholders approve Elon Musk's massive compensation package*, Wash. Post (last updated June 13, 2024, 7:28 p.m.), https://perma.cc/5T95-PVBG.

[2] Tesla, Inc., Annual Report (Form 10-K) at 28 (Jan. 26, 2024), https://perma.cc/ARH2-EUBG.

[3] Benjamin Lindsay, *Advertisers Flee X, Tesla Shares Drop 4% as Elon Musk Retweets Antisemitic Post*, The Wrap (Nov. 16, 2023), https://perma.cc/ZPR2-YUQX.

## ARGUMENT

**I.     X's certificate of interested persons is deficient because it deprives the Court of information necessary to an informed recusal decision.**

X agrees with the central premise of Defendants' motion: Local Rule 3.1(c)'s "purpose" is "to permit the Court to evaluate the need for recusal." Opp'n 7. It follows that a certificate of interested persons is deficient if an entity is sufficiently interested in the matter such that the presiding judge's ownership of stock in that entity would require recusal. Here, if the Court indeed owns stock in Tesla, recusal would be required under two separate provisions of the judicial recusal statue. *See* 28 U.S.C. § 455(a), (b)(4). By failing to disclose Tesla, however, X has deprived the Court of information it needed to make an informed recusal decision *sua sponte*.

*First*, § 455(b)(4) "requires mandatory recusal" whenever a judge "has a financial interest in the subject matter of the controversy"—"*no matter how small*." *Hill v. Hunt*, No. 3:07-CV-2020-O, 2012 WL 12985445, at *4 (N.D. Tex. May 15, 2012) (emphasis added) (citing *In re City of Houston*, 745 F.2d 925, 927 (5th Cir. 1984)). Because an investment in Tesla is, in large part, a bet on Musk's reputation and management choices—key issues in this case—ownership of Tesla stock would be disqualifying. *See* ECF No. 74 at 3–4 ("Mem."); *infra* § I.B.

*Second*, § 455(a) mandates that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned," 28 U.S.C. § 455(a). Such "recusal may be mandated even though no actual partiality exists." *In re Cont'l Airlines Corp.*, 901 F.2d 1259, 1262 (5th Cir. 1990). Under § 455(a), a judge must determine "whether a reasonable and objective person, knowing all of the facts, would harbor doubts concerning the judge's impartiality." *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 484 (5th Cir. 2003). X offers no argument whatsoever under § 455(a), and for good reason: X cannot dispute the public association between Musk—his persona, business practices, and public remarks—and the Tesla brand. That association would lead

2

a reasonable observer to "harbor doubts" about whether a judge with a financial interest in Musk could impartially adjudicate this case. *See* Mem. 18–23; *infra* § I.B.

      **A.**      **None of X's off-point authorities forecloses recusal as a matter of law.**

X devotes much of its brief to arguing that disclosure of Tesla is not required because the Court's ownership of Tesla stock could not, *as a matter of law*, require recusal. Opp'n 5–11. The Fifth Circuit has cautioned against this approach to recusal; rather, each recusal decision is "extremely fact intensive and fact bound, and must be judged on its unique facts and circumstances more than by comparison to situations considered in prior jurisprudence." *United States v. Jordan*, 49 F.3d 152, 157 (5th Cir. 1995). There is no substitute for that "extremely fact intensive" inquiry.

And X's scattershot arguments on the law are wrong. First, X's reliance on Rule 7.1's ten-percent threshold for disclosure is misplaced. *See* Opp'n 5, 8. By its plain text, Local Rule 3.1(c) requires disclosures "*in addition to* the information required by" Rule 7.1. L.R. 3.1(c) (emphasis added). X's suggestion that disclosure is required only where an entity "exercise[s] control" over a party thus ignores the full scope of its obligation. While Rule 7.1 limits disclosure to "parent corporation[s]" and those that have a minimum ownership interest in a party, Fed. R. Civ. P. 7.1(a)(1)(A), Local Rule 3.1 requires disclosure of *any* individual or entity that has *any* "financial[] interest[] in the outcome of the case," L.R. 3.1(c), including but not limited to those that "exercise control" over one of the parties. This Court has imposed a stricter requirement than Rule 7.1—one that accounts for § 455(b)(4)'s "financial interest in the subject matter" standard.

