UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| X CORP., | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-01175-O |
| | § | |
| MEDIA MATTERS FOR AMERICA, et al., | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

## ORDER

Before the Court are Defendants Media Matters for America ("Media Matters"), Eric Hananoki ("Hananoki"), and Angelo Carusone's ("Carusone") Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, and Failure to State a Claim (ECF No. 40) and Brief in Support (ECF No. 41), filed March 8, 2024; Plaintiff's Response in Opposition (ECF No. 45), filed March 29, 2024; and Defendants' Reply (ECF No. 51), filed April 12, 2024. After examining the relevant case law, the Court determines that Defendants' Motion to Dismiss is **DENIED.**

## I.     BACKGROUND[1]

On November 20, 2023, X Corp. ("Plaintiff" or "X") brought this action against Media Matters, Hananoki, and Carusone (collectively, "Defendants") for interference with contract, business disparagement, and interference with prospective economic advantage. Pursuant to these claims, Plaintiff alleges that Defendants knowingly and maliciously fabricated side-by-side images of various advertisers' posts on Plaintiff's social media platform X depicted next to neo-Nazi or

---

[1] Unless otherwise cited, the Court's recitation of the facts is taken from Plaintiff's Amended Complaint. *See* Pl.'s Am. Compl., ECF No. 37. At this stage, these facts are taken as true and viewed in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).

other extremist content, and portrayed these designed images as if they were what the average user experiences on the X platform. Plaintiff asserts that Defendants proceeded with this course of action in an effort to publicly portray X as a social media platform dominated by neo-Nazism and anti-Semitism, and thereby alienate major advertisers, publishers, and users away from the X platform, intending to harm it.

## II.   LEGAL STANDARDS

### A.  12(b)(2) – Personal Jurisdiction

When a nonresident defendant files a motion to dismiss for lack of personal jurisdiction, the burden of proof is on the plaintiff as the party seeking to invoke the district court's jurisdiction. *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989). "[T]he party who bears the burden need only present a *prima facie* case for personal jurisdiction; proof by a preponderance of the evidence is not required." *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545–46 (5th Cir. 1985). Furthermore, "on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor." *Id.* at 546.

"A federal district court sitting in diversity may exercise personal jurisdiction over a [nonresident] defendant if (1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution." *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010) (citation omitted). "Because Texas's long-arm statute reaches to the constitutional limits, the question [a federal court] must resolve is whether exercising personal jurisdiction over the defendant offends due process." *Id.*

The exercise of "[p]ersonal jurisdiction comports with due process when first, the defendant has the requisite minimum contacts with the forum state and second, requiring the defendant to submit to jurisdiction in the forum state would not infringe on 'traditional notions of fair play and substantial justice.'" *Companion Prop. & Cas. Ins. v. Palermo*, 723 F.3d 557, 559 (5th Cir. 2013) (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 105 (1987); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). When a nonresident defendant "purposefully avail[s] [it]self of the benefits of the forum state, so that [it] 'should reasonably anticipate being haled into court' there," the defendant's conduct establishes minimum contacts. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

"There are two types of minimum contacts: contacts that give rise to specific personal jurisdiction and those that give rise to general jurisdiction." *Clemens*, 615 F.3d at 378. General jurisdiction exists when a defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co.*, 326 U.S. at 317). "Specific jurisdiction exists when the defendant has purposefully directed his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities." *Clemens*, 615 F.3d at 378 (alteration in original) (internal quotation marks and citations omitted). Specific personal jurisdiction requires that a party "purposefully directed its activities at the forum state" and the Court has jurisdiction over claims "deriving from, or connected with" those activities. *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 102 (5th Cir. 2018).

**B.  12(b)(3) – Venue**

Unless provided for by another statute, venue is governed by the general venue statute. 28 U.S.C. § 1391(a). Under § 1391, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). If venue is proper in the district where the plaintiff files the claim, then even if there is a venue where more, or even the most, substantial activities took place, the plaintiff's chosen venue does not necessarily become improper. *Tex. Marine & Brokerage, Inc. v. Euton*, 120 F. Supp. 2d 611, 612 (E.D. Tex. 2000).

