## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **X CORP**., a Nevada corporation, | § § § | |
| *Plaintiff,* | § § | |
| vs. | § § | **Case No. 4:23-cv-01175-O** |
| **MEDIA MATTERS FOR AMERICA,** a Washington, D.C. non-profit corporation, **ERIC HANANOKI**, and **ANGELO CARUSONE**, | § § § § § | |
| *Defendants.* | § § | |

---

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO COMPEL
## PRODUCTION OF DONOR-RELATED DOCUMENTS

---

JUDD E. STONE II
CHRISTOPHER D. HILTON
ARI CUENIN
MICHAEL R. ABRAMS
ALEXANDER M. DVORSCAK
**STONE | HILTON PLLC**
600 Congress Ave., Suite 2350
Austin, TX 78701
(737) 465-3897

JOHN C. SULLIVAN
**S|L LAW PLLC**
610 Uptown Boulevard
Suite 2000
Cedar Hill, TX 75104
(469) 523-1351

*COUNSEL FOR PLAINTIFF*

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ........................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND..................................................... 2

ARGUMENT AND AUTHORITIES............................................................................. 4

    I.   Defendants waived any arguable First Amendment protection by refusing to provide a privilege log regarding donor information.................................................................... 4

        A.  Defendants' existing assertions of privilege are insufficient................................ 4

        B.  Defendants failed to submit a timely privilege log................................................ 6

        C.  Defendants have refused to comply with the Court's order ................................. 8

        D.  Defendants failed to put forward evidence substantiating their First Amendment claim...................................................................................................................... 8

    II.   Defendants' assertion of First Amendment privileges fails on the merits. .............. 10

        A.  The First Amendment does not bar non-state actor discovery. ........................... 10

        B.  The First Amendment does not protect Defendants' asserted interests................ 14

CONCLUSION.............................................................................................................. 18

CERTIFICATE OF SERVICE ...................................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*Ams. for Prosperity Found. v. Bonta,*
  594 U.S. 595 (2021) ................................................................................. 10, 13, 15

*Buckley v. Valeo,* 424 U.S. 1 (1976) ....................................................................... 9, 15

*Burch v. Regents of the University of Cal.,*
  No. CIV. S-04-0038 WBS GGH, 2005 WL 6377313 (E.D. Cal. Aug. 30, 2005) ................. 7, 8

*Cardenas v. Dorel Juvenile Grp., Inc.,*
  231 F.R.D. 616 (D. Kan. 2005) ................................................................................. 5

*Crow v. ProPetro Servs., Inc.,*
  No. 7:15-cv-00149, 2016 WL 9776368 (N.D. Tex. June 6, 2016) ........................................ 6

*Cyber Promotions, Inc. v. Am. Online, Inc.,*
  948 F. Supp. 436 (E.D. Pa. 1996) ............................................................................. 13

*Dakota Energy Coop., Inc. v. E. River Elec. Power Coop., Inc.,*
  No. 4:20-CV-04192-LLP, 2021 WL 3862131 (D.S.D. Aug. 30, 2021) ................................ 13

*Edwards v. Habib,*
  397 F.2d 687 (D.C. Cir. 1968) ................................................................................. 12

*Eureka Fin. Corp. v. Hartford Accident & Indem. Co.,*
  136 F.R.D. 179 (E.D. Cal. 1991) .............................................................................. 5

*Fla. State Conf. of Branches & Youth Units of NAACP v. Lee,*
  568 F. Supp. 3d 1301 (S.D. Fla. 2021) ...................................................................... 16

*Grandbouche v. Clancy,*
  825 F.2d 1463 (10th Cir. 1987) ............................................................................... 13

*Gueye v. Mike Bloomberg 2020 Inc.,*
  No. 4:20-cv-00487-BP, 2021 WL 3910341 (N.D. Tex. Mar. 12, 2021) ............................... 13

*Hardy v. Gissendaner,*
  508 F.2d 1207 (5th Cir. 1975) ............................................................................ 11, 12

*Heller v. City of Dallas,*
  303 F.R.D. 466 (N.D. Tex. 2014) .............................................................................. 6

*Henderson v. Union Pac. R.R. Co.,*
  No. CV 15-0669, 2016 WL 5936889 (W.D. La. Oct. 11, 2016) .......................................... 5

*Henry v. First Nat. Bank of Clarksdale,*
  444 F.2d 1300 (5th Cir. 1971) ................................................................................. 11

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.,*
  565 U.S. 171 (2012) .............................................................................................. 17

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.,*
  515 U.S. 557 (1995) .............................................................................................. 10

*In re Motor Fuel Temperature Sales Pracs. Litig.*,
    641 F.3d 470 (10th Cir. 2011) ............................................................ 12

*In re Santa Fe Int'l Corp.*,
    272 F.3d 705 (5th Cir. 2001) ............................................................... 9

*In re Selcraig*,
    705 F.2d 789 (5th Cir. 1983) ............................................................... 15

