# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

|  |  |
|---|---|
| **X CORP.,** | |
| **Plaintiff,** | |
| v. | **Civil Action No. 4:23-cv-01175-O** |
| **MEDIA MATTERS FOR AMERICA, et al.,** | |
| **Defendants.** | |

## APPENDIX OF EXHIBITS ACCOMPANYING DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DONOR-RELATED DOCUMENTS

Defendants Media Matters for America, Angelo Carusone, and Eric Hananoki present the following exhibits to accompany their Response to Plaintiff's Motion to Compel Production of Donor-Related Documents:

| Exhibit No. | Description | Appendix Page No. |
|---|---|---|
| 1 | Email Exchange Between Counsel re: X/MMFA – Revised Privilege Log Agreement | 3–5 |
| 2 | Revised Privilege Log Agreement | 6–11 |
| 3 | Email Exchange Between Counsel re: X v. Media Matters | 12–23 |
| 4 | Email Exchange Between Counsel re: X/MMFA – Defendants' Fifth Production | 24–34 |
| 5 | Defendant Media Matters for America's Responses and Objections to Plaintiff's First Interrogatories | 35–68 |

Dated: September 6, 2024.

Respectfully submitted,
*/s/ Andrew LeGrand*

1

GIBSON, DUNN & CRUTCHER LLP
Andrew LeGrand (TX 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.* (CA 132099)
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed* (NY 4382040)
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

ELIAS LAW GROUP LLP
Abha Khanna* (WA 42612)
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Jacob D. Shelly* (DC 90010127)
Daniela Lorenzo* (NY 5780457)
250 Massachusetts Avenue NW, Suite 400
Washington, DC 20001
T: (202) 968-4490
F: (202) 986-4498
jshelly@elias.law
dlorenzo@elias.law

* Admitted *pro hac vice*

*Counsel for Defendants Media Matters for America, Angelo Carusone, and Eric Hananoki*

## CERTIFICATE OF SERVICE

On September 6, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Andrew LeGrand*
Andrew LeGrand

# Exhibit 1

| | |
|---|---|
| **From:** | Michael Abrams |
| **To:** | Jacob Shelly; Daniela Lorenzo; Alex Dvorscak; Chris Hilton |
| **Cc:** | Abha Khanna; Aria Branch; Ahmed, Amer S. |
| **Subject:** | RE: X/MMFA - Revised Privilege Log Agreement |
| **Date:** | Tuesday, July 2, 2024 5:05:09 PM |

Great, thank you Jacob.

**From:** Jacob Shelly <jshelly@elias.law>
**Sent:** Tuesday, July 2, 2024 4:02 PM
**To:** Michael Abrams <michael@stonehilton.com>; Daniela Lorenzo <dlorenzo@elias.law>; Alex Dvorscak <alex@stonehilton.com>; Chris Hilton <chris@stonehilton.com>
**Cc:** Abha Khanna <akhanna@elias.law>; Aria Branch <abranch@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Subject:** RE: X/MMFA - Revised Privilege Log Agreement

Hi Michael,

That sounds good, we agree with adding a "date" field to forthcoming logs.

Thank you,
Jacob

**Jacob Shelly**
**Elias Law Group LLP**
250 Massachusetts Ave NW Suite 400
Washington DC 20001
202-968-4496

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** Michael Abrams <michael@stonehilton.com>
**Sent:** Tuesday, July 2, 2024 4:58 PM
**To:** Daniela Lorenzo <dlorenzo@elias.law>; Alex Dvorscak <alex@stonehilton.com>; Chris Hilton <chris@stonehilton.com>
**Cc:** Abha Khanna <akhanna@elias.law>; Aria Branch <abranch@elias.law>; Jacob Shelly <jshelly@elias.law>
**Subject:** RE: X/MMFA - Revised Privilege Log Agreement

Hi Daniela,

Circling back on these proposed alternative dates, this looks good to us. We'd also like to suggest that the parties agree to add a "date" field to forthcoming privilege logs. Please let us know if that works for y'all. As you mentioned below, I don't think we need to file anything with the Court about these revised dates.

Best,

Michael

---

**From:** Daniela Lorenzo <dlorenzo@elias.law>
**Sent:** Wednesday, June 26, 2024 8:50 AM
**To:** Michael Abrams <michael@stonehilton.com>; Alex Dvorscak <alex@stonehilton.com>; Chris Hilton <chris@stonehilton.com>
**Cc:** Abha Khanna <akhanna@elias.law>; Aria Branch <abranch@elias.law>; Jacob Shelly <jshelly@elias.law>
**Subject:** X/MMFA - Revised Privilege Log Agreement

Michael,

As promised, attached is a revised privilege log agreement with proposed alternate dates given the new Court schedule. Let us know if this looks good to you all. I think we can just agree that this will be the operative agreement without needing to file it again but let us know if you disagree.

Best,
Daniela

**Daniela Lorenzo** (she/her)
Litigation Associate
Elias Law Group LLP
202.987.5400
dlorenzo@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

# Exhibit 2

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **X CORP**., a Nevada corporation, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | Case No. 4:23-cv-01175-O |
| | § | |
| **MEDIA MATTERS FOR AMERICA,** a | § | |
| Washington, D.C. non-profit corporation, **ERIC** | § | |
| **HANANOKI**, and **ANGELO CARUSONE**, | § | |
| | § | |
| | § | |
| *Defendants.* | § | |

## STIPULATION AND ORDER FOR THE EXCHANGE OF PRIVILEGE LOGS

This Stipulation Regarding the Exchange of Privilege Logs ("Stipulation") shall govern the format and timing for the parties to log documents withheld in full or in part due to an assertion of privilege in the above-captioned case (the "Action") between Plaintiff X Corp., and Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone (each, individually, a "Party" and, collectively, the "Parties").

## I.      PROCESS OF LOGGING PRIVILEGED DOCUMENTS

All documents and files that contain, in whole or in part, privileged information will be logged and produced in accordance with the below:

### A.      Withholding or redacting privileged documents

Where a document is privileged in its entirety, the producing Party will withhold the document but produce a PDF "placeholder" indicating and assigning a Bates number to the file being withheld.

Where a document is partially privileged, the producing Party will redact only those portions of the document that are privileged. The redactions will expressly indicate what kind of privilege the Party is asserting. For example, if the producing Party is redacting a paragraph due to the attorney work product privilege, the redaction applied to the paragraph will read "Attorney Work Product" rather than the word "Redacted" or a black box. The document will be otherwise produced in accordance with the Parties' ESI Protocol and Protective Order.

### B.   Privilege log contents

For all documents being partially or fully withheld for privilege, the producing Party will log each document in a chart or table that contains the following information:

1) "Status" meaning whether the document is being redacted or withheld.

2) "Bates" meaning the document or "placeholder" PDF Beginning Bates number.

3) "Doc Type" meaning the type of document being redacted or withheld (email, word document, excel spreadsheet, video, etc.)

4) "Date" meaning the date the document was created or sent.

4)5)   "From/Author" meaning the name of the document author or email/message sender with any names and email addresses redacted if necessary.

5)6)   "To" meaning the name(s) of the email/message recipients with any names and email addresses redacted if necessary.

6)7)   "Cc" meaning the name(s) of the email's Cc recipients with any names and email addresses redacted if necessary.

7)8)   "Bcc" meaning the name(s) of the email's Bcc recipients with any names and email addresses redacted if necessary.

8)9)   "Privilege Designation" meaning the privilege being asserted.

– 2 –

**8**

9)10)   "Privilege Description" meaning the reason why the document or redacted text is privileged.

10)11) "Confidentiality" meaning any confidentiality designation.

## C.    Privilege log exemptions

All documents withheld or redacted due to privilege must be logged except those the Parties agreed not to log in their ESI Protocol or via independent agreement.

## II.    TIMING OF PRIVILEGE LOG EXCHANGE

### A.    Exchange dates

The Parties agree to a mutual exchange of all documents redacted or withheld for privilege and any corresponding privilege logs in the manner outlined above on the following days, contingent on the Court granting the parties' pending joint motion to amend scheduling order:

1) September 6, 2024

2) October 11, 2024

3) November 15, 2024

4) December 17, 2024

Nothing in this Stipulation shall prevent the Parties from producing documents that are not privileged, in whole or in part, outside of this privileged document exchange schedule. The Parties agree to ensure documents are being produced in a timely manner without undue delay.

The parties stipulate to allow for the claw back of any inadvertent disclosures of privileged information as laid out in the Parties' ESI Protocol.

## III.    CHALLENGES TO PRIVILEGE LOGS

The Parties will have 14 days after a privilege log is produced to object to the privilege designation of a document on said privilege log in writing to the other Party. The Parties agree to

meet and confer in good faith over any challenges to a document's privilege designation and attempt to reach a resolution to any disagreement before seeking Court intervention.

Dated: July 16, 2024            Respectfully submitted,

Agreed as to form and substance:

Counsel for Plaintiff

*/s/ Draft*
Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
Ari Cuenin
Texas Bar No. 24078385
Alexander M. Dvorscak
Texas Bar No. 24120461
**STONE | HILTON PLLC**
1115 W. Slaughter Lane
Austin, TX 78748
Telephone: (737) 465-7248
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
alex@stonehilton.com

John C. Sullivan
Texas Bar No. 24083920
**S|L Law PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com
Counsel for Defendants:

*/s/ Andrew LeGrand*
Andrew LeGrand Texas Bar No. 24070132
**GIBSON, DUNN & CRUTCHER LLP**
2001 Ross Avenue, Suite 2100
Dallas, TX
75201-2923
Telephone: (214) 698-3100

Email: alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.*
Jay P. Srinivasan*
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
Email: tboutrous@gibsondunn.com
Email: jsrinivasan@gibsondunn.com

Amer S. Ahmed*
Anne Champion*
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
Email: aahmed@gibsondunn.com
Email: achampion@gibsondunn.com

**ELIAS LAW GROUP LLP**
Abha Khanna*
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
Telephone: (206) 656-0177
Email: akhanna@elias.law
Aria C. Branch*
Christopher D. Dodge*
Jacob D. Shelly*
Elena A. Rodriguez Armenta*
Daniela Lorenzo*
Omeed Alerasool
250 Massachusetts Ave. NW,
Suite 400
Washington, DC 20001
T: (202) 968-4652
abranch@elias.law
cdodge@elias.law
jshelly@elias.law
erodriguezarmenta@elias.law
dlorenzo@elias.law
oalerasool@elias.law

# Exhibit 3

| | |
|---|---|
| **From:** | Michael Abrams |
| **To:** | Abha Khanna; Chris Hilton; Alex Dvorscak; LeGrand, Andrew; Aria Branch; Ahmed, Amer S.; Champion, Anne |
| **Subject:** | RE: X v. Media Matters |
| **Date:** | Monday, June 10, 2024 10:56:54 PM |
| **Attachments:** | image001.png |

Perfect, thank you. Sending over to our paralegal to get this on file.

---

**From:** Abha Khanna <akhanna@elias.law>
**Sent:** Monday, June 10, 2024 9:55 PM
**To:** Michael Abrams <michael@stonehilton.com>; Chris Hilton <chris@stonehilton.com>; Alex Dvorscak <alex@stonehilton.com>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Aria Branch <abranch@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; Champion, Anne <AChampion@gibsondunn.com>
**Subject:** RE: X v. Media Matters

Thanks, Michael. Final versions attached! (Scheduling order just accepts the redline we had proposed.)

Best,
Abha

**Abha Khanna**
**Elias Law Group LLP**
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177
akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

**From:** Michael Abrams michael@stonehilton.com
**Sent:** Monday, June 10, 2024 7:13 PM
**To:** Abha Khanna akhanna@elias.law; Chris Hilton chris@stonehilton.com; Alex Dvorscak <alex@stonehilton.com>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Aria Branch <abranch@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; Champion, Anne <AChampion@gibsondunn.com>
**Subject:** RE: X v. Media Matters

Thank you, Abha. Here you go. We also made the attached minor edit but then saved as a clean version.

Can you please return to me in the next few minutes or so? Our paralegal is on call to file this evening if you can return with signatures for Defendants. Thank you!

Michael

---

**From:** Abha Khanna <akhanna@elias.law>
**Sent:** Monday, June 10, 2024 9:01 PM
**To:** Michael Abrams <michael@stonehilton.com>; Chris Hilton <chris@stonehilton.com>; Alex Dvorscak <alex@stonehilton.com>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Aria Branch <abranch@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; Champion, Anne <AChampion@gibsondunn.com>
**Subject:** RE: X v. Media Matters

Michael,

I understand from Andrew (based on his call with Chris) that we have now reached agreement on the attached drafts. With respect to the June 28 "Deadline for Defendants to Provide First Privilege Log and Associated Documents," the parties understand that on June 28 Defendants will produce a log of any privileged documents identified to date, along with copies of any redacted documents referenced therein, with additional document productions and privilege logs to follow in accordance with the parties' forthcoming Privilege Log Agreement.

Once you confirm and sign, we'll do the same and send back to you to get on file with the Court.

