UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **X CORP.**, a Nevada corporation,<br><br>Plaintiff,<br><br>vs.<br><br>**MEDIA MATTERS FOR AMERICA**, a Washington, D.C. non-profit corporation, **ERIC HANANOKI**, and **ANGELO CARUSONE**,<br><br>Defendants. | Case No. 4:23-cv-01175-O |

**REPLY IN SUPPORT OF MOTION TO COMPEL
<u>DONOR-RELATED DOCUMENTS</u>**

Judd E. Stone II
Christopher D. Hilton
Ari Cuenin
Michael R. Abrams
Alexander M. Dvorscak
**STONE | HILTON PLLC**
600 Congress Ave., Suite 2350
Austin, TX 78701
(737) 465-3897

John C. Sullivan
**S|L LAW PLLC**
610 Uptown Boulevard
Suite 2000
Cedar Hill, TX 75104
(469) 523-1351

*Counsel for Plaintiff*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ ii
TABLE OF AUTHORITIES ......................................................................................................... iii
INTRODUCTION .......................................................................................................................... 1
ARGUMENT AND AUTHORITIES ............................................................................................. 2
    I.    Defendants' First Amendment objection is waived for the donor information responsive to RFP Nos. 17, 18, 21, and 35. ................................................................................. 2
        A.  Defendants waived privilege through non-compliance with a court directive. ............ 2
        B.  Defendants waived privilege by failing to produce a privilege log. ............................. 3
        C.  Defendants waived privilege by claiming it in a vague and general manner. .............. 4
    II.   Alternatively, the First Amendment does not apply without state action. .......................... 4
    III.  The First Amendment privilege claim also fails under Defendants' own precedent. .......... 6
    IV.  Defendants seek relevant information within the scope of Rule 26. ............................... 10
CONCLUSION ............................................................................................................................. 10
CERTIFICATE OF SERVICE .................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Ams. for Prosperity Found. v. Bonta*,
  594 U.S. 595 (2021) .................................................................................................... 7

*Bentley v. Bunton*,
  94 S.W.3d 561 (Tex. 2002) ......................................................................................... 9

*Buckley v. Valeo*,
  424 U.S. 1 (1976) ........................................................................................................ 8

*Cyber Promotions, Inc. v. Am. Online, Inc.*,
  948 F. Supp. 436 (E.D. Pa. 1996) ............................................................................... 6

*Dakota Energy Coop., Inc. v. E. River Elec. Power Coop., Inc.*,
  No. 4:20-CV-04192-LLP, 2021 WL 3862131 (D.S.D. Aug. 30, 2021) ..................... 6

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
  592 U.S. 351 (2021) .................................................................................................... 9

*Grandbouche v. Clancy*,
  825 F.2d 1463 (10th Cir. 1987)................................................................................... 5

*Hardy v. Gissendaner*,
  508 F.2d 1207 (5th Cir. 1975)................................................................................. 5, 7

*Henry v. First Nat. Bank of Clarksdale*,
  444 F.2d 1300 (5th Cir. 1971)................................................................................. 5, 7

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
  515 U.S. 557 (1995) .................................................................................................... 5

*In re Motor Fuel Temperature Sales Pracs. Litig.*,
  641 F.3d 470 (10th Cir. 2011)..................................................................................... 5

*In re Santa Fe Int'l Corp.*,
  272 F.3d 705 (5th Cir. 2001)....................................................................................... 4

*In re Selcraig*,
  705 F.2d 789 (5th Cir. 1983)....................................................................................... 6

*La Union Del Pueblo Entero v. Abbott*,
  No. 5:21-cv-00844, 2022 WL 17574079 (W.D. Tex. Dec. 9, 2022) ......................... 6

*Lopez v. Don Herring Ltd.*,
  327 F.R.D. 567 (N.D. Tex. 2018) ............................................................................... 4

*Manhattan Cmty. Access Corp. v. Halleck*,
  587 U.S. 802 (2019) .................................................................................................... 6

*Perry v. Schwarzenegger*,
  591 F.3d 1147 (9th Cir. 2010)..................................................................................... 8

*Rutila v. U.S. D.O.T.*,
  No. 3:16-CV-2911-B-BK, 2020 WL 2552944 (N.D. Tex. May 20, 2020) ................................ 6

