# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | |
|---|---|
| **X CORP.**, a Nevada corporation, § § §<br>*Plaintiff*, § §<br>§<br>vs. § §<br>§<br>**MEDIA MATTERS FOR AMERICA,** a § § Washington, D.C. non-profit corporation, § § **ERIC HANANOKI**, and **ANGELO** § § **CARUSONE**, § §<br>*Defendants.* § § | Case No. 4:23-cv-01175-O |

---

### PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD ON SHIELD-LAW PRIVILEGE GROUNDS

---

JUDD E. STONE II
CHRISTOPHER D. HILTON
ARI CUENIN
MICHAEL R. ABRAMS
ALEXANDER M. DVORSCAK
**STONE | HILTON PLLC**
600 Congress Ave., Suite 2350
Austin, TX 78701
(737) 465-3897

JOHN C. SULLIVAN
**S|L LAW PLLC**
610 Uptown Boulevard
Suite 2000
Cedar Hill, TX 75104
(469) 523-1351

*COUNSEL FOR PLAINTIFF*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................... ii

INTRODUCTION ........................................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND..................................................................... 2

ARGUMENT AND AUTHORITIES.............................................................................................. 4

    I.   The Texas Press Shield Law is inapplicable. ...................................................................... 6

    II.   Alternatively, the Court should review Defendants' withheld documents *in camera* to resolve Defendants' privilege claim. ................................................................................. 10

CONCLUSION.............................................................................................................................. 13

CERTIFICATE OF SERVICE ...................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*84 Lumber Co. v. Cont'l Cas. Co.*,
   914 F.3d 329 (5th Cir. 2019) .................................................................................................. 7

*Erie R. Co. v. Tompkins*,
   304 U.S. 64 (1938) .................................................................................................................. 7

*Ford Motor Co. v. Leggat*,
   904 S.W.2d 643 (Tex. 1995) ................................................................................................... 6

*Grand Oaks, Inc. v. Anderson*,
   175 F.R.D. 247 (N.D. Miss. 1997) ........................................................................................ 10

*In re Christus Santa Rosa Health Sys.*,
   492 S.W.3d 276 (Tex. 2016) ................................................................................................. 11

*In re CVR Energy, Inc.*,
   No. 01-15-00715-CV, 2016 WL 1389013 (Tex. App.—Houston [1st Dist.] Apr. 7, 2016, orig. proceeding) ........................................................................................................................... 8

*In re Garcia*,
   No. 02-20-00161-CV, 2020 WL 4907330 (Tex. App. Fort Worth—Aug. 20, 2020, orig. proceeding) ........................................................................................................................... 9

*In re Levien*,
   No. 03-18-00079-CV, 2018 WL 2170825 (Tex. App.—Austin May 11, 2018, pet. denied) .... 6

*In re Santa Fe Int'l Corp.*,
   272 F.3d 705 (5th Cir. 2001) ............................................................................................ 7, 11

*Int'l Ins. Co. v. RSR Corp.*,
   426 F.3d 281 (5th Cir. 2005) .................................................................................................. 6

*James v. Harris County*,
   237 F.R.D. 606 (S.D. Tex. 2006) .......................................................................................... 10

*Keefe v. City of Minneapolis*,
   No. CIV. 09-2941 DSD/SER, 2012 WL 7766299 (D. Minn. May 25, 2012) ........................ 13

*Kitzmiller v. Dover Area Sch. Dist.*,
   379 F. Supp. 2d 680 (M.D. Pa. 2005) ..................................................................................... 9

*Mem'l Hermann Healthcare Sys. Inc. v. Eurocopter Deutschland, GMBH*,
   524 F.3d 676 (5th Cir. 2008) .................................................................................................. 7

*Teleplus, Inc. v. Aventel, S.A.*,
   No. SA 98-CA-849 WWJ, 2003 WL 23282491  (W.D. Tex. Apr. 9, 2003) ............................. 6

*United Inv'r Life Ins. Co. v. Nationwide Life Ins. Co.*,
   233 F.R.D. 483 (N.D. Miss. 2006) ........................................................................................ 10

