# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

X CORP.,

               Plaintiff,

     v.

MEDIA MATTERS FOR AMERICA, et al.,

               Defendants.

**Civil Action No. 4:23-cv-01175-O**

**EXPEDITED RULING BY <u>OCT. 2, 2024 AT 12:00 P.M.</u> RESPECTFULLY REQUESTED**

## DEFENDANTS' EMERGENCY BRIEF IN SUPPORT OF MOTION TO STAY ORDER COMPELLING PRODUCTION OF DONOR-RELATED DOCUMENTS PENDING APPEAL

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 3

LEGAL STANDARD........................................................................................................... 8

ARGUMENT ....................................................................................................................... 8

I.      Defendants are likely to succeed on the merits..................................................... 8

        A.      The First Amendment prohibits compelling Defendants to produce donor
                identifying information. ................................................................................ 8

        B.      The district court did not meaningfully address the myriad other objections
                Defendants raised to the document requests at issue. ................................. 13

        C.      Defendants did not waive their First Amendment rights. ........................... 16

        D.      Defendants are likely to establish appellate jurisdiction or, alternatively, that
                mandamus jurisdiction is appropriate. ....................................................... 22

II.     A stay preserving the status quo will prevent irreparable injury and serve the public
        interest............................................................................................................... 22

III.    A stay will not injure, much less substantially injure, Plaintiff. ........................... 24

CONCLUSION.................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ams. for Prosperity Found. v. Bonta,*
  594 U.S. 595 (2021) ............................................................................................... *passim*

*Book People, Inc. v. Wong,*
  91 F.4th 318 (5th Cir. 2024) .................................................................................23

*Brady v. United States,*
  397 U.S. 742 (1970).................................................................................................16

*In re Bryan,*
  645 F.2d 331 (5th Cir. 1981) ..................................................................................2

*Campaign for S. Equality v. Bryant,*
  773 F.3d 55 (5th Cir. 2014) ..................................................................................24

*Campbell v. Clark,*
  471 S.W.3d 615 (Tex. App. 2015).........................................................................9

*Cont'l Ins. Co. v. Chase Manhattan Mortg. Corp.,*
  59 F. App'x 830 (7th Cir. 2003) ...........................................................................14

*Damon J. Baldone, LLC v. Starr Surplus Lines Ins. Co.,*
  No. 22-1903, 2024 WL 4188482 (E.D. La. Sept. 13, 2024)................................24

*EEOC v. BDO USA, L.L.P.,*
  876 F.3d 690 (5th Cir. 2017) ................................................................................21

*Elrod v. Burns,*
  427 U.S. 347 (1976)................................................................................................23

*Freedom From Religion Found., Inc. v. Mack,*
  4 F.4th 306 (5th Cir. 2021) .............................................................................24, 25

*Garcia v. Padilla,*
  No. 2:15-cv-735-FtM-29CM, 2016 WL 881143 (M.D. Fla. Mar. 8, 2016) ...........21

*Hastings v. N. E. Indep. Sch. Dist.,*
  615 F.2d 628 (5th Cir. 1980) ..................................................................................9

*Heller v. City of Dallas,*
  303 F.R.D. 466 (N.D. Tex. 2014) .........................................................................20

*Herbert v. Lando,*
  441 U.S. 153 (1979).................................................................................................11

*Johnson v. Zerbst*,
    304 U.S. 458 (1938)..................................................................................2, 11, 16

*La Union Del Pueblo Entero v. Abbott*,
    68 F.4th 228 (5th Cir. 2023) .................................................................22

*La Union Del Pueblo Entero v. Abbott*,
    No. SA-21-CV-00844-XR, 2022 WL 17574079 (W.D. Tex. Dec. 9, 2022)...................12, 22

*Media Matters for Am. v. Bailey*,
    No. 24-CV-147 (APM), 2024 WL 3924573 (D.D.C. Aug. 23, 2024)....................................13

*Media Matters for Am. v. Paxton*,
    No. 24-cv-147 (APM), 2024 WL 1773197 (D.D.C. Apr. 12, 2024) ...................................13

*Miller v. Transamerican Press, Inc.*,
    621 F.2d 721 (5th Cir. 1980) .................................................................11

*Miller v. Transamerican Press, Inc.*,
    628 F.2d 932 (5th Cir. 1980) .............................................................11, 12

*Opulent Life Church v. City of Holly Springs*,
    697 F.3d 279 (5th Cir. 2012) .............................................................23, 24

*Perry v. Schwarzenegger*,
    591 F.3d 1126 (9th Cir. 2009) ......................................................... *passim*

*Perry v. Schwarzenegger*,
    No. 09-17241 (9th Cir. Dec. 3, 2019) .................................................24

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*,
    734 F.3d 406 (5th Cir. 2013) .................................................................25

*Ruiz v. Estelle*,
    650 F.2d 555 (5th Cir. 1981) .................................................................24

*Taylor Lohmeyer L. Firm P.L.L.C. v. United States*,
    957 F.3d 505 (5th Cir. 2020) .................................................................14

*Tex. All. for Retired Ams. v. Hughs*,
    976 F.3d 564 (5th Cir. 2020) .................................................................22

*Texans for Free Enter. v. Tex. Ethics Comm'n*,
    732 F.3d 535 (5th Cir. 2013) .................................................................23

*United States v. Fluitt*,
    99 F.4th 753 (5th Cir. 2024) .................................................................21

*United States v. Shea*,
   508 F.2d 82 (5th Cir. 1975) ......................................................................16

*Veasey v. Abbott*,
   870 F.3d 387 (5th Cir. 2017) ....................................................................22

*Veasey v. Perry*,
   769 F.3d 890 (5th Cir. 2014) .........................................................8, 14, 25

*Whole Woman's Health v. Smith*,
   896 F.3d 362 (5th Cir. 2018) ...............................................................13, 22

**Other Authorities**

Fed. R. Civ. P. 26(b)(1)................................................................................15

Fed. R. Civ. P. 26(b)(5)(A)..........................................................................20

## INTRODUCTION

In a September 27, 2024 Order, this Court recognized that Defendants have a First Amendment privilege against compelled disclosure of donor related documents, but ruled that Defendants waived any such privilege and ordered the production of all "donor related documents" in ten days. *See* ECF No. 98 ("Order"). Because Defendants intend to immediately appeal that sweeping—and, on the facts of this case, unwarranted—invasion of their constitutional privilege, the Court should stay its Order to allow the Fifth Circuit time to resolve the core First Amendment issues in this case, including whether Defendants knowingly relinquished the constitutional protections they raised at the very outset of discovery and whether Plaintiff has satisfied its demanding burden to overcome those protections here. No court in the United States has ever compelled a media organization to turn over—without even the prospect of redaction—every "donor and financial document" in its possession. The First Amendment guards against such a "widespread burden on donors' associational rights" absent "exacting scrutiny" and "narrow tailoring" that the Court's order sorely lacks. *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 618 (2021). Defendants thus have a strong likelihood of success on appeal for several reasons and a stay is appropriate to permit appellate review of the Court's Order.

