# EXHIBIT A

No. 24-10900

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

X CORP.,
*Plaintiff-Appellee,*

v.

MEDIA MATTERS FOR AMERICA, ERIC HANANOKI, and ANGELO
CARUSONE,
*Defendants-Appellants.*

On Appeal from the United States District Court
for the Northern District of Texas
(Case No. 4:23-cv-01175-O)

## OPPOSED EMERGENCY MOTION FOR ADMINISTRATIVE
## STAY PENDING RESOLUTION OF MOTION FOR STAY
## PENDING APPEAL AND MOTION FOR STAY PENDING
## APPEAL OF ORDER COMPELLING PRODUCTION OF
## PRIVILEGED DOCUMENTS

*(Counsel listed on following page)*

GIBSON, DUNN &
CRUTCHER LLP
Andrew LeGrand
Trey Cox
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com
tcox@gibsondunn.com

Theodore J. Boutrous, Jr.
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

ELIAS LAW GROUP LLP
Abha Khanna
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Aria C. Branch
Christopher D. Dodge
Jacob D. Shelly
Washington, DC 20001
T: (202) 968-4490
F: (202) 986-4498
abranch@elias.law
cdodge@elias.law
jshelly@elias.law

*Counsel for Defendants-
Appellants Media Matters for
America, Angelo Carusone, and
Eric Hananoki*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies pursuant to Fifth Circuit Rule 27.4 and Rule 28.2.1 that the following listed persons and private entities have an interest in the outcome of this case, including all private practice lawyers and private law firms currently engaged in this litigation. Pursuant to the fourth sentence of Rule 28.2.1, government officials and entities are not included in this certificate. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Defendants-Appellants (movants in the present motion):**

Media Matters for America, Eric Hananoki, and Angelo Carusone, represented by Elias Law Group LLP attorneys Abha Khanna, Aria Branch, Christopher D. Dodge, Daniela Lorenzo, Elena Alejandra Rodriguez Armenta, Elisabeth C. Frost, Jacob D. Shelly, Omeed Alerasool, and Samuel Ward-Packard; and Gibson Dunn & Crutcher LLP attorneys Andrew Patrick LeGrand, Trey Cox, Amer S. Ahmed, Anne Marie Champion, Jay P. Srinivasan, and Theodore J. Boutrous, Jr.

**Plaintiff-Appellee:** X Corp. and X Corp.'s stockholders.[1] X Corp. is represented by S|L Law PLLC attorney John Clay Sullivan and Stone Hilton PLLC attorneys Alexander Mark Dvorscak, Ari Cuenin, Christopher D. Hilton, Cody C. Coll, Jude E. Stone, II, and Michael Abrams.[2]

*/s/ Andrew LeGrand*
Andrew LeGrand

---

[1] X Corp. has disclosed the "persons and entities who are owners/shareholders of X Holdings Corp." in other litigation. *See* Resps.' Supp. R. 7.1 Corp. Disclosure Statement and Certification Pursuant to Local Rule 3-15, *Anoke v. Twitter, Inc.*, No. 3:23-cv-02217-SI (N.D. Cal. June 9, 2023), ECF No. 36-4.

[2] While this issue is disputed between the parties, Defendants contend that both Elon Musk and Tesla are also interested parties in this matter. *See* D. Ct. ECF Nos. 34, 74.

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................... iii

TABLE OF AUTHORITIES ................................................................ iv

BACKGROUND ................................................................................... 4

LEGAL STANDARD ......................................................................... 10

ARGUMENT ...................................................................................... 11

I.    This Court has jurisdiction. ....................................................... 11

II.   Defendants are likely to succeed on the merits. ......................... 12

      A.    The First Amendment prohibits compelled disclosure of donor information ................................................................. 12

      B.    The district court did not address Defendants' Rule 26 objections to X's document requests. ................................... 15

      C.    Defendants did not waive their First Amendment rights. ............................................................................... 17

III.  A stay preserving the status quo will prevent irreparable injury and serve the public interest. ........................................... 22

IV.  A stay will not injure X. ........................................................... 24

V.    The Court should alternatively grant mandamus relief. ............. 25

CONCLUSION ................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ams. for Prosperity Found. v. Bonta,*
    594 U.S. 595 (2021) ............................................ 1, 12, 13, 14, 15, 24, 27

*Book People, Inc. v. Wong,*
    91 F.4th 318 (5th Cir. 2024) ............................................ 23

*Brady v. United States,*
    397 U.S. 742 (1970) ............................................ 17

*In re Bryan,*
    645 F.2d 331 (5th Cir. 1981) ............................................ 3, 17

*Bueno v. City of Donna,*
    714 F.2d 484 (5th Cir. 1983) ............................................ 11

*In re Burlington N., Inc.,*
    822 F.2d 518 (5th Cir. 1987) ............................................ 26

