UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| X CORP.,<br><br>          Plaintiff,<br><br>    v.<br><br>MEDIA MATTERS FOR AMERICA,<br>et al.,<br><br>          Defendants. | Civil Action No. 4:23-cv-01175-O |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF EMERGENCY MOTION TO STAY ORDER COMPELLING PRODUCTION OF PRIVILEGED DONOR-RELATED DOCUMENTS PENDING APPEAL**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

ARGUMENT ........................................................................................................................ 2

I.   Defendants are likely to succeed on the merits. ...................................................... 2

   A.   Defendants are likely to establish appellate jurisdiction or, alternatively, that mandamus jurisdiction is appropriate. ............................................................ 2

   B.   Defendants did not waive their First Amendment rights. .............................. 3

   C.   The First Amendment and Rule 26 prohibit compelling Defendants to produce donor identifying information. ...................................................... 8

II.  The remaining factors all support a stay pending appeal. ....................................... 9

CONCLUSION ..................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bradley ex rel. AJW v. Ackal*,
  954 F.3d 216 (5th Cir. 2020) ...................................................................................................3

*Ams. for Prosperity Found. v. Bonta*,
  594 U.S. 595 (2021)..............................................................................................................1, 9

*In re Chamber of Com. of United States of Am.*,
  105 F.4th 297 (5th Cir. 2024) ..................................................................................................8

*Est. of Maglioli v. Andover Subacute Rehab. Ctr. I*,
  Civ. Nos. 21-2114, 21-2120, 2021 WL 2525714 (D.N.J. June 18, 2021) ...............................10

*Freedom From Religion Found., Inc. v. Mack*,
  4 F.4th 306 (5th Cir. 2021) ....................................................................................................10

*In re Grand Jury Subpoena*,
  190 F.3d 375 (5th Cir. 1999) ...................................................................................................3

*In re Hearst Newspapers, L.L.C.*,
  641 F.3d 168 (5th Cir. 2011) ...................................................................................................3

*Henry v. Lake Charles Am. Press, L.L.C.*,
  566 F.3d 164 (5th Cir. 2009) ...................................................................................................3

*Johnson v. Zerbst*,
  304 U.S. 458 (1938)..................................................................................................................4

*Johnston v. Transocean Offshore Deepwater Drilling, Inc.*,
  No. CV 18-491, 2019 WL 1558040 (E.D. La. Apr. 10, 2019) .................................................7

*Kellam v. Servs.*,
  No. 3:12-CV-352-P, 2013 WL 12093753 (N.D. Tex. May 31, 2013), *aff'd sub
  nom. Kellam v. Metrocare Servs.*, 560 F. App'x 360 (5th Cir. 2014) ......................................8

*Klier v. Elf Atochem N. Am., Inc.*,
  658 F.3d 468 (5th Cir. 2011) ...................................................................................................8

*La Union Del Pueblo Entero v. Abbott*,
  No. SA-21-CV-00844-XR, 2022 WL 17574079 (W.D. Tex. Dec. 9, 2022).............................9

*Marceaux v. Lafayette City-Par. Consol. Gov't*,
  731 F.3d 488 (5th Cir. 2013) ................................................................................................1, 3

*McIntyre v. Ohio Elections Comm'n*,
    514 U.S. 334 (1995) ..................................................................................................9

*Mohawk Indus. v. Carpenter*,
    558 U.S. 100 (2009) ..................................................................................................2

*Perry v. Schwarzenegger*,
    591 F.3d 1126 (9th Cir. 2009) ................................................................................3, 9

*Rogge v. Bandera Falls Prop. Owner's Ass'n*,
    No. CV SA-07- CA-996-OLG, 2009 WL 10713559 (W.D. Tex. Aug. 11,
    2009) .........................................................................................................................7

*United States v. Brown*,
    218 F.3d 415 (5th Cir. 2000) ....................................................................................3

*United States v. Shea*,
    508 F.2d 82 (5th Cir. 1975) ......................................................................................4

*Veasey v. Perry*,
    769 F.3d 890 (5th Cir. 2014) ..................................................................................10

*Whole Woman's Health v. Smith*,
    896 F.3d 362 (5th Cir. 2018) ..........................................................................1, 2, 3, 9

