## UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

**X CORP.**, a Nevada corporation,
Plaintiff,

vs.

**MEDIA MATTERS FOR AMERICA**, a
Washington, D.C. non-profit corporation,
**ERIC HANANOKI**, and **ANGELO
CARUSONE**,
Defendants.

Case No. 4:23-CV-01175-O

## PLAINTIFF'S RESPONSE AND BRIEF IN OPPOSITION TO
## DEFENDANTS' MOTION TO CERTIFY AN IMMEDIATE APPEAL

JUDD E. STONE II
CHRISTOPHER D. HILTON
ARI CUENIN
MICHAEL R. ABRAMS
ALEXANDER M. DVORSCAK
CODY C. COLL
**STONE HILTON PLLC**
600 Congress Ave., Suite 2350
Austin, TX 78701
Telephone: (737) 465-7248
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
michael@stonehilton.com
alex@stonehilton.com
cody@stonehilton.com

JOHN C. SULLIVAN
**S|L Law PLLC**
610 Uptown Boulevard
Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
john.sullivan@the-sl-lawfirm.com

# TABLE OF CONTENTS

Table of Contents ................................................................................................................. i

Table of Authorities ............................................................................................................ ii

Background ........................................................................................................................... 1

Legal Standard ..................................................................................................................... 3

Argument and Authorities ................................................................................................... 4

    I.   Defendants Have Not Identified Any "Controlling Question of Law." ............................. 4

        A.  Whether this Court can exercise personal jurisdiction over Defendants is not a controlling question of law. .................................................................................. 5

        B.  Whether venue is proper in the Northern District of Texas is not a controlling question of law. ................................................................................................... 7

    II.  Defendants Have Not Shown a "Substantial Ground for Difference of Opinion." ............ 8

        A.  There is no substantial ground for disagreement on the question of personal jurisdiction. ......................................................................................................... 9

        B.  Substantial ground for disagreement does not exist as to venue. ............................... 13

    III. Certification Would Not Materially Advance the Resolution of This Case. .................... 14

    IV. Defendants Have Shown No Reason for This Court to Exercise Its Discretion to Certify Either Issue ................................................................................................................... 14

Conclusion and Prayer ...................................................................................................... 16

Certificate of Service ........................................................................................................ 17

i

# TABLE OF AUTHORITIES

CASES

Adhikari v. Daoud & Partners,
    No. 09-CV-1237, 2012 WL 718933 (S.D. Tex. Mar. 5, 2012) .............................................. 4, 5

Ahrenholz v. Bd. of Trs. of Univ. of Ill.,
    219 F.3d 674 (7th Cir. 2000) ..................................................................................................... 5

Air Vent, Inc. v. Powermax Electric Co., Ltd.,
    No. 3:22-CV-0516-B, 2023 WL 8285198 (N.D. Tex. Nov. 28, 2023) ...................................... 5

Alliance Health Group, LLC v. Bridging Health Options, LLC,
    No. 1:06-CV-1267-HSO, 2007 WL 3355641 (S.D. Miss. Nov. 8, 2007) .................................. 8

Best Western Int'l, Inc. v. Govan,
    No. CIV 05–3247–PHX RCB, 2007 WL 1545776 (D. Ariz. May 29, 2007) ............................ 7

Breitweiser v. Chesapeake Energy Corp.,
    No. 3:15-CV-2043-B, 2015 WL 6322625  (N.D. Tex. Oct. 20, 2015) .................................... 4, 9

Burger King Corp. v. Rudzewicz,
    471 U.S. 462 (1985) ................................................................................................................. 11

Calder v. Jones,
    465 U.S. 783 (1984) ................................................................................................... 6, 10, 11, 15

Clark-Dietz & Associates-Engineers, Inc. v. Basic Const. Co.,
    702 F.2d 67 (5th Cir. 1983) ....................................................................................................... 3

Coopers & Lybrand v. Livesay,
    437 U.S. 463 (1978) ................................................................................................................... 1

Earl v. Boeing Co.,
    No. 4:19-CV-507, 2021 WL 1080689 (E.D. Tex. Mar. 18, 2021) ....................................... 3, 14

Emjayco ex rel. Bart L. Troy, M.D. P.C., Profit Sharing Plan v. Morgan Stanley & Co., Inc.,
    901 F. Supp. 1397 (C.D. Ill. 1995) ............................................................................................ 7

Fed. Trade Comm'n ex rel. Yost v. Educare Ctr. Servs., Inc.,
    No. 3:19-CV-196-KC, 2020 WL 4334955 (W.D. Tex. Jan. 21, 2020) ...................................... 5

Garner v. Wolfinbarger,
    433 F.2d 117 (5th Cir. 1970) ...................................................................................................... 7

Goosehead Ins. Agency, LLC v. Williams Ins. & Consulting, Inc.,
    533 F. Supp. 3d 367 (N.D. Tex. 2020) .......................................................................... 1, 4, 9, 14

