# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

|  |  |
|---|---|
| **X CORP.,**<br><br>          **Plaintiff,**<br><br>     **v.**<br><br>**MEDIA MATTERS FOR AMERICA,**<br>**et al.,**<br><br>          **Defendants.** | **Civil Action No. 4:23-cv-01175-O** |

## SUPPLEMENTAL APPENDIX

| Tab No. | Description of Document | Page No. |
|---|---|---|
| 1 | May 24, 2024, Email from A. LeGrand | 002 |
| 2 | May 2, 2024, Email from A. Ahmed | 005 |
| 3 | Defendants' First Amended Responses and Objections to Plaintiff's Second Set of Requests for Production | 009 |
| 4 | Defendants' Second Amended Responses and Objections to Plaintiff's First Set of Requests for Production | 026 |
| 5 | June–August 2024 Emails from A. Dvorscak, A. Khanna, D. Lorenzo, and J. Shelly | 057 |
| 6 | September 2024 Emails from C. Hilton and A. Khanna | 068 |
| 7 | September 2024 Emails from C. Hilton, A. Khanna, and M. Abrams | 071 |
| 8 | Defendants' Third Privilege Log | 075 |
| 9 | *Prentice v. McPhilemy*, 27 Med. L. Rptr. 2377 (D.C. Super. Ct. 1999) | 109 |

# Tab 1

| From: | LeGrand, Andrew |
|---|---|
| To: | Vidyarthi, Apratim; Alex Dvorscak; Ahmed, Amer S.; Abha Khanna |
| Cc: | Boutrous Jr., Theodore J.; Elena Rodriguez Armenta; Champion, Anne; Omeed Alerasool; Jacob Shelly; Chris Dodge; Daniela Lorenzo; Aria Branch; Ogale, Arjun; Chris Hilton; Judd E. Stone, II; Ari Cuenin; Bonnie Chester; Cody Coll; john.sullivan@the-sl-lawfirm.com; Tom Albright; Michael Abrams; Togias, Iason |
| Subject: | RE: X/MMFA: Meet and Confer |
| Date: | Friday, May 24, 2024 3:36:50 PM |

Alex and Chris,

Thank you for meeting with us earlier today. We wanted to touch base about where we landed and next steps.

Plaintiff informed us they intend to file a motion to compel in the coming days seeking production of certain categories of documents that are currently in dispute. As we stated on the call, and reiterate now, Defendants remain open to continuing to discuss any areas of dispute. While it is true that the parties have discussed some of these disagreements, these discussions have been piecemeal, and Defendants have made several concessions over the past weeks to help move the parties towards a mutually beneficial resolution. We are thus unsure of where the parties' disagreements currently stand or the reasons for them and, therefore, of what further concessions can be made so that the parties can resolve disputes without adding to the Court's busy docket.

Accordingly, as we discussed on the call, we request that you send us a list of the RFPs that Plaintiff intends to raise with the Court. Defendants also asked Plaintiff to send, as is typically done in the NDTX, a copy of their motion to compel ahead of filing. The purpose of this is for Defendants to have a clear understanding of what Plaintiffs believe is ripe for court intervention and Plaintiff's position on those issues to see if further agreement can be reached. Plaintiff represented that they would likely file the motion first and have any further conversations about the motion after it was filed, but that they would discuss internally to assess their willingness to send Defendants a list of disputed RFPs and/or a preemptive copy of their motion.

Defendants also clarified that they are not withholding documents based on general objections. Plaintiff asked whether Defendants can formalize that in the form of amended responses. We can commit to providing amended responses by Tuesday, May 28.

Similarly, Defendants are eager to engage meaningfully in discussions over Plaintiff's continued privilege objections. We have provided Plaintiff with several authorities supporting our position, separate and apart from what is in our responses and objections. Plaintiff has stated that they disagree with our position and that the law is different than what we argue but have not offered support for that position. We asked on the call—and reiterate our request here—for you to send any authority supporting or explaining your position. Plaintiffs indicated they are aware of authority but believe the parties are too far apart for it to make any difference, and also stated it was not their burden to provide Defendants with authority in support of their position. As we noted, Defendants cannot meaningfully assess Plaintiff's arguments to determine whether modification of our privilege objections are warranted without a fulsome understanding about Plaintiff's position. We remain willing to continue these conversations to reach a mutually beneficial conclusion.

Plaintiff also requested assurance on when Defendants would produce documents in

advance of the discovery deadline. As Defendants have made clear, given Plaintiff's incredibly broad requests, Defendants have collected over 3.5 Terabytes of data to date. We have a team of staff attorneys and associates from two firms reviewing the data around the clock and have been making—and will continue to make—bi-weekly productions, as promised. Defendants have represented repeatedly that we intend to comply with court ordered deadlines and have no intention of waiting until the end of discovery to produce documents.

We of course understand Plaintiff's desire to have documents before depositions are conducted and expert reports are due. Defendants have the same desires with respect to Plaintiffs' forthcoming document productions as well. We remain open to discussing ways to meet the parties' needs, such as by bifurcating the schedule so that expert discovery and depositions take place after all documents are exchanged or extending the case schedule deadlines. Given the expanded scope of the discovery served in this case, which we believe goes beyond what was represented at the beginning of this action, we think the Court would be amenable to such modifications. *See, e.g.*, ECF 14 at pp. 9-10 (Any request that the trial date of this case be modified must be made (a) in writing to the Court, (b) before the deadline for completion of discovery, and (c) in accordance with the United States District Court for the Northern District of Texas Civil Justice Expense and Delay Reduction Plan ¶V and Local Rule 40.1). While we understand why Plaintiff pushed for a faster discovery and case schedule than Defendants, *see, e.g.*, ECF 13 at ¶ 8 (compare Plaintiff's proposed close of discovery date of August 12 with Defendant's staggered deadlines ending February 12), we think the sheer scope of discovery in this case and the parties desire to have documents produced before depositions and expert reports take place may necessitate longer schedule. Defendants also remain open to discussing other solutions Plaintiff may have.

Defendants remain willing and eager to continue meaningfully conferring in good faith to come to mutually beneficial compromises that help serve the needs of the parties without further burdening the Court's docket with discovery-related motion practice.

Best,
Andrew


**Andrew LeGrand**
Partner

T: +1 214.698.3405 | M: +1 469.658.5686
ALeGrand@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201-2923

-----Original Appointment-----
**From:** Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>
**Sent:** Thursday, May 23, 2024 6:35 PM
**To:** Vidyarthi, Apratim; Alex Dvorscak; Ahmed, Amer S.; Abha Khanna
**Cc:** LeGrand, Andrew; Boutrous Jr., Theodore J.; Elena Rodriguez Armenta; Champion, Anne; Omeed Alerasool; Jacob Shelly; Chris Dodge; Daniela Lorenzo; Aria Branch; Ogale, Arjun; Chris Hilton; Judd E.

# Tab 2

| From: | Ahmed, Amer S. |
|---|---|
| To: | Alex Dvorscak; Abha Khanna |
| Cc: | LeGrand, Andrew; Boutrous Jr., Theodore J.; Elena Rodriguez Armenta; Champion, Anne; Omeed Alerasool; Jacob Shelly; Chris Dodge; Daniela Lorenzo; Aria Branch; Vidyarthi, Apratim; Ogale, Arjun; Chris Hilton; Judd E. Stone, II; Ari Cuenin; Bonnie Chester; Cody Coll; john.sullivan@the-sl-lawfirm.com; Tom Albright |
| Subject: | RE: X/MMFA: Plaintiff Position on Motion to Stay Discovery? |
| Date: | Thursday, May 2, 2024 8:15:29 PM |

Alex,

We write to follow-up on pending action items and to respond to some of the points you raise below.

*First*, regarding the production we served on Tuesday, April 30, we can confirm that the documents on the Kiteworks platform are properly loaded and are downloading. The system also indicates that the production was downloaded on your end yesterday afternoon. We assume this means there is nothing further to do on this end. If anyone else from your team needs access to the platform, please let us know.

*Second*, as you noted in your email, during yesterday's call, you indicated that you will 1) propose a new start date for responsive documents that will be closer in time to the events in dispute than your current request for documents created as early as April 14, 2021; 2) confirm with Plaintiff what Platform account data is already in its possession, which may help resolve disputes over requests that seek such data from Defendants; and 3) follow-up with any additional caselaw regarding your position on privilege considerations. We look forward to this information.

*Third*, regarding RFP 23, we can confirm that Mr. Hananoki did not travel to Texas during the time period outlined in RFP 23 for leisure or work. Defendants therefore modify their response to RFP 23 to be (in <span style="color:red">red</span>):

Subject to, and without waiving these objections, Defendants do not possess any responsive documents because Mr. Hananoki did not conduct any travel from October 20, 2023, to December 15, 2023 undertaken in relation to his research or drafting of the November 16, 2023 article. <span style="color:red">Mr. Hananoki also did not travel to Texas in any capacity during this time.</span>

We believe this amendment is sufficient to obviate any further dispute on this RFP. Please confirm.

*Fourth*, Defendants take issue with the way you characterize yesterday's meeting. For instance, you write:

"Defendants are limiting their production to a reasonable search based on their chosen search terms and custodians, rather than capturing the entire universe of potentially responsive documents." As we reiterated numerous times yesterday, this description is not accurate. Defendants are running broad searches through the 3.5 Terabytes of data we have collected that capture—to the very best of our ability—all of Plaintiff's requests as written. These searches are **not** limited by Defendants' objections and responses, save for the categories of documents potentially responsive to discrete inappropriate requests where Defendants clearly indicated in written objections/responses that they will not be

producing documents at this time. We are also manually reviewing the extensive collection you requested of audio and video files that are not amenable to search terms, which, as you can imagine, is a time-consuming process. We will produce all responsive, non-privileged documents that we identify as part of our search. For privileged documents that we withhold, we will send X a privilege log explaining what was held back and why.

This approach conforms with traditional discovery processes. The only way to capture the universe of potentially responsive documents is a reasonable search based on the scope of the request. Indeed, the only other alternative would be for Defendants to review every single document in their possession, regardless of its relationship to any of Plaintiffs' requests. Therefore, your objection to Defendants conducting a "reasonable" search is confusing, to say the least. We are not aware of any authority requiring parties to perform an *un*reasonable search. If you believe otherwise, please send us the relevant citations.

You also write that "Defendants will not tell X their search terms, custodians, or otherwise describe their search process, but indicated that they might disclose them in response to a specific ROG asking for that information." But Defendants have provided Plaintiff with primary custodian names as a courtesy, and the first time that Plaintiff even brought up search terms was during yesterday's meeting. At no point before then had Plaintiff asked for search terms, proposed search terms, or offered to negotiate search terms. And Plaintiff has not put forth any explanation for why it appears to believe that Defendants are not conducting discovery in good faith such that its choices of custodians or search terms are improper. We remain willing to answer any properly-served discovery requests, but we do not understand that Plaintiff has any right to otherwise insist on collecting more information about Defendants, their employees, or their processes.

We also disagree with Plaintiff's characterization that Defendants "will not estimate the length of time before their production will be completed" or "the contents of any given production before it occurs." Far from withholding this information, we explained that these kinds of questions cannot be answered with any reliability in advance of conducting the necessary review. We explained that most of your requests are broad and overlapping, so this is not the kind of case where we might produce documents in response to each request sequentially. Nor can we predict the total time necessary to review every document in the 3.5 Terabyte database that we have collected, especially given that so many of your requests encroach on privileged materials that will need to be studied, potentially redacted, and logged.

*Finally*, it is clear based on our communications to date that Plaintiff shows a continued unwillingness to engage in good-faith discussions on narrowing Plaintiff's many overbroad, disproportionate, and irrelevant requests. Despite Defendants' demonstrated willingness to confer and revise several of our responses to X's discovery requests in order to resolve disputes without taxing the Court's limited resources, Plaintiff has not engaged in meaningful discussions and has, to date, refused to work with Defendants to modify a single one of Plaintiff's 47 discovery requests in any way. As Defendants have noted time and time again, Defendants remain open to discussing ways to alleviate the burdens of discovery while still meeting the needs of this case. As we discussed yesterday, Plaintiff's desire both for overbroad discovery and an expedited timeline are necessarily in friction, and yet Plaintiff has refused to negotiate on either point.

Kind regards,

Amer

**Amer S. Ahmed**
Partner

T: +1 212.351.2427 | M: +1 917.921.7295
AAhmed@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193

---

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Thursday, May 2, 2024 11:49 AM
**To:** Ahmed, Amer S. <AAhmed@gibsondunn.com>; Abha Khanna <akhanna@elias.law>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J.
<TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>;
Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob
Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>;
Aria Branch <abranch@elias.law>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Ogale, Arjun
<AOgale@gibsondunn.com>; Chris Hilton <chris@stonehilton.com>; Judd E. Stone, II
<judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester
<Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com;
Tom Albright <tom@stonehilton.com>
**Subject:** RE: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

[WARNING: External Email]

Hi all,

Thanks for taking the time to meet with us yesterday. I believe our conference
helped clarify a lot of the parties' issues. And so, I wanted to quickly summarize
our understanding of what was discussed.

1. **General Issues:**
   - Tech issues with first production:
     - Parties will work to connect IT folks to ensure file transfer.
   - ESI Order:
     - X will get y'all a draft ESI order shortly for discussion.
   - Date Limitation:
     - X will propose a compromise date for production that is later
       than April 2021 but before April 2022.

2. **Specific Requests:**

# Tab 3

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| X CORP., | |
| *Plaintiff*, | |
| v. | Civil Action No. 4:23-cv-01175-O |
| MEDIA MATTERS FOR AMERICA, *et al.*, | |
| *Defendants*. | |

## DEFENDANTS MEDIA MATTERS FOR AMERICA, ERIC HANANOKI, AND ANGELO CARUSONE'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION

Defendants Media Matters for America ("Media Matters"), Mr. Eric Hananoki, and Mr. Angelo Carusone, through their undersigned counsel, submit these responses and objections to Plaintiff X Corp.'s Second Set of Requests for Production ("Discovery Requests" or "Requests").

## <u>PRELIMINARY STATEMENT</u>

The responses set forth herein are based on the information and documents reasonably available to Defendants at this time, but discovery in this matter, including Defendants' investigation into the issues raised in this lawsuit and documents responsive to Plaintiff's Discovery Requests, is still ongoing. Defendants reserve their right to alter, supplement, amend, correct, clarify, or otherwise modify these responses and objections, to assert additional objections or privileges in any subsequent supplemental response(s) and/or on a document-by-document basis, or to move for a Court order if deemed appropriate.

1

By making the accompanying responses and objections to Plaintiff's Discovery Requests, Defendants do not waive, and hereby expressly reserve, their right to assert all objections as to the admissibility of such responses and documents into evidence in this action, or in any other proceedings.

Produced materials will adhere to formal ESI protocol, privilege material agreement, and any protective order agreed to by Counsel for Plaintiff and Defendants and entered by the Court, and will be produced on a rolling basis. As of the date of these Amended Responses and Objections, the Parties have yet to agree upon or submit for the Court's approval any of these documents. Any previous or forthcoming production by Defendants is made without waiver of their rights and privileges according to those documents once they are finalized and entered by the Court.

Moreover, Defendants maintain that this Court has no personal jurisdiction over Media Matters, Eric Hananoki, or Angelo Carusone, and that the Northern District of Texas is not the proper venue for this dispute. *See* Defendants' Brief in Support of their Motion to Dismiss, ECF 41 at Sections I and II; Defendants' Reply in Support of their Motion to Dismiss, ECF 51 at Sections I and II. Defendants provide these responses and objections subject to and without waiving any of their arguments for dismissal.

## RESPONSES TO INDIVIDUAL REQUESTS

**REQUEST FOR PRODUCTION NO. 30**: All versions of the November 17, 2023 Article, including but not limited to all drafts, outlines, or notes thereof and any subsequent edits, updates, and/or amendments thereto, and including all prior versions previously available on the Website.

**OBJECTIONS**: The Request does not define the term "notes," but Defendants interpret the term as used here consistent with its ordinary meaning to ask for written records created in the process of reporting, writing, and publishing the November 17, 2023 Article. In its May 24, 2024

Motion to Compel, Plaintiff indicated that it agrees with Defendants' definition. *See* ECF 60, Pl.'s Mot. to Compel, at 7.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.


**REQUEST FOR PRODUCTION NO. 31**: All source materials, research, screenshots, Platform account data, and other documents or communications relied on, referenced, created, or considered by You in conceiving of, investigating, working on, writing, publishing, and disseminating the November 17, 2023 Article.

**OBJECTIONS**: The Request does not define the term "Platform account data." After conferring with Plaintiff, Defendants interpret the term as used here to ask for usernames, posts, chats, and comments of, as well as emails generated from, accounts on the X Platform relied on, referenced, created, or considered in investigating, working on, writing, publishing, and disseminating the referenced article. *See also* ECF 60, Pl's Mot. to Compel, at 7. Defendants also include "login information" in their definition of Platform account data, but Defendants object to this as not relevant and disproportionate to the needs of the case since it seeks sensitive username and password information. Defendants further object to this Request because it seeks Platform account data that is already within X's possession and is therefore more convenient, less burdensome, and less expensive for X to access outside of discovery.

3

**RESPONSE**: The Parties are still discussing the extent to which some or all of the Platform account data is in the custody, possession, and control of X and more easily accessible by X. Once the Parties have resolved that question, Defendants will provide Plaintiff with the relevant account handles.

Defendants will otherwise produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 32**: All documents and communications related to the November 17, 2023 Article, including but not limited to internal communications, communications with the public (including social media posts), communications with donors, communications with journalists, and communications with the advertisers mentioned in the November 17, 2023 Article.

**OBJECTION**: Defendants object to the disclosure of donor identification information as harassing. Disclosure of donor identifying information can lead to donors being harassed for and deterred from affiliating with organizations they support.[1]   Indeed, Elon Musk himself has called

---

[1] *See, e.g.*, *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 616–17 (2021) ("The petitioners here, for example, introduced evidence that they and their supporters have been subjected to bomb threats, protests, stalking, and physical violence. App. in No. 19–251, at 256, 291–292. Such risks are heightened in the 21st century and seem to grow with each passing year,

4

Media Matters "an evil propaganda machine that can go to hell" and vowed that X "will pursue not just the organization but anyone funding that organization. I want to be clear about that anyone funding that organization, will be, we will pursue them".[2] Plaintiff's request for this information is inappropriate and not proportional to the needs of this case.

      **RESPONSE**: Based on this objection, Defendants will not produce identifying donor information in response to this request. Defendants will otherwise produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

      **REQUEST FOR PRODUCTION NO. 33**: All audio and video recordings of You discussing or referencing in any way the November 17, 2023 Article, including but not limited to documents reflecting any URLs for any such recordings of You that are in the possession, custody, or control of third parties.

---

as 'anyone with access to a computer [can] compile a wealth of information about' anyone else, including such sensitive details as a person's home address or the school attended by his children") (internal citation omitted); *see also Koch Ally Says He Received Death Threats*, Matt Reynolds, Courthouse News (Feb.25, 2016) (libertarian businessman whose affiliation with the Americans for Prosperity Foundation was leaked said "he received death threats and had considered quitting the foundation because he was worried about his family's safety and the adverse effect of protests outside his North Carolina stores") (last accessed May 28, 2024).

[2]*@TheChiefNerd*, X.com (Dec. 10, 2023, 4:24 PM), [https://perma.cc/6L3M-SHX3] (last accessed May 28, 2024).

**OBJECTIONS**: Defendants object to this Request because it purports to seek materials "in the possession, custody, or control of third parties" and therefore falls outside the scope of Fed. R. Civ. P. 26 and 34.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents. Defendants will not search for or produce any documents that are in the possession, custody, or control of third parties.

**REQUEST FOR PRODUCTION NO. 34**: All materials regarding or communications with You or any other Media Matters employee, contractor, or agent mentioning or regarding in any way this Matter, Elon Musk, Linda Yaccarino, X, Twitter, or the Platform, including misinformation, brand safety, or ad pairing on the Platform.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in its possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 35**: All materials regarding or communications with any donor or potential donor to Media Matters mentioning or regarding in any way this Matter, Elon

Musk, Linda Yaccarino, X, Twitter, or the Platform, including misinformation, brand safety, or ad pairing on the Platform.

**OBJECTIONS**: Defendants object to this Request as harassing. *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 507–08, 67 S. Ct. 385, 392, 91 L. Ed. 451 (1947) ("[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries. As indicated by Rules 30(b) and (d) and 31(d), limitations inevitably arise when it can be shown that the examination is being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry. And as Rule 26(b) provides, further limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege."). Disclosure of donor identifying information can lead to donors being harassed for and deterred from affiliating with organizations they support.[3] Indeed, Elon Musk himself has called Media Matters "an evil propaganda machine that can go to hell" and vowed that X "will pursue not just the organization but anyone funding that organization. I want to be clear about that anyone funding that

---

[3] *See, e.g.*, *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 616–17 (2021) ("The petitioners here, for example, introduced evidence that they and their supporters have been subjected to bomb threats, protests, stalking, and physical violence. App. in No. 19–251, at 256, 291–292. Such risks are heightened in the 21st century and seem to grow with each passing year, as 'anyone with access to a computer [can] compile a wealth of information about' anyone else, including such sensitive details as a person's home address or the school attended by his children") (internal citation omitted); *see also Koch Ally Says He Received Death Threats*, Matt Reynolds, Courthouse News (Feb.25, 2016) (libertarian businessman whose affiliation with the Americans for Prosperity Foundation was leaked said "he received death threats and had considered quitting the foundation because he was worried about his family's safety and the adverse effect of protests outside his North Carolina stores") (last accessed May 28, 2024).

7

organization, will be, we will pursue them".[4] Plaintiff's request for this information is inappropriate and not proportional to the needs of this case.

> **RESPONSE**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time.

**REQUEST FOR PRODUCTION NO. 36**: All materials, including but not limited to notes, transcripts, or recordings, whether published, broadcast, or otherwise, or all media or public appearances made by You wherein You discussed or mentioned this Matter, Elon Musk, Linda Yaccarino, X, Twitter, or the Platform, including misinformation, brand safety, or ad pairing on the Platform.

> **RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in its possession, custody, or control that they are able to locate following a reasonable search. Defendants will not search for or produce materials outside of Defendants' possession, custody, or control. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 37**: All materials regarding or communications with Eric Hananoki.

---

[4] *@TheChiefNerd*, X.com (Dec. 10, 2023, 4:24 PM), [https://perma.cc/6L3M-SHX3] (last accessed May 28, 2024).

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request impermissibly requires blanket production of "[a]ll materials regarding or communications with Eric Hananoki," even where not reasonably related to the issues in dispute in this case. Defendants further object to this Request as duplicative of and/or cumulative of other discovery requests, including Request Nos. 1, 2, 3, 4, 5, 6, 7, 9, 10, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 28, 30, 31, 32, 33, 34, 36, 38, 39, 40, 41, 42, 43, 44, 45, 46, and 47.

**RESPONSE**: Many of documents Defendants produce in response to other Requests will be responsive to this Request as well, as noted above. Based on the foregoing objections, however, Defendants will not conduct a separate search or create separate productions for this Request at this time.

**REQUEST FOR PRODUCTION NO. 38**: All materials regarding or communications with Matt Gertz.

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request impermissibly requires blanket production of "[a]ll materials regarding or communications with Matt Gertz," even where not reasonably related to the issues in dispute in this case. Indeed, Mr. Gertz did not author either the November 16 or November 17 articles and is only referenced in two footnotes of Plaintiff's Amended Complaint, both citing to the same article. *See* ECF 37, Am. Compl. at n.4 and n.20. Defendants further object to this Request as duplicative

of and/or cumulative of other discovery requests, including Discovery Request Nos. 5, 6, 7, 20, 28, 34, 36, 39, 41, 42, 44, and 45.

**RESPONSE**: Documents Defendants produce in response to other Requests may be responsive to this Request as well, as noted above. Based on the foregoing objections, however, Defendants will not conduct a separate search or create separate productions for this Request at this time.

**REQUEST FOR PRODUCTION NO. 39**: All materials reflecting or regarding any policies, practices, procedures, codes of conduct, ethical standards, or other guidelines for appropriate investigation and reporting for Media Matters' articles, including but not limited to policies concerning fact-checking, defamation, and contacting sources or subjects of articles.

**RESPONSE**: Defendants will produce on a rolling basis, any responsive, nonprivileged documents in its possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 40**: All materials and communications regarding the X account(s) used in creating the November 16, 2023 Article or the November 17, 2023 Article, including but not limited to any emails from the Platform (including automatic or system-generated emails).

**OBJECTIONS**: Defendants interpret "materials" to include Platform account data. Defendants object to this Request because it seeks Platform account data that is already within X's

10

possession and is therefore more convenient, less burdensome, and less expensive for X to access outside of discovery. Defendants also object to this Request as duplicative of and/or cumulative of other discovery requests, including Discovery Request Nos. 2, 10, and 31.

      **RESPONSE**: Defendants interpret "materials" to include Platform account data. The Parties are still discussing the extent to which some or all of the Platform account data is in the custody, possession, and control of X and more easily accessible by X. Once the Parties have resolved that question, Defendants will provide Plaintiff with the relevant account handles and otherwise produce on a rolling basis any responsive, nonprivileged materials that are in their possession, custody, or control and that they are able to locate following a reasonable search.

**REQUEST FOR PRODUCTION NO. 41**: All materials and communications with or regarding any X account or X advertiser appearing the [sic] November 16, 2023 Article or the November 17, 2023 Article.

      **RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in its possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 42**: All materials regarding or communications with any individual or entity named in the November 16, 2023 Article, the November 17, 2023 Article, and any subsequent coverage, including communications with any entity's board of directors,

11

employees, agents, attorneys, representatives, and all other persons acting or purporting to act on behalf of any such entity.

**OBJECTIONS**: Defendants object to the phrase "any subsequent coverage," which is vague, overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, as it would purport to include every article MMFA has written or published since November 16, 2023.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged materials regarding or communications with any individual or entity named in the November 16, 2023 Article or the November 17, 2023 Article in its possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 43**: All materials regarding or communications with any sources for the November 16, 2023 Article, the November 17, 2023 Article, and any subsequent coverage.

**OBJECTIONS**: Defendants object to the phrase "any subsequent coverage," which is vague, overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, as it would purport seek information pertaining to every source for every article MMFA has written or published since November 17, 2023.  Defendants object to this Request as duplicative of and/or cumulative of other discovery requests, including Request Nos. 2, 3, 31, and 32.

