# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

|  |  |
|---|---|
| X CORP.,<br><br>   **Plaintiff,**<br><br> **v.**<br><br>**MEDIA MATTERS FOR AMERICA,**<br>**et al.,**<br><br>   **Defendants.** | **Civil Action No. 4:23-cv-01175-O** |

## APPENDIX

| Tab No. | Description of Document | Page No. |
|---|---|---|
| 1 | Defendants' First Set of Request for Admission | 3 |
| 2 | Defendants' First Set of Request for Production | 11 |
| 3 | Defendants' First Set of Interrogatories | 25 |
| 4 | Plaintiff's Responses and Objections to Defendants' First Set of Request for Admission | 34 |
| 5 | Plaintiff's Amended Responses and Objections to Defendants' First Set of Request for Production | 42 |
| 6 | Plaintiff's Responses and Objections to Defendants' First Set of Interrogatories | 67 |
| 7 | Defendants' Second Set of Request for Admission | 76 |
| 8 | Defendants' Second Set of Request for Production | 166 |
| 9 | Defendants' Second Set of Interrogatories | 176 |
| 10 | Plaintiff's Responses and Objections to Defendants' Second Set of Request for Admission | 183 |
| 11 | Plaintiff's Responses and Objections to Defendants' Second Set of Request for Production | 354 |

| 12 | Plaintiff's Responses and Objections to Defendants' Second Set of Interrogatories | 360 |
|---|---|---|
| 13 | Defendants' Third Set of Request for Admission | 367 |
| 14 | Defendants' Third Set of Request for Production | 374 |
| 15 | Defendants' Third Set of Interrogatories | 383 |
| 16 | Plaintiff's Responses and Objections to Defendants' Third Set of Request for Admission | 390 |
| 17 | Plaintiff's Responses and Objections to Defendants' Third Set of Request for Production | 398 |
| 18 | Plaintiff's Amended Responses and Objections to Defendants' Third Set of Interrogatories | 406 |
| 19 | Plaintiff's Initial Disclosures | 414 |
| 20 | Defendants' Initial Disclosures | 420 |
| 21 | Defendants' August 16, 2024, Deficiency Letter to Plaintiff | 426 |
| 22 | Defendants' September 6, 2024, Deficiency Letter to Plaintiff | 449 |
| 23 | Plaintiff's September 6, 2024, Letter to Defendants | 455 |
| 24 | Defendants' September 25, 2024, Deficiency Letter to Plaintiff | 461 |
| 25 | Plaintiff's September 27, 2024, Letter to Defendants | 466 |
| 26 | Plaintiff's October 9, 2024, Letter to Defendants | 480 |
| 27 | Defendants' October 14, 2024 Letter to Plaintiff | 485 |
| 28 | Plaintiff's October 18, 2024, Letter to Defendants | 490 |
| 29 | August 21, 2024, Email from M. Abrams | 493 |

# Tab 1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

|  |  |
|---|---|
| X CORP., | |
| *Plaintiff*, | |
| v. | Civil Action No. 4:23-cv-01175-O |
| MEDIA MATTERS FOR AMERICA, *et al.*, | |
| *Defendants*. | |

**DEFENDANTS MEDIA MATTERS FOR AMERICA, ERIC HANANOKI, AND ANGELO CARUSONE'S FIRST SET OF REQUESTS FOR ADMISSION**

Pursuant to Federal Rules of Civil Procedure 26 and 36, Defendants Media Matters for America ("Media Matters"), Mr. Eric Hananoki, and Mr. Angelo Carusone, through their undersigned counsel, serve their First Set of Requests for Admission ("Requests") on Plaintiff X Corp. Responses to these Requests are to be produced to counsel for all Defendants within 30 days of receipt, and should be sent to the attention of Andrew LeGrand at Gibson, Dunn & Crutcher. Each Request for Admission is subject to the Definitions and Instructions listed below.

## DEFINITIONS

Except as specifically defined below, the terms used in these Requests shall be construed and defined in accordance with the Federal Rules of Civil Procedure and the Local Rules of the U.S. District Court for the Northern District of Texas, wherever applicable. Any terms not defined shall be given their ordinary meaning.

1

Defendants reserve their right to alter, supplement, amend, correct, clarify, or otherwise modify these Requests as discovery remains ongoing.

1. "Advertisers" means companies, organizations, individuals, or entities that pay to advertise or promote products, goods, services, or concepts, by purchasing space—including but not limited to advertisers referenced in Plaintiff's First Amended Complaint, ECF No. 37: Apple, Bravo, IBM, Oracle, Xfinity, Lions Gate Entertainment, Disney, Warner Brothers Discovery, Paramount Global, NBCUniversal, Comcast, Sony, Ubisoft, Amazon, eBay, Major League Baseball, New York Times Co., Samsung, Sports Illustrated, The Wall Street Journal, USA Today, Office Depot, Nokia, Dish, Bayer, Tyson Foods, Honeywell, Discovery, FanDuel, Thermo Fisher, National Women's Soccer League, the Pittsburgh Steelers, the Atlanta Falcons, Manchester City, DraftKings, FanDuel, T-Mobile, and The Athletic.

2. "Amended Complaint" means Plaintiff's First Amended Complaint, filed at ECF No. 37, in this litigation, *X Corp. v. Media Matters for America et al*., No. 4:23-cv-01175-O.

3. "Any" or "all" mean "any and all."

4. "Communication" is synonymous in meaning and scope with the term "communication" as used in Local Rule 26, and includes any transfer of information of any type, whether written, oral, electronic, or otherwise, and includes but is not limited to transfers of information via email, report, phone call, letter, text message, Slack, Signal, direct messages on social media platforms, ephemeral messaging applications, instant messaging applications, voicemail message, voice message, written memorandum, note, summary, and other means.

5. "Creator Ads Revenue Sharing" refers to X's program wherein X users share revenue from other verified user's organic impressions of ads displayed in replies to content the user posts on X, as described here on X's website: https://help.twitter.com/en/using-x/creator-ads-revenue-sharing.

6. "Date" means the exact day, month, and year, if ascertainably, or, if not, the best available approximation (including relationship to other events).

7. "Disputed Content" means "extreme" and "fringe" content, as those terms are used in the Amended Complaint, see ECF No. 37 ¶ 9, and includes but is not limited to content expressing skepticism about the Holocaust, content expressing negative views or attitudes regarding Jewish people, Muslim people, Black people, Hispanic or Latino people, women, members of the LGBTQIA+ community, immigrants, non-English speakers, Asian people, or indigenous peoples, and content expressing positive views or attitudes regarding Adolf Hitler, white nationalism, or white supremacism.

8. "Document" is synonymous in meaning and scope to the term "document" as used in Federal Rule of Civil Procedure 34 and Local Rule 26 and includes, but is not limited to, records, reports, lists, data, statistics, summaries, analyses, communications (as defined above), computer discs, tapes, printouts, emails, databases, and any handwritten, typewritten, printed, electronically recorded, taped, graphic, machine-readable, or other material, of whatever nature and in whatever form, including all non-identical copies and drafts thereof, and all copies bearing any notation or mark not found on the original.

9. "Including" means "including, but not limited to."

10. The "November 16, 2023 Article" refers to the article written by Mr. Hananoki and originally published on November 16, 2023, titled "As Musk endorses antisemitic

conspiracy theory, X has been placing ads for Apple, Bravo, IBM, Oracle, and Xfinity next to pro-Nazi content."

11. The "November 17, 2023 Article" refers to the article written by Mr. Hananoki and originally published on November 17, 2023, titled "X is placing ads for Amazon, NBA Mexico, NBCUniversal, and others next to content with white nationalist hashtags."

12. "Platform" means the social media website operated by X.

13. "Screenshot" means the image of data, captured as displayed on the screen of a computer or mobile device.

14. "Subscription Creators" refers to X's program wherein X users share a portion of the revenue X earns from other users subscribing to receive content from the user, as described here on X's website: https://help.twitter.com/en/using-x/subscriptions-creator.

15. "X" or "Plaintiff" shall mean the Plaintiff in this Matter, X Corp., as well as its predecessor in interest, Twitter, Inc., including both entities' owners, officers, directors, partners, members, managers, employees, representatives, staff, agents, consultants, and anyone acting on their behalf.

16. "You" and "your" means the Plaintiff in this Matter, X Corp., as well as its predecessor in interest, Twitter, Inc., including both entities' owners, officers, directors, partners, members, managers, employees, representatives, staff, agents, consultants, and anyone acting on their behalf.

## **INSTRUCTIONS**

1. The instructions, definitions, and rules of construction set forth in Rules 26 and 36 of the Federal Rules of Civil Procedure are incorporated herein by reference.

2. These Requests are to be answered separately and fully, in writing and under oath, within thirty (30) days of the date of service on you.

4

App'x 007

3.   If you object or fail to answer any Request, in whole or in part, please state in detail the reasons for your failure to answer, the portion of the Request to which your objection relates, and/or the reason why you are unable to respond to the Request after affirmative inquiry.

4.   If you contend that a Request seeks information that is protected from disclosure by the attorney-client or work-product privilege, and such privilege is asserted as a basis for failing to admit or deny the request, please provide a written statement setting forth: (a) the identity of each person from or to whom the information withheld has previously been disclosed or communicated; (b) a brief description of the subject matter of the information; and (c) the legal ground upon which you rely in withholding the information.

5.   The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a Request all responses that otherwise might be construed to be outside its scope.

6.   A reference to an entity, organization, or agency in any of these Requests shall be construed to include its officers, directors, partners, members, managers, employees, representatives, agents, consultants, and anyone acting on its behalf.

7.   A reference to an entity, organization, or agency in any of these Requests shall be construed to include its officers, directors, partners, members, managers, employees, representatives, agents, consultants, and anyone acting on its behalf.

## **REQUESTS FOR ADMISSION**

**REQUEST FOR ADMISSION NO. 1**: Admit that X has revenue sharing programs, including its Subscription Creators and Creators Ad Revenue Sharing programs, wherein X users can be compensated by X for verified users' organic impressions of content they generate or engage with on the Platform.

5

**REQUEST FOR ADMISSION NO. 2**: Admit that as part of X's revenue sharing programs, some users have been compensated by X after posting, creating, or promoting Disputed Content.

**REQUEST FOR ADMISSION NO. 3**: Admit that Elon Musk is responsible—directly or indirectly—for the content that gets posted by the @elonmusk account on the X platform.

**REQUEST FOR ADMISSION NO. 4**: Admit that Elon Musk has publicly expressed negative views about media outlets, journalists, or reporters that have covered X or Musk himself, for reasons other than the accuracy of their reporting.

**REQUEST FOR ADMISSION NO. 5**: Admit that the images of advertisements next to user content reproduced in the November 16, 2023 Article and the November 17, 2023 Article are authentic reproductions of pairings that occurred on the X Platform, as opposed to Photoshopped or otherwise digitally altered images.

**REQUEST FOR ADMISSION NO. 6**: Admit that multiple advertisers terminated, ceased, suspended, or otherwise discontinued their business relationship with X because of Disputed Content appearing on the X platform between October 27, 2022 and November 16, 2023.

**REQUEST FOR ADMISSION NO. 7**: Admit that more advertisers terminated, ceased, suspended, or otherwise discontinued their business relationship with X during the period from April 14, 2022 to November 15, 2023 than during the period from September 13, 2020 to April 13, 2022.

**REQUEST FOR ADMISSION NO. 8**: Admit that Elon Musk made the following statements on November 29, 2023, at *The New York Times'* DealBook Summit: "I hope they stop. Don't advertise." "If somebody is going to try to blackmail me with advertising, blackmail me with money, go fuck yourself." "Go fuck yourself. Is that clear? I hope it is."

6

Dated May 6, 2024.

*/s/ Andrew LeGrand*

**GIBSON, DUNN & CRUTCHER LLP**
Andrew LeGrand (TX 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.* (CA 132099)
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed* (NY 4382040)
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

**ELIAS LAW GROUP LLP**
Abha Khanna* (WA 42612)
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Aria C. Branch (DC 1014541)
Jacob D. Shelly* (DC 90010127)
Elena Rodriguez Armenta* (DC 90018798)
Daniela Lorenzo* (DC 90022335)
250 Massachusetts Ave, NW Suite 400
Washington, D.C. 20001
T: (202) 968-4490
F: (202) 986-4498
abranch@elias.law
jshelly@elias.law
erodriguezarmenta@elias.law
dlorenzo@elias.law

* Admitted *pro hac vice*

*Counsel for Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone*

# Tab 2

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

|  |  |
|---|---|
| X CORP., | |
| *Plaintiff*, | |
| v. | Civil Action No. 4:23-cv-01175-O |
| MEDIA MATTERS FOR AMERICA, *et al.*, | |
| *Defendants*. | |

## DEFENDANTS MEDIA MATTERS FOR AMERICA, ERIC HANANOKI, AND ANGELO CARUSONE'S FIRST SET OF REQUESTS FOR PRODUCTION

Pursuant to Federal Rules of Civil Procedure 26 and 34, Defendants Media Matters for America ("Media Matters"), Mr. Eric Hananoki, and Mr. Angelo Carusone, through their undersigned counsel, serve this First Set of Requests for Production ("Requests for Production" or "Requests") on Plaintiff X Corp.

Responses to these Requests are to be produced to the attention of Andrew LeGrand at Gibson, Dunn & Crutcher within 30 days of receipt. To arrange for electronic production, please contact counsel at xcorpsuit@elias.law. Anything that cannot be produced electronically should be produced to Mr. LeGrand at 2001 Ross Avenue Suite 2100, Dallas, Texas 75201.

Each Request for Production is subject to the Definitions and Instructions listed below.

## **DEFINITIONS**

Except as specifically defined below, the terms used in this request shall be construed and defined in accordance with the Federal Rules of Civil Procedure and the Local Rules of the U.S.

District Court for the Northern District of Texas, wherever applicable. Any terms not defined shall be given their ordinary meaning.

Defendants reserve their right to alter, supplement, amend, correct, clarify, or otherwise modify these Requests as discovery remains ongoing.

1.  "Advertisers" means companies, organizations, individuals, or entities that pay to advertise or promote products, goods, services, or concepts, by purchasing space—including but not limited to advertisers referenced in Plaintiff's First Amended Complaint, ECF No. 37: Apple, Bravo, IBM, Oracle, Xfinity, Lions Gate Entertainment, Disney, Warner Brothers Discovery, Paramount Global, NBCUniversal, Comcast, Sony, Ubisoft, Amazon, eBay, Major League Baseball, New York Times Co., Samsung, Sports Illustrated, The Wall Street Journal, USA Today, Office Depot, Nokia, Dish, Bayer, Tyson Foods, Honeywell, Discovery, FanDuel, Thermo Fisher, National Women's Soccer League, the Pittsburgh Steelers, the Atlanta Falcons, Manchester City, DraftKings, FanDuel, T-Mobile, and The Athletic.

2.  "Algorithm" refers to the X systems and processes, as that term is used in Plaintiff's First Amended Complaint, ECF No. 37, that, among other things, determines what content is presented to each X user.

3.  "Amended Complaint" means Plaintiff's First Amended Complaint, filed at ECF No. 37 in this litigation, *X Corp. v. Media Matters for America et al*., No. 4:23-cv-01175-O.

4.  "Any" or "all" mean "any and all."

5.  "Communication" is synonymous in meaning and scope with the term "communication" as used in Local Rule 26, and includes any transfer of information of any type, whether written, oral, electronic, or otherwise, and includes but is not limited to transfers of

information via email, report, phone call, letter, text message, Slack, Signal, direct messages on social media platforms, ephemeral messaging applications, instant messaging applications, voicemail message, voice message, written memorandum, note, summary, and other means.

6. "Content moderation" means any efforts taken by X to limit the appearance of Disputed Content (as defined herein) on the Platform.

7. "Creator Ads Revenue Sharing" refers to X's program wherein X users share revenue from other verified user's organic impressions of ads displayed in replies to content the user posts on X, as described here on X's website: https://help.twitter.com/en/using-x/creator-ads-revenue-sharing.

8. "Date" means the exact day, month, and year, if ascertainably, or, if not, the best available approximation (including relationship to other events).

9. "Disputed Content" means "extreme" and "fringe" content, as those terms are used in the Amended Complaint, *see* ECF No. 37 ¶ 9, and includes but is not limited to content expressing skepticism about the Holocaust, content expressing negative views or attitudes regarding Jewish people, Muslim people, Black people, Hispanic or Latino people, women, members of the LGBTQIA+ community, immigrants, non-English speakers, Asian people, or indigenous peoples, and content expressing positive views or attitudes regarding Adolf Hitler, white nationalism, or white supremacism.

10. "Document" is synonymous in meaning and scope to the term "document" as used in Federal Rule of Civil Procedure 34 and Local Rule 26 and includes, but is not limited to, records, reports, lists, data, statistics, summaries, analyses, communications (as defined above), computer discs, tapes, printouts, emails, databases, and any handwritten,

3

typewritten, printed, electronically recorded, taped, graphic, machine-readable, or other material, of whatever nature and in whatever form, including all non-identical copies and drafts thereof, and all copies bearing any notation or mark not found on the original.

11. "Including" means "including, but not limited to."

12. The "November 16, 2023 Article" refers to the article written by Mr. Hananoki and originally published on November 16, 2023, titled "As Musk endorses antisemitic conspiracy theory, X has been placing ads for Apple, Bravo, IBM, Oracle, and Xfinity next to pro-Nazi content."

13. The "November 17, 2023 Article" refers to the article written by Mr. Hananoki and originally published on November 17, 2023, titled "X is placing ads for Amazon, NBA Mexico, NBCUniversal, and others next to content with white nationalist hashtags."

14. "Platform" means the social media website operated by X.

15. "Subscription Creators" refers to X's program wherein X users share a portion of the revenue X earns from other users subscribing to receive content from the user, as described here on X's website: https://help.twitter.com/en/using-x/subscriptions-creator.

16. "X" or "Plaintiff" means the Plaintiff in this Matter, X Corp., as well as its predecessor in interest, Twitter, Inc., including its owner, officers, directors, partners, members, managers, employees, representatives, staff, agents, consultants, and anyone acting on its behalf.

17. "You" and "your" means the Plaintiff in this Matter, X Corp., as well as its predecessor in interest, Twitter, Inc., including both entities' owners, officers, directors, partners, members, managers, employees, representatives, staff, agents, consultants, and anyone acting on their behalf.

## **INSTRUCTIONS**

1.  You shall produce materials and serve responses and any objections within 30 days after service of these Requests for Production.

2.  If you object to any part of a Request, set forth the basis of your objection and respond to all parts of the Request to which you do not object. Any ground not stated in a timely objection is waived.

3.  If, in responding to these Requests for Production, you encounter any ambiguities when construing a Request or definition, set forth the matter deemed ambiguous and the construction used in responding. Where you, in good faith, doubt the meaning or intended scope of a Request, and the sole objection would be to its vagueness, overbreadth, or ambiguity, please contact Defendants' counsel for clarification in advance of asserting an objection.

4.  Regarding any document withheld from production on a claim of privilege or work product protection, provide a written privilege log identifying each document individually and containing all information required by Federal Rule of Civil Procedure 26(b)(5), including a description of the basis of the claimed privilege and all information necessary for Defendants to assess the claim of privilege.

5.  Produce all documents available to you or subject to your access or control that are responsive to the Requests for Production. This includes documents in your actual or constructive possession or control and in the actual or constructive possession or control of your attorneys, investigators, experts, and anyone else acting on your behalf.

6.  Documents are to be produced as they are kept in the ordinary course of business. Accordingly, documents should be produced in their entirety, without abbreviation, redaction, or expurgation; file folders with tabs or labels identifying documents responsive

to this request should be produced intact with the documents; and documents attached to each other should not be separated.

7.   All documents are to be produced in electronic form. All documents including emails, should be produced in single page TIFF format, showing comments and track changes where applicable, with text extract and load files containing standard fielded information and metadata. TIFF images shall be placed in an Images folder with any given subfolder not to exceed 5,000 images per folder and accompanied by an .opt placed in a Data folder. Each page of a document should be assigned a unique production number (aka Bates number) electronically "burned" onto the image at allocation that does not unreasonably conceal or interfere with information on the document. The number should be consistent across the production, contain no special characters, and be numerically sequential within a given document. Attachments to documents should be assigned numbers that directly follow in sequential order the Bates numbers on the documents to which they were attached. If a number or set of numbers is skipped, the skipped number or set of numbers should be noted, for example with a placeholder.

8.   Each document produced should be categorized by the number of the document request in response to which it is produced.

9.   If any otherwise responsive document was, but is no longer, in existence or in your possession, custody, or control, identify the type of information contained in the document, its current or last known custodian, the location/address of such document, and the identity of all persons having knowledge or who had knowledge of the document, and also describe in full the circumstances surrounding its disposition from your possession or control.

10.     These Requests for Production are continuing in nature, up to and including trial. Materials sought by these Requests that become available after you serve your responses must be disclosed to counsel for Defendants by supplementary response or responses.

11.     Pursuant to Federal Rule of Civil Procedure 26(c), you are under a duty to promptly amend your responses to these Requests if you learn that an answer is in some material respect incomplete or incorrect. If you expect to obtain further information or expect the accuracy of a response given to change between the time responses are served and the time of trial, you are requested to state this fact in each response.

12.     If you contend that it would be unreasonably burdensome to obtain and provide all of the documents called for in response to any Request for Production, then in response to the specific Request: (a) produce all such documents as are available to you without undertaking what you contend to be an unreasonable request; (b) describe with particularity the efforts made by you or on your behalf to produce such documents; and (c) state with particularity the grounds upon which you contend that additional efforts to produce such documents would be unreasonable.

13.     The singular form of a noun or pronoun includes the plural form, and the plural form includes the singular.

14.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a Request for Production all responses that otherwise might be construed to be outside its scope.

15.     A reference to an entity in this request shall be construed to include its officers, directors, partners, members, managers, employees, representatives, agents, consultants, and anyone acting on its behalf.

16.     These Requests for Production apply to the period from April 14, 2021, to the present, unless otherwise limited or expanded by a particular topic description.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1**:  All documents and communications related to or describing X's algorithm, the X systems and processes, as that term is used in Plaintiff's First Amended Complaint, ECF No. 37, that, among other things, determines what content is presented to each X user, including any and all prior versions previously used by X.

**REQUEST FOR PRODUCTION NO. 2**:  All documents and communications related to the November 16, 2023 Article and/or the November 17, 2023 Article, including the activity and statements discussed therein.

**REQUEST FOR PRODUCTION NO. 3**:  All documents and communications describing any policies and practices X uses to identify Disputed Content on the Platform.

**REQUEST FOR PRODUCTION NO. 4**:  All documents and communications concerning content moderation on the Platform.

**REQUEST FOR PRODUCTION NO. 5**:  All documents and communications, including screenshots, reflecting or referring to Disputed Content on the Platform.

**REQUEST FOR PRODUCTION NO. 6**: All documents and communications, including draft and completed contracts, agreements, and memoranda of understanding, describing or showing evidence of existing or prospective business relationships between X and any of the advertisers referenced in the Amended Complaint or identified in response to Interrogatories 1 and 4 in Defendants' First Set of Interrogatories.

**REQUEST FOR PRODUCTION NO. 7**: All communications with X's past, present, or potential advertisers regarding their decision to advertise or not to advertise on the Platform, including but

8

not limited to all communications reflecting the reasoning behind their decision to advertise or not to advertise on the Platform.

**REQUEST FOR PRODUCTION NO. 8**:   All documents and communications discussing or mentioning Media Matters, Mr. Hananoki, and/or Mr. Carusone.

**REQUEST FOR PRODUCTION NO. 9**:   All documents or communications showing X's business revenue generated from advertisements on the Platform in monthly installments or any term in which X maintains these records from April 14, 2021, to the present.

**REQUEST FOR PRODUCTION NO. 10**: All documents and communications regarding Your connection with or presence in the jurisdiction of the U.S. District Court for the Northern District of Texas.

**REQUEST FOR PRODUCTION NO. 11**: All communications with any elected or appointed public official, including but not limited to Texas Attorney General Ken Paxton and Missouri Attorney General Andrew Bailey, their staff, employees, and/or representatives regarding Media Matters, Mr. Hananoki, Mr. Carusone, and/or any of the allegations made in the Amended Complaint.

**REQUEST FOR PRODUCTION NO. 12**: All documents and communications regarding the removal or destruction of the personal or business physical cellular phone in the possession X's owner, Elon Musk, or the removal, discontinuation, or otherwise termination of Musk's personal or business cellular phone service, since November 2023.

**REQUEST FOR PRODUCTION NO. 13**: All   documents   and   communications   regarding payments made to X users related to X's revenue sharing programs, including their Subscription Creators and Creator Ads Revenue Sharing programs.

**REQUEST FOR PRODUCTION NO. 14**: All documents and communications describing available means on X for users to control or change the advertisements they see on the Platform, including any filters for advertisements that can be used for new and existing users of the Platform.

**REQUEST FOR PRODUCTION NO. 15**: Documents sufficient to show X's organizational structure, including Board membership, leadership structure, and that of any affiliated or related entities.

**REQUEST FOR PRODUCTION NO. 16**: Documents sufficient to identify individuals, representatives, or employees responsible for or involved with content moderation on the Platform, including individuals, representatives, or employees responsible for or involved with developing policies for content moderation on the platform.

**REQUEST FOR PRODUCTION NO. 17**: All documents or communications regarding the cessation, suspension, termination, or otherwise discontinuance of a business or transactional relationship between X and its advertisers.

**REQUEST FOR PRODUCTION NO. 18**: All documents concerning, and communications with, any public relations, advertising, marketing, communications, or similar firm, group, or business that You have contracted with, or that you have contacted in any capacity in connection with the November 16, 2023 Article or the November 17, 2023 Article.

**REQUEST FOR PRODUCTION NO. 19**: All documents and communications related to or reflecting Your knowledge or understanding of Media Matters's business operations, strategies, partnerships, staff, donors, directors, reporting, or day-to-day activities.

**REQUEST FOR PRODUCTION NO. 20**: All documents and communications related to or reflecting X's Board's knowledge or understanding of Media Matters's business operations, strategies, partnerships, staff, donors, directors, reporting, or day-to-day activities.

**REQUEST FOR PRODUCTION NO. 21**: All documents and communications related to or reflecting X's employees' knowledge or understanding of Media Matters's business operations, strategies, partnerships, staff, donors, directors, reporting, or day-to-day activities.

**REQUEST FOR PRODUCTION NO. 22:** All documents and communications related to or reflecting X's advertisers' and agencies' involvement in or knowledge or understanding of Media Matters's business operations, strategies, partnerships, staff, donors, directors, reporting, or day-to-day activities.

**REQUEST FOR PRODUCTION NO. 23**: All internal documents and communications with or about media organizations, reporters, or journalists regarding reporting about X, its employees, its directors, or Elon Musk.

**REQUEST FOR PRODUCTION NO. 24**: All documents and communications demonstrating a connection between the November 16, 2023 Article, the November 17, 2023 Article, and/or Mr. Carusone's November 26, 2023 interview statements and the withdrawal or attempted withdrawal of any of X's advertisers from the Platform.

**REQUEST FOR PRODUCTION NO. 25**: All documents and communications related to X suspending or terminating user accounts on the Platform, including but not limited to the processes by which such suspended or terminated user accounts are or have been reinstated.

**REQUEST FOR PRODUCTION NO. 26**: All documents and communications related to Elon Musk's activity on the X platform, including Musk's engagement with Disputed Content on the Platform, and any allegations that Musk has violated X's user agreement, terms of service, rules and policies, or content moderation policies.

**REQUEST FOR PRODUCTION NO. 27**: All documents and communications related to the manner in which "views," as that term is used on social media platforms, meaning a measure of

how many times a visitor on a social media platform engages with certain content, are generated on X.

**REQUEST FOR PRODUCTION NO. 28**: All documents and communications related to the termination or suspension of any current or former employee of X for reasons related to content moderation or Disputed Content on X.

**REQUEST FOR PRODUCTION NO. 29**: All public statements made by Musk—including but not limited to public statements made on the Platform, on other social media platforms, and in media interviews—as to Jewish people, Muslim people, Black people, Hispanic or Latino people, women, members of the LGBTQIA+ community, immigrants, non-English speakers, Asian people, and/or indigenous people, and any documents and communications regarding those statements.

**REQUEST FOR PRODUCTION NO. 30**: All documents and communications identified in response or related to any response provided to Defendants' Requests for Admission or Interrogatories.


Dated May 6, 2024.

*/s/ Andrew LeGrand*

12

**GIBSON, DUNN & CRUTCHER LLP**
Andrew LeGrand (TX 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.* (CA 132099)
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed** (NY 4382040)
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

**ELIAS LAW GROUP LLP**
Abha Khanna* (WA 42612)
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Aria C. Branch (DC 1014541)
Jacob D. Shelly* (DC 90010127)
Elena Rodriguez Armenta* (DC 90018798)
Daniela Lorenzo* (DC 90022335)
250 Massachusetts Ave, NW Suite 400
Washington, D.C. 20001
T: (202) 968-4490
F: (202) 986-4498
jshelly@elias.law
erodriguezarmenta@elias.law

* Admitted *pro hac vice*

*Counsel for Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone*

# Tab 3

<div align="center">

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

</div>

|  |  |
|---|---|
| X CORP.,<br><br>*Plaintiff*,<br><br>    v.<br><br>MEDIA MATTERS FOR AMERICA, *et al.*,<br><br>    *Defendants*. | Civil Action No. 4:23-cv-01175-O |

<div align="center">

**DEFENDANTS MEDIA MATTERS FOR AMERICA, ERIC HANANOKI, AND ANGELO CARUSONE'S FIRST SET OF INTERROGATORIES**

</div>

Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendants Media Matters for America ("Media Matters"), Mr. Eric Hananoki, and Mr. Angelo Carusone through their undersigned counsel, serve their First Set of Interrogatories on Plaintiff X Corp. Responses to these Interrogatories are to be produced to counsel for all Defendants within 30 days of receipt, and should be sent to the attention of Andrew LeGrand at Gibson, Dunn & Crutcher. Each Interrogatory is subject to the Definitions and Instructions listed below.

<div align="center">

**DEFINITIONS**

</div>

Except as specifically defined below, the terms used in this request shall be construed and defined in accordance with the Federal Rules of Civil Procedure and the Local Rules of the U.S. District Court for the Northern District of Texas, wherever applicable. Any terms not defined shall be given their ordinary meaning.

<div align="center">

1

</div>

Defendants reserve their right to alter, supplement, amend, correct, clarify, or otherwise modify these Interrogatories as discovery remains ongoing.

1. "Advertisers" means companies, organizations, individuals, or entities that pay to advertise or promote products, goods, services, ideas, positions, or concepts, by purchasing space— including but not limited to advertisers referenced in Plaintiff's First Amended Complaint, ECF No. 37: Apple, Bravo, IBM, Oracle, Xfinity, Lions Gate Entertainment, Disney, Warner Brothers Discovery, Paramount Global, NBCUniversal, Comcast, Sony, Ubisoft, Amazon, eBay, Major League Baseball, New York Times Co., Samsung, Sports Illustrated, The Wall Street Journal, USA Today, Office Depot, Nokia, Dish, Bayer, Tyson Foods, Honeywell, Discovery, FanDuel, Thermo Fisher, National Women's Soccer League, the Pittsburgh Steelers, the Atlanta Falcons, Manchester City, DraftKings, FanDuel, T-Mobile, and The Athletic.

2. "Any" or "all" mean "any and all."

3. "Communication" is synonymous in meaning and scope with the term "communication" as used in Local Rule 26, and includes any transfer of information of any type, whether written, oral, electronic, or otherwise, and includes but is not limited to transfers of information via email, report, phone call, letter, text message, Slack, Signal, direct messages on social media platforms, ephemeral messaging applications, instant messaging applications, voicemail message, voice message, written memorandum, note, summary, and other means.

4. "Date" means the exact day, month, and year, if ascertainable, or, if not, the best available approximation (including relationship to other events).

5.  "Document" is synonymous in meaning and scope to the term "document" as used in Federal Rule of Civil Procedure 34 and Local Rule 26 and includes, but is not limited to, records, reports, lists, data, statistics, summaries, analyses, communications (as defined above), computer discs, tapes, printouts, emails, databases, and any handwritten, typewritten, printed, electronically recorded, taped, graphic, machine-readable, or other material, of whatever nature and in whatever form, including all non-identical copies and drafts thereof, and all copies bearing any notation or mark not found on the original.

6.  "Identify" means to indicate or establish what something or someone is.

7.  "Including" means "including, but not limited to."

8.  "Mr. Carusone's November 26, 2023, interview statements" refers to the statements made by Mr. Angelo Carusone during an interview on MSNBC on November 26, 2023, available at https://www.mediamatters.org/angelo-carusone/angelo-carusone-discusses-elon-musk-and-x-msnbc-no-matter-how-you-slice-it-fact, referenced in paragraph 13 of the Amended Complaint.

9.  The "November 16, 2023 Article" refers to the article written by Mr. Hananoki and originally published on November 16, 2023, titled "As Musk endorses antisemitic conspiracy theory, X has been placing ads for Apple, Bravo, IBM, Oracle, and Xfinity next to pro-Nazi content."

10. The "November 17, 2023 Article" refers to the article written by Mr. Hananoki and originally published on November 17, 2023, titled "X is placing ads for Amazon, NBA Mexico, NBCUniversal, and others next to content with white nationalist hashtags."

11. "Platform" means the social media website operated by X.

12.     "X" or "Plaintiff" means the Plaintiff in this Matter, X Corp., as well as its predecessor in interest, Twitter, Inc., including both entities' owners, officers, directors, partners, members, managers, employees, representatives, staff, agents, consultants, and anyone acting on their behalf.

13.     "You" and "your" means the Plaintiff in this Matter, X Corp., as well as its predecessor in interest, Twitter, Inc., including both entities' owners, officers, directors, partners, members, managers, employees, representatives, staff, agents, consultants, and anyone acting on their behalf.

## **INSTRUCTIONS**

1.      Except as specifically defined below, the terms used in these Interrogatories shall be construed and defined in accordance with the Federal Rules of Civil Procedure. You must return your responses within thirty (30) days to Defendants' counsel. If you object to any interrogatory in full or in part, you must note the objection with specificity. If you object to any part of an interrogatory, you must specify the part to which you object, set forth the basis of your objection and respond to all parts of the interrogatory to which you do not object. Any ground not stated in a timely objection is waived.

2.      Where you, in good faith, doubt the meaning or intended scope of an interrogatory, before objecting to the interrogatory based on its vagueness, overbreadth, or ambiguity, contact Defendants' counsel in advance of asserting an objection. Defendants' counsel will provide whatever additional clarification or explanation may be needed. If you still believe the interrogatory to be vague, overbroad, or ambiguous, set forth in your response what you find to be vague, overbroad, or ambiguous and the construction you used in responding.

3.      In accordance with the Federal Rules of Civil Procedure, the scope of discovery sought through these interrogatories extends to all relevant and non-privileged information that

might reasonably lead to the discovery of admissible evidence. In answering these interrogatories, you must furnish all such information available to you, including information in the possession of all representatives, agents, and any other persons acting on your behalf, and not merely such information known of your own personal knowledge. If you cannot answer these interrogatories in full after exercising due diligence to secure the information requested, you should so state and answer to the extent possible, specifying the nature of your inability to answer the remainder and providing whatever information or knowledge that you possess concerning the unanswered portion.

4.   Each interrogatory shall be answered separately, fully, and responsively following the interrogatory.

5.   The interrogatories that follow are to be considered as continuing, and you have a duty to provide, by way of supplementary answers, such additional information as you or any persons acting on your behalf may hereafter obtain that will augment, clarify, correct, or otherwise modify the answers now given. Such supplementary answers are to be promptly served upon Defendants' counsel after receipt of such information, but in any event, no later than 14 days after receipt.

6.   If in any interrogatory a number is requested and if the exact number is not known, for each such interrogatory, provide an estimate, an explanation as to your confidence in that estimate, and an explanation as to how that estimate was reached.

7.   If you do not know the answer to any interrogatory, or if there are limitations to your knowledge about the answer to any interrogatory, provide whatever answer you can including the limitations to your knowledge. If there are other people or entities that you believe may know the answer to any interrogatory or may be able to provide additional

5

information in response to any interrogatory, identify those people or entities in your response.

8. If any objection is raised to these interrogatories on the basis of an assertion of privilege, you shall provide both a description of the basis of the privilege and all information necessary for Defendants to assess the claim of privilege.

9. No part of an interrogatory should be left unanswered merely because an objection is interposed to another part of the interrogatory. If a partial or incomplete answer is provided, state that the answer is partial or incomplete.

10. Where an interrogatory relates to more than one person or subject, it is to be answered as to each such person or subject separately.

11. The singular form of a noun or pronoun includes the plural form, and the plural form includes the singular.

12. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of an interrogatory all responses that otherwise might be construed to be outside its scope.

13. A reference to an entity, organization, or agency in this request shall be construed to include its officers, directors, partners, members, managers, employees, representatives, agents, consultants, and anyone acting on its behalf.

14. A reference to a person in this request shall be construed to include that person's employees, representatives, consultants, and anyone acting on their behalf.

## **INTERROGATORIES**

**INTERROGATORY NO. 1**: Identify all advertisers that you contend breached or attempted to breach a contract with X as a result of the November 16, 2023 Article, the November 17, 2023 Article, and/or Mr. Carusone's November 26, 2023 interview statements.

6

**<u>INTERROGATORY NO. 2</u>**: For any advertisers you identify in response to Interrogatory 1, identify and describe the contract term, any suspension or termination provisions, and any terms or other grounds for concluding that X had a legal right to future performance from each of those advertisers.

**<u>INTERROGATORY NO. 3</u>**: For any advertisers you identify in response to Interrogatory 1, describe the basis for your belief that Defendants' speech or conduct caused each such advertiser to breach or attempt to breach a contract with X, identifying any and all evidence of which you are aware that supports that belief.

**<u>INTERROGATORY NO. 4</u>**: Identify all advertisers that you contend have discontinued or attempted to discontinue their relationships with X as a result of the November 16, 2023 Article, the November 17, 2023 Article, and/or Mr. Carusone's November 26, 2023 interview statements.

**<u>INTERROGATORY NO. 5</u>**: For any advertisers you identify in response to Interrogatory 4, describe the basis for your belief that Defendants' speech or conduct caused each such advertiser to discontinue or attempt to discontinue their relationships with X, identifying any and all evidence of which you are aware that supports that belief.

**<u>INTERROGATORY NO. 6</u>**: Identify all accounts on the X platform, including any corresponding usernames or handles, which Elon Musk currently controls, accesses, or uses, or has controlled, accessed, or used in the past, to engage in any activity, including posting, commenting, messaging, or following or viewing accounts, on the X platform since April 14, 2022.

Dated May 6, 2024.

*/s/ Andrew LeGrand*

**GIBSON, DUNN & CRUTCHER LLP**
Andrew LeGrand (TX 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.* (CA 132099)
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed* (NY 4382040)
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

**ELIAS LAW GROUP LLP**
Abha Khanna* (WA 42612)
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Aria C. Branch (DC 1014541)
Jacob D. Shelly* (DC 90010127)
Elena Rodriguez Armenta* (DC 90018798)
Daniela Lorenzo* (DC 90022335)
250 Massachusetts Ave, NW Suite 400
Washington, D.C. 20001
T: (202) 968-4490
F: (202) 986-4498
abranch@elias.law
jshelly@elias.law
erodriguezarmenta@elias.law
dlorenzo@elias.law

* Admitted *pro hac vice*

*Counsel for Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone*

8

# Tab 4

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| **X CORP.**, Plaintiff, <br><br> vs. <br><br> **MEDIA MATTERS FOR AMERICA**, et al. <br> Defendants. | Case No. 4:23-cv-01175-O |

**PLAINTIFF'S OBJECTIONS AND RESPONSES**
**TO DEFENDANTS' FIRST SET OF REQUESTS FOR ADMISSION**

Pursuant to Federal Rule of Civil Procedure 36, Plaintiff X Corp. hereby serves its Objections and Responses to Defendants' First Set of Requests for Admission on Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone, by and through their counsel of record.

Dated: June 12, 2024

Respectfully submitted.

*/s/ Christopher D. Hilton*
Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
Ari Cuenin
Texas Bar No. 24078385
Alexander M. Dvorscak
Texas Bar No. 24120461
**STONE | HILTON PLLC**
1115 W. Slaughter Lane
Austin, TX 78748
Telephone: (737) 465-3897
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
alex@stonehilton.com

John C. Sullivan
Texas Bar No. 24083920
**S|L LAW PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

***Counsel for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that this document was served on all counsel of record for Defendants via email on June 12, 2024, pursuant to counsel's agreement to accept service via electronic means.

*/s/ Alexander M. Dvorscak*
Alexander M. Dvorscak

2

## OBJECTIONS AND RESPONSES

**REQUEST FOR ADMISSION NO. 1:** Admit that X has revenue sharing programs, including its Subscription Creators and Creators Ad Revenue Sharing programs, wherein X users can be compensated by X for verified users' organic impressions of content they generate or engage with on the Platform.

**RESPONSE:** Admitted that the Creators Ad Revenue Sharing program is available to certain X users meeting eligibility requirements and that the program allows X users to be compensated by X for verified users' organic impressions of content they generate or engage with on the Platform. The remainder of the request is denied as worded.


**REQUEST FOR ADMISSION NO. 2:** Admit that as part of X's revenue sharing programs, some users have been compensated by X after posting, creating, or promoting Disputed Content.

**OBJECTIONS:** X objects that this request is vague because there are hundreds of millions of accounts on X's platform and the request fails to provide reference to any specific accounts. This request is also vague because Defendants' definition of "Disputed Content" lacks an objective basis to evaluate posts that users have created.

**RESPONSE:** Denied as worded.


**REQUEST FOR ADMISSION NO. 3:** Admit that Elon Musk is responsible—directly or indirectly—for the content that gets posted by the @elonmusk account on the X platform.

**RESPONSE:** Admitted.

**REQUEST FOR ADMISSION NO. 4:** Admit that Elon Musk has publicly expressed negative views about media outlets, journalists, or reporters that have covered X or Musk himself, for reasons other than the accuracy of their reporting.

**OBJECTIONS:** X objects that this request seeks irrelevant information that is designed solely to harass. Elon Musk is not a plaintiff and there is no allegation that he is the alter ego of X. Musk's public views on the media, whether positive or negative, have no possible bearing on the claims or defenses raised in this matter. X also objects that Musk's public statements speak for themselves. X further objects that the phrase "negative view" is improperly vague because it is inherently subjective.

**RESPONSE:** Denied as worded.


**REQUEST FOR ADMISSION NO. 5:** Admit that the images of advertisements next to user content reproduced in the November 16, 2023 Article and the November 17, 2023 Article are authentic reproductions of pairings that occurred on the X Platform, as opposed to Photoshopped or otherwise digitally altered images.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to answer whether the articles contain "authentic reproductions of pairings that occurred on the X Platform." X did not create the articles in question and therefore lacks knowledge, and cannot address, the authenticity of the reproductions at issue.

**REQUEST FOR ADMISSION NO. 6:** Admit that multiple advertisers terminated, ceased, suspended, or otherwise discontinued their business relationship with X because of Disputed Content appearing on the X platform between October 27, 2022 and November 16, 2023.

**RESPONSE:** Denied.


**REQUEST FOR ADMISSION NO. 7:** Admit that more advertisers terminated, ceased, suspended, or otherwise discontinued their business relationship with X during the period from April 14, 2022 to November 15, 2023 than during the period from September 13, 2020 to April 13, 2022.

**Objection:** X objects that the phrase "terminated, ceased, suspended, or otherwise discontinued their business relationship" is vague, as, for example, it is not clear whether an advertiser who "suspended" advertising during the time period but then later returned to the Platform during the same time period should be counted or omitted from the amount. It is likewise unclear whether Defendants intend an advertiser who ceased advertising during time period A but returned to advertising on the Platform during any later time period B should be counted or omitted.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). X does not track advertisers who have "terminated, ceased, suspended, or otherwise discontinued their business relationship" in the ordinary course of its business for various time periods. After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to answer without additional specificity.


**REQUEST FOR ADMISSION NO. 8:** Admit that Elon Musk made the following statements on November 29, 2023, at The New York Times' DealBook Summit: "I hope they stop. Don't

advertise." "If somebody is going to try to blackmail me with advertising, blackmail me with money, go fuck yourself." "Go fuck yourself. Is that clear? I hope it is."

**OBJECTIONS:** X objects that this request seeks irrelevant information that is designed solely to harass. Elon Musk is not a plaintiff and there is no allegation that he is the alter ego of X. Musk's statements at public events have no bearing on the claims or defenses raised in this matter. X also objects that Musk's public statements speak for themselves.

**RESPONSE**:  Admitted that Musk provided statements at the New York Times' DealBook Summit on November 29, 2023 that are contained in the transcript of the interview that is available at the following URL: https://www.rev.com/blog/transcripts/dealbook-summit-2023-elon-musk-interview-transcript (last accessed on June 2, 2024).

# Tab 5

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| **X CORP.**, | |
| Plaintiff, | |
| vs. | Case No. 4:23-cv-01175-O |
| **MEDIA MATTERS FOR AMERICA**, et al. | |
| Defendants. | |

## PLAINTIFF'S AMENDED RESPONSES AND OBJECTIONS
## TO DEFENDANTS' FIRST SET OF REQUESTS FOR PRODUCTION

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiff X Corp. serves its Amended Responses and Objections to Defendants' First Set of Requests for Production on Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone, by and through their counsel of record, on July 12, 2024.

Dated: July 12, 2024                    Respectfully submitted.

                                        */s/ Christopher D. Hilton*
                                        Judd E. Stone II
                                        Texas Bar No. 24076720
                                        Christopher D. Hilton
                                        Texas Bar No. 24087727
                                        Ari Cuenin
                                        Texas Bar No. 24078385
                                        Alexander M. Dvorscak
                                        Texas Bar No. 24120461
                                        **STONE | HILTON PLLC**
                                        1115 W. Slaughter Lane
                                        Austin, TX 78748
                                        Telephone: (737) 465-3897
                                        judd@stonehilton.com
                                        chris@stonehilton.com
                                        ari@stonehilton.com
                                        alex@stonehilton.com

                                        John C. Sullivan
                                        Texas Bar No. 24083920
                                        **S|L LAW PLLC**
                                        610 Uptown Boulevard, Suite 2000
                                        Cedar Hill, TX 75104
                                        Telephone: (469) 523-1351
                                        Facsimile: (469) 613-0891
                                        john.sullivan@the-sl-lawfirm.com

                                        ***Counsel for Plaintiff***


## CERTIFICATE OF SERVICE

I hereby certify that this document was served on counsel for Defendants via email on July 12, 2024, pursuant to counsel's agreement to accept service via electronic means.

                                        */s/ Alexander M. Dvorscak*
                                        Alexander M. Dvorscak

2

## PRELIMINARY STATEMENT

X will produce documents responsive to each of Defendants' requests on a rolling basis as if the request in question was rewritten to remove the objectionable portion of the request, in accordance with X's objections and response. X will only produce documents in its possession, custody, and control that it is able to locate after a reasonable search. Per the agreement of counsel, X will not collect documents and communications from every current and former employee but rather will collect documents from all relevant custodians.

X will not search for or produce public documents or documents in the possession of third parties. X will not produce any privileged documents, which will be withheld and logged, if required, in accordance with the Parties' agreements regarding privilege and the Federal Rules. Production of documents pursuant to these requests does not bear on the admissibility of any document, and X expressly reserves the right to object to the documents' admissibility.

## RESPONSES AND OBJECTIONS

**REQUEST FOR PRODUCTION NO. 1**: All documents and communications related to or describing X's algorithm, the X systems and processes, as that term is used in Plaintiff's First Amended Complaint, ECF No. 37, that, among other things, determines what content is presented to each X user, including any and all prior versions previously used by X.

**OBJECTIONS:** X objects that this request is unduly burdensome and disproportionate to the needs of the case because it improperly seeks the production of all documents related to X's algorithm without limitation to documents relevant to this litigation, which only concerns X's algorithm insofar as Defendants were able to manipulate it into creating highly misleading screenshots. X has myriad, complex algorithms for thousands of unique purposes and functions that bear no relationship to the claims or defenses in this matter, but the request sweeps them in

3

regardless. X further objects as the request calls for the production of highly sensitive and confidential information (the suggestion algorithm) that constitutes a trade secret, the disclosure of which could be highly negative and destructive to X's commercial position in the marketplace of social media companies. The request is also disproportionate and unduly burdensome because it is not limited to specific individuals who have relevant knowledge and as such is likely to require the production of irrelevant documents.

**RESPONSE:** X is willing to meet and confer with Defendants concerning the production of X's timeline algorithm and will search for and produce documents related to Defendants' manipulation of the timeline algorithm, including non-privileged internal communications and documents related to X's investigation concerning the manipulation of its timeline algorithm, if any, after conferring with Defendants on the limited set of custodians who are likely to possess relevant knowledge.

**AMENDED RESPONSE:** X will search for and produce nonprivileged documents and communications related to Defendants' manipulation of the timeline algorithm, including nonprivileged internal communications and documents related to X's investigation concerning the manipulation of its timeline algorithm, if any. X will also search for and produce documents and communications sufficient to show how X leverages a variety of controls and settings that advertisers and users may select from that, in combination, influence which posts and advertisements will appear to a particular user on the Platform.

**REQUEST FOR PRODUCTION NO. 2:** All documents and communications related to the November 16, 2023 Article and/or the November 17, 2023 Article, including the activity and statements discussed therein.

App'x 045

**OBJECTIONS:** X objects that the request is unduly burdensome and disproportionate to the needs of the case because it is not limited to specific individuals who have relevant knowledge and as such is likely to require the production of irrelevant documents.

**RESPONSE:** X will search for and produce documents responsive to this request after conferring with Defendants on the limited set of custodians who are likely to possess relevant knowledge.

**AMENDED RESPONSE:** X will search for and produce non-privileged documents and communications responsive to this request.

**REQUEST FOR PRODUCTION NO. 3**: All documents and communications describing any policies and practices X uses to identify Disputed Content on the Platform.

**OBJECTIONS:** X objects that this request is unduly burdensome and disproportionate to the needs of the case because as worded, it potentially encompasses documents and communications to and from every employee of the company, at every level; communications with hundreds of millions of users regarding the terms and conditions and policies governing posts on the platform; and communications related to posts and content that has nothing to do with the content referenced in Defendants' Articles but which might conceivably fall under Defendants' broad definition of "Disputed Content" without having any relevance to the claims in this case. X also objects to the extent the request could be interpreted as calling for the production of confidential and highly sensitive source code that is a trade secret, disclosure of which could be highly negative and destructive to X's commercial position in the marketplace of social media companies.

**RESPONSE:** X's content moderation policies are publicly available at https://help.x.com/en/rules-and-policies/x-rules. X will also search for and produce any prior versions of those policies that have been in effect since April 2021.

**AMENDED RESPONSE:** X's content moderation policies are publicly available at https://help.x.com/en/rules-and-policies/x-rules. X will also search for and produce any prior versions of those policies that have been in effect since April 2021. X will additionally produce all non-privileged communications related to content moderation on the platform that also reference the Articles or the "Disputed Content" that is specifically referenced in the Articles.

**REQUEST FOR PRODUCTION NO. 4**: All documents and communications concerning content moderation on the Platform.

**OBJECTIONS:** X objects that this request is unduly burdensome and disproportionate to the needs of the case because it potentially encompasses documents from every employee of the company, at every level; communications with hundreds of millions of users regarding the terms and conditions and policies governing posts on the platform; and communications related to posts and content that has nothing to do with the content referenced in Defendants' Articles but which might conceivable fall under Defendants' broad definition of "Disputed Content" without having any relevance to the claims in this case. X also objects to the extent the request could be interpreted as calling for the production of confidential and highly sensitive source code that is a trade secret, disclosure of which could be highly negative and destructive to X's commercial position in the marketplace of social media companies.

**RESPONSE:** X's content moderation policies are publicly available at https://help.x.com/en/rules-and-policies/x-rules. X will also search for and produce any prior versions of those policies that have been in effect since April 2021. X will additionally produce all communications related to content moderation on the platform that also relate to the Articles after

6

conferring with Defendants on the limited set of custodians who are likely to possess relevant knowledge.

**AMENDED RESPONSE:** X's content moderation policies are publicly available at https://help.x.com/en/rules-and-policies/x-rules. X will also search for and produce any prior versions of those policies that have been in effect since April 2021. X will additionally produce all non-privileged communications related to content moderation on the platform that also reference the Articles or the "Disputed Content" that is specifically referenced in the Articles.

**REQUEST FOR PRODUCTION NO. 5**: All documents and communications, including screenshots, reflecting or referring to Disputed Content on the Platform.

**OBJECTIONS:** X objects that this request is unduly burdensome and disproportionate to the needs of the case because it potentially encompasses documents from every employee of the company, at every level; communications with potentially hundreds of millions of users regarding the terms and conditions and policies governing posts on the platform; and would require the review and production of one of the billions of posts and content made during the relevant time period that has nothing to do with the content referenced in Defendants' Articles but which might conceivable fall under Defendants' broad definition of "Disputed Content" without having any relevance to the claims in this case. X further objects that many users' posts on the Platform are public, and so are equally available to Defendants as they are to X.

**RESPONSE:** X will search for and produce the "Disputed Content" that is specifically referenced in the Articles. X will additionally produce all communications related to the "Disputed Content" referred to in the Articles after conferring with Defendants on the limited set of custodians who are likely to possess relevant knowledge.

App'x 048

**REQUEST FOR PRODUCTION NO. 6**: All documents and communications, including draft and completed contracts, agreements, and memoranda of understanding, describing or showing evidence of existing or prospective business relationships between X and any of the advertisers referenced in the Amended Complaint or identified in response to Interrogatories 1 and 4 in Defendants' First Set of Interrogatories.

**OBJECTIONS:** X objects to the scope of the request because the drafts and pre-contractual documents of contracts which were later executed are irrelevant to X's claims for interference with the executed contracts. X also objects because the request is unduly burdensome and disproportionate to the needs of the case for calling for the production of all communications with hundreds of thousands of advertisers including the production of communications which predate the publication of the Article by months or years, and which are not relevant to Defendants' interference with their business relationship with X. The request is also unduly burdensome and disproportionate to the needs of the case as it is not limited to specific individuals who have relevant knowledge and as such is likely to require the production of irrelevant documents.

**RESPONSE:** X will search for and produce all executed contracts between X and any of the advertisers referenced in X's response to Interrogatory 1 and 4 in existence on November 16, 2023. X will additionally produce communications relating to the Articles and/or an advertiser's decision to cease or reduce spending on the X platform between itself and the advertisers listed in X's response to Interrogatory 1 and 4 from November 16, 2023 to present after conferring with Defendants on a limited set of custodians who are likely to possess relevant knowledge.

**AMENDED RESPONSE:** X will produce non-privileged documents and communications between itself and the advertisers listed in response to Interrogatories 1 and 4 focused on their existing or prospective advertising business relationships with X from April 14, 2021 to present.

**REQUEST FOR PRODUCTION NO. 7**: All communications with X's past, present, or potential advertisers regarding their decision to advertise or not to advertise on the Platform, including but not limited to all communications reflecting the reasoning behind their decision to advertise or not to advertise on the Platform.

**OBJECTIONS:** X objects because the request is unduly burdensome and disproportionate to the needs of the case for calling for the production of all communications with advertisers including the production of communications which predate the publication of the Article by months or years, and which are not relevant to Defendants' interference with their business relationship with X. X further objects because communications with past advertisers who were not advertisers at the time of the Article are irrelevant to X's claim that Defendants interfered with its current and prospective advertisers through Defendants' tortious conduct. The request is also overly broad and unduly burdensome as it is not limited to specific individuals who have relevant knowledge and as such is likely to require the production of irrelevant documents.

**RESPONSE:** X will search for and produce communications relating to the Articles and/or any decision to cease or reduce spending on the X platform by the advertisers listed in X's response to Interrogatory 4 from November 16, 2023, to present, after conferring with Defendants on a limited set of custodians who are likely to possess relevant knowledge.

9

**AMENDED RESPONSE:** X will produce non-privileged documents and communications between itself and the advertisers listed in response to Interrogatories 1 and 4 focused on their existing or prospective advertising business relationships with X from April 14, 2021 to present.

**REQUEST FOR PRODUCTION NO. 8**: All documents and communications discussing or mentioning Media Matters, Mr. Hananoki, and/or Mr. Carusone.

**OBJECTIONS:** X objects that this request is unduly burdensome and disproportionate to the needs of the case because many of the documents and communications possessed by X that would be responsive to the request as written are likely to be subject to attorney-client privilege and would therefore require an expensive and unduly burdensome privilege review. The request is also overly broad and unduly burdensome as it is not limited to specific individuals who have relevant knowledge and as such is likely to require the production of irrelevant documents. Moreover, the request calls for the production of documents which are not relevant to the claims and defenses at issue: what X employees think about or have discussed about Defendants is not probative to the accuracy of Defendants so-called reporting or their interference with third-party advertisers.

**RESPONSE:** X will search for and produce all documents and communications that refer to the November 16 and 17 Articles published by Media Matters and the TV appearances of Carusone after conferring with Defendants on the limited set of custodians who are likely to possess relevant knowledge.

**AMENDED RESPONSE:** X will search for and produce non-privileged documents and communications responsive to this request.

**REQUEST FOR PRODUCTION NO. 9**: All documents or communications showing X's business revenue generated from advertisements on the Platform in monthly installments or any term in which X maintains these records from April 14, 2021, to the present.

**OBJECTIONS:** X objects that this request is unduly burdensome and disproportionate to the needs of the case as the communications of X employees regarding the advertising revenue is not relevant to the damages X seeks in this case which can be determined solely based on the financial records themselves. The request is also overly broad because it is not limited to specific individuals who have relevant knowledge and as such is likely to require the production of irrelevant documents. X further objects because this request seeks information that could be more easily and less burdensomely addressed in response to an interrogatory.

**RESPONSE:** X will search for and produce documents sufficient to show the revenue that X generates from the advertisers listed in X's response to Interrogatory 4 on a monthly basis from April 14, 2021, to the present.


**REQUEST FOR PRODUCTION NO. 10**: All documents and communications regarding Your connection with or presence in the jurisdiction of the U.S. District Court for the Northern District of Texas.

**OBJECTIONS:** X objects that this request is unduly burdensome and disproportionate to the needs of the case because it is not limited to specific individuals who have relevant knowledge and as such is likely to require the production of irrelevant documents.

**RESPONSE:** X will search for and produce documents reflecting communications with advertisers located within the Northern District of Texas who were affected by Defendants'

tortious conduct, including but not limited to AT&T, after conferring with Defendants on the limited set of custodians who are likely to possess relevant knowledge.

**AMENDED OBJECTIONS:** X objects that this request is unduly burdensome and disproportionate to the needs of the case because it is not limited to specific individuals who have relevant knowledge and as such is likely to require the production of irrelevant documents. X also objects that the phrase "connection with or presence in" is vague, undefined, and potentially covers every post made in the specified location. X will interpret the phrase as if it was used in the context of a personal jurisdiction or venue analysis under Federal law.

**AMENDED RESPONSE:** X will search for and produce nonprivileged documents and communications responsive to this request, interpreting the phrase "connection with or presence in the jurisdiction of" as that phrase would be used in the context of a personal jurisdiction or venue analysis under Federal law.

**REQUEST FOR PRODUCTION NO. 11**: All communications with any elected or appointed public official, including but not limited to Texas Attorney General Ken Paxton and Missouri Attorney General Andrew Bailey, their staff, employees, and/or representatives regarding Media Matters, Mr. Hananoki, Mr. Carusone, and/or any of the allegations made in the Amended Complaint.

**OBJECTIONS**: X objects that this request is unduly burdensome and disproportionate to the needs of the case because is not limited to specific individuals who have relevant knowledge and as such is likely to require the production of irrelevant documents.

**RESPONSE**: X will search for and produce documents responsive to this request after conferring with Defendants on the limited set of custodians who are likely to possess relevant knowledge.

**AMENDED RESPONSE**: X will search for and produce nonprivileged documents and communications responsive to this request.

**REQUEST FOR PRODUCTION NO. 12**: All documents and communications regarding the removal or destruction of the personal or business physical cellular phone in the possession of X's owner, Elon Musk, or the removal, discontinuation, or otherwise termination of Musk's personal or business cellular phone service, since November 2023.

**OBJECTIONS:** X objects that this request is an improper fishing expedition. Elon Musk is not a plaintiff or defendant in this litigation, and any cell phone that he possesses or did possess has no bearing on the claims or defenses asserted here. X also objects because the request is harassing in so far as it seeks to attack Musk personally and suggests he did something improper without any evidence to support such an accusation and without any claim to which his cell phone would be relevant.

**RESPONSE:** X will not search for or produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 13**: All documents and communications regarding payments made to X users related to X's revenue sharing programs, including their Subscription Creators and Creator Ads Revenue Sharing programs.

**OBJECTIONS:** X objects that this request is unduly burdensome and disproportionate to the needs of the case because it potentially encompasses seeks all communications with X's users that participate in the X's creator revenue sharing programs as well as all internal communications about the program and managing that program, little to none of which is relevant to the claims and defenses in this case.

**RESPONSE:** X's policies governing the Creator Subscriptions and Ads Revenue Sharing programs are available at https://help.x.com/en/using-x/creator-ads-revenue-sharing. X will not produce documents regarding the payment amounts made to X users related to X's revenue sharing programs, as those payments are not relevant to this litigation.

**REQUEST FOR PRODUCTION NO. 14**: All documents and communications describing available means on X for users to control or change the advertisements they see on the Platform, including any filters for advertisements that can be used for new and existing users of the Platform.

**OBJECTIONS:** X objects that this request is unduly burdensome and disproportionate to the needs of the case because it seeks to capture all communications and documents related to how advertisements are viewed on the Platform without any appropriate limiting criteria. X also objects that the request is unduly burdensome because the Platform is publicly accessible, and thus, Defendants can observe for themselves which mechanisms are available to users of the Platform. X additionally objects because the request could be interpreted to call for the production of confidential and highly sensitive source code that is a trade secret, disclosure of which could be highly negative and destructive to X's commercial position in the marketplace of social media companies. The request is also overly broad and unduly burdensome as it is not limited to specific individuals who have relevant knowledge and as such is likely to require the production of irrelevant documents.

**RESPONSE:** X will search for and produce its policies and documents made available to users of the Platform regarding how users can control or change the advertisements they see on the Platform. X will additionally produce all documents and communications related to the manipulation of X's algorithm and the advertisements that were published in the Defendants'

Articles after conferring with Defendants on the limited set of custodians who are likely to possess relevant knowledge.

**AMENDED RESPONSE:** X will search for and produce its policies and documents made available to users of the Platform regarding how users can control or change the advertisements they see on the Platform. X will additionally produce all nonprivileged documents and communications related to the manipulation of X's algorithm and the advertisements that were published in the Defendants' Articles. X will search for and produce nonprivileged documents and communications sufficient to show how X leverages a variety of controls and settings that users may select from that, in combination, influence which posts and advertisements will appear to a particular user on the Platform.

**REQUEST FOR PRODUCTION NO. 15**: Documents sufficient to show X's organizational structure, including Board membership, leadership structure, and that of any affiliated or related entities.

**OBJECTIONS:** X objects as the request is vague in so far as it refers to "X" generally pursuant to a broad defined term, rather than to any one specific legal entity. X will interpret this request as if it was limited solely to X Corp. X further objects that if the request is not limited to just X Corp., then it is overly broad and unduly burdensome, as the organizational structure of the various corporate affiliates have no relevance on any claim or defense in this litigation.

**RESPONSES:** X will search for and produce documents sufficient to show the organizational structure of X Corp.

15

**REQUEST FOR PRODUCTION NO. 16**: Documents sufficient to identify individuals, representatives, or employees responsible for or involved with content moderation on the Platform, including individuals, representatives, or employees responsible for or involved with developing policies for content moderation on the platform.

**OBJECTIONS:** X objects as the identity of individuals involved with content moderation on the Platform is not relevant to the claims or defenses at issue in this litigation as it is not probative as to either the accuracy of Defendants' so-called reporting or to their interference with X's advertisers. X also objects because the request is vague as the individuals involved in content moderation changes over time and the request does not state a time that Defendants are interested in—X will accordingly interpret this request as calling for the production of documents sufficient to identify the content moderation team as it existed on November 16, 2023 when the Article was published. X further objects because this request seeks information that could be more easily and less burdensomely addressed in response to an interrogatory.

**AMENDED OBJECTIONS:** X objects as the identity of individuals involved with content moderation on the Platform is not relevant to the claims or defenses at issue in this litigation as it is not probative as to either the accuracy of Defendants' so-called reporting or to their interference with X's advertisers. X further objects because this request seeks information that could be more easily and less burdensomely addressed in response to an interrogatory. X further objects that the request is unduly burdensome as written because the request calls for information on the identities of hundreds or thousands of employees, including non-decision makers, who worked in content moderation for various periods of time.

**RESPONSE:** X will produce documents sufficient to identify the individuals responsible for developing its content moderation policies as of November 16, 2023.

**AMENDED RESPONSE:** X will search for and produce nonprivileged documents sufficient to identify the individuals responsible for developing X's hateful content policy from November 2022 to present.

**REQUEST FOR PRODUCTION NO. 17**: All documents or communications regarding the cessation, suspension, termination, or otherwise discontinuance of a business or transactional relationship between X and its advertisers.

**OBJECTIONS**: X objects because the request is unduly burdensome and disproportionate to the needs of the case for calling for the production of all communications with advertisers including the production of communications which predate the publication of the Article by months or years, and which are not relevant to Defendants' interference with their business relationship with X. X further objects because communications with past advertisers who were not advertisers at the time of the Article are irrelevant to X's claim that Defendants interfered with its current and prospective advertisers through Defendants' tortious conduct. The request is also unduly burdensome and disproportionate to the needs of the case because is not limited to specific individuals who have relevant knowledge and as such is likely to require the production of irrelevant documents.

**RESPONSE**: X will search for and produce documents relating to the advertisers listed in X's response to Interrogatory 4, from November 16, 2023 to present, that are responsive to this request after conferring with Defendants on the limited set of custodians who are likely to possess relevant knowledge.

**AMENDED RESPONSE:** X will produce non-privileged documents and communications between itself and the advertisers listed in response to Interrogatories 1 and 4 focused on their existing or prospective advertising business relationships with X from April 14, 2021 to present.

**REQUEST FOR PRODUCTION NO. 18**: All documents concerning, and communications with, any public relations, advertising, marketing, communications, or similar firm, group, or business that You have contracted with, or that you have contacted in any capacity in connection with the November 16, 2023 Article or the November 17, 2023 Article.

**OBJECTIONS**: X objects that this request is unduly burdensome and disproportionate to the needs of the case because it is not limited to specific individuals who have relevant knowledge and as such is likely to require the production of irrelevant documents.

**RESPONSE**: X will search for and produce responsive documents, if any, after conferring with Defendants on a limited set of custodians who are likely to possess relevant knowledge.

**AMENDED RESPONSE**: X will search for and produce nonprivileged documents and communications responsive to this request.


**REQUEST FOR PRODUCTION NO. 19**: All documents and communications related to or reflecting Your knowledge or understanding of Media Matters's business operations, strategies, partnerships, staff, donors, directors, reporting, or day-to-day activities.

**OBJECTIONS**: X objects that this request constitutes an improper fishing expedition because what X knows or understands about Media Matters is not probative as to the truth of Defendants' so-called reporting or their interference with X's advertisers. Moreover, Defendants have no defense in which X's state of mind is an element. X thus objects that any responsive documents would be irrelevant.

**AMENDED OBJECTIONS:** X objects that this request is duplicative of other requests seeking documents and communications in X's possession, custody or control related to Defendants.

**RESPONSE**: X will not search for or produce documents responsive to this request.

**AMENDED RESPONSE**: See X's amended responses to Request for Production Nos. 2 and 8.


**REQUEST FOR PRODUCTION NO. 20**: All documents and communications related to or reflecting X's Board's knowledge or understanding of Media Matters's business operations, strategies, partnerships, staff, donors, directors, reporting, or day-to-day activities.

**OBJECTIONS**: X objects that this request constitutes an improper fishing expedition because what X knows or understands about Media Matters is not probative as to the truth of Defendants' so-called reporting or their interference with X's advertisers. Moreover, Defendants have no defense in which X's state of mind is an element. X thus objects that any responsive documents would be irrelevant.

**AMENDED OBJECTIONS:** X objects that this request is duplicative of other requests seeking documents and communications in X's possession, custody or control related to Defendants.

**RESPONSE**: X will not search for or produce documents responsive to this request.

**AMENDED RESPONSE**: See X's amended responses to Request for Production Nos. 2 and 8.


**REQUEST FOR PRODUCTION NO. 21**: All documents and communications related to or reflecting X's employees' knowledge or understanding of Media Matters's business operations, strategies, partnerships, staff, donors, directors, reporting, or day-to-day activities.

**OBJECTIONS**: X objects that this request constitutes an improper fishing expedition because what X knows or understands about Media Matters is not probative as to the truth of Defendants' so-called reporting or their interference with X's advertisers. Moreover, Defendants have no

defense in which X's state of mind is an element. X thus objects that any responsive documents would be irrelevant.

**AMENDED OBJECTIONS:** X objects that this request is duplicative of other requests seeking documents and communications in X's possession, custody or control related to Defendants.

**RESPONSE**: X will not search for or produce documents responsive to this request.

**AMENDED RESPONSE**: See X's amended responses to Request for Production Nos. 2 and 8.


**REQUEST FOR PRODUCTION NO. 22:** All documents and communications related to or reflecting X's advertisers' and agencies' involvement in or knowledge or understanding of Media Matters's business operations, strategies, partnerships, staff, donors, directors, reporting, or day-to-day activities.

**OBJECTIONS**: The request is unduly burdensome and disproportionate to the needs of the case because it is not limited to specific individuals who have relevant knowledge and as such is likely to require the production of irrelevant documents.

**RESPONSE**: X will produce documents responsive to this request after conferring with Defendants on the limited set of custodians who are likely to possess relevant knowledge.

**AMENDED RESPONSE:** X will search for and produce nonprivileged documents and communications responsive to this request.


**REQUEST FOR PRODUCTION NO. 23**: All internal documents and communications with or about media organizations, reporters, or journalists regarding reporting about X, its employees, its directors, or Elon Musk.

App'x 061

**OBJECTIONS**: X objects that this request is unduly burdensome and disproportionate to the needs of the case because it seeks the production of documents of irrelevant documents. Defendants cannot establish that it is appropriate to require X to search for all communications with the media without limitation to the subjects at issue in this litigation. The request is also unduly burdensome and disproportionate in that it is not limited to specific individuals who have relevant knowledge and as such is likely to require the production of irrelevant documents.

**RESPONSE**: X will search for and produce documents about Media Matters, Hananoki, and Carusone after conferring with Defendants on the limited set of custodians who are likely to possess relevant knowledge.


**REQUEST FOR PRODUCTION NO. 24**: All documents and communications demonstrating a connection between the November 16, 2023 Article, the November 17, 2023 Article, and/or Mr. Carusone's November 26, 2023 interview statements and the withdrawal or attempted withdrawal of any of X's advertisers from the Platform.

**OBJECTIONS**: X objects because the request is unduly burdensome and disproportionate to the needs of the case for calling for the production of all communications with advertisers without limiting to the advertisers who form the basis of X's claims against Defendants. The request is also unduly burdensome and disproportionate to the needs of the case because is not limited to specific individuals who have relevant knowledge and as such is likely to require the production of irrelevant documents.

**RESPONSE**: X will search for and produce documents relating to the advertisers listed in X's response to Interrogatory 4, from November 16, 2023 to present, that are responsive to this request.

**REQUEST FOR PRODUCTION NO. 25**: All documents and communications related to X suspending or terminating user accounts on the Platform, including but not limited to the processes by which such suspended or terminated user accounts are or have been reinstated.

**OBJECTIONS**: X objects because the request is unduly burdensome and disproportionate to the needs of the case because it requests the production of a large quantity of documents which are not relevant to X's claims in this litigation as the suspense, termination, or reinstation of any user on the Platform is not probative to either the accuracy of Defendants' so-called reporting or Defendants' interference with X's advertisers. The request is overly broad and unduly burdensome as it is not limited to specific individuals who have relevant knowledge and as such is likely to require the production of irrelevant documents.

**RESPONSE**: X will search for and produce summary analytics showing the number of users suspended on the Platform during the requested time period as well as public documents reflecting X's policies for suspending, terminating, and reinstating users' accounts.

**REQUEST FOR PRODUCTION NO. 26**: All documents and communications related to Elon Musk's activity on the X platform, including Musk's engagement with Disputed Content on the Platform, and any allegations that Musk has violated X's user agreement, terms of service, rules and policies, or content moderation policies.

**OBJECTIONS**: X objects that this request is harassing and a fishing expedition. Musk's actions on the Platform are not probative to the accuracy of Defendants' so-called reporting or Defendants' interference with X's advertisers. Musk is not a plaintiff and there is no allegation that he is the alter ego of Plaintiff.

**RESPONSE**: X will not search for or produce documents responsive to this request.

**AMENDED RESPONSE**: X will search for and produce nonprivileged documents and communications with the advertisers listed in X's response to Defendants' Interrogatory No. 4 regarding Musk and the "Disputed Content" referenced in the Articles. For Musk's activity on the X platform, the posts speak for themselves, and X directs Defendants to the X account handle @elonmusk.

**REQUEST FOR PRODUCTION NO. 27**: All documents and communications related to the manner in which "views," as that term is used on social media platforms, meaning a measure of how many times a visitor on a social media platform engages with certain content, are generated on X.

**OBJECTIONS**: X objects because the request is unduly burdensome and disproportionate to the needs of the case because communications regarding how X calculates "views" encompasses a large number of highly irrelevant documents that is not probative to the accuracy of Defendants' so-called reporting or their interference with X's advertisers. X also objects because the request is not limited to specific individuals who have relevant knowledge and as such is likely to require the production of irrelevant documents. X further objects because this request seeks information that could be more easily and less burdensomely addressed in response to an interrogatory. X additionally objects to the extent the request could be interpreted as calling for the production of confidential and highly sensitive source code related to the calculation of views that is a trade secret, disclosure of which could be highly negative and destructive to X's commercial position in the marketplace of social media companies.

**RESPONSE**: X will search for and produce documents sufficient to understand how X calculates views on the Platform.

**REQUEST FOR PRODUCTION NO. 28**: All documents and communications related to the termination or suspension of any current or former employee of X for reasons related to content moderation or Disputed Content on X.

**OBJECTIONS**: X objects that this request constitutes an improper fishing expedition because whether any employee was terminated for reasons related to content moderation is not an element of any claim or defense that either party has asserted and is not probative to determining either the accuracy of Defendants' so-called reporting or their interference with X's advertisers.

**RESPONSE**: X will not search for or produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 29**: All public statements made by Musk—including but not limited to public statements made on the Platform, on other social media platforms, and in media interviews—as to Jewish people, Muslim people, Black people, Hispanic or Latino people, women, members of the LGBTQIA+ community, immigrants, non-English speakers, Asian people, and/or indigenous people, and any documents and communications regarding those statements.

**OBJECTIONS**: X objects that this request is harassing, unduly burdensome, and disproportionate to the needs of the case. Musk's statements on the Platform or elsewhere are not probative to the accuracy of Defendants' so-called reporting or Defendants' interference with X's advertisers. Musk is not a plaintiff and there is no allegation that he is the alter ego of Plaintiff. X also objects because the request calls for the production of public statements that are equally available to Defendants as they are to X.

**RESPONSE**: X will not search for or produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 30**: All documents and communications identified in response or related to any response provided to Defendants' Requests for Admission or Interrogatories.

**OBJECTIONS**: None.

**RESPONSE**: X will search for and produce documents responsive to this request.

# Tab 6

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| **X CORP.**, | |
| Plaintiff, | |
| vs. | Case No. 4:23-cv-01175-O |
| **MEDIA MATTERS FOR AMERICA**, et al. | |
| Defendants. | |

**PLAINTIFF'S OBJECTIONS AND RESPONSES
TO DEFENDANTS' FIRST SET OF INTERROGATORIES**

Pursuant to Federal Rule of Civil Procedure 33, Plaintiff X Corp. hereby serves its Objections and Responses to Defendants' First Set of Interrogatories on Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone, by and through their counsel of record.

Dated: June 19, 2024

Respectfully submitted.

*/s/ Christopher D. Hilton*
Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
Ari Cuenin
Texas Bar No. 24078385
Alexander M. Dvorscak
Texas Bar No. 24120461
**STONE | HILTON PLLC**
1115 W. Slaughter Lane
Austin, TX 78748
Telephone: (737) 465-3897
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
alex@stonehilton.com

John C. Sullivan
Texas Bar No. 24083920
**S|L LAW PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

***Counsel for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that this document was served on all counsel of record for Defendants via email on June 19, 2024, pursuant to counsel's agreement to accept service via electronic means.

*/s/ Alexander M. Dvorscak*
Alexander M. Dvorscak

2

## OBJECTIONS AND RESPONSES

**INTERROGATORY NO. 1:** Identify all advertisers that you contend breached or attempted to breach a contract with X as a result of the November 16, 2023 Article, the November 17, 2023 Article, and/or Mr. Carusone's November 26, 2023 interview statements.

**RESPONSE:** Defendants "knowingly persuad[ed] advertisers to end or suspend advertising on the X platform, knowingly induc[ed] one or more of the contracting parties to breach its obligations, or knowingly ma[de] X Corp.'s performance of its advertisement sales more burdensome or of less or no value to the advertisers entitled to performance." ECF No. 37 ¶ 72. See X's response to Interrogatory No. 4 for the names of the advertisers that are relevant to X's causes of action.

X reserves the right to amend this response throughout the course of discovery and after Defendants fully produce documents responsive to X's requests for production.


**INTERROGATORY NO. 2**: For any advertisers you identify in response to Interrogatory 1, identify and describe the contract term, any suspension or termination provisions, and any terms or other grounds for concluding that X had a legal right to future performance from each of those advertisers.

**OBJECTION:** X objects that this interrogatory is vague as to the phrase "legal right to future performance." The predicate actions underlying X's first claim for relief are that Defendants "knowingly persuading advertisers to end or suspend advertising on the X platform, knowingly inducing one or more of the contracting parties to breach its obligations, or knowingly making X Corp.'s performance of its advertisement sales more burdensome or of less or no value to the

3

advertisers entitled to performance." ECF. No. 37 ¶ 72. X also objects that the interrogatory calls for a legal conclusion regarding the "legal right of future performance."

**RESPONSE:** The advertisers identified in Interrogatory No. 4 entered into contracts with X consistent with industry expectations and understandings. X will produce documents and communications reflecting the identified advertisers' contractual arrangements. Fed. R. Civ. P. 33(d)(1).

X reserves the right to amend this response throughout the course of discovery and after Defendants fully produce documents responsive to X's requests for production.

**INTERROGATORY NO. 3**: For any advertisers you identify in response to Interrogatory 1, describe the basis for your belief that Defendants' speech or conduct caused each such advertiser to breach or attempt to breach a contract with X, identifying any and all evidence of which you are aware that supports that belief.

**RESPONSE:** See X's responses to Interrogatory Nos. 4 & 5.

X reserves the right to amend this response throughout the course of discovery and after Defendants fully produce documents responsive to X's requests for production.

**INTERROGATORY NO. 4**: Identify all advertisers that you contend have discontinued or attempted to discontinue their relationships with X as a result of the November 16, 2023 Article, the November 17, 2023 Article, and/or Mr. Carusone's November 26, 2023 interview statements.

**RESPONSE:** Defendants' publication of misleading and defamatory statements disseminated in the November 16 and 17 articles and/or in Angelo Carusone's statements in interviews played a

causal role in at least the following companies and associations pausing or declining to resume their paid advertising campaigns on X's social media platforms:

- IBM
- Intel
- ESPN
- AT&T
- Apple
- Siemens

X reserves the right to amend this response throughout the course of discovery and after Defendants fully produce documents responsive to X's requests for production.


**INTERROGATORY NO. 5**: For any advertisers you identify in response to Interrogatory 4, describe the basis for your belief that Defendants' speech or conduct caused each such advertiser to discontinue or attempt to discontinue their relationships with X, identifying any and all evidence of which you are aware that supports that belief.

**RESPONSE:** The entities listed above paused their paid advertising campaigns on X's social media platform shortly after the publication of the November 16 article. That timing demonstrates a link between Defendants' conduct and the advertisers' decisions. Indeed, Media Matters itself boasted that "major blue-chip companies" announced that they would suspend advertising on X after "Media Matters reported that X was placing ads alongside white nationalist and pro-Nazi content." *See* Media Matters Staff, *Here are the companies pulling ads from X*, MEDIA MATTERS FOR AMERICA, https://tinyurl.com/MMNov17art (published Nov. 17, 2023 7:15 p.m., updated Nov. 20, 2023, 4:45 p.m.); *see also* Eric Hananoki, *As Musk endorses antisemitic conspiracy*

5

*theory, X has been placing ads for Apple, Bravo, IBM, Oracle, and Xfinity next to pro-Nazi content*, MEDIA MATTERS FOR AMERICA, https://www.mediamatters.org/twitter/musk-endorses-antisemitic-conspiracy-theory-x-has-been-placing-ads-apple-bravo-ibm-oracle (published Nov. 16, 2023, 10:05 a.m., updated Nov. 17, 2023, 2:45 p.m.) (***Update (11/16/23):*** *IBM released a statement to the Financial Times saying that it has 'suspended all advertising on X while we investigate this entirely unacceptable situation.' Media Matters will update if the other major companies in this report take any similar actions.*").

Many advertisers and third-party advertising agencies also communicated with X employees by phone and email and indicated that the advertisers would be pausing their campaigns with X out of concerns about Defendants' statements. X will produce documents reflecting those communications. Fed. R. Civ. P. 33(d)(1).

X reserves the right to amend this response throughout the course of discovery and after Defendants fully produce documents responsive to X's requests for production.

**INTERROGATORY NO. 6**: Identify all accounts on the X platform, including any corresponding usernames or handles, which Elon Musk currently controls, accesses, or uses, or has controlled, accessed, or used in the past, to engage in any activity, including posting, commenting, messaging, or following or viewing accounts, on the X platform since April 14, 2022.

**OBJECTIONS:** X objects that this interrogatory seeks irrelevant information and is designed solely to harass. Musk is not a plaintiff, there is no allegation that he is the alter ego of X, and Defendants have no counterclaims. X's amended complaint makes clear that X is not suing based on Defendants' conduct towards Musk, but rather for the tremendous damage that Defendants caused the company through the publication of the November 16 and 17 articles. Musk's

usernames or handles through which he posts content on X have no possible bearing on the claims or defenses raised in this matter.

**RESPONSE:** For these reasons, X will not respond to this interrogatory.

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| **X CORP.**, a Nevada corporation,<br><br>        Plaintiff,<br><br>   vs.<br><br>**MEDIA MATTERS FOR AMERICA**, a Washington, D.C. non-profit corporation, **ERIC HANANOKI**, and **ANGELO CARUSONE**,<br><br>        Defendants. | Case No. 4:23-cv-01175-O |

<u>**VERIFICATION OF INTERROGATORY ANSWERS**</u>

I, Monique Pintarelli, am Head of the Americas at X Corp. I declare under penalty of perjury that the foregoing answers to Defendants' First Set of Interrogatories on behalf of X Corp. are true and correct to the best of my knowledge, information, belief, or recollection.

Executed: ___June 19___, 2024.

_Monique Pintarelli_
Monique Pintarelli (Jun 19, 2024 18:03 GMT+2)

Monique Pintarelli
Head of the Americas
X Corp.

**Signature:** _Monique Pintarelli_
Monique Pintarelli (Jun 19, 2024 18:03 GMT+2)

**Email:** mpintarelli@x.com

**Title:** Head of The Americas.

**Company:** X Corp

Page **1** of **1**

App'x 075

# Tab 7

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

|  |  |
|---|---|
| X CORP., | |
| *Plaintiff,* | |
| v. | Civil Action No. 4:23-cv-01175-O |
| MEDIA MATTERS FOR AMERICA, *et al.*, | |
| *Defendants.* | |

## DEFENDANTS MEDIA MATTERS FOR AMERICA, ERIC HANANOKI, AND ANGELO CARUSONE'S SECOND SET OF REQUESTS FOR ADMISSION

Pursuant to Federal Rules of Civil Procedure 26 and 36, Defendants Media Matters for America ("Media Matters"), Mr. Eric Hananoki, and Mr. Angelo Carusone, through their undersigned counsel, serve their Second Set of Requests for Admission ("Requests") on Plaintiff X Corp. Responses to these Requests are to be produced electronically to Defendants' counsel within 30 days of receipt. Each Request for Admission is subject to the Definitions and Instructions listed below.

## DEFINITIONS

Except as specifically defined below, the terms used in these Requests shall be construed and defined in accordance with the Federal Rules of Civil Procedure and the Local Rules of the U.S. District Court for the Northern District of Texas, wherever applicable. Any terms not defined shall be given their ordinary meaning.

1

Defendants reserve their right to alter, supplement, amend, correct, clarify, or otherwise modify these Requests as discovery remains ongoing.

1. "Algorithm" refers to the X systems and processes, as that term is used in Plaintiff's First Amended Complaint, ECF No. 37, that, among other things, determines what content is presented to each X user.

2. "Amended Complaint" means Plaintiff's First Amended Complaint, filed at ECF No. 37, in this litigation, *X Corp. v. Media Matters for America et al.*, No. 4:23-cv-01175-O.

3. "Any" or "all" mean "any and all."

4. "Communication" is synonymous in meaning and scope with the term "communication" as used in Local Rule 26, and includes any transfer of information of any type, whether written, oral, electronic, or otherwise, and includes but is not limited to transfers of information via email, report, phone call, letter, text message, Slack, Signal, direct messages on social media platforms, ephemeral messaging applications, instant messaging applications, voicemail message, voice message, written memorandum, note, summary, and other means.

5. "Content moderation" means any efforts taken by X to limit the appearance of Disputed Content (as defined herein) on the Platform.

6. "Date" means the exact day, month, and year, if ascertainably, or, if not, the best available approximation (including relationship to other events).

7. "Disputed Content" means "extreme" and "fringe" content, as those terms are used in the Amended Complaint, see ECF No. 37 ¶ 9, and includes but is not limited to content expressing skepticism about the Holocaust, content expressing negative views or attitudes regarding Jewish people, Muslim people, Black people, Hispanic or Latino people, women,

App'x 078

members of the LGBTQIA+ community, immigrants, non-English speakers, Asian people, or indigenous peoples, and content expressing positive views or attitudes regarding Adolf Hitler, white nationalism, or white supremacism.

8.   "Document" is synonymous in meaning and scope to the term "document" as used in Federal Rule of Civil Procedure 34 and Local Rule 26 and includes, but is not limited to, records, reports, lists, data, statistics, summaries, analyses, communications (as defined above), computer discs, tapes, printouts, emails, databases, and any handwritten, typewritten, printed, electronically recorded, taped, graphic, machine-readable, or other material, of whatever nature and in whatever form, including all non-identical copies and drafts thereof, and all copies bearing any notation or mark not found on the original.

9.   "Including" means "including, but not limited to."

10.   The "November 16, 2023 Article" refers to the article written by Mr. Hananoki and originally published on November 16, 2023, titled "As Musk endorses antisemitic conspiracy theory, X has been placing ads for Apple, Bravo, IBM, Oracle, and Xfinity next to pro-Nazi content."

11.   The "November 17, 2023 Article" refers to the article written by Mr. Hananoki and originally published on November 17, 2023, titled "X is placing ads for Amazon, NBA Mexico, NBCUniversal, and others next to content with white nationalist hashtags."

12.   "Platform" means the social media website operated by X.

13.    "Screenshot" means the image of data, captured as displayed on the screen of a computer or mobile device.

14.   "X" or "Plaintiff" shall mean the Plaintiff in this Matter, X Corp., as well as its predecessor in interest, Twitter, Inc., including both entities' owners, officers, directors, partners,

3

members, managers, employees, representatives, staff, agents, consultants, and anyone acting on their behalf.

15.   "You" and "your" means the Plaintiff in this Matter, X Corp., as well as its predecessor in interest, Twitter, Inc., including both entities' owners, officers, directors, partners, members, managers, employees, representatives, staff, agents, consultants, and anyone acting on their behalf.

## **INSTRUCTIONS**

1.   The instructions, definitions, and rules of construction set forth in Rules 26 and 36 of the Federal Rules of Civil Procedure are incorporated herein by reference.

2.   These Requests are to be answered separately and fully, in writing and under oath, within thirty (30) days of the date of service on you.

3.   If you object or fail to answer any Request, in whole or in part, please state in detail the reasons for your failure to answer, the portion of the Request to which your objection relates, and/or the reason why you are unable to respond to the Request after affirmative inquiry.

4.   If you contend that a Request seeks information that is protected from disclosure by the attorney-client or work-product privilege, and such privilege is asserted as a basis for failing to admit or deny the request, please provide a written statement setting forth: (a) the identity of each person from or to whom the information withheld has previously been disclosed or communicated; (b) a brief description of the subject matter of the information; and (c) the legal ground upon which you rely in withholding the information.

5.   The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a Request all responses that otherwise might be construed to be outside its scope.

4

6.   A reference to an entity, organization, or agency in any of these Requests shall be construed to include its officers, directors, partners, members, managers, employees, representatives, agents, consultants, and anyone acting on its behalf.

7.   A reference to an entity, organization, or agency in any of these Requests shall be construed to include its officers, directors, partners, members, managers, employees, representatives, agents, consultants, and anyone acting on its behalf.

<div align="center"><u>**REQUESTS FOR ADMISSION**</u></div>

**<u>REQUEST FOR ADMISSION NO. 1</u>**: Admit that, after Elon Musk acquired X, X dissolved the "Trust and Safety Council."

**<u>REQUEST FOR ADMISSION NO. 2</u>**: Admit that the "Trust and Safety Council" was a group founded in 2016 at Twitter consisting of approximately 100 independent civil, human rights, and other organizations to address and provide advice on topics such as hate speech and child exploitation on the Platform.

**<u>REQUEST FOR ADMISSION NO. 3</u>**: Admit that, after Elon Musk acquired X, X fired approximately eighty percent of the engineers working on X's "Safety" team, formerly known as the "Trust and Safety" (or "Trust & Safety") team.

**<u>REQUEST FOR ADMISSION NO. 4</u>**: Admit that, after Elon Musk acquired X, X fired approximately thirty percent of non-engineering employees working on X's "Safety" team, formerly known as the "Trust and Safety" (or "Trust & Safety") team.

**<u>REQUEST FOR ADMISSION NO. 5</u>**: Admit that, after Elon Musk acquired X, X reduced by half the total number of full-time employees—including independent-contractors—specifically responsible for content moderation on the Platform.

**REQUEST FOR ADMISSION NO. 6**: Admit that, after Elon Musk acquired X, X reduced by approximately 300 the total number of contracted employees specifically responsible for content moderation on the Platform.

**REQUEST FOR ADMISSION NO. 7**: Admit that on April 12, 2024 the company DoubleVerify announced it had released an erroneous "graphical error in the display of X's Brand Safety Rate" on their user interface dashboard for "over four and a half months from October 24, 2023 to March 14, 2024."

**REQUEST FOR ADMISSION NO. 8**: Admit that, in response to the April 12, 2024 announcement from DoubleVerify referenced in Request No. 8, X's Chief Executive Officer, Linda Yaccarino stated in an April 12, 2024 post on the X platform: "Now that the error has been recognized, apologized for and corrected—I urge those advertisers who have made partnership decisions with X based on the erroneous data to reconsider."

**REQUEST FOR ADMISSION NO. 9(A)**: Admit that X's Algorithm did not prevent the advertisement from Caravaggio Jewelry (at username "@CaravaggioJewelry") from appearing in response to the search "1488" as contained in the screenshot below. *Available at https://perma.cc/PKF4-7MRF.*

**REQUEST FOR ADMISSION NO. 9(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 9(A) appeared on the X platform on the date reflected in the screenshot.

6



**REQUEST FOR ADMISSION NO. 10(A)**: Admit that X's Algorithm did not prevent the advertisement from Jack in the Box (at username "@JackBox") from appearing next to the content contained in the screenshot below. *Available at https://perma.cc/W3GR-3D84.*

**REQUEST FOR ADMISSION NO. 10(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 10(A) appeared on the X platform on the date reflected in the screenshot.

7



8

**REQUEST FOR ADMISSION NO. 11(A)**: Admit that X's Algorithm did not prevent the advertisement from AMD Gaming (at username "@AMDGaming") from appearing next to the content contained in the screenshot below, and in response to the search "#heilhitler" as also contained in the screenshot below. *Available at https://perma.cc/NXY2-29MB.*

**REQUEST FOR ADMISSION NO. 11(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 11(A) appeared on the X platform on the date reflected in the screenshot.



9

**REQUEST FOR ADMISSION NO. 12(A)**: Admit that X's Algorithm did not prevent the advertisement from Grayscale (at username "@Grayscale") from appearing next to the content contained in the screenshot below. *Available at https://perma.cc/N9TL-2QTJ.*

**REQUEST FOR ADMISSION NO. 12(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 12(A) appeared on the X platform on the date reflected in the screenshot.



**REQUEST FOR ADMISSION NO. 13(A)**: Admit that X's Algorithm did not prevent the advertisement from USA Today (at username "@USATODAY") from appearing next to the content contained in the screenshot below. *Available at https://perma.cc/VEL7-6Q6N.*

**REQUEST FOR ADMISSION NO. 13(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 13(A) appeared on the X platform on the date reflected in the screenshot.

10



**REQUEST FOR ADMISSION NO. 14(A)**: Admit that X's Algorithm did not prevent the advertisement from Hyundai USA (at username "@Hyundai") from appearing next to the content contained in the screenshot below. *Available at https://perma.cc/R6FJ-XCHA.*

**REQUEST FOR ADMISSION NO. 14(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 14(A) appeared on the X platform on the date reflected in the screenshot.



**REQUEST FOR ADMISSION NO. 15(A)**: Admit that X's Algorithm did not prevent the advertisement from ScottMothe (at username "@ScottMothe") from appearing next to the content contained in the screenshot below, and in response to the search "heilhitler" as also contained in the screenshot below. *Available at https://perma.cc/6J5X-6WDF.*

**REQUEST FOR ADMISSION NO. 15(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 15(A) appeared on the X platform on the date reflected in the screenshot.

12



**REQUEST FOR ADMISSION NO. 16(A)**: Admit that X's Algorithm did not prevent the advertisement from Jack in the Box (at username "@JackBox") from appearing next to the content contained in the screenshot below. *Available at https://perma.cc/6J5X-6WDF*.

**REQUEST FOR ADMISSION NO. 16(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 16(A) appeared on the X platform on the date reflected in the screenshot.

13



**REQUEST FOR ADMISSION NO. 17(A)**: Admit that X's Algorithm did not prevent the advertisement from Fanatics Sportsbook (at username "@FanaticsGaming") from appearing in response to the search "#1488" as contained in the screenshot below. *Available at https://perma.cc/4RLE-Q4BG*.

**REQUEST FOR ADMISSION NO. 17(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 17(A) appeared on the X platform on the date reflected in the screenshot.

14



**REQUEST FOR ADMISSION NO. 18(A)**: Admit that X's Algorithm did not prevent the advertisement from Newport Healthcare (at username "@newporthealth_") from appearing next to the content contained in the screenshot below. *Available at https://perma.cc/8ENE-VA5E.*

**REQUEST FOR ADMISSION NO. 18(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 18(A) appeared on the X platform on the date reflected in the screenshot.



16

**REQUEST FOR ADMISSION NO. 19(A)**: Admit that X's Algorithm did not prevent the advertisement from OnlineBookClub.org (at username "@TwBookClub") from appearing in response to the search #HeilHitler" as contained in the screenshot below. *Available at https://perma.cc/4GWL-ZRK5.*

**REQUEST FOR ADMISSION NO. 19(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 19(A) appeared on the X platform on the date reflected in the screenshot.



**<u>REQUEST  FOR  ADMISSION  NO.  20(A)</u>**: Admit  that  X's  Algorithm  did  not  prevent  the advertisement from Chefman (at username "@MyChefman") from appearing next to the content contained in the screenshot below. *Available at https://perma.cc/7KRF-UVZC.*

**<u>REQUEST FOR ADMISSION NO. 20(B)</u>**: Admit that the content captured in the screenshot reproduced in Request for Admission 20(A) appeared on the X platform on the date reflected in the screenshot.

18



19

**<u>REQUEST FOR ADMISSION NO. 21(A)</u>**: Admit that X's Algorithm did not prevent the advertisement from FT Partner Content (at username "@ft_content") from appearing next to the content contained in the screenshot below, and from appearing in response to the search "europa last battle" as contained in the screenshot below. *Available at https://perma.cc/G97B-85YW*.

**<u>REQUEST FOR ADMISSION NO. 21(B)</u>**: Admit that the content captured in the screenshot reproduced in Request for Admission 21(A) appeared on the X platform on the date reflected in the screenshot.



16:53
europa last battle
Top
Latest
People
Photos
Videos
FT Partner Content @ft_content
Making payments quick and easy is essential for businesses, but are skills shortages a barrier?
Partner Content by @BcardPayments
ft.com
Are talent gaps holding back businesses' payment transformation p...
9
11
41
790K
Promoted
Thel 'Vadam @117unionj... · 18/04/2023
Replying to @Steve_Laws_
She's Indian. Her goal is to offer hope and do nothing, wasting our time. She knows exactly what she's doing.
EUROPA LAST BATTLE ... watch it
Valeria Bradley
@ValerieEBradley
@ft_content your ad comes up along a tweet promoting an antisemitic propaganda movie glorifying nazism and Holocaust denial.
1:17 PM · Jun 16, 2023 · 83 Views
1
2
Related posts
Post your reply
Reply
Show more replies

**<u>REQUEST FOR ADMISSION NO. 22(A)</u>**: Admit that X's Algorithm did not prevent the advertisement from Southwest Airlines (at username "@SouthwestAir") from appearing next to the content contained in the screenshot below. *Available at https://perma.cc/RU2D-LZQK.*

**<u>REQUEST FOR ADMISSION NO. 22(B)</u>**: Admit that the content captured in the screenshot reproduced in Request for Admission 22(A) appeared on the X platform on the date reflected in the screenshot.



**REQUEST FOR ADMISSION NO. 23(A)**: Admit that X's Algorithm did not prevent the advertisement from patpatshopping (at username "@patpatshopping") from appearing next to the content contained in the screenshot below. *Available at https://perma.cc/2XRD-4HR4.*

**REQUEST FOR ADMISSION NO. 23(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 23(A) appeared on the X platform on the date reflected in the screenshot.

24



**REQUEST FOR ADMISSION NO. 24(A)**: Admit that X's Algorithm did not prevent the advertisement from TierPoint (at username "@tierpoint") from appearing in response to the search "Final solution" as contained in the screenshot below. *Available at https://perma.cc/F75C-RJAB.*

**REQUEST FOR ADMISSION NO. 24(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 24(A) appeared on the X platform on the date reflected in the screenshot.



**REQUEST FOR ADMISSION NO. 25(A)**: Admit that X's Algorithm did not prevent the advertisement from Reasonable Faith (at username "@RFupdates") from appearing in response to the search "Jewskilledjesus" as contained in the screenshot below. *Available at https://perma.cc/RGF2-JDGS.*

**REQUEST FOR ADMISSION NO. 25(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 25(A) appeared on the X platform on the date reflected in the screenshot.



**REQUEST FOR ADMISSION NO. 26(A)**: Admit that X's Algorithm did not prevent the advertisement from Zion Oil & Gas, Inc. (at username "@zionoil") from appearing next to the content contained in the screenshot below, and from appearing under the search as also shown in the screenshot below. *Available at https://perma.cc/URH7-59JA.*

28

**<u>REQUEST FOR ADMISSION NO. 26(B)</u>**: Admit that the content captured in the screenshot reproduced in Request for Admission 26(A) appeared on the X platform on the date reflected in the screenshot.



App'x 106

**REQUEST FOR ADMISSION NO. 27(A)**: Admit that X's Algorithm did not prevent the advertisement from FOREX.com (at username "@FORExcom") from appearing next to the content contained in the screenshot below. *Available at https://perma.cc/JNL3-N2Z5.*

**REQUEST FOR ADMISSION NO. 27(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 27(A) appeared on the X platform on the date reflected in the screenshot.



**REQUEST FOR ADMISSION NO. 28(A)**: Admit that X's Algorithm did not prevent the advertisement from Sydney Children's Hospitals Foundation (at username "@schf_kids") from appearing next to the content contained in the screenshot below. *Available at https://perma.cc/W9BM-TU5A.*

**REQUEST FOR ADMISSION NO. 28(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 28(A) appeared on the X platform on the date reflected in the screenshot.

31



**REQUEST FOR ADMISSION NO. 29(A)**: Admit that X's Algorithm did not prevent the advertisement from Direct Energy US (at username "@DirectEnergy") from appearing next to the content contained in the screenshot below. *Available at https://perma.cc/Z299-T2P5.*

**REQUEST FOR ADMISSION NO. 29(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 29(A) appeared on the X platform on the date reflected in the screenshot.



3:02
Zoe @rodlewis1985 · 8h
If you are in a room full of flames with these 4, you are undoubtly in hell and have bigger problems.
17 5 419 9.3K
Wealth Turtle @wealth_turtle · 9h
My hand is currently raised at a 45 angle
14 1 302 11K
Direct Energy US @DirectEnergy Ad
Get the power of Prime at your fingertips when you sign up for 12 Hour Power on Us.
12 HOUR POWER ON US
BETWEEN 9PM AND 9AM
INCLUDING AMAZON PRIME
DirectEnergy.com/FreeNights
0:04 directenergy.com
3 1 59 294K
Post your reply
Siffa
@__Siffa
Follow
twitter is fucking disgusting, love seeing an ad for @DirectEnergy slapped between nazi posts
We have actual nazis with 200k followers getting checks from twitter because dumb fucks like @DirectEnergy support this behavior by continuing to buy twitter ads
4:05 AM · Dec 15, 2023 · 25 Views

**REQUEST FOR ADMISSION NO. 30(A)**: Admit that X's Algorithm did not prevent the advertisement from Software 4 SMBs (at username "@InternalToolGuy") from appearing next to the content contained in the screenshot below. *Available at https://perma.cc/V6E4-93CF.*

**REQUEST FOR ADMISSION NO. 30(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 30(A) appeared on the X platform on the date reflected in the screenshot.





**REQUEST FOR ADMISSION NO. 31(A)**: Admit that X's Algorithm did not prevent the advertisement from Better Stack (at username "@BetterStackHQ") from appearing next to the content contained in the screenshot below. *Available at https://perma.cc/V8WR-7TZV.*

**REQUEST FOR ADMISSION NO. 31(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 31(A) appeared on the X platform on the date reflected in the screenshot.



App'x 112

**REQUEST FOR ADMISSION NO. 32(A)**: Admit that X's Algorithm did not prevent the advertisement from The Shift (at username "@theshift_film") from appearing next to the content contained in the screenshot below. *Available at https://perma.cc/T3JJ-3F8T.*

**REQUEST FOR ADMISSION NO. 32(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 32(A) appeared on the X platform on the date reflected in the screenshot.



37

**<u>REQUEST FOR ADMISSION NO. 33(A)</u>**: Admit that X's Algorithm did not prevent the advertisement from Volatility Shares (at username "@VolShares") from appearing next to the content contained in the screenshot below. *Available at https://perma.cc/64RH-N8RV.*

**<u>REQUEST FOR ADMISSION NO. 33(B)</u>**: Admit that the content captured in the screenshot reproduced in Request for Admission 33(A) appeared on the X platform on the date reflected in the screenshot.

38



9:32
LTE 62
Volatility Shares @VolShares Ad
Traders - Consider digital asset exposure to bitcoin with 2x leveraged exposure, comprised of bitcoin futures contracts. Trade the BITX ETF from Volatility Shares today and Click here for fund disclosures: bit.ly/3CEfUZz
2x
leveraged exposure to bitcoin futures
0:29 Magnify Your Exposure To Bitcoin With BITX on
From volatilityshares.com
12 16 346 1.1M
Obamna @Obammana · 23h
This is one of the cruelest things zog has done and it's gone almost completely unnoticed
Brent Bellamy @brent_... · 2020-01-02
Interesting to compare the Space Station views of Winnipeg from today and a few years ago. It used to be orange. Today the change to LED street lights makes it white. x.com/Astro_Jessica/...
Future Neanderthal
@SamuelPoth
Nothing quite sums up Elon twitter like a crypto scam ad followed by an open nazi saying that the jews are using LED streetlights to torture the world somehow
9:34 AM · Feb 27, 2024 · 44 Views
2 1
See similar posts
Post your reply
Reply
Future Neande @Samue · Feb 27
Half a million views from being pushed to people's for you pages, this site is so cooked
5
Show additional replies, including those that may contain offensive content
Show

**REQUEST FOR ADMISSION NO. 34(A)**: Admit that X's Algorithm did not prevent the advertisement from the Center for Environment and Welfare (at username "@EnviroWelfare") from appearing next to the content contained in the screenshot below. *Available at https://perma.cc/3S75-ULW5.*

**REQUEST FOR ADMISSION NO. 34(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 34(A) appeared on the X platform on the date reflected in the screenshot.



**REQUEST FOR ADMISSION NO. 35(A)**: Admit that X's Algorithm did not prevent the advertisement from Your career in Germany | deutschland.de (at username "@ger_service") from appearing in response to the search "#heilhitler" as contained in the screenshot below. *Available at https://perma.cc/W889-7NVV.*

**REQUEST FOR ADMISSION NO. 35(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 35(A) appeared on the X platform on the date reflected in the screenshot.



41

**REQUEST FOR ADMISSION NO. 36(A)**: Admit that X's Algorithm did not prevent the advertisement from Oklahoma Dept of Libraries (at username "@OKDeptLibraries") from appearing in response to the search "#heilhitler" as contained in the screenshot below. *Available at https://perma.cc/W889-7NVV.*

**REQUEST FOR ADMISSION NO. 36(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 36(A) appeared on the X platform on the date reflected in the screenshot.



**<u>REQUEST FOR ADMISSION NO. 37(A)</u>**: Admit that X's Algorithm did not prevent the advertisement from ASPCA (at username "@ASPCA") from appearing in response to the search "#heilhitler" as contained in the screenshot below. *Available at https://perma.cc/W889-7NVV.*

**<u>REQUEST FOR ADMISSION NO. 37(B)</u>**: Admit that the content captured in the screenshot reproduced in Request for Admission 37(A) appeared on the X platform on the date reflected in the screenshot.



43

**<u>REQUEST FOR ADMISSION NO. 38(A)</u>**: Admit that X's Algorithm did not prevent the advertisement from MS (at username "@MSfromUS") from appearing next to the content contained in the screenshot below. *Available at https://perma.cc/3TDE-RLLN.*

**<u>REQUEST FOR ADMISSION NO. 38(B)</u>**: Admit that the content captured in the screenshot reproduced in Request for Admission 38(A) appeared on the X platform on the date reflected in the screenshot.



**Kathryn Tewson**
@KathrynTewson
Follow

So weird that brands would think it was likely that their ads would appear next to racist or antisemitic content, huh

**7X** @7xoo7x · Nov 15
Replying to @feafij and @JackPosobiec
I don't envisage wasting time trying to persuade anyone who isn't white, but we don't need them
8

**MS** @MSfromUS Ad
Check out Rainy Day playlist on Spotify:
open.spotify.com/playlist/3nL1E...

#rain #PlaylistOfTheDay

open.spotify.com
rainy day
rainy day · Playlist · 100 songs · 2.5K likes

555 1.4K 12K 66M

**feafij** @feafij · Nov 15
Replying to @feafij and @wokal_distance
'project for a new american century'
6

**feafij** @feafij · Nov 15
Replying to @wokal_distance
this letter was written over 20 years ago by jewish interests (cia, mossad) with purpose of portraying osama (a cia asset) as an 'evil antisemite' and drum up support for war against israels enemies. the world has come full circle now.
1 41

8:39 PM · Nov 30, 2023 · **4,613** Views

**REQUEST FOR ADMISSION NO. 39(A)**: Admit that X's Algorithm did not prevent the advertisement from Coffee Brand Coffee (at username "@CoffeeBrandCo") from appearing next to the content contained in the screenshot below. *Available at https://perma.cc/2Q2C-RJNX.*

**REQUEST FOR ADMISSION NO. 39(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 39(A) appeared on the X platform on the date reflected in the screenshot.



**<u>REQUEST FOR ADMISSION NO. 40(A)</u>**: Admit that X's Algorithm did not prevent the advertisement from Grand Canyon U (at username "@gcu") from appearing next to the content contained in the screenshot below. *Available at https://perma.cc/K3E4-EB7H.*

**<u>REQUEST FOR ADMISSION NO. 40(B)</u>**: Admit that the content captured in the screenshot reproduced in Request for Admission 40(A) appeared on the X platform on the date reflected in the screenshot.



**<u>REQUEST FOR ADMISSION NO. 41(A)</u>**: Admit that X's Algorithm did not prevent the advertisement from The Collector's Emporium (at username "@PMCollectorShop") from appearing in response to the search "#HeilHitler" as contained in the screenshot below. *Available at https://perma.cc/6PH9-RXK8.*

**<u>REQUEST FOR ADMISSION NO. 41(B)</u>**: Admit that the content captured in the screenshot reproduced in Request for Admission 41(A) appeared on the X platform on the date reflected in the screenshot.

49



**REQUEST FOR ADMISSION NO. 42(A)**: Admit that X's Algorithm did not prevent the advertisement from BUZZNET (at username "@BUZZNET") from appearing in response to the search "#14words" as contained in the screenshot below. *Available at https://perma.cc/F75C-RJAB*.

**REQUEST FOR ADMISSION NO. 42(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 42(A) appeared on the X platform on the date reflected in the screenshot.



**REQUEST FOR ADMISSION NO. 43(A)**: Admit that X's Algorithm did not prevent the advertisement from UNICEF Bangladesh (at username "@UNICEFBD") from appearing under the post "White power" as contained in the screenshot below. *Available at https://perma.cc/57W3-K6ML.*

**REQUEST FOR ADMISSION NO. 43(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 43(A) appeared on the X platform on the date reflected in the screenshot.



**REQUEST FOR ADMISSION NO. 44(A)**: Admit that X's Algorithm did not prevent the advertisement from Temu (at username "@shoptemu") from appearing next to the content contained in the screenshot below. *Available at https://perma.cc/35Q4-Y3GZ.*

**<u>REQUEST FOR ADMISSION NO. 44(B)</u>**: Admit that the content captured in the screenshot reproduced in Request for Admission 44(A) appeared on the X platform on the date reflected in the screenshot.



App'x 129

**REQUEST FOR ADMISSION NO. 45(A)**: Admit that X's Algorithm did not prevent the advertisement from HPCwire (at username "@HPCwire") from appearing next to the content contained in the screenshot below. *Available at https://perma.cc/35Q4-Y3GZ.*

**REQUEST FOR ADMISSION NO. 45(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 45(A) appeared on the X platform on the date reflected in the screenshot.



54

App'x 130

**REQUEST FOR ADMISSION NO. 46(A)**: Admit that X's Algorithm did not prevent the advertisement from reliantenergy (at username "@reliantenergy") from appearing next to the content contained in the screenshot below. *Available at https://perma.cc/35Q4-Y3GZ.*

**REQUEST FOR ADMISSION NO. 46(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 46(A) appeared on the X platform on the date reflected in the screenshot.



**<u>REQUEST FOR ADMISSION NO. 47(A)</u>:** Admit that X's Algorithm did not prevent the advertisement from AMD Gaming (at username "@AMDGaming") from appearing next to the content as in the screenshot below, and in response to the search "heilhitler" as contained in the screenshot below. *Available at https://perma.cc/35Q4-Y3GZ.*

**<u>REQUEST FOR ADMISSION NO. 47(B)</u>:** Admit that the content captured in the screenshot reproduced in Request for Admission 47(A) appeared on the X platform on the date reflected in the screenshot.

56



**REQUEST FOR ADMISSION NO. 48(A):** Admit that X's Algorithm did not prevent the advertisement from ONYX BOOX (at username "@OnyxBoox") from appearing in the feed for the verified X user "@AntiWhiteWatch1" as contained in the screenshot below. *Available at https://perma.cc/SQ2H-CLTF.*

**REQUEST FOR ADMISSION NO. 48(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 47(A) appeared on the X platform on the date reflected in the screenshot.



**REQUEST FOR ADMISSION NO. 49(A)**: Admit that X's Algorithm did not prevent the advertisement from REVOLT (at username "@OnyxBoox") from appearing in the feed for the verified X user "@AntiWhiteWatch1" as contained in the screenshot below. *Available at https://perma.cc/9JYB-FV3B.*

**REQUEST FOR ADMISSION NO. 49(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 49(A) appeared on the X platform on the date reflected in the screenshot.



**<u>REQUEST FOR ADMISSION NO. 50(A)</u>**: Admit that X's Algorithm did not prevent the advertisement from SmartThings (at username "@smartthings") from appearing in the feed for the verified X user "@AntiWhiteWatch1" as contained in the screenshot below. *Available at https://perma.cc/AH6H-UHQT.*

**<u>REQUEST FOR ADMISSION NO. 50(B)</u>**: Admit that the content captured in the screenshot reproduced in Request for Admission 50(A) appeared on the X platform on the date reflected in the screenshot.



**REQUEST FOR ADMISSION NO. 51(A)**: Admit that X's Algorithm did not prevent the advertisement from Tellote (at username "@tellotecom") from appearing next to the content contained in the screenshot below. *Available at https://perma.cc/ZZ7E-8MGV*.

**REQUEST FOR ADMISSION NO. 51(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 51(A) appeared on the X platform on the date reflected in the screenshot.



**REQUEST FOR ADMISSION NO. 52(A)**: Admit that X's Algorithm did not prevent the advertisement from World Gold Council (at username "@GOLDCOUNCIL") from appearing next to the content contained in the screenshot below. *Available at https://perma.cc/BU5X-K8N2.*

**REQUEST FOR ADMISSION NO. 52(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 52(A) appeared on the X platform on the date reflected in the screenshot.



**REQUEST FOR ADMISSION NO. 53(A)**: Admit that X's Algorithm did not prevent the advertisement from Sleeper (at username "@SleeperHQ") from appearing in response to the search "1488" as contained in the screenshot below. *Available at https://perma.cc/BU5X-K8N2.*

**REQUEST FOR ADMISSION NO. 53(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 53(A) appeared on the X platform on the date reflected in the screenshot.



**REQUEST FOR ADMISSION NO. 54(A)**: Admit that X's Algorithm did not prevent the advertisement from Experience Abu Dhabi (at username "@VisitAbuDhabi") from appearing in response to the search "1488" as contained in the screenshot below. *Available at https://perma.cc/BU5X-K8N2.*

**REQUEST FOR ADMISSION NO. 54(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 54(A) appeared on the X platform on the date reflected in the screenshot.



**REQUEST FOR ADMISSION NO. 55(A)**: Admit that X's Algorithm did not prevent the advertisement from The Rundown AI (at username "@TheRunDownAI") from appearing in response to the search "heilhitler" as contained in the screenshot below. *Available at https://perma.cc/2EUU-CVZJ.*

**REQUEST FOR ADMISSION NO. 55(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 55(A) appeared on the X platform on the date reflected in the screenshot.



**REQUEST FOR ADMISSION NO. 56(A)**: Admit that X's Algorithm did not prevent the

advertisement from The Athletic (at username "@TheAthletic"), Temu (at username

"@shoptemu"), Action Network (at username "@ActionNetworkHQ"), and New Jersey Tourism

66

(at username "@Visit_NJ") from appearing in response to the search "killjews" as contained in the screenshot below. *Available at https://perma.cc/9JHB-75B9.*

**REQUEST FOR ADMISSION NO. 56(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 56(A) appeared on the X platform on the date reflected in the screenshot.



**REQUEST FOR ADMISSION NO. 57(A)**: Admit that X's Algorithm did not prevent the advertisement from Temu (at username "@shoptemu"), Fast Company (at username "@FastCompany"), Moment (at username "@moment"), and Secretlab (at username

"@secretlabchairs") from appearing in response to the search "heilhitler" as contained in the screenshot below. *Available at https://perma.cc/2BDZ-5WT8.*

**REQUEST FOR ADMISSION NO. 57(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 57(A) appeared on the X platform on the date reflected in the screenshot.



**REQUEST FOR ADMISSION NO. 58(A)**: Admit that X's Algorithm did not prevent the advertisement from USA Football (at username "@USAFootball") from appearing in the feed for

68

the verified X user "WHITE PRIDE" as contained in the screenshot below. *Available at https://perma.cc/8ENG-GXHD.*

**REQUEST FOR ADMISSION NO. 58(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 58(A) appeared on the X platform on the date reflected in the screenshot.



**REQUEST FOR ADMISSION NO. 59(A)**: Admit that X's Algorithm did not prevent the advertisement from HPCwire (at username "@HPCwire") from appearing in the feed for the verified X user "WHITE PRIDE" as contained in the screenshot below. *Available at https://perma.cc/8ENG-GXHD.*

**REQUEST FOR ADMISSION NO. 59(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 59(A) appeared on the X platform on the date reflected in the screenshot.



**REQUEST FOR ADMISSION NO. 60(A)**: Admit that X's Algorithm did not prevent the advertisement from CME Active Trader (at username "@CMEActiveTrader") from appearing next to the content contained in the screenshot below. *Available at https://perma.cc/8ENG-GXHD*

**REQUEST FOR ADMISSION NO. 60(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 61(A) appeared on the X platform on the date reflected in the screenshot.



**REQUEST FOR ADMISSION NO. 61(A)**: Admit that X's Algorithm did not prevent the advertisement from Your career in Germany | deutschland.de (at username "@ger_service") from appearing in response to the search "#heilhitler" as contained in the screenshot below. *Available at https://perma.cc/Z9RQ-XA65.*

**REQUEST FOR ADMISSION NO. 61(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 61(A) appeared on the X platform on the date reflected in the screenshot.



**REQUEST FOR ADMISSION NO. 62(A)**: Admit that X's Algorithm did not prevent the advertisement from Zion Oil & Gas, Inc. (at username "@zionoil") from appearing in response to the search "gasthejews" as contained in the screenshot below. *Available at https://perma.cc/9CTC-JKGA.*

**REQUEST FOR ADMISSION NO. 62(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 62(A) appeared on the X platform on the date reflected in the screenshot.



App'x 150

**<u>REQUEST FOR ADMISSION NO. 63(A)</u>**: Admit that X's Algorithm did not prevent the advertisement from Daily Feed (at username "@Daily_Feed123") from appearing next to the content contained in the screenshot below. *Available at https://perma.cc/WF92-JT22.*

**<u>REQUEST FOR ADMISSION NO. 63(B)</u>**: Admit that the content captured in the screenshot reproduced in Request for Admission 63(A) appeared on the X platform on the date reflected in the screenshot.



**REQUEST FOR ADMISSION NO. 64(A)**: Admit that X's Algorithm did not prevent the advertisement from ILY_Necklace (at username "@ILY_Necklace") from appearing next to the content contained in the screenshot below. *Available at https://perma.cc/MMK7-DGH8.*

76

**REQUEST FOR ADMISSION NO. 64(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 64(A) appeared on the X platform on the date reflected in the screenshot.



**REQUEST FOR ADMISSION NO. 65(A)**: Admit that X's Algorithm did not prevent the

advertisement from Newport Healthcare (at username "@newporthealth_") from appearing in the

feed of verified X user "@Europa_Activism" as contained in the screenshot below. *Available at*

*https://perma.cc/WQL6-BJY2.*

**REQUEST FOR ADMISSION NO. 65(B)**: Admit that the content captured in the screenshot

reproduced in Request for Admission 65(A) appeared on the X platform on the date reflected in

the screenshot.



**REQUEST FOR ADMISSION NO. 66(A)**: Admit that X's Algorithm did not prevent the

advertisement from Hyland (at username "@Hyland") from appearing in the feed of verified X

user "@Europa_Activism" as contained in the screenshot below. *Available at* *https://perma.cc/WQL6-BJY2.*

**REQUEST FOR ADMISSION NO. 66(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 66(A) appeared on the X platform on the date reflected in the screenshot.



**REQUEST FOR ADMISSION NO. 67(A)**: Admit that X's Algorithm did not prevent the advertisement from Sandy Hook Promise (at username "@sandyhook") from appearing in

80

response to the search "1488" as contained in the screenshot below. *Available at https://perma.cc/NA9W-EYU6.*

**<u>REQUEST FOR ADMISSION NO. 67(B)</u>**: Admit that the content captured in the screenshot reproduced in Request for Admission 67(A) appeared on the X platform on the date reflected in the screenshot.



**REQUEST FOR ADMISSION NO. 68(A)**: Admit that X's Algorithm did not prevent the advertisement from CDP (at username "@CDP") from appearing in response to the search "#14words" as contained in the screenshot below. *Available at https://perma.cc/S9F3-4NC5.*

**REQUEST FOR ADMISSION NO. 68(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 68(A) appeared on the X platform on the date reflected in the screenshot.



**REQUEST FOR ADMISSION NO. 69(A)**: Admit that X's Algorithm did not prevent the advertisement from Knightscope (at username "@iKnightscope") from appearing in response to the search "we must secure the existence" as contained in the screenshot below. *Available at https://perma.cc/48WH-K2NM.*

**REQUEST FOR ADMISSION NO. 69(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 69(A) appeared on the X platform on the date reflected in the screenshot.



**REQUEST FOR ADMISSION NO. 70(A)**: Admit that X's Algorithm did not prevent the advertisement from Guardsquare (at username "@Guardsquare") from appearing in response to the search "we must secure the existence" as contained in the screenshot below. *Available at https://perma.cc/48WH-K2NM.*

**REQUEST FOR ADMISSION NO. 70(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 70(A) appeared on the X platform on the date reflected in the screenshot.



**REQUEST FOR ADMISSION NO. 71(A)**: Admit that X's Algorithm did not prevent the advertisement from USA Today (at username "@USATODAY") from appearing in response to the

search "we must secure the existence" as contained in the screenshot below. *Available at https://perma.cc/48WH-K2NM.*

**REQUEST FOR ADMISSION NO. 71(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 71(A) appeared on the X platform on the date reflected in the screenshot.



**REQUEST FOR ADMISSION NO. 72(A)**: Admit that X's Algorithm did not prevent the advertisement from BetMGM (at username "@BetMGM") from appearing in response to the search "#1488" as contained in the screenshot below. *Available at https://perma.cc/4RLE-Q4BG.*

**REQUEST FOR ADMISSION NO. 72(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 72(A) appeared on the X platform on the date reflected in the screenshot.



**REQUEST FOR ADMISSION NO. 73(A)**: Admit that X's Algorithm did not prevent the advertisement from Caravaggio Jewelry (at username "@CaravaggioJewelry") from appearing in response to the search "1488" as contained in the screenshot below. *Available at https://perma.cc/F75C-RJAB*.

87

**<u>REQUEST FOR ADMISSION NO. 73(B)</u>**: Admit that the content captured in the screenshot reproduced in Request for Admission 73(A) appeared on the X platform on the date reflected in the screenshot.



Dated May 9, 2024

*/s/ Andrew LeGrand*

**GIBSON, DUNN & CRUTCHER LLP**
Andrew LeGrand (TX 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.* (CA 132099)
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed* (NY 4382040)
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

**ELIAS LAW GROUP LLP**
Abha Khanna* (WA 42612)
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Aria C. Branch (DC 1014541)
Jacob D. Shelly* (DC 90010127)
Elena Rodriguez Armenta* (DC 90018798)
Daniela Lorenzo* (DC 90022335)
250 Massachusetts Ave, NW Suite 400
Washington, D.C. 20001
T: (202) 968-4490
F: (202) 986-4498
abranch@elias.law
jshelly@elias.law
erodriguezarmenta@elias.law
dlorenzo@elias.law

* Admitted *pro hac vice*

*Counsel for Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone*

# Tab 8

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

|  |  |
|---|---|
| X CORP., | |
| *Plaintiff*, | |
| v. | Civil Action No. 4:23-cv-01175-O |
| MEDIA MATTERS FOR AMERICA, *et al.*, | |
| *Defendants*. | |

**DEFENDANTS MEDIA MATTERS FOR AMERICA, ERIC HANANOKI, AND ANGELO CARUSONE'S SECOND SET OF REQUESTS FOR PRODUCTION**

Pursuant to Federal Rules of Civil Procedure 26 and 34, Defendants Media Matters for America ("Media Matters"), Mr. Eric Hananoki, and Mr. Angelo Carusone, through their undersigned counsel, serve this Second Set of Requests for Production ("Requests for Production" or "Requests") on Plaintiff X Corp.

Responses to these Requests are to be produced within 30 days of receipt. To arrange for electronic production, please contact counsel at xcorpsuit@elias.law. Anything that cannot be produced electronically should be produced to Andrew LeGrand at Gibson, Dunn & Crutcher, 2001 Ross Avenue Suite 2100, Dallas, Texas 75201.

Each Request for Production is subject to the Definitions and Instructions listed below.

## **DEFINITIONS**

Except as specifically defined below, the terms used in this request shall be construed and defined in accordance with the Federal Rules of Civil Procedure and the Local Rules of the U.S.

1

District Court for the Northern District of Texas, wherever applicable. Any terms not defined shall be given their ordinary meaning.

Defendants reserve their right to alter, supplement, amend, correct, clarify, or otherwise modify these Requests as discovery remains ongoing.

1. "Advertiser" means any company, organization, individual, or entity that pays to advertise or promote products, goods, services, or concepts, by purchasing space on the Platform—including but not limited to advertisers referenced in Plaintiff's First Amended Complaint, ECF No. 37, and advertisers identified in response Defendants' Interrogatories Nos. 1 and 4.

2. "Any" or "all" mean "any and all."

3. "Communication" is synonymous in meaning and scope with the term "communication" as used in Local Rule 26, and includes any transfer of information of any type, whether written, oral, electronic, or otherwise, and includes but is not limited to transfers of information via email, report, phone call, letter, text message, Slack, Signal, direct messages on social media platforms, ephemeral messaging applications, instant messaging applications, voicemail message, voice message, written memorandum, note, summary, and other means.

4. "Data" refers to any information, such as numbers, measurements, metrics, or statistics, that can be used as a basis for analysis or calculation, and includes information in a digital form that can be transmitted or processed.

5. "Date" means the exact day, month, and year, if ascertainably or, if not, the best available approximation (including relationship to other events).

2

6.  "Disputed Content" means "extreme" and "fringe" content, as those terms are used in the Amended Complaint, *see* ECF No. 37 ¶ 9, and includes but is not limited to content expressing skepticism about the Holocaust, content expressing negative views or attitudes regarding Jewish people, Muslim people, Black people, Hispanic or Latino people, women, members of the LGBTQIA+ community, immigrants, non-English speakers, Asian people, or indigenous peoples, and content expressing positive views or attitudes regarding Adolf Hitler, white nationalism, or white supremacism.

7.  "Document" is synonymous in meaning and scope to the term "document" as used in Federal Rule of Civil Procedure 34 and Local Rule 26 and includes, but is not limited to, records, reports, lists, data, statistics, summaries, analyses, communications (as defined above), computer discs, tapes, printouts, emails, databases, and any handwritten, typewritten, printed, electronically recorded, taped, graphic, machine-readable, or other material, of whatever nature and in whatever form, including all non-identical copies and drafts thereof, and all copies bearing any notation or mark not found on the original.

8.  "Including" means "including, but not limited to."

9.  The "November 16, 2023 Article" refers to the article written by Mr. Hananoki and originally published on November 16, 2023, titled "As Musk endorses antisemitic conspiracy theory, X has been placing ads for Apple, Bravo, IBM, Oracle, and Xfinity next to pro-Nazi content."

10. The "November 17, 2023 Article" refers to the article written by Mr. Hananoki and originally published on November 17, 2023, titled "X is placing ads for Amazon, NBA Mexico, NBCUniversal, and others next to content with white nationalist hashtags."

11. "Platform" means the social media website operated by X.

3

12. "X" or "Plaintiff" means the Plaintiff in this Matter, X Corp., as well as its predecessor in interest, Twitter, Inc., including its owner, officers, directors, partners, members, managers, employees, representatives, staff, agents, consultants, and anyone acting on its behalf.

13. "You" and "your" means the Plaintiff in this Matter, X Corp., as well as its predecessor in interest, Twitter, Inc., including both entities' owners, officers, directors, partners, members, managers, employees, representatives, staff, agents, consultants, and anyone acting on their behalf.

## **INSTRUCTIONS**

1. You shall produce materials and serve responses and any objections within 30 days after service of these Requests for Production.

2. If you object to any part of a Request, set forth the basis of your objection and respond to all parts of the Request to which you do not object. Any ground not stated in a timely objection is waived.

3. If, in responding to these Requests for Production, you encounter any ambiguities when construing a Request or definition, set forth the matter deemed ambiguous and the construction used in responding. Where you, in good faith, doubt the meaning or intended scope of a Request, and the sole objection would be to its vagueness, overbreadth, or ambiguity, please contact Defendants' counsel for clarification in advance of asserting an objection.

4. Regarding any document withheld from production on a claim of privilege or work product protection, provide a written privilege log identifying each document individually and containing all information required by Federal Rule of Civil Procedure 26(b)(5), including

4

a description of the basis of the claimed privilege and all information necessary for Defendants to assess the claim of privilege.

5. Produce all documents available to you or subject to your access or control that are responsive to the Requests for Production. This includes documents in your actual or constructive possession or control and in the actual or constructive possession or control of your attorneys, investigators, experts, and anyone else acting on your behalf.

6. Documents are to be produced as they are kept in the ordinary course of business. Accordingly, documents should be produced in their entirety, without abbreviation, redaction, or expurgation; file folders with tabs or labels identifying documents responsive to this request should be produced intact with the documents; and documents attached to each other should not be separated.

7. All documents are to be sequentially Bates numbered and produced in electronic form. Multi-page documents must bear a sequential Bates number on every page. Documents may include word-processing documents, spreadsheets, presentations, audio visual files, electronic calendar invites, and any other electronic documents not specifically discussed herein. Production of these items should include image files—produced as full color PDFs—with related searchable text, metadata, and bibliographic information. Wherever possible, passwords and encryption must be removed from electronic documents prior to production. If a document contains redlines, comments, presentation notes, or hidden fields, such information must be viewable in the imaged document.  If a native file type is not conducive to imaging (e.g., .xlsx, .mp3, or .mp4), those files must be produced in their native format, along with a PDF "placeholder" indicating the Bates number of the native file. All imaged PDFs and native files must be produced along with a

5

corresponding "load file" (i.e., .OPT or .DAT files) containing all standard fielded information and metadata for all files within the production. Metadata and fielded information must include, at minimum, (1) BegBates, (2) EndBates, (3) BegAttach, (4) EndAttach, (5) Custodian, (6) All Custodians, (7) OCRTextPath, and (8) Confidentiality. Each imaged PDF document must be unitized by file (rather than by page). Parent-child or family relationships (i.e., the association between an attachment and its parent document) should be preserved to the extent they exist in the way the documents are maintained in the ordinary course of business. When applicable, parent emails and any of their attachments should be produced as separate, contiguous documents.  When applicable, parent-child relationships must be preserved, all families must be provided in sequential order of the parent document followed by all child documents, and the accompanying load file must indicate and memorialize the "parent" and "child" relationship between such documents.

8.  To the extent possible, you must de-duplicate responsive ESI using MD5 or SHA-1 hash values at the parent level. However, "near duplicate" documents must be produced rather than removed. To the extent possible, you should only produce a single copy of a particular ESI. However, (1) attachments to emails shall not be eliminated from their parent emails, and (2) hard-copy documents must not be eliminated as duplicates of responsive ESI. You must further make reasonable efforts to remove duplicate data across custodians for each produced document and to produce searchable metadata in the "All Custodians" and "Duplicate File Path" fields for each produced document sufficient for the receiving party to identify all custodians and file paths of a particular document that were eliminated from

6

review or production through de-duplication. Each document produced should be categorized by the number of the document request in response to which it is produced.

9.  If any otherwise responsive document was, but is no longer, in existence or in your possession, custody, or control, identify the type of information contained in the document, its current or last known custodian, the location/address of such document, and the identity of all persons having knowledge or who had knowledge of the document, and also describe in full the circumstances surrounding its disposition from your possession or control.

10. These Requests for Production are continuing in nature, up to and including trial. Materials sought by these Requests that become available after you serve your responses must be disclosed to counsel for Defendants by supplementary response or responses.

11. Pursuant to Federal Rule of Civil Procedure 26(c), you are under a duty to promptly amend your responses to these Requests if you learn that an answer is in some material respect incomplete or incorrect. If you expect to obtain further information or expect the accuracy of a response given to change between the time responses are served and the time of trial, you are requested to state this fact in each response.

12. If you contend that it would be unreasonably burdensome to obtain and provide all of the documents called for in response to any Request for Production, then in response to the specific Request: (a) produce all such documents as are available to you without undertaking what you contend to be an unreasonable request; (b) describe with particularity the efforts made by you or on your behalf to produce such documents; and (c) state with particularity the grounds upon which you contend that additional efforts to produce such documents would be unreasonable.

13. The singular form of a noun or pronoun includes the plural form, and the plural form includes the singular.

14. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a Request for Production all responses that otherwise might be construed to be outside its scope.

15. A reference to an entity in this request shall be construed to include its officers, directors, partners, members, managers, employees, representatives, agents, consultants, and anyone acting on its behalf.

16. These Requests for Production apply to the period from April 14, 2021, to the present, unless otherwise limited or expanded by a particular topic description.

<div align="center"><u>**REQUESTS FOR PRODUCTION**</u></div>

<u>**REQUEST FOR PRODUCTION NO. 1**</u>:  All documents, communications, and related data reflecting the number of times You and/or any social media account controlled or managed by You accessed the November 16, 2023 Article and/or the November 17, 2023 Article.

<u>**REQUEST FOR PRODUCTION NO. 2**</u>:  All documents, communications, and related data reflecting the number of times a computer or communication device owned, managed, or controlled by You (including laptops, phones, tablets, and any other electronic device) accessed the November 16, 2023 Article and/or the November 17, 2023 Article.

<u>**REQUEST FOR PRODUCTION NO. 3**</u>:  All documents and communications reflecting any individuals or entities to whom You have attributed responsibility or who You otherwise have blamed or do blame, in whole or in part, for the loss of advertisers on the Platform.

Dated May 9, 2024

*/s/ Andrew LeGrand*

**GIBSON, DUNN & CRUTCHER LLP**
Andrew LeGrand (TX 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.* (CA 132099)
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed** (NY 4382040)
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

**ELIAS LAW GROUP LLP**
Abha Khanna* (WA 42612)
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Aria C. Branch (DC 1014541)
Jacob D. Shelly* (DC 90010127)
Elena Rodriguez Armenta* (DC 90018798)
Daniela Lorenzo* (DC 90022335)
250 Massachusetts Ave, NW Suite 400
Washington, D.C. 20001
T: (202) 968-4490
F: (202) 986-4498
abranch@elias.law
jshelly@elias.law
erodriguezarmenta@elias.law
dlorenzo@elias.law

* Admitted *pro hac vice*

*Counsel for Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone*

# Tab 9

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | |
|---|---|
| X CORP., | |
| *Plaintiff*, | |
| v. | Civil Action No. 4:23-cv-01175-O |
| MEDIA MATTERS FOR AMERICA, *et al.*, | |
| *Defendants*. | |

## DEFENDANTS MEDIA MATTERS FOR AMERICA, ERIC HANANOKI, AND ANGELO CARUSONE'S SECOND SET OF INTERROGATORIES

Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendants Media Matters for America ("Media Matters"), Mr. Eric Hananoki, and Mr. Angelo Carusone, through their undersigned counsel, serve their Second Set of Interrogatories on Plaintiff X Corp. Responses to these Interrogatories are to be produced electronically to Defendants' counsel within 30 days of receipt. Each Interrogatory is subject to the Definitions and Instructions listed below.

### DEFINITIONS

Except as specifically defined below, the terms used in this request shall be construed and defined in accordance with the Federal Rules of Civil Procedure and the Local Rules of the U.S. District Court for the Northern District of Texas, wherever applicable. Any terms not defined shall be given their ordinary meaning.

Defendants reserve their right to alter, supplement, amend, correct, clarify, or otherwise modify these Interrogatories as discovery remains ongoing.

1

1. "Advertiser" means any company, organization, individual, or entity that pays to advertise or promote products, goods, services, or concepts, by purchasing space on the Platform— including but not limited to advertisers referenced in Plaintiff's First Amended Complaint, ECF No. 37, and advertisers identified in response Defendants' Interrogatories Nos. 1 and 4.

2. "Amended Complaint" means Plaintiff's First Amended Complaint, filed at ECF No. 37 in this litigation, *X Corp. v. Media Matters for America et al.*, No. 4:23-cv-01175-O.

3. "Any" or "all" mean "any and all."

4. "Identify" means to indicate or establish what something or someone is.

5. "Including" means "including, but not limited to."

6. "Mr. Carusone's November 26, 2023, interview statements" refers to the statements made by Mr. Angelo Carusone during an interview on MSNBC on November 26, 2023, available at https://www.mediamatters.org/angelo-carusone/angelo-carusone-discusses-elon-musk-and-x-msnbc-no-matter-how-you-slice-it-fact, referenced in paragraph 13 of the Amended Complaint.

7. The "November 16, 2023 Article" refers to the article written by Mr. Hananoki and originally published on November 16, 2023, titled "As Musk endorses antisemitic conspiracy theory, X has been placing ads for Apple, Bravo, IBM, Oracle, and Xfinity next to pro-Nazi content."

8. The "November 17, 2023 Article" refers to the article written by Mr. Hananoki and originally published on November 17, 2023, titled "X is placing ads for Amazon, NBA Mexico, NBCUniversal, and others next to content with white nationalist hashtags."

9. "Platform" means the social media website operated by X.

2

10. "X" or "Plaintiff" means the Plaintiff in this Matter, X Corp., as well as its predecessor in interest, Twitter, Inc., including both entities' owners, officers, directors, partners, members, managers, employees, representatives, staff, agents, consultants, and anyone acting on their behalf.

11. "You" and "your" means the Plaintiff in this Matter, X Corp., as well as its predecessor in interest, Twitter, Inc., including both entities' owners, officers, directors, partners, members, managers, employees, representatives, staff, agents, consultants, and anyone acting on their behalf.

## **INSTRUCTIONS**

1. Except as specifically defined below, the terms used in these Interrogatories shall be construed and defined in accordance with the Federal Rules of Civil Procedure. You must return your responses within thirty (30) days to Defendants' counsel. If you object to any interrogatory in full or in part, you must note the objection with specificity. If you object to any part of an interrogatory, you must specify the part to which you object, set forth the basis of your objection and respond to all parts of the interrogatory to which you do not object. Any ground not stated in a timely objection is waived.

2. Where you, in good faith, doubt the meaning or intended scope of an interrogatory, before objecting to the interrogatory based on its vagueness, overbreadth, or ambiguity, contact Defendants' counsel in advance of asserting an objection. Defendants' counsel will provide whatever additional clarification or explanation may be needed. If you still believe the interrogatory to be vague, overbroad, or ambiguous, set forth in your response what you find to be vague, overbroad, or ambiguous and the construction you used in responding.

3. In accordance with the Federal Rules of Civil Procedure, the scope of discovery sought through these interrogatories extends to all relevant and non-privileged information that

3

might reasonably lead to the discovery of admissible evidence. In answering these interrogatories, you must furnish all such information available to you, including information in the possession of all representatives, agents, and any other persons acting on your behalf, and not merely such information known of your own personal knowledge. If you cannot answer these interrogatories in full after exercising due diligence to secure the information requested, you should so state and answer to the extent possible, specifying the nature of your inability to answer the remainder and providing whatever information or knowledge that you possess concerning the unanswered portion.

4.    Each interrogatory shall be answered separately, fully, and responsively following the interrogatory.

5.    The interrogatories that follow are to be considered as continuing, and you have a duty to provide, by way of supplementary answers, such additional information as you or any persons acting on your behalf may hereafter obtain that will augment, clarify, correct, or otherwise modify the answers now given. Such supplementary answers are to be promptly served upon Defendants' counsel after receipt of such information, but in any event, no later than 14 days after receipt.

6.    If in any interrogatory a number is requested and if the exact number is not known, for each such interrogatory, provide an estimate, an explanation as to your confidence in that estimate, and an explanation as to how that estimate was reached.

7.    If you do not know the answer to any interrogatory, or if there are limitations to your knowledge about the answer to any interrogatory, provide whatever answer you can including the limitations to your knowledge. If there are other people or entities that you believe may know the answer to any interrogatory or may be able to provide additional

4

information in response to any interrogatory, identify those people or entities in your response.

8. If any objection is raised to these interrogatories on the basis of an assertion of privilege, you shall provide both a description of the basis of the privilege and all information necessary for Defendants to assess the claim of privilege.

9. No part of an interrogatory should be left unanswered merely because an objection is interposed to another part of the interrogatory. If a partial or incomplete answer is provided, state that the answer is partial or incomplete.

10. Where an interrogatory relates to more than one person or subject, it is to be answered as to each such person or subject separately.

11. The singular form of a noun or pronoun includes the plural form, and the plural form includes the singular.

12. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of an interrogatory all responses that otherwise might be construed to be outside its scope.

13. A reference to an entity, organization, or agency in this request shall be construed to include its officers, directors, partners, members, managers, employees, representatives, agents, consultants, and anyone acting on its behalf.

14. A reference to a person in this request shall be construed to include that person's employees, representatives, consultants, and anyone acting on their behalf.

## **INTERROGATORIES**

**INTERROGATORY NO. 1**: Identify the dollar amount of any "actual and consequential damages" sought by X in this action that have resulted from Defendants' conduct through the publication of the November 16, 2023 Article, the publication of the November 17, 2023 Article,

and/or Mr. Carusone's November 26, 2023 interview statements. Include a description of each individual component of that dollar amount and your basis for claiming that each component constitutes damages that have resulted from Defendants' conduct.

**INTERROGATORY NO. 2**: For each advertiser that ceased advertising on the Platform as of January 1, 2022, identify the advertiser's name, the date on which they terminated their advertising relationship with X, any stated reason for terminating their relationship and, if applicable, the date on which they resumed advertising on the Platform.

**INTERROGATORY NO. 3**: Identify all accounts that had been taken off Twitter for posting Disputed Content that were later reinstated after Elon Musk acquired X.

Dated May 9, 2024

*/s/ Andrew LeGrand*

**GIBSON, DUNN & CRUTCHER LLP**
Andrew LeGrand (TX 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.* (CA 132099)
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed* (NY 4382040)
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

**ELIAS LAW GROUP LLP**
Abha Khanna* (WA 42612)
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Aria C. Branch (DC 1014541)
Jacob D. Shelly* (DC 90010127)
Elena Rodriguez Armenta* (DC 90018798)
Daniela Lorenzo* (DC 90022335)
250 Massachusetts Ave, NW Suite 400
Washington, D.C. 20001
T: (202) 968-4490
F: (202) 986-4498
abranch@elias.law
jshelly@elias.law
erodriguezarmenta@elias.law
dlorenzo@elias.law

* Admitted *pro hac vice*

*Counsel for Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone*

6

# Tab 10

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

**X CORP.**,

        Plaintiff,

   vs.

**MEDIA MATTERS FOR AMERICA**, et al.

        Defendants.

Case No. 4:23-cv-01175-O

**PLAINTIFF'S OBJECTIONS AND RESPONSES**
**TO DEFENDANTS' SECOND SET OF REQUESTS FOR ADMISSION**

Pursuant to Federal Rule of Civil Procedure 36, Plaintiff X Corp. hereby serves its Objections and Responses to Defendants' Second Set of Requests for Admission on Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone, by and through their counsel of record, on July 1, 2024.

Dated: July 1, 2024

Respectfully submitted.

*/s/ Christopher D. Hilton*
Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
Ari Cuenin
Texas Bar No. 24078385
Alexander M. Dvorscak
Texas Bar No. 24120461
**STONE | HILTON PLLC**
1115 W. Slaughter Lane
Austin, TX 78748
Telephone: (737) 465-3897
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
alex@stonehilton.com

John C. Sullivan
Texas Bar No. 24083920
**S|L LAW PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

***Counsel for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that this document was served on all counsel of record for Defendants via email on July 1, 2024, pursuant to counsel's agreement to accept service via electronic means.

*/s/ Alexander M. Dvorscak*
Alexander M. Dvorscak

2

## OBJECTIONS AND RESPONSES

**REQUEST FOR ADMISSION NO. 1:** Admit that, after Elon Musk acquired X, X dissolved the "Trust and Safety Council."

**OBJECTIONS:** X objects because the word "dissolved" as used herein is undefined, vague, and ambiguous as it is not clear whether the request refers to the termination, reassignment, or some other employment action taken towards employees who may have been a part of the undefined council or whether the request refers solely to end of the formal group structure that had existed pre-acquisition.

**RESPONSE:** Admitted that X was privately acquired by Musk and other investors on April 14, 2022, and that X disbanded the "Trust and Safety Council" after the acquisition. The implied request for admission that X was no longer concerned with "trust" and "safety" following X's acquisition is denied.


**REQUEST FOR ADMISSION NO. 2:** Admit that the "Trust and Safety Council" was a group founded in 2016 at Twitter consisting of approximately 100 independent civil, human rights, and other organizations to address and provide advice on topics such as hate speech and child exploitation on the Platform.

**RESPONSE:** Admitted that the "Trust and Safety Council" was started in 2016 and consisted at various times of outside individuals and organizations. The remainder of the request is denied as written.

3

**REQUEST FOR ADMISSION NO. 3:** Admit that, after Elon Musk acquired X, X fired approximately eighty percent of the engineers working on X's "Safety" team, formerly known as the "Trust and Safety" (or "Trust & Safety") team.

**RESPONSE:** Denied as written.

**REQUEST FOR ADMISSION NO. 4:** Admit that, after Elon Musk acquired X, X fired approximately thirty percent of non-engineering employees working on X's "Safety" team, formerly known as the "Trust and Safety" (or "Trust & Safety") team.

**RESPONSE:** Denied as written.

**REQUEST FOR ADMISSION NO. 5:** Admit that, after Elon Musk acquired X, X reduced by half the total number of full-time employees—including independent-contractors—specifically responsible for content moderation on the Platform.

**OBJECTIONS:** The term "specifically responsible" as used herein is undefined, vague, and ambiguous and could encompass either or both an employee devoting 100% of their time to "content moderation" or 1% of their time, the resolution of which would lead to a different answer. In addition, the request as phrased is unintelligible because "full-time employees" and "independent contractors" are mutually exclusive groups.

**RESPONSE:** Denied as written.

**REQUEST FOR ADMISSION NO. 6:** Admit that, after Elon Musk acquired X, X reduced by approximately 300 the total number of contracted employees specifically responsible for content moderation on the Platform.

4

**OBJECTIONS:** The term "specifically responsible" as used herein is undefined, vague, and ambiguous and could encompass either or both an employee devoting 100% of their time to "content moderation" or 1% of their time, the resolution of which would lead to a different answer. This request is also improperly compound because it requests the admission of multiple express or implied facts, including the existence and nature of content moderation that occurred prior to X's acquisition, the nature of the employment relationship of the individuals responsible for content moderation, and the roles and job responsibilities of those individuals at X.

**RESPONSE:** Admitted that the number of content moderators contracted by X for content moderation activities fluctuates and that on May 31, 2023, X contracted with approximately 2,305 global content moderators, which is 12% lower than the 2,613 content moderators with which X contracted on October 27, 2022. The remainder of the request is denied as written.

**REQUEST FOR ADMISSION NO. 7:** Admit that on April 12, 2024 the company DoubleVerify announced it had released an erroneous "graphical error in the display of X's Brand Safety Rate" on their user interface dashboard for "over four and a half months from October 24, 2023 to March 14, 2024."

**RESPONSE:** Admitted.

**REQUEST FOR ADMISSION NO. 8:** Admit that, in response to the April 12, 2024 announcement from DoubleVerify referenced in Request No. 8, X's Chief Executive Officer, Linda Yaccarino stated in an April 12, 2024 post on the X platform: "Now that the error has been recognized, apologized for and corrected—I urge those advertisers who have made partnership decisions with X based on the erroneous data to reconsider."

**RESPONSE:** Admitted.


**REQUEST FOR ADMISSION NO. 9(A):** Admit that X's Algorithm did not prevent the advertisement from Caravaggio Jewelry (at username "@CaravaggioJewelry") from appearing in response to the search "1488" as contained in the screenshot below. Available at https://perma.cc/PKF4-7MRF.

**OBJECTIONS:** The terms "prevent," "appearing in response to," and "as contained" are undefined, vague, and ambiguous. For example, it is unclear whether the request's phrase "appearing in response to" means that the posts appeared immediately in response to the search or whether extensive scrolling or refreshing was done before the post appeared—thus introducing numerous other variables. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the content elements contained within the post were accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. Admitted only that companies have advertised on the X Platform, that searches may be performed on the X Platform, and that users who perform searches may see advertisements served among their search results, in timelines, on profiles, and on other surfaces across the X apps. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence which posts and advertisements will appear to a particular user on the Platform, and, as such, X's algorithms do not independently operate to "prevent," or allow, any particular "response."

**REQUEST FOR ADMISSION NO. 9(B):**  Admit that the content captured in the screenshot reproduced in Request for Admission 9(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the

existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.


**REQUEST FOR ADMISSION NO. 10(A):** Admit that X's Algorithm did not prevent the advertisement from Jack in the Box (at username "@JackBox") from appearing next to the content contained in the screenshot below. Available at https://perma.cc/W3GR-3D84.

**OBJECTIONS:** The terms "prevent" and "contained" are undefined, vague, and ambiguous. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image

8

contained within the post was accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence what posts and advertisements will appear to a user on the Platform, and the order in which they are arranged, and, as such, X's algorithm does not operate to "prevent," or allow, any particular placement of content.

**REQUEST FOR ADMISSION NO. 10(B):**  Admit that the content captured in the screenshot reproduced in Request for Admission 10(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. This request is also improperly compound because it

9

requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.


**REQUEST FOR ADMISSION NO. 11(A):**  Admit that X's Algorithm did not prevent the advertisement from AMD Gaming (at username "@AMDGaming") from appearing next to the content contained in the screenshot below, and in response to the search "#heilhitler" as also contained in the screenshot below. Available at https://perma.cc/NXY2-29MB.

**OBJECTIONS:** The terms "prevent," "in response to," and "as also contained" are undefined, vague, and ambiguous. For example, it is unclear whether the request's phrase "in response to"

means that the posts appeared immediately in response to the search or whether extensive scrolling or refreshing was done before the post appeared—thus introducing numerous other variables. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances.

**RESPONSE:** Denied as written. Admitted only that companies have advertised on the X Platform, that searches may be performed on the X Platform, and that users who perform searches may see advertisements served among their search results, in timelines, on profiles, and on other surfaces across the X apps. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence which posts and advertisements will appear to a particular user on the Platform, and, as such, X's algorithms do not independently operate to "prevent," or allow, any particular "response."

**REQUEST FOR ADMISSION NO. 11(B):**  Admit that the content captured in the screenshot reproduced in Request for Admission 11(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created

by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 12(A):** Admit that X's Algorithm did not prevent the advertisement from Grayscale (at username "@Grayscale") from appearing next to the content contained in the screenshot below. Available at https://perma.cc/N9TL-2QTJ.

**OBJECTIONS:** The terms "prevent" and "contained" are undefined, vague, and ambiguous. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

13

**RESPONSE:** Denied as written. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence what posts and advertisements will appear to a user on the Platform, and the order in which they are arranged, and, as such, X's algorithm does not operate to "prevent," or allow, any particular placement of content.

**REQUEST FOR ADMISSION NO. 12(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 12(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X

14

algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 13(A):** Admit that X's Algorithm did not prevent the advertisement from USA Today (at username "@USATODAY") from appearing next to the content contained in the screenshot below. Available at https://perma.cc/VEL7-6Q6N.

**OBJECTIONS:** The terms "prevent" and "contained" are undefined, vague, and ambiguous. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The

15

request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence what posts and advertisements will appear to a user on the Platform, and the order in which they are arranged, and, as such, X's algorithm does not operate to "prevent," or allow, any particular placement of content.


**REQUEST FOR ADMISSION NO. 13(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 13(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render

16

content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 14(A):** Admit that X's Algorithm did not prevent the advertisement from Hyundai USA (at username "@Hyundai") from appearing next to the content contained in the screenshot below. Available at https://perma.cc/R6FJ-XCHA.

**OBJECTIONS:** The terms "prevent" and "contained" are undefined, vague, and ambiguous. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence what posts and advertisements will appear to a user on the Platform, and the order in which they are arranged, and, as such, X's algorithm does not operate to "prevent," or allow, any particular placement of content.

**REQUEST FOR ADMISSION NO. 14(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 14(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant

19

investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 15(A):** Admit that X's Algorithm did not prevent the advertisement from ScottMothe (at username "@ScottMothe") from appearing next to the content contained in the screenshot below, and in response to the search "heilhitler" as also contained in the screenshot below. Available at https://perma.cc/6J5X-6WDF.

**OBJECTIONS:** The terms "prevent" and "as also contained" are undefined, vague, and ambiguous. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to

the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence what posts and advertisements will appear to a user on the Platform, and the order in which they are arranged, and, as such, X's algorithm does not operate to "prevent," or allow, any particular placement of content.


**REQUEST FOR ADMISSION NO. 15(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 15(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether

App'x 204

the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

22

**REQUEST FOR ADMISSION NO. 16(A):** Admit that X's Algorithm did not prevent the advertisement from Jack in the Box (at username "@JackBox") from appearing next to the content contained in the screenshot below. Available at https://perma.cc/6J5X-6WDF.

**OBJECTIONS:** The terms "prevent" and "contained" are undefined, vague, and ambiguous. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence what posts and advertisements will appear to a user on the Platform, and the order in which they are arranged, and, as such, X's algorithm does not operate to "prevent," or allow, any particular placement of content.

**REQUEST FOR ADMISSION NO. 16(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 16(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 17(A)**: Admit that X's Algorithm did not prevent the advertisement from Fanatics Sportsbook (at username "@FanaticsGaming") from appearing in response to the search "#1488" as contained in the screenshot below. *Available at https://perma.cc/4RLE-Q4BG.*

**OBJECTIONS:** The terms "prevent," "appearing in response to," and "as contained" are undefined, vague, and ambiguous. For example, it is unclear whether the request's phrase "appearing in response to" means that the posts appeared immediately in response to the search or whether extensive scrolling or refreshing was done before the post appeared—thus introducing numerous other variables. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the content elements contained within the post were accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-

existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. Admitted only that companies have advertised on the X Platform, that searches may be performed on the X Platform, and that users who perform searches may see advertisements served among their search results, in timelines, on profiles, and on other surfaces across the X apps. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence which posts and advertisements will appear to a particular user on the Platform, and, as such, X's algorithms do not independently operate to "prevent," or allow, any particular "response."


**REQUEST FOR ADMISSION NO. 17(B)**: Admit that the content captured in the screenshot reproduced in Request for Admission 17(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render

26

content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

27

**REQUEST FOR ADMISSION NO. 18(A):** Admit that X's Algorithm did not prevent the advertisement from Newport Healthcare (at username "@newporthealth_") from appearing next to the content contained in the screenshot below. Available at https://perma.cc/8ENE-VA5E.

**OBJECTIONS:** The terms "prevent" and "contained" are undefined, vague, and ambiguous. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence what posts and advertisements will appear to a user on the Platform, and the order in which they are arranged, and, as such, X's algorithm does not operate to "prevent," or allow, any particular placement of content.

**REQUEST FOR ADMISSION NO. 18(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 18(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant

29

investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 19(A):** Admit that X's Algorithm did not prevent the advertisement from OnlineBookClub.org (at username "@TwBookClub") from appearing in response to the search #HeilHitler" as contained in the screenshot below. Available at https://perma.cc/4GWL-ZRK5.

**OBJECTIONS:** The terms "prevent," "appearing in response to," and "as contained" are undefined, vague, and ambiguous. For example, it is unclear whether the request's phrase "appearing in response to" means that the posts appeared immediately in response to the search or whether extensive scrolling or refreshing was done before the post appeared—thus introducing numerous other variables. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the content elements contained within the post were accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be

implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. Admitted only that companies have advertised on the X Platform, that searches may be performed on the X Platform, and that users who perform searches may see advertisements served among their search results, in timelines, on profiles, and on other surfaces across the X apps. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence which posts and advertisements will appear to a particular user on the Platform, and, as such, X's algorithms do not independently operate to "prevent," or allow, any particular "response."


**REQUEST FOR ADMISSION NO. 19(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 19(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to

depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of

32

recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.


**REQUEST FOR ADMISSION NO. 20(A):** Admit that X's Algorithm did not prevent the advertisement from Chefman (at username "@MyChefman") from appearing next to the content contained in the screenshot below. Available at https://perma.cc/7KRF-UVZC.

**OBJECTIONS:** The terms "prevent" and "contained" are undefined, vague, and ambiguous. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence what posts and advertisements will appear to a user on the Platform, and the order in which they are arranged,

and, as such, X's algorithm does not operate to "prevent," or allow, any particular placement of content.

**REQUEST FOR ADMISSION NO. 20(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 20(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies

of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.


**REQUEST FOR ADMISSION NO. 21(A):** Admit that X's Algorithm did not prevent the advertisement from FT Partner Content (at username "@ft_content") from appearing next to the content contained in the screenshot below, and from appearing in response to the search "europa last battle" as contained in the screenshot below. Available at https://perma.cc/G97B-85YW.

**OBJECTIONS:** The terms "prevent," "appearing in response to," and "as contained" are undefined, vague, and ambiguous. For example, it is unclear whether the request's phrase "appearing in response to" means that the posts appeared immediately in response to the search or whether extensive scrolling or refreshing was done before the post appeared—thus introducing numerous other variables. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the content elements contained within the post were accurately reproduced

or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. Admitted only that companies have advertised on the X Platform, that searches may be performed on the X Platform, and that users who perform searches may see advertisements served among their search results, in timelines, on profiles, and on other surfaces across the X apps. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence which posts and advertisements will appear to a particular user on the Platform, and, as such, X's algorithms do not independently operate to "prevent," or allow, any particular "response."


**REQUEST FOR ADMISSION NO. 21(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 21(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that

36

Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question

were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 22(A):** Admit that X's Algorithm did not prevent the advertisement from Southwest Airlines (at username "@SouthwestAir") from appearing next to the content contained in the screenshot below. Available at https://perma.cc/RU2D-LZQK.

**OBJECTIONS:** The terms "prevent" and "contained" are undefined, vague, and ambiguous. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence what posts and

38

advertisements will appear to a user on the Platform, and the order in which they are arranged, and, as such, X's algorithm does not operate to "prevent," or allow, any particular placement of content.

**REQUEST FOR ADMISSION NO. 22(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 22(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate

to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.


**REQUEST FOR ADMISSION NO. 23(A):** Admit that X's Algorithm did not prevent the advertisement from patpatshopping (at username "@patpatshopping") from appearing next to the content contained in the screenshot below. Available at https://perma.cc/2XRD-4HR4.

**OBJECTIONS:** The terms "prevent" and "as contained" are undefined, vague, and ambiguous. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third

party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence what posts and advertisements will appear to a user on the Platform, and the order in which they are arranged, and, as such, X's algorithm does not operate to "prevent," or allow, any particular placement of content.

**REQUEST FOR ADMISSION NO. 23(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 23(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly

compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 24(A):** Admit that X's Algorithm did not prevent the advertisement from TierPoint (at username "@tierpoint") from appearing in response to the search "Final solution" as contained in the screenshot below. Available at https://perma.cc/F75C-RJAB.

**OBJECTIONS:** The terms "prevent," "appearing in response to," and "as contained" are undefined, vague, and ambiguous. For example, it is unclear whether the request's phrase "appearing in response to" means that the posts appeared immediately in response to the search or whether extensive scrolling or refreshing was done before the post appeared—thus introducing numerous other variables. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the content elements contained within the post were accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. Admitted only that companies have advertised on the X Platform, that searches may be performed on the X Platform, and that users who perform searches may see advertisements served among their search results, in timelines, on profiles, and on other surfaces

43

across the X apps. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence which posts and advertisements will appear to a particular user on the Platform, and, as such, X's algorithms do not independently operate to "prevent," or allow, any particular "response."

**REQUEST FOR ADMISSION NO. 24(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 24(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances.

Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.


**REQUEST FOR ADMISSION NO. 25(A):** Admit that X's Algorithm did not prevent the advertisement from Reasonable Faith (at username "@RFupdates") from appearing in response to the search "Jewskilledjesus" as contained in the screenshot below. Available at https://perma.cc/RGF2-JDGS.

**OBJECTIONS:** The terms "prevent," "appearing in response to," and "as contained" are undefined, vague, and ambiguous. For example, it is unclear whether the request's phrase "appearing in response to" means that the posts appeared immediately in response to the search or whether extensive scrolling or refreshing was done before the post appeared—thus introducing numerous other variables. The request is also improperly compound because it requests the

45

admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the content elements contained within the post were accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. Admitted only that companies have advertised on the X Platform, that searches may be performed on the X Platform, and that users who perform searches may see advertisements served among their search results, in timelines, on profiles, and on other surfaces across the X apps. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence which posts and advertisements will appear to a particular user on the Platform, and, as such, X's algorithms do not independently operate to "prevent," or allow, any particular "response."

**REQUEST FOR ADMISSION NO. 25(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 25(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created

by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 26(A):** Admit that X's Algorithm did not prevent the advertisement from Zion Oil & Gas, Inc. (at username "@zionoil") from appearing next to the content contained in the screenshot below, and from appearing under the search as also shown in the screenshot below. Available at https://perma.cc/URH7-59JA.

**OBJECTIONS:** The terms "prevent," "appearing in response to," and "contained" are undefined, vague, and ambiguous. For example, it is unclear whether the request's phrase "appearing in response to" means that the posts appeared immediately in response to the search or whether extensive scrolling or refreshing was done before the post appeared—thus introducing numerous other variables. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the content elements contained within the post were accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as

written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. Admitted only that companies have advertised on the X Platform, that searches may be performed on the X Platform, and that users who perform searches may see advertisements served among their search results, in timelines, on profiles, and on other surfaces across the X apps. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence which posts and advertisements will appear to a particular user on the Platform, and, as such, X's algorithms do not independently operate to "prevent," or allow, any particular "response."


**REQUEST FOR ADMISSION NO. 26(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 26(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether

the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 27(A):** Admit that X's Algorithm did not prevent the advertisement from FOREX.com (at username "@FOREXcom") from appearing next to the content contained in the screenshot below. Available at https://perma.cc/JNL3-N2Z5.

**OBJECTIONS:** The terms "prevent" and "contained" are undefined, vague, and ambiguous. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence what posts and advertisements will appear to a user on the Platform, and the order in which they are arranged, and, as such, X's algorithm does not operate to "prevent," or allow, any particular placement of content.

**REQUEST FOR ADMISSION NO. 27(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 27(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 28(A):** Admit that X's Algorithm did not prevent the advertisement from Sydney Children's Hospitals Foundation (at username "@schf_kids") from appearing next to the content contained in the screenshot below. Available at https://perma.cc/W9BM-TU5A.

**OBJECTIONS:** The terms "prevent" and "as contained" are undefined, vague, and ambiguous. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally

53

burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence what posts and advertisements will appear to a user on the Platform, and the order in which they are arranged, and, as such, X's algorithm does not operate to "prevent," or allow, any particular placement of content.

**REQUEST FOR ADMISSION NO. 28(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 28(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that

54

must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 29(A):** Admit that X's Algorithm did not prevent the advertisement from Direct Energy US (at username "@DirectEnergy") from appearing next to the content contained in the screenshot below. Available at https://perma.cc/Z299-T2P5.

**OBJECTIONS:** The terms "prevent" and "contained" are undefined, vague, and ambiguous. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence what posts and advertisements will appear to a user on the Platform, and the order in which they are arranged, and, as such, X's algorithm does not operate to "prevent," or allow, any particular placement of content.

**REQUEST FOR ADMISSION NO. 29(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 29(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created

by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 30(A):** Admit that X's Algorithm did not prevent the advertisement from Software 4 SMBs (at username "@InternalToolGuy") from appearing next to the content contained in the screenshot below. Available at https://perma.cc/V6E4-93CF.

**OBJECTIONS:** The terms "prevent" and "as contained" are undefined, vague, and ambiguous. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

App'x 241

**RESPONSE:** Denied as written. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence what posts and advertisements will appear to a user on the Platform, and the order in which they are arranged, and, as such, X's algorithm does not operate to "prevent," or allow, any particular placement of content.

**REQUEST FOR ADMISSION NO. 30(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 30(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X

59

algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 31(A):** Admit that X's Algorithm did not prevent the advertisement from Better Stack (at username "@BetterStackHQ") from appearing next to the content contained in the screenshot below. Available at https://perma.cc/V8WR-7TZV.

**OBJECTIONS:** The terms "prevent" and "contained" are undefined, vague, and ambiguous. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The

request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence what posts and advertisements will appear to a user on the Platform, and the order in which they are arranged, and, as such, X's algorithm does not operate to "prevent," or allow, any particular placement of content.

**REQUEST FOR ADMISSION NO. 31(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 31(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render

content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 32(A):** Admit that X's Algorithm did not prevent the advertisement from The Shift (at username "@theshift_film") from appearing next to the content contained in the screenshot below. Available at https://perma.cc/T3JJ-3F8T.

**OBJECTIONS:** The terms "prevent" and "as contained" are undefined, vague, and ambiguous. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence what posts and advertisements will appear to a user on the Platform, and the order in which they are arranged, and, as such, X's algorithm does not operate to "prevent," or allow, any particular placement of content.

App'x 246

**REQUEST FOR ADMISSION NO. 32(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 32(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant

investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 33(A):** Admit that X's Algorithm did not prevent the advertisement from Volatility Shares (at username "@VolShares") from appearing next to the content contained in the screenshot below. Available at https://perma.cc/64RH-N8RV.

**OBJECTIONS:** The terms "prevent" and "contained" are undefined, vague, and ambiguous. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in

65

Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence what posts and advertisements will appear to a user on the Platform, and the order in which they are arranged, and, as such, X's algorithm does not operate to "prevent," or allow, any particular placement of content.

**REQUEST FOR ADMISSION NO. 33(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 33(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was

accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 34(A):** Admit that X's Algorithm did not prevent the advertisement from the Center for Environment and Welfare (at username "@EnviroWelfare")

from appearing next to the content contained in the screenshot below. Available at https://perma.cc/3S75-ULW5.

**OBJECTIONS:** The terms "prevent" and "as contained" are undefined, vague, and ambiguous. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence what posts and advertisements will appear to a user on the Platform, and the order in which they are arranged, and, as such, X's algorithm does not operate to "prevent," or allow, any particular placement of content.

**REQUEST FOR ADMISSION NO. 34(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 34(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

69

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 35(A):** Admit that X's Algorithm did not prevent the advertisement from Your career in Germany | deutschland.de (at username "@ger_service") from appearing in response to the search "#heilhitler" as contained in the screenshot below. Available at https://perma.cc/W889-7NVV.

**OBJECTIONS:** The terms "prevent," "appearing in response to," and "as contained" are undefined, vague, and ambiguous. For example, it is unclear whether the request's phrase "appearing in response to" means that the posts appeared immediately in response to the search or whether extensive scrolling or refreshing was done before the post appeared—thus introducing numerous other variables. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the content elements contained within the post were accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-

existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. Admitted only that companies have advertised on the X Platform, that searches may be performed on the X Platform, and that users who perform searches may see advertisements served among their search results, in timelines, on profiles, and on other surfaces across the X apps. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence which posts and advertisements will appear to a particular user on the Platform, and, as such, X's algorithms do not independently operate to "prevent," or allow, any particular "response."

**REQUEST FOR ADMISSION NO. 35(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 35(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render

71

content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 36(A):** Admit that X's Algorithm did not prevent the advertisement from Oklahoma Dept of Libraries (at username "@OKDeptLibraries") from appearing in response to the search "#heilhitler" as contained in the screenshot below. Available at https://perma.cc/W889-7NVV.

**OBJECTIONS:** The terms "prevent," "appearing in response to," and "as contained" are undefined, vague, and ambiguous. For example, it is unclear whether the request's phrase "appearing in response to" means that the posts appeared immediately in response to the search or whether extensive scrolling or refreshing was done before the post appeared—thus introducing numerous other variables. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the content elements contained within the post were accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. Admitted only that companies have advertised on the X Platform, that searches may be performed on the X Platform, and that users who perform searches may see advertisements served among their search results, in timelines, on profiles, and on other surfaces across the X apps. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence which posts and advertisements will appear to a particular user on the Platform, and, as such, X's algorithms do not independently operate to "prevent," or allow, any particular "response."

**REQUEST FOR ADMISSION NO. 36(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 36(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the

existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 37(A):** Admit that X's Algorithm did not prevent the advertisement from ASPCA (at username "@ASPCA") from appearing in response to the search "#heilhitler" as contained in the screenshot below. Available at https://perma.cc/W889-7NVV.

**OBJECTIONS:** The terms "prevent," "appearing in response to," and "as contained" are undefined, vague, and ambiguous. For example, it is unclear whether the request's phrase "appearing in response to" means that the posts appeared immediately in response to the search or

whether extensive scrolling or refreshing was done before the post appeared—thus introducing numerous other variables. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the content elements contained within the post were accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. Admitted only that companies have advertised on the X Platform, that searches may be performed on the X Platform, and that users who perform searches may see advertisements served among their search results, in timelines, on profiles, and on other surfaces across the X apps. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence which posts and advertisements will appear to a particular user on the Platform, and, as such, X's algorithms do not independently operate to "prevent," or allow, any particular "response."

**REQUEST FOR ADMISSION NO. 37(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 37(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 38(A):** Admit that X's Algorithm did not prevent the advertisement from MS (at username "@MSfromUS") from appearing next to the content contained in the screenshot below. Available at https://perma.cc/3TDE-RLLN.

**OBJECTIONS:** The terms "prevent" and "contained" are undefined, vague, and ambiguous. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of

78

posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence what posts and advertisements will appear to a user on the Platform, and the order in which they are arranged, and, as such, X's algorithm does not operate to "prevent," or allow, any particular placement of content.

**REQUEST FOR ADMISSION NO. 38(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 38(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is

79

not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 39(A):** Admit that X's Algorithm did not prevent the advertisement from Coffee Brand Coffee (at username "@CoffeeBrandCo") from appearing next to the content contained in the screenshot below. Available at https://perma.cc/2Q2C-RJNX.

**OBJECTIONS:** The terms "prevent" and "as contained" are undefined, vague, and ambiguous. The request is also improperly compound because it requests the admission of multiple express or

implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence what posts and advertisements will appear to a user on the Platform, and the order in which they are arranged, and, as such, X's algorithm does not operate to "prevent," or allow, any particular placement of content.


**REQUEST FOR ADMISSION NO. 39(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 39(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that

Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question

were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 40(A):** Admit that X's Algorithm did not prevent the advertisement from Grand Canyon U (at username "@gcu") from appearing next to the content contained in the screenshot below. Available at https://perma.cc/K3E4-EB7H.

**OBJECTIONS:** The terms "prevent" and "contained" are undefined, vague, and ambiguous. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence what posts and

83

advertisements will appear to a user on the Platform, and the order in which they are arranged, and, as such, X's algorithm does not operate to "prevent," or allow, any particular placement of content.

**REQUEST FOR ADMISSION NO. 40(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 40(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate

to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.


**REQUEST FOR ADMISSION NO. 41(A):** Admit that X's Algorithm did not prevent the advertisement from The Collector's Emporium (at username "@PMCollectorShop") from appearing in response to the search "#HeilHitler" as contained in the screenshot below. Available at https://perma.cc/6PH9-RXK8.

**OBJECTIONS:** The terms "prevent," "appearing in response to," and "as contained" are undefined, vague, and ambiguous. For example, it is unclear whether the request's phrase "appearing in response to" means that the posts appeared immediately in response to the search or whether extensive scrolling or refreshing was done before the post appeared—thus introducing numerous other variables. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately

85

reproduced, whether the content elements contained within the post were accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. Admitted only that companies have advertised on the X Platform, that searches may be performed on the X Platform, and that users who perform searches may see advertisements served among their search results, in timelines, on profiles, and on other surfaces across the X apps. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence which posts and advertisements will appear to a particular user on the Platform, and, as such, X's algorithms do not independently operate to "prevent," or allow, any particular "response."


**REQUEST FOR ADMISSION NO. 41(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 41(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created

by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.


**REQUEST FOR ADMISSION NO. 42(A):** Admit that X's Algorithm did not prevent the advertisement from BUZZNET (at username "@BUZZNET") from appearing in response to the search "#14words" as contained in the screenshot below. Available at https://perma.cc/F75CRJAB.

**OBJECTIONS:** The terms "prevent," "appearing in response to," and "as contained" are undefined, vague, and ambiguous. For example, it is unclear whether the request's phrase "appearing in response to" means that the posts appeared immediately in response to the search or whether extensive scrolling or refreshing was done before the post appeared—thus introducing numerous other variables. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the content elements contained within the post were accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering

88

this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. Admitted only that companies have advertised on the X Platform, that searches may be performed on the X Platform, and that users who perform searches may see advertisements served among their search results, in timelines, on profiles, and on other surfaces across the X apps. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence which posts and advertisements will appear to a particular user on the Platform, and, as such, X's algorithms do not independently operate to "prevent," or allow, any particular "response."

**REQUEST FOR ADMISSION NO. 42(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 42(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether

the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 43(A):** Admit that X's Algorithm did not prevent the advertisement from UNICEF Bangladesh (at username "@UNICEFBD") from appearing under

the post "White power" as contained in the screenshot below. Available at https://perma.cc/57W3-K6ML.

**OBJECTIONS:** The terms "prevent" and "as contained" are undefined, vague, and ambiguous. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence what posts and advertisements will appear to a user on the Platform, and the order in which they are arranged, and, as such, X's algorithm does not operate to "prevent," or allow, any particular placement of content.

**REQUEST FOR ADMISSION NO. 43(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 43(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 44(A):** Admit that X's Algorithm did not prevent the advertisement from Temu (at username "@shoptemu") from appearing next to the content contained in the screenshot below. Available at https://perma.cc/35Q4-Y3GZ.

**OBJECTIONS:** The terms "prevent" and "contained" are undefined, vague, and ambiguous. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of

posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence what posts and advertisements will appear to a user on the Platform, and the order in which they are arranged, and, as such, X's algorithm does not operate to "prevent," or allow, any particular placement of content.

**REQUEST FOR ADMISSION NO. 44(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 44(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is

not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.


**REQUEST FOR ADMISSION NO. 45(A):** Admit that X's Algorithm did not prevent the advertisement from HPCwire (at username "@HPCwire") from appearing next to the content contained in the screenshot below. Available at https://perma.cc/35Q4-Y3GZ.

**OBJECTIONS:** The terms "prevent" and "as contained" are undefined, vague, and ambiguous. The request is also improperly compound because it requests the admission of multiple express or

implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence what posts and advertisements will appear to a user on the Platform, and the order in which they are arranged, and, as such, X's algorithm does not operate to "prevent," or allow, any particular placement of content.


**REQUEST FOR ADMISSION NO. 45(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 45(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that

Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question

were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 46(A):** Admit that X's Algorithm did not prevent the advertisement from reliantenergy (at username "@reliantenergy") from appearing next to the content contained in the screenshot below. Available at https://perma.cc/35Q4-Y3GZ.

**OBJECTIONS:** The terms "prevent" and "contained" are undefined, vague, and ambiguous. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence what posts and

advertisements will appear to a user on the Platform, and the order in which they are arranged, and, as such, X's algorithm does not operate to "prevent," or allow, any particular placement of content.

**REQUEST FOR ADMISSION NO. 46(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 46(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate

to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.


**REQUEST FOR ADMISSION NO. 47(A):** Admit that X's Algorithm did not prevent the advertisement from AMD Gaming (at username "@AMDGaming") from appearing next to the content as in the screenshot below, and in response to the search "heilhitler" as contained in the screenshot below. Available at https://perma.cc/35Q4-Y3GZ.

**OBJECTIONS:** The terms "prevent," "appearing in response to," and "as contained" are undefined, vague, and ambiguous. For example, it is unclear whether the request's phrase "appearing in response to" means that the posts appeared immediately in response to the search or whether extensive scrolling or refreshing was done before the post appeared—thus introducing numerous other variables. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately

reproduced, whether the content elements contained within the post were accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. Admitted only that companies have advertised on the X Platform, that searches may be performed on the X Platform, and that users who perform searches may see advertisements served among their search results, in timelines, on profiles, and on other surfaces across the X apps. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence which posts and advertisements will appear to a particular user on the Platform, and, as such, X's algorithms do not independently operate to "prevent," or allow, any particular "response."

**REQUEST FOR ADMISSION NO. 47(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 47(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created

by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 48(A):** Admit that X's Algorithm did not prevent the advertisement from ONYX BOOX (at username "@OnyxBoox") from appearing in the feed for the verified X user "@AntiWhiteWatch1" as contained in the screenshot below. Available at https://perma.cc/SQ2H-CLTF.

**OBJECTIONS:** The terms "prevent" and "as contained" are undefined, vague, and ambiguous. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users;

103

accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence what posts and advertisements will appear to a user on the Platform, and the order in which they are arranged, and, as such, X's algorithm does not operate to "prevent," or allow, any particular placement of content.

**REQUEST FOR ADMISSION NO. 48(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 47(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the

existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.


**REQUEST FOR ADMISSION NO. 49(A):** Admit that X's Algorithm did not prevent the advertisement from REVOLT (at username "@OnyxBoox") from appearing in the feed for the verified X user "@AntiWhiteWatch1" as contained in the screenshot below. Available at https://perma.cc/9JYB-FV3B.

**OBJECTIONS:** The terms "prevent" and "as contained" are undefined, vague, and ambiguous. The request is also improperly compound because it requests the admission of multiple express or

implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence what posts and advertisements will appear to a user on the Platform, and the order in which they are arranged, and, as such, X's algorithm does not operate to "prevent," or allow, any particular placement of content.

**REQUEST FOR ADMISSION NO. 49(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 49(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that

Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question

were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 50(A):** Admit that X's Algorithm did not prevent the advertisement from SmartThings (at username "@smartthings") from appearing in the feed for the verified X user "@AntiWhiteWatch1" as contained in the screenshot below. Available at https://perma.cc/AH6H-UHQT.

**OBJECTIONS:** The terms "prevent" and "as contained" are undefined, vague, and ambiguous. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence what posts and advertisements will appear to a user on the Platform, and the order in which they are arranged, and, as such, X's algorithm does not operate to "prevent," or allow, any particular placement of content.


**REQUEST FOR ADMISSION NO. 50(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 50(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X

109

algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.


**REQUEST FOR ADMISSION NO. 51(A):** Admit that X's Algorithm did not prevent the advertisement from Tellote (at username "@tellotecom") from appearing next to the content contained in the screenshot below. Available at https://perma.cc/ZZ7E-8MGV.

**OBJECTIONS:** The terms "prevent" and "contained" are undefined, vague, and ambiguous. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The

request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence what posts and advertisements will appear to a user on the Platform, and the order in which they are arranged, and, as such, X's algorithm does not operate to "prevent," or allow, any particular placement of content.

**REQUEST FOR ADMISSION NO. 51(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 51(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render

content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 52(A):** Admit that X's Algorithm did not prevent the advertisement from World Gold Council (at username "@GOLDCOUNCIL") from appearing next to the content contained in the screenshot below. Available at https://perma.cc/BU5X-K8N2.

**OBJECTIONS:** The terms "prevent" and "as contained" are undefined, vague, and ambiguous. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence what posts and advertisements will appear to a user on the Platform, and the order in which they are arranged, and, as such, X's algorithm does not operate to "prevent," or allow, any particular placement of content.

**REQUEST FOR ADMISSION NO. 52(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 52(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant

114

investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.


**REQUEST FOR ADMISSION NO. 53(A):** Admit that X's Algorithm did not prevent the advertisement from Sleeper (at username "@SleeperHQ") from appearing in response to the search "1488" as contained in the screenshot below. Available at https://perma.cc/BU5X-K8N2.

**OBJECTIONS:** The terms "prevent," "appearing in response to," and "as contained" are undefined, vague, and ambiguous. For example, it is unclear whether the request's phrase "appearing in response to" means that the posts appeared immediately in response to the search or whether extensive scrolling or refreshing was done before the post appeared—thus introducing numerous other variables. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the content elements contained within the post were accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably

calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. Admitted only that companies have advertised on the X Platform, that searches may be performed on the X Platform, and that users who perform searches may see advertisements served among their search results, in timelines, on profiles, and on other surfaces across the X apps. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence which posts and advertisements will appear to a particular user on the Platform, and, as such, X's algorithms do not independently operate to "prevent," or allow, any particular "response."


**REQUEST FOR ADMISSION NO. 53(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 53(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined,

vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of

recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 54(A):** Admit that X's Algorithm did not prevent the advertisement from Experience Abu Dhabi (at username "@VisitAbuDhabi") from appearing in response to the search "1488" as contained in the screenshot below. Available at https://perma.cc/BU5X-K8N2.

**OBJECTIONS:** The terms "prevent," "appearing in response to," and "as contained" are undefined, vague, and ambiguous. For example, it is unclear whether the request's phrase "appearing in response to" means that the posts appeared immediately in response to the search or whether extensive scrolling or refreshing was done before the post appeared—thus introducing numerous other variables. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the content elements contained within the post were accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and

advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. Admitted only that companies have advertised on the X Platform, that searches may be performed on the X Platform, and that users who perform searches may see advertisements served among their search results, in timelines, on profiles, and on other surfaces across the X apps. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence which posts and advertisements will appear to a particular user on the Platform, and, as such, X's algorithms do not independently operate to "prevent," or allow, any particular "response."


**REQUEST FOR ADMISSION NO. 54(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 54(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that

must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.


**REQUEST FOR ADMISSION NO. 55(A):** Admit that X's Algorithm did not prevent the advertisement from The Rundown AI (at username "@TheRunDownAI") from appearing in response to the search "heilhitler" as contained in the screenshot below. Available at https://perma.cc/2EUU-CVZJ.

**OBJECTIONS:** The terms "prevent," "appearing in response to," and "as contained" are undefined, vague, and ambiguous. For example, it is unclear whether the request's phrase "appearing in response to" means that the posts appeared immediately in response to the search or whether extensive scrolling or refreshing was done before the post appeared—thus introducing numerous other variables. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the content elements contained within the post were accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. Admitted only that companies have advertised on the X Platform, that searches may be performed on the X Platform, and that users who perform searches may see advertisements served among their search results, in timelines, on profiles, and on other surfaces across the X apps. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence which posts and advertisements will appear

121

App'x 304

to a particular user on the Platform, and, as such, X's algorithms do not independently operate to "prevent," or allow, any particular "response."

**REQUEST FOR ADMISSION NO. 55(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 55(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies

of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.


**REQUEST FOR ADMISSION NO. 56(A):** Admit that X's Algorithm did not prevent the advertisement from The Athletic (at username "@TheAthletic"), Temu (at username "@shoptemu"), Action Network (at username "@ActionNetworkHQ"), and New Jersey Tourism 67 (at username "@Visit_NJ") from appearing in response to the search "killjews" as contained in the screenshot below. Available at https://perma.cc/9JHB-75B9.

**OBJECTIONS:** The terms "prevent," "appearing in response to," and "as contained" are undefined, vague, and ambiguous. For example, it is unclear whether the request's phrase "appearing in response to" means that the posts appeared immediately in response to the search or whether extensive scrolling or refreshing was done before the post appeared—thus introducing numerous other variables. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately

reproduced, whether the content elements contained within the post were accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. Admitted only that companies have advertised on the X Platform, that searches may be performed on the X Platform, and that users who perform searches may see advertisements served among their search results, in timelines, on profiles, and on other surfaces across the X apps. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence which posts and advertisements will appear to a particular user on the Platform, and, as such, X's algorithms do not independently operate to "prevent," or allow, any particular "response."

**REQUEST FOR ADMISSION NO. 56(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 56(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created

by a third party who is not in the control of X and X has no way of knowing how the third party

created the image contained within the post, nor can X determine whether the images in question

were the product of photo editing tools or other manipulation. Further, X has no means of

recreating the content, which would require, among other things, knowledge of the user account,

user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 57(A):** Admit that X's Algorithm did not prevent the

advertisement from Temu (at username "@shoptemu"), Fast Company (at username

"@FastCompany"), Moment (at username "@moment"), and Secretlab (at username

"@secretlabchairs") from appearing in response to the search "heilhitler" as contained in the

screenshot below. Available at https://perma.cc/2BDZ-5WT8.

**OBJECTIONS:** The terms "prevent," "appearing in response to," and "as contained" are

undefined, vague, and ambiguous. For example, it is unclear whether the request's phrase

"appearing in response to" means that the posts appeared immediately in response to the search or

whether extensive scrolling or refreshing was done before the post appeared—thus introducing

numerous other variables. The request is also improperly compound because it requests the

admission of multiple express or implied facts including whether the screenshot itself is accurately

reproduced, whether the content elements contained within the post were accurately reproduced

or the product of photo manipulation and editing tools, and other details that must factually be

implied in any affirmative response. The request is also improper because it is not reasonably

calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-

existence, of a screenshot created by a third party to the litigation and containing unverified

information is not probative to the truthfulness of Defendants' manipulation of the X algorithm

126

that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. Admitted only that companies have advertised on the X Platform, that searches may be performed on the X Platform, and that users who perform searches may see advertisements served among their search results, in timelines, on profiles, and on other surfaces across the X apps. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence which posts and advertisements will appear to a particular user on the Platform, and, as such, X's algorithms do not independently operate to "prevent," or allow, any particular "response."

**REQUEST FOR ADMISSION NO. 57(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 57(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly

compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 58(A):** Admit that X's Algorithm did not prevent the advertisement from USA Football (at username "@USAFootball") from appearing in the feed for the verified X user "WHITE PRIDE" as contained in the screenshot below. Available at https://perma.cc/8ENG-GXHD.

**OBJECTIONS:** The terms "prevent" and "as contained" are undefined, vague, and ambiguous. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence what posts and advertisements will appear to a user on the Platform, and the order in which they are arranged, and, as such, X's algorithm does not operate to "prevent," or allow, any particular placement of content.

**REQUEST FOR ADMISSION NO. 58(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 58(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant

130

investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.


**REQUEST FOR ADMISSION NO. 59(A):** Admit that X's Algorithm did not prevent the advertisement from HPCwire (at username "@HPCwire") from appearing in the feed for the verified X user "WHITE PRIDE" as contained in the screenshot below. Available at https://perma.cc/8ENG-GXHD.

**OBJECTIONS:** The terms "prevent" and "as contained" are undefined, vague, and ambiguous. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of

Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence what posts and advertisements will appear to a user on the Platform, and the order in which they are arranged, and, as such, X's algorithm does not operate to "prevent," or allow, any particular placement of content.


**REQUEST FOR ADMISSION NO. 59(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 59(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether

the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 60(A):** Admit that X's Algorithm did not prevent the advertisement from CME Active Trader (at username "@CMEActiveTrader") from appearing next to the content contained in the screenshot below. Available at https://perma.cc/8ENG-GXHD

**OBJECTIONS:** The terms "prevent" and "contained" are undefined, vague, and ambiguous. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence what posts and advertisements will appear to a user on the Platform, and the order in which they are arranged, and, as such, X's algorithm does not operate to "prevent," or allow, any particular placement of content.

**REQUEST FOR ADMISSION NO. 60(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 61(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

135

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 61(A):** Admit that X's Algorithm did not prevent the advertisement from Your career in Germany | deutschland.de (at username "@ger_service") from appearing in response to the search "#heilhitler" as contained in the screenshot below. Available at https://perma.cc/Z9RQ-XA65.

**OBJECTIONS:** The terms "prevent," "appearing in response to," and "as contained" are undefined, vague, and ambiguous. For example, it is unclear whether the request's phrase "appearing in response to" means that the posts appeared immediately in response to the search or whether extensive scrolling or refreshing was done before the post appeared—thus introducing numerous other variables. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the content elements contained within the post were accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-

existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. Admitted only that companies have advertised on the X Platform, that searches may be performed on the X Platform, and that users who perform searches may see advertisements served among their search results, in timelines, on profiles, and on other surfaces across the X apps. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence which posts and advertisements will appear to a particular user on the Platform, and, as such, X's algorithms do not independently operate to "prevent," or allow, any particular "response."

**REQUEST FOR ADMISSION NO. 61(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 61(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render

content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 62(A):** Admit that X's Algorithm did not prevent the advertisement from Zion Oil & Gas, Inc. (at username "@zionoil") from appearing in response to the search "gasthejews" as contained in the screenshot below. Available at https://perma.cc/9CTCJKGA.

**OBJECTIONS:** The terms "prevent," "appearing in response to," and "as contained" are undefined, vague, and ambiguous. For example, it is unclear whether the request's phrase "appearing in response to" means that the posts appeared immediately in response to the search or whether extensive scrolling or refreshing was done before the post appeared—thus introducing numerous other variables. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the content elements contained within the post were accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. Admitted only that companies have advertised on the X Platform, that searches may be performed on the X Platform, and that users who perform searches may see advertisements served among their search results, in timelines, on profiles, and on other surfaces across the X apps. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence which posts and advertisements will appear to a particular user on the Platform, and, as such, X's algorithms do not independently operate to "prevent," or allow, any particular "response."


**REQUEST FOR ADMISSION NO. 62(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 62(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the

existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 63(A):** Admit that X's Algorithm did not prevent the advertisement from Daily Feed (at username "@Daily_Feed123") from appearing next to the content contained in the screenshot below. Available at https://perma.cc/WF92-JT22.

**OBJECTIONS:** The terms "prevent" and "contained" are undefined, vague, and ambiguous. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image

contained within the post was accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence what posts and advertisements will appear to a user on the Platform, and the order in which they are arranged, and, as such, X's algorithm does not operate to "prevent," or allow, any particular placement of content.


**REQUEST FOR ADMISSION NO. 63(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 63(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined,

vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of

recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 64(A):** Admit that X's Algorithm did not prevent the advertisement from ILY_Necklace (at username "@ILY_Necklace") from appearing next to the content contained in the screenshot below. Available at https://perma.cc/MMK7-DGH8.

**OBJECTIONS:** The terms "prevent" and "as contained" are undefined, vague, and ambiguous. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence what posts and advertisements will appear to a user on the Platform, and the order in which they are arranged,

and, as such, X's algorithm does not operate to "prevent," or allow, any particular placement of content.

**REQUEST FOR ADMISSION NO. 64(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 64(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant

145

investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.


**REQUEST FOR ADMISSION NO. 65(A):** Admit that X's Algorithm did not prevent the advertisement from Newport Healthcare (at username "@newporthealth_") from appearing in the feed of verified X user "@Europa_Activism" as contained in the screenshot below. Available at https://perma.cc/WQL6-BJY2.

**OBJECTIONS:** The terms "prevent" and "as contained" are undefined, vague, and ambiguous. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of

Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence what posts and advertisements will appear to a user on the Platform, and the order in which they are arranged, and, as such, X's algorithm does not operate to "prevent," or allow, any particular placement of content.

**REQUEST FOR ADMISSION NO. 65(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 65(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether

147

the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 66(A):** Admit that X's Algorithm did not prevent the advertisement from Hyland (at username "@Hyland") from appearing in the feed of verified X

user "@Europa_Activism" as contained in the screenshot below. Available at https://perma.cc/WQL6-BJY2.

**OBJECTIONS:** The terms "prevent" and "as contained" are undefined, vague, and ambiguous. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence what posts and advertisements will appear to a user on the Platform, and the order in which they are arranged, and, as such, X's algorithm does not operate to "prevent," or allow, any particular placement of content.

**REQUEST FOR ADMISSION NO. 66(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 66(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 67(A):** Admit that X's Algorithm did not prevent the advertisement from Sandy Hook Promise (at username "@sandyhook") from appearing in response to the search "1488" as contained in the screenshot below. Available at https://perma.cc/NA9W-EYU6.

**OBJECTIONS:** The terms "prevent," "appearing in response to," and "as contained" are undefined, vague, and ambiguous. For example, it is unclear whether the request's phrase "appearing in response to" means that the posts appeared immediately in response to the search or whether extensive scrolling or refreshing was done before the post appeared—thus introducing numerous other variables. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the content elements contained within the post were accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-

existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. Admitted only that companies have advertised on the X Platform, that searches may be performed on the X Platform, and that users who perform searches may see advertisements served among their search results, in timelines, on profiles, and on other surfaces across the X apps. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence which posts and advertisements will appear to a particular user on the Platform, and, as such, X's algorithms do not independently operate to "prevent," or allow, any particular "response."


**REQUEST FOR ADMISSION NO. 67(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 67(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render

content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 68(A):** Admit that X's Algorithm did not prevent the advertisement from CDP (at username "@CDP") from appearing in response to the search "#14words" as contained in the screenshot below. Available at https://perma.cc/S9F3-4NC5.

**OBJECTIONS:** The terms "prevent," "appearing in response to," and "as contained" are undefined, vague, and ambiguous. For example, it is unclear whether the request's phrase "appearing in response to" means that the posts appeared immediately in response to the search or whether extensive scrolling or refreshing was done before the post appeared—thus introducing numerous other variables. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the content elements contained within the post were accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. Admitted only that companies have advertised on the X Platform, that searches may be performed on the X Platform, and that users who perform searches may see

advertisements served among their search results, in timelines, on profiles, and on other surfaces across the X apps. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence which posts and advertisements will appear to a particular user on the Platform, and, as such, X's algorithms do not independently operate to "prevent," or allow, any particular "response."

**REQUEST FOR ADMISSION NO. 68(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 68(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X

algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 69(A):** Admit that X's Algorithm did not prevent the advertisement from Knightscope (at username "@iKnightscope") from appearing in response to the search "we must secure the existence" as contained in the screenshot below. Available at https://perma.cc/48WH-K2NM.

**OBJECTIONS:** The terms "prevent," "appearing in response to," and "as contained" are undefined, vague, and ambiguous. For example, it is unclear whether the request's phrase "appearing in response to" means that the posts appeared immediately in response to the search or whether extensive scrolling or refreshing was done before the post appeared—thus introducing

numerous other variables. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the content elements contained within the post were accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. Admitted only that companies have advertised on the X Platform, that searches may be performed on the X Platform, and that users who perform searches may see advertisements served among their search results, in timelines, on profiles, and on other surfaces across the X apps. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence which posts and advertisements will appear to a particular user on the Platform, and, as such, X's algorithms do not independently operate to "prevent," or allow, any particular "response."

**REQUEST FOR ADMISSION NO. 69(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 69(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 70(A):** Admit that X's Algorithm did not prevent the advertisement from Guardsquare (at username "@Guardsquare") from appearing in response to the search "we must secure the existence" as contained in the screenshot below. Available at https://perma.cc/48WH-K2NM.

**OBJECTIONS:** The terms "prevent," "appearing in response to," and "as contained" are undefined, vague, and ambiguous. For example, it is unclear whether the request's phrase "appearing in response to" means that the posts appeared immediately in response to the search or whether extensive scrolling or refreshing was done before the post appeared—thus introducing numerous other variables. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the content elements contained within the post were accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-

existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. Admitted only that companies have advertised on the X Platform, that searches may be performed on the X Platform, and that users who perform searches may see advertisements served among their search results, in timelines, on profiles, and on other surfaces across the X apps. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence which posts and advertisements will appear to a particular user on the Platform, and, as such, X's algorithms do not independently operate to "prevent," or allow, any particular "response."


**REQUEST FOR ADMISSION NO. 70(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 70(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render

160

content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 71(A):** Admit that X's Algorithm did not prevent the advertisement from USA Today (at username "@USATODAY") from appearing in response to the search "we must secure the existence" as contained in the screenshot below. Available at https://perma.cc/48WH-K2NM.

**OBJECTIONS:** The terms "prevent," "appearing in response to," and "as contained" are undefined, vague, and ambiguous. For example, it is unclear whether the request's phrase "appearing in response to" means that the posts appeared immediately in response to the search or whether extensive scrolling or refreshing was done before the post appeared—thus introducing numerous other variables. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the content elements contained within the post were accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. Admitted only that companies have advertised on the X Platform, that searches may be performed on the X Platform, and that users who perform searches may see advertisements served among their search results, in timelines, on profiles, and on other surfaces across the X apps. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence which posts and advertisements will appear to a particular user on the Platform, and, as such, X's algorithms do not independently operate to "prevent," or allow, any particular "response."

**REQUEST FOR ADMISSION NO. 71(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 71(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the

existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.


**REQUEST FOR ADMISSION NO. 72(A):** Admit that X's Algorithm did not prevent the advertisement from BetMGM (at username "@BetMGM") from appearing in response to the search "#1488" as contained in the screenshot below. Available at https://perma.cc/4RLE-Q4BG.

**OBJECTIONS:** The terms "prevent," "appearing in response to," and "as contained" are undefined, vague, and ambiguous. For example, it is unclear whether the request's phrase "appearing in response to" means that the posts appeared immediately in response to the search or

whether extensive scrolling or refreshing was done before the post appeared—thus introducing numerous other variables. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the content elements contained within the post were accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. Admitted only that companies have advertised on the X Platform, that searches may be performed on the X Platform, and that users who perform searches may see advertisements served among their search results, in timelines, on profiles, and on other surfaces across the X apps. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence which posts and advertisements will appear to a particular user on the Platform, and, as such, X's algorithms do not independently operate to "prevent," or allow, any particular "response."

**REQUEST FOR ADMISSION NO. 72(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 72(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

166

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

**REQUEST FOR ADMISSION NO. 73(A):** Admit that X's Algorithm did not prevent the advertisement from Caravaggio Jewelry (at username "@CaravaggioJewelry") from appearing in response to the search "1488" as contained in the screenshot below. Available at https://perma.cc/F75C-RJAB.

**OBJECTIONS:** The terms "prevent," "appearing in response to," and "as contained" are undefined, vague, and ambiguous. For example, it is unclear whether the request's phrase "appearing in response to" means that the posts appeared immediately in response to the search or whether extensive scrolling or refreshing was done before the post appeared—thus introducing numerous other variables. The request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the content elements contained within the post were accurately reproduced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-

existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Denied as written. Admitted only that companies have advertised on the X Platform, that searches may be performed on the X Platform, and that users who perform searches may see advertisements served among their search results, in timelines, on profiles, and on other surfaces across the X apps. X's algorithms leverage a variety of controls and settings that advertisers and users may select from that, in combination, influence which posts and advertisements will appear to a particular user on the Platform, and, as such, X's algorithms do not independently operate to "prevent," or allow, any particular "response."


**REQUEST FOR ADMISSION NO. 73(B):** Admit that the content captured in the screenshot reproduced in Request for Admission 73(A) appeared on the X platform on the date reflected in the screenshot.

**OBJECTIONS:** The terms "content" and "captured in the screenshot" are undefined, vague, and ambiguous as it is unclear what part of the reproduced image created by a third party, if any, that Defendants are requesting X opine on. The reproduced image created by a third-party purports to depict multiple elements of content appearing in parallel. The term "X platform" is undefined, vague, and ambiguous; users can use a variety of applications and devices to request and render

content—including posts and advertisements—and there is therefore no singular and/or unified "X platform" on which content can appear as suggested in the request. This request is also improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately produced or the product of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithms that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE:** Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation. Further, X has no means of recreating the content, which would require, among other things, knowledge of the user account, user device, application, and settings of the user in question.

# Tab 11

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | |
|---|---|
| **X CORP.**, | |
| Plaintiff, | |
| vs. | Case No. 4:23-cv-01175-O |
| **MEDIA MATTERS FOR AMERICA**, et al. | |
| Defendants. | |

## PLAINTIFF'S OBJECTIONS AND RESPONSES
## TO DEFENDANTS' SECOND SET OF REQUESTS FOR PRODUCTION

Pursuant to Federal Rule of Civil Procedure 34, Plaintiff X Corp. serves its Responses and Objections to Defendants' Second Set of Requests for Production on Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone, by and through their counsel of record, on July 1, 2024.

Dated: July 1, 2024                     Respectfully submitted.

                                        */s/ Christopher D. Hilton*
                                        Judd E. Stone II
                                        Texas Bar No. 24076720
                                        Christopher D. Hilton
                                        Texas Bar No. 24087727
                                        Ari Cuenin
                                        Texas Bar No. 24078385
                                        Alexander M. Dvorscak
                                        Texas Bar No. 24120461
                                        **STONE | HILTON PLLC**
                                        1115 W. Slaughter Lane
                                        Austin, TX 78748
                                        Telephone: (737) 465-3897
                                        judd@stonehilton.com
                                        chris@stonehilton.com
                                        ari@stonehilton.com
                                        alex@stonehilton.com

                                        John C. Sullivan
                                        Texas Bar No. 24083920
                                        **S|L LAW PLLC**
                                        610 Uptown Boulevard, Suite 2000
                                        Cedar Hill, TX 75104
                                        Telephone: (469) 523-1351
                                        Facsimile: (469) 613-0891
                                        john.sullivan@the-sl-lawfirm.com

                                        ***Counsel for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that this document was served on counsel for Defendants via email on July 1, 2024, pursuant to counsel's agreement to accept service via electronic means.

                                        */s/ Alexander M. Dvorscak*
                                        Alexander M. Dvorscak

2

## INSTRUCTIONS

X will produce documents responsive to Defendants' requests on a rolling basis as if the request in question was rewritten to remove the objectionable portion of the request. X will only produce documents in its possession, custody, and control that it is able to locate after a reasonable search and only upon the Court's entry of a protective order in the above-captioned action. X will not search for or produce public documents or documents in the possession of third parties. X will not produce any privileged documents, which will be withheld and logged (if required) in accordance with the Parties' agreements regarding privilege. Production of documents pursuant to these requests does not bear on the admissibility of any document, and X reserves the right to object to the documents' admissibility.

## RESPONSES AND OBJECTIONS

**REQUEST FOR PRODUCTION NO. 31**: All documents, communications, and related data reflecting the number of times You and/or any social media account controlled or managed by You accessed the November 16, 2023 Article and/or the November 17, 2023 Article.

**OBJECTIONS:** X objects that this request is unduly burdensome and disproportionate to the needs of the case. Based on the definition of "You" included in Defendants' instructions, X would be required to search data for *all* current and former employees as of November 16, 2023, to ascertain whether those employees ever accessed the November 16 or 17 articles. This request is therefore an improper fishing expedition that seeks irrelevant information. The number of times that X employees accessed the November articles is unconnected to any claim or defense in this case. Whether an employee accessed the articles five or fifty times has no bearing on whether the publication of the articles constituted tortious interference with business relationships or business disparagement.

**RESPONSE:** For these reasons, X will not search for or produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 32**: All documents, communications, and related data reflecting the number of times a computer or communication device owned, managed, or controlled by You (including laptops, phones, tablets, and any other electronic device) accessed the November 16, 2023 Article and/or the November 17, 2023 Article.

**OBJECTIONS:** X objects that this request is unduly burdensome and disproportionate to the needs of the case. Based on the definition of "You" included in Defendants' instructions, X would be required to search data for *all* current and former employees as of November 16, 2023, to ascertain whether those employees ever accessed the November 16 or 17 articles. This request is therefore an improper fishing expedition that seeks irrelevant information. The number of times that X employees accessed the November articles is unconnected to any claim or defense in this case. Whether an employee accessed the articles five or fifty times has no bearing on whether the publication of the articles constituted tortious interference with business relationships or business disparagement.

**RESPONSE:** For these reasons, X will not produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 33**: All documents and communications reflecting any individuals or entities to whom You have attributed responsibility or who You otherwise have blamed or do blame, in whole or in part, for the loss of advertisers on the Platform.

**OBJECTIONS:** X objects that this request is unduly burdensome and disproportionate to the needs of the case because many of the documents and communications in X's possession that

4

would be responsive to the request as written are likely to be subject to attorney-client and/or work product privileges and would therefore require an expensive and unduly burdensome privilege review. The request is also overly broad, unduly burdensome, and disproportionate to the needs of the case because it is not limited to communications from specific individuals who have relevant knowledge and as such, would compel X to search for and produce communications from *all* current and former employees. Moreover, the request calls for the production of documents that are irrelevant to the parties' claims and defenses. The issue in this suit is not what Defendants describe as "the loss of advertisers on the Platform." Instead, the question is whether the specific advertisers that X has identified paused their business relationships with X based on Defendants' tortious conduct.

**RESPONSE:** Accordingly, X will search for and produce responsive documents relating to the advertisers listed in X's response to Interrogatory 4 after conferring with Defendants on the limited set of custodians who are likely to possess relevant knowledge.

# **Tab 12**

<div align="center">

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

</div>

| | |
|---|---|
| **X CORP.**, | |
| Plaintiff, | |
| | |
| vs. | Case No. 4:23-cv-01175-O |
| | |
| **MEDIA MATTERS FOR AMERICA**, et al. | |
| Defendants. | |

<div align="center">

**PLAINTIFF'S OBJECTIONS AND RESPONSES**
**TO DEFENDANTS' SECOND SET OF INTERROGATORIES**

</div>

Pursuant to Federal Rule of Civil Procedure 33, Plaintiff X Corp. hereby serves its Objections and Responses to Defendants' Second Set of Interrogatories on Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone, by and through their counsel of record, on July 1, 2024.

Dated: July 1, 2024

Respectfully submitted.

*/s/ Christopher D. Hilton*
Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
Ari Cuenin
Texas Bar No. 24078385
Alexander M. Dvorscak
Texas Bar No. 24120461
**STONE | HILTON PLLC**
1115 W. Slaughter Lane
Austin, TX 78748
Telephone: (737) 465-3897
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
alex@stonehilton.com

John C. Sullivan
Texas Bar No. 24083920
**S|L LAW PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

***Counsel for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that this document was served on all counsel of record for Defendants via email on July 1, 2024, pursuant to counsel's agreement to accept service via electronic means.

*/s/ Alexander M. Dvorscak*
Alexander M. Dvorscak

2

App'x 362

## OBJECTIONS AND RESPONSES

**INTERROGATORY NO. 7:** Identify the dollar amount of any "actual and consequential damages" sought by X in this action that have resulted from Defendants' conduct through the publication of the November 16, 2023 Article, the publication of the November 17, 2023 Article, and/or Mr. Carusone's November 26, 2023 interview statements. Include a description of each individual component of that dollar amount and your basis for claiming that each component constitutes damages that have resulted from Defendants' conduct.

**OBJECTION:** X objects that this interrogatory is premature because it seeks expert testimony on damages prior to the Court's January 14, 2025 deadline for X's expert disclosures. *See* ECF No. 69 at 1.

**RESPONSE:** X refers Defendants to the dollar amounts stated in its initial disclosures served on March 8, 2024. The basis for X's damages is provided in its Amended Complaint, ECF No. 37, and in its June 19, 2024 responses to Defendants' first set of interrogatories. X will also produce documents and communications supporting its damages. Fed. R. Civ. P. 33(d)(1).

X reserves the right to amend this response throughout the course of discovery and after Defendants' complete production of responsive documents. X will amend this response following service of expert designations and reports in accordance with the Court's amended scheduling order.

**INTERROGATORY NO. 8**: For each advertiser that ceased advertising on the Platform as of January 1, 2022, identify the advertiser's name, the date on which they terminated their advertising relationship with X, any stated reason for terminating their relationship and, if applicable, the date on which they resumed advertising on the Platform.

**OBJECTION:** X objects that this interrogatory would send X on a fishing expedition to retrieve information with no relevance to this matter. This interrogatory seeks information regarding X's advertisers from the inception of X, formerly Twitter, in 2006 until January 1, 2022. That timeframe has no bearing on, or relevance to, the allegations in this litigation, which arose from tortious conduct in November 2023. This interrogatory is also so vague that X cannot know how to properly respond to it. The term "ceased advertising" is undefined but on its face appears to encompass every instance in which in which an advertiser of any size—of which X has hundreds of thousands—paused an ongoing advertising campaign, failed to renew an ongoing advertising campaign after it expired or reached pre-defined spend thresholds, ceased after the event it advertised passed, ceased advertising via one product and commenced advertising via another, or a myriad of other situations in which advertisers cease advertising but continue to maintain a business relationship with X. Thus, answering this interrogatory as written would be exceptionally burdensome and disproportionate to the needs of the case. It would require a separate answer for every time an advertiser briefly paused a campaign or was in between campaigns, which, given X's size and the decade-and-a-half window that this interrogatory imposes, would likely number in the millions. Even if the interrogatory were interpreted solely to cover advertisers who permanently ceased all business relationships with X, this interrogatory is still unsalvageable. What an advertiser did in 2014, or even 2020, bears no connection to the allegations at issue in this litigation.

**RESPONSE:** For these reasons, X will not provide a response to this interrogatory.

**INTERROGATORY NO. 9**: Identify all accounts that had been taken off Twitter for posting Disputed Content that were later reinstated after Elon Musk acquired X.

**OBJECTION:** X objects that this interrogatory seeks irrelevant information. Whether any user accounts were reinstated after Musk acquired X is not probative of the truth of Defendants' November 16, 2023 Article, Defendants' November 17, 2023 Article, or Carusone's November 26, 2023 interview statements. In addition, X objects that this interrogatory is vague because Defendants' definition of "Disputed Content" lacks an objective basis to evaluate posts that users have created. Because the definition is vague and difficult to apply, X would need to evaluate *every* account that had ever been suspended for any reason from the beginning of X's existence to ascertain whether any of those accounts published what could be construed as "Disputed Content." For that reason, answering this interrogatory as written would be exceptionally burdensome and disproportionate to the needs of the case. Indeed, X has hundreds of millions of active users, and conducts hundreds of thousands of enforcement actions each year, including suspensions. Furthermore, Defendants' use of the term "reinstated" is ambiguous. X user accounts can be restored via a variety of processes, including the expiration of temporary suspensions, successful appeals, and via an amnesty program.  Finally, X objects that the term "taken off Twitter" is vague. X assumes that Defendants are referring to the temporary or permanent suspension of X user accounts.

**RESPONSE:** X does not track, and is therefore unable to answer, the specific number of accounts that were suspended and later reinstated for posting content falling under Defendants' definition of "Disputed Content."

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| **X CORP.**, a Nevada corporation,<br><br>                 Plaintiff,<br><br>        vs.<br><br>**MEDIA MATTERS FOR AMERICA**, a Washington, D.C. non-profit corporation, **ERIC HANANOKI**, and **ANGELO CARUSONE**,<br><br>                 Defendants. | Case No. 4:23-cv-01175-O |

## <u>VERIFICATION OF INTERROGATORY ANSWERS</u>

I, Monique Pintarelli, am Head of the Americas at X Corp. I declare under penalty of perjury that the foregoing answers to Defendants' Second Set of Interrogatories on behalf of X Corp. are true and correct to the best of my knowledge, information, belief, or recollection.

*Monique Pintarelli*
Monique Pintarelli (Jun 28, 2024 13:19 EDT)

Executed: June 28 _____ , 2024.

Monique Pintarelli
Head of the Americas
X Corp.

**Signature:** *Monique Pintarelli*
Monique Pintarelli (Jun 28, 2024 13:19 EDT)
**Email:** mpintarelli@x.com
**Title:** Head of thre Americas
**Company:** X Corp

# Tab 13

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

|  |  |
|---|---|
| X CORP., | |
| *Plaintiff*, | |
| v. | Civil Action No. 4:23-cv-01175-O |
| MEDIA MATTERS FOR AMERICA, *et al.*, | |
| *Defendants*. | |

**DEFENDANTS MEDIA MATTERS FOR AMERICA, ERIC HANANOKI, AND ANGELO CARUSONE'S THIRD SET OF REQUESTS FOR ADMISSION**

Pursuant to Federal Rules of Civil Procedure 26 and 36, Defendants Media Matters for America ("Media Matters"), Mr. Eric Hananoki, and Mr. Angelo Carusone, through their undersigned counsel, serve their Third Set of Requests for Admission ("Requests") on Plaintiff X Corp. Responses to these Requests are to be produced electronically to Defendants' counsel within 30 days of receipt. Each Request for Admission is subject to the Definitions and Instructions listed below.

## DEFINITIONS

Except as specifically defined below, the terms used in these Requests shall be construed and defined in accordance with the Federal Rules of Civil Procedure and the Local Rules of the U.S. District Court for the Northern District of Texas, wherever applicable. Any terms not defined shall be given their ordinary meaning.

1

1. "Amended Complaint" means Plaintiff's First Amended Complaint, filed at ECF No. 37 in this litigation, *X Corp. v. Media Matters for America et al.*, No. 4:23-cv-01175-O.

2. "Date" means the exact day, month, and year, if ascertainably, or, if not, the best available approximation (including relationship to other events).

3. "Follow" is to be understood as that term is used in Plaintiff's Amended Complaint, ECF No. 37, to describe the way one X user keeps track of another X user (*see, e.g.*, ¶ 41 "Users curate the content on their own feeds by choosing to 'follow' other users").

4. "Hateful content" refers to hate speech or advocacy against a protected group, individual, or organization as that term is defined and understood by X, https://business.x.com/en/help/ads-policies/ads-content-policies/hate-content.html, and as that term is used in Plaintiff's Amended Complaint, ECF No. 37.

5. "Including" means "including, but not limited to."

6. "Large advertisers" is to be understood as that term is used in Plaintiff's Amended Complaint, ECF No. 37, to describe certain of X's advertisers (*see, e.g.*, ¶ 52 "large advertisers[.]").

7. The "November 16, 2023 Article" refers to the article written by Mr. Hananoki and originally published on November 16, 2023, titled "As Musk endorses antisemitic conspiracy theory, X has been placing ads for Apple, Bravo, IBM, Oracle, and Xfinity next to pro-Nazi content."

8. "Platform" means the social media website operated by X.

9. "X" or "Plaintiff" shall mean the Plaintiff in this Matter, X Corp., as well as its predecessor in interest, Twitter, Inc., including both entities' owners, officers, directors, partners,

2

members, managers, employees, representatives, staff, agents, consultants, and anyone acting on their behalf.

10. "You" and "your" means the Plaintiff in this Matter, X Corp., as well as its predecessor in interest, Twitter, Inc., including both entities' owners, officers, directors, partners, members, managers, employees, representatives, staff, agents, consultants, and anyone acting on their behalf.

## **INSTRUCTIONS**

1. The instructions, definitions, and rules of construction set forth in Rules 26 and 36 of the Federal Rules of Civil Procedure are incorporated herein by reference.

2. These Requests are to be answered separately and fully, in writing and under oath, within thirty days of the date of service on you.

3. If you object or fail to answer any Request, in whole or in part, please state in detail the reasons for your failure to answer, the portion of the Request to which your objection relates, and/or the reason why you are unable to respond to the Request after affirmative inquiry.

4. If you contend that a Request seeks information that is protected from disclosure by the attorney-client or work-product privilege, and such privilege is asserted as a basis for failing to admit or deny the request, please provide a written statement setting forth: (a) the identity of each person from or to whom the information withheld has previously been disclosed or communicated; (b) a brief description of the subject matter of the information; and (c) the legal ground upon which you rely in withholding the information.

5. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a Request all responses that otherwise might be construed to be outside its scope.

3

6.  A reference to an entity, organization, or agency in any of these Requests shall be construed to include its officers, directors, partners, members, managers, employees, representatives, agents, consultants, and anyone acting on its behalf.

7.  A reference to an entity, organization, or agency in any of these Requests shall be construed to include its officers, directors, partners, members, managers, employees, representatives, agents, consultants, and anyone acting on its behalf.

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 82**: Admit that the deposition transcript available at https://www.scribd.com/document/721193667/Elon-Musk-Deposed-In-Lawsuit-For-Falsely-Linking-Jewish-Man-To-Neo-Nazi-Brawl is a true and correct copy of the deposition testimony of Elon Musk on March 27, 2024, in the case *Brody v. Musk*, Case No. D-1-GN-23-006883 (Travis Co. Dist. Ct.).

**REQUEST FOR ADMISSION NO. 83**: Admit that during his deposition on March 27, 2024, in the case *Brody v. Musk*, Case No. D-1-GN-23-006883 (Travis Co. Dist. Ct.), Mr. Musk testified: "I believe my posting has really remained unchanged before and after the acquisition. The—and going back to the sort of self-inflicted wounds, the Kevlar shoes, I think that—I've probably done—I may have done more to financially impair the company than to help it, but certainly I—I do not guide my posts by what is financially beneficial but what I believe is interesting or important or entertaining to the public."

**REQUEST FOR ADMISSION NO. 84**: Admit that, as alleged in Plaintiff's First Amended Complaint, ECF No. 37, at ¶ 11, "fringe content" did appear "next to X's largest advertisers' paid posts."

**REQUEST FOR ADMISSION NO. 85**: Admit that X allows users to curate the content on their own feeds by choosing to "follow" other users.

4

**REQUEST FOR ADMISSION NO. 86**:  Admit that the accounts a user chooses to "follow" determines which posts are presented to them.

**REQUEST FOR ADMISSION NO. 87**:  Admit that X users are able to "follow" both user accounts of the Platform's large advertisers and user accounts that post hateful content.

**REQUEST FOR ADMISSION NO. 88**: Admit that X users who choose to "follow" both user accounts of the Platform's large advertisers and user accounts that post hateful content are able to see hateful content appear next to content from the Platform's large advertisers on the Platform.

**REQUEST FOR ADMISSION NO. 89**: Admit that the following statement was made by person(s) with personal knowledge of how the Platform operates: "While we strive to prevent any ads from appearing adjacent to content excluded through Adjacency Controls settings, we cannot guarantee 100% effectiveness." *See* https://business.x.com/en/blog/adjacency-controls-third-party-measurement.html.

**REQUEST FOR ADMISSION NO. 90**: Admit that X has publicly stated that "While we strive to prevent ads from appearing adjacent to content excluded through Adjacency Controls settings, we cannot guarantee 100% effectiveness." *See* https://business.x.com/en/blog/adjacency-controls-third-party-measurement.html.

Dated July 26, 2024

*/s/ Andrew LeGrand*

**GIBSON, DUNN & CRUTCHER LLP**
Andrew LeGrand (TX 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.* (CA 132099)
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed* (NY 4382040)
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

**ELIAS LAW GROUP LLP**
Abha Khanna* (WA 42612)
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Aria C. Branch (DC 1014541)
Jacob D. Shelly* (DC 90010127)
Elena Rodriguez Armenta* (DC 90018798)
Daniela Lorenzo* (DC 90022335)
250 Massachusetts Ave, NW Suite 400
Washington, D.C. 20001
T: (202) 968-4490
F: (202) 986-4498
abranch@elias.law
jshelly@elias.law
erodriguezarmenta@elias.law
dlorenzo@elias.law

* Admitted *pro hac vice*

*Counsel for Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone*

6

# Tab 14

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

|  |  |
|---|---|
| X CORP.,<br><br>    *Plaintiff*,<br><br>    v.<br><br>MEDIA MATTERS FOR AMERICA,<br>*et al.*,<br><br>    *Defendants*. | Civil Action No. 4:23-cv-01175-O |

## DEFENDANTS MEDIA MATTERS FOR AMERICA, ERIC HANANOKI, AND ANGELO CARUSONE'S THIRD SET OF REQUESTS FOR PRODUCTION

Pursuant to Federal Rules of Civil Procedure 26 and 34, Defendants Media Matters for America ("Media Matters"), Mr. Eric Hananoki, and Mr. Angelo Carusone, through their undersigned counsel, serve this Third Set of Requests for Production ("Requests for Production" or "Requests") on Plaintiff X Corp.

Responses to these Requests are to be produced within 30 days of receipt. To arrange for electronic production, please contact counsel at xcorpsuit@elias.law. Anything that cannot be produced electronically should be produced to Andrew LeGrand at Gibson, Dunn & Crutcher, 2001 Ross Avenue Suite 2100, Dallas, Texas 75201.

Each Request for Production is subject to the Definitions and Instructions listed below.

## DEFINITIONS

Except as specifically defined below, the terms used in this request shall be construed and defined in accordance with the Federal Rules of Civil Procedure and the Local Rules of the U.S.

1

District Court for the Northern District of Texas, wherever applicable. Any terms not defined shall be given their ordinary meaning.

1. "Amended Complaint" means Plaintiff's First Amended Complaint, filed at ECF No. 37 in this litigation, X Corp. v. Media Matters for America et al., No. 4:23-cv-01175-O.

2. "Any" or "all" means "any and all."

3. "Communication" is synonymous in meaning and scope with the term "communication" as used in Local Rule 26, and includes any transfer of information of any type, whether written, oral, electronic, or otherwise, and includes but is not limited to transfers of information via email, report, phone call, letter, text message, Slack, Signal, direct messages on social media platforms, ephemeral messaging applications, instant messaging applications, voicemail message, voice message, written memorandum, note, summary, and other means.

4. "Date" means the exact day, month, and year, if ascertainably, or, if not, the best available approximation (including relationship to other events).

5. "Document" is synonymous in meaning and scope to the term "document" as used in Federal Rule of Civil Procedure 34 and Local Rule 26 and includes, but is not limited to, records, reports, lists, data, statistics, summaries, analyses, communications (as defined above), computer discs, tapes, printouts, emails, databases, and any handwritten, typewritten, printed, electronically recorded, taped, graphic, machine-readable, or other material, of whatever nature and in whatever form, including all non-identical copies and drafts thereof, and all copies bearing any notation or mark not found on the original.

6. "Impressions" means the number of times content has been viewed, including multiple views from individual users.

2

7.  "Including" means "including, but not limited to."

8.  "Platform" means the social media website operated by X.

9.  "X" or "Plaintiff" means the Plaintiff in this Matter, X Corp., as well as its predecessor in interest, Twitter, Inc., including its owner, officers, directors, partners, members, managers, employees, representatives, staff, agents, consultants, and anyone acting on its behalf.

10. "You" and "your" means the Plaintiff in this Matter, X Corp., as well as its predecessor in interest, Twitter, Inc., including both entities' owners, officers, directors, partners, members, managers, employees, representatives, staff, agents, consultants, and anyone acting on their behalf.

## INSTRUCTIONS

1.  You shall produce materials and serve responses and any objections within 30 days after service of these Requests for Production.

2.  If you object to any part of a Request, set forth the basis of your objection and respond to all parts of the Request to which you do not object.

3.  If, in responding to these Requests for Production, you encounter any ambiguities when construing a Request or definition, set forth the matter deemed ambiguous and the construction used in responding. Where you, in good faith, do not understand the meaning or intended scope of a Request, and the sole objection would be to its vagueness, overbreadth, or ambiguity, please contact Defendants' counsel for clarification in advance of asserting an objection.

4.  Regarding any document withheld from production on a claim of privilege or work product protection, provide a written privilege log identifying each document individually and containing all information required by Federal Rule of Civil Procedure 26(b)(5) and in

3

accordance with the parties' stipulation regarding the exchange of privilege logs, ECF No. 68, including a description of the basis of the claimed privilege and all information necessary for Defendants to assess the claim of privilege.

5. Produce all documents available to you or subject to your access or control that are responsive to the Requests for Production. This includes documents in your actual or constructive possession or control and in the actual or constructive possession or control of your attorneys, investigators, experts, and anyone else acting on your behalf.

6. Documents are to be produced as they are kept in the ordinary course of business. Accordingly, documents should be produced in their entirety, without abbreviation, redaction, or expurgation; file folders with tabs or labels identifying documents responsive to this request should be produced intact with the documents; and documents attached to each other should not be separated.

7. All documents are to be produced consistent with the terms in the ESI protocol agreed to by the parties and filed with the Court on June 12, 2024 (ECF No. 68). The ESI protocol shall supersede all prior instructions for the production of ESI included in Defendants' previous discovery requests in this case.

8. If any otherwise responsive document was, but is no longer, in existence or in your possession, custody, or control, identify the type of information contained in the document, its current or last known custodian, the location/address of such document, and the identity of all persons having knowledge or who had knowledge of the document, and also describe in full the circumstances surrounding its disposition from your possession or control.

9.   These Requests for Production are continuing in nature, up to and including trial. Materials sought by these Requests that become available after you serve your responses must be disclosed to counsel for Defendants by supplementary response or responses.

10.   Pursuant to Federal Rule of Civil Procedure 26(c), you are under a duty to promptly amend your responses to these Requests if you learn that an answer is in some material respect incomplete or incorrect. If you expect to obtain further information or expect the accuracy of a response given to change between the time responses are served and the time of trial, you are requested to state this fact in each response.

11.   If you contend that it would be unreasonably burdensome to obtain and provide all of the documents called for in response to any Request for Production, then in response to the specific Request: (a) produce all such documents as are available to you without undertaking what you contend to be an unreasonable request; (b) describe with particularity the efforts made by you or on your behalf to produce such documents; and (c) state with particularity the grounds upon which you contend that additional efforts to produce such documents would be unreasonable.

12.   The singular form of a noun or pronoun includes the plural form, and the plural form includes the singular.

13.   The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a Request for Production all responses that otherwise might be construed to be outside its scope.

14.   A reference to an entity in this request shall be construed to include its officers, directors, partners, members, managers, employees, representatives, agents, consultants, and anyone acting on its behalf.

<div style="text-align:center">5</div>

15.     These Requests for Production apply to the period from April 14, 2021, to the present, unless otherwise limited or expanded by a particular topic description.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 34**: All transcripts from any deposition in which Elon Musk has been deposed.

**REQUEST FOR PRODUCTION NO. 35**: All documents and communications related to the "internal investigations" and "internal review" conducted by X as described in Plaintiff's Amended Complaint, ECF No. 37, at ¶¶ 9, 46, 53.

**REQUEST FOR PRODUCTION NO. 36**: All documents and communications related to or supporting X's allegation that "99% of X's measured ad placement in 2023 appeared adjacent to content scoring above the Global Alliance for Responsible Media's brand safety floor" in Plaintiff's Amended Complaint, ECF No. 37, ¶ 4.

**REQUEST FOR PRODUCTION NO. 37**: All documents and communications showing Elon Musk's deleted posts on the X platform.

**REQUEST FOR PRODUCTION NO. 38**: All documents and communications showing the number of impressions received by Elon Musk's November 15, 2023, reply to X user's "The Artist Formerly Known as Eric" (at username "@breakingbaht") post on the same day as reflected in the screenshot below. *Available at* https://perma.cc/Z9LW-E6UY.



**REQUEST FOR PRODUCTION NO. 39**: All of X's "internal user data" described in Plaintiff's Amended Complaint, ECF No. 37, ¶ 50, that form the basis of X's allegations.

**REQUEST FOR PRODUCTION No. 40**: The preliminary findings issued on July 12, 2024 by the European Commission to X indicating that X is in breach of the Digital Services Act, as publicly reported in a July 12, 2024 press release by the European Commission, *available at* https://ec.europa.eu/commission/presscorner/detail/en/ip_24_3761.

Dated July 26, 2024

*/s/ Andrew LeGrand*

**GIBSON, DUNN & CRUTCHER LLP**
Andrew LeGrand (TX 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.* (CA 132099)
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed** (NY 4382040)
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

**ELIAS LAW GROUP LLP**
Abha Khanna* (WA 42612)
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Aria C. Branch (DC 1014541)
Jacob D. Shelly* (DC 90010127)
Elena Rodriguez Armenta* (DC 90018798)
Daniela Lorenzo* (DC 90022335)
250 Massachusetts Ave, NW Suite 400
Washington, D.C. 20001
T: (202) 968-4490
F: (202) 986-4498
abranch@elias.law
jshelly@elias.law
erodriguezarmenta@elias.law
dlorenzo@elias.law

* Admitted *pro hac vice*

*Counsel for Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone*

8

# Tab 15

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

|  |  |
|---|---|
| X CORP., | |
| *Plaintiff*, | |
| v. | Civil Action No. 4:23-cv-01175-O |
| MEDIA MATTERS FOR AMERICA, *et al.*, | |
| *Defendants*. | |

## DEFENDANTS MEDIA MATTERS FOR AMERICA, ERIC HANANOKI, AND ANGELO CARUSONE'S THIRD SET OF INTERROGATORIES

Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendants Media Matters for America ("Media Matters"), Mr. Eric Hananoki, and Mr. Angelo Carusone, through their undersigned counsel, serve their Third Set of Interrogatories on Plaintiff X Corp. Responses to these Interrogatories are to be produced electronically to Defendants' counsel within 30 days of receipt. Each Interrogatory is subject to the Definitions and Instructions listed below.

## DEFINITIONS

Except as specifically defined below, the terms used in this request shall be construed and defined in accordance with the Federal Rules of Civil Procedure and the Local Rules of the U.S. District Court for the Northern District of Texas, wherever applicable. Any terms not defined shall be given their ordinary meaning.

1

1. "Algorithm" refers to the X systems and processes, as that term is used in Plaintiff's First Amended Complaint, ECF No. 37, that, among other things, determine what content is presented to each X user.

2. "Any" or "all" means "any and all."

3. "Identify" means to indicate or establish what something or someone is.

4. "Including" means "including, but not limited to."

5. The "November 16, 2023 Article" refers to the article written by Mr. Hananoki and originally published on November 16, 2023, titled "As Musk endorses antisemitic conspiracy theory, X has been placing ads for Apple, Bravo, IBM, Oracle, and Xfinity next to pro-Nazi content."

6. "Platform" means the social media website operated by X.

7. "X" or "Plaintiff" means the Plaintiff in this Matter, X Corp., as well as its predecessor in interest, Twitter, Inc., including both entities' owners, officers, directors, partners, members, managers, employees, representatives, staff, agents, consultants, and anyone acting on their behalf.

## **INSTRUCTIONS**

1. If you object to any interrogatory in full or in part, you must note the objection with specificity. If you object to any part of an interrogatory, you must specify the part to which you object, set forth the basis of your objection and respond to all parts of the interrogatory to which you do not object. Any ground not stated in a timely objection is waived.

2. Where you, in good faith, do not understand the meaning or intended scope of an interrogatory, before objecting to the interrogatory based on its vagueness, overbreadth, or ambiguity, contact Defendants' counsel in advance of asserting an objection. Defendants' counsel will provide whatever additional clarification or explanation may be needed. If you

still believe the interrogatory to be vague, overbroad, or ambiguous, set forth in your response what you find to be vague, overbroad, or ambiguous and the construction you used in responding.

3. In accordance with the Federal Rules of Civil Procedure, the scope of discovery sought through these interrogatories extends to all relevant and non-privileged information that might reasonably lead to the discovery of admissible evidence. In answering these interrogatories, you must furnish all such information available to you, including information in the possession of all representatives, agents, and any other persons acting on your behalf, and not merely such information known of your own personal knowledge. If you cannot answer these interrogatories in full after exercising due diligence to secure the information requested, you should so state and answer to the extent possible, specifying the nature of your inability to answer the remainder and providing whatever information or knowledge that you possess concerning the unanswered portion.

4. Each interrogatory shall be answered separately, fully, and responsively following the interrogatory.

5. The interrogatories that follow are to be considered as continuing, and you have a duty to provide, by way of supplementary answers, such additional information as you or any persons acting on your behalf may hereafter obtain that will augment, clarify, correct, or otherwise modify the answers now given. Such supplementary answers are to be promptly served upon Defendants' counsel after receipt of such information, but in any event, no later than 14 days after receipt.

3

6.  For any interrogatory in which a number is requested the exact number is not known, for each such interrogatory, provide an estimate, an explanation as to your confidence in that estimate, and an explanation as to how that estimate was reached.

7.  If you do not know the answer to any interrogatory, or if there are limitations to your knowledge about the answer to any interrogatory, provide whatever answer you can including the limitations to your knowledge. If there are other people or entities that you believe may know the answer to any interrogatory or may be able to provide additional information in response to any interrogatory, identify those people or entities in your response.

8.  If any objection is raised to these interrogatories on the basis of an assertion of privilege, you shall provide both a description of the basis of the privilege and all information necessary for Defendants to assess the claim of privilege.

9.  No part of an interrogatory should be left unanswered merely because an objection is interposed to another part of the interrogatory. If a partial or incomplete answer is provided, state that the answer is partial or incomplete.

10. Where an interrogatory relates to more than one person or subject, it is to be answered as to each such person or subject separately.

11. The singular form of a noun or pronoun includes the plural form, and the plural form includes the singular.

12. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of an interrogatory all responses that otherwise might be construed to be outside its scope.

13.    A reference to an entity, organization, or agency in this request shall be construed to include its officers, directors, partners, members, managers, employees, representatives, agents, consultants, and anyone acting on its behalf.

14.    A reference to a person in this request shall be construed to include that person's employees, representatives, consultants, and anyone acting on their behalf.

## **INTERROGATORIES**

**INTERROGATORY NO. 10:** Describe any modifications made to X's algorithm or advertisement policies from November 16, 2023 to the present.

**INTERROGATORY NO. 11**: Describe the "internal investigations" and "internal review" referenced in Plaintiff's First Amended Complaint, ECF No. 37, at ¶¶ 9 ("internal investigations"), 46 ("internal review"), 53 ("internal review"), including how they were conducted, any individuals and X user accounts involved in conducting them, and any findings.

Dated July 26, 2024

*/s/ Andrew LeGrand*

| **GIBSON, DUNN & CRUTCHER LLP** | **ELIAS LAW GROUP LLP** |
|---|---|
| Andrew LeGrand (TX 24070132) | Abha Khanna* (WA 42612) |
| 2001 Ross Avenue, Suite 2100 | 1700 Seventh Avenue, Suite 2100 |
| Dallas, TX 75201 | Seattle, WA 98101 |
| T: (214) 698-3100 | T: (206) 656-0177 |
| F: (214) 571-2960 | F: (206) 656-0180 |
| alegrand@gibsondunn.com | akhanna@elias.law |

Theodore J. Boutrous, Jr.* (CA 132099)     Aria C. Branch (DC 1014541)
333 South Grand Avenue                                   Jacob D. Shelly* (DC 90010127)
Los Angeles, CA 90071                                      Elena Rodriguez Armenta* (DC 90018798)
T: (213) 229-7000                                              Daniela Lorenzo* (DC 90022335)
F: (213) 229-7520                                              250 Massachusetts Ave, NW Suite 400
tboutrous@gibsondunn.com                             Washington, D.C. 20001
                                                                        T: (202) 968-4490
Amer S. Ahmed* (NY 4382040)                     F: (202) 986-4498
200 Park Avenue                                               abranch@elias.law
New York, New York 10166                             jshelly@elias.law
T: (212) 351-4000                                              erodriguezarmenta@elias.law
F: (212) 351-4035                                              dlorenzo@elias.law
aahmed@gibsondunn.com

* Admitted *pro hac vice*

*Counsel for Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone*

6

App'x 389

# Tab 16

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| **X CORP.**, | |
| Plaintiff, | |
| vs. | Case No. 4:23-cv-01175-O |
| **MEDIA MATTERS FOR AMERICA**, et al. | |
| Defendants. | |

**PLAINTIFF'S RESPONSES AND OBJECTIONS**
**TO DEFENDANTS' THIRD SET OF REQUESTS FOR ADMISSION**

Pursuant to Federal Rule of Civil Procedure 36, Plaintiff X Corp. hereby serves its Objections and Responses to Defendants' First Set of Requests for Admission on Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone, by and through their counsel of record.

Dated: August 26, 2024                    Respectfully submitted.

                                          */s/ Christopher D. Hilton*
                                          Judd E. Stone II
                                          Texas Bar No. 24076720
                                          Christopher D. Hilton
                                          Texas Bar No. 24087727
                                          Ari Cuenin
                                          Texas Bar No. 24078385
                                          Michael R. Abrams
                                          Texas Bar No. 24087072
                                          Alexander M. Dvorscak
                                          Texas Bar No. 24120461
                                          **STONE | HILTON PLLC**
                                          600 Congress Ave., Ste. 2350
                                          Austin, TX 78701
                                          Telephone: (737) 465-3897
                                          judd@stonehilton.com
                                          chris@stonehilton.com
                                          ari@stonehilton.com
                                          michael@stonehilton.com
                                          alex@stonehilton.com

                                          John C. Sullivan
                                          Texas Bar No. 24083920
                                          **S|L LAW PLLC**
                                          610 Uptown Boulevard, Suite 2000
                                          Cedar Hill, TX 75104
                                          Telephone: (469) 523-1351
                                          Facsimile: (469) 613-0891
                                          john.sullivan@the-sl-lawfirm.com

                                          ***Counsel for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that this document was served on all counsel of record for Defendants via email on August 26, 2024, pursuant to counsel's agreement to accept service via electronic means.

                                          */s/ Alexander M. Dvorscak*
                                          Alexander M. Dvorscak

2

## OBJECTIONS AND RESPONSES

**REQUEST FOR ADMISSION NO. 82**: Admit that the deposition transcript available at https://www.scribd.com/document/721193667/Elon-Musk-Deposed-In-Lawsuit-For-Falsely-Linking-Jewish-Man-To-Neo-Nazi-Brawl is a true and correct copy of the deposition testimony of Elon Musk on March 27, 2024, in the case *Brody v. Musk*, Case No. D-1-GN-23-006883 (Travis Co. Dist. Ct.).

**OBJECTION:** X objects to the extent that the request as written is interpreted as calling for a legal conclusion as to the admissibility of the linked document. X also objects that the link provided is not in the control of X and may be removed or changed without X's knowledge. X further objects that the transcript of the March 27, 2024 deposition speaks for itself.

**RESPONSE:** X admits only that Musk gave a deposition on March 27, 2024, in the case *Brody v. Musk*, Case No. D-1-GN-23-006883 (Travis Co. Dist. Ct.), and that the transcript of the deposition is publicly available. The remainder of the request is denied.


**REQUEST FOR ADMISSION NO. 83**: Admit that during his deposition on March 27, 2024, in the case *Brody v. Musk*, Case No. D-1-GN-23-006883 (Travis Co. Dist. Ct.), Mr. Musk testified: "I believe my posting has really remained unchanged before and after the acquisition. The—and going back to the sort of self-inflicted wounds, the Kevlar shoes, I think that—I've probably done—I may have done more to financially impair the company than to help it, but certainly I—I do not guide my posts by what is financially beneficial but what I believe is interesting or important or entertaining to the public."

3

**OBJECTION:** X objects that the transcript of the March 27, 2024 deposition speaks for itself. X also objects to the extent this request calls for a legal conclusion as to the admissibility of the statement at issue.

**RESPONSE:** X admits only that the deposition transcript speaks for itself. The remainder of the request is denied.

**REQUEST FOR ADMISSION NO. 84**: Admit that, as alleged in Plaintiff's First Amended Complaint, ECF No. 37, at ¶ 11, "fringe content" did appear "next to X's largest advertisers' paid posts."

**OBJECTION:** X objects that the term "fringe content" is undefined and therefore vague. X additionally objects that the term "X's largest advertisers" is undefined and therefore vague. In both instances X will interpret the terms in the manner that X used the terms in its First Amended Complaint.

**RESPONSE:** Admitted that the allegations in Plaintiff's First Amended Complaint, ECF No. 37, ¶ 11 are accurate, including the allegation that "Media Matters . . . resorted to endlessly scrolling and refreshing its unrepresentative, hand-selected feed, generating between 13 and 15 times more advertisements per hour than viewed by the average X user, and repeating this inauthentic activity until it finally received pages containing the result it wanted: fringe content next to X's largest advertisers' paid posts." The remainder of the request is denied.

**REQUEST FOR ADMISSION NO. 85**: Admit that X allows users to curate the content on their own feeds by choosing to "follow" other users.

**OBJECTION**: X objects that the words "content" and "feeds" are ambiguous. X interprets the terms in their broadest sense (i.e., "content" means all content, including advertisements and user posts, and "feeds" means both the platform's "Following" feed and the "For You" feed).

**RESPONSE**: Admitted that the "For You" feed has algorithmic recommendations that are partially but not fully determined by who a user follows, and further admitted that there is a "Following" feed that is based on who a user follows but which uses algorithms to determine what content is displayed and in what order. The remainder of the request is denied.

**REQUEST FOR ADMISSION NO. 86**: Admit that the accounts a user chooses to "follow" determines which posts are presented to them.

**OBJECTION**: None.

**RESPONSE**: Denied.

**REQUEST FOR ADMISSION NO. 87**: Admit that X users are able to "follow" both user accounts of the Platform's large advertisers and user accounts that post hateful content.

**OBJECTION**: X objects that the phrase "hateful content," while defined, is impermissibly broad as it seeks to apply the definition X uses for "monetization" and "X's paid advertising products" onto all user accounts. Such an expansion covers all 550 million monthly users of X, and potentially more, and thus imposes an unreasonable burden on X to answer the request as written. X further objects that the phrase "large advertisers" is undefined and vague, calling as it does for a subjective assessment of whether an advertiser is "large."

5

**RESPONSE**: Admitted only to the extent that X users may follow any other user of the Platform with a public account and may follow accounts set to private with the private accountholder's permission. The remainder of the request is denied.

**REQUEST FOR ADMISSION NO. 88**: Admit that X users who choose to "follow" both user accounts of the Platform's large advertisers and user accounts that post hateful content are able to see hateful content appear next to content from the Platform's large advertisers on the Platform.

**OBJECTION**: X incorporates its objections to Request for Admission No. 87. X also objects that the request is vague because it calls for an answer to a hypothetical based on general concepts. Likewise, X objects that the term "are able to" is vague in context, as it is unclear whether the request refers to a user who uses X organically—i.e., periodically refreshes his feed—or a user who manipulates the platform by frequent refreshing and scrolling to obtain the pairings referenced in the request.

**RESPONSE**: Denied.

**REQUEST FOR ADMISSION NO. 89**: Admit that the following statement was made by person(s) with personal knowledge of how the Platform operates: "While we strive to prevent any ads from appearing adjacent to content excluded through Adjacency Controls settings, we cannot guarantee 100% effectiveness." *See* https://business.x.com/en/blog/adjacency-controls-thirdparty-measurement.html.

**OBJECTION:** X objects that the statement speaks for itself. X further objects that the URL provided is not a live link.

**RESPONSE:** Admitted.

6

**REQUEST FOR ADMISSION NO. 90**: Admit that X has publicly stated that "While we strive to prevent ads from appearing adjacent to content excluded through Adjacency Controls settings, we cannot guarantee 100% effectiveness." *See* https://business.x.com/en/blog/adjacency-controlsthird-party-measurement.html.

**OBJECTION**: X objects that the statement speaks for itself. X further objects that the URL provided is not a live link and is undated.

**RESPONSE**: Admitted.

# Tab 17

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

**X CORP.**,

Plaintiff,

vs.

Case No. 4:23-cv-01175-O

**MEDIA MATTERS FOR AMERICA**, et al.

Defendants.

## PLAINTIFF'S RESPONSES AND OBJECTIONS
## TO DEFENDANTS' THIRD SET OF REQUESTS FOR PRODUCTION

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiff X Corp. serves its Responses and Objections to Defendants' Third Set of Requests for Production on Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone, by and through their counsel of record.

Dated: August 26, 2024                          Respectfully submitted.

                                                */s/ Christopher D. Hilton*
                                                Judd E. Stone II
                                                Texas Bar No. 24076720
                                                Christopher D. Hilton
                                                Texas Bar No. 24087727
                                                Ari Cuenin
                                                Texas Bar No. 24078385
                                                Michael R. Abrams
                                                Texas Bar No. 24087072
                                                Alexander M. Dvorscak
                                                Texas Bar No. 24120461
                                                **STONE | HILTON PLLC**
                                                600 Congress Ave., Ste. 2350
                                                Austin, TX 78701
                                                Telephone: (737) 465-3897
                                                judd@stonehilton.com
                                                chris@stonehilton.com
                                                ari@stonehilton.com
                                                michael@stonehilton.com
                                                alex@stonehilton.com

                                                John C. Sullivan
                                                Texas Bar No. 24083920
                                                **S|L LAW PLLC**
                                                610 Uptown Boulevard, Suite 2000
                                                Cedar Hill, TX 75104
                                                Telephone: (469) 523-1351
                                                Facsimile: (469) 613-0891
                                                john.sullivan@the-sl-lawfirm.com

                                                ***Counsel for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that this document was served on counsel for Defendants via email on August 26, 2024, pursuant to counsel's agreement to accept service via electronic means.

                                                */s/ Alexander M. Dvorscak*
                                                Alexander M. Dvorscak

2

## PRELIMINARY STATEMENT

X will produce documents responsive to each of Defendants' requests on a rolling basis as if the request in question was rewritten to remove the objectionable portion of the request, in accordance with X's objections and responses. X will only produce documents in its possession, custody, and control that it is able to locate after a reasonable search. Per the agreement of counsel, X will not collect documents and communications from every current and former employee but rather will collect documents from all relevant custodians.

X will not produce any privileged documents, which will be withheld and logged, if required, in accordance with the Parties' agreements regarding privilege and the Federal Rules of Civil Procedure. Production of documents pursuant to these requests does not bear on the admissibility of any document, and X expressly reserves all related objections.

## RESPONSES AND OBJECTIONS

**REQUEST FOR PRODUCTION NO. 34:** All transcripts from any deposition in which Elon Musk has been deposed.

**OBJECTION:** X objects that this request constitutes a fishing expedition and is not proportionate to the needs of the case because (1) it requests transcripts from "any deposition" irrespective of when the deposition occurred and the subject matter of the deposition and (2) Musk's testimony in other litigation is not probative of, or relevant to, the claims and defenses in this litigation. This request is also irrelevant and improper because Musk is not a plaintiff and there is no allegation that he is X's alter ego.

**RESPONSE:** X has searched for any transcripts of depositions in which Musk has mentioned Defendants or the November 2023 Articles that are the subject of this suit. After conducting that search, X did not locate any such transcripts.

**REQUEST FOR PRODUCTION NO. 35:** All documents and communications related to the "internal investigations" and "internal review" conducted by X as described in Plaintiff's Amended Complaint, ECF No. 37, at ¶¶ 9, 46, 53.

**OBJECTIONS**: For avoidance of doubt, X reiterates its preliminary statement that it will not produce any privileged documents, which will be withheld and logged in accordance with the Parties' agreements regarding privilege and the Federal Rules of Civil Procedure.

**RESPONSE:** X will search for and produce non-privileged documents and communications responsive to this request.

**REQUEST FOR PRODUCTION NO. 36:** All documents and communications related to or supporting X's allegation that "99% of X's measured ad placement in 2023 appeared adjacent to content scoring above the Global Alliance for Responsible Media's brand safety floor" in Plaintiff's Amended Complaint, ECF No. 37, ¶ 4.

**OBJECTIONS**: None.

**RESPONSE:** X will search for and produce non-privileged documents and communications responsive to this request.

**REQUEST FOR PRODUCTION NO. 37:** All documents and communications showing Elon Musk's deleted posts on the X platform.

**OBJECTION:** X objects that this request is harassing. X also objects because the request has no temporal or subject-matter limitations and therefore constitutes an improper fishing expedition. Finally, X objects that this request does not seek information that is relevant to any of the claims

4

or defenses in this case and is therefore not proportional to the needs of the case. Musk's deleted posts have nothing to do with Defendants' manipulation and misrepresentation of X's social media platform. Indeed, the only remotely plausible reason that a deleted post would be relevant is if it were something that Defendants claim would have caused advertisers to leave the platform instead of the November articles. If that were the case, however, the post would have been publicly reported on, and regardless of any subsequent deletions, would still be publicly available (and memorialized through reporting). In the absence of contemporaneous reporting to that effect, which Defendants have not pointed out in this litigation, there is no basis to conclude that any of Musk's deleted posts had any bearing on advertiser behavior or decisions.

**RESPONSE:** X will search for and produce non-privileged documents responsive to the request up to the date of the November 16 Media Matters article at issue in this case.


**REQUEST FOR PRODUCTION NO. 38:** All documents and communications showing the number of impressions received by Elon Musk's November 15, 2023, reply to X user's "The Artist Formerly Known as Eric" (at username "@breakingbaht") post on the same day as reflected in the screenshot below. Available at https://perma.cc/Z9LW-E6UY.

**OBJECTIONS:** X objects that this request is confusingly written. It is unclear what "documents and communications" would show the number of impressions that the post at issue received apart from the information provided that any user can see on the post itself.

**RESPONSE:** X directs Defendants to the link Defendants provided, which reflects the number of impressions that the post at issue has received.

**REQUEST FOR PRODUCTION NO. 39**: All of X's "internal user data" described in Plaintiff's Amended Complaint, ECF No. 37, ¶ 50, that form the basis of X's allegations.

**OBJECTIONS:** X objects that the request is vague as the scope of user data requested is unclear. X will interpret the request as calling for the production of the user data used to inform the allegations in paragraph 50 of Plaintiff's Amended Complaint, ECF No. 37. X objects that this request is duplicative of Defendants' other requests for production, including Request No. 35.

**RESPONSE:** X directs Defendants to X's objections and response to Defendants' Request for Production No. 35.


**REQUEST FOR PRODUCTION NO. 40**: The preliminary findings issued on July 12, 2024 by the European Commission to X indicating that X is in breach of the Digital Services Act, as publicly reported in a July 12, 2024 press release by the European Commission, *available at* https://ec.europa.eu/commission/presscorner/detail/en/ip_24_3761.

**OBJECTIONS:** X objects that Defendants seek the production of findings issued by a third party. X further objects that the preliminary findings by a third party regarding an unrelated dispute are not relevant to establishing the accuracy of Defendants' articles or Defendants' interference with X's advertisers. X's compliance with the Digital Services Act, which is the subject of the press release, has no bearing on the claims or defenses in this litigation. As described by the press release itself, the European Commission findings address only (1) X's "verified accounts" functionality; (2) whether X has provided a "searchable and reliable advertisement repository" and not the advertisements themselves; and (3) researcher "access" to X data. X therefore objects that this request constitutes an impermissible fishing expedition. Finally, X objects that producing the requested documents would constitute a violation of the terms on which the European Commission

6

provided the preliminary findings, threaten the effective enforcement by the European Commission of the Digital Services Act, and be inconsistent with international comity principles.

**RESPONSE:** For the foregoing reasons, X will not search for or produce documents responsive to this request.

# **Tab 18**

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

|  |  |
|---|---|
| **X CORP.**, | |
| Plaintiff, | |
| vs. | Case No. 4:23-cv-01175-O |
| **MEDIA MATTERS FOR AMERICA**, et al. | |
| Defendants. | |

**PLAINTIFF'S AMENDED RESPONSES AND OBJECTIONS**
**TO DEFENDANTS' THIRD SET OF INTERROGATORIES**

Pursuant to Federal Rule of Civil Procedure 26(e) and 33, Plaintiff X Corp. hereby serves its Amended Objections and Responses to Defendants' Third Set of Interrogatories on Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone, by and through their counsel of record.

Dated: August 30, 2024

Respectfully submitted.

*/s/ Christopher D. Hilton*
Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
Ari Cuenin
Texas Bar No. 24078385
Michael R. Abrams
Texas Bar No. 24087072
Alexander M. Dvorscak
Texas Bar No. 24120461
**STONE | HILTON PLLC**
600 Congress Ave., Ste. 2350
Austin, TX 78701
Telephone: (737) 465-3897
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
michael@stonehilton.com
alex@stonehilton.com

John C. Sullivan
Texas Bar No. 24083920
**S|L LAW PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

***Counsel for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that this document was served on all counsel of record for Defendants via email on August 30, 2024, pursuant to counsel's agreement to accept service via electronic means.

*/s/ Alexander M. Dvorscak*
Alexander M. Dvorscak

App'x 408

## OBJECTIONS AND RESPONSES

**INTERROGATORY NO. 10:** Describe any modifications made to X's algorithm or advertisement policies from November 16, 2023 to the present.

**OBJECTIONS:** X objects that this request is unduly burdensome insofar as "modifications" to X's algorithms occur frequently. X's "algorithm" consists of thousands of separate but related projects and millions of lines of code, and typically undergoes hundreds of changes ("commits" of updated computer code) every month. X continuously works to improve the user experience on the platform, and as such, the "systems and processes" that "determine what content is presented to each X user," Defendants' Definitions ¶ 1, are always evolving. Listing every single such modification would sweep in changes unrelated to the issues in the lawsuit and would be disproportionate to the needs of the case. Finally, X objects that Interrogatory No. 10 contains two separate interrogatories labeled as one: an interrogatory regarding modifications made to X's algorithm and an interrogatory regarding changes to X's advertisement policies.

**RESPONSE:** X offers a range of brand safety tools to advertisers that have largely remained unchanged from November 16, 2023, to the present.  For example, as in November 2023, advertisers today can choose from a range of sensitivity settings and a list of keywords and profiles that their advertisements will not be displayed next to on X.  X, however, has made a few changes to how advertisements are displayed to users.  For example, in or around April 2024, X changed the protocol by which advertisements are displayed in the results to search queries.  Prior to April 2024, advertisements in search results were displayed on the basis of a denylist.  That means that if a word included in a search query was listed on the denylist, no advertisement would be displayed in the search results.  After April 2024, instead, advertisements in search results are displayed on the basis of an allowlist, which means that no advertisements will be displayed in

search results unless all terms in the search query are on the allowlist. In July 2024, X made a similar change for advertisements displayed on user profiles.  Whereas prior to July 2024, advertisements were not displayed on a user's profile if the user was on a denylist, now advertisements are only displayed if the user is on the allowlist.

With respect to advertisement policies, all modifications to those policies are publicly available at the following link:  https://business.x.com/en/help/ads-policies/ads-policy-update-log.html.

**INTERROGATORY NO. 11:** Describe the "internal investigations" and "internal review" referenced in Plaintiff's First Amended Complaint, ECF No. 37, at ¶¶ 9 ("internal investigations"), 46 ("internal review"), 53 ("internal review"), including how they were conducted, any individuals and X user accounts involved in conducting them, and any findings.

**OBJECTIONS:** X objects to the extent that this interrogatory calls for the description of documents or information protected by the attorney-client and/or work product privileges.

**RESPONSE:** X's engineering team conducted a review of the content described in the November 2023 articles. The employees involved in the investigation include the following:

- Siddharth Rao, Director, Advertising Engineering

- Ming Song, Staff Data Engineer

- Matthias Eck, Staff Machine Learning Engineer, Ad Review & Brand Safety Engineering

The team's review proceeded as follows: X engineers accessed internal digital logs that detail activity on the X platform. The logs contain detailed information of post and ad impressions from each user on X including the order of the posts and ads seen. Each post and ad is represented by an internal ID and X engineers identified the IDs of the ads and posts in the November 2023

Media Matters articles. X engineers checked the digital logs using the post and ad IDs to assess how many times the ads and posts screenshotted in the November 2023 articles appeared next to each other, and which users saw those placements.

X published the findings of its internal investigation, including into the users that saw the ad pairings, at the following link, https://blog.x.com/en_us/topics/company/2023/stand-with-x-to-protect-free-speech, which X will also produce in accordance with Federal Rule of Civil Procedure 33(d). The findings of X's investigation, as detailed in the publication, are as follows:

- To manipulate the public and advertisers, Media Matters created an alternate account and curated the posts and advertising appearing on the account's timeline to misinform advertisers about the placement of their posts. These contrived experiences could be applied to any platform.

- Once they curated their feed, they repeatedly refreshed their timelines to find a rare instance of ads serving next to the content they chose to follow. Our logs indicate that they forced a scenario resulting in **13 times** the number of ads served compared to the median ads served to an X user.

- Of the **5.5 billion ad impressions** on X that day, **less than 50 total ad impressions** were served against all of the organic content featured in the Media Matters article.

- For one brand showcased in the article, one of its ads ran adjacent to a post 2 times and that ad was seen in that setting by only two users, one of which was the author of the Media Matters article.

- For another brand showcased in the article, two of its ads served adjacent to 2 posts, 3 times, **and that ad was only seen in that setting by one user, the author of the Media Matters article.**

5

- *Media Matters*' article also highlights nine posts they believe should not be allowed on X. Upon evaluation, only one of the nine organic posts featured in the article violated our content policies, and we've taken action on it under our <u>Freedom of Speech, Not Reach</u> enforcement approach.

Docusign Envelope ID: 8AB7844A-0953-4739-953A-704BA1120C13

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| **X CORP.**, a Nevada corporation,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>**MEDIA MATTERS FOR AMERICA**, a Washington, D.C. non-profit corporation, **ERIC HANANOKI**, and **ANGELO CARUSONE**,<br><br>　　　　Defendants. | Case No. **4:23-cv-01175-O** |

## VERIFICATION OF AMENDED INTERROGATORY ANSWERS

I declare under penalty of perjury that the foregoing answers to Defendants' Third Set of Interrogatories on behalf of X Corp. are true and correct to the best of my knowledge, information, belief, or recollection.


Executed: _____, 2024.

Signed by:

*Siddharth Rao*

181C3A0D0B4C4F2...

Siddharth Rao
Director, Engineering
X Corp.

# Tab 19

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

|  |  |
|---|---|
| **X CORP.**, Plaintiff, <br><br> vs. <br><br> **MEDIA MATTERS FOR AMERICA**, et al. Defendants. | Case No. 4:23-cv-01175-O |

## PLAINTIFF'S INITIAL DISCLOSURES

Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A), Plaintiff X. Corp. hereby serves these initial disclosures. Plaintiff X Corp. reserves the right to supplement and amend these disclosures as discovery progresses and additional information is gathered by X Corp.

**(i) the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;**

1.  Angelo Carusone
    c/o opposing counsel

    Carusone has discoverable information regarding Defendants' attempts to disparage and tortiously interfere with Plaintiff's business, including his own statements, as well as knowledge regarding Media Matters' reporting practices.

2.  Eric Hananoki
    c/o opposing counsel

    Hananoki has discoverable information regarding Defendants' attempts to disparage and tortiously interfere with Plaintiff's business, including his own statements and reporting, as well as knowledge of the sources and methods used in creating the false and disparaging articles at issue in this case.

1

3.      Pilar Martinez
        c/o Media Matters

        Martinez has information regarding the financial state of Media Matters, including
        its donors, sources of revenue, expenditures, tax filings, and all finance and
        accounting operations.

4.      Cynthia Padera
        c/o Media Matters

        Padera has information regarding the day-to-day operations and enterprise-level
        initiatives, technology, and administration of Media Matters.

5.      Julie Millican
        c/o Media Matters

        Millican has information regarding the strategic initiatives and day-to-day mission
        activities of Media Matters, including media intelligence, research, and programs.

6.      Sergio Munoz
        c/o Media Matters

        Munoz has information regarding the Research Department and various other
        aspects of Media Matters' enterprise.

7.      Jason Campbell
        c/o Media Matters

        Campbell has discoverable information regarding communications sent to Media
        Matters supporters and donors.

8.      Elizabeth Palumbo
        c/o Stone | Hilton

        Palumbo has discoverable information regarding the harm to Plaintiff's business
        and advertising revenue caused by Defendants' unlawful conduct.

9.      Siddharth Rao
        c/o Stone | Hilton

        Rao has discoverable information regarding content moderation and the brand
        safety tools available to advertisers on the platform and Defendants' manipulation
        of the platform to create its false reporting.

10.     Any individuals identified by Defendants in their initial disclosures.

11.    Any timely disclosed experts.

12.    Any person whose identity becomes known during the course of discovery and appears to have information relevant to Plaintiff's claims or Defendants' defenses.

This list of individuals will be updated as discovery progresses and additional information is gathered by X Corp.

**(ii) a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;**

X Corp. has within its possession, custody, or control the following categories of documents that it may use to support its claims:

- Emails, communications, and X posts regarding Defendants' false reporting.

- Rules, policies, and procedures regarding content moderation.

- Rules, policies, procedures, and communications regarding brand safety for advertisers.

- Emails, communications, and contracts related to advertisers' contractual and commercial relationships with X Corp.

- Financial and other corporate records demonstrating the damage caused through lost advertising revenue and other damage to X Corp. caused by Defendants' false reporting.

These categories of documents will be updated as discovery progresses and additional information is gathered by X Corp.

**(iii) a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other**

3

**evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and**

The damage caused by Defendants to Plaintiff X Corp.'s relationships with its advertisers, relationships with its users, brand equity, and commercial prospects is significant and difficult to calculate. Moreover, because of Defendants' unlawful conduct, X Corp. will be harmed into the future for an uncertain period of time and to a significant degree. Accordingly, the full extent of the damage caused by Defendants is not yet known or knowable.

Subject to the foregoing, Plaintiff estimates that it has suffered and will seek the following damages:

- Actual and consequential damages: $45,000,000

- Punitive damages: $58,115,544

- Costs: amount to be determined and submitted to the Court when ordered

- Attorneys' fees: amount to be determined and submitted to the Court when ordered

These estimated computations of damages will be updated as discovery progresses and additional information is gathered by X Corp.

**(iv) for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.**

Not applicable.

4

Respectfully submitted.

*/s/ Christopher D. Hilton*
Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
Ari Cuenin
Texas Bar No. 24078385
**STONE | HILTON PLLC**
1115 W. Slaughter Lane
Austin, TX 78748
Telephone: (737) 465-3897
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com

John C. Sullivan
Texas Bar No. 24083920
**S|L LAW PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that this document was served on counsel for Defendants via email on March 8, 2024, pursuant to counsel's agreement to accept service via electronic means.

*/s/ Christopher D. Hilton*
Christopher D. Hilton

5

# Tab 20

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| X CORP., | |
| *Plaintiff,* | |
| v. | Civil Action No. 4:23-cv-01175-O |
| MEDIA MATTERS FOR AMERICA, | |
| et al., | |
| *Defendants.* | |

## DEFENDANTS' INITIAL DISCLOSURES PURSUANT TO FED. R. CIV. P. 26(a)(1)

1

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, Defendants Media Matters for America, Mr. Eric Hananoki, and Mr. Angelo Carusone hereby submit their initial disclosures. These initial disclosures are based on information reasonably available to Defendants at this time and are made without waiving any objections as to relevance, materiality, or admissibility of evidence in the action. Defendants reserve the right to revise, correct, supplement, or clarify the disclosures at any time, consistent with Rule 26(e) of the Federal Rules of Civil Procedure.

## I.       Individuals likely to have discoverable information.

Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(i), the below individuals are likely to have discoverable information that Defendants may use to support their claims and defenses in this action:

1.      The individuals listed below may have discoverable information regarding the claims at issue in this matter, including, but not limited to, the widespread reporting of extremist content on the X platform, the process by which Media Matters and its journalists research, draft, and fact check news stories, and Media Matters's operations. These individuals should only be contacted through undersigned counsel.

    a)     Eric Hananoki, Senior Investigative Reporter at Media Matters for America.

    b)     Cynthia Padera, Chief Operating Officer at Media Matters for America.

    c)     Ben Dimiero, Editor in Chief at Media Matters for America.

    d)     Angelo Carusone, President and CEO at Media Matters for America.

2.      Defendants anticipate that present and former employees, agents, and associates of Plaintiff, including but not limited to those listed below, may have discoverable information regarding the claims at issue in this matter, including, but not limited to, content moderation on the X platform, the prevalence of extremist content on X, data on X's advertisers, and data on X's users and viewership.

    a)     Elon Musk, owner, Chairman, and Chief Technology Officer at X Corp.

    b)     Linda Yaccarino, Chief Executive Officer at X Corp.

    c)     Brett Weitz, Head of Content, Talent and Brand Sales at X.

    d)     Joe Benarroch, Head of Business Operations at X.

    e)     Robert Hayes, Lead for Revenue Operations at X.

    f)     Monique Pintarelli, Head of the Americas at X.

    g)     Matthew Madrazo, Lead Client Partner at X.

h)      Jonathan Phelps, Lead Client Partner at X.

i)      A.J. Brown, former head of Brand Safety and Ad Quality at X, current Chief Operating Officer at Brand Safety Institute.

j)      Ella Irwin, former Vice President of Product for Trust and Safety at X, current Senior Vice President of Integrity at Stability AI.

k)      Chris Riedy, former Vice President of Global Sales and Marketing at X.

## II.     Documents relevant to the claims at issue in this matter.

Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(ii) and based on information reasonably available to them at this time, Defendants submit the below description of documents, electronically stored information, or tangible things in their possession, custody, or control that they may use to support their claims or defenses, by category. These disclosures do not constitute an admission as to the existence, relevance, or admissibility of the identified materials or a waiver of any First Amendment privilege, reporter's privilege, attorney-client privilege, work-product protection, or any other applicable privilege or immunity. The disclosures reflect only the current status of Defendants' investigations and discovery. Defendants expressly reserve their right to use documents, electronically stored information, or tangible things not referred to herein.

1.      Documents related to the research, drafting, and publishing of the November 16, 2023, article at issue in this litigation.

2.      Documents showing the jurisdictions in which Defendants conduct business and/or reside.

3.      Publicly available news reports and coverage on Elon Musk, including his takeover of Twitter, content moderation on X, and the increase in extremist content on the platform.

4.      Publicly available posts on the X platform from current and former X employees and partners regarding Defendants and other news sources and journalists.

5.      Court filings and orders in related or relevant litigations or investigations, including but not limited to exhibits presented in Media Matters' litigation against Ken Paxton in Washington, DC.

## III.    Computation of damages pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iii).

Defendants are not seeking any damages in this action; however, they reserve the right to assert counterclaims and/or seek damages as the facts of the case develop and the case proceeds. Defendants do seek costs, disbursements, and reasonable attorneys' fees incurred as part of this litigation, and any other relief the Court deems proper. As appropriate and necessary, Defendants will present evidence of their costs, disbursements, and attorneys' fees expended as part of this action.

IV.     **Insurance agreements pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iv).**

Defendants disclose the following insurance agreement under which the insurer may be liable to satisfy part or all of the judgment, if entered, in this action:

Insurer: AIG Specialty Insurance Company
Policy No: 021469579
Claim No: 8205933124US

**GIBSON, DUNN & CRUTCHER LLP**
Andrew LeGrand (TX 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.** (CA 132099)
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed** (NY 4382040)
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

**ELIAS LAW GROUP LLP**
Abha Khanna* (WA 42612)
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Jacob D. Shelly* (DC 90010127)
Daniela Lorenzo* (NY 5780457)
250 Massachusetts Ave, NW Suite 400
Washington, D.C. 20001
T: (202) 968-4490
F: (202) 986-4498
jshelly@elias.law
dlorenzo@elias.law

* Admitted *pro hac vice*
** *Pro hac vice* application forthcoming

*Counsel for Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone*

## CERTIFICATE OF SERVICE

On March 8, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Andrew LeGrand*

Andrew LeGrand

5

# Tab 21



**1700 Seventh Ave, Suite 2100 | Seattle, WA 98101**

August 16, 2024

**VIA ELECTRONIC MAIL**

Christopher D. Hilton
Stone | Hilton
P.O. Box 150112
Austin, TX 78715
(737) 465-3897

**RE: Defendants' Deficiency Letter to Plaintiff in *X Corp. v. Media Matters for America, et al.*, Case No. 4:23-cv-01175 (N.D. Tex).**

Counsel,

Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone have received Plaintiff X's objections and responses to Defendants' first and second sets of discovery requests, as well as X's first and second document productions.[1] We write to express concerns regarding X's compliance with general discovery obligations and to identify deficiencies in X's objections and responses that must be promptly remedied. Defendants request a written response to these issues by **August 21**.

At the outset, X's pace of document productions has been unacceptable. While Defendants committed to making regular, recurring productions approximately every two weeks—a commitment they have adhered to since May—X has not provided documents on a similar schedule. Defendants request that X comply with the same recurring production timeline as Defendants and commit to producing documents approximately every two weeks. If X declines to match this production rate, it should alert Defendants immediately. Discovery expectations in this case must be mutual.

Additionally, Defendants have thus far identified over 100 discovery responses from X that contain inappropriate objections or otherwise inadequate explanation. This letter first reviews deficiencies that recur throughout X's responses, and then it addresses additional problems that are specific to individual requests.

---

[1] X's productions have included only the minimum metadata and coding fields required by the parties' ESI protocol. *See* ECF No. 67. Defendants request that X confirm whether it is also able to provide the metadata and coding fields in the ESI protocol at Appendix I.

1



## I.      RECURRING DISCOVERY DEFICIENCIES

### A.      Inappropriate demand for custodians

First, X continues to object to RFPs on the basis that requests are "not limited to specific individuals who have relevant knowledge." *See* X's Am. R&O to Defs.' First RFP Nos. 1, 2, 6, 7, 8, 9, 10, 11, 14, 17, 18, 22, 23, 24, 25, 27; Pl.'s R&O to Defs.' Second RFP No. 33. As you are well aware, it is your responsibility to identify the relevant custodians for each request. *See, e.g.*, *Beganovic v. Tyson Fresh Meats, Inc.*, No. 22-CV-2052-LTS-KEM, 2023 WL 9503379, at *2 (N.D. Iowa May 12, 2023) ("A party may not decline to produce ESI simply because . . . custodians were not identified."); *United States ex rel. Liebman v. Methodist Le Bonheur Healthcare*, No. 3:17-CV-00902, 2023 WL 3400486, at *5 (M.D. Tenn. May 10, 2023) (recognizing "it is typically the responding party who first identifies custodians"); *NuVasive, Inc. v. Alphatec Holdings, Inc.*, No. 18-CV-0347-CAB-MDD, 2019 WL 4934477, at *2 (S.D. Cal. Oct. 7, 2019) (recognizing "nothing in Rule 34 requires a requesting party to identify custodians").

Relatedly, you agreed during our May 27 meet-and-confer to a mutual exchange of custodians. At X's demand, Defendants identified their own primary custodians over four months ago, yet you continue to indefinitely postpone any reciprocal disclosure. And after having demanded that Defendants disclose the search terms they are using to identify responsive documents, *see* Br. in Supp. of Mot. to Compel at 11, ECF No. 60, X has stonewalled on the parties' agreement to make a mutual exchange. In the interest of each side having full transparency, we propose exchanging full custodian lists and search terms by **August 21**.

### B.      Inappropriate withholding based on "trade secrets"

Second, you object to several RFPs on the basis that requested documents contain "trade secrets." *See* X's Am. R&O to Defs.' First RFP Nos. 1, 3, 4, 14, 27. These objections are inappropriate because "the mere status of information as confidential, proprietary, or a trade secret does not entitle [] withhold[ing] it from discovery." *Wolt v. Embankscape Equip., LLC*, No. 4:22-CV-2503, 2024 WL 1096563, at *2 (S.D. Tex. Mar. 13, 2024). Rather, "[c]oncerns regarding confidential, proprietary or trade secret information may readily be addressed through issuance of a protective order." *Childers v. Rent-A-Car E., Inc.*, No. 21-960, 2024 WL 1050501, at *7 (E.D. La. Mar. 11, 2024) (overruling objections to production). Here, the parties have already negotiated an agreement that addresses the handling of trade secrets. To the extent X seeks further protocols for the handling of its algorithms or source code, then it must identify its proposal. With or without additional protocols, however, there is no basis to object to discovery requests on the mere basis that they may constitute trade secrets.

Defendants accordingly request that X promptly amend its amended responses and objections to these discovery requests, produce all non-privileged materials in accordance with the



**ELIAS LAW GROUP**

1700 Seventh Ave, Suite 2100 | Seattle, WA 98101

parties' Protective Order, and clarify what, if any, additional protocols X seeks to put in place before producing its algorithms or source code.

### C.    Inappropriate relevancy objections regarding Elon Musk

Third, you refuse to produce documents or answer questions related to Elon Musk based on the fact that Musk is "not a plaintiff" in this litigation. *See* X's Am. R&O to Defs.' First RFP Nos. 12, 26, 29; Pl.'s R&O to Defs.' First RFA Nos. 4, 8; Pl.'s R&O to Defs.' First Interrogatory No. 6. Of course, Musk need not be a party to possess relevant information. Indeed, X conceded the point when it incorporated by reference Defendants' identification of Musk as an individual likely to have discoverable information. *See* Mar. 8, 2024, Defs.' Initial Disclosures (identifying Musk)[2]; Mar. 8, 2024, Pl.'s Initial Disclosures at 2 (identifying as individuals likely to have discoverable information "[a]ny individuals identified by Defendants in their initial disclosures").

Moreover, Musk is indisputably relevant to this lawsuit. As X Corp.'s CTO, owner, and chairman, Musk is responsible for X's policies, operations, and strategy. X references Musk extensively in its amended complaint, *see, e.g.*, ECF No. 37 ¶¶ 1, 4, 6, 17, 27, 30, 31, 32, 33, 34, 36, 37, including as its purported hook for jurisdiction, *see id.* ¶ 27 (alleging "Musk has been a resident of Texas throughout the relevant period . . . ; many of Musk's decisions regarding X Corp. took place while Musk was physically within Texas; [and] many of Musk's personal and professional relationships are with other individuals also in Texas"). Musk also features prominently in X's own discovery requests, in X's briefing on its motion to compel, *see* ECF No. 64 at 9, and in the Court's discovery order identifying "X Corp., **Elon Musk**, [and] the November 2023 articles" as relevant topics of discovery, *see* ECF No. 65 at 2 (emphasis added).

Musk's ownership of X and the well-documented impact he has had on that social media platform are also central to Defendants' defenses in this case. Musk chose to endorse the antisemitic conspiracy theory that Jewish people are supporting "hordes of minorities" who are "flooding" into the country to replace white people, as Defendants reported in the November 16 Article.[3] And it was Musk who announced that X would be filing "a thermonuclear lawsuit against Media Matters" in response to that reporting. *See* @elonmusk, X.com (Nov. 18, 2023, 2:01 AM ET), https://perma.cc/X4HN-PLJ4.

---

[2] Defendants later amended their initial disclosures on May 8, 2024, and continued to include Musk as an individual likely to have discoverable information.

[3] Eric Hananoki, *As Musk endorses antisemitic conspiracy theory, X has been placing ads for Apple, Bravo, IBM, Oracle, and Xfinity next to pro-Nazi content*, MEDIA MATTERS FOR AMERICA (Nov. 16, 2023), https://www.mediamatters.org/twitter/musk-endorses-antisemitic-conspiracy-theory-x-has-been-placing-ads-apple-bravo-ibm-oracle (hereinafter "November 16 Article).

3



Musk has repeatedly held himself out as an authority and key decision-maker on advertising and brand safety at X. After acquiring the Platform, Musk asserted that there would be overarching changes to advertising at the company,[4] and he unilaterally announced major changes to the Platform's content moderation practices. For example, he eliminated user verification tools on the Platform, *see* @elonmusk, X.com (Apr. 11, 2023, 2:55 PM ET), https://perma.cc/AJ2Z-T6BD, and reinstated previously suspended accounts of known far-right conspiracy theorists and extremists—about which he stated that "this will be bad for X financially, but principles matter more than money[,]" and "[t]his will probably cause us to lose a lot of advertisers and makes me sad, but a principle is a principle." *See* @elonmusk, X.com (Dec. 9, 2023, 12:13 PM ET), https://perma.cc/VY4W-J3YN; @elonmusk, X.com (May 2, 2024, 2:05 PM ET), https://perma.cc/7KS5-AYLW. Musk has also made public statements at odds with the amended complaint's theory of causality, such as acknowledging the ramifications of his own choices on X's declining revenue, *see* @elonmusk, X.com (May 12, 2023, 3:31 PM ET), https://perma.cc/EUR3-4GV3 (publicly stating that he is "adamant about defending free speech, even if it means losing money"), and by attributing blame for X's financial difficulties a variety of different entities, including the Anti-Defamation League, *see* @elonmusk, X.com (Sept. 4, 2023, 1:45 PM ET), https://perma.cc/5APX-JGLZ. Indeed, in an expletive-laden invective, Musk publicly expressed disdain for advertisers leaving the Platform, telling them (among other things) "Don't advertise."[5] As reflected in these few examples, Musk has indisputably made himself a crucial part of X's advertiser relations and content moderation on the Platform. He may not now choose to excuse himself from discovery in this litigation about those very issues.

### D.  Inappropriate denials "as written"

Fourth, X denies many RFAs "as worded" or "as written." *See* Pl.'s R&Os to Defs.' First RFA Nos. 1, 2, 4; Pl.'s R&O to Defs.' Second RFA Nos. 2, 3, 4, 5, 6, 9–73 (subpart "A"). This, too, is inappropriate. *See XL Specialty Ins. Co. v. Bollinger Shipyards, Inc*., No. 12-2071, 2014 WL 295053, at *4–5 (E.D. La. Jan. 27, 2014) ("Partial denials 'as written' render the responses vague and evasive."). X "must provide new responses that either flatly deny the portion of the request that it does not admit, or that state in detail why it cannot truthfully admit or deny the remainder, or must in good faith qualify its denials of the rest." *Id.* at *4; *see also Adelman v. Dallas Area Rapid Transit*, No. 3:16-CV-2579-B, 2017 WL 11552662, at *2 (N.D. Tex. Oct. 5, 2017)

---

[4] *See* Shirin Ghaffary, *Why advertisers aren't coming back to Twitter, Elon Musk is still the problem.*, Vox (Mar. 24, 2023, 11:05 AM), https://www.vox.com/technology/2023/3/23/23651151/twitter-advertisers-elon-musk-brands-revenue-fleeing.

[5] *See* Jacob Kastrenakes and Mia Sato, *Elon Musk tells advertisers: 'Go f*** yourself' / But he warns that advertisers could kill the company if the ad boycott continues.*, The Verge (Nov. 29, 2023, 7:46 PM), https://www.theverge.com/2023/11/29/23981928/elon-musk-ad-boycott-go-fuck-yourself-destroy-x.



("[D]enials to requests for admission should not be made vague and evasive by the addition of qualifying language."); *Adams Offshore Ltd. v. OSA Int'l, LLC*, No. H-09-0465, 2011 WL 4625371, at *11 n.11 (S.D. Tex. Sept. 30, 2011) ("Rule 36 requires that denials be stated with specificity and 'fairly respond to the substance of the matter[.]'").

### E.    Inappropriate vagueness objections

Fifth, X objects to some discovery requests as "vague." *See* X's Am. R&O to Defs.' First RFP Nos. 10, 15, 16; Pl.'s R&O to Defs.' First RFA Nos. 2, 4, 7; Pl.'s R&Os to Defs.' Second RFA Nos. 1, 5, 6, 9–73 (subparts "A" and "B"); Pl.'s R&O to Defs.' First Interrogatory No. 2; Pl.'s R&O to Defs.' Second Interrogatory Nos. 8, 9. These evasions ignore Defendants' explicit instructions. *See* Defs.' RFP Instruction No. 3 ("If, in responding to these Requests for Production, you encounter any ambiguities when construing a Request or definition, set forth the matter deemed ambiguous and the construction used in responding. Where you, in good faith, doubt the meaning or intended scope of a Request, and the sole objection would be to its vagueness, overbreadth, or ambiguity, please contact Defendants' counsel for clarification in advance of asserting an objection."); Defs.' RFA Definitions Preamble ("Any terms not defined shall be given their ordinary meaning."); Defs' ROG Instruction No. 2 ("Where you, in good faith, doubt the meaning or intended scope of an interrogatory, before objecting to the interrogatory based on its vagueness, overbreadth, or ambiguity, contact Defendants' counsel in advance of asserting an objection. Defendants' counsel will provide whatever additional clarification or explanation may be needed. If you still believe the interrogatory to be vague, overbroad, or ambiguous, set forth in your response what you find to be vague, overbroad, or ambiguous and the construction you used in responding.").

Defendants provide clarification on purportedly "vague" terms in response to specific discovery requests below. Going forward, if X considers any term vague, X should be mindful of its obligation to make "an effort to attribute ordinary definitions to the terms and phrases utilized, to include any reasonable definition of the term or phrase at issue to clarify [its] answers," or to seek "clarification prior to objecting." *Keycorp v. Holland*, No. 3:16-CV-1948-D, 2016 WL 6277813, at *13 (N.D. Tex. Oct. 26, 2016); *see also Heller v. City of Dallas*, 303 F.R.D. 466, 491 (N.D. Tex. 2014) (citing *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 694 (D. Kan. 2000)) (a party responding to discovery "should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized[.] If necessary to clarify its answers, the responding party may include any reasonable definition of the term or phrase at issue.") (internal quotation marks and citations omitted)).

### F.    Inadequate document identification

Sixth, X responds to several interrogatories by vaguely referencing future, unspecified document productions. *See* Pl.'s R&O to Defs.' First Interrogatory Nos. 2, 5; Pl.'s R&O to Defs.' Second Interrogatory No. 7. When relying on Rule 33(d) in an interrogatory answer, "an answering

5



party must specify the information that the requesting party should review in sufficient detail to enable the requesting party to locate and identify the information in the documents at least as readily as an answering party could." *Le v. Lockheed Martin Corp.*, No. 4:24-CV-00031-O, 2024 WL 832374, at *1 (N.D. Tex. Feb. 6, 2024), *aff'd*, No. 4:24-CV-00031-O, 2024 WL 832389 (N.D. Tex. Feb. 27, 2024) (citing *VeroBlue Farms USA Inc. v. Wulf*, 345 F.R.D. 406, 439 (N.D. Tex. 2021) (cleaned up) (quoting *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 579 (N.D. Tex. 2018))). X's responses do not specify any information that Defendants should review to identify answers to the relevant interrogatories.

### G.    Contradictory statements about X's capabilities

Finally, X's responses to many Requests for Admission claim an inability to admit or deny assertions about content pairings on its Platform that X has expressed little trouble ascertaining in other contexts, including in its amended complaint. *See* Pl.'s R&O to Defs.' First RFA No. 5; Pl.'s R&O to Defs.' Second RFA No. 9–73 (subpart "B"). For example, the amended complaint alleges that "IBM's, Comcast's, and Oracle's paid posts appeared alongside the fringe content cited by Media Matters for only one viewer," and two viewers saw Apple's advertising "appear alongside the fringe content cited in the article." ECF No. 37 ¶ 15. These allegations strongly suggest that X is capable of identifying not only the presence of content pairings (as the RFAs request), but the number of times that each pairing is viewed by all users. *See also* X Safety, "Stand with X to protect free speech" (Nov. 18, 2023), https://blog.x.com/en_us/topics/company/2023/stand-with-x-to-protect-free-speech (X further reporting that "the organic content featured in the Media Matters article" received 50 ad impressions in one day). Yet X now objects that "the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot[.]" Pl.'s R&O to Defs.' First RFA No. 5; Pl.'s R&O to Defs.' Second RFA No. 9–73 (subpart "B"). That response is irreconcilable with X's own allegations and related statements.

Based on the foregoing, Defendants request that X promptly amend its responses and objections to correct these deficiencies.

## II.    ADDITIONAL DISCOVERY DEFICIENCIES

In reviewing X's responses and objections to Defendants' discovery requests, Defendants have identified several additional deficiencies and issues requiring clarification. For the avoidance of doubt, Defendants do not waive any concerns not mentioned below regarding X's responses and objections to Defendants' first and second set of discovery requests. Defendants reserve the right to seek additional clarification or confer as needed with X regarding these responses and objections once X has addressed the deficiencies identified in this letter.



**1700 Seventh Ave, Suite 2100 | Seattle, WA 98101**

**A.      Defendants' First Set of Discovery Requests**

**1.      Requests for Production**

**a)      Request for Production No. 1**

This Request seeks information related to X's algorithm, which X put squarely at issue in this case. *See, e.g.*, Am. Compl., ECF No. 37 ¶¶ 8 (alleging Media Matters "deliberately misused the X platform to induce the algorithm to pair racist content with popular advertisers' brands"), 15 (alleging Media Matters conducted a "manipulation of X's algorithms"). Your objection that "X has myriad, complex algorithms for thousands of unique purposes and functions that bear no relationship to the claims or defenses in this matter" ignores Defendants' instructions, which explicitly define "algorithm" to refer to that term as used in X's amended complaint.

Moreover, your objection that the Request "calls for the production of highly sensitive and confidential information" is at odds with Musk's own representations. Musk has publicly stated that X would be "open sourcing" its "algorithm" because the public "should be able to recreate the probability of a tweet being recommended," and "complete transparency" is "the only path to trust."[6] It is contradictory now, to say the least, for X to assert that these same and similar materials cannot be disclosed in response to discovery requests in litigation.

X's objections to this Request are further inappropriate for the reasons identified in Parts I.A. and B. of this letter. Based on the foregoing, Defendants request that X promptly amend its amended response and objections to this Request.

**b)      Request for Production No. 2**

X's objections to this Request are inappropriate for reasons identified in Part I.A. of this letter. Based on the foregoing, Defendants request that X promptly amend its objections to this Request.

**c)      Request for Production Nos. 3 & 4**

These Requests seeks documents describing the policies and practices X uses to identify "Disputed Content" on the platform, including content moderation policies.[7] Accordingly, X

---

[6] *Linda Yaccarino interviews Elon Musk – April 18, 2023*, YouTube, at 10:53-11:33 (Apr. 21, 2023), https://www.youtube.com/watch?v=ypZNWjPpOuI.

[7] Defendants define Disputed Content in their discovery requests as: "'extreme' and 'fringe' content, as those terms are used in the amended complaint, *see* ECF No. 37 ¶ 9, [which] includes but is not limited to content expressing skepticism about the Holocaust, content expressing



should search for and produce non-privileged documents and communications that demonstrate if, how, and why X's content moderation policies have evolved since Musk's takeover, without—as your limitation proposes—requiring an explicit reference to the November 16 Article, November 17 Article, and/or Disputed Content referenced therein. Information regarding X's content moderation policies and practices, including how and why those policies and practices have changed since Musk acquired the company and/or in response to Defendants' reporting—is directly relevant to Defendants' defenses against X's allegations of falsity and actual malice. *See S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) (requests for discovery are considered relevant if there is "'any possibility' that the information sought may be relevant to the claim or defense of any party"). Where X has alleged in its amended complaint that Defendants' reporting about X's content moderation deficiencies is false, *see, e.g.*, ECF No. 37 ¶¶ 7-8, 12, 16, Defendants are wholly within their rights to test that allegation through discovery.

As to X's objection that Request Nos. 3 and 4 are disproportionate and unduly burdensome because they potentially encompass documents from all X employees and millions of users, X is responsible in the first instance for identifying (and disclosing) custodians who are likely to possess responsive documents. *See supra* Part I.A. In particular, communications between and among the appropriate custodians at X should be easy to identify. For the avoidance of doubt, where X sent an identical, responsive document or communication to all employees or to all X users, it need only produce those copies of the document or communication that are in the possession of the appropriate custodians.

X's objections to these Requests are further inappropriate for reasons identified in Parts I.A. and B. of this letter. Based on the foregoing, Defendants request that X promptly amend its amended responses and objections to these Requests.

### d)      Request for Production No. 5

This Request seeks documents and communications reflecting or referring to "Disputed Content" on the Platform. X responds that it will produce only the Disputed Content "that is specifically referenced" in the Articles. This limitation is inappropriate. X appears to misunderstand this Request to demand that X review and produce all potentially Disputed Content appearing on the Platform during the relevant time-period—not so. As relevant to Defendants' defenses in this case, the Request seeks documents tending to show X's awareness of and internal communications about the existence and increase of Disputed Content on its Platform. Accordingly, X should search for and produce non-privileged documents and communications

---

negative views or attitudes regarding Jewish people, Muslim people, Black people, Hispanic or Latino people, women, members of the LGBTQIA+ community, immigrants, non-English speakers, Asian people, or indigenous peoples, and content expressing positive views or attitudes regarding Adolf Hitler, white nationalism, or white supremacism."



about Disputed Content on the Platform—*whether or not* the Disputed Content was specifically referenced in the November 16 and/or November 17 Articles.

As with Request Nos. 3 and 4, communications between and among the appropriate custodians at X in response to Request No. 5 should be easy to identify. For the avoidance of doubt, where X sent an identical, responsive document or communication to all employees or to all X users, it need only produce those copies of the document or communication that are in the possession of the appropriate custodians.

X's objections to this Request are further inappropriate for reasons identified in Part I.A. of this letter. Based on the foregoing, Defendants request that X promptly amend its amended response and objections to this Request.

### e)      Request for Production No. 6

This Request seeks documents and communications showing evidence of existing or prospective business relationships between X and any of the advertisers referenced in the amended complaint or identified in response to Interrogatories 1 and 4 in Defendants' First Set of Interrogatories. X has since clarified that the advertisers listed in its response to Interrogatory No. 4 are the only "advertisers that are relevant to X's causes of action[,]" Pl.'s Response to Defs.' First Interrogatory No. 1. Based on that representation, Defendants agree to narrow this Request to the advertisers X identified in response to Interrogatory No. 4.

X's objections to this Request are inappropriate for reasons identified in Part I.A. of this letter. Based on the foregoing, Defendants request that X promptly amend its amended response and objections to this Request.

### f)      Request for Production No. 7

This Request seeks documents and communications with past, present, or potential advertisers regarding their decision whether or not to advertise on X's platform. You responded that X will only produce documents and communications between X and advertisers listed in response to Interrogatories 1 and 4, which X has stated are the only "advertisers that are relevant to X's causes of action[,]" *see* X's Response to Defs' First Interrogatory No. 1. Defendants, however, maintain that communications with other advertisers regarding brand safety on the platform are relevant both to the viability of Plaintiffs' claims (including causation) and to Defendants' defenses. Accordingly, Defendants are agreeable to limiting this Request as follows:

> X shall produce all communications with advertisers listed in response to Interrogatories 1 and 4. X shall further produce all communications with past, present, or potential advertisers regarding any decision to terminate, pause, or



1700 Seventh Ave, Suite 2100 | Seattle, WA 98101

decline advertising on X where those communications reference issues regarding brand safety, Disputed Content, or content moderation on the Platform.

X's objections to this Request are further inappropriate for reasons identified in Part I.A. of this letter. Based on the foregoing, Defendants request that X promptly amend its amended response and objections to this Request.

### g)      Request for Production No. 8

X's objections to this Request are inappropriate for reasons identified in Part I.A. of this letter. Based on the foregoing, Defendants request that X promptly amend its objections to this Request.

### h)      Request for Production No. 9

This Request seeks documents or communications showing X's business revenue generated from advertisements on its platform. You objected to this Request on the basis of relevance, asserting that X's damages can be ascertained based on financial records for advertisers listed in X's response to Interrogatory 4. This objection incorrectly assumes the purpose of this Request and misunderstands relevance, which is "broadly construed." *See Brady*, 238 F.R.D. at 437. Defendants are entitled to financial records showing X's total advertising revenue to ascertain whether any decrease in spend by the advertisers listed in X's response to Interrogatory 4 reflected trends unrelated to MMFA's reporting. Further, X's internal communications about advertising-related business revenue—including any discussions about reasons for any fluctuation in revenue—may reveal whether X's internal analyses of fluctuations in advertising revenue are consistent with the allegations in X's amended complaint. Accordingly, X should search for and produce documents reflecting or discussing aggregate advertising revenue in addition to documents and communications related to the advertisers in Interrogatory 4.

Your objection that Defendants should seek information about damages through an Interrogatory is inappropriate under the Federal Rules of Civil Procedure. Once discovery begins, "[u]nless, on motion, the court orders otherwise," the "methods of discovery may be used in any sequence." *Heller v. City of Dallas*, 303 F.R.D. 466, 493 (N.D. Tex. 2014) (citing Fed. R. Civ. P. 26(d)(1)-(2)). Moreover, Defendants have issued an interrogatory specifically asking for an explanation regarding the damages that X has purported to calculate, and X has inappropriately objected to that interrogatory. *See* Pl.'s R&O to Defs.' Second Interrogatory No. 7, *infra*. Even if X were to answer that interrogatory, Defendants are entitled to verify X's representations by reviewing the corresponding documentation.

X's objections to this Request are further inappropriate for reasons identified in Part I.A. of this letter. Based on the foregoing, Defendants request that X promptly amend its amended response and objections to this Request.

10



### i)      Request for Production Nos. 10 & 11

X's objections to these requests are inappropriate for reasons identified in Part I.A. of this letter. Based on the foregoing, Defendants request that X promptly amend its objections to these Requests.

### j)      Request for Production No. 12

This Request seeks information regarding the destruction or termination of Musk's personal or business cellphone (or cellular service) since November 2023. You objected to this Request as "harassing" and contend that Defendants lack evidence to "suggest [Musk] did something improper." To the contrary, Musk stated publicly on February 9, 2024, that he intended to discontinue his phone number. *See* @elonmusk, X.com (Feb. 9, 2023, 3:26 AM ET), https://perma.cc/8SQU-ZA5C. The Request is further informed by Musk's history—documented in court filings—of "regularly switch[ing] to a new phone and sometimes destroy[ing] his old phone for security reasons."[8] Because Musk is likely to possess information relevant to this case for the reasons identified in Part I.C. of this letter, and because Musk is known to replace and sometimes destroy his cell phones, the information Defendants seek is relevant and appropriate. *See also* ESI Agreement at 9, ECF No. 67 (contemplating collection of mobile text messages). By any standard, it was reasonably foreseeable that Musk's personal or business cellphone would be subject to a document collection in this case.

Based on the foregoing, Defendants request that X promptly amend its response and objections to this Request.

### k)      Request for Production No. 13

This Request seeks documents and communications regarding payments made to X users as part of X's revenue sharing programs. You appear to misunderstand this Request, which does not seek all communications with all X users who participate in revenue sharing programs, but rather seeks information specifically about payments made to X users who participate in those programs, including—but not limited to—dollar amounts received. You also object as to relevance,

---

[8] *See* Mark Matousek, *Elon Musk regularly switches to a new phone and sometimes destroys the old one, a court document says*, BUSINESS INSIDER (Oct. 18, 2019, 10:09 AM), https://www.businessinsider.com/elon-musk-occasionally-destroys-cell-phone-document-says-2019-10.



but X's toleration, promotion, and monetization of Disputed Content was a key subject of the November 16 article that forms the basis of X's claims.[9]

Based on the foregoing, Defendants request that X promptly amend its response and objections to this Request.

### l)    Request for Production No. 14

This Request seeks documents and communications describing the means available to X users to control the advertisements they see on the Platform. Your objection that Defendants can observe for themselves public mechanisms for ad controls ignores that internal communications and documents reveal information that public observation cannot. For these reasons, it is not appropriate for X to limit its production to publicly available policies or to the advertisements published in Defendants' November 16 or November 17 Articles. Neither can X limit its production to documents and communications that support X's allegations that Defendants "manipulat[ed] [] X's algorithm" or that X deems "sufficient to show" how posts and advertisements ultimately appear to a user on the Platform. Accordingly, X should search for and produce documents and communications regarding ad controls on the Platform, including discussions about the policies and how they were put into practice, which is directly relevant to Defendants' defenses regarding the posts and advertisements available to X users, including Defendants.

X's objections to this Request are further inappropriate for reasons identified in Parts I.A. and B. of this letter. Based on the foregoing, Defendants request that X promptly amend its amended response and objections to this Request.

### m)    Request for Production No. 16

This Request seeks documents sufficient to identify individuals responsible for or involved with content moderation on the Platform. You objected on the basis of relevance, asserting that the identities of individuals involved in content moderation at X—including decisionmakers—are not relevant to a case in which one of the central themes is content moderation on X. This Request is plainly relevant, as X's content moderation controls are squarely at issue in the Articles that form the basis of X's claims.

Accordingly, we cannot accept your limitation to documents identifying individuals responsible for developing X's "hateful content policy." *All* of X's content moderation policies are relevant to this request, as are individuals responsible for implementing those policies. Moreover, we cannot agree to your proposed production of documents created since "November 2022," which

---

[9] *See, e.g.,* November 16 Article ("X has also reinstated numerous accounts of bigots and paid far-right extremists. . . .as part of its **creator ad revenue sharing program**.") (emphasis added).



is vague and unfixed. Defendants can agree to narrow this Request to require X to produce documents created from October 28, 2022 (the date Musk acquired Twitter) to the present.

X's objections to this Request are further inappropriate for reasons identified in Part I.A. of this letter. Based on the foregoing, Defendants request that X promptly amend its amended response and objections to this Request.

### n)   Request for Production No. 17

This Request seeks documents and communications regarding the discontinuance of a business or transactional relationship between X and its advertisers. You responded that X will only produce documents and communications between X and the advertisers who are listed in response to Interrogatories 1 and 4. But unlike Request No. 7, which seeks communications *between* X and certain advertisers, this Request seeks communications *within* X about advertisers. As X has stated that the advertisers listed in its response to Interrogatory No. 4 are the only "advertisers that are relevant to X's causes of action[,]" *see* X's Response to Defs.' First Interrogatory No. 1, Defendants are agreeable to limiting this Request as follows:

> X shall produce all documents or communications about advertisers listed in response to Interrogatories 1 and 4. X shall further produce all documents or communications about past, present, or potential advertisers regarding any decision to terminate, pause, or decline advertising on X where those documents or communications reference issues regarding brand safety, Disputed Content, or content moderation on the Platform.

X's objections to this Request are further inappropriate for reasons identified in Part I.A. of this letter. Based on the foregoing, Defendants request that X promptly amend its amended response and objections to this Request.

### o)   Request for Production Nos. 18 & 22

X's objections to these requests are inappropriate for reasons identified in Part I.A. of this letter. Based on the foregoing, Defendants request that X promptly amend its objections to these Requests.

### p)   Request for Production No. 23

This Request seeks documents and communications with or about the media reporting about X or Musk. X objects on the basis of burden and relevancy, but Defendants are entitled to test X's allegations touting its commitment to "free expression and open discourse," Am. Compl. ¶ 40, by examining its relationship with journalists, including but not limited to Defendants.



1700 Seventh Ave, Suite 2100 | Seattle, WA 98101

X further objects that it is not "appropriate" to require X to search for all communications with the media without limitation to the subjects of this litigation. But the Request is plainly limited to reporting about X, directors, employees, and Musk. Nonetheless, Defendants are agreeable to limiting this request as follows:

> X shall produce all internal documents and communications where X has expressed negative views about media outlets, journalists, or reporters that have covered X, its employees, its directors, or Elon Musk.[10]

X's objections to this Request are further inappropriate for reasons identified in Part I.A. of this letter. Based on the foregoing, Defendants request that X promptly amend its amended response and objections to this Request.

### q)      Request for Production No. 24

X's objections to this request are inappropriate for reasons identified in Part I.A. of this letter. Based on the foregoing, Defendants request that X promptly amend its objections to this Requests.

### r)      Request for Production No. 25

This Request seeks documents and communications related to X suspending, terminating, or reinstating user accounts on the Platform. X objects on the basis of burden and relevance, but the steps that X has taken to minimize—or exacerbate—the amount of Disputed Content on the platform is a subject of the challenged November 16 and November 17 Articles, and thus directly relevant to the claims and defenses in this case. Summary analytics and public documents are insufficient. X must produce documents indicating which accounts were suspended, terminated, or reinstated during the relevant timeframe, as well as internal communications related to why these accounts were suspended, terminated, or reinstated.

Based on the foregoing, Defendants request that X promptly amend its response and objections to this Request.

### s)      Request for Production No. 26

This Request seeks documents and communications related to Musk's activity on the X platform, including Musk's engagement with Disputed Content, and any allegations in X's possession that Musk has violated X's user agreement or other standards. We cannot agree to your proposed limitation to documents and communications with *only* the advertisers listed in X's

---

[10] For the avoidance of doubt, "negative views," as used in this request, should be understood to include statements of opinion or perception that are critical, adverse, or unfavorable.



1700 Seventh Ave, Suite 2100 | Seattle, WA 98101

response to Defendants' Interrogatory No. 4, and *only* to the extent those documents and communications related to "Musk and the 'Disputed Content' referenced in the Articles. The Request seeks documents and communications, including internal discussions, about Musk's activity on the platform, and X is obligated to produce as much.

X's objections to this Request are further inappropriate for reasons identified in Part I.C. of this letter. Based on the foregoing, Defendants request that X promptly amend its response and objections to this Request.

### t)      Request for Production No. 27

X's objections to this Request are inappropriate for reasons identified in Parts I.A. and B. of this letter. Based on the foregoing, Defendants request that X promptly amend its objections to this Request.

### u)      Request for Production No. 28

This Request seeks documents and communications related to the termination or suspension of X employees for reasons related to content moderation or Disputed Content on X. You objected on the basis of relevance, but X's responsibility for Disputed Content on the Platform—which could possibly be shown by X's personnel decisions on this subject—is directly at issue in the articles that form the basis of X's allegations in this case.

Based on the foregoing, Defendants request that X promptly amend its response and objections to this Request.

### v)      Request for Production No. 29

This Request seeks documents and communications regarding statements made by Musk about various demographic groups. In addition to arguing that Musk's activities are irrelevant— which is wrong for the reasons discussed in Part I.C. of this letter—X refuses to produce any documents because Musk's public statements "are equally available to Defendants as they are to X." This ignores the fact that the Request seeks non-public documents and communications *regarding* Musk's statements.

Based on the foregoing, Defendants request that X promptly amend its response and objections to this Request.

### 2.      Requests for Admission

### a)      Request for Admission No. 1



**ELIAS**
**LAW**
**GROUP**

1700 Seventh Ave, Suite 2100 | Seattle, WA 98101

X's response to this Request is inappropriate for reasons identified in Part I.D. of this letter. Based on the foregoing, Defendants request that X promptly amend its response to this Request.

### b)      Request for Admission No. 2

X objects that this Request is vague because it "fails to provide reference to any specific accounts." However, the Request does not ask for specific users, and only asks X to admit that some number of users have been compensated. X must admit if "some" users have been compensated by X after posting such content.

X further objects to this Request as vague, suggesting that the definition of Disputed Content provided by Defendants "lacks an objective basis to evaluate posts[.]" This response is inappropriate for reasons identified in Part I.E. of this letter, and Defendants do not understand how their detailed, extremely specific definition of what constitutes such content is vague. Moreover, for the avoidance of doubt, the term Disputed Content is consistent with X's understanding of the term "hateful content" and the corresponding examples X provides for the same. *See* Hateful Content, X Business, https://business.x.com/en/help/ads-policies/ads-content-policies/hate-content.html.

X's response to this Request is further inappropriate for reasons identified in Part I.D. of this letter. Based on the foregoing, Defendants request that X promptly amend its response to this Request.

### c)      Request for Admission No. 4

X's objections and response to this Request are inappropriate for reasons identified in Part I.C., D., and E. of this letter. For the avoidance of doubt, as with Request for Production No. 23, "negative views," as used in this request, should be understood to include statements of opinion or perception that are critical, adverse, or unfavorable. Based on the foregoing, Defendants request that X promptly amend its response and objections to this Request.

### d)      Request for Admission No. 5

X states that it is unable to admit or deny whether "the images of advertisements next to user content" from the November 16 and November 17 Articles are authentic reproductions of pairings that appeared on its platform. Although the Request asks about the authenticity of the images of the advertisements next to user content, X responds that "X did not create *the articles* in question and therefore lacks knowledge, and cannot address, the authenticity of the reproductions at issue." (emphasis added). X should admit or deny as to the specific images Defendants ask about, available in the November 16 and November 17 Articles, as described in X's complaint.

16



X's response to this Request is further inappropriate for reasons identified in Part I.G. of this letter. Based on the foregoing, Defendants request that X promptly amend its response and objections to this Request.

### e)  Request for Admission No. 7

X's objection to this Request is inappropriate for reasons identified in Part I.E. of this letter. For clarity, if an advertiser ceased advertising during time period A but returned to advertising on the Platform during any later time period B, this advertiser "should be counted" for purposes of this Request.

Based on the foregoing and with this additional specificity, Defendants request that X promptly amend its response and objections to this Request.

### 3.  Interrogatories

### a)  Interrogatory No. 2

X's response to this Interrogatory is inappropriate for reasons identified in Part I.E. of this letter. For the avoidance of doubt, "legal right to future performance" should be understood to mean an advertiser's "obligations," as X uses that term in its amended complaint. *See* ECF No. 37 ¶ 72. Relatedly, whether X was legally entitled to future performance from advertisers—which will inform whether any of those advertisers breached any obligation to X—is critical to the viability of X's claims. *See WickFire, L.L.C. v. Laura Woodruff; TriMax Media, L.L.C.*, 989 F.3d 343, 354 (5th Cir. 2021), as revised (Mar. 2, 2021); *El Paso Healthcare Sys., Ltd. v. Murphy*, 518 S.W.3d 412, 420 (Tex. 2017). And contrary to your objection that this Interrogatory asks for a legal conclusion, it plainly requests X to "identify and describe the contract term[s]" that form the basis of X's claim that "Defendants intentionally interfered with contracts between X Corp. and its advertisers." ECF No. 37 ¶ 67. Particularly where X has since clarified that that the advertisers listed in its response to Interrogatory No. 4 are the only "advertisers that are relevant to X's causes of action[,]" Pl.'s Response to Defs.' Interrogatory No. 1, it should not pose any burden to X to identify the specific contractual provisions with those advertisers that form the bases of X's claims.

Defendants request that X promptly amend its response and objections to this Interrogatory.

### b)  Interrogatory No. 5

X's response to this Interrogatory is inappropriate for reasons identified in Part I.F. of this letter. Defendants should not be required to hunt and peck through X's promised document productions to determine which of "[m]any advertisers and third-party advertising agencies" said what to X about Defendants' reporting. Particularly where these types of communications form the basis of X's claims, *see, e.g.*, ECF No. 37 ¶ 72 (alleging "Defendants' actions are the proximate



cause of" advertisers' decision to cease performance), X's vague reference to any number of communications with any number of "advertisers and third-party advertising agencies" is woefully insufficient.

Based on the foregoing, Defendants request that X promptly amend its response and objections to this Interrogatory.

### c)      Interrogatory No. 6

X's response to this Interrogatory is inappropriate for reasons identified in Part I.C. of this letter.[11] Based on the foregoing, Defendants request that X promptly amend its response and objections to this Interrogatory.

### B.      Defendants' Second Set of Discovery Requests

### 1.      Requests for Production

### a)      Request For Production No. 33

This Request seeks documents and communications regarding individuals and entities to whom X has attributed blame for loss of advertisers on its platform. X's proposed limitation to "documents relating to the advertisers listed in X's response to Interrogatory 4" is insufficient. Although X is correct that "the question [in this case] is whether the specific advertisers that X has identified paused their business relationships with X based on Defendants' [allegedly] tortious conduct," the motivations for any advertising pause by the companies X identified may be revealed or clarified by the stated motivations of other companies who also paused advertising during this timeframe. *See* Compl., *X Corp. v. World Fed'n of Advertisers*, No. 7:24-CV-00114-O (N.D. Tex. Aug. 6, 2024) (X attributing decline in advertising revenue to causes other than Media Matters's reporting). Defendants are also entitled to explore whether X sufficiently attempted to mitigate any damages upon receiving warnings or complaints from other advertisers. Even as to the advertisers listed in X's response to Interrogatory 4, Defendants are entitled to explore whether X has previously or subsequently also blamed other entities or individuals for those advertisers' decision to leave the Platform.

X's objections and response to this Request are further inappropriate for reasons identified in Part I.A. of this letter. Based on the foregoing, Defendants request that X promptly amend its amended response and objections to this Request.

---

[11] As X's response to Interrogatory No. 3 incorporates by reference X's response to Interrogatory No. 5, X's response to Interrogatory No. 3 is inappropriate for all the same reasons its response to Interrogatory No. 5 is inappropriate.

18



### 2. Requests for Admission

#### a) Requests for Admission Nos. 2 & 4

X's responses to these requests are inappropriate for reasons identified in Part I.D. of this letter. Based on the foregoing, Defendants request that X promptly amend its responses and objections to these Requests.

#### b) Requests for Admission Nos. 5 & 6

Your objection to these Requests on the basis that "specifically responsible" is undefined, vague, and ambiguous is inappropriate for reasons identified in Part I.E. of this letter. X should refer to the ordinary meaning of the terms "specifically" and "responsible" to identify employees who were charged with responsibilities involving content moderation, regardless of whether those responsibilities involved all or only a part of the employees' duties. As to X's objection that "full-time employees" and "independent contractors" are mutually exclusive groups, this does not render the Request No. 5 "unintelligible." If no independent contractors work full-time for X, then X should respond accordingly, or provide other additional context as to why X is unable to admit or deny. Similarly, X is incorrect to object that Request No. 6 is improperly compound. Contrary to your reading that the Request requires the admission of "the existence and nature of content moderation that occurred prior to X's acquisition," the Request explicitly refers to actions taken "*after* Elon Musk acquired X[.]" *See* Request for Admission No. 6.

X's responses to these requests are further inappropriate for reasons identified in Part I.D. of this letter. Based on the foregoing, Defendants request that X promptly amend its response and objections to these Requests.

#### c) Request for Admission Nos. 9(A)-73(B)

For the sake of efficiency and given the significant overlap, Defendants address X's responses and objections to Requests for Admission Nos. 9(Part A) through 72(Part B) together.

First, X objects to the terms "prevent," "appearing in response to," "as contained," "content," "captured in the screenshot," and "X platform" as undefined, vague, and ambiguous. These objections are inappropriate for reasons identified in Part I.E. of this letter. For the avoidance of doubt, any reference to the "X platform" should be understood to mean the "Platform" as defined by Defendants: the social media website operated by X. As to the remainder of X's objections to terms, each can be understood based on their ordinary meaning. For example, the phrase "appearing in response to" should be understood to mean that the post appeared at all in response to a search—without any of X's purported qualifications. Indeed, even X appears to

19



understand that these terms can be understood by their ordinary definitions—X responds that "X's algorithms do not independently operate to '*prevent*,' or allow, any particular 'response.'"[12]

Neither are these Requests improperly compound as X suggests—the intentionally separate, two-part Requests seek an admission as to whether 1) X's algorithm prevented the content in the corresponding screenshot from appearing (Part A); and 2) whether the content in the screenshot appeared on the Platform on the date reflected in said screenshot (Part B). In other words, the Requests ask about the authenticity of screenshots from the very entity that controls the Platform.

As to X's relevance and burden objections, Defendants fail to understand how Requests seeking confirmation about the appearance of hateful content next to advertisements in a case *about* the truth or falsity of Defendants' statements about that very subject matter could be considered irrelevant, burdensome, or disproportionate. Falsity is a required element for X's business disparagement claim. *See Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987) (the "plaintiff in a business disparagement claim . . . must plead and prove the falsity of the statement as part of his cause of action"). These Requests are directly relevant and essential to Defendants' defenses in this case.

X's responses to these Requests are further inappropriate for the reasons identified in Part I.G. of this letter. Based on the foregoing, Defendants request that X promptly amend its responses and objections to these Requests.

     **3.**     **Interrogatories**

     **a)**     **Interrogatory No. 7**

This Interrogatory seeks the dollar amount of any "actual and consequential damages" sought by X in this action resulting from Defendants' conduct, as well as X's "basis for claiming that each component [of that dollar amount] constitutes damages that have resulted from Defendants' conduct." Contrary to your objection, this request is not premature. As X indicates in its response, X calculated for its initial disclosures a sum of $45,000,000 in alleged actual and consequential damages. The basis for this computation is therefore necessarily within X's knowledge or possession. If parties could refuse to answer interrogatories on the basis that they

---

[12] X regularly uses the term "prevent" according to its ordinary meaning when publicly discussing brand safety. *See, e.g.*, X Business, "Adjacency Controls & 3rd-Party Measurement: Giving advertisers more control over where ads appear" (last accessed July 9, 2024), https://business.x.com/en/blog/adjacency-controls-third-party-measurement.html ("Adjacency Controls: Starting today, we're giving advertisers pre-bid controls to **prevent** their ads from appearing adjacent to Tweets[.]") (emphasis added).



had retained experts to opine on similar matters, then the rules of discovery could be subverted entirely. This timely Interrogatory requires a response.

X's response to this Interrogatory is further inappropriate for reasons identified in Part I.F. of this letter. Based on the foregoing, Defendants request that X promptly amend its response and objections to this Interrogatory.

### b)      Interrogatory No. 8

This Interrogatory seeks information as to the identities and motivations of advertisers who ceased advertising with X. Contrary to X's objection, this information—in a lawsuit centered around the alleged loss of and interference with business relationships with advertisers—is plainly relevant. The reasons advertisers expressed for discontinuing or attempting to discontinue advertising, including whether their advertising decisions resulted from Media Matters's publication, Mr. Hananoki's reporting, or Mr. Carusone's interview statements, are critical to the claims and defenses in this case. This objection is in bad faith and should be withdrawn.

X's similarly preposterous objections that this Interrogatory imposes a "decade-and-a-half window" and that "[w]hat an advertiser did in 2014, or even 2020, bears no connection to the allegations at issue in this litigation[,]" should be withdrawn. The Interrogatory asks for no such information, as it explicitly asks for advertisers who ended their advertising relationships with X on or after January 1, 2022.

X's vagueness objection to the phrase "ceased advertising" is inappropriate for reasons identified in Part I.E. of this letter. For the avoidance of doubt, "ceased advertising" should be understood to mean the temporary or permanent discontinuance of an advertising relationship with X. This is consistent with the ordinary meaning of "ceased."

Based on the foregoing, Defendants request that X promptly amend its response and objections to this Interrogatory.

### c)      Interrogatory No. 9

This Interrogatory seeks the identity of suspended accounts posting Disputed Content. Contrary to X's relevancy objection, this Interrogatory seeks information directly probative of the truth or falsity of reporting in the November 2023 articles at issue in this case, as those articles



1700 Seventh Ave, Suite 2100 | Seattle, WA 98101

specifically address X's reinstatement of accounts that had previously been suspended for posting Disputed Content.[13]

X's vagueness objection to the phrase "Disputed Content" is inappropriate for reasons identified in Part I.E. of this letter. Moreover, nothing about Defendants' extremely specific definition of this term—which includes a ready list of key words and phrases that may be used to create search terms—is vague. For the avoidance of doubt, the term Disputed Content is consistent with X's understanding of the term "hateful content" and the corresponding examples X provides for the same. *See* Hateful Content, X Business, https://business.x.com/en/help/ads-policies/ads-content-policies/hate-content.html.

As to X's vagueness objections to the terms "reinstated" and "taken off Twitter," X's own assumptions are correct. For the avoidance of doubt, X should answer this Interrogatory assuming that "reinstated" encompasses the "variety of processes" by which an X account can be "restored," "including the expiration of temporary suspensions, successful appeals, and via an amnesty program[.]" As X recognizes, the term "taken off Twitter" refers "to the temporary or permanent suspension of X user accounts."

Based on the foregoing, Defendants request that X promptly amend its response and objections to this Interrogatory.

\* \* \*

As stated above, Defendants request that X respond in writing to the issues raised in this letter.

Sincerely,

Abha Khanna
Partner | Elias Law Group

---

[13] *See, e.g.,* November 16 Article ("As X owner Elon Musk continues his descent into white nationalist and antisemitic conspiracy theories . . . X has also **reinstated numerous accounts** of bigots and paid far-right extremists, apparently including a pro-Hitler and Holocaust denier account, as part of its creator ad revenue sharing program.") (emphasis added); Eric Hananoki, X is placing ads for Amazon, NBA Mexico, NBCUniversal, and others next to content with white nationalist hashtags, MEDIA MATTERS FOR AMERICA (Nov. 17, 2023, 12:16 PM), https://www.mediamatters.org/twitter/x-placing-ads-amazon-nba-mexico-nbcuniversal-and-others-next-content-white-nationalist ("Musk has opened the floodgates to hateful content by reversing bans on anti-Muslim bigots, white nationalists, and antisemites.").

# Tab 22



**ELIAS
LAW
GROUP**

**1700 Seventh Ave, Suite 2100 | Seattle, WA 98101**

September 6, 2024

**VIA ELECTRONIC MAIL**

Christopher D. Hilton
Stone | Hilton
P.O. Box 150112
Austin, TX 78715
(737) 465-3897

**RE: Defendants' Deficiency Letter to Plaintiff in *X Corp. v. Media Matters for America, et al.*, Case No. 4:23-cv-01175 (N.D. Tex).**

Counsel,

Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone have received Plaintiff X's responses and objections to Defendants' third set of discovery requests. These responses are deficient in several respects.

Most troublingly, several of the same issues that permeate X's responses to Defendants' first and second sets of discovery—issues raised in Defendants' August 16, 2024 letter—again appear in X's latest discovery responses. Not only were these concerns ignored by X in responding to Defendants' third set of discovery requests, but Defendants have yet to receive a response to their earlier letter. X's continued disregard for discovery rules and failure to respond to communications concerning the same is unacceptable.

This letter notes these recurring deficiencies and addresses additional problems that are specific to individual requests.

## I.   DEFICIENCIES RAISED IN DEFENDANTS' AUGUST 16, 2024 LETTER

### A.   <u>Inappropriate relevancy objections regarding Elon Musk</u>

X once again refuses to produce documents or answer questions related to Elon Musk. *See* X's R&Os to Defs.' Third Set of Requests for Production, Request No. 34. Any continued assertions that Defendants' requests are irrelevant or improper because "Musk is not a plaintiff and there is no allegation that he is X's alter ego" are inappropriate for reasons stated in Part I.C. of Defendants' August 16, 2024 deficiency letter. Musk and any of his actions that impact X's relationship with advertisers are plainly relevant to this litigation, and this objection is not a valid ground to withhold documents or information.

1



### B. **Inappropriate vagueness objections**

X's objections to terms as "vague," *see* X's R&Os to Defs.' Third Set of Requests for Admission, Request Nos. 87, 88, are inappropriate for the reasons stated in Part I.E of Defendants' August 16, 2024 deficiency letter. X once again ignores the specific instructions in Defendants' RFAs for clarifying terms considered "vague."

Based on the foregoing, Defendants request that X promptly amend its responses and objections to correct these deficiencies.

## II.   **ADDITIONAL DISCOVERY DEFICIENCIES**

In reviewing X's responses and objections to Defendants' third set of discovery requests, Defendants have identified several additional deficiencies and issues requiring clarification. For the avoidance of doubt, Defendants do not waive any concerns not mentioned below regarding X's responses and objections to Defendants' third set of discovery requests. Defendants reserve the right to seek additional clarification or confer as needed with X regarding these responses and objections once X has addressed the deficiencies identified in this letter.

### A.   **Defendants' Third Set of Interrogatories**

#### 1.   **Interrogatory No. 11**

This Request asks X to describe the "internal investigations" referenced in its Amended Complaint and any findings of these investigations. Although X has pointed Defendants to a public post describing the "findings" of the internal investigation, this Interrogatory requires more detailed information. For example, X writes that "one of its ads ran adjacent to a post 2 times and that ad was seen in that setting by only two users, one of which was the author of the Media Matters article." Which ad was this? What other X user saw the ad apart from Media Matters? What content was next to that advertisement? Defendants are entitled to discover the full scope of X's "internal investigations" that form the basis of its claims in this case, not just X's public-facing, self-serving descriptions of those investigations.

Defendants request that X promptly amend its response to this Interrogatory and provide detailed information as to its internal investigation findings.

### B.   **Defendants' Third Set of Requests for Production**

#### 1.   **Request for Production No. 34**

This Request seeks all transcripts from any deposition in which Elon Musk has been deposed. X responded that it has limited its search for transcripts where Musk mentioned Defendants or "the November 2023 Articles that are the subject of this suit." This arbitrary



limitation is inappropriate and leaves out other statements that are relevant to the claims and defenses at issue in this case, such as X's financial status, X user policies, or polarizing statements made by Musk that might impact X's relationship with advertisers.

Defendants request that X promptly amend its response to this Request and produce all responsive documents.

### 2. Request for Production No. 37

This Request seeks Musk's deleted posts, and in responding, X unilaterally limited this request up to the date of the November 16 Media Matters article at issue in this case. This is an inappropriate limitation because Musk's statements even after November 16 may have bearing on claims and defenses in this case (including as to possible damages).

Defendants request that X promptly amend its response to this Request and produce all responsive documents consistent with the temporal limitation in Defendants' instructions, which run to the present day unless otherwise stated.

### 3. Request for Production No. 40

This Request seeks the preliminary findings the European Commission issued to X. X is refusing to produce these documents, including on the bases that 1) X's compliance with the Digital Services Act is irrelevant to this litigation, and 2) that "producing the requested documents would constitute a violation of the terms on which the European Commission provided the preliminary findings, threaten the effective enforcement by the European Commission of the Digital Services Act, and be inconsistent with international comity principles." Neither objection provides legitimate grounds to withhold these documents.

X's relevancy objection falls flat because any documents showing that X's content moderation policies are insufficient in some way or that X's policies might undermine public confidence in the Platform are relevant to Defendants' defenses in this action. And as to its second objection, X may not resist discovery on the broad basis that requested documents are "findings issued by a third party." If producing these findings would violate the terms of an agreement with an international regulatory body, X should produce those terms so Defendants can evaluate whether underlying documents can be appropriately withheld from discovery.

Defendants request that X promptly amend its response to this Request and either produce the documents or provide a copy of any agreement with an international regulatory body that prevents their production.



### C.    Defendants' Third Set of Requests for Admission

Defendants identified several deficiencies that were repeated in more than one of X's responses to Defendants' third set of Requests for Admission.

- X's responses denying "the remainder" of a Request for Admission without specifying *which* portions of the Request are being denied are inappropriate because they fail to comply with Federal Rule of Civil Procedure 36, which requires specificity. Defendants request that X promptly amend its responses containing this language, RFA Nos. 82, 83, 84, 85, and 87, to specifically identify which portions of the requested admissions that it denies.

- X's responses stating that a document "speaks for itself" are inappropriate and fail to comply with the requirements of Rule 36. *See, e.g., VeroBlue Farms USA Inc. v. Wulf*, 345 F.R.D. 406, 424 (N.D. Tex. 2021) ("Stating that a document speaks for itself avoids the purpose of requests for admission, i.e., narrowing the issues for trial, and [i]f a request seeks an admission about a quotation or paraphrase of text, the responding party must answer, object (on grounds other than speaks for itself), or properly allege and support a lack of knowledge."); *Langley v. Dep't of Interior*, No. 99-2653, 2001 WL 946367, at *2 (E.D. La. Aug. 20, 2001) (finding inadequate a response that the document "speaks for itself," without an admission or denial as required by the rule). Defendants request that X promptly amend its responses containing this language to admit or deny the requested admission, RFA Nos. 82 and 83.

- X has twice objected to links from Defendants' discovery requests as not being "live links." X appears to have deleted hyphens from these live links from Defendants' discovery requests and thus made them inoperable. Defendants request that X promptly amend its responses and withdraw these objections to RFA Nos. 89 and 90.

Defendants identify additional deficiencies in X's responses to Requests for Admission Nos. 87 and 88 below.

### 1.    Request for Admission No. 87

This Request seeks confirmation that X users can follow both accounts of X's large advertisers and user accounts that post hateful content. X should understand "large advertisers" to be used as X uses the term in its Amended Complaint, ¶ 52.

Defendants request that X promptly amend its response to this Request following this clarification.



### 2. Request for Admission No. 88

This Request asks X to admit that X users who choose to follow X accounts of the Platform's large advertisers and user accounts that post hateful content are able to see hateful content appear next to the Platform's large advertisers. X objected to the Request as vague because it "calls for an answer to a hypothetical based on general concepts," and further because the term "are able to" is vague in context. "Are able to" is not vague. Consistent with its ordinary meaning, X should understand this to ask whether it is possible that an X user may see such pairings. Further, this Request is not a hypothetical. It asks about the current operation of and user experiences on the Platform.

Defendants request that X promptly amend its response to this Request following this clarification.

\*   \*   \*

Defendants request that X respond in writing as soon as possible to the issues raised in this letter and in Defendants' August 16 deficiency letter.

Sincerely,

Abha Khanna
Partner | Elias Law Group

5

# Tab 23

# STONE HILTON

September 6, 2024

***Via Electronic Mail***

Abha Khanna
ELIAS LAW GROUP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
akhanna@elias.law
(206) 656-0177

    Re: *X Corp. v. Media Matters for America, et al.*, No. 4:23-cv-01175-O

Ms. Khanna:

  We have reviewed Defendants' letter in detail. Because we have made, and are continuing to make, document productions that contain highly relevant materials that are specific to the claims and defenses at issue, we trust that we have alleviated many of the concerns raised within your letter.

  Indeed, our recent production is in stark contrast to Defendants' past productions, which appear to have been designed to evade producing anything relevant and have already forced one postponement of the scheduling order, as we discussed in detail during our last meet-and-confer and many other conversations before then. Conversely, Plaintiff has reviewed every mention of Defendants across its custodians and already has produced those responsive documents or will be producing them imminently.

  Given the length and detail of your letter, and our desire to review and produce the highly relevant documents referenced above, we have divided our response into two parts. In this correspondence we have prepared a point-by-point response to the issues that you have raised in Section I of your letter. We will address Section II by follow-up correspondence.

## A. Production Pace

  We found it both surprising and unproductive that your letter chose to open with the accusation that Plaintiff's pace of document production is "unacceptable." The complaint appears to be that X has not produced documents on alternating Fridays, as have Defendants. But the Parties have now met and conferred multiple times over the extraordinarily slow pace of

Defendants' production—despite Defendants' consistency, very few documents have actually been contained in each production. Although this is well trodden ground at this point, we will repeat Plaintiff's position again here.

Plaintiff served its first set of requests for production on February 5, 2024. Although X has since served additional RFPs, its original set was comprehensive, and X expects that the number of responsive documents to these requests alone was substantial. This is supported by Defendants' own representations to the Court that 5.5 Terabytes of data had been collected, in response to all of Plaintiffs' RFPs. Dkt. 62-1 ¶ 25. Defendants have further averred that an incredible 14 staff attorneys and 33 associates have been retained to review documents on this case. Remarkably, to date only 6,499 documents have been produced to date. Most of these documents have been produced only in the last month.

Plaintiff's requests have been pending for 213 days. Defendants have accordingly produced *less than 31 documents per day*.

Given that 47 attorneys are reviewing documents on this case, that works out to *less than one produced document per attorney per day*.

Needless to say, Plaintiff has not taken the same approach to its document review and production. Defendants' requests have only been pending since May 6, 2024. Plaintiff has already produced 1,791 documents, and many thousands more will be produced in the coming weeks.

If Plaintiff correctly understands that Defendants' complaint is that Plaintiff's rolling production does not conform to a strict two-week production schedule, then Plaintiff can agree to produce documents on this schedule going forward.

**B.    Custodians**

Plaintiff's amended responses made clear that it was gathering from all relevant custodians. This was reiterated during previous meet-and-confers, where Plaintiff explained that it objected to Defendants' requests for the purpose of clarifying that it would not search for literally every arguably discoverable document (*e.g.*, X would not search for documents from the janitorial staff), but that it would search for and produce documents from custodians who are likely to possess relevant documents—and thereby fully discharge X's obligations under the Federal Rules of Civil Procedure. However, given the confusion, Plaintiff reiterates once more that it is not withholding documents or demanding that Defendants identify our custodians for us.

Regarding a mutual exchange of custodians, Plaintiff agrees this would be beneficial. Indeed, Plaintiff requested Defendants' custodians months ago, but Defendants only agreed to share primary custodians and refused to disclose a complete list.

Since then, a review of Defendants' production shows that only the *least* relevant custodians have been reviewed during the last six months of discovery. For example, only one singular email has been produced "from" Eric Hananoki. Not even one document has been produced "from" Angelo Carusone.

Likewise, in response to Plaintiffs' interrogatories, Defendant identified Beth Cope, Ben Dimiero, Kayla Gogarty, and John Whitehouse as individuals who were directly involved in the

editing and publication of the Articles. These individuals only appear on the "from" line on the following number of documents:

- Beth Cope: 1 time
- Ben Dimiero: 0 times
- Kayla Gogarty: 2 times
- John Whitehouse: 9 times

None of these documents relate to the Articles at issue in this case. Plaintiff's production, on the other hand, includes documents from dozens of custodians.

Even more problematic, Defendants appear to be taking the position that X's responses are directed solely at Media Matters. Not so. Instead, X served its requests on all three Defendants. Accordingly, Hananoki and Carusone have independent, individual obligations to search for, review, and produce responsive documents. To date, documents have not been received from either Defendant—an inexcusable delay given the tight timelines of the Court's scheduling order.

Accordingly, given the state of Defendants' current production, while X is willing to disclose its custodians in principle, X does not believe that a unilateral disclosure is necessary or particularly productive, at least until such time Defendants intend on meaningfully producing relevant documents.

### C.     Trade Secrets

Notwithstanding the protective order that has been agreed to by the parties and entered by the Court, X's source code is a highly sensitive trade secret. Nevertheless, X is not withholding any relevant documents based solely on the objection that these documents are trade secrets. Instead, it is standing on its objections, sounding in part in relevance, that Defendants do not need, and are not entitled to, millions of lines of source code that have no possible hope of advancing any party's claims or defenses in this case.

Plaintiff does not contest that one of the issues in this case relates to how advertisements are displayed to users. Accordingly, Plaintiff does not object in principle to providing documents that address that issue. For example, in Response to Request No. 1, Plaintiff has already promised to produce documents sufficient to show how "X leverages a variety of controls and settings that advertisers and users may select from that, in combination, influence which posts and advertisements will appear to a particular user on the Platform." The documents that X has agreed to produce will be more than sufficient for both sides to fully explore these issues.

Source code on its own is entirely unintelligible to laypersons and cannot possibly aid the parties, the Court, or the jury without, at a minimum, extensive and unnecessary expert testimony. At the same time, it is very sensitive as it can be used by competitors or bad actors literate in code who seek to exploit computer systems. Plaintiff's response as written strikes the proper balance in that X both promises to produce documents sufficient for Defendants to litigate this case, while also protecting Plaintiff's code from unnecessary disclosure. And nothing Defendants' letter suggests that disclosure of source code is necessary for litigation of this case.

### D.   Musk's Relevance

Defendants' vendetta and animosity towards Musk establishes, in part, malice, intent, and other elements of Defendants' tortious conduct toward X. But Defendants' tortious acts do not open the door for them to continue their campaign of harassment of Musk via harassing discovery requests.

It is our understanding that Defendants intend to argue that Musk's public statements are what affected advertisers, rather than Defendants' Articles. If this is true, Defendants do not need discovery into Musk's motives for his posts, let alone his personal cell phone, as it is the ***public*** nature of Musk's posts that are relevant. Musk himself has no particular knowledge or insight as to how anyone reacts to his statements.

Regarding jurisdiction, Musk's status as a resident of Texas is unnecessary. *See* Dkt. 82 at 6-12.

Plaintiff will, however, produce relevant documents from Musk as a custodian when they are responsive to Defendants' non-harassing requests as limited by Plaintiff's objections and responses.

### E.   Denials "as written"

Rule 36 of the Federal Rules of Civil Procedure allows for a respondent to provide a qualified denial, and Plaintiff has done so here. Indeed, Plaintiff has provided *more* detail than Rule 36 requires. If it is Defendants' position that Plaintiff should respond with *less* detail in response to each request, we can do so. Regardless, no matter what we think of the utility of exchanging amended responses to your requests for admissions solely to change certain responses from "denied as written" to "denied," we are willing to do so, at your insistence, in the spirit of good faith discovery exchanges.

### F.   Vagueness objections

Your instructions cannot supersede Rule 34 or obligate X to rewrite confusingly written requests. We also note that Defendants objected at least 12 times to our requests for production as vague, indicating to us that Defendants agree that it can be appropriate to object to discovery requests on the basis of vagueness:

- *Defendants' 2nd Amended Responses and Objections to Plaintiff's First Set of Requests for Production*: RFP Nos. 7, 8, 9, 14, 16, 25, 26, 27, 28, and 29.
- *Defendants' Amended Responses and Objections to Plaintiff's Second Set of Requests for Production*: RFP Nos. 42 and 43.

We look forward to receiving Defendants' third amended responses and objections, which remove your unnecessary vagueness objections. Plaintiff's responses, on the other hand, adequately state the basis of our objections and the documents that we have agreed to produce, as we will further detail in our forthcoming letter addressing Section II of your correspondence.

### G.    Inadequate document identification

Although Defendants complain about Plaintiffs' interrogatory responses, Defendants' responses are essentially identical. For example, in response to X's interrogatories 7 & 8, Defendants direct X to a forthcoming document production. Plaintiff has responded in turn.

Our responses will be amended once the appropriate business records have been identified to ensure full compliance with Rule 33(d). Plaintiff will provide specific Bates-numbers of relevant documents responsive to Defendants' interrogatories once we have made the corresponding document production. We look forward to Defendants making the same amendments to their interrogatory responses.

### H.    X's capabilities

Regarding X's capabilities to conduct a reasonable search in response to Defendants' requests for admissions, as Defendants are well aware, a request for admission does not require the recipient to boil the ocean in order to respond. Instead, only a "reasonable inquiry" into the "information it knows or can readily obtain" is required. Here, Defendants have asked questions regarding images contained within unauthenticated screenshots purportedly of third-party posts made on X. Plaintiff has responded accordingly, in full compliance with its obligations under Rule 36.

<div align="center">*        *        *        *        *</div>

Despite Defendants' numerous discovery inadequacies and steadfast refusal to make meaningful productions, X takes its discovery obligations seriously. We remain committed to addressing your questions and, if possible, avoiding or amicably resolving any discovery disputes without the need for judicial intervention.

Please do not hesitate to let us know if you have any questions regarding the issues addressed in this letter. As stated, we will follow up with a response to Section II of your letter in future correspondence.

Very truly yours,

*/s/ Christopher D. Hilton*
Christopher D. Hilton
**STONE HILTON PLLC**
chris@stonehilton.com
(737) 465-3897

# Tab 24



**ELIAS**
**LAW**
**GROUP**

1700 Seventh Ave, Suite 2100 | Seattle, WA 98101

September 25, 2024

**VIA ELECTRONIC MAIL**

Christopher D. Hilton
Stone | Hilton
P.O. Box 150112
Austin, TX 78715
(737) 465-3897

**RE: Defendants' Deficiency Letter to Plaintiff in *X Corp. v. Media Matters for America, et al.*, Case No. 4:23-cv-01175 (N.D. Tex).**

Counsel,

Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone have received Plaintiff X's "Part 1" response to Defendants' August 16 deficiency letter. Defendants respond below, and note that based on the parties' correspondence, certain issues appear ripe for court intervention.

Plaintiff stated via email on September 6 that its response to Part 2 of Defendants' August 16 letter "will follow." More than five weeks after Defendants' deficiency letter, Defendants still have yet to receive additional correspondence. Plaintiff's continued delay is unexplained and unjustifiable. It is critical that Plaintiff respond immediately so that Defendants can bring any discovery disputes to the Court's attention as needed. Toward that end, please provide your response to the remainder of Defendants' August 16 deficiency letter no later than Friday, September 27.

Defendants are also in receipt of Plaintiff's September 6 email regarding the parties' privilege log agreement. Defendants accept Plaintiff's attestation that Plaintiff have always considered the privilege log agreement to be in full force and effect. Please send along a formally executed copy for our records.

Finally, pursuant to paragraph 7(a) of the parties' protective order, on July 30, Defendants identified the two Media Matters employees with access to documents designated as "confidential" and provided their executed copies of the protective order's confidentiality agreement. Since then, Defendants have produced 20 documents marked confidential and 60 documents marked attorneys' eyes only. Per the agreement, no one at X may access any of these documents before Plaintiff identifies the two employees or in-house counsel it intends to designate. Defendants

1

App'x 462



request that Plaintiff promptly confirm that X has followed the agreed-upon procedure and identify the employees (if any) X intends to provide with access to confidential documents.

**Production Pace:** The parties seem to be in agreement—Defendants and Plaintiff will both conform to strict bi-weekly production schedules.

**Custodians:** Plaintiff agrees a "mutual exchange of custodians . . . would be beneficial" and claims "X is willing to disclose its custodians in principle," but then pivots to discuss Defendants' production pace. Pl.'s Sept. 6 Ltr. Section B. Defendants propose a mutual exchange of all custodians by Friday, September 27, 2024.[1]

**Trade Secrets:** Defendants appreciate Plaintiff's clarification that it is not withholding any relevant documents based on the objection that these documents are trade secrets, which is not an appropriate basis for withholding any documents in this case. Defendants understand that Plaintiff has committed to producing documents sufficient to show how "X leverages a variety of controls and settings that advertisers and users may select from that, in combination, influence which posts and advertisements will appear to a particular user on the Platform." Pls. Sept. 6 Ltr. Section C. Defendants expect at minimum for Plaintiff to produce documents reflecting—in detail—the algorithms X references in its amended complaint. Please confirm Plaintiff will produce these documents.

**Musk's Relevance:** Defendants seek discovery into the statements and documents of X's CTO, owner, and chairman in a lawsuit X chose to bring that turns on facets of X's business. Plaintiff agrees only to "produce relevant documents from Musk as a custodian when they are responsive to Defendants' non-harassing requests[.]" Pl.'s Sept. 6 Ltr. Section D. But none of Defendants' requests are harassing, and Plaintiff cannot unilaterally declare something irrelevant simply because it does not want to produce it. *See S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) (discovery requests are relevant if there is "'any possibility' that the information sought may be relevant to the claim or defense of any party").

Plaintiff has failed to adequately respond to Defendants' thorough explanation in their August 16 letter of Musk's relevance to this case. *See* Defs.' Aug. 16 Ltr. Section I.C. To briefly reiterate, Musk is responsible for X's policies, operations, and strategy, and is thus plainly relevant to this

---

[1] Defendants also dispute Plaintiff's characterizations of their productions. Defendants have produced *thousands* of custodial documents from both Eric Hananoki and Angelo Carusone, in addition to other custodians. Plaintiff complains that it has received one email written by Mr. Hananoki, but ignores the hundreds of chat communications, draft articles, and emails received by Mr. Hananoki in Defendants' productions to date. In addition, Defendants' May 28, 2024 production included 494 gigabytes of files that belonged to Mr. Hananoki. Discovery is ongoing, and Defendants will produce all non-privileged emails written by Mr. Hananoki responsive to Plaintiff's requests.



1700 Seventh Ave, Suite 2100 | Seattle, WA 98101

lawsuit. Musk's ownership of X and the well-documented impact he has had on that social media platform and its advertisers are central to Defendants' defenses in this case. Because Musk's internal communications and documents about advertisers, content moderation, and/or MMFA bear on key issues in this litigation, Defendants' discovery requests are relevant to their defenses, whether they directly seek information about Musk, *see* Defs.' First RFP No. 12 (seeking information about Musk's phone), or whether they seek information over which Musk likely has relevant communications, including about the motivations behind this lawsuit. *See, e.g*., Defs.' First RFP No. 8 (seeking documents and communications mentioning Defendants).

We understand your response to mean that Plaintiff refuses to search Musk's custodial files and produce all non-privileged documents responsive to Defendants' requests, and that this issue is ripe for adjudication from the Court. Please let us know immediately if our understanding is incorrect.

**Denials "as written":** Plaintiff has not responded to the actual issue raised in Defendants' August 16 letter: Plaintiff's current discovery responses that inappropriately deny many RFAs "as worded" or "as written" are insufficient. *See* Pl.'s R&Os to Defs.' First RFA Nos. 1, 2, 4; Pl.'s R&O to Defs.' Second RFA Nos. 2, 3, 4, 5, 6, 9–73 (subpart "A"). Plaintiff must specify which portion of Defendants' discovery requests it is denying "as written." *See, e.g., XL Specialty Ins. Co. v. Bollinger Shipyards, Inc*., No. 12-2071, 2014 WL 295053, at *4–5 (E.D. La. Jan. 27, 2014) ("Partial denials 'as written' render the responses vague and evasive."). If Plaintiff now intends to "deny" all or certain portions of Defendants' discovery requests, then it should amend its responses immediately to state as much.

**Vagueness objections:** Defendants' August 16 letter reminded Plaintiff that the instructions Defendants provided alongside their discovery requests expressly direct Plaintiff to seek clarification prior to lodging vagueness objections. Plaintiff, by contrast, included no such instructions with its discovery requests. Defendants await Plaintiff's response to Defendants' clarification on purportedly "vague" terms in response to specific discovery requests.

**Inadequate document identification:** In their August 16 letter, Defendants raised Plaintiff's deficient interrogatory responses in which Plaintiff's "answered" by vaguely alluding to future document productions. *See* Defs.' Aug. 16 Ltr. Section I.F. It is Defendants' understanding that Plaintiff has now committed to amending its deficient responses consistent with its obligations under Rule 33(d)(1), and to providing specific Bates-numbers of relevant documents responsive to Defendants' interrogatories.[2] Defendants expect that this production will happen promptly.

---

[2] Plaintiff tries and fails to equate Defendants' own discovery objections and responses with Plaintiff's deficient discovery responses. Defendants objected to Interrogatories 7 and 8 in part as duplicative precisely because those Interrogatories sought information that Plaintiff already



**X's capabilities:** X insists that it is unable to verify the authenticity of the content pairings from the Platform that Defendants have included in their Requests for Admission. *See* Pl.'s R&O to Defs.' First RFA No. 5; Pl.'s R&O to Defs.' Second RFA No. 9–73 (subpart "B"). But in addition to Plaintiff's representations Defendants point to in their August 16 letter, X has recently admitted that "[e]ach post and ad [on the Platform] is represented by an internal ID" and that consequently, X engineers were able to "identif[y] the IDs of the ads and posts in the November 2023 Media Matters articles." Pl.'s R&O to Defs.' Third Interrogatory No. 11. X also admitted it is capable of having "X engineers check[] the digital logs using the post and ad IDs to assess how many times [] ads and posts screenshotted [] appeared next to each other, and which users saw those placements." *Id*. Defendants request that X use those same capabilities now in a good faith effort to answer Defendants' discovery requests, or explain why it refuses to do so.

Sincerely,

Abha Khanna
Partner | Elias Law Group

---

requested in certain Requests for Production. Defendants provided detailed and thorough narrative responses to those Interrogatories, and only directed Plaintiff to Defendants' forthcoming responses to X's Requests for Production for specific, duplicative information, and identified the specific forthcoming information. *See* Defs.' R&O to Pl.'s First Interrogatories Nos. 7, 8.

4

# Tab 25

# STONE HILTON

September 27, 2024

***Via Electronic Mail***

Abha Khanna
ELIAS LAW GROUP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
akhanna@elias.law
(206) 656-0177

      Re:    *X Corp. v. Media Matters for America, et al.*, No. 4:23-cv-01175-O

Ms. Khanna:

As stated in our letter dated September 6, 2024, Plaintiff divided its response to your August 16, 2024 letter into two parts. Below please see Plaintiff's response to Section II of your letter which addresses each point in turn.

**A.**    **Defendants' First Set of Discovery Requests**

    **1.**    **Requests for Production**

        **a)**    **Request for Production No. 1**

We appreciate and respect your clarification that Defendants do not seek all of X's algorithms but only those that Plaintiff referred to when it used the term "algorithm" in its Amended Complaint. Plaintiff agrees that the "algorithm" of the Platform is a part of this case, but that is true only insofar as the core tortious conduct at issue was Defendants' manipulation of the algorithm in the November 2023 articles. Accordingly, X is presently searching for and producing documents that will show Defendants' manipulation of the algorithm as well as the nonprivileged documents related to the investigation that X undertook that uncovered and exposed Defendants' manipulation. Likewise, X will also search for and produce documents and communications sufficient to show how X leverages a variety of controls and settings that advertisers and users may select from that, in combination, influence which posts and advertisements will appear to a particular user on the Platform.

Regarding Musk's statement about the algorithm, Defendants appear to have a misunderstanding of both Musk's comments and of the algorithm itself. The algorithm that



determines what posts are recommended to a given user and the algorithm that determines what advertisements are shown to a particular user are not one and the same and do not run off the same source code.

Plaintiff hopes that this will clear up any confusion that Defendants have regarding X's algorithms. Additionally, Plaintiff trusts that the documents that it has and will continue to produce will also clarify this issue, eliminating the need for Court intervention.

Accordingly, Plaintiff will stand on its objections and response to Defendants' Request for Production No. 1 as stated in its Amended Responses and Objections and in accordance with the reasons stated in its letter dated September 6, 2024.

### b)  Request for Production No. 2

Plaintiff stands on its objections and response to Defendants' Request for Production No. 2 as stated in its Amended Responses and Objections and in accordance with the reasons stated in its letter dated September 6, 2024.

### c)  Request for Production Nos. 3 and 4

Defendants' request for every single document and communication regarding content moderation on the Platform is facially overbroad. Faced with this objectionable request, Plaintiff specifically stated which portions of the request it found unobjectionable and what documents it was willing to produce in the spirit of good faith, although it would have been well within its rights under the Federal Rules to simply stand on its overbreadth objection and refuse to search for or produce responsive documents.

In limiting Defendants' overly broad request, Plaintiff focused on the claims and defenses that are at issue in this case. This is not a case about whether and how X's content moderation policies have changed over time—although X has agreed that it will produce both its present and historical policies in the spirit of open discovery. Instead, this case is about whether the statements published in the November 2023 articles were accurate and whether Defendants tortiously interfered with Plaintiff's contracts and business relations with advertisers. Accordingly, it is not proportional to require X to search for, review, and produce millions of documents related to its content moderation decisions. Plaintiff's response strikes the proportional balancing test required by the Federal Rules.

As Plaintiff has clarified multiple times, Plaintiff will conduct a reasonable inquiry and limit its search and production to just those individuals who Plaintiff has identified as potentially possessing relevant documents.

As such, Plaintiff will stand on its objections and response to Defendants' Request for Production Nos. 3 and 4 as stated in its Amended Responses and Objections.

### d)  Request for Production No. 5

Defendants claim in your letter that their request was limited to documents showing "X's awareness of and internal communications about the existence and increase of Disputed Content on its Platform." But this is simply not the case. Instead, Defendants requested "All documents and communications" that so much as "refer[ed] to Disputed Content on the Platform." Accordingly, as with Request for Production Nos. 3 and 4, X was forced to explain the specific

portions of this facially overbroad request that were not objectionable and which documents it was willing to produce. In doing so, Plaintiff fairly limited the request to the disputed content that was referenced in Defendants' tortious articles.

Additionally, while Plaintiff appreciates the limitation in the scope of the request that Defendants propose in their letter, this limitation appears to be based in part off a perceived "increase of Disputed Content on its Platform" that has no factual basis or predicate. As such, this is an unworkable limitation as Plaintiff cannot conduct a search on this basis.

Accordingly, Plaintiff will stand on its objections and response to Defendants' Request for Production No. 5 which strikes a reasonable balance of producing documents related to the content that Defendants wrote about in their articles without unfairly subjecting Plaintiff to a review of millions of irrelevant documents.

### e)      Request for Production No. 6

Plaintiff appreciates that Defendants will not challenge Plaintiff's limitation of this request to just the advertisers for which it seeks compensation for lost revenue. Regarding the remainder of the request and objections, Plaintiff stands on its objections and response to Defendants' Request for Production No. 6 as stated in its Amended Responses and Objections and in accordance with the reasons stated in its letter dated September 6, 2024.

### f)      Request for Production No. 7

Plaintiff understands Defendants' letter to be proposing a new request in place of their original request that was overly broad and unduly burdensome. Unfortunately, the new request suffers from many of the problems the original did. Plaintiff has limited its tortious interference claim to selected advertisers. Yet here, Defendants want discovery into the motivation and rationales of other advertisers—which is simply irrelevant to Plaintiff's claims. For example, if Company Y stopped advertising on X because its advertising budget was cut during a particular quarter, that rationale has no bearing on whether IMB, Intel, ESPN, AT&T, Apple, or Siemens ceased advertising on the Platform because of Defendants' tortious conduct.

Additionally, Plaintiff trusts that many of Defendants' concerns were ameliorated after they reviewed Plaintiff's third document production. Plaintiff produced communications with advertisers—without limitation—that mentioned Media Matters, the Articles, Hananoki, or Carusone. As such, Defendants have already received numerous communications with advertisers regarding their rationale to "terminate, pause, or decline advertising on X" who are not part of the group of select advertisers listed in Plaintiff's interrogatory responses.

Accordingly, Plaintiff will stand on its objections and response to Defendants' Request for Production No. 7 as stated in its Amended Responses and Objections.

### g)      Request for Production No. 8

Plaintiff stands on its objections and response to Defendants' Request for Production No. 8 as stated in its Amended Responses and Objections and in accordance with the reasons stated in its letter dated September 6, 2024.

### h)      Request for Production No. 9

Defendants request for documents related to Plaintiff's overall advertising revenue—as opposed to just the advertising revenue of the select advertisers who Defendants tortiously interfered with—is based on a faulty premise. Defendants assume that general revenue declined during that period, and that this fact will let them off the hook from the consequences of their torts. But regardless of whether general advertising revenue went up or down, that has no bearing on whether the select advertisers at issue were tortiously interfered with by Defendants, leading them to suspend advertising on the Platform and causing Plaintiff's damages in this case.

Accordingly, Plaintiff will stand on its objections and response to Defendants' Request for Production No. 9 as stated in its Amended Responses and Objections and in accordance with the reasons stated in its letter dated September 6, 2024.

### i)      Request for Production Nos. 10 & 11

Plaintiff stands on its objections and response to Defendants' Request for Production Nos. 10 and 11 as stated in its Amended Responses and Objections and in accordance with the reasons stated in its letter dated September 6, 2024.

### j)      Request for Production No. 12

As previously stated in Plaintiff's letter dated September 6, 2024, Plaintiff's litigation to seek redress for Defendants' tortious acts does not open the door for them to continue their campaign of harassment of Mr. Musk via harassing discovery requests. This extends to requests that do not seek documents related to the case, but instead are related to Mr. Musk's telephone usage. Plaintiff will not allow Defendants to abuse the discovery process in this way.

Plaintiff accordingly stands on its objections and response to Defendants' Request for Production No. 12 as stated in its Amended Responses and Objections and in accordance with the reasons stated in its letter dated September 6, 2024.

### k)      Request for Production No. 13

Defendants requested "all documents and communications regarding payments made to X users related to X's revenue sharing programs." Now in your letter, you state that Defendants "do not seek all communications" regarding revenue sharing programs. This new interpretation runs directly counter to the request that was facially overbroad.

Accordingly, Plaintiff will stand on its objections and response to Defendants' Request for Production No. 13 as stated in its Amended Responses and Objections and in accordance with the reasons stated in its letter dated September 6, 2024.

### l)      Request for Production No. 14

Defendants requested "all documents and communications" regarding how users can change how advertisements are shown to users. But given that Plaintiff has already produced, or will produce, its policies and procedures in that regard, and it has also agreed to produce all non-privileged communications regarding how Defendants manipulated those policies and procedures, producing additional communications would add no additional value, while imposing a large additional burden on Plaintiff. A sufficient-to-show limiting instruction, here, strikes the proper proportional balance that the Federal Rules require.

Accordingly, Plaintiff stands on its objections and response to Defendants' Request for Production No. 14 as stated in its Amended Responses and Objections and in accordance with the reasons stated in its letter dated September 6, 2024.

### m)    Request for Production No. 16

Defendants once again misunderstand the core issues in this case, this time claiming that a "central theme[] is content moderation." It is not. This case concerns whether Defendants manipulated X's algorithm and published articles that defamed X and tortuously interfered with X's contracts and business relationships with advertisers. The underlying content moderation policies are only at issue in so far as Defendants misrepresented them.

Nevertheless, in the spirit of free and open discovery, Plaintiff has agreed to produce documents to identify the individuals involved in developing X's hateful content policy. This appears to be the only content moderation policy that was even vaguely referenced by Defendants' articles. For example, Plaintiff's content moderation policies with respect to cybercrime or the sale of illegal goods is facially irrelevant to this case. Regardless, those policies are publicly available. Plaintiff has even already produced its current policies and all versions of its hateful conduct policy dating back to November 2022. Regarding the limiting date instruction, Plaintiff accepts the proposed expansion of the search range from documents created since November 2022 to those created after October 28, 2022.

Accordingly, Plaintiff stands on its objections and response to Defendants' Request for Production No. 16 as stated in its Amended Responses and Objections and in accordance with the reasons stated in its letter dated September 6, 2024.

### n)    Request for Production No. 17

Defendants' initial request for "all documents and communications" regarding any advertiser who ever paused an advertising campaign for any reason unrelated to the issues in this case was overbroad and unduly burdensome on its face. Nevertheless, as Plaintiff did with respect to numerous other requests on which it could have simply rested on its objections, Plaintiff explained what documents it was willing to produce that reflected the proper proportional balance required by the Federal Rules. Defendants now appear to recognize their initial response was overbroad with a newly provided replacement request.

Review of the new request suggests that Defendants' remaining concerns have already been addressed. Defendants seek, in addition to the communications with the select advertisers who were tortuously interfered with, communications about those advertisers. Plaintiff is casting a broad net for the production of all communications with the select advertisers mentioned in Plaintiff's interrogatory responses. For avoidance of doubt, Plaintiff will amend its response to clarify its position in the following manner:

> X will produce non-privileged, internal documents and communications about the advertisers listed in response to Interrogatories 1 and 4 focused on their existing or prospective advertising business relationships with X from April 14, 2021 to present.

Other than the change specifically made above, Plaintiff will stand on its remaining objections and response to Defendants' Request for Production No. 17 as stated in its Amended Responses and Objections and in accordance with the reasons stated in its letter dated September 6, 2024.

### o)      Request for Production Nos. 18 & 22

Plaintiff stands on its objections and response to Defendants' Request for Production Nos. 18 and 22 as stated in its Amended Responses and Objections and in accordance with the reasons stated in its letter dated September 6, 2024.

### p)      Request for Production No. 23

Defendant claims in response to Plaintiff's relevancy objection that they are "entitled" to test X's commitment to "free expression and open discourse" through a facially overbroad request into "all internal documents and communications" that might show "X has expressed negative views about media outlets." But Defendants are not "entitled" to probe whatever topics they want during discovery. Instead, requests for production must be limited to documents that are "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Assuming that documents existed that showed X made negative comments about the media in the past, this would not make Plaintiff's tortious interference and defamation claims any more or less true. Only Defendants' intent and motive is relevant to this case.

Accordingly, Plaintiff stands on its objections and response to Defendants' Request for Production No. 17 as stated in its Amended Responses and Objections and in accordance with the reasons stated in its letter dated September 6, 2024.

### q)      Request for Production No. 24

Plaintiff stands on its objections and response to Defendants' Request for Production No. 24 as stated in its Amended Responses and Objections and in accordance with the reasons stated in its letter dated September 6, 2024.

### r)      Request for Production No. 25

Defendants requested "all documents and communications" related to suspension of user accounts from 2021 to the present without any limitation to any of the disputed issues in this case. This request was facially overbroad and not proportional to the needs of the case. Accordingly, Plaintiff agreed to produce its analytics that will show whether the number of suspended users has gone up or down, thus showing "the steps that X has taken to minimize— or exacerbate—the amount of Disputed Content on the platform." The communications between X and any one suspended user on the platform is simply not relevant to any element that would establish or disprove whether Defendants engaged in tortious interference and defamation. Even if this were limited to internal communications, as Defendants appear to propose in their letter, this would still impose an undue burden on Plaintiff, as internal discussions about any one particular user of the Platform are similarly irrelevant to any element in contention.

Accordingly, Plaintiff stands on its objections and response to Defendants' Request for Production No. 25 as stated in its Amended Responses and Objections and in accordance with the reasons stated in its letter dated September 6, 2024.

### s)      Request for Production No. 26

Defendants requested "all documents and communications related to Elon Musk's activity on the X Platform." Defendants now claim that Plaintiff is "obligated" to produce *all* of these documents. But this request is facially overbroad. Mr. Musk is not a plaintiff or defendant in this case. Accordingly, Plaintiff is producing documents related to Musk if responsive to other RFPs. So, for example, because X has committed to producing all communications with the select advertisers that Defendants tortiously interfered with, Defendants will receive communications that include Musk and the advertisers to the extent they occurred. This limiting instruction properly reduces the burden imposed on Plaintiff to just the review and production to the documents that are relevant in establishing the claims and defenses in this case.

Plaintiff also understands that Defendants' obviously apparent animosity towards Musk is what led, in part, to their tortious conduct and that this animosity supports both the elements of malice and intent. And, as stated several times before, Plaintiff will not allow Defendants to misuse the discovery process to continue their pattern and practice of harassment against Musk. This request, which as written seeks all documents and communications concerning Musk's personal usage of the Platform, unrelated to the allegations in this case, is nothing more than another attempt to harass.

Accordingly, Plaintiff stands on its objections and response to Defendants' Request for Production No. 26 as stated in its Amended Responses and Objections and in accordance with the reasons stated in its letter dated September 6, 2024.

### t)      Request for Production No. 27

Plaintiff stands on its objections and response to Defendants' Request for Production No. 27 as stated in its Amended Responses and Objections and in accordance with the reasons stated in its letter dated September 6, 2024.

### u)      Request for Production No. 28

Defendants claim that communications related to the termination or suspension of X employees are relevant to its defense. But Defendants cite no element of any of Plaintiff's claims that would be refuted by that evidence, nor do they explain how documents responsive to this request are likely to lead to admissible evidence to support or refute any such element. Likewise, the articles themselves do not reference any X employees who were terminated or suspended. Plaintiff is forced to conclude that the request is thus for the purpose of harassing Plaintiff.

Plaintiff stands on its objections and response to Defendants' Request for Production No. 28 as stated in its Amended Responses and Objections and in accordance with the reasons stated in its letter dated September 6, 2024.

### v)      Request for Production No. 29

Defendants again request communications about Musk personally, separate and apart from the posts that that were written about in the articles. Here, Defendants seek communications regarding public statements concerning various protected classes. But Defendants do not even bother to identify which public statement they are talking about or regarding which they seek discovery. This is facially objectionable, with Defendants transparently hoping to find some document that they can take out of context and use to try and embarrass Musk—an individual

who, as previously stated, is neither a plaintiff nor a defendant. This harassment is wholly improper under the Federal Rules.

Accordingly, Plaintiff stands on its objections and response to Defendants' Request for Production No. 29 as stated in its Amended Responses and Objections and in accordance with the reasons stated in its letter dated September 6, 2024.

### 2.    Requests for Admission

#### a)    Request for Admission No. 1

Plaintiff stands on its objections and response to Defendants' Request for Admission No. 1 as stated in its Objections and Responses in accordance with the reasons stated in its letter dated September 6, 2024.

#### b)    Request for Admission No. 2

Plaintiff requests that Defendants undertake an investigation to determine whether "some" of the hundreds of millions of users on the X platform have been compensated by X after "posting, creating, or promoting Disputed Content." Defendants now say that "some users" is not vague because the request does not ask for specific users. But this simply poses a different problem, as the request cannot be answered without undue burden after a reasonable inquiry.

Additionally, Defendants have defined Disputed Content as "'extreme' and 'fringe' content, as those terms are used in the Amended Complaint, see ECF No. 37 ¶ 9, and includes but is not limited to "content expressing skepticism about the Holocaust, content expressing negative views or attitudes regarding Jewish people, Muslim people, Black people, Hispanic or Latino people, women, members of the LGBTQIA+ community, immigrants, non-English speakers, Asian people, or indigenous peoples, and content expressing positive views or attitudes regarding Adolf Hitler, white nationalism, or white supremacism." The words "extreme" and "fringe" are necessarily subjective and different content will be considered extreme by different individuals. Further, although Defendants' definition provides examples, it is expanded by use of the phrase "includes but is not limited to." Accordingly, there is no way for Plaintiff to provide an objective answer to this Request for Admission after conducting a reasonable inquiry.

Accordingly, Plaintiff will stand on its objections and response to Defendants' Request for Admission No. 2 as stated in its Responses and Objections and in accordance with the reasons stated in its letter dated September 6, 2024.

#### c)    Request for Admission No. 4

Plaintiff stands on its objections and response to Defendants' Request for Admission No. 4 as stated in its Responses and Objections and in accordance with the reasons stated in its letter dated September 6, 2024.

#### d)    Request for Admission No. 5

Defendants asked a specific question in this request—namely, whether the images of advertisements next to user content reproduced in the articles was "authentic." But this question refers to something that Defendants created, not Plaintiff. Furthermore, a key factual predicate of this litigation is that these advertising pairings were the result of Defendants' manipulation of X's algorithm.

Accordingly, Plaintiff will stand on its objections and response to Defendants' Request for Admission No. 5 as stated in its Responses and Objections and in accordance with the reasons stated in its letter dated September 6, 2024.

### e)   Request for Admission No. 7

This request asks whether more advertisers terminated, ceased, suspended, or otherwise discontinued their business relationship during one period than another. Besides the answer to this question being irrelevant, it is impossible to answer after a reasonable inquiry, notwithstanding Defendants' clarification, because X does not track this information in a manner that would allow it to make such a comparison and therefore cannot admit or deny it.

Accordingly, Plaintiff will stand on its objections and response to Defendants' Request for Admission No. 7 as stated in its Responses and Objections and in accordance with the reasons stated in its letter dated September 6, 2024.

### 3.   Interrogatories

### a)   Interrogatory No. 2

Identifying specific contractual terms that create a "legal right of future performance" necessarily requires legal analysis and a legal conclusion. Regardless, under Rule 33(d), Plaintiff is within its rights to produce the documents themselves in response to this request. Defendants will then be able to read the contractual documents themselves and make their own determinations as to what "legal right" is created by those contracts.

Accordingly, Plaintiff will stand on its objections and response to Defendants' Interrogatory No. 2 as stated in its Responses and Objections and in accordance with the reasons stated in its letter dated September 6, 2024.

### b)   Interrogatory No. 5

Defendants' complaint regarding Plaintiffs' response appears to be limited to Plaintiff's choice to produce documents under Rule 33(d) rather than listing out every instance in which advertisers communicated to Plaintiff that they were ceasing advertising on the Platform as a result of Defendants' articles. Plaintiff is well within its right to do so. Indeed, Defendants did the same in response to several of Plaintiff's interrogatories.

Accordingly, Plaintiff will stand on its objections and response to Defendants' Interrogatory No. 5 as stated in its Responses and Objections and in accordance with the reasons stated in its letter dated September 6, 2024. For avoidance of doubt, Plaintiff will supplement its responses to identify bates-numbered documents that reflect Plaintiff's answers to this interrogatory. Plaintiff expects that Defendants will do the same, consistent with Rule 33(d).

### c)   Interrogatory No. 6

Plaintiff stands on its objections and response to Defendants' Interrogatory No. 6 as stated in its Responses and Objections and in accordance with the reasons stated in its letter dated September 6, 2024.

## B.   Defendants' Second Set of Discovery Requests

1. **Requests for Production**

    a)    **Request For Production No. 33**

Defendants seek all documents and communications regarding any individual who Plaintiff attributes responsibility or blame for the loss of any advertiser on the Platform. As written, this is overbroad and includes facially irrelevant communications. Without limitation to the articles or the advertisers at issue, this request would include, as a hypothetical, communications about and identifying such "responsible" individuals as those decision-makers who determine advertising budgets at a particular company who chose to reduce ad spending in a particular quarter for idiosyncratic business reasons. And, without limitation in time other than the agreed April 2021 cutoff date, this would require the production of an immense volume of communications generated in the ordinary course of Plaintiff's business and standard reporting about advertisers that have nothing to do with the Articles.

Further, the documents that Defendants seek are simply not relevant to Plaintiff's claims. For example, if Company Y stopped advertising on X because its advertising budget was cut during a particular quarter (to continue the previous hypothetical), that idiosyncratic reason has no bearing on whether the selected advertisers ceased advertising on the Platform because of Defendants' tortious conduct.

Instead, the only relevant documents responsive to this request are those identified in Plaintiff's response—the documents and communications about the select advertisers whose relationship with Plaintiff was damaged by Defendants. X is not limiting these communications to just those concerning the articles but including any internal communication regarding any reason or "responsibility" for the loss of these advertisers so that Defendants will receive a full picture of the advertising relationship before and after their tortious conduct.

As such, Plaintiff will stand on its objections and response to Defendants' Request for Production No. 33 as stated in its Responses and Objections and in accordance with the reasons stated in its letter dated September 6, 2024.

2. **Requests for Admission**

    a)    **Request For Admission Nos. 2 & 4**

Plaintiff stands on its objections and response to Defendants' Request for Admission Nos. 2 & 4 as stated in its Responses and Objections and in accordance with the reasons stated in its letter dated September 6, 2024.

    b)    **Request For Admission Nos. 5 & 6**

Plaintiff appreciates the clarification that Defendants provide in response to Plaintiff's objections and responses to Request for Production No. 5. Plaintiff stands on its objections and response to Defendants' Request for Admission No. 5 as stated in its Responses and Objections and in accordance with the reasons stated in its letter dated September 6, 2024.

Regarding Plaintiff's response to Request for Production No. 6, in response to Defendants' imprecise request which used the phrase "approximately 300," Plaintiff provided a clear answer with respect to the actual headcount involved with content moderation on two specific dates. Plaintiff's precise answer does not change after review of Defendants' letter.

c)     **Request For Admission Nos. 9(A)-73(B)**

In response to these requests, Plaintiff provided a detailed objection and response, explaining how a yes or no answer is impossible to give in response to Defendants' numerous requests related to purported screenshots. Rule 36 requires parties to conduct a reasonable inquiry when the facts are not previously known. Given that Plaintiff had no prior knowledge of the purported screenshots it cannot be expected to reasonably devote the significant investment in time and engineering resources to comb through X's millions of posts per day and adjacencies to determine whether the purported screenshots actually occurred or were the result of manipulation. Further, none of these images were posted in the articles, and are not probative as to whether the images in the Article were the result of manipulation.

Regarding Plaintiff's response, Plaintiff provided a full and complete answer as to why it was not able to answer in a yes or no fashion. Plaintiff has nothing further to add after review of Defendants' letter.

3.     **Interrogatories**

a)     **Interrogatory No. 7**

The Court entered an order in this case specifically providing a deadline for exchanging expert reports. Accordingly, Plaintiff declines to provide its expert opinion on damages early, in response to an interrogatory.

As stated in its Amended Complaint, Plaintiff seeks damages based on the revenue it lost from advertisers as a result of Defendants' tortious conduct. Plaintiff has since refined that position to focus in on the select advertisers who have been disclosed to Defendants. As such, Defendants are aware of the factual basis on which Plaintiff intends to ultimately base its expert opinion on damages. Defendants are able to conduct discovery into the underlying facts, for example, the amount of revenue these advertisers generated in past years, without circumventing the Court's order on expert opinions. Indeed, Plaintiff specifically stated in response to this interrogatory that it will produce documents showing those underlying facts.

Accordingly, Plaintiff will stand on its objections and response to Defendants' Interrogatory No. 7 as stated in its Responses and Objections and in accordance with the reasons stated in its letter dated September 6, 2024.

b)     **Interrogatory No. 8**

In their letter, Defendants baselessly accuse Plaintiff of acting in bad faith. Yet, Plaintiff asked an interrogatory that was incredibly overbroad and irrelevant to the claims and defenses at issues. As explained in Plaintiff's objections the interrogatory asks, among other things, for any advertiser who ceased advertising on the Platform as of January 1, 2022, the dates they terminated their advertising and the date they resumed. But X has hundreds of thousands of advertisers. These advertisers frequently cease advertising under Defendants' definition of a "temporary or permanent discontinuance of an advertising relationship" for business reasons, personal reasons, or no discernable reason at all. In other instances, as is the case with respect to the six advertisers previously identified to Defendants, the advertisers ceased their advertising relationship because of the Articles tortiously published by Defendants.

Again, the motivations of other advertisers are not relevant to establishing the motives of the select advertisers in question. For example, if a mom-and-pop pizza shop ceased advertising on January 2, 2022 because they were no longer advertising a New Year's special, but then started advertising a Valentine's Day special one month later, that would have to be reported under this interrogatory but could have no plausible relevance to whether Apple, or any of the other disclosed advertisers, ceased advertising on November 16, 2023 because of Defendants' tortious conduct.

Further, although Defendants now claim that they do not want a decade-and-a-half of data, that is not what they wrote in their interrogatory. But as illustrated by the example concerning the mom-and-pop pizza shop, this would encompass nearly all advertisers, as nearly all advertisers have had a "temporary … discontinuance of an advertising relationship" at some point after 2022. As another example, even if the interrogatory was limited to a particular company, that company may have temporarily paused at least one time each year that it advertised on the platform before ultimately ending its advertising relationship after Defendants' articles; as written, the interrogatory requires Plaintiff to log each time that a pause occurred and to try and identify a cause for pause. Were this interrogatory to be limited to the specific companies at issue it would thus be significantly less broad, but would still require Plaintiff to conduct an inquiry into irrelevant, decade-old facts.

Accordingly, Plaintiff will stand on its objections and response to Defendants' Interrogatory No. 8 as stated in its Responses and Objections and in accordance with the reasons stated in its letter dated September 6, 2024. However, to the extent that Defendants believe that this interrogatory can be limited and reworked via a meet-and-confer, Plaintiff is willing to engage with Defendants in good faith.

**b)      Interrogatory No. 9**

Plaintiff understands and appreciates Defendants' clarifications in response to Plaintiff's vagueness objections. It will interpret the interrogatory as if the clarifying phrases included in Defendants' letter were part of the interrogatory itself.

Taking into account Defendants' letter, Plaintiff's answer to Interrogatory No. 9 remains unchanged. Because X does not track the information Plaintiff requests, it is unable to identify which specific accounts Defendants seeks. If, instead, Defendants have specific accounts in mind that relate to the contents of the articles at issue in this lawsuit, discovery requests regarding those specific accounts might be more relevant and fruitful.

Accordingly, Plaintiff will stand on its objections and response to Defendants' Interrogatory No. 9 as stated in its Responses and Objections and in accordance with the reasons stated in its letter dated September 6, 2024.

*      *      *      *      *

As stated at the close of Plaintiff's last letter, X takes its discovery obligations seriously despite Defendants' numerous discovery inadequacies and continued refusal to make meaningful productions. We remain committed to addressing your questions and, if possible, avoiding or amicably resolving any discovery disputes without the need for judicial intervention.

Please do not hesitate to let us know if you have any questions regarding the issues addressed in this or the previous letter.

Very truly yours,

*/s/ Christopher D. Hilton*
Christopher D. Hilton
**STONE HILTON PLLC**
chris@stonehilton.com
(737) 465-3897

# Tab 26

# STONE HILTON

October 09, 2024

***Via Electronic Mail***

Abha Khanna
ELIAS LAW GROUP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
akhanna@elias.law
(206) 656-0177

      Re:   *X Corp. v. Media Matters for America, et al.*, No. 4:23-cv-01175-O

Dear Ms. Khanna:

     I am writing in response to your letter dated September 6, 2024 (the "Letter"), which addressed Plaintiff's objections and responses to Defendants' third set of discovery.

     Section I of your Letter rehashes ground previously addressed by Plaintiff. Plaintiff will not reiterate its arguments with respect to the two issues raised in Section I and stands on its objections and positions identified in Plaintiff's prior correspondence.

     The issues that you describe in Section II of your letter are addressed below.

**Plaintiff's Response to Defendants' Asserted Additional Discovery Deficiencies**

    **1.**      **Defendants' Third Set of Interrogatories**

        **a)**      **Interrogatory No. 11**

     As Defendants are aware, Plaintiff is in the process of reviewing and producing documents on the biweekly schedule agreed by the Parties. Plaintiff anticipates producing additional documents responsive to Plaintiff's Interrogatory No. 11 and will amend its response to identify those documents in accordance with its obligations under Rule 33(d).

    **2.**      **Defendants' Third Set of Requests for Production**

        **a)**      **Request for Production No. 34**

     Defendants' Request for Production No. 34 seeks all transcripts of any deposition in which Elon Musk has ever been deposed. This request is not reasonable, relevant, or



App'x 481

proportionate. Among the various ways in which Request No. 34 is improper is the fact that Mr. Musk is associated with other companies such as Tesla and SpaceX, but Defendants failed to even limit the Request by excluding companies not involved in this litigation. It is thus, *inter alia*, facially overbroad and unduly burdensome.

Defendants now attempt to justify this Request by asserting that other depositions **could** be relevant to "X's financial status, X user policies, or polarizing statements." Even with this proposed limitation, however, the request is still unreasonable, irrelevant, and disproportionate.

With respect to "financial status," the term is vague and ambiguous.  Further, to the extent you seek information regarding X's revenue, that is information that can be obtained in a more convenient, less burdensome, and less expensive manner, namely, X has produced documents directly relating to revenue. Similarly, with respect to the X "user policies" such information can also be obtained in a more convenient, less burdensome, and less expensive manner, namely, X has produced the actual policies.

Finally, Defendants' new request for deposition testimony because such testimony **could** be "relevant" to "polarizing statements" is harassing and improper, among other things. First, Federal Rule of Civil Procedure 34(b) requires that a request for production or inspection "must describe with reasonable particularity each item or category of items to be" produced. Fed. R. Civ. P. 34(b)(1)(A). Rule 34 requires that Defendants provide sufficient information to enable Plaintiff to identify responsive documents.  The subjective and patently vague term "polarizing statements" does not meet this test. Second, such information is irrelevant. If Musk made a subjectively "polarizing statement" in public testimony, then that testimony is public, and Defendants have access to the information. If, instead, the testimony was confidential, then the statement is irrelevant because it has been heretofore unknown and cannot have had any influence on advertisers' decision to advertise or not on the X platform. Finally, this request violates Federal Rule of Civil Procedure 26(b)(2)(C) because if such information exists, it is necessarily public and Defendants have had ample opportunity to obtain the information from a public source.

Accordingly, Plaintiff stands on its objections and response to Defendants' Request for Production No. 34 as stated in its Responses and Objections and in accordance with the reasons stated here and in its prior discovery correspondence.

### b)      Request for Production No. 37

In its objections and responses, Plaintiff provided detailed objections explaining why Plaintiff's original request was irrelevant and harassing. Plaintiff then agreed to a compromise that complies with the proportionality test required by Rule 26. Rather than contest Plaintiff's objections, however, Defendants only claim that X's proposed compromise is "inappropriate." Given the overbreadth and irrelevance of the request, Plaintiff would have been within its rights to produce nothing in response. Plaintiff's agreement to produce deleted posts made prior to the November 16 Article was offered as a fair compromise.

Accordingly, Plaintiff will stand on its objections and response to Defendants' Request for Production No. 37 as stated in its Responses and Objections and in accordance with the reasons stated in its prior discovery correspondence.

c)      **Request for Production No. 40**

X will stand on its Responses and Objections to Defendants' Request for Production No. 40 and in accordance with the reasons stated in its prior discovery correspondence.

2.      **Defendants' Third Set of Requests for Admission**

a)      **Defendants' first bullet point**

Defendants appear to be requesting additional specificity in Plaintiff's responses for requests that are can only be partially admitted or that can only be admitted after a necessary clarification. Plaintiff's response clearly states the part of the request it is admitting and clarifies that the remainder of the request is denied. Because Defendants cannot identify any specific response that they find vague or confusing on this basis, Plaintiff will not amend its responses at this time. However, Plaintiff remains willing to meet and confer if there is such a request and will evaluate any such issue on a request-by-request basis.

b)      **Defendants' second bullet point**

Plaintiff has reviewed the case law provided by Defendants. Plaintiff confirms that it will stand on the response it made to Defendants' Request for Admission No. 82. With respect to Defendants' Request for Admission No. 83, Plaintiff intends to amend its answer as follows:

**AMENDED RESPONSE:** Admitted that Musk testified in a deposition on March 27, 2024 in connection with the case *Brody v. Musk*, Case No. D-1-GN-23-006883 (Travis Co. Dist. Ct.). The remainder of the request is denied.

c)      **Defendants' third bullet point**

Plaintiff appreciates Defendants' identification of the transcription error Plaintiff made that prevented Plaintiff from accessing the links provided in some of Defendants' requests for admissions. Plaintiff withdraws its objections regarding the links included in Defendants' Request for Admission No. 89 and No. 90.

d)      **Request for admission No. 87**

Plaintiff appreciates Defendants' clarification that it intended to define the phrase "large advertisers" to have the same meaning as defined in X's Amended Complaint. X will accordingly amend its response as follows:

**AMENDED RESPONSE:** Admitted only to the extent that X users may follow any other user of the Platform with a public account, including large advertisers, and may follow accounts set to private with the private accountholder's permission. The remainder of the request is denied.

e)      **Request for admission No. 88**

Defendants' complaint regarding Plaintiff's objections to Defendants' Request for Admission No. 88 focuses on Plaintiff's vagueness objection. Plaintiff explained, however, that the phrase "are able to" is not vague in all instances, but it is vague "in context." Here, the phrase is vague for the reasons described in X's objection.

Regardless of this objection, Plaintiff's response to this request was "Denied." Plaintiff maintains its response and does not intend to revise its response at this time.

<div align="center">*     *     *     *     *</div>

As stated at the conclusion of all of Plaintiff's discovery letters, X takes its discovery obligations seriously despite Defendants' numerous discovery inadequacies and continued refusal to make meaningful productions. We remain committed to addressing your questions and, if possible, avoiding or amicably resolving any discovery disputes without the need for judicial intervention.

Please do not hesitate to let us know if you have any questions regarding the issues addressed in this or any previous letter.

Very truly yours,

*/s/ Christopher D. Hilton*
Christopher D. Hilton
**STONE HILTON PLLC**
chris@stonehilton.com
(737) 465-3897

# Tab 27



ELIAS
LAW
GROUP

**1700 Seventh Ave, Suite 2100 | Seattle, WA 98101**

October 14, 2024

**VIA ELECTRONIC MAIL**

Christopher D. Hilton
Stone | Hilton
P.O. Box 150112
Austin, TX 78715
(737) 465-3897

**RE: Defendants' Deficiency Letter to Plaintiff in *X Corp. v. Media Matters for America, et al.*, Case No. 4:23-cv-01175 (N.D. Tex).**

Counsel,

Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone have now received Plaintiff X's September 27 and October 9 responses to Defendants' deficiency letters. Defendants respond below, and—as Defendants noted in their September 25 letter—note that based on the parties' correspondence, certain issues appear ripe for court intervention.

**Musk Relevance.** Plaintiff refuses to produce documents and communications from "Musk personally, separate and apart from the posts that that [sic] were written about in the articles." Sept. 27 Ltr. at 7. The amended complaint, however, alleges as "false and malicious" actions and statements made by Defendants regarding Musk personally, separate and apart from the November articles. *See, e.g.*, Am. Compl. ¶ 4 ("Since the first news of Musk's interest in the company, Media Matters has falsely portrayed Twitter, now X, as a risky, unsafe platform for advertisers."); *id.* ¶ 17 (alleging as "false and malicious" Mr. Carusone's alleged attribution of the seeming increase in extremism on the X platform to "the key decision-maker there Elon Musk, [who] doesn't really see a problem or at least seemingly, with a lot of this content because it's also a reflection of his own worldview"). Thus, because X has put directly at issue the truthfulness of statements that Mr. Musk himself has contributed—through his personal communications and activities—to rendering X an unsafe platform for advertisers, and that extremist content seems to reflect Mr. Musk's own worldview, Defendants are entitled to discovery into these matters.

If X's position is that the truthfulness of Media Matters's statements about Musk's personal views and leadership of X Corp. are not at issue, then it should notify Defendants by October 18 of its intent to amend its operative complaint to remove these allegations. Otherwise, Defendants believe

1



1700 Seventh Ave, Suite 2100 | Seattle, WA 98101

this dispute is ripe for judicial resolution and will move to compel responses to Requests for Production Nos. 12 and 26 and Interrogatory No. 6.[1]

**Imprecise and Unclear Denials of Requests for Admission.** As Defendants noted in their August 16 and September 25 letters, Plaintiff's current discovery responses that deny many RFAs "as worded" or "as written" are insufficient. *See* Pl.'s R&Os to Defs.' First RFA Nos. 1, 2, 4; Pl.'s R&O to Defs.' Second RFA Nos. 2, 3, 4, 5, 6, 9–73 (subpart "A"). Plaintiff must specify which portion of Defendants' discovery requests it is denying "as written." *See, e.g.*, *XL Specialty Ins. Co. v. Bollinger Shipyards, Inc.*, No. 12-2071, 2014 WL 295053, at *4–5 (E.D. La. Jan. 27, 2014) ("Partial denials 'as written' render the responses vague and evasive."). Defendants previously requested that if Plaintiff intends to "deny" all or certain portions of Defendants' discovery requests, then it should amend its responses immediately. Defs.' Sept. 25 Ltr. X has yet to do so. Similarly, Defendants' September 6 letter identified that X's responses to RFA Nos. 82, 83, 84, 85, and 87 lacked the requisite specificity by denying "the remainder" of requests without identifying which part of the request was being denied. X's October 9 letter asks Defendants to confirm which RFA responses are objectionable on this basis, but Defendants already identified the relevant RFAs in their September 6 letter: RFA Nos. 82, 83, 84, 85, and 87.

To avoid motions practice on this issue, Defendants request amended responses by October 18. Defendants remind X that they are entitled to seek fees if facts denied in discovery are later proven to be true. *See* Fed. R. Civ. P. 37(c)(2) (if a party fails to admit the truth of a fact requested under Rule 36, and the requesting party later proves the fact to be true, the requesting party may move for reasonable expenses, including attorney's fees, incurred in making that proof); *see also VeroBlue Farms USA Inc. v. Wulf*, 345 F.R.D. 406, 432 (N.D. Tex. 2021) (same).

**Refusal to Authenticate Pairings of Ads and Hateful Content from X Platform.** In response to Defendants' discovery requests, Plaintiff refuses to verify whether a series of screenshots appeared on the Platform. Plaintiff admits that it *can* verify ad pairings, Pl.'s Sept. 27 Ltr. A.2.(c), and that "a key factual predicate of this litigation" is X's allegation that the advertising pairings reflected

---

[1] Request for Production No. 12 is relevant regardless. Plaintiff does not dispute that Musk is a relevant custodian, that Musk publicly indicated while this case was pending that he intended to discontinue his phone number, *see* @elonmusk, X.com (Feb. 9, 2023, 3:26 AM ET), https://perma.cc/8SQU-ZA5C, or that Musk has a documented history of regularly switching to a new phone and sometimes destroying his old phone, *see* Mark Matousek, *Elon Musk regularly switches to a new phone and sometimes destroys the old one, a court document says*, BUSINESS INSIDER (Oct. 18, 2019, 10:09 AM), https://www.businessinsider.com/elon-musk-occasionally-destroys-cell-phone-document-says-2019-10. In addition to responding to this Request, please confirm that all of Plaintiff's identified custodians' cellphone records—including those of Mr. Musk—have been and will be included in X's search and production of responsive documents and communications.

2



1700 Seventh Ave, Suite 2100 | Seattle, WA 98101

in the November articles "were the result of Defendants' manipulation of X's algorithm," Sept. 27 Ltr. at 8. Yet X refuses to answer the relevant requests that bear directly on whether any "manipulation" was required to yield such pairings, Am. Compl. ¶ 8, or whether it is likely that "authentic" X users would have seen similar advertising pairings, Am. Compl. ¶ 15. Unless X notifies Defendants by October 18 that it intends to amend its complaint to remove allegations that Media Matters's reporting of advertising pairings was false and to remove allegations that it is not likely that non-MMFA X users would have seen similar advertising pairings, then Media Matters will move to compel responses to RFAs 5 and 9(A) through 73(B). Because X has already investigated the pairings referenced by RFA 5 and confirmed their authenticity, Defendants will request attorney fees for briefing this issue if X does not amend its response.

**Refusal to Provide Documents Related to Advertisers.** Plaintiff refuses to provide information that would tend to show the causes and effects of most advertisers' decisions to discontinue relationships with X during the relevant timeframe. *See* X's R&Os to Defs.' First RFP Nos. 7 (regarding the reasons behind past, present, or potential advertisers' decisions to advertise or not advertise on the Platform), 9 (regarding X's business revenue generated from advertisements on the Platform), 17 (regarding the suspension or otherwise discontinuance of a transactional relationship between X and its advertisers), 33 (regarding other individuals or entities that X blamed for loss of advertisers); Interrog. No. 8 (regarding specific information for each advertiser that terminated their advertising relationship with X since January 1, 2022). X argues that the only relevant information pertains to the six advertisers that X alleges discontinued their relationship with X because of Media Matters's reporting. But the reasons that those advertisers suspended any relationship with X is a key factual predicate of this litigation that is sure to be disputed, and the contemporaneous actions of other advertisers may provide circumstantial evidence of the reasons that advertisers left during this period (e.g., by supporting the defense that the six advertisers identified in response to Interrogatory No. 4 were likely to leave even if the November Articles were never published). In the spirit of good faith compromise, Defendants are amenable to condensing the time period for RFPs Nos. 7, 9, 17, and 33, and Interrogatory No. 8, by two years, seeking documents, communications, and information only from April 1, 2023 to the present. Plaintiff should notify Defendants by October 18 if this temporal limitation is acceptable and confirm its intent to amend its discovery responses and objections accordingly. Otherwise, Defendants believe these requests are ripe for court intervention.

**Failure to Provide Complete Contracts with Advertisers.** Since June 19, Plaintiff has represented that it will produce and identify documents responsive to Defendants' Interrogatory Nos. 2, 3, and 5, related to X's contractual arrangements with advertisers, and Interrogatory No. 7, supporting X's assertion of damages. *See* X's R&O to Defs.' First Interrogatory Nos. 2, 3, 5; X's R&O to Defs.' Second Interrogatory No. 7; *see also* Pl.'s Sept. 27 Ltr. Section A.3.(a)-(b). These documents, including those regarding damages, are crucial to the claims and defenses in this case.

You defend X's failure to properly respond to Defendants' Interrogatory Nos. 2, 3, 5 and 7 by pointing to Defendants' responses to X's Interrogatory Nos. 7 and 8. These are not analogous.

3



1700 Seventh Ave, Suite 2100 | Seattle, WA 98101

Defendants sought the identification of contract terms alleged to have been breached as a result of Defendants' conduct—information that supplies the predicate for X's claims and therefore must have been at X's fingertips when the complaint was filed. Yet, months later, Defendants remain completely in the dark about which contracts they are alleged to have interfered with. In contrast, X's interrogatories requested a four-part description of Defendants' "investigation, research, writing, review, and editing process," and Defendants responded with a multi-page narrative detailing those processes and highlighted that "further information about specific feedback Mr. Hananoki received" would be reflected in forthcoming document productions. That is, Defendants flagged for X that forthcoming documents would provide even more granular detail; they did not refrain altogether from answering the interrogatory. Unlike X, Defendants also produced with their interrogatory responses all relevant documents that had been collected and reviewed to date.

Still, X has not identified any documents that would be sufficient to answer Defendants' interrogatories, nor has it explained when those documents will be produced. There is no basis for further delay. To avoid the court's involvement, Defendants request updated and compliant responses to Interrogatory Nos. 2, 3, 5, and 7 by October 18. Defendants will update their interrogatory responses to include Bates-number citations to relevant documents by the same date.

**Refusal to Respond to Requests Regarding Content Moderation.** Plaintiff refuses to produce documents related to Defendants' requests regarding content moderation. *See, e.g.*, Defs. RFP Nos. 13, 25, 28. Plaintiff denies that content moderation is a central theme in this case, Pl.'s Sept. 27 Ltr. Section A.1.(m), which completely disregards that X's amended complaint alleges that Media Matters's statements about X's content moderation policies and practices were "false and malicious." *See, e.g.*, ECF No. 37, Am. Compl. ¶ 6, 17. For example, RFP No. 28 seeks documents related to the termination or suspension of X employees for reasons related to content moderation on X. Documents and communications responsive to this request could support Defendants' defense that contemporaneous facts supported their reporting about content moderation on X, and therefore those statements were not false. Plaintiff should confirm by October 18 whether and what possible limitations are workable for X, or of its intent to amend its operative complaint to remove these allegations. Otherwise, Defendants will seek court intervention.

<div align="center">*   *   *   *</div>

Defendants request prompt responses to the issues raised above.

Sincerely,

Abha Khanna
Partner | Elias Law Group

<div align="center">4</div>

# **Tab 28**

# STONE HILTON

October 18, 2024

*Via Electronic Mail*

Abha Khanna
ELIAS LAW GROUP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
akhanna@elias.law
(206) 656-0177

Re:     *X Corp. v. Media Matters for America, et al.*, No. 4:23-cv-01175-O

Dear Ms. Khanna:

I am writing in response to your letter dated October 14, 2024 (the "Letter"). If you believe a call would be helpful to discuss any of the matters discussed below, we would welcome the opportunity to speak with you.

**1.      Relevance of Documents Related to Elon Musk**

Plaintiff has previously addressed Defendants' concerns regarding discovery relating to Mr. Musk. For avoidance of doubt, Mr. Musk is one of Plaintiff's document custodians, as Plaintiff made clear in its correspondence dated October 4, 2024. But as Plaintiff has also made clear, the only relevance of Mr. Musk to the parties' claims and defenses is that Defendants' defamatory campaign against X Corp. was motivated in part by personal animus towards Mr. Musk. That does not, however, make Mr. Musk a party to this litigation. Accordingly, Defendants' Requests for Production Nos. 12 and 26, as well as Interrogatory No. 6, which target Mr. Musk *personally* for harassment, are beyond the bounds of Rule 26.

**2.      Requests for Admissions**

As previously stated, Plaintiff specifically and carefully responded to each of Defendants' requests for admission. In light of Defendants' insistence on this issue, Plaintiff will remove the phrase "as written" from each response where it appears and will serve amended responses no later than October 28, 2024. Regarding Defendants' assertion that Plaintiff must do more than identify which parts of the request it admits and deny the remainder, Plaintiff maintains that it has complied with Rule 36, and that any amendment would make its response less, and not more, clear.



### 3.    Screenshots

Plaintiff has also already addressed the enormous burdens associated with authenticating the purported screenshots provided by Defendants in their requests for admission, all of which were created by third parties and may be the result of various forms of manipulation. Nothing about these burdens is inconsistent with the enormous amount of resources that Plaintiff deployed to review the screenshots in Defendants' defamatory articles. Defendants' requests—especially without additional information—are not consistent with Rule 36's obligations.

### 4.    Documents Related to Advertisers

For the reasons Plaintiff has previously explained, whether other advertisers paused their campaigns does not bear on the mental state of the six advertisers listed in response to Defendants' Interrogatory No. 4. Although Plaintiff appreciates your offer to amend your requests and limit them, Plaintiff will not amend its objections or responses unless it determines that other advertisers should be included in its calculation of damages.

### 5.    Interrogatory Responses

Plaintiff disagrees with your assertion that Defendants' responses to Plaintiff's interrogatories and Plaintiff's responses to Defendants' interrogatories are different. Both parties indicated they would provide bates-numbered documents consistent with their obligations under Rule 33 at a future date. As you know, Plaintiff is currently in the process of reviewing and producing documents from over 70 custodians that may be responsive to Defendants' requests for production and interrogatories. It will be more efficient for Plaintiff to amend its interrogatory responses once instead of piecemeal. These amendments will occur well before the close of discovery.

In the meantime, and as a courtesy while Plaintiff continues that process, please be advised that a forthcoming amended response to Interrogatory No. 4 will include at least the following documents: XCORP_0007749-56, XCORP_0009413-14, XCORP_0006689-90.

### 6.    Requests Concerning Content Moderation

Defendants claim that Plaintiff refuses to produce documents related to content moderation. That is simply untrue. Plaintiff has provided detailed responses detailing the boundaries of the relevant documents that it intends to produce. In the Letter, Defendants now complain about Plaintiff's refusal to produce documents regarding the termination of certain X employees—it strains credibility to believe that these documents are relevant to the claims and defenses in this case. Plaintiff stands on its objections to the production of documents seeking that information.

Very truly yours,

*/s/ Alexander M. Dvorscak*
Alexander M. Dvorscak
**STONE HILTON PLLC**
alex@stonehilton.com
(737) 465-3897

# **Tab 29**

| | |
|---|---|
| **From:** | Michael Abrams |
| **To:** | Abha Khanna; Alex Dvorscak; Chris Hilton |
| **Cc:** | Aria Branch; Jacob Shelly; Elena Rodriguez Armenta; Ahmed, Amer S.; LeGrand, Andrew |
| **Subject:** | RE: X Corp. v. MMFA: Discovery Deficiency Letter |
| **Date:** | Wednesday, August 21, 2024 3:08:56 PM |

Abha,

We have carefully reviewed your letter and will provide a written response to the points the letter raises in due course. I did want to reassure you that X will be providing a meaningful production to Defendants next week and is in position to serve rolling productions thereafter. We think that next week's production will address some of the concerns that you have raised in the letter and are happy to meet and confer with you once you have reviewed our written response and the documents that are part of next week's production.

Best,

Michael

**From:** Abha Khanna <akhanna@elias.law>
**Sent:** Friday, August 16, 2024 4:38 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Chris Hilton <chris@stonehilton.com>; Michael Abrams <michael@stonehilton.com>
**Cc:** Aria Branch <abranch@elias.law>; Jacob Shelly <jshelly@elias.law>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; LeGrand, Andrew <ALeGrand@gibsondunn.com>
**Subject:** X Corp. v. MMFA: Discovery Deficiency Letter

Counsel,

Please see the attached letter regarding various issues with Plaintiff's discovery responses to date.

Best,
Abha

**Abha Khanna**
**Elias Law Group LLP**
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177
akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

Dated: October 18, 2024.

Respectfully submitted,
*/s/ Andrew LeGrand*

GIBSON, DUNN & CRUTCHER LLP
Andrew LeGrand (TX 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.* (CA 132099)
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed* (NY 4382040)
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

ELIAS LAW GROUP LLP
Abha Khanna* (WA 42612)
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Jacob D. Shelly* (DC 90010127)
Omeed Alerasool* (DC 90006578)
250 Massachusetts Avenue NW, Suite 400
Washington, DC 20001
T: (202) 968-4490
F: (202) 986-4498
jshelly@elias.law
oalerasool@elias.law

* Admitted *pro hac vice*

*Counsel for Defendants Media Matters for America, Angelo Carusone, and Eric Hananoki*

### CERTIFICATE OF SERVICE

On October 18, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Andrew LeGrand*
Andrew LeGrand