# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | |
|---|---|
| **X CORP.,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 4:23-cv-01175-O** |
| **MEDIA MATTERS FOR AMERICA, et al.,** | |
| **Defendants.** | |

# DEFENDANTS' REPLY IN SUPPORT OF MOTION
# TO CERTIFY AN IMMEDIATE APPEAL

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 1

I.    Personal jurisdiction provides a sound basis to certify an immediate appeal....................... 1

    A.    Whether the Court has specific jurisdiction over X's claims against Defendants
          is a controlling question of law. ......................................................................... 2

    B.    There are substantial grounds to disagree with the Court's holding that it has
          specific jurisdiction. .......................................................................................... 5

II.   Venue provides an alternative basis to certify an immediate appeal. .................................... 8

III.  Certification may materially advance the resolution of this case. ........................................ 9

IV.   The Court has ample grounds to exercise its discretion to certify. ...................................... 10

CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Vent, Inc. v. Powermax Electric Co.*,
   No. 3:22-CV-0516-B, 2023 WL 8285198 (N.D. Tex. Nov. 28, 2023)................................. 4, 5

*Army Times Publishing Co. v. Watts*,
   730 F.2d 1398 (11th Cir. 1994) ........................................................................... 4

*Calder v. Jones*,
   465 U.S. 783 (1984)............................................................................... *passim*

*Coastal Laboratories v. Jolly*,
   502 F. Supp. 3d 1003 (D. Md. 2020) ..................................................................... 9

*Cooper-Standard Automotive, Inc. v. SFC Solutions Czestochowa SP. Z.O.O.*,
   No. 22-12126, 2023 WL 6850578 (E.D. Mich. Oct. 17, 2023)................................... 4

*ESAB Group, Inc. v. Centricut, Inc.*,
   126 F.3d 617 (4th Cir. 1997) ........................................................................... 4, 5

*Fielding v. Hubert Burda Media, Inc.*,
   415 F.3d 419 (5th Cir. 2005) .............................................................................. 3

*Gilmore v. Jones*,
   No. 3:18-CV-00017, 2019 WL 4417490 (W.D. Va. Sept. 16, 2019)................................. 4, 5

*Greinstein v. Granite Services International Inc.*,
   No. 23-10781, 2024 WL 3771455 (5th Cir. Aug. 13, 2024) ...................................... 6

*Growden v. Ed Bowlin & Associates, Inc.*,
   733 F.2d 1149 (5th Cir. 1984) ........................................................................... 4

*Hunt, Gather LLC v. Andreasik*,
   No. 1:23-CV-627-RP, 2023 WL 4853400 (W.D. Tex. July 27, 2023)................................ 8

*Johnson v. TheHuffingtonPost.com, Inc.*,
   21 F. 4th 314 (5th Cir. 2021) .................................................................... 2, 3, 6, 7

*Johnston v. Multidata Systems International Corp.*,
   523 F.3d 602 (5th Cir. 2008) ........................................................................... 5

*People ex rel. Madigan v. Hemi Group, LLC*,
   No. 08-3050, 2008 WL 5383354 (C.D. Ill. Dec. 19, 2008)...................................... 4

*B.D. ex rel. Myer v. Samsung SDI Co.*,
   91 F.4th 856 (7th Cir. 2024) ........................................................................... 4

*Releford v. City of Houston*,
   No. 4:14-CV-02810, 2016 WL 7051662 (S.D. Tex. Dec. 5, 2016)....................................... 2, 8

*Revell v. Lidov*,
   317 F.3d 467 (5th Cir. 2002) .................................................................................... 3

*In re Roman Catholic Diocese of Albany*,
   745 F.3d 30 (2d Cir. 2014)......................................................................................... 1

*Ryan v. Flowserve Corp.*,
   444 F. Supp. 2d 718 (N.D. Tex. 2006) .................................................................... 2, 9

*Thompson v. Shaw Group, Inc.*,
   No CIV.A. 04-1685, 2006 WL 2038025 (E.D. La. July 18, 2006) ....................................... 10

*Time, Inc. v. McLaney*,
   406 F.2d 565 (5th Cir. 1969) ................................................................................... 10

*Walden v. Fiore*,
   571 U.S. 277 (2014)............................................................................................... 2, 6

