# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | |
|---|---|
| **X CORP.**, a Nevada corporation, | § § § |
| *Plaintiff,* | § § |
| vs. | § § Case No. 4:23-cv-01175-O |
| **MEDIA MATTERS FOR AMERICA,** a Washington, D.C. non-profit corporation, **ERIC HANANOKI**, and **ANGELO CARUSONE**, | § § § § § § |
| *Defendants.* | § § |

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD ON SHIELD-LAW PRIVILEGE GROUNDS

JUDD E. STONE II
CHRISTOPHER D. HILTON
ARI CUENIN
MICHAEL R. ABRAMS
ALEXANDER M. DVORSCAK
**STONE | HILTON PLLC**
600 Congress Ave., Suite 2350
Austin, TX 78701
(737) 465-3897

JOHN C. SULLIVAN
**S|L LAW PLLC**
610 Uptown Boulevard
Suite 2000
Cedar Hill, TX 75104
(469) 523-1351

*COUNSEL FOR PLAINTIFF*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................................... ii

INTRODUCTION .......................................................................................................................... 1

ARGUMENT AND AUTHORITIES ............................................................................................. 1

    I.   X thoroughly conferenced its motion to compel. ................................................................. 1

    II.  The Texas Press Shield Law is inapplicable. ..................................................................... 3

    III. The Court should review Defendants' withheld documents in camera. ............................. 5

CONCLUSION ............................................................................................................................... 9

CERTIFICATE OF SERVICE ..................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

*84 Lumber Co. v. Cont'l Cas. Co.*,
   914 F.3d 329 (5th Cir. 2019) ................................................................................................ 4

*Abraham v. Greer*,
   509 S.W.3d 609 (Tex. App.—Amarillo 2016, pet. denied) .................................................. 4, 5

*Days Inn Worldwide, Inc. v. Sonia Investments*,
   237 F.R.D. 395 (N.D. Tex. 2006) ........................................................................................... 2

*Erie R. Co. v. Tompkins*,
   304 U.S. 64 (1938) .................................................................................................................. 4

*In re CVR Energy, Inc.*,
   No. 01-15-00715-CV, 2016 WL 1389013 (Tex. App.—Houston [1st Dist.] Apr. 7, 2016, orig.
   proceeding) ............................................................................................................................. 4

*Mem'l Hermann Healthcare Sys. Inc. v. Eurocopter Deutschland, GMBH*,
   524 F.3d 676 (5th Cir. 2008) .................................................................................................. 4

*Pub. Utility Comm'n v. Luminant Energy Co.*,
   691 S.W.3d 448 (Tex. 2024) ................................................................................................... 3

*United States v. Sineneng-Smith*,
   590 U.S. 371 (2020) ................................................................................................................ 5

**Statutes**

Tex. Civ. Prac. & Rem. Code § 22.023(a) ................................................................................... 3

Tex. Civ. Prac. & Rem. Code § 22.024 ........................................................................................ 5

Tex. Civ. Prac. & Rem. Code § 22.024(2) ................................................................................... 3

Tex. Civ. Prac. & Rem. Code § 22.024(4) ................................................................................ 3, 5

Tex. Civ. Prac. & Rem. Code § 22.024(5) ................................................................................ 3, 5

Tex. Civ. Prac. & Rem. Code § 22.024(6) ................................................................................... 5

**Rules**

Fed. R. Civ. P. 45(d)(1) ................................................................................................................ 3

Tex. R. Civ. P. 176.1-.8 ............................................................................................................ 3, 4

Tex. R. Civ. P. 196.1-.7 ................................................................................................................ 3

# INTRODUCTION

As the party resisting discovery, Defendants must demonstrate that the Texas Press Shield Law applies in this case and justifies withholding relevant evidence. On that score, they have failed. No federal court in Texas has held that the Texas Press Shield Law applies to civil discovery disputes between private parties—and as X's motion to compel pointed out, there are good reasons to doubt that it does. In enacting the statute, the Texas Legislature repeatedly referred to "subpoenas"—which Defendants cannot, and do not, dispute are distinct from requests for production, which the statute nowhere mentions. On the present record, Defendants have not provided a basis for the Court to make an *Erie* guess in their favor.

