**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| **X CORP.,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 4:23-cv-01175-O** |
| **MEDIA MATTERS FOR AMERICA, et al.,** | |
| **Defendants.** | |

**SUPPLEMENTAL APPENDIX**

| Tab No. | Description of Document | Page No. |
|---|---|---|
| 30 | Plaintiff's Responses and Objections to Defendants' Fourth Set of Requests for Admission | 498 |

# Tab 30

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

|  |  |
|---|---|
| **X CORP.**, | |
| Plaintiff, | |
| vs. | Case No. 4:23-cv-01175-O |
| **MEDIA MATTERS FOR AMERICA**, et al. | |
| Defendants. | |

**PLAINTIFF'S RESPONSES AND OBJECTIONS**
**TO DEFENDANTS' FOURTH SET OF REQUESTS FOR ADMISSION**

Pursuant to Federal Rule of Civil Procedure 36, Plaintiff X Corp. hereby serves its Objections and Responses to Defendants' Fourth Set of Requests for Admission on Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone, by and through their counsel of record.

Dated: October 28, 2024

Respectfully submitted.

*/s/ Christopher D. Hilton*
Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
Ari Cuenin
Texas Bar No. 24078385
Michael R. Abrams
Texas Bar No. 24087072
Alexander M. Dvorscak
Texas Bar No. 24120461
**STONE HILTON PLLC**
600 Congress Ave., Ste. 2350
Austin, TX 78701
Telephone: (737) 465-3897
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
michael@stonehilton.com
alex@stonehilton.com

John C. Sullivan
Texas Bar No. 24083920
**S|L LAW PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

***Counsel for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that this document was served on all counsel of record for Defendants via email on October 28, 2024, pursuant to counsel's agreement to accept service via electronic means.

*/s/ Alexander M. Dvorscak*
Alexander M. Dvorscak

App'x 500

## OBJECTIONS AND RESPONSES

**REQUEST FOR ADMISSION NO. 91**: Admit that the recording available at: Elon Alerts, *Linda Yaccarino interviews Elon Musk – April 18, 2023*, YouTube (Apr. 21, 2023), https://www.youtube.com/watch?v=ypZNWjPpOuI, is a true and accurate recording of an interview between Linda Yaccarino and Elon Musk on April 18, 2023.

**OBJECTION:** X objects to the extent that the request calls for X to verify the accuracy of a recording that is in the possession of a third party and may have been the result of editing, artificial intelligence, or other manipulation.

**RESPONSE:** X admits only that Linda Yaccarino interviewed Elon Musk on April 18, 2023. X cannot admit or deny after reasonable inquiry whether the recording available at the link provided is true and accurate. *See* Fed. R. Civ. P. 36(a)(4).


**REQUEST FOR ADMISSION NO. 92**: Admit that Elon Musk has had decision-making authority over policies affecting advertisers' brand safety on the Platform since he acquired the Platform on or around October 27, 2022.

**OBJECTION:** X objects that the phrase "decision-making authority" is vague in context as it is unclear whether it refers to sole authority or shared authority. Accordingly, X will interpret the request as if the request referred to sole authority. X also objects that the phrase "policies affecting advertisers' brand safety" is vague, as a wide range of policies could "affect[]" brand safety issues. In other words, the request is unclear as to what policies it is asking for X to confirm that Mr. Musk had "decision-making authority" over.

**RESPONSE:** Denied.

**REQUEST FOR ADMISSION NO. 93**: Admit that Elon Musk has had decision-making authority over the Platform's content moderation policies since he acquired the Platform on or around October 27, 2022.

**OBJECTION**: X objects that the phrase decision-making authority is vague in context as it is unclear whether it refers to sole authority or shared authority. Accordingly, X will interpret the request as if the request referred to sole authority.

**RESPONSE**: Denied.


**REQUEST FOR ADMISSION NO. 94**: Admit that former Twitter chief executive Parag Agrawal was terminated within 24 hours of Elon Musk acquiring Twitter.

**OBJECTION**: None.

**RESPONSE**: Admitted.


**REQUEST FOR ADMISSION NO. 95**: Admit that former Twitter chief financial officer Ned Segal was terminated within 24 hours of Elon Musk acquiring Twitter.

**OBJECTION**: None.

**RESPONSE**: Admitted.


**REQUEST FOR ADMISSION NO. 96**: Admit that former Twitter head of legal policy, trust, and safety Vijaya Gadde was terminated within 24 hours of Elon Musk acquiring Twitter.

