IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| X CORP § § | |
|    Plaintiff, § § | |
| v. § | Civil Action No. 4:23-CV-01175-O |
| § § | |
| MEDIA MATTERS FOR AMERICA, § ET AL., § § § | |
|    Defendants. § | |

## ORDER

Before the Court are Defendants' Motion to Compel, Brief and Appendix in Support (ECF Nos. 113–15); Plaintiff's Response and Appendix in Support (ECF Nos. 121–22); and Defendants' Reply and Appendix in Support (ECF Nos. 124–25).

After reviewing the Motion, briefs in support, response, and reply, the Court concludes the following Discovery Requests remain in dispute: Defendants' Requests for Production ("RFP") Nos. 7, 9, 13, 17, 25, 26, 28, and 33; Requests for Admission ("RFA") Nos. 5, 9(A)–73(B), 82, and 83; and Interrogatory Nos. 6 and 8. After due consideration, the Court concludes that the Motion should be **GRANTED in part** and **DENIED in part**.

I.    **LEGAL STANDARD**

Federal Rule of Civil Procedure 26(b) governs the scope of discovery. The Rule provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). A party must assert privilege explicitly and "in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." FED. R. CIV. P. 26(b)(5)(A)(i)–(ii).

1

Under Federal Rule of Civil Procedure 36, "[a] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters . . . relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." FED. R. CIV. P. 36(a)(1). Rule 36 requests are properly directed to matters that the requesting party would otherwise need to prove. *See Am. Auto. Ass'n, Inc. v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1120 (5th Cir. 1991). Once the answering party has served answers or objections, Rule 36(a)(6) provides that "[t]he requesting party may move to determine the sufficiency of an answer or objection." FED. R. CIV. P. 36(a)(6). "Unless the court finds an objection justified, it must order that an answer be served" and, "[o]n finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served." *Id.*

Federal Rule of Civil Procedure 37 controls motions to compel discovery or disclosure. "A party seeking discovery may move for an order compelling an answer, designation, production, or inspection." FED. R. CIV. P. 37. After a party has attempted in good faith to obtain discovery without court action, Rule 37 allows a motion to compel when a party fails to answer or respond to a request for production under Rule 34 or an interrogatory under Rule 33, provided such discovery requests are within the scope of Rule 26(b). FED. R. CIV. P. 37(a)(3). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." FED. R. CIV. P. 37(a)(4).

The party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable. *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). A response to a Rule 34 request "must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for

objecting to the request, including the reasons" for each item or category. FED. R. CIV. P. 34(b)(2)(B). The 2015 revision of the Federal Rules precludes the use of boilerplate objections. *See* FED. R. CIV. P. 26(b) advisory committee's note to 2015 amendment.

## II. ANALYSIS

### A. Elon Musk-Related Disclosures

RFP No. 26 and Interrogatory No. 6:

Defendants request information relating to Elon Musk including his interaction on the X platform and all accounts Musk currently or previously controlled.[1] Plaintiff objects to this request asserting that Defendants seek irrelevant information, namely because Musk is not a party in this lawsuit.[2] Defendants respond that these requests are relevant because of the broad discovery standard of "any possibility that the information sought may be relevant to the claim or defense of any party." *SEC v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) (internal quotation marks and citation omitted). While true, Defendants' requests are still too broad. Defendants request not only the publicly available information regarding Musk's interactions on the X platform but also internal communications from Musk and information regarding accounts that are not publicly associated with Musk. If these accounts exist, by virtue of their anonymity, there is no possible discoverable evidence that may be "relevant to any party's claim or defense" because advertisers did not know Musk was in control of the accounts. FED. R. CIV. P. 26(b)(1). Accordingly, the Court **SUSTAINS** Plaintiff's objections to RFP No. 26 and Interrogatory No. 6.

---

[1] Defs.' Brief in Supp. Mot. to Compel 8, ECF No. 114.
[2] Pl.'s Resp. in Opp. 6–8, ECF No. 121.

RFA Nos. 82–83:

Defendants request admissions regarding the accuracy of transcriptions of Musk's remarks in other litigation.[3] Plaintiff objects for a number of reasons, including that the "deposition speaks for itself."[4] This objection to a request for admission is unavailing. A party cannot object that a document speaks for itself. *See VeroBlue Farms USA Inc. v. Wulf*, 345 F.R.D. 406, 424 (N.D. Tex. 2021) (collecting cases). Accordingly, Plaintiff **SHALL** properly answer RFA Nos. 82–83. Plaintiff is **ORDERED** to admit or deny whether the transcript in RFA No. 82 is authentic and if it cannot "state in detail why it cannot truthfully admit or deny the remainder"[5] of RFA No. 83.

