## UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

|  |  |
|---|---|
| **X CORP.**, a Nevada corporation,<br>　　　　Plaintiff,<br><br>　　vs.<br><br>**MEDIA MATTERS FOR AMERICA**, a<br>Washington, D.C. non-profit corporation,<br>**ERIC HANANOKI**, and **ANGELO**<br>**CARUSONE**,<br>　　　　Defendants. | Case No. 4:23-CV-01175-O |

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR A TEMPORARY
## RESTRAINING ORDER AND ANTISUIT INJUNCTION
## <u>UNDER THE FIRST-TO-FILE RULE</u>

JUDD E. STONE II
CHRISTOPHER D. HILTON
ARI CUENIN
MICHAEL R. ABRAMS
CODY C. COLL
**STONE HILTON PLLC**
600 Congress Ave.
Suite 2350
Austin, TX 78701
Telephone: (737) 465-7248
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
michael@stonehilton.com
cody@stonehilton.com

JOHN C. SULLIVAN
**S|L Law PLLC**
610 Uptown Boulevard
Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
john.sullivan@the-sl-lawfirm.com

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ............................................................................................................ 1

BACKGROUND .............................................................................................................. 2

    I.   Proceedings in the Northern District of Texas.................................................... 2

    II.  Defendants' Belated Suit in the Northern District of California ....................... 4

LEGAL STANDARD........................................................................................................ 6

ARGUMENT AND AUTHORITIES .............................................................................. 8

    I.   The Proceedings Substantially Overlap and Defendants Can Only Bring Their Breach-of-Contract Claim as a Counterclaim in this Court. .............................................................. 8

        A.  The core factual and legal issues in the California litigation are before this Court—and have largely already been decided ....................................................... 8

        B.  Defendants were required to bring their breach-of-contract claim against X as a counterclaim here.................................................................................. 10

    II.  Defendants' Suit in the Northern District of California Will Result in Inequitable Hardship and Delay in this Court............................................................... 14

    III. X Has Also Met the Traditional Four-Part Test for Equitable Relief............................. 18

CONCLUSION AND PRAYER ..................................................................................... 20

CERTIFICATE OF SERVICE ....................................................................................... 21

i

## TABLE OF AUTHORITIES

CASES

*Cadle Co. v. Whataburger of Alice, Inc.*,
  174 F.3d 599 (5th Cir. 1999) ........................................................................... 7, 19

*Canon Latin America, Inc. v. Lantech (CR), S.A.*,
  453 F. Supp. 2d 1357 (S.D. Fla. 2006) ................................................................ 6

*Commercializadora Portimex, S.A. de CV v. Zen-Noh Grain Corp.*,
  373 F. Supp. 2d 645 (E.D. La. 2005) ................................................................. 14

*Covell v. Heyman*,
  111 U.S. 176 (1884) .............................................................................................. 7

*Crutcher v. Aetna Life Ins. Co.*,
  746 F.2d 1076 (5th Cir. 1984) ............................................................................ 11

*Daniels Health Scis., LLC v. Vascular Health Scis., LLC*,
  710 F.3d 579 (5th Cir. 2013) ................................................................... 6, 18, 19

*Ellicott Mach. Corp. v. Modern Welding Co., Inc.*,
  502 F.2d 178 (4th Cir. 1974) ........................................................................... 9, 10

*F.T.C. v. Multinet Mktg., LLC*,
  959 F. Supp. 394 (N.D. Tex. 1997) .................................................................... 15

*Ganpat v. E. Pac. Shipping PTE, Ltd.*,
  66 F.4th 578 (5th Cir. 2023) ......................................................................... 14, 18

*Greer's Ranch Café v. Guzman*,
  540 F. Supp. 3d 638 (N.D. Tex. 2021) ................................................................. 6

*Hous. Pro. Towing Ass'n v. City of Houston*,
  812 F.3d 443 (5th Cir. 2016) .............................................................................. 13

*In re Amerijet Int'l, Inc.*,
  785 F.3d 967 (5th Cir. 2015) ........................................................................ 2, 6, 7

*In re NTE Conn., LLC*,
  26 F.4th 980 (D.C. Cir. 2022) ............................................................................ 18

*In re Planned Parenthood Fed'n of Am., Inc.*,
  52 F.4th 625 (5th Cir. 2022) .............................................................................. 15

*In re Radmax, Ltd.*,
  720 F.3d 285 (5th Cir. 2013) .............................................................................. 16

*In re Untersweser Reederei GMBH*,
  428 F.2d 888 (5th Cir. 1970) ......................................................................... 7, 18

*In re Wyeth*,
  406 F. App'x 475 (Fed. Cir. 2010) ..................................................................... 16

*Int'l Fidelity Ins. Co. v. Sweet Little Mexico Corp.*,
665 F.3d 671 (5th Cir. 2011)...................................................................... 7, 8, 9

*Kaepa, Inc. v. Achilles Corp.*,
76 F.3d 624 (5th Cir. 1996)...................................................................... 6, 14, 17

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
335 F.3d 357 (5th Cir. 2003)...................................................................... 6, 18

*Louisiana Ice Cream Distributors, Inc. v. Carvel Corp.*,
821 F.2d 1031 (5th Cir. 1987)...................................................................... 9

*Mann Mfg., Inc. v. Hortex, Inc.*,
439 F.2d 403 (5th Cir. 1971)...................................................................... 7

*McDaniel v. Anheuser-Busch, Inc.*,
987 F.2d 298 (5th Cir. 1993)...................................................................... 11

