# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

|  |  |
|---|---|
| **X. CORP.,** | |
|     *Plaintiff*, | Civil Action No. 4:23-cv-01175-O |
|     v. | |
| **MEDIA MATTERS FOR AMERICA,** *et al.*, | |
|     *Defendants.* | |

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND ANTISUIT INJUNCTION

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................................1

II.     BACKGROUND .............................................................................................................2

      A.      The X Entities file three lawsuits against Media Matters in three
            jurisdictions.........................................................................................................2

      B.      X's TOS contain a forum selection clause requiring litigation in
            California. ...........................................................................................................4

      C.      Defendants move to dismiss for improper venue pursuant to Fed. R.
            Civ. P. 12(b)(3). ................................................................................................5

      D.      Defendants move to transfer venue pursuant to 28 U.S.C. § 1404(a)
            and § 1406. ..........................................................................................................6

      E.      Defendants file claims in the Northern District of California and move
            for a preliminary injunction solely as to X's international actions. ........................6

      F.      X seeks emergency relief, prompting Defendants to do likewise............................7

III.    LEGAL STANDARD .......................................................................................................8

IV.     ARGUMENT ...................................................................................................................9

      A.      X has not carried its heavy burden to support an anti-suit injunction
            depriving another federal court of the ability to hear claims under the
            first-to-file rule...................................................................................................9

            1.      The N.D. California proceeding does not substantially overlap
                    with this action so as to support an antisuit injunction. .............................9

            2.      Defendants' California claims will not result in any hardship or
                    delay here. ..............................................................................................16

      B.      Defendants' claims for breach of contract and declaratory judgment
            are not compulsory counterclaims that Defendants were required to
            assert in this action............................................................................................18

            1.      A valid forum selection clause trumps Fed. R. Civ. P. 13(a). ...................18

            2.      Defendants' claims are not compulsory counterclaims. ............................19

      C.      X cannot satisfy the normal four-part test for immediate injunctive
            relief. ................................................................................................................23

V.      CONCLUSION...............................................................................................................25

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*,
    571 U.S. 49 (2013)........................................................................................13

*Bancroft Life & Cas. ICC, Ltd. v. FFD Res. II*,
    LLC, 884 F. Supp. 2d 535 (S.D. Tex. 2012)................................................19, 25

*Bilodeau v. Ahern Rentals, Inc.*,
    2021 WL 8016841 (S.D. Tex. Aug. 20, 2021) ............................................10

*Brown v. Federated Cap. Corp.*,
    991 F. Supp. 2d 857 (S.D. Tex. 2014) .......................................................14

*Carey v. 24 Hour Fitness, USA, Inc.*,
    669 F.3d 202 (5th Cir. 2012) .....................................................................10

*F.T.C. v. Multinet Mktg., LLC*,
    959 F. Supp. 394 (N.D. Tex. 1997) ..........................................................14

*Greer's Ranch Cafe v. Guzman*,
    540 F. Supp. 3d 638 (N.D. Tex. 2021) (O'Connor, J.)..............................8

*In re Amerijet Intern., Inc.*,
    785 F.3d 967 (5th Cir. 2015) ..................................................................9, 12

*In re Planned Parenthood Fed'n of Am., Inc.*,
    52 F.4th 625 (5th Cir. 2022) ...................................................................14, 15

*Innovative Display Techs. LLC v. Microsoft Corp.*,
    No. 2:13-CV-00783-JRG, 2014 WL 2757541 (E.D. Tex. June 17, 2014) ...........19

*MWK Recruiting Inc. v. Jowers*,
    833 F. App'x 560 (5th Cir. 2020) ..............................................................9

*New York Life Ins. Co. v. Deshotel*,
    142 F.3d 873 (5th Cir. 1998) .....................................................................21

*Peteet v. Dow Chem. Co.*,
    868 F.2d 1428 (5th Cir. 1989) ...................................................................15

*Petro-Hunt, L.L.C. v. United States*,
    365 F.3d 385 (5th Cir. 2004) .....................................................................22

*Plant v. Blazer Fin. Services, Inc. of Georgia*,
  598 F.2d 1357 (5th Cir. 1979) ...................................................................20, 21

*Polaris Eng'g, Inc. v. Texas Int'l Terminals, Ltd.*,
  No. CV H-20-3389, 2021 WL 5155691 (S.D. Tex. Apr. 16, 2021) .........................19

*Publicis Commc'n v. True N. Communic's Inc.*,
  132 F.3d 363 (7th Cir. 1997) ...............................................................18, 19, 22

*Ravgen, Inc. v. Lab. Corp. of America Holdings*,
  2022 WL 272115 (W.D. Tex. Jan. 28, 2022) ...........................................................15

*Realtime Data LLC v. NetApp, Inc.*,
  2017 WL 3588047 (E.D. Tex. Aug. 21, 2017) .........................................................14

*Revere Copper & Brass Inc. v. Aetna Cas. & Sur. Co.*,
  426 F.2d 709 (5th Cir. 1970) ...............................................................................20

*Save Power Ltd. v. Syntek Fin. Corp.*,
  121 F.3d 947 (5th Cir. 1997) ...............................................................................12

*Scrum All., Inc. v. Scrum, Inc.*,
  2021 WL 798310 (E.D. Tex. Feb. 26, 2021) ...........................................................10

*Smith v. Bayer Corp.*,
  564 U.S. 299 (2011)..............................................................................................23

*State of Tex. v. Seatrain Intern., S. A.*,
  518 F.2d 175 (5th Cir. 1975) ...........................................................................8, 23

*United Broad. Co. v. Armes*,
  506 F.2d 766 (5th Cir. 1975) ...............................................................................21

*Watson v. Fieldwood Energy Offshore, LLC*,
  181 F. Supp. 3d 402 (S.D. Tex. 2016) ...................................................................18

*West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*,
  751 F.2d 721 (5th Cir. 1985) ...............................................................................12

*Wissel v. Rural Media Group, Inc.*,
  No. 4:24-CV-00999-P, 2025 WL 641434 (N.D. Tex. Feb. 27, 2025).........................9

**Statutes**

28 U.S.C. § 1391(a) ..................................................................................................5

28 U.S.C. § 1404.............................................................................................. *passim*

28 U.S.C. § 1406.................................................................................6, 7, 14, 15

**Rules**

Fed. R. Civ. P. 12(b)(3)....................................................................................5, 13, 14, 17

Fed. R. Civ. P. 13..........................................................................................18, 19, 20, 22

**Other Authorities**

18 Wright & Miller, Fed. Prac. & Proc. § 4405 (2d ed. 2002) ...................................23

6 Wright & Miller, Fed. Prac. & Proc. Civ. § 1412 (3d ed.) ......................................18

## I.    INTRODUCTION

This Court should deny X's request for a temporary restraining order. X's proposed order and injunction would cause substantial harm *to Defendants* by preventing them from seeking to prohibit continued prosecution of X's *foreign* actions. X's briefing ignores this fundamental point and the differing relief that Defendants seek in the Northern District of California: An antisuit injunction barring only the foreign actions. Due to the forum selection clause in the contract X itself drafted, that claim *only* could have been brought in California. To be clear, the California suit does affect this Court's jurisdiction. Defendants have not sought any injunction against X's continued prosecution of their suit in this Court. Granting X's injunction request would have the extreme effect of cutting off Defendants' ability to seek relief in any United States forum. Not surprisingly, X has not cited a single case supporting this drastic result.

