UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **X CORP.**, a Nevada corporation,<br>    Plaintiff,<br><br>vs.<br><br>**MEDIA MATTERS FOR AMERICA**, a Washington, D.C. non-profit corporation, **ERIC HANANOKI**, and **ANGELO CARUSONE**,<br>    Defendants. | Case No. 4:23-CV-01175-O |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR A TEMPORARY
RESTRAINING ORDER AND ANTISUIT INJUNCTION**

JUDD E. STONE II
CHRISTOPHER D. HILTON
ARI CUENIN
MICHAEL R. ABRAMS
CODY C. COLL
**STONE HILTON PLLC**
600 Congress Ave.
Suite 2350
Austin, TX 78701
Telephone: (737) 465-7248
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
michael@stonehilton.com
cody@stonehilton.com

JOHN C. SULLIVAN
**S|L LAW PLLC**
610 Uptown Boulevard
Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
john.sullivan@the-sl-lawfirm.com

## INTRODUCTION

Defendants protest that their California suit—which names X Corp. as a defendant—is unrelated to this one. Everything about these cases, especially Defendants' own allegations, proves them wrong. The potential for conflicting decisions is of real and immediate concern, as shown by what has already happened since Defendants filed their California suit. Late Sunday afternoon, X informed Defendants of its intent to file a motion for a temporary restraining order and antisuit injunction in this Court. X offered Defendants the opportunity to confer. Repaying good faith with bad, Defendants stayed silent in the face of X's offer to confer and instead filed an *ex parte* temporary restraining order in the Northern District of California, disregarding *that* Court's rules obligating *Defendants* to confer with X in order to seize the element of surprise. The California court appropriately denied Defendants' application, noting that "it is for the Northern District of Texas to decide how to address [the forum selection clause] as it relates to the case pending before it." MMFA Appx. 194.

Nevertheless, that court, without a response on file from X, also observed that "Media Matters appears to be correct that the applicable forum selection clause required Twitter to sue in California." MMFA Appx. 194. In other words, another federal district court, despite acknowledging that this Court was the appropriate court to resolve the issue in the first instance, and without hearing from X, has *already* issued a tentative interpretation of the very forum selection clause that this Court must consider in resolving Defendants' motion to transfer.

The first-to-file rule exists to prevent this very sort of piecemeal, duplicative, and vexatious litigation. Absent immediate relief, X will be compelled to litigate in the Northern District of California, where X's response to Defendants' preliminary injunction motion is due on Tuesday, March 25. Because the first-to-file rule applies and that the equities favor injunctive relief, the

1

Court should enjoin Defendants from prosecuting their pending suit. In the light of Defendants' insistence that a temporary restraining order would be improper, Resp. 2, X does not oppose the Court construing its motion in the alternative as a request for a preliminary injunction. In any event, however, X requests a ruling before its response to the motion for preliminary injunction in California is due.

## ARGUMENT AND AUTHORITIES

**I.      This Court Should Apply the First-to-File Rule.**

The first-to-file rule stops Defendants' brand new case from interfering with this long-pending litigation. As X explained in its motion (at 8-9), this suit and Defendants' California suit substantially overlap because the key issue in the California litigation—whether X breached its contract with Defendants by bringing its tort claims in the Northern District of Texas—hinges on the same venue inquiry that Defendants have already asked this Court to resolve. Absent an antisuit injunction, the Northern District of California will eventually decide whether X should pay millions of dollars in attorneys' fees simply for seeking relief from a Texas court. Appx. 37-38. Fifth Circuit precedent indicates that this is an improper end-around the first-filed litigation. *See In re Amerijet Int'l, Inc.*, 785 F.3d 967, 976 (5th Cir. 2015).

Defendants offer several rebuttals to X's first-to-file argument. None are persuasive. First, they insist that their claims were properly filed in California under a valid forum selection clause, thereby "creat[ing] an exception to the first-to-file rule." Resp. 9. Defendants' claim that a forum selection provision necessarily defeats the first-to-file rule is wrong. Indeed, when "the first-filed case . . . has been extensively litigated, the very purposes behind the first-to-file rule are thus at their height." *Molander v. Google LLC,* 473 F. Supp. 3d 1013, 1020 (N.D. Cal. 2020).

Moreover, Defendants' California claims are improper because the applicable forum selection clause in X's terms of service (effective since November of last year) provides that "[a]ll

disputes related to these Terms or the Services . . . will be brought exclusively in the U.S. District Court for the Northern District of Texas or state courts located in Tarrant County, Texas, United States." Appx. 84. In other words, Defendants were required to bring their breach of contract claim in a Texas court—in particular, here. Their own authority confirms as much. Resp. 10 (quoting *Scrum All., Inc. v. Scrum, Inc.*, 2021 WL 798310, at *4 (E.D. Tex. Feb. 26, 2021) for the proposition that "the language in a forum selection clause at the time a plaintiff files the initial complaint controls the venue determination."). It is Defendants, and not X, who have breached the current forum-selection clause.

