UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

|  |  |
|---|---|
| X CORP., a Nevada corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>MEDIA MATTERS FOR AMERICA, a Washington, D.C. non-profit corporation, ERIC HANANOKI, and ANGELO CARUSONE,<br><br>    Defendants. | Civil Action No. 4:23-cv-01175-O |

**DEFENDANTS' OPPOSITION TO X CORP.'S MOTION TO COMPEL PRODUCTION
IN RESPONSE TO RFP NOS. 108, 113–114**

INTRODUCTION

In light of recent representations and concessions made by Defendants, any limited, remaining issues raised by X Corp.'s ("X") motion to compel production in response to RFP Nos. 108 and 113–114 should be rejected and the motion should be denied.

Defendants have recently agreed to produce all organizational or employee charts in their possession or control that are responsive to RFP Nos. 113–114, which seek the names and number of people employed or contracted by defendant Media Matters for America ("MMFA") for each month in 2023. Defendants' concession has effectively mooted X's motion with respect to these RFPs.

X's RFP No. 108 seeks an inappropriately broad swath of documents relating to Defendants' investigation of, and reporting on, advertising brand safety and content moderation standards – including its investigation and reporting on the many social media platforms other than X. To resolve the dispute on this RFP, Defendants have recently agreed to produce **all** of their reporting on online brand safety and content moderation standards from the relevant time period, including on other social media platforms. Defendants' revised response to RFP No. 108 contemplates a production that is far broader than what is required by the Federal Rules of Civil Procedure. To the extent X's motion seeks additional materials beyond what Defendants have agreed to produce, the motion should be denied.

I. X's Motion to Compel Production in Response to RFP Nos. 113–114 Should Be Denied As Moot Because Defendants Have Agreed to Produce All Organizational or Employee Charts In Their Possession Or Control Responsive to the RFPs.

X's RFP Nos. 113 and 114 seek the names and number of people employed or contracted by MMFA for each month in 2023. Defendants objected to these RFPs as overly broad, unduly burdensome, and disproportionate to the needs of this case, and noted that the responsive

1

information was best sought as an interrogatory. In its motion, X represented to the Court that "an organizational or employee chart would likely suffice" to satisfy these RFPs. (Dkt. No. 175 at 7)

Subject to and without waiving their objections to RFP Nos. 113 and 114, Defendants have agreed to produce all organizational or employee charts in their possession or control that are responsive to these RFPs. MMFA has represented to X that it does not generate organizational or employee charts on a monthly basis. Defendants have, however, searched for and located three organizational charts from the relevant time period -- organizational charts from September 2022 and October 2023, and a draft organizational chart from November 2023. Defendants have agreed to produce these materials, and any other organizational or employee charts that Defendants locate from the relevant time period. As a result of Defendants' concessions, X's motion with respect to RFP Nos. 113–114 should be denied as moot.

II.   X's Motion to Compel Production in Response to RFP No. 108 Should Be Denied Because Defendants Have Agreed to Produce Their Reporting on Brand Safety and <u>Content Moderation Standards</u>.

X's RFP No. 108 seeks all documents "reflecting or relating to online advertising brand safety / content moderation standards and / or Defendants' efforts to investigate online advertising brand safety / content moderation standards." Defendants objected to the RFP on the grounds that it is overly broad, not reasonably particularized, unduly burdensome, disproportionate to the needs of the case, and seeks materials not relevant to the claims brought by X. Those claims, as the Court is aware, relate to two MMFA articles from November 2023 that addressed the effectiveness (or lack thereof) of X's own brand safety and content moderation tools as X had described them publicly. The articles that gave rise to X's claims do not otherwise address brand safety or content moderation standards on X and do not refer, relate, or compare X's safety or content to those of any other social media platforms.

2

Notwithstanding these objections, which Defendants maintain, and prior to X's filing of the instant motion, Defendants were prepared to provide an amended response to this RFP in an effort to reach a compromise with X. Defendants notified X of this on April 14, 2025 at 11:50 a.m. EDT, and advised that Defendants would be in further contact on the issue later that same day. App. 5. Instead of continuing the meet and confer process, X elected not to await receipt of Defendants' amended response and instead proceeded to file its motion to compel approximately one hour later, on April 14, 2025 at 12:58 p.m. EDT.

On April 29, 2025, Defendants advised X that, subject to and without waiving their objections to RFP No. 108, Defendants will produce all of MMFA's reporting on online advertising brand safety and/or content moderation standards from the relevant time period.

Nonetheless, on May 2, 2025, X responded that this production is insufficient to satisfy the RFP because "Defendants impugned X's content moderation and ad safety record. X is entitled to the production of documents relating to the standards and Defendants' efforts to investigate the standards that were used as a yardstick to measure X against." App. 9.

