UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **X CORP.**, a Nevada corporation, | § § § | |
| *Plaintiff,* | § § | |
| vs. | § § | **Case No. 4:23-cv-01175-O** |
| **MEDIA MATTERS FOR AMERICA,** a Washington, D.C. non-profit corporation, **ERIC HANANOKI**, and **ANGELO CARUSONE**, | § § § § § § | |
| *Defendants.* | § § | |

**REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Defendants continue to deny their obligation to provide complete responses to Requests for Production Nos. 108, 113, and 114, instead offering to produce only a small subset of responsive documents. But nothing that Defendants have raised in their response to X's motion to compel justifies Defendants' position. X requests discovery that is both relevant and proportionate to the needs of the case, and the Court should order Defendants to respond to the Requests in full.

With respect to Request Nos. 113 and 114, which request information about Defendants' employees, Defendants have refused to fully respond. Instead, Defendants have agreed to produce only three months of organization or employee charts and then claim their offer renders the dispute moot. Defendants' meager offer does not moot the dispute; Request Nos. 113 and 114 are not limited to just such charts. X requests that the Court order Defendants to provide a complete response to Request Nos. 113 and 114.

With respect to Request No. 108, which seeks information related to the central issue of Defendants' defamatory "reporting"—the issues of advertising brand safety and Defendants' related investigations, if any—Defendants bizarrely claim that documents showing their knowledge of brand safety standards applicable to social media platforms are irrelevant, making the Request disproportionate. This argument lacks all credibility. X's claim is based in part on the false impression created by Defendants' Articles published on November 16 and 17, 2023 (the "Articles") that X's Platform was not brand safe and did not meet brand safety standards. X has a right to know the standards to which Defendants thought X was being held. If Defendants were aware that X met brand safety standards applicable to social media platforms, or deliberately disregarded those brand safety standards when reporting on X, this is directly relevant to a host of issues including falsity and malice. Likewise, if Defendants' investigation of other social media

platforms' brand safety and content moderation took a less manipulative tact than did its "investigation" of X, that would be directly relevant to at least malice.

Defendants' only remaining objections are boilerplate or wholly unsupported. For example, Defendants objected on the basis that production would be unduly burdensome but do not provide *any* evidence in support, making only incorrect legal arguments regarding the effect of the amount-in-controversy. Finally, while Defendants state that they intend to assert privilege over some of the documents that X seeks, such a claim does not excuse them from producing all responsive non-privileged documents. Any privilege assertions must be made on a log.

With no valid basis to withhold documents responsive to X's Request Nos. 108, 113, and 114, the Court should overrule Defendants' objections and compel a complete production.

## ARGUMENT AND AUTHORITIES

**A.     Defendants should be compelled to fully respond to Request Nos. 113 and 114.**

Request No. 113 seeks "[d]ocuments sufficient to show the name of all employees, contract workers, consultants, freelancers, or any other individuals engaged or employed by Media Matters for America for each month of 2023." Mot. Appx 12. Request No. 114 similarly seeks the number of individuals employed or engaged by Defendant Media Matters. *Id*. In response, Defendants agreed to produce just three organizational charts from September 2022, October 2023, and November 2023, but Defendants have refused to *fully* respond to Request Nos. 113 and 114. X would likely accept organizational or employee charts covering the other time periods, if they existed. But according to Defendants, they don't. If Defendants have other responsive documents (especially considering that the request is limited to "documents sufficient to show"), then Defendants should produce them. For instance, Media Matters may utilize a Human Resources management platform that may enable them to provide the names and titles of employees.

2

Defendants' only response is as simple as it is ineffectual: mootness. Opp. at 2. But Defendants have only agreed to produce the three charts described above "and any other organizational or employee charts that Defendants locate." Opp. at 2. The requests, however, are broader and not limited to just organizational and employee charts. Accordingly, this dispute is not moot. X asks that the Court order Defendants to respond fully to Request Nos. 113 and 114.

