# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| **X CORP.**, a Nevada corporation,<br>　　　　Plaintiff,<br><br>vs.<br><br>**MEDIA MATTERS FOR AMERICA**, a<br>Washington, D.C. non-profit corporation,<br>**ERIC HANANOKI**, and **ANGELO**<br>**CARUSONE**,<br>　　　　Defendants. | Case No. **4:23-cv-01175-O** |

---

## PLAINTIFF'S BRIEF REGARDING SANCTIONS
## FOR MEDIA MATTERS' LITIGATION CONDUCT

---

JUDD E. STONE II
CHRISTOPHER D. HILTON
ARI CUENIN
ELIZABETH BROWN FORE
MICHAEL R. ABRAMS
ALITHEA Z. SULLIVAN
ALEXANDER M. DVORSCAK
CODY C. COLL
**STONE HILTON PLLC**
600 Congress Ave.
Suite 2350
Austin, TX 78701
Telephone: (737) 465-7248

JOHN C. SULLIVAN
**S|L LAW PLLC**
610 Uptown Boulevard
Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................ ii

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 2

    I.    Media Matters' Tortious Articles ................................................................................ 2

    II.   Media Matters' Prior Gamesmanship .......................................................................... 3

    III.  Media Matters' Belated Motion to Transfer ................................................................. 5

    IV.  Media Matters' Representations in the California Proceedings ......................................... 7

ARGUMENT AND AUTHORITIES ....................................................................................... 9

    I.    The Court Can Impose Sanctions by Statute, Rule, and the Court's Inherent Powers. ...... 9

    II.   Under Any Standard, Media Matters' Conduct Is Sanctionable. .................................... 11

        A.   Media Matters' conduct is sanctionable under Section 1927. .................................... 11

        B.   Media Matters' conduct is sanctionable under Rule 11 .............................................. 16

        C.   Media Matters' conduct is sanctionable under the Court's inherent powers. ................ 16

CONCLUSION ..................................................................................................................... 17

CERTIFICATE OF SERVICE ............................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991)......................................................................................... 11

*Collar v. Abalux, Inc.*,
  2018 WL 3328682 (S.D. Fla. July 5, 2018)....................................................... 9, 16

*Consol. Edison Co. v. United States*,
  221 F.3d 364 (2d Cir. 2000)............................................................................ 14

*Edwards v. Gen. Motors Corp.*,
  153 F.3d 242 (5th Cir. 1998) .......................................................................... 10

*Edwards Vacuum, LLC v. Hoffman Instrumentation Supply, Inc.*,
  No. 3:20-CV-1681-SI, 2021 WL 2355405 (D. Or. June 9, 2021) ............................ 6

*H.A.L. NY Holdings, LLC v. Guinan*,
  958 F.3d 627 (7th Cir. 2020) .......................................................................... 14

*Hampton v. Equity Tr. Co.*,
  736 F. App'x 430 (5th Cir. 2018) ..................................................................... 5, 13

*Hill v. Norfolk and Western Ry. Co.*,
  814 F.2d 1192 (7th Cir. 1987) ......................................................................... 11

*Hirst v. Skywest, Inc.*,
  405 F. Supp. 3d 771 (N.D. Ill. 2019) ................................................................ 13

*Hockaday v. City of Dearborn*,
  No. 02-70408, 2005 WL 1838350 (E.D. Mich. Aug. 2, 2005)................................. 1

*In re Stone*,
  986 F.2d 898 (5th Cir. 1993) ........................................................................... 11, 16

*Ins. Benefit Adm'r v. Martin*,
  871 F.2d 1354 (7th Cir. 1989) ......................................................................... 16

*Matta v. May*,
  118 F.3d 410 (5th Cir. 1997) ........................................................................... 11, 17

*Pathe Computer Control Sys. Corp. v. Kinmont Indus.*, Inc.,
  955 F.2d 94 (1st Cir. 1992).............................................................................. 16

*Patterson v. Aiken*,
   841 F.2d 386 (11th Cir.1988) ........................................................................ 11

*Peteet v. Dow Chem. Co.*,
   868 F.2d 1428 (5th Cir. 1989) ............................................................ 5, 6, 15

*Positive Software Solutions, Inc. v. New Century Mortg. Corp.*,
   619 F.3d 458 (5th Cir. 2010) ...................................................................... 11, 16

*Procter & Gamble Co. v. Amway Corp.*,
   280 F.3d 519 (5th Cir. 2002) ...................................................................... 10, 15

*Ratliff v. Stewart*,
   508 F.3d 225 (5th Cir. 2007) .......................................................................... 10

