## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| **X CORP.,** | |
| *Plaintiff*, | |
| **v.** | **Civil Action No. 4:23-cv-01175-O** |
| **MEDIA MATTERS FOR AMERICA,** *et al.*, | |
| *Defendants*. | |

## DEFENDANTS' RESPONSE TO X'S MOTION FOR SANCTIONS

# <u>TABLE OF CONTENTS</u>

**Page(s)**

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................2

APPLICABLE LAW ..............................................................................................................4

ANALYSIS.............................................................................................................................5

     I.     Defendants filed their transfer motion only because they reasonably
believed (and continue to believe) it was meritorious. ...........................................5

          a)     X fails to show that Defendants' motion was frivolous, patently
meritless, or objectively unreasonable...........................................7

          b)     X cannot show Defendants filed their transfer motion for any
improper purpose. ...........................................................................9

          c)     X points to no authority saying that it was objectively
unreasonable to rely on a forum-selection clause, the waiver of
which was hotly disputed.................................................................11

          d)     X cites no directly relevant case law in support of its
unprecedented relief........................................................................13

     II.     On this record, it would be an abuse of discretion to sanction
Defendants for renewing a challenge to venue on legally and factually
solid grounds.........................................................................................................14

          a)     28 U.S.C. § 1927 provides no basis for the Court to sanction
Defendants for moving to transfer this case. ..................................15

          b)     Rule 11 provides no basis on which the Court may sanction
Defendants for moving to transfer this case. ..................................18

          c)     The Court's inherent authority should not be invoked under
these circumstances, and it also may not be used to sanction
Defendants for moving to transfer this case. ..................................21

CONCLUSION......................................................................................................................24

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Brooks v. United Dev. Funding III, L.P.*,
 2020 WL 6132226 (N.D. Tex. May 27, 2020) ........................................................4

*Browning v. Kramer*,
 931 F.2d 340 (5th Cir. 1991) ..................................................................15, 16

*Cappa Fund III v. Actherm Holding*,
 2011 WL 817384 (N.D. Tex. Feb. 21, 2011)........................................................8, 15

*Chambers v. NASCO, Inc.*,
 501 U.S. 32 (1991)..................................................................5, 21, 22

*Collar v. Abalux, Inc.*,
 2018 WL 3328682 (S.D. Fla. July 5, 2018) (cited at Mot. 9)...............................5, 13, 16, 20

*Dawson v. United States*,
 68 F.3d 886 (5th Cir.1995), X ..................................................................22

*Edwards v. Gen. Motors Corp.*,
 153 F.3d 242 (5th Cir. 1998) ..................................................................4, 16, 18

*Edwards Vacuum, LLC v. Hoffman Instrumentation Supply, Inc.*,
 2021 WL 2355405 (D. Or. June 9, 2021) ........................................................14, 17

*F.D.I.C. v. Calhoun*,
 34 F.3d 1291 (5th Cir. 1994) ..................................................................4, 18

*F.D.I.C. v. Maxxam, Inc.*,
 523 F.3d 566 (5th Cir. 2008) ..................................................................*passim*

*Goodyear Tire & Rubber Co. v. Haeger*,
 581 U.S. 101 (2017)..................................................................22

*Granader v. McBee*,
 23 F.3d 120 (5th Cir. 1994) ..................................................................21

*Gummow v. Snap-On Tools Co.*,
 2008 WL 4349027 (N.D. Tex. Sept. 22, 2008)........................................................6, 8

*In re Gillig*,
 807 F. Supp. 2d 604 (N.D. Tex. 2011) ..................................................................21

*In re Media Matters et al.*,
 No, 25-10630, ECF 2-1 (5th Cir., May 20, 2025) ..................................................................7

*In re Planned Parenthood*,
 52 F.4th 625 (5th Cir. 2022) ..................................................................7

*In re Radmax, Ltd.*,
 720 F.3d 285 (5th Cir. 2013) ..................................................................7

*In re Stone*,
    986 F.2d 898 (5th Cir. 1993) ...................................................................................23, 24

*In re TikTok, Inc.*,
    85 F.4th 352 (5th Cir. 2023)................................................................................................7

*Insurance Benefits Administrators v. Martin*,
    871 F.2d 1354 (7th Cir. 1989)......................................................................15, 18, 19, 20

*Maguire Oil Co. v. City of Houston*,
    143 F.3d 205 (5th Cir. 1998) ...............................................................................5, 22, 23

*Matta v. May*,
    118 F.3d 410 (5th Cir. 1997) ...............................................................................5, 13, 22

*Matta v. May*,
    118 F.3d410 (5th Cir. 1997) ................................................................................4, 18, 22

*Miller v. Dunn*,
    2024 WL 1303942 (N.D. Tex. Mar. 27, 2024) ................................................................22, 23

*MMFA et al. v. X Corp.*,
    25-10630, ECF 2-1 (5th Cir, May 20, 2025) ...........................................................3, 6, 10, 17

*MMFA et al. v. X Corp.*,
    25-10630, ECF 24 (5th Cir, May 28, 2025)................................................................................3

*Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*,
    2 F.3d 1397 (5th Cir. 1993) ................................................................................................24

*Nat'l Ass'n of Gov't Emps., Inc. v. Nat'l Fed'n of Fed. Emps.*,
    844 F.2d 216 (5th Cir. 1988) (district court's imposition of sanctions under §
    1927 reversed because the litigation was not "frivolous") ....................................................15

*Pathe Computer Control Sys. Corp. v. Kinmont Indus., Inc.*,
    955 F.2d 94 (1st Cir. 1992)....................................................................................13, 14, 19

*Patterson v. Aiken*,
    841 F.2d 386 (11th Cir. 1988) ...........................................................................................19

*Peteet v. Dow Chemical Co.*,
    868 F.2d 1428 (5th Cir. 1989) .............................................................................................7

*Positive Software Sols., Inc. v. New Century Mortg. Corp.*,
    619 F.3d 458 (5th Cir. 2010) ...............................................................................5, 14, 24

*Procter & Gamble Co. v. Amway Corp.*,
    280 F.3d 519 (5th Cir. 2002) (§ 1927 "construed it in favor of the sanctioned
    party") ....................................................................................................................4, 15, 17

*Ratliff v. Stewart*,
    508 F.3d 225 (5th Cir. 2007) ........................................................................... *passim*

*Redd v. Fisher Controls*,
    147 F.R.D. 128 (W.D. Tex. 1993) .......................................................................................21

*Schwebke v. United Wholesale Mortgage*,
    96 F.4th 971 (6th Cir. 2024) ..............................................................................12

*Smith v. Our Lady of the Lake Hosp., Inc.*,
    960 F.2d 439 (5th Cir. 1992) ..............................................................................9

*Watson v. Fieldwood Energy Offshore*,
    181 F. Supp.3d 402 (S.D. Tex. Feb. 1, 2016) ..............................................1, 9

