# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

|  |  |
|---|---|
| **X CORP.**, a Nevada corporation,<br>　　　　Plaintiff,<br><br>　　v.<br><br>**MEDIA MATTERS FOR AMERICA**, a<br>Washington, D.C. non-profit corporation,<br>**ERIC HANANOKI**, and **ANGELO**<br>**CARUSONE**,<br>　　　　　　Defendants. | Case No. 4:23-CV-01175-O |

## PLAINTIFF'S SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE

## TABLE OF CONTENTS

TABLE OF CONTENTS...............................................................................................................i

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ........................................................................................................................ 1

ARGUMENT................................................................................................................................ 2

    I.   Transfer Is Not Warranted Under Section 1404. ............................................................ 2

    II.  Dismissal or Transfer Is Not Warranted Under Section 1406. ...................................... 9

CONCLUSION........................................................................................................................... 10

CERTIFICATE OF SERVICE ................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Barragan v. U-Haul Int'l Inc.*,
   2018 WL 11361106 (W.D. Tex. Sept. 25, 2018)................................................................ 8

*Bollinger Shipyards Lockport, L.L.C. v. Huntington Ingalls Inc.*,
   2015 WL 65298 (E.D. La. Jan. 5, 2015)........................................................................ 6

*Def. Distributed v. Bruck*,
   30 F.4th 414 (5th Cir. 2022) ................................................................................. 2, 6

*Icon Indus. Controls Corp. v. Cimetrix, Inc.*,
   921 F. Supp. 375 (W.D. La. 1996) ............................................................................. 5

*In re Chamber of Com. of U.S. of Am.*,
   105 F.4th 297 (5th Cir. 2024) ................................................................................... 2

*In re Clarke*,
   94 F.4th 502 (5th Cir. 2024) ................................................................................. 2, 4

*In re Media Matters for Am.*,
   143 F.4th 631 (5th Cir. 2025) ................................................................................ 2, 5

*In re Planned Parenthood Fed'n of Am., Inc.*,
   52 F.4th 625 (5th Cir. 2022) ............................................................................. 3, 4, 6

*In re TikTok, Inc.*,
   85 F.4th 352 (5th Cir. 2023) ................................................................................. 2, 4

*Los Angeles Mem'l Coliseum Comm'n, v. Nat'l Football League*,
   89 F.R.D. 497 (C.D. Cal. 1981)................................................................................. 5

*Media Matters for Am. v. X Corp.*,
   No. 3:25-cv-02397-VC (N.D. Cal.) ............................................................................ 1

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981)............................................................................................... 9

*Playboy Enters., Inc. v. Sanchez-Campuzano*,
   519 F. App'x 219 (5th Cir. 2013) .............................................................................. 8

*Roller Bearing Co. of Am. v. Bearings, Inc.*,
   260 F. Supp. 639 (E.D. Pa. 1966) ............................................................................. 5

*Salinas v. O'Reilly Auto., Inc.*,
   358 F. Supp. 2d 569 (N.D. Tex. 2005) ...................................................................... 4

*Sambrano v. United Airlines, Inc.*,
   707 F. Supp. 3d 652 (N.D. Tex. 2023) ...................................................................... 5

*Scivation, Inc. v. Xtend5, LLC*,
   2021 WL 2177254 (W.D. Tex. May 28, 2021) ............................................................ 8

*Seagen Inc. v. Daiichi Sankyo Co.*,
   2021 WL 3620428 (E.D. Tex. Apr. 19, 2021)............................................................. 3

ii

*Sgic Strategic Glob. Inv. Capital, Inc. v. Burger King Europe GmbH,*
  2015 WL 12731761  (N.D. Tex. Aug. 26, 2015) ........................................................ 7

*St. Paul Surplus Lines Ins. Co. v. Ace Am. Ins. Co.,*
  2010 WL 4875683 (W.D. La. Oct. 12, 2010) ........................................................ 9

*Stampley v. RCNI Freight, LLC,*
  2023 WL 5333273 (N.D. Tex. Aug. 18, 2023) ........................................................ 10

*Stewart Organization, Inc. v. Ricoh Corp.,*
  487 U.S. 22 (1988) ........................................................................................................ 7

