IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| X CORP., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:23-CV-01175-O |
| § | |
| MEDIA MATTERS FOR AMERICA, § | |
| ET AL., § | |
| § | |
| Defendants. § | |

## ORDER

Defendants' Motion to Transfer Venue (ECF No. 152) is back before the Court. The Fifth Circuit vacated the Court's order denying Defendants' Motion to Transfer Venue and instructed the Court to do a more thorough venue analysis. *See In re Media Matters for Am.*, 143 F.4th 631 (5th Cir. 2025). After analyzing the eight private and public interest factors prescribed by the Fifth Circuit, the Court does not find good cause to transfer this action. Accordingly, Defendants' Motion to Transfer Venue is **DENIED**.

### I. BACKGROUND

#### a. Factual Background

On November 20, 2023, X Corp. ("Plaintiff" or "X") brought this action against Media Matters for America, Eric Hananoki, and Angelo Carusone (collectively, "Defendants") claiming interference with contract, business disparagement, and interference with prospective economic advantage. Pursuant to these claims, Plaintiff alleges that Defendants knowingly and maliciously fabricated side-by-side images on Plaintiff's X platform of various advertisers' posts that X depicted next to neo-Nazi or other extremist content and portrayed these designed images as if they were what the average user experiences on the X platform. Plaintiff asserts that Defendants

1

intended to harm the X platform by publicly portraying X as a social media platform dominated by neo-Nazism and anti-Semitism, and thereby alienate major advertisers, publishers, and users from the X platform through its actions.

### b. Procedural Background

Defendants filed their Notice of Motion to Transfer Venue[1] and Brief in Support[2] on March 6, 2025. Plaintiff timely filed its Response,[3] and Defendants appropriately replied.[4] The Court then denied Defendants' transfer motion.[5] Defendants subsequently appealed to the Fifth Circuit. The Fifth Circuit vacated this Court's prior order and remanded with instructions for the Court to conduct a more complete venue analysis using eight public and private interest factors. *See Media Matters*, 143 F.4th at 640. Following the Fifth Circuit's remand, on August 11, 2025, Defendants filed their Supplemental Brief in Support of Transferring Venue,[6] and Plaintiff filed its Supplemental Brief in Opposition.[7] A week later, Defendants and Plaintiff filed their responses.[8] Defendants' Motion to Transfer is now ripe for the Court's review.

## II. LEGAL STANDARDS

### A. Transfer Under 28 U.S.C. § 1404(a)

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In considering motions to transfer venue under 28 U.S.C. § 1404(a), district

---

[1] Defs.' Mot. Transfer Venue, ECF No. 152.
[2] Defs.' Br. Supp. Mot. Transfer Venue, ECF No. 153-1.
[3] Pl.'s Resp., ECF No. 168-3.
[4] Defs.' Reply, ECF No. 172-1.
[5] Order, May 5, 2025, ECF No. 190.
[6] Defs.' Suppl. Br. Supp. Mot. Transfer Venue, ECF No. 231-1.
[7] Pl.'s Suppl. Br. Opp'n Mot. Transfer Venue, ECF No. 228.
[8] Defs.' Suppl. Resp. Br. Supp. Mot. Transfer Venue, ECF No. 232; Pl.'s Suppl. Resp. Br. Opp'n Mot. Transfer Venue, ECF No. 233.

courts consider "the convenience of the parties and various public-interest considerations." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013). "District courts have broad discretion in deciding whether to order a transfer." *In re Volkswagen of Am. Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (citation omitted).

Transfer based on 28 U.S.C. § 1404(a) is only warranted if the moving party "clearly establishes good cause by clearly demonstrating that a transfer is for the convenience of parties and witnesses, in the interest of justice." *Media Matters*, 143 F.4th at 638 (quoting *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024)). Establishing good cause requires a movant to "show (1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will actually materialize in the transferee venue." *Id.* (quoting *Clarke*, 94 F.4th at 508) (emphasis in original). The movant must "clearly demonstrate" that its chosen venue is "clearly more convenient." *Clarke*, 94 F.4th at 508. If the transferee venue is only "more likely than not to be more convenient," the "good cause" standard is not met. *Id.*

The preliminary question under § 1404(a) is "whether the case 'might have been brought' in the destination venue." *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022) (quoting 28 U.S.C. 1404(a)). Step two of the analysis requires the Court to consider eight public and private interest factors. *Media Matters*, 143 F.4th at 638. No factor carries dispositive weight, and the Fifth Circuit has "cautioned against a raw counting of the factors that weighs each the same." *Id.* (citation omitted).