X's argument that Tesla lacks "the kind of 'financial interest'" in X "contemplated by the recusal statute," Opp'n 7, similarly misapprehends the law: The question for recusal is not whether *Tesla* has a "legal or equitable interest" in X that enables it to "exert[] . . . control over X," Opp'n 8, but whether the *judge* has a "legal or equitable interest" in "the subject matter in controversy," 28 U.S.C. § 455(d)(4)(i), 455(b)(4). A judge's financial interest in the "subject matter" of an action

3

may require recusal even where the judge lacks such interest "in a party." *Id.* If the Court indeed owns Tesla stock, the dispositive question under § 455(b) is thus whether decisions made in the course of this case may directly affect the value *of that Tesla stock*, not, as X seems to think, whether Tesla also owns X stock. *See* Opp'n 5, 7.

The cases X cites for its myopic approach do not show otherwise. Two of them concern recusal based on a financial interest "in a party" rather than "the subject matter in controversy." *See MDCM Holdings, Inc. v Credit Suisse First Boston Corp.*, 205 F. Supp. 2d 158, 162 (S.D.N.Y. 2002) ("[S]uch stock ownership does not constitute a disqualifying interest because it is not a 'financial interest *in* a party to the proceeding.'"); *Donoff v. Delta Air Lines*, No. 18-81258, 2020 WL 3268500, at *3 (S.D. Fla. Feb. 4, 2020) (quoting and applying *MDCM Holdings*). The third case does not concern recusal at all. *See Apodaca v. Young Am. Ins. Co.*, No. 1:18-CV-399, 2019 WL 6134718, at *2 (D.N.M. Nov. 19, 2019) (dismissing two defendants for lack of specific allegations). And the last case—the only binding authority in the bunch—supports recusal here. *See Tramonte v. Chrysler Corp.*, 136 F.3d 1025, 1030 (5th Cir. 1998). In *Tramonte*, the Fifth Circuit rejected the suggestion that recusal is required only where a judge's financial interest is "certain," explaining that uncertainty about recovery "affects the size but not the existence of a disqualifying financial interest." *Id.* It then remanded, instructing that if recusal was not required under § 455(b), the judge "should consider her recusal status under § 455(a)" to "guard against" the danger of appearing to "advance the interests" of her relatives or herself. *Id.* at 1030–31.

X also argues that recusal would be improper as a matter of law because this case's effects on Tesla will be "remote, contingent or speculative," *e.g.*, Opp'n 7, 9. This argument is conclusory: X repeats those terms without providing any factually grounded analysis of any of them. Opp'n 7. And they plainly do not apply here, as X's own authorities confirm. The few cases it cites that

4

actually concern the remoteness inquiry involve extremely attenuated links between the case's subject matter and the judge's financial interest. In *United States v. Sypher*, for instance, the judge owned stock in a bank, the bank advertised in the Louisville basketball arena, and the criminal defendant had threatened Louisville basketball coach Rick Pitino. No. 3:09-cr-0085, 2010 WL 5393849, at *1, 3–4 (W.D. Ky. Dec. 22, 2010), *aff'd*, 684 F.3d 622 (6th Cir. 2012). And in *In re Placid Oil Co.*, the petitioners argued that recusal was required where the judge had a financial interest in a nonparty bank because the case would "have a dramatic impact on the entire banking industry." 802 F.2d 783, 786 (5th Cir. 1986).[4] This case, by contrast, involves a civil plaintiff whose owner's conduct, management practices, and public statements are at the heart of the dispute and have a well-documented history of affecting the price of another company he famously leads as its "Technoking." Indeed, given that the Musk tweet that precipitated this case preceded an immediate drop in Tesla's share price, Mem. 14 & n.42, the suggestion that Musk's conduct and statements in the course of this litigation will only "remotely" affect Tesla's stock price is absurd.

Finally, X argues that recusal would be improper because Defendants' argument lacks a limiting principle. Opp'n 10–11. The Fifth Circuit has made clear that the fact-bound nature of recusal analysis supplies the necessary limits. *See, e.g.*, *Jordan*, 49 F.3d at 157 ("Unfortunately, but not surprisingly, no case is precisely on point."). At most, requiring X to disclose Tesla would suggest that judges owning stock in Tesla—the only publicly traded Musk entity—should recuse from future cases in which Musk himself is demonstrably central to the dispute. Given the uniquely strong association between Musk's personal brand and his "a one-of-a-kind constellation of companies," Mem. 7, that result is both entirely appropriate and unlikely to set broad precedent.