A court "must accept as true all well-pleaded allegations in the complaint and resolve all conflicts in the plaintiff's favor," and, in doing so, is "permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Lawson v. U.S. Dep't of Justice*, 527 F. Supp. 3d 894, 896 (N.D. Tex. 2021) (quoting *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009)). In determining whether venue is proper, the Court may examine additional evidence beyond the complaint. *Ambraco*, 570 F.3d at 238. Additionally, "the court may find a plausible set of facts by considering any of the following: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Lane ex rel. Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (internal quotation marks and citations omitted). When a case is filed in a division or district of improper venue, the district court may either dismiss the case or transfer it to any district or division of proper venue. 28 U.S.C. § 1406(a).

4

### C.  12(b)(6) – Failure to State a Claim

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Rule "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy this standard, the defendant may file a motion to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*, 550 U.S. at 570. A claim is facially plausible when the plaintiff pleads factual content that allows the court to reasonably infer that the defendant is liable for the alleged misconduct. *Ashcroft*, 556 U.S. at 678. Unlike a "probability requirement," the plausibility standard instead demands "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Where a complaint contains facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

When reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the Court is not bound to accept legal conclusions as true. *Iqbal*, 556 U.S. at 678–79. To avoid dismissal, pleadings must show specific, well-pleaded facts rather than conclusory allegations. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to

5

relief." *Iqbal*, 556 U.S. at 679. A court ruling on a motion to dismiss "may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citations and internal quotation marks omitted).

## III.   ANALYSIS

### A.   12(b)(2) – Personal Jurisdiction

#### 1.   Overview

For specific jurisdiction to exist here, Defendants must have targeted the conduct that is the basis for this lawsuit at Texas. *Diece-Lisa Indus. v. Disney*, 943 F.3d 239, 250 (5th Cir. 2019). A fair reading of Plaintiff's complaint alleges all three Defendants committed the tortious conduct by engaging in an "ideologically driven crusade" to damage Plaintiff by targeting Plaintiff's blue-chip advertisers with manipulated information designed to drive them from doing business with Plaintiff.[2] The Amended Complaint explains that these three Defendants, and others, orchestrated a plan to manipulate Plaintiff's platform to align ads from Plaintiff's customers with inflammatory posts.[3] The Amended Complaint alleges that in furtherance of this plan, Defendant Media Matters posted an article written by Defendant Hananoki (the "Hananoki Original article") which described the results of this manipulation.[4] The following day, Media Matters published another article written by Hananoki (the "Hananoki Second article") detailing its report of this manipulation.[5] The

---

[2] Am. Compl. ⁋ 2, ECF No. 37.

[3] *Id.* at ⁋⁋ 7–12, 15–16.

[4] Eric Hananoki, *As Musk Endorses Antisemitic Conspiracy Theory, X has been Placing Ads for Apple, Bravo, IBM, Oracle, and Xfinity next to Pro-Nazi Content*, MEDIA MATTERS FOR AM. (Nov. 16, 2023, 10:05 AM) https://www.mediamatters.org/twitter/musk-endorses-antisemitic-conspiracy-theory-x-has-been-placing-ads-apple-bravo-ibm-oracle.

[5] Eric Hananoki, *X is Placing Ads for Amazon, NBA Mexico, NBCUniversal, and Others Next to Content with White Nationalist Hashtags*, MEDIA MATTERS FOR AM. (Nov. 17, 2023, 12:16 AM) https://www.mediamatters.org/twitter/x-placing-ads-amazon-nba-mexico-nbcuniversal-and-others-next-content-white-nationalist.

Court refers to these two articles as the "Hananoki articles." The body of the Hananoki articles targeted, among others, Oracle, a Texas-based company that placed ads on Plaintiff's platform.[6] Indeed, the Hananoki Original article included Oracle in the headline.[7] Plaintiff also alleges that this "crusade" targeted its blue-chip advertisers which included Oracle and AT&T, Texas-based companies.[8] The Amended Complaint alleges that Defendant Carusone furthered this plan by publicly pressuring advertisers to take a stand against Plaintiff and then highlighted the Hananoki articles to achieve the goal of pressuring advertisers to cease doing business with Plaintiff.[9]

This targeting of the alleged tortious acts at the headquarters of Texas based companies is sufficient to establish specific jurisdiction in Texas. *See Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 318 (5th Cir. 2021) ("The key question, under *Calder*, is whether the forum state was 'the focal point of the [alleged libel] and of the harm suffered.'" (quoting *Calder v. Jones*, 465 U.S. 783, 789 (1984))). As just described and as set out below, each Defendant engaged in the alleged tortious acts which targeted harm in, among other places, Texas.