*In re United States*,
    864 F.2d 1153 (5th Cir. 1989) ............................................................... 5

*Janvey v. Alguire*,
    No. 3:09-CV-724-N-BQ, 2018 WL 11362638 (N.D. Tex. Oct. 17, 2018) ............... 8

*Johnston v. Transocean Offshore Deepwater Drilling, Inc.*,
    No. CV 18-491, 2019 WL 1558040 (E.D. La. Apr. 10, 2019) ............................ 7

*Jordan v. Aries Marine Corp.*,
    No. CIV.A. 14-377, 2015 WL 151336 (E.D. La. Jan. 12, 2015) ........................ 9

*Manhattan Community Access Corp. v. Halleck*,
    587 U.S. 802 (2019) .......................................................................... 13

*Marx v. Kelly, Hart & Hallman, P.C.*,
    929 F.2d 8 (1st Cir. 1991) .................................................................... 5

*Mize v. McGraw-Hill, Inc.*,
    82 F.R.D. 475 (S.D. Tex. 1979) ............................................................ 13

*NAACP v. Alabama ex rel. Patterson*,
    357 U.S. 449 (1958) ............................................................... 10, 11, 15, 16

*Naoko Ohno v. Yuko Yasuma*,
    723 F.3d 984 (9th Cir. 2013) ............................................................... 12

*OrchestrateHR, Inc. v. Trombetta*,
    No. 3:13-cv-2110-P, 2015 WL 11120526 (N.D. Tex. July 15, 2015) ................... 7

*Perry v. Schwarzenegger*,
    591 F.3d 1147 (9th Cir. 2010) ............................................................. 11

*Rogge v. Bandera Falls Prop. Owner's Ass'n*,
    No. CV SA-07-CA-996-OLG, 2009 WL 10713559 (W.D. Tex. Aug. 11, 2009) ......... 7

*Samsung Elecs. Am., Inc. v. Yang Kun Chung*,
    321 F.R.D. 250 (N.D. Tex. 2017) ........................................................... 5

*Sharp Corp. v. Hisense USA Corp.*,
    292 F. Supp. 3d 157 (D.D.C. 2017) ....................................................... 12

*Shelley v. Kraemer*,
    334 U.S. 1 (1948) ......................................................................... 10, 12

*Whole Woman's Health v. Smith*,
    896 F.3d 362 (5th Cir. 2018) ........................................................... 16, 17

*Williams v. Parker*,
  843 F.3d 617 (5th Cir. 2016) ............................................................................................. 9

**Rules**

Fed. R. Civ. P. 34(b) ........................................................................................................... 5

Fed. R. Civ. P. 34(b)(1)(B) ................................................................................................. 5

Fed. R. Civ. P. 34(b)(2)(A) ................................................................................................. 5

**Other Authorities**

8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus,
  Federal Practice and Procedure § 2213 ........................................................................... 5

## INTRODUCTION

X seeks information about Media Matters' largest donors—who they are, where they reside, and what Media Matters has told them—because that information is essential to X's prosecution of its claims. As a threshold matter, documents showing that Media Matters solicited donors in Texas, and in this District specifically, would refute Media Matters' position that the Court lacks jurisdiction and that this Court is an improper venue to resolve X's claims. And on the merits, Media Matters' solicitation of donations from groups or persons hostile to X would supply potential evidence of malice and provide a basis for a factfinder to impose punitive damages—X is entitled to know what Media Matters has said to its donors about its crusade against the platform to get them to fund its defamatory "journalism."

On June 6, 2024, this Court issued an order requiring Defendants to log any documents regarding donors that have been withheld pursuant to a claim of privilege. ECF No. 65 at 2. Defendants have refused to do so. Instead, flouting the Court's order, Defendants have asserted, generally and vaguely, a First Amendment "privilege" and other objections that purportedly immunize them from even searching for, let alone logging, documents responsive to X's requests for production that call for donor information. Defendants' position is flatly inconsistent with this Court's so-ordered directive.

At the time of the Court's order, it deferred ruling on the substance of whether the First Amendment actually protected Defendants' donor information. For multiple reasons, it does not. Simply put, Defendants' position that the First Amendment shields their donor information from disclosure cannot be reconciled with First Amendment jurisprudence stretching back decades. The First Amendment privilege Defendants appear to claim only applies against state actors—and it is undisputed that X is a privately held corporation. Moreover, and independently, Defendants have waived any purported privilege through their actions three times over: by asserting their First

Amendment privilege only in a vague and general manner, failing to produce a privilege log, and failing to comply with the Court's order requiring them to do so. All parties agree that this issue presents a legal dispute ripe for judicial resolution. X therefore requests that the Court overrule Defendants' First Amendment privilege assertions regarding donor information and compel Defendants to produce the withheld documents.