Many thanks!
Abha

**Abha Khanna**
Elias Law Group LLP
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177
akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

**From:** Michael Abrams <michael@stonehilton.com>
**Sent:** Monday, June 10, 2024 1:32 PM
**To:** Abha Khanna <akhanna@elias.law>; Chris Hilton <chris@stonehilton.com>; Alex Dvorscak <alex@stonehilton.com>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Aria Branch <abranch@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; Champion, Anne <AChampion@gibsondunn.com>
**Subject:** RE: X v. Media Matters

Abha,

Thank you for the response. We are fine with the edits to substance of the joint motion. With respect to signatures, Local Rule 40.1 provides that a "motion for continuance of a trial setting must be signed by the moving party as well as by the party's attorney of record," so we think the current signature block needs to stay in. For what it's worth, we believe a /s/ with the client's permission to be acceptable and that is how we plan on handling it.

With respect to your other questions below, we're agreeable to an understanding among counsel for mutual dates for production and exchanges of privilege logs, but we don't think those dates need to be incorporated into a court order. We think we'll be in a better place to evaluate an appropriate schedule in that regard once we see how much of our requested extension the Court grants. We're happy to confer on that issue shortly so that everyone is on the same page.

With respect to your second question, we understood the Court to order that "Defendants must deliver all documents in its possession and control responsive to RFP Nos. 13-16, 23-24, 37-38, and 46 to Plaintiff" and that "Defendants must create and deliver a privilege log of any documents being withheld from production to Plaintiff" by June 14. It may be that most of the responsive documents that Defendants have are subject to a privilege assertion. Nonetheless, we think that any responsive, non-privileged documents—or documents that are responsive to RFP Nos. 13-16, 23-24, 37-38, and 46 and that can be produced in redacted format—should be produced contemporaneously with a privilege log. If y'all think you may need more time for the document production, that's something we can work with y'all on, although it'd be helpful to understand when you think that production might occur.

Finally, we can agree to a 2-week extension for Defendants' interrogatory responses, but we think the mutual agreement should be triggered off the filing of the joint motion rather than the Court granting it. We cannot predict the Court's ruling and if the Court denies the motion the parties would in all likelihood have to agree to extend discovery amongst themselves in any event.

We're prepared to sign off (with Chris signing on behalf of X) if all of this is acceptable to y'all.

Thanks,

Michael

---

**From:** Abha Khanna <akhanna@elias.law>
**Sent:** Monday, June 10, 2024 2:42 PM
**To:** Michael Abrams <michael@stonehilton.com>; Chris Hilton <chris@stonehilton.com>; Alex Dvorscak <alex@stonehilton.com>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Aria Branch <abranch@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; Champion, Anne <AChampion@gibsondunn.com>

**Subject:** RE: X v. Media Matters

Hi Michael,

Thank you for these documents – it looks like we are very close to agreement. We have made light edits for clarity to the joint motion (attached), and write below to follow up on a few issues regarding the schedule:

First, we foresee the exchange of privilege logs as an ongoing process whereby further review of documents will inevitably identify additional documents subject to privilege. Thus, similar to Defendants' commitment to biweekly document productions, we believe both parties will benefit from regular, reciprocal exchanges of privilege logs. This will ensure that areas of dispute are timely identified for judicial resolution, and that both parties are held to similar expectations. To the extent you disagree with the dates that we proposed for this exchange, on what schedule does X intend to produce privilege logs? Defendants are amenable to producing their first privilege log on June 28, as you propose, but we believe the parties should agree to mutual timelines in the interests of fairness and predictability.

Second, you proposed a June 28 deadline for service of a "Privilege Log and Documents." For the avoidance of ambiguity, we understand that the "Documents" referenced are those that correspond to the privilege log (in redacted form or with blank slipsheets bates-numbered). Please confirm that is your understanding as well. We will circulate a Proposed Privilege Log Agreement shortly that can govern this process.

Third, Defendants will consent to X's request for a second extension of its ROG response deadline provided that 1) the Court grants an extension of the case schedule, and 2) X is willing to agree to a reciprocal 2-week extension for Defendants' responses to X's interrogatories.

Hopefully we are able to get the motion and proposed order on file today.

Best,
Abha

**Abha Khanna**
Elias Law Group LLP
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177
akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** Michael Abrams <michael@stonehilton.com>
**Sent:** Sunday, June 9, 2024 12:24 PM
**To:** Abha Khanna <akhanna@elias.law>; Chris Hilton <chris@stonehilton.com>; Alex Dvorscak <alex@stonehilton.com>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Aria Branch <abranch@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; Champion, Anne

<AChampion@gibsondunn.com>
**Subject:** RE: X v. Media Matters

Abha,

Our proposed edits and clean versions of both documents are attached. We are agreeable to most of the revised dates that you have proposed. We do not think it is necessary, however, to establish multiple interim deadlines for the mutual exchange of privilege logs. To the extent Defendants are concerned about the June 14 deadline in the order on the motion to compel, we think it would be easier to propose an extension of that deadline (which we read to encompass a privilege log and document production) and have put a place for that extension in the proposed schedule. Our only other change to the schedule is that we suggest making January 29 the end of written discovery, as opposed to the end of fact discovery, to allow the parties time, in their discretion, to continue with any necessary depositions until the deadline for the completion of all discovery.

On the subject of deadlines, we would appreciate one extra week—until June 19—for our responses to Defendants' first set of interrogatories. Please let us know if Defendants will agree to that extension.

Thank you,

Michael

---

**From:** Abha Khanna <akhanna@elias.law>
**Sent:** Friday, June 7, 2024 2:55 PM
**To:** Chris Hilton <chris@stonehilton.com>; Alex Dvorscak <alex@stonehilton.com>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Aria Branch <abranch@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; Champion, Anne <AChampion@gibsondunn.com>
**Cc:** Michael Abrams <michael@stonehilton.com>
**Subject:** RE: X v. Media Matters

Thanks, Chris. Look forward to seeing your revisions.

**Abha Khanna**
Elias Law Group LLP
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177
akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

**From:** Chris Hilton <chris@stonehilton.com>
**Sent:** Friday, June 7, 2024 12:53 PM
**To:** Abha Khanna <akhanna@elias.law>; Alex Dvorscak <alex@stonehilton.com>; LeGrand, Andrew

<ALeGrand@gibsondunn.com>; Aria Branch <abranch@elias.law>; Ahmed, Amer S.
<AAhmed@gibsondunn.com>; Champion, Anne <AChampion@gibsondunn.com>
**Cc:** Michael Abrams <michael@stonehilton.com>
**Subject:** Re: X v. Media Matters

Didn't want to leave this pending any longer without a response, and Alex is out today.

We are working through some edits and will get this back to you ASAP. We are going to
have some substantive changes, but as I committed to Andrew on the phone, we are trying
to work with y'all on the areas of particular concern, while also maintaining our position on
areas of dispute.

Thanks,
Chris

---

**From:** Abha Khanna <akhanna@elias.law>
**Sent:** Thursday, June 6, 2024 9:57 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Aria
Branch <abranch@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; Champion, Anne
<AChampion@gibsondunn.com>
**Cc:** Chris Hilton <chris@stonehilton.com>; Michael Abrams <michael@stonehilton.com>
**Subject:** RE: X v. Media Matters

Alex,

Thank you for putting together these drafts – we are largely in agreement on the relevant
arguments. We have two substantive edits:

First, as Andrew mentioned to Chris this week, Defendants remain concerned about
representations in X's motion-to-compel briefing, which the judge has now ruled on, that
Defendants have not been producing documents diligently and in good faith. I understand
Chris proposed that we put language in the joint motion making clear that expedited
production isn't necessary, so we have proposed a footnote in the draft to that effect.
Additionally, in light of the extended schedule and the fact that we have not yet identified
specific privileged documents (as indicated in our amended R&Os), we have suggested
modifying the Court's imposed June 14, 2024 deadline for a priv log and have included
instead staggered dates for the parties to exchange privilege logs. This approach will
ensure the parties are logging and exchanging privileged documents in a timely manner as
they conduct document review.

Second, given the enormity of this task, because we do not want to be in a position where

we have to ask the Court for further extensions, and because the Court may, like last time, settle on tighter deadlines than the parties propose, we think it makes sense to extend the schedule slightly more to ensure the parties have adequate time to conduct discovery adequately. To that end, we have proposed modified deadlines that we feel will better help meet the parties' needs. The proposed schedule provides a 6-month extension to fact discovery cutoff and adds an additional 90 days for expert discovery.

Attached are both clean copies of the drafts and redlines with our edits. Let us know if you are amenable to our edits and we can work toward finalizing the draft to get on file by the end of the week (tomorrow).

Best,

Abha

**Abha Khanna**

Elias Law Group LLP

1700 Seventh Ave Ste 2100

Seattle WA 98101

206-656-0177

akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Wednesday, June 5, 2024 9:01 PM
**To:** Abha Khanna <akhanna@elias.law>; LeGrand, Andrew ALeGrand@gibsondunn.com; Aria Branch abranch@elias.law; Ahmed, Amer S. AAhmed@gibsondunn.com; Champion, Anne AChampion@gibsondunn.com
**Cc:** Chris Hilton <chris@stonehilton.com>; Michael Abrams <michael@stonehilton.com>
**Subject:** RE: X v. Media Matters

Counsel,

Please see attached a draft joint motion to amend the scheduling order and proposed order for your review.

Best,

-Alex Dvorscak

Stone | Hilton pllc

alex@stonehilton.com | (518) 772-8657

---

**From:** Chris Hilton <chris@stonehilton.com>
**Sent:** Wednesday, June 5, 2024 8:56 PM
**To:** Abha Khanna <akhanna@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Alex Dvorscak <alex@stonehilton.com>
**Cc:** Aria Branch <abranch@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; Champion, Anne <AChampion@gibsondunn.com>; Michael Abrams <michael@stonehilton.com>
**Subject:** Re: X v. Media Matters

Thanks Abha.

Get Outlook for iOS

---

**From:** Abha Khanna <akhanna@elias.law>
**Sent:** Wednesday, June 5, 2024 6:58:41 PM
**To:** Chris Hilton <chris@stonehilton.com>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Alex Dvorscak <alex@stonehilton.com>
**Cc:** Aria Branch <abranch@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; Champion, Anne <AChampion@gibsondunn.com>; Michael Abrams <michael@stonehilton.com>
**Subject:** RE: X v. Media Matters

Hi Chris,

We agree to a one-week extension for X's discovery responses.


Best,

Abha


**Abha Khanna**

Elias Law Group LLP

1700 Seventh Ave Ste 2100

Seattle WA 98101

206-656-0177

akhanna@elias.law


CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

**From:** Chris Hilton <chris@stonehilton.com>
**Sent:** Wednesday, June 5, 2024 4:36 PM
**To:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Alex Dvorscak <alex@stonehilton.com>
**Cc:** Abha Khanna <akhanna@elias.law>; Aria Branch <abranch@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; Champion, Anne <AChampion@gibsondunn.com>; Michael Abrams <michael@stonehilton.com>
**Subject:** Re: X v. Media Matters


We are awaiting one final input before we can send you the draft motion and proposed schedule. Still hopeful that we'll get it to you tonight.


Can y'all please also let us know on the extra week for the other written discovery?


Thanks,

Chris



Get Outlook for iOS

---

**From:** Chris Hilton <chris@stonehilton.com>
**Sent:** Wednesday, June 5, 2024 11:02 AM
**To:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Alex Dvorscak <alex@stonehilton.com>
**Cc:** Abha Khanna <akhanna@elias.law>; Aria Branch <abranch@elias.law>; Ahmed, Amer S.
<AAhmed@gibsondunn.com>; Champion, Anne <AChampion@gibsondunn.com>
**Subject:** Re: X v. Media Matters


Thanks for the follow up email and the call a few moments ago. We will get y'all a draft joint
motion and revised schedule today. We had not internally discussed the idea of phasing expert
discovery, but we will consider that as well and let you know.


Regarding our discovery deadline, we appreciate the courtesy regarding the interrogatory
responses. As we discussed, I have since been advised that an additional week on RFP and
RFA responses would also be significantly helpful on our end, and that I was misinformed
yesterday when I thought it relates only to the ROGs. Please let us know whether an additional
week on those other written discovery responses would also be acceptable.


Thanks,

Chris



Get Outlook for iOS

---

**From:** LeGrand, Andrew <ALeGrand@gibsondunn.com>
**Sent:** Tuesday, June 4, 2024 9:36:08 PM
**To:** Chris Hilton <chris@stonehilton.com>; Alex Dvorscak <alex@stonehilton.com>
**Cc:** Abha Khanna <akhanna@elias.law>; Aria Branch <abranch@elias.law>; Ahmed, Amer S.
<AAhmed@gibsondunn.com>; Champion, Anne <AChampion@gibsondunn.com>
**Subject:** X v. Media Matters

Chris,

Thank you for reaching out regarding the need for additional time to complete discovery. We can agree to a one-week extension for X's interrogatory responses and to jointly request an extension of the July 29 discovery deadline by at least 6 months, as you requested. We are happy to review a proposed joint motion to extend the discovery deadlines that we can submit to the Court.