*Shelley v. Kraemer*,
  334 U.S. 1 (1948) ................................................................................................................ 5

*Sierra Club v. Energy Future Holdings Corp.*,
  No. 5:10-CV-156, 2013 WL 12244352 (E.D. Tex. Dec. 30, 2013) ........................................... 7

*United States v. El Paso Co.*,
  682 F.2d 530 (5th Cir. 1982) ................................................................................................ 4

*Whole Woman's Health v. Smith*,
  896 F.3d 362 (5th Cir. 2018) ................................................................................................ 6

**Rules**

Fed. R. Civ. P. 26(b)(1) ............................................................................................................ 10

Fed. R. Civ. P. 26(b)(5)(A)(ii) ..................................................................................................... 4

**Other Authorities**

Stop the Deal Coalition Statement on Elon Musk's Twitter Acquisition Deal (Oct. 27, 2023),
  *available at* https://accountabletech.org/statements/statement-on-elon-musks-twitter-
  acquisition-deal/ .................................................................................................................. 10

**INTRODUCTION**

Defendants' own "retelling of the background to this dispute," ECF No. 87 at 3 ("Opp."), confirms that they waived First Amendment privilege claims over information about Media Matters' donors. Defendants never dispute that they failed to do what this Court ordered—identify and log documents responsive to RFP Nos. 17, 18, 21, and 35. A categorical refusal to search for donor information responsive to those RFPs is indefensible. Defendants suggest that they may—or may not—find documents responsive to other RFPs that may—or may not—contain donor information, eventually logging privilege claims between now and December. Putting aside that argument's incompatibility with the time to complete discovery, it flouts this Court's order and Defendants' obligation to log responsive donor documents. All Defendants are left with is a generalized, blanket First Amendment objection that preserves nothing.

Regardless, Defendants' assertion of a First Amendment protection for donor information is meritless. This case lacks the state action needed to claim protection under the First Amendment. X is a private company, not a state actor; to find state action here based on the prospect of an order compelling discovery would be to find it in *every* discovery dispute. Moreover, even if there were state action, Defendants still fail to show that the asserted risks to donors trigger First Amendment protection.

Finally, Defendants' relevance objection should be rejected. Defendants engaged in a wide-ranging, targeted effort to harm X's business, its leadership, and its owner. Defendants never seriously dispute that, at a minimum, information about how Defendants funded that smear campaign is relevant to questions of personal jurisdiction and venue. Nor can Defendants avoid the fact that their interactions with Media Matters' largest donors are probative of Defendants' malicious intent, and thus relevant to liability and damages.

1

## ARGUMENT AND AUTHORITIES

**I. Defendants' First Amendment objection is waived for the donor information responsive to RFP Nos. 17, 18, 21, and 35.**

    **A. Defendants waived privilege through non-compliance with a court directive.**

Defendants confirm their non-compliance with this Court's order. Defendants never dispute that the June 6, 2024 order deferred ruling on "RFP Nos. 17-18, 21, and 35 and any First Amendment privilege concerns until such a protocol is established and responsive documents have been identified." Opp. 4; ECF No. 65 at 2. Defendants never dispute that this Court ordered them "<u>to log any responsive documents</u>" to those requests "as privileged," Opp. 4; ECF No. 65 at 2. And Defendants concede that they refuse to search for such documents: Defendants admit that "as of the date of its first privilege log, [Media Matters] had not identified any donor-related documents that it was withholding based on privilege" and is not "separately searching for donor-related documents." Opp. 7 & n.3. These undisputed facts confirm Defendants' waiver of any First Amendment privilege for donor documents they did not search for and log per this Court's order.