*United States v. Ocwen Loan Servicing, LLC*,
   No. 4:12-CV-543, 2016 WL 1031157 (E.D. Tex. Mar. 15, 2016) ......................................... 11

**State Statutes**

| | |
|---|---|
| Tex. Civ. Prac. & Rem. Code §§ 22.021-.027 | *passim* |
| Tex. Code Crim. Proc. art. 1.05 | 9 |
| Tex. Code Crim. Proc. art. 24.12 | 8 |
| Tex. Code Crim. Proc. art. 38.11, §§ 4-5 | 9 |

**Rules**

| | |
|---|---|
| Fed. R. Civ. P. 26 | 7, 10 |
| Fed. R. Civ. P. 34 | 7 |
| Fed. R. Evid. 501 | 6 |
| Tex. R. Civ. P. 176.1-.8 | 7, 8 |
| Tex. R. Civ. P. 196.1-.7 | 7 |
| Tex. R. Civ. P. 215.2(b)(1)-(8) | 8 |

**Constitutional Provisions**

| | |
|---|---|
| U.S. Const. amend. VI | 9 |

**Other Authorities**

| | |
|---|---|
| 1 Tex. Prac. Guide Disc. § 5:82 (2024 ed.) | 7 |
| 2 Tex. Prac. Guide Disc. § 8:6 (2024 ed.) | 7 |

## INTRODUCTION

Following the Court's order on X's motion to compel production of documents, ECF No. 65, Defendants persist in withholding information that is foundational to this litigation based on improper privilege assertions, including information about Defendants' "journalism" activities and drafting process that is probative of Defendants' malicious intent. Indeed, Defendants have refused to search for, let alone log, some information that they claim is privileged, notwithstanding this Court's order to do so. *See* ECF No. 65.[1] Defendants' shifting privilege objections—and their refusal to comply with their discovery obligations—continues to cast a cloud of uncertainty over discovery.

As relevant here, after this Court ordered the Parties to substantively confer regarding the scope of any "First Amendment privileges" (ECF No. 65 at 3), Defendants improperly injected a new privilege claim months into discovery: "TX Press Shield Laws," a separate privilege assertion based on Texas statutory law, Tex. Civ. Prac. & Rem. Code §§ 22.021-.027, that had not previously been enumerated or mentioned in conversations between counsel. On its face, this statute is inapplicable to the material that Defendants purport to withhold. It is similarly inapplicable in these proceedings because Defendants fail to show that the Texas statutes apply. As the party asserting a privilege objection in federal court, Defendants failed to carry their burden to justify withholding material pursuant to a claim of privilege. X therefore requests that the Court overrule Defendants' privilege assertions and compel Defendants to produce the withheld documents or, at a minimum, review Defendants' withheld documents *in camera*.

---

[1] X has separately sought to compel disclosure of donor information in a motion that is presently pending before this Court. ECF No. 83.

– 1 –

**FACTUAL AND PROCEDURAL BACKGROUND**

In the fall of 2023, Media Matters for America published a series of articles falsely representing that major advertisers' content was organically being "placed" next to fringe content on X's popular social media platform. Am. Compl. ¶¶ 30-38, 46-54. As a result of that tortious conduct, significant advertisers withdrew from X's platform. *Id.* ¶¶ 30-38, 61-64. Because of the ongoing damage caused by Media Matters' lies, X brought claims against Media Matters, its president, Angelo Carusone, and the articles' author, Eric Hananoki, for business disparagement, tortious interference with contract, and tortious interference with prospective economic advantage. *Id.* ¶¶ 65-88.

In February 2024, X began serving requests for production. X's first and second sets of requests largely concern categories of documents and other evidence related to the articles, X Corp., and the X platform; information relevant to Media Matters' finances; and information relevant to Defendants' states of mind, communications with like-minded persons and organizations, and other information expected to show knowledge, intent, motive, and other relevant, permissible matters. *See* Appx. 3-14, 16-27. Defendants asserted numerous grounds for withholding production, including a variety of inapplicable privileges and unsupported, boilerplate objections, and impermissibly promise to produce documents "subject to" those objections. Appx. 29-60, 62-85. Defendants did not even *specify* each of their claimed privileges, let alone assert them sufficiently for this Court to rule on them. Instead, for every objection, Defendants asserted the following catchall: attorney-client privileges, work-product protections, "and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26." *See, e.g.*, Appx. 30-31 (Request No. 1). Following weeks of unfruitful attempts to confer among counsel, X moved to compel the production of documents. ECF Nos. 59, 60.