*First*, this Court granted X's motion—after first acknowledging the likely infringement of Defendants' First Amendment rights, *see* Order at 17–18—based on conjecture that some responsive documents "may" bear on malice or jurisdiction, *id.* at 18–20. But those 30,000 foot observations avoid the granularity the First Amendment demands. Most critically, they fail to address how a full account of all donors and financial documents bears on *Defendants'* mindset in publishing the articles in question (as is relevant to the merits) or purposeful availment (relevant to the question of jurisdiction). That lack of exacting scrutiny—and the weighty First Amendment associational interests at stake—warrant a stay.

1

*Second*, the Court did not meaningfully address Defendants' many *other* objections to X's requests, including on grounds of relevance, overbreadth, burden, and scope—core Rule 26 grounds for resisting disclosure. The overwhelming majority of the documents responsive to Plaintiff's overbroad requests are not even conceivably relevant to this case. But because the Court compelled production of all responsive documents without contending with Defendants' relevance, burden, and overbreadth objections, such materials must be produced regardless. That error furthers the likelihood that Defendants will prevail on appeal.

*Third*, the Court was also mistaken in finding that Defendants waived their First Amendment rights. Waiver requires "an intentional relinquishment or abandonment of a known right or privilege," *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938), and "purported waivers of fundamental constitutional guarantees are subject to the most stringent scrutiny," *In re Bryan*, 645 F.2d 331, 333 (5th Cir. 1981). X can hardly claim surprise from Defendants' invocation of the First Amendment privilege to donor-related documents. Defendants have raised such privileges ever since receiving X's first set of discovery requests. The Court disregarded those privilege objections on the basis of (i) an after-the-fact interpretation of its June order concerning the premature nature of X's first motion to compel, and (ii) a reinterpretation of Defendants' discovery objections that runs contrary to the record. Those are not adequate grounds to find that Defendants intentionally gave up precious constitutional guarantees.

Finally, the equities weigh overwhelmingly in favor of a stay. The Order acknowledges that the compelled disclosure here likely infringes Defendants' First Amendment rights. *See* Order at 17–18. If this Court's October 7 production deadline stands, those rights will be irreparably violated within a week. And it is not just Defendants' rights at stake; the Court's Order implicates

the First Amendment rights of third parties who have donated to Defendants. X will suffer no corresponding harm.

Because of the Court's forthcoming October 7 deadline, Defendants respectfully request a ruling on this motion, including a denial, by no later than **Wednesday, October 2 at 12:00 p.m.** to permit time for a stay motion to the Fifth Circuit. Defendants sought X's position on the instant motion but did not hear back by the time of filing and thus assume X opposes the motion.

## BACKGROUND

Media Matters published two articles in November 2023 reporting that X had failed to prevent advertisements from appearing next to neo-Nazi and other extremist content on its social media platform. In response, X sued Media Matters for tortious interference with contract, business disparagement, and interference with prospective economic advantage. *See* Am. Compl. ¶¶ 65–88, ECF No. 37. X's first set of discovery requests sought documents far afield from any of these claims, including requests for virtually all documents and communications that Media Matters possessed about its donors. For example, Request for Production ("RFP") No. 17 seeks:

> Documents sufficient to show the identity of all Your donors or any others who provide financial support of any kind, their residence, the time and place of their donation or provision of financial support, and the amount of their donation or other financial support.

App. Supp. Mot. to Compel at 13, ECF No. 85 ("X App. 1"). Similarly, RFP No. 18 seeks:

> Any document or communication reflecting Your attempts to solicit donations or financial support of any kind, including but not limited to any discussions with any donors or any others who provided, considered providing, or were asked to provide financial support of any kind.

*Id.* RFP Nos. 21 and 35 duplicated the requests for donor identities and communications while adding some nexus to X's claims. *Id.* (RFP No. 21 seeking "All documents and communications regarding Your sources of funding for research, investigation, reporting, publication, or any other work related to X, the Platform, Elon Musk, or Linda Yaccarino"); *id.* at 24 (RFP No. 35 seeking

"All materials regarding or communications with any donor or potential donor to Media Matters mentioning or regarding in any way this Matter, Elon Musk, Linda Yaccarino, X, Twitter, or the Platform, including misinformation, brand safety, or ad pairing on the Platform").[1]

Media Matters served timely responses and objections notifying X that it would not produce documents in response to these four requests. Among other objections, Media Matters explained that the requests were overly broad and harassing, and the requests sought "disclosure of sensitive financial and associational information protected **by the First Amendment privilege**, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights." *Id.* at 47–48, 51 (emphasis added). The parties conferred about these objections. As relevant here, counsel for X questioned whether the First Amendment privilege applies in litigation between private parties and requested clarification about the extent to which Media Matters's objections were limiting its collection, search, and production of responsive documents. Counsel for Media Matters, in turn, provided additional caselaw confirming the availability of First Amendment privileges and agreed to amend its responses and objections to clarify which objections were operating to limit document collection and review. App. Supp. Defs.' Resp. to X Mot. to Compel at 102–03, 125–35, ECF No. 63 ("MMFA App. 1").