*Campaign for S. Equality v. Bryant,*
    773 F.3d 55 (5th Cir. 2014) ............................................ 25

*Cheney v. U.S. Dist. Court,*
    542 U.S. 367 (2004) ............................................ 26

*Citizens United v. FEC,*
    558 U.S. 310 (2010) ............................................ 3

*EEOC v. BDO USA, L.L.P.,*
    876 F.3d 690 (5th Cir. 2017) ............................................ 22

*Elrod v. Burns,*
    427 U.S. 347 (1976) ............................................ 23

*Freedom From Religion Found., Inc. v. Mack,*
    4 F.4th 306 (5th Cir. 2021) ............................................ 24, 25, 27

*Garcia v. Padilla*,
 No. 2:15-cv-735-FtM-29CM, 2016 WL 881143 (M.D. Fla.
 Mar. 8, 2016) ...................................................................... 22

*In re Grand Jury Subpoena*,
 190 F.3d 375 (5th Cir. 1999)...................................... 12, 26

*Heller v. City of Dallas*,
 303 F.R.D. 466 (N.D. Tex. 2014) ...................................... 21

*Johnson v. TheHuffingtonPost.com, Inc.*,
 21 F.4th 314 (5th Cir. 2021) .............................................. 14

*Johnson v. Zerbst*,
 304 U.S. 458 (1938) ..................................................... 2, 17

*La Union Del Pueblo Entero v. Abbott*,
 No. SA-21-CV-00844-XR, 2022 WL 17574079 (W.D. Tex.
 Dec. 9, 2022) .............................................................. 15, 22

*In re Lloyd's Reg. N. Am., Inc.*,
 780 F.3d 283 (5th Cir. 2015)............................................. 27

*McIntyre v. Ohio Elections Comm'n*,
 514 U.S. 334 (1995) .......................................................... 12

*Opulent Life Church v. City of Holly Springs*,
 697 F.3d 279 (5th Cir. 2012)............................................. 23

*Perry v. Schwarzenegger*,
 591 F.3d 1126 (9th Cir. 2009)............................. 12, 13, 14, 15, 24, 26

*Planned Parenthood of Greater Tex. Surgical Health Servs.
 v. Abbott*,
 734 F.3d 406 (5th Cir. 2013)............................................. 25

*Ruiz v. Estelle*,
 650 F.2d 555 (5th Cir. 1981)............................................. 24

*Tex. All. for Retired Ams. v. Hughs*,
 976 F.3d 564 (5th Cir. 2020)........................................ 15, 23

- v -

*United States v. Fluitt,*
   99 F.4th 753 (5th Cir. 2024) ............................................................ 22

*Veasey v. Perry,*
   769 F.3d 890 (5th Cir. 2014) ............................................ 10, 15, 25

*Whole Woman's Health v. Smith,*
   896 F.3d 362 (5th Cir. 2018) .............................. 11, 12, 13, 15

**Statutes**

28 U.S.C. §1291 ........................................................................... 11

**Other Authorities**

Fed. R. App. P. 8(a)(2)(A)(i) ................................................... 10

Fed. R. Civ. P. 26(b)(1) ............................................................ 16

Fed. R. Civ. P. 26(b)(5)(A) ...................................................... 21

Fed. R. Civ. P. 26(g)(1)(B)(ii) ................................................ 16

Before last week, no court in the United States had ever compelled a non-profit organization to turn over—without even the prospect of redaction—every document in its possession regarding its donors or financial supporters. The district court became the first when it ordered Defendants—Media Matters for America ("Media Matters"), its president Angelo Carusone, and its senior investigative reporter Eric Hananoki— to hand over to Plaintiff X Corp. "all documents and communications" ***revealing all of Media Matters's donors*** and ***donor solicitations "of any kind."*** In doing so, the court entirely failed to apply the "exacting scrutiny" and "narrow[] tailor[ing]" that the First Amendment demands before a court may compel such disclosures "impos[ing] a widespread burden on donors' associational rights." *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 618 (2021). This extraordinary intrusion is unprecedented, unjustified, and unconstitutional.

The court's order, which requires full production of these privileged documents by October 7, should be stayed so that Defendants may be heard on these critical issues before suffering the injury of disclosure— an injury that will be impossible to remedy once Media Matters's and its donors' associational interests have been violated. At minimum, this

Court should promptly enter an administrative stay to permit orderly consideration of this weighty issue, an act that will not prejudice X Corp. given that months of discovery remain below.

Defendants have a strong likelihood of success. Even the district court recognized that X's discovery requests likely infringe Defendants' First Amendment rights. App.641-644. But it brushed aside those protections based on conjecture that some responsive documents "may" bear on malice or jurisdiction in this business torts case, a far cry from the granular analysis that the First Amendment demands. Compounding this error, the district court never meaningfully addressed Defendants' many *other* objections to X's discovery requests under Federal Rule of Civil Procedure 26, including on grounds of relevance, overbreadth, burden, and harassment. Indeed, the demand that Defendants—or *any* organization—forfeit their associational rights by disclosing all their donor-related documents and communications—regardless of their relevance—sets a troubling precedent.