**INTRODUCTION**

X's response confirms that it has little to say about the weighty constitutional question at the crux of this dispute: Is it proper under the First Amendment for a federal court to compel a non-profit media organization to turn over "all documents in its care, custody, or control" that are "responsive" (ECF No. 98 at 22 ("Order")) to far-ranging document requests that seek, among other things, the "***identity***" and "***residence***" of "***all*** [the organization's] donors," and "***all*** communications with ***any*** donor or potential donor" regardless of their connection to the claims in the case? ECF No. 85 at 47, 69. X offers only a token defense of the overbroad order, and fails to explain how the Court's total eradication of a conceded First Amendment privilege reflects "exacting scrutiny" and "narrow tailoring." *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 608 (2021). Just as striking, X fails to respond to Defendants' host of other valid—yet unresolved—Rule 26 objections. The reason why is clear: X's overbroad and harassing requests cannot satisfy the First Amendment or basic Rule 26 principles of relevance and proportionality.

With nothing of substance to say, X falls back (again) on process. But those efforts fail too. The Fifth Circuit is exceedingly likely to find it has jurisdiction to hear Defendants' appeal; it has serially "reaffirmed its precedent holding that interlocutory court orders bearing on First Amendment rights remain subject to appeal pursuant to the collateral order doctrine," *Whole Woman's Health v. Smith*, 896 F.3d 362, 368 (5th Cir. 2018), including in appeals involving "litigants in the case." *Marceaux v. Lafayette City-Par. Consol. Gov't*, 731 F.3d 488, 490 (5th Cir. 2013). That leaves waiver, the thin reed upon which X places nearly all of its weight. But rather than explain how the record supports the serious consequences of privilege waiver, X ignores and misstates those facts while downplaying its own equivocal conduct during the parties' dealings.

Finally, the equities continue to support a stay. X's only argument on this point is that it requires the documents at issue to prepare for trial. But X plainly does not need the vast majority

1

of documents that the order compels, because they are far afield from the issues in this case. And, even then, trial remains more than half a year away. X nowhere substantiates how a modest delay in receiving documents responsive to **four** of its **104** requests for production meaningfully prejudices its trial strategy. On the other hand, Defendants and their donors are certain to suffer irreparable harm if they are forced to surrender their constitutionally protected associational rights.

## ARGUMENT

I. **Defendants are likely to succeed on the merits.**

    A. **Defendants are likely to establish appellate jurisdiction or, alternatively, that mandamus jurisdiction is appropriate.**

X's jurisdictional argument is a non-starter. It ignores that, even after *Mohawk Industries v. Carpenter*, 558 U.S. 100 (2009), the Fifth Circuit has *repeatedly* "reaffirmed its precedent holding that interlocutory court orders bearing on First Amendment rights remain subject to appeal pursuant to the collateral order doctrine." *Whole Woman's Health*, 896 F.3d at 368 (collecting cases and explaining why *Mohawk* did not preclude immediate appeal in First Amendment cases). No one disputes that the Court's order bears on First Amendment rights. X admits as much. *See* ECF No. 105 at 10 ("Resp.") (recognizing the Court "rejected [X's] arguments that the First Amendment did not apply in this context"). The Court similarly acknowledged that Defendants have "First Amendment interests at stake," Order at 20, and even found Defendants met their "burden" of showing potential infringement of their First Amendment rights. *Id.* at 17–18. The Fifth Circuit is therefore nearly certain to find the Court's order—which plainly "bear[s] on First Amendment rights"—is "subject to appeal pursuant to the collateral order doctrine." *Whole Woman's Health*, 896 F.3d at 368.

The fact that Defendants are parties to the case is immaterial. The Fifth Circuit has "repeatedly found the [collateral order] doctrine applies in cases in which pre-trial orders arguably

2

infringe on First Amendment rights" of parties. *Marceaux*, 731 F.3d at 490 (permitting defendants to take immediate appeal) (collecting authority); *see also Bradley ex rel. AJW v. Ackal*, 954 F.3d 216, 223 (5th Cir. 2020) (permitting intervenor to take immediate appeal); *In re Hearst Newspapers, L.L.C.*, 641 F.3d 168, 174 (5th Cir. 2011) (similar); *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 169–71 (5th Cir. 2009) (similar for defendant); *United States v. Brown*, 218 F.3d 415, 420–21 (5th Cir. 2000) (similar). Each of these cases concerned the First Amendment rights of "litigants in the case." *Marceaux*, 731 F.3d at 490 (citing *Brown*, 218 F.3d at 420–21).