Hunt, Gather LLC v. Andreasik,
    No. 1:23-CV-627-RP, 2023 WL 4853400 (W.D. Tex. July 27, 2023) ...................................... 7

In re Highland Cap. Mgmt., LP,
    No. 3:21-CV-0132-E, 2021 WL 3772690 (N.D. Tex. Feb. 11, 2021) ....................................... 4

*In re Space Exploration Technologies, Corp.*,
    96 F.4th 733 (5th Cir. 2024) .......................................................................................... 13

*Johnson v. TheHuffingtonPost.com*,
    21 F.4th 314 (5th Cir. 2021) ................................................................................... *passim*

*La. State Conf. of NAACP v. Louisiana*,
    495 F. Supp. 3d 400 (M.D. La. 2020) ......................................................................... 6, 9, 13

*Mae v. Hurst*,
    613 Fed. App'x 314 (5th Cir. 2015) ............................................................................... 1

*Newbauer v. Jackson Hewitt Tax Serv. Inc.*,
    No. 2:18-CV-679, 2019 WL 1398172 (E.D. Va. Mar. 28, 2019) ...................................... 7

*Oasis Res., LLC v. EMC Corp.*,
    No. 4:10-CV-435, 2015 WL 5318119 (E.D. Tex. Sept. 11, 2015) ..................................... 4

*Releford v. City of Houston*,
    No. 4:14-CV-02810, 2016 WL 7051662 (S.D. Tex. Dec. 5, 2016) ................................... 1, 5, 8

*Revell v. Lidov*,
    317 F.3d 467 (5th Cir. 2002) ....................................................................................... 15

*Ryan v. Flowserve Corp.*,
    444 F. Supp. 2d 718 (N.D. Tex. 2006) ........................................................................... 5

*Sangha v. Navig8 ShipManagement Priv. Ltd.*,
    882 F.3d 96 (5th Cir. 2018) ......................................................................................... 11

*Smith v. Gen. Motors,
    LLC*, No. 4:23-CV-00379-O-BP, 2023 WL 4849442 (N.D. Tex. July 7, 2023) ................ 3

*Software Rts. Archive, LLC v. Google, Inc.*,
    No. 2:07–CV–511, 2009 WL 1797996 (E.D. Tex. June 24, 2009) ................................... 4

*Steel Coils, Inc. v. M/V Lake Marion*,
    No. CIV.A. 98-3116, 2000 WL 1801842 (E.D. La. Dec. 7, 2000) ................................... 13

*Stoffels ex rel. SBC Tel. Concession Plan v. SBC Commc'ns, Inc.*,
    572 F. Supp. 2d 809 (W.D. Tex. 2008) ......................................................................... 4

*Time, Inc. v. McLaney*,
    406 F.2d 565 (5th Cir. 1969) ....................................................................................... 15

*United States v. Garner*,
    749 F.2d 281 (5th Cir. 1985), *supplemented*, 752 F.2d 116 (5th Cir. 1985) ................... 1

*Walden v. Fiore*,
    571 U.S. 277 (2014) ............................................................................................. *passim*

**STATUTES**

28 U.S.C. § 1292 ............................................................................................. 1, 12, 14

28 U.S.C. § 1292(b) .............................................................................................. *passim*

28 U.S.C. § 1391 ...................................................................................................... 8, 13

28 U.S.C. § 1391(b)(2) ............................................................................................... 7, 8

28 U.S.C. § 1406 ......................................................................................................... 15

**RULES**

Fed. R. Civ. P. 1 ........................................................................................................... 14

Fed. R. Civ. P. 12(b)(3) ................................................................................................. 7

Fed. R. Civ. P. 12(b)(6) .............................................................................................. 2, 5

**OTHER AUTHORITIES**

4 Am. Jur. 2d *Appellate Review* § 123 (2015) ............................................................ 9

Defendants' request to take an immediate interlocutory appeal of this Court's order denying their motion to dismiss, ECF No. 82 ("Order"), is without merit. In the Fifth Circuit, "[i]nterlocutory appeals are generally disfavored, and statutes permitting them must be strictly construed." *Goosehead Ins. Agency, LLC v. Williams Ins. & Consulting, Inc.*, 533 F. Supp. 3d 367, 385 (N.D. Tex. 2020) (O'Connor, J.) (quoting *Mae v. Hurst*, 613 Fed. App'x 314, 318 (5th Cir. 2015)). The use of 28 U.S.C. § 1292 is a "narrow exception to the final judgment rule" that courts should exercise cautiously. *See, e.g.*, *Releford v. City of Houston*, No. 4:14-CV-02810, 2016 WL 7051662, at *2 (S.D. Tex. Dec. 5, 2016); *see also Coopers & Lybrand v. Livesay*, 437 U.S. 463, 47 (1978); *United States v. Garner*, 749 F.2d 281, 286 (5th Cir. 1985), *supplemented*, 752 F.2d 116 (5th Cir. 1985).