12

**RESPONSE**:  Defendants are not in possession of any responsive documents because Defendants did not rely on any sources in drafting the November 16 and November 17, 2023 articles.

**REQUEST FOR PRODUCTION NO. 44**: Documents sufficient to show the identity of the author of and every contributor to articles that are attributed to "Media Matters Staff" or that are unattributed referring to this Matter, Elon Musk, Linda Yaccarino, X, Twitter, the November 16, 2023 Article, the November 17, 2023 Article, or the Platform, including misinformation, brand safety, ad pairing, anti-Semitism, racism, Nazis or Nazi ideology and content, white nationalism, white supremacism, or the "alt-right" on the Platform.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in its possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 45**: All materials or communications that reference in any way this Matter, Elon Musk, Linda Yaccarino, X, Twitter, or the Platform, including misinformation, brand safety, or ad pairing on the Platform, and use any of the following terms or any variant of any of the following terms: Hitler, Nazi, racist, racism, alt-right, antisemite, antisemitism, anti-Semite, anti-Semitism, red line, replacement theory, white supremacy, white nationalism, white pride, Pepe, frog Twitter, the Holocaust, bigotry, hate, hatred, hateful speech, Charlottesville, tiki torch, January 6, January 6th, Jan. 6, Jan. 6th, 1/6, J6, minorities, hordes, jew,

13

jewish, Israel, Israeli, IDF, Israeli Defense Force, Palestine, Palestinian, "from the river to the sea," October 7, 10/7, jihad, day of jihad, Hamas, Gaza, Islam, Islamic, Palestinian Islamic Jihad, PIJ, Islamophobia, Zionism, Zionist, Zion, blue chip, brand, free speech, First Amendment, Texas, Fort Worth, Dallas, Austin.

     **RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in its possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 46**: All materials reflecting or relating to any reports, accusations, files, notes, personnel records, complaints, mediations, arbitrations, lawsuits (including potential or threatened lawsuits that were never filed), or investigations involving allegations that You took adverse employment actions or otherwise discriminated against or took any action against another person or persons on the basis of a protected class, including but not limited to race, color, national origin, religion, sex, sexual orientation, language status, or pregnancy status.

     **OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case. Indeed, none of the employment related materials X seeks in its request are relevant to any of its tort claims or computation of damages, or to Defendants' defenses. *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 507–08, 67 S. Ct. 385, 392, 91 L. Ed. 451 (1947) ("[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries. As indicated by Rules 30(b) and (d) and 31(d), limitations

14

inevitably arise when it can be shown that the examination is being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry. And as Rule 26(b) provides, further limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege.").

      **RESPONSE**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time.

**REQUEST FOR PRODUCTION NO. 47**: All materials reflecting or relating to any reports, accusations, files, notes, personnel records, complaints, mediations, arbitrations, lawsuits (including potential or threatened lawsuits that were never filed), or investigations involving allegations against You regarding business disparagement, defamation, or libel.

      **OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case. *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 507–08, 67 S. Ct. 385, 392, 91 L. Ed. 451 (1947) ("[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries. As indicated by Rules 30(b) and (d) and 31(d), limitations inevitably arise when it can be shown that the examination is being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry. And as Rule 26(b) provides, further limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege."). Moreover, Defendants, like all media organizations, are frequently contacted by individuals who criticize or threaten Defendants regarding their reporting despite having no credible basis and despite never going through with legal action. Searching, reviewing, and producing all of these documents would result in a high volume of irrelevant and not responsive documents. *See, e.g.*, *Samsung Elecs. Am.,*

15

*Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 284 (N.D. Tex. 2017) (noting "a court can—and must—

limit proposed discovery that it determines is not proportional to the needs of the case, considering"

among other things,  "the parties' resources, the importance of the discovery in resolving the issues,

and whether the burden or expense of the proposed discovery outweighs its likely benefit").

      **RESPONSE**: Notwithstanding these objections, Defendants will produce on a rolling basis

any responsive publicly available legal filings in its possession, custody, or control that they are

able to locate following a reasonable search.

**GIBSON, DUNN & CRUTCHER LLP**
Andrew LeGrand (TX 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.* (CA 132099)
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed* (NY 4382040)
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

**ELIAS LAW GROUP LLP**
Abha Khanna* (WA 42612)
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Jacob D. Shelly* (DC 90010127)
Daniela Lorenzo* (NY 5780457)
250 Massachusetts Ave, NW Suite 400
Washington, D.C. 20001
T: (202) 968-4490
F: (202) 986-4498
jshelly@elias.law
dlorenzo@elias.law

   * Admitted *pro hac vice*

*Counsel for Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone*

Supp. App'x 025

# Tab 4

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

|  |  |
|---|---|
| X CORP., | |
| *Plaintiff*, | |
| v. | Civil Action No. 4:23-cv-01175-O |
| MEDIA MATTERS FOR AMERICA, *et al.*, | |
| *Defendants*. | |

## DEFENDANTS MEDIA MATTERS FOR AMERICA AND ERIC HANANOKI'S AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION

Defendants Media Matters for America ("Media Matters") and Mr. Eric Hananoki,[1] through their undersigned counsel, submit these amended responses and objections to Plaintiff X Corp.'s First Set of Requests for Production ("Discovery Requests" or "Requests"), initially served on March 11, 2024. Defendants' amendments are made based on conferral among counsel.

## PRELIMINARY STATEMENT

The responses set forth herein are based on the information and documents reasonably available to Defendants at this time, but discovery in this matter, including Defendants'

---

[1] Plaintiff's First Set of Requests for Production were served on February 5, 2024, prior to when Plaintiff amended its complaint to include Angelo Carusone as a defendant. Therefore, these Responses and Objections are not on behalf of Mr. Carusone. All references to Defendants herein are to Media Matters and Mr. Hananoki only.

1

investigation into the issues raised in this lawsuit and documents responsive to Plaintiff's Discovery Requests is still ongoing. Defendants reserve their right to alter, supplement, amend, correct, clarify, or otherwise modify these responses and objections, to assert additional objections or privileges in any subsequent supplemental response(s) and/or on a document-by-document basis, or to move for a Court order if deemed appropriate.

By making the accompanying responses and objections to Plaintiff's Discovery Requests, Defendants do not waive, and hereby expressly reserve, their right to assert all objections as to the admissibility of such responses and documents into evidence in this action, or in any other proceedings.

Produced materials will adhere to formal ESI protocol, privilege material agreement, and any protective order agreed to by Counsel for Plaintiff and Defendants and entered by the Court and will be produced on a rolling basis. As of the date of these Amended Responses and Objections, the Parties have yet to agree upon or submit for the Court's approval any of these documents. Any previous or forthcoming production by Defendants is made without waiver of their rights and privileges according to those documents once they are finalized and entered by the Court.

Moreover, Defendants maintain that this Court has no personal jurisdiction over Media Matters or Eric Hananoki and that the Northern District of Texas is not the proper venue for this dispute. *See* Defendants' Brief in Support of their Motion to Dismiss, ECF 41 at Sections I and II; Defendants' Reply in Support of their Motion to Dismiss, ECF 51 at Sections I and II. Defendants provide these responses and objections subject to and without waiving any of their arguments for dismissal.

Supp. App'x 028

<u>**RESPONSES TO INDIVIDUAL REQUESTS**</u>

**REQUEST FOR PRODUCTION NO. 1**:  All versions of the November 16, 2023 Article, including but not limited to all drafts, outlines, or notes thereof and any subsequent edits, updates, and/or amendments thereto, and including all prior versions previously available on the Website.

**OBJECTIONS**: The Request does not define the term "notes," but Defendants interpret the term as used here consistent with its ordinary meaning to ask for written records created in the process of reporting, writing, and publishing the November 16, 2023 Article. In its May 24, 2024 Motion to Compel, Plaintiff indicated that it agrees with Defendants' definition. *See* ECF 60, Pl.'s Mot. to Compel, at 7.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 2**:   All source materials, research, screenshots, Platform account data, and other documents or communications relied on, referenced, created, or considered by You in conceiving of, investigating, working on, writing, publishing, and disseminating the November 16, 2023 Article.

**OBJECTIONS**: The Request does not define the term "Platform account data." After conferring with Plaintiff, Defendants interpret the term as used here to ask for usernames, posts, chats, and comments of, as well as emails generated from, accounts on the X Platform relied on, referenced, created, or considered in investigating, working on, writing, publishing, and disseminating the referenced article. *See also* ECF 60, Pl.'s Mot. to Compel, at 7. Plaintiff also

3

includes "login information" in their definition of Platform account data, but Defendants object to this as not relevant and disproportionate to the needs of the case since it seeks sensitive username and password information. Defendants further object to this Request because it seeks Platform account data that is already within X's possession and is therefore more convenient, less burdensome, and less expensive for X to access outside of discovery.

**RESPONSE**: The Parties are still discussing the extent to which some or all of the Platform account data is in the custody, possession, and control of X and more easily accessible by X. Once the Parties have resolved that question, Defendants will provide Plaintiff with the relevant account handles.

Defendants will otherwise produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 3**:  All documents and communications related to the November 16, 2023 Article, including but not limited to internal communications, communications with the public (including social media posts), communications with donors, communications with journalists, and communications with the advertisers mentioned in the November 16, 2023 Article.

**OBJECTION**: Defendants object to the disclosure of donor identification information as harassing. Disclosure of donor identifying information can lead to donors being harassed for and

deterred from affiliating with organizations they support.[2]   Indeed, Elon Musk himself has called

Media Matters "an evil propaganda machine that can go to hell" and vowed that X "will pursue

not just the organization but anyone funding that organization. I want to be clear about that anyone

funding that organization, will be, we will pursue them".[3] Plaintiff's request for this information

is inappropriate and not proportional to the needs of this case.

**RESPONSE**: Based on this objection, Defendants will not produce identifying donor

information in response to this request. Defendants will otherwise produce on a rolling basis any

responsive, nonprivileged documents in their possession, custody, or control that they are able to

locate following a reasonable search. Defendants are in the process of collecting and reviewing

documents and are not presently withholding any responsive documents that they have identified.

Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 4**:   All audio and video recordings of You discussing or

referencing in any way the November 16, 2023 Article, including but not limited to documents

---

[2] *See, e.g.*, *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 616–17 (2021) ("The petitioners here, for example, introduced evidence that they and their supporters have been subjected to bomb threats, protests, stalking, and physical violence. App. in No. 19–251, at 256, 291–292. Such risks are heightened in the 21st century and seem to grow with each passing year, as 'anyone with access to a computer [can] compile a wealth of information about' anyone else, including such sensitive details as a person's home address or the school attended by his children") (internal citation omitted); *see also Koch Ally Says He Received Death Threats*, Matt Reynolds, Courthouse News (Feb.25, 2016) (libertarian businessman whose affiliation with the Americans for Prosperity Foundation was leaked said "he received death threats and had considered quitting the foundation because he was worried about his family's safety and the adverse effect of protests outside his North Carolina stores") (last accessed May 28, 2024).

[3] *@TheChiefNerd*, X.com (Dec. 10, 2023, 4:24 PM), [https://perma.cc/6L3M-SHX3] (last accessed May 28, 2024).

5

reflecting any URLs for any such recordings of You that are in the possession, custody, or control of third parties.

**OBJECTIONS**: Defendants object to this Request because it purports to seek materials "in the possession, custody, or control of third parties" and therefore falls outside the scope of Fed. R. Civ. P. 26 and 34.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents. Defendants will not search for or produce any documents that are in the possession, custody, or control of third parties.

**REQUEST FOR PRODUCTION NO. 5**:  All documents and communications discussing or mentioning X, the Platform, Elon Musk, or Linda Yaccarino, including but not limited to email updates, "Action Updates," or "Weekly Updates," that were sent out via any email, text, phone, social media, or other distribution list that You maintain.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

6

**REQUEST FOR PRODUCTION NO. 6**: All documents and communications concerning content moderation on the Platform.

     **RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 7**: All documents and communications concerning advertising on the Platform, including but not limited to documents and communications concerning any particular advertiser or potential advertiser on the Platform.

     **OBJECTION**: The Request does not define "advertiser," but Defendants interpret the term to mean all X advertisers listed in Plaintiff's amended complaint. To the extent Plaintiff means something different, Defendants object to this Request as vague because Defendants do not know the identity of all the entities that have advertised on X, much less all entities that X may view as a "potential advertiser".

     **RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Based on the objection above, Defendants will not search for or produce any documents concerning advertisers not listed in X's amended complaint. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

7

**REQUEST FOR PRODUCTION NO. 8**:   All communications with X's advertisers concerning the Platform, including but not limited to communications regarding their decision to advertise on the Platform.

      **OBJECTION**: The Request does not define "X's advertisers," but Defendants interpret the term to mean all X advertisers listed in Plaintiff's amended complaint**.** To the extent Plaintiff means something different, Defendants object to this Request as vague because Defendants do not know the identity of all of X's advertisers.

      **RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Based on the objection above, Defendants will not search for or produce any documents concerning advertisers not listed in X's amended complaint. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 9**:   All communications with X's advertisers about advertising with or financially supporting You.

      **OBJECTION**: The Request does not define "X's advertisers," but Defendants interpret the term to mean all advertisers listed in X's amended complaint**.** To the extent Plaintiff means something different, Defendants object to this Request as vague because Defendants do not know the identity of all of X's advertisers.

8

**RESPONSE**: Neither Media Matters nor Eric Hananoki has any documents responsive to this request for the advertisers listed in X's amended complaint.

**REQUEST FOR PRODUCTION NO. 10**: All posts, comments, direct messages, and any other account data of any kind whatsoever posted by You on the Platform, including but not limited to the @mmfa and @ehananoki accounts and any accounts used in the creation of the November 16, 2023 Article.

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires a blanket production of "[a]ll posts, comments, direct messages, and any other account data of any kind whatsoever" of various accounts, even where the information it seeks is immaterial or unrelated to any of Plaintiff's tort claims, to any computation of damages, or to any of Defendants' defenses. Defendants further object to this Request because it seeks data that is already within X's possession and is therefore more convenient, less burdensome, and less expensive for X to access outside of discovery.

**RESPONSE**: The Parties are still discussing the extent to which some or all of the Platform account data is in the custody, possession, and control of X and more easily accessible by X. Once the Parties have resolved that question, Defendants will provide Plaintiff with account handles related to the claims and issues in this case and otherwise produce on a rolling basis any responsive, nonprivileged materials related to the claims and issues in this case that are in their possession, custody, or control and that they are able to locate following a reasonable search.

9

**REQUEST FOR PRODUCTION NO. 11**: All communications with appointed or elected public officials, candidates for public office, candidate campaign committees, political party committees, PACs, 501(c)(4) groups, and any other political actors or political operatives.

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires a blanket production of "[a]ll communications" with an unquantifiable number of potential individuals and entities on unspecified topics, even where these are immaterial and unrelated to any of Plaintiff's tort claims, to any computation of damages, or to any of Defendants' defenses. Indeed, there are over 500,000 public officials in the U.S.,[4] not counting individuals not currently in office or candidates; over 70,000 registered 501(c)(4)s[5]; and over 8,500 PACs.[6]

**RESPONSE**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time. Pursuant to X's representations at the May 27, 2024 meet-and-confer, Defendants await a revised request that is tailored to the claims and defenses at issue in this case.

---

[4]  *How many politicians are there in the USA? (Infographic),* PoliEngine, https://poliengine.com/blog/how-many-politicians-are-there-in-the-us (last accessed May 27, 2024).

[5]  *How many nonprofits are there in the US?*, USA Facts (Nov. 2024), shttps://usafacts.org/articles/how-many-nonprofits-are-there-in-the-us/ (last accessed May 27, 2024).

[6]  *Committees*, Federal Election Commission, https://www.fec.gov/data/committees/?committee_type=O (last accessed May 27, 2024); *see also Committees*, Federal Election Commission, https://www.fec.gov/data/committees/?committee_type=V&committee_type=W (last accessed May 27, 2024).

Supp. App'x 036

**REQUEST FOR PRODUCTION NO. 12**: All IRS Form 990s for Media Matters, regardless of time period, since the founding of Media Matters.

      **RESPONSE**: Defendants have produced and will continue to produce on a rolling basis Media Matters's Form 990 tax returns.

**REQUEST FOR PRODUCTION NO. 13**: All annual financial statements for Media Matters, regardless of time period, since the founding of Media Matters.

      **OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires a blanket production of "[a]ll annual financial statements for Media Matters" since the organization's founding twenty years ago, with no indication of why this information would be material or related to the claims or defenses at issue in this case. Indeed, the Platform was not founded until 2006, two years *after* Media Matters was founded. While federal courts allow plaintiffs bringing punitive damages to engage in pretrial discovery of financial information, *Briones v. Smith Dairy Queens, Ltd.*, No. 08-48, 2008 WL 4630485, at *5 (S.D. Tex. Oct. 16, 2008), this does not provide plaintiff "*carte blanche* to obtain all information [it] seeks," *Barback v. Fisher*, No. CV 20-515-SDD-EWD, 2022 WL 965914, at *8 (M.D. La. Mar. 30, 2022). Indeed, courts allowing the discovery of financial information for punitive damages generally limit the temporal scope of those documents. *See, e.g.*, *Callais v. United Rentals North America*, No. 17-312, 2018 WL 6517446, at *6 (M.D. La. Dec. 11, 2018) (compelling production of annual reports, financial statements, and federal income tax returns for a three-year period); *Briones*, 2008 WL

11

4630485, at *5 (limiting the plaintiff's discovery of the defendant's financial information to 2007 and 2008, where an alleged discriminatory act took place in 2007 and the discovery was requested in 2008). A time period that would not produce relevant documents to the issue at hand is not reasonable and may be overly broad. *See, e.g.*, *Barback v. Fisher*, No. CV 20-515-SDD-EWD, 2022 WL 965914, at *9 (M.D. La. Mar. 30, 2022). Moreover, Defendants object to this request as duplicative of Request for Production No. 12, as Media Matters's 990 forms contain comprehensive information on Media Matter's annual finances. *See, e.g.*, *Vertex Aerospace, LLC v. Womble Bond Dickinson*, LLP, No. 309CV00704HTWLGI, 2022 WL 1830715, at *11 (S.D. Miss. Apr. 26, 2022) (holding request into assets and liabilities were disproportionate to the needs of the case, given the company's insurance coverage and its ability to provide a certified statement of its net worth).

**RESPONSE**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time. Defendants direct Plaintiff to Media Matters's 990 forms, most of which have already been produced to Plaintiff. Any remaining 990 forms will also be produced. These forms provide a comprehensive financial picture of Media Matters, including its net worth.

**REQUEST FOR PRODUCTION NO. 14**: All Your bank statements and all documents sufficient to show Your financial condition during the time period.

**OBJECTIONS**: Defendants object to this Request as being overly broad, vague, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires a blanket production of "[a]ll bank statements and all documents

12

sufficient to show [Defendants'] financial condition," with no indication of why this information—

including personal financial information of an individual reporter—would be material or related

to the claims or defenses at issue in this case. While federal courts allow plaintiffs bringing punitive

damages to engage in pretrial discovery of financial information, *Briones v. Smith Dairy Queens,*

*Ltd.*, No. 08-48, 2008 WL 4630485, at *5 (S.D. Tex. Oct. 16, 2008), this does not provide plaintiff

"*carte blanche* to obtain all information [it] seeks," *Barback v. Fisher*, No. CV 20-515-SDD-EWD,

2022 WL 965914, at *8 (M.D. La. Mar. 30, 2022). *See, e.g.*, *Briones*, 2008 WL 4630485, at *7

(limiting discovery of relevant financial information to defendant's annual reports and/or financial

statements); *see also Smith v. DeTar Hosp. LLC*, No. CIV.A. V-10-83, 2011 WL 6217497, at *8

(S.D. Tex. Dec. 14, 2011) (limiting financial disclosures to defendant's most recent financial

statement stating their current net worth and finding that all other discovery requests relating to

net worth—including itemization of assets and liabilities, description of homes, real estate, and

other possessions, salary, total earnings, W-2s and other documents, and financial statements over

several years—were overly burdensome, excessive, and unnecessary); *Tingle v. Hebert*, No. CV

15-626-JWD-EWD, 2017 WL 2335646, at *7 (M.D. La. May 30, 2017) (finding a request for

"'any and all documents' regarding virtually everything [defendant] owns" was "unreasonably

burdensome"); *Regions Ins., Inc. v. Alliant Ins. Servs., Inc.*, No. 3:13-CV-667-HTW-LRA, 2015

WL 1886852, at *7 (S.D. Miss. Apr. 24, 2015) (holding defendant was only required to provide a

current net worth statement, certified by independent auditors, with any supporting documentation

that the auditors include with its statement); *Hunter v. Copeland*, No. CIV.A. 03-2584, 2004 WL

1562832, at *5 (E.D. La. July 12, 2004) (finding a request for "statements for all credit cards used

by [an employee]" overly broad because it exceeded the limited subject matter of the litigation).

13

**RESPONSE**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time. Defendants direct Plaintiff to Media Matters's 990 forms, most of which have already been produced to Plaintiff. Any remaining 990 forms will also be produced. These forms provide a comprehensive financial picture of Media Matters, including its net worth.

**REQUEST FOR PRODUCTION NO. 15**: All materials regarding Your insurers, insurance policies, indemnity rights, or any other third-party payors who may be liable or willing to satisfy any judgment, liability, or obligation of any kind whatsoever that You may currently owe, that You may owe in the future, or that You have owed during the time period, including but not limited to any monetary judgment in this matter.

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires a blanket production of "[a]ll materials regarding Your insurers, insurance policies, indemnity rights, or any other third-party payors who may be liable or willing to satisfy any judgment, liability, or obligation *of any kind whatsoever*," even where the information would be immaterial or unrelated to any of Plaintiff's tort claims, to any computation of damages, or to any of Defendants' defenses such as employee medical and dental insurance policies.

**RESPONSE**: Defendants direct Plaintiff to Section IV of Defendants' Initial Disclosures, served to counsel on March 8, 2024 via email, Defendants' Amended Initial Disclosures, served to counsel on May 8, 2024, and any subsequent revisions to Defendants' Initial Disclosures, which, pursuant to Federal Rule of Civil Procedure 26 (a)(1)(A)(iv), lists "any insurance agreement under

14

which an insurance business may be liable to satisfy all or part of a possible judgment in th[is] action or to indemnify or reimburse for payments made to satisfy the judgment [in this litigation]." Defendants will produce any responsive, non-privileged documents related to the issues in this litigation. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 16**: Documents sufficient to show Your expenses and the identity of the recipients of such expenditures, including but not limited to expenses on salaries, travel, equipment, real property, solicitation of donations, and any other expenses whatsoever.

**OBJECTIONS**: Defendants object to this Request as being overly broad, vague, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires producing a high-volume of sensitive financial information— including a limitless amount of unrestricted "expenses"—that are immaterial or unrelated to any of Plaintiff's tort claims, to any computation of damages, or to any of Defendants' defenses. While federal courts allow plaintiffs bringing punitive damages to engage in pretrial discovery of financial information, *Briones v. Smith Dairy Queens, Ltd.*, No. 08-48, 2008 WL 4630485, at *5 (S.D. Tex. Oct. 16, 2008), this does not provide plaintiff "*carte blanche* to obtain all information [it] seeks," *Barback v. Fisher*, No. CV 20-515-SDD-EWD, 2022 WL 965914, at *8 (M.D. La. Mar. 30, 2022). *See, e.g.*, *Briones*, 2008 WL 4630485, at *7 (limiting discovery of relevant financial information to defendant's annual reports and/or financial statements); *see also Smith v. DeTar Hosp. LLC*, No. CIV.A. V-10-83, 2011 WL 6217497, at *8 (S.D. Tex. Dec. 14, 2011) (limiting

15

financial disclosures to defendant's most recent financial statement stating their current net worth and finding that all other discovery requests relating to net worth—including itemization of assets and liabilities, description of homes, real estate, and other possessions, salary, total earnings, W-2s and other documents, and financial statements over several years—were overly burdensome, excessive, and unnecessary); *Tingle v. Hebert*, No. CV 15-626-JWD-EWD, 2017 WL 2335646, at *7 (M.D. La. May 30, 2017) (finding a request for "'any and all documents' regarding virtually everything [defendant] owns" was "unreasonably burdensome"); *Regions Ins., Inc. v. Alliant Ins. Servs., Inc.*, No. 3:13-CV-667-HTW-LRA, 2015 WL 1886852, at *7 (S.D. Miss. Apr. 24, 2015) (holding defendant was only required to provide a current net worth statement, certified by independent auditors, with any supporting documentation that the auditors include with its statement); *Hunter v. Copeland*, No. CIV.A. 03-2584, 2004 WL 1562832, at *5 (E.D. La. July 12, 2004) (finding a request for "statements for all credit cards used by [an employee]" overly broad because it exceeded the limited subject matter of the litigation); *Hunter v. Copeland*, No. CIV.A. 03-2584, 2004 WL 1562832, at *5 (E.D. La. July 12, 2004) (finding a request for "documents evidencing transfers of money" to an employee, which largely included salary payments, to be overly broad).

**RESPONSE**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time. Defendants direct Plaintiff to Media Matters's 990 forms, most of which have already been produced to Plaintiff. Any remaining 990 forms will also be produced. These forms provide a comprehensive financial picture of Media Matters, including its net worth.

**REQUEST FOR PRODUCTION NO. 17**: Documents sufficient to show the identity of all Your donors or any others who provide financial support of any kind, their residence, the time and place of their donation or provision of financial support, and the amount of their donations or other financial support.

OBJECTIONS: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request seeks a high-volume of sensitive financial information "of any kind" that is immaterial or unrelated to any of Plaintiff's tort claims, to any computation of damages, or to any of Defendants' defenses. *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 507–08, 67 S. Ct. 385, 392, 91 L. Ed. 451 (1947) ("[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries. As indicated by Rules 30(b) and (d) and 31(d), limitations inevitably arise when it can be shown that the examination is being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry. And as Rule 26(b) provides, further limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege."). Moreover, disclosure of donor identifying information can lead to donors being harassed for and deterred from affiliating with organizations they support.[7]

---

[7] *See, e.g.*, *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 616–17 (2021) ("The petitioners here, for example, introduced evidence that they and their supporters have been subjected to bomb threats, protests, stalking, and physical violence. App. in No. 19–251, at 256, 291–292. Such risks are heightened in the 21st century and seem to grow with each passing year,

17

Indeed, Elon Musk himself has called Media Matters "an evil propaganda machine that can go to hell" and vowed that X "will pursue not just the organization but anyone funding that organization. I want to be clear about that anyone funding that organization, will be, we will pursue them".[8] Plaintiff's request for this information is inappropriate and not proportional to the needs of this case.