**Statutes**

28 U.S.C. § 1292(b) ................................................................................................... *passim*

28 U.S.C. § 1391(b)(2) ................................................................................................... 8

iv

## INTRODUCTION

X's Response only makes more plain the need to certify the Court's Order denying Defendants' motion to dismiss. Unable to dispute that the Court's specific jurisdiction analysis stretched doctrine far beyond settled limits, X resorts to changing the words of Fifth Circuit and Supreme Court opinions. Unwilling to join the Court in resting personal jurisdiction on allegations about non-parties AT&T or Oracle, X instead propounds vague allegations about unnamed "businesses based in Texas." And unsure that the jurisdictional limb it has invited the Court onto can hold the weight of this case, X concocts procedural barriers to certification that crumble under any scrutiny. In short, X's brief simply is not the brief of a party with the law on its side.

The prerequisites for 28 U.S.C. § 1292(b) certification are satisfied and the Court should exercise its discretion in favor of certifying. But whatever the Court does, Defendants request that it act promptly. Nearly a year of litigation has chilled Defendants' reporting and substantially depleted Media Matters's operating budget, and the fast-approaching April trial date promises to exacerbate those burdens. Accordingly, Defendants will be compelled to seek mandamus relief absent prompt certification. *See, e.g.*, *In re Roman Catholic Diocese of Albany*, 745 F.3d 30, 33 (2d Cir. 2014) (granting mandamus and ordering district court to dismiss where improper exercise of personal jurisdiction would otherwise subject defendant to irreparable harm).

## ARGUMENT

### I.    Personal jurisdiction provides a sound basis to certify an immediate appeal.

The Court's holding that it has specific jurisdiction over X's business-tort claims satisfies the criteria for immediate appeal: it necessarily implicates several "controlling question[s] of law as to which there is substantial ground for difference of opinion." 28 U.S.C. § 1292(b).

## A.      Whether the Court has specific jurisdiction over X's claims against Defendants is a controlling question of law.

Defendants agree with X that a question of law is one "the court of appeals could decide quickly and cleanly without having to study the record." Pl.'s Resp. & Br. in Opp'n to Defs.' Mot to Certify an Immediate Appeal ("Resp.") at 4, ECF No. 110 (quoting *Releford v. City of Houston*, No. 4:14-CV-02810, 2016 WL 7051662, at *2 (S.D. Tex. Dec. 5, 2016)). The Court's ruling on jurisdiction necessarily gives rise to at least two such questions:

- Whether under *Calder v. Jones*, 465 U.S. 783 (1984), as limited by *Walden v. Fiore*, 571 U.S. 277 (2014), specific jurisdiction over an intentional tort claim may be based entirely on the defendant's alleged targeting of third parties in a forum that is not home to any plaintiff or defendant.

- If so, whether the publication of an online article triggers specific jurisdiction in the home forum of third parties (i) not implicated in the plaintiff's alleged injury or (ii) not expressly targeted by the defendant's allegedly tortious conduct.

A negative answer to either question would be "controlling" because it would "result in dismissal of the action." *Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 723 (N.D. Tex. 2006). X does not argue otherwise. And the Fifth Circuit could answer each of these legal questions "quickly and cleanly," *Releford*, 2016 WL 7051662, at *2, with reference only to Supreme Court and Fifth Circuit precedent—*Calder*, *Walden*, and *Johnson v. TheHuffingtonPost.com*, 21 F.4th 314 (5th Cir. 2021)—and X's operative complaint. The "controlling question of law" requirement for certification is therefore satisfied; nothing more is needed.

X's contrary arguments fail. *First*, although the law of specific jurisdiction is generally "well settled," Resp. at 5, X's allegations do *not* give rise to Texas jurisdiction under any well-settled rule of law, *see* Defs.' Br. in Supp. of Mot. to Certify an Immediate Appeal ("Br.") at 4–9,

ECF No. 94. If the law in this context were in fact settled *in X's favor*, X would have cited a case that announces one or both of the above rules of law over the course of three separate opportunities across eight months of briefing. Yet X has come up empty each time. *See* Resp. at 10–11 (failing to cite such a case); *see also* Br. at 8 n.3 (pointing out that X identified no such case in its briefing on the motion to dismiss); ECF 46 at 3–5 (X's stay brief failing to cite such a case). Nor did the Court's Order cite such a case—it simply cited *Calder*, along with a scattering of Fifth Circuit cases that held personal jurisdiction to be absent, *see* Order at 7–8; *see also* Br. at 8.