But even if the Texas Press Shield Law did apply to X's requests about Defendants' reporting, Defendants offer no rationale for denying X's motion altogether. Indeed, Defendants admit that they "have no principled objection to X's proposal that the Court conduct in camera review to assess the logged documents case-by-case." Resp. at 21. This makes sense: there is no basis in the Federal Rules of Civil Procedure or Fifth Circuit precedent for a party to object to a targeted *in camera* review process. Although X leaves it to the Court's discretion to determine what that process should ultimately look like, below X identifies at least ten specific documents that it contends—based on the descriptions that Defendants have provided—are *unlikely* to be protected under the statute. At a minimum, it would make sense for the Court to review those documents. Should the Court limit its initial review, the parties could later confer regarding the other documents that Defendants have logged with the benefit of the Court's analysis.

# ARGUMENT AND AUTHORITIES

I.  **X thoroughly conferenced its motion to compel.**

Before Defendants address the merits of the parties' dispute, they insist (at 10-11) that X did not confer with them in good faith about this motion. It is unclear what purpose this charged

– 1 –

(and baseless) section of their response serves. They do not ask the Court to refuse to consider X's motion, and the rest of their motion confirms that the parties were at an impasse on the issue of whether the shield law applies to justify withholding the documents they have logged.

Regardless of whether Defendants intended for their conferral argument to enter the Court's analysis, the bottom line is that their slanted take isn't true. The record reflects that X more than met its obligations. As early as July 12, X informed Defendants of its view that "[t]he privilege is substantively inapplicable." Defs.' App'x 66. The parties also engaged in a detailed back-and-forth about the merits of their respective positions with respect to this specific motion. Defs.' App'x 58-60, 62-64. That alone would have been sufficient. But X then went above and beyond the conventions of the conferral process by providing Defendants with a draft copy of their motion before filing, Defs.' App'x 72-74—a courtesy not extended to X when Defendants filed their recent motion to compel.

Defendants' attack on X's conduct here reflects the novel, extreme, and legally unsupported view that Federal Rule of Civil Procedure 37(a)(1) requires an unvarnished vetting not only of the opponent's position, but of every possible legal theory and citation that the opponent *might* make in a discovery motion. This position fails to realize that at some point, to avoid slumbering on its rights, X needed to stop talking in circles and finally seek court relief—which is exactly what it did. After all, "[i]f the conduct of a respondent to discovery necessitates a motion to compel, the requester of the discovery must protect himself by timely proceeding with the motion to compel. If he fails to do so, he acts at his own peril." *Days Inn Worldwide, Inc. v. Sonia Investments*, 237 F.R.D. 395, 399 (N.D. Tex. 2006) (Ramirez, M.J.) (cleaned up). Defendants are not entitled to stymie X's discovery indefinitely by invoking a fruitless and interminable conferral process.

**II.     The Texas Press Shield Law is inapplicable.**

As X explained in its motion, the Texas Press Shield Law provides a limited privilege for a journalist against a person who is "subpoenaing . . . information" from them. Tex. Civ. Prac. & Rem. Code § 22.024(4). But X has not subpoenaed any information from Defendants. Instead, it has served requests for production. *E.g.*, Pl.'s App'x 3-27. Texas law draws a distinction between requests for production and subpoenas, which are unnecessary to obtain documents from party opponents. *See* Tex. R. Civ. P. 176.1-.8; Tex. R. Civ. P. 196.1-.7.

Defendants respond that the Texas Press Shield Law applies to a "judicial, legislative, administrative, or other body with the authority to issue a subpoena or other compulsory process," which "may not compel a journalist to testify regarding or to produce or disclose in an official proceeding" certain categories of documents. Tex. Civ. Prac. & Rem. Code § 22.023(a). To be sure, X does not dispute that this Court is a "judicial . . . body with the authority to issue a subpoena." But the Texas Supreme Court has repeatedly emphasized that statutes must be read in their full context, giving weight to every word the Legislature chose. *Pub. Utility Comm'n v. Luminant Energy Co.*, 691 S.W.3d 448, 460-61 (Tex. 2024) ("We give meaning to every word in a statute, harmonizing each provision while considering the context and framework of the entire statute, in order to meld its words into a cohesive reflection of legislative intent." (cleaned up)). Elsewhere, the statute references "subpoenas" three separate times in defining the scope of the privilege's exception. *See* Tex. Civ. Prac. & Rem. Code § 22.024(2), (4), (5). It would have been a strange drafting decision for the Legislature to protect *party* journalists from motions to compel and never *once* reference such motions. And incorporating special protections for non-parties accords with both the Federal and Texas Rules of Civil Procedure. *See* Fed. R. Civ. P. 45(d)(1); Tex. R. Civ. P. 176.6(e).