**OBJECTION**: None.

**RESPONSE**: Admitted, except that Ms. Gadde was Twitter's chief legal officer at the time.

**REQUEST FOR ADMISSION NO. 97**: Admit that, before Elon Musk acquired Twitter, the personal Twitter account of U.S. Representative Marjorie Taylor Greene was suspended.

**OBJECTION**: X objects to the term "suspended" as vague and undefined. X, and formerly Twitter, has several methods by which it takes action against user accounts and posts.    X interprets the request as if the term "suspended" means permanent suspension.

**RESPONSE**: Admitted.


**REQUEST FOR ADMISSION NO. 98**: Admit that the reason given by Twitter for the January 2022 suspension of U.S. Representative Marjorie Taylor Greene's personal account was for repeatedly posting or reposting misinformation about COVID-19.

**OBJECTION:** X objects that the phrase "misinformation about COVID-19" is vague as it is inherently subjective. For example, much of the initial reporting concerning COVID-19, including that it came from a lab leak in Wuhan, China, was initially described as misinformation, despite later information substantiating it as true. X further objects to the term "suspension" as vague and undefined. X, and formerly, Twitter, has several methods by which it takes action against user accounts and posts. X interprets the request as if the term "suspension" means permanent suspension. X will also interpret the request as if it referred to the rationale that then-Twitter documented with respect to the suspension.

**RESPONSE:** Admitted that then-Twitter suspended Representative Greene's account for "repeated violations of [Twitter's] COVID-19 misinformation policy."

**REQUEST FOR ADMISSION NO. 99**: Admit that after Elon Musk acquired Twitter, the previously suspended personal account of U.S. Representative Marjorie Taylor Greene was reinstated on the Platform.

**OBJECTION**: X objects to the term "suspended" as vague and undefined. X, and formerly Twitter, has several methods by which it takes action against user accounts and posts. X interprets the request as if the term "suspended" means permanent suspension.

**RESPONSE**: Admitted.


**REQUEST FOR ADMISSION NO. 100**: Admit that, before Elon Musk acquired Twitter, the Twitter account of Mike Lindell was suspended.

**OBJECTION**: X objects to the term "suspended" as vague and undefined. X, and formerly Twitter, has several methods by which it takes action against user accounts and posts. X interprets the request as if the term "suspended" means permanent suspension.

**RESPONSE**: Admitted.


**REQUEST FOR ADMISSION NO. 101**: Admit that the reason given by Twitter for the January 2021 suspension of Mike Lindell's account was for spreading misinformation about elections in violation of Twitter's civic integrity policy.

**OBJECTION**: X objects that the phrase "misinformation about elections" is vague as it is inherently subjective. X further objects to the term "suspension" as vague and undefined. X, and formerly Twitter, has several methods by which it takes action against user accounts and posts. X interprets the request as if the term "suspension" means permanent suspension. X will also interpret

6

the request as if it referred to the rationale that then-Twitter documented with respect to the suspension.

**RESPONSE**: Admitted that then-Twitter suspended Mike Lindell's account "due to repeated violations of [Twitter's] Civil Integrity Policy."


**REQUEST FOR ADMISSION NO. 102:** Admit that the reason given by Twitter for the May 2022 suspension of Mike Lindell's account was for trying to evade his account suspension with a new account.

**OBJECTION**: X objects to the term "suspension" as vague and undefined. X, and formerly Twitter, has several methods by which it takes action against user accounts and posts. X interprets the request as if the term "suspension" means permanent suspension.

**RESPONSE**: Admitted.


**REQUEST FOR ADMISSION NO. 103**: Admit that after Elon Musk acquired Twitter, the previously suspended account of Mike Lindell was reinstated on the Platform.

**OBJECTION**: X objects to the term "suspended" as vague and undefined. X and formerly, Twitter have several methods by which they action user accounts and posts. X interprets the request as if the term "suspended" means permanent suspension.

**RESPONSE**: Admitted.


**REQUEST FOR ADMISSION NO. 104**: Admit that, before Elon Musk acquired Twitter, the Twitter account of Jordan Peterson was suspended.

**OBJECTION**: X objects to the term "suspended" as vague and undefined. X, and formerly Twitter, has several methods by which it takes action against user accounts and posts. X interprets the request as if the term "suspended" means permanent suspension.

**RESPONSE**: Denied.

**REQUEST FOR ADMISSION NO. 105**: Admit that the reason given by Twitter for the June 2022 suspension of Jordan Peterson's account was for violation of Twitter's hateful conduct policy after posting content that targeted transgender people.