### B. Content Moderation

RFP No. 25:

Next, Defendants request production regarding Plaintiff's content moderation efforts on the X Platform. Specifically, Defendants request "[a]ll documents and communications related to X suspending or terminating user accounts on the Platform" from April 2021 to present.[6] Plaintiff argues that the information regarding these users is neither relevant nor proportional.[7] The number of suspended accounts totaled nearly a billion—800,387,907.[8] Instead of the requested production, Plaintiff agreed to produce summary analytics showing the number of accounts suspended on the X Platform over the relevant time period.[9]

Defendants in reply ask for "(at the very least) all documents and communications related to X suspending or terminating accounts for violations of X's hateful content policies," rather than

---

[3] Defs.' Brief in Supp. Mot. to Compel 10–12, ECF No. 114.
[4] Defs.' App. in Supp. Mot. to Compel 453, ECF No. 115.
[5] *Id.*; *XL Specialty Ins. v. Bollinger Shipyards*, Inc., No. 12-2071, 2014 WL 295053, at *4 (E.D. La. Jan. 27, 2014).
[6] Defs.' Brief in Supp. Mot. to Compel 13 n.19, ECF No. 114.
[7] Pl.'s Resp. in Opp. 12–13, ECF No. 121.
[8] Pl.'s App. in Opp. 30, ECF No. 122.
[9] Defs.' App. in Supp. Mot. to Compel 63, ECF No. 115.

accounts that were suspended for any reason.[10] Defendants insist this request is relevant due to X's decision to reinstate hateful accounts that were previously suspended from the platform. The Court agrees that the production of nearly a billion documents is disproportionate. However, Defendants' limited request for accounts suspended for violating hateful content policies is appropriate and not disproportionate. The Court **ORDERS** Plaintiff to provide all documents and communications related to X suspending or terminating accounts for violations of X's hateful content policies.

RFP No. 28:

Defendants request production regarding Plaintiff's termination or suspension of current or former employees related to content moderation efforts on the X Platform. Defendants argue that Plaintiff's objection on the burden of production is forfeited because "prior to this briefing X has never raised a burden objection to RFP No. 28"[11] The Court agrees with Defendants.

Plaintiff did not raise the burden objection in its September 27, 2024, letter providing detailed objections to RFP No. 28.[12] In that letter, Plaintiff argues that the request was not relevant and "stands on its objections and response to Defendants' Request for Production No. 28 as stated in its Amended Responses and Objections and in accordance with the reasons stated in its letter dated September 6, 2024."[13] In neither its Amended Responses and Objections nor its September 6, 2024 letter did Plaintiff object on the basis of burdensomeness. Instead, it argued that RFP No. 28 was "an improper fishing expedition."[14] and never once mentioned the burden of production in its September 6, 2024 letter. Objections that are not timely raised are deemed waived. *See Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 283 (N.D. Tex. 2017). The Court has already

---

[10] Defs.' Reply 7, ECF No. 124.
[11] *Id.* at 6.
[12] Defs.' App. in Supp. Mot. to Compel 473, ECF No. 115.
[13] *Id.*
[14] *Id.* at 65.

addressed the issue of waiver in this case previously.[15] Accordingly, Plaintiff is **ORDERED** to fully provide documents responsive to RFP No. 28.

### C. Authentication of Content

RFA No. 5:

Defendants also request admissions regarding the accuracy of images central to this lawsuit. Defendants ask Plaintiff to "[a]dmit that the images of advertisements next to user content reproduced in the November 16, 2023 Article and the November 17, 2023 Article are authentic reproductions of pairings that occurred on the X Platform, as opposed to Photoshopped or otherwise digitally altered images."[16] In response, Plaintiff "admits that the ad adjacencies described in the articles occurred as a result of Defendants' manipulation of the platform, and if Defendants wish . . . X would admit that the adjacencies occurred."[17]

The dispute between the parties on this request for admission revolves around whether the images are "authentic." Plaintiff correctly notes that "Defendants or others with personal knowledge about the publishing of the articles on the website are far better suited to authenticate the images."[18] Accordingly, Plaintiff's objection to the "authentication" of the images is **SUSTAINED**.

RFA Nos. 9(A)–73(B):

Defendants request admissions whether screenshots accurately represent advertisements paired next to objectionable content on the X platform. These 128 requests for admission referred to an image and asked X to admit that the image (1) appeared on the X platform on the date

---

[15] *See* Sept. 27, 2024, Order on Motion to Compel, ECF No. 98.
[16] Defs.' Brief in Supp. Mot. to Compel 15, ECF No. 114.
[17] Pl.'s Resp. in Opp. 15, ECF No. 121.
[18] *Id.* (citing FED. R. EVID. 901; *United States v. Bansal*, 663 F.3d 634, 667–68 (Fed. Cir. 2011) (concluding that testimony of a witness with personal knowledge was sufficient to authenticate screenshot images of a website)).

reflected in the image and (2) that X's algorithm "did not prevent" the advertisement shown from appearing next to the content shown.[19] Plaintiff objects based on the "significant investment in time and engineering resources to verify that any given post was shown to any particular user"[20] Despite the resources that it may require to "verify that any given post was shown to any particular user"[21] this request is not, as Plaintiff characterizes it, "of limited utility to the parties' claims and defenses."[22] Instead, Defendants lodge as a primary defense to this lawsuit that objectionable ad placements are "not as anomalous as X alleges if dozens and dozens of other users are witnessing the same breakdown in X's advertiser protections that X promised could not happen."[23] Moreover, Defendants use images depicting questionable ad pairings to support its alternative theory of why advertisers departed from the X Platform.[24] Finally, because Plaintiff has disclosed that it has the capacity to verify these images and the documents are highly relevant to Defendants' theory, the Court is persuaded that Defendants overcome the burden of disclosure to Plaintiff. Accordingly, the Court **OVERRULES** Plaintiff's objection. Plaintiff is **ORDERED** to fully provide responsive admissions RFA Nos. 9(A)–73(B).