*Media Matters et al. v. X Corp. et al.*,
No. 3:25-cv-02397 (N.D. Cal. Mar. 10, 2025)...................................................... 4, 5

*Mun. Energy Agency v. Big Rivers Elec. Corp.*,
804 F.2d 338 (5th Cir. 1986)...................................................................... 6

*MWK Recruiting Inc. v. Jowers*,
833 F. App'x 560 (5th Cir. 2020)................................................................. 14, 17

*New York Life Ins. Co. v. Deshotel*,
142 F.3d 873 (5th Cir. 1998)..................................................................... 11, 12

*Park Club, Inc. v. Resolution Tr. Corp.*,
967 F.2d 1053 (5th Cir. 1992)..................................................................... 12

*Peteet v. Dow Chem. Co.*,
868 F.2d 1428 (5th Cir. 1989)..................................................................... 17

*Plant v. Blazer Fin. Servs., Inc. of Georgia*,
598 F.2d 1357 (5th Cir. 1979)..................................................................... 12, 13

*Ravgen, Inc. v. Lab. Corp. of Am. Holdings*,
No. W-20-CV-00969-ADA, 2022 WL 272115 (W.D. Tex. Jan. 28, 2022)......................... 16

*Realtime Data LLC v. NetApp, Inc.*,
No. 6:16-CV-00961-RWS, 2017 WL 3588047 (E.D. Tex. Aug. 21, 2017)....................... 9

*Restaurant Law Ctr. v. United States Dep't of Labor*,
66 F.4th 593 (5th Cir. 2023)..................................................................... 18

*Save Power Ltd. v. Syntek Fin. Corp.*,
121 F.3d 947 (5th Cir. 1997)..................................................................... 7, 10

*Tex. Instruments Inc. v. Micron Semiconductor, Inc.*,
815 F. Supp. 994 (E.D. Tex. 1993)............................................................... 17

*United Broad. Co. v. Armes*,
506 F.2d 766 (5th Cir. 1975)..................................................................... 11

*Wells Fargo Bank, N.A v. W. Coast Life Ins. Co.*,
   631 F. Supp. 2d 844 (N.D. Tex. 2009) ..................................................... 7

*West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*,
   751 F.2d 721 (5th Cir. 1985) ................................................................. 10

*X Corp. v. Media Matters for America*,
   No. 24-10900 (5th Cir.) (argued Feb. 18, 2025) ...................................... 4

## STATUTES

28 U.S.C § 1404(a) ................................................................... 4, 9, 15

28 U.S.C. § 1406(a) ......................................................................... 4

## RULES

15 FED. PRAC. & PROC. CIV. § 3847 (2d ed. 1986) ................................. 15

6 FED. PRAC. & PROC. CIV. § 1410.1 (3d ed.) ..................................... 13

Fed. R. Civ. P. 1 ........................................................................ 17

Fed. R. Civ. P. 13(a) .............................................................. 11, 12

Fed. R. Civ. P. 26 ..................................................................... 16

N.D. Cal. Civ. L. R. 7-3(a) ............................................................ 5

## INTRODUCTION

As of the date of this filing, this suit is 484 days old. Since X brought this action on November 20, 2023, the parties have exchanged over a million pages of documents in discovery, engaged in extensive motion practice, responded to hundreds of interrogatories, requests for production, and requests for admission, and even litigated an appeal of one of this Court's interlocutory orders before the United States Court of Appeals for the Fifth Circuit, which is currently pending a decision. This Court has issued numerous substantive decisions on a host of jurisdictional, discovery and merits-related issues, granting and denying motions submitted by both parties. In one of the first motions that Defendants brought, they asked this Court to dismiss X's claims for being in a purportedly improper venue, noting the then-existing forum selection clause in X's terms of service but not contending that its terms covered this suit. The Court denied that motion. Defendants then sought to certify the Court's venue order for interlocutory appeal. The Court denied that motion, too.

In keeping with their litigation conduct across the life of this case, Defendants now want a third bite at the apple. Days ago, they filed another venue-related motion claiming that X's old terms of service require that X's claims be heard in the San Francisco Division of the Northern District of California. Yet before X could file its response (due March 27), Defendants sued X, along with its subsidiaries, Twitter International Limited Co. and Twitter Asia Pacific Pte. Ltd, in the Northern District of California. In that suit, they raised the precise issue that they briefed in their untimely motion to transfer—whether X's former terms of service require X to bring its claims in California. Just last week, they filed a motion for preliminary injunction, seeking to prevent X and its international subsidiaries from "prosecuting their pending actions against Media Matters in jurisdictions outside the United States."

Defendants' new suit is a brazen violation of the first-to-file rule, a principle of judicial administration mandating that the "court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." *In re Amerijet Int'l, Inc.*, 785 F.3d 967, 976 (5th Cir. 2015) (citation omitted). The purpose of the first-to-file rule is to prevent the very kind of gamesmanship that Defendants now resort to, and an antisuit injunction like the one X now requests is an appropriate remedy to preserve the first court's ability to adjudicate the claims before it. *Id.*

The Court should therefore immediately enjoin Defendants' gambit to stymie this Court from resolving an issue that *they* brought to the Court's attention in the first place. This relief will appropriately prevent Defendants' case in the Northern District of California from proceeding while this Court revolves Defendants' motion to transfer. Longstanding rules of comity and efficiency necessitate injunctive relief—a temporary restraining order, followed by an antisuit injunction—to preserve the status quo and ensure that this Court does not lose its prerogative to decide in the first instance whether X's claims may be maintained here notwithstanding Defendants' meritless arguments to the contrary.