Instead, X bases its request on the fact that Defendants also have moved *in this Court* to transfer the case to California due to, among other reasons, the same forum selection clause at issue in California: "All disputes related to these Terms or the Services will be brought solely in the federal or state courts located in San Francisco County, California." App. 176. But regardless of how this Court rules on the transfer motion, the California suit to enjoin the foreign litigation would remain. Defendants embrace that the proper venue for vindicating the forum selection clause in *this litigation* is *this Court*. But filing such a motion *here* cannot end the California suit to enjoin X's separately pending foreign litigation.

X's arguments to the contrary all fail. <u>*First*</u>, as discussed above, the California action seeks to enjoin only the foreign litigations and does not intrude on the jurisdiction of this Court. Indeed, the Northern District of California court has made clear that it has no intention of stepping on this Court's jurisdiction. App. 194. <u>*Second*</u>, X ignores that the first-to-file doctrine has no application in the context of a valid forum selection clause, and this exception is doubly true here where the

California action includes X's foreign litigations. *Third*, X's mandatory counterclaim argument fails both because a claim subject to a forum selection clause need not be brought in an improper forum and because X has not argued that this Court would have jurisdiction over a suit to enjoin the foreign actions. *Fourth*, granting the antisuit injunction against the California action would leave Defendants no forum to vindicate its contractual right to stop the foreign actions. *Fifth*, X argues waiver; but not only is that argument wrong on the facts because Defendants have not waived their right to seek relief under the forum selection clause, waiver in this action cannot apply to Defendants' claims with respect to X's foreign lawsuits. In other words, even if this Court finds that Defendants waited too long to make their arguments under the forum selection clause in this Court, such a ruling would not affect the timeliness of Defendants' claims as to the foreign litigations, which have ongoing proceedings that continue to adversely affect Defendants. *Sixth*, on procedural grounds, X has given no reason why it moved for a temporary restraining order. Even taking everything X says as true, Defendants asked for a hearing by April 10 in California to enjoin the foreign lawsuits. *See* App. 188. Instead of a highly-rushed schedule, X could have and should have asked for a preliminary injunction. This is grounds alone for denying the TRO.

## II.    BACKGROUND

### A.    The X Entities file three lawsuits against Media Matters in three jurisdictions.

On November 16, 2023, Media Matters published an article authored by Eric Hananoki entitled "As Musk endorses antisemitic conspiracy theory, X has been placing ads for Apple, Bravo, IBM, Oracle, and Xfinity next to pro-Nazi content," which explained that while X had been telling advertisers "that brands are 'protected from the risk of being next to' toxic posts," X's platform still permitted advertisements to be placed next to extremist content—as indicated by the example screenshots depicted in the article. *See* ECF 158 ("X App.") 19–21.

On November 18, 2023, Musk threatened "a thermonuclear lawsuit against Media Matters"

2

in response to the November 16 article. X App. 21. Musk's post embeds a list of purported "facts" about Media Matters' use of the X Platform, claiming that Media Matters used X in a "contrived" way in an effort to generate anomalous content/advertisement pairings. X App. 21–22. As promised, on November 20, 2023, X Corp. filed the instant lawsuit against Media Matters and Eric Hananoki, alleging claims for Interference with Contract, Business Disparagement, and Interference with Prospective Economic Advantage based on Media Matters' supposedly "manipulative" use of the X Platform and its subsequent reporting on that use. *See* ECF 1. X Corp. later amended to add Angelo Carusone as a defendant. ECF 37.

On December 7, 2023, X Corp.'s subsidiary in the EU and UK, Twitter International Unlimited Co. ("TIUC") served a summons on Media Matters in Ireland alleging the same supposed "manipulation" of the X Platform and seeking to hold it liable for lost advertising revenue. *See* App. 2. That same day, X's subsidiary in the Asia Pacific region, Twitter Asia Pacific Pte. Ltd. ("TAP," and with X Corp. and TIUC, the "X Entities") threatened to file effectively the same suit—which it then did, in July 2024. App. 22–45. And on December 19, Twitter UK sent Media Matters a demand letter threatening to file yet *another* instance of the same suit. App. 47.

The TIUC and TAP complaints each assert claims for defamation and malicious falsehood premised on Media Matters' same use of the X Platform—which TIUC claims to operate and TAP represents in their respective regions—and Media Matters' reporting on that use. *See* App. 25–44, 54–61. But despite the similar allegations, the X Entities have consistently represented in the foreign proceedings that those suits are distinct from its suit pending in this District. In Ireland, TIUC submitted testimony from its expert witness in opposition to Media Matters' jurisdictional challenge stating that "there is no proceeding in the United States with identical parties and claims to the Irish litigation. Specifically, here X Corp. and Twitter International are separate corporate

3

entities and X Corp. is asserting claims for its injuries under Texas law, while Twitter International is asserting distinct claims for different injuries under Irish law." App. 72; *see id*. 73–74 ("[N]either Twitter International nor any of its claims or losses are part of the X Corp. litigation in Texas. . ."), 95 (noting "the differences between X Corp.'s claim and Twitter International's claim, including the basis and nature of the claim and potential differences in applicable law"); *see also id.* 115 (affidavit of M. Bhargava testifying that "there is no overlap between the two sets of proceedings in terms of loss or damage"); 114 (testimony stating understanding that the issues in Ireland are "properly to be tried according to Irish law").

Similarly, in Singapore, X has submitted expert testimony stating that "although X Corp. has a proceeding against Media Matters in Texas arising from the same publication that is the subject of TAPPL's claims, X Corp. and TAPPL are separate corporate entities and X Corp. is asserting claims for its injuries under Texas law, while TAPPL is asserting its own distinct claims for different injuries under Singapore law." App. 154.

The parties are currently litigating Media Matters' jurisdictional challenges in the foreign actions. In Ireland, a conference on April 2 (following a prior March 12 conference) will set the hearing schedule for that challenge. In Singapore, a hearing on the merits of the challenge is scheduled for April 14, 2025. App. 161. Media Matters has consistently contested jurisdiction and venue in both Ireland and Singapore. *Id*. No discovery has taken place in the foreign actions. *Id*.