Defendants' argument fails for an additional reason. The notion that a forum selection provision defeats the first-to-file rule presupposes that the provision applies to the first-filed case—and it does not here. As X will explain further in its upcoming opposition to Defendants' motion to transfer, courts have often been skeptical that defamation claims, which often have no bearing on any party's contractual performance, fall under forum selection clauses. *E.g.*, *CZ Servs., Inc. v. Express Scripts Holding Co.,* No. 3:18-CV-04217-JD, 2018 WL 3972030, at *2-3 (N.D. Cal. Aug. 20, 2018). The "determinative question is whether [X's] claims will require the Court or the trier of fact to make any findings about the adequacy of the parties' performance under" X's terms of service. *Id.* at *3. X's suit needs no such findings. Its tort claims focus on Defendants' lies about the X platform—not the user relationship between the parties. The terms of service (and the forum-selection clause they include) are therefore divorced from the disposition of this case.

Even a cursory review of the parties' submissions and discovery bears this out. To date, only a handful of filings and exchanges even mention the terms of service: Defendants' motion to dismiss (in an unsuccessful venue challenge), *see* ECF No. 41 at 10; Defendants' Request for Production No. 26 and the related motion to compel, *see* ECF No. 114 (which demanded evidence

3

of terms of service violations by Elon Musk and was the subject of a relevance objection sustained by this Court, *see* ECF No. 135); and the motion currently before the Court. Moreover, as Defendants admit, they could have argued at the time of their unsuccessful venue challenge that the terms of service governed this dispute and required that it be adjudicated in California. Resp. 14. That they did not invoke this argument in fifteen months of active litigation, despite being fully aware of the terms of service that they cited in their own briefing, is powerful evidence that Defendants themselves did not even believe in the argument they are now making.

X has never argued either that Defendants' platform manipulation alone violated the terms of service or that it, without more, establishes a cause of action. Instead, what gave rise to X's claims was Defendants' publication of this manipulation while knowingly falsely portraying it as organic activity. *See, e.g.*, ECF No. 37 ¶ 72. Because these allegations depend on Defendants' false reporting rather than any conduct that may have violated the terms, the forum selection clause is inapplicable. *See In re Yahoo! Inc.*, 313 F. App'x 722, 723 (5th Cir. 2009).

Next, Defendants contend (at 11-13) that the matters do not overlap because "Defendants have expressly told the court in California that they are not seeking relief vis-à-vis X's filing of this litigation" and because the California action "involves parties absent from this action." These contentions fatally ignore the principles underlying the first-to-file rule: "to avoid the waste of duplication," "rulings which may trench upon the authority of sister courts," and "piecemeal resolution of issues that call for a uniform result." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999) (cleaned up). X Corp. is a party to both actions and the relief Defendants seek in California directly overlaps with the relief sought in this Court.

Defendants half-heartedly feint, claiming that the relief they seek in California extends only to foreign litigation and that this Court should disregard the first-to-file rule as a result. Their

4

dubious self-imposed limitation is irrelevant. In determining substantial overlap in a first-to-file analysis, courts do not take the parties' characterizations of the cases at face value but examine "[t]he crux" of the claims at issue. *Dang v. TEOCO Corp. Group Benefit Plan*, No. 21-55032, 2023 WL 5925890, at *2 (9th Cir. Sept. 12, 2023); *see also Zimmer v. Domestic Corp.*, No. 17-cv-06913 ODW (MRWx), 2018 WL 1135634, at *4 (C.D. Cal. Feb. 22, 2018) (noting that substantial overlap inquiry "focuses on the *underlying* factual allegations" (emphasis added)).

Here, at bottom, Defendants seek from the California court a finding that tort claims arising from the *publication* of Defendants' defamatory articles "relate to" X's former terms of service. ECF No. 153-1 at 14. That is the very same argument they raise as to X Corp. Appx. 37-38. Indeed, that Defendants' suit in California is transparently an attempt to impinge on this Court's authority, and not merely the authority of the foreign courts, is underscored by the fact that the terms of service that Defendants are asking the California court to interpret are solely between X Corp. and Defendants. Appx. 56. X Corp.'s foreign affiliates are not even parties to any agreement with Defendants. *Id.* Despite Defendants' insistence that "there is no overlapping question at all in regard to Defendants' claims that X's foreign subsidiaries breached the TOS by filing actions in Singapore and Ireland," Resp. 11, the core issues are in fact indistinguishable.