X mischaracterizes the claims asserted in its own operative Complaint in its pursuit of a fruitless fishing expedition it proposes to pursue at Defendants' expense. Defendants' agreement to produce all reported articles on content moderation and safety standards regardless of social media platform is more than is required by the Federal Rules and should end the matter. Defendants' concession contemplates a production of non-privileged materials that is proportional to the needs of the case – and X's arguments that Defendants' proffered production is insufficient are misplaced.

X has every right to pursue proportional, relevant evidence in discovery to support its claims. Those claims (which MMFA denies) assert manipulation of the X platform in two, and

only two, MMFA articles. Neither of these short articles mention or rely on comparisons between the content moderation and ad safety standards utilized by X with the content moderation and ad safety standard of any other social media companies. MMFA's two articles simply recounted then-recent public representations by X's CEO Linda Yaccarino, made on August 10, 2023, that brands were "protected from the risk of being next to" toxic content on the platform, and that new content controls reduced advertiser risk of appearing next to content that is "lawful but awful." MMFA's reporting tested the accuracy of those statements by showing actual screen shots from the X platform of advertisements for brands such as IBM, Oracle, and others appearing adjacent to pro-Nazi content. The two MMFA articles, which are truthful and protected speech under the First Amendment, do not otherwise comment on "X's content moderation and ad safety record" or on the content moderation or ad safety record of any other social media company.

X's claim that "it is entitled to the production of documents relating to the standards and Defendants' efforts to investigate the standards that were used as a yardstick to measure X against" is baseless. No such claim is asserted anywhere in X's operative Complaint, and it is inconsistent with any plausible reading of the two short articles upon which X's claims are based. The two MMFA articles cited in the Complaint never represent that MMFA was measuring X against the brand safety or content moderation standards of any other social media platform. Even a cursory reading of the two articles at issue makes clear that the only "yardstick" X was measured against was the representation by X's own CEO, Ms. Yaccarino, that brands were protected from the risk of being next to toxic content on the X platform.

Again, the claims asserted by X in this action arise from only two articles by MMFA that documented X's failure to satisfy the brand safety protections publicly touted by X's own CEO. X's RFP No. 108, to the contrary, seeks production of all documents in MMFA's possession

4

or control relating to the issues of brand safety and content moderation generally, including on social media platforms that are not the subject of this dispute.

Responding fully to such a broad request would be extremely burdensome and the outcome fruitless. MMFA routinely had internal discussions about content moderation and safety standards at other social media platforms that had nothing to do with X, which led to MMFA's publishing of hundreds of articles on these topics during the relevant time period. MMFA has now agreed to produce all of these published articles[1], but Defendants' investigative materials and internal discussions related to these other articles are privileged and protected from disclosure and not relevant to this lawsuit. *See, e.g., Whole Woman's Health v. Smith*, 896 F.3d 362 (5th Cir. 2018) (internal communications protected by First Amendment privilege); Tex. Civ. Prac. & Rem. Code § 22.021, *et seq.* (journalist cannot be compelled to produce "any confidential or nonconfidential information, document, or item obtained or prepared while acting as a journalist"). To the extent RFP No. 108 calls for these materials, it is a burdensome and harassing fishing expedition. In light of MMFA's agreement to produce, in response to X's request, copies of all MMFA's reporting on online advertising brand safety and/or content moderation standards from any social media company from the relevant time period, any request for additional documents should be rejected by this Court as overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of the case.

---

[1] The voluminous materials Defendants have agreed to produce demonstrate that MMFA engages in significant monitoring and investigation of all major social media platforms, as well as many alternative platforms. Nonetheless, it is not surprising that X was the subject of the two MMFA articles at issue in November 2023. By that time, it was apparent that Elon Musk's actions to reduce X's staff and reduce content moderation had impacted the amount of disinformation and toxic content on the platform. Barbara Ortutay and Matt O'Brien, *Twitter Slashes Its Staff as Musk Era Takes Hold on Platform*, ASSOCIATED PRESS (Nov. 15, 2022, 1:18 AM), https://apnews.com/article/elon-musk-twitter-inc-business-layoffs-c0334da78b3af9faf2f43cf3f6e52ffa.