**B.     Defendants should be compelled to fully respond to Request No. 108.**

In Request No. 108, X seeks "Documents reflecting or relating to online advertising brand safety/content moderation standards and/or Defendants' efforts to investigate online advertising brand safety/ content moderation standards." Despite discussions on this issue dating back to January 8, 2025, even after seeing X's Motion, the only documents Defendants are willing to produce are their publicly available articles about other social media platforms.[1] Defendants take this position while freely admitting that the documents sought by X exist, claiming that individuals at MMFA "routinely" discussed brand safety standards. Opp. at 5. That admission is key, and Defendants' relevance objections and other boilerplate complaints are meritless. Rule 26 broadly provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). X is entitled to responsive documents where, as here, there is at least a "'possibility' that the information sought may be relevant to the claim or defense of any party." *SEC v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) (Ramirez, M.J.) (citation omitted); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351

---

[1] Defendants reference their eve-of-filing offer to compromise made on April 14, 2025, suggesting that X should have waited to file its motion. Opp. at 3. But Defendants fail to mention the three phone and video conferences held between counsel relating to these RFPs during which Defendants refused to produce all responsive documents. *See* Mot. at 3 (Certificate of Conference); Mot. Appx. 25–32. Defendants also fail to mention that their offer that followed on April 14, was an offer identical to one that X had already rejected.

(1978) (information is relevant if it bears on, or "reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case."). A central issue in this case—and the subject of RFP 108—is "brand safety/content moderation." Thus, Defendants' knowledge of "brand safety/content moderation" and their state of mind regarding their defamatory reporting on brand safety for advertisers on the X platform is also central. Defendants' claim that documents reflecting their internal understanding of applicable brand safety standards is irrelevant is simply untenable. Defendants' two remaining particularized objections—burden and privilege—fare no better.[2]

### 1) The documents X seeks are relevant.

Defendants claim that their knowledge of applicable brand safety standards is irrelevant because the Articles "never represent that MMFA was measuring X against the brand safety or content moderation standards of any other social media platform." Opp. at 4. Attempting to limit their Articles, Defendants focus on a single sentence from just one to argue that the Articles only relate to X's failure to satisfy the "brand safety protections publicly touted by X's own CEO." *Id*. But Defendants do not avoid liability for their false and defamatory reporting merely because they quoted X's CEO once. In that article, they purport to refute Yaccarino: "But that certainly isn't the case for at least five major brands: . . . ." Appx. 14. In other words, Defendants are passing judgment on the effectiveness of X's brand safety measures. Indeed, the Articles are replete with false statements that impugn X's brand safety and create the overall false impression that X fails to meet the brand safety standards applicable to social media platforms. For example, the November 17, 2023 Article states that "as hateful rhetoric flourishes on X, the platform's remaining advertisers ***are especially affected***" and "***X still has a problem***." Appx. 6 (emphasis

---

[2] While Defendants also asserted an abandoned cumulative objection and other boilerplate objections, these may be disregarded by the Court. *See Samsung Elecs. Am. Inc. v. Yang Kun "Michael" Chung*, 325 F.R.D. 578, 590, 591 (N.D. Tex. 2017).

4

added). Similarly, Defendant Carusone stated "[a]nd that's the issue – no matter how you slice it, the fact is their brand safety tools were not operating in the way that they claim they should have been" and that "they're never going to really be able to put in pace the kinds of mechanism that make it good for business, at least from an advertiser's perspective." Appx. 19. And going beyond specific quotes, the publications evidence a main theme, central idea, or thesis that X is not brand safe for advertisers. *Cf. D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 439 (Tex. 2017) (finding prima facie case for defamation because plaintiff "presented clear and specific evidence that the article's gist is not substantially true.") (citation omitted).