*Sambrano v. United Airlines, Inc.*,
   707 F. Supp. 3d 652 (N.D. Tex. 2023) .......................................................... 13

*Schwebke v. United Wholesale Mortgage LLC*,
   96 F.4th 971 (6th Cir. 2024) .......................................................................... 14

*SGIC Strategic Glob. Inv. Cap., Inc. v. Burger King Eur. GmbH*,
   839 F.3d 422 (5th Cir. 2016) ............................................................................ 6

*United States v. Davis*,
   No. 23-20475, 2025 WL 1417703 (5th Cir. May 16, 2025)........................... 14

*Whitehead v. Food Max of Mississippi, Inc.*,
   332 F.3d 796 (5th Cir. 2003) .............................................................. 10, 11, 16

*X Corp. v. Media Matters*,
   120 F.4th 190 (5th Cir. 2024) .......................................................................... 4

**Statutes, Rules, and Other Authorities**

28 U.S.C. § 1927......................................................................................... 12, 15, 16

Fed. R. Civ. P. 11(b) ....................................................................................... 10, 16

Fed. R. Civ. P. 11(c)(1)........................................................................................ 10

Fed. R. Civ. P. 11(c)(3)........................................................................................ 10

N.D. Tex. Local Rule 7.1(a) .................................................................................. 5

Williston on Contracts §§ 39:28, 39:30 (4th ed. 2024)........................................ 14

## INTRODUCTION

Before Media Matters filed its belated motion to transfer, X "strongly encourage[d]" Media Matters to reconsider. Appx. 5. Twice—once by videoconference, and then over email—X warned that Media Matters would face sanctions if it moved forward. After all, Media Matters "disputed venue at the beginning of this case and lost," making "a second bite at the apple this late in the case" improper. *Id.* Media Matters proceeded anyway, offering no reasonable justification for its fifteen-and-a-half-month delay in failing to seek transfer or in invoking the forum selection clause of X's former terms of service as a purported basis for a change of forum. This is because none exists. Indeed, in the litigation that it brought in the Northern District of California claiming that X breached the forum selection clause of its former terms of service by suing in this Court, Media Matters conceded that it had "no good explanation" for its delay. Appx. 18. In its telling, Media Matters "just missed" the issue. Appx. 83. Other facts, including that Media Matters admitted that it made a "considered decision" not to raise the forum selection clause in foreign proceedings brought by X's corporate affiliates, suggest the delay was (or at least became) a deliberate decision. Either way, the late motion to transfer was unjustified.

Three unique circumstances require the imposition of sanctions. *First*, Media Matters' motion is only the latest instance of its concerning pattern of relitigating and delaying issues that this Court has already decided. Media Matters already filed (and lost) an untimely motion to compel modification of X's certificate of interested persons that smacked of improper gamesmanship. *See Hockaday v. City of Dearborn*, No. 02-70408, 2005 WL 1838350, at *2 (E.D. Mich. Aug. 2, 2005) ("Gamesmanship is another factor that may be weighed in determining sanctions."). Media Matters later defied this Court's discovery order to search for and generate a privilege log of documents concerning their donors, necessitating a lengthy order from the Court

granting X's second motion to compel, ECF No. 98, and setting off an ongoing interlocutory appeal. This Court should not countenance further wasteful, dilatory behavior when Media Matters has been warned against such gamesmanship. *Second*, and relatedly, X put Media Matters on express notice that its inappropriate motion to transfer would result in sanctions. *Third*, the Court correctly held that Media Matters relinquished its right to enforce the forum selection clause in the former terms of service, and Media Matters confirmed in open court that it had no "good explanation" for its invocation of the clause at this late juncture in the case. In other words, the record before the Court leads only one conclusion: Media Matters knew its reliance on the clause served no purpose other than delay but nonetheless proceeded with its motion.

For these reasons, the Court should sanction Media Matters by ordering it (or its counsel) to pay X the costs incurred in defending against the motion. The Court would be justified in doing so under 28 U.S.C. § 1927, Federal Rule of Civil Procedure 11, or the Court's inherent authority to control its own proceedings.

## BACKGROUND

### I.    Media Matters' Tortious Articles

On November 16 and 17, 2023, Media Matters published two articles written by Eric Hananoki that claimed to uncover instances of antisemitic and hateful content being organically "placed" next to advertising posts on the X social media platform. ECF No. 37, Am. Compl. ¶¶ 30-38, 46-54. These publications—specifically, their assertions that Media Matters discovered fringe content organically adjacent to posts from X's premier advertisers—were false. In fact, Hananoki deliberately manipulated the X platform to engineer his desired ad pairings and then published defamatory claims that the ad pairings occurred naturally. *Id.* ¶¶ 47-54. Angelo Carusone, Media Matters' president, also claimed in a television interview that "[w]hat we did was

use Twitter the way a normal user would and then log the advertisements that were received." *Id.* ¶ 13. The deceptive articles were part of a larger, ongoing campaign to destroy X's advertiser base and revenues. *Id.* ¶ 46.