*Whitehead v. Food Max*,
    332 F.3d 796 (5th Cir. 2003) ........................................................................20, 21

*Williams v. Fidelity Warranty Sevs.*,
    2020 WL 2086655 (S.D. Tex. Apr. 30, 2020) ....................................................12

**Statutes**

21 U.S.C. § 853(n) ........................................................................................................13

28 U.S.C. § 1406 ................................................................................................3, 5, 8, 10

28 U.S.C. §1927 ....................................................................................................*passim*

**Rules**

FED. R. APP. P. 48 ........................................................................................................17

FED. R. CIV. P. 11 ..................................................................................................*passim*

## INTRODUCTION

When this Court denied Defendants' motion to certify its jurisdiction and venue rulings for immediate appeal, it observed that "as it relates to venue, Defendants admit that 28 U.S.C. § 1406 allows a renewed challenge to venue as the 'evidentiary record develops.'" ECF 134 at 3 (quoting ECF 94). The evidentiary record did develop and laid bare the continued lack of connection to this District, and so Defendants did just that. They moved under both § 1404 and § 1406—which do "not contain a deadline for filing the motion to transfer venue," *Watson v. Fieldwood Energy Offshore*, 181 F. Supp.3d 402, 411 n.7 (S.D. Tex. Feb. 1, 2016)—to transfer this case to the Northern District of California for, among other things, evidentiary and convenience factors. This Court disagreed with Defendants' legal arguments and denied that motion due to delay. But "a sanctioning court [must] do more than disagree with a party's legal analysis," and so none of Defendants' colorable arguments warrants sanctions under any standard. *Ratliff v. Stewart*, 508 F.3d 225, 236 (5th Cir. 2007) (reversing a fee award).

Defendants filed their transfer motion for one reason only—they thought it was meritorious. And a finding of sanctionable behavior for filing a motion to transfer venue under these circumstances would chill legitimate and routine advocacy—especially on an issue (venue) that Defendants have indisputably contested from the beginning of the case.

In response to the Court's invitation to comment on the possibility of sanctions, X seeks unprecedented relief while failing to provide any reasonable basis for a sanctions award. X does not allege that Defendants misrepresented any facts or law. Nor does X offer any evidence that Defendants filed their brief for any improper purpose. X does not cite a single case in which any court sanctioned a party for asserting rights under a forum-selection clause that the court ultimately

1

determined the party waived. And X does not cite any case in which a court sanctioned a defendant for having waited too long to file a motion to transfer under § 1404(a) or § 1406(a).

There is no reasonable legal or factual basis for the Court to be the first to sanction a defendant for moving to transfer venue. Respectfully, the Court should deny X's motion in full.

## **BACKGROUND**

As the Court is aware, Defendants have hotly contested venue since the very beginning of this suit. X originally alleged venue was proper in the Northern District of Texas even though no party to the lawsuit—or any of the many advertisers mentioned in the complaint—was based there because Defendants' reporting "threatened X Corp.'s relationships with its hundreds of millions of users, including millions of Texas users," and because X advertised and conducted business[1] in the District. ECF 1 at 5–6, ¶ 19. Defendants immediately moved to dismiss for lack of jurisdiction and improper venue and because X failed to state a claim. ECF 31. Defendants moved to stay discovery until the Court resolved that motion. ECF 35. X then amended its complaint asserting completely different bases for jurisdiction and venue, arguing that Defendants willfully and maliciously targeted advertisers based in Texas and raising, for the first time, AT&T, an advertiser based in Dallas that Defendants' reporting never mentioned. ECF 37 at 7–10.

Defendants again moved to dismiss X's pleading for lack of jurisdiction, improper venue, and failure to state a claim, (ECF 41), and moved to stay discovery while their motion was pending, (ECF 43). The Court denied the motion to stay discovery but acknowledged that the venue determination was a close call: "this disagreement about whether or not a substantial part of the relevant activities occurred in the Northern District warrants careful review." ECF 54 at 5. The

---

[1] X's allegation that it conducted "business" in the district appears to be only that it offered services there, just as it does all over the world. X has never alleged that it maintains any offices or other presence in the Northern District of Texas.

Court denied Defendants' motion to dismiss on August 29, 2024, finding venue proper solely because of X's allegation that Defendants' reporting "targeted" AT&T, which is headquartered in this District, even though Defendants' reporting never mentioned AT&T. ECF 82 at 12.

Immediately, Defendants moved to certify interlocutory appeal of the Court's jurisdictional and venue determinations. EC 94. On January 2, 2025, the Court denied the motion, and noted that "facts establishing personal jurisdiction and venue continue to be developed," explaining that X maintained the burden of showing jurisdiction "throughout the lawsuit." ECF 134 at 2–3. With respect to venue in particular, the Court advised that further challenges to venue may be appropriate as discovery continued: "Additionally, as it relates to venue, Defendants admit that 28 U.S.C. § 1406 allows a renewed challenge to venue as the 'evidentiary record develops.'" ECF 134 at 3 (quoting ECF 94). On January 31, X served revised interrogatory responses that confirmed no advertisers—including the additional ones it added—had a connection to this Division. ECF 153-2 at 100–04.

Defendants accepted the Court's invitation to raise a renewed venue challenge, rather than seeking mandamus relief. Defendants also retained new counsel who concluded in preparing the motion that X's claims fall squarely within the broad California forum-selection clause in X's terms of service. *See* ECF 153-1. On March 6, 2025, Defendants moved to transfer venue under § 1404(a), or to transfer or dismiss under § 1406. The Court denied the motion on May 5, 2025, determining that Defendants waived the right to assert the forum-selection clause, that Defendants waited too long to seek transfer for convenience and justice, and that the new venue evidence did not change the Court's venue analysis. ECF 190. But Defendants believed—and continue to believe—that their transfer motion is meritorious.

Accordingly, Defendants promptly filed a mandamus petition regarding this Court's venue

3

decision. *MMFA et al. v. X Corp.*, 25-10630, ECF 2-1 (5th Cir, May 20, 2025). Exercising its discretionary authority, the Fifth Circuit called for a response to the mandamus petition. *MMFA et al. v. X Corp.*, 25-10630, ECF 24 (5th Cir, May 28, 2025). Regardless of the ultimate outcome of that petition, both the original, underlying motion, and the mandamus petition present credible, good faith legal arguments that fall well within counsel's ethical responsibilities to zealously advocate on behalf of their clients.

## APPLICABLE LAW

### 28 U.S.C. § 1927

"Because of the punitive nature of § 1927 sanctions, and in order not to chill legitimate advocacy, the provision must be strictly construed." *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998); *see also Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 526 (5th Cir. 2002) (§ 1927 "construed it in favor of the sanctioned party").