*Unification Techs. LLC v. Micron Tech., Inc.,*
  2022 WL 92809 (W.D. Tex. Jan. 10, 2022) ........................................................ 7

*Van Dusen v. Barrack,*
  376 U.S. 612 (1964) .................................................................................................... 9

*Virginia Innovation Scis., Inc. v. Amazon.com, Inc.,*
  2019 WL 3082314 (E.D. Tex. July 15, 2019) ........................................................ 7

*Willis v. Okeechobee Cnty.,*
  2012 WL 12845648  (S.D. Fla. Aug. 16, 2012) .................................................... 6

**Statutes**

28 U.S.C. § 1391(b)(2) ...................................................................................................... 10

28 U.S.C. § 1404(a) .......................................................................................................... 1, 2, 7, 9

28 U.S.C. § 1406(a) .......................................................................................................... 1, 9

**Other Authorities**

15 Charles Alan Wright & Arthur R. Miller,
  Federal Practice & Procedure § 3844 (4th ed. 2025) ............................................ 6

## INTRODUCTION

This case belongs in the Northern District of Texas. X Corp. is a Texas company pursuing Texas state-law claims arising out of Defendants' interference with X's advertisers, including AT&T, which is headquartered in the Northern District of Texas. Relevant witnesses live all over the country—in Texas, on the West Coast, and the East Coast. For the majority of witnesses, Fort Worth will be a more convenient trial destination than San Francisco. And the lead-up to trial will be smoother here: this Court has resolved nearly a dozen substantive motions addressing both the merits of X's claims and the scope of permissible discovery. Several more rulings remain outstanding, including Defendants' interlocutory appeal concerning donor-related discovery and two fully briefed motions to compel (one each by X and Defendants). In these circumstances, it is hard to imagine how the "interest of justice," 28 U.S.C. § 1404(a), would be served by starting this case over in a new judicial district before a new judge unfamiliar with a complex dispute that has already been pending in this Court for nearly two years. The Court should deny Defendants' motion to transfer under both 28 U.S.C. § 1404(a) and 28 U.S.C. § 1406(a) because (1) the eight private and public interest factors do not support transfer, and (2) venue is proper in the Northern District of Texas.[1]

---

[1] Defendants mandamus petition from the Court's initial order denying transfer conspicuously declined to "press" whether the forum selection clause in X's now-defunct terms of service compels transfer. *See* ECF No. 153-1 at 6. The Court has already found that Defendants waived reliance on the forum selection clause, ECF No. 190 at 6, and Judge Chhabria independently agreed, holding that "Media Matters has waived the right to sue for breach of contract based on X's failure to adhere to the forum selection clause in bringing the Texas case." ECF No. 92 at 2, *Media Matters for Am. v. X Corp.*, No. 3:25-cv-02397-VC (N.D. Cal. July 3, 2025). The Fifth Circuit's decision did not call those waiver determinations into doubt, nor did Defendants suggest, let alone assert, that they were challenging that aspect of this Court's decision. Accordingly, X's supplemental briefing analyzes the Section 1404 factors that the Fifth Circuit highlighted without reference to the forum selection clause that Defendants have indisputably waived.

**ARGUMENT**

## I. Transfer Is Not Warranted Under Section 1404.

For "the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). This provision "places discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *In re Media Matters for Am.*, 143 F.4th 631, 640 (5th Cir. 2025) (cleaned up). Courts must weigh eight private- and public-interest factors in making that assessment, *see id.* at 638, but no factor "is of dispositive weight," nor must each factor be weighed equally, *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023).

The bar for transfer is high. The movant must establish "good cause," *Def. Distributed v. Bruck*, 30 F.4th 414, 434 (5th Cir. 2022), meaning "(1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious—*i.e.*, clearly demonstrates—that those marginal gains will *actually* materialize in the transferee venue," *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024). "[A] mere preponderance of the evidence" in favor of transfer "is insufficient." *Id.* at 508 n.3; *Def. Distributed*, 30 F.4th at 433. And for a factor to weigh in the movant's favor, there must be a *clear* demonstration that the factor supports transfer; "[w]here there is no demonstration by the movant, let alone a clear one, the court cannot weigh a factor against the non-movant and in favor of transfer." *Def. Distributed*, 30 F.4th at 434. Speculative or even plausible benefits from transfer are also unavailing; the "bar is much higher." *In re Chamber of Com. of U.S.*, 105 F.4th 297, 304 (5th Cir. 2024).