The private factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious

3

and inexpensive[.]" *Id.* And the public factors are: "(5) the administrative difficulties flowing from court congestion; (6) the local interest in having localized interests decided at home; (7) the familiarity of the forum with the law that will govern the case; and (8) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.*

"Where there is no demonstration by the movant, let alone a clear one, the district court cannot weigh a factor against the non-movant and in favor of transfer." *Clarke*, 94 F.4th at 509 (quoting *Def. Distributed v. Bruck*, 30 F.4th 414, 434 (5th Cir. 2022)). When "the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Volkswagen*, 545 F.3d at 315.

### B. Transfer or Dismissal Under 28 U.S.C. § 1406(a)

"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406. Transfer or dismissal under § 1406(a) is conditioned on the initial forum being wrong. *Atl. Marine*, 571 U.S. at 59. Congress enacted § 1406(a) to permit "a transfer when venue was improper but justice nonetheless weighed in favor of transfer to a proper venue rather than dismissal." *Franco v. Mabe Trucking Co., Inc.*, 3 F.4th 788, 793 (5th Cir. 2021).

### III.   ANALYSIS

Defendants argue that "[u]nder any legal framework, this Court should transfer the case."[9] Specifically, Defendants advance three sources of authority for the Court to transfer this action: (1) the forum selection clause in X's terms of service; (2) 28 U.S.C. § 1404(a); and

---

[9] Defs.' Br. Supp. Mot. Transfer Venue 2, ECF No. 153-1.

(3) 28 U.S.C. § 1406(a). Each is addressed in turn below, and for the following reasons, the Court concludes the Motion is **DENIED**.

### A. Forum Selection Clause

The Fifth Circuit's Order does not call into question this Court's prior determination that Defendants waived their right to assert the forum selection clause. *See Media Matters*, 143 F.4th at 631. Likewise, Judge Chhabria found no disagreement with this Court's waiver analysis and held that "Media Matters has waived the right to sue for breach of contract" under the forum selection clause because "Media Matters, despite being aware of the forum selection clause from the start, did not invoke it with respect to the Texas litigation for over a year and a half, until after it had moved to dismiss twice, engaged in multiple discovery disputes, and pursued an interlocutory appeal."[10] Accordingly, the Court maintains its prior analysis.[11]

The Court next considers transfer under 28 U.S.C. § 1404(a).

### B. 28 U.S.C. § 1404(a)

Defendants contend "this case has nothing to do with the Northern District of Texas" and request that the Court transfer this case to the Northern District of California under 28 U.S.C. § 1404(a).[12] Plaintiff opposes transferring and points to its Texas law claims, advertisers pertinent to those claims being headquartered in this District—for example, AT&T—, and this Court's central location in relation to the rest of the country and its history with this case.[13]

---

[10] Judge Chhabria is presiding over a related action where Media Matters sued X for breach of contract for filing this lawsuit in the Northern District of Texas instead of the Northern District of California. *See* Order 2, July 3, 2025, ECF No. 92, *Media Matters for Am. et al. v. X Corp. et al.*, No. 3:25-CV-02397-VC (N.D. Cal. 2025) (Chhabria, J.).
[11] Order 4–6, May 2, 2025, ECF No. 190.
[12] Defs.' Suppl. Br. in Supp. Mot. Transfer Venue 1, ECF No. 231-1.
[13] Pl.'s Suppl. Br. Opp'n Mot. Transfer Venue 1, ECF No. 228.

The threshold question for the Court under 28 U.S.C. § 1404(a) is whether this case could have been brought in the destination venue. *Planned Parenthood*, 52 F.4th at 630. Because neither party disputes that this case could have been brought in the Northern District of California, the Court turns to the private and public interest factors. The Court now considers the private and public interest factors.