---

[4] The recusal statute expressly exempts investments "in a mutual or common investment fund," 28 U.S.C. § 455(d)(4)(I), the basis for recusal rejected in *Louisiana Corral Management, LLC v. Axis Surplus Insurance Company*, No. CV 22-2398, 2023 WL 2162382, at *3 (E.D. La. Feb. 22, 2023).

5

**B.      The facts confirm that Tesla's shareholders are or appear to be interested in the outcome of this litigation.**

X finally turns to the real question—whether Tesla and its shareholders are or appear to be "financially interested in the outcome of this case"—more than halfway through its brief. Opp'n 11. And X musters precious little to refute that interest.

First, X does not dispute several key facts at all. X does not dispute "the fact that Musk used funds from the sale of Tesla stock to purchase Twitter" or that "Tesla's share price dropped" that same day *Id.* at 12. It does not dispute that Musk employed Tesla engineers—including Tesla's director of software development, its director of Autopilot engineering, and its senior director of software engineering—to evaluate and manage Twitter's engineering team after Musk's acquisition of the platform. *See* Mem. 6, 8. It does not dispute that X is "spending millions of dollars on goods or services purchased from Tesla, although 'Tesla hasn't said what, exactly, Twitter is buying from the company.'" *Id.* at 7 (quoting an article). And it does not dispute that xAI is using X data in preparation for its deployment in Tesla vehicles. *See Id.* at 7. These facts are thus conceded, and they establish that Musk is leveraging his control of X to directly benefit Tesla and its shareholders, giving those shareholders a financial interest in this case and—insofar as the Court is one of those shareholders—creating a plain appearance of impropriety.[5]

Second, many facts X does purport to dispute are confirmed by Musk himself. X takes issue with the suggestion that it is "under Elon Musk's direct and personal control." Opp'n 12. But

---

[5] X's conclusory, self-serving declaration from its in-house counsel, ECF No. 78-1 (Decl. of Adeeb Sahar), refutes none of the relevant facts. While Sahar says that X is leasing office space in D.C. to Tesla under an "arms' length" agreement and separated by a "locked door," *id.* ¶¶ 6, 7, he does not attach that agreement, nor does he say whether Tesla is paying a fair market rate. Sahar's insistence, meanwhile, that the Tesla employees who moved to X "voluntarily chose" to do so, *id.* ¶ 8, contradicts neither Defendants' motion, Mem. 6, nor the redirection of Tesla resources to X— a practice documented in *Tornetta* and dozens of articles from various outlets, *see* Mem. 6, 9.

Musk told advertisers just a few days before the events giving rise to this case that "the buck stops with [him]."[6] X disputes whether "Tesla's share price dropped *because* Musk sold Tesla shares to invest in Twitter." *Id*. But Musk himself has repeatedly confirmed that connection, calling one $4 billion sale of Tesla stock necessary to "avoid an emergency sale of Tesla stock" in the "event that Twitter forces this deal to close and some equity partners don't come through,"[7] and telling Twitter employees that he sold Tesla stock so he could "save Twitter."[8] Notably, that sale contributed to a 52 percent drop in Tesla's valuation. Mem. 9 (collecting sources). X further suggests that Musk's role at Tesla is limited, as Musk is "only a minority shareholder" and Tesla "has its own board of directors." Opp'n 12. But the *Tornetta* court found the board's purported independence to be illusory based on Musk's statements describing Tesla as "my company," admitting that he has "the power to direct operational decisions at Tesla," and appointing himself "'Technoking'—a position he compared to being a monarch." *Tornetta v. Musk*, 310 A.3d 430, 504–06 (Del. Ch. 2024). And although X insists that Tesla's Form 10-K disclosures—which caution that *Musk's involvement with X is a risk to Tesla*—should be disregarded as boilerplate, Opp'n 12, they are sworn statements in a public regulatory filing. Tesla should be taken at its word—and it says that its "stock price [could] decline" if Musk is "forced to sell shares of [Tesla] common stock" because of his "investing in significant business or other ventures."[9]

Finally, X's attempt to discredit Defendants' evidence of Tesla's financial interest as "hearsay" or requiring improper "judicial notice of findings of fact from other proceedings," *id.* at

---

[6] Rebecca Kern, *Courting advertisers, Musk says the 'buck stops with me'*, Politico (Nov. 9, 2022), https://perma.cc/6JBS-X4EG.