### 2. Defendant Hananoki

First, there is no question that the Hananoki Original article targeted, among other places, Texas. In this article, Defendant Hananoki included Oracle in the headline and described how a Media Matters investigative report found that an Oracle ad occurred next to posts that tout Hitler and the Nazi Party.[10] The following day Hananoki published the Hananoki Second article that again described the Oracle ad in connection with the Media Matters investigative report.[11]

---

[6] Am. Compl. ¶ 46, ECF No. 37.
[7] Hananoki, *supra* note 4.
[8] *Id.* at ¶¶ 24–25, 34, 66.
[9] *Id.* at ¶¶ 6–7, 17, 30–38, 46–64.
[10] *Id.* at ¶ 46.
[11] Hananoki, *supra* note 5.

Plaintiff's claims are based, in significant part, on the alleged manipulated report described in the Hananoki articles.

Hananoki has provided an affidavit that attests that he "was not aware of any connection—and continue[s] to believe the articles have no connection—to Texas, Texas residents, Texas users of X, or X's alleged operations in Texas."[12] He also says Texas is neither the subject of nor is mentioned in the articles.[13] That Hananoki disclaims he was not "aware" the Hananoki articles had a connection to Texas, and continues to "believe" they have no connection to Texas, is conclusory and insufficient to counter Plaintiff's allegations.

Even if not conclusory, these attestations do not disclaim that Hananoki knew Oracle and AT&T were based in Texas, as alleged in the complaint.[14] Accordingly, those allegations are taken as true. *See Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins.*, 921 F.3d 522, 539 (5th Cir. 2019) (explaining that at the motion to dismiss stage, the court "must accept as true the uncontroverted allegations in the complaint and resolve in favor of [plaintiff] any factual conflicts" (quoting *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999))). Neither does he deny that he knew of the alleged manipulation and that he and his co-defendant's efforts were designed to drive blue-chip advertisers away from Plaintiff's platform. These allegations are therefore also taken as true at this stage. Thus, it is taken as true that Hananoki knew Oracle and AT&T were based in Texas, advertised on the X platform, and that the Hananoki articles targeted them by describing an investigative report that had been deceptively manipulated in order to drive them, and other advertisers, away from the X platform.

---

[12] Defs.' App. Ex. A ⁋ 10, ECF No. 42.
[13] *Id.* at ⁋ 11.
[14] Am. Compl. ⁋⁋ 24, 29, ECF No. 37.

Accordingly, the evidence taken as true shows Hananoki targeted his conduct at Texas.[15] Because Defendant Hananoki "purposefully directed [his] activities" at Texas, and Plaintiff's claims against Hananoki are "deriving from, or [are] connected with" those activities, specific jurisdiction exists. *Sangha*, 882 F.3d at 101 (5th Cir. 2018) (citations omitted).[16]

### 3. Defendant Carusone

Next, Defendant Carusone's conduct as alleged also targeted Texas. It is alleged that Carusone's efforts included joining the strategy to target blue-chip advertisers, like Texas-based Oracle and AT&T, with manipulated information.[17] Plaintiff alleges Carusone participated in the "crusade" with Hananoki and Media Matters when he appeared on television shows a number of times discussing the importance of advertisers to Plaintiff's business model and advocating that advertisers should cease doing business with Plaintiff if there is a deluge of "unmoderated right-wing hatred and misinformation."[18] Then, following the publication of the Hananoki articles, Carusone again appeared on television and said advertisers are leaving on the heels of the investigative report referenced in the Hananoki articles and other Media Matters articles, while pictures of the Hananoki articles are displayed by the television host.[19] These facts as alleged describe a concerted effort by Carusone and the other Defendants to target Plaintiff's blue-chip advertisers. By engaging in this jointly undertaken activity, and then using the Hananoki articles

---

[15] Hananoki also states in his affidavit that he did not travel to Texas for the articles, did not use Texas sources for them, and did not contact advertisers or companies mentioned in the articles about advertising. Plaintiff has not presented evidence disputing these assertions so Plaintiff's allegations that he did these things are not taken as true. *See Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins.*, 921 F.3d 522, 539 (5th Cir. 2019).

[16] Exercising personal jurisdiction over Hananoki does not offend traditional notions of fair play and substantial justice. *See infra* Section III.A.5.