## FACTUAL AND PROCEDURAL BACKGROUND

In the fall of 2023, Media Matters for America published a series of articles falsely representing that major advertisers' content was organically being "placed" next to fringe content on X's popular social media platform. Am. Compl. ¶¶ 30-38, 46-54. As a result of that tortious conduct, significant advertisers withdrew from X's platform. *Id.* ¶¶ 30-38, 61-64. Because of the ongoing damage caused by Media Matters' lies, X brought claims against Media Matters, its president, Angelo Carusone, and the articles' author, Eric Hananoki, for business disparagement, tortious interference with contract, and tortious interference with prospective economic advantage. *Id.* ¶¶ 65-88.

In February 2024, X began serving requests for production. X's first and second sets of requests for production contain four requests targeted towards Media Matters' donors:

- No. 17: information sufficient to identify Media Matters' donors.

- No. 18: communications reflecting solicitations of donations.

- No. 21: documents reflecting the funding sources for Media Matters' defamatory articles about X.

- No. 35: communications with donors regarding X and the matters at issue in this lawsuit.

Appx. 11, 26. In their first set of responses and objections to these requests, Defendants objected on the basis of purported "First Amendment speech and associational rights" protecting donor

information from disclosure and refused to produce any responsive documents. Appx. 47-49, 51-52, 69-70 (Initial Resps. & Objs. to RFP Nos. 17, 18, 21, 35). In their second, amended responses and objections Defendants removed their objection to "First Amendment speech and associational rights." Appx. 128-30, 201-06 (Second Amended Resps. & Objs. to RFP Nos. 17, 18, 21, 35). Instead, Defendants objected because the requests were purportedly intended to harass (they are not) and otherwise failed to sufficiently or particularly state their First Amendment objections. *Id.*

Several months passed while X attempted to confer with Defendants regarding the production of documents responsive to these four requests. When these talks proved fruitless, X sought an order compelling production of documents responsive to these requests, among other issues. ECF Nos. 59, 60. On June 6, 2024, the Court granted X's motion in part and denied it in part. ECF No. 65. As relevant here, the Court deferred ruling on Defendants' "First Amendment privilege concerns" until a privileged-documents protocol was established and "responsive documents have been identified." *Id.* at 2. The Court ordered "Defendants to log any responsive documents as privileged and deliver to Plaintiff." *Id.*

The parties subsequently reached agreement on a privileged-documents protocol. ECF No. 68. But in contravention of this Court's instruction, Defendants insist that they "are not separately searching for donor-related documents" and therefore have refused to log documents that are responsive to X's requests for production seeking those documents. Appx. 179. Defendants' failure to produce donor information, which they are required to disclose for the reasons set forth below, is ripe for judicial resolution.[*] Appx. 174.

---

[*] The parties continue to confer regarding the other privilege issues that X raised in its motion to compel. X reserves all rights to seek court intervention on other issues if agreements cannot be reached.

## ARGUMENT AND AUTHORITIES

The Court should overrule Defendants' privilege objection with respect to donor information. Defendants waived any First Amendment privilege by: asserting it in a vague and general manner, failing to provide their objections in a privilege log, and repudiating the Court's order requiring Defendants to provide a privilege log. Defendants' vague, generalized, and waived First Amendment privilege objection also fails on the merits in any event. As X has argued, and as Defendants fail to refute, such First Amendment objections are inapplicable here, where there is no indication of state action. And regardless of the state-action issue, Defendants' claims of First Amendment privileges are also meritless with respect to this specific donor information. The Court should thus overrule Defendants' privilege assertions and compel Defendants to provide responsive documents.

## I. Defendants waived any arguable First Amendment protection by refusing to provide a privilege log regarding donor information.

Defendants have waived any arguable First Amendment privilege concerning donor information. Defendants' bare assertion in its discovery responses of a generalized First Amendment privilege over donor information was insufficient to preserve a privilege claim. If there were any doubt that Defendants' assertions were insufficient, this Court removed them when it explicitly ordered Defendants to provide a privilege log of any documents over which they assert a claim of privilege—and Defendants did not. Defendants' failure to produce a privilege log is reason enough to find waiver. Doubly so given Defendants' refusal to obey this Court's order, which provides a further, independent basis for waiver.

### A. Defendants' existing assertions of privilege are insufficient.

Defendants' vague and general objections in its discovery responses that a First Amendment privilege somehow protects Defendants' donor information are insufficient to

preserve their asserted privilege. Rule 34 of the Federal Rules of Civil Procedure requires parties to timely serve objections and assertions of privilege in response to requests for production. Fed. R. Civ. P. 34(b)(2)(A). "[A]s a general rule, when a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived." *Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 283 (N.D. Tex. 2017) (Horan, M.J.) (quoting *In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989)); *see also Henderson v. Union Pac. R.R. Co.*, No. CV 15-0669, 2016 WL 5936889, at *2 (W.D. La. Oct. 11, 2016) ("[T]he Fifth Circuit has found that the waiver provision applies equally to Rule 34." (citing *In re United States*, 864 F.2d at 1156); *Marx v. Kelly, Hart & Hallman, P.C.*, 929 F.2d 8, 12 (1st Cir. 1991) (upholding waiver for failure to file objections timely); *Cardenas v. Dorel Juvenile Grp., Inc.*, 231 F.R.D. 616, 618 (D. Kan. 2005) (finding waiver from untimely assertion of attorney-client privilege).