In addition, as I think we have both recognized, the current schedule lacks any mechanism to guarantee that documents are produced in time for experts to review and incorporate relevant information into their own analysis and reports. Accordingly, we propose adding a separate expert discovery deadline that would fall three months after the fact discovery deadline. If this sequencing makes sense to you, either you can include it in the draft joint motion or we can add it when we send along our revisions.

Many thanks,

Andrew

**Andrew LeGrand**
Partner

T: +1 214.698.3405 | M: +1 469.658.5686
ALeGrand@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201-2923

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

# Exhibit 4

| | |
|---|---|
| **From:** | Alex Dvorscak |
| **To:** | Abha Khanna; Daniela Lorenzo; Jacob Shelly; LeGrand, Andrew; Ahmed, Amer S. |
| **Cc:** | Boutrous Jr., Theodore J.; Elena Rodriguez Armenta; Champion, Anne; Omeed Alerasool; Chris Dodge; Aria Branch; Samuel Ward-Packard; Mindy Johnson; Chris Hilton; Cody Coll; Tom Albright; Ari Cuenin; Judd E. Stone, II; john.sullivan@the-sl-lawfirm.com; Bonnie Chester; Michael Abrams; Alithea Sullivan |
| **Subject:** | RE: X/MMFA - Defendants' Fifth Production |
| **Date:** | Friday, August 9, 2024 1:22:46 PM |

Hi Abha,

We are currently in the process of reviewing your most recent production and amended privilege log to see if it addressed the concerns we raised on our call. We will respond more substantively to your proposal next week.

Best,
-Alex Dvorscak
Stone | Hilton pllc
alex@stonehilton.com | (518) 772-8657

---

**From:** Abha Khanna <akhanna@elias.law>
**Sent:** Friday, August 2, 2024 6:51 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Alex and Chris,

Thank you again for meeting with us today for a productive conversation on resolving outstanding discovery issues. As promised, attached is our amended privilege log and below is both a summary of what we discussed during our call and Defendants' proposal for how the parties can move forward with the discovery Plaintiff seeks.

The parties discussed three issues Plaintiff identified as potential discovery disputes that would form the basis of Plaintiff's motion to compel:

1. Whether Defendants should be required to turn over donor-related information.
   a. The parties agreed this dispute is ripe for Court intervention and Plaintiff plans to move to compel these documents on or after Monday of next week.

2. Defendants' document-by-document privilege assertions on their first privilege log.
   a. Defendants' amended privilege log seeks to assuage the various log-related concerns Plaintiff raised during the parties' last meet-and-confer.
   b. To the extent Plaintiff has further concerns regarding the amended log or documents identified therein, the Parties will confer (we will make ourselves available for such a conversation early next week).

3. Defendants' objections and responses to subsection (4) of Plaintiff's Interrogatory Nos. 7 and 8.
   a. Defendants clarified that their objection is *not* based on privilege or a refusal to search for and produce "any comments, revisions, feedback, or approval" in relation to the November 16 and 17 articles. Rather, Defendants objected that producing this information in a *written interrogatory* is inefficient and that they will, instead, produce responsive documents.
   b. Defendants also reiterated that they are *not* categorically withholding as privileged or refusing to produce documents related to the November 16 and 17 articles.

Please confirm that these are all the issues Plaintiff contemplated for its above-referenced motion to compel.

Additionally, recognizing that both parties have an interest in ensuring discovery is productive and efficient, Defendants are proposing a modified approach to searching for and producing the documents Plaintiff has requested:

1. The parties will come together to identify the set of document requests that are essential to the maintenance of X's claims, as Alex began to do in his email earlier today.
2. Defendants will then modify their search and review parameters to target these categories of documents.
3. The parties will agree that Defendants will no longer need to review, produce, or log the documents that fall outside of these categories.

We believe this approach is consistent with the legal standard set forth in the Texas Press Shield Law, will significantly streamline discovery moving forward, and will reduce discovery fights and therefore the need to burden the Court. Defendants understand and share Plaintiff's desire for expediency and believe that—while we may need to iron out the details of any proposal to come to a mutually agreeable resolution—the parties are more aligned than we are divided on this issue.

Given our conversation earlier, we remain optimistic about reaching a compromise that serves both parties' interests while respecting the Court's time. We look forward to keeping these lines of communication open and conferring on the above issues in good faith.

Best,
Abha

**Abha Khanna**
Elias Law Group LLP
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177
akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Friday, August 2, 2024 9:38 AM
**To:** Abha Khanna <akhanna@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson

<mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Abha,

The documents central to our disagreements regarding privilege have been obvious to both sides and we have been discussing them for months. However, to facilitate our discussion, we have identified the following categories of documents that have not been produced and over which you may be asserting privilege, but which have not yet appeared on a privilege log. Note that this is an illustrative list, not a complete one.

- Notes, drafts, and sources of the Articles (*see* X's MTC at 14).
- Communications between or among Hananoki, Sharon Kann, Michale Eberhart, Ben Dimiero, Kayla Gogarty, and/or Andrea Austria regarding the Articles (*see* MMFA's responses to ROGs 7 and 8).
- All documents that the Court compelled in its order dated June 6, 2024. This includes "all documents in [Your] possession and control responsive to RFP Nos. 13-16, 23-24, 37-38, and 46." Dkt. 65 at 3.

As we discussed during our last call, we cannot wait months before these documents are produced or logged. Our goal is to only burden the Court with the substantive legal issues of privilege—we hope we can work out the procedural mechanics of discovery together in good faith.

Looking forward to discussing this in more detail on today's call.

Best,
-Alex Dvorscak
Stone | Hilton pllc
alex@stonehilton.com | (518) 772-8657

---

**From:** Alex Dvorscak
**Sent:** Thursday, August 1, 2024 11:18 AM
**To:** Abha Khanna <akhanna@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Abha,

Friday at 1 ET/12 CT works for us. I'll send around a Zoom link.
We will respond to the additional points raised in your email yesterday so that you know our positions prior to the conference.

Best,
-Alex Dvorscak
Stone | Hilton pllc
alex@stonehilton.com | (518) 772-8657

---

**From:** Abha Khanna <akhanna@elias.law>
**Sent:** Wednesday, July 31, 2024 3:21 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Alex,

Our team is available Friday at 1 ET/12 CT. We have greater availability on Monday if that time does not work for you.

Best,
Abha

**Abha Khanna**
Elias Law Group LLP
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177
akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Wednesday, July 31, 2024 9:09 AM
**To:** Abha Khanna <akhanna@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S.

<AAhmed@gibsondunn.com>

**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Hi Abha,

It looks like there's a few issues for us to discuss. Can you please let me know your availability to confer tomorrow afternoon or Friday morning?

Best,
-Alex Dvorscak
STONE | HILTON PLLC
alex@stonehilton.com | (518) 772-8657

---

**From:** Abha Khanna <akhanna@elias.law>
**Sent:** Tuesday, July 30, 2024 3:48 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Alex,

First, thank you for sending these cases. As you are aware, two of them are out-of-Circuit, all of them are non-controlling district court opinions, and—most importantly—none of them finds waiver where a privilege was noted on a timely privilege log. Accordingly, your cited authority does not support your position. If you have no better authority, then our position is that your proposed motion is frivolous and we are, accordingly, at an impasse regarding any waiver of Texas's press shield law. *Cf.* Fed. R. Civ. P. 11(b), (c).

Second, our initial privilege log fully complied with the protocol that you and your colleagues negotiated. As a courtesy, we have agreed to revisit that protocol to increase clarity for all parties. An amended privilege log will be forthcoming this week.

Third, we are confused by your refrain that Defendants "refuse to log all responsive documents." If you are referring to our refusal to independently *search* for donor-related documents, we agree that that the privileged status of donor-related documents is ripe for the Court's resolution. Are you also referring to other categories of documents? If so, please identify them promptly so that we can ascertain the nature of any dispute.

Finally, as I noted in my previous email, it appears the parties have a mutual interest in increasing transparency about the pace of future document productions. To that end, we propose the following interim deadlines:

1. Wednesday, August 7: parties exchange search terms and full custodian lists.
2. Friday, October 11: parties substantially complete document productions in response to requests served to date.
3. Revised privilege log exchange:
   1. Friday, September 6: first mutual exchange [same as in current agreement]
   2. Friday, October 4: second mutual exchange [changed from October 11 under current agreement]
   3. Friday, November 1: third and final mutual exchange [changed from November 15 under current agreement]
   4. This schedule would omit a fourth privilege log in December to allow productions and logs to be complete by the beginning of November.

We welcome Plaintiff's feedback on the above, and we remain available to confer as necessary. While the parties may not be able to reach agreement on all issues, there is no basis for motions practice when parties remain confused—as we do—about the nature of any dispute. *See* LR 7.1(a).

Best,
Abha

**Abha Khanna**
Elias Law Group LLP
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177
akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Monday, July 29, 2024 8:33 PM
**To:** Abha Khanna <akhanna@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Hi Abha,

This case has already been substantially delayed; accordingly, X will be filing its second/renewed motion to compel this Friday. However, as stated last week, we are willing to make ourselves available at any time between now and then to confer.

In the interest of making any conferral more productive, I've addressed a few points from your email below:

- *Regarding waiver:* we explained our position during the meet-and-confer. To the extent that what you are now requesting are legal citations, please see the following, non-exhaustive opinions, which collectively support our position:
  - *Janvey v. Alguire,* No. 3:09-cv-00724-N-BQ, 2018 WL 11362638 (N.D. Tex. Oct. 17, 2018)
  - *Eureka Fin. Corp. v. Hartford Acc. & Indem. Co.,* 136 F.R.D. 179 (E.D. Cal. 1991)
  - *Burch v. Regents of the University of Cal.,* No. CIV. S-04-0038 WBS GGH, 2005 WL 6377313 (E.D. Cal. Aug. 30, 2005)
- *Regarding the amended privilege log:* we cannot delay the case to indefinitely wait on an amended log. For example, we did not meet-and-confer last Friday, as you state, but the week prior. We expect that you will serve us an amended privilege log ASAP, otherwise we will not hesitate to add your delay in providing one to our motion to compel.
- *Regarding privilege assertions:* it is insufficient for you to say that you're asserting privilege arguments on a document-by-document basis when you refuse to log all responsive documents and when the Court specifically asked for the parties to "meaningfully concur" on the extent of the First Amendment privileges asserted.
  - If our understandings of your privilege arguments are incorrect, please correct us in writing. If you continue to refuse to confer, we will raise your refusal to clarify the scope of your privilege assertions in our motion.
- *Regarding Defendants' discovery requests:* your email equates apples and oranges. Plaintiff served their requests on February 5, 2024. We have been waiting nearly six months and have received only a few thousand documents out of the terabytes of information you claim to have collected. By contrast, Defendants served their requests in May. We are not the cause of delay here—and have been making productions apace with several thousand pages produced and more on the way.

As stated up front, I am willing to meet-and-confer at any time between now and Friday evening. My hope is always that we can narrow our dispute and limit the need for Court intervention as much as possible, particularly given the parties clear disagreement over certain issues of governing law.

Best,
-Alex Dvorscak
Stone | Hilton pllc
alex@stonehilton.com | (518) 772-8657

---

**From:** Abha Khanna <akhanna@elias.law>
**Sent:** Monday, July 29, 2024 6:23 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Hi Alex,

With regard to the two issues that you believe are ripe for adjudication, we agree that the privileged status of donor information is ready for the court's review, but we disagree that your argument that Defendants have somehow waived the Texas Shield Laws is similarly ripe. Despite repeated requests, we still have not received any legal authority from you suggesting that (i) the preservation of a privilege objection in RFP responses, coupled with (ii) the specific invocation of a privilege on a first privilege log can lead to the extreme result of complete waiver.

We remind you that your first motion to compel was filed before you provided us with your intended legal arguments and citations, and thus needlessly involved the court in matters that could be (and to a large extent, have been) resolved in conferrals. *See, e.g., Dondi Properties Corp. v. Comm. Sav. & Loan Ass'n,* 121 F.R.D. 284, 289 (N.D. Tex. 1988). If you have any authority indicating the Defendants waived the Press Shield law despite (1) our assertion of "the First Amendment privilege and reporter's privilege" "as well as any other applicable privilege or shield law" in our RFP responses *and* (2) our document-by-document privilege objections/assertions, please provide it for our review immediately. If you have no such authority, of course a motion would be inappropriate. Moreover, Defendants have already committed to re-serving our June 28 privilege log following the parties' meet and confer last Friday. Raising any log-related issues with the Court before Plaintiff can assess whether it disagrees with Defendants' revised privilege designations is similarly inappropriate.

With regard to your questions about our June 28 privilege log, each of your four assertions is mistaken. The privilege objections we raised in our log *apply to the individual documents that were logged.* Defendants have and will continue to raise objections on a document-by-document basis. Thus, it is possible that some documents falling within that four categories you enumerate will be produced and that other documents within those categories will be withheld or redacted and logged based on the Texas Press Shield laws, the First Amendment, or any other relevant privilege.

Finally, we would like to resolve the confusion you expressed regarding our production and privilege schedule. As we have indicated many times, the search terms merited by your broad discovery requests have pulled in an enormous quantity of documents for review. We are aware that some of these documents will contain drafts of articles, some may contain donor information, and many will be irrelevant to the claims or defenses at issue. Our recognition that draft articles exist, however, was not a representation that we had yet identified and reviewed every needle in the haystack.