Defendants try to avoid this outcome two ways. First, they claim that their second privilege log contains "entries for documents protected by the First Amendment association privilege" and "several donor-related documents." Opp. 6 n.2, 7 n.3. But Defendants admit these few documents were only produced incidentally and because they were responsive to other non-donor discovery requests. Opp. 7 n.3. Putting aside that Defendants did not even provide incidental documents until seven months into discovery, what they did is not what the Court ordered them to do. Second, Defendants attack X's timing in moving to compel donor information, suggesting that it should have filed sooner. *See* Opp. 6. But that is irrelevant because Defendants never argue prejudice from the timing: the relevant facts are Defendants' actions and waiver. The Court issued its order requiring Defendants to search for and log responsive donor documents on June 6; Defendants

2

produced a privilege log on June 28 that did not contain donor documents. X then conferred with Defendants both in writing and in video conferences, but Defendants "refus[ed] to independently search for donor-related documents." Appx. 176. Only after that confirmation did X file its motion, which no precedent renders untimely.

### B. Defendants waived privilege by failing to produce a privilege log.

The failure to follow the Court's order typifies a production plagued by deficiencies. X served its initial requests for production of donor information (Nos. 17, 18, and 21) in February. It is now September. Defendants had months to perfect their objections. Only now, after X sought relief, have Defendants logged First Amendment objections. Even then, Defendants did so only for a small subset of documents; they will log no other responsive documents unless they are identified "as they surface[] in the review process" in response to *other* requests.  Opp. 7 n.3. That is too little, too late—the privilege is waived. The order was itself necessitated by Defendants' months of delay. Before moving to compel in May 2024, counsel for X and Defendants had four separate conferences in two months; a dozen emails tracked those talks. Despite good-faith efforts to avoid the Court, Defendants refused to tell X when they would complete their production until *after* X filed its motion. Defendants claimed to have been "diligent" in discovery by "enlist[ing] nearly 50 people to review documents" but produced *nothing* until after this Court denied Defendants' motion to stay; what they have since produced is far out of step with the terabytes of potentially responsive data that they have identified. *E.g.*, ECF No. 63 at 120. And Defendants have consistently refused to log responsive documents in a privilege log.

Defendants should not be allowed to disclose purportedly privileged documents so late in discovery to prejudice X's ability to challenge the designations. Defendants contend that the issue should be resolved on a document-by-document basis based on future privilege logs. *See* Opp. 7-8. Confirming that any delay is attributable to Defendants rather than X, this argument would not

3

only add more delay and waste Court's time—it conflicts with the scheduling order. X cannot prepare experts and take depositions without the documents to which it is entitled.

### C. Defendants waived privilege by claiming it in a vague and general manner.

Defendants' privilege assertions have also been a moving target. As Defendants concede, their "initial response to X's requests for production" made a generalized First Amendment objection, while their live, amended discovery responses did not. Opp. 3. That constitutes waiver. Defendants argue that they removed their generalized objections only because X asked them to. Opp. 4. Not so. X merely noted that generalized objections are insufficient to avoid waiver.

Because Defendants categorically asserted a vague "First Amendment" privilege (and failed to produce documents responsive to many of X's requests), the documents that Defendants *have* produced are insufficient for depositions and retention of expert witnesses. Apart from waiting for Defendants to possibly find and log more documents that incidentally contain some donor information, there is currently no specific and detailed privilege claim for documents responsive to the four RFPs at issue. Defendants instead persist in withholding responsive documents via "[g]eneral, boilerplate, and unsupported objections," which "preserve nothing." *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 583 (N.D. Tex. 2018) (Horan, M.J.). Privilege cannot "be tossed as a blanket over an undifferentiated group of documents." *United States v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982). Any First Amendment privilege should be disregarded. *See In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001); Fed. R. Civ. P. 26(b)(5)(A)(ii).

## II. Alternatively, the First Amendment does not apply without state action.

Defendants are not exempt from the rule that applying the Constitution requires state action. They never claim that X is a state actor. Instead, they contend that associational freedom is excused from the state-action requirement. This argument flouts the First Amendment, whose "guarantees of free speech and equal protection guard only against encroachment by the

4

government and 'erec[t] no shield against merely private conduct.'" *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 566 (1995) (quoting *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948)). Defendants cannot explain why freedom of association warrants different treatment.