– 2 –

On June 6, 2024, the Court granted X's motion in part and denied it in part. ECF No. 65. The Court denied the motion as to certain requests for production in view of amended discovery responses for which the Court ordered the parties to further confer. *Id.* at 2. The Court ordered Defendants to produce documents in response to other relevance objections. *Id.* (granting motion in part and sustaining objections in part as to Requests for Production Nos. 13-16, 23-24, 37-38, and 46). And the Court deferred ruling on Defendants' First Amendment privilege objections. *Id.* The Court ordered that "Defendants must create and deliver a privilege log of any documents being withheld from production to Plaintiff," and that "[a]fter the parties meaningfully confer, Defendants must notify the Court whether any dispute regarding the assertion of First Amendment privileges remain." *Id.* at 3.

On June 28, 2024, Defendants produced a privilege log to X. *See* Appx. 216-28 (Defendants' June 28 Privilege Log). Conspicuously absent were documents or communications referenced in X's initial motion to compel—for example, Hananoki's notes, drafts of the articles, communications between Hananoki and his editors, and any documents related to Defendants' donors. *Id.* Instead, the documents Defendants logged and redacted or refused to produce on various privilege grounds were purportedly tangential documents relevant to establishing circumstantial evidence of Defendants' state of mind and intent but which do not reflect those previously litigated and subject to X's motion. *See id.* The stated basis for the redaction or withholding included both "TX Press Shield Laws" and "1A," referencing a Texas statutory privilege for certain journalists, Tex. Civ. Prac. & Rem. Code §§ 22.021-22.027, and a generalized application of the First Amendment, respectively. Indeed, underscoring the fact that the documents that were the subject of X's initial motion remain missing, for most entries the stated reason for the application of a shield law sounded in relevance. For example, one document, MMFA_013561,

was withheld because it "reveal[ed] internal strategic communications and MMFA's journalistic process and procedures" but about subject matter that is "not at issue in this case." Appx. 216.

The parties conferred. *See* Appx. 174-83 (email correspondence regarding meet-and-confers). Defendants refused to state when the expected documents, including Hananoki's notes, drafts of the articles, and communications between Hananoki and his editors would be produced.[2] Appx. 179. Defendants did indicate that an amended privilege log would be produced with additional specificity and would further be informed by responses to X's first set of interrogatories served on Media Matters. *See* Appx. 178. Media Matters served its interrogatory responses on July 19. Appx. 140-72 (Media Matters' responses and objections to Plaintiff X Corp.'s First Interrogatories). Following additional correspondence between the parties, *see* Appx. 177, Defendants served an amended privilege log, Appx. 230-43, which reflects Defendants' continued insistence that the Texas Press Shield Law protects a substantial number of documents from production. Because the parties dispute whether the Texas Press Shield Law even applies in this case, the issue before the Court is a pure question of law that is ripe for resolution. Appx. 176-77.

## ARGUMENT AND AUTHORITIES

The Court should overrule Defendants' Texas statutory privilege objections based on section 22.021 *et seq.*—asserted for the first time months after discovery began. Defendants claim a statutory protection from disclosure under the following Texas state law:

> (a) Except as otherwise provided by this subchapter, a judicial, legislative, administrative, or other body with the authority to issue a subpoena or other compulsory process may not compel a journalist to testify regarding or to produce or disclose in an official proceeding:

---

[2] The Parties are continuing to work through the issue of Defendants' repeated refusal to produce documents from key custodians on a timely basis. This dispute is not presently before the Court.

>> (1)  any confidential or nonconfidential information, document, or item obtained or prepared while acting as a journalist; or
>
>> (2)  the source of any information, document, or item described by Subdivision (1).