Immediately after Media Matters alerted X that it would amend its responses and objections—but before Media Matters could serve the amendment—X moved to compel production of all responsive documents, arguing that Media Matters's objections and privilege assertions were procedurally and substantively improper. *See* Pl's. Br. in Supp. of Mot. to Compel, ECF No. 60. In response, Media Matters explained that its decision to search for and collect

---

[1] RFP No. 35 was served as RFP No. 6 in X's second set of requests for production to Media Matters. For clarity, the parties have renumbered X's second set of requests to continue sequentially after X's first set of requests.

potentially responsive documents was determined by its objections related to burden and harassment, and that any privilege assertions would be made on a document-by-document basis and memorialized in a privilege log. *See* Defs.' Resp. to Mot. to Compel, ECF No. 62. Thus, Media Matters explained, the parties had a ripe dispute about whether X's donor-related discovery requests were harassing and unduly burdensome—which supplied the basis for Media Matters's refusal to conduct an exhaustive search for all donor-related documents—but they did not yet have a ripe dispute about the First Amendment privilege because the parties had not yet agreed to a privilege log protocol or logged any documents as privileged. *Id.* at 4–5, 10–13.[2] Meanwhile, Media Matters served amended discovery responses that stated its refusal to produce donor-related documents on the basis of burden, harassment, and related objections, while explicitly reserving the right to reassert its previously asserted privilege objections on a document-by-document basis. MMFA App. 1 at 20–26, 71–73.

This Court adjudicated X's motion to compel on June 6. *See* ECF No. 65 ("June 6 Order"). The Court did not, however, address Media Matters's undue burden and harassment objections to separately searching for or producing donor-related documents. Instead, the Court ordered X to raise any issues regarding Media Matters's amended discovery responses "in a subsequent good faith conferral with Defendants, and if necessary, the Court can resolve any remaining dispute following this effort." *Id.* at 1. The Court also expressly deferred ruling on "any First Amendment privilege concerns until [a privileged-document] protocol is established and responsive documents have been identified." *Id.* at 2. The Court ordered Media Matters "to log any responsive documents as privileged and deliver to Plaintiff no later than June 14, 2024." *Id.*

---

[2] Because the question whether constitutional privileges apply in litigation between private parties was purely legal, Media Matters briefed and invited a ruling on this dispute. ECF No. 62 at 5–9.

When the Court issued its June 6 Order, discovery was scheduled to close on July 29, leaving the parties less than eight weeks to review all potentially responsive documents, log privileged documents, litigate privilege disputes, and depose witnesses about the contents of produced documents. *See* ECF No. 14. Recognizing that "discovery in this case has raised disputes and privileges that have already required litigation and that, despite the parties' diligence, will certainly require additional time to finally resolve," X proposed and filed a joint motion on June 10 to extend all discovery deadlines. *See* ECF No. 66 at 3; *see also id.* n.3 (jointly proposing "to allow additional time for the review of documents for potential privilege assertions and production of privilege logs"). The Court granted that motion in part, requiring the parties to reach a privilege log **agreement** by June 14 (but not actually exchange logs on that date); extending the close of discovery to December 31, 2024; and granting the parties' request to extend until June 28 the deadline for Media Matters to provide its "First" privilege log. *See* ECF No. 69.

The parties subsequently agreed to mutual privilege log exchanges on September 6, October 11, November 15, and December 17. Carusone App. Supp. Defs.' Resp. to X Mot. to Compel at 4–5, 9, ECF No. 88 ("Carusone App. 1"). The parties further agreed that, "[w]ith respect to the June 28 'Deadline for Defendants to Provide First Privilege Log and Associated Documents,' the parties understand that on June 28 Defendants will produce a log of any privileged documents identified to date, along with copies of any redacted documents referenced therein, with additional document productions and privilege logs to follow in accordance with the parties' forthcoming Privilege Log Agreement." X App. 1 at 179. Because the Court stated that it "routinely declines to convert an agreement of the parties into a court order," ECF No. 72 (declining to docket parties' proposed protective order), the parties agreed that the privileged-documents protocol should not be docketed. Carusone App. 1 at 4–5. Consistent with the parties'

6

agreement and their shared understanding of the Court's June 6 order and related extensions, Media Matters served its first privilege log on June 28 identifying privileged documents identified to date, and a second log on September 6 identifying additional privileged documents, including dozens of donor-related documents over which Media Matters asserted a First Amendment privilege. App. Supp. Mot. to Compel Texas Press Shield Law Docs. at 216–340, ECF No. 97 ("X App. 2")

On August 2, the parties conferred about Media Matters's first privilege log. In advance of that call, counsel for X explained that its "goal is to only burden the Court with the substantive legal issues of privilege—we hope we can work out the procedural mechanics of discovery together in good faith." *Id.* at 175. During the conferral, counsel for X expressed a desire to expedite judicial resolution of the dispute over donor-related documents and counsel for Media Matters confirmed that motions practice regarding the donor-related privilege need not await document identification and logging, because the issue was squarely presented by Media Matters's privilege-based responses and objections to an interrogatory requesting identification of Media Matters's "top 20 funding sources." *Id.* at 174. Since the Court's June 6 Order, counsel for X has not sought to confer about Media Matters's burden-and harassment-based objections to independently searching for donor documents that are not otherwise related to X's claims.

On August 30, X moved to overcome Media Matters's assertion of First Amendment privilege over donor-related information. *See* ECF No. 84. Contrary to what the parties had discussed, however, the motion did not raise the privilege dispute that had ripened when Media Matters served its interrogatory responses on July 19, and it did not focus on the substantive legal dispute of privilege. Instead, X preemptively raised an array of alleged procedural defects with Media Matters's anticipated assertion of privilege over documents, before (wrongly) reiterating its

7

position that constitutional privileges do not apply in discovery between private parties and that the privilege can be overcome here.

The Court granted X's motion. *See* Order at 22. First, it found that Media Matters waived the First Amendment privilege by—in the Court's view—failing to comply with the June 6 Order, produce a privilege log, and raise the First Amendment privilege in the Second Amended Responses and Objections. *Id.* at 6. The Court then determined that, had the privilege not been waived, it would likely apply in this litigation, but X nonetheless overcame the privilege because the requested documents could be relevant to jurisdiction, punitive damages, and Defendants' mental state. *Id.* at 19–21. The Court ordered Media Matters to provide "all documents in its care, custody, or control response to RFPs 17, 18, 21, and 35 no later than October 7, 2024." *Id.* at 22. Media Matters now seeks to stay this order pending appeal.

## LEGAL STANDARD

Courts in the Fifth Circuit consider four factors in ruling on a motion to stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Veasey v. Perry*, 769 F.3d 890, 892 (5th Cir. 2014) (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009)).