Defendants did not waive their First Amendment rights. Waiver requires "an intentional relinquishment or abandonment of a known right or privilege," *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938), and

- 2 -

"purported waivers of fundamental constitutional guarantees are subject to the most stringent scrutiny," *In re Bryan*, 645 F.2d 331, 333 (5th Cir. 1981). Defendants have vigorously claimed the First Amendment's protections ever since receiving X's first discovery requests. Yet the district court revoked the privilege based on (i) an unfounded reinterpretation of an earlier discovery order, and (ii) a reading of Defendants' discovery objections that runs contrary to the record. Those are not adequate grounds to find that Defendants intentionally gave up their precious constitutional guarantees. At minimum, the district court's labored waiver analysis failed to "indulge every reasonable presumption against [finding a] waiver" of constitutional rights. *Id.* (cleaned up).

The equities weigh overwhelmingly in favor of a stay. If the district court's October 7 production deadline stands, Defendants' rights—and those of all of Defendants' third-party donors (whose donations undeniably constitute speech, *Citizens United v. FEC*, 558 U.S. 310, 365 (2010))—will be irreparably violated and a dangerous precedent set. X will suffer no corresponding harm from a stay, particularly since months of discovery remain.

Because of the district court's deadline, Defendants respectfully request that this Court grant an administrative stay no later than **Monday, October 7, 2024 at noon** to allow the Court to resolve Defendants' motion to stay pending appeal, and it should grant the motion to stay pending appeal in due course as well. Alternatively, if the Court determines that it lacks jurisdiction over this appeal, it should exercise mandamus jurisdiction and treat this motion as one for an administrative stay and stay pending mandamus instead.

## BACKGROUND

Media Matters is a non-profit media organization supported exclusively by private donors who believe and share in its mission. In November 2023, Defendants published two articles reporting that X failed to prevent advertisements from appearing next to neo-Nazi and other extremist content on its social media platform. In response, X sued Defendants for various business torts. *See* App.018-045.

X's first set of discovery requests sought documents far afield from any of these claims, including requests for virtually all documents and

communications that Defendants possessed about Media Matters's

donors. At issue are the following Requests for Production:

> **RFP 17:** Documents sufficient to show the identity of all Your
> donors or any others who provide financial support of any kind,
> their residence, the time and place of their donation or provision of
> financial support, and the amount of their donation or other
> financial support.

> **RFP 18:** Any document or communication reflecting Your attempts
> to solicit donations or financial support of any kind, including but
> not limited to any discussions with any donors or any others who
> provided, considered providing, or were asked to provide financial
> support of any kind.

> **RFP 21:** All documents and communications regarding Your
> sources of funding for research, investigation, reporting,
> publication, or any other work related to X, the Platform, Elon
> Musk, or Linda Yaccarino.

> **RFP 35:** All materials regarding or communications with any donor
> or potential donor to Media Matters mentioning or regarding in any
> way this Matter, Elon Musk, Linda Yaccarino, X, Twitter, or the
> Platform.

App.256-257.

Defendants served timely responses and objections notifying X that

they would not produce documents in response to these requests.

App.272-328. Among other objections, Defendants explained that the

requests were overly broad and harassing and sought "disclosure of

sensitive financial and associational information protected ***by the First***

***Amendment privilege***, the production of which would chill Defendants'
exercise of their First Amendment speech and associational rights."
App.290-295 (emphasis added).

After X requested clarification about the extent to which
Defendants' objections were limiting their search and production of
responsive documents, Defendants agreed to serve amended objections.
App.157-158, 180-190. Before Defendants could serve those amendments,
X moved to compel production of all responsive documents. App.046-069.

Defendants' response explained that while the parties had a ripe
dispute about whether X's donor-related discovery requests were
harassing and unduly burdensome—the basis for Defendants' refusal to
conduct an exhaustive search for all donor-related documents—they did
not have a ripe dispute about the First Amendment privilege because the
parties had not yet logged any documents as privileged, let alone agreed
to a privilege-log protocol. App.079-088. Meanwhile, Defendants served
amended discovery responses restating their refusal to produce donor-
related documents on the basis of burden, harassment, and overbreadth,
while expressly reserving the right to assert privilege objections on a
document-by-document basis. App.119-125, 139-141.

In its June 6 order adjudicating X's motion to compel, the district court did not address Defendants' undue burden and harassment objections. Instead, the court ordered X to raise any issues regarding Defendants' amended discovery responses "in a subsequent good faith conferral with Defendants, and if necessary, the Court can resolve any remaining dispute following this effort." App.203. The court also deferred ruling on "any First Amendment privilege concerns until [a privileged-document] protocol is established and responsive documents have been identified," and ordered Defendants "to log any responsive documents as privileged and deliver to Plaintiff no later than June 14, 2024." App.204.