Nor did *Whole Woman's Health* turn on the third-party status of the appellant. *See* 896 F.3d at 367–69. Instead, it found the order "conclusive" because "failure to comply with it may result in sanctions," and deemed the order "effectively unreviewable" after final judgment because "forced discovery" would have already occurred. *Id.* The Court noted the appellant's third-party status as simply one of several reasons why *Mohawk* did not preclude immediate appeal. *Id.*

Finally, while Defendants have a strong basis for a collateral order appeal, the Fifth Circuit is also likely to grant the relief they seek through mandamus. It is "well-established that the writ is appropriate in certain cases 'compelling discovery against a claim of privilege.'" *In re Grand Jury Subpoena*, 190 F.3d 375, 389 n.16 (5th Cir. 1999) (quoting *In re Burlington N., Inc.*, 822 F.2d 518, 522 (5th Cir. 1987)); *see also Perry v. Schwarzenegger*, 591 F.3d 1126, 1136 (9th Cir. 2009).

**B.     Defendants did not waive their First Amendment rights.**

X's retelling of the basis for waiver is incomplete, verging on unintelligible. In X's version, this Court's June 6 order silently overruled all of Defendants' burden, relevance, and harassment objections while simultaneously ordering X to confer about and separately move to overcome those objections. *But see* ECF No. 65 at 1 (expressly declining to overrule objections). In X's version, the Court's order extending all discovery deadlines—including privilege log deadlines—as requested by all parties, in fact extended deadlines only for X. *But see* ECF No. 69 (extending

3

deadlines for all parties). In X's version, Defendants plotted to stymie X's effort to compel production of donor-related documents despite explicitly inviting motions practice on this issue six weeks before X finally moved. *But see* Defs.' Br. 7 (illustrating Defendants' eagerness for judicial resolution of this impasse); *see also* ECF No. 62 at 5–9 (Defendants welcoming adjudication of state-action dispute regarding First Amendment privilege even before the issue was ripe). In X's version, Defendants refused to search for donor-related documents despite having already found and identified many of those documents in a log served on X prior to this Court's recent order. *But see* Defs.' Br. 7 (providing relevant background). And in X's version, X's explicit agreement that Defendants' first log would list only those privileged documents "identified to date" was not even worth mentioning. *But see id.* at 6 (highlighting this critical fact); ECF No. 66 at 3 n.3 ("[T]he Parties jointly propose to allow additional time for the review of documents for potential privilege assertions and production of privilege logs.").

The truth of the matter is that Defendants have diligently complied with reasonable readings of every discovery order and party agreement to date, all while standing on objections permitted by Rule 26 and privileges guaranteed by the U.S. Constitution. But even if all relevant context were ignored and every inference were resolved in X's favor—contrary to caselaw requiring the opposite, *see United States v. Shea,* 508 F.2d 82, 85 (5th Cir. 1975) ("Courts indulge every reasonable presumption *against* waiver of a fundamental right[.]") (emphasis added)—the thrust of X's accusations is that Defendants have been slow to identify and log every single donor-related document in their position. The pace of review is a function of X's overbroad and sweeping discovery requests, not Defendants' lack of diligence. *See* ECF No. 62 at 9–22. But even if X's take were right, it would not amount to an "*intentional* relinquishment or abandonment of a known right or privilege," as is required to find waiver. *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).

X's response brief takes issue with only a few of the waiver-related arguments that Defendants highlight in their motion for stay, and none of X's responses casts doubt on Defendants' likelihood of success on appeal. *First*, X argues that, "[i]n context," the Court's June 6 order "served a critical purpose: Once Defendants had logged responsive documents as privileged, the Court could adjudicate the merits of any dispute over those designations." Resp. 7. Far from providing context, however, X ignores it. The exigency at the time of the June 6 order was that the parties lacked a ripe privilege dispute and the close of discovery was imminent. *See* Defs.' Br. 6. By the following week, however, discovery had been extended until the end of the year, and the parties agreed that privilege logs would be supplemented monthly until all responsive documents had been identified, reviewed, and logged. *See id.* Meanwhile, the donor-document privilege dispute ripened in July, when Defendants declined to answer an interrogatory requesting their top 20 donors, which raised the *exact same* privilege issues that X argued in its motion to compel. *Id.* at 7. This was five-and-a-half months before the close of discovery, and one-and-a-half months before X moved to compel on this issue.