No circumstances that could justify a Section 1292(b) appeal are present here. To warrant an interlocutory appeal, Defendants would need to meet each one of Section 1292(b)'s three elements; they have failed to meet any. They have neither identified a controlling issue of law as to which there is substantial ground for difference of opinion as to the correct applicable legal standard, nor articulated a convincing reason for the Court to exercise its discretion to certify. Instead, their motion boils down to a critique of the Court's application of well-established, controlling law to X's allegations, recasting rejected arguments to gin up "novel" legal questions where none exist. Defendants' motion should be denied.

## BACKGROUND

As alleged in the First Amended Complaint, Defendant Media Matters for America has waged a years-long campaign to alienate Plaintiff X Corp. from its paying advertisers. Am. Compl. (ECF No. 37) ¶¶ 1-17. To that end, Media Matters, its President, Angelo Carusone, and one of its reporters, Eric Hananoki, have claimed that the X platform displays advertiser content next to hateful content, asserted in numerous public statements that the X platform cannot be "safe" while

1

it is owned by Elon Musk, disparaged Elon Musk in order to harm X by falsely associating him with hateful content, and contacted advertisers on X's platform to encourage them to end their relationships with X or to drive public frenzy about the advertisers' refusal to do so. *Id.* ¶¶ 46-64.

In November 2023, Media Matters escalated its campaign against X's commercial relationships. *Id.* ¶ 46. Defendants created an account on the X platform, manipulated the platform, and then maliciously published false, defamatory, and misleading articles claiming that antisemitic and hateful content was organically being paired with advertisers' posts. *Id.* ¶¶ 47-54. As a result of their scheme, numerous advertisers paused or reduced advertising on X or left the X platform, both domestically and internationally, because they incorrectly believed Defendants' false and misleading reporting. Carusone amplified his outlet's false claims by appearing on broadcast television to personally repeat and reiterate the disparaging reporting that Media Matters had falsely and maliciously manufactured. *Id.* ¶ 17.

In response to this tortious conduct, X sued Media Matters, Hananoki, and Carusone to recover damages and correct the public misperceptions caused by the articles. *Id.* ¶ 65-88. X sued in the Northern District of Texas, Fort Worth Division, where Media Matters emailed hundreds or thousands of Texans a newsletter that contains the false, malicious, and disparaging statements at the heart of this case. *Id.* ¶¶ 23, 29. Defendants also caused at least several businesses based in Texas (including in the Northern District) to reexamine, reduce, or suspend their advertising relationships with X. *Id.* ¶ 29.

On August 29, 2024, this Court denied Defendants' Motion to Dismiss, rejecting their personal jurisdiction, venue, and Rule 12(b)(6) arguments. Order at 16. Relevant here, the Court held that personal jurisdiction was proper because the Complaint alleged that Defendants concocted a "strategy to target Plaintiff's blue-chip advertisers, including Oracle and AT&T,

Texas-based companies," "published the articles all to pressure blue-chip advertisers to cease doing business with Plaintiff," and because "Media Matters also emailed the Hananoki articles to Texans." Order at 11. Venue was also held to be proper because "the gravamen of Plaintiff's claims are that Defendants intended to negatively impact Plaintiff's blue-chip clients, including a client based in this district." *Id.* at 12.

Now, Defendants ask the Court to allow premature submission of the personal jurisdiction and venue questions to the Fifth Circuit. Defendants invoke 28 U.S.C. § 1292(b) to request certification of an immediate appeal. But that statute does not authorize an immediate appeal in these circumstances and, in any event, the Court should exercise its unfettered discretion to retain the case and move the parties toward trial and ultimate resolution of this dispute.

## LEGAL STANDARD

"Section 1292(b) appeals are exceptional," *Clark-Dietz & Associates-Engineers, Inc. v. Basic Const. Co.*, 702 F.2d 67, 69 (5th Cir. 1983), because the "standard for an interlocutory appeal is difficult to meet," *Smith v. Gen. Motors, LLC*, No. 4:23-CV-00379-O-BP, 2023 WL 4849442, at *2 (N.D. Tex. July 7, 2023), *report and recommendation adopted*, No. 4:23-CV-00379-O-BP, 2023 WL 4851881 (N.D. Tex. July 28, 2023) (O'Connor, J.). A district court may exercise its discretion to certify an interlocutory order for immediate appeal when the judge is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). If each of those criteria are not satisfied, certification is not warranted. *Earl v. Boeing Co.*, No. 4:19-CV-507, 2021 WL 1080689, at *2 (E.D. Tex. Mar. 18, 2021) ("All three of these criteria must be met for an order to properly be certified for interlocutory appeal." (citation omitted)). "The party moving for certification bears the burden to demonstrate its necessity." *Id.*

3

Moreover, "[d]istrict courts have unfettered discretion to deny certification, even when all three [statutory criteria] are satisfied." *Goosehead Ins. Agency*, 533 F. Supp. 3d at 385 (citation omitted). The mere fact that a disgruntled litigant "intend[s] to inevitably appeal" does not create an exceptional case. *Id.* Section 1292 "is not a vehicle to question the correctness of a district court's ruling or to obtain a second, more favorable opinion." *Breitweiser v. Chesapeake Energy Corp.*, No. 3:15-CV-2043-B, 2015 WL 6322625, at *8 (N.D. Tex. Oct. 20, 2015) (Boyle, J.).