      **RESPONSE**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time. Defendants direct Plaintiff to Media Matters's 990 forms, most of which have already been produced to Plaintiff. Any remaining 990 forms will also be produced. These forms provide a comprehensive financial picture of Media Matters, including its net worth.

**REQUEST FOR PRODUCTION NO. 18**: Any document or communication reflecting Your attempts to solicit donations or financial support of any kind, including but not limited to any discussions with any donors or any others who provided, considered providing, or were asked to provide financial support of any kind.

---

as 'anyone with access to a computer [can] compile a wealth of information about' anyone else, including such sensitive details as a person's home address or the school attended by his children") (internal citation omitted); *see also Koch Ally Says He Received Death Threats*, Matt Reynolds, Courthouse News (Feb.25, 2016) (libertarian businessman whose affiliation with the Americans for Prosperity Foundation was leaked said "he received death threats and had considered quitting the foundation because he was worried about his family's safety and the adverse effect of protests outside his North Carolina stores") (last accessed May 28, 2024).

[8]*@TheChiefNerd*, X.com (Dec. 10, 2023, 4:24 PM), [https://perma.cc/6L3M-SHX3] (last accessed May 28, 2024).

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request seeks information about any communications soliciting financial support "of any kind" that is immaterial or unrelated to any of Plaintiff's tort claims, to any computation of damages, or to any of Defendants' defenses. *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 507–08, 67 S. Ct. 385, 392, 91 L. Ed. 451 (1947) ("[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries. As indicated by Rules 30(b) and (d) and 31(d), limitations inevitably arise when it can be shown that the examination is being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry. And as Rule 26(b) provides, further limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege."). Moreover, disclosure of donor identifying information can lead to donors being harassed for and deterred from affiliating with organizations they support.[9] Indeed, Elon Musk himself has called Media Matters "an evil propaganda machine that can go to hell" and vowed that X "will pursue not just the organization but anyone funding

---

[9] *See, e.g.*, *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 616–17 (2021) ("The petitioners here, for example, introduced evidence that they and their supporters have been subjected to bomb threats, protests, stalking, and physical violence. App. in No. 19–251, at 256, 291–292. Such risks are heightened in the 21st century and seem to grow with each passing year, as 'anyone with access to a computer [can] compile a wealth of information about' anyone else, including such sensitive details as a person's home address or the school attended by his children") (internal citation omitted); *see also Koch Ally Says He Received Death Threats*, Matt Reynolds, Courthouse News (Feb.25, 2016) (libertarian businessman whose affiliation with the Americans for Prosperity Foundation was leaked said "he received death threats and had considered quitting the foundation because he was worried about his family's safety and the adverse effect of protests outside his North Carolina stores") (last accessed May 28, 2024).

19

that organization. I want to be clear about that anyone funding that organization, will be, we will pursue them."[10] Plaintiff's request for this information is inappropriate and not proportional to the needs of this case.

      **RESPONSE**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time.

      **REQUEST FOR PRODUCTION NO. 19**: Documents sufficient to identify the recipients of any communications or email updates, "Action Updates," or "Weekly Updates" sent out via any email list that You maintain, as well as any information related to those recipients' locations, including but not limited to any self-reported location data and their IP addresses.

      **OBJECTION**: Defendants object to this Request as being overly broad, not reasonably particularized, harassing, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. The identities of individuals who subscribe to Defendants' email lists are not relevant to any claims or defenses in this case, and their disclosure is reasonably likely to subject recipients to harassment. *See NAACP v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 462 (1958) (recognizing disclosure of nonprofit organization's membership lists would likely result in harassment).

      **RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search for documents that identify the location of recipients of any communications or

---

[10]*@TheChiefNerd*, X.com (Dec. 10, 2023, 4:24 PM), [https://perma.cc/6L3M-SHX3] (last accessed May 28, 2024).

email updates, "Action Updates," or "Weekly Updates" sent by Defendants via any email list. Defendants will not provide documents that disclose identifying information of individual recipients.

**REQUEST FOR PRODUCTION NO. 20**: Documents sufficient to show Media Matters' organizational structure, including Board membership, leadership structure, and that of any affiliated or related entities.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 21**: All documents and communications regarding Your sources of funding for research, investigation, reporting, publication, or any other work related to X, the Platform, Elon Musk, or Linda Yaccarino.

**OBJECTIONS**: Defendants object to this Request as harassing. *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 507–08, 67 S. Ct. 385, 392, 91 L. Ed. 451 (1947) ("[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries. As indicated by Rules 30(b) and (d) and 31(d), limitations inevitably arise when it can be shown that the examination is being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry. And as Rule 26(b) provides, further limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege."). Disclosure

21

of donor identifying information can lead to donors being harassed for and deterred from affiliating with organizations they support.[11]  Indeed, Elon Musk himself has called Media Matters "an evil propaganda machine that can go to hell" and vowed that X "will pursue not just the organization but anyone funding that organization. I want to be clear about that anyone funding that organization, will be, we will pursue them".[12]  Plaintiff's request for this information is inappropriate and not proportional to the needs of this case.

      **RESPONSE**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time. In any event, Media Matters does not receive any dedicated funding that is restricted for research, investigation, reporting, publication, or any other work related to X, the Platform, Elon Musk, or Linda Yaccarino.

**REQUEST FOR PRODUCTION NO. 22**: All documents concerning, and communications with, any third-party public relations, advertising, marketing, communications, or similar firm that

---

[11] *See, e.g.*, *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 616–17 (2021) ("The petitioners here, for example, introduced evidence that they and their supporters have been subjected to bomb threats, protests, stalking, and physical violence. App. in No. 19–251, at 256, 291–292. Such risks are heightened in the 21st century and seem to grow with each passing year, as 'anyone with access to a computer [can] compile a wealth of information about' anyone else, including such sensitive details as a person's home address or the school attended by his children") (internal citation omitted); *see also Koch Ally Says He Received Death Threats*, Matt Reynolds, Courthouse News (Feb.25, 2016) (libertarian businessman whose affiliation with the Americans for Prosperity Foundation was leaked said "he received death threats and had considered quitting the foundation because he was worried about his family's safety and the adverse effect of protests outside his North Carolina stores") (last accessed May 28, 2024).

[12] *@TheChiefNerd*, X.com (Dec. 10, 2023, 4:24 PM), [https://perma.cc/6L3M-SHX3] (last accessed May 28, 2024).

22

You have contracted with, or that you have contacted in any capacity about the November 16, 2023 Article.

 **RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

 **REQUEST FOR PRODUCTION NO. 23**: All documents and communications related to or reflecting any travel by Eric Hananoki from October 20, 2023, to December 15, 2023.

 **OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, and as seeking documents not relevant to any claim or defense asserted in this litigation. This Request impermissibly requires blanket production of "[a]ll documents and communications related to or reflecting *any* travel" by Mr. Hananoki during the specified time period, even where not reasonably related to the issues in dispute in this case or the parties' defenses. This request also is harassing to Mr. Hananoki, as he is being asked to search through and disclose any and all documents—including flights, hotels, meal receipts, texts, calls, photographs, and more—related to any travel, including personal travel with his family that has no relevance to the claims or defenses being litigated in this case and despite Defendants' assurances that Mr. Hananoki did not conduct any work-related travel during the time period. Indeed, Defendants understand from the Parties' meet-and-confers that Plaintiff seeks to account for Mr. Hananoki's whereabouts and activities during this time period without qualification. Moreover, Defendants further object to this Request as

23

duplicative of and/or cumulative of other document requests, including Document Requests Nos. 1, 2, 3, 4, 5, 6, 7, 9, 10, 14, 15, 16,17, 18, 19, 20, 21, 22, 24, 25, 28, 30, 31, 32, 33, 34, 36, 37 38, 39, 40, 41, 42, 43, 44, 45, 46, and 47. Any relevant information Plaintiff seeks with this request, beyond what Defendants have already certified, are captured by X's many other broad requests.

**RESPONSE**: Defendants do not possess any responsive documents relevant to any claim or defense in this litigation because, as Defendants made clear to Plaintiff in their email of May 2, 2024, Mr. Hananoki did not conduct any travel from October 20, 2023, to December 15, 2023 undertaken in relation to his research or drafting of the November 16, 2023 article. In addition, he did not travel to Texas in any capacity during this time.

**REQUEST FOR PRODUCTION NO. 24**: All of Your calendars, journals, schedules, activity logs, visitors' logs, diaries, or appointments from October 20, 2023, to December 15, 2023.

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request impermissibly requires blanket production of "[a]ll calendars, journals, schedules, activity logs, visitors' logs, diaries, or appointments" during the specified time period, even where not reasonably related to the issues in dispute in this case. This request is also harassing because it is asking Defendants to essentially account for all of their activities and appointments, including personal activities and appointments, without qualification.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents related to any of X's employees, policies, or advertisers listed in the amended complaint or the issues raised in the amended complaint that are in their possession, custody, or control and

24

that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 25**: All documents and communications related to or reflecting Your involvement in or knowledge of X and any related entities, individuals, and platforms.

**OBJECTIONS**: The terms "any related entities, individuals, and platforms" are vague and undefined. Defendants will accordingly interpret "related entities" to include X Holdings Corp., X's holding company. Defendants will interpret "related individuals" to mean former and current X or Twitter employees, executives, and board members. Defendants will interpret "related platforms" to include Twitter. To the extent Plaintiff means something else with any of these terms, Defendants object to the request as vague absent identification from Plaintiff of who and what it considers to be "related entities, individuals, and platforms."

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control, based on their understanding of the relevant terms, that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

25

**REQUEST FOR PRODUCTION NO. 26**: All documents and communications related to or reflecting Media Matters' Board's involvement in or knowledge of X and any related entities, individuals, and platforms.

**OBJECTIONS**: The terms "any related entities, individuals, and platforms" are vague and undefined. Defendants will accordingly interpret "related entities" to include X Holdings Corp., X's holding company. Defendants will interpret "related individuals" to mean former and current X or Twitter employees, executives, and board members. Defendants will interpret "related platforms" to include Twitter. To the extent Plaintiff means something else with any of these terms, Defendants object to the request as vague absent identification from Plaintiff of who and what it considers to be "related entities, individuals, and platforms." Defendants also object to this request because it seeks materials outside of Defendants' possession, custody, or control in violation of Fed. R. Civ. P. 26 and 34.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control, based on their understanding of the relevant terms, that they are able to locate following a reasonable search and in light of Defendants interpretation of the terms. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 27**: All documents and communications related to or reflecting Media Matters' donors' involvement in or knowledge of X and any related entities, individuals, and platforms.

**OBJECTIONS**: The terms "any related entities, individuals, and platforms" are vague and undefined. Defendants will accordingly interpret "related entities" to include X Holdings Corp., X's holding company. Defendants will interpret "related individuals" to mean former and current X or Twitter employees, executives, and board members. Defendants will interpret "related platforms" to include Twitter. To the extent Plaintiff means something else with any of these terms, Defendants object to the request as vague absent identification from Plaintiff of who and what it considers to be "related entities, individuals, and platforms." Defendants also object to this request because it seeks materials outside of Defendants' possession, custody, or control in violation of Fed. R. Civ. P. 26 and 34(a). Defendants further object to the disclosure of donor identification information as harassing. Disclosure of donor identifying information can lead to donors being harassed for and deterred from affiliating with organizations they support.[13]  Indeed, Elon Musk himself has called Media Matters "an evil propaganda machine that can go to hell" and vowed that X "will pursue not just the organization but anyone funding that organization. I want to be clear

---

[13] *See, e.g.*, *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 616–17 (2021) ("The petitioners here, for example, introduced evidence that they and their supporters have been subjected to bomb threats, protests, stalking, and physical violence. App. in No. 19–251, at 256, 291–292. Such risks are heightened in the 21st century and seem to grow with each passing year, as 'anyone with access to a computer [can] compile a wealth of information about' anyone else, including such sensitive details as a person's home address or the school attended by his children") (internal citation omitted); *see also Koch Ally Says He Received Death Threats*, Matt Reynolds, Courthouse News (Feb.25, 2016) (libertarian businessman whose affiliation with the Americans for Prosperity Foundation was leaked said "he received death threats and had considered quitting the foundation because he was worried about his family's safety and the adverse effect of protests outside his North Carolina stores") (last accessed May 28, 2024).

Supp. App'x 053

about that anyone funding that organization, will be, we will pursue them".[14] Plaintiff's request for this information is inappropriate and not proportional to the needs of this case.

      **RESPONSE**: Defendants will produce on a rolling basis, any responsive, nonprivileged documents in their possession, custody, or control, based on their understanding of the relevant terms, that they are able to locate following a reasonable search. Defendants will not search for or produce materials outside of Defendants' possession, custody, or control, nor will Defendants produce identifying donor information in response to this request. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

      **REQUEST FOR PRODUCTION NO. 28**: All documents and communications related to or reflecting Media Matters' employees' involvement in or knowledge of X and any related entities, individuals, and platforms.

      **OBJECTIONS**: The terms "any related entities, individuals, and platforms" are vague and undefined. Defendants will accordingly interpret "related entities" to include X Holdings Corp., X's holding company. Defendants will interpret "related individuals" to mean former and current X or Twitter employees, executives, and board members. Defendants will interpret "related platforms" to include Twitter. To the extent Plaintiff means something else with any of these terms, Defendants object to the request as vague absent identification from Plaintiff of who and what it

---

[14]*@TheChiefNerd*, X.com (Dec. 10, 2023, 4:24 PM), [https://perma.cc/6L3M-SHX3] (last accessed May 28, 2024).

considers to be "related entities, individuals, and platforms." Defendants also object to this request because it seeks materials outside of Defendants' possession, custody, or control in violation of Fed. R. Civ. P. 26 and 34(a).

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control, based on their understanding of the relevant terms, that they are able to locate following a reasonable search through the relevant custodians' files. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 29**: All documents and communications related to or reflecting Media Matters' advertisers' and agencies' involvement in or knowledge of X and any related entities, individuals, and platforms.

**OBJECTIONS**: The terms "any related entities, individuals, and platforms" are vague and undefined. Defendants will accordingly interpret "related entities" to include X Holdings Corp., X's holding company. Defendants will interpret "related individuals" to mean former and current X or Twitter employees, executives, and board members. Defendants will interpret "related platforms" to include Twitter. To the extent Plaintiff means something else with any of these terms, Defendants object to the request as vague absent identification from Plaintiff of who and what it considers to be "related entities, individuals, and platforms." Defendants also object to this request because it seeks materials outside of Defendants' possession, custody, or control in violation of Fed. R. Civ. P. 26 and 34(a).

29

**RESPONSE**: Defendants do not possess any documents that are responsive to this Request because Media Matters does not have any advertisers or agencies.

**GIBSON, DUNN & CRUTCHER LLP**
Andrew LeGrand (TX 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.* (CA 132099)
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed* (NY 4382040)
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

**ELIAS LAW GROUP LLP**
Abha Khanna* (WA 42612) 1700
Seventh Avenue, Suite 2100
Seattle,  WA 98101
T:  (206)  656-0177
F:  (206)  656-0180
akhanna@elias.law

Jacob D. Shelly* (DC 90010127)
Daniela Lorenzo* (NY 5780457)  250
Massachusetts Ave, NW Suite 400
Washington, D.C. 20001
T: (202) 968-4490
F: (202) 986-4498
jshelly@elias.law
dlorenzo@elias.law
* Admitted *pro hac vice*

*Counsel for Defendants Media Matters for America and Eric Hananoki*

30

# Tab 5

| | |
|---|---|
| **From:** | Alex Dvorscak |
| **To:** | Abha Khanna; Daniela Lorenzo; Jacob Shelly; LeGrand, Andrew; Ahmed, Amer S. |
| **Cc:** | Boutrous Jr., Theodore J.; Elena Rodriguez Armenta; Champion, Anne; Omeed Alerasool; Chris Dodge; Aria Branch; Samuel Ward-Packard; Mindy Johnson; Chris Hilton; Cody Coll; Tom Albright; Ari Cuenin; Judd E. Stone, II; john.sullivan@the-sl-lawfirm.com; Bonnie Chester; Michael Abrams; Alithea Sullivan |
| **Subject:** | RE: X/MMFA - Defendants' Fifth Production |
| **Date:** | Friday, August 9, 2024 1:22:47 PM |

Hi Abha,

We are currently in the process of reviewing your most recent production and amended privilege log to see if it addressed the concerns we raised on our call. We will respond more substantively to your proposal next week.

Best,
-Alex Dvorscak
STONE | HILTON PLLC
alex@stonehilton.com | (518) 772-8657

---

**From:** Abha Khanna <akhanna@elias.law>
**Sent:** Friday, August 2, 2024 6:51 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Alex and Chris,

Thank you again for meeting with us today for a productive conversation on resolving outstanding discovery issues. As promised, attached is our amended privilege log and below is both a summary of what we discussed during our call and Defendants' proposal for how the parties can move forward with the discovery Plaintiff seeks.

The parties discussed three issues Plaintiff identified as potential discovery disputes that would form the basis of Plaintiff's motion to compel:

1. Whether Defendants should be required to turn over donor-related information.
   a. The parties agreed this dispute is ripe for Court intervention and Plaintiff plans to move to compel these documents on or after Monday of next week.

2. Defendants' document-by-document privilege assertions on their first privilege log.
   a. Defendants' amended privilege log seeks to assuage the various log-related concerns Plaintiff raised during the parties' last meet-and-confer.
   b. To the extent Plaintiff has further concerns regarding the amended log or documents identified therein, the Parties will confer (we will make ourselves available for such a conversation early next week).

3. Defendants' objections and responses to subsection (4) of Plaintiff's Interrogatory Nos. 7 and 8.
   a. Defendants clarified that their objection is *not* based on privilege or a refusal to search for and produce "any comments, revisions, feedback, or approval" in relation to the November 16 and 17 articles. Rather, Defendants objected that producing this information in a *written interrogatory* is inefficient and that they will, instead, produce responsive documents.
   b. Defendants also reiterated that they are *not* categorically withholding as privileged or refusing to produce documents related to the November 16 and 17 articles.

Please confirm that these are all the issues Plaintiff contemplated for its above-referenced motion to compel.

Additionally, recognizing that both parties have an interest in ensuring discovery is productive and efficient, Defendants are proposing a modified approach to searching for and producing the documents Plaintiff has requested:

1. The parties will come together to identify the set of document requests that are essential to the maintenance of X's claims, as Alex began to do in his email earlier today.
2. Defendants will then modify their search and review parameters to target these categories of documents.
3. The parties will agree that Defendants will no longer need to review, produce, or log the documents that fall outside of these categories.

We believe this approach is consistent with the legal standard set forth in the Texas Press Shield Law, will significantly streamline discovery moving forward, and will reduce discovery fights and therefore the need to burden the Court. Defendants understand and share Plaintiff's desire for expediency and believe that—while we may need to iron out the details of any proposal to come to a mutually agreeable resolution—the parties are more aligned than we are divided on this issue.

Given our conversation earlier, we remain optimistic about reaching a compromise that serves both parties' interests while respecting the Court's time. We look forward to keeping these lines of communication open and conferring on the above issues in good faith.

Best,
Abha

Abha Khanna
**Elias Law Group LLP**
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177
akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Friday, August 2, 2024 9:38 AM
**To:** Abha Khanna <akhanna@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed

Alerasool <palerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Abha,

The documents central to our disagreements regarding privilege have been obvious to both sides and we have been discussing them for months. However, to facilitate our discussion, we have identified the following categories of documents that have not been produced and over which you may be asserting privilege, but which have not yet appeared on a privilege log. Note that this is an illustrative list, not a complete one.

- Notes, drafts, and sources of the Articles (*see* X's MTC at 14).
- Communications between or among Hananoki, Sharon Kann, Michale Eberhart, Ben Dimiero, Kayla Gogarty, and/or Andrea Austria regarding the Articles (*see* MMFA's responses to ROGs 7 and 8).
- All documents that the Court compelled in its order dated June 6, 2024. This includes "all documents in [Your] possession and control responsive to RFP Nos. 13-16, 23-24, 37-38, and 46." Dkt. 65 at 3.

As we discussed during our last call, we cannot wait months before these documents are produced or logged. Our goal is to only burden the Court with the substantive legal issues of privilege—we hope we can work out the procedural mechanics of discovery together in good faith.

Looking forward to discussing this in more detail on today's call.

Best,
-Alex Dvorscak
Stone | Hilton pllc
alex@stonehilton.com | (518) 772-8657

---

**From:** Alex Dvorscak
**Sent:** Thursday, August 1, 2024 11:18 AM
**To:** Abha Khanna <akhanna@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <palerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Abha,

Friday at 1 ET/12 CT works for us. I'll send around a Zoom link.
We will respond to the additional points raised in your email yesterday so that you know our positions prior to the conference.

Best,
-Alex Dvorscak
Stone | Hilton pllc
alex@stonehilton.com | (518) 772-8657

---

**From:** Abha Khanna <akhanna@elias.law>
**Sent:** Wednesday, July 31, 2024 3:21 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <palerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Alex,

Our team is available Friday at 1 ET/12 CT. We have greater availability on Monday if that time does not work for you.

Best,
Abha


Abha Khanna
Elias Law Group LLP
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177
akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

**From:** Alex Dvorscak <alex@stonehilton.com>

**Sent:** Wednesday, July 31, 2024 9:09 AM
**To:** Abha Khanna <akhanna@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com>; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Hi Abha,

It looks like there's a few issues for us to discuss. Can you please let me know your availability to confer tomorrow afternoon or Friday morning?

Best,
-Alex Dvorscak
STONE | HILTON PLLC
alex@stonehilton.com | (518) 772-8657

---

**From:** Abha Khanna <akhanna@elias.law>
**Sent:** Tuesday, July 30, 2024 3:48 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com>; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Alex,

First, thank you for sending these cases. As you are aware, two of them are out-of-Circuit, all of them are non-controlling district court opinions, and—most importantly—none of them finds waiver where a privilege was noted on a timely privilege log. Accordingly, your cited authority does not support your position. If you have no better authority, then our position is that your proposed motion is frivolous and we are, accordingly, at an impasse regarding any waiver of Texas's press shield law. *Cf.* Fed. R. Civ. P. 11(b), (c).

Second, our initial privilege log fully complied with the protocol that you and your colleagues negotiated. As a courtesy, we have agreed to revisit that protocol to increase clarity for all parties. An amended privilege log will be forthcoming this week.

Third, we are confused by your refrain that Defendants "refuse to log all responsive documents." If you are referring to our refusal to independently *search* for donor-related documents, we agree that the privileged status of donor-related documents is ripe for the Court's resolution. Are you also referring to other categories of documents? If so, please identify them promptly so that we can ascertain the nature of any dispute.

Finally, as I noted in my previous email, it appears the parties have a mutual interest in increasing transparency about the pace of future document productions. To that end, we propose the following interim deadlines:

1. Wednesday, August 7: parties exchange search terms and full custodian lists.
2. Friday, October 11: parties substantially complete document productions in response to requests served to date.
3. Revised privilege log exchange:
   1. Friday, September 6: first mutual exchange [same as in current agreement]
   2. Friday, October 4: second mutual exchange [changed from October 11 under current agreement]
   3. Friday, November 1: third and final mutual exchange [changed from November 15 under current agreement]
   4. This schedule would omit a fourth privilege log in December to allow productions and logs to be complete by the beginning of November.

We welcome Plaintiff's feedback on the above, and we remain available to confer as necessary. While the parties may not be able to reach agreement on all issues, there is no basis for motions practice when parties remain confused—as we do—about the nature of any dispute. *See* LR 7.1(a).

Best,
Abha

Abha Khanna
Elias Law Group LLP
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177
akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Monday, July 29, 2024 8:33 PM
**To:** Abha Khanna <akhanna@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com>; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Hi Abha,

This case has already been substantially delayed; accordingly, X will be filing its second/renewed motion to compel this Friday. However, as stated last week, we are willing to make ourselves available at any time between now and then to confer.

In the interest of making any conferral more productive, I've addressed a few points from your email below:

- *Regarding waiver:* we explained our position during the meet-and-confer. To the extent that what you are now requesting are legal citations, please see the following, non-exhaustive opinions, which collectively support our position:
  - *Janvey v. Alguire*, No. 3:09-cv-00724-N-BQ, 2018 WL 11362638 (N.D. Tex. Oct. 17, 2018)
  - *Eureka Fin. Corp. v. Hartford Acc. & Indem. Co.*, 136 F.R.D. 179 (E.D. Cal. 1991)
  - *Burch v. Regents of the University of Cal.*, No. CIV. S-04-0038 WBS GGH, 2005 WL 6377313 (E.D. Cal. Aug. 30, 2005)
- *Regarding the amended privilege log:* we cannot delay the case to indefinitely wait on an amended log. For example, we did not meet-and-confer last Friday, as you state, but the week prior. We expect that you will serve us an amended privilege log ASAP, otherwise we will not hesitate to add your delay in providing one to our motion to compel.
- *Regarding privilege assertions:* it is insufficient for you to say that you're asserting privilege arguments on a document-by-document basis when you refuse to log all responsive documents and when the Court specifically asked for the parties to "meaningfully concur" on the extent of the First Amendment privileges asserted.
  - If your understandings of your privilege arguments are incorrect, please correct us in writing. If you continue to refuse to confer, we will raise your refusal to clarify the scope of your privilege assertions in our motion.
- *Regarding Defendants' discovery requests:* your email equates apples and oranges. Plaintiff served their requests on February 5, 2024. We have been waiting nearly six months and have received only a few thousand documents out of the terabytes of information you claim to have collected. By contrast, Defendants served their requests in May. We are not the cause of delay here—and have been making productions apace with several thousand pages produced and more on the way.

As stated up front, I am willing to meet-and-confer at any time between now and Friday evening. My hope is always that we can narrow our dispute and limit the need for Court intervention as much as possible, particularly given the parties clear disagreement over certain issues of governing law.

Best,
-Alex Dvorscak
STONE HILTON PLLC
alex@stonehilton.com | (518) 772-8657

---

**From:** Abha Khanna <akhanna@elias.law>
**Sent:** Monday, July 29, 2024 6:23 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Hi Alex,

With regard to the two issues that you believe are ripe for adjudication, we agree that the privileged status of donor information is ready for the court's review, but we disagree that your argument that Defendants have somehow waived the Texas Shield Laws is similarly ripe. Despite repeated requests, we still have not received any legal authority from you suggesting that (i) the preservation of a privilege objection in RFP responses, coupled with (ii) the specific invocation of a privilege on a first privilege log can lead to the extreme result of complete waiver.