*Second*, X is wrong that certification would be improper because the parties agree that *Calder* provides a "well-settled legal standard." Resp. at 6. The parties plainly disagree about *what* standard *Calder* established—an archetypal pure dispute of law. Defendants maintain the standard is the one that Supreme Court articulated: that a state has personal jurisdiction over a speech-based intentional tort where that state is "*the* focal point *both* of the story *and* of the harm suffered." *Calder*, 465 U.S. at 788–89 (emphasis added). X cannot credibly suggest that Texas was *the* focal point of a story about a California company that alleges it was harmed in California, so it alters the Supreme Court's words: it presents *Calder* as asking whether "a forum state is *a* 'focal point.'" Resp. at 10 (emphasis added). X's attempt to rewrite the Supreme Court's standard speaks volumes—and confirms that legal standard itself is the true subject of dispute.

The Order similarly appeared to relax the "focal point" standard. It misquoted *Calder* and *Johnson*, omitting the requirement that the forum state be the focal point "*both"* of the defendants' conduct and of the plaintiff's harm. *Compare* Order at 7, *with Johnson*, 21 F.4th at 318. *But see Revell v. Lidov*, 317 F.3d 467, 474 (5th Cir. 2002) (rejecting this approach as "but half a *Calder*"). It ignored *Calder*'s requirement that "the focal point . . . of the story" is where both its subject matter *and the sources relied upon* are located. *Calder*, 465 U.S. at 788–89; *see also Fielding v.*

*Hubert Burda Media, Inc.*, 415 F.3d 419, 426 (5th Cir. 2005). And it hinged jurisdiction on the alleged "targeting" of non-harmed third parties located in Texas, "among other places," Order at 7, rather than the alleged "harm suffered" by X, *Calder*, 465 U.S. at 789. Thus, any "reversal [on appeal] would stem from the legal standard employed by this Court." *Air Vent, Inc. v. Powermax Elec. Co.*, No. 3:22-CV-0516-B, 2023 WL 8285198, at *2 (N.D. Tex. Nov. 28, 2023).

*Third*, X is demonstrably wrong in arguing that, as a rule, "personal jurisdiction questions cannot be certified." Resp. at 5. In fact, district courts certify questions about the precise contours of specific jurisdiction standards all the time. *See, e.g.*, *People ex rel. Madigan v. Hemi Grp., LLC*, No. 08-3050, 2008 WL 5383354, at *1 (C.D. Ill. Dec. 19, 2008) (certifying the question whether "Defendant's Internet activities provided a basis for specific jurisdiction"). *Gilmore v. Jones*, No. 3:18-CV-00017, 2019 WL 4417490, at *1, *6 (W.D. Va. Sept. 16, 2019) ("Where an online journalist or publisher with a national audience purposefully and primarily focuses their coverage underlying the suit-related conduct on forum-state events and persons, is such conduct sufficient for a forum court to assert specific personal jurisdiction over that journalist or publisher?"); *Cooper-Standard Auto., Inc. v. SFC Sols. Czestochowa SP. Z.O.O.*, No. 22-12126, 2023 WL 6850578, at *3 (E.D. Mich. Oct. 17, 2023) ("The key question addressed both in Defendants' motion to dismiss and the present motion is whether the individual corporations 'purposefully availed themselves of the privilege of doing business in Michigan.'"). And courts of appeals routinely accept such certifications. *See, e.g.*, *Army Times Publ'g Co. v. Watts*, 730 F.2d 1398, 1398 (11th Cir. 1994) (deciding a § 1292(b) appeal concerning specific jurisdiction over a libel claim); *ESAB Grp. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997); *B.D. ex rel. Myer v. Samsung SDI Co.*, 91 F.4th 856, 860 (7th Cir. 2024) (per curiam). The Fifth Circuit is no exception. *See Growden v. Ed Bowlin & Assocs., Inc.*, 733 F.2d 1149, 1150 (5th Cir. 1984) ("Finding that

4

plaintiffs showed insufficient minimum contacts with Louisiana to justify the exercise of in personam jurisdiction, we reverse the district court's decision."); *cf. Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 605 (5th Cir. 2008).