– 3 –

That leaves Defendants to intimate (at 16-17) that "compulsory process" must also include court orders on motion to compel. Not so. Texas courts typically understand the terms "subpoenas" and "compulsory process" interchangeably in civil cases, rather than treating "compulsory process" as a catchall term that includes any and all discovery mechanisms. *See, e.g.*, *In re CVR Energy, Inc.*, No. 01-15-00715-CV, 2016 WL 1389013, at *5 (Tex. App.—Houston [1st Dist.] Apr. 7, 2016, orig. proceeding) (addressing whether persons were "subject to compulsory process in Texas" based on whether their addresses were within the geographic range for which a person could be "required by subpoena to appear or produce documents" (quoting Tex. R. Civ. P. 176.3(a))). Defendants do not cite a single case supporting the notion that "compulsory process" under Texas law has ever been understood to encompass a court's decision in a civil discovery dispute on a motion to compel the production of documents.

This absence of authority matters because, as X noted, when the state's highest court has not spoken on a particular issue, federal courts must make an *Erie* guess to determine how the state court would resolve it. *84 Lumber Co. v. Cont'l Cas. Co.*, 914 F.3d 329, 333 (5th Cir. 2019); *see Erie R. Co. v. Tompkins*, 304 U.S. 64, 77-80 (1938). The party seeking to rely on a rule of law not yet recognized by the Texas Supreme Court bears a "heavy burden" to "assure [the federal court] that [it] would not be making law" by making an *Erie* guess in its favor. *Mem'l Hermann Healthcare Sys. Inc. v. Eurocopter Deutschland, GMBH*, 524 F.3d 676, 678 (5th Cir. 2008). In response, Defendants cite *Abraham v. Greer*, 509 S.W.3d 609 (Tex. App.—Amarillo 2016, pet. denied), but that decision from the Amarillo Count of Appeals merely assumed, without deciding, that the Texas Press Shield Law would apply to party discovery. The opinion does not indicate that either party raised a point of error to the contrary, and the court of appeals thus appears to have properly focused on the issues that the parties raised instead of searching for unbriefed ones.

*See United States v. Sineneng-Smith*, 590 U.S. 371, 375-76 (2020) ("[O]ur system is designed around the premise that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." (cleaned up). *Abraham* does not support the notion that Texas law would apply the Texas Press Shield Law in these circumstances.

**III.   The Court should review Defendants' withheld documents in camera.**

Nonetheless, if the Court concludes that the Texas Press Shield Law applies here, this does not mean that Defendants' privilege designations automatically prevail. Instead, the Court must evaluate whether X has satisfied the six statutory factors creating an exception to the privilege. Tex. Civ. Prac. & Rem. Code § 22.024; Mot. at 11-13. The most expeditious path for the resolution of that issue is for the Court to review the documents that Defendants have logged *in camera*. Defendants for their part do not object to X's proposal but insist that X must provide more specifics as to how that process should look (while providing no proposal of their own). *See* Resp. 21-22.

The Court, of course, is well-equipped to make its own determinations on the scope of how it should conduct *in camera* review. But because Defendants have insinuated otherwise, in X's view, the Court can likely conduct a limited *in camera* review to start, which could then inform the parties' positions moving forward. To that end, one of the most disputed of the six factors that X must show (which overlaps with several others) is that the information it seeks is "relevant and material to the proper administration of the official proceeding for which the testimony, production, or disclosure is sought and is essential to the maintenance of a claim or defense of the person seeking the testimony, production, or disclosure." Tex. Civ. Prac. & Rem. Code § 22.024(6); *see also id.* § 22.024(5) ("the subpoena or compulsory process is not being used to obtain peripheral, nonessential, or speculative information"); *id.* § 22.024(4) ("the interest of the

party subpoenaing the information outweighs the public interest in gathering and dissemination of news").

Defendants contend that X cannot meet this burden because the documents that Defendants have logged concern topics and stories that are unrelated to this case. Resp. at 1. That argument misapprehends relevance: Documents showing inconsistencies in how Media Matters treated X versus other subjects is highly relevant to X's claim that Defendants tortiously targeted X, its ownership and management, and its advertising relationships. More specifically, documents showing that Defendants' "strategies and methods" with respect to other figures or subjects involved a more rigorous journalistic practice—for instance, speaking with actual sources—would provide potent evidence of malice. Resp. at 20. And of course, if Defendants were discussing X or Musk in other contexts, as several of Defendants' log entries indicate, such communications are exceptionally likely to be relevant and probative to the parties' claims and defenses.