**OBJECTION**: X objects to the term "suspension" as vague and undefined. X, and formerly Twitter, has several methods by which it takes action against user accounts and posts. X interprets the request as if the term "suspension" means permanent suspension.

**RESPONSE**: Denied. Jordan Peterson's account was issued a strike for a post that was determined to be in violation of then-Twitter's hateful conduct policy, but was not suspended.

**REQUEST FOR ADMISSION NO. 106**: Admit that after Elon Musk acquired Twitter, the previously suspended account of Jordan Peterson was reinstated on the Platform.

**OBJECTION**: X objects to the term "suspended" as vague and undefined. X, and formerly Twitter, has several methods by which it takes action against user accounts and posts. X interprets the request as if the term "suspended" means permanent suspension.

**RESPONSE**: Denied.

**REQUEST FOR ADMISSION NO. 107**: Admit that, before Elon Musk acquired Twitter, the Twitter account of the Babylon Bee was suspended.

App'x 506

**OBJECTION**: X objects to the term "suspended" as vague and undefined. X, and formerly Twitter, has several methods by which it takes action against user accounts and posts. X interprets the request as if the term "suspended" means permanent suspension.

**RESPONSE**: Denied.

**REQUEST FOR ADMISSION NO. 108**: Admit that the reason given by Twitter for the March 2022 suspension of the Babylon Bee's account was for violating Twitter's hateful conduct policies after posting content that targeted transgender people.

**OBJECTION**: X objects to the term "suspension" as vague and undefined. X, and formerly Twitter, has several methods by which it takes action against user accounts and posts. X interprets the request as if the term "suspension" means permanent suspension.

**RESPONSE**: Denied. The account of the Babylon Bee was issued a strike for a post determined to be in violation of then-Twitter's hateful conduct policy concerning misgendering, but was not suspended.

**REQUEST FOR ADMISSION NO. 109**: Admit that after Elon Musk acquired Twitter, the previously suspended account of the Babylon Bee was reinstated on the Platform.

**OBJECTION**: X objects to the term "suspended" as vague and undefined. X, and formerly Twitter, has several methods by which it takes action against user accounts and posts. X interprets the request as if the term "suspended" means permanent suspension.

**RESPONSE**: Denied.

**REQUEST FOR ADMISSION NO. 110**: Admit that, before Elon Musk acquired Twitter, the Twitter account of Laura Loomer was suspended.

**OBJECTION**: X objects to the term "suspended" as vague and undefined. X, and formerly Twitter, has several methods by which it takes action against user accounts and posts. X interprets the request as if the term "suspended" means permanent suspension.

**RESPONSE**: Admitted.

**REQUEST FOR ADMISSION NO. 111**: Admit that the reason given by Twitter for the November 2018 suspension of Laura Loomer's account was for violation of Twitter's hateful conduct policy after making anti-Muslim attacks against U.S. Representative Ilhan Omar.

**OBJECTION**: X objects to the term "suspension" as vague and undefined. X, and formerly Twitter, has several methods by which it takes action against user accounts and posts s. X interprets the request as if the term "suspension" means permanent suspension.

**RESPONSE**: Admitted that then-Twitter documented Loomer's suspension as in violation of Twitter's hateful conduct policy.

**REQUEST FOR ADMISSION NO. 112**: Admit that after Elon Musk acquired Twitter, the previously suspended account of Laura Loomer was reinstated on the Platform.

**OBJECTION**: X objects to the term "suspended" as vague and undefined. X, and formerly Twitter, has several methods by which it takes action against user accounts and posts. X interprets the request as if the term "suspended" means permanent suspension.

**RESPONSE**: Admitted.

**REQUEST FOR ADMISSION NO. 113:** Admit that, before Elon Musk acquired Twitter, the Twitter account of Alex Jones was suspended.

**OBJECTION**: X objects to the term "suspended" as vague and undefined. X, and formerly Twitter, has several methods by which it takes action against user accounts and posts. X interprets the request as if the term "suspended" means permanent suspension.

**RESPONSE**: Admitted.

**REQUEST FOR ADMISSION NO. 114**: Admit that the reason given by Twitter for the September 2018 suspension of Alex Jones's account was for violating Twitter's abusive behavior policy.

**OBJECTION**: X objects to the term "suspension" as vague and undefined. X, and formerly Twitter, has several methods by which it takes action against user accounts and posts. X interprets the request as if the term "suspension" means permanent suspension.