### D. Advertising and Financial Disclosures

RFP No. 13:

Next, Defendants request production of "[a]ll documents and communications regarding payments made to X users related to X's revenue sharing programs."[25] Plaintiff objects contending that the request is irrelevant and disproportionate to the needs of the case.[26] In their reply,

---

[19] Defs.' App. in Supp. Mot. to Compel 81–164, ECF No. 115.
[20] Pl.'s Resp. in Opp. 16, ECF No. 121 (citing Defs.' App. in Supp. Mot. to Compel 189, ECF No. 115).
[21] *Id.*
[22] Pl.'s Resp. in Opp. 16, ECF No. 121.
[23] Defs.' Reply 8, ECF No. 124.
[24] *Id.* at 9–10.
[25] Defs.' Brief in Supp. Mot. to Compel 13 n.19, ECF No. 114.
[26] Pl.'s Resp. in Opp. 11, ECF No. 121.

Defendants request a tailored demand, that is, for Plaintiff to produce, at minimum, documents and communications regarding payment to accounts that have previously been suspended for violating X's hateful content policies.[27] Due to the limited nature of Defendants new request and the "possibility that the information sought may be relevant to the claim or defense of any party," the Court **OVERULES** Plaintiff's objection. *SEC*, 238 F.R.D. at 437 (internal quotation marks and citation omitted). Plaintiff is **ORDERED** to provide all documents and communications regarding payments made to X users related to X's revenue sharing programs Platform that have previously been suspended for violating X's hateful content policies.

RFP Nos. 7, 17, 33 and Interrogatory No. 8:

Defendants request communications between Plaintiff and advertisers regarding their decisions to or not to advertise on the X platform. Plaintiff objects on the grounds that Defendants seek irrelevant information, namely, communications concerning advertisers that are not the six advertisers Plaintiff uses to support this lawsuit.[28] Defendants respond that because Plaintiff's tortious interference claim is at least in part supported by circumstantial evidence, the timing of six advertisers leaving the X Platform, circumstantial evidence regarding other advertisers' decision to depart from the platform is proper here.[29] Defendants are correct. The purpose of discovery is to "allow the parties to develop fully and crystalize concise factual issues for trial." *Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 304 (5th Cir. 1973). Defendants are entitled to discover other circumstantial evidence that supports their theory that Defendants did not cause the advertising exodus. Accordingly, the Court **OVERULES** Plaintiff's objection. Plaintiff is **ORDERED** to fully provide documents responsive to RFP Nos. 7, 17, and 33.

---

[27] Defs.' Reply 6–7, ECF No. 124.
[28] Pl.'s Resp. in Opp. 17–20, ECF No. 121.
[29] Defs.' Brief in Supp. Mot. to Compel 20–21, ECF No. 114; Defs.' Reply 9–10, ECF No. 124.

RFP No. 9:

Finally, Defendants request documents detailing all of Plaintiff's revenue on the X platform from advertisers. Plaintiff argues that this request is overbroad and irrelevant to its damage's calculation because "X . . . is not seeking compensation for the decline in aggregate revenue, but instead for the specific harm caused by Defendants' tortious conduct."[30] Defendants contend that the aggregated revenue information for all advertisers is necessary to establish advertisers concerns about the platform.[31] However, because Defendants will receive information responsive to RFP Nos. 7, 17, 33 and Interrogatory No. 8, RFP No. 9 is significantly reduced in relevance and duplicative. Due to the lack of relevance based on Plaintiff's damages and reduced need the Court **SUSTAINS** Plaintiff's objection to RFP No. 8.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Compel is **GRANTED in part** and **DENIED in part.** Plaintiff's objection to RFP Nos. 9 and 26, RFA No. 5, and Interrogatory No. 6 are **SUSTAINED.** All other objections raised by Plaintiff are **OVERRULED.**

The parties **SHALL COMPLY** with this Order. Specifically: (1) Plaintiff must deliver all documents in its possession and control responsive to RFP Nos. 7, 17, 33, 13, 25, and 28 to Defendants. (2) Plaintiff must answer properly and fully answer RFA Nos. 9(A)–73(B), 82, 83 and Interrogatory No. 8 **no later than 30 days** after this Order. By that date, Plaintiff shall promptly file proof of delivery and compliance.

**SO ORDERED** on this **3rd** day of **Janaury, 2025**.

Reed O'Connor
UNITED STATES DISTRICT JUDGE

---

[30] Pl.'s Resp. in Opp. 20, ECF No. 121.
[31] Defs.' Brief in Supp. Mot. to Compel 22, ECF No. 114.