## BACKGROUND

### I.    Proceedings in the Northern District of Texas

On November 16 and 17, 2023, Media Matters published two articles written by Hananoki that claimed to uncover instances of antisemitic and hateful content being organically "placed" next to advertising posts on the X social media platform. ECF No. 37, Am. Compl. ¶¶ 30-38, 46-54 (ECF No. 37). These publications—specifically, their assertions that Media Matters discovered fringe content organically positioned aside posts from X's premier advertisers—were false. In fact, Defendants deliberately manipulated the X platform to engineer their desired ad pairings and then

2

published defamatory claims that the ad pairings occurred naturally. *Id.* ¶¶ 47-54. Carusone, Media Matters' president, also claimed in a television interview that "[w]hat we did was use Twitter the way a normal user would and then log the advertisements that were received." *Id.* ¶ 13. The deceptive articles were part of a larger, ongoing campaign to destroy X's advertiser base and revenues. *Id.* ¶ 46.

Media Matters' articles had the effect that Defendants intended. Advertisers significantly reduced or eliminated spending on X's platform in their wake. *Id.* ¶¶ 30-38, 61-64. In response, X sued Defendants in this Court for business disparagement, tortious interference with contract, and tortious interference with prospective economic advantage. *Id.* ¶¶ 65-88.

Defendants filed a motion to dismiss X's Amended Complaint on March 8, 2024. ECF No. 41. The motion contested both personal jurisdiction and venue in this Court. *See id.* at 4-13. In doing so, Defendants did not contend that X's then-applicable terms of service, which provided that "[a]ll disputes related to these Terms or the Services will be brought solely in the federal or state courts located in San Francisco County, California," applied to this case, but they contended that it generally supported their assertion that Texas had no strong interest in this suit. *See id.* at 10 (arguing that exercising personal jurisdiction would not be "reasonable" because "X's . . . terms of service disclaim any interest in resolving disputes in Texas"); *id.* at 13 (noting, in venue argument, that the Northern District of California is "ordinarily X's own preferred choice of forum" as evidenced by the Terms of Service).[1]

On August 29, 2024, the Court denied Defendants' motion to dismiss, rejecting their

---

[1] X's terms of service have since been updated to provide that "[a]ll disputes related to these Terms or the Services . . . will be brought exclusively in the U.S. District Court for the Northern District of Texas or state courts located in Tarrant County, Texas, United States." *See* Appx. 84, Term of Service, *available at* https://x.com/en/tos (effective Nov. 15, 2024).

personal jurisdiction, venue, and Rule 12(b)(6) arguments (and any attendant arguments based on the terms of service). ECF No. 82 at 16. Defendants later requested that the Court certify its personal jurisdiction and venue holdings for immediate appellate review. ECF No. 94. They insisted that California, along with the District of Columbia, is a proper venue for X's suit, *see* ECF No. 94 at 16, but did not cite X's terms of service. *See id.* Although they threatened to seek mandamus relief "absent prompt certification," ECF No. 120 at 1, they did not do so even after the Court denied their motion, ECF No. 134. Pretrial proceedings have continued apace, including extensive discovery, motions practice, and an interlocutory appeal before the Fifth Circuit. *See X Corp. v. Media Matters for America*, No. 24-10900 (5th Cir.) (argued Feb. 18, 2025).

A year after filing their unsuccessful motion to dismiss, on March 6, 2025, Defendants filed a motion to transfer venue under 28 U.S.C §§ 1404(a) and 1406(a). *See* ECF No. 153. In it, they argue that the venue provision in X's former terms of service requires that this litigation be heard in the Northern District of California. *Id.* at 4-14. X's response to the motion is due on March 27, 2025.

## II.   Defendants' Belated Suit in the Northern District of California

Notwithstanding their pending transfer motion in this Court, on March 10, 2025, Defendants filed a suit of their own in the San Francisco Division of the Northern District of California based on the now-defunct venue provision in X's prior terms of service. *See* Appx. 3, ECF No. 1, Complaint, *Media Matters et al. v. X Corp. et al.*, No. 3:25-cv-02397, ¶ 1 (N.D. Cal. Mar. 10, 2025) ("[Media Matters] seeks to enforce its contractual right for *this Court* to hear the claims that X Corp. has brought against it in multiple jurisdictions around the world.") (emphasis in original). The new complaint alleges X's purported breach of the terms of service cost Defendants "millions of dollars in attorneys' fees and costs defending X Corp.'s improperly filed

suit in Texas," despite those terms having a "damages cap" that "limit[s] a user's damages to $100." *Id.* ¶¶ 24 n.9, 136. It also seeks a declaration that the terms of service apply to two X affiliates that filed claims last year against Media Matters internationally—Twitter International Unlimited Company ("TIUC") and Twitter Asia Pacific Pte. Ltd. ("TAP")—and an injunction against their ongoing litigation against Media Matters in Ireland and Singapore, respectively. *See id.* at 38.

On March 11, Defendants moved for a preliminary injunction prohibiting X and its affiliates from "further prosecuting their pending actions against Media Matters in foreign jurisdictions," and from "prosecuting or initiating litigation against Media Matters, whether directly or through its subsidiaries, arising from the same conduct as that alleged in the pending Ireland and Singapore complaints in jurisdictions outside of the United States in violation of the X Terms of Service's forum selection clause." *See* Appx. 71, ECF No. 16, Pls.' Mem. Of Points and Authorities in Support of Mot. for a Preliminary Injunction, *Media Matters et al. v. X Corp. et al.*, No. 3:25-cv-02397, at 25 (N.D. Cal. Mar. 11, 2025). Defendants have since requested that a hearing be held on their motion by April 10, 2025.