**B.     X's TOS contain a forum selection clause requiring litigation in California.**

Hananoki created the X account that saw the ad pairings discussed in the November 16 article in July of 2020. App. 164. In doing so, he agreed to the X Terms of Service ("Terms"). *Id*. In November 2023, acting within the scope of his employment, Hananoki accessed the account to conduct research on X and Twitter advertisers as detailed in the November 16, 2023 article. *Id*.

The Terms operative in November 2023 contain a broad forum selection clause requiring

parties to bring all claims related to "X's Services" in California courts:

> The laws of the State of California, excluding its choice of law provisions, will govern these Terms and any dispute that arises between you and us. ***All disputes related to these Terms or the Services will be brought solely in the federal or state courts located in San Francisco County, California***, United States, and you consent to personal jurisdiction and waive any objection as to inconvenient forum.

App. 176 (emphasis added). The X Terms broadly defines "Services": "These Terms of Service ('Terms') govern your access to and use of our services, including our various websites, SMS, APIs, email notifications, applications, buttons, widgets, ads, commerce services, and our other covered services . . . that link to these Terms (collectively, the 'Services')." App. 168–69.

**C.     Defendants move to dismiss for improper venue pursuant to Fed. R. Civ. P. 12(b)(3).**

On February 6, 2024, Defendants moved to dismiss this action for lack of jurisdiction, improper venue, and failure to state a claim. ECF 31. On February 27, 2024, X filed an Amended Complaint, mooting Defendants' pending motion. *See* ECF 37. Defendants then timely filed a Motion to Dismiss X's Amended Complaint, again for lack of personal jurisdiction, improper venue, and failure to state a claim, on March 8, 2024. ECF 40–41. In that motion, Defendants argued that venue does not exist in this Court pursuant to 28 U.S.C. § 1391(a). ECF 41 at 11–13. Defendants did not move to transfer pursuant to 28 U.S.C. § 1404. *See id.*

On August 29, 2024, this Court denied Defendants' Motion to Dismiss. ECF 82. In that order, this Court found that "Plaintiff sufficiently alleges a substantial part of the events occurred within the Northern District of Texas" such that venue here is proper. ECF 82 at 12. The Court's order did not address whether the forum selection clause would justify transfer. On the contrary, the Court noted that "Defendants do not seek a transfer of venue." *Id.* at 12 n.27.

On September 20, 2024, Defendants moved to certify the Court's denial of their Motion to Dismiss for immediate appeal on the basis of jurisdiction and venue. ECF 93. The Court denied the request on January 2, 2025. ECF 134. In that denial, the Court acknowledged "that 28 U.S.C.

§ 1406 allows a renewed challenge to venue as the 'evidentiary record develops.'" *Id.* at 3 (quoting Defs.' Br. at ECF 94). On January 31, X updated its interrogatories with additional advertisers, none of whom are in Texas, let alone this District. ECF 153-1 at 21–22.

**D.    Defendants move to transfer venue pursuant to 28 U.S.C. § 1404(a) and § 1406.**

On March 6, 2025, Defendants filed their 28 U.S.C. § 1404(a) and § 1406(a) Motion to Transfer Venue after meeting and conferring with X starting on March 2. ECF 152. As that motion explains, Defendants have consistently challenged venue since the time X filed suit in this Court, including via timely motions to dismiss X's original and amended complaints and a prompt request for interlocutory appeal of the Court's determination that venue is proper in this District. ECF 153-1 at 21–24. Defendants filed their motion to transfer soon after this Court's denial of the § 1391 certification, and soon after discovery confirmed the continued lack of connection to this district. *Id.* Defendants' Motion to Transfer Venue cites limited information designated confidential by X and is therefore currently pending a determination on Defendants' request to seal. *See* ECF 153.

**E.    Defendants file claims in the Northern District of California and move for a preliminary injunction solely as to X's international actions.**

On March 10, 2025, Defendants filed claims against X Corp., TIUC, and TAP in the Northern District of California. X App. at 2. As Defendants explain in their Complaint, the forum selection clause contained in X's Terms binds each of these entities. X App. 29–32. Accordingly, because these entities' respective suits against Media Matters "relate to" X's Services, those parties were required to file their respective actions against Media Matters in San Francisco County, California. Defendants stated in their complaint that they intended to promptly seek injunctive relief to prevent the further prosecution of X's internationally filed actions. X App. 8. Defendants expressly stated that they "do not now seek such relief with regard to X Corp.'s prosecution of its pending Texas litigation. Rather, Plaintiffs have a pending motion to transfer venue in that court

6

pursuant to 28 U.S.C. § 1404 and § 1406—based, in part, on the forum selection clause at issue in this case." X App. 8 n.7. Defendants thus made clear they intended to respect this Court's prerogative to address the forum selection clause's application to X's litigation pending here.

As promised in their Complaint, Defendants promptly filed a motion for a preliminary injunction the next day, March 11, 2025. X App. 43. That motion seeks an injunction (1) enjoining the X Entities from further prosecuting their pending actions against Media Matters in jurisdictions outside the United States, and (2) enjoining X Corp., whether directly or through its subsidiaries, from prosecuting or initiating litigation outside the United States against Media Matters arising from the same conduct alleged in the Ireland and Singapore complaints. X App. 47. Defendants' preliminary injunction motion does not seek any relief in regard to X's suit pending before this Court. On the contrary, Defendants again explicitly stated that their motion "does not seek injunctive relief with regard to the pending Texas litigation." X App. 47, n.3.

Due to an April 14 hearing date in Singapore, Defendants filed a request to shorten, seeking a hearing on their requested injunction by April 10—before the hearing in Singapore on the merits of Defendants' jurisdictional challenge. App. 188. That hearing has been set for April 9.

## F.    X seeks emergency relief, prompting Defendants to do likewise.

On Sunday evening, March 16, 2025, counsel for X Corp. informed Defendants that X intended to seek a TRO from this Court enjoining Defendants' pending action in California, on the basis that "That suit is improper." App. 197. Accordingly, in order to preserve the status quo—and to ensure that their preliminary injunction motion remained on track to be heard in advance of the April 14 hearing in Singapore—Defendants sought a limited TRO from the court in California to prohibit X from pursuing immediate injunctive relief in this Court that would interfere with the Northern District of California court's jurisdiction over Defendants' request for injunctive relief in regard to the foreign litigations. App. 201.

7

The parties filed their nearly simultaneous competing requests the morning of March 17, 2025. This Court set a briefing schedule on X's TRO. The Northern District of California court denied Defendants' request that afternoon. App. 194. In its order, that court "decline[d] to take the drastic step of issuing an order that would effectively prevent another federal district court from ruling on a motion pending before it." *Id.* The court further stated that "Although Media Matters appears to be correct that the applicable forum selection clause required Twitter to sue in California, it is for the Northern District of Texas to decide how to address that issue as it relates to the case pending before it." *Id.* It went on to confirm that "The separate preliminary injunction motion filed by Media Matters in this case—which relates to the relationship between the forum selection clause and the foreign litigation but seeks no relief relating to the Texas litigation— remains on calendar for hearing next month." App. 195.