Relatedly, Defendants' attempt to highlight the question of whether X's subsidiaries violated the terms of service as a distinct issue in the California case (and not this one) is misguided. Regardless of whether X's subsidiaries are bound by the terms of service between X Corp. and Defendants, it is the forum selection clause within the terms of service that Defendants are asking both this Court and the California court to interpret. Defendants concede that "issues and parties here are the same as in the foreign cases," that the foreign suits "allege the *exact same conduct* as the Texas suit," and that X's subsidiaries "are likewise bound" to X's terms of service

5

based on the very same contractual reading they seek to impose on X Corp. Appx. 7, 58, 62 (emphasis added). If there is supposed to be any difference, let alone a meaningful one, in how the California court would interpret the terms of service vis-à-vis the foreign lawsuits and how this Court would interpret those same terms in considering X's motion to transfer, Defendants fail to explain what that would be.

Finally, Defendants deliberately misapprehend X's waiver argument. Yet again, Defendants spent months on months sandbagging their apparent point, only to ask this Court to reward them for their delay. X's point is that this Court should resolve all issues associated with Defendants' motion to transfer—including the possibility of waiver—without parallel litigation involving the same forum selection clause. The Northern District of California recognized that Defendants may have forfeited their right "to assert the forum selection clause in the Texas case by waiting so long to file a motion based upon it" and agreed that "it is for the Northern District of Texas to decide how to address [the forum selection clause] as it relates to the case pending before it." MMFA Appx. 194-95. Defendants' litigation conduct reflects that the California court's concerns are well-founded. They do not explain, for example, why they could not have moved to transfer based on the forum selection clause concurrently with their motion to dismiss. At most, they claim that they "received additional discovery confirming that venue is improper in this District on January 31," Resp. 15, but that argument borders on the disingenuous. Defendants knew what the former terms of service said from the outset of this litigation, as evidenced by the fact that they cited those terms in their motion to dismiss. ECF No. 41 at 10. Moreover, those terms of service were always publicly available on X's website. *Id.* at 3 (linking to X's website). Defendants do not and cannot explain how any "additional discovery" they received in January impacts their argument based on the plain language of X's terms of service.

Furthermore, Defendants only moved to transfer *after* invoking the jurisdiction of the United States Court of Appeals for the Fifth Circuit. As an initial matter, it is not clear that this Court even has jurisdiction to transfer this case out-of-circuit while Defendants' appeal of the Court's September 27, 2024 Order (ECF No. 98) remains pending. *See In re Fort Worth Chamber of Commerce*, 100 F.4th 528, 537 (5th Cir. 2024). The fact that the parties are engaged in a battle now regarding the forum selection clause, after the appeal was briefed and argued, is a further example of just how belated Defendants' efforts are. This Court, rather than a California court divorced from these proceedings, should address these thorny procedural and substantive questions in the first instance.

## II. Defendants Were Required to Bring Their Claims in This Court.

Beyond their violation of the first-to-file rule, Defendants' claims against X for breach of contract are also improper because Defendants were required to bring them as compulsory counterclaims in these proceedings. *See United Broad. Co. v. Armes*, 506 F.2d 766, 771 (5th Cir. 1975); Mot. 10-13. X's tort claims and Defendants' breach of contract claim against X are "logically related," *Plant v. Blazer Fin. Servs., Inc. of Georgia*, 598 F.2d 1357, 1360-61 (5th Cir. 1979), because Defendants assert X's former terms of service as a defense against the Court's exercise of venue over X's claims, ECF No. 41 at 3, 10; ECF No. 153-1 at 14, and now sue X in the Northern District of California for breach of those same terms.

Defendants maintain (at 20) that X's claims relate to X's "Services," but that by contrast, their breach of contract claim is premised on "X's breach of its own terms by filing suits against Media Matters across the world." As X noted above, its claims do not relate to Defendants' use or misuse of the platform but rather to their publication of deceitful articles *outside* the platform. But there is still an unmistakable connection between X's claims and Defendants' breach of contract

7

claim. Defendants have raised the exact same forum selection clause issue in both proceedings, which in turn affects this Court's ability to hear the case. More generally, without X's lawsuit, there would be no breach of contract claim for Defendants to even attempt to assert. That is more than sufficient to meet the Fifth Circuit's "logical relationship" test. *E.g.*, *New York Life Ins. Co. v. Deshotel*, 142 F.3d 873, 881-82 (5th Cir. 1998).

### III. Defendants' Suit in the Northern District of California Will Result in Inequitable Hardship and Delay in this Court.