The legal arguments and caselaw offered by X in its motion to compel papers actually support MMFA's position rather than its own. For example, X cites to *Pierce v. Clarion Ledger,* No. 4:05-cv-75-LN, 2005 WL 8174870, at *3 (S.D. Miss. Oct. 24, 2005) for the proposition that "'[i]t is well settled that a public official/public figure plaintiff in a defamation action may probe into the editorial process that developed the publications about which he complains.'" (Dkt. No. 175 at 4–5.) That case supports Defendants' position here. In *Pierce*, the plaintiff Robert Earl Pierce was the subject of an allegedly defamatory article and filed a motion to compel discovery. *Id.* at *1, 3. The court considered Pierce's RFPs and interrogatories and granted his motion to compel only as to those that were narrowly tailored to seek information on the *subject article*. *Id.* at *5–7. X's RFP No. 108 stands in stark contrast to the narrowly tailored RFPs and interrogatories in *Pierce*.

In addition, X argues that Defendants have not demonstrated disproportionality because, inter alia, "this dispute places over $100 million at issue." (Dkt. No. 175 at 5 (citing *Janvey v. GMAG LLC,* No. 3:15-CV-00401, 2016 WL 11782222, at *4 (N.D. Tex. Oct. 7, 2016) (Bryant, Mag. J.)). Contrary to X's contention, the amount in controversy does not dictate whether discovery is proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Further, nothing in *Janvey*, the case cited by X, suggests that the amount in controversy controls. *See Janvey*, 2016 WL 11782222, at *2.

Moreover, Fifth Circuit courts routinely deem RFPs comparable to X's RFP No. 108 as overly broad, where they are not sufficiently limited by time period or by the subject at issue in the case. For example, in *U.S. Equal Emp. Opportunity Comm'n v. Exxon Mobil Corp.*, 347 F.R.D. 451 (M.D. La. 2024), the EEOC brought an action against Exxon on behalf of a Black employee and served a request for production for "all Documents that set forth, describe, explain, or reflect

6

each of Defendant's policies, practices, procedures, and/or codes of conduct related to nooses or similarly knotted ropes that were in effect between April 1, 2016, and the present." *Id.* at 473. The court held that this request (which is similar to X's request at issue here) was overly broad to the extent it sought Exxon to produce all documents that set forth its policies and procedures; instead, the court compelled Exxon to produce only those policies related to the chemical plant and refinery where the incidents of alleged discrimination occurred. *Id. See also Ogbonna v. USPLabs, LLC*, No. EP-13-CV-347-KC, 2014 WL 12489695, at *11 (W.D. Tex. Aug. 15, 2014) (denying motion to compel response to a RFP seeking "'All DOCUMENTS that refer to or embody policy or procedure for processing reports of adverse events' [explaining that] [t]his request is overly broad on its face because it is not limited by the SUBJECT PRODUCTS.") (emphasis in original); *In re Application of Time, Inc.*, No. 99-2916, 1999 WL 804090, at *8 (E.D. La. Oct. 6, 1999), *aff'd sub nom. In re Matter of Time Inc.*, 209 F.3d 719 (5th Cir. 2000) (finding RFP requesting "all documents concerning any of the statements in the fourteen-page, May 24, 1999 'Time' article" was "overbroad, vague and burdensome" and compliance with the requests for production "as phrased, would consume tens of thousands of dollars in man-hours and legal fees"). The Court should reach the same conclusion here.

## CONCLUSION

For the foregoing reasons, X's motion to compel should be denied

Respectfully submitted,

ZUCKERMAN SPAEDER LLP

/s/ Shawn P. Naunton
Dwight P. Bostwick
Shawn P. Naunton
Zuckerman Spaeder LLP
485 Madison Ave., 19th Floor
New York, NY 10022

Telephone: (212) 704-9600
Facsimile: (202) 822-8106
dbostwick@zuckerman.com
snaunton@zuckerman.com

Justin Nelson
State Bar No. 24034766
Matthew Behncke
State Bar No. 24069355
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Fax: (713) 654-6666
jnelson@susmangodfrey.com
mbehncke@susmangodfrey.com

Katherina M. Peaslee
SUSMAN GODFREY L.L.P.
401 Union Street, Suite #3000
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (206) 505-3811
kpeaslee@susmangodfrey.com

Gregg Costa
GIBSON, DUNN & CRUTCHER LLP
811 Main Street, Suite 3000
Houston, TX 77002-6117
Telephone: (346) 718-6649
Facsimile: (346) 718-6979
GCosta@gibsondunn.com

*Attorneys for Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone*

**CERTIFICATE OF SERVICE**

I certify that on May 5, 2025, a true and correct copy of Defendants' Opposition to X Corp.'s Motion to Compel Production In Response to RFP Nos. 108, 113–114 was properly served on counsel of record via electronic filing in accordance with the USDC, Northern District of Texas Procedures for Electronic Filing.

/s/ Shawn P. Naunton