If Defendants are "routinely" discussing brand safety standards for social media platforms, Opp. at 5, then X is entitled to understand their knowledge and research into brand safety standards and determine how that knowledge was or was not applied when Defendants published about X. Accordingly, Defendants' argument that the compelled requests in *Pierce v. Clarion Ledger* were limited to "the *subject article*" is unavailing. Opp. at 7 (citing No. 4:05-cv-75-LN, 2005 WL 8174870, at *5-7 (S.D. Miss. Oct. 24, 2005). For example, if the withheld documents showed that Defendants had knowledge that X met industry brand safety standards, yet Defendants published their Articles anyway, this would be obvious evidence of falsity and malice. *Cf. Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987) (finding "the statements of Gulf Atlantic were false and malicious in the sense that Gulf Atlantic knew them to be false."); *see also Tavoulareas v. Piro*, 93 F.R.D. 35, 43 (D.D.C. 1981) (compelling production because "[o]nly through discovery of these materials, which directly relate to The Post journalists' states of mind in publishing the allegedly false articles at issue in this suit, will the plaintiffs have a fair opportunity to satisfy the actual malice standard: showing, with convincing clarity, defendants' actual knowledge of falsity or their 'subjective awareness of probable falsity.'") (citation omitted).

Likewise, if the withheld documents showed that Defendants never considered or researched brand safety standards when reporting on X, this would be supporting evidence that their statements on X were intended, not to accurately report on the brand safety of the X Platform, but to cause harm. *See Hurlbut* 749 S.W.2d at 766; *Orchestratehr, Inc. v. Trombetta*, No. 3:13-CV-2110-P, 2015 WL 11120526, at *8 (N.D. Tex. July 15, 2015) (granting motion to compel and stating that "[e]ven true disparaging comments could be relevant evidence as to a business disparagement claim and, in any event, are the proper subject of discovery by a plaintiff"). Similarly, if Defendants' investigation of other social media platforms took a less-manipulative tact, that would also be relevant to at least malice because it would demonstrate a particular animus toward X. Defendants cannot credibly claim that the subject Articles here do not concern brand safety or that their knowledge of applicable brand safety standards is irrelevant to X's claims.

Defendants' other cited authority does not help their position. For example, *EEOC v. Exxon Mobil Corp.* concerned an employment discrimination case based on conduct that allegedly occurred at a certain chemical plant and refinery. *See* 347 F.R.D. 451, 458 (M.D. La. 2024). There, the court broadly granted plaintiff's request to "produce all policies, practices, procedures, and/or codes of conduct" applicable to those locations for a five-year period, regardless of subject matter. *Id.* at 473. X's request is comparatively limited. Defendants' documents concerning advertiser brand safety standards applicable to social media platforms are a central issue in the case because Defendants' Articles create the false impression that X's platform fails brand safety standards.

*Ogbonna v. USPLabs, LLC* is a product liability case where the court limited movant's request for "all documents" concerning a "policy or procedure for processing reports of adverse events" to all documents concerning policy or procedure that related to the "subject products" at issue. No. EP-13-CV-347-KC, 2014 WL 12489695, at *11 (W.D. Tex. Aug. 15, 2014). So, too,

6

here. X is not requesting documents related to unrelated standards informing publications on companies in unrelated industries, which may have a similarly tenuous link to the issues in the case as the unrelated policies limited by the *Ogbonna* court. *See id.* Instead, X's request is limited to brand safety standards for social media platforms, as implicated by Defendants' false publications about X. It is a narrowly tailored request focused on key issues.

Finally, *In re Application of Time, Inc.* concerns a third-party subpoena issued under 28 U.S.C. § 1782 in connection with a defamation lawsuit pending in Indonesia—a procedural posture far removed from this case. *See* No. 99-2916, 1999 WL 804090, at *1 (E.D. La. Oct. 6, 1999). The standards for non-party discovery are unquestionably more restrictive than requests made to parties. *See id.* at *7 (citing Fed. R. Civ. Pro. 45(c)). Further, in denying the requested third-party discovery, the court commented that "it might reasonably be presumed that Time should be in a position to substantiate the statements in its own article in defense of the defamation claim by reference to whatever records and information it accumulated in its own files in preparing the article." *Id.* at *8. Instead of supporting Defendants' attempt to limit discovery, the opinion instead highlights the relevance of documents Defendants had when preparing the defamatory Articles.