The articles had the effect that Media Matters intended. Advertisers significantly reduced or eliminated spending on X's platform in their wake. *Id.* ¶¶ 30-38, 61-64. In response, X sued Media Matters, Hananoki, and Carusone in this Court (collectively, Media Matters) for business disparagement, tortious interference with contract, and tortious interference with prospective economic advantage. *Id.* ¶¶ 65-88.

## II.    Media Matters' Prior Gamesmanship

Media Matters moved to dismiss X's Amended Complaint on March 8, 2024, contesting both personal jurisdiction and venue. ECF No. 41 at 4-13. Media Matters did *not* contend that X's former terms of service, which contained a forum selection clause providing that "[a]ll disputes related to these Terms or the Services will be brought solely in the federal or state courts located in San Francisco County, California," applied to this case. However, Media Matters twice cited those terms in contending that Texas courts lack a strong interest in this suit. *See id.* at 10 (arguing that exercising personal jurisdiction would not be "reasonable" because "X's . . . terms of service disclaim any interest in resolving disputes in Texas"); *id.* at 13 (noting that the Northern District of California is "ordinarily X's own preferred choice of forum" as evidenced by the former terms of service).

On August 29, the Court denied Media Matters' motion to dismiss, rejecting its personal jurisdiction, venue, and Rule 12(b)(6) arguments (and any attendant arguments based on the terms of service). ECF No. 82 at 16. Media Matters requested that the Court certify its personal jurisdiction and venue holdings for immediate appellate review, insisting that California, along

– 3 –

with the District of Columbia, is a proper venue. *See* ECF No. 94 at 16. Media Matters did not cite

X's terms of service in making those arguments. *Id.* Although Media Matters threatened to seek

mandamus relief "absent prompt certification," ECF No. 120 at 1, it neglected to do so even after

the Court denied its motion, ECF No. 134. Proceedings have continued apace, including extensive

discovery, motions practice, and an interlocutory appeal. *See X Corp. v. Media Matters for Am.*,

No. 24-10900 (5th Cir. argued Feb. 18, 2025).

　　While its motion to dismiss was pending, and seven months after X sued, Media Matters

filed a motion to compel demanding that X file a corrected certificate of interested persons based

on the demonstrably false claim that Tesla and its shareholders are "financially interested" in the

outcome of this case under Local Rule 3.1(c). ECF No. 74 at 2. In denying the motion, the Court

noted that it should have been brought at the outset of the case and explained that "no change in

circumstances as it relates to Elon Musk's minority share in Tesla or purchase of X, formally

Twitter, adequately explains the delay in the motion," ECF No. 81 at 4 n.3. The Court cautioned

Media Matters that "Local Rule 3.1 is not an avenue for gamesmanship and such conduct is not

permissible in this Court." *Id.* The Court then awarded attorney's fees under Federal Rule of Civil

Procedure 37 because the motion was "not substantially justified" and lacked a basis in law. *Id.* at

7.

　　More baseless and unjustified actions followed. This Court's June 6, 2024 discovery order

required Media Matters to search for and log documents concerning its donors. ECF No. 65 at 3.

Rather than comply with the order, Media Matters "refus[ed] to comply." ECF No. 98 at 6.

Although the Court did not use the term "gamesmanship," the Fifth Circuit recognized the behavior

as "puzzling . . . def[iance]." *See X Corp. v. Media Matters*, 120 F.4th 190, 198 (5th Cir. 2024)

("It is puzzling why Media Matters defied the district court.").