Sanctions under § 1927 require a finding that defense counsel's actions were "unreasonable" ***and*** "vexatious," *Edwards*, 153 F.3d at 246, and failure to "differentiate between § 1927's two prongs" in awarding fees is reversible error, *see Ratliff*, 508 F.3d at 236.

### Rule 11

Imposing sanctions under Rule 11 is an "extraordinary remedy, one to be exercised with extreme caution." *Brooks v. United Dev. Funding III, L.P.*, 2020 WL 6132226, at *3 (N.D. Tex. May 27, 2020).

To be sanctionable as "frivolous" under Rule 11, it must be "so obvious" that the litigant's legal position was wrong "that under the circumstances it was unreasonable to" make the argument. *F.D.I.C. v. Calhoun*, 34 F.3d 1291, 1299 (5th Cir. 1994); *see Matta v. May*, 118 F.3d 410, 415 (5th Cir. 1997) (eventual failure of claim not enough).

A "district court is not to read an ulterior motive into a document well grounded in fact and law," and it may do so only in "exceptional cases" where "the improper purpose is objectively ascertainable" and "the sanctioned party would not have acted as he did in the absence of the improper purpose." *F.D.I.C. v. Maxxam, Inc*., 523 F.3d 566, 581, 584–85 (5th Cir. 2008) (cleaned up).

**Court's Inherent Authority**

Inherent power "may be exercised only if essential to preserve the authority of the court . . . ,"*id*., and only as a last resort, when "neither the statute nor the Rules are up to the task," *see Chambers v. NASCO, Inc*., 501 U.S. 32, 50 (1991). The Fifth Circuit reviews "de novo" a "district court's invocation of its inherent power." *Positive Software Sols., Inc. v. New Century Mortg. Corp*., 619 F.3d 458, 460 (5th Cir. 2010).

"[O]nce the power is invoked, it must be exercised with restraint and discretion." *Maguire Oil Co. v. City of Houston*, 143 F.3d 205, 209 (5th Cir. 1998) (cleaned up). Absent "a specific finding that the sanctioned party acted in bad faith," the imposition of such sanctions is an abuse of discretion. *Matta,* 118 F.3d at 416.

## ANALYSIS

I.  **Defendants filed their transfer motion only because they reasonably believed (and continue to believe) it was meritorious.**

Defendants reasonably believed that the challenged motion was meritorious and there is no reasonable factual basis to conclude otherwise.. X wrongly suggests that the Court's disagreement with Defendants' legal analysis should serve as the basis for sanctions here, (Mot. 5–6, 12–13), but under the applicable legal standards that is not enough. *Ratliff*, 508 F.3d at 236 (§ 1927); *Collar v. Abalux, Inc*., 2018 WL 3328682, at *9 (S.D. Fla. July 5, 2018) (Rule 11) (cited at Mot. 9, 16); *see Matta,* 118 F.3d at 415 (Court's inherent authority).

5

Defendants moved to transfer venue because (1) X flouted its contractual obligation to file this lawsuit in California under its own Terms of Service; (2) it would be far more convenient under every relevant § 1404(a) consideration for this case to be tried in California; and (3) § 1406 allowed for a renewed venue challenge when X added more evidence to the mounting pile of evidence that this lawsuit "should have been filed in California." *Media Matters for America, et al. v. X. Corp., et al.*, 3:25-cv-02397 ("*MMFA*"), ECF 56 at 2.

In the challenged motion, Defendants carefully analyzed X's forum-selection clause, explaining why it covered X's claims. ECF 153-1 at 4–12. Defendants considered each of the § 1404(a) *Volkswagen* factors, too, arguing for transfer based on convenience and justice. ECF 153-1 at 18–21. Defendants then identified discovery, in support of their § 1406(a) motion, directly refuting X's allegations that venue was proper because Defendants targeted AT&T. ECF 153-1 at 24. That discovery suggested, among other things, that "AT&T has no connection to this district because most of the key X and AT&T witnesses involved in advertising decisions are not based in Texas and many are based in California." ECF 153-1 at 22.

Nothing about the timing of Defendants' motion was so improper as to be sanctionable. This is because transfer motions often need factual development, and are sometimes denied when the party seeking transfer fails to develop a sufficient record to justify its request. Indeed, this Court previously has denied motions to transfer venue under such circumstances. *Gummow v. Snap-On Tools Co.*, 2008 WL 4349027, at *5 (N.D. Tex. Sept. 22, 2008).

Defendants moved to transfer weeks after discovering new facts that strengthened their case for transfer, and 63 days after this Court recognized Defendants' ability to renew a challenge on venue grounds as the evidentiary record developed through discovery. ECF 134 at 3. In their opening brief, Defendants addressed the timing of their motion and explained why delay should

not be a dispositive consideration in their case. ECF 153-1 at 21–23. Defendants cited *Peteet*'s "reasonable promptness" standard, (ECF 153-1 at 23 (citing *Peteet v. Dow Chemical Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989)), and devoted an entire subsection of their brief to addressing delay (ECF 153-1 at 21–24 ("Defendants Motion to Transfer is Timely")). In their reply, Defendants cited Fifth Circuit precedent establishing that delay in filing a § 1404 motion is just one factor that weighs against transfer. ECF 172-1 at 8 (citing *In re Horseshoe Entertainment*, 337 F.3d 429, 434 (5th Cir. 2003)). Defendants' belief that consideration of all relevant factors warranted transfer was reasonable, even if the Court ultimately disagreed and declined to transfer.

### a)    *X fails to show that Defendants' motion was frivolous, patently meritless, or objectively unreasonable.*

X cannot show that Defendants' motion was so blatantly frivolous as to be sanctionable. In fact, X did not at all argue that Defendants' request to transfer for convenience and justice or under § 1406(a) was sanctionable because they were not. X does not and cannot argue that any part of Defendants' arguments regarding the *Volkswagen* factors that courts must consider in deciding at § 1404(a) motion to transfer warrant sanctions. As Defendants' briefing set forth, those factors are a landslide in favor of transfer. *See In re Media Matters et al.*, No, 25-10630, ECF 2-1, at 3, 28 (5th Cir., May 20, 2025). X attempted to argue that the *Volkswagen* factors favor transfer by arguing that X's post-suit changes to its headquarters and choice-of-law clause turn a California dispute into a Texas one in which Texas law applies, but Defendants demonstrated that X had correctly argued in numerous prior cases that its post-suit move to a different District in Texas was irrelevant. ECF 172-1 at 12.

Instead, X's briefing points to Defendants' delay in filing their transfer motion as the sole justification for sanctions. But as the Fifth Circuit has repeatedly observed, delay is just one factor to consider in a § 1404(a) transfer motion. *See In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023);

*In re Radmax, Ltd.*, 720 F.3d 285, 289 (5th Cir. 2013); *In re Planned Parenthood,* 52 F.4th 625, 631 (5th Cir. 2022); *Peteet*, 868 F.2d at 1436. In contrast, X does not cite a single case in which the Fifth Circuit disregarded the *Volkswagen* factors and denied a motion to transfer based solely on a party's delay in filing the motion. It was certainly reasonable of Defendants to believe that—because no factor other than delay favored this District—a transfer motion was justified, even if the Court ultimately disagreed.