***Relative ease of access to sources of proof.*** The first private-interest factor focuses on the location of evidence, but this consideration "bears much more strongly on the transfer analysis" when the evidence is "physical in nature." *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th

625, 630 (5th Cir. 2022). Defendants have not identified any such physical evidence. Millions of pages of documents have already been exchanged electronically. ECF No. 198 at 96; ECF No. 67 (ESI protocol). The "vast majority of the evidence" is thus "equally accessible in either forum." *Planned Parenthood*, 52 F.4th at 630. Even the most particularly sensitive electronic information—X's source code—will be equally available in Texas and California; it is primarily housed on servers in Atlanta (closer to Texas) and Portland (closer to California), Appx. 8, and, per the parties' agreement, will be viewed at X Corp.'s attorneys' offices in Texas.

Defendants make no meaningful showing to the contrary. Instead, they selectively quote from X's representations seeking transfer to California in unrelated cases when X was still Twitter, incorporated in Delaware, and headquartered in California. *See* ECF No. 153-1 at 24; *e.g.*, ECF No. 153-2 at 53 (citing a motion to transfer filed in 2021). But the state of the company four years ago, or even last year, hardly speaks to what will be most convenient *now*, let alone *at trial*, for *these* parties in *this* case. *See Seagen Inc. v. Daiichi Sankyo Co.*, 2021 WL 3620428, at *2 (E.D. Tex. Apr. 19, 2021) ("[W]hether to transfer a case for convenience bears primarily on post-complaint matters."). X's San Francisco office has been closed for almost a year. ECF No. 168-4 at 78. Its Bastrop office became X's fully operational headquarters on January 6, 2025. *Id.* Nearly 190 employees work in Texas, its majority owner is domiciled in Texas, and most executive-level strategic decisions are made in Texas (including recent decisions on which Defendants have sought discovery). *Id.*; *see* Appx. 10-27. Indeed, one of the three employees who investigated Defendants' tortious articles, Ming Song, lived and worked in Texas when he assisted the internal review. Appx. 4. Finally, evidence related to AT&T is likely to be found in this District. ECF No. 37 ¶ 29. The first private-interest factor thus weighs against transfer or, at a minimum, does not clearly weigh in favor of it.

*Availability of compulsory process.* This factor considers the district court's power to mandate witnesses' attendance at trial. The Fifth Circuit has made clear that the "availability of compulsory process receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." *Planned Parenthood*, 52 F.4th at 630-31. And here, just as in *Planned Parenthood*, the movant has "failed to identify any witnesses who would be unwilling to testify." *Id.* In any event, the parties' current and former employees reside throughout the country, ECF No. 42-1 at 7-8; ECF No. 168-4 at 79, as do affected advertisers. No single district has subpoena power over a critical mass of unwilling witnesses, even if Defendants belatedly identify any. *See Salinas v. O'Reilly Auto., Inc.*, 358 F. Supp. 2d 569, 572 (N.D. Tex. 2005); *TikTok*, 85 F.4th at 361. This factor, too, does not weigh in favor of transfer, let alone clearly so.

*Cost of attendance for willing witnesses.* As in *Planned Parenthood*, "the relevant witnesses reside across the state and across the country." 52 F.4th at 631. Defendants' employees reside primarily on the East Coast. ECF No. 42-1 at 7-8. X's current and former employees live across the country, and at least one key witness, Song, currently resides in Houston. Appx. 4. As discussed above, Song's testimony is material because he was one of the three X employees who investigated the veracity of Defendants' November 2023 articles, *see id.*, and it will be far more convenient for him to make a short trip to Fort Worth than to fly cross-country to San Francisco. For other key witnesses, like Linda Yaccarino (X's former CEO), it will be more convenient to travel from the East Coast (in her case, New York) to Fort Worth than to San Francisco. "It is the movant's burden—and the movant's alone—to adduce evidence and arguments that clearly establish good cause for transfer based on convenience and justice." *Clarke*, 94 F.4th at 508 (cleaned up). Here, given that "witnesses may be called from . . . almost every region of the

4

country, there is no single forum which will be convenient to all witnesses." *Icon Indus. Controls Corp. v. Cimetrix, Inc.*, 921 F. Supp. 375, 384 (W.D. La. 1996).