### 1. Relative Ease of Access to Sources of Proof

The first private interest factor "focuses on the location of documents and physical evidence relating to the case." *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023) (citation modified). "The question is *relative* ease of access, not *absolute* ease of access." *Id.* (quoting *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013)) (emphasis in original). Defendants argue that key evidence—"sensitive electronic materials such as source code or algorithms"—are located in the Northern District of California.[14] Plaintiff rebuts this by asserting that (1) its source code is stored on servers in Atlanta and Portland and (2) that the parties have agreed to review the source code at Plaintiff's counsels' offices in Texas.[15] Defendants further argue that Plaintiff "has not identified a single document in this district,"[16] but as Plaintiff points out, this ignores Plaintiff's claims against AT&T and the evidence that is likely to be found in this District.[17]

When "the vast majority of the evidence is electronic, and therefore equally accessible in either forum, this factor bears less strongly on the transfer analysis." *TikTok*, 85 F.4th at 358 (citation modified). However, as both parties agree, this factor retains more significance here because Plaintiff's claims hinge on sensitive electronic information. *See id.* at 359 ("As the district court recognized, the petitioners' source code is the most important evidence in this case.").

---

[14] Defs.' Br. Supp. Mot. Transfer Venue 19, ECF No. 153-1.
[15] Pl.'s Suppl. Br. Opp'n Mot. Transfer Venue 3, ECF No. 228.
[16] Defs.' Suppl. Br. Supp. Mot. Transfer Venue 2, ECF No. 231-1.
[17] Pl.'s Suppl. Br. Opp'n Mot. Transfer Venue 3, ECF No. 228.

Although the storage locations of the source code, Atlanta and Portland, are each closer to one district, the Court gives weight to the parties' agreement to view the source code at Plaintiff's counsel's offices in Texas, at least one of which is located in the Northern District of Texas. Additionally, Plaintiff contends that evidence as to at least one company, AT&T, is located in the Northern District of Texas. Moreover, despite Defendants' insistence that Plaintiff maintains two offices in the Northern District of California,[18] Plaintiff moved its headquarters to Bastrop, Texas and submits that information central to this case—"network equipment, many employees, documents and their custodians"—are located in Texas, not the Northern District of California.[19] Thus, on balance, the Court concludes that this factor weighs against transfer because Defendants have not shown that the Northern District of California is clearly more convenient.

### 2. Availability of Compulsory Process

The second factor evaluates "the availability of compulsory process to secure the attendance of witnesses." *Id.* at 360 (citation omitted). Whether either the current venue or the transfer venue "enjoy absolute subpoena power for both depositions and trial" is the relevant consideration. *Id.*

Defendants claim that two companies, Dropbox and Uber, have indicated they will not willingly provide witnesses.[20] In response, Plaintiff presents evidence that it has already voluntarily removed Uber from its damages case.[21] This leaves Dropbox. However, the parties have yet to identify any specific Dropbox employees for which compulsory process would be necessary for the parties to present their case to a jury. As the Fifth Circuit recently explained, this

---

[18] Defs.' Suppl. Resp. Br. Supp. Mot. Transfer Venue 1, ECF No. 232.
[19] Pl.'s Resp. 18, ECF No. 168-3.
[20] Defs.' Suppl. Br. Supp. Mot. Transfer Venue 2, ECF No. 231-1.
[21] Defs.' Suppl. Resp. Br. Supp. Mot. Transfer Venue 2, ECF No. 232.

factor deserves "less weight when it has not been alleged or shown that any witness would be unwilling to testify." *Planned Parenthood*, 52 F.4th at 631 (quoting *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d at 488, 499 (6th Cir. 2016)). Additionally, Dropbox has offices throughout the country, and Defendants have offered no evidence that any potential witness would lie within the Northern District of California's subpoena powers. Witnesses for this case will likely come from across the country, and no one district would have subpoena power for all unwilling witnesses. Thus, on balance, the Court finds that Defendants have not clearly shown that this factor supports transfer.