[7] Rebecca Falconer & Hope King, *Musk Sells $3.95 Billion of Tesla Shares After Twitter Takeover*, Axios (Nov. 8, 2022), https://perma.cc/TKD2-5R8F (quoting a Musk tweet).

[8] Lora Kolodny, *Elon Musk tells Twitter staff he sold Tesla stock to save the social network*, CNBC (Nov. 10, 2022), https://perma.cc/Y6RM-4QLX.

[9] Tesla, Inc., Annual Report (Form 10-K) at 28 (Jan. 26, 2024), https://perma.cc/ARH2-EUBG.

10–11, rests on a faulty premise: Recusal analysis does not require evidence admissible at trial. Most recusal decisions must be made before such evidence exists. Nor are Defendants required to provide expert testimony with a "statistical analysis for market and industry price movements." *Id.* at 15. The straightforward question is whether Musk's statements and behavior relevant to this case affect Tesla's stock price, not whether they are the *only* factor that affects it. And X yet again fails to account for § 455(a): although X may dispute facts reported by dozens of reputable outlets and found by the Delaware chancery, a layperson could credit those sources, and thus reasonably could conclude that a judge owning Tesla stock has a conflict of interest here. *See Jordan*, 49 F.3d at 157 (declining to "collapse the appearance of impropriety standard under § 455(a) into a demand for proof of actual impropriety" (citation omitted)).

## II.     The motion to compel is procedurally proper.

With little to say in defense of its faulty disclosures, X falls back on the argument that its failure to comply with the Local Rules is immune from challenge. But a motion is an appropriate way of enforcing compliance with Local Rule 3.1(c). X ought to know as much: in just the past 13 months, it has been compelled to supplement disclosures under the Northern District of California's analogous local rule, Rule 3-15, in two separate cases.[10] Both orders were granted on motion from a party. And in one of the two cases, X filed its revised disclosure on June 26, 2024.[11]

---

[10] Ex. A, Order Requiring Defs. to File Certification in Compliance with Local Rule 3-15, *McMillian v. Musk*, No. 3:23-cv-3461 (N.D. Cal. May 29, 2024), ECF No. 90; Ex. B, Order Granting Pls.' Admin. Mot. Directing Defs. to Supplement Corp. Disclosure Statement, *Anoke v. Twitter, Inc.*, No. 3:23-cv-2217 (N.D. Cal. June 6, 2023), ECF No. 35.

[11] *See* Ex. C, Defs.' Supplemental Rule 7.1 Corp. Disclosure Statement & Certification Pursuant to Local Rule 3-15, *McMillian v. Musk*, No. 3:23-cv-03461 (N.D. Cal. May 29, 2024), ECF No. 95-3. X's disclosure in *McMillian* confirms that its disclosures in this case are woefully inadequate. Although the *McMillian* disclosure is redacted, the redacted list of financially interested parties spans five pages. X cannot plausibly insist that its one-sentence disclosure here provided the Court with information sufficient "to evaluate the need for recusal," Opp'n 7, where complying with an identical requirement in another ongoing case required five pages.

8

It is therefore puzzling that, just two weeks later, X represents to this Court that there is "no party enforcement mechanism" for such disclosures. Opp'n 4. Further, Rule 3.1(c) is the local supplement to Federal Rule of Civil Procedure 7.1. *Nieves v. John Bean Techs. Corp.*, No. 3:13-CV-4059-D, 2014 WL 2587577, at *2 n.5 (N.D. Tex. June 10, 2014); *see also* Opp'n 4. And motions to compel compliance with Rule 7.1 are both common and frequently granted.[12]

There is no principled reason to treat a motion under Local Rule 3.1(c) any differently than other courts treat motions under analogous local rules or Rule 7.1. This Division has instructed litigants that "the key to successful practice in the Fort Worth Division of the United States District Court for Northern District of Texas" is "to know and follow … the Local Rules." *Cleary v. Am. Airlines Inc.*, No. 4:21-CV-135-P, 2021 WL 3721457, at *1 (N.D. Tex. Feb. 18, 2021). Permitting motions to compel under Local Rule 3.1(c) furthers compliance with the Local Rules. Prohibiting such motions, by contrast, would lead to odd consequences. What is a party to do when it learns that the opposing party has failed to make a required disclosure to the Court, if the opposing party refuses to correct the defect? X does not say.