[17] Am. Compl. ¶ ¶ 24, 46, ECF No. 37.

[18] *Id.* at ¶ 32.

[19] *Id.* at ¶¶ 13, 17, 24, 30–31, 34–35, 37, 46.

9

(which specifically targeted Oracle) during television interviews, Carusone targeted his acts at Texas.

Notably, Carusone provides an affidavit testifying that he did not contact advertisers in Texas regarding the Hananoki articles, did not seek donations to fund Defendants work against Plaintiff from Texas donors, and was not involved with the production of the articles. [20] Like Hananoki, Carusone has not denied that he knew of the alleged manipulation, knew Oracle and AT&T were based in Texas, and engaged in jointly undertaken activity to drive Plaintiff's advertisers away. These facts are therefore taken as true and, along with Carusone's television appearances, are specific examples of his role in the Defendants' strategy to harm Plaintiff by pressuring advertisers to leave the X platform. In addition, during his television appearances he engaged with the publication of the Hananoki articles and the investigative report. All of this shows he intentionally directed his conduct at advertisers in Texas. These acts are sufficient to establish personal jurisdiction.[21]

### 4. Defendant Media Matters

To determine whether Media Matters is subject to personal jurisdiction here, the Court must first decide the nature of its website. If the website is passive, specific jurisdiction does not exist here. *Johnson*, 21 F.4th at 318. If the website is interactive, the traditional jurisdictional analysis applies. *Id.* A website is interactive "if the site interacts with its visitors, send[s] *and* receiv[es] information from them . . . ." *Id.* (emphasis in original).

---

[20] Plaintiff offered no evidence to contradict these assertions. Plaintiff's allegations asserting Carusone did these things are therefore not taken as true. *See Halliburton*, 921 F.3d at 539.

[21] Exercising personal jurisdiction over Carusone does not offend traditional notions of fair play and substantial justice. *See infra* Section III.A.5.

Defendant's affidavit describes the website as interactive.[22] Since the website is interactive, the traditional jurisdictional rules apply. *Johnson*, 21 F.4th at 319 (website is interactive if it solicits information, makes purchases, and click on ads.) These rules seek to determine whether Plaintiff's suit results from Media Matters purposefully targeting Texas. *Id.* For the reasons stated above, Media Matters targeted Texas. It was part of a strategy to target Plaintiff's blue-chip advertisers, including Oracle and AT&T, Texas-based companies,[23] in furtherance of this strategy it published the Hananoki articles, and it published other articles pressuring the blue-chip advertisers, all to pressure blue-chip advertisers to cease doing business with Plaintiff.[24] Finally, the inference from Media Matters' affidavit is that Media Matters also emailed the Hananoki articles to Texans, and Plaintiff's lawsuit arises out of this conduct.[25]

### 5. Traditional Notions of Fair Play and Substantial Justice

In summary, these alleged acts are the basis of Plaintiff's claims, and they show Defendants targeted, among other blue-chip advertisers, Texas-based Oracle and AT&T.[26] Further, Defendants are not being haled into Texas based on untargeted acts. The alleged conduct was directed at two blue-chip advertising Texas companies in a way that is different than would randomly or fortuitously affect other states. A defendant who targets a Texas company with tortious activity has fair warning that it may be sued there. *Revell v. Lidov*, 317 F.3d 467, 476 (5th Cir. 2002) ("if you are going to pick a fight in Texas, it is reasonable to expect that it be settled there.").

---

[22] Defs.' App. Ex. A ⁋ 18, ECF No. 42. "The Media Matters website allows visitors to: (1) read articles; (2) apply for open jobs; (3) view an email address for sending information about factual errors; (4) view the organization's contact information; (5) donate; (6) join campaigns and petitions; and (7) subscribe to Media Matters' emails using a signup box in the footer of any page on the website or on the form linked on the Contact Us page."
[23] Am. Compl. ⁋ 24, ECF No. 37.
[24] *Id.* (explaining Oracle and AT&T are blue-chip advertisers based in Texas).
[25] *See* Defs.' App. Ex. A ⁋ 16, ECF No. 42 (admitting that some of Media Matters' subscribers had "provided address information indicating they were based in Texas.").
[26] Am. Compl. ⁋⁋ 24, 46–47, 54, ECF No. 37.