It is likewise axiomatic that a general objection to the production of privileged documents does not constitute compliance with Rule 34(b). *See, e.g.*, *Marx*, 929 F.2d at 12; *Eureka Fin. Corp. v. Hartford Accident & Indem. Co.*, 136 F.R.D. 179, 184 (E.D. Cal. 1991). Rule 34(b) requires the reasons for any discovery objections to be explicitly stated with supporting detail. Indeed, the 2015 amendment to Rule 34(b)(1)(B) specifically require a claim of privilege to be expressly made with a description of the documents withheld and the objection to be stated "with specificity." 8A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2213. Such detailed procedures would be pointless without consequences for failing to follow them, and courts should not reward a party that has "persisted in its stonewalling." *Eureka Fin. Corp.*, 136 F.R.D. at 185; *see also* WRIGHT & MILLER, *supra* (providing support for the view that failure to make an explicit, timely objection based on privilege waives the objection). Courts in this District have long warned parties that "general, generic objections violate the Federal Rules

and are invalid." *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014) (Horan, M.J.). A defendant's "boilerplate objections" will be deemed "waived." *Crow v. ProPetro Servs., Inc.* No. 7:15-cv-00149, 2016 WL 9776368, at *4 (N.D. Tex. June 6, 2016) (Counts, M.J.).

Here, instead of describing the documents withheld and the objections to production with specificity, Defendants relied only on a vague and generalized assertion that production would chill "First Amendment speech and associational rights," which is insufficient without more. Appx. 47-49, 51-52, 69-70 (Initial Resps. & Objs. to RFP Nos. 17, 18, 21, 35). Defendants' bare reference to the "First Amendment" is insufficiently particularized because it could theoretically encompass a wide variety of information and several constitutional rights—including free-speech or free-press rights of journalists, or free-association rights of organizations. *See, e.g.*, ECF No. 64 at 3-6. Worse, the Defendants asserted this objection only in their first set of interrogatory responses and objections. Appx. 146, 161. Defendants' Second Amended Responses and Objections—*i.e.*, the operative set of objections—objects mainly on the basis of purported harassment (there is none), and does not sufficiently or particularly include a First Amendment objection at all. Appx. 128-30, 201-06 (Second Amended Resps. & Objs. to RFP Nos. 17, 18, 21, 35). That alone constitutes waiver.

**B.    Defendants failed to submit a timely privilege log.**

Consistent with the above, the Court has already determined that Defendants' cursory, boilerplate objections regarding donor information were insufficient to assert a First Amendment privilege. ECF No. 65 at 2. Accordingly, it correctly ordered Defendants to produce a privilege log as a result. *Id.* Defendants did not produce a privilege log and, by failing to do so, further waived their objections.

– 6 –

Where a court declines to find waiver, it must, at a minimum, require the opposing party to "produce a proper privilege log." *OrchestrateHR, Inc. v. Trombetta*, No. 3:13-cv-2110-P, 2015 WL 11120526, at *9 (N.D. Tex. July 15, 2015) (Horan, M.J.). But when a defendant "fail[s] to provide a privilege log" and "fail[s] to properly substantiate [its] objections by submitting evidence necessary to sustain its burden of proof to [its] these objections," privilege is also waived. *Johnston v. Transocean Offshore Deepwater Drilling, Inc.*, No. CV 18-491, 2019 WL 1558040, at *2 (E.D. La. Apr. 10, 2019); *see also Rogge v. Bandera Falls Prop. Owner's Ass'n*, No. CV SA-07-CA-996-OLG, 2009 WL 10713559, at *3 (W.D. Tex. Aug. 11, 2009) (stating that "[f]ailure to provide a privilege log" supporting generalized or catch-all privilege objections waives a privilege claim.). For instance, in *Burch v. Regents of the University of California*, No. CIV. S-04-0038 WBS GGH, 2005 WL 6377313 (E.D. Cal. Aug. 30, 2005), the court found privilege objections raised in a privilege log sufficient only if the log is "submitted in a timely manner" and with "supporting affidavits or other competent evidence to prove the applicability of asserted privileges." *Id.* at *1. Absent "mitigating circumstances," a privilege log submitted "approximately six months after Plaintiffs served their first set of document requests" was insufficient to preserve the privilege. *Id.* at *2 (emphasis omitted). Here, Defendants have failed to provide the court-ordered privilege log and accordingly, Defendants' assertion of privilege is waived. *See Johnston*, 2019 WL 1558040, at *2. Defendants have, at most, asserted a vague privilege claim based on "First Amendment speech and associational rights" without specifying the particular documents to which the privilege claim applies, which they must do. *See* Appx. Appx. 47-49, 51-52, 69-70 (Initial Resps. & Objs. to RFP Nos. 17, 18, 21, 35). More than six months have passed since X issued its first discovery requests, and Defendants have failed—indeed, refused—to identify and log responsive documents

withheld on privileged grounds, and no "mitigating circumstances," *Burch*, 2005 WL 6377313, at *2, excuse Defendants' failure to provide a court-ordered privilege log.