It is conspicuous that you fault Defendants for referencing future document productions in their interrogatory responses when Plaintiff, of course, did the exact same thing. *See* X's R&Os to MMFA's 1st and 2nd Interrogatories Nos. 2, 3, 5, and 7. It appears that the parties have a mutual interest in identifying reciprocal expectations about future document productions to ensure that the documents each side regards as essential are produced at a pace sufficient to leave time for deposition preparation and, where necessary, the Court's involvement. We are discussing possible approaches internally and will share our recommendation by early next week.

Defendants continue to remain open to conferring to reach mutually satisfactory resolutions to our differences, but stress that it cannot be a one-way conversation where one party makes concessions and compromises while the other simply repeats its same arguments without legal support.  Good-faith efforts at discovery will be a more effective use of everyone's time and resources—including the Court's.

Best,
Abha

**Abha Khanna**
Elias Law Group LLP
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177
akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Friday, July 26, 2024 6:04 AM
**To:** Abha Khanna <akhanna@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Hi Abha,

Thank you for last Friday's meet-and-confer and your follow-up email. With a few exceptions, it appears we have narrowed the privilege disputes to two issues ripe for adjudication.

First, the parties disagree about whether the Texas "Press Shield Laws" was waived or applies at all. We dispute your mischaracterization of prior meet-and-confers as having discussed Texas "Press Shield Laws" (they have not) and the appropriate level of specificity needed to lodge a proper privilege objection. But this disagreement should not foreclose prompt adjudication of your privilege claim, which presents a purely legal question regarding the scope and applicability of Texas "Press Shield Laws." To diligently follow the Court's amended scheduling order, we intend to file a motion to compel next **Friday, August 2**. We are, of course, willing to confer again if you believe additional conversations will further narrow the parties' disputes.

Second, the parties' dispute about donor information is also ripe for Court resolution. You indicated that Defendants' interrogatory responses would tee up the question of whether Defendants must disclose donor information. We have reviewed your interrogatory responses and agree. Defendants have made clear they will not search for or produce documents regarding donor information—let alone log the documents. X believes Defendants are required to do so, and so intends to compel a complete interrogatory response on **Friday, August 2**. Because the legal issue appears ripe for court resolution, we do not understand further discussion to be required. If you disagree and wish to discuss further, please let us know.

Defendants' position is unclear regarding the drafts of the November 16 and 17 articles and any editing, feedback, or other communications regarding the Articles that Defendant Hananoki received. For months, X's position that it seeks such information was clearly made through requests for production, meet-and-confers, and interrogatories. Now in your email response below you misconstrue our position as seeking "core documents" somehow separate and apart from its as-served RFPs. This characterization is both untrue and unhelpful.

X was surprised by Defendants' privilege log because it contains *none* of these documents. You claim that these documents have not been "identified to date," placing the quoted words in bold text. But that position facially contradicts countless representations made by Defendants. *Defendants* have consistently identified these documents as privileged from the very first meet-and-confer and at every subsequent meet-and-confer thereafter. These conferences have always referred to Hananoki's notes, drafts of the Article, and Donor identification and *Defendants* have always referred to these as documents they consider privileged. Since these are documents that *Defendants* have consistently identified during meet-and-confers (and represented to the Court) as being privileged, they must have been identified by now. X will not accept a situation where Defendants have placed these documents on the bottom of the production stack such that X will receive these documents—or see them logged—for the first time at the close of discovery.

Although you stated on the call that the interrogatory responses would clarify Defendants' privilege objections regarding these documents and the application of the First Amendment and Texas "Press Shield laws," they do not. Instead, Defendants say that X must wait for "Defendants' forthcoming responses to requests for production for further information about specific feedback Mr. Hananoki received" about the Articles prior to publication. Once again, this contradicts your claim that these documents have not been "identified to date," further reinforcing how Defendants must have identified some documents regarding the "specific feedback" that Defendant Hananoki received.

Making X guess about what will be produced and when does not comport with the Court's instruction that the parties meaningfully confer to clarify the privilege dispute and that required Defendants to alert the Court as to "whether any dispute regarding the assertion of First Amendment privileges remain." ECF No. 65 at 3. Please let us know when Defendants will receive a privilege log listing these documents and the production of documents referenced in Defendants' interrogatory responses. Otherwise, to keep this case moving in compliance with the Court's schedule, we will have no choice but to raise this issue in the motion to compel.

With respect to the items you have identified on your June 28, 2024 privilege log, below is our understanding of Defendants' assertions of privilege. We ask that you advise us by **Wednesday, July 31** if any of these understandings are mistaken so that the parties can cleanly tee up these issues for judicial resolution.

1. Defendants assert that all communications between Defendant Hananoki and any Media Matters editors about the Articles are privileged under Texas "Privilege Shield Laws" but *not* under the First Amendment.
2. Defendants assert that all drafts of the Articles are privileged under Texas "Privilege Shield Laws" but *not* under the First Amendment.
3. Defendants assert that all internal communications about *other* articles published by Media Matters are privileged under the Texas Shield Law but *not* under the First Amendment.
4. Defendants assert that all communications with third parties as part of drafting, researching, or revising articles written by Media Matters is privileged under both the Texas Sheild Law and the right of association protected by the First Amendment.

Lastly, we agree to the revised format for privilege logs that you propose below. However, we continue to object to any descriptors of third parties (e.g., "strategic vendor") that are undefined and vague. We expect that any revised descriptions will provide sufficient information for both X and

the Court to evaluate each privilege claim.

Best,

-Alex Dvorscak

STONE | HILTON PLLC

alex@stonehilton.com | (518) 772-8657

---

**From:** Abha Khanna <akhanna@elias.law>
**Sent:** Wednesday, July 24, 2024 12:34 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Alex,

Thank you for meeting and conferring on Friday evening. Below is a summary of the key takeaways from our discussion:

*First*, regarding your concerns—expressed for the first time on our call—that Defendants had not included on their privilege log all materials that X considers "core documents," Defendants explained that X's discovery requests do not make any distinction regarding which documents X considers "core" to their case. Instead, X's requests seek every document in Defendants' possession that even *mention* broad terms or concepts (such as "content moderation," RFP No. 6) that are a regular component of Defendants' work. As Defendants have repeatedly explained, this search has swept in an incredible volume of documents for review. That review continues every day.

Defendants' first privilege log identified documents that had been reviewed and determined to be privileged as of the date of that log. The parties have mutually agreed to subsequent privilege log exchanges through the end of the year, recognizing that it will likely take several months to review all potentially responsive documents. This sequencing is consistent with a fair reading of the Court's orders and the parties' own agreements. The Court's June 6 order, as you know, was entered when discovery was set to close on July 29—that is, before the parties jointly sought an extension and thus before the Court recognized "the volume and complexity of ongoing document discovery" and extended the discovery deadline until December 31. *See* ECF No. 69. The parties subsequently negotiated a revised privilege log agreement, and on June 10 we memorialized via email an agreement reached by phone on how to sequence: "With respect to the June 28 'Deadline for Defendants to Provide First Privilege Log and Associated Documents,' the parties understand that on June 28 Defendants will produce a log **of any privileged documents identified to date**, along with copies of any redacted documents referenced therein, with additional document productions and privilege logs to follow in accordance with the parties' forthcoming Privilege Log Agreement." Then on July 2 we agreed to future privilege log exchanges in September, October, November, and December, and further agreed that this course of conduct did not require the Court's imprimatur. Just as X did not produce all responsive documents in its first (and so far, only) document production, it was not reasonable to expect Defendants to log all privileged documents in their first of several scheduled privilege logs, particularly since the parties had already stipulated that "neither side can reasonably meet the existing discovery deadlines." ECF No. 66 at 3. To the extent X now recognizes that the documents relevant to this case can be found through requests much narrower than those that X has served to date, Defendants welcome revised RFPs to expedite the review and logging of responsive documents.

In response to X's related concern about the lack of donor-related documents on their first privilege log, Defendants explained that this dispute is best presented for the Court's adjudication based on Defendants' responses and objections to X's interrogatories. Because Defendants are not separately searching for donor-related documents (as made clear in our objections and responses), these documents will appear on our privilege log only to the extent the documents are responsive to search terms generated by other requests. No such documents had been established as responsive and privileged as of the date of our first log.

*Second*, regarding your suggestion that Defendants waived any invocation of Texas's press shield law by failing to raise it in earlier discussions, in our July 19 email we pointed you to the shield objection raised in our very first responses and objections, and we further reminded you during our call that the shield law was discussed in the parties' very first discovery meet-and-confer in April. Where X has insisted that Defendants not employ general objections before document review has completed, *see, e.g.*, ECF No. 64 at 3 (X complaining that Defendants' invocation of the shield law in their original responses and objections lacked specificity), it is unreasonable to fault Defendants for raising privilege objections on a document-by-document basis, as contemplated by case law. To date, you have failed to provide us with any authority suggesting that a party waives a privilege by identifying it on their first privilege log.

*Third*, regarding your inquiry into the scope of Texas's press shield law, the parties agreed that the text of the statute speaks for itself. As we explained via email and on our call, the press shield is directly applicable to a media organization like Media Matters and journalists like Mr. Hananoki. During our recent call, we further explained that Defendants' first privilege log invokes the shield law only for documents with no conceivable relevance to this case and that are thus clearly not "essential to the maintenance of a claim or defense." Tex. Civ. Prac. & Rem. Code § 22.024.

*Fourth*, in both our July 19 email and subsequent discussion, Defendants agreed to discuss revisions to the privilege protocol and document descriptions to enhance clarity about the nature of documents being withheld. In response, we have prepared an example of a revised privilege log entry:

| Bates Number | Status | Document Type | From/ Author | To | CC | BCC | Date | Privilege Designation | Document Description |
|---|---|---|---|---|---|---|---|---|---|
| MMFA_013760 | Withheld | Word | Pamela Vogel pvogel@mediamatters.org | | | | 12/5/ 2022 | First Amendment Privilege; TX Press Shield Laws | Agenda for an internal MMFA meeting regarding strategy for avenues of journalistic research and writing for the year, much of which was ultimately not pursued by the organization. The document summarizes right-wing media trends and includes a few stray references to Musk or Twitter outside the context of Musk's incendiary remarks or Twitter's advertisement placement.<br><br>**TX Press Shield Law:** This document reflects confidential and sensitive journalistic decision-making processes.<br><br>**First Amendment Associational Privilege**: This document contains internal communications concerning strategy and messaging. |

If this addresses the concerns that you raised, Defendants will reproduce the entire log with similar changes.

Best regards,

**Abha Khanna**
Elias Law Group LLP
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-662-0177
akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

**From:** Abha Khanna
**Sent:** Friday, July 19, 2024 1:20 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Alex,

In advance of our call, to facilitate meaningful discussion and a good-faith attempt by both sides to resolve the issues, please find below Defendants' preliminary responses to the concerns you raised:

First, Defendants' Texas Press Shield Law assertions are timely. Contrary to your representations, our original responses and objections to X's First and Second RFP sets *did* reference shield laws—we objected to producing "documents or communications that are protected by the attorney-client privilege, work-product doctrine, **and/or any other applicable privilege or shield law**, and/or constitute trial preparation material within the meaning of Rule 26." (emphasis added); *see also* ECF 64, Pls' Reply in Support of its Motion to Compel at 3 ("As X detailed in its motion, Defendants asserted a catchall objection to X's requests for production for attorney-client privileges, work-product protections, "and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26."). Because Defendants were still in the process of collecting and reviewing initial batches of documents, we could not be certain at that time what information would be found in the documents and which privileges would be implicated. You objected to the use of general objections that were not tied to specific documents, and so Defendants removed this language from subsequent amendments to our discovery responses and agreed to log privilege objections on a document-by-document basis. *See, e.g.*, Second Amended Responses and Objections to Plaintiff's 1st Requests for Production; Amended Responses and Objections to Plaintiff's 1st Requests for Production to Carusone; Amended Responses and Objections to Plaintiff's 2nd Requests for Production. Moreover, Defendants continued to raise the possibility that shield law privileges would be implicated and to preserve our right to make the objection if it was implicated. In our joint ESI Protocol, Defendants expressly added privilege preservation language that states: "Nothing in this Stipulation shall be interpreted to require disclosure of relevant information protected by the attorney-client privilege, attorney work-product doctrine, First Amendment Privilege, **reporter's privilege, shield laws, or any other applicable privilege or immunity**." *See* ECF 67 at 2.

Contrary to Plaintiff's shifting argument, Defendants' assertion of this privilege could not have been both *premature* when raised in their initial R&Os and yet also *too late* when raised in their first privilege log. *La Union Del Pueblo Entero v. Abbott*, No. SA-21-CV-00844-XR, 2022 WL 17574079, at *9 (W.D. Tex. Dec. 9, 2022) (quoting *Taylor Lohmeyer Law Firm P.L.L.C. v. United States*, 957 F.3d 505, 510 (5th Cir. 2020)) (noting the "assertions of privilege must 'be specifically asserted' on a document-by-document basis," as "the relevance and need for the document clearly depend on the contents of the document itself"). (To be clear, nor have Defendants waived privileges that they did not assert in their first log. Waiver would occur only as to specific documents that Defendants voluntarily and knowingly disclose. *See, e.g.*, *AHF Community Dev., LLC v. City of Dallas*, 258 F.R.D. 143, 148 (N.D. Tex. 2009).)