Relying on *Shelley*, Defendants argue that "the action of 'courts and of judicial officers in their official capacities is to be regarded as action of the State within the meaning of "the Constitution's state action requirements." Opp. 10 (quoting 334 U.S. at 14-15). But the Fifth Circuit has repudiated state action from merely invoking the judicial process. *E.g.*, *Hardy v. Gissendaner*, 508 F.2d 1207, 1210-11 (5th Cir. 1975); *see also Henry v. First Nat. Bank of Clarksdale*, 444 F.2d 1300, 1312 (5th Cir. 1971) ("[T]here is no 'state action' to be found in the mere filing of a private civil tort action in state court."). Defendants distinguish these Fifth Circuit cases as unrelated to "the First Amendment privilege or discovery disputes." Opp. 12. But that argument conflicts with Defendants' own reliance on *Shelley*, an Equal Protection case that is not about "the First Amendment" or a "discovery dispute[]." Opp. 10.

Given that Fifth Circuit precedent already repudiates Defendants' attempt to extend *Shelley* beyond Equal Protection, that should end the matter. But that precedent is all the more reason to reject Defendants' reliance on non-binding out-of-circuit authority. Opp. 9-10. Defendants cite only one circuit-court holding, *In re Motor Fuel Temperature Sales Pracs. Litig.*, 641 F.3d 470, 481 (10th Cir. 2011), which itself relied on dicta in *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987), that a court order "compelling discovery and the trial court's enforcement of that order provide the requisite governmental action that invokes First Amendment scrutiny."

Defendants ignore the cases rightly questioning *Grandbouche*, which "has the effect of creating government action every time a magistrate simply signs, and a trial judge enforces, a discovery order." *Cyber Promotions, Inc. v. Am. Online, Inc.*, 948 F. Supp. 436, 445 (E.D. Pa.

5

1996). The First Amendment does not apply where "the part[ies] seeking the discovery" were "private parties, 'not police, law enforcement, or any other type of Government entity.'" *Dakota Energy Coop., Inc. v. E. River Elec. Power Coop., Inc.*, No. 4:20-CV-04192-LLP, 2021 WL 3862131, at *2 (D.S.D. Aug. 30, 2021). That rule follows the admonishment that "[t]he First Amendment constrains governmental actors." *Id.* (quoting *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 804 (2019)). Courts do not uniformly flout that Supreme Court precedent.

Nor does Fifth Circuit precedent support Defendants' claimed blanket "privilege assertions among private parties." Opp. 10. Defendants' own authority states that "[u]nlike cases involving the disclosure of membership lists," parties resisting discovery are not "entitled to assert a blanket privilege by virtue of their status as associations." *La Union Del Pueblo Entero v. Abbott*, No. 5:21-cv-00844, 2022 WL 17574079, at *9 (W.D. Tex. Dec. 9, 2022). At most, the limited "qualified privilege" cited by Defendants, Opp. 12, may protect certain *internal* communications of religious organizations, *Whole Woman's Health v. Smith*, 896 F.3d 362, 372 (5th Cir. 2018). The Fifth Circuit never recognized a privilege to forestall discovery into donors altogether.

**III.   The First Amendment privilege claim also fails under Defendants' own precedent.**

The Court may reject Defendants' First Amendment claim even if the Court were to apply Defendants' cases. As an initial matter, Defendants appear to disclaim any reliance on the First Amendment beyond an associational right "to shield the identities of an organization's members and donors." Opp. 13. The Opposition bears no argument concerning any purported "reporter's privilege" to avoid discovery of a confidential source's identity, and so the Court may deem that argument abandoned. ECF No. 84 at 15 ("Mot.") (citing *In re Selcraig*, 705 F.2d 789, 792-93 (5th Cir. 1983)); *cf. Rutila v. U.S. D.O.T.*, No. 3:16-CV-2911-B-BK, 2020 WL 2552944, at *1 (N.D. Tex. May 20, 2020) (Boyle, J.) ("[I]nadequately briefed issues are deemed abandoned.").