Tex. Civ. Prac. & Rem. Code § 22.023(a). Texas's statutory protections also include limitations on an assertion of privilege upon satisfying the following elements:

> After notice and an opportunity to be heard, a court may compel a journalist, a journalist's employer, or a person with an independent contract with a journalist to testify regarding or to produce or disclose any information, document, or item or the source of any information, document, or item obtained while acting as a journalist, if the person seeking the information, document, or item or the source of any information, document, or item makes a clear and specific showing that:
>
>> (1) all reasonable efforts have been exhausted to obtain the information from alternative sources;
>
>> (2) the subpoena is not overbroad, unreasonable, or oppressive and, when appropriate, will be limited to the verification of published information and the surrounding circumstances relating to the accuracy of the published information;
>
>> (3) reasonable and timely notice was given of the demand for the information, document, or item;
>
>> (4) in this instance, the interest of the party subpoenaing the information outweighs the public interest in gathering and dissemination of news, including the concerns of the journalist;
>
>> (5) the subpoena or compulsory process is not being used to obtain peripheral, nonessential, or speculative information; and
>
>> (6) the information, document, or item is relevant and material to the proper administration of the official proceeding for which the testimony, production, or disclosure is sought and is essential to the maintenance of a claim or defense of the person seeking the testimony, production, or disclosure.

Tex. Civ. Prac. & Rem. Code § 22.024.

As explained below, Defendants have not shown that these Texas state-law provisions apply to the documents they have currently logged as privileged. Even if the privilege did apply, Defendants have failed to carry their burden to sufficiently state the basis of a valid privilege

– 5 –

objection. The Court should thus compel Defendants to produce responsive documents based on the existing privilege log or after an *in camera* of any documents withheld on the basis of the Texas Press Shield Law.

I.   **The Texas Press Shield Law is inapplicable.**

The Court should overrule Defendants' Texas Press Shield Law claim as inapplicable. As an initial matter, Defendants have failed to preserve a claim that Texas's statute applies here given that they disclaim communicating with anyone in Texas. Under the Federal Rules of Evidence, "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. Thus, the "availability of a privilege in a diversity case is governed by the law of the forum state." *Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 299 n.26 (5th Cir. 2005). Here, privilege is determined by Texas law because Texas is the forum state and Texas law supplies the rule of decision. "This includes application of Texas choice-of-law rules when there is a dispute over which substantive law to apply." *Teleplus, Inc. v. Aventel, S.A.*, No. SA 98-CA-849 WWJ, 2003 WL 23282491, at *1 (W.D. Tex. Apr. 9, 2003). In Texas, privilege claims are "governed by the law of the state with the most significant relationship to the communication." *Ford Motor Co. v. Leggat*, 904 S.W.2d 643, 646 (Tex. 1995). The state with the most significant relationship to a written statement is typically the state where it was received. *E.g.*, *In re Levien*, No. 03-18-00079-CV, 2018 WL 2170825, at *5 (Tex. App.—Austin May 11, 2018, pet. denied).

Defendants have not indicated where the documents in question were received, but they have consistently disclaimed communicating with anyone *in Texas* in this case. ECF No. 41 at 16; *accord* ECF No. 87 at 17. Defendants cannot have their cake and eat it too, but that is what they seek to do here by selectively availing themselves of Texas for purposes of privilege but not personal jurisdiction. Because they have not met their burden to show that the communications at issue occurred in Texas, their privilege assertion fails. *See In re Santa Fe Int'l Corp.*, 272 F.3d

705, 710 (5th Cir. 2001) ("A party asserting a privilege exemption from discovery bears the burden of demonstrating its applicability.").

In any event, the plain terms of the statute do not cover the circumstances under which Defendants seek to avoid production. When, as is the case here, the state's highest court has not spoken on a particular issue, federal courts must make an *Erie* guess to determine how the state court would resolve it. *84 Lumber Co. v. Cont'l Cas. Co.*, 914 F.3d 329, 333 (5th Cir. 2019); *see Erie R. Co. v. Tompkins*, 304 U.S. 64, 77-80 (1938). The party seeking to rely on a rule of law not yet recognized by the Texas Supreme Court bears a "heavy burden" to "assure [the federal court] that [it] would not be making law" by making an *Erie* guess in its favor. *Mem'l Hermann Healthcare Sys. Inc. v. Eurocopter Deutschland, GMBH*, 524 F.3d 676, 678 (5th Cir. 2008).