## ARGUMENT

**I.     Defendants are likely to succeed on the merits.**

**A.     The First Amendment prohibits compelling Defendants to produce donor identifying information.**

It is undisputed that this controversy concerns Defendants' First Amendment rights—the Court found they "satisf[ied] their burden of showing the potential for infringement" of such rights

through compelled disclosure of donor information. Order at 18; *see also* ECF No. 89. But the Court erred in finding Defendants must surrender these rights in the face of overbroad and vague discovery requests for a straightforward reason: Plaintiffs have never explained—and this Court never found—how the "identity" and "residence" of donors is even relevant to the claims or defenses in this case, never mind of sufficient importance to overcome Defendants' First Amendment rights. *See Hastings v. N. E. Indep. Sch. Dist.*, 615 F.2d 628, 632 (5th Cir. 1980); *Perry v. Schwarzenegger*, 591 F.3d 1126, 1144 (9th Cir. 2009).

To be sure, X urged, and this Court agreed, that X is entitled to take discovery regarding "jurisdiction, the mens rea, and actual malice." Order at 20. But the Court's generalized observations that "donor related documents" "*may* serve as proof of Defendants mental state," and "*may* show" purposeful availment of Texas, *id.* at 18, 20, does not reflect the "exacting scrutiny" the First Amendment demands before "impos[ing] a widespread burden on donors' associational rights." *Bonta*, 594 U.S. at 618; *see also e.g.*, *Campbell v. Clark*, 471 S.W.3d 615, 624 (Tex. App. 2015) (explaining actual malice requires publishing "a false statement of fact to a third party" regardless of the recipient's *identity*).[3]

X's own arguments illustrate the point. It argued below that "[i]f donors worked together with Defendants to harm X business model, X is entitled to learn about those efforts." ECF 91 at 10. X could have crafted a targeted request along these lines—but it did not. And it's after-the-fact guesswork about what documents could fall within its capacious requests fails to explain why X

---

[3] Contrary to Plaintiff's suggestion, Defendants did not categorically refuse to produce discovery on these topics based on their First Amendment rights. Defendants raised *other* categorical objections to these requests based on burden, proportionality, and harassment—objections this Court did not resolve in either its June 6 order or its September 27 order, *see infra* § I.B—but they agreed that they would log any assertion of First Amendment privilege on a document-by-document basis. X App. 1 at 177.

is entitled to wholesale discovery of *all* "donor and financial documents," Order at 21, including the name and home address of each donor. Even in some hypothetical scenario where such donor information could bear on *Defendants'* mindset—and X has wholly failed to proffer such an example—the First Amendment requires "exacting scrutiny" before such disclosure. *Bonta*, 594 U.S. at 616. The Court's order permits X to do precisely what *Bonta* prohibits: "indiscriminately sweep[] up the information of *every* major donor [to Defendants] with reason to remain anonymous," even where their identity has little or no bearing on the topics identified by Defendants. *Id.* at 616–17.

X's request for jurisdictional discovery does not change the matter. For one, Defendants have never refused to produce information related to donations from Texans, including the number and sum of donations received from Texas, as well as the number of donors located in Texas. And neither the Court's order nor X have explained why or how X's claims about the articles at issue could "arise out of or relate to" its donor information—including names and specific addresses of donors in Texas and everywhere else. The Court's conclusion that donor related documents "may still be indicative of Defendants' efforts to solicit Texans generally or to support other journalistic endeavors, both of which may show Defendants purposefully availed themselves of a Texas forum," Order at 20, ignores the fact that specific jurisdiction requires some nexus with the claims at issue in the case. *See Johnson*, 21 F.4th at 318 (explaining a plaintiff's claim must "arise out of or relate" from a defendant's forum contacts). In short, neither the Court's order nor X explain how such information is possibly even *relevant* to a claim or defense, never mind so critically important as to require casting aside First Amendment rights. *See Perry*, 591 F.3d at 1144 (holding that "First Amendment interests" require a "more demanding heightened relevance standard").

10

For the same reasons, this Court placed far too much reliance on the Supreme Court's holding in *Herbert v. Lando* and the Fifth Circuit's holding in *Miller v. Transamerican Press, Inc. See* Order at 19-20. In *Herbert*, the Supreme Court simply rejected the idea that the First Amendment prohibits *any* inquiry into a defamation defendant's state of mind. *See* 441 U.S. 153, 165 (1979) (explaining that courts "have traditionally admitted any direct and indirect evidence relevant to the state of mind of the defendant"). In doing so, it stressed that such evidence may be sought because it is "essential to proving liability that the plaintiff *focus on the conduct and state of mind of the defendant*." *Id.* at 160 (emphasis added); *see also id.* (explaining the purpose of such inquiry is into whether "the defendants . . . knew or had reason to suspect that their damaging publication was in error"). That does not explain how a *third party donor's* information and identity bears on proving a plaintiff's case or a defendant's state of mind. The Fifth Circuit said much the same in *Miller*, explaining a defamation plaintiff was entitled to know the identity of a specific informant because the "only way [plaintiff could] establish malice and prove his case [wa]s to show that [the defendant] knew the story was false or that it was reckless to rely on the informant." *Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 726 (5th Cir.), *opinion supplemented on denial of reh'g*, 628 F.2d 932 (5th Cir. 1980). The situation here is nothing like *Miller*—the identity and full gamut of Media Matters's donors and financial support has no bearing on the alleged falsity of the disputed articles.

In fact, *Miller* cuts strongly *against* the Court's sweeping disclosure order. The Fifth Circuit supplemented that decision by adding the following paragraph:

> We do not mean to intimate that a plaintiff will be entitled to know the identity of the informant merely by pleading that he was injured by an untrue statement. Before receipt of such information the plaintiff must show: substantial evidence that the challenged statement was published and is both factually untrue and defamatory; . . . and that knowledge of the identity of the informant is necessary to proper preparation and presentation of the case.

11

*Miller*, 628 F.3d at 932 (per curiam). Thus, the plaintiff in *Miller*—to learn the identity of a single informant directly responsible for supplying the allegedly defamatory information—had to both come forward with "substantial evidence" of falsity and establish the informant's identity was "necessary" to their case. *Id.* Merely "pleading" injury was not enough. *Id.* Yet the Court here has compelled the disclosure of a broad sweep of third-party identities without even requiring Plaintiff to cogently explain how they could bear on actual malice or damages.