At the time, discovery was scheduled to close on July 29. *See* App.002. Recognizing the parties required "additional time for the review of documents for potential privilege assertions and production of privilege logs," X proposed and filed a *joint motion* on June 10 to extend *all* discovery deadlines. *See* App.209 n.3. The court granted that motion in part, requiring the parties to negotiate a privilege log protocol by June 14; extending the close of discovery to December 31; and extending until June 28 the deadline for Defendants to provide their first privilege log. App.213-214.

The parties agreed to make additional privilege log exchanges on September 6, October 11, November 15, and December 17. App.408.[3] They further agreed that the court's June 28 "Deadline for Defendants to Provide First Privilege Log" meant that "on June 28 Defendants will produce a log of ***any privileged documents identified to date***, ... with additional document productions and privilege logs to follow in accordance with the parties' forthcoming Privilege Log Agreement." App.335 (emphasis added). Consistent with the court's orders and the parties' understanding, Defendants served their first privilege log on June 28 listing privileged documents identified to date, and a second log on September 6 identifying additional privileged documents, including dozens of donor-related documents privileged by the First Amendment. App.498-623.

On August 30, X moved to overcome Defendants' assertion of First Amendment privilege over all donor-related information. App.219-242. But contrary to what the parties had discussed in conferrals, the motion did not raise the privilege dispute that had ripened when Defendants

---

[3] Because the district court stated that it "routinely declines to convert an agreement of the parties into a court order," App.216, the parties agreed not to docket the privileged-documents protocol, App.403-404.

served interrogatory responses on July 19, *see* App.329 (Defendants inviting motions practice on this basis), and it did not focus on the substantive legal dispute of privilege, *see* App.330 (X pledging not to burden the court with procedural disputes). Instead, X preemptively raised an array of alleged procedural defects with Defendants' anticipated assertion of privilege over documents, before (wrongly) reiterating its position that the privilege was inapplicable.

On September 27, the court granted X's motion. App.625. First, it found that Defendants waived the First Amendment privilege. App.630. It then determined that, absent waiver, the privilege would likely apply, but that X overcame it because some requested documents could be relevant to jurisdiction, punitive damages, and Defendants' mental state. App.643-645. The Court ordered Defendants to provide "all documents in [their] care, custody, or control response to RFPs 17, 18, 21, and 35 no later than October 7, 2024." App.646.

Defendants moved the district court to stay this order yesterday morning, asking for a decision by 12:00 p.m. on October 2. App.652. The district court instead ordered briefing on the motion through Friday, October 4 at 5:00 p.m. App.689. Given both the impending Monday,

October 7 production deadline and the briefing schedule set by the district court, it would be "impracticable" to wait for that court's ruling before moving for a stay pending appeal in this Court. Fed. R. App. P. 8(a)(2)(A)(i). Accordingly, Defendants file this motion to provide this Court the opportunity to order and review briefing in advance of the October 7 deadline, as well as to enter an administrative stay or stay pending appeal to permit orderly review of a weighty constitutional issue. X opposes the motion.

## LEGAL STANDARD

This Court considers four factors on a motion to stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Veasey v. Perry*, 769 F.3d 890, 892 (5th Cir. 2014) (citation omitted).

While discovery orders are typically reviewed "for abuse of discretion," *Whole Woman's Health v. Smith*, 896 F.3d 362, 369 (5th Cir. 2018), where a First Amendment claim is at issue the Court "has an

obligation to 'make an independent examination of the whole record' …
to make sure that 'the judgment does not constitute a forbidden intrusion
on the field of free expression[,]'" *id.* (quoting *Marceaux v. Lafayette City-
Par. Consol. Gov't*, 731 F.3d 488, 491–92 (5th Cir. 2013)). Likewise,
"[p]urported waivers of fundamental constitutional guarantees are
subject to the 'most stringent scrutiny.'" *Bueno v. City of Donna*, 714 F.2d
484, 492–93 (5th Cir. 1983) (citation omitted).

## ARGUMENT

### I.    **This Court has jurisdiction.**

This Court has jurisdiction under 28 U.S.C. §1291 because denial
of a First Amendment privilege claim is "final" under the collateral order
doctrine and permits immediate appeal. *Whole Woman's Health*, 896 F.3d
at 367. Such orders: (1) are "conclusive" because "failure to comply … may
result in sanctions"; (2) "resolve[] important … issues separate from the
merits"; and (3) are "'effectively unreviewable' on appeal from the final
judgment." *Id.* This Court has repeatedly reaffirmed that "interlocutory
court orders bearing on First Amendment rights remain subject to appeal
pursuant to the collateral order doctrine." *Id.* at 368 (collecting cases)).