*Second*, X argues that "if Defendants believed the Court should have addressed [their] burden and harassment objections before requiring a log of responsive documents, Defendants had a recourse: they could have sought reconsideration or clarification of the Court's [June 6] order." Resp. 8. But this gets the issue backwards. In May, X moved to overcome Defendants' burden and harassment objections, and the Court explicitly declined to do so. *See* ECF No. 65 at 1–2 ("To the extent Plaintiff contests any of Defendants amended discovery responses, it should first raise those issues in a subsequent good faith conferral with Defendants, and if necessary, the Court can resolve any remaining dispute following this effort."). If *X* disagreed with the order's rejection of X's argument that Defendants' burden and harassment objections had been waived or lacked merit,

5

*see* ECF No. 60 at 1–12 (X briefing these arguments in its original motion to compel), then *X* should have sought reconsideration or clarification. It never did.

Where the June 6 order did impose obligations on Defendants—namely, by requiring them to serve a privilege log by June 14, *see* ECF No. 65 at 2—Defendants *did* seek (and receive) an extension, both formally from the Court, *see* ECF No. 69 (granting joint request to postpone "[f]irst" privilege log until June 28), and informally from X, *see* Defs.' Br. 6 (reviewing agreement to exchange additional logs beginning in September); *see also* ECF No. 65 at 1 (Court recognizing "it appears the parties have demonstrated they are capable of resolving discovery disputes through meaningful conferrals"); ECF No. 72 (recognizing party agreements about discovery protocols do not require judicial imprimatur). Defendants had no other basis to seek reconsideration because in no other relevant respect was X's motion granted. And Defendants had no basis to seek clarification because they did not find the order confusing, especially in light of subsequent extensions, agreements, and representations from X. *See* Defs.' Br. 6.

*Third*, X argues that it "still has not seen a privilege log with all documents responsive to its requests for donor-related information." Resp. 8. This artfully contrived wording proves hollow. No party—including X—has served logs identifying *all* privileged documents because no party has come close to completing review of *all* documents potentially responsive to all discovery requests. Indeed, the time-intensive process of document review is precisely why X proposed an extension of discovery deadlines, ECF No. 66 at 3 & n.3, and to agree to seriatim privilege log exchanges through December. Further, the Court did not order Defendants to produce "all" documents; it ordered the logging of "any" documents to ripen the dispute for adjudication. ECF No. 65 at 2. X does not dispute that it currently has a log from Defendants identifying privileged donor documents, and so it has no legitimate complaint—and certainly not one grounded in waiver.

*Finally*, X cites two district court cases for the proposition that a failure to produce privilege logs adequately *describing* documents constitutes waiver. *See* Resp. 9 (citing *Johnston v. Transocean Offshore Deepwater Drilling, Inc.*, No. CV 18-491, 2019 WL 1558040 (E.D. La. Apr. 10, 2019), and *Rogge v. Bandera Falls Prop. Owner's Ass'n*, No. CV SA-07- CA-996-OLG, 2009 WL 10713559 (W.D. Tex. Aug. 11, 2009)). But the present dispute is not about whether document descriptions on Defendants' logs were *adequate*, and, in any event, neither case is analogous. In *Johnston*, the court faulted a party for failing to substantiate its privilege claims with "supporting affidavits from individuals with personal knowledge of the relevant facts, exhibits attached to the motion and briefs," or other corroborating documents rising above "a bald, conclusory, or ipse dixit assertion." 2019 WL 1558040, at *3 (citation omitted). Here, however, Defendants have substantiated their privilege claim with an affidavit from Media Matters's President, which introduces supporting facts that X has never contested. *See* ECF No. 87-1. *Rogge*, in turn, held that a party could not refuse to produce documents—and refuse to serve any privilege log—based on "a possibility" that the attorney-client privilege might apply. 2009 WL 10713559, at *3. Here, Defendants have logged donor-related documents, and the threat to First Amendment rights is not just possible, it is guaranteed.