## ARGUMENT AND AUTHORITIES

Defendants move to certify two of the Court's rulings: that the Court possesses personal jurisdiction over Defendants, and that venue is proper in the Northern District of Texas. This Court's precedents show that neither conclusion meets the statutory requirements for certification.

### I.     Defendants Have Not Identified Any "Controlling Question of Law."

"An order may only be certified for interlocutory appeal under § 1292(b) if it turns on 'a pure issue of law . . . .'" *Oasis Res., LLC v. EMC Corp.*, No. 4:10-CV-435, 2015 WL 5318119, at *4 (E.D. Tex. Sept. 11, 2015) (quoting *Software Rts. Archive, LLC v. Google, Inc*., No. 2:07–CV–511, 2009 WL 1797996, at *2 (E.D. Tex. June 24, 2009)); *see also In re Highland Cap. Mgmt., LP*, No. 3:21-CV-0132-E, 2021 WL 3772690, at *2 (N.D. Tex. Feb. 11, 2021) (Brown, J.). "[D]istinctions must be drawn between disagreements on questions of law, and questions that turn on the facts. Ultimately, fact review questions are inappropriate for 1292(b) review." *Adhikari v. Daoud & Partners*, No. 09-CV-1237, 2012 WL 718933, at *2 (S.D. Tex. Mar. 5, 2012) (cleaned up); *Stoffels ex rel. SBC Tel. Concession Plan v. SBC Commc'ns, Inc*., 572 F. Supp. 2d 809, 811 (W.D. Tex. 2008).

"Section 1292(b) refers to a 'pure question of law rather than merely to an issue that might be free from a factual contest. The idea was that if a case turned on a pure question of law, something the court of appeals could decide quickly and cleanly without having to study the record,

the court should be enabled to do so without having to wait till the end of the case.'" *Releford*, 2016 WL 7051662, at *2 (quoting *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 676-77 (7th Cir. 2000)). Defendants have not, and cannot, make such a showing on either issue they seek to certify.

**A.    Whether this Court can exercise personal jurisdiction over Defendants is not a controlling question of law.**

Because courts should not certify an appeal "when the issue pertains to a question of fact or 'the application of settled law to disputed facts' . . . courts have consistently held that a court's application of facts to the well settled law of personal jurisdiction generally does not constitute a pure question of law for purposes of § 1292(b)." *Air Vent, Inc. v. Powermax Electric Co., Ltd.*, No. 3:22-CV-0516-B, 2023 WL 8285198, at *1-2 (N.D. Tex. Nov. 28, 2023) (Boyle, J.) (gathering cases) (quoting *Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 722 (N.D. Tex. 2006) (Boyle, J.)); *Fed. Trade Comm'n ex rel. Yost v. Educare Ctr. Servs., Inc.*, No. 3:19-CV-196-KC, 2020 WL 4334955, at *5 (W.D. Tex. Jan. 21, 2020) (refusing to certify order denying dismissal under Rule 12(b)(2)). Such personal jurisdiction questions cannot be certified for two reasons: *first*, because the law of personal jurisdiction is well settled; and *second*, because the court's application of facts to that well-settled law generally does not constitute a pure question of law. *Air Vent*, 2023 WL 8285198, at *2. In *Air Vent*, for example, the court explained that the movant did not dispute the legal standards the court employed in its personal jurisdiction analysis. *Id.* Instead, the movant disagreed only "with the court's conclusion that the facts of th[e] case . . . are sufficient to support the exercise of personal jurisdiction." *Id.* But the contention "that the court improperly applied the facts of this case to the established law of [specific] jurisdiction" is insufficient to justify certification under Section 1292(b). *Id.* (alteration in original) (quoting *Adhikari*, 2012 WL 718933, at *3). After all, there is a "difference between questions of law and questions 'that

5

require[] the court to apply the law to the unique facts of the case.'" *Id.* at *3 (alteration in original) (quoting *La. State Conf. of NAACP v. Louisiana*, 495 F. Supp. 3d 400, 413-14 (M.D. La. 2020)).