We remind you that your first motion to compel was filed before you provided us with your intended legal arguments and citations, and thus needlessly involved the court in matters that could be (and to a large extent, have been) resolved in conferrals. *See, e.g., Dondi Properties Corp. v. Com. Sav. & Loan Ass'n*, 121 F.R.D. 284, 289 (N.D. Tex. 1988). If you have any authority indicating the Defendants waived the Press Shield law despite (1) our assertion of "the First Amendment privilege and reporter's privilege" "as well as any other applicable privilege or shield law" in our RFP responses *and* (2) our document-by-document privilege objections/assertions, please provide it for our review immediately. If you have no such authority, of course a motion would be inappropriate. Moreover, Defendants have already committed to re-serving our June 28 privilege log following the parties' meet and confer last Friday. Raising any log-related issues with the Court before Plaintiff can assess whether it disagrees with Defendants' revised privilege designations is similarly inappropriate.

With regard to your questions about our June 28 privilege log, each of your four assertions is mistaken. The privilege objections we raised in our log *apply to the individual documents that were logged.* Defendants have and will continue to raise objections on a document-by-document basis. Thus, it is possible that some documents falling within the four categories you enumerate will be produced and that other documents within those categories will be withheld or redacted and logged based on the Texas Press Shield laws, the First Amendment, or any other relevant privilege.

Finally, we would like to resolve the confusion you expressed regarding our production and privilege schedule. As we have indicated many times, the search terms merited by your broad discovery requests have pulled in an enormous quantity of documents for review. We are aware that some of these documents will contain drafts of articles, some may contain donor information, and many will be irrelevant to the claims or defenses at issue. Our recognition that draft articles exist, however, was not a representation that we had yet identified and reviewed every needle in the haystack.

It is conspicuous that you fault Defendants for referencing future document productions in their interrogatory responses when Plaintiff, of course, did the exact same thing. *See* X's R&Os to MMFA's 1st and 2nd Interrogatories Nos. 2, 3, 5, and 7. It appears that the parties have a mutual interest in identifying reciprocal expectations about future document productions to ensure that the documents each side regards as essential are produced at a pace sufficient to leave time for deposition preparation and, where necessary, the Court's involvement. We are discussing possible approaches internally and will share our recommendation by early next week.

Defendants continue to remain open to conferring to reach mutually satisfactory resolutions to our differences, but stress that it cannot be a one-way conversation where one party makes concessions and compromises while the other simply repeats its same arguments without legal support. Good-faith efforts at discovery will be a more effective use of everyone's time and resources—including the Court's.

Best,
Abha

Abha Khanna
Elias Law Group LLP

1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177
akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** Alex Dvorscak <adv@stonehilton.com>
**Sent:** Friday, July 26, 2024 6:04 AM
**To:** Abha Khanna <akhanna@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <rodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com>; Bonnie Chester <bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Hi Abha,

Thank you for last Friday's meet-and-confer and your follow-up email. With a few exceptions, it appears we have narrowed the privilege disputes to two issues ripe for adjudication.

First, the parties disagree about whether the Texas "Press Shield Laws" was waived or applies at all. We dispute your mischaracterization of prior meet-and-confers as having discussed Texas "Press Shield Laws" (they have not) and the appropriate level of specificity needed to lodge a proper privilege objection. But this disagreement should not foreclose prompt adjudication of your privilege claim, which presents a purely legal question regarding the scope and applicability of Texas "Press Shield Laws." To diligently follow the Court's amended scheduling order, we intend to file a motion to compel next **Friday, August 2**. We are, of course, willing to confer again if you believe additional conversations will further narrow the parties' disputes.

Second, the parties' dispute about donor information is also ripe for Court resolution. You indicated that Defendants' interrogatory responses would tee up the question of whether Defendants must disclose donor information. We have reviewed your interrogatory responses and agree. Defendants have made clear they will not search for or produce documents regarding donor information—let alone log the documents. X believes Defendants are required to do so, and so intends to compel a complete interrogatory response on **Friday, August 2**. Because the legal issue appears ripe for court resolution, we do not understand further discussion to be required. If you disagree and wish to discuss further, please let us know.

Defendants' position is unclear regarding the drafts of the November 16 and 17 articles and any editing, feedback, or other communications regarding the Articles that Defendant Hananoki received. For months, X's position that it seeks such information was clearly made through requests for production, meet-and-confers, and interrogatories. Now in your email response below you misconstrue our position as seeking "core documents" somehow separate and apart from its as-served RFPs. This characterization is both untrue and unhelpful.

X was surprised by Defendants' privilege log because it contains *none* of these documents. You claim that these documents have not been "identified to date," placing the quoted words in bold text. But that position facially contradicts countless representations made by Defendants. *Defendants* have consistently identified these documents as privileged from the very first meet-and-confer and at every subsequent meet-and-confer thereafter. These conferences have always referred to Hananoki's notes, drafts of the Article, and Donor identification and *Defendants* have always referred to these as documents they consider privileged. Since these are documents that *Defendants* have consistently discussed during meet-and-confers (and represented to the Court) as being privileged, they must have been identified by now. X will not accept a situation where Defendants have placed these documents on the bottom of the production stack such that X will receive these documents—or see them logged—for the first time at the close of discovery.

Although you stated on the call that the interrogatory responses would clarify Defendants' privilege objections regarding these documents and the application of the First Amendment and Texas "Press Shield laws," they do not. Instead, Defendants say that X must wait for "Defendants' forthcoming responses to requests for production for further information about specific feedback Mr. Hananoki received" about the Articles prior to publication. Once again, this contradicts your claim that these documents have not been "identified to date," further reinforcing how Defendants must have identified some documents regarding the "specific feedback" that Defendant Hananoki received.

Making X guess about what will be produced and when does not comport with the Court's instruction that the parties meaningfully confer to clarify the privilege dispute and that required Defendants to alert the Court as to "whether any dispute regarding the assertion of First Amendment privileges remain." ECF No. 65 at 3. Please let us know when Defendants will receive a privilege log listing these documents and the production of documents referenced in Defendants' interrogatory responses. Otherwise, to keep this case moving in compliance with the Court's schedule, we will have no choice but to raise this issue in the motion to compel.

With respect to the items you have identified on your June 28, 2024 privilege log, below is our understanding of Defendants' assertions of privilege. We ask that you advise us by **Wednesday, July 31** if any of these understandings are mistaken so that the parties can cleanly tee up these issues for judicial resolution.

1. Defendants assert that all communications between Defendant Hananoki and any Media Matters editors about the Articles are privileged under Texas "Privilege Shield Laws" but *not* under the First Amendment.

2. Defendants assert that all drafts of the Articles are privileged under Texas "Privilege Shield Laws" but *not* under the First Amendment.

3. Defendants assert that all internal communications about *other* articles published by Media Matters are privileged under the Texas Shield Law but *not* under the First Amendment.

4. Defendants assert that all communications with third parties as part of drafting, researching, or revising articles written by Media Matters is

Supp. App'x 062

privileged under both the Texas Sheild Law and the right of association protected by the First Amendment.

Lastly, we agree to the revised format for privilege logs that you propose below. However, we continue to object to any descriptors of third parties (e.g., "strategic vendor") that are undefined and vague. We expect that any revised descriptions will provide sufficient information for both X and the Court to evaluate each privilege claim.

Best,
-Alex Dvorscak
Stone | Hilton pllc
alex@stonehilton.com | (518) 772-8657

---

**From:** Abha Khanna <akhanna@elias.law>
**Sent:** Wednesday, July 24, 2024 12:34 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com>; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Alex,

Thank you for meeting and conferring on Friday evening. Below is a summary of the key takeaways from our discussion:

*First*, regarding your concerns—expressed for the first time on our call—that Defendants had not included on their privilege log all materials that X considers "core documents," Defendants explained that X's discovery requests do not make any distinction regarding which documents X considers "core" to their case. Instead, X's requests seek every document in Defendants' possession that even *mention* broad terms or concepts (such as "content moderation," RFP No. 6) that are a regular component of Defendants' work. As Defendants have repeatedly explained, this search has swept in an incredible volume of documents for review. That review continues every day.

Defendants' first privilege log identified documents that had been reviewed and determined to be privileged as of the date of that log. The parties have mutually agreed to subsequent privilege log exchanges through the end of the year, recognizing that it will likely take several months to review all potentially responsive documents. This sequencing is consistent with a fair reading of the Court's orders and the parties' own agreements. The Court's June 6 order, as you know, was entered when discovery was set to close on July 29—that is, before the parties jointly sought an extension and thus before the Court recognized "the volume and complexity of ongoing document discovery" and extended the discovery deadline until December 31. *See* ECF No. 69. The parties subsequently negotiated a revised privilege log agreement, and on June 10 we memorialized in an agreement reached by phone on how to proceed. With respect to the June 28 'Deadline for Defendants to Provide First Privilege Log and Associated Documents,' the parties understand that on June 28 Defendants will produce a log **of any privileged documents identified to date**, along with copies of any redacted documents referenced therein, with additional document productions and privilege logs to follow in accordance with the parties' forthcoming Privilege Log Agreement." Then on July 2 we agreed to future privilege log exchanges in September, October, November, and December, and further agreed that this course of conduct did not require the Court's imprimatur. Just as X did not produce all responsive documents in its first (and so far, only) document production, it was not reasonable to expect Defendants to log all privileged documents in their first of several scheduled privilege logs, particularly since the parties had already stipulated that "neither side can reasonably meet the existing discovery deadlines." ECF No. 66 at 3. To the extent X now recognizes that the documents relevant to this case can be found through requests much narrower than those that X has served to date, Defendants welcome revised RFPs to expedite the review and logging of responsive documents.

In response to X's related concern about the lack of donor-related documents on their first privilege log, Defendants explained that this dispute is best presented for the Court's adjudication based on Defendants' responses and objections to X's interrogatories. Because Defendants are not separately searching for donor-related documents (as made clear in our objections and responses), these documents will appear on our privilege log only to the extent the documents are responsive to search terms generated by other requests. No such documents had been established as responsive and privileged as of the date of our first log.

*Second*, regarding your suggestion that Defendants waived any invocation of Texas's press shield law by failing to raise it in earlier discussions, in our July 19 email we pointed you to the shield objection raised in our very first responses and objections, and we further reminded you during our call that the shield law was discussed in the parties' very first discovery meet-and-confer in April. Where X has insisted that Defendants not employ general objections before document review has completed, *see, e.g.*, ECF No. 64 at 3 (X complaining that Defendants' invocation of the shield law in their original responses and objections lacked specificity), it is unreasonable to fault Defendants for raising privilege objections on a document-by-document basis, as contemplated by case law. To date, you have failed to provide us with any authority suggesting that a party waives a privilege by identifying it on their first privilege log.

*Third*, regarding your inquiry into the scope of Texas's press shield law, the parties agreed that the text of the statute speaks for itself. As we explained via email and on our call, the press shield is directly applicable to a media organization like Media Matters and journalists like Mr. Hananoki. During our recent call, we further explained that Defendants' first privilege log invokes the shield law only for documents with no conceivable relevance to this case and that are thus clearly not "essential to the maintenance of a claim or defense." Tex. Civ. Prac. & Rem. Code § 22.024.

*Fourth*, in both our July 19 email and subsequent discussion, Defendants agreed to discuss revisions to the privilege protocol and document descriptions to enhance clarity about the nature of documents being withheld. In response, we have prepared an example of a revised privilege log entry:

| Bates Number | Status | Document Type | From/ Author | To | CC | BCC | Date | Privilege Designation | Document Description |
|---|---|---|---|---|---|---|---|---|---|
| MMFA_013760 | Withheld | Word | Pamela Vogel pvogel@mediamatters.org | | | | 12/5/2022 | First Amendment Privilege; TX Press Shield Laws | Agenda for an internal MMFA meeting regarding strategy for avenues of journalistic research and writing for the year, much of which was ultimately not pursued by the organization. The document summarizes right-wing media trends and includes a few stray references to Musk or Twitter outside the context of Musk's incendiary remarks or Twitter's advertisement placement. **TX Press Shield Law:** This document reflects confidential and sensitive journalistic decision-making processes. **First Amendment Associational** |

| | | | | | | | | **Privilege**: This document contains internal communications concerning strategy and messaging. |
|---|---|---|---|---|---|---|---|---|

If this addresses the concerns that you raised, Defendants will reproduce the entire log with similar changes.

Best regards,


Abha Khanna
Elias Law Group LLP
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177
akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** Abha Khanna
**Sent:** Friday, July 19, 2024 1:20 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production


Alex,

In advance of our call, to facilitate meaningful discussion and a good-faith attempt by both sides to resolve the issues, please find below Defendants' preliminary responses to the concerns you raised:

First, Defendants' Texas Press Shield Law assertions are timely. Contrary to your representations, our original responses and objections to X's First and Second RFP sets *did* reference shield laws—we objected to producing "documents or communications that are protected by the attorney-client privilege, work-product doctrine, **and/or any other applicable privilege or shield law**, and/or constitute trial preparation material within the meaning of Rule 26." (emphasis added); *see also* ECF 64, Pls' Reply in Support of its Motion to Compel at 3 ("As X detailed in its motion, Defendants asserted a catchall objection to X's requests for production for attorney-client privileges, work-product doctrine, "and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26."). Because Defendants were still in the process of collecting and reviewing initial batches of documents, we could not be certain at that time what information would be found in the documents and which privileges would be implicated. You objected to the use of general objections that were not tied to specific documents, and so Defendants removed this language from subsequent amendments to our discovery responses and agreed to log privilege objections on a document-by-document basis. *See, e.g.*, Second Amended Responses and Objections to Plaintiff's 1st Requests for Production; Amended Responses and Objections to Plaintiff's 1st Requests for Production to Carusone; Amended Responses and Objections to Plaintiff's 2nd Requests for Production. Moreover, Defendants continued to raise the possibility that shield law privileges would be implicated and to preserve our right to make the objection if it was implicated. In our joint ESI Protocol, Defendants expressly added privilege preservation language that states: "Nothing in this Stipulation shall be interpreted to require disclosure of relevant information protected by the attorney-client privilege, attorney work-product doctrine, First Amendment Privilege, **reporter's privilege, shield laws, or any other applicable privilege or immunity**." *See* ECF 67 at 2.

Contrary to Plaintiff's shifting argument, Defendants' assertion of this privilege could not have been both *premature* when raised in their initial R&Os and yet also *too late* when raised in their first privilege log. *La Union Del Pueblo Entero v. Abbott*, No. SA-21-CV-00844-XR, 2022 WL 17574079, at *9 (W.D. Tex. Dec. 9, 2022) (quoting *Taylor Lohmeyer Law Firm P.L.L.C. v. United States*, 957 F.3d 505, 510 (5th Cir. 2020)) (noting the "assertions of privilege must 'be specifically asserted' on a document-by-document basis," as "the relevance and need for the document clearly depend on the contents of the document itself"). (To be clear, nor have Defendants waived privileges that they did not assert in their first log. Waiver would occur only as to specific documents that Defendants voluntarily and knowingly disclose. *See, e.g.*, *AHF Community Dev., LLC v. City of Dallas*, 258 F.R.D. 143, 148 (N.D. Tex. 2009).)

Second, the Texas Press Shield Law privilege is applicable. "Under Fed. R. Evid. 501, the availability of a privilege in a diversity case is governed by the law of the forum state," allowing Defendants to assert privileges provided by Texas law. *Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 724 (5th Cir.), *opinion supplemented on denial of reh'g*, 628 F.2d 932 (5th Cir. 1980). The relevant statute, Tex. Civ. Prac. & Rem. Code Ann. § 22.023 provides that "a judicial . . . body with the authority to issue a subpoena *or other compulsory process may not compel a journalist to testify regarding or to produce or disclose in an official proceeding*" any information covered by the privilege. Tex. Civ. Prac. & Rem. Code Ann. § 22.023(a) (emphasis added). The statute nowhere suggests that journalists forfeit the Shield Law's protections when they are defendants subject to requests for production rather than third parties subject to subpoenas. *See, e.g.*, *Abraham v. Greer*, 509 S.W.3d 609, 613 (Tex. App. 2016) (trial court noting that the privilege would apply to the defendant if he was deemed to be a journalist). Plaintiff's reading would run afoul of the statute's very purpose, which includes "increas[ing] the free flow of information and preserv[ing] a free and active press." Tex. Civ. Prac. & Rem. Code § 22.022.

Far from limiting the Shield Law's scope, the subsequent section you cite to, Tex. Civ. Prac. & Rem. Code § 22.024, sets the high bar that Plaintiff must clear to overcome the relevant privilege. That section makes clear that a "compulsory process [can]not be[] used to obtain peripheral, nonessential, or speculative information," *id.* at § 22.024(5), and that the information being sought must be "essential to the maintenance of a claim or defense of the person seeking the testimony, production, or disclosure," *id.* at § 22.024(6). The documents Defendants logged as privileged under the Shield Law are fully protected under these provisions.

Third, Defendants disagree with Plaintiff's contention that their descriptions of documents are "vague," "generalized," or "insufficiently specific." Defendants are not obligated to reveal incriminating details—including, for example, details identifying strategic vendors and partners—that may undermine or abrogate the very privilege they assert. Defendants' descriptions preserve the privilege's protections while informing Plaintiff of the types of communications found within the identified documents. Defendants are open to discussing the additional detail that you believe is appropriate to discern if any compromises can be reached.

Fourth, Defendants continue to disagree with Plaintiff about the availability of the First Amendment privilege in civil litigation discovery disputes. We again refer Plaintiff to the ample arguments and caselaw we have provided over the last several months on the subject.

Lastly, Defendants will take a closer look at document MMFA_013760 to discern if the information Plaintiff seeks is accessible and, if so, will update the log accordingly. In light of the Parties' recent agreement to include date information on the privilege log, Defendants will also re-issue the log with that column included.

We look further to discussing further later today.

Best,
Abha

Abha Khanna
Elias Law Group LLP
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177
akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Tuesday, July 16, 2024 12:14 PM
**To:** Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Abha Khanna <akhanna@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-12-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Hi Daniela,

We're available to meet at 4:00 ET / 3:00 CT on Friday. We'll send around a calendar invite.

Best,
-Alex Dvorscak
Stone | Hilton pllc
alex@stonehilton.com | (518) 772-8657

**From:** Daniela Lorenzo <dlorenzo@elias.law>
**Sent:** Monday, July 15, 2024 3:39 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Abha Khanna <akhanna@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-12-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Alex,

Our team is not available until Friday between 3-5 ET. If that works for your team, please send us a calendar invite in that time range. If not, please propose times that work for you all next week.

Best,
Daniela

**Daniela Lorenzo** (she/her)
Litigation Associate
Elias Law Group LLP
202.987.5400
dlorenzo@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Friday, July 12, 2024 9:47 PM
**To:** Jacob Shelly <jshelly@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Abha Khanna <akhanna@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-12-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Counsel,

Pursuant to Section III of the parties' Revised Stipulation for the Exchange of Privilege Logs and the Court's order on X's motion to compel (ECF No. 65), X objects to the assertions of privilege for the following documents (identified by Bates label):

MMFA_013561, 013562-013579, 013580-013597, 013598-013616, 013617-013635, 013636-013655, 013656-013676, 013677-013697, 013698, 013699, 013700-013714, 013715, 013716-013748, 013749-013755, 013756, 013757, 013758, 013759, 013760, 013761, 013762, 013763, 013764, 013765, 013766, 013767, 013768, 013769, 013770, 013771, 013772, 013773, 013774, 013775, 013776, 013777, 013778-013782, 013783, 013784,

013785-013787, 013788.

As the Court instructed, we would like to meet and confer regarding our objections. Please let us know your availability to confer next week from Tuesday (7/16) onward.

To aid the discussion, we have briefly set out our overarching objections to your privilege assertions. These descriptions are not meant to be exhaustive and are made without intention of waiving or limiting any argument that X may advance in any future motion practice.

1. Assertion of privilege based on "TX Press Shield Laws" (MMFA_013561, 013562-013579, 013580-013597, 013580-013597, 013598-013616, 013636-013655, 013656-013676, 013677-013697, 013698, 013699, 013700-013714, 013715, 013716-013748, 013756, 013757, 013758, 013759, 013760, 013761, 013762, 013763, 013764, 013765, 013766, 013767, 013768, 013769, 013770, 013771, 013772, 013773, 013774, 013775, 013776, 013777, 013778-013782, 013783, 013784, 013785-013787, 013788):
   ○ The assertion is untimely and therefore waived.
      ▪ The parties have met and conferred over the privileges asserted by Defendants many times over the past several months, and prior to this June 28 privilege log submission, the only specific privileges asserted were a federal-law reporter's privilege (e.g., RFP No. 1), purported associational rights, (e.g., RFP No. 3), and protection of donor information. (e.g., RFP No. 17).
   ○ The privilege is substantively inapplicable.
      ▪ On its own terms, Texas's shield law applies only to "subpoena[s] . . . information." Tex. Civ. Prac. & Rem. Code § 22.024(4). As parties to this litigation, Defendants are instead subject to the Federal Rules of Civil Procedure governing disclosure and production of documents. See Fed. R. Civ. P. 26 & 34.
      ▪ The assertion of privilege exceeds the scope of any statutory protections, which would extend at most to certain materials "prepared while acting as a journalist" or the "source" thereof. Tex. Civ. Prac. & Rem. Code § 22.023(1)-(2).
   ○ Defendants' generalized claim of privilege for "internal strategic communications," "MMFA's journalistic process and procedures," "process" and/or "strategy" is insufficiently specific.
      ▪ Even if the Texas Civil Practice & Remedies Code applies here (and Defendants fail to specify which specific statute would cover the documents at issue) these assertions are vague, generalized and do not provide sufficient detail for X or the Court to determine how or why the underlying document would be privileged.

2. Assertion of a First Amendment and/or "TX Press Shield Laws" privilege with respect to "strategic vendors," "vendor[s]," "researching organizations," or "strategic partners" (MMFA_013562-013579; 013580-013597, 013598-013616, 013617-013635, 013636-013655, 013656-013676, 013677-013697, 013716-013748, 013756, 013757, 013766, 013784):
   ○ This assertion is vague, impermissible boilerplate. X is unable to determine what a "strategic vendor" is or why the identities of Defendants' "strategic vendors" would be privileged. The same is true for Defendants' assertions of privilege based on "researching organizations" and "strategic partners," as well as any communications between Defendants and any "vendor."
   ○ The First Amendment does not protect the disclosure of vendor identities during discovery in civil litigation between private parties. The same is likely true of Defendants' claim of privilege with respect to "researching organizations" and "strategic partners," however Defendants' privilege log does not contain sufficient detail for X to determine the First Amendment's applicability, if any.
   ○ The assertion of a "TX Press Shield Laws" privilege suffers deficiencies similar to those identified above.

3. Assertion of privilege for any material purportedly unrelated to this case and, specifically, any assertion of First Amendment privilege with respect to allegedly unrelated communications with journalists (MMFA_013749-013755):
   ○ Defendants' descriptions provide no information allowing X or the Court to gauge whether the documents are "unrelated." If Defendants claim a document is unrelated, Defendants must provide sufficient information to allow X to assess whether to dispute that characterization.
   ○ The asserted First Amendment privilege is also too vague and lacking in detail to allow X or the Court to determine the applicability of the privilege.
   ○ The First Amendment does not protect responsive communications in civil litigation between private parties.

4. Assertion of First Amendment privilege with respect to an internal MMFA strategy meeting (MMFA_013760):
   ○ This assertion does not provide sufficient information to allow X or the Court to determine the applicability of the privilege. For example, the privilege log does not list an author, date, or other pertinent information.
   ○ The First Amendment does not shield discussions about journalistic strategy from discovery in civil litigation between private parties.

Best,

**Alexander M. Dvorscak**
Attorney
Stone | Hilton pllc
1115 W. Slaughter Ln.
Austin, Texas 78748
alex@stonehilton.com | (518) 772-8657
www.stonehilton.com

CONFIDENTIALITY NOTICE:
This e-mail transmission (and/or the attachments accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege and/or the work-product doctrine. The information is intended only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. Any unauthorized interception of this transmission is illegal. If you have received this transmission in error, please promptly notify the sender by reply e-mail, and then destroy all copies of the transmission.

**From:** Jacob Shelly <jshelly@elias.law>
**Sent:** Friday, June 28, 2024 10:18 PM
**To:** Daniela Lorenzo <dlorenzo@elias.law>; Chris Hilton <chris@stonehilton.com>; Alex Dvorscak <alex@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Abha Khanna <akhanna@elias.law>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch

<abranch@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Counsel,

Attached please find a letter regarding Defendants' fifth document production and the accompanying privilege log.

Jacob Shelly
Elias Law Group LLP
250 Massachusetts Ave NW Suite 400
Washington DC 20001
202-968-4496

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

# Tab 6

| | |
|---|---|
| **From:** | Chris Hilton |
| **To:** | Abha Khanna; Alex Dvorscak; Michael Abrams |
| **Cc:** | Aria Branch; Jacob Shelly; Elena Rodriguez Armenta; Ahmed, Amer S.; LeGrand, Andrew |
| **Subject:** | Re: X Corp. v. MMFA: Second Discovery Deficiency Letter |
| **Date:** | Monday, September 9, 2024 2:50:58 PM |

Abha,

We will respond to your latest deficiency letter in due course. You received the first of two letters responding to your August 16th letter on Friday shortly after you sent this email. We will send the second letter promptly.

Regarding the privilege log issue, for the reasons Alex explained in his email on Friday evening, I think both sides are in agreement.

Regarding your proposal dated August 2nd, your proposal in that email essentially restated Defendants' position that Plaintiff must narrow its discovery requests. We continue to reject that invitation. We are reviewing your September 6th privilege log and production, and we will follow up once we have done so to see if there is agreement that can be reached.

Thanks,
Chris

---

**From:** Abha Khanna <akhanna@elias.law>
**Sent:** Friday, September 6, 2024 8:32 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Chris Hilton <chris@stonehilton.com>; Michael Abrams <michael@stonehilton.com>
**Cc:** Aria Branch <abranch@elias.law>; Jacob Shelly <jshelly@elias.law>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; LeGrand, Andrew <ALeGrand@gibsondunn.com>
**Subject:** X Corp. v. MMFA: Second Discovery Deficiency Letter

Counsel,

Please see the attached letter regarding deficiencies in Plaintiff's discovery responses to Defendants' third set of discovery requests. As captured in the letter, Defendants have yet to receive any meaningful response to their August 16 deficiency letter. On August 21, counsel for X stated in an email that they have "carefully reviewed" the letter and would respond "in due course." Defendants have received no response since. Worse, X then replicated several of the same deficiencies in its most recent discovery responses.