Moreover, courts have repeatedly certified orders turning on the limits of *Calder*'s effects test. In *Gilmore*, for instance, the district court concluded that while "analyzing personal jurisdiction is often a fact-intensive inquiry," issues regarding "the reach of a state's personal jurisdiction over online publishers" can be "appropriately cabined as [] purely legal." *Gilmore*, 2019 WL 4417490, at *4. The court thus certified the question of "how *Calder*'s 'effects test' applies to Internet publishers with a national focus, who nonetheless target forum states with state-specific coverage"—a question very similar to the legal questions in dispute here. *Id.* at *6; *see also, e.g.*, *ESAB Grp.* 126 F.3d at 622 (accepting certification of question about limits of *Calder*'s "effects test"). In sum, X's claim that such questions "cannot be certified" would be surprising news to many federal courts.[1]

### B. There are substantial grounds to disagree with the Court's holding that it has specific jurisdiction.

X also fails to refute the substantial grounds for disagreeing with the Court's personal jurisdiction analysis that Defendants set out in their opening brief. Most damning is what X does *not* say: X still has not identified a *single* case that finds personal jurisdiction proper based on an internet publication's alleged targeting of non-harmed non-parties. That absence of authority in itself warrants certification; "a novel and difficult question of first impression" is a settled basis

---

[1] As the above cases show, the suggestion in *Air Vent* that "courts have consistently held" that questions about the "well settled law of personal jurisdiction" are not appropriate for § 1292(b) certification, 2023 WL 8285198, at *2, is not supported by a survey of certification precedent. Moreover, *Air Vent* acknowledged that disputes regarding "the legal standards employed by the [district] [c]ourt" are amenable to certification. *Id.*

for a § 1292(b) appeal in the Fifth Circuit. *Greinstein v. Granite Servs. Int'l Inc.*, No. 23-10781, 2024 WL 3771455, at *2 (5th Cir. Aug. 13, 2024) (quoting the district court's certification order).

What little X does say about case law is no more convincing. On *Calder*, all X musters—besides its telling rephrasing of the "focal point" standard—is a half-hearted suggestion that "nothing in the *Calder* opinion . . . limits its principles to its specific facts." Resp. at 10. But *Calder*'s effects test must have *some* limit. And X's hesitancy to specify where that limit might fall only confirms the substantial grounds for disagreeing about the answer. X manages no better with *Walden*. If, as *Walden* holds, "the plaintiff cannot be the only link between the defendant and the forum," 571 U.S. at 285, then a plaintiff's nonparty "Texas advertisers," Resp. at 10, certainly cannot be—or at least other reasonable judges could so hold.

X purports to distinguish *Johnson* on the grounds that the November articles "mention Texans." Resp. at 11. But X is once again forced to change an opinion's words to obscure the potential grounds for disagreement. The Fifth Circuit in *Johnson* emphasized that the article at issue did not "mention Texas," 21 F.4th at 319—that is, *the state*—but it certainly did not say that personal jurisdiction in Texas arises whenever one mentions "Texans." To the contrary, the *Johnson* article *did* mention a Texan: the plaintiff whose claims the Fifth Circuit held should be dismissed. *Id.* at 316 ("At first, Johnson based jurisdiction on his Texas citizenship[.]"). X's remarkably clumsy attempt to distinguish *Johnson* thus proves *Defendants'* point; indeed, Defendants would be hard-pressed to illustrate the need for certification any better themselves.

Turning from case law to its allegations, X asserts that Defendants' arguments about Oracle and AT&T reveal the personal jurisdiction issue to be a "fundamentally fact-bound dispute." Resp. at 11. But X identifies no factual dispute at all—X's own Amended Complaint concedes that Oracle did not suspend advertising, and X concedes by silence that Defendants never wrote

6

anything relevant about AT&T.[2] These concessions not only confirm that the Fifth Circuit will be faced with pure questions of law, they also render this case a remarkably poor vehicle for the unprecedented expansion of *Calder*. Even if a reviewing court were inclined to hold that "targeting" third-party advertisers could ground jurisdiction in some circumstances, this would be the wrong case to announce such a rule, as X has not identified any advertisers that fit the bill. X has no claim arising out of reporting about Oracle because it concedes that it suffered no damages with respect to Oracle. X has no claim arising out of reporting about AT&T because Defendants published no relevant reporting about AT&T. And X has identified no other relevant advertisers in Texas. A reviewing court is not likely to ignore these obvious defects.