Accordingly, X requests that the Court conduct an *in camera* review of, at a minimum, the following ten documents (excerpts from Defendants' privilege log reproduced here in relevant part):

- MMFA_013561 ("Comments, revisions, and citations for a draft article about two public figures not at issue in this case. The comments and revisions reveal internal strategic communications and MMFA's journalistic process and procedures.");

- MMFA_013698 ("Comments, revisions, and citations for a draft article that is not at issue in this case about a conservative news network and television personality. The draft contains reference to Musk or Twitter unrelated to research for the November 16 and 17, 2023 articles or advertisement placement on Twitter.");

- MMFA_013699 ("Comments, revisions, and citations for a draft article that is not at issue in this case about violence against trans people and drag queens. The draft contains reference to Musk or Twitter unrelated to research for the November 16 and 17, 2023 articles or advertisement placement on Twitter.");

- MMFA_013715 ("Communications between MMFA employees pertaining to strategies and methods for tracking right wing media content unrelated to research for the November 16 and 17, 2023 articles or advertisement placement on Twitter.");

- MMFA_013756 ("Communications between MMFA employees and a third-party communications firm regarding article pitches and media requests for articles regarding election coverage. Document contains reference to Musk or Twitter unrelated to research for the November 16 and 17, 2023 articles or advertisement placement on Twitter.");

- MMFA_013762 ("Communications between MMFA employees and a third-party communications firm regarding article pitches and collaboration strategies with third parties for articles not at issue in this litigation regarding a variety of topics unrelated to research for the November 16 and 17, 2023 articles or advertisement placement on Twitter.");

- MMFA_013763 ("Communications between MMFA employees regarding the research and drafting strategy for a draft article about unrelated social media platform. The document contains a reference to Musk or Twitter unrelated to research for the November 16 and 17, 2023 articles or advertisement placement on Twitter.");

- MMFA_013765 ("Communications between MMFA employees regarding the research and drafting strategy for a draft article that is not at issue in this case about an unrelated social media platform. The document contains a reference to Musk or Twitter unrelated to research for the November 16 and 17, 2023 articles or advertisement placement on Twitter.");

- MMFA_013767 ("Communications between MMFA employees regarding the research and drafting strategy for a draft article about an unrelated social media platform and the 2024 election. The document contains a stray reference to Musk or Twitter unrelated to research for the November 16 and 17, 2023 articles or advertisement placement on Twitter."); and

- MMFA_013777 ("Communications between MMFA employees pertaining to the research and drafting strategy of an article not at issue in this case about LGBTQ coverage on unrelated social media platform. Document contains stray reference to Musk or Twitter unrelated to research for the November 16 and 17, 2023 articles or advertisement placement on Twitter.").

As Defendants' descriptions reflect, each of these documents is likely to show differential treatment in how Defendants approached their articles about X compared to other social media sites, news stories, and public figures. As Defendants concede, many of them even specifically reference Musk or Twitter. The Court should review these documents and determine whether Defendants may continue to withhold them based on the Texas Press Shield Law.

## CONCLUSION

For these reasons, the Court should overrule Defendants' Texas Press Shield Law objections and order Defendants to produce all materials Defendants have withheld on that basis. Alternatively, the Court should require Defendants to submit documents to the Court for *in camera* review.

Dated: October 29, 2024.   Respectfully submitted,

*/s/ Christopher D. Hilton*
Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
Ari Cuenin
Texas Bar No. 24078385
Michael R. Abrams
Texas Bar No. 24087072
Alexander M. Dvorscak
Texas Bar No. 24120461
**STONE | HILTON PLLC**
600 Congress Ave., Ste. 2350
Austin, TX 78701
Telephone: (737) 465-3897
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
michael@stonehilton.com
alex@stonehilton.com

John C. Sullivan
Texas Bar No. 24083920
**S|L Law PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2024, a copy of this document was served on all counsel of record through the Court's CM/ECF system in accordance with the Federal Rules of Civil Procedure.

*/s/ Christopher D. Hilton*
Christopher D. Hilton