**RESPONSE**: Admitted that then-Twitter documented Alex Jones's suspension as in violation of Twitter's abusive behavior policy.

**REQUEST FOR ADMISSION NO. 115**: Admit that after Elon Musk acquired Twitter, the previously suspended account of Alex Jones was reinstated on the Platform.

**OBJECTION**: X objects to the term "suspended" as vague and undefined. X, and formerly Twitter, has several methods by which it takes action against user accounts and posts. X interprets the request as if the term "suspended" means permanent suspension.

**RESPONSE**: Admitted.

**REQUEST FOR ADMISSION NO. 116**: Admit that the recording available at HELIO, Elon Musk's Full Interview at Cannes Lions 2024: AI, Creativity, and the Future of X, YouTube (June 19, 2024), https://www.youtube.com/watch?v=84Q4dyK_urU, is a true and accurate recording of an interview between CEO of WPP Mark Read and Elon Musk on June 19, 2024 at the Cannes Lions International Festival of Creativity.

**OBJECTION**: X objects to the extent that the request calls for X to verify the accuracy of a recording that is in the possession of third parties and may have been the result of editing, artificial intelligence, or other manipulation.

**RESPONSE**: X admits only that an interview took place between CEO of WPP Mark Read and Elon Musk on June 19, 2024 at the Cannes Lions International Festival of Creativity. X cannot admit or deny after reasonable inquiry whether the recording available at the link provided is true and accurate.

**REQUEST FOR ADMISSION NO. 117**: Admit that the World Bank ceased paid advertising on X in August 2024.

**OBJECTION**: None.

**RESPONSE**: Admitted.

**REQUEST FOR ADMISSION NO. 118**: Admit that the reason reported for the World Bank's decision to cease paid advertising on X in August 2024 was because its advertisement appeared under a post containing hateful content on the Platform.

App'x 510

**OBJECTION**: X objects that the word "reported" is vague without further context or information as to who reported the World Bank's decision or where the decision was reported. X further objects that the request calls for speculation as to the mental state of a third-party.

**RESPONSE**: X cannot admit or deny after reasonable inquiry. *See* Fed. R. Civ. P. 36(a)(4).


**REQUEST FOR ADMISSION NO. 119**: Admit that the post referred to by World Bank in its decision to cease paid advertising on the Platform is reflected in the screenshot below. Screenshot available at: Emmet Lyons & Joanne Stocker, World Bank halts paid advertising on X after CBS News finds its promoted ad under racist content, CBS News (Sept. 3, 2024), https://www.cbsnews.com/news/world-bank-advertising-elon-musk-x-racism-pro-nazi-accounts/.

**OBJECTION**: X objects that "its decision" is vague and undefined. X further objects that the image in the article was created by a third party and X is unaware if it was the result of photo-editing or other manipulation. X objects that this request assumes facts not in evidence that are within the knowledge of third parties, including whether World Bank issued a statement with respect to its decision to cease paid advertising on the Platform.

**RESPONSE**: X cannot admit or deny after reasonable inquiry. *See* Fed. R. Civ. P. 36(a)(4).


**REQUEST FOR ADMISSION NO. 120:** Admit that the post reflected in the screenshot at Request for Admission No. 119 was from an account that was verified by X.

**OBJECTION**: X objects that the post was created by a third-party and X is unaware if it was the result of photo-editing or other manipulation.

**RESPONSE**: X cannot admit or deny after reasonable inquiry, in part, because the account name is blurred.

**REQUEST FOR ADMISSION NO. 121:** Admit that the X verified account referenced in Request for Admission No. 120 has shared at least dozens of posts containing hateful content.

**OBJECTION**: X objects that the phrase "hateful content" is undefined and vague.

**RESPONSE**: X cannot admit or deny after reasonable inquiry, in part, because the account name is blurred.

**REQUEST FOR ADMISSION NO. 122:** Admit that Hyundai stated it paused its paid advertising on X in April 2024 because of concerns related to brand safety.

**OBJECTION**: X objects that the request is vague because Hyundai is a company, not an individual, and there is not enough information provided in the request to admit or deny who stated anything. X further objects that "stated" suggests that Defendants ask X to verify whether a statement did or not occur without identifying the statement in question. X also objects that the request concerns a third party who is not in the control of X.