Regardless of how the motion for an expedited hearing date is resolved, X's response to Defendants' motion for preliminary injunction in the Northern District of California (along with TIUC's and TAP's, if they were properly served) is due on March 25 absent relief from this Court. *See* N.D. Cal. Civ. L. R. 7-3(a). **Today, on the morning of March 17, 2025, Defendants sought a temporary restraining order in the California proceedings asking for relief no later than 2 p.m. today, March 17. Accordingly, X respectfully requests that the Court issue a temporary restraining order as soon as practicable and no later than Monday, March 17, 2025, at 1:00 p.m.** Defendants should also be ordered to withdraw their motion for preliminary injunction

5

without prejudice to refiling if this Court does not grant X's request for a preliminary antisuit injunction.

## LEGAL STANDARD

A temporary restraining order is "simply a highly accelerated and temporary form of preliminary injunctive relief, which requires that the party seeking such relief establish the same four elements for obtaining a preliminary injunction." *Greer's Ranch Café v. Guzman*, 540 F. Supp. 3d 638, 644-45 (N.D. Tex. 2021) (O'Connor, J.) (citation omitted). In cases in which the traditional factors apply, the "Court may issue a preliminary injunction if the movant establishes (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm; (3) the balance of hardships weighs in the movant's favor; and (4) the issuance of the preliminary injunction will not disserve the public interest." *Id.* (citing *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 582 (5th Cir. 2013)).

The Fifth Circuit has made clear, however, that the "suitability" of an injunction against overlapping proceedings "ultimately depends on considerations unique to antisuit injunctions." *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 364 (5th Cir. 2003); *see also Amerijet Intern.*, 785 F.3d at 976 (district courts may "'enjoin the filing of related lawsuits in other U.S. district courts.'" (quoting *Mun. Energy Agency v. Big Rivers Elec. Corp.*, 804 F.2d 338, 343 (5th Cir. 1986))). To that end, the Fifth Circuit has "ordered antisuit injunctions more liberally" than some other federal appellate courts, and district courts in the Fifth Circuit have followed this guidance. *See Canon Latin America, Inc. v. Lantech (CR), S.A.*, 453 F. Supp. 2d 1357, 1361 (S.D. Fla. 2006) (describing Fifth Circuit precedent and citing *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 627 (5th Cir. 1996)).

"'The Fifth Circuit adheres to the general rule that the court in which an action is first filed

6

is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed.'" *Amerijet Int'l*, 785 F.3d at 976 (quoting *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997)). This rule applies absent "compelling circumstances" to the contrary. *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971). At bottom, it is "a forward-looking doctrine used to 'maximize judicial economy and minimize embarrassing inconsistencies by prophylactically refusing to hear a case raising issues that might substantially duplicate those raised by a case pending in another court.'" *Wells Fargo Bank, N.A v. W. Coast Life Ins. Co.*, 631 F. Supp. 2d 844, 848 (N.D. Tex. 2009) (quoting *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999)).

"Under this first-to-file rule, the cases need not be identical; rather, 'the crucial inquiry is one of substantial overlap.'" *Amerijet Int'l*, 785 F.3d at 976 (quoting *Int'l Fidelity Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 678 (5th Cir. 2011)). "'The rule rests on principles of comity and sound judicial administration' and the concern underlying the rule 'manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result.'" *Id.* (quoting *Cadle Co.*, 174 F.3d at 603); *see also Covell v. Heyman*, 111 U.S. 176, 182 (1884) ("The forbearance which courts of co-ordinate jurisdiction, administered under a single system, exercise towards each other, whereby conflicts are avoided, by avoiding interference with the process of each other, is a principle of comity . . .").

Assuming that the two suits substantially overlap, a district court may issue an antisuit injunction against a later-filed suit if that second suit "would result in 'inequitable hardship' and 'tend to frustrate and delay the speedy and efficient determination of the [first-filed] cause.'" *In re Untersweser Reederei GMBH*, 428 F.2d 888, 896 (5th Cir. 1970) (citation omitted)).

7

## ARGUMENT AND AUTHORITIES

I.    **The Proceedings Substantially Overlap and Defendants Can Only Bring Their Breach-of-Contract Claim as a Counterclaim in this Court.**

    A.    **The core factual and legal issues in the California litigation are before this Court—and have largely already been decided.**

In evaluating if a "substantial overlap" exists, district courts consider "factors such as whether 'the core issue . . . was the same' or if 'much of the proof adduced . . . would likely be identical.'" *Int'l Fidelity*, 665 F.3d at 678 (citation omitted). "Where the overlap between two suits is less than complete, the judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." *Id.*

This suit and Defendants' suit substantially overlap because the "core issue" and relevant proof in the California case—the interpretation and scope of X's terms of service, and any evidence bearing on that question—are the same ones that Defendants presented to this Court just last week. Defendants' new complaint recounts at length the facts that led to X suing in this Court. Appx. 19-24. It then alleges that "X Corp. breached the TOS by filing a lawsuit against Plaintiffs 'related to . . . the Services' in the Northern District of Texas." Appx. 38. They make this very argument in their earlier-filed motion to transfer pending before this Court. *See* ECF No. 153-1 at 1 ("X itself has repeatedly enforced its forum-selection clause when other parties bring non-contract claims against X outside California, but X ignored its own agreement in selecting this Court.").