## III.   LEGAL STANDARD

As this Court has acknowledged, "[t]emporary restraining orders are 'extraordinary relief and rarely issued.'" *Greer's Ranch Cafe v. Guzman*, 540 F. Supp. 3d 638, 644 (N.D. Tex. 2021) (O'Connor, J.). Similarly, a preliminary injunction is "an extraordinary and drastic remedy" which should not be granted unless the movant "has clearly carried the burden of persuasion concerning the existence and application" of the four prerequisites to such relief. *State of Tex. v. Seatrain Intern., S. A.*, 518 F.2d 175, 179 (5th Cir. 1975). These are: (1) a substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the party or parties opposed; and (4) a showing that the injunction, if issued, would not be adverse to the public interest. *Id.*

Courts have modified the standard test for a preliminary injunction in the context of injunctions seeking to enjoin proceedings in another court. Under the first-to-file rule, a court in

8

which an action was first filed considers whether a second-filed action "substantially overlaps," such that a ruling in the second court would "trench upon the authority" of the first, *In re Amerijet Intern., Inc.*, 785 F.3d 967, 976 (5th Cir. 2015) (citation omitted). As X acknowledges, "[o]nce a district court determines that two causes of action substantially overlap, the court must evaluate whether the later-filed litigation 'cause[s] prejudice or offend[s] other equitable principles." ECF 157 at 14 (quoting *MWK Recruiting Inc. v. Jowers*, 833 F. App'x 560, 562 (5th Cir. 2020)). Moreover, "the existence of a valid and enforceable forum selection clause" is a "compelling circumstance" that warrants an exception to the first-to-file rule. *Wissel v. Rural Media Group, Inc.*, No. 4:24-CV-00999-P, 2025 WL 641434, at *3 (N.D. Tex. Feb. 27, 2025)

## IV.    ARGUMENT

### A.    X has not carried its heavy burden to support an anti-suit injunction depriving another federal court of the ability to hear claims under the first-to-file rule.

#### 1.    The N.D. California proceeding does not substantially overlap with this action so as to support an antisuit injunction.

The first-to-file rule does not bar Defendants' California suit for several reasons: (1) the first-to-file rule does not apply where a second suit is filed pursuant to a forum selection clause, (2) the matters do not substantially overlap in a manner that would impinge on this Court's authority, (3) per X's own argument in its foreign suits, Defendants' California suit concerns parties and actions that are not at issue in this case, and (4) X's contradictory claims that, on the one hand, this Court has already ruled on Defendants' forum selection clause argument, and, on the other, that Defendants have waived that argument, both fail to justify injunctive relief.

***First***, Defendants' claims are properly filed in California pursuant to the forum selection clause, which  creates an exception to the first-to-file rule. *Wissel*, 2025 WL 641434, at *3 (declining to apply first-to-file rule in light of a valid forum selection clause). Indeed, "every federal court to address the issue has held that 'it is improper for a party to invoke the first filed

9

doctrine in the face of a clearly articulated forum selection clause in a contract.'" *Bilodeau v. Ahern Rentals, Inc*., 2021 WL 8016841, at *4 n.2 (S.D. Tex. Aug. 20, 2021) (collecting cases).

The forum selection clause contained within X's Terms that govern the conduct at issue—that is, the Terms in effect at the time the X Entities filed lawsuits against Media Matters during the period from November 2023 through July 2024—states that "All disputes related to these Terms or the Services will be brought solely in the federal or state courts located in San Francisco County, California." App. 176. X's claims in each of its suits against Media Matters relate to "the Services," and therefore should have been filed in San Francisco County, California. X's Motion does not dispute that the Terms govern its claims against Defendants. On the contrary, X's own argument that "the same contract serves as the basis for both the claims and the counterclaims"—while incorrectly framing the issue, *see infra*, p.20—necessarily concedes the point. ECF 157 at 18 (citation omitted). Similarly, Defendants' claims relate to "these Terms"—that is, the Terms in effect during the relevant period—and are necessarily filed in San Francisco County, California.

X's Motion notes that it has recently changed its Terms such that they now requires suits to be filed in this District but does not argue that the new terms of service are a reason to grant X's request. ECF 157 at 3 n.1. Such an argument is wrong in any event. "[T]he language in a forum-selection clause at the time a plaintiff files the initial complaint controls the venue determination." *Scrum All., Inc. v. Scrum, Inc.*, 2021 WL 798310, at *4 (E.D. Tex. Feb. 26, 2021). Additionally, X's Terms are clear that "changes will not be retroactive." X App. 84.[1]

---

[1] Indeed, if the Terms permitted X to breach, then retroactively change the terms to avoid liability for the breach, the contract would be illusory. *See, e.g.*, *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 209 (5th Cir. 2012) (holding arbitration provision that allowed retroactive modification illusory and noting the "fundamental concern" of "the unfairness of a situation where two parties enter into an agreement that ostensibly binds them both, but where one party can escape its obligations under the agreement by modifying it"). Defendants' claims are necessarily governed by the contract under which it is suing—that is, the Terms in the place at the time of X's conduct

**_Second_**, the matters do not "substantially overlap" so as to impinge on this Court's authority to adjudicate the issues before it. Defendants seek an injunction in California to preclude only X's foreign actions. Whether the forum selection clause required X to file its instant lawsuit in California rather than this District is currently pending before this Court, and Defendants have expressly told the court in California that they are **_not_** seeking relief vis-a-vis X's filing of this litigation in order to allow preserve this Court's prerogative to rule on the issues raised by Defendants' transfer motion. X App. 8, n7 & 47, n.3. The California Court has indicated that it has no intention of interfering with this Court's jurisdiction with regard to Defendants' transfer motion. App. 194. And there is no overlapping question at all in regard to Defendants' claims that X's foreign subsidiaries breached the TOS by filing actions in Singapore and Ireland. In short, no "substantial overlap" of the issues exist that would raise concerns regarding comity or judicial administration so as to support an antisuit injunction enjoining a sister federal court.

**_Third_**, Defendants' California action involves parties absent from this action and which X has argued do not belong in this action. According to TIUC and TAP, they are distinct from X Corp. and joinder of their claims in this action would likely not be proper. *See, e.g.,* App. 72–75, 95, 133–34, 154. To be sure, Defendants believe that TIUC and TAP effectively serve as alter egos of X Corp. for the purpose of their internationally filed lawsuits. But X has not conceded that point—and TIUC and TAP have consistently claimed the opposite. *Supra*, pp.3–4. X cannot premise its request for an order barring Defendants from pursuing claims against TIUC and TAP in California on the basis that those parties are "the same" as X unless it and its affiliates are

---

and which X breached. This is clear from the plain language of the contract: The forum selection clause on its face requires that "[a]ll disputes related to **_these Terms_**" be litigated in California. App. 176 (emphasis added).

actually willing to adopt that position: The purpose of the first-to-file rule is to respect comity and avoid duplication. *In re Amerijet Intern., Inc.*, 785 F.3d at 976. Unless X affirmatively takes the position that TIUC and TAP are the same parties for the purposes of the X Entities' respective claims, the first-to-file rule has no application.