An antisuit injunction is appropriate because Defendants' California suit will require "an absurd duplication of effort" and result in "unwarranted inconvenience, expense, and vexation." *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 627-28 (5th Cir. 1996); Mot. 14-18. In response to X's invocation of these important equitable factors, Defendants posit that there is no risk of hardship or delay because they have focused solely on "the foreign actions filed through X's foreign subsidiaries." Resp. 16. This ignores that Defendants (1) sued X for breach of contract for bringing this action; (2) seek to have this Court and the California court construe the same forum selection clause, potentially resulting in conflicting rulings; (3) have articulated the very same argument for why the forum selection clause applies to X and its subsidiaries and asked the California court to decide that argument in their motion for a preliminary injunction; and (4) seek to enjoin X Corp. as part of that application, Appx. 71. Absent intervention, X will have to respond to Defendants' motion for preliminary injunction and therein argue the same points about why its claims are not bound by a former forum selection clause that it will then assert two days later in this Court in response to Defendants' motion to transfer venue. Fifth Circuit precedent supports an antisuit injunction on these facts. *See Ganpat v. E. Pac. Shipping PTE, Ltd.*, 66 F.4th 578, 582 (5th Cir. 2023); *MWK Recruiting Inc. v. Jowers*, 833 F. App'x 560, 562 (5th Cir. 2020)

8

On the other side of the ledger, Defendants claim that they will suffer irreparable harm because a delay of the April 9 preliminary injunction hearing would "force them to litigate the merits of their jurisdictional challenge in Singapore on April 14, in violation of the parties' contract." Resp. 17. This contention is bizarre. The jurisdictional challenge is one that *Defendants* brought and which the Court can therefore presume Defendants want the Singapore court to hear. Moreover, Defendants concede that the parties have not conducted discovery in any of the foreign cases, Resp. 4, nor do they contend that discovery or a trial is imminent.

In all events, Defendants inexplicably delayed for eight and twelve months, respectively, in seeking an antisuit injunction of the foreign litigation. Twitter Asia Pacific Pte. Ltd sued in Singapore on July 23, 2024, and Twitter International Limited Co. sued even earlier in March 2024. MMFA Appx. 44, 54. Defendants offer no explanation for why they waited so long to bring an antisuit action in California despite extensive jurisdictional litigation in the foreign venues for months prior. To that end, Defendants' contention that "granting the antisuit injunction against the California action would leave Defendants no forum to vindicate its contractual right to stop the foreign actions" is erroneous—and frankly, puzzling. Resp. 2. They could have raised that precise argument in the foreign courts and indeed, have filed forum non conveniens challenges in those courts that remain pending. Resp. 4. If those are unsuccessful, there is likely to be some form of appellate review that can be pursued. But the appropriate course is not to seek intervention from an entirely separate trial court to disrupt ongoing proceedings across multiple jurisdictions.

### IV.    X Has Met the Traditional Four-Part Test for Equitable Relief.

To the extent the Court concludes that it must evaluate the four traditional equitable factors, X has met that burden, too. The suits overlap; Defendants will be forced to defend against the

9

California litigation absent relief, which constitutes irreparable harm; and the balance of the equities and public interest favor the issuance of an injunction. Mot. 18-19.

Defendants' response largely reiterates their mistaken arguments that this suit and the California suit do not substantially overlap. They then focus (at 24) on X's status as a "multi-billion-dollar company" as a reason that X will not suffer irreparable harm for the economic costs that it will incur to litigate in California. But Fifth Circuit precedent focuses on "not so much on the magnitude but the irreparability" of the costs. *Restaurant Law Ctr. v. United States Dep't of Labor*, 66 F.4th 593, 597 (5th Cir. 2023). And Defendants offer no argument that X will be able to recover its litigation costs even if (as it should) it prevails in the California litigation. Finally, there is a strong public interest in avoiding "piecemeal resolution of issues that call for a uniform result." *Cadle Co.*, 174 F.3d at 603. An antisuit injunction will protect the parties and the courts from parallel federal proceedings that do nothing to bring the parties' disputes to a prompt resolution.

## CONCLUSION AND PRAYER

The Court should enjoin Defendants from prosecuting their pending California suit and order Defendants to withdraw their pending motion for preliminary injunction.

Dated: March 20, 2025.                                  Respectfully submitted.

*/s/ Christopher D. Hilton*
Judd E. Stone II
  Texas Bar No. 24076720
Christopher D. Hilton
  Texas Bar No. 24087727
Ari Cuenin
  Texas Bar No. 24078385
Michael R. Abrams
  Texas Bar No. 24087072
Alex M. Dvorscak
  Texas Bar No. 24120461
Cody C. Coll
  Texas Bar No. 24116214
**STONE HILTON PLLC**
600 Congress Ave., Suite 2350
Austin, TX 78701
Telephone: (737) 465-7248
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
michael@stonehilton.com
alex@stonehilton.com
cody@stonehilton.com

John C. Sullivan
  Texas Bar No. 24083920
**S|L LAW PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

11

## CERTIFICATE OF SERVICE

      I hereby certify that this document was served on all counsel for record on March 20, 2025 via the Court's CM/ECF system.

                                                */s/ Alexander M. Dvorscak*
                                                Alexander M. Dvorscak