Ultimately, Defendants cannot credibly maintain their relevance objection. The documents X seeks have more than a "possibility" of relevance to proving, at a minimum, Defendants' intent and state of mind. *Brady*, 238 F.R.D. at 437. This Court should accordingly overrule Defendants' relevance objection and provide X with full discovery responsive to Request No. 108.

**2) Defendants' other boilerplate objections are waived or fail for lack of support.**

Defendants also objected to Request No. 108 on a variety of boilerplate bases, including that the request was "overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation." Mot. Appx. 18. These "general, generic objections violate the

7

Federal Rules and are invalid." *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014) (Horan, M.J.). Other than the relevance-based proportionality arguments, addressed above, Defendants' only other particularized objection is that the request is cumulative of specific requests. Mot. Appx. 18. This cumulative objection is not addressed in Defendants' Opposition—which the Court can disregard as abandoned. *E.g.*, *Samsung Elecs. Am. Inc. v. Yang Kun "Michael" Chung*, 325 F.R.D. 578, 591 (N.D. Tex. 2017) ("A party who has objected to a discovery request then must, in response to a motion to compel, urge and argue in support of its objection to a request, and, if it does not, it waives the objection.").

To the extent Defendants' burden objection is not waived, it fails for lack of support. Defendants fail to articulate why the Request would be disproportionate by, for example, stating the actual burden imposed by the request either by identification of the number of documents or the cost of production. *Janvey v. GMAG LLC*, No. 3:15-CV-00401, 2016 WL 11782222, at *4 (N.D. Tex. Oct. 7, 2016). Instead, Defendants merely state without citation that "MMFA routinely had internal discussions about content moderation and safety standards" and published "hundreds of articles on these topics." Opp. at 5. But Defendants provide no evidence supporting why production of responsive documents would be unduly burdensome. *See Sw. Insulation, Inc. v. Gen. Insulation Co.*, No. 4:15-CV-601-O, 2016 WL 9244822, at *5 (N.D. Tex. Apr. 25, 2016) (O'Connor, J.) (overruling objection because "the Court finds that Defendant has failed to supply the Court with affidavits or offer evidence revealing the nature of its burden."). In addition, Defendants' assertion that the amount-in-controversy does not "dictate" and is not "controlling" on the issue of burden, is wrong. *See* Fed. R. Civ. P. 26(b)(1); *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 584 (N.D. Tex. 2018) (Horan, M.J.) (requiring resisting party to provide "specific information" on proportionality given ". . . the amount in controversy"); *Orchestrate HR, Inc. v.*

8

*Trombetta*, 178 F. Supp. 3d 476, 505 (N.D. Tex. 2016) (Horan, M.J.) (same). And Defendants' characterization of *Janvey v. GMAG LLC*, No. 3:15-CV-0401-N-BQ, 2016 WL 11782222, at *3 (N.D. Tex. Oct. 7, 2016), is wrong. *See* Opp. at 6. As X explained in its brief, Mot. at 5, the amount in controversy is considered when making a proportionality analysis. The *Jarvey* court specifically addressed amount-in-controversy when evaluating the cost of proposed discovery, stating that the $88.2 million dollars at issue expanded "the boundaries of what is proportional and reasonable in developing the facts necessary to resolve the dispute, both in scope and cost of discovery." 2016 WL 11782222, at *3.

Defendants caused tens or hundreds of millions of dollars in damage to X in the form of lost advertising revenue through their false and defamatory "reporting" and their influence campaign that spread their lies. Discovery into Defendants' documents related to brand safety—a key topic of their reporting—is therefore not only proportionate, but necessary. Defendants' burden objection can thus be overruled.