III.    **Media Matters' Belated Motion to Transfer**

Almost exactly a year after its unsuccessful motion to dismiss, and fifteen and a half months after the start of this litigation, Media Matters pursued a motion to transfer venue under 28 U.S.C §§ 1404(a) and 1406(a), insisting that the forum selection clause in X's former terms of service requires that this litigation be heard in the Northern District of California. ECF No. 153-1 at 4-14. The parties conferred by Zoom and email about the motion prior to Media Matters' filing. *See* N.D. Tex. Local Rule 7.1(a); Appx. 5-6. On the videoconference, X warned Media Matters that it could face sanctions if it proceeded with the motion.  X then elaborated in writing that the "court has already evaluated venue and determined it is proper." Appx. 5. That decision arrived "after consideration of the forum selection clause in X's prior terms of service, which Defendants addressed in their motion." *Id.* Moreover, over a year "of litigation has proceeded in this forum," "X's terms of service have been known to Defendants since the case began," and Media Matters' motion would violate the principle that "[p]arties seeking a change of venue should act with 'reasonable promptness.'" *Id.* (quoting *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989)). Finally, the motion "comes on the heels of oral argument in the Fifth Circuit prior to a decision being reached," and any "attempt to transfer while an appeal is pending is inappropriate." Appx. 5-6. Media Matters filed its motion anyway, and mere days later, sought a second opinion on the interpretation of the forum selection clause by filing a new action based on the terms of service in the Northern District of California. *See infra* pp. 7-9.

In denying Media Matters' motion, the Court highlighted many of the same issues that X raised in the conferral process. The Court found that Media Matters waived the right to enforce the forum selection clause under both frameworks that the Fifth Circuit has applied. ECF No. 190 at 2 (citing *Hampton v. Equity Tr. Co.*, 736 F. App'x 430, 435 (5th Cir. 2018)). Under the

"traditional" approach, Media Matters' conduct has been "inconsistent with the intent to enforce the right" to transfer venue. *Id.* at 5. Put differently, "waiting over a year and a half, moving to dismiss a case on the merits (twice), engaging in numerous discovery disputes, and appealing an unfavorable decision to the Fifth Circuit" could not be squared with the intent to transfer this action to the Northern District of California. *Id.* Under the second, Media Matters "substantially invoke[d] the judicial process," *SGIC Strategic Glob. Inv. Cap., Inc. v. Burger King Eur. GmbH*, 839 F.3d 422, 426-27 (5th Cir. 2016), "by [its] actions in this litigation, most conspicuously by moving to dismiss this case and appealing to the Fifth Circuit," ECF No. 190 at 5. And "[c]onsidering the excessive delay and the extensive motions practice that has occurred in this action, Defendants' actions have prejudiced Plaintiff." *Id.*

Turning to the transfer analysis under Sections 1404 and 1406, the Court held that Media Matters did not act with "reasonable promptness." *Peteet*, 868 F.2d at 1436. Although Media Matters claimed to be waiting on the Court's ruling on its right to an interlocutory appeal, "Defendants cite no caselaw that would indicate they were required, or even encouraged, to wait for the Court's order on interlocutory appeal before requesting transfer. Instead, when litigants file a Rule 12(b)(3) motion to dismiss for improper venue, they typically ask a court, in the alternative, to transfer under 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a)." ECF No. 190 at 7. For all these reasons, the Court denied Media Matters' motion. ECF No. 190 at 8. And based on the unusual timing of the motion, Media Matters appears to have waited to "learn[] 'which way the wind was blowing'" before requesting transfer. ECF No. 168-3 (quoting *Edwards Vacuum, LLC v. Hoffman Instrumentation Supply, Inc.*, No. 3:20-CV-1681-SI, 2021 WL 2355405, at *6 (D. Or. June 9, 2021)). Accordingly, the Court's order denying Media Matters' motion to transfer requested that X "detail[] the Court's authority to sanction Defendants' conduct." ECF No. 190 at 9.

## IV.    Media Matters' Representations in the California Proceedings

Media Matters then extended its machinations beyond the Northern District of Texas. Notwithstanding its pending transfer motion filed four days earlier in this Court, on March 10, 2025, Media Matters filed a suit of its own in the San Francisco Division of the Northern District of California based on the now-defunct venue provision in X's prior terms of service. *See* ECF No. 1, Complaint, *Media Matters et al. v. X Corp. et al.*, No. 3:25-cv-02397, ¶ 1 (N.D. Cal. Mar. 10, 2025). The complaint alleges that X's purported breach of the terms of service cost Media Matters "millions of dollars in attorneys' fees and costs defending X Corp.'s improperly filed suit in Texas," despite those terms having a "damages cap" that "limit[s] a user's damages to $100." *Id.* ¶¶ 24 n.9, 136. In other words, Media Matters is nonsensically seeking to recover money damages from X for allegedly breaching a forum selection clause that Media Matters waived. Worse still, Media Matters is doing so even though the terms of service in effect when it sued in California (and in effect, in fact, since November 2024) required Media Matters to sue in this District. *See* ECF No. 168-4 at 14. Media Matters' California suit also seeks a declaration that the terms of service apply to two X affiliates that filed claims last year against Media Matters internationally—Twitter International Unlimited Company (TIUC) and Twitter Asia Pacific Pte. Ltd.—and an injunction against their ongoing litigation against Media Matters in Ireland and Singapore, respectively. *See id.* at 38.