With respect to Defendants § 1406(a) arguments, Defendants moved to transfer because in denying Defendants' motion to certify an immediate appeal of the jurisdiction and venue issues the Court observed that "facts establishing personal jurisdiction and venue continue to be developed" and "28 U.S.C. § 1406 allows a renewed challenge to venue as the 'evidentiary record develops.'" ECF 134 at 3 (quoting ECF 94). The Court found venue proper after X amended its Complaint to add a new allegation that Defendants targeted AT&T in their reporting. Defendants filed a renewed motion to transfer or dismiss under § 1406(a) because discovery has shown that any argument Defendants targeted AT&T was illusory, for all the reasons set forth in Defendants' brief.[2] ECF 153-1 at 25. The Court disagreed, but X has not argued that Defendants' arguments were sanctionable.

A renewed venue challenge is plainly permissible. *See* 28 U.S.C. § 1406. For example, in *Coleman v. Mobil Oil Corp.*, a litigant successfully filed "a motion to reconsider the court's action in denying its prior motion to transfer. Unlike the initial motion, this time the defendant presented various substantial factual bases for the granting of its renewed motion." 643 F. Supp. 1104, 1105 (E.D. Tex. 1986). This is because transfer motions often need factual development, and are

---

[2] The details set forth in Defendants' motion to transfer implicate information that X has marked as either Confidential or Highly Confidential, and are incorporated here by reference to avoid another sealed filing.

sometimes denied when the party seeking transfer fails to develop a sufficient record to justify its request. *Gummow*, 2008 WL 4349027, at *5 ("The record is not yet adequately developed for consideration of applicable law as a determinative factor."); *see also Cappa Fund III v. Actherm Holding*, 2011 WL 817384, at *5 (N.D. Tex. Feb. 21, 2011) (recounting that in "denying CAPPA's motion to transfer venue, the Court expressly noted that 'the facts are not fully developed'").

X unfairly faults Defendants for not citing any case requiring them to "wait for the Court's order on interlocutory appeal." Mot 6. Defendants of course could have moved to transfer when they moved to dismiss for improper venue, but nothing in the venue statute required Defendants to do so—especially given this Court's admonitions in prior cases denying motions to transfer venue before facts are more fully developed. The statute "does not contain a deadline for filing the motion to transfer venue." *Watson*, 181 F. Supp.3d at 411 n.7.

Out-of-circuit district courts might conclude that "[g]enerally, a motion to transfer should be made early in the proceeding," Mot. 13 (quoting *Hirst v. Skywest, Inc.*, 405 F. Supp. 3d 771, 779 (N.D. Ill. 2019)), and it might be (*arguendo*) that Defendants' approach is not "typical." Mot. 6, 12. But X is unable to cite a single case where a litigant was sanctioned for failing to do as others "generally" and "typically" might. That is because such a case does not exist. *Cf. Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 448 (5th Cir. 1992) ("A suit is generally not sanctionable where founded in law and fact.").

b)  **X cannot show Defendants filed their transfer motion for any improper purpose.**

X's brief failed to raise any real argument that Defendants filed their motion for delay, or for any reason other than the fact that Defendants reasonably believed it to be meritorious. X summarily said that "Media Matters knew its reliance on the [forum-selection] clause served no purpose other than delay, but nonetheless proceeded with its motion," (Mot. 6), but X offered no

support for its argument. X did not even suggest that Defendants' motion delayed resolution of this case, nor could it have. X also did not argue that Defendants would benefit from increasing the cost of this litigation compared to its much larger adversary. X did not argue or present any evidence that Defendants' motion was meant to harass X. Nor did X argue or present any evidence that Defendants stopped taking part in ongoing discovery while the motion to transfer venue was pending. Indeed, there is no evidence at all to suggest that Defendants would have benefited in any way from their motion to transfer *unless it was actually granted*.

There is also no evidence that Defendants filed their motion for "gamesmanship." Mot. 6, 14. X argued that "based on the unusual timing of the motion, Media Matters appears to have waited to 'learn which way the wind was blowing' before requesting transfer," but X offered no support for its argument. Mot. 6 (quoting *Edwards Vacuum, LLC v. Hoffman Instrumentation Supply, Inc.*, 2021 WL 2355405, at *6 (D. Or. June 9, 2021)). As Judge Chhabria concluded— facing the similar "egregious waiver" arguments X raises here, (ECF 210 at Tab 2; Mot. 14), and addressing the forum selection clause—"any delay does not appear to be the product of gamesmanship on the part of counsel for Media Matters," (*MMFA*, ECF 56 at 1–2).

There is no support for that argument because Defendants have always objected to venue in this Court and have never consented to having this Court resolve this dispute. *See* Mot. 14–15. Defendants' very first pleadings challenged jurisdiction and venue. ECF 31. Defendants twice move to stay discovery while the Court resolved their jurisdictional and venue challenges. ECF 35, 43. Defendants moved for an order certifying the jurisdictional and venue challenges for appeal after the Court denied Defendants' motion to dismiss. ECF 93. Defendants considered seeking mandamus relief of the denial of the motion to dismiss for lack of venue, as X acknowledged (Mot. 4; ECF 120 at 1), but ultimately declined to do so, based in no small part on

the Court's invitation to file a renewed challenge to venue under §1406 as the evidentiary record develops. ECF 134 at 3.

      c)      ***X points to no authority saying that it was objectively unreasonable to rely on a forum-selection clause, the waiver of which was hotly disputed.***

With respect to the forum-selection clause, Defendants reasonably believed that they had not intentionally waived the right to asset the forum-selection clause. The parties agree that the waiver standard required evidence that Defendants intentionally relinquished their right to enforce the forum-selection clause, they simply disagree as to whether such evidence exists here. *See* ECF 172-1 at 4; ECF 168-3 at 5.

Counsel has unequivocally confirmed it was *not* the case that Defendants' "lawyers discussed asserting the forum selection clause and decided not to." ECF 210 at 18; *cf.* Mot. 1, 15. With respect to asserting the forum-selection clause "[i]n the foreign actions," "it was a considered decision to make the best arguments in those particular courts geared to those particular jurisdictions as to forum non conveniens that would be most applicable in those particular jurisdictions, Singapore and Ireland." ECF 210 at 18; *see* Mot. 1.That is, Defendants' foreign counsel sought to raise the arguments relevant in, and tailored to, the foreign courts, and this does not establish waiver.