Defendants' insistence that no relevant witness resides within one hundred miles of the Northern District of Texas does not withstand scrutiny. *See* ECF No. 153-1 at 19-20. In a recent deposition, the X employee in charge of X's relationship with AT&T testified that he "had to work very closely with a number of AT&T folks in Dallas" on a "regular basis." Appx. 33-34. Those AT&T employees are likely to be relevant witnesses at trial. This factor weighs against transfer.

***Practical problems that make trial of a case easy, expeditious, and inexpensive.*** In its order denying transfer, this Court rightly noted that "Defendants filed numerous motions *before* requesting transfer." ECF No. 190 at 8. The Court has already resolved many of them, with a few still outstanding. *See id.* at 3 n.2. Because of the Court's substantial involvement in motion and discovery practice and corresponding familiarity with the "complexities of this case," a transfer "at this stage would result in increased costs and a substantial delay in the expeditious resolution" of X's claims. *Sambrano v. United Airlines, Inc.*, 707 F. Supp. 3d 652, 680 (N.D. Tex. 2023).

For well over a year, the Court invested its resources into this case without any motion to transfer pending. There was no reason, and none has been offered, for Defendants to seek dismissal based on venue for over a year without concurrently requesting a transfer. ECF No. 190 at 8. Given those facts, the Court should afford "the relative timeliness" of Defendants' motion "significant consideration" in its venue calculus. *In re Media Matters for Am.*, 143 F.4th at 637. Courts across the country have recognized that untimeliness can be crucial to the refusal to transfer venue, and the Fifth Circuit's mandamus decision was not to the contrary. *Roller Bearing Co. of Am. v. Bearings, Inc.*, 260 F. Supp. 639, 639 (E.D. Pa. 1966); *L.A. Mem'l Coliseum Comm'n, v. Nat'l Football League*, 89 F.R.D. 497, 500 (C.D. Cal. 1981) (delays "of five months have induced courts

to refuse transfers that might otherwise have been granted."); *Willis v. Okeechobee Cnty.*, 2012 WL 12845648, at *2 (S.D. Fla. Aug. 16, 2012) (delay of eight months). After all, it is "common sense . . . that delay may cause the district court to refuse a transfer that otherwise would have been granted had it been sought earlier." 15 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 3844 (4th ed. 2025). This factor weighs strongly against transfer.

   ***Administrative difficulties flowing from court congestion.*** The first public interest factor also leans against transfer. As of March 2024, judges in the Northern District of California had an average of 1,044 cases pending, compared to 469 cases in the Northern District of Texas. ECF No. 168-4 at 58-59. With respect to its civil docket, the Northern District of California averaged 7.6 months from filing to disposition, and 49.9 months from filing to trial. *Id.* at 59. By contrast, the Northern District of Texas averaged 6.1 months from filing to disposition, and 22.7 months from filing to trial. *Id.* at 58; *see Planned Parenthood*, 52 F.4th at 631 n.4 (finding no error in the district court's assessment of "the convenience of the Northern District and the Western District at that level of generality" at various points in the transfer framework).[2] Moreover, "the public interest in judicial economy weighs heavily in favor of denying transfer" here, where the case has been pending for years and this Court has made substantive rulings. *Bollinger Shipyards Lockport, L.L.C. v. Huntington Ingalls Inc.*, 2015 WL 65298, at *4 (E.D. La. Jan. 5, 2015).

   ***Local interests.*** "The second public interest factor . . . focuses on the local interest in having localized interests decided at home[.]" *Def. Distributed*, 30 F.4th at 435 (citation omitted). "Texas has a strong interest in protecting its residents from tortious activity." *Sgic Strategic Glob. Inv.*

---

[2] Defendants take this Court's observation about its busy docket out of context. *See* ECF No. 153-1 at 22. The Court did not suggest that it would be unable to expeditiously resolve this case. Instead, the Court simply pointed out that to do so, it could not allow parties to stall discovery on the basis of potential rulings arising from dispositive motions. ECF No. 54 at 15.