### 3. Costs of Attendance for Willing Witnesses

The third factor assess the cost of attendance for willing witnesses. *TikTok*, 85 F.4th at 361. The Fifth Circuit uses a 100-mile threshold when evaluating this factor. *Id.* "When the distance between an existing venue for trial and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to the witnesses increases in direct relationship to the additional distance to be traveled." *Id.* (citation modified).

Defendants attempt to argue that Northern District of California would be more convenient by citing tens of thousands of documents involving Plaintiff's employees located in the Northern District of California.[22] But a closer reading shows that these documents correspond to only four employees. As Plaintiff observes, many key witnesses and advertisers live on the east coast.[23] For example, Plaintiff alleges that Defendant Eric Hananoki lives in Maryland and Defendant Angelo Carusone lives in the District of Columbia.[24] Likewise, four out of Defendant Media Matters's five executives are alleged to live in the District of Columbia.[25] And advertisers IBM, ESPN, and the

---

[22] *Id.*
[23] Pl.'s Suppl. Resp. Br. Opp'n Mot. Transfer Venue 3, ECF No. 233.
[24] Pl.'s Resp. 19, ECF No. 168-3.
[25] *Id.*

NBA are also based on the East Coast.[26] Moreover, Plaintiff asserts that it plans to call as witnesses at least one Texas based employee and a representative from AT&T.[27]

The Court declines to weigh the bare number of potential witnesses in each location as that appears to be nothing more than a numerical guess that fails to illuminate which witnesses are the most relevant. The Court merely highlights the geographical spread of potential witnesses, and notes that the Northern District of Texas is over 1,000 miles closer to the District of Columbia and New York than is the Northern District of California. As the Fifth Circuit recently explained, "the primary witness in this case—must now travel over one thousand additional miles to testify. As should be plain, that is a massive inconvenience." *Clarke*, 94 F.4th at 514. The same is true here. Making witnesses travel more than 1,000 additional miles is massively inconvenient. The Court concludes that this factor weighs in favor of keeping this action in the Northern District of Texas.

### 4. All Other Practical Problems

"The fourth factor considers all other practical problems that make trial of a case easy, expeditious and inexpensive." *TikTok*, 85 F.4th at 362 (citation omitted). Defendants assert that "doubts about whether this Court has personal jurisdiction and venue risk serious inefficiencies with proceeding in this venue."[28] The Court disagrees with Defendants' doubts. Further, as the Fifth Circuit has explained "hypothetical questions of jurisdiction cannot tip this factor against transfer." *Id.* at 363 (citing *Def. Distributed*, 30 F.4th at 434–35).

This factor does weigh against transfer when the defendants "inexcusably delay" bringing their motion until "late in the litigation." *Id.* The Fifth Circuit affirmed a finding of inexcusable delay when petitioners filed their motion to transfer "seven months after th[e] case was unsealed

---

[26] Pl.'s Suppl. Resp. Br. Opp'n Mot. Transfer Venue 3, ECF No. 233.
[27] *Id.*
[28] Defs.' Suppl. Br. Supp. Mot. Transfer Venue 4, ECF No. 231-1.

and months into the discovery period." *Planned Parenthood*, 52 F.4th at 631. The court further explained that "[t]his conclusion is only strengthened by the fact that Petitioners waited to seek transfer until after the district court denied their motion to dismiss and motion for reconsideration." *Id.*

Defendants waited over 500 days[29] and filed 11 motions[30] before moving to transfer this case to the Northern District of California. Even so, Defendants argue they filed their Motion with "reasonable promptness" because they sought "transfer soon after the Court denied certification of its order finding personal jurisdiction and venue in this district and based on recent discovery that shows the Northern District of California to be the most convenient forum."[31] Defendants mischaracterize the litigation in this action. First, Defendants did not seek to transfer venue "soon after" the denial of certification of an immediate appeal. Instead, they waited over two months.[32] Second, Defendants waited until after the Court denied two motions to dismiss and a motion to certify an appeal before filing their transfer motion.[33] It certainly appears that Defendants are attempting to take multiple bites at the apple. *See id.* at 631 ("Given the timing of Movant's motion to transfer, it would emphatically not serve the interest of justice to allow him to take a second bite at the apple in [a new state], just after learning he would lose in [the current state]."). Given that the Court has now invested almost two years into this litigation, resolved no fewer than seven