**III.    The Court should not award fees.**

X's request for fees should be dismissed out of hand. X relies on Rule 37 to establish the possibility of fees, Opp'n, 16, yet concedes elsewhere that Rule 37 "does not apply," *Id.* at 4–5.

Even if fees were procedurally permitted, there would be no factual basis for them. At the very least, there is a serious question about whether Musk's highly unusual management practices mean Tesla must be disclosed as an interested party under Local Rule 3.1's broad mandate. And a

---

[12] *See, e.g.*, *Carr v. IF&P Holding Co. LLC*, No. 22-480, 2024 WL 1675185, at *1, 5–6 (E.D. La. Apr. 18, 2024); *Driver Opportunity Partners I, LP v. Ameriserv Fin., Inc.*, No. 3:22-CV-237, 2023 WL 4711158, at *1, 4 (W.D. Pa. July 24, 2023); *Steel Erectors, Inc. v. AIM Steel Int'l, Inc.*, 312 F.R.D. 673, 677 (S.D. Ga. 2016).

motion testing that possibility is properly directed at X rather than the Court because the Court may not in fact own Tesla stock and because X's lack of disclosure deprived the Court of a chance to evaluate a potential conflict in the first instance. Mem. 3 n.2. The motion's timing also is appropriate. The motion came on the heels of X's befuddling assertion that discovery into Musk is off limits because he "is not a plaintiff or defendant in this litigation," *id.* at 22, alongside a surge of articles published in May and June reporting on Musk's blurring of many lines between his two most visible companies, *e.g.*, *id.* at 7–8 & nn.18–24; *cf. id.* at 5 n.11. Contrary to X's suggestion, the motion was not prompted by any "adverse ruling." Opp'n 16. This Court has resolved just two contested motions in the case—denying Defendants' motion to stay discovery, which the motion itself acknowledged as discretionary relief, *see* ECF No. 43 at 4, and granting in part and denying in part X's discovery motion in a 3-page order, *see* ECF No. 65 at 2–3 (significantly limiting X's discovery requests).

The Local Rules impose the strict disclosure requirement at issue so that judges of this court can identify and resolve conflicts of interest without any party involvement. But the system works only when parties comply with the Local Rules. X did not, so judicial relief is necessary

## CONCLUSION

The Court should order X Corp. to file a certificate of interested persons that identifies (i) Tesla, Inc. and its shareholders as interested persons, as well as (ii) any other persons or entities having a financial interest in this matter that X Corp. has not previously disclosed.


Dated: July 22, 2024

Respectfully submitted,
*/s/ Andrew LeGrand*

| | |
|---|---|
| GIBSON, DUNN & CRUTCHER LLP<br>Andrew LeGrand (TX 24070132)<br>2001 Ross Avenue, Suite 2100<br>Dallas, TX 75201<br>T: (214) 698-3100<br>F: (214) 571-2960<br>alegrand@gibsondunn.com<br><br>Theodore J. Boutrous, Jr.* (CA 132099)<br>333 South Grand Avenue<br>Los Angeles, CA 90071<br>T: (213) 229-7000<br>F: (213) 229-7520<br>tboutrous@gibsondunn.com<br><br>Amer S. Ahmed* (NY 4382040)<br>200 Park Avenue<br>New York, New York 10166<br>T: (212) 351-4000<br>F: (212) 351-4035<br>aahmed@gibsondunn.com | ELIAS LAW GROUP LLP<br>Abha Khanna* (WA 42612)<br>1700 Seventh Avenue, Suite 2100<br>Seattle, WA 98101<br>T: (206) 656-0177<br>F: (206) 656-0180<br>akhanna@elias.law<br><br>Aria C. Branch* (DC 1014541)<br>Christopher D. Dodge* (DC 90011587)<br>Jacob D. Shelly* (DC 90010127)<br>Samuel T. Ward-Packard* (DC 9005484)<br>250 Massachusetts Avenue NW, Suite 400<br>Washington, DC 20001<br>T: (202) 968-4490<br>F: (202) 986-4498<br>abranch@elias.law<br>cdodge@elias.law<br>jshelly@elias.law<br>swardpackard@elias.law<br><br>* Admitted *pro hac vice* |

*Counsel for Defendants Media Matters for America, Angelo Carusone, and Eric Hananoki*

**CERTIFICATE OF SERVICE**

On July 22, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Andrew LeGrand*
Andrew LeGrand