"Once a plaintiff has established minimum contacts, the burden shifts to the defendant to show the assertion of jurisdiction would be unfair." *Wien Air Alaska Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999). "To show that an exercise of jurisdiction is unreasonable once minimum contacts are established, the defendant must make a 'compelling case' against it." *Id.* (quoting *Burger King Corp.*, 471 U.S. at 477 (1985)). Defendants have failed to do so. Exercising personal jurisdiction in Texas comports with "substantial justice." *Revell*, 317 F.3d at 470. Accordingly, based on the foregoing, Defendants are subject to specific jurisdiction in Texas.

### B.  12(b)(3) – Venue

Defendants also seek to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(3).[27] To maintain venue in this district, Plaintiff must show a substantial part of the events giving rise to the claims occurred here. The question "is not whether a substantial part of the events took place elsewhere; rather, the question is whether 'a substantial part of the events or omissions giving rise to the claim occurred'" in the Northern District of Texas. *Stampley v. RCNI Freight, LLC*, No. 3:23-CV-1625-B, 2023 WL 5333273, at *1 n.2 (N.D. Tex. Aug. 18, 2023) (citing 28 U.S.C. § 1391(b)(2)).

Plaintiff sufficiently alleges a substantial part of the events occurred within the Northern District of Texas. Plaintiff alleges that Defendants waged a campaign against X's blue-chip advertisers. It alleged AT&T, headquartered in the Northern District, was one of its blue-chip advertisers targeted by Defendants.[28] The gravamen of Plaintiff's claims are that Defendants intended to negatively impact Plaintiff's blue-chip clients, including a client based in this district. This sufficiently establishes that a substantial part of the events at issue in this lawsuit occurred here. *See Coastal Lab'ys, Inc. v. Jolly*, 502 F. Supp. 3d 1003, 1023 (D. Md. 2020), (holding venue

---

[27] Defendants do not seek a transfer of venue. Defs.' Brief in Supp. Mot. to Dismiss 11, ECF No. 41.
[28] Am. Compl. ¶¶ 24, 29, 34, ECF No. 37.

was proper when "Plaintiffs plainly allege that Defendants' tortious action were aimed at Plaintiffs' customers in [the forum district]"); *see also Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 493 (5th Cir. 2018) (holding that communications sent to Texas can constitute a substantial part of the events giving rise to the plaintiff's claims); *Long v. Grafton Executive Search, LLC*, 263 F. Supp. 2d 1085, 1090 (N.D. Tex. 2003) (categorizing a tortious e-mail sent to Texas recipients as a substantial Texas-based event for purposes of transactional venue). Plaintiff has therefore carried its burden to establish venue in the Northern District of Texas.

### C.  12(b)(6) – Failure to State a Claim

Finally, Defendants argue that Plaintiff has failed to state a claim for all three causes of action. As the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff, for the reasons that follow, Defendants' Motion is **DENIED**. *Sonnier*, 509 F.3d at 675.

#### 1.  Tortious Interference with Contract

To allege a *prima facie* case of tortious interference with existing contractual relations, a plaintiff must plead "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Nix v. Major League Baseball*, 62 F.4th 920, 934 (5th Cir.) (quoting *Prudential Ins. of Am. v. Fin. Rev. Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000)), *cert. denied*, 144 S. Ct. 165 (2023).

Plaintiff has provided sufficient allegations to survive dismissal. Plaintiff has factually alleged: the existence of contracts subject to interference; intentional acts of interference; and proximate causation. It cannot reasonably be disputed that Plaintiff has named parties who

contracted for paid ads on X.[29] Media Matters' reporting has acknowledged as much.[30] Plaintiff has therefore pled facts supporting this element.

Next, Defendants argue that because there was no breach of contract there can be no interference. This misstates Texas law, since "termination of an at-will contract can give rise to a tortious interference claim, even if that termination was not a breach." *Off. Brands, Inc. v. Roc Nation Sports, LLC*, No. 3:15-CV-2199-B, 2015 WL 8915804, at *4 (N.D. Tex. Dec. 15, 2015). Therefore, Plaintiff has plausibly alleged interference to their advertising contracts. Additionally, at this stage the pleading adequately alleges facts that support the inference the actions were done with the requisite intent. *See Travelhost, Inc. v. Brady*, No. 3:11-CV-454-M-BK, 2013 WL 4475057, at *5 (N.D. Tex. Aug. 21, 2013) (denying summary judgment on a tortious interference claim when the defendant was "involved in persuading" customers to end their business relationship with plaintiff).