      **C.**      **Defendants have refused to comply with the Court's order.**

      Defendants' failure to search for and log donor-related documents they claim are privileged on First Amendment grounds is all the more egregious because it contravenes the Court's order on X's first motion to compel. In its June 6, 2024 Order, this Court provided a clear instruction: For Request for Production Nos. 17, 18, 21, and 35 (each of which seeks documents and communications concerning Media Matters' donors and donations), "[t]he Court **ORDERS** Defendants to log any responsive documents as privileged." ECF No. 65 at 2 (emphasis in original). Defendants failed to do so. Indeed, Defendants have flouted the Court's directive and asserted a generalized First Amendment associational privilege as a basis for refusing to search for responsive documents altogether. *See* Appx. 176 (email from A. Khanna dated July 30, 2024). If Defendants took issue with the Court's order, the proper course would have been to move for reconsideration. Defendants did not. They simply refused to comply with this Court's directive to log responsive documents withheld on the basis of an asserted First Amendment privilege for donor information. Accordingly, Defendants' privilege objection is waived for this reason as well. *See, e.g.*, *Janvey v. Alguire*, No. 3:09-CV-724-N-BQ, 2018 WL 11362638, at *6 (N.D. Tex. Oct. 17, 2018) (Bryant, M.J.) (observing that a finding of waiver is especially warranted when a party opposing discovery has acted with "unjustified delay, inexcusable conduct, or bad faith").

      **D.**      **Defendants failed to put forward evidence substantiating their First Amendment claim.**

      Even assuming Defendants were allowed to disregard this Court's order and their obligation to submit a privilege log (they were not), Defendants were required to, but have not, provided the requisite supporting evidence to support their objection. "A party asserting a privilege

– 8 –

exemption from discovery bears the burden of demonstrating its applicability." *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001). A party cannot rely only on a "bare assertion" that their First Amendment rights had been violated; they must "explain how, precisely, their rights were curtailed." *Williams v. Parker*, 843 F.3d 617, 622-23 (5th Cir. 2016). Indeed, a "proper substantiation of privilege . . . imposes an *evidentiary* burden, and the party asserting such objections must *prove* that each document it has withheld was privileged." *Jordan v. Aries Marine Corp.*, No. CIV.A. 14-377, 2015 WL 151336, at *3 (E.D. La. Jan. 12, 2015). The "party resisting discovery by asserting any privilege bears the burden of proof sufficient to substantiate its privilege claim and cannot rely merely on a blanket assertion of privilege." *Id.* "A lawyer's argument . . . is *not* evidence and is insufficient as a matter of proof to establish *fact*." *Id.* (emphasis in original).

Defendants have not provided "specific evidence of past or present harassment" due to "associational ties" with Media Matters, "or of harassment directed against the organization itself." *Buckley v. Valeo*, 424 U.S. 1, 74 (1976). At most, Defendants cite to generalized statements from non-party Elon Musk concerning Media Matters that betray Defendants' actual (but misguided) reason for withholding donor information. *See* Appx. 128-30, 201-06 (Second Amended Resps. & Objs. to RFP Nos. 17, 18, 21, 35). According to Defendants, Musk's statements concerning Media Matters' funding sources reflect an effort to use that information against Media Matters. *See* ECF No. 62 at 10-11. But Defendants merely reference statements that Musk would file this lawsuit "against Media Matters and ALL those who colluded in this fraudulent attack" and "pursue not just the organization, but anyone funding that organization." *Id.* at 10-11 nn. 7-8. Defendants show nothing more than that X seeks to prosecute those responsible for the torts at issue in this case and obtain the necessary information—which can support jurisdiction and venue and provide evidence of malice—to prosecute its claims in this litigation. That alone cannot constitute a colorable First

– 9 –

Amendment objection. Moreover, if there were any doubt on that score, it is resolved by the fact that X has already entered into a confidentiality agreement with Media Matters that renders any such donor information limited to attorneys' eyes only. ECF No. 70 at 2. Defendants make no argument—and offer no evidence—that X's counsel would not abide by their obligations under the confidentiality agreement or that they would misuse any confidential donor information. For this reason as well, Defendants' efforts to preclude discovery into Defendants' donor information should fail.

## II.    Defendants' assertion of First Amendment privileges fails on the merits.

Defendants' withholding of responsive documents under any First Amendment theory is also substantively improper. The First Amendment would not apply here given that the requisite state action is missing. And in all cases, the First Amendment cannot justify withholding of the donor information at issue here. Thus, insofar as the Court deferred ruling on Defendants' assertion of a First Amendment privilege, it should now overrule any such objection with respect to the information at issue in Request for Production Nos. 17, 18, 21 and 35.