Second, the Texas Press Shield Law privilege is applicable. "Under Fed. R. Evid. 501, the availability of a privilege in a diversity case is governed by the law of the forum state," allowing Defendants to assert privileges provided by Texas law. *Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 724 (5th Cir.), *opinion supplemented on denial of reh'g*, 628 F.2d 932 (5th Cir. 1980). The relevant statute, Tex. Civ. Prac. & Rem. Code Ann. § 22.023 provides that "a judicial . . . body with the authority to issue a subpoena *or other compulsory process may not compel a journalist to testify regarding or to produce or disclose in an official proceeding*" any information covered by the privilege. Tex. Civ. Prac. & Rem. Code Ann. § 22.023(a) (emphasis added). The statute nowhere suggests that journalists forfeit the Shield Law's protections when they are defendants subject to requests for production rather than third parties subject to subpoenas. *See, e.g.*, *Abraham v. Greer*, 509 S.W.3d 609, 613 (Tex. App. 2016) (trial court noting that the privilege would apply to the defendant if he was deemed to be a journalist). Plaintiff's reading would run afoul of the statute's very purpose, which includes "increas[ing] the free flow of information and preserv[ing] a free and active press." Tex. Civ. Prac. & Rem. Code § 22.022.

Far from limiting the Shield Law's scope, the subsequent section you cite to, Tex. Civ. Prac. & Rem. Code § 22.024, sets the high bar that Plaintiff must clear to overcome the relevant privilege. That section makes clear that a "compulsory process [can]not be[] used to obtain peripheral, nonessential, or speculative information," *id.* at § 22.024(5), and that the information being sought must be "essential to the maintenance of a claim or defense of the person seeking the testimony, production, or disclosure," *id.* at § 22.024(6). The documents Defendants logged as privileged under the Shield Law satisfy each of these provisions.

Third, Defendants disagree with Plaintiff's contention that their descriptions of documents are "vague," "generalized," or "insufficiently specific." Defendants are not obligated to reveal identifying details—including, for example, details identifying strategic vendors and partners—that may undermine or abrogate the very privilege they assert. Defendants' descriptions preserve the privilege's protections while informing Plaintiff of the types of communications found within the identified documents. Defendants are open to discussing the additional detail that you believe is appropriate to discern if any compromises can be reached.

Fourth, Defendants continue to disagree with Plaintiff about the availability of the First Amendment privilege in civil litigation discovery disputes. We again refer Plaintiff to the ample arguments and caselaw we have provided over the last several months on the subject.

Lastly, Defendants will take a closer look at document MMFA_013760 to discern if the information Plaintiff seeks is accessible and, if so, will update the log accordingly. In light of the Parties' recent agreement to include date information on the privilege log, Defendants will also re-issue the log with that column included.

We look further to discussing further later today.

Best,
Abha

**Abha Khanna**
Elias Law Group LLP
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177

akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Tuesday, July 16, 2024 12:14 PM
**To:** Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Abha Khanna <akhanna@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@elias.law>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-U-lawfirm.com>; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Hi Daniela,

We're available to meet at 4:00 ET / 3:00 CT on Friday. We'll send around a calendar invite.

Best,
-Alex Dvorscak
STONE | HILTON PLLC
alex@stonehilton.com | (518) 772-8657

**From:** Daniela Lorenzo <dlorenzo@elias.law>
**Sent:** Monday, July 15, 2024 3:39 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Abha Khanna <akhanna@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@elias.law>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-U-lawfirm.com>; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Alex,

Our team is not available until Friday between 3-5 ET. If that works for your team, please send us a calendar invite in that time range. If not, please propose times that work for you all next week.

Best,
Daniela

**Daniela Lorenzo** (she/her)
Litigation Associate
Elias Law Group LLP
202.987.5400
dlorenzo@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Friday, July 12, 2024 9:47 PM
**To:** Jacob Shelly <jshelly@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Abha Khanna <akhanna@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@elias.law>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-U-lawfirm.com>; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Counsel,

Pursuant to Section III of the parties' Revised Stipulation for the Exchange of Privilege Logs and the Court's order on X's motion to compel (ECF No. 65), X objects to the assertions of privilege for the following documents (identified by Bates label):

MMFA_013561, 013562-013579, 013580-013597, 013598-013616, 013617-013635, 013636-013655, 013656-013676, 013677-013697, 013698, 013699, 013700-013714, 013715, 013716-013748, 013749-013755, 013756, 013757, 013758, 013759, 013760, 013761, 013762, 013763, 013764, 013765, 013766, 013767, 013768, 013769, 013770, 013771, 013772, 013773, 013774, 013775, 013776, 013777, 013778-013782, 013783, 013784, 013785-013787, 013788.

As the Court instructed, we would like to meet and confer regarding our objections. Please let us know your availability to confer next week from Tuesday (7/16) onward.

To aid the discussion, we have briefly set out our overarching objections to your privilege assertions. These descriptions are not meant to be

exhaustive and are made without intention of waiving or limiting any argument that X may advance in any future motion practice.

1. Assertion of privilege based on "TX Press Shield Laws" (MMFA_013561, 013562-013579, 013580-013597, 013580-013597, 013598-013616, 013636-013655, 013656-013676, 013677-013697, 013698, 013699, 013700-013714, 013715, 013716-013748, 013756, 013757, 013758, 013759, 013760, 013761, 013762, 013763, 013764, 013765, 013766, 013767, 013768, 013769, 013770, 013771, 013772, 013773, 013774, 013775, 013776, 013777, 013778-013782, 013783, 013784, 013785-013787, 013788):
   - The assertion is untimely and therefore waived.
       - The parties have met and conferred over the privileges asserted by Defendants many times over the past several months, and prior to this June 28 privilege log submission, the only specific privileges asserted were a federal-law reporter's privilege (e.g., RFP No. 1), purported associational rights, (e.g., RFP No. 3), and protection of donor information. (e.g., RFP No. 17).
   - The privilege is substantively inapplicable.
       - On its own terms, Texas's shield law applies only to "subpoenaing . . . information." Tex. Civ. Prac. & Rem. Code § 22.024(4). As parties to this litigation, Defendants are instead subject to the Federal Rules of Civil Procedure governing disclosure and production of documents. See Fed. R. Civ. P. 26 & 34.
       - The assertion of privilege exceeds the scope of any statutory protections, which would extend at most to certain materials "prepared while acting as a journalist" or the "source" thereof. Tex. Civ. Prac. & Rem. Code § 22.023(1)-(2).
   - Defendants' generalized claim of privilege for "internal journalistic process and procedures," "MMFA's journalistic process and procedures," "process" and/or "strategy" is insufficiently specific.
       - Even if the Texas Civil Practice & Remedies Code applies here (and Defendants fail to specify which specific statute would cover the documents at issue) these assertions are vague, generalized and do not provide sufficient detail for X or the Court to determine how or why the underlying document would be privileged.

2. Assertion of a First Amendment and/or "TX Press Shield Laws" privilege with respect to "strategic vendors," "vendor[s]," "researching organizations," or "strategic partners" (MMFA_013562-013579; 013580-013597, 013598-013616, 013617-013635, 013636-013655, 013656-013676, 013677-013697, 013716-013748, 013756, 013757, 013776, 013757, 013776):
   - This assertion is vague, impermissible boilerplate. X is unable to determine what a "strategic vendor" is or why the identities of Defendants' "strategic vendors" would be privileged. The same is true for Defendants' assertions of privilege based on "researching organizations" and "strategic partners," as well as any communications between Defendants and any "vendor."
   - The First Amendment does not protect the disclosure of vendor identities during discovery in civil litigation between private parties. The same is likely true of Defendants' claim of privilege with respect to "researching organizations" and "strategic partners," however Defendants' privilege log does not contain sufficient detail for X to determine the First Amendment's applicability, if any.
   - The assertion of a "TX Press Shield Laws" privilege suffers deficiencies similar to those identified above.

3. Assertion of privilege for any material purportedly unrelated to this case and, specifically, any assertion of First Amendment privilege with respect to allegedly unrelated communications with journalists (MMFA_013749-013755):
   - Defendants' descriptions provide no information allowing X or the Court to gauge whether the documents are "unrelated." If Defendants claim a document is unrelated, Defendants must provide sufficient information to allow X to assess whether to dispute that characterization.
   - The asserted First Amendment privilege is also too vague and lacking in detail to allow X or the Court to determine the applicability of the privilege.
   - The First Amendment does not protect responsive communications in civil litigation between private parties.

4. Assertion of First Amendment privilege with respect to an internal MMFA strategy meeting (MMFA_013760):
   - This assertion does not provide sufficient information to allow X or the Court to determine the applicability of the privilege. For example, the privilege log does not list an author, date, or other pertinent information.
   - The First Amendment does not shield discussions about journalistic strategy from discovery in civil litigation between private parties.

Best,

**Alexander M. Dvorscak**
Attorney
STONE | HILTON PLLC
1115 W. Slaughter Ln.
Austin, Texas 78748
alex@stonehilton.com | (518) 772-8657
www.stonehilton.com

CONFIDENTIALITY NOTICE:
This e-mail transmission (and/or the attachments accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege and/or the work-product doctrine. The information is intended only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. Any unauthorized interception of this transmission is illegal. If you have received this transmission in error, please promptly notify the sender by reply e-mail, and then destroy all copies of the transmission.

**From:** Jacob Shelly <jshelly@elias.law>
**Sent:** Friday, June 28, 2024 10:18 PM
**To:** Daniela Lorenzo <dlorenzo@elias.law>; Chris Hilton <chris@stonehilton.com>; Alex Dvorscak <alex@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Abha Khanna <akhanna@elias.law>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Counsel,

Attached please find a letter regarding Defendants' fifth document production and the accompanying privilege log.

**Jacob Shelly**

Elias Law Group LLP
250 Massachusetts Ave NW Suite 400
Washington DC 20001
202-968-4496

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

# Exhibit 5

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

X CORP.,

*Plaintiff*,

    v.

MEDIA MATTERS FOR AMERICA, *et al.*,

      *Defendants*.

Civil Action No. 4:23-cv-01175-O

---

**DEFENDANT MEDIA MATTERS FOR AMERICA'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST INTERROGATORIES**

Defendant Media Matters for America ("Media Matters") hereby serves its responses and objections to Plaintiff X Corp.'s First Interrogatories through its undersigned counsel.

Dated: July 19, 2024                              Respectfully submitted,

                                                  */s/ Abha Khanna*
                                                  **ELIAS LAW GROUP LLP**
                                                  Abha Khanna* (WA 42612)
                                                  1700 Seventh Avenue, Suite 2100
                                                  Seattle, WA 98101
                                                  T: (206) 656-0177
                                                  F: (206) 656-0180
                                                  akhanna@elias.law

                                                  Aria C. Branch (DC 1014541)
                                                  Jacob D. Shelly* (DC 90010127)
                                                  Elena Rodriguez Armenta* (DC 90018798)
                                                  Daniela Lorenzo* (DC 90022335)
                                                  250 Massachusetts Ave, NW Suite 400
                                                  Washington, D.C. 20001
                                                  T: (202) 968-4490
                                                  F: (202) 986-4498
                                                  abranch@elias.law
                                                  jshelly@elias.law
                                                  erodriguezarmenta@elias.law
                                                  dlorenzo@elias.law

                                                  **GIBSON, DUNN & CRUTCHER LLP**
                                                  Andrew LeGrand (TX 24070132)
                                                  2001 Ross Avenue, Suite 2100
                                                  Dallas, TX 75201
                                                  T: (214) 698-3100
                                                  F: (214) 571-2960
                                                  alegrand@gibsondunn.com

                                                  Theodore J. Boutrous, Jr.* (CA 132099)
                                                  333 South Grand Avenue
                                                  Los Angeles, CA 90071
                                                  T: (213) 229-7000
                                                  F: (213) 229-7520
                                                  tboutrous@gibsondunn.com

                                                  Amer S. Ahmed* (NY 4382040)
                                                  200 Park Avenue
                                                  New York, New York 10166
                                                  T: (212) 351-4000

2

F: (212) 351-4035
aahmed@gibsondunn.com

\* Admitted *pro hac vice*

*Counsel for Defendant Media Matters for America*

3

**CERTIFICATE OF SERVICE**

I hereby certify that this document was served on all counsel of record for Plaintiff via email on July 19, 2024, pursuant to counsel's agreement to accept service via electronic means.

*/s/ Abha Khanna*
Abha Khanna

## PRELIMINARY STATEMENT

The responses set forth herein are based on the information and documents reasonably available to Defendants at this time, but discovery in this matter, including Defendants' investigation into the issues raised in this lawsuit, is still ongoing. Defendants reserve their right to alter, supplement, amend, correct, clarify, or otherwise modify these responses and objections, to assert additional objections or privileges in any subsequent supplemental response(s), and to modify their responses if and when they learn additional information.