6

A First Amendment associational claim also fails. Defendants argue that courts should not "compel advocacy organizations to produce confidential information (including names and home addresses) about their members." Opp. 13-14. But they largely ignore the confidentiality protections to which they themselves agreed in the parties' protective agreement. *See* ECF No. 70. The protective agreement, which Defendants negotiated to require strict Attorney's Eyes Only designations, alleviates such concerns about disclosure of "full, unredacted donor lists to litigation opponents." Opp. 2. Defendants never argue that X would violate these terms or that the terms are inadequate—indeed, Defendants have already availed themselves of them and designated documents as Attorney's Eyes Only. Defendants downplay "the existence of a protective order." Opp. 18 (citing *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 616 (2021); *Sierra Club v. Energy Future Holdings Corp.*, No. 5:10-CV-156, 2013 WL 12244352, at *3 (E.D. Tex. Dec. 30, 2013)). But *Bonta* involved distinguishable concerns about disclosure to the government. 594 U.S. at 618. And unlike here, the defendant's "own legal team" allegedly harassed Sierra Club members, which undercut Attorney's Eyes Only protections. *Sierra Club*, ECF No. 118 at 13.

Substantively, Defendants' reliance on the First Amendment fails because its protections do not apply. *Contra* Opp. 13-14. Neither the Supreme Court nor the Fifth Circuit have extended the First Amendment in similar circumstances, where there is no state action. *See* Mot. 14-16; *Hardy*, 508 F.2d at 1210-11; *Henry*, 444 F.2d at 1312. Defendants argue that the First Amendment protects "beyond the context of racial discrimination." Opp. 13. But Defendants miss the point. The Supreme Court and Fifth Circuit authority cited in arguing that the First Amendment protects member and donor lists all involved **government litigation**. Predictably, disclosure of such information *to the government* poses a heightened risk of chilling associational rights that is not present in a dispute between private parties, who lack the coercive power of the state.

7

Defendants' expansive argument based on reported "harassment" proves why this distinction matters. Opp. 14 (quoting *Buckley v. Valeo*, 424 U.S. 1, 74 (1976)). By relying primarily on negative online reactions toward Media Matters' own actions, Opp. 14-16, Defendants would insulate their donors from scrutiny altogether. Defendants invoke *Bonta* insofar as "the risks of protests, stalking, and physical violence 'are heightened in the 21st century'" because of computers. Opp. 16 (quoting 594 U.S. at 617). But *Bonta* discussed the associational chill from "each *governmental* demand for disclosure" in a "dragnet" regime opening state access to all charitable groups' major donors regardless of alleged wrongdoing. 594 U.S. at 618 (emphasis added). Defendants would turn *Bonta*'s shield into a sword for organizations that weaponize donor contributions into tortious conduct. While X does not condone any personal threats, Defendants' instances of alleged harassment (Opp. 14-16) from *publicly disclosed* information are irrelevant under the parties' protective agreement for designating material Attorney's Eyes Only.

Finally, Defendants argue that X has not shown how the requested information is relevant to this case. Opp. 16-19. Defendants are wrong. Even assuming counterfactually that Defendants may rely on the Ninth Circuit's non-binding decision in *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010), information about Media Matters' donors is "highly relevant" to this case. *Id.* at 1161. X's requests for donor information in RFP Nos. 17, 18, 21, and 35 are relevant to jurisdiction, venue, and the merits of X's claims. X requests donor information because it is directly relevant to the threshold questions of jurisdiction and venue. And even if that were not enough, donor information is likely to be probative of Defendants' motive, intent, and malice.

First, personal jurisdiction and venue: in moving to dismiss, Defendants claimed that they "do not solicit Texas donors to fund Media Matters's journalism concerning X." ECF No. 41 at 16. But they concede that whether Media Matters solicited donors in Texas is relevant to those

inquiries. Opp. 17. Defendants suggest instead that "*no such documents exist*" to compel, stating, "Hananoki did not solicit Texas donors for Media Matters in connection with the articles" and "Carusone has not sought any donations from individuals or organizations in Texas earmarked to fund Media Matters's work related to X Corp." Opp. 17 (citing App. Supp. Mot. to Dismiss, Ex. B ¶ 13, ECF No. 42; *id.* Ex. C ¶ 4). By narrowly framing the issue as whether Defendants solicit Texas donors for their "work" that is "related to X Corp.," Defendants leave the door open to soliciting Texans to support other journalistic endeavors, or soliciting Texans for general funding purposes. Either scenario bears on purposeful availment of Texas. *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 371 (2021) (finding personal jurisdiction where seller "extensively promoted, sold, and serviced" products in the forum state). Likewise, information about potential Texas donors could affect venue. Unless Defendants are willing to concede personal jurisdiction and venue, discovery is necessary into Defendants' Texas connections.