Neither the Fifth Circuit nor the Texas Supreme Court has yet decided whether the Texas Press Shield Law applies in these circumstances, including to party discovery rather than third-party discovery, and based on the plain text of the statute, it is unlikely that the Texas Supreme Court would extend the statute so broadly. The Texas Civil Practice and Remedies Code creates a limited evidentiary privilege that applies to someone who is "subpoenaing . . . information." Tex. Civ. Prac. & Rem. Code § 22.024(4). X has not subpoenaed any information from Defendants. As parties to this litigation, Defendants are instead subject to the Federal Rules of Civil Procedure governing disclosure and production of documents. *See* Fed. R. Civ. P. 26 & 34. Texas law likewise draws a distinction between requests for production and subpoenas, which are unnecessary to obtain documents from party opponents. *See* Tex. R. Civ. P. 176.1-.8; Tex. R. Civ. P. 196.1-.7; 1 Tex. Prac. Guide Disc. § 5:82 (2024 ed.) (explaining that subpoenas are unnecessary for a party or party-affiliated witnesses); 2 Tex. Prac. Guide Disc. § 8:6 (2024 ed.) ("[T]he request for production is similar to a subpoena . . . used in connection with a deposition. . . . Both

– 7 –

procedures allow the production of documents and things for inspection of the other party. However, the request for production can be used separately from a deposition."). Tellingly, nothing in the Texas Press Shield Law expressly precludes a Texas state court from imposing other corrective measures when a party refuses to provide responsive documents. *See* Tex. R. Civ. P. 215.2(b)(1)-(8) (authorizing courts to, among other things, issue "an order disallowing any further discovery of any kind or of a particular kind by the disobedient party").

Defendants have suggested that Texas's statutory privilege applies because one of the factors courts must consider in deciding whether to apply the privilege references disclosure subject to "a subpoena or other compulsory process." App. 180 (A. Khanna email). Texas courts typically understand these terms interchangeably in civil cases, however, rather than treating "compulsory process" as a catchall term that includes any and all discovery mechanisms. *See, e.g.*, *In re CVR Energy, Inc.*, No. 01-15-00715-CV, 2016 WL 1389013, at *5 (Tex. App.—Houston [1st Dist.] Apr. 7, 2016, orig. proceeding) (analyzing whether persons were "subject to compulsory process in Texas" based on whether their addresses were within the geographic range for which a person could be "required by subpoena to appear or produce documents" (quoting Tex. R. Civ. P. 176.3(a))). Moreover, to the extent Texas courts use the term "compulsory process" to refer to anything other than a subpoena, it is to refer to writs of attachment in criminal cases, which are also not a form of party discovery. Specifically, in criminal cases a defendant is entitled to have a writ of attachment issued when a witness fails to appear after being "duly served with a subpoena." Tex. Code Crim. Proc. art. 24.12. The writ is essentially a warrant directing any peace officer to take a witness into custody and bring them before the court to testify. *Id.* art 24.11.

The reference to "compulsory process" is thus not intended to refer to party discovery mechanisms, but is instead a term of art consistent with a criminal defendant's constitutional right

to employ "compulsory process for obtaining witnesses in his favor." Tex. Code Crim. Proc. art. 1.05; *see also* U.S. Const. amend. VI; Tex. Civ. Prac. & Rem. Code § 22.024; Tex. Code Crim. Proc. art. 38.11, §§4-5; Tex. Code Crim. Proc. art. 1.05. In other words, the Texas Legislature merely ensured that subpoenas receive parity whether in the civil or criminal context. *Cf., e.g.*, *In re Garcia*, No. 02-20-00161-CV, 2020 WL 4907330, at *4 & n.4 (Tex. App. Fort Worth—Aug. 20, 2020, orig. proceeding) (finding abuse of discretion in award of civil sanctions for abuse of process in issuing a criminal subpoena, in part because "the summoning court should always recall that criminal defendants have a constitutional right to compulsory process for obtaining witnesses for their defense"). Thus, the Texas law that Defendants seek to invoke simply isn't implicated at all in the context of the federal party discovery at issue in this case.