At bottom, the Court's decision to broadly compel the production of *all* "donor related documents" without any limitation fails to show the "narrow[] tailor[ing]" necessary to impose such a "widespread burden on donors' associational rights." *Bonta*, 594 U.S. at 618. Simply finding that some of these materials "may" be relevant under Rule 26 falls far short of the "exacting scrutiny" the First Amendment demands. *Id.* at 616; *Perry*, 591 F.3d at 1144.[4]

Finally, the mere existence of a protective order does not remedy this lack of exacting scrutiny or narrow tailoring. The Court's order has the effect of requiring Defendants to turn over broad swathes of admittedly protected information, *see* Order at 17–18, regardless of its relationship to the articles or claims at issue in this case. That prospect is "disturbing." *Whole Woman's Health v. Smith*, 896 F.3d 362, 373 (5th Cir. 2018) (setting aside a "discovery order [that] forces" disclosure of sensitive information "*to a public policy opponent*" (emphasis in

---

[4]  Particularly egregious is the Court's refusal to even consider permitting Defendants to "redact the names of any individual" donors from such records. *La Union Del Pueblo Entero v. Abbott*, No. SA-21-CV-00844-XR, 2022 WL 17574079, at *7 (W.D. Tex. Dec. 9, 2022) (recognizing redaction of identifying information would permit "compliance with [] discovery obligations" while protecting against "harassment, membership withdrawal, or discouragement of new members"). The Court nowhere explained how such targeted redactions would deprive X of the ability to seek discovery that "may serve as proof of Defendants mental state" or show purposeful availment of Texas. *See* Order at 18–19. The Court's compelled disclosure thus failed to meet the First Amendment's "narrow tailoring requirement." *Bonta*, 594 U.S. at 612. "That was error." *Id.*

original)). And the Supreme Court has stressed that "disclosure requirements can chill association 'even if there is no disclosure to the general public.'" *Bonta*, 594 U.S. at 616 (quoting *Shelton v. Tucker*, 364 U.S. 479, 486 (1960)) (cleaned up). That observation has particular force in this litigation, which began with the world's richest man threatening to file a "thermonuclear" lawsuit, his pronouncement that Defendants are "evil," and his promise to use his limitless resources to "pursue not just [Media Matters], but anyone funding that organization." *See* ECF No. 87 at 20 & n.6. Further still, various state actors—including two state attorneys general—have launched parallel attacks on Defendants in a transparent effort to curry favor with Musk and his fanbase. *Id.* at 1 & n.1.[5] The Court's conclusion that Defendants' First Amendment interests are "reduced" here—in a potentially existential struggle to sustain their journalism against a subject of their reporting who seeks to silence its critics—elides this record altogether. *See* Order at 20.

In sum, Defendants are likely to show that the Court's sweeping and categorical discovery order runs afoul of the First Amendment's requirements. *See Bonta*, 594 U.S. at 611; *Whole Women's Health*, 896 F.3d at 375; *Perry*, 591 F.3d at 1144. At minimum, they have made a sufficiently strong showing on their First Amendment arguments to warrant preserving the status quo pending appeal. *See Veasey*, 769 F.3d at 892.

**B.    The district court did not meaningfully address the myriad other objections Defendants raised to the document requests at issue.**

Defendants are further likely to prevail on appeal because—setting aside the First Amendment—the Court did not meaningfully address Defendants' other objections to X's discovery requests. X's own motion to compel directed itself solely towards Defendants' assertion

---

[5] *See generally Media Matters for Am. v. Bailey*, No. 24-CV-147 (APM), 2024 WL 3924573, at *2, 10–11 (D.D.C. Aug. 23, 2024) (observing "X did not deny that advertising in fact had appeared next to the extremist posts" and "did not deny the basic premise of the article"); *Media Matters for Am. v. Paxton*, No. 24-cv-147 (APM), 2024 WL 1773197, at *18–19 (D.D.C. Apr. 12, 2024).

of First Amendment privilege. *See* ECF No. 84. Defendants disputed that issue, but also pointed out even if the privilege "does not apply," production was still improper because "the requests are harassing and seek irrelevant information." ECF No. 87 at 19. The Court's order acknowledges these same objections, *see* Order at 9-10, yet never really resolves them. That was clear error. *E.g.*, *Cont'l Ins. Co. v. Chase Manhattan Mortg. Corp.*, 59 F. App'x 830, 839–40 (7th Cir. 2003) (finding district court abused its discretion by granting motion to compel "in [its] entirety" where court "did not consider" objections).

As explained, *see supra* pp. 4-5, Defendants initially raised a host of objections to the document requests at issue, including both on privilege grounds and on traditional Rule 26 bases like overbreadth, burden, lack of particularity, harassment, and relevance. *See* X App. 1 at 47–49 (RFPs 17, 18), 51–52 (RFP 21), 69–70 (RFP 35). Consistent with circuit law, *see Taylor Lohmeyer L. Firm P.L.L.C. v. United States*, 957 F.3d 505, 510 (5th Cir. 2020) (explaining as a "general rule" that "blanket" assertions are disfavored and instead should be "specifically asserted with respect to particular documents" (citations omitted); *see also infra* § I.C.3, Defendants amended their responses to omit privilege claims, having made clear to X that they would assert such claims on a document-by-document basis in privilege logs. X App. 1 at 177. But they still maintained a host of other objections to the requests under Rule 26. *See id.* at 128–30 (RFP 35), 201–06 (RFPs 17, 18, 21). And they pressed these objections in response to X's motion to compel. *See* ECF No. 87 at 19–20. X did not argue—and this Court did not find—that any of these objections are waived. Yet, without fully addressing these objections, the Court ordered Defendants to produce "all documents in its care, custody, or control responsive to RFPs 17, 18, 21, and 35," Order at 22, without respect to relevance, scope, burden, or duplication.

To be sure, the Court acknowledged these "arguments are pertinent to the *general harassment* objection," which it then overruled in reliance on the protective order. *Id.* at 12–13 (emphasis added). But beyond that drive-by ruling on the "general harassment objection," the Court never grappled with Defendants' outstanding objections, including relevance, scope, and burden. A simple review of the requests at issue illustrates why the Court's haste on this score was error. RFP 17, for example, seeks:

> Documents sufficient to show the identity of all Your donors or any others who provide financial support of any kind, their residence, the time and place of their donation or provision of financial support, and the amount of their donations or other financial support.

X. App. 1 at 201. In effect, this request seeks the identity of *every* donor of *any kind* from *any time* from *any place*. But the identity and home address of every donor for any purpose cannot *conceivably* be "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Yet RFP 17 calls for just such information and—under this Court's order—Defendants must produce "all" such responsive documents in mere days. The Court simply never addressed the overbreadth, vagueness, or relevance of this request.