The district court here acknowledged its order implicates such rights, *see* App.641-642; the collateral order doctrine is thus satisfied.

The Court alternatively possesses authority to grant relief through mandamus. *In re Grand Jury Subpoena*, 190 F.3d 375, 389 n.16 (5th Cir. 1999); *see also Perry v. Schwarzenegger*, 591 F.3d 1126, 1134, 1137 (9th Cir. 2009); *infra* §V.

## II.   Defendants are likely to succeed on the merits.

### A.   The First Amendment prohibits compelled disclosure of donor information.

There is no dispute that Defendants' First Amendment rights are at stake—the district court found Defendants "satisf[ied] their burden of showing the potential for infringement" of such rights through X's demand for compelled disclosure of donor information. App.642. The Supreme Court has confirmed that compelled disclosure of donor identity "imposes a widespread burden on donors' associational rights" under the First Amendment, *Bonta*, 594 U.S. at 618, because the right to "anonymity" is intrinsic to free speech and advocacy, *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342-43 (1995). The district court was therefore required to apply "exacting scrutiny" to X's requests, ensuring

any compelled disclosure was "narrowly tailored." *Bonta*, 594 U.S. at 608; *see also Perry*, 591 F.3d at 1144.

The district court failed to do so. Nowhere did it explain how the "identity" and "residence" (App.119) of donors is relevant to the claims or defenses in this case, never mind so critical to warrant "intrusion into [Defendants'] constitutional rights." *Whole Women's Health*, 896 F.3d at 374. Instead, it relied on generalized observations that "donor related documents" "*may* serve as proof of Defendants mental state," and "*may* show" purposeful availment of Texas. App.642-644.

Such conjecture fails to explain how donor information, including name and street address, is germane *at all* to issues like malice or jurisdiction. It is not. Information about third-party donors has no clear bearing on *Defendants'* mindset, and does not justify compelling production of *all* "donor related documents" regardless of their relationship to issues in this case. App.642-644. As to jurisdiction (which Defendants contend is lacking here as a matter of law, *see* D. Ct. ECF No. 94), neither X nor the court explained how X's claims—concerning two allegedly defamatory articles written in Maryland about a California-based company—"arise out of or relate" to donor information. *Johnson v.*

*TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 317-18 (5th Cir. 2021) (citation omitted). The court's observation that donor information "may" show "Defendants' efforts to solicit Texans generally or to support other journalistic endeavors" is puzzling—such information *cannot* establish specific personal jurisdiction without a yet-to-be-explained nexus to the articles at the heart of this case. App.644.[4] Without any cogent explanation, let alone "careful consideration of the need for such discovery," *Perry*, 591 F.3d at 1140, the court granted precisely what *Bonta* prohibits: an order that "indiscriminately sweep[s] up the information of *every* major donor [to Defendants] with reason to remain anonymous." 594 U.S at 616-17.

Because the district court's cursory conclusion that some of these materials "may" be relevant under Rule 26 falls far short of the "narrow tailoring" and "exacting scrutiny" the First Amendment demands, *id.* at 616, Defendants are likely to show that the Court's sweeping order compelling production of *all* "donor-related documents" runs afoul of the First Amendment. *Id.* at 611; *Whole Women's Health*, 896 F.3d at 375;

---

[4] Defendants have *never* refused to produce information related to donations from Texans, including the sum and number of such donations.

*Perry*, 591 F.3d at 1144.[5] At minimum, Defendants have made a sufficiently strong showing on their First Amendment arguments to warrant an administrative stay, as well as a stay pending appeal. *See Veasey*, 769 F.3d at 892.

## B. The district court did not address Defendants' Rule 26 objections to X's document requests.

Defendants are also likely to prevail because the district court effectively ignored their many *other* duly raised objections to X's donor-related discovery requests, including on grounds of overbreadth, burden, harassment, and relevance. No one disputes these objections were preserved and pressed below. Indeed, the court acknowledged those same objections, *see* App.633-634, yet never meaningfully resolved them.[6]

---

[5] The district court's lack of narrow tailoring is clear from its refusal to even consider permitting Defendants to "redact the names of any individual" donors from such records. *La Union Del Pueblo Entero v. Abbott*, No. SA-21-CV-00844-XR, 2022 WL 17574079, at *7 (W.D. Tex. Dec. 9, 2022) ("*LUPE*"). Nor does the existence of a protective order immunize the district court's error. *See Whole Women's Health*, 896 F.3d at 373. The Supreme Court has stressed that "disclosure requirements can chill association 'even if there is no disclosure to the general public,'" *Bonta*, 594 U.S. at 616 (cleaned up), a warning that rings especially true here, *see* App.634 (X's CEO Elon Musk vowing he "will pursue not just [Defendants] but anyone funding [Media Matters]").