X's accusation that Defendants have engaged in "unjustified delay, inexcusable conduct, [or] bad faith," Resp. 8, is simply at odds with the full record. What has happened instead is that X has selectively misread the plain language of the June 6 order, carefully bypassed the privilege dispute raised two-and-a-half months ago in Defendants' interrogatory responses, and openly reneged on previous discovery agreements in an effort to strip Defendants of core constitutional guarantees that Defendants have invoked repeatedly since this litigation's earliest stages. Given

the clear record, the Firth Circuit is likely to agree that Defendants have not waived any assertion of privilege over donor-related documents.

### C. The First Amendment and Rule 26 prohibit compelling Defendants to produce donor identifying information.

Beyond its various procedural arguments, X offers wafer-thin arguments as to why the Court was correct to compel disclosure. Notably, it does not dispute that Defendants "maintained a host of other objections to the requests under Rule 26" beyond the First Amendment privilege. Defs.' Br. 14 (citing record). At most, it implicitly argues these objections were resolved by the Court's June 6 order. *E.g.*, Resp. 8–9. But that is not correct. *See supra*. And, as explained, these objections alone are sufficient to preclude the vast majority—if not all—of the production compelled by the Court in response to X's overbroad, vague, and harassing requests. *See* Defs.' Br. 13–15. X's failure to respond concedes the point. *See, e.g.*, *Kellam v. Servs.*, No. 3:12-CV-352-P, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013) (collecting cases), *aff'd sub nom. Kellam v. Metrocare Servs.*, 560 F. App'x 360 (5th Cir. 2014).

X likewise says remarkably little about the First Amendment privilege. *First*, it suggests that the Court's order is immunized from review because it identified the relevant exacting scrutiny standard. *See* Resp. 10. But a district court abuses its discretion when, among other errors, it "misapplies the law to the facts." *In re Chamber of Com. of United States of Am.*, 105 F.4th 297, 311 (5th Cir. 2024) (citation omitted). That is precisely what happened here. *See* Defs.' Br. 8–13.[1]

*Second*, X argues the Court properly "balance[d] the competing interests at stake" and considered whether, among other factors, X's requests were "carefully tailored to avoid

---

[1] X's authority on this point stands for no more than the undisputed proposition that "[b]y definition, a district court abuses its discretion when it makes an error of law or applies an incorrect legal standard." *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 474 (5th Cir. 2011).

8

unnecessary interference with protected activities." Resp. 10–11. But this argument is pure tautology. Most notably, X nowhere explains *how* its requests were carefully tailored (they are not) or how the Court narrowly tailored any compelled production in response to such requests (and, respectfully, it also did not). It certainly does not explain "how the 'identity' and 'residence' of donors is even relevant to the claims or defenses in this case," Defs.' Br. 9, such that the Court could obliterate the First Amendment right to "anonymity" that is intrinsic to support of advocacy, *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342-43 (1995).

**II.    The remaining factors all support a stay pending appeal.**

*Irreparable Injury.* As X expressly acknowledges, "courts often conclude that an injury to a party's First Amendment interests will constitute irreparable injury justifying a stay pending appeal or an injunction." Resp. 12 (citing Defs.' Br. 22–23). X's only rejoinder is that any First Amendment injury is obviated by the "Attorney's Eyes Only" designation under the protective order, along with Defendants' ability to seek further protective orders. *See id.* To the contrary, as courts have recognized, "protective orders limiting dissemination of information protected by the First Amendment privilege '**cannot eliminate**' the First Amendment injury resulting from compelled disclosure." *La Union Del Pueblo Entero v. Abbott*, No. SA-21-CV-00844-XR, 2022 WL 17574079, at *10 (W.D. Tex. Dec. 9, 2022) (quoting *Perry*, 591 F.3d at 1164) (emphasis added). If Defendants are forced to produce their donor-related documents, the injury to their "First Amendment rights is the disclosure itself" to anyone at all, an injury that "will not be remediable on appeal." *Perry*, 591 F.3d at 1158; *see also Bonta*, 594 U.S. at 616 (holding that "disclosure requirements can chill association even if there is no disclosure to the general public" (cleaned up)). Such compelled disclosure is "[e]ven more disturbing" where, as here, the documents must be turned over "*to a public policy opponent*." *Whole Woman's Health*, 896 F.3d at 373. X has no answer to this, because it simply misunderstands the nature of the injury and why it is irreparable.