Here, Defendants do not challenge the well-settled legal standard or long-followed precedent, including *Calder v. Jones*, 465 U.S. 783 (1984), that this Court applied in making its ruling on personal jurisdiction. Brief in Support of Motion to Certify (ECF No. 94) ("Br.") at 8-9. Defendants challenge only the application of jurisdictional facts to that well-settled law—exactly the kind of analysis that is not susceptible to immediate interlocutory review under the statute and the precedent of this District. For instance, Defendants insist that their "purported 'targeting' of advertisers in Texas" cannot support jurisdiction under *Calder* and that "the Texas connections of X's advertisers" was an insufficient hook for the Court to find against them. Br. at 11. These contentions are unavailing: arguments that the Court misunderstood or misread the record, failed to properly credit evidence, drew the wrong inferences, or misapplied facts do not a "controlling question of law" make.

No doubt realizing that the fact-bound nature of the jurisdictional issue forecloses interlocutory appeal, Defendants muddy the waters by claiming that this Court undertook "a novel and unprecedented extension of *Calder* rather than an application of settled law to the facts at issue." *Id* at 9. For the reasons set forth in Part II.A, *infra*, it did not. Moreover, this argument ignores the obvious gravamen of Defendants' attack, which is that the *facts* of this case do not support the Court's determination under *Calder*. *E.g.*, *id.* at 11 (arguing the facts here make this case different from the "*Calder* defendants' targeting of a libel plaintiff in California."). Defendants' criticism of this Court's application of *Calder* does not change the fact that *Calder* is *well-settled law*. Defendants' reliance on precedent such as *Walden v. Fiore*, 571 U.S. 277 (2014), and *Johnson v. TheHuffingtonPost.com*, 21 F.4th 314 (5th Cir. 2021), fails for the same reasons

and only reiterates their disapproval of this Court's application of the facts of this case to the law. *See* Br. at 6 (arguing the Court misapplied *Walden* when it credited "X's happenstance decisions to do business with Texas-based advertisers"); *id.* at 7 (arguing that the facts here show X was not "the focal point" of anything under *Johnson*); *see* Part II.A, *infra*.

**B.      Whether venue is proper in the Northern District of Texas is not a controlling question of law.**

Defendants' argument that the Court should certify this case for immediate appeal on the issue of venue is equally doomed: "A case's venue is not a controlling question of law." *Hunt, Gather LLC v. Andreasik*, No. 1:23-CV-627-RP, 2023 WL 4853400, at *4 (W.D. Tex. July 27, 2023) (citing *Garner v. Wolfinbarger*, 433 F.2d 117, 120 (5th Cir. 1970)); *see also, e.g.*, *Best Western Int'l, Inc. v. Govan*, No. CIV 05–3247–PHX RCB, 2007 WL 1545776, at *9 (D. Ariz. May 29, 2007) (denying motion for interlocutory appeal of order refusing venue transfer under Rule 12(b)(3)).

Defendants suggest that their relitigation of the Court's application of the record to the law presents a pure legal question simply because "[v]enue is, in general, a question of law." Br. at 20. But while venue is an issue for the court and not for the trier of fact, whether a *particular set of facts* justifies maintaining venue in a particular court is precisely the kind of question for which Section 1292(b) was *not* designed. Venue analysis and personal jurisdiction analysis are similar. *See Newbauer v. Jackson Hewitt Tax Serv. Inc.*, No. 2:18-CV-679, 2019 WL 1398172, at *6 (E.D. Va. Mar. 28, 2019); *Emjayco ex rel. Bart L. Troy, M.D. P.C., Profit Sharing Plan v. Morgan Stanley & Co., Inc.*, 901 F. Supp. 1397, 1400 (C.D. Ill. 1995). As with the issue of personal jurisdiction, Defendants can only quibble with this Court's application of well-settled venue principles to the facts here, rather than identify a true controlling issue of law. *See* Br. at 15 (noting application of 28 U.S.C. § 1391(b)(2)'s "substantial part of the events" language, which the Order

7

applied).

Defendant's sole case on this point, *Alliance Health Group, LLC v. Bridging Health Options, LLC*, No. 1:06-CV-1267-HSO, 2007 WL 3355641 (S.D. Miss. Nov. 8, 2007), does not move the ball. That case did not involve an application of 28 U.S.C. § 1391 at all. Rather, the court certified an open question of law regarding a forum selection clause—specifically, whether the parties' contract permitted venue to lie in a federal, rather than a state, court in the designated county. *Id.* at *1-2. Thus, the case presented a pure issue of law, not one applying fact to law. In contrast, Defendants here attempt to challenge this Court's finding that "a substantial part of the events or omissions giving rise to the claim" occurred in the Northern District of Texas. 28 U.S.C. § 1391(b)(2). Determining what a "substantial part of the events or omissions giving rise to the claim" is, and where such events and omissions can be said to have occurred, cannot be "decide[d] quickly and cleanly," as a matter of deciding what the law is, rather than by applying that law to the facts. *Releford*, 2016 WL 7051662, at *2. Defendants admit as much themselves, noting that resolution of the venue question here would require analysis of Defendants' intent vis-à-vis the Northern District of Texas and the extent of impact felt by X's advertisers in the District, among other things. Br. at 16.