In addition, Defendants have been waiting on Plaintiff for weeks as to two key discovery decision points. First, as to the parties' privilege log agreement, counsel for

Plaintiff stated on July 8 that they would "respond back shortly" confirming their acceptance of the agreement. Counsel for Plaintiff never replied. Second, on August 2, Defendants proposed a detailed, modified approach to searching for and producing the documents requested by Plaintiff. A week later, on August 9, counsel for Plaintiff responded that they were "in the process" of reviewing Defendants' most recent production and amended privilege log and would "respond more substantively to [Defendants'] proposal next week." Again, counsel for Plaintiff never replied.

Plaintiff's continued lack of cooperation as to these topics is unacceptable and obstructive to all efforts to make discovery efficient and productive. Plaintiff cannot insist that Defendants continue to expend resources to address Plaintiff's alleged concerns with discovery when these costly efforts are met only with silence and when Plaintiff refuses to respond to—let alone address—Defendants' concerns with X's discovery responses.

**These outstanding action items demand an immediate response from Plaintiff in order for discovery to move forward productively.** At a minimum, Defendants should respond to the two outstanding decision-points by Monday, September 9 so that the parties can continue producing documents and asserting any privileges pursuant to mutual agreements rather than one-sided efforts by Defendants.

Best,
Abha


Abha Khanna
Elias Law Group LLP
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177
akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

# Tab 7

| | |
|---|---|
| **From:** | Chris Hilton |
| **To:** | Abha Khanna; Michael Abrams; Aria Branch; Jacob Shelly; Elena Rodriguez Armenta; Ahmed, Amer S.; LeGrand, Andrew; Daniela Lorenzo |
| **Cc:** | Judd E. Stone, II; Ari Cuenin; Alex Dvorscak; Alithea Sullivan |
| **Subject:** | Re: X/MMFA - motion to compel regarding Texas press shield law |
| **Date:** | Tuesday, September 24, 2024 5:26:50 PM |

Thanks Abha. Abraham v. Greer does not analyze the question of whether the privilege applies to party discovery. Given that we've discussed this issue many times, we do not see any benefit of an additional conference. Your proposed solution continues to be that plaintiff needs to narrow its discovery requests unilaterally because the scope of our discovery is too broad. We disagree.

We'll note your opposition in our motion.

Thanks,
Chris

---

**From:** Abha Khanna <akhanna@elias.law>
**Sent:** Tuesday, September 24, 2024 3:57 PM
**To:** Michael Abrams <michael@stonehilton.com>; Aria Branch <abranch@elias.law>; Jacob Shelly <jshelly@elias.law>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Daniela Lorenzo <dlorenzo@elias.law>
**Cc:** Judd E. Stone, II <judd@stonehilton.com>; Chris Hilton <chris@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Alex Dvorscak <alex@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - motion to compel regarding Texas press shield law

Hi Michael,

Thank you for your email. We do not agree that we have sufficiently conferred about this motion, in two respects.

*First*, while you previously asserted in conferral that the Texas Shield Law does not apply to party discovery, this draft is the first occasion on which you have provided any authority or arguments to support that position. But there too, the draft fails to cite, let alone address, the most pertinent authority on point. The Texas Court of Appeals made clear that the Shield Law applies to party discovery nearly a decade ago, in *Abraham v. Greer*, 509 S.W.3d 609, 614–17 (Tex. App. 2016). As you no doubt know, "[w]here an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which *is not to be disregarded by a federal court* unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940) (emphasis added). Your motion necessarily invites the Court to "disregard[]" *Abraham*, yet your brief does not discuss that case.

*Second*, at no point have you proposed requesting *in camera* review of documents covered by the Shield Law, nor have you ever requested our position on such a proposal. And the proposal suggests that you continue to misunderstand what we think the Shield Law applies to. We do not dispute that you can overcome the Shield Law with respect to discoverable materials that are "essential" to your claims. But your boundless approach to discovery is sweeping in thousands of documents that are not "essential" to this case under any plausible construction of that term. And a substantial subset of those documents is protected by the Shield Law. As our privilege log makes clear, insofar as the Shield Law is applicable, we are applying it to those non-"essential" documents, not to what you have previously referred to as "core" documents. Reviewing the privileged documents *in camera* would therefore be an enormous waste of the Court's time and resources: we are talking about potentially thousands of documents with no plausible relevance to your claims.

We have repeatedly invited further discussion about our proposed approach to resolving the Shield Law dispute. We have done so, in part, because you have persisted in asserting implausible arguments in conferral backed up with no authority, an approach that makes progressing toward a compromise extremely difficult. We have also done so because the broad sweep of Plaintiff's discovery requests otherwise requires reviewing and logging documents that have no bearing on the issues in this case, a time- and resource-intensive process. Plaintiff's continued insistence on an all-or-nothing approach to the Shield Law dispute is not conducive to a substantive, productive discussion.

As your motion appears to be premised on (i) a fundamental misapprehension of current, binding Texas appellate precedent and (ii) a fundamental misunderstanding about what sorts of documents we are applying the Shield Law to, we cannot agree that we have exhausted the benefits of conferral here. If you proceed with filing this motion, we intend to make these points to the Court.

Best,
Abha

**Abha Khanna**
Elias Law Group LLP
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177
akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** Michael Abrams <michael@stonehilton.com>

**Sent:** Tuesday, September 24, 2024 8:55 AM
**To:** Abha Khanna <akhanna@elias.law>; Aria Branch <abranch@elias.law>; Jacob Shelly <jshelly@elias.law>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Daniela Lorenzo <dlorenzo@elias.law>
**Cc:** Judd E. Stone, II <judd@stonehilton.com>; Chris Hilton <chris@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Alex Dvorscak <alex@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** X/MMFA - motion to compel regarding Texas press shield law

Counsel,

We intend to file a motion to compel asking the Court to overrule Defendants' Texas press shield law objections at close of business today. A copy of the brief in support of our motion is attached.

We believe that we have sufficiently conferenced this motion both by email and through our telephonic conferences, but if you believe there is anything further to discuss, please let us know ASAP so that we can make time to discuss before filing. Otherwise, we will note your opposition to the motion.

Michael

**Michael R. Abrams**
Partner
Stone|Hilton pllc
600 Congress Ave., Ste. 2350
Austin, Texas 78701
michael@stonehilton.com|(281) 236-3029

# Tab 8

# Defendants Oct. 11 Privilege Log

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Confidentiality | Privilege Type | Privilege Note |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_072102 | Withheld | | | | | | | Confidential information subject to protective order | First Amendment Privilege | Annual report outlining MMFA's strategy for research and advocacy from 2022. The contents of the document are unrelated to research for the November 16 and 17 2023 articles or advertisement placement on X.<br><br>First Amendment Privilege: The document contains sensitive information pertaining to the organization's mission and strategy protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech |
| MMFA_072103-MMFA_072104 | Redacted | Chat | | | | | 5/5/2022 | | | Redacted identifying information of non-MMFA journalist seeking to collaborate with MMFA on a non-MMFA article.<br><br>First Amendment Privilege: Disclosing the journalist identity and would chill their and MMFA's First Amendment speech and association rights. |
| MMFA_072105-MMFA_072108 | Redacted | Chat | | | | | 5/10/2022 | | First Amendment Privilege | Redacted identifying information of non-MMFA journalists seeking to collaborate with MMFA on a non-MMFA article.<br><br>First Amendment Privilege: Disclosing the journalist identity and would chill their and MMFA's First Amendment speech and association rights. |
| MMFA_072109 | Redacted | Chat | | | | | 5/10/2022 | | First Amendment Privilege | Redacted identifying information of a non-MMFA journalist seeking to collaborate with MMFA on a non-MMFA article.<br><br>First Amendment Privilege: Disclosing the journalist identity would chill their and MMFA's First Amendment speech and association rights. |
| MMFA_072110-MMFA_072112 | Redacted | Email | Ruby Seavey <rseavey@mediamatters.org > | [Redacted: 1st Am Priv] | | | 5/12/2022 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072113-MMFA_072114 | Redacted | Chat | | | | | 5/13/2022 | | First Amendment Privilege | Redacted identifying information of a non-MMFA journalist seeking to collaborate with MMFA on a non-MMFA article.<br><br>First Amendment Privilege: Disclosing the journalist identity and would chill their and MMFA's First Amendment speech and association rights. |
| MMFA_072115-MMFA_072120 | Redacted | Chat | | | | | 5/16/2022 | | First Amendment Privilege | Redacted identifying information of non-MMFA journalists seeking to collaborate with MMFA on a non-MMFA article.<br><br>First Amendment Privilege: Disclosing the journalist identity would chill their and MMFA's First Amendment speech and association rights. |

Supp. Appx 076

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Confidentiality | Privilege Type | Privilege Note |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_072121 | Redacted | Chat | | | | | 5/16/2022 | | First Amendment Privilege | Redacted identifying information of a non-MMFA journalist seeking to collaborate with MMFA on a non-MMFA article. |
| MMFA_072122; MMFA_072125 | Redacted | Email | [Redacted: 1st Am Priv] | [Redacted: 1st Am Priv] | | | 5/26/2022 | | First Amendment Privilege | First Amendment Privilege: Disclosing the journalist's identity would chill their and MMFA's First Amendment speech and association rights. Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to. First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072126 | Withheld | | | | | | | | Attorney-Client Communication | Draft email to counsel seeking legal and business advice. Attorney-Client Privilege: Communications reveal conversations regarding the decision to retain legal advice. |
| MMFA_072127 | Withheld | | | | | | | | Attorney-Client Communication | Draft email to counsel seeking legal and business advice. Attorney-Client Privilege: Communications reveal conversations regarding the decision to retain legal advice. |
| MMFA_072128 | Withheld | | | | | | | | Attorney-Client Communication | Draft email to counsel seeking legal and business advice. Attorney-Client Privilege: Communications reveal conversations regarding the decision to retain legal advice. |
| MMFA_072129 | Withheld | | | | | | | | Attorney-Client Communication | Draft email to counsel seeking legal and business advice. Attorney-Client Privilege: Communications reveal conversations regarding the decision to retain legal advice. |
| MMFA_072130 | Withheld | | | | | | | | Attorney-Client Communication | Draft email to counsel seeking legal and business advice. Attorney-Client Privilege: Communications reveal conversations regarding the decision to retain legal advice. |
| MMFA_072131 | Withheld | | | | | | | | Attorney-Client Communication | Draft email to counsel seeking legal and business advice. Attorney-Client Privilege: Communications reveal conversations regarding the decision to retain legal advice. |
| MMFA_072132 | Withheld | | | | | | | | Attorney-Client Communication | Draft email to counsel seeking legal and business advice. Attorney-Client Privilege: Communications reveal conversations regarding the decision to retain legal advice. |
| MMFA_072133 | Withheld | | | | | | | | Attorney-Client Communication | Draft email to counsel seeking legal and business advice. Attorney-Client Privilege: Communications reveal conversations regarding the decision to retain legal advice. |

Supp. Appx 077

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Confidentiality | Privilege Type | Privilege Note |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_072134-MMFA_072141 | Redacted | Chat | | | | | 7/8/2022 | | First Amendment Privilege | Redacted name of non-MMFA journalist communicating with MMFA about reporting collaboration. First Amendment Privilege: The disclosure of the individual's identity would chill MMFA and the journalist's First Amendment speech and association rights. |
| MMFA_072142 | Redacted | Chat | | | | | 7/8/2022 | | First Amendment Privilege | Redacted name of non-MMFA journalist communicating with MMFA about reporting collaboration. First Amendment Privilege: The disclosure of the individual's identity would chill MMFA and the journalist's First Amendment speech and association rights. |
| MMFA_072143-MMFA_072149 | Redacted | Email | [Redacted: 1st Am Priv] | [Redacted: 1st Am Priv] | | | 7/14/2022 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to as well as those for other organizations in the coalition. First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072150 | Withheld | | | | | | | Confidential information subject to protective order | First Amendment Privilege | Annual report outlining MMFA's strategy for research and advocacy from 2022. The contents of the document are unrelated to research for the November 16 and 17, 2023 articles or advertisement placement on X. First Amendment Privilege: The document contains sensitive information pertaining to the organization's mission and strategy protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech. |
| MMFA_072151-MMFA_072152 | Redacted | Email | Andrea Alford via groups.so <aalford@mediamatters.org@groups.io> | [Redacted: 1st Am Priv] | | | 10/5/2022 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to. First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072153-MMFA_072154 | Redacted | Email | Andrea Alford <aalford@mediamatters.org> | [Redacted: 1st Am Priv] | | | 10/5/2022 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to. First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072155-MMFA_072156 | Redacted | Email | Andrea Alford <aalford@mediamatters.org> | [Redacted: 1st Am Priv] | | | 10/5/2022 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to. First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |

Supp. Appx 078

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Confidentiality | Privilege Type | Privilege Note |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_072157-MMFA_072158 | Redacted | Email | Andrea Alford <aalford@mediamatters.org> | {Redacted: 1st Am Priv} | | | 10/5/2022 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to. First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072159-MMFA_072161 | Redacted | Email | Andrea Alford via groups.so <aalford+mediamatters.org@groups.io> | {Redacted: 1st Am Priv} | | | 10/5/2022 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to. First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072178-MMFA_072179 | Redacted | Email | Andrea Alford <aalford@mediamatters.org> | {Redacted: 1st Am Priv} | | | 10/5/2022 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to. First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072196-MMFA_072198 | Redacted | Email | Andrea Alford <aalford@mediamatters.org> | {Redacted: 1st Am Priv} | | | 10/5/2022 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to. First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072215-MMFA_072217 | Redacted | Email | Andrea Alford <aalford@mediamatters.org> | {Redacted: 1st Am Priv} | | | 10/5/2022 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to. First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072234-MMFA_072235 | Redacted | Chat | | | | | 10/6/2022 | | First Amendment Privilege | Redacted name of non-MMFA journalist communicating with MMFA about reporting collaboration. First Amendment Privilege: The disclosure of the individual's identity would chill MMFA and the journalist's First Amendment speech and association rights. |
| MMFA_072236 | Redacted | Chat | | | | | 10/7/2022 | | First Amendment Privilege | Redacted name of non-MMFA journalist communicating with MMFA about reporting collaboration. First Amendment Privilege: The disclosure of the individual's identity would chill MMFA and the journalist's First Amendment speech and association rights. |
| MMFA_072237 | Redacted | Chat | | | | | 10/28/2022 | | First Amendment Privilege | Redacted identifying information of a non-MMFA journalist seeking to collaborate with MMFA on a non-MMFA article. First Amendment Privilege: Disclosing the journalist's identity and would chill their and MMFA's First Amendment speech and association rights. |

Supp. Appx 079

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Confidentiality | Privilege Type | Privilege Note |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_072238 | Redacted | Chat | | | | | 10/30/2022 | | First Amendment Privilege | Redacted identifying information of a non-MMFA journalist seeking to collaborate with MMFA on a non-MMFA article. |
| MMFA_072239-MMFA_072240 | Redacted | Email | Andrea Alford via groups.io <aalford@mediamatters.org@groups.io> | [Redacted: 1st Am Priv] | | | 10/31/2022 | | First Amendment Privilege | First Amendment Privilege: Disclosing the journalist identity would chill their and MMFA's First Amendment speech and association rights. Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to. |
| MMFA_072241 | Redacted | Email | Andrea Alford <aalford@mediamatters.org> | [Redacted: 1st Am Priv] | | | 10/31/2022 | | First Amendment Privilege | First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to. |
| MMFA_072242-MMFA_072243 | Redacted | Email | Andrea Alford <aalford@mediamatters.org> | [Redacted: 1st Am Priv] | | | 10/31/2022 | | First Amendment Privilege | First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to. |
| MMFA_072244-MMFA_072245 | Redacted | Email | Andrea Alford <aalford@mediamatters.org> | [Redacted: 1st Am Priv] | | | 10/31/2022 | | First Amendment Privilege | First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to. |
| MMFA_072246-MMFA_072251 | Redacted | Email | [Redacted: 1st Am Priv] | [Redacted: 1st Am Priv] | | | 11/1/2022 | | First Amendment Privilege | First Amendment Privilege: Disclosing confidential coalition information would chill members' First Amendment speech and association rights. Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to. |
| MMFA_072252-MMFA_072253 | Redacted | Chat | | | | | 11/2/2022 | | First Amendment Privilege | Redacted identifying information of non-MMFA journalists seeking to collaborate with MMFA on a non-MMFA article. First Amendment Privilege: Disclosing the journalist identity and would chill their and MMFA's First Amendment speech and association rights. |
| MMFA_072254-MMFA_072264 | Redacted | Email | [Redacted: 1st Am Priv] | [Redacted: 1st Am Priv] | | | 11/3/2022 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to as well as those for other organizations in the coalition. First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Confidentiality | Privilege Type | Privilege Note |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_072265 MMFA_072275 | Redacted | Email | [Redacted: 1st Am Priv] | [Redacted: 1st Am Priv] | | | 11/3/2022 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to as well as those for other organizations in the coalition. First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072276 MMFA_072279 | Redacted | Email | Andrea Alford <aalford@mediamatters.org> | [Redacted: 1st Am Priv] | | | 11/3/2022 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to. First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072280 MMFA_072283 | Redacted | Email | Andrea Alford via groups.io <aalford-mediamatters.org@groups.io> | [Redacted: 1st Am Priv] | | | 11/3/2022 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to. First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072284 MMFA_072286 | Redacted | Email | Andrea Alford <aalford@mediamatters.org> | [Redacted: 1st Am Priv] | | | 11/3/2022 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to. First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072287 MMFA_072290 | Redacted | Email | Andrea Alford <aalford@mediamatters.org> | [Redacted: 1st Am Priv] | | | 11/3/2022 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to. First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072291 MMFA_072294 | Redacted | Email | Andrea Alford <aalford@mediamatters.org> | [Redacted: 1st Am Priv] | | | 11/3/2022 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to. First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072295 | Redacted | Chat | | | | | 11/9/2022 | | First Amendment Privilege | Redacted identifying information of a non-MMFA journalist seeking to collaborate with MMFA on a non MMFA article. First Amendment Privilege: Disclosing the journalist's identity would chill their and MMFA's First Amendment speech and association rights. |
| MMFA_072296 | Redacted | Chat | | | | | 11/9/2022 | | First Amendment Privilege | Redacted identifying information of a non-MMFA journalist seeking to collaborate with MMFA on a non MMFA article. First Amendment Privilege: Disclosing the journalist's identity and would chill their and MMFA's First Amendment speech and association rights. |

Supp. Appx 081

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Confidentiality | Privilege Type | Privilege Note |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_072297-MMFA_072298 | Redacted | Chat | | | | | 11/21/2022 | | First Amendment Privilege | Redacted identifying information of non-MMFA journalists seeking to collaborate with MMFA on a non MMFA article. First Amendment Privilege: Disclosing the journalist identity would chill their and MMFA's First Amendment speech and association rights. |
| MMFA_072299-MMFA_072300 | Redacted | Chat | | | | | 11/22/2022 | | First Amendment Privilege | Redacted identifying information of non-MMFA journalists seeking to collaborate with MMFA on a non MMFA article. First Amendment Privilege: Disclosing the journalist identity and would chill their and MMFA's First Amendment speech and association rights. |
| MMFA_072301-MMFA_072302 | Redacted | Chat | | | | | 11/22/2022 | | First Amendment Privilege | Redacted identifying information of a non-MMFA journalist seeking to collaborate with MMFA on a non MMFA article. First Amendment Privilege: Disclosing the journalist identity would chill their and MMFA's First Amendment speech and association rights. |
| MMFA_072303-MMFA_072306 | Redacted | Email | Andrea Alford <aalford@mediamatters.org> | [Redacted: 1st Am Priv] | | | 11/22/2022 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to. First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072307-MMFA_072308 | Redacted | Chat | | | | | 11/23/2022 | | First Amendment Privilege | Redacted identifying information of a non-MMFA journalist seeking to collaborate with MMFA on a non MMFA article. First Amendment Privilege: Disclosing the journalist identity and would chill their and MMFA's First Amendment speech and association rights. |
| MMFA_072309 | Redacted | Chat | | | | | 11/24/2022 | | First Amendment Privilege | Redacted identifying information of a non-MMFA journalist seeking to collaborate with MMFA on a non MMFA article. First Amendment Privilege: Disclosing the journalist identity and would chill their and MMFA's First Amendment speech and association rights. |
| MMFA_072310 | Redacted | Chat | | | | | 11/26/2022 | | First Amendment Privilege | Redacted identifying information of non-MMFA journalists seeking to collaborate with MMFA on a non MMFA article. First Amendment Privilege: Disclosing the journalist identity would chill their and MMFA's First Amendment speech and association rights. |
| MMFA_072311-MMFA_072312 | Redacted | Chat | | | | | 11/26/2022 | | First Amendment Privilege | Redacted identifying information of a non-MMFA journalist seeking to collaborate with MMFA on a non MMFA article. First Amendment Privilege: Disclosing the journalist identity and would chill their and MMFA's First Amendment speech and association rights. |

7

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Confidentiality | Privilege Type | Privilege Note |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_072313 | Redacted | Chat | | | | | 11/28/2022 | | First Amendment Privilege | Redacted identifying information of non-MMFA journalists seeking to collaborate with MMFA on a non-MMFA articles. First Amendment Privilege: Disclosing the journalist identity would chill their and MMFA's First Amendment speech and association rights. |
| MMFA_072314-MMFA_072315 | Redacted | Chat | | | | | 11/28/2022 | | First Amendment Privilege | Redacted identifying information of non-MMFA journalists seeking to collaborate with MMFA on a non-MMFA article. First Amendment Privilege: Disclosing the journalist identity and would chill their and MMFA's First Amendment speech and association rights. |
| MMFA_072316-MMFA_072317 | Redacted | Chat | | | | | 11/29/2022 | | First Amendment Privilege | Redacted identifying information of a non-MMFA journalist seeking to collaborate with MMFA on a non-MMFA article. First Amendment Privilege: Disclosing the journalist's identity and would chill their and MMFA's First Amendment speech and association rights. |
| MMFA_072318 | Redacted | Chat | | | | | 11/30/2022 | | First Amendment Privilege | Redacted identifying information of a non-MMFA journalist seeking to collaborate with MMFA on a non-MMFA article. First Amendment Privilege: Disclosing the journalist's identity and would chill their and MMFA's First Amendment speech and association rights. |
| MMFA_072319-MMFA_072320 | Redacted | Chat | | | | | 12/1/2022 | | First Amendment Privilege | Redacted identifying information of non-MMFA journalists seeking to collaborate with MMFA on a non-MMFA article. First Amendment Privilege: Disclosing the journalist identity would chill their and MMFA's First Amendment speech and association rights. |
| MMFA_072321 | Redacted | Chat | | | | | 12/1/2022 | | First Amendment Privilege | Redacted identifying information of a non-MMFA journalist seeking to collaborate with MMFA on a non-MMFA article. First Amendment Privilege: Disclosing the journalist identity and would chill their and MMFA's First Amendment speech and association rights. |
| MMFA_072322-MMFA_072323 | Redacted | Chat | | | | | 12/1/2022 | | First Amendment Privilege | Redacted identifying information of a non-MMFA journalists seeking to collaborate with MMFA on a non-MMFA article. First Amendment Privilege: Disclosing the journalist identity would chill their and MMFA's First Amendment speech and association rights. |
| MMFA_072324 | Redacted | Chat | | | | | 12/5/2022 | | First Amendment Privilege | Redacted identifying information of a non-MMFA journalists seeking to collaborate with MMFA on a non-MMFA article. First Amendment Privilege: Disclosing the journalist identity would chill their and MMFA's First Amendment speech and association rights. |