Finally, X denigrates fairness and federalism as "policy argument[s]." Resp. at 12. But as both the Supreme Court and Fifth Circuit have explained, the entire doctrine of personal jurisdiction "derive[s] from and reflect[s]" those two values. *Johnson*, 21 F.4th at 318 (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 360 (2021)); *see also id.* at 320 ("The defense of personal jurisdiction exists to ensure fairness to defendants and to protect federalism."). Thus, insofar as the Court's novel expansion of *Calder* will undermine those values by depriving future defendants of the "fair warning" X contends "matters not," Resp. at 12, reviewing courts have reasonable grounds to disagree with the Court's holding. *Johnson*, 21 F.4th at 320. X's suggestion that "true grounds for disagreement" about a question of law cannot arise from the fundamental values that shape law, Resp. at 12, is simply bizarre. And, making yet another striking concession by silence, X neither argues that the Court's approach to personal jurisdiction

---

[2] In fact, in its Background, X is not even willing to specify which Texas advertisers took actions giving rise to its alleged harms—rather than mentioning AT&T or Oracle, X refers only to "at least several businesses based in Texas." Br. at 2. Apparently, although X is happy for the Court to base personal jurisdiction on those two advertisers, X is not willing to go that far itself.

adequately protects federalism nor explains how it provides fair warning to anyone who publishes news or information online. *See* Resp. at 7; *see also* Br. at 13–14.[3]

## II.    Venue provides an alternative basis to certify an immediate appeal.

The Court's holding that venue is proper in this District provides a second basis to certify the Order for immediate appeal.

*First*, X never discusses the Court's actual rationale for its venue holding, that "Defendants *intended* to negatively impact Plaintiff's blue-chip clients, including a client based in this district." Order at 12 (emphasis added). But that holding gives rise to a pure question of law—the Fifth Circuit could "quickly and cleanly" hold, *Releford*, 2016 WL 7051662, at *2, that "intent" is not a sufficient basis for venue where no "events or omissions giving rise to the claim," 28 U.S.C. § 1391(b)(2), took place in this venue.

*Second*, the Western District's decision in *Hunt, Gather LLC v. Andreasik*, No. 1:23-CV-627-RP, 2023 WL 4853400, at *4 (W.D. Tex. July 27, 2023), is wrong to suggest that venue is never a "controlling" question. *Hunt* bases that assessment on the possibility that the plaintiff "could simply refile its claims" in the proper venue, *id.*, but (i) X has voiced no such intent here and (ii) as this District has explained, an issue is "controlling if reversal of the district court's

---

[3] X's laundry list of Defendants' other alleged Texas ties, Resp. at 12, adds nothing. X has never explained how its business tort claims could arise from Media Matters's incidental distribution of its newsletter to Texas subscribers, let alone how that could constitute "purposeful availment" where the location of newsletter subscribers is beyond Defendants' control. *See* Br. at 9 n.4 ("X does not . . . allege that AT&T or any other advertiser reduced or ceased advertising because its executives subscribe to the newsletter and learned about the articles from it."). Nor does X explain how going on "cable television" targets Texas. *See* Resp. at 12. And X has denied that Musk is relevant to this case, including with respect to jurisdiction, *see* ECF No. 114 at 7 n.15; ECF No. 115 at 459 ("Regarding jurisdiction, Musk's status as a resident of Texas is unnecessary."). Scrape away the irrelevant fluff and X is left with only its bare allegation that Defendants targeted unspecified "Texas-based advertisers"—the too-thin reed X has tried to balance this whole case upon for nearly a year now.

opinion would result in dismissal of *the action*." *Ryan*, 444 F. Supp. 2d at 723 (emphasis added; internal quotation marks omitted). X does not dispute that reversal as to venue would result in dismissal of *this* action, whether or not it filed a new action.