**RESPONSE**: X cannot admit or deny after reasonable inquiry. *See* Fed. R. Civ. P. 36(a)(4).

**REQUEST FOR ADMISSION NO. 123**: Admit that Hyundai's advertisement appeared next to the post from @pepedownunder, as reflected in the screenshot below. Screenshot available at: @nancylevine,        X.com        (Apr.        17,        2024        4:04        PM) https://x.com/nancylevine/status/1780688883430330465.

**OBJECTION**: X objects that the request is improperly compound because it requests the admission of multiple express or implied facts including whether the screenshot itself is accurately reproduced, whether the image contained within the post was accurately reproduced or the product

App'x 512

of photo manipulation and editing tools, and other details that must factually be implied in any affirmative response. The request is also improper because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence because the existence, or non-existence, of a screenshot created by a third party to the litigation and containing unverified information is not probative to the truthfulness of Defendants' manipulation of the X algorithm that it published in the November articles and in Carusone's media appearances. Indeed, answering this request as written would be exceptionally burdensome and disproportionate to the needs of the case because X has hundreds of millions of posts per day and the adjacencies of posts and advertisements is unique to specific users; accordingly, it would require a significant investment in time and engineering resources to verify that any given post was shown to any particular user.

**RESPONSE**: Unable to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). After a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of any of the information contained within the screenshot. The screenshot was created by a third party who is not in the control of X and X has no way of knowing how the third party created the image contained within the post, nor can X determine whether the images in question were the product of photo editing tools or other manipulation.


**REQUEST FOR ADMISSION NO. 124**: Admit that the antisemitic post (referenced in Request for Admission No. 123 above) was from an X user account, @pepedownunder, that was verified by X.

**OBJECTION**: X objects that the request is impermissibly compound as it requires the implied admission that the post actually occurred and was not the result of photo editing tools or other manipulation. X objects that the request implies that a post—rather than a user—can be verified.

15

App'x 513

X also objects to the extent that a user being "verified" implies that X endorses the content posted on their account—X does not.

**RESPONSE**: Admitted that the X user account @pepedownunder appears to be verified in the screenshot provided by Defendants in Request for Admission No. 123. As stated in response to Request for Admission No. 123, after a reasonable inquiry, the information X knows or can readily obtain is insufficient to allow X to admit or deny the accuracy of the screenshot. Denied that @pepedownunder is presently an account on X or that it is verified.


**REQUEST FOR ADMISSION NO. 125**: Admit that the X user account, @pepedownunder, referenced in Request for Admission No. 124 has shared dozens of antisemitic and pro-Nazi posts.

**OBJECTION**: None.

**RESPONSE**: Admitted that there previously was an account on X with the handle @pepedownunder. Denied that @pepedownunder is presently an account on X or that it is verified. Admitted that the account previously shared posts that could be considered antisemitic or pro-Nazi content.


**REQUEST FOR ADMISSION NO. 126**: Admit that the document titled "Global Transparency Report H1 2024" available at https://s3.documentcloud.org/documents/25174340/x-global transparency-report-h1.pdf is a true and correct copy of X's Global Transparency Report released in September 2024.

**OBJECTION**: X objects that the link provided is not a permanent link, it is not in the control of X, and the contents available at the link could change at any time.

App'x 514

**RESPONSE**: Admitted that as of October 28, 2024, the link provided is a true and correct copy of X's Global Transparency Report released in September 2024. A true and correct copy of the Global Transparency Report H1 2024 can also be found on X's website here: https://transparency.x.com/content/dam/transparency-twitter/2024/x-global-transparency-report-h1.pdf.

App'x 515

Dated: October 30, 2024.

Respectfully submitted,
*/s/ Andrew LeGrand*

GIBSON, DUNN & CRUTCHER LLP
Andrew LeGrand (TX 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.* (CA 132099)
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed* (NY 4382040)
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

ELIAS LAW GROUP LLP
Abha Khanna* (WA 42612)
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Aria C. Branch* (DC 1014541)
Jacob D. Shelly* (DC 90010127)
Omeed Alerasool* (DC 90006578)
250 Massachusetts Avenue NW, Suite 400
Washington, DC 20001
T: (202) 968-4490
F: (202) 986-4498
abranch@elias.law
jshelly@elias.law
oalerasool@elias.law

* Admitted *pro hac vice*

*Counsel for Defendants Media Matters for America, Angelo Carusone, and Eric Hananoki*

## CERTIFICATE OF SERVICE

On October 30, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Andrew LeGrand*
Andrew LeGrand