Thus, any court that addresses Defendants' forum-selection clause arguments will consider the allegations in X's complaint *in this Court*, the language of the stale forum-selection clause that Defendants rely on, and any evidence bearing on its interpretation. Both courts will also have to

8

consider which terms of service apply to the present dispute—the outdated ones that Defendants cite or the superseding current terms that all active users, including Defendants, must agree to abide by, and which specify venue in the Northern District of Texas. *See* Appx. 84 ("We may revise these Terms from time to time. The changes will not be retroactive, and the most current version of the Terms, which will always be at https://x.com/tos, will govern our relationship with you."). In that regard, the inquiries the two fora will face will be not just similar, but identical. Without an injunction, both courts will proceed in addressing these critical questions, which exacerbates the risk of duplicated efforts, "rulings that may trench upon authority of sister courts," and "piecemeal resolution of issues that call for a uniform result." *Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 678 (5th Cir. 2011)).

That the key issue in the California litigation is merely another variation of a venue inquiry that Defendants have already raised in this Court is even more offensive to sound judicial administration. "[A] party seeking the exercise of a district court's discretion is ordinarily bound by that court's determination." *Ellicott Mach. Corp. v. Modern Welding Co., Inc*., 502 F.2d 178, 182 (4th Cir. 1974) (citation omitted). Defendants have sought multiple venue rulings from this Court and in doing so are bound by them. *Id.* Their failure to assert in their prior motion to dismiss that this case is governed by the forum selection clause and their litigation conduct since then also amount to a waiver of their invocation of the clause. *See, e.g.*, *Realtime Data LLC v. NetApp, Inc.,* No. 6:16-CV-00961-RWS, 2017 WL 3588047, at *1-2 (E.D. Tex. Aug. 21, 2017) (describing instances of parties' behavior in litigation constituting waiver of improper venue arguments). Moreover, venue determinations are ordinarily not subject to interlocutory appeal. *Louisiana Ice Cream Distributors, Inc. v. Carvel Corp.*, 821 F.2d 1031, 1033 (5th Cir. 1987) (stating that "[t]he denial of a motion to dismiss for improper venue is . . . an interlocutory order which is not subject

to immediate appeal" and "disclaim[ing] immediate appellate jurisdiction over the grant or denial of a motion to transfer under 28 U.S.C. § 1404(a) . . . and the denial of a motion to dismiss based on *forum non conveniens*"). By asking a California court to rule on the same venue determinations this Court has made and is in the process of making, Defendants are not only demanding an improper appeal of this Court's venue determination but "effectively appeal[ing] from one district judge to another." *Ellicott Mach. Corp.*, 502 F.2d at 181.

It is no answer that Defendants' motion for preliminary injunction only purports to seek a stay of ongoing litigation by X's affiliates in Ireland and Singapore. Appx. 47. Media Matters' California motion asserts that the "issues and parties here are the same as in the foreign cases" and that X's subsidiaries "are likewise bound" to X's terms of service. Appx. 58, 62. In other words, to resolve Defendants' motion for preliminary injunction, the Northern District of California must construe the very forum selection clause that Defendants assert requires transfer of this case to that court.

For similar reasons, it is irrelevant that X's affiliates are not parties to this litigation. "Complete identity of parties is not required for dismissal or transfer of a case filed subsequently to a substantially related action." *Syntek Fin. Corp.*, 121 F.3d at 951. Defendants' calculated strategy to sue X's affiliates in California (where they conduct no business) well *after* those affiliates instituted foreign actions does not diminish the overlap between this case and Defendants' California suit. *See West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 731 n.5 (5th Cir. 1985) (an incomplete identity of parties does not mandate that two "essentially identical" actions remain pending).

 **B.** **Defendants were required to bring their breach-of-contract claim against X as a counterclaim here.**

There is more here than just substantial relatedness. Indeed, the suits overlap to such an extent that Media Matters was obligated to bring its meritless breach-of-contract claim against X as a compulsory counterclaim in this case. Rule 13 of the Federal Rules of Civil Procedure states that a defendant "must" plead any compulsory counterclaim in a responsive pleading if the claim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" and does not require adding parties over which it has no jurisdiction. Fed. R. Civ. P. 13(a)(1)(A), (B). It is "well settled that a failure to plead a compulsory counterclaim bars a party from bringing a later independent action on that claim." *New York Life Ins. Co. v. Deshotel*, 142 F.3d 873, 882 (5th Cir. 1998); *McDaniel v. Anheuser-Busch, Inc*., 987 F.2d 298, 304 (5th Cir. 1993). Because Defendants' claim against X for breach of contract is a compulsory counterclaim, they cannot maintain their action in the Northern District of California and this Court can and should enjoin Defendants from continuing to litigate there. *See United Broad. Co. v. Armes*, 506 F.2d 766, 771 (5th Cir. 1975).

Both aspects of Rule 13(a) are satisfied. Taking the latter first, the parties have already litigated and this Court has already determined that it has jurisdiction over X. Moreover, Defendants contend that TIUC and TAP are X's alter egos, Appx. 63, which, at a minimum, establishes that Defendants believe that those entities could be equally sued in this District as in the Northern District of California. Although X does not concede that this Court (or any U.S. court) would have jurisdiction over those entities, this Court's exercise of jurisdiction would be at least as proper as that of the California federal court. Finally, Defendants' claim had accrued by the time they filed their answer on September 12, 2024, ECF No. 92, as they had, by that point, litigated against X in this District, against TIUC in Ireland, and against TAP in Singapore. *See Crutcher v. Aetna Life Ins. Co*., 746 F.2d 1076, 1080 (5th Cir. 1984). Defendants raise no

argument, nor could they, that they were unaware of the existence of X's terms of service or its forum selection clause, and indeed they previously cited both in their motion to dismiss briefing in this case. *See* ECF No. 41 at 3, 10.