Just as TIUC and TAP are not parties to this action, the question of whether those entities are bound by the TOS is not relevant to the action before this Court. X's position that Defendants' claims with respect to the Singapore and Ireland litigation "substantially overlap" with this matter—despite X's repeated testimony stating that those matters are wholly distinct and unrelated to the case before this Court—would mean that *every* case asserting a separate breach of X's Terms "substantially overlaps," as they would all require construing the same Terms. *See* ECF 157 at 15 (arguing that Defendants' motion to enjoin the foreign actions substantially overlaps with this litigation because it requires the California court to construe the forum selection clause). X ignores that the California court will be construing the forum selection clause with respect to its application to a specific set of facts (the filing of foreign lawsuits) involving a specific set of parties (not just X Corp., but also its foreign subsidiaries TIUC and TAP) that are not at issue here.

X's cited cases do not support a different result. In *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 951 (5th Cir. 1997), the Fifth Circuit reiterated its prior statement from *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 731 n.5 (5th Cir. 1985), that "incomplete identity of parties does not mandate that two 'essentially identical' actions remain pending simultaneously where complete relief was nevertheless available in one forum and the missing parties probably could be made parties to the action in that forum." *Syntek Fin. Corp.*, 121 F.3d at 951. Defendants' California claims asserting breach of contract as to X's foreign actions and seeking related declaratory judgment are not "essentially identical" to X's tort claims against

12

Media Matters—they concern entirely different actions that X has consistently characterized as distinct from the instant proceeding. *Supra*, pp.3–4 (citing testimony). And X's affiliates claim that joinder of their respective claims in this action would likely not be inappropriate, as they are purportedly separate entities with separate damages. App. 72–75, 90–95, 133–34, 154.

**_Fourth_**, X simultaneously argues that the first-to-file rule prohibits Defendants' California claims because this Court has, according to X, already ruled on the relevant venue considerations *and* because Defendants have supposedly waived their forum selection clause argument. These cannot both be true: It cannot be that this Court has ruled against Defendants on an argument that Defendants never raised. Indeed, neither X's claim of preclusion nor of waiver is correct.

Defendants previously moved to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3). *See* ECF 40 & 41 at 11. A forum selection clause is not a basis to find venue improper on a Rule 12(b)(3) motion. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 57–59 (2013). As the Supreme Court has explained, § 1404(a), rather than Rule 12(b)(3), "provides a mechanism for enforcement of forum-selection clauses." *Id*. And as this Court directly noted, Defendants did not previously seek to transfer under § 1404. ECF 82 at 12 n.27. In short, Defendants did not—because they could not—argue that the forum selection clause itself rendered venue "improper" so as to warrant dismissal under Rule 12(b)(3); and because did not raise the issue of transfer under § 1404, the Court did not rule on it. There is no existing ruling by which Defendants "are bound" with respect to that clause. *Contra* ECF 157 at 9. Accordingly, X's claims that Defendants are "asking a California court to rule on the same venue determinations this Court has made" and that Defendants are somehow seeking a cross-district "interlocutory appeal" have no basis in reality, ECF 157 at 9–10.

X's claim that Defendants' "failure to assert in their prior motion to dismiss that this case

13

is governed by the forum selection clause" and unspecified "litigation conduct" somehow "amount to a waiver of their invocation of the clause" fares no better. As discussed *supra*, Defendants have never sought to transfer pursuant to § 1404, which is the vehicle for arguing that a forum selection clause requires a case to be litigated elsewhere. Defendants cannot have "waived" reliance on the forum selection clause by failing to raise it in support of a request (namely, to dismiss for improper venue) that that clause does not support. *Cf. Brown v. Federated Cap. Corp.*, 991 F. Supp. 2d 857, 860 (S.D. Tex. 2014) (unlike a claim of improper venue, a request to transfer pursuant to a forum selection clause is not waived if not included in initial responsive pleadings).

Defendants' cited cases do not come close to showing that Media Matters waived its right to enforce the forum-selection clause. In *Realtime Data LLC v. NetApp, Inc.*, 2017 WL 3588047 (E.D. Tex. Aug. 21, 2017), the court found that the defendant waived its § 1406 and Rule 12(b)(3) motion to dismiss or transfer through its litigation conduct, seeking affirmative relief from the court on grounds other than a challenge to venue. The case did not involve a forum selection clause. *Realtime Data* is wholly inapposite because a defense of improper venue under § 1406 and Rule 12(b)(3) is waived unless raised in a party's initial responsive pleading, whereas a motion under § 1404 may be filed at any time. But it also highlights the lack of waiver here: Defendants have always contested venue in this Court.

X cites to *F.T.C. v. Multinet Mktg., LLC*, 959 F. Supp. 394 (N.D. Tex. 1997), which also did not involve a forum-selection clause. Rather, the defendant in that case failed to raise a venue objection when the court asked the parties to address venue in a joint status report, and the defendant's vague convenience assertion failed to justify transfer. *Id.* at 396. In another of X's cited cases, *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625 (5th Cir. 2022), the Fifth Circuit determined that the "record before us falls well short of establishing that venue is clearly

14

more convenient than Respondents' chosen venue." *Id*. at 630. There was no forum-selection clause requiring venue in another district and the court determined that defendants' delay was just one of many factors that weighed against transfer. *Id*. at 631. The Fifth Circuit simply held a district court did not abuse its discretion by considering delay as a factor weighing against transfer in *Peteet v. Dow Chem. Co*., 868 F.2d 1428 (5th Cir. 1989), ultimately noting that "Dow made no showing that Oregon was a more convenient forum." *Id*. at 1436. And in *Ravgen, Inc. v. Lab. Corp. of America Holdings*, 2022 WL 272115 (W.D. Tex. Jan. 28, 2022), the court denied leave to file a convenience transfer motion because under the Court's standing order, "Parties are free to file transfer motions without leave until eight weeks before Markman hearings." *Id.*, at *1–2. None of X's cases come close to showing Defendants waived their right to enforce X's forum selection clause: None of those cases even involved a motion to transfer based on a forum-selection clause.