> **3) Even if some responsive documents are privileged, Defendants must still search for all responsive documents and assert privilege on a privilege log.**

Defendants also claim that responsive documents about brand safety standards that may have informed other articles are privileged and should be prevented from disclosure under either the First Amendment or the Texas Press Shield Law. Opp. at 5. Setting aside whether Defendants have any valid basis to claim privilege, Defendants must still search for responsive documents and make any specific privilege claims on a log. *See* Fed. R. Civ. P. 26(b)(5); *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001) ("In complex litigation, compliance with Rule 26(b)(5) is usually accomplished by submission of a log identifying documents or other communications by date and by the names of the author(s) and recipient(s), and describing their general subject matter.") (cleaned up). Failure to assert privilege on a log waives the privilege. *E.g.*, *Johnston v.*

9

*Transocean Offshore Deepwater Drilling, Inc.*, No. 2:18-CV-00491, 2019 WL 1558040, at *2 (E.D. La. Apr. 10, 2019) ("When a party has failed to comply with the Rule 26(b)(5) requirement to provide a privilege log, courts have found that all assertions of privilege . . . have been waived."); *Rogge v. Bandera Falls Prop. Owner's Ass'n*, No. 5:07-CV-996-OLG, 2009 WL 10713559, at *3 (W.D. Tex. Aug. 11, 2009) ("Defendant's reliance on the attorney-client privilege fails because defendant failed to provide a privilege log pursuant to Fed. R. Civ. P. 26(b)(5)."). Accordingly, when Defendants asserted privilege in response to X's prior motion to compel briefing, *see* ECF No. 62 at 4-5, the Court ordered "Defendants to log any responsive documents as privileged and deliver to Plaintiff." ECF No. 65 at 2. The same result follows here, even if Defendants claim certain responsive documents are privileged under the First Amendment—a dubious proposition— Defendants are not excused from searching for documents but must instead log the documents with sufficient detail for X to evaluate the claimed privilege.

So, too, with respect to documents that are potentially covered by the Texas Press Shield Law; they must be logged. The Court has previously described the Texas Press Shield Law as presenting a two-step process, with the first step requiring that "the journalist opposing discovery must make out a prima facie case that the Texas Press Shield applies." ECF No. 136 at 6 (citing *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001) ("A party asserting a privilege exemption from discovery bears the burden of demonstrating its applicability.")). Defendants must accordingly log any documents that they assert are protected by the Texas Press Shield Law, as Defendants have done with respect to X's other requests.

## CONCLUSION

X respectfully requests that the Court overrule all of Defendants' objections and order Defendants to promptly produce all materials responsive to X's Requests for Production Nos. 108, 113, and 114.

Dated: May 19, 2025                                        Respectfully submitted,

                                                           */s/ Christopher D. Hilton*
John C. Sullivan                                           Judd E. Stone II
Texas Bar No. 24083920                                     Texas Bar No. 24076720
**S|L Law PLLC**                                           Christopher D. Hilton
610 Uptown Boulevard, Suite 2000                           Texas Bar No. 24087727
Cedar Hill, TX 75104                                       Ari Cuenin
Telephone: (469) 523-1351                                  Texas Bar No. 24078385
Facsimile: (469) 613-0891                                  Elizabeth Brown Fore
john.sullivan@the-sl-lawfirm.com                           Texas Bar No. 24001795
                                                           Michael R. Abrams
                                                           Texas Bar No. 24087072
                                                           Alithea Z. Sullivan
                                                           Texas Bar No. 24072376
                                                           Alexander M. Dvorscak
                                                           Texas Bar No. 24120461
                                                           Cody C. Coll
                                                           Texas Bar No. 24116214
                                                           **Stone Hilton PLLC**
                                                           600 Congress Ave., Ste. 2350
                                                           Austin, TX 78701
                                                           Telephone: (737) 465-3897
                                                           judd@stonehilton.com
                                                           chris@stonehilton.com
                                                           ari@stonehilton.com
                                                           elizabeth@stonehilton.com
                                                           michael@stonehilton.com
                                                           alithea@stonehilton.com
                                                           alex@stonehilton.com
                                                           cody@stonehilton.com

                                                           *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2025, a copy of this document was served on all counsel of record through the Court's CM/ECF system in accordance with the Federal Rules of Civil Procedure.

                                                           */s/ Alexander M. Dvorscak*
                                                           Alexander M. Dvorscak