On March 11, Media Matters moved for a preliminary injunction prohibiting X and its affiliates from "further prosecuting their pending actions against Media Matters in foreign jurisdictions," and from "prosecuting or initiating litigation against Media Matters, whether directly or through its subsidiaries, arising from the same conduct as that alleged in the pending Ireland and Singapore complaints in jurisdictions outside of the United States in violation of the

X Terms of Service's forum selection clause." *See* ECF No. 16, Pls.' Mem. of Points and Authorities in Support of Mot. for a Preliminary Injunction, *Media Matters et al. v. X Corp. et al.*, No. 3:25-cv-02397, at 25 (N.D. Cal. Mar. 11, 2025). The timing of this filing was not coincidental. The parties in the Ireland case spent a year litigating Media Matters' forum non conveniens motion, and a hearing on that motion was originally scheduled for February 2025. But Media Matters requested additional time to file its papers, pushing the Ireland hearing to March 12, 2025. Media Matters filed its California preliminary anti-suit injunction motion the day before. Media Matters' gambit worked: the mere filing of the preliminary injunction motion was enough to cause the High Court of Ireland to pull down that long-scheduled hearing.

On the heels of its preliminary injunction motion, Media Matters sought ex parte relief from the California court to prevent X from filing a motion for temporary restraining order in this Court. Judge Chhabria quickly denied that motion, "declin[ing] to take the drastic step of issuing an order that would effectively prevent another federal district court from ruling on a motion pending before it." ECF No. 28, Order Denying Request for Temporary Restraining Order, *Media Matters et al. v. X Corp. et al.*, No. 3:25-cv-02397, at 1 (N.D. Cal. Mar. 17, 2025). As the court pointed out, "it is for the Northern District of Texas to decide how to address that issue as it relates to the case pending before it. This presumably would include addressing whether Media Matters forfeited its right to assert the forum selection clause in the Texas case by waiting so long to file a motion based upon it." *Id.* at 1-2.

In that regard, at oral argument on the motion for preliminary injunction, Judge Chhabria immediately homed in on Media Matters' delay, demanding a forthright answer from Media Matters as to why delayed so long in invoking the forum selection clause in this Court. As to the foreign cases, counsel called it a "considered decision to make the best arguments in those

particular courts geared to those particular jurisdictions as to forum non conveniens that would be most applicable in those particular jurisdictions, Singapore and Ireland." Appx. 18. But as to the Northern District of Texas proceeding, counsel first claimed that Media Matters did not make the argument because "we were asserting that there was no jurisdiction to begin with." Appx. 14. When the Court pointed out the implausibility of that argument given that lawyers frequently "file motions to dismiss for lack of jurisdiction; to dismiss for lack of venue; and, in the alternative, to transfer or dismiss based on a forum selection clause" and that there "was no reason not to do that," counsel conceded that Media Matters had "no good explanation" as to why it failed to invoke the forum selection clause and seek transfer. *Id.* In a later hearing on X's motion to dismiss, counsel implausibly claimed that Media Matters' prior counsel "just missed" the issue, even though the forum selection clause was cited in Media Matters' brief in support of its motion to dismiss and even though Media Matters concededly made a "considered decision" not to invoke it in the foreign proceedings. Appx. 83.

## ARGUMENT AND AUTHORITIES

### I.    The Court Can Impose Sanctions by Statute, Rule, and the Court's Inherent Powers.

"Federal courts derive their power to sanction any attorney, law firm, or party from three primary sources": 28 U.S.C. § 1927, Rule 11 of the Federal Rules of Civil Procedure, and the inherent power of the court." *Collar v. Abalux, Inc.*, 2018 WL 3328682, at *9 (S.D. Fla. July 5, 2018). Taking each in turn, under 28 U.S.C. § 1927, any attorney who "so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "[S]anctions under § 1927 must be predicated on actions that are both 'unreasonable' and 'vexatious'" and thus require "evidence of bad faith, improper motive, or reckless disregard

– 9 –

of the duty owed to the court." *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998); *see also Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525 (5th Cir. 2002). These are overlapping but separate types of sanctionable conduct. An improper motive, for example, "does not necessarily refer to bad faith or intent to harass. Vexation implies something broader than that. To 'vex' is defined, among others things, as 'to bring trouble or distress to,' 'to subject to mental suffering,' or 'to irritate or annoy,' as well as 'to tease or torment.'" *Ratliff v. Stewart*, 508 F.3d 225, 235 n.13 (5th Cir. 2007). "The courts often use repeated filings despite warnings from the court, or other proof of excessive litigiousness, to support imposing sanctions." *Proctor*, 280 F.3d at 525.