Further, Defendants *always* asserted that venue was improper in this Court. ECF 153-1 at 21–23. Defendants denied they had invoked the jurisdiction of the Court by filing a motion to dismiss and participating in discovery because (1) Defendants' motion to dismiss primarily challenged jurisdiction and venue and was completely consistent with Defendants' later motion to transfer; (2) Defendants only participated in discovery after the Court denied their motion to stay discovery while the motion to dismiss was pending; (3) Defendants moved to transfer venue shortly after the Court denied interlocutory appeal of the motion to dismiss, finally resolving it;

and (4) "a perfunctory motion to dismiss before an answer is filed" typically does not invoke the judicial process. *Williams v. Fidelity Warranty Sevs.*, 2020 WL 2086655 (S.D. Tex. Apr. 30, 2020) (cleaned up); *accord* ECF 172-1 at 5.

Defendants reasonably believed that they could still invoke the forum-selection clause because they had not engaged in any overt act in court that evinced a desire to have this Court resolve their dispute. *See Hampton v. Equity Tr. Co.*, 736 F. App'x 430, 435 (5th Cir. 2018) ("To invoke the judicial process, a party must, at the very least, engage in some overt act in court that evinces a desire to resolve the dispute through litigation.") (cleaned up). Far from it. At every step, Defendants have contested venue and jurisdiction, proceeding to and participating in the merits of discovery after this Court denied Defendants' motions to stay.

X argues that Defendants were objectively unreasonable in raising the forum-selection clause because they should have known they had forgone their right to do so, given that *Schwebke v. United Wholesale Mortgage*, 96 F.4th 971 (6th Cir. 2024), found waiver. Mot. 13–14. Indeed, in *Schwebke*, a different circuit court, looking at a different contract, applying Michigan law (not applicable here), under different facts, found waiver. But nothing about *Schwebke*, a nonbinding case that X did not even cite in its opposition to Defendants' motion to transfer, conclusively precluded Defendants from arguing that they had not waived their rights under their forum-selection clause when they filed their motion.

X also looks to a Second Circuit decision before declaring that "acting inconsistently with a contractual right can amount to a knowing and intelligent waiver even without actual knowledge of the right." Mot. 14 (citing *Consol. Edison Co. v. United States*, 221 F.3d 364, 371 (2d Cir.

2000)). But this nonbinding precedent[3] also cannot warrant a finding that Defendants' arguments about the forum-selection clause were patently meritless. *See Ratliff* 508 F.3d at 234.

To be sure, X also recites all the Fifth Circuit cases to which X and the Court cited in concluding that "Media Matters waived the right to enforce the forum selection clause under both frameworks that the Fifth Circuit has applied." Mot. 5. But X does not explain why any of these cases makes it objectively unreasonable for Defendants to have litigated a hotly contested issue, and the Court cannot sanction counsel "merely for zealous advocacy or for being on the losing side of a case." *Collar*, 2018 WL 3328682, at *9; *see also Ratliff*, 508 F.3d at 236; *Matta*, 118 F.3d at 415. The Court disagreed with Defendants (ECF 190 at 5), but that does not make Defendants' arguments objectively unreasonable.

### d) <u>X cites no directly relevant case law in support of its unprecedented relief.</u>

The relief X seeks is unprecedented. X does not cite a single case in which any court sanctioned a party for asserting rights under a forum-selection clause that the court ultimately determined the party waived. Nor does X cite any case in which a Court sanctioned a defendant for having waited too long to file a motion to transfer under § 1404(a) or § 1406(a). X cites just one out-of-circuit case in which a court sanctioned a party for filing a motion to transfer under § 1404, *Pathe Computer Control Sys. Corp. v. Kinmont Indus., Inc.*, 955 F.2d 94, 96 (1st Cir. 1992), but that case is inapposite.

---

[3] X does rely on one Fifth Circuit case to make its point that "[h]aving waived the right to enforce the forum-selection clause, Media Matters should have moved on to other issues in the case." Mot. 13. That is *United States v. Davis*, where Fifth Circuit affirmed a district court's conclusion that Gravity Capital signed a petition, as required under 21 U.S.C. § 853(n), "on behalf of the wrong entity" and that, consequently, "any asserted property interest is forfeited." 2025 WL 1417703, at *1 (5th Cir. May 16, 2025). That case has nothing to do with this one.

13

The *Pathe* court sanctioned the *plaintiff* for baselessly moving to transfer for convenience *from its own chosen forum* to one that did not have jurisdiction over the defendant, after the close of discovery, after the defendant filed a motion for summary judgment, and after "the weakness of [plaintiff's] substantive claims had become apparent." *Id*. at 96. The First Circuit affirmed the grant of sanctions for the motion to transfer after finding that it was filed only for purposes of delay. *Id*. at 99.

This case is nothing like *Pathe*. Defendants are not seeking to change their own chosen forum in the face of a dispositive motion. Defendants sought to transfer the case from one in which jurisdiction and venue are questionable and—as this Court acknowledged—warrant careful review, to a clearly more convenient forum where jurisdiction and venue could not be disputed. Unlike in *Pathe*, Defendants did not choose this venue and have *always* challenged venue in this Court, when they raised related arguments in support of their first motion to dismiss, (ECF 31), their second motion to dismiss, (ECF 38), and their motion seeking certification of an interlocutory appeal on their venue challenges, (ECF 93). Defendants had already spent much time fighting venue before filing their motion. *Cf. Hoffman,* 2021 WL 2355405, at *6.

## II.        <u>On this record, it would be an abuse of discretion to sanction Defendants for renewing a challenge to venue on legally and factually solid grounds.</u>

X's brief fails to "specify clearly under what authority each aspect of [Defendants] conduct" might be sanctionable, *Positive Software Sols*., 619 F.3d at 461, (*cf.* Mot. 16 & n.2), because under 28 U.S.C. § 1927, (Mot. 12, 15, 16), Fed. R. Civ. P. 11, (Mot. 10, 16), or the Court's inherent authority (Mot. 16), no aspect of Defendants' motion to transfer is sanctionable.

a)   **28 U.S.C. § 1927 provides no basis for the Court to sanction Defendants for moving to transfer this case.**

i)   *Defendants' motion to transfer venue was not patently meritless, and this ends the § 1927 inquiry.*[4]

Defendants' motion to transfer venue was supported by a well-researched brief, relying on applicable legal precedent to raise three independent arguments, (ECF 153-1 at 3–5), and that brief accurately represented all relevant facts to the Court. *See supra* at 5–11. X does not meaningfully argue against any of this, and sanctions pursuant to § 1927 are thus improper because Defendants' motion to transfer venue was admittedly not "patently meritless," *Browning v. Kramer*, 931 F.2d 340, 345 (5th Cir. 1991), nor was it "baseless" or "objectively unreasonable," *Cappa Fund III*, 2011 WL 817384, at *6 (denying § 1927 sanctions); *see also Nat'l Ass'n of Gov't Emps., Inc. v. Nat'l Fed'n of Fed. Emps.*, 844 F.2d 216, 222 (5th Cir. 1988) (district court's imposition of sanctions under § 1927 reversed because the litigation was not "frivolous").