*Capital, Inc. v. Burger King Europe GmbH*, 2015 WL 12731761, at \*7 (N.D. Tex. Aug. 26, 2015). And Texas not only has a distinct interest in protecting in-state businesses like X from defamation, but in protecting X's in-state contracting parties—including AT&T—from tortious interference. Indeed, Texas's Attorney General has sought to investigate the facts of this dispute, expressing an interest in "nonprofits who commit fraudulent acts in or affecting the state of Texas."[3] And X's current terms of service, to which Defendants have consented, require any disputes between the parties to be brought in the Northern District of Texas. ECF No. 168-4 at 14.

That X was previously located in the Northern District of California has little bearing on what local interests will be served now. *Contra* ECF No. 180-1 at 15-16. The 1404(a) standard "looks to the present and the future. As the specific reference to convenience of parties and witnesses suggests, it requires consideration of what is likely to be just in the future, when the case is tried, in light of things as they now stand." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 34 (1988) (Scalia, J., dissenting); *cf. Virginia Innovation Scis., Inc. v. Amazon.com, Inc.*, 2019 WL 3082314, at \*12 (E.D. Tex. July 15, 2019) (considering current locations of witnesses and documents "when addressing the motions to transfer, as opposed to considering the facts as they existed at the time of filing"); *Unification Techs. LLC v. Micron Tech., Inc.*, 2022 WL 92809, at \*3 (W.D. Tex. Jan. 10, 2022) (holding that § 1404's convenience analysis can look to post-filing facts). As it now stands, the case involves D.C. residents who have defamed a Texas business owned by a Texas resident and interfered with contracts of businesses located in this District and Texas more broadly. The Northern District of California, where no party to this suit is based, cannot claim any comparable interests.

---

[3] *See* Press Release, Office of the Texas Attorney General, Attorney General Ken Paxton Opens Investigation into Media Matters for Potential Fraudulent Activity (Nov. 20, 2023).

Moreover, because Defendants have refused to disclose the residencies of their current and prospective donors, the extent of the local interest in this case has not yet been fully developed through discovery and is likely to be broader still. Defendants cannot stymie discovery into their Texas contacts and then use that shield as a sword to argue in favor of transfer.

**Familiarity of the forum with the law that will govern.** This Court has been enmeshed in the factual and legal issues involved in this dispute for over twenty months. That alone renders the forum "familiar." *See United States v. Planned Parenthood Fed'n of Am.*, 2022 WL 19006361, at *4 (N.D. Tex. Sep. 20, 2022). And more broadly, Texas district courts have more familiarity with the Texas state-law claims asserted here. *Scivation, Inc. v. Xtend5, LLC*, 2021 WL 2177254, at *2 (W.D. Tex. May 28, 2021).

Defendants' contrary position—that California law applies—rings hollow. "Texas courts presume that other states' laws are the same as its own; thus, the party advocating the use of a different state's laws bears the burden of rebutting that presumption." *Playboy Enters., Inc. v. Sanchez-Campuzano*, 519 F. App'x 219, 225 (5th Cir. 2013). Defendants attempt to do so via the choice-of-law provision in X's then-applicable terms of service. *See* ECF 153-1 at 22. As with their reliance on the forum selection clause, however, Defendants invoke the choice-of-law provision too late. Defendants litigated the case for sixteen months before raising the argument that the terms of service should apply to this dispute at all. Before that, they filed numerous motions relying on Texas law, including a motion to dismiss addressing the merits of X's Texas state-law causes of action. *See* ECF No. 42 at 20-32. Their untimeliness foreclosed any application of the forum-selection clause; that same untimeliness precludes their reliance on the choice-of-law clause in those same terms of service. *See Barragan v. U-Haul Int'l Inc.*, 2018 WL 11361106, at *11-12 (W.D. Tex. Sep. 25, 2018). Beyond that, X's claims against Defendants do not implicate the terms

of service (particularly with respect to Media Matters and Carusone, as X's claims against them do not involve their use of the platform at all), so it makes little sense for the Court to look to X's terms of service to decide what law to apply to this case.