---

[29] *See* Pl.'s Original Compl., ECF No. 1 (filed November 20, 2023).
[30] *See* Defs.' Mot. Dismiss Pl.'s Original Compl., ECF No. 31; Defs.' Mot. Stay Disc. Pending Ruling on Mot. to Dismiss, ECF No. 35; Defs.' Mot. Dismiss Pl.'s Am. Compl., ECF No. 40; Defs.' Renewed Mot. Stay Disc. Pending Ruling on Mot. Dismiss, ECF No. 43; Defs.' Mot. to Compel Corrected Certificate of Interested Person, ECF No. 73; Defs.' Mot. Certify Immediate Appeal, ECF No. 93; Defs.' Emergency Mot. Stay; ECF No. 99; Defs.' Mot. Compel Disc. Resp., ECF No. 113; Defs.' Mot. Compel Disc., ECF No. 182; Defs.' Mot. for Leave to Increase Dep. and to Amend Scheduling Order, ECF No. 185; Defs.' Mot. for Status Conference, ECF No. 186.
[31] Defs.' Br. Supp. Mot. Transfer Venue 21, ECF No. 153-1.
[32] The Court issued its Order denying Defendants Motion on January 2, 2025. Defendants did not file their Notice of Motion to Transfer Venue until March 6, 2025.
[33] *See* Order, Feb. 28, 2024, ECF No. 39; Order, Aug. 29, 2025, ECF No. 82; Order, Jan. 2, 2025, ECF No. 134.

motions,[34] and an interlocutory appeal remains at the Fifth Circuit,[35] the Court finds that this factor weighs against transfer.[36]

### 5. Administrative Difficulties Flowing from Court Congestion

The first public interest factor and fifth overall factor assesses "the administrative difficulties flowing from court congestion." *TikTok*, 85 F.4th at 362 (citation omitted). "The focus is on docket efficiency, an issue we have recognized the district court is better placed to evaluate." *Id.*

Defendants cite to the Court's explanation in a prior order regarding the busyness of the Court's docket as a reason to support transfer.[37] Plaintiff in turn cites statistics contrasting Northern District of Texas courts and Northern District of California courts to support denying transfer.[38] Without opining on the accuracy of Plaintiff's statistics or their applicability here, the Court maintains that it does carry a very busy docket. However, due to this, the Court manages its docket very efficiently. Neither party has alleged that this Court has not been efficiently trying to move this case to trial. In fact, much of the delay in this case has been Defendants' jurisdictional challenges and related appeals. The Court originally set this case for trial on January 6, 2025[39] and has needed to reset trial three times.[40] But for Defendants' delays, this case would likely be resolved by now. In spite of these delays, the Court has consistently moved this case forward

---

[34] *See* Order, Feb. 28, 2024, ECF No. 39; Order, Apr. 26, 2024, ECF No. 54; Order, Aug. 16, 2024, ECF No. 81; Order, Aug. 29, 2024, ECF No. 82; Order, Sept. 27, 2024, ECF No. 98; Order, Oct. 3, 2024, ECF No. 106; Order, Jan. 2, 2025, ECF No. 134.
[35] *See X v. Media Matters*, No. 24-10900 (5th Cir., notice of appeal filed Oct. 2, 2024).
[36] Indeed, the Fifth Circuit has said that a district court lacks jurisdiction to transfer a case when an appeal is pending before them. *See In re Fort Worth Chamber of Commerce*, 100 F.4th 528, 537 (5th Cir. 2024).
[37] Defs.' Br. Supp. Mot. Transfer Venue 17, ECF No. 153-1.
[38] Pl.'s Suppl. Br. Opp'n Mot. Transfer Venue 6, ECF No. 228.
[39] *See* Scheduling Order 1, Jan. 22, 2024, ECF No. 14.
[40] *See* Order, June 13, 2024, ECF No. 69; Order, Nov. 18, 2024, ECF No. 130; Order, May 9, 2025, ECF No. 194.

toward trial. The Court would not be so bold as to evaluate the docket efficiency of its counterparts in the Northern District of California, but it can unequivocally say that it has capacity to handle this case. Accordingly, the Court finds that this factor does not support transfer.