Finally, Plaintiff plausibly alleges that Defendants proximately caused their harm. Proximate cause requires proof of both cause-in-fact and foreseeability. Defendants present a compelling alternative version of events to Plaintiff's.[31] However, the Court will not "choose among competing inferences" at this stage. *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1340 (Fed. Cir. 2012). Accordingly, Plaintiff's Amended Complaint alleges sufficient facts to state a claim of tortious interference with contract.[32]

---

[29] *See* Am. Compl. ⁋ 8, ECF No. 37 (citing Media Matters article titled "*Here Are the Companies Pulling Ads from X.*").

[30] Media Matters Staff, *Here Are the Companies Pulling Ads from X*, MEDIA MATTER FOR AM. (Nov. 17, 2023, 4:45 PM), https://www.mediamatters.org/twitter/here-are-companies-pulling-ads-x.

[31] Defs.' Brief in Supp. Mot. to Dismiss 18, ECF No. 41.

[32] For example, IBM was named directly by Media Matters in the Hananoki Original article. Additionally, IBM referenced the Hananoki Original article when it pulled its advertising. Am. Compl. ⁋ 14 & n.7. These facts are sufficient to draw the inference that the Hananoki articles were the proximate cause of Plaintiff's loss.

## 2.  Business Disparagement

The elements of a business disparagement claim are: "(1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) resulting in special damages to the plaintiff." *Vendever LLC v. Intermatic Mfg. Ltd.*, No. 3:11-CV-201-B, 2011 WL 4346324, at *4 (N.D. Tex. Sept. 16, 2011) (quoting *Forbes v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003)). Defendants argue this claim does not survive because: (1) Defendants' statements were true; (2) Defendants did not act with actual malice; and (3) Plaintiff has failed to allege special damages.[33]

First, construing the facts pled by Plaintiff in the light most favorable to it, that Defendants manipulated and intended to deceive Plaintiff's advertisers is sufficient to support the first element. Plaintiff alleges Defendants acted with malice and without privilege by asserting Defendants' reporting was false and the "frequency and tenor of Media Matters' statements disparaging X and the safety of advertising on the X platform" supports an inference of actual malice.[34] And finally, Plaintiff has pled a plausible claim regarding special damages in that Defendants tortious acts undermined "advertisers' faith in X Corp.'s abilities to monitor and curate content."[35]

Understandably, many of these facts are disputed. While Defendants again point to other explanations, the Court will not decide between the two inferences at this stage. *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d at 1340.

---

[33] Defs.' Brief in Supp Mot. to Dismiss. at 20–22, ECF No. 41.
[34] Pl.'s Resp. to Mot. to Dismiss 23, ECF No. 45.
[35] Am. Compl. ¶ 79 ECF No. 37.

### 3.   Tortious Interference with Prospective Economic Advantage

Finally, Defendants argue that Plaintiff has not alleged an independent tortious act, which is an essential element of its tortious interference with prospective economic advantage claim.[36] However, business disparagement is independently tortious. *See generally Cooper v. Harvey*, No. 3:14-CV-4152-B, 2016 WL 4427481, (N.D. Tex. Aug. 21, 2016); *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762 (Tex. 1987); *Teel v. Deloitte & Touche LLP*, No. 3:15-CV-2593-G, 2015 WL 9478187 (N.D. Tex. Dec. 29, 2015). To survive a motion to dismiss for failure to state a claim a plaintiff need only allege that the defendant has "do[ne] something independently unlawful or tortious," that would be "actionable under a recognized tort." *United Biologics, L.L.C. v. Allergy & Asthma Network/Mothers of Asthmatics, Inc.*, 819 F. App'x 204, 211 (5th Cir. 2020) (quoting *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001)). Plaintiff has done that. Thus, Plaintiff has sufficiently pled a plausible claim regarding tortious interference with economic advantage.

## IV.   CONCLUSION

Because the Court has personal jurisdiction over Defendants, venue is proper, and Plaintiff has properly pled its claims, Defendants' Motion to Dismiss is **DENIED.**

**SO ORDERED** on this **29th day** of **August, 2024**.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

---

[36] Defs.' Brief in Supp. Mot. to Dismiss 24, ECF No. 41 ("The third cause of action does not plausibly allege any independently tortious or unlawful act committed by Defendants.").

16