### A.    The First Amendment does not bar non-state actor discovery.

Defendants' First Amendment privilege objections fail for the reasons stated by X in its initial motion to compel, on which the Court has deferred ruling. ECF No. 65 at 2. As X has previously explained, ECF No. 60 at 16-17, ECF No. 64 at 5-6, the First Amendment applies only where a defendant asserts a privilege claim against ***governmental actors***. The "guarantees of free speech and equal protection guard only against encroachment by the government and 'erec[t] no shield against merely private conduct.'" *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 566 (1995) (quoting *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948)). Defendants thus cannot rely on cases like *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460 (1958), and *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 610-11 (2021), each of which

involved obvious state action. And the Fifth Circuit has repudiated the notion that merely invoking the judicial process constitutes state action. *See, e.g.*, *Hardy v. Gissendaner*, 508 F.2d 1207, 1210-11 (5th Cir. 1975); *see also Henry v. First Nat. Bank of Clarksdale*, 444 F.2d 1300, 1312 (5th Cir. 1971) ("[T]here is no 'state action' to be found in the mere filing of a private civil tort action in state court."). Were it otherwise, any civil lawsuit could be said to trigger state action, which would swallow the restriction altogether.

It is a bedrock constitutional principle that the First Amendment protections Media Matters purports to claim apply only against government actors. The underlying reason for those protections likewise has no application here where X is not a state actor. Media Matters has not even attempted to show that "compelled disclosure of . . . membership is likely to affect adversely the ability of [the organization] and its members to pursue their collective effort to foster beliefs which they admittedly have the right to advocate." *NAACP*, 357 U.S. at 462-63. For good reason: X has no state power to shutter Defendants or their speech. Defendants have argued for a different result under *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010), because the parties seeking discovery in that case were private actors. Yet the governmental action in that case was unmistakable, as litigants included government officials and the suit concerned a direct challenge to state law enacted by voters.

While it is plain that filing a lawsuit does not invoke state action, *see supra* pp. 14-17 it is equally clear that this Court compelling discovery cannot provide the relevant state action. Otherwise, *everyone* would enjoy a privilege against discovery in any civil case on speech/association grounds against any party. For instance, in the analogous context of "First Amendment challenges to speech-restrictive provisions in private agreements or contracts," the "domestic judicial enforcement of terms that could not be enacted by the government has not

ordinarily been considered state action." *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 998-1000 (9th Cir. 2013). "If, for constitutional purposes, every private right were transformed into governmental action by the mere fact of court enforcement of it, the distinction between private and governmental action would be obliterated." *Sharp Corp. v. Hisense USA Corp.*, 292 F. Supp. 3d 157, 176 (D.D.C. 2017) (quoting *Edwards v. Habib*, 397 F.2d 687, 691 (D.C. Cir. 1968)).

Defendants concede, as they must, the First Amendment would not apply without governmental action. *See* ECF No. 62 at 5. Defendants also cannot argue that X itself is a state actor. X is a privately held corporation. Defendants' authorities do not suggest otherwise. Accordingly, the First Amendment does not apply.

Faced with this prohibitive bar to the First Amendment's application, Defendants have invoked inapposite authority. Relying on *Shelley*, Defendants have argued that "the action of 'courts and of judicial officers in their official capacities is to be regarded as action of the State within the meaning of' the Constitution's state action requirements." ECF No. 62 at 6 (quoting 334 U.S. at 14-15). But the Fifth Circuit has rejected the notion that merely invoking the judicial process constitutes state action. *E.g.*, *Hardy*, 508 F.2d at 1210-11. It is no answer, as Defendants suggest, that this Fifth Circuit authority arose outside the context of a "First Amendment privilege or discovery disputes." ECF No. 62 at 8. After all, *Shelley* itself was an Equal Protection case, not a First Amendment case or a discovery dispute. Given that Fifth Circuit precedent already rejects Defendants' attempt to extend *Shelley* beyond the Equal Protection context, that should end the matter. *See Hardy*, 508 F.2d at 1210-11.