By making the accompanying responses and objections Defendants do not waive, and hereby expressly reserve, their right to assert all objections as to the admissibility of such responses into evidence in this action, or in any other proceedings.

Moreover, Defendants maintain that this Court has no personal jurisdiction over Media Matters, Eric Hananoki, or Angelo Carusone, and that the Northern District of Texas is not the proper venue for this dispute. *See* Defendants' Brief in Support of their Motion to Dismiss, ECF 41 at Sections I and II; Defendants' Reply in Support of their Motion to Dismiss, ECF 51 at Sections I and II. Defendants provide these responses and objections subject to and without waiving any of their arguments for dismissal.

## RESPONSES TO INDIVIDUAL INTERROGATORIES

**INTERROGATORY NO. 1:** Identify and list with particularity all of Your owners, principals, directors, officers, employees, contractors, freelancers, authors, and agents who were affiliated with You at any point in time between April 2021 and the present. For avoidance of doubt, particularity requires You to, at a minimum, for each person identified, (1) to provide current and all former job titles and job descriptions; (2) a start and, if applicable, end date; (3) current or last

known contact information; (4) the reason for separation, if applicable; and (5) all compensation information (*e.g.*, salary, bonuses, commissions, benefits, etc.) by year.

**OBJECTIONS**: Defendants object to this interrogatory on the grounds that it constitutes at least three discrete interrogatories—(1) the name, title, contact information, occupational status, and job description of relevant individuals; (2) the reason for separation, where applicable; and (3) compensation information. *See, e.g.*, *Garza v. Altaire Pharmaceuticals, Inc*., No. 3:20-CV-1524-B-BK, 2021 WL 3809102, at *4 (N.D. Tex. May 28, 2021) (finding interrogatories were multiplicative where "each subpart of these interrogatories can be answered without answering either of its other subparts").

Defendants also object to Interrogatory No. 1 for seeking information that is overbroad and not relevant and proportional to the needs of the case and on the grounds that collecting all responsive information would be unduly burdensome. Collecting information for all individuals (including contractors and agents) affiliated with Defendants—even where the individuals had nothing to do with researching, writing, editing, designing, publishing, or promoting the statements at issue in this case—would impose severe burdens on Defendants. Consistent with other decisions in this Circuit, Defendants will identify individuals responsible for work related to the November 16 and 17, 2023 Articles. *See, e.g.*, *Abraham v. Alpha Chi Omega*, 271 F.R.D. 556, 561 (N.D. Tex. 2010) (finding that identifying all employees "involved in" the licensing program was overbroad and limiting response to those "responsible for" the licensing program would sufficiently respond to the request); *Am. Airlines, Inc. v. Delta Air Lines, Inc*., No. 4:19-CV-01053-O, 2020 WL 8115870, at *3 (N.D. Tex. July 14, 2020) (similar). Defendants further object that compensation information bears no connection to the allegations at issue in this litigation.

6

**RESPONSE**: Plaintiffs attach Exhibit A, which includes names, job titles, role summaries, and employment dates for individuals who have been responsible for work related to the November 16 and 17, 2023 Articles. All individuals are current MMFA employees and may be contacted through counsel.

**INTERROGATORY NO. 2:** Identify and list with particularity Your top 20 funding sources (whether from an individual or entity) by cumulative dollar amount received from 2021 to present. For avoidance of doubt, particularity requires You to, at a minimum, (1) identify the funding source; (2) identify the location of the funding source; (3) state the amount of money received by You from that funding source on a quarterly basis; (4) state whether the funding had any conditions, earmarks, or other restrictions from general use by Media Matters; and (5) a description of the conditions, earmarks, or other restrictions, if any.

**OBJECTIONS**: Defendants object to Interrogatory No. 2 as being harassing and irrelevant to any claim or defense asserted in this litigation, and as calling for First Amendment privileged information. The identities of Defendants' funders are not relevant to any element of any of Plaintiff's three claims, nor are they relevant to a potential calculation of damages. Instead, this Interrogatory represents a fishing expedition for highly sensitive and privileged information, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. *See, e.g.*, *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 610–11, 616–17 (2021); *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 460 (1958); *see also Whole Woman's Health v. Smith*, 896 F.3d 362, 372 (5th Cir. 2018), *as revised* (July 17, 2018); *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010). Disclosure of donor identifying information can also lead to donors being harassed for and deterred

7

from affiliating with organizations they support. Indeed, Elon Musk himself has called Media Matters "an evil propaganda machine that can go to hell" and vowed that X "will pursue not just the organization but anyone funding that organization. I want to be clear about that. Anyone funding that organization, will be, we will pursue them."[1]

      **RESPONSE**: Based on the foregoing objections, Defendants will not provide a response to Interrogatory No. 2.


**INTERROGATORY NO. 3:** Describe with particularity all of your policies, procedures, rules, guidelines, and guides that are and/or were in place to ensure You write and publish accurate and non-misleading reporting. For avoidance of doubt, particularity requires You to, at a minimum, (1) identify the policy; (2) identify how the policy was conveyed, for example through document (including emails), presentation, or handbook; (3) identify how employees, freelancers, contractors, and other individuals who write or investigate pieces published to the Media Matters website or that were otherwise distributed by Media Matters are trained in the policy; (4) identify any reporting required by the policy; (5) identify any documentation related to or required by the policy to ensure compliance with the policy; and (6) identify the stated consequence or punishment for noncompliance with the policy.

      **OBJECTIONS**: Defendants object to Interrogatory No. 3 because its request for descriptions of documents—without any limitation as to when those documents were created or

---

[1] *@TheChiefNerd*, X.com (Dec. 10, 2023, 4:24 PM),
(https://x.com/TheChiefNerd/status/1733960832571122115) (last accessed July 15, 2024).

implemented or whether those documents have anything to do with the reporting at issue in this case—is overbroad, unduly burdensome, and not relevant or proportional to the needs of this case.

Defendants further object to Interrogatory No. 3 on the grounds that it constitutes at least two separate interrogatories labeled as one: (1) what policies Media Matters has, and (2) how they are enforced. *See, e.g.*, *Garza*, 2021 WL 3809102, at *4 (finding interrogatories were multiplicative where "each subpart of these interrogatories can be answered without answering either of its other subparts").

**RESPONSE**: Defendants respond to Interrogatory No. 3 for policies in place in the 2023-2024 period as follows:

Media Matters has a rigorous publication process supervised by dedicated editors to ensure articles published on its website are accurate. When onboarded, employees with content creation responsibilities are trained in Media Matters's editorial practices using both written guides and hands-on training with editors and/or managers. For each piece of written content published on the website, that process typically includes:

- An initial pitch or outline approved by a relevant manager or member of senior staff;

- a thorough line-edit, including meticulous fact-checking, from one of Media Matters's dedicated editors; and

- a final review from a relevant manager, editor, or member of senior staff prior to publication.

Depending on the article, a piece may also receive several other layers of review, including a first edit by a relevant manager prior to review by a dedicated editor, a thorough second edit by a different editor if deemed necessary, and additional review from members of senior management or Media Matters's legal counsel prior to publication.

Training materials related to the publication process are accessible to staff on an ongoing basis through the organization's internal systems, and the materials are regularly referenced and reshared in skills training sessions. After pieces are published, potential corrections are governed by Media Matters's corrections policy and with the guidance and input of Media Matters's senior and executive staff. Media Matters also has a corrections section on its website where anyone may request a correction. All corrections are documented. Errors—both from writers and editors—are considered as part of the performance management process for employees.

Defendants have produced documents responsive to Interrogatory No. 3 at Bates range MMFA_016999 – MMFA_017331.

**INTERROGATORY NO. 4:** For each policy identified in response to Interrogatory No. 3, please state with particularity whether the policy has ever been violated, identifying at a minimum the violation, the violator, the time when the violation occurred, and what disciplinary or corrective action, if any, was taken in response.

**OBJECTIONS**: Defendants object to Interrogatory No. 4 as unduly burdensome and disproportionate to the needs of the case because it requests the identification of any violation "ever" committed, without any limitation as to when the purported violation may have occurred.

**RESPONSE**: Defendants are not aware that any of the policies summarized and produced related to writing and publishing accurate and non-misleading reporting in response to Interrogatory No. 3 were violated from 2023 to 2024. While published articles have occasionally contained inaccuracies—as anticipated by the Media Matters's correction policy, beginning Bates MMFA_017087—corrections have been addressed consistently with Media Matters's policies, procedures, rules, guidelines, and guides.

**INTERROGATORY NO. 5:** Identify with particularity all X accounts created by You or any individual affiliated with You, including but not limited to all employees, freelancers, contractors, and other individuals who write or investigate pieces published to the Media Matters website or that were otherwise distributed by Media Matters. For avoidance of doubt, particularity requires You to, at a minimum, (1) identify the account handle; (2) the email and/or phone number associated with the account, (3) the name of the account's primary user; (4) the name of the individual who created the account; (5) the names of any other individuals who have access to the account; and (6) the date when the account was created.

**OBJECTIONS**: Defendants object to Interrogatory No. 5 as being overly broad, burdensome, harassing, and disproportionate to the needs of this case because it requests information about "all X accounts," created not only by Media Matters but also "any individual affiliated" with it, "including but not limited to all employees, freelancers, contractors, and other individuals who write or investigate pieces published to the Media Matters website or that were otherwise distributed by Media Matters," with no limitations as to whether the accounts were used in connection with the Articles that are the subject of this litigation and to include even any and all of those individuals' personal accounts. The interrogatory is also without any limitation on when the accounts were operational or being used. As a result, it seeks information that is not only overbroad, burdensome, harassing and disproportionate to the needs of the case but also not relevant to any claim or defense asserted in this litigation.

**RESPONSE**: The following accounts have been used for research and/or reporting on X Corp. in 2023 and/or 2024:

**Account Handle**: @rwemails
**Email:** rwemailsehhmmfa@gmail.com
**Name of user**: Eric Hananoki
**Other individuals with access**: None
**Date created**: July 2020

**Account Handle**: @ehananoki
**Email:** ehananoki@mediamatters.org
**Name of user**: Eric Hananoki
**Other individuals with access**: None
**Date created**: February 2009

**Account Handle**: @krgogarty
**Email:** kgogarty@mediamatters.org
**Name of user**: Kayla Gogarty
**Other individuals with access**: None
**Date created**: September 2018

**Account Handle**: @Danapatriot
**Email:** kgogarty@mediamatters.org
**Name of user**: Kayla Gogarty
**Other individuals with access**: None
**Date created**: May 2023

**Account Handle**: @ohhkaygo
**Email:** kaylagogartyy@gmail.com
**Name of user**: Kayla Gogarty
**Other individuals with access**: None
**Date created**: November 2011

**Account Handle:** @beasherman42
**Email:** beasherman42@gmail.com
**Users/Access:** All MMFA staff
**Date when created:** November 2021

**Account Handle:** @anettemichaels4
**Email:** anettemichaelson06@gmail.com
**Users/Access:** All MMFA staff
**Date when created:** January 2022

**Account Handle:** @AlKapDC
**Email:** akaplan@mediamatters.org
**Name of user**: Alex Kaplan
**Other individuals with access**: None
**Date created**: November 2015

12

**Account Handle**: @RubySeavey
**Email**: rseavey@mediamatters.org
**Name of user**: Ruby Seavey*
**Other individuals with access**: None
**Date created**: September 2014
*No longer with MMFA as of June 30, 2023*

**Account Handle**: @CamKC_17
**Email**: camc177@gmail.com
**Name of user**: Camden Carter*
**Other individuals with access**: None
**Date created**: July 2011
*No longer with MMFA as of May 28, 2024*

**Account Handle**: @_nataliemathes_
**Email**: nmathes@mediamatters.org
**Name of user**: Natalie Mathes*
**Other individuals with access**: None
**Date created**: July 2019
*No longer with MMFA as of March 29, 2024*

**Account Handle**: @justinhorowitz_
**Email**: jhorowitz@mediamatters.org
**Name of user**: Justin Horowitz
**Other individuals with access**: None
**Date created**: May 2009

**Account Handle**: @JackWinstan
**Email**: jwinstanley@mediamatters.org
**Name of user**: Jack Winstanley
**Other individuals with access**: None
**Date created**: May 2020

**Account Handle**: @ethancollier_
**Email**: ecollier@mediamatters.org
**Name of user**: Ethan Collier*
**Other individuals with access**: None
**Date created**: April 2021

*No longer with MMFA as of May 28, 2024*

**Account Handle**: @CarlysHandle
**Email**: cevans@mediamatters.org
**Name of user**: Carly Evans*
**Other individuals with access**: None
**Date created**: November 2020