Donor information is also probative of Defendants' motive (including whether Defendants acted with malice), which X may prove through circumstantial evidence. *E.g.*, *Bentley v. Bunton*, 94 S.W.3d 561, 596 (Tex. 2002). Thus, a jury could take account of who funded Defendants' tortious conduct. For example, if a donor wrote a large check to Media Matters conditioned on publishing one or more articles defaming X, that communication would be relevant to, if not dispositive of, Defendants' intent. Or, if Defendants solicited donations from individuals publicly known to be antagonistic to X or Elon Musk immediately before or after the publication of defamatory articles, that connection would support X's claim that Defendants acted with malice and intended to cause the harm that they did. Defendants essentially acknowledge as much, arguing that damages will ultimately turn on "what X can prove about its own lost advertising revenue and reputational injury" and "the degree of reprehensibility of the defendant's misconduct." Opp. 18.

**IV.      Defendants seek relevant information within the scope of Rule 26.**

The Court should also reject Defendants' argument that the requested discovery is improper under Rule 26 of the Federal Rules of Civil Procedure. Rule 26(b) permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). As noted above, donor information is highly relevant to jurisdiction, venue, and the merits of X's claims. Assuming arguendo that *Perry*'s relevance showing applies, it is "more demanding" than Rule 26(b)(1), so X necessarily satisfies Rule 26's minimal relevance threshold.

Defendants' reliance on alleged First Amendment "journalistic" activities also placed the falsity of and intent behind what Hananoki published at the very heart of the claims at issue. Defendants cultivated a wide-ranging, extensive campaign to agitate against Musk's purchase of Twitter. *See* Stop the Deal Coalition Statement on Elon Musk's Twitter Acquisition Deal (Oct. 27, 2023), *available at* https://accountabletech.org/statements/statement-on-elon-musks-twitter-acquisition-deal/ (listing Media Matters as a founding member of a "diverse coalition of nonprofit advocacy organizations" that launched a "multifaceted campaign designed to prevent Elon Musk's hostile takeover of Twitter, and stave off the myriad harms to our information ecosystem that would inevitably stem from Musk running Twitter."). When those efforts failed, Defendants were undaunted: unable to stop the acquisition, Defendants endeavored to decimate X's business by destroying a significant source of its revenue. *E.g.*, ECF No. 37 ¶¶ 5-8. In that context, Musk's statements about Media Matters' tortious conduct, *see* Opp. 20, merely reflect Musk's intent to recover lost revenue and hold Media Matters accountable in this lawsuit. If donors worked together with Defendants to harm X business model, X is entitled to learn about those efforts.

## CONCLUSION

The Court should grant X's motion to compel production of donor-related documents.

<table>
<tr><td>Dated: September 11, 2024.</td><td>Respectfully submitted,<br><br>*/s/ Christopher D. Hilton*<br>Judd E. Stone II<br>Texas Bar No. 24076720<br>Christopher D. Hilton<br>Texas Bar No. 24087727<br>Ari Cuenin<br>Texas Bar No. 24078385<br>Michael R. Abrams<br>Texas Bar No. 24087072<br>Alexander M. Dvorscak<br>Texas Bar No. 24120461<br>**STONE | HILTON PLLC**<br>600 Congress Ave., Suite 2350<br>Austin, TX 78701<br>Telephone: (737) 465-7248<br>judd@stonehilton.com<br>chris@stonehilton.com<br>ari@stonehilton.com<br>alex@stonehilton.com<br><br>John C. Sullivan<br>Texas Bar No. 24083920<br>**S|L Law PLLC**<br>610 Uptown Boulevard, Suite 2000<br>Cedar Hill, TX 75104<br>Telephone: (469) 523-1351<br>Facsimile: (469) 613-0891<br>john.sullivan@the-sl-lawfirm.com</td></tr>
</table>

## CERTIFICATE OF SERVICE

    I hereby certify that on September 11, 2024, a copy of this document was served on all counsel of record through the Court's CM/ECF system in accordance with the Federal Rules of Civil Procedure.

                                          */s/ Alexander M. Dvorscak*
                                          Alexander M. Dvorscak