Regardless, the assertion of privilege exceeds the scope of any statutory protections, which would extend at most to certain materials "prepared while acting as a journalist" or the "source" thereof. Tex. Civ. Prac. & Rem. Code § 22.023(a)(1)-(2). None of Defendants' privilege assertions invoke the need to protect any "source." Indeed, Defendants have forthrightly admitted that they "did not rely on any sources in drafting the November 16 and November 17, 2023 articles." Appx. 135 (Defendants' response to RFP No. 43). Thus, the only even arguable basis for applying section 22.023 here concerns whether material was "prepared while acting as a journalist." Tex. Civ. Prac. & Rem. Code § 22.023(a)(1). Defendants make this naked assertion without any facts to support their claim. Instead, a key premise of Defendants' case is that Media Matters claims to have merely reported what could be seen on the X platform by ordinary users, for which there "is no intrusion into newsgathering or special functions of the press" since reporters recounting what they have "seen or heard" in public can be questioned as a "witness like any other member of the public." *Kitzmiller v. Dover Area Sch. Dist.*, 379 F. Supp. 2d 680, 687 (M.D. Pa. 2005) (citations omitted);

*e.g.*, ECF No. 37 ¶ 13 (Defendant Carusone's interview statement that Defendant Hananoki "use[d] Twitter the way a normal user would and then log[ged] the advertisements that were received."). Thus, not only do Defendants fail to satisfy their evidentiary burden to prove their self-serving assertion of privilege, it is actually contradicted by their own allegations. Defendants cannot carry their "burden to demonstrate that the privilege exists under the circumstances presented." *James v. Harris County*, 237 F.R.D. 606, 609 (S.D. Tex. 2006) (citations omitted).

## II. Alternatively, the Court should review Defendants' withheld documents *in camera* to resolve Defendants' privilege claim.

If the Court were to hold that the Texas Press Shield Law applies in this matter—and as explained above, it does not—the Court should conduct an *in camera* review of the disputed documents to resolve the objections. The decision to conduct an *in camera* review is well within the bounds of a federal court's broad discretion over discovery matters. *E.g.*, *United Inv'r Life Ins. Co. v. Nationwide Life Ins. Co.*, 233 F.R.D. 483, 486 (N.D. Miss. 2006) (citing *Grand Oaks, Inc. v. Anderson*, 175 F.R.D. 247, 249 (N.D. Miss. 1997)). Here, an *in camera* review is appropriate to resolve whether the information that Defendants refuse to produce is relevant because it shows inconsistency between Defendants' reporting on other subjects and the malicious conduct in this case.

Rule 26(b)(5) of the Federal Rules of Civil Procedure requires a party claiming privilege to provide information sufficient to enable parties to assess the claim. When a party asserts a claim of privilege as to otherwise discoverable information, "the party must (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5). "The Federal Rules essentially dictate that when a party claims privilege, it must provide a log that provides facts that

'would suffice to establish each element of the privilege or immunity that is claimed.'" *United States v. Ocwen Loan Servicing, LLC*, No. 4:12-CV-543, 2016 WL 1031157, at *4 (E.D. Tex. Mar. 15, 2016) (citation omitted). As noted above, failure to carry this burden vitiates a privilege claim in federal court. *In re Santa Fe Int'l Corp.*, 272 F.3d at 710.

> The Texas Press Shield Law does not limit discovery if the following elements are met:
>
> (1) all reasonable efforts have been exhausted to obtain the information from alternative sources; (2) the subpoena is not overbroad, unreasonable, or oppressive . . . ; (3) reasonable and timely notice was given of the demand for the information, document, or item; (4) in this instance, the interest of the party subpoenaing the information outweighs the public interest in gathering and dissemination of news, including the concerns of the journalist; (5) the subpoena or compulsory process is not being used to obtain peripheral, nonessential, or speculative information; and (6) the information, document, or item is relevant and material to the proper administration of the official proceeding for which the testimony, production, or disclosure is sought and is essential to the maintenance of a claim or defense of the person seeking the testimony, production, or disclosure.

Tex. Civ. Prac. & Rem. Code § 22.024.