X's other overbroad requests yield similar absurdities. RFP 35 seeks:

> All materials regarding or communications with any donor or potential donor to Media Matters mentioning or regarding in any way this Matter, Elon Musk, Linda Yaccarino, X, Twitter, or the Platform, including misinformation, brand safety, or ad pairing on the Platform.

X. App. 1 at 69. Given that a "potential donor" could be anyone in the world—and potentially anyone on Media Matters's various listservs—RFP 35 seeks any document or communication with any number of people that "in any way" regard a host of broad topics, regardless of its conceivable relevance to this litigation. In brushing past Defendants' various other objections, the Court's order nonetheless compels the production of such irrelevant and burdensome material. *See* Order at 22.

15

### C.     Defendants did not waive their First Amendment rights.

In finding that Media Matters waived the First Amendment privilege, the Court misapprehended the record, misapplied the relevant caselaw, and overlooked the repeated warning from the Supreme Court that an effective waiver of a constitutional right requires that the waiver be an "intentional relinquishment or abandonment of a known right or privilege." *Zerbst*, 304 U.S. at 464; *see also Brady v. United States*, 397 U.S. 742, 748 (1970) (holding valid waivers "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences"); *United States v. Shea*, 508 F.2d 82, 85 (5th Cir. 1975) ("Courts indulge every reasonable presumption against waiver of a fundamental right[.]"). There is no basis for waiver here, where Media Matters has vigorously pressed its objections—including on the basis of privilege—to X's requests for donor-related information, all while, to the best of its ability and understanding, adhering to the discovery schedule negotiated by the parties and ordered by the Court.

### 1.     Media Matters did not refuse to comply with the June 6 Order.

The Court's finding that Media Matters failed to comply with the June 6 Order improperly conflates two aspects of that order—Defendants' obligation to log documents over which it was asserting First Amendment privilege, June 6 Order at 2, and *Plaintiff's* obligation to confer and seek resolution on Defendants' objections based on overbreadth, relevance, and harassment, *id.* at 1. Contrary to the Court's suggestion, the June 6 Order did not implicitly override Defendants' objections by requiring them to search for and log the full scope of Plaintiff's overbroad, irrelevant, and harassing requests within a couple of weeks.

*First*, Media Matters has never "refused to conduct any search" for any documents that may be responsive to the donor-related requests for production. *Contra* Order at 7. Rather, as Media Matters explained to X, Media Matters has undertaken a comprehensive search for all

16

documents potentially relevant to X's claims, including all documents related to this litigation, X Corp., the X social media platform, Elon Musk, and Linda Yaccarino. Thus, Media Matters's search necessarily collected *all documents* from likely custodians potentially responsive to RFP Nos. 21 and 35, which ask for documents related to X, Musk, and Yaccarino. Because RFP Nos. 17 and 18 substantially overlap with RFP Nos. 21 and 35, virtually all of the documents collected as responsive to RFP Nos. 21 and 35 will also be responsive to RFP Nos. 17 and 18.

The only limitation on Media Matters's collection, as relevant here, has been its refusal to *separately* search for documents that have nothing to do with the claims in this case but might nonetheless be responsive to RFP Nos. 17 and 18. This search limitation was not grounded in privilege, but rather in the burden- and harassment-related objections that Media Matters included in its operative responses and objections. X App. 1 at 201–06. To the extent X contests those objections, it was *X*'s obligation to "first raise those issues in a subsequent good faith conferral with Defendants" and to then move to overcome the objections. June 6 Order at 1. Because X has not conferred about Media Matters's burden and harassment objections or moved to overcome them, Media Matters was under no obligation to forfeit them.

The fact that Media Matters never refused to search for any donor-related documents is readily apparent from the Court's own citations to Media Matters's briefing and correspondence between counsel for its contrary finding. *See* Order at 7 n.6. Media Matters's response to X's motion to compel explained that X was "wrong to assert" that Media Matters "refused to log [responsive] documents" because Media Matters had already searched for and collected documents likely to be responsive to X's donor-related requests, and those documents would be logged as they surfaced in the ordinary course of the review process. ECF No. 87 at 7 n.3. Likewise, the counsel correspondence *rejected* X's insinuation that Media Matters was refusing to search for or

log any responsive documents. *See* X. App. 1 at 176 ("Third, we are confused by your refrain that Defendants 'refuse to log all responsive documents.'"); *id.* at 179 (reiterating that donor-related documents would appear on a privilege log "to the extent the documents are responsive to search terms generated by other requests").

Ultimately, nothing in the Court's June 6 Order purported to overrule Media Matters's non-privilege-based objections in the course of deferring a ruling on the privilege dispute until a ripe controversy arose. The Court simply required Media Matters to log "any responsive documents" in order to generate a live dispute. June 6 Order at 2.[6] Because Media Matters has logged responsive donor-related documents, it plainly did not "refuse[] to conduct any search," Order at 7, and thus it did not refuse to comply with the Court's order.

*Second*, Media Matters not only sought an extension of the original June 14 deadline for a privilege log—this Court *granted* the extension. In recounting the relevant events, this Court said that "Defendants do not dispute the Court ordered them to deliver a privilege log to Plaintiff no later than June 14, 2024." Order at 6–7 (cleaned up). That much is correct; June 14 was the original deadline. June 6 Order at 2. But then the Court's summary makes a serious error. It said, "There is no indication Defendants needed extra time to search and log documents beyond the ordered or agreed upon time," and further asserted that Defendants did not "ask for an extension of the deadline to comply with the Court's order." Order at 7. That is directly contradicted by the record. On June 10—four days after the Court set the initial June 14 privilege log deadline—X filed a joint motion to extend all discovery deadlines, explaining the parties' shared position that they required

---

[6] The Court's use of "any" reflected the possibility that some requests might not generate any responsive documents. *See* X App. 1 at 206 (in response to RFP No. 21, responding that "Media Matters does not receive any dedicated funding that is restricted for research, investigation, reporting, publication, or any other work related to X, the Platform, Elon Musk, or Linda Yaccarino").

"additional time for the review of documents for potential privilege assertions and production of privilege logs." ECF No. 66 at 3 n.3. The Court granted that request in relevant part, extending discovery by over five months and postponing the deadline for Defendants' "First" privilege log—necessarily recognizing that more would follow—until June 28. *See* ECF No. 69 at 1.