[6] The district court observed that Defendants' relevance and harassment "arguments are pertinent to the general harassment objection," which it

Even a cursory review of X's RFPs illustrates why ignoring those objections was error. RFP 17 seeks "the identity of all Your donors," "their residence," and other personal details, without respect to location, when they donated, or for what purpose (if any) they donated. App.256. But the identity and home address of every donor for any purpose cannot *conceivably* be "relevant to any party's claim or defense and proportional to the needs of the case," Fed. R. Civ. P.26(b)(1), and serves only "to harass, cause unnecessary delay, or needlessly increase the cost of litigation," *id.* at 26(g)(1)(B)(ii). Yet the court ordered Defendants to produce "all" such documents in days. App.646. Similarly, RFP 35 seeks "[a]ll" documents and communications "with any donor or *potential* donor" that "in any way" mentions or regards Musk or X (among other topics). App.312. The vast majority of responsive materials are well beyond the scope of this case. But the court's order nonetheless compels the production of such irrelevant and burdensome material without addressing these critical threshold objections. App.625-646.

---

then summarily overruled. App.636-637. But beyond that drive-by ruling on the "general harassment objection," the court never grappled with these objections.

### C.    Defendants did not waive their First Amendment rights.

In finding that Defendants waived the First Amendment privilege, the district court misapprehended the record, misapplied the relevant caselaw, and overlooked repeated warnings from the Supreme Court that an effective waiver of a constitutional right requires "an intentional relinquishment or abandonment of a known right or privilege." *Zerbst*, 304 U.S. at 464; *see also Brady v. United States*, 397 U.S. 742, 748 (1970) (holding valid waivers "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences"). It certainly did not "indulge every reasonable presumption against waiver of a fundamental right," *In re Bryan*, 645 F.2d at 333, given that Defendants have vigorously pressed their objections—including based on privilege—to X's requests for donor-related information from the start.

### 1.    Defendants did not refuse to comply with the June 6 order.

The district court's finding that Defendants failed to comply with its June 6 order improperly conflates two aspects of that order— Defendants' obligation to log documents over which they were asserting

- 17 -

First Amendment privilege, App.213-214, and *Plaintiff's* obligation to confer and seek resolution on Defendants' objections based on overbreadth, relevance, and harassment. *Id*. Far from overruling Defendants' objections by requiring them to search for and log the full scope of Plaintiff's overbroad, irrelevant, and harassing requests within a couple of weeks, the June 6 order deferred ruling on them until *X* provided some basis for the Court to do so.

Contrary to the district court's telling, App.631, Defendants never "refused to conduct any search" for any documents that may be responsive to the donor-related requests for production. As Defendants explained to X, App.357-362, they have undertaken a comprehensive search for all documents potentially relevant to X's claims, including all documents related to this litigation, X, Musk, and Linda Yaccarino, in response to RFPs 21 and 35. *Id*. And because RFPs 17 and 18 substantially overlap with RFPs 21 and 35, documents collected as responsive to RFPs 21 and 35 will also be responsive to RFPs 17 and 18.

The only limitation on Defendants' collection, as relevant here, has been their burden- and harassment-related objections. App.357-362. To the extent X contests those objections, the court instructed X to "first

raise those issues in a subsequent good faith conferral with Defendants"
and to then move to overcome the objections. App.203. X did neither, so
Defendants did not forfeit those objections.

Further, Defendants not only sought an extension of the original
June 14 deadline for a privilege log—the district court *granted* the
extension. In recounting the relevant events, the court correctly noted
the *original* June 14 deadline for Defendants' privilege log. App.630-631;
*see* App.204. But the court's subsequent assertion that Defendants
provided "no indication [that they] needed extra time to search and log
documents" and did not "ask for an extension of the deadline to comply
with the Court's order," App.631, is directly contradicted by the record.
On June 10—four days after the Court set the initial June 14 privilege
log deadline—X filed a *joint* motion to extend all discovery deadlines,
explaining the parties' shared position that they required "additional
time for the review of documents for potential privilege assertions and
production of privilege logs." App.209 n.3. Recognizing that Defendants
needed significantly more time to log *every* privileged document
potentially responsive to X's broad discovery requests, the parties agreed
to rolling logs beginning with a "First" on June 28. *See* App.209, 213. The

court *granted* the parties' request, extending discovery by over five months and postponing the deadline for Defendants' "First" privilege log—necessarily recognizing that more would follow—until June 28. App.213. Defendants did not disobey the Court by using the extra time they requested and received. *See id.*

### 2. Defendants did not fail to produce a privilege log.

The district court was also incorrect when it said that Defendants "did not produce the privilege log at all." App.633. Defendants produced their first privilege log on June 28, as ordered; they produced a second log on September 6, as the parties agreed; and they intend to produce subsequent logs in October, November, and December, pursuant to the privileged-document protocol that the court ordered the parties to negotiate. *See* App.204.