9

***Public Interest and Lack of Any Injury to X.*** The final two stay factors are also satisfied because X will not be injured by a stay and because a stay is in the public interest. As Defendants demonstrated, the public interest is best served here "by maintaining the status quo" because the "public interest always lies in a correct application of the First Amendment." Defs.' Br. 24 (citing *Ruiz v. Estelle*, 650 F.2d 555, 569 (5th Cir. 1981); *Freedom From Religion Found., Inc. v. Mack*, 4 F.4th 306, 317 (5th Cir. 2021) (cleaned up)). Preserving the status quo serves this interest by providing adequate time for the Fifth Circuit to consider the substantial First Amendment privilege issues at play—a fact X does not dispute or even address. *See* Defs.' Br. 24; Resp. 12–13.

Instead, X's sole argument as to both factors is that the public interest lies in a "just, speedy, and inexpensive determination" and that further delay will harm X's case. Resp. 13 (quoting Fed. R. Civ. P. 1). But "delay alone, which is inherent in any stay, is insufficient to establish prejudice." *Est. of Maglioli v. Andover Subacute Rehab. Ctr. I*, Civ. Nos. 21-2114, 21-2120, 2021 WL 2525714, at *7 (D.N.J. June 18, 2021) (granting motion to stay). And a stay here would only *conserve* party resources that would otherwise be spent on reviewing documents that may be deemed non-discoverable on appeal. X's professed need for the documents at issue "to inform its general trial strategy," Resp. 13, ignores that trial is six months away, and roughly three months of discovery remain. *See* ECF No. 69. X offers zero specifics as to how this delay would harm either it or the public interest in a substantial or irreparable way. *See Veasey v. Perry*, 769 F.3d 890, 892 (5th Cir. 2014); *Mack*, 4 F.4th at 316–17.

## CONCLUSION

This Court should stay its Order.


Dated: October 4, 2024

Respectfully submitted,
*/s/ Andrew LeGrand*

| | |
|---|---|
| GIBSON, DUNN & CRUTCHER LLP<br>Andrew LeGrand (TX 24070132)<br>John T. Cox III (TX 24003722)<br>2001 Ross Avenue, Suite 2100<br>Dallas, TX 75201<br>T: (214) 698-3100<br>F: (214) 571-2960<br>alegrand@gibsondunn.com<br>tcox@gibsondunn.com<br><br>Theodore J. Boutrous, Jr.* (CA 132099)<br>333 South Grand Avenue<br>Los Angeles, CA 90071<br>T: (213) 229-7000<br>F: (213) 229-7520<br>tboutrous@gibsondunn.com<br><br>Amer S. Ahmed* (NY 4382040)<br>200 Park Avenue<br>New York, New York 10166<br>T: (212) 351-4000<br>F: (212) 351-4035<br>aahmed@gibsondunn.com | ELIAS LAW GROUP LLP<br>Abha Khanna* (WA 42612)<br>1700 Seventh Avenue, Suite 2100<br>Seattle, WA 98101<br>T: (206) 656-0177<br>F: (206) 656-0180<br>akhanna@elias.law<br><br>Aria C. Branch* (DC 1014541)<br>Christopher D. Dodge* (DC 90011587)<br>Jacob D. Shelly* (DC 90010127)<br>250 Massachusetts Avenue NW, Suite 400<br>Washington, DC 20001<br>T: (202) 968-4490<br>F: (202) 986-4498<br>abranch@elias.law<br>cdodge@elias.law<br>jshelly@elias.law<br><br>* Admitted *pro hac vice* |

*Counsel for Defendants Media Matters for America, Angelo Carusone, and Eric Hananoki*

## CERTIFICATE OF SERVICE

On October 4, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Andrew LeGrand*
Andrew LeGrand