This Court need go no further. Because Defendants have failed to show the existence of any controlling question of law, one of the three prerequisites for an interlocutory appeal under Section 1292(b), their motion should be denied.

## II.    Defendants Have Not Shown a "Substantial Ground for Difference of Opinion."

Although Defendants' failure to identify a "controlling question of law" is dispositive of their Section 1292(b) motion, their motion should be denied for the separate reason that it fails to demonstrate that "there is substantial ground for difference of opinion" concerning the jurisdictional and venue questions they raise.

"The threshold for establishing substantial ground for difference of opinion . . . is a high one." *La. State Conf. of NAACP*, 495 F. Supp. 3d at 414 (cleaned up). Courts generally find such ground where:

> [A] trial court rules in a manner which appears contrary to the rulings of all Courts of Appeals which have reached the issue, if the circuits are in dispute on the question and the Court of Appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.

*Breitweiser*, 2015 WL 6322625, at *8 (quoting 4 Am. Jur. 2d *Appellate Review* § 123 (2015)). Courts do not find such grounds on the mere disagreement of counsel. *Goosehead*, 533 F. Supp. 3d at 386. In looking for grounds for disagreement, the court must "examine the controlling law to determine to what extent it is unclear." *La. State Conf. of NAACP*, 495 F. Supp. 3d at 414. "A substantial ground for difference of opinion usually only arises out of a genuine doubt *as to the correct applicable legal standard* relied on in the order." *Id.* (emphasis added). None of the issues Defendants propose for review fall within the scope of these principles.

### A. There is no substantial ground for disagreement on the question of personal jurisdiction.

For three reasons, Defendants fail to show a substantial ground for disagreement on the question of whether the exercise of personal jurisdiction is proper here. *First*, Defendants are wrong to assert that the Order is inconsistent with binding Supreme Court and Fifth Circuit precedent. Br. at 8. The Court correctly cited and applied relevant precedent and found in X's favor. *Second*, Defendants claim that the Order's "reliance on Oracle and AT&T to ground jurisdiction" was error, *id.* at 9, but that merely underscores that their motion actually targets the Court's application of law to the facts, which is not an appropriate basis for Section 1292(b) certification. *Third*, Defendants raise specious and varied concerns, ranging from federalism to the "internet age," that have no bearing where the Court has correctly applied the law to the facts,

9

let alone where the Court applied the correct legal standard. *Id.* at 13-14. These feeble attempts to demonstrate a "substantial ground for disagreement" do not satisfy the Fifth Circuit's legal standard under Section 1292(b), or even call the Order into question.

**1.**   Defendants argue that the Court flouted three controlling cases on personal jurisdiction: *Calder*, *Walden*, and *Johnson*. In truth, the Order was consistent with each and all.

Let's start with *Calder*. Defendants assert that *Calder* "does not extend to allegations of targeting a nonparty in a state that is foreign to both plaintiff and defendant." Br. at 5-6. But there is nothing in the *Calder* opinion that limits its principles to its specific facts. Indeed, the language of *Calder* makes clear that specific jurisdiction is proper whenever a forum state is a "focal point both of the [defamatory] stor[ies] and of the harm suffered." 465 U.S. at 789. Here, the Court applied *Calder* and specifically found that X sufficiently alleged that each of the Defendants focused their efforts on Texas, including toward Texas companies. Order at 6-11 (explaining how Defendants targeted Texas companies in an effort to manipulate their behavior). This analysis is fully consistent with *Calder*.

The Order is also compatible with the more recent *Walden*, 571 U.S. at 277. Defendants contend that "the Court 'improperly attribute[d]' X's forum connections—namely, X's happenstance decisions to do business with Texas-based advertisers—to Defendants." Br. at 6. But that is flatly wrong. This Court's Order does not emphasize X's own contacts with Texas; rather, it emphasizes Defendants' targeting of specific Texas advertisers, in a calculated effort to manipulate their behavior to tortiously interfere with X's contracts with those advertisers. Order at 6-7, 11-12.

Likewise, *Johnson*—which the Court also expressly considered—does not call the Court's reasoning into question. Defendants argue that the Order's reasoning is "undermine[d]" by

*Johnson* and suggest that *Johnson* demands the forum state be the focal point of "*both*" the libel and the harm.  Br. at 7. But *Johnson* found that personal jurisdiction was lacking in Texas when the allegedly libelous story "has no ties to Texas," "does not mention Texas," "recounts a meeting that took place outside Texas, and … used no Texan sources," and where the plaintiff's only arguments for asserting jurisdiction concerned the interactivity and solicitations made on the publishing website. 21 F. 4th at 319. Here, Defendants' libelous stories *do* mention Texans—Texas companies, to be precise—and their actions were part of a concerted effort to manipulate those companies, to X's economic detriment. Moreover, unlike in *Johnson*, Defendants specifically targeted Texas residents by emailing the very articles at issue to readers in Texas. Order at 11. *Johnson* is plainly distinguishable.