8

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Confidentiality | Privilege Type | Privilege Note |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_072325 | Redacted | Chat | | | | | 12/5/2022 | | First Amendment Privilege | Redacted identifying information of non-MMFA journalists seeking to collaborate with MMFA on a non MMFA article. First Amendment Privilege: Disclosing the journalist identity and would chill their and MMFA's First Amendment speech and association rights. |
| MMFA_072326-MMFA_072327 | Redacted | Chat | | | | | 12/5/2022 | | First Amendment Privilege | Redacted identifying information of a non-MMFA journalists seeking to collaborate with MMFA on a non MMFA article. First Amendment Privilege: Disclosing the journalist identity and would chill their and MMFA's First Amendment speech and association rights. |
| MMFA_072328 | Redacted | Chat | | | | | 12/6/2022 | | First Amendment Privilege | Redacted identifying information of non-MMFA journalists seeking to collaborate with MMFA on a non MMFA article. First Amendment Privilege: Disclosing the journalist identity would chill their and MMFA's First Amendment speech and association rights. |
| MMFA_072329-MMFA_072330 | Redacted | Chat | | | | | 12/6/2022 | | First Amendment Privilege | Redacted identifying information of a non-MMFA journalist seeking to collaborate with MMFA on a non-MMFA article. First Amendment Privilege: Disclosing the journalist's identity and would chill their and MMFA's First Amendment speech and association rights. |
| MMFA_072331 | Redacted | Chat | | | | | 12/6/2022 | | First Amendment Privilege | Redacted identifying information of a non-MMFA journalist seeking to collaborate with MMFA on a non-MMFA article. First Amendment Privilege: Disclosing the journalist identity and would chill their and MMFA's First Amendment speech and association rights. |
| MMFA_072332 | Redacted | Chat | | | | | 12/7/2022 | | First Amendment Privilege | Redacted identifying information of non-MMFA journalists seeking to collaborate with MMFA on a non MMFA article. First Amendment Privilege: Disclosing the journalist identity and would chill their and MMFA's First Amendment speech and association rights. |
| MMFA_072333 | Redacted | Chat | | | | | 12/9/2022 | | First Amendment Privilege | Redacted identifying information of a non-MMFA journalists seeking to collaborate with MMFA on a non MMFA article. First Amendment Privilege: Disclosing the journalist identity and would chill their and MMFA's First Amendment speech and association rights. |
| MMFA_072334-MMFA_072335 | Redacted | Chat | | | | | 12/9/2022 | | First Amendment Privilege | Redacted identifying information of a non-MMFA journalists seeking to collaborate with MMFA on a non MMFA article. First Amendment Privilege: Disclosing the journalist identity and would chill their and MMFA's First Amendment speech and association rights. |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Confidentiality | Privilege Type | Privilege Note |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_072336 | Withheld | | | | | | | Confidential information subject to protective order | First Amendment Privilege; Texas Press Shield Law | Draft memorandum detailing mission-critical MMFA research, advocacy projects, and strategy, and detailing potential avenues of future MMFA advocacy. Memorandum also includes discussion of past and potential future collaborations with non-MMFA journalists and organization to further MMFA's mission. The contents of the document are unrelated to research for the November 16 and 17, 2023 articles or advertisement placement on Twitter. Texas Press Shield Law: This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.023 (a)(1). First Amendment Privilege: The document contains sensitive information pertaining to the organization's mission, strategy, and associations protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech. |
| MMFA_072337 | Redacted | Chat | | | | | 12/13/2022 | | First Amendment Privilege | Redacted identifying information of non-MMFA journalists seeking to collaborate with MMFA on a MMFA article. First Amendment Privilege: Disclosing the journalists' identity would chill their and MMFA's First Amendment speech and association rights. |
| MMFA_072338 | Redacted | Chat | | | | | 12/13/2022 | | First Amendment Privilege | Redacted identifying information of a non-MMFA journalist seeking to collaborate on a non-MMFA article. First Amendment Privilege: Disclosing the journalist identity and would chill their and MMFA's First Amendment speech and association rights. |
| MMFA_072339-MMFA_072342 | Redacted | Email | Andrea Alford <aalford@mediamatters.org> | [Redacted: 1st Am Priv] | | | 12/16/2022 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to. First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072343 | Withheld | | | | | | | Confidential information subject to protective order | First Amendment Privilege; Texas Press Shield Law | Draft memorandum detailing mission-critical MMFA research, advocacy projects, and strategy, and detailing potential avenues of future MMFA advocacy. Memorandum also includes discussion of past and potential future collaborations with non-MMFA journalists and organization to further MMFA's mission. The contents of the document are unrelated to research for the November 16 and 17, 2023 articles or advertisement placement on Twitter. Texas Press Shield Law: This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.023 (a)(1). First Amendment Privilege: The document contains |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Confidentiality | Privilege Type | Privilege Note |
|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |  | sensitive information pertaining to the organization's mission, strategy, and associations protected by the First Amendment privilege; the production of which would chill Defendants' exercise of their First Amendment speech. |
| MMFA_072344 | Withheld |  |  |  |  |  |  | Confidential information subject to protective order | First Amendment Privilege; Texas Press Shield Law | Draft memorandum detailing mission-critical MMFA research, advocacy projects, and strategy, and detailing potential avenues of future MMFA advocacy. Memorandum also includes discussion of past and potential future collaborations with non-MMFA journalists and organization to further MMFA's mission. The contents of the document are unrelated to research for the November 16 and 17, 2023 articles or advertisement placement on Twitter. Texas Press Shield Law: This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.023 (a)(1). First Amendment Privilege: The document contains sensitive information pertaining to the organization's mission, strategy, and associations protected by the First Amendment privilege; the production of which would chill Defendants' exercise of their First Amendment speech. |
| MMFA_072345 | Redacted | Email | [Redacted: 1st Am Priv] | Laura Keiter <LKeiter@MEDIAMATTERS.ORG>;Press <press@mediamatters.org> |  |  | 12/19/2022 |  | First Amendment Privilege | Redacted portions reveal identity of a non-MMFA reporter who collaborates with MMFA. First Amendment Privilege: The disclosure of the individual's identity would chill journalist's First Amendment speech and association rights. |
| MMFA_072346 | Redacted | Email | [Redacted: 1st Am Priv] | Laura Keiter <LKeiter@MEDIAMATTERS.ORG>;Press <press@mediamatters.org> |  |  | 12/19/2022 |  | First Amendment Privilege | Redacted portions reveal identity of a non-MMFA reporter who collaborates with MMFA. First Amendment Privilege: The disclosure of the individual's identity would chill journalist's First Amendment speech and association rights. |
| MMFA_072347 | Redacted | Email | Lauren Cross <lcross@mediamatters.org> | [Redacted: 1st Am Priv] | Press <press@mediamatters. org> |  | 12/19/2022 |  | First Amendment Privilege | Redacted portions reveal identity of a non-MMFA reporter who collaborates with MMFA. First Amendment Privilege: The disclosure of the individual's identity would chill journalist's First Amendment speech and association rights. |
| MMFA_072348 | Redacted | Email | [Redacted: 1st Am Priv] | Lauren Cross <lcross@mediamatters.org> | Press <press@mediamatters. org> |  | 12/19/2022 |  | First Amendment Privilege | Redacted portions reveal identity of a non-MMFA reporter who collaborates with MMFA. First Amendment Privilege: The disclosure of the |

11

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Confidentiality | Privilege Type | Privilege Note |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | individual's identity would chill journalist's First Amendment speech and association rights. |
| MMFA_072349-MMFA_072350 | Redacted | Email | [Redacted: 1st Am Priv] | Lauren Cross <lcross@mediamatters.org> | Press <press@mediamatters.org> | | 12/19/2022 | | First Amendment Privilege | Redacted portions reveal identity of a non-MMFA reporter who collaborates with MMFA. First Amendment Privilege: The disclosure of the individual's identity would chill journalist's First Amendment speech and association rights. |
| MMFA_072351-MMFA_072352 | Redacted | Email | Lauren Cross <lcross@mediamatters.org> | Angelo Carusone <acarusone@mediamatters.org>;Sharon Kann <skann@mediamatters.org> | | | 12/19/2022 | | First Amendment Privilege | Redacted portions reveal identity of a non-MMFA reporter who collaborates with MMFA. First Amendment Privilege: The disclosure of the individual's identity would chill journalist's First Amendment speech and association rights. |
| MMFA_072353-MMFA_072355 | Redacted | Email | Lauren Cross <lcross@mediamatters.org> | Angelo Carusone <acarusone@mediamatters.org>;Sharon Kann <skann@mediamatters.org> | | | 12/19/2022 | | First Amendment Privilege | Redacted portions reveal identity of a non-MMFA reporter who collaborates with MMFA. First Amendment Privilege: The disclosure of the individual's identity would chill journalist's First Amendment speech and association rights. |
| MMFA_072356-MMFA_072358 | Redacted | Email | Sharon Kann <skann@mediamatters.org> | Lauren Cross <lcross@mediamatters.org> | Angelo Carusone <acarusone@mediamatters.org> | | 12/19/2022 | | First Amendment Privilege | Redacted portions reveal identity of a non-MMFA reporter who collaborates with MMFA. First Amendment Privilege: The disclosure of the individual's identity would chill journalist's First Amendment speech and association rights. |
| MMFA_072359-MMFA_072360 | Redacted | Email | Lauren Cross <lcross@mediamatters.org> | [Redacted: 1st Am Priv] | Press <press@mediamatters.org> | | 12/19/2022 | | First Amendment Privilege | Redacted portions reveal identity of a non-MMFA reporter who collaborates with MMFA. First Amendment Privilege: The disclosure of the individual's identity would chill journalist's First Amendment speech and association rights. |
| MMFA_072361-MMFA_072362 | Redacted | Email | [Redacted: 1st Am Priv] | Lauren Cross <lcross@mediamatters.org> | Press <press@mediamatters.org> | | 12/19/2022 | | First Amendment Privilege | Redacted portions reveal identity of a non-MMFA reporter who collaborates with MMFA. First Amendment Privilege: The disclosure of the individual's identity would chill journalist's First Amendment speech and association rights. |
| MMFA_072363-MMFA_072365 | Redacted | Email | Angelo S. Carusone <acarusone@mediamatters.org> | Sharon Kann <skann@mediamatters.org> | Lauren Cross <lcross@mediamatters.org> | | 12/19/2022 | | First Amendment Privilege | Redacted portions reveal identity of a non-MMFA reporter who collaborates with MMFA. First Amendment Privilege: The disclosure of the individual's identity would chill journalist's First Amendment speech and association rights. |
| MMFA_072366-MMFA_072368 | Redacted | Email | Lauren Cross <lcross@mediamatters.org> | Angelo S. Carusone <acarusone@mediamatters.org> | Sharon Kann <skann@mediamatters.org> | | 12/19/2022 | | First Amendment Privilege | Redacted portions reveal identity of a non-MMFA reporter who collaborates with MMFA. First Amendment Privilege: The disclosure of the individual's identity would chill journalist's First Amendment speech and association rights. |
| MMFA_072369-MMFA_072370 | Redacted | Email | Lauren Cross <lcross@mediamatters.org> | [Redacted: 1st Am Priv] press <press@mediamatters.org> | | | 12/19/2022 | | First Amendment Privilege | Redacted portions reveal identity of a non-MMFA reporter who collaborates with MMFA. First Amendment Privilege: The disclosure of the |

12

Supp. Appx 088

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Confidentiality | Privilege Type | Privilege Note |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | individual's identity would chill journalist's First Amendment speech and association rights. |
| MMFA_072371-MMFA_072373 | Redacted | Email | [Redacted: 1st Am Priv] | Lauren Cross <lcross@mediamatters.org><press@mediamatters.org> | | | 12/19/2022 | | First Amendment Privilege | Reducted portions reveal identity of a non-MMFA reporter who collaborates with MMFA.<br><br>First Amendment Privilege: The disclosure of the individual's identity would chill journalist's First Amendment speech and association rights. |
| MMFA_072374-MMFA_072376 | Redacted | Email | Andrea Alford <aalford@mediamatters.org> | [Redacted: 1st Am Priv] | | | 12/21/2022 | | First Amendment Privilege | Reducted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072377-MMFA_072379 | Redacted | Email | Andrea Alford <aalford@mediamatters.org> | [Redacted: 1st Am Priv] | | | 12/21/2022 | | First Amendment Privilege | Reducted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072380-MMFA_072382 | Redacted | Email | Andrea Alford <aalford@mediamatters.org> | [Redacted: 1st Am Priv] | | | 12/21/2022 | | First Amendment Privilege | Reducted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072383-MMFA_072384 | Redacted | Email | Andrea Alford <aalford@mediamatters.org> | [Redacted: 1st Am Priv] | | | 12/21/2022 | | First Amendment Privilege | Reducted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |

13

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Confidentiality | Privilege Type | Privilege Note |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_072385-MMFA_072386 | Redacted | Email | Andrea Alford <aalford@mediamatters.org> | undisclosed-recipients: | | {Redacted: 1st Am Priv};{Redacted: 1st Am Priv};{Redacted: 1st Am Priv};Ari Drennen <adrennen@mediamatters.org>;{Redacted: 1st Am Priv};{Redacted: 1st Am Priv};{Redacted: 1st Am Priv};Alex Kaplan <akaplan@mediamatters.org>;{Redacted: 1st Am Priv};{Redacted: 1st Am Priv};{Redacted: 1st Am Priv};{Redacted: 1st Am Priv};Alex Paterson <apaterson@mediamatters.org>;{Redacted: 1st Am Priv};{Redacted: 1st Am Priv};Ben Dimiero <bdimiero@mediamatters.org>;{Redacted: 1st Am Priv};{Redacted: 1st Am Priv};{Redacted: 1st Am Priv};Brennan Suen <bsuen@mediamatters.org>;{Redacted: 1st Am Priv};{Redacted: 1st Am Priv};{Redacted: 1st Am Priv};{Redacted: 1st Am Priv};{Redacted: 1st Am Priv};{Redacted: 1st Am Priv};Carly Evans <cevans@mediamatters.org>;{Redacted: 1st Am Priv};{Redacted: 1st Am Priv};{Redacted: 1st Am Priv};{Redacted: 1st Am Priv};{Redacted: 1st Am Priv};{Redacted: 1st Am Priv};{Redacted: 1st Am Priv};{Redacted: 1st Am Priv};{Redacted: 1st Am Priv};{Redacted: 1st Am Priv};{Redacted: 1st Am Priv};{Redacted: 1st Am Priv};{Redacted: 1st Am Priv};{Redacted: 1st Am Priv};Faith Branch <fbranch@mediamatters.org>;{Redacted: 1st Am Priv};Gabriel Capuano <gcapuano@mediamatters.org>;Hiwot Hailu <hhailu@mediamatters.org>;{Redacted: 1st Am Priv};{Redacted: 1st Am Priv};{Redacted: 1st Am Priv};{Redacted: 1st Am Priv} | 12/21/2022 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing identity information would chill individuals' First Amendment speech and association rights. |

14

Supp. Appx 090

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Confidentiality | Privilege Type | Privilege Note |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Priv{;}Redacted: 1st Am | | | | |
| | | | | | | Priv{;}Redacted: 1st Am | | | | |
| | | | | | | Priv{;}Redacted: 1st Am | | | | |
| | | | | | | Priv{;}Redacted: 1st Am | | | | |
| | | | | | | Priv{;}Redacted: 1st Am | | | | |
| | | | | | | Priv{;}Redacted: 1st Am | | | | |
| | | | | | | Priv{;}Redacted: 1st Am | | | | |
| | | | | | | Priv{;}Redacted: 1st Am | | | | |
| | | | | | | Priv{;}Redacted: 1st Am | | | | |
| | | | | | | Priv{;}Redacted: 1st Am | | | | |
| | | | | | | Priv{;}Redacted: 1st Am | | | | |
| | | | | | | Priv{;}Julie Millican | | | | |
| | | | | | | <jmillican@mediamatters.org>;{R edacted: 1st Am Priv};{Redacted: 1st Am Priv};{Redacted: 1st Am Priv};{Redacted: 1st Am | | | | |
| | | | | | | Priv};{Redacted: 1st Am | | | | |
| | | | | | | Priv};{Redacted: 1st Am | | | | |
| | | | | | | Priv};{Redacted: 1st Am | | | | |
| | | | | | | Priv};{Redacted: 1st Am | | | | |
| | | | | | | Priv};{Redacted: 1st Am | | | | |
| | | | | | | Priv};{Redacted: 1st Am | | | | |
| | | | | | | Priv};{Redacted: 1st Am | | | | |
| | | | | | | Priv};{Redacted: 1st Am | | | | |
| | | | | | | Priv};Kayla Gogarty | | | | |
| | | | | | | <kgogarty@mediamatters.org>;{R edacted: 1st Am Priv};Lauren Cross | | | | |
| | | | | | | <lcross@mediamatters.org>;{Red acted: 1st Am Priv};{Redacted: 1st Am Priv};{Redacted: 1st Am | | | | |
| | | | | | | Priv};Laura Keiter | | | | |
| | | | | | | <lkeiter@mediamatters.org>;{Red acted: 1st Am Priv};{Redacted: 1st Am Priv};{Redacted: 1st Am | | | | |
| | | | | | | Priv};{Redacted: 1st Am | | | | |
| | | | | | | Priv};{Redacted: 1st Am | | | | |
| | | | | | | Priv};{Redacted: 1st Am | | | | |
| | | | | | | Priv};{Redacted: 1st Am | | | | |
| | | | | | | Priv};{Redacted: 1st Am | | | | |
| | | | | | | Priv};{Redacted: 1st Am | | | | |
| | | | | | | Priv};{Redacted: 1st Am | | | | |
| | | | | | | Priv};{Redacted: 1st Am | | | | |
| | | | | | | Priv};Madeline Peltz | | | | |
| | | | | | | <mpeltz@mediamatters.org>;{Red acted: 1st Am Priv};{Redacted: 1st Am Priv};{Redacted: 1st Am | | | | |
| | | | | | | Priv};{Redacted: 1st Am | | | | |
| | | | | | | Priv};{Redacted: 1st Am | | | | |
| | | | | | | Priv};{Redacted: 1st Am | | | | |
| | | | | | | Priv};Natalie Mathes | | | | |
| | | | | | | <nmathes@mediamatters.org>;{R edacted: 1st Am Priv};{Redacted: 1st Am Priv};Olivia Little | | | | |
| | | | | | | <olittle@mediamatters.org>;{Red | | | | |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Confidentiality | Privilege Type | Privilege Note |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | acted: 1st Am Priv}; Pamela Vogel <pvogel@mediamatters.org>; {Redacted: 1st Am Priv}; {Redacted: 1st Am Priv}; {Redacted: 1st Am Priv}; {Redacted: 1st Am Priv}; Ruby Savvy <rsavvy@mediamatters.org>;Rebecca Sturtevant <ssturtevant@mediamatters.org>; Rachel Tardiff <rtardiff@mediamatters.org>; {Redacted: 1st Am Priv}; {Redacted: 1st Am Priv}; {Redacted: 1st Am Priv}; {Redacted: 1st Am Priv}; {Redacted: 1st Am Priv}; Sharon Kann <skann@mediamatters.org>; {Redacted: 1st Am Priv}; {Redacted: 1st Am Priv}; {Redacted: 1st Am Priv}; {Redacted: 1st Am Priv}; {Redacted: 1st Am Priv}; {Redacted: 1st Am Priv}; {Redacted: 1st Am Priv}; {Redacted: 1st Am Priv}; {Redacted: 1st Am Priv}; {Redacted: 1st Am Priv} | | | | |
| MMFA_072387-MMFA_072388 | Redacted | Email | Andrea Alford <aalford@mediamatters.org> | {Redacted: 1st Am Priv} | | | 12/21/2022 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing confidential coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072389-MMFA_072390 | Redacted | Email | {Redacted: 1st Am Priv} | <aalford@mediamatters.org> | | | 12/21/2022 | | First Amendment Privilege | Redacted email address of non-MMFA employee who is part of an organization that collaborates with MMFA research and advocacy projects.<br><br>First Amendment Privilege: Disclosing confidential coalition information would chill individual's First Amendment speech and association rights. |
| MMFA_072391-MMFA_072392 | Redacted | Email | Andrea Alford <aalford@mediamatters.org> | undisclosed-recipients: | | {Redacted: 1st Am Priv} | 12/21/2022 | | First Amendment Privilege | Redacted email address of non-MMFA employee who is part of an organization that collaborates with MMFA research and advocacy projects.<br><br>First Amendment Privilege: Disclosing confidential coalition information would chill individual's First Amendment speech and association rights. |

16

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Confidentiality | Privilege Type | Privilege Note |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_072393 | Redacted | Text | | | | | 12/21/2022 | | First Amendment Privilege | Redacted email address of non-MMFA employee who is part of an organization that collaborates with MMFA research and advocacy projects.<br><br>First Amendment Privilege: Disclosing confidential coalition information would chill individual's First Amendment speech and association rights. |
| MMFA_072394-MMFA_072395 | Redacted | Email | Andrea Alford <aalford@mediamatters.org> | [Redacted: 1st Am Priv] | | | 12/21/2022 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072396-MMFA_072400 | Redacted | Email | Andrea Alford <aalford@mediamatters.org> | [Redacted: 1st Am Priv] | | | 1/12/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072401 | Withheld | | | | | | | Confidential information subject to protective order | First Amendment Privilege | Annual report outlining MMFA's strategy for research and advocacy from 2023-2024. The contents of the document are unrelated to research for the November and 17, 2023 articles or advertisement placement on X.<br><br>First Amendment Privilege: The document contains sensitive information pertaining to the organization's mission and strategy protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech. |
| MMFA_072402 | Withheld | | | | | | | Confidential information subject to protective order | First Amendment Privilege | Annual report outlining MMFA's strategy for research and advocacy from 2023-2024. The contents of the document are unrelated to research for the November and 17, 2023 articles or advertisement placement on X.<br><br>First Amendment Privilege: The document contains sensitive information pertaining to the organization's mission and strategy protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech. |
| MMFA_072403 | Withheld | | | | | | | Confidential information subject to protective order | First Amendment Privilege | Annual report outlining MMFA's strategy for research and advocacy from 2023-2024. The contents of the document are unrelated to research for the November and 17, 2023 articles or advertisement placement on X.<br><br>First Amendment Privilege: The document contains sensitive information pertaining to the organization's mission and strategy protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech. |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Confidentiality | Privilege Type | Privilege Note |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_072404 | Withheld | | | | | | | Confidential information subject to protective order | First Amendment Privilege | Annual report outlining MMFA's strategy for research and advocacy from 2023-2024. The contents of the document are unrelated to research for the November and 17, 2023 articles or advertisement placement on X.<br><br>First Amendment Privilege: The document contains sensitive information pertaining to the organization's mission and strategy protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech. |
| MMFA_072405 | Withheld | | | | | | | Confidential information subject to protective order | First Amendment Privilege | Annual report outlining MMFA's strategy for research and advocacy from 2023-2024. The contents of the document are unrelated to research for the November and 17, 2023 articles or advertisement placement on X.<br><br>First Amendment Privilege: The document contains sensitive information pertaining to the organization's mission and strategy protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech. |
| MMFA_072406 | Withheld | | | | | | | Confidential information subject to protective order | First Amendment Privilege | Annual report outlining MMFA's strategy for research and advocacy from 2023-2024. The contents of the document are unrelated to research for the November and 17, 2023 articles or advertisement placement on X.<br><br>First Amendment Privilege: The document contains sensitive information pertaining to the organization's mission and strategy protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech. |
| MMFA_072407 | Withheld | | | | | | | Confidential information subject to protective order | First Amendment Privilege | Annual report outlining MMFA's strategy for research and advocacy from 2023-2024. The contents of the document are unrelated to research for the November and 17, 2023 articles or advertisement placement on X.<br><br>First Amendment Privilege: The document contains sensitive information pertaining to the organization's mission and strategy protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech. |
| MMFA_072408 | Withheld | | | | | | | Confidential information subject to protective order | First Amendment Privilege | Annual report outlining MMFA's strategy for research and advocacy from 2023-2024. The contents of the document are unrelated to research for the November and 17, 2023 articles or advertisement placement on X.<br><br>First Amendment Privilege: The document contains sensitive information pertaining to the organization's mission and strategy protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech. |
| MMFA_072409 | Withheld | | | | | | | Confidential information subject to protective order | First Amendment Privilege | Annual report outlining MMFA's strategy for research and advocacy from 2023-2024. The contents of the document are unrelated to research for the November and 17, 2023 articles or advertisement placement on X.<br><br>First Amendment Privilege: The document contains sensitive information pertaining to the organization's mission and strategy protected by the First Amendment speech. |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Confidentiality | Privilege Type | Privilege Note |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | privilege, the production of which would chill Defendants' exercise of their First Amendment speech. |
| MMFA_072410 | Withheld | | | | | | | Confidential information subject to protective order | First Amendment Privilege | Annual report outlining MMFA's strategy for research and advocacy from 2023-2024. The contents of the document are unrelated to research for the November 9 and 17, 2023 articles or advertisement placement on X. <br><br> First Amendment Privilege: The document contains sensitive information pertaining to the organization's mission and strategy protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech. |
| MMFA_072411 | Withheld | | | | | | | Confidential information subject to protective order | First Amendment Privilege | Annual report outlining MMFA's strategy for research and advocacy from 2023-2024. The contents of the document are unrelated to research for the November 9 and 17, 2023 articles or advertisement placement on X. <br><br> First Amendment Privilege: The document contains sensitive information pertaining to the organization's mission and strategy protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech. |
| MMFA_072412 | Withheld | | | | | | | Confidential information subject to protective order | First Amendment Privilege | Annual report outlining MMFA's strategy for research and advocacy from 2023-2024. The contents of the document are unrelated to research for the November 9 and 17, 2023 articles or advertisement placement on X. <br><br> First Amendment Privilege: The document contains sensitive information pertaining to the organization's mission and strategy protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech. |
| MMFA_072413 | Withheld | | | | | | | Confidential information subject to protective order | First Amendment Privilege | Annual report outlining MMFA's strategy for research and advocacy from 2023-2024. The contents of the document are unrelated to research for the November 9 and 17, 2023 articles or advertisement placement on X. <br><br> First Amendment Privilege: The document contains sensitive information pertaining to the organization's mission and strategy protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech. |
| MMFA_072414-MMFA_072418 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 1/27/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to. <br><br> First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |

19

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Confidentiality | Privilege Type | Privilege Note |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_072430-MMFA_072432 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 1/30/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072451 | Withheld | | | | | | | Confidential information subject to protective order | First Amendment Privilege | Annual report outlining MMFA's strategy for research and advocacy from 2023-2024. The contents of the document are unrelated to research for the November 10 and 17, 2023 articles or advertisement placement on X.<br><br>First Amendment Privilege: The document contains sensitive information pertaining to the organization's mission and strategy protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech |
| MMFA_072453-MMFA_072456 | Redacted | Email | Lexi Ginsberg <lginsberg@mediamatters.org> | [Redacted: 1st Am Priv] | | | 3/30/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072457-MMFA_072461 | Redacted | Email | Lexi Ginsberg <lginsberg@mediamatters.org> | [Redacted: 1st Am Priv] | | | 3/30/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072462-MMFA_072466 | Redacted | Email | Lexi Ginsberg <lginsberg@mediamatters.org> | [Redacted: 1st Am Priv] | | | 3/30/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072467-MMFA_072469 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 4/18/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072470-MMFA_072472 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 4/18/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072473-MMFA_072475 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 4/18/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public |

20

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Confidentiality | Privilege Type | Privilege Note |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072476-MMFA_072481 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 4/20/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072482-MMFA_072487 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 4/20/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072488-MMFA_072494 | Redacted | Email | Andrea Alford via groups.io <aalford+mediamatters.org@groups.io> | [Redacted: 1st Am Priv] | | | 4/28/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072495-MMFA_072501 | Redacted | Email | Andrea Alford <aalford@mediamatters.org> | [Redacted: 1st Am Priv] | | | 4/28/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072502-MMFA_072508 | Redacted | Email | Andrea Alford <aalford@mediamatters.org> | [Redacted: 1st Am Priv] | | | 4/28/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072509-MMFA_072510 | Redacted | Email | Andrea Alford via groups.io <aalford+mediamatters.org@groups.io> | [Redacted: 1st Am Priv] | | | 5/9/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072511-MMFA_072512 | Redacted | Email | Andrea Alford <aalford@mediamatters.org> | [Redacted: 1st Am Priv] | | | 5/9/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |

21

| Bates Number | Status | Docu ment Type | From | To | CC | BCC | Date | Confidentiality | Privilege Type | Privilege Note |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_072513-MMFA_072514 | Redacted | Email | Andrea Alford <aalford@mediamatters.org> | [Redacted: 1st Am Priv] | | | 5/9/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.  First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072515-MMFA_072522 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 5/11/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.  First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072523-MMFA_072530 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 5/11/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.  First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072531-MMFA_072538 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 5/11/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.  First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072539-MMFA_072545 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 5/18/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.  First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072546-MMFA_072552 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 5/18/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.  First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072553-MMFA_072559 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 5/18/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.  First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072560-MMFA_072561 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 5/24/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.  First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |

22

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Confidentiality | Privilege Type | Privilege Note |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_072562-MMFA_072571 | Redacted | Email | Priya Singh <psingh6@mediamatters.org> | [Redacted: 1st Am Priv] | | | 6/8/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072572-MMFA_072577 | Redacted | Email | Lexi Ginsberg <lginsberg@mediamatters.org> | [Redacted: 1st Am Priv] | | | 6/15/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072578-MMFA_072583 | Redacted | Email | Lexi Ginsberg <lginsberg@mediamatters.org> | [Redacted: 1st Am Priv] | | | 6/15/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072584-MMFA_072589 | Redacted | Email | Lexi Ginsberg <lginsberg@mediamatters.org> | [Redacted: 1st Am Priv] | | | 6/15/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072590-MMFA_072597 | Redacted | Email | Priya Singh <psingh6@mediamatters.org> | [Redacted: 1st Am Priv] | | | 6/22/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072598-MMFA_072605 | Redacted | Email | Priya Singh <psingh6@mediamatters.org> | [Redacted: 1st Am Priv] | | | 6/22/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072606-MMFA_072613 | Redacted | Email | Priya Singh <psingh6@mediamatters.org> | [Redacted: 1st Am Priv] | | | 6/22/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072614-MMFA_072620 | Redacted | Email | [Redacted: 1st Am Priv] | [Redacted: 1st Am Priv] | | | 6/28/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to as well as those for other organizations in the coalition.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |

23

Supp. Appx 099

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Confidentiality | Privilege Type | Privilege Note |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_072621-MMFA_072627 | Redacted | Email | [Redacted: 1st Am Priv] | [Redacted: 1st Am Priv] | | | 6/28/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to as well as those for other organizations in the coalition.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072628-MMFA_072634 | Redacted | Email | [Redacted: 1st Am Priv] | [Redacted: 1st Am Priv] | | | 6/28/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to as well as those for other organizations in the coalition.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072635-MMFA_072642 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 7/7/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072643-MMFA_072650 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 7/20/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072651-MMFA_072659 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 7/27/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072660-MMFA_072668 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 7/27/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072669-MMFA_072677 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 7/27/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072678-MMFA_072679 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 7/28/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public |

24

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Confidentiality | Privilege Type | Privilege Note |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072680-MMFA_072681 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 7/28/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072682-MMFA_072683 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 7/28/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072684-MMFA_072685 | Redacted | Email | Lexi Ginsberg <lginsberg@mediamatters.org> | [Redacted: 1st Am Priv] | | | 8/1/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072686-MMFA_072687 | Redacted | Email | Lexi Ginsberg <lginsberg@mediamatters.org> | [Redacted: 1st Am Priv] | | | 8/1/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072688-MMFA_072689 | Redacted | Email | Lexi Ginsberg <lginsberg@mediamatters.org> | [Redacted: 1st Am Priv] | | | 8/1/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072690-MMFA_072696 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 8/3/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072697-MMFA_072703 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 8/3/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |

Supp. Appx 100

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Confidentiality | Privilege Type | Privilege Note |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_072704-MMFA_072710 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 8/3/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to. First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072711-MMFA_072719 | Redacted | Email | [Redacted: 1st Am Priv] | [Redacted: 1st Am Priv] | | | 8/9/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to as well as those for other organizations in the coalition. First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072720-MMFA_072728 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 8/10/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to. First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072729-MMFA_072737 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 8/10/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to. First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072738-MMFA_072746 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 8/10/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to. First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072747-MMFA_072752 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 8/17/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to. First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072753-MMFA_072758 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 8/17/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to. First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072759-MMFA_072764 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 9/7/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to. First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Confidentiality | Privilege Type | Privilege Note |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_072765-MMFA_072770 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 9/7/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to. First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072771-MMFA_072777 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 9/14/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to. First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072778-MMFA_072784 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 9/14/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to. First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072785-MMFA_072791 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 9/14/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to. First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072792-MMFA_072793 | Redacted | Email | Andrea Alford via groups.io <aalford=mediamatters.org@groups.io> | [Redacted: 1st Am Priv] | | | 10/10/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to. First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072794-MMFA_072795 | Redacted | Email | Andrea Alford <aalford@mediamatters.org> | [Redacted: 1st Am Priv] | | | 10/10/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to. First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072796-MMFA_072797 | Redacted | Email | Andrea Alford <aalford@mediamatters.org> | [Redacted: 1st Am Priv] | | | 10/10/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to. First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072798-MMFA_072799 | Redacted | Email | Andrea Alford <aalford@mediamatters.org> | [Redacted: 1st Am Priv] | | | 10/10/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to. First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Confidentiality | Privilege Type | Privilege Note |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_072800-MMFA_072801 | Redacted | Email | Andrea Alford <aalford@mediamatters.org> | [Redacted: 1st Am Priv] | | | 10/10/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072802-MMFA_072804 | Redacted | Email | [Redacted: 1st Am Priv] | [Redacted: 1st Am Priv] | | | 10/11/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072805-MMFA_072806 | Redacted | Email | [Redacted: 1st Am Priv] | [Redacted: 1st Am Priv] | | | 10/12/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072807-MMFA_072809 | Redacted | Email | Andrea Alford <aalford@mediamatters.org> | [Redacted: 1st Am Priv] | | | 10/13/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072810-MMFA_072819 | Redacted | Email | [Redacted: 1st Am Priv] | [Redacted: 1st Am Priv] | | | 10/20/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to as well as those for other organizations in the coalition.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072820-MMFA_072829 | Redacted | Email | [Redacted: 1st Am Priv] | [Redacted: 1st Am Priv] | | | 10/20/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to as well as those for other organizations in the coalition.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072830-MMFA_072836 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 11/2/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072847-MMFA_072850 | Redacted | Email | Lexi Ginsberg <lginsberg@mediamatters.org> | [Redacted: 1st Am Priv] | | | 11/9/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Confidentiality | Privilege Type | Privilege Note |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072851-MMFA_072854 | Redacted | Email | Lexi Ginsberg <lginsberg@mediamatters.org> | [Redacted: 1st Am Priv] | | | 11/9/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072855-MMFA_072859 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 11/16/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072860-MMFA_072864 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 11/16/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072865-MMFA_072866 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 11/17/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072867-MMFA_072868 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 11/17/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072869-MMFA_072870 | Redacted | Email | Priya Singh <psingh@mediamatters.org> | [Redacted: 1st Am Priv] | | | 11/17/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to as well as those for other organizations in the coalition.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072871-MMFA_072878 | Redacted | Email | [Redacted: 1st Am Priv] | [Redacted: 1st Am Priv] | | | 11/17/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Confidentiality | Privilege Type | Privilege Note |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_072879 | Withheld | | | | | | | Confidential information subject to protective order | Attorney-Client Communication | Conversation between MMFA executives regarding the present litigation and reflecting legal advice and requests from counsel.<br><br>Communications reflect and/or pertain to legal guidance given by counsel related to the present litigation as well as internal communications regarding seeking legal advice from counsel. |
| MMFA_072880 | Withheld | | | | | | | Confidential attorney eyes only information subject to protective order | Attorney-Client Communication; Attorney Work Product | Communications related to internal finance report generated at the request of counsel for use in the present litigation.<br><br>Attorney-Client Privilege: Communications reflect and/or pertain to legal guidance given by counsel related to the present litigation.<br><br>Attorney Work Product: Report was created at the direction of counsel for use in the present litigation and reflects attorney mental impressions, legal theories, and strategy. |
| MMFA_072881 | Withheld | | | | | | | Confidential attorney eyes only information subject to protective order | Attorney-Client Communication; Attorney Work Product | Internal finance report generated at the request of counsel for use in the present litigation.<br><br>Attorney-Client Privilege: Communications reflect and/or pertain to legal guidance given by counsel related to the present litigation.<br><br>Attorney Work Product: Report was created at the direction of counsel for use in the present litigation and reflects attorney mental impressions, legal theories, and strategy. |
| MMFA_072882 | Withheld | | | | | | | Confidential attorney eyes only information subject to protective order | Attorney-Client Communication; Attorney Work Product | Internal finance report generated at the request of counsel for use in the present litigation.<br><br>Attorney-Client Privilege: Communications reflect and/or pertain to legal guidance given by counsel related to the present litigation.<br><br>Attorney Work Product: Report was created at the direction of counsel for use in the present litigation and reflects attorney mental impressions, legal theories, and strategy. |
| MMFA_072883 | Withheld | | | | | | | Confidential attorney eyes only information subject to protective order | Attorney-Client Communication; Attorney Work Product | Communications related to internal finance report generated at the request of counsel for use in the present litigation.<br><br>Attorney-Client Privilege: Communications reflect and/or pertain to legal guidance given by counsel related to the present litigation.<br><br>Attorney Work Product: Report was created at the direction of counsel for use in the present litigation and reflects attorney mental impressions, legal theories, and strategy. |

30

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Confidentiality | Privilege Type | Privilege Note |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_072884 | Withheld | | | | | | | Confidential attorney eyes only information subject to protective order | Attorney-Client Communications; Attorney Work Product | Internal finance report generated at the request of counsel for use in the present litigation. Attorney-Client Privilege: Communications reflect and pertain to legal guidance given by counsel related to present litigation. Attorney Work Product: Report was created at the direction of counsel for use in the present litigation and reflects attorney mental impressions, legal theories, and strategy. |
| MMFA_072885 | Withheld | | | | | | | Confidential attorney eyes only information subject to protective order | Attorney-Client Communications; Attorney Work Product | Communications related to internal finance report generated at the request of counsel for use in the present litigation. Attorney-Client Privilege: Communications reflect and pertain to legal guidance given by counsel related to present litigation. Attorney Work Product: Report was created at the direction of counsel for use in the present litigation and reflects attorney mental impressions, legal theories, and strategy. |
| MMFA_072886 | Withheld | | | | | | | Confidential attorney eyes only information subject to protective order | Attorney-Client Communications; Attorney Work Product | Communications related to internal finance report generated at the request of counsel for use in the present litigation. Attorney-Client Privilege: Communications reflect and pertain to legal guidance given by counsel related to present litigation. Attorney Work Product: Report was created at the direction of counsel for use in the present litigation and reflects attorney mental impressions, legal theories, and strategy. |
| MMFA_072887 | Withheld | | | | | | | Confidential attorney eyes only information subject to protective order | Attorney-Client Communications; Attorney Work Product | Internal finance report generated at the request of counsel for use in the present litigation. Attorney-Client Privilege: Communications reflect and pertain to legal guidance given by counsel related to present litigation. Attorney Work Product: Report was created at the direction of counsel for use in the present litigation and reflects attorney mental impressions, legal theories, and strategy. |
| MMFA_072888-MMFA_072897 | Redacted | Email | [Redacted: 1st Am Priv] | [Redacted: 1st Am Priv] | | | 12/1/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to as well as those for other organizations in the coalition. First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |

31

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Confidentiality | Privilege Type | Privilege Note |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_072898; MMFA_072907 | Redacted | Email | [Redacted: 1st Am Priv] | [Redacted: 1st Am Priv] | | | 12/1/2023 | | First Amendment Privilege | Redacted email address, name, and contact information of coalition of issue-based organizations MMFA belongs to as well as those for other organizations in the coalition.<br><br>First Amendment Privilege: Disclosing non-public coalition information would chill members' First Amendment speech and association rights. |
| MMFA_072908 | Withheld | | | | | | | Confidential attorney eyes only information subject to protective order | Attorney-Client Communication; Attorney Work Product | Communications related to internal  finance report generated at the request of counsel  for use in the present litigation.<br><br>Attorney-Client Privilege: Communications reflect and pertain to legal guidance given by counsel related to the present litigation.<br><br>Attorney Work Product: Report was created at the direction of counsel for use in the present litigation and reflects attorney mental impressions, legal theories, and strategy. |
| MMFA_072909 | Withheld | | | | | | | Confidential attorney eyes only information subject to protective order | Attorney-Client Communication; Attorney Work Product | Internal finance report generated at the request of counsel for use in the present litigation.<br><br>Attorney-Client Privilege: Communications reflect and pertain to legal guidance given by counsel related to the present litigation.<br><br>Attorney Work Product: Report was created at the direction of counsel for use in the present litigation and reflects attorney mental impressions, legal theories, and strategy. |
| MMFA_072910 | Withheld | | | | | | | Confidential attorney eyes only information subject to protective order | Attorney-Client Communication; Attorney Work Product | Communications related to internal  finance report generated at the request of counsel  for use in the present litigation.<br><br>Attorney-Client Privilege: Communications reflect and pertain to legal guidance given by counsel related to the present litigation.<br><br>Attorney Work Product: Report was created at the direction of counsel for use in the present litigation and reflects attorney mental impressions, legal theories, and strategy. |
| MMFA_072911 | Withheld | | | | | | | Confidential attorney eyes only information subject to protective order | Attorney-Client Communication; Attorney Work Product | Internal finance report generated at the request of counsel for use in the present litigation.<br><br>Attorney-Client Privilege: Communications reflect and pertain to legal guidance given by counsel related to the present litigation.<br><br>Attorney Work Product: Report was created at the direction of counsel for use in the present litigation and reflects attorney mental impressions, legal theories, and strategy. |

32

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Confidentiality | Privilege Type | Privilege Note |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_072912 | Withheld | | | | | | | Confidential attorney eyes only information subject to protective order | Attorney-Client Communication; Attorney Work Product | Communications related to internal finance report generated at the request of counsel for use in the present litigation. Attorney-Client Privilege: Communications reflect and pertain to legal guidance given by counsel related to the present litigation. Attorney Work Product: Report was created at the direction of counsel for use in the present litigation and reflects attorney mental impressions, legal theories, and strategy. |
| MMFA_072913 | Withheld | | | | | | | Confidential information subject to protective order | Attorney-Client Communication | Communications with counsel regarding employment law issue. Attorney-Client Privilege: Communications reflect attorney guidance and legal advice. |
| MMFA_072914 | Withheld | | | | | | | Confidential information subject to protective order | Attorney-Client Communication | Communications with counsel regarding employment law issue. Attorney-Client Privilege: Communications reflect attorney guidance and legal advice. |
| MMFA_072915 | Withheld | | | | | | | Confidential information subject to protective order | Attorney-Client Communication | Communications with counsel regarding employment law issue. Attorney-Client Privilege: Communications reflect attorney guidance and legal advice. |

33

# Tab 9

# PRENTICE v. McPHILEMY

### District of Columbia
### Superior Court

DAVID PRENTICE and ALBERT WESLEY PRENTICE v. SEAN McPHILEMY, BOX PRODUCTIONS, and ROBERT RINEHART PUBLISHERS, No. 98CA0004309, May 5, 1999

## REGULATION OF MEDIA CONTENT

**1. Defamation — Choice of law (§11.15)**

**Defamation — Protection of sources (§11.50)**

## NEWSGATHERING

**Forced disclosure of information — Disclosure of sources — In civil actions (§60.0303)**

**Forced disclosure of information — Disclosure of unpublished information — In civil actions (§60.1003)**

**Forced disclosure of information — Statutory privilege ("shield" laws) (§60.25)**

Libel plaintiffs failed to demonstrate that application of District of Columbia's Shield Law, D.C. Code § 16-4701, to their action based on statements made about them in book would cause manifest injustice to them, although defendant author is nonresident of District of Columbia, events in book occurred elsewhere, and documents in question were created prior to effective date of act, since plaintiffs chose to file suit in District of Columbia because book was published, publicized, and disseminated there.

## REGULATION OF MEDIA CONTENT

**2. Defamation — Protection of sources (§11.50)**

## NEWSGATHERING

**Forced disclosure of information — Disclosure of sources — In civil actions (§60.0303)**

**Forced disclosure of information — Disclosure of unpublished information — In civil actions (§60.1003)**

**Forced disclosure of information — Statutory privilege ("shield" laws) (§60.25)**

Exception to prohibition on compelled disclosure contained in District of Columbia's Shield Law, D.C. Code § 16-4702(1), does not apply to libel plaintiffs' action against book defendants, since plaintiffs failed to demonstrate, by clear and convincing evidence, that overriding public interest in disclosure exists, and since language of act does not contain express exemption for defamation cases or for libel defendants.

## REGULATION OF MEDIA CONTENT

**3. Defamation — Protection of sources (§11.50)**

## NEWSGATHERING

**Forced disclosure of information — Disclosure of sources — In civil actions (§60.0303)**

**Forced disclosure of information — Disclosure of unpublished information — In civil actions (§60.1003)**

**Forced disclosure of information — Statutory privilege ("shield" laws) (§60.25)**

Defendant book author is protected by District of Columbia's Shield Law, D.C. Code § 16-4702(2), since he demonstrated that he obtained news or information "in course of professional activities" while he was employed by news media and engaged in newsgathering or news dissemination, and that information sought was not itself communicated in news media, with respect to information about confidential sources, with respect to some documents listed in defendant's privilege log, and with respect to items listed in plaintiffs' memorandum, but several items listed in privilege log and in plaintiffs' memorandum have not been identified with sufficient specificity to en-

able court to determine whether they are privileged.

Libel action against book publishers. On plaintiffs' amended motion to compel production of documents and responses to interrogatories from defendant, defendants' opposition to motion, plaintiffs' reply, and the parties' supplemental memoranda.

Plaintiffs' amended motion to compel production of documents and responses to interrogatories denied in part and granted in part.

William W. Taylor, Steven M. Salky, Elizabeth G. Taylor, and Kathy H. Ruemmler, of Zuckerman, Spaeder, Goldstein, Taylor & Kolker, Washington, D.C., for plaintiffs.

Elizabeth C. Koch, of Levine, Sullivan & Koch, Washington, D.C.; and Russell A. Smith, of The Law Offices of Russell Alexander Smith, New York, N.Y., for defendants.

*Full Text of Opinion*

Alprin, J.:

*ORDER*

Upon consideration of plaintiffs' Amended Motion to Compel Production of Documents and Responses to Interrogatories from Defendant Sean McPhilemy, defendants' Opposition thereto, plaintiffs' Reply, and the parties' Supplemental Memoranda, the court concludes that (1) the District of Columbia's Free Flow of Information Act Applies to the production of documents and responses to Interrogatories previously withheld by defendant McPhilemy, (2) defendant McPhilemy may assert the "newspersons' privilege" with respect to certain documents described in detail below and therefore need not comply with plaintiffs' requests for production of those documents, and (3) the court requires further information about the documents described in section IV before it can determine whether or not plaintiffs' Motion should be granted or denied with respect to those items.

*I. Overview*

Plaintiffs, David and Albert Prentice, ask the court to compel defendant, Sean

McPhilemy, to produce the documents previously withheld under the "newspersons' privilege." They contend that the documents in categories 2 through 8 and 14 through 25 of the privilege log must be produced.[1] In addition, plaintiffs ask that defendant McPhilemy be instructed to identify the names of "confidential sources" and respond fully to plaintiffs' Interrogatory nos. 1 and 2. Finally, they ask that McPhilemy be instructed to insure that all documents in his custody and control (or in the possession of Box Productions), such as those items identified as nos. 1 through 16 in plaintiffs' Memorandum of Points and Authorities in Support of Amended Motion to Compel Production of Documents and Responses to Interrogatories ("Memorandum"), p. 4-6, have been or will be produced to plaintiffs' counsel.

Plaintiffs contend that they are entitled to review defendant McPhilemy's notes and memoranda, as well as "the notes, memoranda, statements and recordings produced or obtained by researchers and producers working on McPhilemy's behalf," because those documents are relevant to a central issue in the case, namely, the truth or falsity of the allegations published about them in *The Committee: Political Assassination in Northern Ireland* ("The Committee") and the care, or lack thereof, that defendants took in publishing those accusations. Pls.' Motion, p. 3. Plaintiffs assert that McPhilemy has failed to adequately comply with the following requests. Document Production Request no. 2, which requested the production of "[a]ll documents containing or relating to information provided by any person concerning the subject matter of the television documentary or the book [*The Committee*] . . . .", Request no. 3, which sought production of "[a]ll documents relating to *The Committee* collected or prepared by Sean McPhilemy, Box Productions, or any person acting as an agent of McPhilemy or Box Productions, in the course of investigating, preparing, writing or producing the television documentary or the book," and finally, Request no. 5, which

---

[1] Item no. 25, also described as item no. 1 on p. 4 of plaintiffs' Memorandum (incorrectly referred to there as item no. 22), was apparently inadvertently produced to plaintiffs' counsel. *See* Plaintiffs' Reply, Exhibit A. Therefore, production of that document is no longer an issue.

sought production of "[a]ll documents obtained from any person who provided any information used, relied upon or referred to in the television documentary or the book. . . ." Pls.' Motion, p. 1-2.

On September 18, 1998, plaintiffs served their First Set of Interrogatories on defendant McPhilemy. They sought the identification of all sources relied upon for the allegations that plaintiffs were members of the assassination committee described in great detail in "The Committee" and the information provided by each source. On November 9, 1998, defendant McPhilemy produced seven videotapes of interviews with James Sands, the primary source on whom he relied. In addition, he has produced audiotapes and transcripts of meetings from which the allegedly defamatory statements were derived. Moreover, he has disclosed "thousands of pages of documents to plaintiffs [t]he vast majority [of which] are files of pleadings and correspondence from other libel cases relating to the book or the television documentary." [2] Pls.' Motion, p.4. However, plaintiffs contend that defendant has failed to provide any of the original documents consisting of "[n]otes and records of interviews of other witnesses, as well as, documents reflecting communications among the various people responsible for the production of the documentary or the book." Pls.' Motion, p. 4. Plaintiffs submit that these documents are vital because they would reveal McPhilemy's state of mind at the time the book was published and the fact that he and others had doubts about the credibility of the primary source, James Sands, and the information relied upon that is now at issue in this libel suit. Therefore, they assert that his responses to their interrogatories and requests for document production were inadequate and must now be supplemented.

On November 30, 1998, in accordance with General Instruction No. 3, defendants McPhilemy and Roberts Rinehart Publishers provided plaintiffs with a

privilege log.[3] The log cites the newspersons' privilege, the work product privilege, and the attorney-client privilege as the legal bases for defendants' refusal to produce certain specified documents.[4] Furthermore, in response to several interrogatories requesting the identification of sources who provided information to McPhilemy about the Prentices, McPhilemy refused to disclose such information on the ground that those sources were "confidential sources." Defendant McPhilemy contends that the information plaintiffs seek is unpublished information which he has no intention of using as evidence at trial and which is protected from disclosure under the Free Flow of Information Act of 1992, the District of Columbia's journalist shield law. D.C. Code §§16-4702 et seq. (1997 Repl.) (the "Act" or the "Shield Law"). Plaintiffs contest the applicability of the D.C. Shield Law and therefore seek disclosure of all documents previously withheld on the basis of the newspersons' privilege and ask the court to compel defendant McPhilemy to provide the names of all sources who provided information to defendant or his agents about David and Albert Prentice.

## II. *Applicability of the 1992 Free Flow of Information Act*

[1] Defendant McPhilemy contends that the requested documents are protected from disclosure under the newspersons' privilege contained in the D.C.

---

[2] From their review of the documents produced, plaintiffs were able to compile a list of discoverable but undisclosed documents. Although this is not a complete list of the undisclosed documents they seek, plaintiffs contend that defendant has the documents listed on pages 4 - 6 of their Memorandum in his custody and control and must produce them immediately.

---

[3] Subsequently, on January 21, 1999, plaintiffs received a revised privilege log. *See* Pls.' Motion, Attachment A. Defendant Box Productions was added as a defendant in this case after the court granted plaintiffs' permission to file an amended complaint. *See* January 14, 1999 Order.

[4] Originally, defendant relied on several English Court Rules as a basis for withholding documents identified as item nos. 22, 24 and 25 in the privilege log. Defendants' Opposition to Plaintiffs' Motion to Compel now concedes that the English Court Rules do not prevent disclosure of these documents. However, defendants assert that these documents are legitimately protected from disclosure under the newspersons' privilege. *See* Defs.' Opp., p. 11-12, n.1.

*Prentice v. McPhilemy*

Shield Law.[5] In contrast, plaintiffs assert that the Act is inapplicable to the documents withheld by defendants because choice of law principles require the court to apply the United Kingdom's laws regarding privilege.[6] The court does not agree. Plaintiffs chose to file their complaint in the District of Columbia knowing that the D.C. Shield Law was in effect at the time the suit was commenced. To obtain jurisdiction over defendant McPhilemy plaintiffs insisted the operative fact was his decision to publish, publicize and disseminate *The Committee* in the District of Columbia. Such actions, it is alleged, caused "tor-

tious injury" to the plaintiffs in the District of Columbia and made defendant McPhilemy subject to the laws of this jurisdiction. *See* Complaint ¶¶ 2 & 16. Now plaintiffs seek to prevent McPhilemy from invoking the benefits of the body of law invoked to obtain jurisdiction over him.

To support their contention, plaintiffs suggest that the Shield Law was not intended to apply to documents and information collected by a non-resident journalist, in a foreign jurisdiction, that pertain to events that occurred outside this jurisdiction. Pls.' Memorandum, p. 10. Rather, it was designed to encourage the free flow of information to foster the "fast paced" news gathering process, not to accord protection to a journalist who spent seven years preparing for the release of a non-fiction book.[7] Moreover, plaintiffs contend that the Act is inapplicable to many of the documents sought because it only applies to a person "employed by the news media and acting in an official news gathering capacity." For much of the seven year period, between the airing of the documentary in 1991, and the publication of the book in 1998, "defendant was neither 'employed by the media,' nor 'acting in an official new gathering capacity.' Instead, he was working on his own, attempting to collect evidence to corroborate the allegations he had broadcast in his 1991 documentary and to vindicate his damaged reputation."[8] Pls.' Memorandum, p. 11. Finally, they submit that some of the with-

---

[5] The Act applies to "any person who is or has been employed by the news media in a news gathering or news disseminating capacity." The statute defines "news media" to include "newspapers, magazines, journals, press associations, news agencies, wire services, radio, television, or any printed, photographic, mechanical, or electronic means of disseminating news and information to the public." D.C. Code §16-4701. The Act protects against compelled disclosure of:

(1) The source of any news or information procured by the person while employed by the news media and acting in an official news gathering capacity, whether or not the source has been promised confidentiality; or

(2) Any news or information procured by the person while employed by the news media in the course of pursuing professional activities that is not itself communicated in the news media, including any: (A) Notes; (B) Outtakes; (C) Photographs or photographic negatives; (D) Video or sound tapes; (E) Film; or (F) Other data, irrespective of its nature, not itself communicated in the news media. D.C. Code §16-4702.