*Third*, there is substantial ground to disagree with the Court's holding. Mere intent has never been recognized as a basis for venue in this Circuit. X cites no case suggesting otherwise, and it eschews the Court's reliance on the out-of-circuit district court opinion in *Coastal Laboratories v. Jolly*, 502 F. Supp. 3d 1003, 1023 (D. Md. 2020). *See* Resp. at 14; *see also* Br. at 16 n.7. X suggests that "conflicting law on venue in the Fifth Circuit" is required to certify, Resp. at 13, but no conflict is required where the Order to be certified is itself making new and unprecedented law. *See Ryan*, 444 F. Supp. 2d at 723–24 ("[C]ourts have found substantial ground for difference of opinion where . . . novel and difficult questions of first impression are presented." (quoting 4. Am. Jur. 2d § 128 (2005)). And in any event, X does not allege that any of its "blue chip clients" was "negatively impacted" by Defendants' allegedly tortious conduct. To the contrary, X concedes that Defendants' alleged actions with respect to those third parties were "to *X's* economic detriment." Resp. at 11 (emphasis added).

## III. Certification may materially advance the resolution of this case.

X's argument that certification would somehow "frustrate the expeditious resolution of this case," Resp. at 14, is puzzling. X cannot dispute that reversal of the Court's personal jurisdiction ruling would end the litigation, such that certification may obviate the need for the Court and the parties to suffer the burden and expense of dispositive briefing and a trial. X instead argues that Defendants "are unlikely to prevail on their appeal," *id.*, but that assertion fails for the same reasons X's substantial-ground-for-disagreement arguments fail. Moreover, X overstates Defendants' burden—Defendants need only show that certification "*may* materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b), not that it for certain "would," Resp. at 14.

Even a decision from the Fifth Circuit affirming the Court's jurisdiction and venue analysis would satisfy that minimal requirement—it would tend to clarify the issues as the case progresses.

## IV.    The Court has ample grounds to exercise its discretion to certify.

X's argument against the Court's exercise of discretion boils down to one last assertion that X would win an appeal. X is wrong to discount the risk that a trial verdict in this case would be nullified on jurisdictional grounds on appeal. *See* Resp. 15. To be sure, Defendants understand that the Court likely believes its analysis was correct. But there can be no denying that X is asking the Court to take an unusually expansive view of specific jurisdiction that no other case has endorsed. The entire purpose of § 1292(b) is to allow courts to avoid "wast[ing] substantial resources in administering and hearing a full-blown trial on the merits" in such circumstances. *Thompson v. Shaw Grp. Inc.*, No CIV.A. 04-1685, 2006 WL 2038025, at *1 (E.D. La. July 18, 2006). Sound docket management thus counsels in favor of certification.

And X either misunderstands or willfully misstates the significance of Defendants' First Amendment injuries. Defendants are not arguing that those injuries "enter into the jurisdictional analysis." Resp. at 15. (quoting *Calder*, 465 U.S. at 790). The point, rather, is that the "chilling effect" of litigation against a publication provides a very sound reason to certify an interlocutory appeal—as the Fifth Circuit explained over 50 years ago. *Time, Inc. v. McLaney*, 406 F.2d 565, 566 (5th Cir. 1969). X does not contest Hananoki's attestations about his chill, so *Time, Inc.* applies. *See* Br. at 20. Indeed, X provides no argument whatsoever against the First Amendment's claim on this Court's discretion.

## CONCLUSION

The Court should enter an amended order denying Defendants' motion to dismiss that certifies the order for immediate appeal.

Dated: October 25, 2024.

Respectfully submitted,
*/s/ Andrew LeGrand*

GIBSON, DUNN & CRUTCHER LLP
Andrew LeGrand (TX 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.* (CA 132099)
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed* (NY 4382040)
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

ELIAS LAW GROUP LLP
Abha Khanna* (WA 42612)
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Aria C. Branch* (DC 1014541)
Christopher D. Dodge* (DC 90011587)
Jacob D. Shelly* (DC 90010127)
Samuel T. Ward-Packard* (DC 90005484)
250 Massachusetts Avenue NW, Suite 400
Washington, DC 20001
T: (202) 968-4490
F: (202) 986-4498
abranch@elias.law
cdodge@elias.law
jshelly@elias.law
swardpackard@elias.law

* Admitted *pro hac vice*

*Counsel for Defendants Media Matters for America, Angelo Carusone, and Eric Hananoki*

11

**CERTIFICATE OF SERVICE**

On October 25, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Andrew LeGrand*
Andrew LeGrand