As to whether the counterclaim "arises out of the transaction or occurrence," Fed. R. Civ. P. 13(a)(1)(A), the Fifth Circuit has noted four independent methods of determining that question:

> 1) Are the issues of fact and law raised by the claim and counterclaim largely the same? 2) Would res judicata bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule? 3) Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim? 4) Is there any logical relation between the claim and the counterclaim?

*Plant v. Blazer Fin. Servs., Inc. of Georgia*, 598 F.2d 1357, 1360-61 (5th Cir. 1979); *Park Club, Inc. v. Resolution Tr. Corp.*, 967 F.2d 1053, 1058 (5th Cir. 1992). The approach that "has commended itself to most courts," including the Fifth Circuit, is the logical relation test. *Plant*, 598 F.2d at 1361.

Under that test, X's claim and Defendants' counterclaim are obviously logically related. Defendants have deployed and continue to deploy X's former terms of service as a defense against the Court's exercise of venue over X's claims. ECF No. 41 at 3, 10; *see generally* ECF No. 153-1. Of course, this is the same contract as the one over which they now sue X in the Northern District of California for breach, thus establishing the "logical relationship" that makes Defendants' claim for breach of contract a compulsory counterclaim.[2]

Fifth Circuit precedent confirms as much. In *Plant*, for example, the Court evaluated whether a counterclaim for payment on an unpaid note balance was compulsory in response to a plaintiff's truth-in-lending claim against the lender. 598 F.2d at 1359. Applying the logical relation

---

[2] For avoidance of doubt, X reserves the right to oppose any belated effort from Defendants to pursue a counterclaim in this Court.

12

test, the panel focused on how "single aggregate of operative facts, the loan transaction, gave rise to both plaintiff's and defendant's claims" and found the counterclaim compulsory. Likewise, in *New York Life Ins. Co. v. Deshotel*, the Fifth Circuit found a logical relationship between claims that all referred to the same life insurance policy. 142 F.3d 873, 881-82 (5th Cir. 1998). Indeed, a survey of court decisions nationwide establishes that "[w]hen the same contract serves as the basis for both the claims and the counterclaims, the logical-relationship standard also has been satisfied." *See* 6 FED. PRAC. & PROC. CIV. § 1410.1 (3d ed.) (collecting cases).

Although the Court need go no further to find Rule 13's requirements met, the remaining three tests also favor X. As X explained above, the legal and factual disputes surrounding venue are largely the same in both cases and concern the same evidence. *Supra* pp. 8-9. Both courts will need to evaluate which forum selection clause governs and whether X's claims fall under the clause. Evidence of Defendants' use of the platform will be relevant to the inquiry of which clause governs (because it will show that Defendants accepted the updated terms of service) and will also prove probative of the merits of X's claims. *Plant*, 598 F.2d at 1361. Both courts will also need to evaluate whether Defendants forfeited their argument that the forum selection clause applies to this case, and evidence of Defendants' conduct in this litigation will be relevant to that question.[3] Lastly, a judgment in this Court is likely to have preclusive effect as to the issue of whether X was required to bring its suit in the Northern District of California. Res judicata "bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Hous. Pro. Towing Ass'n v. City of Houston*, 812 F.3d 443, 447 (5th Cir. 2016). For the reasons discussed at

---

[3] In this case, whether Defendants forfeited their argument that the forum selection clause governs would be dispositive of their transfer motion.  And in the Northern District of California breach-of-contract case, it would be necessary to decide whether X's alleged breach of the forum selection clause caused Defendants' alleged damages or whether those alleged damages are attributable to Defendants' own failure to argue that the forum selection clause governs.

length above, Defendants could have brought their breach-of-contract claim in this Court in the first instance.

*  *  *

These proceedings fall squarely within the ambit of the first-to-file rule and the prohibition on parties raising compulsory counterclaims in later-filed suits. These cardinal rules of judicial administration are designed to prevent piecemeal litigation, and they apply with full force here.

## II.  Defendants' Suit in the Northern District of California Will Result in Inequitable Hardship and Delay in this Court.

Once a district court determines that two causes of action substantially overlap, the court must evaluate whether the later-filed litigation "cause[s] prejudice or offend[s] other equitable principles." *MWK Recruiting Inc. v. Jowers*, 833 F. App'x 560, 562 (5th Cir. 2020). Among the factors that the court should consider include any "inequitable hardship resulting from the foreign suit [and the] foreign suit's ability to frustrate and delay the speedy and efficient determination of the cause." *Id.*; *see also Ganpat v. E. Pac. Shipping PTE, Ltd.*, 66 F.4th 578, 582 (5th Cir. 2023) (directing district courts to consider "(1) 'inequitable hardship' resulting from the foreign suit; (2) the foreign suit's ability to 'frustrate and delay the speedy and efficient determination of the cause'; and (3) the extent to which the foreign suit is duplicitous"). The "unwarranted inconvenience, expense, and vexation" of litigating a duplicative foreign proceeding alone is sufficient to award an antisuit injunction. *Kaepa, Inc.*, 76 F.3d at 628; *Ganpat*, 66 F.4th at 582 (collecting cases noting that "unwarranted inconvenience and expense present sufficient hardship to support an anti-suit injunction. . ."); *Commercializadora Portimex, S.A. de CV v. Zen-Noh Grain Corp.*, 373 F. Supp. 2d 645, 649-50 (E.D. La. 2005) (finding duplicative litigation in a foreign jurisdiction to be an inequitable hardship when the claims were previously litigated to final judgment).