Contrary to X's assertion that Defendants waived their right to enforce the forum-selection clause through litigation conduct, Defendants have always contested venue in this Court. Defendants moved to dismiss X's complaint for lack of jurisdiction, improper venue, and failure to state a claim on February 6, 2024, less than three months after X filed suit. ECF 31. After X filed an amended complaint bringing claims against a new Defendant, Angelo Carusone, on February 27, Defendants moved to dismiss the new complaint. On August 29, the Court denied the motion. ECF 82. On September 12, 2024, Defendants asserted improper venue as a defense in their Answer. ECF 92. Defendants moved to certify an immediate appeal of the Court's denial of their Motion to Dismiss on jurisdiction and venue grounds on September 20. ECF 93. On January 2, 2025, the Court denied the motion, acknowledging that § 1406 permits renewed venue challenges in light of discovery. ECF 134 at 3. Defendants received additional discovery confirming that venue is improper in this District on January 31, and filed their transfer motion

15

just over one month later. *See* ECF 153-1 at 22. In short, Defendants have never conceded venue in this Court, and they filed their transfer motion promptly in light of the events in the case. Finally, even if this Court were to find waiver in the context of Defendants' transfer motion, any such waiver has no application to Defendants' claims in California regarding X's foreign litigation.

## 2. Defendants' California claims will not result in any hardship or delay here.

X's argument that Defendants' California claims will create "inequitable hardship" or "frustrate and delay the speedy and efficient determination" of this case hinges entirely on a false premise: that Defendants have asked a court in California to rule on the application of X's forum selection clause to X's filing of the instant action before this Court rules on Defendants' transfer motion. That is not the case. The opposite is true: Defendants have expressly cabined their request for a preliminary injunction to solely the foreign actions filed through X's foreign subsidiaries. X App. 47 n.3. Defendants expressly flagged for the California court that Defendants have a motion to transfer pending before this Court, and that they are accordingly not seeking to have the California court address the issue in advance of this Court's ruling. X App. 8, n7; X App. 47, n.3. X's accusation that Defendants made the "tactical decision to seek a transfer in this Court only to request instead that the Northern District of California resolve it four days later" ignores that Defendants made no such request. ECF 157 at 22.

Contrary to X's assertions, it does not present an "inexplicable dichotomy" that Defendants' requested to shorten the time for hearing their preliminary injunction in California while making no such request regarding their motion to transfer before this Court. ECF 157 at 17. Rather, X's rhetoric ignores the very straightforward explanation, clearly set forth in Defendants' motion to shorten: Defendants' preliminary injunction request addresses solely X's foreign actions, and Defendants have a hearing in Singapore on the merits of their jurisdictional challenge on April 14. App. 188. Defendants accordingly sought to have their preliminary injunction motion

16

heard in advance of that hearing. *Id.* There is no similarly impending deadline impacting Defendants' transfer request. To the extent X has genuine timing concerns, it can itself seek expedited briefing on Defendants' transfer motion.

X has not explained how, under the circumstances, the pending California case will prejudice X—which will be able to continue litigating in this forum unless and until this Court grants Defendants' motion to transfer. Defendants, by contrast, will suffer irreparable harm from X's request: even just delaying the hearing on Defendants' preliminary injunction motion, currently set for April 9, would force them to litigate the merits of their jurisdictional challenge in Singapore on April 14, in violation of the parties' contract. *See* App. 188. Further, X does not believe this Court can properly exercise jurisdiction over X's foreign subsidiaries and has indicated it would oppose adding them here. ECF 157 at 11, 12 n.2. X's request amounts to an attempt to deprive Defendants of *any* forum at all in which to raise their challenges to X's foreign actions.

The balance of X's argument for supposed "inequitable hardship" does not actually address the supposed hardship or delay posed by Defendants' suit filed in the Northern District of California, but rather argues that Defendants' motion to transfer is untimely. ECF 157 at 15–17. X's arguments are incorrect: Defendants filed their motion to transfer promptly after the Court's denial of Defendants' motion to certify an immediate appeal of the Court's rejection of their Rule 12(b)(3) defense that venue is improper in this District, and promptly after discovery confirmed that transfer is warranted (while that discovery does not bear on the forum selection clause, Defendants sought to file a single transfer motion rather than raising bases for transfer piecemeal). X argues that ongoing discovery is a point against transfer; but only one deposition has occurred— and in any event, "any discovery conducted remains effective after the transfer, so duplication is not an issue." *Watson v. Fieldwood Energy Offshore, LLC*, 181 F. Supp. 3d 402, 412 (S.D. Tex.

17

2016). More importantly, X's arguments concerning the propriety of Defendants' transfer motion have nothing to do with whether permitting Defendants to pursue their breach of contract and declaratory judgment suit—including their request for a preliminary injunction as to X's foreign filed suits—would cause hardship or delay adjudication of X's claims in this forum.

**B.    Defendants' claims for breach of contract and declaratory judgment are not compulsory counterclaims that Defendants were required to assert in this action.**

All of Defendants' claims in the Northern District of California are subject to the same forum selection clause breached by X. *Supra* p.10 & n.1. Accordingly, Fed. R. Civ. P. 13(a) does not require that they be filed as counterclaims in this district. And on their face, Defendants' claims do not "arise[] out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1). That is especially true for the international actions because the X Entities chose to file in separate forums, they have repeatedly asserted those actions are totally separate from this case, and X does not argue this Court has jurisdiction over TIUC or TAP.

**1.    A valid forum selection clause trumps Fed. R. Civ. P. 13(a).**

Federal Rule of Civil Procedure 13, which provides for compulsory counterclaims, is not absolute: The rule itself contains exceptions, and the judiciary has added to those. *See* Fed. R. Civ. P. 13(a)(2); 6 Wright & Miller, FED. PRAC. & PROC. CIV. § 1412 (3d ed.). As one such exception, courts have held that "the need to uphold forum-selection clauses alters the impact of the compulsory-counterclaim rule so that a party need not file a compulsory counterclaim in an improper forum to avoid having the claim barred in a proper forum." 6 FED. PRAC. & PROC. CIV. § 1412. Indeed, in *Publicis Commc'n v. True N. Communications Inc.*, 132 F.3d 363, 366 (7th Cir. 1997), the Seventh Circuit adopted the view that "a party to a forum-selection clause may not raise in a different forum, even as a compulsory counterclaim, a dispute within the scope of that clause." *Id*. at 366 (emphasis added). This is because Rule 13(a) provides a preclusion defense against

claims that should have been brought as counterclaims, and that defense "is subject to contractual adjustment by the parties." *Id*. Courts within this circuit have repeatedly reached the same conclusion. *See, e.g.*, *Bancroft Life & Cas. ICC, Ltd. v. FFD Res. II*, LLC, 884 F. Supp. 2d 535, 560 (S.D. Tex. 2012) ("Forum selection clauses preclude a party from asserting a claim, even as a compulsory counter claim, in another jurisdiction." (collecting cases)); *Polaris Eng'g, Inc. v. Texas Int'l Terminals, Ltd*., No. CV H-20-3389, 2021 WL 5155691, at *9 (S.D. Tex. Apr. 16, 2021) ("If a compulsory counterclaim is subject to a mandatory forum selection clause requiring suit in a different forum, it is, in a sense, no longer compulsory." (collecting cases)); *Innovative Display Techs. LLC v. Microsoft Corp*., No. 2:13-CV-00783-JRG, 2014 WL 2757541, at *5 n.6 (E.D. Tex. June 17, 2014) (rejecting the argument that "the compulsory nature of Microsoft's counterclaims somehow overcomes its contractual obligation under the forum selection clause" as "contrary to established authority that compulsory counterclaims do not trump the forum selection clause"). This authority should end the argument.