Next, under Federal Rule of Civil Procedure 11, submissions to the court "must not be presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," and a party's legal contentions must be "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(1), (2). "[A]fter notice and a reasonable opportunity to respond," "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."[1] Fed. R. Civ. P. 11(c)(1).

"[I]n determining compliance *vel non* with each obligation, 'the standard under which an attorney is measured is an objective, not subjective, standard of reasonableness under the circumstances.'" *Whitehead v. Food Max of Mississippi, Inc.*, 332 F.3d 796, 802 (5th Cir. 2003) (citation omitted). "[F]iling excessive motions could constitute harassment proscribed by Rule 11, even if the motions were well-founded in law or fact." *Id.* at 805. The imposition of Rule 11

---

[1] Although X did not independently seek Rule 11 sanctions, the Court may on its own initiative "order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3).

sanctions is subject to abuse-of-discretion review because "the district judge is independently responsible for maintaining the integrity of judicial proceedings in his court and, concomitantly, must be accorded the necessary authority." *Id.* at 803. Courts may issue sanctions "where it is shown that the Rule was violated as to a portion of a pleading, even though it was not violated as to other portions." *Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir.1988); *cf. Hill v. Norfolk and Western Ry. Co.*, 814 F.2d 1192, 1200 (7th Cir. 1987) (noting that the Federal Rules of Appellate Procedure authorize "the imposition of sanctions for the part of an appeal that is frivolous even if the presence of a colorable ground prevents the entire appeal from being adjudged frivolous.").

Lastly, a "district court has the inherent authority to impose sanctions in order to control the litigation before it," *Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 460 (5th Cir. 2010) (cleaned up), including "the power to levy sanctions in response to abusive litigation practices," *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993). A "court may assess attorney's fees under its inherent powers when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons" but "must make a specific finding that the sanctioned party acted in bad faith in order to impose such sanctions." *Matta v. May*, 118 F.3d 410, 416 (5th Cir. 1997). There is "nothing in the other sanctioning mechanisms or prior cases interpreting them that warrants a conclusion that a federal court may not, as a matter of law, resort to its inherent power to impose attorney's fees as a sanction for bad-faith conduct." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991).

## II.    Under Any Standard, Media Matters' Conduct Is Sanctionable.

### A.    Media Matters' conduct is sanctionable under Section 1927.

Because the Supreme Court has suggested that courts should first look to statutes and rules before resorting to their inherent authority, *see id.* ("[W]hen there is bad-faith conduct in the course

of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power"), X begins with those sources. As an initial matter, Media Matters' counsel is subject to sanctions under Section 1927 because counsel "unreasonably and vexatiously" multiplied proceedings in this case. 28 U.S.C. § 1927. No one faults Media Matters for raising a venue argument at the outset of the case, even if it failed. But as Judge Chhabria pointed out at the preliminary injunction hearing, there was "no reason" for Media Matters *not* to invoke the forum selection clause and seek dismissal or transfer on that basis when it filed its Rule 12 motion. Appx. 14. That practice is "typical[]." ECF No. 190 at 7; *see also* Appx. 14 ("That's not – let's – be straight with me. I mean, people do that all the time."). Even Media Matters had little difficulty admitting that "certainly in retrospect, it would have been better to assert the argument at the beginning" of the case. Appx. 14.

In eschewing the "typical" approach and litigating for months in Texas with nary a word about the forum selection clause, Media Matters waived the right to transfer venue based on that clause. The Court has already so held, and that factual finding has ample support in the record. Most obviously, "Defendants previously cited to Plaintiff's terms of service without requesting a venue transfer." ECF No. 190 at 4-5. Thus, Media Matters' failure to argue that the forum selection clause governed here could not have been the result of Media Matters having merely overlooked the clause. Media Matters was evidently aware of it, and therefore, the failure to contend that it governed must have arisen from a belief by Media Matters or its then-counsel that the clause did not apply or a strategic decision not to invoke it at that time. And for the reasons X laid out in response to the motion, Media Matters would have been correct in its earlier conclusion that the clause does not apply. This is so because X's allegations in this case relate to Media Matters' false reporting, not conduct that may have violated the former terms of service. *See* ECF No. 168-3 at

16-19. In all events, Media Matters had "actual or constructive knowledge" of the clause and "actual intent" not to invoke it. *Hampton*, 736 F. App'x at 435.