*Procter & Gamble* reversed a § 1927 sanctions award because "the court did not identify which legal claims lacked all merit," just as X has failed to do here. 280 F.3d at 531 (cited at Mot. 10,15). That Defendants might not have done as others generally and typically might, (Mot. 6, 12), is not enough to warrant sanctions. In *Martin*, the Seventh Circuit reversed an imposition of § 1927 sanctions because the district court improperly based the award on a lawyer's "lost . . . opportunity to settle [the] case." *Insurance Benefits Administrators v. Martin*, 871 F.2d

---

[4] X's motion focuses almost entirely on arguing that only a portion of Defendants' filing—the forum-selection clause argument—is sanctionable. *See* Mot. 11 (addressing sanctions on "a portion of a pleading"); Mot. 12–13, § 1927 (focusing on forum selection clause); Mot. 16, Rule 11 (same); Mot. 17, Court's Inherent Authority (same). But X fails to explain how its actual "costs for responding to its motion to transfer," (Mot. 17), in full, might be comprised of "excess costs," related to a "portion of a pleading" under § 1927. And this alone is fatal to X's request under this statue because X's vague ask for "costs" gives the Court no discernable way to "justify the amount of the sanctions" or to explain how these are tied to the multiplication of proceedings caused by the allegedly vexatious conduct, as it must. *Procter & Gamble,* 280 F.3d at 529.

1354, 1361 (7th Cir. 1989) (cited at Mot. 16). Although not every lawyer might generally or typically lose an "opportunity to settle [the] case," such conduct was not sanctionable, *id.*, and neither is Defendants' conduct.

*Ratliff*, by contrast, affirmed § 1927 sanctions where it was "not even a close question . . . Ratliff's attorneys had misused the judicial process by failing to verify that they had sued the correct defendant." 508 F.3d at 234. X points to no comparable legal or factual mistake in Defendants' arguments because none exists. Defendants' motion to transfer venue was thus not objectively unreasonable, and any sanctions imposed pursuant to § 1927 are an abuse of discretion. *Edwards*, 153 F.3d at 246. Both prongs of the statute must be met to warrant sanctions, and the first is not. That ends the § 1927 analysis. *See* Mot. 9–10 (citing *Edwards*, 153 F.3d at 246).

*ii)*   *Defendants' motion to transfer venue was not filed vexatiously or for some improper purpose.*

But even if the Court disagrees that Defendants' actions were not objectively unreasonable, Defendants have not "continually reasserted" any claims "after the district court conclusively rule[d] them to be" preempted. *See Browning*, 931 F.2d at 345. None of the issues raised in the challenged motion had been ruled on when Defendants filed it.

By contrast, in *Edwards*, "the sanctioned attorney continued to maintain her case in federal court long after she realized it had no merit." 153 F.3d at 244 (cited at Mot. 10). The record in *Edwards* was "littered with indications that Crampton abandoned her suit, but willfully required GM to continue to defend it, and required the court to continue to consider its merits." *Id*. at 246; *see also Ratliff*, 508 F.3d at 235 (failure to verify that correct defendant was sued even after defendant repeatedly warned of mistake was vexatious because of reckless disregard).

The Court cannot infer vexatious conduct from the fact that X's arguments were eventually victorious. Mot. 13. *Trinity Gas v. City Bank of Natchitoches* reversed a § 1927 sanctions award

because a litigant did not "vexatiously multip[ly] the proceedings" by refusing to withdraw a pleading when faced with a summary judgment motion—even though the summary judgment motion was eventually victorious. 54 F. App'x 591, 2002 WL 31730186, at *1, 2 (5th Cir. 2002); *see also Collar*, 2018 WL 3328682, at *9 (cited at Mot. 9, 16).

The timing of the challenged motion also did not vexatiously multiply the proceedings. As the record shows, Defendants challenged venue many times before. *See* Mot. 14–15. Distinctly unlike in *Hoffman*, where the moving party had asserted counterclaims that it did not want resolved by the same jury, and the only reason for the delay was "question of one versus two jury trials," *Hoffman*, 2021 WL 2355405, at *6, Defendants wanted, from the get-go, one jury trial in the forum where this case "should have been filed," *MMFA*, ECF 56 at 2.

Moreover, in assessing whether to impose sanctions under § 1927, the *Tobinick* court noted "that Plaintiffs' counsel were not involved in this litigation from its inception to its conclusion, and is therefore inclined to offer them the benefit of the doubt." 207 F. Supp. 3d at 1344, *aff'd*, 884 F.3d 1110 (11th Cir. 2018). Likewise, this Court must also "interpret § 1927 as penal and construe it in favor of the sanctioned party." *Procter & Gamble*, 280 F.3d at 526 (cited by Mot. 9,15).

X cites to *H.A.L. NY Holdings v. Guinan*, for the proposition that Media Matters' motion reflects "gamesmanship and delay well worth deterring" through sanctions. Mot. 14 (citing 958 F.3d 627, 637 (7th Cir. 2020)). The Seventh Circuit in that case addressed sanctions under Fed. R. App. P. 48 in connection with an appeal that was "objectively frivolous from beginning to end." *Id*. The "gamesmanship" alluded to involved an appellant who "after telling the district court that state law is irrelevant . . . now insists that if we do not reverse, only certification to the state supreme court can resolve this case." *Id*. *Guinan* emphasized that "[w]hat is sanctionable is not

merely repeating a losing argument," but the appellant's brief failed even to address "the controlling authority that the district court cited and followed." *Id*. at 636. X accuses Defendants of nothing comparable here because Defendants never told the Court that the forum-selection clause was irrelevant; the contract provision had never been litigated at all,[5] and Defendants had not previously moved to transfer under §1404(a) for convenience and justice.

X's motion for sanctions fails under the statute's second prong, too. *Edwards*, 153 F.3d at 246; *Calhoun,* 34 F.3d at 1299. And X's recycled § 1927 arguments, (Mot. 16), again fail under Rule 11.

      b)      ***Rule 11 provides no basis on which the Court may sanction Defendants for moving to transfer this case.***

          i)      *Defendants' motion raised no legal or factual arguments that made it "so obvious" that they were wrong.*

Each of Defendants' arguments was "at least colorable at the time of the signing," and so there is no Rule 11 (b)(2) violation. *Calhoun*, 34 F.3d at 1291, 1294, 1299; *see supra* at 5–11. It is an abuse of discretion, and reversible error, to base Rule 11 sanctions on a finding that a claim is "legally implausible," as X posits that Defendants' positions were. *Calhoun*, 34 F.3d at 1294, 1299; *see also Matta*, (Mot 11, 17), 118 F.3d at 415–16.