  ***Conflict of laws.*** Finally, the conflict-of-laws factor also weighs against transfer. "[W]here the defendants seek transfer, the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue. A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms." *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964). The same principle holds true for choice-of-law analyses. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 243 n.8 (1981). A Texas court is better suited to evaluate Texas choice-of-law rules than one in California. What is more, Defendants have argued that, were the case transferred, California's anti-SLAPP statute would apply. X would contest this position. Therefore, the transferee court would be called upon to ascertain which jurisdiction's law would apply on this issue. These efforts would be unnecessary if the case were not transferred. *See St. Paul Surplus Lines Ins. Co. v. Ace Am. Ins. Co.*, 2010 WL 4875683, at *9 (W.D. La. Oct. 12, 2010) (evaluating conflict factor and preferring forum that avoided of expense and effort in evaluating and briefing conflict analyses).

* * *

  In sum, most of the Section 1404 factors weigh *against* transfer. At most, some are neutral. None, let alone a critical mass, weigh *clearly* in favor of transfer.

## II. Dismissal or Transfer Is Not Warranted Under Section 1406.

  Defendants separately insist that the Northern District of Texas is the wrong forum for this dispute altogether, and thus that dismissal or transfer is warranted under 28 U.S.C. § 1406(a). This Court has twice rejected that notion, *see* ECF No. 82 at 12-13, ECF No. 190 at 8-9, and the Fifth Circuit's decision did not call those rulings into doubt.

9

In relevant part, Section 1406 provides that the "district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). X invoked venue in the Northern District of Texas under 28 U.S.C. § 1391(b)(2). *See* ECF No. 37 ¶ 29. Under that provision, the "question is not whether a substantial part of the events took place elsewhere; rather, the question is whether a substantial part of the events or omissions giving rise to the claim occurred" in this judicial district. *Stampley v. RCNI Freight, LLC*, 2023 WL 5333273, at *1 n.2 (N.D. Tex. Aug. 18, 2023). Because the statute "contemplates that venue can be appropriate in more than one district," it "does not restrict venue to the district in which the 'most substantial' events or omissions giving rise to a claim occurred." *Id.*

X introduced competent evidence that Defendants' articles cost it significant business opportunities from AT&T, which had just resumed advertising on X shortly before Defendants' publications halted AT&T's plans. ECF No. 153-2 at 148. In fact, AT&T spent over six figures in three weeks prior to abruptly pausing in response to the publications. *Id.* Those facts are more than sufficient to support the Court's venue determination. If that were not enough, thousands of people living in the Northern District almost certainly read the articles. ECF No. 37 ¶¶ 23-29. Nothing Defendants have proffered thus far in discovery has disproved that notion. And Defendants' continued stonewalling has precluded X from developing an even more fulsome account of their relevant ties to Texas. Until those disputes are resolved in this Court and the Fifth Circuit, Defendants are not entitled to a favorable presumption of what that evidence will show. To the contrary, the discovery that X has sought, but which remains outstanding, is likely to reaffirm what the facts already show and what this Court has already correctly held—venue is proper here.

## CONCLUSION

Defendants' motion to transfer should be denied.

10

Dated: August 11, 2025

Respectfully submitted.

*/s/ Christopher D. Hilton*
Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
Ari Cuenin
Texas Bar No. 24078385
Elizabeth Brown Fore
Texas Bar No. 24001795
Michael R. Abrams
Texas Bar No. 24087072
Alithea Z. Sullivan
Texas Bar No. 24072376
Alexander M. Dvorscak
Texas Bar No. 24120461
Cody C. Coll
Texas Bar No. 24116214
**STONE HILTON PLLC**
600 Congress Ave., Ste. 2350
Austin, TX 78701
Telephone:(737) 465-3897
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
elizabeth@stonehilton.com
michael@stonehilton.com
alithea@stonehilton.com
alex@stonehilton.com
cody@stonehilton.com

John C. Sullivan
Texas Bar No. 24083920
**S|L LAW PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

*Attorneys for Plaintiff X Corp.*

11

## CERTIFICATE OF SERVICE

I hereby certify that this document was served on all counsel for record on August 11, 2025, via the Court's CM/ECF system.

/s/ Michael R. Abrams
Michael R. Abrams