### 6. Local Interest in Having Localized Interests Decided at Home

The sixth factor focuses on "the local interest in having localized interests decided at home." *TikTok*, 85 F.4th at 364 (citation omitted). The Court looks at the "significant connections between a particular venue and the events that gave rise to a suit." *Def. Distributed*, 30 F.4th at 435. However, "[n]ot all cases are 'localized.'" *In re Chamber of Commerce of United States of Am.*, 105 F.4th 297, 308 (5th Cir. 2024). Some cases involve "defendants and . . . witnesses [who are] located across the state and across the country." *Id.* In these instances, the Court cannot say that one jurisdiction has a greater stake in the litigation than another. *Id.*

As the Court discussed above, Defendants and witnesses are located across the country. Defendants contend that the Northern District of California has a local interest in this case due to Plaintiff's headquarters being located there at the time the suit was initiated. Although that may have been true at the time, the same is not true now. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 34 (1988) (Scalia, J., dissenting) ("[T]he courts in applying § 1404(a) have examined a variety of factors, each of which pertains to facts that currently exist or will exist."); *see also Lynk Labs, Inc. v. Home Depot USA, Inc.*, No. 6:21-CV-00097-ADA, 2022 WL 1593366, at *6 (W.D. Tex. May 19, 2022) (quoting *Seagen Inc. v. Daiichi Sankyo Co., Ltd.*, No. 2:20-CV-00337-JRG, 2021 WL 3620428, at *2 (E.D. Tex. Apr. 19, 2021)) ("Whether to transfer a case for convenience bears primarily on post-complaint matters."). Plaintiff has relocated its headquarters to Texas. And Texas has an interest in protecting Texas based business from potential interference. Even though Plaintiff's headquarters are not located within the Northern District of Texas, residents of the

Northern District have an interest in protecting Texas businesses—including AT&T which employs several thousand Dallas-Fort Worth residents.[41] Plaintiff is now at home in Texas. Thus, on balance, this factor is neutral or favors the Northern District of Texas. Because Defendants have not demonstrated that the Northern District of California is "clearly more convenient than the venue chosen by the plaintiff" the Court weighs this factor against transfer. *Volkswagen*, 545 F.3d at 315.

### 7. Familiarity of the Forum with the Law

The seventh factor assesses the current district's "familiarity with the law that will govern the case." *TikTok*, 85 F.4th at 365 (citation omitted). "This factor most commonly applies where the destination venue is in a different State—in which case that State's familiarity with the applicable law would be especially probative to the transfer analysis." *Id.*

Plaintiff brought Texas state law claims against Defendants. Despite filing two motions to dismiss citing Texas law,[42] Defendants assert that California law should apply to this dispute due to a choice of law provision in Plaintiff's then-applicable terms of service.[43] Plaintiff disputes this, contending that Defendants' invocation of the choice of law provision is untimely or that the choice of law provision is inapplicable to its claims.[44] It also asserts that "two of the three Defendants are not parties to the Former [terms of service] that contains the forum selection clause."[45]

Although the Court has not held which law applies (namely because the issue has not been presented here), Plaintiff raises plausible arguments that Texas law should apply, and the Court

---

[41] Nick Wooten, *AT&T Searching For Office Space Outside of Downtown Dallas*, THE DALLAS MORNING NEWS (Sep. 12, 2025), https://www.dallasnews.com/business/real-estate/2025/09/12/att-searching-for-office-space-outside-of-downtown-dallas/ [https://perma.cc/9GHM-URDV].
[42] Defs.' Mot. Dismiss Pl.'s Original Compl., ECF No. 31; Defs.' Mot. Dismiss Pl.'s Am. Compl., ECF No. 40.
[43] Defs.' Br. Supp. Mot. Transfer Venue 2, ECF No. 153-1.
[44] *See* Pl.'s Resp., ECF No. 168-3.
[45] *Id.* at 13.