Defendants' reliance on non-binding, out-of-district authority is likewise unavailing. Defendants have cited only one circuit-court holding, *In re Motor Fuel Temperature Sales Practices Litigation*, 641 F.3d 470, 481 (10th Cir. 2011), for the proposition that the First

Amendment applies to discovery orders in cases between private parties. ECF No. 62 at 5. But that case relied on *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987), a case against *government agents* that merely stated in dicta that a court order "compelling discovery and the trial court's enforcement of that order provide the requisite governmental action that invokes First Amendment scrutiny." *Grandbouche* is thus distinguishable and, in any event, its dicta has rightly been called into doubt since "it has the effect of creating government action every time a magistrate simply signs, and a trial judge enforces, a discovery order." *Cyber Promotions, Inc. v. Am. Online, Inc.*, 948 F. Supp. 436, 445 (E.D. Pa. 1996). Other courts have rejected reliance on the First Amendment where "the part[ies] seeking the discovery" were "private parties, 'not police, law enforcement, or any other type of Government entity.'" *Dakota Energy Coop., Inc. v. E. River Elec. Power Coop., Inc.*, No. 4:20-CV-04192-LLP, 2021 WL 3862131, at *2 (D.S.D. Aug. 30, 2021) (citation omitted). That reasoning follows the admonishment that "[t]he First Amendment constrains *governmental actors*." *Id.* (emphasis in original) (quoting *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 804 (2019)). So the Court should reject any suggestion that courts "uniformly" flout the state-action requirement by granting discovery requests. ECF No. 62 at 9.

As X has argued, in one of Defendants' own authorities, the court actually *denied* an assertion of privilege by rejecting essentially the same argument advanced by Defendants here. *Gueye v. Mike Bloomberg 2020 Inc.*, No. 4:20-cv-00487-BP, 2021 WL 3910341, *2-3 (N.D. Tex. Mar. 12, 2021) (Ray, M.J.). And the other merely applies an ostensible *reporter*'s privilege in civil cases by reference to criminal grand-jury proceedings (where there is obvious state action). *See Mize v. McGraw-Hill, Inc.*, 82 F.R.D. 475, 476 (S.D. Tex. 1979). Defendants have argued that "[d]onor identities are extremely sensitive in ways virtually certain to implicate privilege." ECF No. 62 at 11 (citing *Bonta*, 594 U.S. at 616-17). But, as noted above, *Bonta* involved a state

– 13 –

attorney general enforcing state disclosure requirements. *See* 594 U.S. at 601-02. Here, X is of course a private party, and it seeks donor information not because it is required by state disclosure requirements, but because it is relevant to its legal claims.

In any event, the authority cited by Defendants at most supports a qualified privilege and a case-by-case analysis of the disputed materials, which X readily overcomes as discussed below and in previous briefing. *See* ECF No. 64 at 3-4. Unlike the movant in *Mize*, X has diligently sought discovery on highly relevant material central to X's claims—only to be hampered by Defendants. 82 F.R.D. at 478. X has requested information regarding Media Matters' donors and its finances for obvious, relevant, proportionate reasons: (1) to see how Defendants have availed themselves of Texas; (2) to see how Defendants funded their tortious conduct; and (3) to see if they are profiting or seeking to improve their financial condition from their disparagement. At a minimum, these factors are relevant to establish jurisdiction, compensatory damages, and punitive damages, and the parties' confidentiality order—agreed to by Defendants after extensive negotiations—ensures that the information will not be misused. Ultimately, Defendants offer no authority that a private party must be denied donor information on First Amendment grounds without some government action or disclosure requirement.

**B.     The First Amendment does not protect Defendants' asserted interests.**

It is clear that the First Amendment privilege does not apply here because X is not a state actor. Even if it were (it is not), the privilege Defendants invoke does not protect the donor information Defendants seek to withhold. As an initial matter, it is not clear what constitutional theory (free speech, free press rights of journalists, or free association rights of organizations) Defendants' bare reference to the "First Amendment" is meant to invoke, *see, e.g.*, ECF No. 64 at 3-6, but Defendants' claim fails on the merits no matter what the theory.

– 14 –

With respect to Defendants' alleged journalistic activities, the First Amendment claim fails. Defendants have suggested that there is "no material distinction" between First Amendment protections for reporters and other First Amendment protections. ECF No. 62 at 8. But the Fifth Circuit has recognized only a *qualified* privilege against having to divulge a confidential source's *identity*. *In re Selcraig*, 705 F.2d 789, 792-93 (5th Cir. 1983). Any reliance on that principle here is a red herring: This First Amendment protection of identity applies to *reporters*' confidential sources, which is not the same thing as identifying a *donor*. Indeed, Defendants do not invoke a need to protect any source's identity from disclosure. Thus, any asserted First Amendment privilege on the basis that Defendants engaged in ostensibly journalistic activities must be rejected.

With respect to a First Amendment associational right, Defendants' claim also fails on the merits. The asserted associational privilege protects against compelled disclosure that would adversely affect an organization by "induc[ing] members to withdraw . . . and dissuading others from joining because of fear of exposure." *NAACP*, 357 U.S. at 463. The party seeking to avoid disclosure must demonstrate a "reasonable probability that the compelled disclosure" will "subject them to threats, harassment, or reprisals from either Government officials or private parties." *Buckley*, 424 U.S. at 74.