13

| |
|---|
| *No longer with MMFA as of June 30, 2024* |
| **Account Handle**: @JasmineGeonzon<br>**Email**: jgeonzon@mediamatters.org<br>**Name of user**: Jasmine Geonzon*<br>**Other individuals with access**: None<br>**Date created**: July 2019<br><br>*No longer with MMFA as of April 19, 2024* |
| **Account Handle**: @Payarm18<br>**Email**: parmstrong@mediamatters.org<br>**Name of user**: Payton Armstrong<br>**Other individuals with access**: None<br>**Date created**: December 2012 |
| **Account Handle**: @Aud_McCabe<br>**Email**: amccabe@mediamatters.org<br>**Name of user**: Audrey McCabe*<br>**Other individuals with access**: None<br>**Date created**: August 2022<br><br>*No longer with MMFA as of June 14, 2024* |
| **Account Handle**: @EricKleefeld<br>**Email**: ekleefeld@mediamatters.org<br>**Name of user**: Eric Kleefeld*<br>**Other individuals with access**: None<br>**Date created**: May 2009<br><br>*No longer with MMFA as of May 28, 2024* |
| **Account Handle**: @wordsmithsilva<br>**Email**: ssilva@mediamatters.org<br>**Name of user**: Spencer Smith-Silva*<br>**Other individuals with access**: None<br>**Date created**: March 2011<br><br>*No longer with MMFA as of May 28, 2024* |
| **Account Handle**: @Gidraaffe<br>**Email**: gtaaffe@mediamatters.org<br>**Name of user**: Gideon Taaffe<br>**Other individuals with access**: None<br>**Date created**: February 2019 |
| **Account Handle**: @npr_matrix<br>**Email**: csimon@mediamatters.org<br>**Name of user**: Chloe Simon |

14

| |
|---|
| **Other individuals with access**: None<br>**Date created**: August 2018 |
| **Account Handle**: @zpleat<br>**Email**: zpleat@mediamatters.org<br>**Name of user**: Zach Pleat<br>**Other individuals with access**: None<br>**Date created**: February 2009 |
| **Account Handle**: @charishoard<br>**Email**: choard@mediamatters.org<br>**Name of user**: Charis Hoard<br>**Other individuals with access**: None<br>**Date created**: May 2021 |
| **Account Handle**: @AlexPattyy<br>**Email**: apatterson@mediamatters.org<br>**Name of user**: Alex Paterson*<br>**Other individuals with access**: None<br>**Date created**: August 2019<br>*No longer with MMFA as of May 28, 2024* |

**INTERROGATORY NO. 6:** For each account identified in Interrogatory 5, please provide an explanation of whether and how that account was used in connection with the November 16, 2023 Article or the November 17, 2023 Article including but not limited to the research, drafting, and editing and the publication, distribution, or sharing of the Articles in any way.

      **RESPONSE**: The accounts @rwemails and @ehananoki were used by Eric Hananoki for the purpose of conducting research on X, Musk, and Twitter advertisers as detailed in the November 16, 2023 and November 17, 2023 Articles. For an explanation of how these accounts were used, see Defendants' responses to Interrogatories Nos. 7 and 8. No other accounts listed in Interrogatory No. 5 were used in connection with the November 16, 2023 and November 17, 2023 Articles.

15

**INTERROGATORY NO. 7:** Describe with particularity Your investigation, research, writing, review, and editing process prior to publishing and distributing the November 16, 2023 Article. For the avoidance of doubt, please specify at a minimum, (1) each individual who participated in the drafting of the November 16, 2023 Article or reviewed it prior to publication; (2) the job title of each individual; (3) the specific role played by each individual in drafting or reviewing the November 16, 2023 Article; and (4) any comments, revisions, feedback, or approval provided by the individual.

**OBJECTIONS**: Defendants object to subpart 4 of this Interrogatory because it seeks information that Plaintiff has already requested in Requests for Production ("RFP") Nos. 1 and 3. Translating the same information to an interrogatory is not required. *See Cottonham v. Allen*, No. CV 14-729-JJB-RLB, 2016 WL 4035331, at *5 n.3 (M.D. La. July 25, 2016) (denying motion to compel interrogatory because "there are more efficient, less burdensome ways to obtain this same information," including through an RFP that covers the same subject matter).

**RESPONSE**: Eric Hananoki, a senior investigative reporter at Media Matters, authored the November 16, 2023 Article. For years, Mr. Hananoki has been conducting research and reporting on extremism on social media platforms, including X (and its predecessor, Twitter). Following Elon Musk's purchase of X, Mr. Hananoki and reporters from other news organizations observed and reported on what appeared to be an increase in the presence of pro-Nazi accounts and pro-Nazi content on the platform.

Prior to writing the November 16, 2023 Article, Mr. Hananoki became aware of a pro-Hitler and Holocaust denier account (@bambkb) that had written viral pro-Nazi posts and said it had received approximately $3,000 from X's Ad Revenue Sharing Program. Mr. Hananoki published an article describing this account and its collection of advertising revenue from X on

16

November 13, 2023. The November 13, 2023 Article also identified several advertisers whose advertisements were placed next to content published by @bambkb.

Prior to writing the November 16, 2023 Article, Mr. Hananoki was also aware that Linda Yaccarino, CEO of X Corp., had claimed that advertisers were "protected from the risk of being next to" potentially toxic content on the platform. *See* CNBC, *X CEO Linda Yaccarino Explains Reason for Getting Rid of Twitter Name*, https://www.cnbc.com/2023/08/10/x-corp-ceo-linda-yaccarino-says-she-has-autonomy-under-elon-musk.html (Aug. 10, 2023). In light of his findings from the November 13, 2023 Article and his prior research about the rise of extremist content on X, Mr. Hananoki sought to further fact-check Ms. Yaccarino's claim.

To test whether advertisers were "protected" from having their ads placed next to toxic content, Mr. Hananoki used an existing private X account (@rwemails) that he had created in 2020 and used it to follow both a number of pro-Nazi accounts, including but not limited to @bambkb, and several non-ideological corporate accounts. The non-ideological corporate accounts that Mr. Hananoki followed included: @StateFarm, @TGIFridays, @hardmountaindew, @Ritzcrackers, and @TheRealTriscuit.

From November 14 to 16, 2023, the time period in which Mr. Hananoki drafted the November 16, 2023 Article, Mr. Hananoki refreshed the home feed of @rwemails to see what content appeared. There, as documented in his November 16, 2023 Article, Mr. Hananoki found numerous advertisements that appeared next to pro-Nazi content. Mr. Hananoki took screenshots from the @rwemails account demonstrating toxic content appearing alongside advertisements. Mr. Hananoki did not alter those screenshots in any way. In drafting the November 16, 2023 Article, Mr. Hananoki also did not contact any advertisers at all, including those whose accounts he followed in researching the article and those that he identified in the November 16, 2023 Article.

17

On November 15, 2023, while Mr. Hananoki was in the midst of researching the November 16, 2023 Article, Mr. Musk publicly endorsed what appeared to Mr. Hananoki, Media Matters, and many other news organizations to be an antisemitic conspiracy theory. Mr. Musk's comments received widespread media attention. Mr. Hananoki reported on Mr. Musk's apparent endorsement of this theory as part of his November 16, 2023 Article.

The following individuals from Media Matters reviewed a draft of the November 16, 2023 Article prior to publication:

- Beth Cope, Senior Editor

- Ben Dimiero, Editor-in-Chief

- Kayla Gogarty, Research Director

Without waiving any protections provided by Texas shield law, *see* Tex. Civ. Prac. & Rem. Code § 22.021, *et seq.*, Mr. Hananoki directs Plaintiff to Defendants' forthcoming responses to requests for production for further information about specific feedback Mr. Hananoki received about the November 16, 2023 Article prior to publication.

Prior to publication, Mr. Hananoki also provided the proposed headline of the November 16, 2023 Article to Ben Dimiero, Editor-in-Chief, and John Whitehouse, Senior Director, News, for their approval. Both approved the headline.

Other than the information requested by subpart 4, which Defendants object to on the grounds provided above, Defendants are not presently withholding information responsive to this Interrogatory. Defendants will supplement this response if they identify and withhold responsive information.

**INTERROGATORY NO. 8:** Describe with particularity Your investigation, research, writing, review, and editing process prior to publishing and distributing the November 17, 2023 Article. For the avoidance of doubt, please specify at a minimum, (1) each individual who participated in the drafting of the November 17, 2023 Article or reviewed it prior to publication; (2) the job title of each individual; (3) the specific role played by each individual in drafting or reviewing the November 17, 2023 Article; and (4) any comments, revisions, feedback, or approval provided by the individual.

**OBJECTIONS**: Defendants object to subpart 4 of this Interrogatory because it seeks information that Plaintiff has already requested in RFP Nos. 30 and 32. Translating the same information to an interrogatory is not required. *See Cottonham*, 2016 WL 4035331, at *5 n.3 (denying motion to compel interrogatory because "there are more efficient, less burdensome ways to obtain this same information," including through an RFP that covers the same subject matter).

**RESPONSE**: Eric Hananoki, a senior investigative reporter at Media Matters, authored the November 17, 2023 Article. For years, Mr. Hananoki has been conducting research and reporting on extremism on social media platforms, including X (and its predecessor, Twitter). Following Elon Musk's purchase of X, Mr. Hananoki and reporters from other news organizations observed and reported on what appeared to be an increase in the presence of pro-Nazi accounts and pro-Nazi content on the platform.

Prior to writing the November 17, 2023 Article, Mr. Hananoki became aware of a pro-Hitler and Holocaust denier account (@bambkb) that had written viral pro-Nazi posts and said it had received approximately $3,000 from X's Ad Revenue Sharing Program. Mr. Hananoki published an article describing this account and its collection of advertising revenue from X on November 13, 2023. The November 13, 2023 Article also identified several advertisers whose

19

advertisements were placed next to content published by @bambkb. On November 16, 2023, Mr. Hananoki also published the article described in Response to Interrogatory No. 7.

Prior to writing the November 17, 2023 Article, Mr. Hananoki was also aware that Linda Yaccarino, CEO of X Corp., had claimed that advertisers were "protected from the risk of being next to" potentially toxic content on the platform. *See* CNBC, *X CEO Linda Yaccarino Explains Reason for Getting Rid of Twitter Name*, https://www.cnbc.com/2023/08/10/x-corp-ceo-linda-yaccarino-says-she-has-autonomy-under-elon-musk.html (Aug. 10, 2023). Despite this claim, Mr. Hananoki observed that search results for neo-Nazi and white nationalist hashtags on X appeared to be monetized, meaning that search results for that content produced that content along with advertisements. In light of his findings from the November 13 and 16, 2023 Articles and his prior research about the rise of extremist content on X, Mr. Hananoki sought to further fact-check Ms. Yaccarino's claim.

Prior to publishing the November 17, 2023 Article, Mr. Hananoki used X's search function to search for white nationalist content. As Mr. Hananoki describes in his November 17, 2023 Article, the searches included: "WLM" (White Lives Matter), "KeepEuropeWhite," "14 Words" (a reference to the leading white nationalist slogan), "white pride," and "WPWW" ("white pride world wide"). Mr. Hananoki used two X accounts to conduct these searches: @rwemails and @ehananoki. From there, Mr. Hananoki refreshed results to determine whether advertisements would appear next to the white nationalist content. Just as with the November 16, 2023 Article, Mr. Hananoki found that advertisements appeared next to the white nationalist content and he took screenshots of them from both X accounts. Mr. Hananoki did not alter those screenshots in any way. In drafting the November 17, 2023 Article, Mr. Hananoki also did not contact any of the advertisers identified in the November 17, 2023 Article.

20

The November 17, 2023 Article was drafted over the course of November 16 and 17, 2023. In drafting the November 17, 2023 Article, Mr. Hananoki consulted with Sharon Kann, Senior Director of Innovation and Impact at Media Matters, who is credited with a research byline. Mr. Hananoki and Ms. Kann considered adding research to the article about how much advertisers had spent on X, but ultimately chose not to include that information in the article when they were not able to confirm the data before publication.

The following additional individuals from Media Matters reviewed a draft of the November 17, 2023 Article prior to publication:

- Michael Eberhart, Editor

- Ben Dimiero, Editor-in-Chief

- Kayla Gogarty, Research Director

Additionally, Mr. Hananoki provided a draft of the November 17, 2023 Article to the digital design team for Media Matters so members of that team could create an image for the piece. Andrea Austria, Digital Design Coordinator at Media Matters, created the image at the top of the article displaying Mr. Musk and Ms. Yaccarino.

Without waiving any protections provided by Texas shield law, *see* Tex. Civ. Prac. & Rem. Code § 22.021, *et seq.*, Mr. Hananoki directs Plaintiff to Defendants' forthcoming responses to requests for production for further information about specific feedback Mr. Hananoki received about the November 17, 2023 Article prior to publication.

Other than the information requested by subpart 4, which Defendants object to on the grounds provided above, Defendants are not presently withholding information responsive to this Interrogatory. Defendants will supplement this response if they identify and withhold responsive information.

**INTERROGATORY NO. 9:** Identify each time You contacted an individual living within the confines of the Northern District of Texas, from January 1, 2020 to present, including, but not limited to, (1) for email distribution of the November 16, 2023 Article; (2) for email distribution of the November 17, 2023 Article; (3) for email distribution of any other article published by Media Matters; (4) to solicit donations or for fundraising purposes; (5) to contact any company who had the potential to advertise with X, regardless of whether the company had ever previously advertised on the platform; or (6) general promotion of Media Matters.