Assuming arguendo that the Texas Press Shield Law applies, *but see supra* Part I, determining the applicability of these elements presents a matter of statutory interpretation according to the "plain meaning" of the text enacted by the Texas Legislature. *In re Christus Santa Rosa Health Sys.*, 492 S.W.3d 276, 280-81 (Tex. 2016). Taking each element of section 22.024 on its own terms, and regardless of who bears the burden, Defendants' privilege claim should be rejected. As to the first element, requiring "(1) all reasonable efforts have been exhausted to obtain the information from alternative sources," Tex. Civ. Prac. & Rem. Code § 22.024(1), only Defendants would be in possession of the "internal" information over which they assert a privilege, and therefore there are no further avenues for X to exhaust to obtain that information.

Regarding the second and third elements, X served timely requests for production and interrogatories instead of a "subpoena." *Id.* § 22.024(2)-(3). Necessarily, there can be no suggestion that any "subpoena" was untimely, let alone "overbroad, unreasonable, or oppressive."

*Id.* Even assuming counterfactually that this element applies to other discovery devices, Defendants concede that the document requests reasonably capture materials generated in the course of Media Matters' own alleged reporting activities. Appx. 180.

The fourth and fifth elements require that the interests of the party "subpoenaing" the information outweigh "the public interest in gathering and dissemination of news," and that the "subpoena or compulsory process" not be used to "obtain peripheral, nonessential, or speculative information." *Id.* § 22.024(4)-(5). As with the second and third elements, X can overcome these elements because it has not subpoenaed Defendants. And even assuming the elements apply to other discovery mechanisms, X directly tailored its discovery requests to Defendants' tortious conduct at issue in this case. If the defamatory articles in this case are the product of a drafting process reflecting a malicious intent to harm X rather than an attempt to gather news, both X and the public are entitled to know those facts.

The sixth element requires "the information, document, or item is relevant and material . . . and is essential to the maintenance of a claim." *Id.* § 22.024(6). Here, Defendants' documents that "reveal internal strategic communications and MMFA's journalistic process and procedures" are plainly relevant and material to X's claims, for which Defendants' intent is essential to establishing malice and punitive damages. *See* Appx. 216 (privilege objection regarding MMFA_013561). Defendants suggest that the documents are not relevant because the subject matter of their employees' discussion concerns article topics other than X. Appx. 179 (email from A. Khanna). But that argument gets relevance backwards: Documents showing inconsistencies in how Media Matters treated X versus other subjects is highly relevant to X's claim that Defendants maliciously targeted X, its ownership and management, and its advertising relationships.

Information about Defendants' "reporting" is central to both jurisdiction and the merits, and especially with respect to the disputed intent elements of each of X's claims. And especially where communications involve any party or witness to this case, X is entitled at a minimum to documents in Defendants' possession that reflect communications by, from, and between employees of Media Matters. *Cf. Keefe v. City of Minneapolis*, No. CIV. 09-2941 DSD/SER, 2012 WL 7766299, at *4 (D. Minn. May 25, 2012) (contrasting this scenario with discovery from a reporter who was "neither a party nor a witness to any of the underlying facts"). If the Court were to hold that the privilege applies (which it does not), the most expeditious way to resolve this question is for the Court to conduct an *in camera* review to weigh the statutory factors and determine whether disclosure is warranted.

## CONCLUSION

X respectfully requests that the Court overrule Defendants' Texas Press Shield Law objections and order Defendants to promptly produce all materials responsive to X's requests for production.

Dated: September 24, 2024

Respectfully submitted,

*/s/ Christopher D. Hilton*
Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
Ari Cuenin
Texas Bar No. 24078385
Michael R. Abrams
Texas Bar No. 24087072
Alexander M. Dvorscak
Texas Bar No. 24120461
**STONE | HILTON PLLC**
600 Congress Ave., Ste. 2350
Austin, TX 78701
Telephone: (737) 465-3897
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
michael@stonehilton.com
alex@stonehilton.com

John C. Sullivan
Texas Bar No. 24083920
**S|L Law PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2024, a copy of this document was served on all counsel of record through the Court's CM/ECF system in accordance with the Federal Rules of Civil Procedure.

<u>/s/ Christopher D. Hilton</u><br>
Christopher D. Hilton