Accordingly, the Court **MODIFIES** the schedule in this matter as follows:

| | |
|---|---|
| ESI Protocol, Protective Order, and Privilege Log Agreement | June 14, 2024 |
| Deadline for Defendants to Provide First Privilege Log and Associated Documents | June 28, 2024 |
| Initial Expert Designation & Report | ~~June 24, 2024~~ January 14, 2025 |

In other words, the parties agreed that Media Matters needed time beyond June 14 (and beyond June 28) to log *every* privileged document potentially responsive to X's broad discovery requests. ECF No. 66 at 3. Because the Court granted the requested extensions, Media Matters did not disobey the Court by using the extra time it requested and that the Court granted. *See id.*

### 2.    Media Matters did not fail to produce a privilege log.

Media Matters has produced privilege logs adequately describing the logged documents. The Court contends that Media Matters "did not produce the privilege log at all." Order at 9. That is not correct. Media Matters produced its first privilege log on June 28, as ordered ECF No. 69 at 1; it produced a second privilege log on September 6, as the parties agreed; and it intends to produce subsequent privilege logs in October, November, and December, pursuant to the privileged-document protocol that the Court ordered the parties to negotiate. *See* June 6 Order at 2. The Court also appears to fault Media Matters for failing to substantiate its First Amendment objections with sufficient evidence and explanation in its privilege logs. *See* Order at 8–9. But X has not raised any issue with the manner in which Media Matters has designated donor-related documents as privileged by the First Amendment; the Court has not detailed any deficiency in the

19

evidence and explanation in Media Matters's logs; and, in any event, Media Matters's privilege

logs fully comply with the parties' privilege-document protocol and all operative rules.

### 3. Media Matters did not improperly fail to raise the First Amendment privilege in its amended discovery responses.

Finally, Media Matters did not waive its privilege objections by failing to identify

privileged documents in its amended responses and objections. The Court appears to have

confused—and conflated—a party's obligations when responding to a request for production with

the party's obligations when logging responsive documents on a privilege log. When objecting to

a document request, a party may "explain what portion of [the] document request is objectionable

and why . . . and affirmatively explain *whether* any responsive information or documents have

been withheld." *Heller v. City of Dallas*, 303 F.R.D. 466, 485 (N.D. Tex. 2014) (emphasis added).

That is what Media Matters did: its amended responses and objections explained that the donor-

related requests, on their face, sought irrelevant information and were harassing, and that Media

Matters did not intend to produce donor-related documents on that basis. X App. 1 at 201–06.

When withholding a document based on privilege, in contrast, a party must "expressly make the

claim" and "describe the nature of the documents, communications, or tangible things not

produced or disclosed." Fed. R. Civ. P. 26(b)(5)(A). Again, that is what Media Matters did. X App.

1 at 201–06.

According to the Court, however, Media Matters was required to describe the withheld

documents in its initial responses and objections. *See* Order at 9. That is inconsistent with

discovery procedure. Responses and objections inform the search for documents, and so they are

necessarily served before any documents are reviewed. How could a party provide a description

of "documents/emails" withheld for privilege, *see id.* (quoting *United States v. Fluitt*, 99 F.4th

753, 763–64 (5th Cir. 2024)), before the party has reviewed the documents and emails? Because it plainly could not do so, it need not do so.

Caselaw is not to the contrary. Notably, the two cases the Court cites for a party's failure to comply with Rule 26(b)(5)(A)—its basis for waiver here—concerned a dispute about the party's *privilege log*, not its responses and objections. *See Fluitt*, 99 F.4th 753 at 763–64 (privilege log did not disclose whether parties to purported attorney-client communications were attorneys, clients, or neither); *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017) (privilege log did not disclose sufficient information to determine whether purported attorney-client communications contained legal advice). The only other discovery case the Court cited—*Garcia v. Padilla*, No. 2:15-cv-735-FtM-29CM, 2016 WL 881143 (M.D. Fla. Mar. 8, 2016)—held that a party waived objections included in its initial responses when the party failed to argue those objections in response to a motion to compel. *See id.* at *3. Here, there is no question that Media Matters asserted the First Amendment privilege in response to the motion to compel—indeed, that was the primary basis for Media Matters's opposition. *See* ECF No. 87 at 8–19.

Media Matters's operative responses and objections explicitly provided that Media Matters's review of "documents responsive to Plaintiff's Discovery Requests is still ongoing" and that Media Matters reserved its right to supplement or amend the responses and objections "to assert additional objections or privileges . . . on a document-by-document basis." X App. 1 at 185–86. Far from waiver, this was textbook compliance with the Federal Rules. *See La Union Del Pueblo Entero*, 2022 WL 17574079, at *9 (holding "assertions of privilege must 'be specifically asserted' on a document-by-document basis," as "the relevance and need for the document clearly depend on the contents of the document itself") (quoting *Taylor Lohmeyer Law Firm*, 957 F.3d at 510).

21

**D.    Defendants are likely to establish appellate jurisdiction or, alternatively, that mandamus jurisdiction is appropriate.**

Finally, Defendants' likelihood of success on the merits is not undercut by any future dispute over appellate jurisdiction. The Fifth Circuit has held that denial of a First Amendment privilege claim satisfies the collateral order doctrine and permits immediate appeal. *See Whole Woman's Health*, 896 F.3d at 367. Beyond the discovery context, the Fifth Circuit has also repeatedly "reaffirmed its precedent holding that interlocutory court orders bearing on First Amendment rights remain subject to appeal pursuant to the collateral order doctrine." *Id.* at 368 (collecting cases); *cf. La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228, 233 (5th Cir. 2023) (concluding denial of legislative privilege permitted immediate appeal).[7]

**II.    A stay preserving the status quo will prevent irreparable injury and serve the public interest.**

"A stay pending appeal 'simply suspend[s] judicial alteration of the status quo,' so as to allow appellate courts to bring 'considered judgment' to the matter before them and 'responsibly fulfill their role in the judicial process.'" *Tex. All. for Retired Ams. v. Hughes*, 976 F.3d 564, 566 (5th Cir. 2020) (quoting *Nken*, 556 U.S. at 427, 429); *see also Veasey v. Abbott*, 870 F.3d 387, 392 (5th Cir. 2017) (granting stay pending appeal because "a temporary stay will allow this court to . . . rule on the merits while preserving the status quo"). Here, such a stay will serve to both prevent irreparable harm to Defendants and serve the public interest by allowing for careful consideration of the substantial First Amendment interests implicated in Defendants' privilege assertions.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality op.). Courts