### 3. Defendants did not waive the First Amendment privilege in their amended discovery responses.

Finally, Defendants did not waive their privilege objections by failing to identify privileged documents in their amended responses and objections. The district court appears to have conflated a party's obligations when responding to a request for production with the party's obligations when logging responsive documents on a privilege log.

- 20 -

When objecting to a document request, a party must "explain what portion of [the] document request is objectionable and why ... and affirmatively explain *whether* any responsive information or documents have been withheld." *Heller v. City of Dallas*, 303 F.R.D. 466, 485 (N.D. Tex. 2014) (emphasis added). That is what Defendants did: their amended responses and objections explained that the donor-related requests, on their face, sought irrelevant information and were harassing, and that Defendants did not intend to produce donor-related documents on that basis. App.357-362.

When withholding a document based on privilege, in contrast, a party must "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed." Fed. R. Civ. P. 26(b)(5)(A). That is precisely what Defendants did. App.357-362. Defendants stated that their review of "documents responsive to Plaintiff's Discovery Requests is still ongoing" and reserved their right to supplement or amend the responses and objections "to assert additional objections or privileges ... on a document-by-document basis." App.134-135. Far from waiver, this was textbook compliance with the Federal Rules. *See LUPE*, 2022 WL 17574079, at *9 ("[A]ssertions of

privilege must be specifically asserted on a document-by-document basis." (cleaned up)).

Notably, the two cases the court cites for a party's failure to comply with Rule 26(b)(5)(A)—its basis for waiver here—concerned a dispute about the party's *privilege log*, not its responses and objections. *See Fluitt*, 99 F.4th at 763-64; *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017). The only other discovery case the court cited—*Garcia v. Padilla*, No. 2:15-cv-735-FtM-29CM, 2016 WL 881143 (M.D. Fla. Mar. 8, 2016)—held that a party waived objections included in its initial responses when the party failed to argue those objections in response to a motion to compel. *See id.* at *3. Here, there is no question that Defendants asserted the First Amendment privilege in response to the motion to compel and in their privilege logs. App.384-395; App.498-623.

## III. A stay preserving the status quo will prevent irreparable injury and serve the public interest.

"A stay pending appeal simply suspends judicial alteration of the status quo, so as to allow appellate courts to bring considered judgment to the matter before them and responsibly fulfill their role in the judicial process." *Tex. All. for Retired Ams. v. Hughes*, 976 F.3d 564, 566 (5th Cir. 2020) (cleaned up). Here, a stay will prevent irreparable harm to

Defendants and serve the public interest by allowing for careful consideration of Defendants' substantial First Amendment privilege assertions.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality op.). This Court has routinely concluded that injuries to First Amendment interests are irreparable. *See, e.g.*, *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012); *Book People, Inc. v. Wong*, 91 F.4th 318, 340-41 (5th Cir. 2024). It should do the same here, where the district court acknowledged that disclosure risks infringing Defendants' rights. App.641-642. Should the court's order stand, the harm will be immediate and irreparable, as the First Amendment privilege is obviated upon disclosure. *See Perry*, 591 F.3d at 1137 (holding parties' First Amendment rights would be harmed by "the disclosure itself" and "this injury will not be remediable on appeal"). Once Defendants' donor information is disclosed, a later finding in their favor could not remedy the gross invasion of privacy and violation of their fundamental rights. Additionally, existing donors would face increased risk of threats, harassment, and reprisals, as Media

Matters's employees have already experienced. App.390-392. Just as those donors have a strong interest in maintaining the privacy of their affiliation with Media Matters, *see Bonta*, 594 U.S. at 616-17, Media Matters likewise has a strong interest in protecting its association with the individuals who fund its First Amendment-protected journalism.

Similarly, "the public interest is best served" here "by maintaining the status quo." *Ruiz v. Estelle*, 650 F.2d 555, 569 (5th Cir. 1981). Indeed, the "public interest always lies in a correct application of the First Amendment." *Freedom From Religion Found., Inc. v. Mack*, 4 F.4th 306, 317 (5th Cir. 2021) (cleaned up) (granting stay). Preserving the status quo serves that interest by providing adequate time for this Court to consider Defendants' substantial First Amendment privilege defenses. *See Campaign for S. Equality v. Bryant*, 773 F.3d 55, 58 (5th Cir. 2014) (granting stay to allow for "a detailed and in-depth examination of this serious legal issue" (citation omitted)).

## IV.   A stay will not injure X.

Conversely, a stay will not injure X at all. Even if X were to ultimately prevail on this issue following a stay, the only harm it would face would be a modest delay in receiving a subset of documents. That is

certainly not substantial or irreparable, as months of discovery remain.
*See Veasey*, 769 F.3d at 892; *Mack*, 4 F.4th at 316–17. Defendants have
made numerous productions, and they will continue to make productions
in response to X's discovery requests while their appeal is pending.
Further, any harm to X is strongly outweighed by Defendants' likelihood
of success. *See Planned Parenthood of Greater Tex. Surgical Health Servs.
v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013); *see also supra* §II.