**2.**  Defendants next argue that the Court's "reliance on Oracle and AT&T to ground jurisdiction" was error. Br. at 14-17. Here, Defendants even more transparently argue the facts, grumbling that this Court's application of law to fact does not achieve their desired outcome. *Id.* at 15-16 (applying facts concerning Oracle and AT&T to well-known precedents). Recasting these arguments as "disagreement with the Court's interpretation of the Fifth Circuit's rules" does not convert this fundamentally fact-bound dispute (and thus, improper to address on a Section 1292 review) into one over the correct legal standard to apply. *Walden*, 571 U.S. at 286; *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 102-03 (5th Cir. 2018); *Johnson*, 21 F.4th at 323; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Moreover—and equally important—the Court's "reliance on Oracle and AT&T to ground jurisdiction" is fully consistent with specific-jurisdiction precedent. As stated above, the Court found that Defendants disseminated their articles in an effort to manipulate Texas companies. Such action reveals a focus on the forum state that is fully congruent with the dictates of *Calder* and other precedent.

11

**3.** In a last-ditch effort to salvage their personal-jurisdiction argument, Defendants essentially contend that courts should change or narrow the law in the "internet era." Br. at 18-19. This policy argument is unsuitable to Section 1292(b) review. Defendants suggest that the Court's Order disregards both due process and principles of federalism and that the Court's application of the law will deprive tortfeasors of the "fair warning" they deserve. Br. at 13. But in Section 1292(b) analysis, it matters not whether Texas or any other state would be "fairer" to these particular tortfeasors. What matters is Defendants' ability to identify true grounds for disagreement as to a controlling question of law.  Defendants have not done so.

Ultimately, the Court applied the right framework and did so correctly. X has not merely alleged that Media Matters' website is available in Texas, as *Johnson* counsels is inadequate. 21 F.4th at 318-19. Instead, X has alleged that Media Matters purposefully distributed its newsletter, and thus the tortious articles, to thousands of Texans, repeatedly spouted its false claims on cable television, and targeted Texas-based advertisers to disrupt X's business relationships in Texas. Am. Compl. ¶¶ 23-29. Furthermore, Defendants' crusade places blame for all that it thinks has gone wrong at X on Elon Musk, a Texas domiciliary who regularly controls X from Texas. *Id.* ¶ 27. As X has argued, this creates a nexus to Texas, towards which Defendants aimed their unlawful conduct. ECF No. 45 at 7-8. Furthermore, Media Matters' website is interactive, and nearly every page solicits donations and seeks contact information for potential supporters and other interested persons. Am. Compl. ¶ 23. By soliciting money from Texans in Texas and recruiting Texans to read and support their so-called "journalism," Defendants have purposefully availed themselves of the forum state. *See* ECF No. 45 at 8. At bottom, Defendants cannot show that the Court's application of law to fact was erroneous, much less that the Court applied the wrong law. Section 1292 certification is plainly unwarranted.

**B.      Substantial ground for disagreement does not exist as to venue.**

As to whether there is substantial ground for difference of opinion, an "examin[ation] of" the controlling law" reveals there is no "extent [to which] it is unclear." *La. State Conf. of NAACP*, 495 F. Supp. 3d at 414. Defendants certainly have not identified conflicting law on venue in the Fifth Circuit. *See Steel Coils, Inc. v. M/V Lake Marion*, No. CIV.A. 98-3116, 2000 WL 1801842, at *2 (E.D. La. Dec. 7, 2000) (finding no substantial ground for disagreement because "Defendants have not demonstrated that there is conflicting or contradictory opinions in the Fifth Circuit that have ruled on the issue"). All Defendants offer is the text of 28 U.S.C. § 1391. Br. at 20-23. But the Court cited that very same provision and found that the facts here met the statute's requirements. Order at 4. And Defendants' reliance on the proceedings in *In re Space Exploration Technologies, Corp.*, 96 F.4th 733 (5th Cir. 2024), borders on absurd. Defendants surmise from the Fifth Circuit's one-line order refusing to grant the extraordinary remedy of mandamus relief in a venue dispute (and subsequent refusal to rehear that denial en banc, 99 F.4th 233) that "at least the two circuit judges who declined to grant the writ—and likely several of the eight who voted to deny rehearing—have doubts about the strategy Musk's California-based companies have adopted: suing in Texas whenever it suits their purposes." Br. at 17. This is a remarkable claim given that the judges who refused to grant relief did not explain their reasoning, let alone express "doubts about the strategy Musk's California-based companies have adopted." The Court may have denied mandamus relief, and then refused en banc relief, for any number of reasons, and Defendants' unfounded speculation should be rejected. At a minimum, these cursory decisions cannot make law, let alone disrupt settled law. On venue, just as on personal jurisdiction, Defendants' motion must be denied.