[6] Plaintiffs submit that, under the "governmental interest" analyst, the United Kingdom clearly has the "most significant relationship" with the information gathering process that defendants now seek to protect. This is true, they argue, because the research occurred in the United Kingdom, the events occurred there, and the parties reside in the United Kingdom where such information would not be protected from disclosure. Therefore, defendant McPhilemy could not have expected that the information he now seeks to protect would be privileged under the laws of the United Kingdom as no such privilege exists. However, this argument fails to recognize the fact that defendant McPhilemy specifically chose to publish his book in the United States precisely because he knew United States libel laws and free speech protections offered him more protection than the laws of the United Kingdom.

[7] Several courts have refused to restrict the applicability of shield laws to encompass only "fast paced" news media. For example, in *United States v. Hubbard*, 493 F.Supp. 202 [5 Med.L.Rptr. 1719](D.D.C. 1979), the court rejected any distinction based on the fact that the journalist "ha[d] been subpoenaed regarding a book he [was] writing," because "the reporter's privilege must encompass all news gathering efforts, not simply those for newspapers." *Id.* at 205. *See also Desai v. Hirsh*, 954 F.2d 1408, 1412 [19 Med.L.Rptr. 1893] (7th Cir.) *cert. denied* 506 U.S. 865 (1992) ("We reject [the] contention that reporters who author books are not protected by the Illinois Shield Law). Similarly, in light of the board definitional language defining the term "news media," the court does not interpret the Act to apply exclusively to "fast paced" media. *See* note 5, *supra*.

[8] The court has concluded that defendant must provide additional information about several of the documents previously withheld to enable the court to properly respond to these concerns. This issue is addressed in detail in section IV, *infra*.

held documents and information were collected prior to the effective date of the Shield Law, and that the Act cannot be applied retroactively to protect information gathered prior to September 26, 1992, the date on which it became effective.

The court is not persuaded and concludes that the Act is clearly applicable in this situation. As defendants point out, none of the restrictions stated above is articulated in the language of the Act. The D.C. Council could easily have carved out exceptions for information gathered outside the District, by non-resident journalists, or about events that occurred elsewhere. Similarly, to impose such limitations would not further the primary purpose of the Act, namely, to encourage the free flow of information to residents of the District. Therefore, the court declines to adopt and to impose new limitations on the Act's applicability where the Council declined to do so.

The Act is similarly silent regarding its retroactive application to documents created prior to the effective date. However, the court agrees that "[s]ince the conduct proscribed by the Shield Law is compelled disclosure, the only relevant point on the issue of timing is the fact that the Act is in effect now . . . ." Defs.' Opp., p. 10. The court, in *Terex Corp. v. Fuisz*, CA92-941 (D.D.C. Oct. 7, 1994), reached a similar conclusion, reasoning that: "The Shield Law was in effect at the time this subpoena was issued. Moreover, the Supreme Court has held that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in a manifest injustice or there is a statutory direction or legislative history to the contrary." *Id.* at 95-96 (citations omitted). *See also Baker v. F & F Investment*, 470 F.2d 778, 781-82 [1 Med.L.Rptr. 2551] (2d Cir. 1972). The Shield Law and its legislative history are silent on the issue of retroactivity. Therefore, as there is no showing of manifest injustice to plaintiffs in applying the Shield Law to the instant situation, the court has concluded that the Free Flow of Information Act is applicable and will control.

### III. Applicability of the Exception to the Act's Prohibition on Compelled Disclosure

[2] Although section 16-4702(1) of the D.C. Shield Law "accords total protection to news sources, whether confidential or not, and whether disclosed to others or not," *Grunseth v. Marriott Corp.*, 868 F.Supp. 333, 336 [23 Med.L.Rptr. 1148] (D.D.C. 1994), the Act provides a limited exception that authorizes the court to compel disclosure "of news or information otherwise protected from disclosure under section 16-4702(2)" provided the proponent of disclosure demonstrates by clear and convincing evidence that:

(1) The news or information is relevant to a significant legal issue before a judicial, legislative, administrative, or other body that has the power to issue a subpoena;

(2) The news or information could not, with due diligence, be obtained by any alternative means; and

(3) There is an overriding public interest in the disclosure.

D.C. Code §16-4703. Plaintiffs, without conceding the applicability of the Act, insist that even if the Act applies to the requested documents, the court should compel production because they have satisfied the three-prong test and thus fall within the exception. As indicated at the hearing, the court agrees that plaintiffs have satisfied the first and second prong of the three-part test by clear and convincing evidence. The documents are clearly relevant to significant legal issues in this case. In addition, plaintiffs have demonstrated that they cannot obtain the documents by means other than through discovery obtained from defendant McPhilemy. English discovery rules prevent the solicitors who have received the requested documents through discovery in the libel cases brought in the United Kingdom from furnishing those documents to plaintiffs' American counsel. However, the court is not persuaded that plaintiffs have demonstrated, *by clear and convincing evidence*, that there is an "overriding public interest" in disclosure.

Plaintiffs alternatively express the paramount public interest at stake as the search for truth, the right of civil litigants to discover information "genuinely relevant to their lawsuit," and an individual's interest in protecting and defending his or her reputation. *Herbert v. Lando*, 441 U.S. 153, 169, 180 [4 Med.L.Rptr. 2575] (1979); *Lexington Herald-Leader Co. v. Beard*, 690 S.W.2d 374, 379 [11 Med.L.Rptr. 1376] (Ky. 1984); *Bauer v. Gannett Co., Inc.*, 557 N.W.2d 608, 611 [25 Med.L.Rptr. 1532] (Minn. Ct. App. 1997). Plaintiffs primarily rely on *Lando* to support their contention that the District's residents have an overriding public

15,[13] 16, 17,[14] 18[15] and 19-21 listed on defendants' privilege log are protected from compelled production. These items have not been identified with sufficient specificity to enable the court to determine when they were obtained, whether or not they were gathered in the course of McPhilemy's pursuit of professional activities, and whether or not they were ever communicated in the news media. Therefore, before the court can decide whether or not plaintiffs' requests should be granted or denied, defendant McPhilemy must provide additional information about item nos. 3-8 and 14-21 listed on defendants' privilege log. Specifically, to enable the court to ascertain whether or not these documents satisfy the statutory requirements, the court needs to know the date, author and any other information that may facilitate the resolution of this issue.

*Items 4-16 Listed on Pages 4-6 of Plaintiffs' Memorandum*

Finally, with respect to the items listed on pages 4-6 of plaintiffs' Memorandum, the court concludes that document nos. 9 and 15 are clearly protected by the Act and need not be produced to plaintiffs. Item 9 relates to McPhilemy and Box Production's primary researcher's notes of interviews with four sources. Item 15, a memo authored by Ben Hamilton and defendant McPhilemy, relates to news and information gathered in the course of pursuing professional activities, specifically research corroborating the accuracy

protect these documents from compelled production.

[13] Defendants' rely on several different legal bases for withholding item 15, a memo written by Ben Hamilton to David Lloyd, Jan Tomalin and defendant McPhilemy regarding a meeting with the RUC. However, from the information provided, none of the privileges cited appear to legitimate defendants' withholding this document. The defendants have not provided an adequate foundation on which the court can conclude that this memo falls within the parameters of the Shield Law.

[14] It is not clear to the court why documents, 16 and 17, memos to Channel 4 editors discussing a meeting with members of the RUC, would be protected under the Shield Law.

[15] With respect to item no. 18, production logs concerning the format of the Channel 4 documentary, the court lacks sufficient information to resolve the conflict surrounding this document. The court requires specific information describing the nature of the information contained in the production log and whether that information was ever communicated in the news media.

of a source's account of events to be reported in the documentary. As such, item nos. 9 and 15 are privileged under the Shield Law.[16]

However, with respect to the remaining items listed on pages 4-6 of plaintiffs' Memorandum (nos. 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, and 16), the court concludes that defendant should either produce these documents to plaintiffs' counsel or articulate the specific legal basis justifying non-disclosure.[17] If defendant selects the latter course, he must provide additional information, such as the date the document was created, who the author(s) and recipient(s) of the documents were, and any other information that will aid the court in determining whether or not the privilege applies to the document at issue.

The following chart provides a summary of the court's ruling with respect to each of plaintiffs' document requests:

| Document Requested | Court's Ruling |
| --- | --- |
| No. 2 Privilege Log | Protected by Shield Law |
| No. 3 Privilege Log | Def. to Provide More Information |
| No. 4 Privilege Log | Def. to Provide More Information |
| No. 5 Privilege Log | Def. to Provide More Information |
| No. 6 Privilege Log | Def. to Provide More Information |
| No. 7 Privilege Log | Def. to Provide More Information |
| No. 8 Privilege Log | Def. to Provide More Information |
| No. 14 Privilege Log | Def. to Provide More Information |
| No. 15 Privilege Log | Def. to Provide More Information |
| No. 16 Privilege Log | Def. to Provide More Information |
| No. 17 Privilege Log | Def. to Provide More Information |
| No. 18 Privilege Log | Def. to Provide More Information |
| No. 19 Privilege Log | Def. to Provide More Information |
| No. 20 Privilege Log | Def. to Provide More Information |
| No. 21 Privilege Log | Def. to Provide More Information |
| No. 22 Privilege Log | Protected by Shield Law |

[16] The court has not addressed item nos. 1-3 in the discussion that follows because no. 1 (identified in the memorandum as "Item 22 on the privilege log," but in reality is item no. 25 on the privilege log) was produced inadvertently. *See supra*, n. 1. Item no. 2 in the memorandum is referred to as "Item 25 on privilege log," but it is in fact item no. 22. As noted previously, the court has already determined that this item is protected from compelled production under the Shield Law. Similarly, item no. 3 was listed on defendant's privilege log as item no. 24. The court has determined that this document is also similarly protected from compelled disclosure as it was prepared a week before the airing of the documentary, submitted to the Channel 4 director, and referred to the program's principal confidential source.

[17] These items do not appear to be listed on defendants' privilege log. Although the court recognizes that these documents may be subsumed within the broad categories of documents identified in the log, the court will require defendants to articulate the specific legal basis relied upon to substantiate their assertion of privilege with respect to each document requested. Otherwise, the document must be produced to plaintiffs' counsel.

| No. 23 Privilege Log | Protected by Shield Law |
| No. 24 Privilege Log | Protected by Shield Law |
| No. 25 Privilege Log | Previously Disclosed |
| No. 1 Pls.' Memorandum | Previously Disclosed/Item 25 Above |
| No. 2 Pls.' Memorandum | Protected by Act/Item 22 Above |
| No. 3 Pls.' Memorandum | Protected by Act/Item 24 Above |
| No. 4 Pls.' Memorandum | Def. to Provide More Information |
| No. 5 Pls.' Memorandum | Def. to Provide More Information |
| No. 6 Pls.' Memorandum | Def. to Provide More Information |
| No. 7 Pls.' Memorandum | Def. to Provide More Information |
| No. 8 Pls.' Memorandum | Def. to Provide More Information |
| No. 9 Pls.' Memorandum | Protected by Shield Law |
| No. 10 Pls.' Memorandum | Def. to Provide More Information |
| No. 11 Pls.' Memorandum | Def. to Provide More Information |
| No. 12 Pls.' Memorandum | Def. to Provide More Information |
| No. 13 Pls.' Memorandum | Def. to Provide More Information |
| No. 14 Pls.' Memorandum | Def. to Provide More Information |
| No. 15 Pls.' Memorandum | Protected by Shield Law |
| No. 16 Pls.' Memorandum | Def. to Provide More Information |

Accordingly, it is this 5 day of May, 1999,

ORDERED, that plaintiffs' Amended Motion to Compel Production of Documents and Responses to Interrogatories from Defendant Sean McPhilemy is Denied with respect to plaintiffs' request that defendant identify the names of confidential sources in accordance with the questions propounded in plaintiffs' Interrogatory Nos. 1 and 2; it is

FURTHER ORDERED, that plaintiffs' Motion to Compel with respect to item nos. 2, 22, 23, and 24 listed on defendant's privilege log is Denied because these documents are protected from compelled production under the D.C. Shield Law; it is

FURTHER ORDERED, that plaintiffs' Motion to Compel with respect to item nos. 2, 3, 9, and 15 listed on pages 4-6 of plaintiffs' Memorandum is Denied because these documents are protected by privilege; it is

FURTHER ORDERED, that defendant McPhilemy shall provide additional information, including the date, author, recipient, and nature of the subject matter described in document nos. 3-8 and 14-21 listed on the privilege log; and it is

FURTHER ORDERED, that defendant McPhilemy shall either produce item nos. 4-8, 10, 11, 12, 13, 14, and 16 listed on pages 4-6 of plaintiffs' Memorandum, or provide the specific legal basis upon which the assertion of privilege is claimed and additional information about the specific documents that will enable the court to assess the validity of his assertion of privilege.

# PRENTICE v. McPHILEMY

## District of Columbia Superior Court

DAVID PRENTICE and ALBERT WESLEY PRENTICE v. SEAN McPHILEMY, BOX PRODUCTIONS, and ROBERTS RINEHART PUBLISHERS, No. 98CA0004309, July 6, 1999

## REGULATION OF MEDIA CONTENT

**1. Defamation — Protection of sources (§11.50)**

## NEWSGATHERING

**Forced disclosure of information — Disclosure of sources — In civil actions (§60.0303)**

**Forced disclosure of information — Disclosure of unpublished information — In civil actions (§60.1003)**

**Forced disclosure of information — Statutory privilege ("shield" laws) (§60.25)**

**Judicial review — In general (§66.01)**

Decision of District of Columbia Superior Court granting in part and denying in part libel plaintiffs' amended motion to compel production of documents and responses to interrogatories will not be reconsidered, since plaintiffs failed to demonstrate overidding public interest in disclosure by clear and convincing evidence, as required by District of Columbia's Shield Law, D.C. Code §16-4703, since exception to statute for most, if not all, libel cases will not be carved out, and since no need for in camera review of documents exists; plaintiffs' request that order be amended to permit immediate appeal is denied.

Libel action against book publishers. From decision of the District of Columbia Superior Court denying in part and granting in part plaintiffs' amended motion to compel production of documents and responses to interrogatories (27 Med.L.Rptr. 2377), plaintiffs move for reconsideration.

27 Med. L. Rptr.   2386

Denied.

William W. Taylor, Steven M. Salky, Elizabeth G. Taylor, and Kathy H. Ruemmler, of Zuckerman, Spaeder, Goldstein, Taylor & Kolker, Washington, D.C., for plaintiffs.

Elizabeth C. Koch, of Levine, Sullivan & Koch, Washington, D.C.; and Russell A. Smith, The Law Offices of Russell Alexander Smith, Montauk, N.Y., for defendants.

*Full Text of Opinion*

Alprin, J.:

### ORDER

Upon consideration of plaintiffs' Motion for Reconsideration and Other Relief, defendants' Opposition thereto, plaintiffs' Supplemental Memorandum in Support of plaintiffs' Motion, and the entire court record, the court concludes that plaintiffs' Motion should be denied for the reasons set forth below.

On May 5, 1999, the court: (1) refused to compel defendant McPhilemy to identify the names of confidential sources in accordance with plaintiffs' Interrogatory nos. 1 and 2 because the anonymity of those sources is clearly protected under the District of Columbia's Free Flow of Information Act of 1992, D.C. Code §§16-4702 et seq. (1997 Repl.) (the "Act" or the "Shield Law"); (2) similarly concluded that item nos. 2, 22, 23 and 24 listed on defendant McPhilemy's privilege log are protected from compelled disclosure under the Shield Law; (3) denied plaintiffs' Motion to Compel with respect to item nos. 2, 3, 9 and 15 identified on pages 4-6 of plaintiffs' Memorandum in Support of their Amended Motion to Compel ("Memorandum"); and (4) instructed defendant McPhilemy either to produce the remaining requested documents or to articulate the specific legal basis upon which the assertion of privilege is claimed and provide additional information about the documents withheld so that the court can assess the validity of his assertion of privilege. *See* May 5, 1999 Order, pp. 17-18.

Plaintiffs now request reconsideration of that Order, or, alternatively, an amendment of the Order to allow plaintiffs to take an immediate appeal pursuant to D.C. Code §11-721(d) and D.C. Ct.App. R. 5. Specifically, plaintiffs ask the court to: (1) conduct an *in camera* review of item nos. 22 [1] and 24 on McPhilemy's privilege log and item no. 14 identified in plaintiffs' Memorandum; (2) grant plaintiffs an opportunity to be heard on the legal issues regarding the anticipated privilege claims asserted by McPhilemy following his supplemental submission to the court; (3) resolve the instant motion following McPhilemy's compliance with the instructions articulated in the May 5, 1999 Order; (4) order McPhilemy to provide the additional information to the court by June 7, 1999; and (5) instruct McPhilemy and his counsel to review the documents in their custody to ensure that all documents responsive to plaintiffs' discovery requests have either been produced or accounted for on McPhilemy's privilege log.[2]

### I. Reconsideration of the Court's Public Interest Analysis and Request for In Camera Review

[1] In seeking reconsideration of the court's conclusion that plaintiffs have failed to demonstrate an overriding public interest in disclosure, plaintiffs have mischaracterized the court's decision as having "held that plaintiffs did not establish that the public interest would be served by disclosure." Pls.' Motion, p. 2. The court's holding was much more narrow. The court concluded simply that plaintiffs failed to establish the third

---

[1] According to plaintiffs' Supplemental Memorandum, filed June 28, 1999, plaintiffs have obtained a copy of item no. 22 through alternative undisclosed means. Therefore, they have withdrawn their request for compelled production with respect to this document.

[2] With respect to plaintiffs' final request, the court takes defense counsel at his word that all documents responsive to plaintiffs' requests have been produced or identified and withheld as privileged. If McPhilemy discovers undisclosed documents responsive to plaintiffs' requests in the course of his compliance with the court's Order, the court assumes that those documents will be accounted for in defendant's supplemental pleading to be filed on or before July 30, 1999.

prong of the tripartite exception to the Shield Law's prohibition on compelled disclosure, that is, that they failed to establish an *overriding* public interest in disclosure *by clear and convincing* evidence as the Shield Law requires. *See* D.C. Code §16-4703. Consequently, the court cannot compel production of documents that fall within the parameters of the protection afforded by the Shield Law. The same arguments currently propounded by plaintiffs in support of their Motion for Reconsideration were expressed in their original pleadings [3] and at the hearing on the Motion, and were ultimately rejected by the court.[4]

[3] Plaintiffs contend that the public interests at stake are twofold. First, that there is a fundamental public interest in ensuring that the courts are used to promote truth, and second, that there is a public interest in protecting and vindicating damage to an individual's reputation. However, as noted at length in the original Order, enactment of the Shield Law evinces the District's determination that there is a paramount public interest in promoting the free flow of information to the public. This goal is advanced by protecting journalists from being compelled to disclose the identity of their sources and conferring on them a qualified privilege against disclosure of other news and information under certain prescribed circumstances. Unless the proponent of disclosure can demonstrate an "overriding public interest" by clear and convincing evidence that outweighs the public policy underlying the statute, the court is powerless to compel production. Here, plaintiffs failed to satisfy the requisite standard. As defendant points out, many states have applied their shield laws in libel cases acknowledging that such action may impose an added burden on a libel plaintiff to prove his or her case, especially the scienter element. *See* May 5, 1999 Order, p. 10, n.9 & Def.'s Opp., p. 4.

[4] The court initially agreed with plaintiffs' contention that the information contained in these documents may be relevant to significant legal issues in the case and cannot be obtained by other means. Thus, the court concluded that plaintiffs had satisfied the first and second prongs of the exception's test. Arguably, this conclusion with respect to the second prong is somewhat undermined by the plaintiffs' recent acquisition of item no. 22 through "alternative means." However, regardless of that fact, it is clear that the D.C. Council's inclusion of the third prong, the "overriding public interest" text, indicates that proponents of disclosure must demonstrate more than the fact that the information is relevant and material to a legal issue in the case. To conclude otherwise, would render the third prong duplicative of the first. As noted in the original Order, plaintiffs have failed to demonstrate that the District's resi-

Moreover, plaintiffs contend that the court's ruling "has rendered section 16-4703 of the statute inapplicable in a libel case . . . [because] no liable plaintiff could ever demonstrate a public interest sufficient to justify compelled disclosure." Pls.' Motion, p. 2. The court does not agree. Were the court to adopt plaintiffs' interpretation of the statute, the limited exception contained in section 16-4703 would envelop the general statutory prohibition against compelled disclosure in virtually every libel case. Plaintiffs' view, that the statute is generally inapplicable to libel defendants is not contained in the statute itself or indicated in its legislative history. Therefore, the court declines to adopt the invitation to carve out an exception for most, if not all, libel cases where the legislature could have created an exception for libel defendants and refused to do so.[5]

Finally, plaintiffs seek to have "the public interest in disclosure be determined on the basis of the nature and content of the documents themselves." Pls.' Motion, p. 5. Review of the actual documents, they contend, will demonstrate the overriding public interest in disclosure. Therefore, plaintiffs ask the court to conduct an *in camera* review of item no. 24 of defendant's privilege log and item no. 14 of plaintiffs' Memorandum to ascertain whether the information contained therein satisfies the public interest prong of the exception. With respect to item no. 24 of defendant's privilege log, the court concluded that this document is clearly protected under the Act. Plaintiffs' instant Motion does

dents have an overriding public interest in lessening the burden imposed on two non-resident libel plaintiffs in obtaining judgment against a foreign defendant journalist that is superior to the public's interest in accessing news and information.

[5] As indicated in the May 5, 1999 Order, other jurisdictions have tailored their legislation to limit the protections afforded to libel defendants, presumably to address the situation presented by this case. For example, Oregon's Shield Law provides that "the provisions of ORS 44.520 [the shield provision] (1) do not apply with respect to the content or source of allegedly defamatory information, in civil action for defamation wherein the defendant asserts a defense based on the content or source if such information." Or. Rev. Stat. §44.530(3). The D.C. Council was aware of such legislation and chose not to include an exception for such cases in the D.C. Shield Law. *See* May 5, 1999 Order, p. 12.

not offer new information or argument with respect to this document that would warrant reconsideration of the court's previous decision. With respect to item no. 14 of plaintiffs' Memorandum, the court instructed defendant McPhilemy to either produce the document or to indicate the specific legal basis for his refusal to do so and to provide additional information to the court so that the court may better assess his claim of privilege. Therefore, at this time, *in camera* review of this document is premature. Accordingly, the court perceives no need to conduct an *in camera* review of these documents, at least at this time.

### II. Other Relief Requested

In addition, plaintiffs ask the court to set a date certain on which defendant McPhilemy is to supply the additional information in conformity with the court's May 5, 1999 Order. The court concludes that this request is reasonable and has selected July 30, 1999 as the deadline for defendant McPhilemy to respond to the court's requests for additional information. Consequently, the close of discovery date shall also be extended until July 30, 1999.

Moreover, plaintiffs ask that the court afford them an opportunity to be heard on the applicability of any privilege claims defendant McPhilemy may assert in response to the court's previous Order. At this time such a request is premature and is, therefore, denied. Furthermore, plaintiffs ask the court to defer ruling on the instant motion until after the receipt of defendant's additional information. The court concludes that there is no reason to defer resolution of the instant Motion.

Finally, in the event that the court denies plaintiffs' Motion for Reconsideration, they ask that the court amend its May 5, 1999 Order, pursuant to D.C. Code §11-721(d) and D.C. Ct. App. R. 5, to permit plaintiffs to take an immediate appeal. Section 11-721(d), allows an order to be immediately appealed if the Superior Court Judge is "of the opinion that a ruling or order involves a controlling question of law as to which there is substantial ground for a difference of opinion and that an immediate appeal from the ruling or order may materially advance the ultimate termination of the litigation or case," and states that opinion in the written order. D.C. Code §11-721(d) (1997 Repl.).

Although the question presented by plaintiffs' Motion to Compel is one of first impression in this jurisdiction, the court is not convinced that it involves a court is not convinced that it involves a *controlling* question of law as to which there is *substantial* ground for a difference of opinion." D.C. Code §11-721(d) (emphasis added). The language of the Shield Law is clear and unambiguous with respect to what a party seeking disclosure of otherwise protected news and information must demonstrate for such information to be exempted from its protections. The court applied the statutory language to the facts of this case and has concluded that plaintiffs' failure to demonstrate by clear and convincing evidence that there is an overriding public interest in disclosure is not a matter about which there is substantial ground for disagreement. Therefore, plaintiffs' request that the Order be amended to permit an immediate appeal will be denied.

Accordingly, it is this 6 day of July, 1999,

ORDERED, that plaintiffs' Motion for Reconsideration is Denied; and it is

FURTHER ORDERED, that the close of discovery date shall be extended until July 30, 1999 and defendant McPhilemy shall respond to the court's request for additional information regarding the remaining withheld documents by that date.

# HORTON v. CITY OF HOUSTON, TEXAS

## U.S. Court of Appeals Fifth Circuit

ROBERT HORTON, NATIONALIST TELEVISION, a Texas Non-Profit Corporation; and BARRY HACKNEY, Plaintiffs-Appellants v. CITY OF HOUSTON, TEXAS and ACCESS HOUSTON CABLE CORPORATION, Defendants-Appellees, No. 98-20031, June 18, 1999

Dated: October 15, 2024.

Respectfully submitted,
*/s/ Andrew LeGrand*

GIBSON, DUNN & CRUTCHER LLP
Andrew LeGrand (TX 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.* (CA 132099)
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed* (NY 4382040)
200 Park Avenue
New York, NY 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

ELIAS LAW GROUP LLP
Abha Khanna* (WA 42612)
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Jacob D. Shelly* (DC 90010127)
Samuel T. Ward-Packard* (DC 90005484)
250 Massachusetts Avenue NW, Suite 400
Washington, DC 20001
T: (202) 968-4490
F: (202) 986-4498
jshelly@elias.law
swardpackard@elias.law

* Admitted *pro hac vice*

*Counsel for Defendants Media Matters for America, Angelo Carusone, and Eric Hananoki*

## CERTIFICATE OF SERVICE

On October 15, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Andrew LeGrand*
Andrew LeGrand