14

These various considerations can be summed up by a simple question: is there any reasonable justification for the second-filed suit that would counsel against an antisuit injunction? The answer here is a resounding no. Defendants' suit (very belatedly) claims that X's prosecution of this case in this Court constitutes a multi-million-dollar breach of contract. If Defendants were to prevail on their interpretation of the former terms of service in California but lose that precise issue in this Court, the resulting procedural quagmire would not only create an irreconcilable conflict as to the venue question but would obstruct and even penalize X's prosecution of this litigation. The considerable time it would take to resolve that conflict would inevitably delay resolution of this year-old case. Rather than "reasonable," this second-filed suit amounts to a collateral attack on this Court's authority to hear X's case.

Equally egregious is Media Matters' inexcusable delay in bringing a motion to transfer based on the forum selection clause in X's previous terms of service.[4] Defendants' previous venue arguments referenced X's terms of service but focused on other contentions and nowhere argued that X was contractually bound to file its suit in the Northern District of California. ECF No. 41 at 10, 13. That was Defendants' choice, which they made after careful review of X's initial and amended complaints. They should not receive a redo of a motion that they lost months ago, let alone the two they are seeking—one in this Court, and one in the Northern District of California.

Because of the prejudice that a late venue transfer can work on one or both sides to a lawsuit, parties who seek a change in venue "should act with 'reasonable promptness.'" *In re Planned Parenthood Fed'n of Am., Inc*., 52 F.4th 625, 630 (5th Cir. 2022) (quoting 15 FED. PRAC. & PROC. CIV. § 3847 (2d ed. 1986)). After all, belated motions to transfer venue are "likely to

---

[4] Defendants' motion based on "the convenience of parties and witnesses," 28 U.S.C. § 1404(a), is also meritless. X will address the many flaws of Defendants' motion in its response.

15

upset the discovery and trial schedule and waste judicial resources." *F.T.C. v. Multinet Mktg., LLC*, 959 F. Supp. 394, 396 (N.D. Tex. 1997) (finding seven-month delay in filing motion to transfer unreasonable). "Otherwise, 'the court [will] expend time and effort that might become wasted upon transfer." *Ravgen, Inc. v. Lab. Corp. of Am. Holdings*, No. W-20-CV-00969-ADA, 2022 WL 272115, at *1 (W.D. Tex. Jan. 28, 2022) (citing *In re Wyeth*, 406 F. App'x 475, 477 (Fed. Cir. 2010).

Defendants' delayed request to transfer raises the risk of significant prejudice to both X and the Court. This is not a "garden-variety" delay typically associated with transfer. *In re Radmax, Ltd.*, 720 F.3d 285, 289 (5th Cir. 2013). X has litigated this case for over a year in the Northern District of Texas, diligently preparing for a trial that is now scheduled for October 6, 2025. At one point, the parties even represented that they "anticipate that further modification of the schedule in this Matter will not be necessary, thereby maximally preserving the Court's ability to 'efficiently and expeditiously resolve cases.'" ECF No. 66 at 4 (citation omitted). Although one follow-on extension was necessary, *see* ECF No. 130, that proved necessary only because Defendants pursued an interlocutory appeal of this Court's order granting a motion to compel, *supra* p. 4.[5] Despite these obstacles, X has worked diligently and expended extensive resources to timely prepare this case for trial. An antisuit injunction will ensure that those efforts do not go to waste.

Relatedly, this Court is fully acquainted with the issues in this case and is therefore far better positioned to adjudicate the issues in Defendants' motion to transfer than the Northern District of California. The Court has already been briefed and then ruled on issues related to

---

[5] Defendants' transfer request raises the troubling prospect that they invoked the Fifth Circuit's jurisdiction and resources only to belatedly claim that the Fifth Circuit should never have heard the appeal at all. X intends to file a notice with the Fifth Circuit of the latest developments in this Court and the Northern District of California.

personal jurisdiction, venue, the merits, and the contours of appropriate discovery under Federal Rule of Civil Procedure 26. If this suit is suddenly shifted to the Northern District of California solely because Defendants wish for that court to hear the merits of Defendants' forum selection clause arguments first, Defendants will have unnecessarily expended sixteen months of this Court's time, resources, and attention that could have been spent on other pressing matters. *See* ECF No. 54 at 12 (noting that the "Fort Worth Division features one of the busiest dockets in the nation based on filings per judge"). This offense against basic equitable principles counsels in favor of injunctive relief. *MWK Recruiting*, 833 F. App'x at 562. And although Defendants' motion to transfer is not presently before the Court (X's opposition is forthcoming), these equitable considerations undermine that motion as well. *E.g.*, *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) (requiring "promptness" for purposes of a transfer motion).