### 2. Defendants' claims are not compulsory counterclaims.

Regardless, Defendants' claims are also not compulsory counterclaims because none "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," and because certain of Defendants' claims would require adding parties over which X disputes this Court's jurisdiction. Fed. R. Civ. P. 13(a)(1).

As a threshold matter, in order to find Defendants' claims as to TIUC and TAP compulsory counterclaims, this Court must first find that it can properly exercise jurisdiction over those parties. Fed. R. Civ. P. 13(a)(1)(B). X's dismissive assertion that "this Court's exercise of jurisdiction would be at least as proper as that of the California federal court" attempts to side-step the issue, but Rule 13(a) does not provide an exception to its requirement that jurisdiction over a party be proper for scenarios in which the exercise of jurisdiction in either of two courts is equally

19

*improper*, as X implies is the case here. ECF 157 at 11. In order to find that Defendants' claims as to TIUC and TAP are compulsory counterclaims, this Court must find that it can properly exercise jurisdiction over those parties—a point that X has not argued. This alone dooms X's argument that Defendants breach of contract and declaratory judgment claims as to the foreign filed actions are compulsory counterclaims under Rule 13(a).

Turning to the Fifth Circuit's test for whether a claim "logically relates" to another so as to fall within Rule 13(a), a second claim "logically relates" to a first "if it arises out of the same aggregate of operative facts as the original claim in two senses: (1) that the same aggregate of operative facts serves as the basis of both claims; or (2) that the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant." *Revere Copper & Brass Inc. v. Aetna Cas. & Sur. Co.*, 426 F.2d 709, 715 (5th Cir. 1970). Neither is true here.

Here, X's claims relate to Defendants' use of X's "Services"—namely, Defendants' purported manipulation of the X Platform and reporting on the results of their use. Defendants, by contrast, have filed claims premised on an entirely different "transaction or occurrence": X's breach of its own terms by filing suits against Media Matters across the world. Though the forum selection clause governs both actions, the claims are premised on different sets of facts; and it is not the facts upon which X's tort claims rest that activate any additional rights in Defendants, but rather X's subsequent decision as to where to file lawsuits.

None of the cases X cites supports finding Defendants' claim s are "logically related" to X's claims within the meaning of the Fifth Circuit's test for compulsory counterclaims. In *Plant v. Blazer Fin. Services, Inc. of Georgia*, 598 F.2d 1357 (5th Cir. 1979), the Fifth Circuit addressed the question of whether an action on an underlying debt is a compulsory counterclaim to a claim

under the Truth in Lending Act. In finding that it is, the court took into consideration not only that the claims arise from the same loan transaction—which itself distinguishes this case—but also specific policy considerations of the Truth in Lending Act not present here. *Id*. at 1364. In *New York Life Ins. Co. v. Deshotel*, 142 F.3d 873 (5th Cir. 1998), the parties did not dispute that a barred claim was compulsory in nature—as, unlike here, it arose from the same set of facts as the original claim—but rather only whether it had matured in time for it be asserted. *Id*. at 879, 882. And in *United Broad. Co. v. Armes*, 506 F.2d 766 (5th Cir. 1975), the Fifth Circuit addressed an "extraordinary set of facts" in which an investigator who was hired to retrieve a kidnapped child asserted a claim in the Western District of Texas for his unpaid fee. *Id*. at 768–69. The appellant asserted a tort claim against the investigator in Washington, D.C., alleging that the investigator threatened the appellant and the retrieved child in connection with collecting on that same disputed fee. *Id*. at 771. These claims arising from the same single set of facts bear no resemblance to the parties' respective claims here.

The remainder of X's arguments regarding the factors considered by the Fifth Circuit when assessing whether a claim is compulsory (1) fail to support finding compulsory Defendants' claim for breach of contract regarding X's action in this Court, and (2) entirely ignore Defendants' claims with respect to X's international suits. X claims that "the legal and factual disputes surrounding venue are largely the same in both cases and concern the same evidence," ECF 157 at 13; but it ignores that an overlap regarding venue concerns does not establish that the "issues of fact and law raised by the claim and counterclaim" are substantially the same, nor that they will be supported by the same evidence. *See id*.

Furthermore, X's arguments do not address Defendants' claims with respect to the international suits. The issues and facts raised by those claims—for instance, whether TIUC and

21

TAP are bound by the forum selection clause in X's Terms—are not at issue before this Court. Defendants cannot have "forfeited" an argument in regard to venue in those cases in the action before this Court. ECF 157 at 13.

X finally invokes *res judicata*—another preclusion defense—but that fails for the same reason that Rule 13(a) does not apply in the first place: Defendants' claims are subject to a forum selection clause that precludes them being filed in this District. *See Publicis*, 132 F.3d at 365–66. *Res judicata* additionally would not bar Defendants' claims because its elements are not satisfied here: claim preclusion requires that: "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004). Once again, while Defendants believe that TIUC and TAP are effectively alter egos of X, the Court would need to actually hold as much in order for *res judicata* to apply—and X does not argue that the Court should. *Cf. supra,* pp.3–4. No final judgment has been rendered in this action. And in order to assess whether "the same claim or cause of action was involved in both actions," "[t]he critical issue is whether the two actions under consideration are based on the same nucleus of operative facts." *Id.* at 395–96. That is clearly not the case as to Defendants' claims concerning X's foreign actions, which are not before this Court. And, as already explained, it is not the case as to Defendants' claim for breach of contract with respect to the instant action either. *Supra*, p.11.

With regard to issue preclusion—which requires that an issue "was actually litigated in the prior action" and that "determination of the issue in the prior action was a necessary part of the judgment in that action," *id*. at 397, X has not cited any case that would permit a preemptive injunction based on the ***possibility*** of a judgment that would have preclusive effect. Even in the

22

event this Court denies Defendants' motion to transfer, the extent of any preclusive effect on Defendants' claims—only one of which concerns this instant litigation—will depend on the basis for the Court's decision. "[A] court does not usually 'get to dictate to other courts the preclusion consequences of its own judgment.'" *Smith v. Bayer Corp.*, 564 U.S. 299, 307, 131 S. Ct. 2368, 2375, 180 L. Ed. 2d 341 (2011) (quoting 18 FED. PRAC. & PROC. § 4405 (2d ed. 2002)). Rather, "[d]eciding whether and how prior litigation has preclusive effect is usually the bailiwick of the *second* court," meaning "an injunction can issue only if preclusion is clear beyond peradventure." *Id.* (emphasis in original). That is not the case here, making an antisuit injunction improper.