This matters under Sections 1404 and 1406 because parties should generally move to dismiss or transfer venue as soon as they know of facts that would support such motions. *See Hirst v. Skywest, Inc.*, 405 F. Supp. 3d 771, 779 (N.D. Ill. 2019) ("'Generally, a motion to transfer should be made early in the proceeding,' as familiarity with both the procedural and substantive aspects of the case is lost with a transfer to another court." (citation omitted)). A party that knows of facts that would support a convenience-based argument under Section 1404, for example, should not wait until the end of discovery to raise it. *See Sambrano v. United Airlines, Inc.*, 707 F. Supp. 3d 652, 680 (N.D. Tex. 2023) (Pitman, J.) ("The Court would have gladly entertained this Motion two years ago when this litigation commenced, but [the] Motion comes after years of litigation and hundreds of case filings."). In these circumstances, it was facially and objectively unreasonable, not to mention legally unsupportable, for Media Matters to fail to seek a transfer at the outset of the case given its undisputed awareness of the existence of the forum selection clause.

Having waived the right to enforce the forum selection clause, Media Matters should have moved on to other issues in the case, as X advised. Instead, Media Matters steadfastly refused to accept its loss, first by requesting an interlocutory appeal; then, by filing a new, equally meritless venue motion; then, by filing an entirely new lawsuit in California. That Media Matters has come to regret what was, at worst, a "considered decision" of its prior counsel and, at best, a decision with "no good explanation" does not serve as a basis for Media Matters' successive venue motions. As the Fifth Circuit aptly put it just last week, "[l]awyers' work is careful work. Attention to detail is critical. A mistake that might be immaterial in other professions can be devastating for attorneys and their clients." *United States v. Davis*, No. 23-20475, 2025 WL 1417703, at *1 (5th Cir. May

– 13 –

16, 2025). Were Media Matters to prevail, "litigants could abuse the judicial process by first filing a Federal Rule of Civil Procedure 12(b)(3) motion to dismiss, then a motion for reconsideration, a motion for interlocutory appeal, and a motion for mandamus relief, all before invoking a forum selection clause." ECF No. 190 at 5. Parties could also then demand attorney's fees for their own failure to act diligently, as Media Matters is actively pursuing in the California matter. *Supra* pp. 7-9. X and the federal courts should not have to expend its resources making up for Media Matters' "mistakes."

Other courts have recognized that this sort of behavior cannot be tolerated. Consider *Schwebke v. United Wholesale Mortgage LLC*, 96 F.4th 971 (6th Cir. 2024), for example. The defendant there "failed to raise" a contractual right for the first "six-and-a-half months" of litigation, including "extensive discovery," solely because of attorney oversight; its counsel literally "told the district court that [the defendant] had not raised the arbitration clause earlier 'because [he] didn't know there was an arbitration clause'" in the first place. *Id.* at 973. But that "mistake d[id] not prevent [the court] from finding waiver" based on the defendant's inconsistent conduct. *Id.* at 977. Quite the opposite: Because parties are charged with constructive knowledge of documents they sign, *Consol. Edison Co. v. United States*, 221 F.3d 364, 371 (2d Cir. 2000) (collecting cases), acting "inconsistently" with a contractual right can amount to a knowing and intelligent waiver even without actual knowledge of the right. Williston on Contracts §§ 39:28, 39:30 (4th ed. 2024). Based on its egregious waiver, Media Matters' motion reflects "gamesmanship and delay well worth deterring" through sanctions. *See H.A.L. NY Holdings, LLC v. Guinan*, 958 F.3d 627, 637 (7th Cir. 2020) (granting motion for sanctions for costs of defending against meritless appeal).

As it was obligated to under this District's local rules, X made these points to Media Matters in the hope that it would refrain from filing an ill-advised motion that would needlessly burden the parties and the Court. *Supra* pp. 5-6. Media Matters was on notice, for instance, that the Fifth Circuit's "reasonable promptness" standard would be central to the Court's consideration of the motion, *Peteet*, 868 F.2d at 1436, and all the while knew that it had no "good explanation" for not raising the issue earlier. Appx. 18. Media Matters subsequently claimed that counsel "just missed" the forum selection clause argument. Appx. 83. But that is not plausible when Media Matters cited that very forum selection clause multiple times in its amended motion to dismiss. Whether framed as waiver or forfeiture, what matters most for purposes of Section 1927 is that Media Matters' transfer motion resurrected an issue that was already settled and necessitated re-litigation of the venue question when the parties were already actively working through ongoing discovery and related disputes. Accordingly, the motion "unreasonably and vexatiously" multiplied these already lengthy proceedings. 28 U.S.C. § 1927.