X argues that "Media Matters' reliance on the forum selection clause was . . . frivolous . . . because Media Matters lacked any justification for its failure to seek a transfer on that basis earlier in the case." (Mot. 16). X, however, cites no binding or persuasive authority *requiring* Defendants to do so. *See supra* at 9–15.

---

     [5] X also cites to *Hockaday v. City of Dearborn*, (Mot. 1), addressing the "interest of justice" exception to an irrelevant Michigan statute. 2005 WL 1838350, at *2 (E.D. Mich. Aug. 2, 2005), which has no discernable application here.

In *Martin*, the Seventh Circuit upheld a Rule 11 sanctions award where a lawyer disputed whether "Martin was employed by IBA," even though the lawyer had access to government forms that "listed Martin as 'employee' and IBA as his 'employer,'" before signing the pleading in question. 871 F.2d at 1356–57 (cited at Mot. 16). X cannot point to anything like the squarely on-point, dispositive forms in *Martin*. *See supra* at 9–15.

In *Patterson*, the Eleventh Circuit affirmed the imposition of Rule 11 sanctions because "Patterson's *pro se* filing of a complaint against numerous attorneys, three federal judges, and several film distribution companies . . . alleged antitrust and constitutional violations by individuals all of whom were somehow involved in four prior related, unsuccessful lawsuits." *Patterson v. Aiken*, 841 F.2d 386, 386 (11th Cir. 1988) (Mot. 11). Defendants' motion, which was squarely based on controlling precedent, is not comparable to a frivolous *pro se* complaint against several federal judges. Defendants' legal theories were more than "plausible enough," and so they are not sanctionable under Rule 11 (b)(2). *Pathe*, 955 F.2d at 97 (cited at Mot. 16).

> ii) <u>The Court cannot read an ulterior motive into Defendants' filing, and it was not filed for any improper purpose.</u>

X cannot clear the high bar Rule 11 sets to show Defendants acted with any sanctionable "improper purpose" because "[a] district court is not to read an ulterior motive into a document well grounded in fact and law," *Maxxam*, 523 F.3d at 580 584–85, like Defendants' motion here, *see supra* at 9–11. Such a reading is reserved for "exceptional cases . . . where the improper purpose is objectively ascertainable." *Maxxam,* 523 F.3d at 584–85.

No improper purpose is objectively ascertainable where Defendants raised a forum-selection clause (which no court deemed waived) in one of many attempts to challenge venue as improper, just because doing so might not have (but also might have) been reasonably prompt under Fifth Circuit law. Mot. 11; *see supra* at 7–9.

In *Collar*,[6] the court based its imposition of Rule 11 sanctions on "counsel's submission of incorrect charts and their failure to correct the mistakes after learning that their partial summary judgment motion was based, at least in part, on incorrect chart." 2018 WL 3328682, at *23 (cited at Mot. 9, 16). There, among other things, (*id*. at 15–24), counsel had "repeatedly and stridently urged an incorrect legal argument—that the accrual method was mandatory[, d]espite learning of federal regulations, an IRS publication, and case-law authority that permitted Abalux to use the cash method," (*id*. at 25). X simply points to nothing of the sort here.

The Court also cannot read an ulterior motive into Defendants' nonfrivolous filing from the "record before the Court." *Cf*. Mot. 2. X throws in, without explaining how these issues might factor into any analysis, that "Media Matters extended its machinations" when—without violating any laws—it later filed a different case in a different court based on that forum-selection clause without violating any laws, (Mot. 7), and that Defendants long ago filed one unrelated motion after which the Court suggested sanctions, (Mot. 15).

But the "record before the Court" does not make this case exceptional, as *Whitehead* illustrates, because none of the conduct of which X complains comes close to "[e]ntering a Kmart store with two marshals and demanding money" not "for the proper purpose of collecting the sanctioned party's judgment." *Maxxam,* 523 F.3d at 584–85 (illustrating and quoting *Whitehead v. Food Max,* 332 F.3d 796 (5th Cir. 2003) (cited at Mot. 10, 11, 16)). In *Whitehead*, "the cash in Kmart's registers offered little toward a $3.4 million judgment; and 'the execution was unnecessary to secure the judgment,' as the judgment imposed a lien against Kmart's property." *Id*. at 585–86. Unlike here, the sanctioned party in *Whitehead* "did not dispute" that the purpose

---

[6] Like *Tobinick* did in the § 1927 context, *Martin* recognized that, under Rule 11, "whether the case was accepted from another attorney" is a relevant consideration. *Martin*, 871 F.2d at 1358.

behind his improper actions, was "to embarrass" the defendant and to "seek[ ] personal recognition." *Id.* at 584.

*Maxxam* again illustrates what an exceptional case might entail, and how far away any of Defendants' alleged conduct is from that. In *Maxxam*, the Fifth Circuit affirmed a portion of a Rule 11 award because "the FDIC did not admit that it was withholding documents initially, delayed producing a privilege log, failed to identify many documents and disclosures that it kept in a warehouse, and impeded the depositions of its officials." 523 F.3d at 587 (cleaned up); *see also Redd v. Fisher Controls*, 147 F.R.D. 128, 129 (W.D. Tex. 1993) (sanctioning a party for excessive filings). X points to nothing like that here.[7]

> c)  ***The Court's inherent authority should not be invoked under these circumstances, and it also may not be used to sanction Defendants for moving to transfer this case.***

The statute and the Rules are "up to the task," in this case, and so the Court should decline to exercise its inherent authority. *Chambers*, 501 U.S. at 50; *see* Mot. 11.

X says that Defendants should be sanctioned by the Court pursuant to its inherent authority because Defendants had "no good explanation" for "an omission that would be determinative of the success or failure of that party's filing." Mot. 16. That is precisely the type of issue Rule 11 might address. *See, e.g.*, *In re Gillig*, 807 F. Supp. 2d 604, 621 (N.D. Tex. 2011) (addressing an omission in a pro hac vice application). X repeats "that Media Matters' reliance on the forum selection clause was [allegedly] unfounded and not raised in good faith," and accordingly asks the Court to invoke its inherent authority to sanction Defendants. Mot. 16. This argument falls squarely in 28 U.S.C. §1927's purview. *See, e.g.*, Mot. 9 (quoting *Edwards*, 153 F.3d at 246

---

[7] Although X wants an award for all "costs for responding to its motion to transfer," (Mot. 17), "rule 11 only authorizes 'reasonable' fees, not necessarily actual fees." *Granader v. McBee*, 23 F.3d 120, 124 (5th Cir. 1994).

("[S]anctions under § 1927 must be predicated on actions that are both 'unreasonable' and 'vexatious'" and thus require "evidence of bad faith.")).

X points to no conduct beyond the scope of either Rule 11 or § 1927. This alone should dissuade the Court from invoking any inherent authority to impose sanctions because, in the Fifth Circuit, it "is well-settled . . . that the threshold for the use of inherent sanctioning power is high." *Maguire Oil*, 143 F.3d at 209. It is not met here. *See Chambers,* 501 U.S. at 50.