13

applied Texas law when deciding Defendants' Motion to Dismiss.[46] *See Cory v. Stewart*, 103 F.4th 1067, 1076 (5th Cir. 2024) ("In Texas, to access Texas law despite a [differing] choice-of-law clause, the [movant] must prove the clause is either (1) unenforceable or (2) inapplicable to the asserted claim.") (internal citations omitted); *see also Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726 (5th Cir. 2003), opinion modified on denial of reh'g, 355 F.3d 356 (5th Cir. 2003) ("We hold that, because the parties entered into a narrow choice of law clause, Texas law applies to and, at least conceptually, preserves some of those noncontractual claims."). The Court recognizes that "federal judges routinely apply the law of a State other than the one in which they sit" and that the parties have not pointed to some "exceptionally arcane features of Texas law that are likely to defy comprehension by a federal judge sitting in California." *TikTok*, 85 F.4th at 365 (citation modified). Balancing these considerations, the Court concludes that this factor is neutral. However, because Defendants have not demonstrated that the Northern District of California is "clearly more convenient than the venue chosen by the plaintiff," the Court weighs this factor against transfer. *Volkswagen*, 545 F.3d at 315.

### 8. Unnecessary Conflict of Laws

The final factor considers "the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *TikTok*, 85 F.4th at 366 (citation omitted). Defendants assert this factor is neutral.[47] Plaintiff contests this, citing Defendants desire to invoke California's anti-SLAPP law.[48] Because neither party weighs this in favor of transfer, neither does the Court. The Court finds credence in Plaintiff's argument that transferring could result in unnecessary litigation regarding the applicability of California's anti-SLAPP provision. But given Defendants late-in-

---

[46] *See* Order, Aug. 29, 2024, ECF No. 82.
[47] Defs.' Suppl. Br. Supp. Mot. Transfer Venue 5, ECF No. 231-1.
[48] Pl.'s Suppl. Br. Opp'n Mot. Transfer Venue 9, ECF No. 228.

the-game assertion that California law applies, that fight may come regardless of venue. Thus, the Court finds this factor to be neutral. And because Defendants have not demonstrated that the Northern District of California is "clearly more convenient than the venue chosen by the plaintiff," the Court weighs this factor against transfer. *Volkswagen*, 545 F.3d at 315.

\* \* \*

Weighing the private and public interest factors, the Court finds that Defendants have not clearly demonstrated that a transfer would be significantly more convenient for the parties and witnesses. Even outside of the eight factors, Defendants' failure to promptly move for transfer weighs heavily against transferring this action. *See Media Matters*, 143 F.4th at 639. As such, Defendants have not clearly established good cause to transfer. Accordingly, the Court respects the venue chosen by Plaintiff. Defendants' Motion to Transfer under 28 U.S.C. § 1404(a) is **DENIED**.

### C. 28 U.S.C. § 1406(a)

Finally, Defendants request transfer or dismissal under 28 U.S.C. § 1406(a).[49] Transfer and dismissal under § 1406(a) are conditioned on the initial forum being wrong. *Atl. Marine*, 571 U.S. at 59. The Court has previously found that venue is proper in the Northern District of Texas.[50] Defendants continue to argue "no substantial part of the events giving rise to this claim arose" in the Northern District of Texas.[51] Defendants' discovery evidence is insufficient to support their position that the Northern District of Texas is an improper venue. Therefore, the Court reaffirms its previous holding that venue is proper in the Northern District of Texas. Accordingly, the Court **DENIES** Defendants Motion to Transfer or Dismiss pursuant to 28 U.S.C. § 1406(a).

---

[49] Defs.' Br. Supp. Mot. Transfer Venue 24, ECF No. 153-1.
[50] *See* Order, Aug. 29, 2024, ECF No. 82.
[51] Defs.' Br. Supp. Mot. Transfer Venue 24, ECF No. 153-1; Defs.' Suppl. Br. Supp. Mot. Transfer Venue 9, ECF No. 231-1.

## IV.  CONCLUSION

For the reasons explained above, Defendants' Motion to Transfer Venue based on the forum selection clause, 28 U.S.C. § 1404, or 28 U.S.C. § 1406 is **DENIED**. The Court also **DENIES** Defendants' Motion to Dismiss based on 28 U.S.C. § 1406(a).

**SO ORDERED** on this **16th day** of **September, 2025**.

_Reed O'Connor_
**CHIEF UNITED STATES DISTRICT JUDGE**