Here, Defendants do not assert a comparable infringement of an associational privilege. Simply put, Defendants disclosure of donor information would subject anyone to similar "threats, harassment, or reprisals." *See id.* Defendants fail to explain why disclosure would be "virtually certain to implicate privilege," ECF No. 62 at 11 (citing *Bonta*, 594 U.S. 595, 616-17), given that this case does not involve mandatory disclosure of donor information "to the State" as in *Bonta*, 594 U.S. at 616. As explained above, the donor information would solely be used to prosecute X's claims. *See supra* pp. 8-10. Defendants have alternatively compared themselves to the NAACP

– 15 –

facing possible dissolution by Alabama's attempt to obtain "membership lists" in the Civil Rights Era, ECF No. 62 at 6 (quoting *NAACP*, 357 U.S. at 460), and vaguely invoked unknown "burden[s]" on Defendants' "donors[] and other affiliates," ECF No. 62 at 9 n.5. But Media Matters cannot plausibly compare its tortious conduct to people combatting state-enforced segregation, for whom "compelled disclosure of . . . membership is likely to affect adversely the ability of [the NAACP] and its members to pursue their collective effort to foster beliefs which they admittedly have the right to advocate." *NAACP*, 357 U.S. at 462-63. Such egregious revisionism lends no help to Media Matters.

Moreover, Defendants fail to show that disclosure would jeopardize associational rights by exposing any specific views held by Media Matters' donors. Because the discovery requests regarding donor identities "do not seek any internal or confidential communications that reflect its members' private views," Defendants cannot justify their blanket privilege assertion. *Fla. State Conf. of Branches & Youth Units of NAACP v. Lee*, 568 F. Supp. 3d 1301, 1307 (S.D. Fla. 2021). As noted above, the parties have already agreed to designate such information "attorney's eyes only," and any additional concerns about specific documents could be addressed by "seek[ing] a protective order designating those documents as confidential." *Id.*

Defendants fare no better by arguing that disclosure would require Media Matters "'to turn over *to a public policy opponent* its internal communications' and other sensitive documents." ECF No. 62 at 9 n.5 (quoting *Whole Woman's Health v. Smith*, 896 F.3d 362, 372 (5th Cir. 2018)). Media Matters' donor information would not come within any privilege recognized by the Supreme Court or the Fifth Circuit. Defendants have cited the Fifth Circuit's decision in *Whole Woman's Health* as precedent supposedly foreclosing "discovery orders that force private parties" from disclosing such information 'to a public policy opponent.'" ECF No. 62 at 9 n.5 (quoting 896

F.3d at 373). But the Fifth Circuit in *Whole Woman's Health* instructed that the purely *internal* communications of a *religious organization* may be protected in limited factual circumstances. 896 F.3d at 372. And even then, the intrusion must be so severe as to threaten the groups' ability to "maintain their internal organizational autonomy," given the attendant ecclesiastical prerogatives for the church organization at issue in that case. *Id.* at 374. There, the panel also noted that the party resisting discovery had "already cooperated extensively in discovery in a way that minimizes any adverse impact on the plaintiffs' ability" to conduct necessary cross-examination. *Id.* at 374.

Here, Media Matters is readily distinguishable from religious groups at issue in *Whole Woman's Health*. Defendants hold themselves out as journalists, not a religious group with self-governance rights that might be jeopardized by public disclosure. As the Fifth Circuit explained, it is because "religious bodies" must be "free to govern themselves in accordance with their own beliefs" that the Constitution affords a "structural protection" for the "autonomy of religious groups." *Id.* at 373 (quoting *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 199-200 (2012) (Alito, J., concurring)). Defendants also seek to avoid discovery into matters related to its donors altogether, which sweeps far more broadly than any religious associational privilege discussed in *Whole Woman's Health*. Media Matters cannot claim a categorical First Amendment privilege—let alone in this context, where the location of donors, persons from whom Media Matters solicited information, and individuals contacted regarding Media Matters' "reporting" are facts relevant to both the jurisdictional issues that Defendants themselves have placed at issue, as well as to the Defendants' actual malice, which is an element of Plaintiff's claim. The First Amendment does not protect the disclosure of such information during discovery in civil litigation between private parties.

– 17 –

## CONCLUSION

X respectfully requests that the Court overrule Defendants' First Amendment privilege objections regarding donor information and order Defendants to promptly produce all materials responsive to X's requests for production.

Dated: August 30, 2024                                   Respectfully submitted,

*/s/ Christopher D. Hilton*
Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
Ari Cuenin
Texas Bar No. 24078385
Michael R. Abrams
Texas Bar No. 24087072
Alexander M. Dvorscak
Texas Bar No. 24120461
**STONE | HILTON PLLC**
600 Congress Ave., Ste. 2350
Austin, TX 78701
Telephone: (737) 465-3897
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
michael@stonehilton.com
alex@stonehilton.com

John C. Sullivan
Texas Bar No. 24083920
**S|L LAW PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on August 30, 2024, a copy of this document was served on all counsel of record through the Court's CM/ECF system in accordance with the Federal Rules of Civil Procedure.

/s/ Alexander M. Dvorscak
Alexander M. Dvorscak