     **OBJECTIONS**: Defendants object to this Interrogatory as overly broad and disproportionate to the needs of the case in seeking "each time" since January 1, 2020 Defendants contacted an individual residing in the Northern District of Texas, without any limitation as to whether those contacts related to the claims at issue in this litigation, particularly where "X does not invoke general personal jurisdiction over Defendants." Pls.' Resp. to Defs.' Mot. to Dismiss at 4, ECF No. 45. The request for every instance since January 1, 2020 that an individual living within the Northern District of Texas received an email or other message from Defendants would unjustly impose enormous burdens and expenses.

     Defendants further object to subpart 5 of Interrogatory No. 9 as vague and ambiguous because any company in existence has the potential to advertise on X.

     To the extent this Interrogatory requests the specific identities of donors to Media Matters, or the specific identities of subscribers to Media Matters, Defendants further object to Interrogatory No. 9 because it seeks information that is not relevant to any claims or defenses, and that is further protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. *See, e.g.*,

22

*Americans for Prosperity Found.*, 594 U.S. at 610–11, 616–17; *Nat'l Ass'n for Advancement of Colored People*, 357 U.S. at 460; *see also Whole Woman's Health*, 896 F.3d at 372; *Perry*, 591 F.3d at 1160. Disclosure of donor identifying information can also lead to donors being harassed for and deterred from affiliating with organizations they support. Indeed, Elon Musk himself has called Media Matters "an evil propaganda machine that can go to hell" and vowed that X "will pursue not just the organization but anyone funding that organization. I want to be clear about that anyone funding that organization, will be, we will pursue them."[2]

**RESPONSE**: Subject to the limitations explained below, Defendants will attempt to estimate the number of individuals who provided a zip code associated with the Northern District of Texas who may have received an email communication in the form of a "weekly update" from Media Matters containing the November 16, 2023 Article or November 17, 2023 Article at issue. Specifically, Media Matters sent a weekly update containing the November 16, 2023 Article on November 17, 2023, and Media Matters sent a weekly update containing both the November 16, 2023 and November 17, 2023 Articles on November 22, 2023, two days after this suit was filed.

Media Matters typically contacts by email only those individuals who have affirmatively signed up to receive email updates. As a general matter, Defendants do not specifically verify the location information of individuals who sign up to receive email updates, nor do they ask subscribers who provide this information to update this information once subscribed. Defendants nonetheless attempted, in good faith, to identify individuals who may have received emails

---

[2] *@TheChiefNerd*, X.com (Dec. 10, 2023, 4:24 PM), (https://x.com/TheChiefNerd/status/1733960832571122115) (last accessed July 15, 2024).

containing the November 16, 2023 or November 17, 2023 Articles and who provided a zip code associated with the Northern District of Texas. This inquiry and its results, however, have the following inherent limitations:

(1)  Defendants possess, via the software Salesforce, the ability to search for individuals who *currently* subscribe to weekly updates from Media Matters and have relevant zip codes associated with their records. But to Defendants' knowledge, their configuration of Salesforce does not permit Defendants to report whether a current subscriber with a relevant zip code was a subscriber at the time this lawsuit was filed or which subscribers with relevant zip codes would have received an email update containing the November 16, 2023 Article or November 17, 2023 Article.

(2)  Defendants cannot and do not guarantee the accuracy of the location information in Salesforce. The Salesforce data that Defendants used to respond to this Interrogatory is not updated on any regular basis, nor do Defendants require individuals to provide location information to receive communications updates from them. Much of this location data is several years old, if not decades old. Because of the likelihood that at least some of these individuals have moved out of the Northern District of Texas since they provided this information to Media Matters, the numbers provided below likely overestimate the number of individuals who were associated with or resided in the district at the time the articles at issue in this litigation were published.

(3)  Defendants include individuals in this response who have at some point indicated a mailing, billing, shipping, or other address in the Northern District of Texas. Because an individual may have had, at the time the information was provided to

Media Matters, any one of these addresses in the district but not actually resided in the district, the numbers provided below likely overestimate the number of individuals who truly resided in the district at the time they provided this information to Media Matters.

With these inherent limitations, Defendants searched for individuals who are subscribed to receive weekly updates from Media Matters as of July 2, 2024, and are recorded in Salesforce as possessing a zip code associated with the Northern District of Texas. Defendants obtained the following results: 987 individuals who are recorded in Salesforce as having a zip code in the Northern District of Texas currently receive "weekly update" emails from Media Matters. In total, 166,154 individuals currently receive weekly update emails from Media Matters, meaning these individuals account for 0.59% of those who currently receive weekly updates from Defendants per their Salesforce search.

**INTERROGATORY NO. 10:** Identify and list with particularity each company, corporate entity, or nonprofit with whom You had any contact where You discussed, mentioned, or referenced X Corp. from April 2021 to present. For the avoidance of doubt, please specify at a minimum, (1) the name of the contacted entity; (2) a description of the entity; (3) a description of the manner in which the contact occurred; (4) the location where the contact occurred; (5) a summary of the substance of the contact and communication between You and the entity; (6) the purpose of Your contact with the entity; (7) any advice, recommendation, or suggested course of action made by You to the entity; and (8) any actual or planned follow-up communication with that entity.

**OBJECTIONS**: Defendants object to this Interrogatory as improperly containing multiple subparts that go beyond the Interrogatory's first request for information, which seeks only the

25

**60**

identity of the entities with whom Defendants discussed, mentioned, or referenced X. Defendants interpret this Interrogatory as seeking at least four separate categories of information: (1) the identity of these organizations, (2) the manner and means by which Defendants communicated with these entities, (3) the substance of Defendants' conversations with these entities, (4) and Defendants' internal discussions or planning related to their conversations with these entities. *See, e.g.*, *Garza*, 2021 WL 3809102, at *4 (finding interrogatories were multiplicative where "each subpart of these interrogatories can be answered without answering either of its other subparts").

Defendants further object to Interrogatory No. 10 because it seeks privileged information with strategic partners, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. *See, e.g.*, *Americans for Prosperity Found.*, 594 U.S. at 610–11, 616–17; *Nat'l Ass'n for Advancement of Colored People*, 357 U.S. at 460; *see also Whole Woman's Health*, 896 F.3d at 372; *Perry*, 591 F.3d at 1160.

Defendants further object to Interrogatory No. 10 as overly broad and disproportionate to the needs of the case in seeking each time Defendants spoke with an organization and mentioned or referenced X, regardless of when those communications occurred or whether they had anything to do with the claims at issue in this case. Because this interrogatory does not seek information specifically related to this lawsuit and instead seeks information regarding instances in which Defendants simply referred to X, it is facially overbroad. *See, e.g*., *Lee v. Aramark Facility Servs., LLC*, No. CV 20-2049, 2021 WL 6070448, at *7 (E.D. La. July 15, 2021) ("[A] request is facially overbroad insofar as it not limited to the issues in this lawsuit and would purport to require Defendant to identify and describe every document or thing transmitted or provided to any third party relating to Plaintiff.").

Defendants further object to Interrogatory No. 10 because it seeks information that Plaintiff has already requested in RFP No. 5. Translating the same information to an interrogatory is not required. *See Cottonham*, 2016 WL 4035331, at *5 n.3 (denying motion to compel interrogatory because "there are more efficient, less burdensome ways to obtain this same information," including an RFP which covers the same subject matter).

Defendants further object to Interrogatory No. 10 to the extent it seeks descriptions of the entities with whom Defendants had conversations regarding X, information that is equally obtainable to Plaintiff.

Responding to this interrogatory with the level of granularity requested would be virtually impossible for the following reasons: Over the past several years, Defendant Media Matters, a leader in platform accountability work, has worked with hundreds of groups in a variety of formal and informal fashions. Media Matters's activities range from public partnerships and campaign sign-on letters to more private and informal conversations and passive updates about platform accountability research, which includes research on the platform X. Due to the number of partner organizations in the Stop Toxic Twitter coalition (described below), the frequency of these communications, and the informal nature of many these conversations, it would be virtually impossible to account for all possible mentions or discussion of X without undue burden or expense. To quantify this burden, for example, a search for Defendants' communications with external parties that mention X Corp. or Twitter from April 2021 to the present resulted in over 730,000 results. Subject to the objections Defendants have invoked in response to Plaintiffs' requests for production, Defendants are in the process of reviewing and producing responsive, nonprivileged documents.

27

**RESPONSE**: Because the burden and expense of responding to Interrogatory No. 10 in full and with the granularity requested outweighs its likely benefit, Defendants will provide a general overview of the organizations with which Defendants discussed X in the context of platform accountability in 2023 and 2024, along with the broad substance of those conversations.

In 2023 and 2024 broadly, Defendants engaged in high-level conversations that would have mentioned X with members of the Stop Toxic Twitter coalition. This coalition was launched in late 2022 following news that Elon Musk intended to limit content enforcement and other protections on the Platform. Stop Toxic Twitter describes itself as "a coalition of 60+ civil rights and civil society groups calling on Twitter advertisers to demand a safer Twitter for their brands and for users." Stop Toxic Twitter, https://www.stoptoxictwitter.com/ (last accessed July 4, 2024).

As of July 4, 2024, the following organizations in addition to Media Matters, are listed as members of the Stop Toxic Twitter coalition:

1. #VOTEPROCHOICE

2. Access Now

3. Accountable Tech

4. Anti-Defamation League

5. Advocates for Youth

6. AI for the People Inc.

7. Asian Americans Advancing Justice | AAJC

8. Azerbaijan Internet Watch

9. Benton Institute for Broadband & Society

10. Center for Countering Digital Hate

11. Center on Race and Digital Justice

28

12. Change the Terms Coalition

13. Check My Ads

14. Coding Rights

15. Color Of Change

16. Common Cause

17. Dangerous Speech Project

18. DemCast USA

19. Digital Africa Research Lab

20. Distributed Artificial Intelligence Research Institute (DAIR)

21. Doctors In Politics

22. Equality Labs

23. Fair Vote UK

24. Freedom Forward

25. Free Press

26. Friends of the Earth

27. GLAAD

28. Global Indigenous Data Alliance

29. Global Project Against Hate and Extremism

30. Indivisible

31. International Women's Media Foundation

32. Jewish Women International

33. JustLeadershipUSA

34. Latino Anti-Disinformation Lab

29

35. Majal.org

36. Maria Ressa

37. MoveOn

38. Muslim Advocates

39. NAACP

40. National Center for Transgender Equality

41. National Hispanic Media Coalition

42. National LGBTQ Task Force

43. NEVER AGAIN Association

44. Numun Fund

45. PFLAG National

46. ProgressNow NM

47. Public Citizen

48. Public Knowledge

49. Ranking Digital Rights

50. Right To Be (formerly Hollaback!)

51. Roger McNamee, Author of Zucked: Waking Up to the Facebook Catastrophe

52. Stop Hate for Profit Coalition

53. Stop Online Violence Against Women

54. SumOfUs

55. Superbloom Design

56. The Center for American Progress

57. The Real Facebook Oversight Board

58. The Sparrow Project

59. The Tech Oversight Project

60. The TransLatin@ Coalition

61. Ujima Inc., The National Center on Violence Against Women in the Black Community

62. UltraViolet

63. Union of Concerned Scientists

64. United Church of Christ Media Justice Ministry

65. United We Dream

66. Valor US

67. Voto Latino

68. Whose Knowledge?

Communications with these organizations occurred primarily via the Stop Toxic Twitter email list, although Defendants also sometimes communicated with these organizations through other means, including by phone, Zoom, and messaging applications. For the reasons described in Defendants' objections to this Interrogatory, Defendants are unable to respond to the Interrogatory with the level of granularity requested given the significant number of communications and member organizations.

From June 2023 to November 2023, Defendants engaged in high level conversations about the general topic underlying the November 16, 2023 and November 17, 2023 Articles—X's ability (or inability) to prevent advertisements from appearing next to extremist content—with some of the members of the Stop Toxic Twitter coalition listed above.

On November 15, 2023, Elon Musk endorsed what appeared to Defendants and many others to be an antisemitic conspiracy theory, which drew significant public attention. *See* Aimee

31

Picchi, *Elon Musk Expresses Support for Antisemitic Post on X, Calling it "The Actual Truth*,"
CBS News (updated Nov. 16, 2023), https://www.cbsnews.com/news/elon-musk-antisemitic-comments-x-post-actual-truth/. In light of this post, Defendants discussed their general plan to publish information about X's apparent monetization of extremist content with some members of the Stop Toxic Twitter coalition listed above.

After the publication of the November 16, 2023 and November 17, 2023 Articles, Defendants circulated those articles to the Stop Toxic Twitter Coalition email list and may have provided a link to the articles via other informal communications. The communications described in this paragraph occurred between November 16, 2023 and the announcement of Plaintiff's lawsuit on November 20, 2023.

Defendants are not presently withholding responsive information that they have identified subject to their objections. Defendants will supplement this response if they identify and withhold responsive information.

32

**Verification of Interrogatory Responses**

I, Cynthia Padera, believe based on reasonable inquiry that Defendant's answers to X's First Interrogatories in *X Corp. v. Media Matters for America et al*., Case No. 4:23-cv-01175, served on July 19, 2024, are true and correct to the best of my knowledge, information, and belief.

Pursuant to 28 U.S. Code § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Executed on July 19, 2024

*Cynthia Padera*
_____

Cynthia Padera
Chief Operating Officer
Media Matters for America

33