---

[7] Even if the Court's order did not constitute a "final" order for purposes of the collateral order doctrine, Defendants are also likely to prevail under mandamus jurisdiction. *See Perry*, 591 F.3d at 1134 (suggesting the likely availability of collateral order jurisdiction but choosing to grant relief under mandamus).

routinely conclude that an injury to a party's First Amendment interests will constitute irreparable injury justifying a stay pending appeal or an injunction. *See, e.g.*, *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012) (holding that plaintiff "has satisfied the irreparable-harm requirement because it has alleged violations of its First Amendment . . . rights"); *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013); *Book People, Inc. v. Wong*, 91 F.4th 318, 340–41 (5th Cir. 2024). This Court should do the same, particularly given its own acknowledgment that disclosure risks infringing upon Defendants' rights. *See* Order at 17–18. And should this Court's order compelling disclosure of donors' information remain in place, the harm will be immediate and irreparable. Existing donors will face a substantially increased risk of threats, harassment, and reprisals, as Media Matters's own employees have already experienced. *See* ECF No. 87 at 14–16. Those donors have a strong interest in maintaining the privacy of their affiliation with Media Matters. *See Bonta*, 594 U.S. at 616–17 (noting the "gravity of the privacy concerns" in holding that disclosure requirements can chill association even when disclosure is not to general public and assurances of confidentiality are present). And Media Matters, too, has its own interest in protecting its association with the individuals who fund its First Amendment-protected journalism. That is particularly the case when many of the communications X seeks simply have nothing to do with the articles at issue in this lawsuit.

Defendants' risk of irreparable harm is particularly acute here because the First Amendment privilege, like other privileges, is obviated upon disclosure. *See, e.g.*, *Damon J. Baldone, LLC v. Starr Surplus Lines Ins. Co.*, No. 22-1903, 2024 WL 4188482, at *2 (E.D. La. Sept. 13, 2024) ("[I]f Defendants were required to produce privileged and/or protected communications or documents, they risk suffering immediate, irreparable harm. Once information subject to the attorney-client privilege or work product doctrine is disclosed, the right of

nondisclosure cannot be restored."); *see also* Order at 2, *Perry v. Schwarzenegger*, No. 09-17241 (9th Cir. Dec. 3, 2019), ECF No. 31 (finding appellants would be irreparably injured and granting stay pending appeal where appellants brought First Amendment privilege claim); *Perry*, 591 F.3d at 1137 (holding that injury to "First Amendment rights" would "not be remediable on appeal"). The inability to restore Defendants' First Amendment right to nondisclosure would render any injury here truly irreparable.

For similar reasons, "the public interest is best served" here "by maintaining the status quo." *Ruiz v. Estelle*, 650 F.2d 555, 569 (5th Cir. 1981). Indeed, the "public interest always lies in a correct application of the First Amendment." *Freedom From Religion Found., Inc. v. Mack*, 4 F.4th 306, 317 (5th Cir. 2021) (cleaned up) (granting stay pending appeal); *see also Opulent Life Church*, 697 F.3d at 298 ("[I]njunctions protecting First Amendment freedoms are always in the public interest."). In this case, preserving the staying quo and staying the compelled production of documents and information will serve that interest by providing adequate time for the Fifth Circuit to carefully consider Defendants' substantial First Amendment privilege defenses. *See Campaign for S. Equality v. Bryant*, 773 F.3d 55, 58 (5th Cir. 2014) (granting stay pending appeal, holding that "a detailed and in depth examination of this serious legal issue" was warranted before disturbing status quo).

## III.    A stay will not injure, much less substantially injure, Plaintiff.

Conversely, Plaintiff will not be harmed at all by a stay. As explained, Plaintiff is simply not entitled to a full accounting of Media Matters's donors and all of Media Matters' communications with them. The documents at issue are protected by the First Amendment and largely irrelevant to this dispute, and the requests themselves are plainly a harassing attempt to stifle Media Matters's ability to fund its journalistic endeavors. *See supra* § I. Any harm Plaintiff could conceivably face is thus outweighed by Defendants' likelihood of success. *See, e.g.*, *Planned*

24

*Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013) (finding that plaintiffs' "strong showing that their interests would be harmed by staying the injunction" to be outweighed "given the State's likely success on the merits" and ordering stay).

But even if Plaintiff were to ultimately prevail on this issue, the only harm it would face from a stay would be a modest delay in receiving a subset of documents at issue in this matter while the appeal is pending. Discovery in this matter is scheduled to close in approximately three months. *See* ECF No. 69 at 2. Defendants have already made numerous productions over the course of this litigation, and they will continue to make productions concerning all other subjects in this case while their appeal on this issue is pending. Any harm to Plaintiff from a stay would be minimal, if not nonexistent—and certainly not substantial or irreparable. *See Veasey*, 769 F.3d at 892; *Freedom from Religion Found.*, 4 F.4th at 316–17 (granting stay where preserving status quo would not "irreparably injure" non-moving party). This Motion should accordingly be granted.

## CONCLUSION

For the reasons stated above, this Court should stay its Order compelling the production of Defendants' donor-related financial information pending the outcome of Defendants' appeal of the Order. In the alternative, this Court should postpone its October 7 production deadline by two weeks to allow Defendants additional time to pursue a stay in the Fifth Circuit.

Dated: October 1, 2024

Respectfully submitted,
*/s/ Andrew LeGrand*

GIBSON, DUNN & CRUTCHER LLP
Andrew LeGrand (TX 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.* (CA 132099)
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed* (NY 4382040)
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

ELIAS LAW GROUP LLP
Abha Khanna* (WA 42612)
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Aria C. Branch* (DC 1014541)
Christopher D. Dodge* (DC 90011587)
Jacob D. Shelly* (DC 90010127)
250 Massachusetts Avenue NW, Suite 400
Washington, DC 20001
T: (202) 968-4490
F: (202) 986-4498
abranch@elias.law
cdodge@elias.law
jshelly@elias.law

* Admitted *pro hac vice*

*Counsel for Defendants Media Matters for America, Angelo Carusone, and Eric Hananoki*

26

**CERTIFICATE OF SERVICE**

On October 1, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Andrew LeGrand*
Andrew LeGrand