## V.    The Court should alternatively grant mandamus relief.

If the Court concludes it lacks jurisdiction under the collateral order
doctrine, it should exercise mandamus jurisdiction over this case and
should treat this motion as an emergency motion for administrative stay
and motion for stay pending mandamus review in the alternative. Such
relief is warranted where petitioners show there is "no other adequate
means to attain the relief [they] desire[]," *Cheney v. U.S. Dist. Court*, 542
U.S. 367, 380 (2004) (citation omitted), as well as a "clear and
indisputable" "right to … the writ," *id*. at 381 (citation omitted). Further,
the Court "must be satisfied that the writ is appropriate under the
circumstances." *Id*. Each element is satisfied here.

*First*, mandamus is an appropriate method for review of orders "compelling discovery against a claim of privilege." *In re Grand Jury Subpoena*, 190 F.3d at 389 n.16; *In re Burlington N., Inc.*, 822 F.2d 518, 522 (5th Cir. 1987) (collecting cases). If Defendants cannot pursue a collateral order appeal, they have no other adequate means of relief because their "injury will not be remediable on appeal." *Perry*, 591 F.3d at 1137 (allowing mandamus review of First Amendment privilege claim). Once Defendants are forced to disclose their most sensitive donor-related documents, their First Amendment rights cannot be restored. *Supra* §III.

*Second*, Defendants have a clear and indisputable right to the writ. The First Amendment forbids the sweeping compelled disclosure that the district court ordered. *Supra* §II.A; *see also Bonta*, 594 U.S. at 615-19. The district court failed to address Defendants' various other objections and its privilege-waiver finding was plain error. *Supra* §II.B-C.

*Third*, granting the writ is "especially appropriate where its issuance will have significance beyond the immediate case." *In re Lloyd's Reg. N. Am., Inc.*, 780 F.3d 283, 294 (5th Cir. 2015) (cleaned up). Here, the district court's order is without precedent and, if allowed to stand,

every organization engaged in First Amendment-protected activity will run the risk of having hostile litigants rifle through their most sensitive files reflecting their supporters and donors. The public interest in a correct application of the First Amendment that avoids this indefensible result counsels strongly in favor of granting mandamus here. *Supra* §III; *see Mack*, 4 F.4th at 317.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant an administrative stay no later than **Monday, October 7, 2024 at noon** to allow the Court to resolve Defendants' motion to stay pending appeal, and it should grant the motion to stay pending appeal in due course as well. Alternatively, given that the Court also possesses mandamus jurisdiction over this dispute, if the Court determines that it lacks jurisdiction over this appeal, it should treat this motion as one for an administrative stay by **Monday, October 7, 2024 at noon** and stay pending mandamus instead.

Dated: October 2, 2024

By: */s/ Andrew LeGrand*
Andrew LeGrand

GIBSON, DUNN &
CRUTCHER LLP
Andrew LeGrand
Trey Cox
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com
tcox@gibsondunn.com

Theodore J. Boutrous, Jr.
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

Respectfully submitted,

ELIAS LAW GROUP LLP
Abha Khanna
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Aria C. Branch
Christopher D. Dodge
Jacob D. Shelly
250 Massachusetts Avenue NW,
Suite 400
Washington, DC 20001
T: (202) 968-4490
F: (202) 986-4498
abranch@elias.law
cdodge@elias.law
jshelly@elias.law

*Counsel for Defendants-Appellants*
*Media Matters for America, Angelo*
*Carusone, and Eric Hananoki*

## CERTIFICATE OF ELECTRONIC SUBMISSION

I hereby certify that: (1) all required privacy redactions have been made in compliance with 5th Cir. Rule 25.2.13; (2) the electronic submission of this document is an exact copy of any corresponding paper document, in compliance with 5th Cir. R. 25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free from viruses.

*/s/ Andrew LeGrand*
Andrew LeGrand

## CERTIFICATE OF CONFERENCE

On October 2, 2024, Defendants contacted counsel for X Corp. regarding its position on this motion. Counsel for X Corp. represented that X Corp. opposes this motion.

*/s/ Andrew LeGrand*
Andrew LeGrand

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system. I certify that counsel for Appellants are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Andrew LeGrand*
Andrew LeGrand

## CERTIFICATE OF COMPLIANCE

This document contains 5,194 words, excluding parts exempted by Federal Rule of Appellate Procedure 32(f). This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27(d)(1) because it has been prepared in a proportionally spaced, serifed typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Andrew LeGrand*
Andrew LeGrand

## RULE 27.3 CERTIFICATION

Pursuant to Fifth Circuit Rule 27.3, I hereby certify that the facts supporting emergency consideration of this motion are true and complete.

*/s/ Andrew LeGrand*
Andrew LeGrand