### III.     Certification Would Not Materially Advance the Resolution of This Case.

Defendants have also failed to show that certification would materially advance the resolution of this case. This is particularly true as Defendants are unlikely to prevail on their appeal. As the Court has explained, "Defendants intended to negatively impact Plaintiff's blue-chip clients . . . in [Texas]." Order at 12. As to personal jurisdiction, Defendants "purposefully reached out beyond their State and into another by" targeting X's business relationships in Texas. *Walden*, 571 U.S. at 285 (cleaned up). Although Defendants conduct may have also reached into other states, including California, they should have reasonably anticipated being haled into court here. As to venue, "[t]he question is not whether a substantial part of the events took place elsewhere; rather, the question is whether a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Texas." *Id.* (cleaned up). Defendants may believe a substantial part of the events took place elsewhere, but a substantial part also took place in Texas. In this Court, the parties have a trial date six months away and are well into the discovery process. Rather than materially advancing the litigation, an interlocutory appeal now, which could take many months, would frustrate the expeditious resolution of this case. *See* Fed. R. Civ. P. 1; ECF No. 108 at 14.

### IV.     Defendants Have Shown No Reason for This Court to Exercise Its Discretion to Certify Either Issue.

Certification cannot be granted where, as here, none of Section 1292's statutory requirements are satisfied. *Earl*, 2021 WL 1080689, at *2 ("All three of these criteria must be met for an order to properly be certified for interlocutory appeal." (citation omitted)). Even where the statutory requirements are met, the Court has unfettered discretion to decline to certify the appeal. *Goosehead*, 533 F. Supp. 3d at 385. If the Court concludes that Section 1292's requirements are met here (and they are not), it should still deny the motion because Defendants have not shown

good cause to certify.

First, Defendants suggest the Court should certify an immediate appeal because this Court is busy. But such action would not necessarily serve judicial economy or docket management. As to venue, Defendants admit they are entitled to relitigate their venue arguments "as the evidentiary record develops and the case progresses." Br. at 23 (citing 28 U.S.C. § 1406). That, coupled with the fact that improper venue, as Defendants concede, "would not nullify a trial" or "judgment," Br. at 18, militates *against* certification, not for it. And as for personal jurisdiction, the Court has already explained that Defendants acts affected Texas "in a way that is different than would randomly or fortuitously affect other states." Order at 11. The "targeting of the alleged tortious acts at the headquarters of Texas based companies is sufficient to establish specific jurisdiction in Texas." *Id.* at 7. This is unequivocally correct. *Johnson*, 21 F.4th at 318; *Revell v. Lidov*, 317 F.3d 467, 476 (5th Cir. 2002). This Court's sound jurisdictional analysis belies Defendants' prediction that this case will be a "nullity."

Second, Defendants urge the Court to prematurely consider their First Amendment arguments, relying on distinguishable authority to improperly inject those arguments into the personal jurisdiction context. Defendants argue that this case presents "the very serious and timely question of how far the First Amendment guarantee of freedom of the press may still be impinged upon by actions for libel." Br. at 24 (citing *Time, Inc. v. McLaney*, 406 F.2d 565, 566 (5th Cir. 1969)). But the Supreme Court has expressly foreclosed any import that these arguments might carry at this stage in the proceeding. In *Calder*, the Court "reject[ed] the suggestion that First Amendment concerns enter into the jurisdictional analysis" for two reasons. 465 U.S. at 790. First, because injecting constitutional complexities "would needlessly complicate an already imprecise inquiry." *Id.* And second, because "the potential chill on protected First Amendment activity

15

stemming from libel and defamation actions is already taken into account in the constitutional limitations on the substantive law governing such suits." *Id.* In other words, it is the long-settled law that First Amendment concerns have no place in determining personal jurisdiction, even in libel suits.

## CONCLUSION AND PRAYER

The Court should deny Defendants' Motion to Certify an Immediate Appeal.

Dated: October 11, 2024.                    Respectfully submitted.

*/s/ Christopher D. Hilton*
Judd E. Stone II
  Texas Bar No. 24076720
Christopher D. Hilton
  Texas Bar No. 24087727
Ari Cuenin
  Texas Bar No. 24078385
Michael R. Abrams
  Texas Bar No. 24087072
Alexander M. Dvorscak
  Texas Bar No. 24120461
Cody C. Coll
  Texas Bar No. 24116214
**STONE HILTON PLLC**
600 Congress Ave., Suite 2350
Austin, TX 78701
Telephone: (737) 465-7248
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
michael@stonehilton.com
alex@stonehilton.com
cody@stonehilton.com

John C. Sullivan
  Texas Bar No. 24083920
**S|L LAW PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that this document was served on all counsel for record on October 11, 2024, via the Court's CM/ECF system.

*/s/ Christopher D. Hilton*
Christopher D. Hilton