Finally, this Court should not countenance Defendants' gamesmanship. Their tactical decision to seek a transfer in this Court only to request instead that the Northern District of California resolve it four days later "smacks of cynicism, harassment, and delay." *Kaepa, Inc.*, 76 F.3d at 628 (finding no abuse of discretion in issuance of antisuit injunction when defendant in domestic suit filed suit in foreign venue as plaintiff raising the same breach of contract claims). In the Northern District of California proceedings, Defendants asked the court for expedited consideration of their motion for preliminary injunction. *Supra* p. 5. Yet Defendants have not sought any such emergency or expedited relief here, including on their motion to transfer. This otherwise inexplicable dichotomy suggests a desire to have the second-filed court improperly decide issues first—and thereby "usurp the first-filed court's role." *Tex. Instruments Inc. v. Micron Semiconductor, Inc*., 815 F. Supp. 994, 999 (E.D. Tex. 1993). Defendants' second-filed suit requires "an absurd duplication of effort" that will, and indeed, already has, resulted in

17

"unwarranted inconvenience, expense, and vexation." *Kaepa, Inc.*, 76 F.3d at 627-28. The Court should put an immediate halt to that unnecessary work, which will inure to all parties' benefit and to "the just, speedy, and inexpensive determination" of this action. ECF No. 54 at 15 (quoting Fed. R. Civ. P. 1).

### III.    X Has Also Met the Traditional Four-Part Test for Equitable Relief.

For the reasons explained above, whether the Court should issue X's requested relief "ultimately depends on considerations unique to antisuit injunctions." *Karaha Bodas*, 335 F.3d at 364; *supra* pp. 5-6. But to the extent the Court concludes that it must evaluate the four traditional equitable factors, *e.g.*, *Ganpat*, 66 F.4th at 588 (Jones, J., dissenting), X has met that burden, too.

In this context, whether X is likely to succeed on the merits is about whether X "has demonstrated that the factors specific to an antisuit injunction weigh in favor of granting that injunction here." *Karaha Bodas*, 335 F.3d at 364 n.19. X has done so. This suit substantially overlaps with the California litigation, *supra* pp. 7-9, and allowing the second-filed case to proceed would "frustrate and delay the speedy and efficient determination of the [first-filed] cause." *Untersweser Reederei*, 428 F.2d at 896; *see also supra* pp. 12-15.

X also faces a substantial threat of irreparable harm absent an injunction. *Vascular Health Scis., LLC*, 710 F.3d at 582. Without an injunction, X could find itself subject to conflicting discovery rulings and judgments that would undermine its efforts to prosecute this matter and effectively deprive X of the opportunity to timely bring this case to trial. *Supra* p. 14 (noting the multiple extensions of the schedule that have already been necessary). If that were not enough, "[e]ven purely economic costs may count as irreparable harm where they cannot be recovered in the ordinary course of litigation." *Restaurant Law Ctr. v. United States Dep't of Labor*, 66 F.4th 593, 597 (5th Cir. 2023); *see also In re NTE Conn., LLC*, 26 F.4th 980, 990-91 (D.C. Cir. 2022)

("We have recognized that financial injury can be irreparable where no adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation." (cleaned up)). "In determining whether costs are irreparable, the key inquiry is not so much the magnitude but the irreparability." *Restaurant Law Ctr.*, 66 F.4th at 597 (cleaned up). In the absence of an injunction, X will spend significant resources defending against new claims in California for which it is unclear how it could ever recover its investment of time, money and attention. Most pressingly, in just under two weeks, X and its subsidiaries (assuming they were properly served) must respond to Defendants' broad motion for preliminary injunction. Defending against the Northern District of California complaint will then consume valuable company resources and distract X from its focus on preparing this case for trial. Those costs, which are indisputably "more than de minimis," *id.* at 600, suffice to establish irreparable harm.

Finally, the balance of hardships and the public interest tilt overwhelmingly in favor of an injunction. *Vascular Health Scis., LLC*, 710 F.3d at 582. Defendants will face no hardship in an orderly process in which this Court resolves their motion to transfer free from the confusion and gamesmanship generated by Defendants' second-filed case. Meanwhile, the public interest lies in "avoid[ing] rulings which may trench upon the authority of sister courts" and "piecemeal resolution of issues that call for a uniform result.'" *Cadle Co.*, 174 F.3d at 603. An antisuit injunction protects the parties, this Court, the Northern District of California, and the judicial system as a whole, from those concerns.

19

## CONCLUSION AND PRAYER

The Court should temporarily and then preliminarily enjoin Defendants from prosecuting their pending suit in the San Francisco Division of the Northern District of California. As part of its temporary restraining order, the Court should order Defendants to withdraw their motion for preliminary injunction without prejudice to refiling should this Court ultimately refuse to grant an antisuit injunction.

Dated: March 17, 2025.                    Respectfully submitted.

*/s/ Christopher D. Hilton*
Judd E. Stone II
  Texas Bar No. 24076720
Christopher D. Hilton
  Texas Bar No. 24087727
Ari Cuenin
  Texas Bar No. 24078385
Michael R. Abrams
  Texas Bar No. 24087072
Alex M. Dvorscak
  Texas Bar No. 24120461
Cody C. Coll
  Texas Bar No. 24116214
**STONE HILTON PLLC**
600 Congress Ave.,Suite 2350
Austin, TX 78701
Telephone: (737) 465-7248
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
michael@stonehilton.com
alex@stonehilton.com
cody@stonehilton.com

John C. Sullivan
  Texas Bar No. 24083920
**S|L LAW PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

20

**CERTIFICATE OF SERVICE**

I hereby certify that this document was served on all counsel for record on March 17, 2025

via the Court's CM/ECF system.

/s/ Alexander M. Dvorscak
Alexander M. Dvorscak