**C.    X cannot satisfy the normal four-part test for immediate injunctive relief.**

X has not shown entitlement to the "extraordinary and drastic remedy" of a preliminary injunction, which requires a movant carry its burden to establish (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm; (3) the balance of hardships weighs in the movant's favor; and (4) the issuance of the preliminary injunction will not disserve the public interest. *Seatrain Intern., S.A.*, 518 F.2d at 179.

X has not established a substantial likelihood on the merits: For all the reasons set forth above, X has not demonstrated any basis for interfering with claims pending before another federal district court. X argues that allowing this case to proceed would "frustrate and delay the speedy and efficient determination of the [first-filed] cause," but it fails to plausibly explain how that is the case. Defendants' claims with respect to the X Entities' foreign suits have no impact on this litigation at all. And Defendants' have sought no immediate relief with respect to their breach of contract claim predicated on X's filing of the instant suit, instead representing to the Northern District of California Court that they are awaiting this Court's ruling on their pending motion to transfer. X App. 8 n.7 & 47 n.3. The Northern District of California Court has confirmed it is waiting for this Court to rule. App. 194. There is not threat of overlap.

23

X has not established a substantial threat of irreparable harm:  X seeks immediate relief in the form of a Temporary Restraining Order, yet there is no threat of immediate irreparable harm: The only upcoming deadline in the California case is for Defendants' motion for a preliminary injunction enjoining X's foreign litigation, which expressly does not seek relief related to this case. *See* X App. 47 n.3. There is similarly no threat of irreparable harm that would warrant a preliminary injunction. No discovery in the recently-filed California case will impede the timely adjudication of this case. And X cannot seriously claim that a second matter will cause it irreparable harm on the basis that X may incur economic costs litigating a second suit when X, a multi-billion-dollar company, has chosen to sue a non-profit in three separate jurisdictions in three separate countries over the same set of allegations—costing Media Matters millions to defend. ECF 157 at 19. Regardless, the question for "irreparable harm" is whether, in the absence of immediate temporary relief, a party will suffer that harm. X's concerns about the resources needed to prepare for trial are thus irrelevant. And it has not made any showing supported by any affidavits or other evidence to establish any costs to X in the immediate future so as to carry its burden of establishing costs amounting to irreparable harm that would support injunctive relief. To the extent X believes the upcoming preliminary injunction hearing is causing X harm, it is capable of mooting the issue by directing its subsidiaries to withdraw their improperly filed lawsuits.

Defendants, by contrast, will suffer irreparable harm from X's requested relief: granting an antisuit injunction will potentially deprive them of any jurisdiction (let alone the contractually-specified jurisdiction) to enjoin the foreign proceedings, and delaying Defendants' scheduled hearing on their preliminary injunction will irreparably deprive them of the ability to have that motion hear in advance of the April 14 hearing in Singapore. *See* App. 188.

X has not established that the balance of hardships weighs in its favor: X has hardly even

attempted to carry its burden on this factor, stating only that "Defendants will face no hardship in an orderly process in which this Court resolves their motion to transfer free from the confusion and gamesmanship generated by Defendants' second-filed case." ECF at 157. X's liberal accusations of "gamesmanship" consistently ignore that Defendants have not sought to interfere with this Court's "orderly process" of resolving their motion to transfer. And the balance of the hardships tilts sharply in Defendants' direction since granting an antisuit injunction would deprive Defendants the ability to obtain relief regarding the foreign lawsuits. Even a temporary restraining order that is later dissolved would potentially deprive Defendants of the ability to have their preliminary injunction motion heard in advance of the Singapore Court's hearing on the merits of Defendants' jurisdictional challenge—a challenge that should not be before the Singapore Court in the first instance in light of the parties' contract designating venue in California. *See* App. 188.

X has not established that a preliminary injunction serves the public interest: X's sole argument that a preliminary injunction serves the public interest is its assertion that an injunction would avoid "rulings which may trench upon the authority of sister courts" and "piecemeal resolution of issues that call for a uniform result." ECF 157 at 19. X does not specify what "ruling" it anticipates would trench upon this Court's authority, given that this Court will adjudicate Defendants' transfer motion. Regardless, this factor too cuts strongly in Defendants' favor. The public has a strong interest in (a) enforcing forum selection clauses, *see, e.g., Bancroft Life & Cas. ICC, Ltd. v. FFD Res. II, LLC*, 884 F. Supp. 2d 535, 560 (S.D. Tex. 2012) (in Texas, "public policy strongly favors the enforcement" of forum selection clauses); and (b) making sure litigants can seek relief (here, enjoining foreign actions) in a court with jurisdiction.

## V.    CONCLUSION

This Court should deny X's Motion for a TRO and antisuit injunction.

25

Dated: March 19, 2025                          Respectfully submitted,


                                               By: /s/ *Justin Nelson*
                                                   Justin Nelson (TX 24034766)
                                                   Matthew Behncke (TX 24069355)
                                                   SUSMAN GODFREY L.L.P.
                                                   1000 Louisiana Street, Suite 5100
                                                   Houston, Texas 77002-5096
                                                   Telephone: (713) 651-9366
                                                   Fax: (713) 654-6666
                                                   jnelson@susmangodfrey.com
                                                   mbehncke@susmangodfrey.com

                                                   Katherine M. Peaslee* (CA 310298)
                                                   SUSMAN GODFREY L.L.P.
                                                   401 Union Street, Suite #3000
                                                   Seattle, WA 98101
                                                   Telephone: (206) 516-3880
                                                   Facsimile: (206) 505-3811
                                                   kpeaslee@susmangodfrey.com

                                                   GIBSON, DUNN & CRUTCHER LLP
                                                   Andrew LeGrand (TX 24070132)
                                                   2001 Ross Avenue, Suite 2100
                                                   Dallas, TX 75201
                                                   T: (214) 698-3100
                                                   F: (214) 571-2960
                                                   alegrand@gibsondunn.com

                                                   Gregg Costa (TX 24028160)
                                                   811 Main Street Suite 3000
                                                   Houston, TX 77002
                                                   T: (346) 718-6649
                                                   F: (214) 571-2960
                                                   gcosta@gibsondunn.com

                                                   Theodore J. Boutrous, Jr.* (CA 132099)
                                                   333 South Grand Avenue
                                                   Los Angeles, CA 90071
                                                   T: (213) 229-7000
                                                   F: (213) 229-7520
                                                   tboutrous@gibsondunn.com
                                                   Amer S. Ahmed* (NY 4382040)
                                                   200 Park Avenue
                                                   New York, New York 10166

26

T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

*pro hac vice*

*Attorneys for Defendants Media Matters for
America, Angelo Carusone, and Eric Hananoki*

27

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 19, 2025, a true and correct copy of DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND ANTISUIT INJUNCTION  was properly served on counsel of record via electronic filing in accordance with the USDC, Northern District of Texas Procedures for Electronic Filing

*/s/ Justin Nelson*
Justin Nelson

28