There is more. This was not the first time that Media Matters jammed up X and this Court with a meritless filing that should have been brought much sooner in the litigation. *Proctor*, 280 F.3d at 525; *supra* p. 4. In its earlier motion to compel a corrected certificate of interested persons, Media Matters sought "to force a backdoor recusal through their Motion to Compel." ECF No. 81 at 8. As the Court forewarned, "[g]amesmanship of this sort is inappropriate and contrary to the rules of the Northern District of Texas." *Id.* Media Matters did not heed the message. Sanctions under Section 1927 are thus appropriate to compensate X for the time it took to address Media Matters' belated motion to transfer, just as they were appropriate for X's time responding to the improper motion to compel an amended certificate of interested persons.

**B.    Media Matters' conduct is sanctionable under Rule 11.**

For closely related reasons, Media Matters' conduct is sanctionable under Rule 11. *See Ins. Benefit Adm'r v. Martin*, 871 F.2d 1354, 1361 (7th Cir. 1989) ("Rule 11, it has been observed, also may overlap with § 1927.").[2] Media Matters' reliance on the forum selection clause was both frivolous and brought for an improper purpose because Media Matters lacked any justification for its failure to seek a transfer on that basis earlier in the case. *See* Fed. R. Civ. P. 11(b)(1), (2). Applying an "objective standard of reasonableness under the circumstances," *Whitehead*, 332 F.3d at 802, Media Matters' motion was unreasonable. In one analogous case, the First Circuit affirmed sanctions on a party under Rule 11 for filing a motion to transfer when the timing of the motion indicated that it was improperly filed to cause unnecessary delay. *See Pathe Computer Control Sys. Corp. v. Kinmont Indus., Inc.*, 955 F.2d 94, 96 (1st Cir. 1992) ("[T]he timing of the motion is consistent with a last minute effort to delay a likely adverse decision on the merits of the case."). The Court should follow a similar approach here. Accordingly, if the Court declines to grant sanctions under Section 1927, sanctions would be appropriate under Rule 11 to "maintain[] the integrity of judicial proceedings" in this forum. *Whitehead*, 332 F.3d at 802.

**C.    Media Matters' conduct is sanctionable under the Court's inherent powers.**

Finally, the Court can sanction Media Matters' conduct through its inherent authority "to control the litigation before it," *Positive Software Solutions, Inc.*, 619 F.3d at 460, because Media Matters engaged in "abusive litigation practices," *In re Stone*, 986 F.2d at 902. Rarely has a party acknowledged in open court that it had no "good explanation" for an omission that would be

---

[2] Sanctions under Rule 11 may be imposed "on any attorney, law firm, or party that violated the rule or is responsible for the violation," whereas sanctions under Section 1927 may only be brought against the party's attorneys. 28 U.S.C. § 1927; *see Collar*, 2018 WL 3328682, at *9. X takes no position on how the Court should apportion any sanctions that it issues.

determinative of the success or failure of that party's filing. But that is exactly what happened here. The record is replete with evidence that Media Matters' reliance on the forum selection clause was unfounded and not raised in good faith. *May*, 118 F.3d at 416; *supra* pp. 3-9. That is more than enough to sustain sanctions under the Court's inherent authority to manage its own affairs.

## CONCLUSION

Following an opportunity for Media Matters to respond, the Court should order Media Matters (or its counsel) to pay X's costs for responding to its motion to transfer. X prays for any additional relief to which it may be entitled.

Dated: May 21, 2025

Respectfully submitted.

*/s/ Christopher D. Hilton*
Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
Ari Cuenin
Texas Bar No. 24078385
Elizabeth Brown Fore
Texas Bar No. 24001795
Michael R. Abrams
Texas Bar No. 24087072
Alithea Z. Sullivan
Texas Bar No. 24072376
Alexander M. Dvorscak
Texas Bar No. 24120461
Cody C. Coll
Texas Bar No. 24116214
**STONE HILTON PLLC**
600 Congress Ave., Ste. 2350
Austin, TX 78701
Telephone:(737) 465-3897
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
elizabeth@stonehilton.com
michael@stonehilton.com
alithea@stonehilton.com
alex@stonehilton.com
cody@stonehilton.com

John C. Sullivan
Texas Bar No. 24083920
**S|L LAW PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on May 21, 2025, a copy of this document was served on all counsel of record through the Court's CM/ECF system in accordance with the Federal Rules of Civil Procedure.

/s/ Christopher D. Hilton
Christopher D. Hilton