"[O]nce the power is invoked, it must be exercised with restraint and discretion." *Maguire Oil*, 143 F.3d at 209. And on these facts, the Court cannot make a "specific finding" that the sanctioned party acted in bad faith in order to impose such sanctions. *Dawson v. United States*, 68 F.3d 886, 895–96 (5th Cir.1995).[8]

Bad faith requires more than meritless claims, (*cf.* Mot. 17 (arguing that reliance on the "forum selection clause was unfounded")), and X fails even to establish that any of Defendants' claims in connection with the motion to transfer were meritless. *See supra* at 9–15. In *Matta*, the Fifth Circuit reversed a "bad faith" finding as clearly erroneous because Matta asserted plausible legal theories,118 F.3d at 416, just like Defendants did in their motion, *see supra at* 5–11.[9]

"Bad faith . . . implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will." *Miller v. Dunn*, 2024 WL 1303942, at *8 (N.D. Tex. Mar. 27, 2024) (cleaned up). Yet, X

---

[8] X gives no indication of the amount in fees X might have incurred "solely because of the misconduct—or put another way, to the fees that party would not have incurred but for the bad faith." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 104 (2017). And this alone is fatal to X's request for sanctions under the Court's inherent authority because such fees are the only fees to which such sanctions awards are strictly limited. *Id*.

[9] To the extent X claims that Defendants should be sanctioned because the Court found one prior motion meritless (Mot. 1), that is not enough. *Matta,* 118 F.3d at 416.

argues only that Media Matters "acknowledged in open court that it had no 'good explanation'" as to why it did not raise the forum-selection clause earlier. *See also* Mot. 17.

In *Maguire Oil*, the Fifth Circuit reversed a "bad faith" finding because the moving party "presented no rebuttal evidence to suggest that the City's actions went beyond mere negligence to constitute intended deceit, *i.e.*, bad faith." 143 F.3d at 212. X likewise introduces no evidence that anyone deliberately withheld any information from any court. X instead argues that counsel was generally aware of the forum-selection clause and raised it as grounds for transfer—in X's view— too late. Mot. 3–9. In *Maguire*, "the City was generally 'aware' of the [case-dispositive] decision . . . and . . . the City failed to disclose the decision to the court below." 143 F.3d at 212. Even the circumstances in that extreme case—withholding binding legal authority that ***conclusively*** established that a court lacked subject matter jurisdiction—***did not*** amount to the bad faith required to warrant sanctions under the Court's inherent authority. *Id.*

Accordingly, Defendants' alleged general awareness of the forum-selection clause, (Mot. 12), cannot warrant sanctions, nor can Defendants' decision to make a viable argument in a well-supported, timely legal brief, (*see supra* at 9–15). That all amounts to no evidence of bad faith at all, when bad faith warranting sanctions must be established by "'clear and convincing proof' . . . [which] is a 'high standard.'" *Miller*, 2024 WL 1303942, at *9 (quoting *Budri v. FirstFleet Inc.*, 2021 WL 849012, at *5 (N.D. Tex. Feb. 18, 2021)).

X cites to *Stone* for the proposition that "Media Matters engaged in 'abusive litigation practices.'" Mot. 16. (quoting *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993)). But *Stone* concluded that "the district court abused its discretion" by invoking its "inherent powers" to "routinely require[] a representative of the government with ultimate settlement authority to be present at all

pretrial or settlement conferences." *Stone* says nothing about how Media Matters' conduct might amount to "abusive litigation practices." 986 F.2d at 905.

*Positive* is just as unhelpful to X because, in that case, the Fifth Circuit held that the "district court lacked inherent authority to sanction Camiña for her conduct" because "[t]hat conduct was neither before the district court nor in direct defiance of its orders." 619 F.3d at 461 (cited at Mot. 16). X does not claim that Defendants' transfer motion defied any court order, and, to the extent X seeks to tie any claim for sanctions in its motion to Defendants' meritorious case in California, (Mot. 7–9), *Positive* suggests that X cannot, 619 F.3d at 461; *cf. Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc*., 2 F.3d 1397, 1408 (5th Cir. 1993) (declining to extend the reach of the Court's inherent authority beyond the parties in "the forum district.").

## <u>CONCLUSION</u>

For the foregoing reasons, X's motion for sanctions "for Media Matter's Litigation Conduct" should be denied in full.

24

Dated: June 11, 2025.                    Respectfully submitted,

                                         /s/ *Justin A. Nelson*
                                         Justin A. Nelson
                                         State Bar No. 24034766
                                         Matthew Behncke
                                         State Bar No. 24069355
                                         Alexandra Foulkes Grafton *(admitted PHV)*
                                         SUSMAN GODFREY L.L.P.
                                         1000 Louisiana Street, Suite 5100
                                         Houston, Texas 77002-5096
                                         Telephone:  (713) 651-9366
                                         Fax:  (713) 654-6666
                                         jnelson@susmangodfrey.com
                                         mbehncke@susmangodfrey.com
                                         afoulkesgrafton@susmangodfrey.com

                                         Katherine M. Peaslee
                                         SUSMAN GODFREY L.L.P.
                                         401 Union Street, Suite #3000
                                         Seattle, WA 98101
                                         Telephone:  (206) 516-3880
                                         kpeaslee@susmangodfrey.com

                                         Gregg Costa
                                         GIBSON, DUNN & CRUTCHER LLP
                                         811 Main Street, Suite 3000
                                         Houston, TX 77002-6117
                                         Telephone: (346) 718-6649
                                         Facsimile: (346) 718-6979
                                         GCosta@gibsondunn.com
                                         Theodore J. Boutrous, Jr.*
                                         333 South Grand Avenue
                                         Los Angeles, CA 90071
                                         T: (213) 229-7000
                                         tboutrous@gibsondunn.com

                                         Andrew LeGrand
                                         GIBSON, DUNN & CRUTCHER LLP
                                         2001 Ross Avenue, Suite 2100
                                         Dallas, TX 75201
                                         T: (214) 698-3100
                                         alegrand@gibsondunn.com

                                         Amer S. Ahmed*
                                         GIBSON, DUNN & CRUTCHER LLP

                                              i

200 Park Avenue
New York, New York 10166
T: (212) 351-4000
aahmed@gibsondunn.com

Dwight P. Bostwick
Shawn P. Naunton
Zuckerman Spaeder LLP
485 Madison Ave., 19th Floor
New York, NY 10022
Telephone: (212) 704-9600
dbostwick@zuckerman.com

*Attorneys for Defendants*
*Media Matters for America,*
*Angelo Carusone, and*
*Eric Hananoki*

ii

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been served on the counsel of record, this 11TH day of June, 2025, in accordance with the applicable rules.

_/s/ Alexandra Foulkes Grafton_
Alexandra Foulkes Grafton