# UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS FORT WORTH DIVISION

**X CORP.**, a Nevada corporation,
          Plaintiff,

          vs.

**MEDIA MATTERS FOR AMERICA**, a Washington, D.C. non-profit corporation, **ERIC HANANOKI**, and **ANGELO CARUSONE**,
          Defendants.

Case No. 4:23-CV-01175-O

## APPENDIX TO PLAINTIFF'S RESPONSE AND BRIEF IN OPPOSITION TO DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO COMPEL DISCOVERY

1.  Declaration of Jeff Carlton (October 3, 2025) ...............................................................Appx. 006

2.  Declaration of Goldy Tenreiro-Braschi (October 2, 2025) ...........................................Appx. 009

3.  Declaration of Liz Carbone (October 2, 2025) .............................................................Appx. 012

4.  Plaintiff's Responses and Objections to Defendants' Seventh Set of Requests for Production (April 28, 2025) ......................................................................................Appx. 015

5.  Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone's First Set of Requests for Production (May 6, 2024) ................................Appx. 027

6.  Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone's Second Set of Requests for Production (May 9, 2024)............................Appx. 041

7.  Plaintiff's Supplemental Responses and Objections to Defendants' Fifth Set of Interrogatories (October 3, 2025) ...............................................................................Appx. 051

8.  Plaintiff's Responses and Objections to Defendants' Fifth Set of Interrogatories (April 28, 2024).....................................................................................Appx. 056

**Appx. 001**

9.  Plaintiff's letter to Defendants serving thirteenth production of documents

(February 21, 2025) ...............................................................................Appx. 121

10. Plaintiff's response to Defendants' discovery letter (May 28, 2025) .........................Appx. 123

11. XCORP_0749947 ...............................................................................Appx. 128

**Appx. 002**

Dated: October 3, 2025

Respectfully submitted.

*/s/ Christopher D. Hilton*
Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
Ari Cuenin
Texas Bar No. 24078385
Elizabeth Brown Fore
Texas Bar No. 24001795
Michael R. Abrams
Texas Bar No. 24087072
Alithea Z. Sullivan
Texas Bar No. 24072376
Alexander M. Dvorscak
Texas Bar No. 24120461
Cody C. Coll
Texas Bar No. 24116214
**STONE HILTON PLLC**
600 Congress Ave., Ste. 2350
Austin, TX 78701
Telephone:(737) 465-3897
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
elizabeth@stonehilton.com
michael@stonehilton.com
alithea@stonehilton.com
alex@stonehilton.com
cody@stonehilton.com

John C. Sullivan
Texas Bar No. 24083920
**S|L LAW PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

*Attorneys for Plaintiff X Corp.*

**Appx. 003**

## CERTIFICATE OF SERVICE

I hereby certify that this document was served on all counsel for record on October 3, 2025, via email and the Court's CM/ECF system.

*/s/ Michael R. Abrams*
Michael R. Abrams

**Appx. 004**

# TAB 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**X CORP.**, a Nevada corporation,
      Plaintiff,

    vs.

**MEDIA MATTERS FOR AMERICA**, a
Washington, D.C. non-profit corporation,
**ERIC HANANOKI**, and **ANGELO
CARUSONE**,
      Defendants.

Case No. 4:23-CV-01175-O

## DECLARATION OF JEFF CARLTON

1.      My name is Jeff Carlton, and I am a Director of Safety at X Corp., a position I have held since July 2023. I am competent to testify to the matters stated herein and make this declaration based upon my personal knowledge and/or based upon my review of X Corp.'s business records.

2.      By virtue of my employment with X Corp., I have an understanding of the X Platform's data retrieval systems.

3.      X Corp. can estimate, but cannot determine with absolute certainty, whether a specific post was deleted voluntarily by the user, deleted involuntarily by the user after a platform enforcement action, or removed involuntarily through platform enforcement actions.

4.      When provided with a specific post identification number, X can typically ascertain whether the post remains active on the account, and whether the post was subject to enforcement action. From this data, X can extrapolate whether a particular post was likely deleted voluntarily or involuntarily. However, this analytical process cannot guarantee 100% accuracy in all cases.

1

**Appx. 006**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 3, 2025, in <u>San Francisco</u>.

Signed by:

*Jeff Carlton*

<u>69BA04B0326A489...</u>

Jeff Carlton

2

**Appx. 007**

TAB 2

**UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| **X CORP.**, a Nevada corporation,<br>              Plaintiff,<br><br>          vs.<br><br>**MEDIA MATTERS FOR AMERICA**, a<br>Washington, D.C. non-profit corporation,<br>**ERIC HANANOKI**, and **ANGELO<br>CARUSONE**,<br>              Defendants. | Case No. 4:23-CV-01175-O |

### DECLARATION OF GOLDY TENREIRO-BRASCHI

1.      My name is Goldy Tenreiro-Braschi, and I am the Global Brand Safety Lead at X Corp., a position I have held since December 2023. I am competent to testify to the matters stated herein and make this declaration based upon my personal knowledge and/or based upon my review of X Corp.'s business records.

2.      By virtue of my employment with X Corp., I have direct knowledge and understanding of how advertisements are displayed to users on the X Platform, including with respect to the filter restricting advertisements to new accounts.

3.      I instructed my team to search for documents responsive to Defendants' Interrogatory No. 16 that describe the ad filter, which, at the time of Defendants' November 2023 articles, prevented ads from being served on new X accounts within the first 90-days of the account's creation. No responsive documents were found.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**Appx. 009**

Docusign Envelope ID: F95620BA-DE8A-4E58-A4C0-45413BED7CBE

Executed on ___October 2_____, 2025, in___New York_____.

Signed by:

Goldy Tenreiro-Braschi
AEEB0A1B03D04C6...

Goldy Tenreiro-Braschi
Global Brand Safety Lead
X Corp.

2

**Appx. 010**

TAB 3

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

|  |  |
|---|---|
| **X CORP.**, a Nevada corporation, <br> Plaintiff, <br><br> vs. <br><br> **MEDIA MATTERS FOR AMERICA**, a Washington, D.C. non-profit corporation, **ERIC HANANOKI**, and **ANGELO CARUSONE**, <br> Defendants. | Case No. 4:23-CV-01175-O |

## DECLARATION OF LIZ CARBONE

1.      My name is Liz Carbone, and I am a senior manager in X Corp.'s accounting department, a position I have held since November 2023. I have been employed in the accounting department of X Corp., and its predecessor, Twitter, since September 2014. I am competent to testify to the matters stated herein and make this declaration based upon my personal knowledge and/or based upon my review of X Corp.'s business records.

2.      By virtue of my employment at X, I have direct knowledge and understanding of how X tracks and accounts for advertising revenue.

3.      X documents contain aggregated revenue information, aggregated at the level of advertiser account, funding source, and particular campaign. The campaign level is the most granular level at which X tracks revenue.

4.      X does not track the amount of revenue earned per individual post or specific impression for advertisements.

5.      Likewise, X does not track revenues attributable to advertisements placed adjacent to posts from specific user accounts.

**Appx. 012**

6.    Consequently, X does not track or keep accounting records showing advertising revenue at the level of granularity requested by Defendants in Request for Production No. 80 and possesses no documents responsive to that request.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on ___October 2___, 2025, in ___Chicago, Cook County, IL___.

Signed by:

*Liz Carbone*

E14E512EB03244A...

Liz Carbone
Senior Manager, Accounting
X Corp.

2

**Appx. 013**

TAB 4

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| **X CORP.**, a Nevada corporation, | § § § § | |
| *Plaintiff,* | § | |
| vs. | § § | **Case No. 4:23-cv-01175-O** |
| **MEDIA MATTERS FOR AMERICA,** a Washington, D.C. non-profit corporation, **ERIC HANANOKI**, and **ANGELO CARUSONE**, | § § § § § | |
| *Defendants.* | § § § | |

---

## PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANTS' SEVENTH SET OF REQUESTS FOR PRODUCTION

---

Plaintiff X Corp., through its undersigned counsel, submits its Responses and Objections to Defendants' Seventh Set of Requests for Production pursuant to Federal Rules of Civil Procedure 26 and 34.

**Appx. 015**

Dated: April 28, 2024

Respectfully submitted.

/s/ Christopher D. Hilton

|  |  |
|---|---|
| John C. Sullivan | Judd E. Stone II |
| Texas Bar No. 24083920 | Texas Bar No. 24076720 |
| **S\|L Law PLLC** | Christopher D. Hilton |
| 610 Uptown Boulevard, Suite 2000 | Texas Bar No. 24087727 |
| Cedar Hill, TX 75104 | Ari Cuenin |
| Telephone: (469) 523-1351 | Texas Bar No. 24078385 |
| Facsimile: (469) 613-0891 | Michael R. Abrams |
| john.sullivan@the-sl-lawfirm.com | Texas Bar No. 24087072 |
|  | Elizabeth Brown Fore |
|  | Texas Bar No. 24001795 |
|  | Alithea Z. Sullivan |
|  | Texas Bar No. 24072376 |
|  | Alexander M. Dvorscak |
|  | Texas Bar No. 24120461 |
|  | Cody C. Coll |
|  | Texas Bar No. 24116214 |
|  | **Stone Hilton PLLC** |
|  | 600 Congress Ave., Ste. 2350 |
|  | Austin, TX 78701 |
|  | Telephone: (737) 465-3897 |
|  | judd@stonehilton.com |
|  | chris@stonehilton.com |
|  | ari@stonehilton.com |
|  | michael@stonehilton.com |
|  | elizabeth@stonehilton.com |
|  | alithea@stonehilton.com |
|  | alex@stonehilton.com |
|  | cody@stonehilton.com |

***Counsel for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that this document was served on all counsel of record for Defendants via

email on April 28, 2025, pursuant to counsel's agreement to accept service via electronic means.

/s/ Alexander M. Dvorscak
Alexander M. Dvorscak

2

**Appx. 016**

**REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 79:** All content posted to any of the following accounts from November 15, 2022 through the present, including any content that was removed, suspended, or otherwise disciplined for any reason: @CaratacusNick, @KarlRadl, @TalkRadioDeity, @Paddy_Whiteman, @Correction2016, @HISTinGrayscale, @The_National1, @SonnyThomasShow, @neuralvarez, @TheeCeltic, @1776Diva, @KeepEuropeWhite, @OdenssonV, @o7CW_Schneiders, and @bambkb.

**OBJECTIONS:** X objects that the request is overly broad and unduly burdensome as it requests documents unrelated to the claims or issues in this litigation. This request calls for the production of posts from third parties that do not appear next to advertisements, and as such are not probative to any of the claims or defenses in this litigation. X further objects that the request is overbroad as to time. This litigation concerns articles published in November 2023, as such, posts from a year prior are not relevant. X additionally objects that all of the public posts from these accounts are, by virtue of being publicly made, equally available to Defendants as they are to Plaintiff and as such the request exceeds the requirements of Rule 26.

X Corp. further objects to the Request to the extent it exceeds the scope of basic subscriber information that X Corp. may permissibly produce under the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 et seq., including the Stored Communications Act, 18 U.S.C. §§ 2701 et seq. ("SCA"), and to the extent it seeks the content of a user's electronic communications, such as messages, posts, comments, photos, or videos, because such a request is barred by the SCA. The SCA does not permit private parties to compel production of the content of a user's electronic communications from service providers such as X Corp. by service of a subpoena or court order, and there is no exception for civil discovery demands. 18 U.S.C. §§ 2702(a)(1), (2); 2702(b)(1)-(9); *see also Suzlon Energy Ltd. v. Microsoft Corp.*, 671 F.3d 726, 730 (9th Cir. 2011) (holding that non-governmental entities may not obtain communications content with a civil discovery demand because it would "invade[] the specific interests that the [SCA] seeks to protect."); *Republic of Gambia v. Facebook, Inc.*, 575 F. Supp. 3d 8, 16 (D.D.C. 2021) (holding that the SCA prohibits disclosure in civil discovery of social media pages and associated communications, including deleted communications); *Optiver Australia Pty. Ltd. v. Tibra Trading Pty. Ltd.*, 2013 WL 256771, at *1 (N.D. Cal. 2013) ("By now it is well-established that civil subpoenas…are subject to the prohibitions of the Stored Communications Act."); *O'Grady v. Superior Court*, 139 Cal. App. 4th 1423, 1441-47 (2006) (holding that the SCA bars civil litigants from obtaining communications content from a service provider). Such requests must be directed to the user or other non-provider entities. Active users can log into their accounts at any time to preserve, collect, produce, and authenticate their account contents. Various tools are available to help users access and download their information. Descriptions of these tools are available in X Corp.'s Help Center (https://help.twitter.com/en/managing-your-account/accessing-your-x-data).

**RESPONSE:** Pursuant to its objections, X will not produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 80:** All Documents showing monthly, weekly, and annual advertising revenue X generated from ads placed adjacent to content from any of the following

3

**Appx. 017**

accounts from November 1, 2022 to the present: @CaratacusNick, @KarlRadl, @TalkRadioDeity, @Paddy_Whiteman, @Correction2016, @HISTinGrayscale, @The_National1, @SonnyThomasShow, @neuralvarez, @TheeCeltic, @1776Diva, @KeepEuropeWhite, @OdenssonV, @o7CW_Schneiders, and @bambkb.

**OBJECTIONS:** X objects that the request calls for the production of documents related to the revenue received from advertisers who X did not identify in response to Defendants' Interrogatory No. 4 and over whom X does not seek damages. The Court has already upheld X's objections for burden and relevance with respect to production of aggregate advertising revenue that were lodged in response to Defendants' Request for Production No. 9. ECF No. 135 at 9. X further objects that the request as written appears to call for the creation of documents as X does not generally track advertising revenue on a per-ad-adjacency basis. X further objects that the request is overly broad, unduly burdensome because the creation of such documents would call for the expenditure of a significant amount of internal engineering and finance time to determine even an approximate amount of revenue that was traceable to ads appearing next to posts from certain accounts.

**RESPONSE:** Pursuant to its objections, X has conducted a reasonable search and does not have documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 81:** All documents showing the creator monetization status or any revenue shared with any of the following accounts from November 1, 2022 to the present, including all monthly revenue of any ads: @CaratacusNick, @KarlRadl, @TalkRadioDeity, @Paddy_Whiteman, @Correction2016, @HISTinGrayscale, @The_National1, @SonnyThomasShow, @neuralvarez, @TheeCeltic, @1776Diva, @KeepEuropeWhite, @OdenssonV, @o7CW_Schneiders, @bambkb, @MarkACollett, @HistoryinReview, @EMichaelJones1, @LanaLokteff, @Henrik_Palmgren, @NatSocNetwork, @newunion76, @RealStewPeters, @bakedalaska, @RichardBSpencer, @BasedTorba, @Lucas_Gage_, and @wayotworld, @RealAlexJones, @KTHopkins, @TRobinsonNewEra, @LauraLoomer, @KeithWoodsYT, @KanekoaTheGreat, @libsoftiktok, @stillgray, @NickJFuentes, @dom_lucre, and @kanyewest.

**OBJECTIONS:** X objects that the request is vague because the phrase "creator monetization status" is undefined and is not a term that is used by X. X will interpret the request as if the phrase was defined to refer to X's Creator Revenue Sharing program (as described at https://help.x.com/en/using-x/creator-revenue-sharing). X also objects that the request is overly broad and unduly burdensome as written as it calls for the production of documents unrelated to the claims or issues in this litigation, including all documents showing creator monetization or revenue shared with the listed accounts, which would include such plainly irrelevant documents as routine and automated communications with those accounts. X further objects that the request calls for the production of documents that reveal protected personal data of third parties including financial information, account information, and other sensitive information.

**RESPONSE:** Pursuant to its objections, X will conduct a reasonable search and produce documents sufficient to show whether the listed users were participants in X's Creator Revenue Sharing program and the amount of shared revenue that the user account received from X.

**REQUEST FOR PRODUCTION NO. 82:** All communications, agreements or other documents between X and Double Verify, Integral Ad Science, and X related to Brand Safety statistics at X, including but not limited to any discussions or agreements related to the allegedly "misleading lower Brand Safety Rate" discussed in the following X post, https://x.com/XBusiness/status/1778914830579028441?lang=en, and any money or other consideration exchanged between X and Double Verify related to the alleged erroneous reporting.

**OBJECTIONS:** X objects that the request is overly broad, unduly burdensome, and vague as written because the request begins by calls for the production of documents related to Brand Safety statistics and the included X post, but then expands the request with the statement "including but not limited to," which would call for the production of every document between X and DoubleVerify and between X and Integral Ad Science ("IAS") without limitation to documents potentially relevant to this litigation. X will interpret the request as if the phrase "including but not limited to" was omitted.

**RESPONSE:** Pursuant to its objections, X will conduct a reasonable search and produce communications, agreements, and documents exchanged between X and DoubleVerify and between X and IAS that relate to brand safety statistics, the referenced X post, and any consideration paid by DoubleVerify to X related to the error described in the referenced X post.

**REQUEST FOR PRODUCTION NO. 83:** All documents related to the requests that X received from "every single media holding company" and "every single big brand marketer" to deepen its relationship with DoubleVerify, according to the quote attributed to X's head of business operations Joe Benarroch in the following article, https://nypost.com/2024/04/14/tech/x-platforms-brand-safety-score-for-advertisers-hurt-by-error-for-almost-5-months/.

**OBJECTIONS:** X objects that the request is vague as it calls for the production of documents related to "every single media holding company" and "every single big brand marketer" as described by an individual who is neither employed by X nor in the control of X. As such X has no knowledge of what companies or marketers the former-employee was referring to at the time that he made his comment to the NY Post.

**RESPONSE:** Pursuant to its objections, X will conduct a reasonable search and produce communications with X's advertisers that refer to advertisers' requests that X engage with DoubleVerify in relation to brand safety.

**REQUEST FOR PRODUCTION NO. 84:** All documents and communications related to the following statement regarding X's allegation that Double Verify misrepresented X's Brand Safety Rate in 2023 or 2024: "For advertisers who made business decisions due to this badly misrepresented metric, your X team along with DoubleVerify will be in touch." https://x.com/XBusiness/status/1778914830579028441?lang=en.

5

**Appx. 019**

**OBJECTIONS:** n/a.

**RESPONSE:** X will conduct a reasonable search and produce non-privileged documents that discuss DoubleVerify's misrepresentation of X's Brand Safety Score as described in the included X post.

**REQUEST FOR PRODUCTION NO. 85:** All documents showing any changes in X's algorithm for presenting advertisements to users from January 1, 2022, through the present.

**OBJECTIONS:** X objects that the request is overly broad and unduly burdensome as it requests all changes made to the X's algorithm. These number in the tens, if not hundreds, of thousands with potentially dozens of changes made each day including minor bug fixes that are not material and are not probative to any of the claims or defenses in the litigation. X similarly the request is overly broad and unduly burdensome as it calls for the production of *all* documents, which as defined, would call for the production of all communications between X engineers as they go about their day-to-day work of improving and implementing changes to the algorithm. X further objects to the extent that the request could be interpreted as calling for the production of X's source code itself, which is a highly sensitive trade secret, disclosure of which could be highly negative and destructive to X's commercial position in the marketplace of social media companies.

**RESPONSE:** Pursuant to its objections, X will conduct a reasonable search and produce non-privileged documents sufficient to show changes made to the algorithm regarding how advertisements are shown to users. X will only produce such documents pursuant to a jointly-agreed upon protective order between the Parties that protects the confidentiality of X's source code.

**REQUEST FOR PRODUCTION NO. 86:** All documents related to the allegations in paragraph 61 and 62 of X's CCDH Complaint.

**OBJECTIONS:** X objects that the request is overly broad and unduly burdensome as it calls for the production of *all* documents concerning paragraphs pled in a separate and unrelated litigation without limitation to documents which would be probative to claims and defenses in this litigation. As such, the request as written calls for the production of a large number of irrelevant documents. An unlimited search also calls for an unduly burdensome review and logging of large numbers of documents covered by attorney-client and work product privilege because the broad request specifically calls for documents related to a legal filing. X further objects that the information sought is irrelevant because the events referred to in the complaint between X and CCDH occurred in November 2022 and the events at issue in this litigation did not occur until November 2023.

**RESPONSE:** Pursuant to its objections, X will not search for or produce documents responsive to this request.

**Appx. 020**

**REQUEST FOR PRODUCTION NO. 87:** All documents related to the internal investigation described in paragraph 64 of X's CCDH Complaint.

**OBJECTIONS:** X objects that the request is overly broad and unduly burdensome as it calls for the production of *all* documents related to an investigation undertaken in an unrelated litigation matter into an unrelated legal issue. The investigation this request refers to was undertaken to determine how CCDH violated X's terms of service and was able to receive unauthorized access to X's Platform. Because these are not issues in the present litigation, the request as written calls for the production of a large number of irrelevant documents. X further objects on the basis of attorney-client and work product privilege because the broad request calls for documents related a legal filing and internal investigation.

**RESPONSE:** Pursuant to its objections, X will not search for or produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 88:** All documents related to Elon Musk's appearance and statements at the November 2023 DealBook conference, including any internal and external communications related to the effect of those statements on advertisers.

**OBJECTIONS:** X objects that the request is overly broad, unduly burdensome, and vague as written because the request begins by calls for the production of *all* documents related to Musk's appearance and statements and then is limited to communications related to the effect of those statements on advertisers. X will interpret the request as if it was limited to those related communications.

**RESPONSE:** Pursuant to its objections, X will conduct a reasonable search and produce non-privileged communications regarding Musk's appearance and statements made at the November 2023 DealBook conference that discuss the effect it had on X's advertisers.

**REQUEST FOR PRODUCTION 89:** All documents related to the advertising revenue generated from advertisements placed adjacent to content from any account that had been suspended for violation of X's hateful content policies from November 15, 2022 through the present.

**OBJECTIONS:** X objects that the request calls for the production of documents related to the revenue received from advertisers who X did not identify in response to Defendants' Interrogatory No. 4 and over whom X does not seek damages. The Court has already upheld X's objections for burden and relevance with respect to production of aggregate advertising revenue that were lodged in response to Defendants' Request for Production No. 9. ECF No. 135 at 9. X further objects that the request as written appears to call for the creation of documents as X does not track advertising revenue on a per-ad-adjacency basis. X further objects that the request is overly broad and unduly burdensome because the creation of such documents would call for the expenditure of a significant amount of internal engineering and finance time to determine even an approximate amount of revenue that was traceable to ads appearing next to posts from certain accounts.

**Appx. 021**

**RESPONSE:** Pursuant to its objections, X has conducted a reasonable search and does not have documents responsive to this request.

**REQUEST FOR PRODUCTION 90:** All documents related to the participation in X's Creator Monetization program by any account that had been suspended for violation of X's hateful content policies, including all documents showing the advertisement revenue sharing monthly, annual or other reporting period statements provided to the owners of such accounts from November 15, 2022 through the present.

**OBJECTIONS:** X objects that the request is overly broad and unduly burdensome as it calls for the production of *all* documents related to participation in X's program which would include all correspondence, including form correspondence, with the individual creators and users. As such the request as written calls for the production of large numbers of documents that are not relevant to the litigation. X further objects that the request calls for the production of documents that reveal protected personal data of third parties including financial information, account information, and other sensitive information.

**RESPONSE:** Pursuant to its objections, X will conduct a reasonable search and produce documents sufficient to show the revenue received by any user participating in X's Creator Monetization program who was also suspended for violation of X's hateful content policies between November 15, 2022 and the present.

**REQUEST FOR PRODUCTION 91:** All documents related to any fundraising, valuations, or appraisals of X from November 15, 2022 through the present.

**OBJECTIONS:** X objects that the request is overly broad and unduly burdensome as it calls for the production of documents that are not relevant to this litigation. X is claiming damages for the specific harm caused by Defendants' tortious conduct. X is producing documents in support of those damages and the casual basis of those damages, including in response to Interrogatory Nos. 7 and 13 and Request for Production Nos. 7, 17, and 33. X will likewise disclose an expert opinion supporting its damages, and provide Defendants with all the documents relied on by its expert, in accordance with the Court's schedule for doing so. Fundraising, valuations, or appraisals are irrelevant to determining damages at that level of detail and instead contain highly sensitive trade secret and financial information. The Court has already upheld X's objections for burden and relevance with respect to production of aggregate advertising revenue that were lodged in response to Defendants' Request for Production No. 9 and the same concerns are present here. *See* ECF No. 135 at 9.

**RESPONSE:** Pursuant to its objections, X will not search for or produce documents responsive to this request.

**Appx. 022**

**REQUEST FOR PRODUCTION 92:** All tickets generated by your Jira software related to X's brand safety controls.

**OBJECTIONS:** X objects that, as written, this request is overbroad and unduly burdensome and would require the review and production of many thousands of documents. This request is also duplicative because Jira tickets often trigger corresponding email correspondence, and X has already agreed to produce documents, including emails, related to brand safety controls. The request is likewise not reasonably limited in time or scope to tickets that affect the advertisers at issue in this litigation therefore calls for the production of irrelevant documents.

**RESPONSE:** Pursuant to its objections, X will not search for or produce documents responsive to this request as written but will meet and confer with Defendants regarding this request.

**REQUEST FOR PRODUCTION 93:** All Board Minutes and presentations made to your leadership team or Board of Directors regarding Brand Safety from January 1, 2022 through the present.

**OBJECTIONS:** X objects that the request is overbroad and unduly burdensome as the request calls for the production of board minutes and presentations which may have only tangential or limited mention of brand safety and as such the request calls for the production of highly sensitive trade secrets.

**RESPONSE:** Pursuant to its objections, X will conduct a reasonable search and produce non-privileged board minutes and presentations that materially discuss brand safety.

**REQUEST FOR PRODUCTION 94**: All documents concerning any analyses conducted, requested, prepared, or received by You or on Your behalf concerning brand safety and/or brand protection on the Platform between August 1, 2022 and January 1, 2024.

**OBJECTIONS:** X objects that the request is overly broad, unduly burdensome, and vague as written for calling for the production of *all* documents related to analyses of brand safety. Such a request would call for the production of every communication, document, and other tangible item related to such analysis which would call for the production of large numbers or irrelevant documents or documents of only tangential relevance.

**RESPONSE:** Pursuant to its objections, X will conduct a reasonable search and produce non-privileged documents sufficient to show the results of brand safety analyses that were conducted requested, prepared, or received by X. X will likewise produce documents sufficient to show all posts and ad adjacencies that were reviewed as part of these analysis with any related notes, comments, or scoring concerning those posts.

**Appx. 023**

**REQUEST FOR PRODUCTION 95**: All documents concerning any analyses conducted, requested, prepared, described, or summarized by any entity other than You concerning brand safety and/or brand protection on the Platform between August 1, 2022 and January 1, 2024.

**OBJECTIONS:** X objects that the request is duplicative and cumulative of request for production No. 94. X incorporates its objections by reference.

**RESPONSE:** Pursuant to its objections X directs Defendants to its response to Request for Production No. 94 but is willing to meet and confer with Defendants to determine if there are additional specific documents that would not be otherwise captured by that request.

**REQUEST FOR PRODUCTION 96:** All documents and communications from January 1, 2019 through the present discussing the effect of brand safety concerns on advertising.

**OBJECTIONS:** X objects that the request is overly broad and unduly burdensome both in respect to the potential volume of documents, many of which have already been requested under various other requests for production and in time as this request stretches back nearly five years prior to the publication of Defendants' articles and nearly four years prior to the purchase of then-Twitter by Musk. X further objects that the request is duplicative and cumulative of Request for Production Nos. 7 and 73.

**RESPONSE:** Pursuant to its objections, X directs Defendants to their Request for Production Nos. 7 and 73. X will additionally conduct a reasonable search and produce nonprivileged documents from January 1, 2022 to present that discuss brand safety concerns.

**REQUEST FOR PRODUCTION 97:** All documents related to any discussions about reasons for declines in advertising revenue, including specifically all documents related to advertiser concerns about Elon Musk, antisemitism, white supremacy, pornography, or brand safety from January 1, 2022 through the present.

**OBJECTIONS:** X objects that the request is cumulative of numerous other requests seeking documents related to communications with and about advertisers and their decision to advertise on the Platform including Request for Production Nos. 7, 17, and 33.

**RESPONSE:** Pursuant to its objections, X will conduct a reasonable search and produce nonprivileged documents responsive to this request.

**REQUEST FOR PRODUCTION 98:** All documents related to any claim by or any other party that any other organization or person other than Defendants is responsible for advertising losses, including but not limited to CCDH, the Anti-Defamation league, any other media organization that reported on X, or any other entity that X has sued or threated to sue.

**Appx. 024**

**OBJECTIONS:** X objects that the request is overly broad and unduly burdensome as it calls for documents related to other litigation. The request is not limited to effects on advertisers who X has listed in response to Interrogatory No. 4. The Court has already upheld X's objections for burden and relevance with respect to production of aggregate advertising revenue that were lodged in response to Defendants' Request for Production No. 9. ECF No. 135 at 9. The request is also unduly burdensome as it asks X to conduct an extensive privilege review because the request specifically calls for documents related to other actual or contemplated litigation. Additionally, this request is duplicative and cumulative of Request for Production Nos. 7, 17, and 33.

**RESPONSE:** Pursuant to its objections, X directs Defendants to their Request for Production Nos. 7, 17, and 33 but will not otherwise search for or produce documents that are only responsive to this request.

**REQUEST FOR PRODUCTION 99:** All documents related to xAI's acquisition of X, including any valuation, diligence, advertising projections, documents discussing Defendants or this lawsuit, and other documents.

**OBJECTIONS:** X objects that the request is wholly irrelevant to this litigation and is harassing. The diligence that was or was not done by xAI is not relevant to determining the damage caused by Defendants. Further, to the extent this request seeks documents supporting X's claims for damages, instead of the confidential and trade secret documents of X and Xai, X has or will be producing documents in support of its damages and the casual basis of those damages, including in response to Interrogatory Nos. 7 and 13 and Request for Production Nos. 7, 17, and 33. X will likewise disclose an expert opinion supporting its damages, and provide Defendants with all the documents relied on by its expert, in accordance with the Court's schedule for doing so. Projections of overall advertising revenue or expenses are irrelevant to determining damages at the level of detail related to Defendants' conduct and instead contain highly sensitive trade secret and financial information. The Court has already upheld X's objections for burden and relevance with respect to production of aggregate advertising revenue that were lodged in response to Defendants' Request for Production No. 9 and the same concerns apply here. ECF No. 135 at 9.

**RESPONSE:** Pursuant to its objections, X will not search for or produce documents responsive to this request.

**Appx. 025**

TAB 5

**Appx. 026**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

|  |  |
|---|---|
| X CORP.,<br><br>    *Plaintiff*,<br><br>    v.<br><br>MEDIA MATTERS FOR AMERICA,<br>*et al.*,<br><br>    *Defendants*. | Civil Action No. 4:23-cv-01175-O |

**DEFENDANTS MEDIA MATTERS FOR AMERICA, ERIC HANANOKI, AND ANGELO CARUSONE'S FIRST SET OF REQUESTS FOR PRODUCTION**

Pursuant to Federal Rules of Civil Procedure 26 and 34, Defendants Media Matters for America ("Media Matters"), Mr. Eric Hananoki, and Mr. Angelo Carusone, through their undersigned counsel, serve this First Set of Requests for Production ("Requests for Production" or "Requests") on Plaintiff X Corp.

Responses to these Requests are to be produced to the attention of Andrew LeGrand at Gibson, Dunn & Crutcher within 30 days of receipt. To arrange for electronic production, please contact counsel at xcorpsuit@elias.law. Anything that cannot be produced electronically should be produced to Mr. LeGrand at 2001 Ross Avenue Suite 2100, Dallas, Texas 75201.

Each Request for Production is subject to the Definitions and Instructions listed below.

**<u>DEFINITIONS</u>**

Except as specifically defined below, the terms used in this request shall be construed and defined in accordance with the Federal Rules of Civil Procedure and the Local Rules of the U.S.

1

**Appx. 027**

District Court for the Northern District of Texas, wherever applicable. Any terms not defined shall be given their ordinary meaning.

Defendants reserve their right to alter, supplement, amend, correct, clarify, or otherwise modify these Requests as discovery remains ongoing.

1. "Advertisers" means companies, organizations, individuals, or entities that pay to advertise or promote products, goods, services, or concepts, by purchasing space—including but not limited to advertisers referenced in Plaintiff's First Amended Complaint, ECF No. 37: Apple, Bravo, IBM, Oracle, Xfinity, Lions Gate Entertainment, Disney, Warner Brothers Discovery, Paramount Global, NBCUniversal, Comcast, Sony, Ubisoft, Amazon, eBay, Major League Baseball, New York Times Co., Samsung, Sports Illustrated, The Wall Street Journal, USA Today, Office Depot, Nokia, Dish, Bayer, Tyson Foods, Honeywell, Discovery, FanDuel, Thermo Fisher, National Women's Soccer League, the Pittsburgh Steelers, the Atlanta Falcons, Manchester City, DraftKings, FanDuel, T-Mobile, and The Athletic.

2. "Algorithm" refers to the X systems and processes, as that term is used in Plaintiff's First Amended Complaint, ECF No. 37, that, among other things, determines what content is presented to each X user.

3. "Amended Complaint" means Plaintiff's First Amended Complaint, filed at ECF No. 37 in this litigation, *X Corp. v. Media Matters for America et al*., No. 4:23-cv-01175-O.

4. "Any" or "all" mean "any and all."

5. "Communication" is synonymous in meaning and scope with the term "communication" as used in Local Rule 26, and includes any transfer of information of any type, whether written, oral, electronic, or otherwise, and includes but is not limited to transfers of

**Appx. 028**

information via email, report, phone call, letter, text message, Slack, Signal, direct messages on social media platforms, ephemeral messaging applications, instant messaging applications, voicemail message, voice message, written memorandum, note, summary, and other means.

6. "Content moderation" means any efforts taken by X to limit the appearance of Disputed Content (as defined herein) on the Platform.

7. "Creator Ads Revenue Sharing" refers to X's program wherein X users share revenue from other verified user's organic impressions of ads displayed in replies to content the user posts on X, as described here on X's website: https://help.twitter.com/en/using-x/creator-ads-revenue-sharing.

8. "Date" means the exact day, month, and year, if ascertainably, or, if not, the best available approximation (including relationship to other events).

9. "Disputed Content" means "extreme" and "fringe" content, as those terms are used in the Amended Complaint, *see* ECF No. 37 ¶ 9, and includes but is not limited to content expressing skepticism about the Holocaust, content expressing negative views or attitudes regarding Jewish people, Muslim people, Black people, Hispanic or Latino people, women, members of the LGBTQIA+ community, immigrants, non-English speakers, Asian people, or indigenous peoples, and content expressing positive views or attitudes regarding Adolf Hitler, white nationalism, or white supremacism.

10. "Document" is synonymous in meaning and scope to the term "document" as used in Federal Rule of Civil Procedure 34 and Local Rule 26 and includes, but is not limited to, records, reports, lists, data, statistics, summaries, analyses, communications (as defined above), computer discs, tapes, printouts, emails, databases, and any handwritten,

3

**Appx. 029**

typewritten, printed, electronically recorded, taped, graphic, machine-readable, or other material, of whatever nature and in whatever form, including all non-identical copies and drafts thereof, and all copies bearing any notation or mark not found on the original.

11. "Including" means "including, but not limited to."

12. The "November 16, 2023 Article" refers to the article written by Mr. Hananoki and originally published on November 16, 2023, titled "As Musk endorses antisemitic conspiracy theory, X has been placing ads for Apple, Bravo, IBM, Oracle, and Xfinity next to pro-Nazi content."

13. The "November 17, 2023 Article" refers to the article written by Mr. Hananoki and originally published on November 17, 2023, titled "X is placing ads for Amazon, NBA Mexico, NBCUniversal, and others next to content with white nationalist hashtags."

14. "Platform" means the social media website operated by X.

15. "Subscription Creators" refers to X's program wherein X users share a portion of the revenue X earns from other users subscribing to receive content from the user, as described here on X's website: https://help.twitter.com/en/using-x/subscriptions-creator.

16. "X" or "Plaintiff" means the Plaintiff in this Matter, X Corp., as well as its predecessor in interest, Twitter, Inc., including its owner, officers, directors, partners, members, managers, employees, representatives, staff, agents, consultants, and anyone acting on its behalf.

17. "You" and "your" means the Plaintiff in this Matter, X Corp., as well as its predecessor in interest, Twitter, Inc., including both entities' owners, officers, directors, partners, members, managers, employees, representatives, staff, agents, consultants, and anyone acting on their behalf.

**Appx. 030**

## INSTRUCTIONS

1. You shall produce materials and serve responses and any objections within 30 days after service of these Requests for Production.

2. If you object to any part of a Request, set forth the basis of your objection and respond to all parts of the Request to which you do not object. Any ground not stated in a timely objection is waived.

3. If, in responding to these Requests for Production, you encounter any ambiguities when construing a Request or definition, set forth the matter deemed ambiguous and the construction used in responding. Where you, in good faith, doubt the meaning or intended scope of a Request, and the sole objection would be to its vagueness, overbreadth, or ambiguity, please contact Defendants' counsel for clarification in advance of asserting an objection.

4. Regarding any document withheld from production on a claim of privilege or work product protection, provide a written privilege log identifying each document individually and containing all information required by Federal Rule of Civil Procedure 26(b)(5), including a description of the basis of the claimed privilege and all information necessary for Defendants to assess the claim of privilege.

5. Produce all documents available to you or subject to your access or control that are responsive to the Requests for Production. This includes documents in your actual or constructive possession or control and in the actual or constructive possession or control of your attorneys, investigators, experts, and anyone else acting on your behalf.

6. Documents are to be produced as they are kept in the ordinary course of business. Accordingly, documents should be produced in their entirety, without abbreviation, redaction, or expurgation; file folders with tabs or labels identifying documents responsive

5

**Appx. 031**

to this request should be produced intact with the documents; and documents attached to each other should not be separated.

7. All documents are to be produced in electronic form. All documents including emails, should be produced in single page TIFF format, showing comments and track changes where applicable, with text extract and load files containing standard fielded information and metadata. TIFF images shall be placed in an Images folder with any given subfolder not to exceed 5,000 images per folder and accompanied by an .opt placed in a Data folder. Each page of a document should be assigned a unique production number (aka Bates number) electronically "burned" onto the image at allocation that does not unreasonably conceal or interfere with information on the document. The number should be consistent across the production, contain no special characters, and be numerically sequential within a given document. Attachments to documents should be assigned numbers that directly follow in sequential order the Bates numbers on the documents to which they were attached. If a number or set of numbers is skipped, the skipped number or set of numbers should be noted, for example with a placeholder.

8. Each document produced should be categorized by the number of the document request in response to which it is produced.

9. If any otherwise responsive document was, but is no longer, in existence or in your possession, custody, or control, identify the type of information contained in the document, its current or last known custodian, the location/address of such document, and the identity of all persons having knowledge or who had knowledge of the document, and also describe in full the circumstances surrounding its disposition from your possession or control.

**Appx. 032**

10.    These Requests for Production are continuing in nature, up to and including trial. Materials sought by these Requests that become available after you serve your responses must be disclosed to counsel for Defendants by supplementary response or responses.

11.    Pursuant to Federal Rule of Civil Procedure 26(c), you are under a duty to promptly amend your responses to these Requests if you learn that an answer is in some material respect incomplete or incorrect. If you expect to obtain further information or expect the accuracy of a response given to change between the time responses are served and the time of trial, you are requested to state this fact in each response.

12.    If you contend that it would be unreasonably burdensome to obtain and provide all of the documents called for in response to any Request for Production, then in response to the specific Request: (a) produce all such documents as are available to you without undertaking what you contend to be an unreasonable request; (b) describe with particularity the efforts made by you or on your behalf to produce such documents; and (c) state with particularity the grounds upon which you contend that additional efforts to produce such documents would be unreasonable.

13.    The singular form of a noun or pronoun includes the plural form, and the plural form includes the singular.

14.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a Request for Production all responses that otherwise might be construed to be outside its scope.

15.    A reference to an entity in this request shall be construed to include its officers, directors, partners, members, managers, employees, representatives, agents, consultants, and anyone acting on its behalf.

**Appx. 033**

16.    These Requests for Production apply to the period from April 14, 2021, to the present, unless otherwise limited or expanded by a particular topic description.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1**:  All documents and communications related to or describing X's algorithm, the X systems and processes, as that term is used in Plaintiff's First Amended Complaint, ECF No. 37, that, among other things, determines what content is presented to each X user, including any and all prior versions previously used by X.

**REQUEST FOR PRODUCTION NO. 2**:  All documents and communications related to the November 16, 2023 Article and/or the November 17, 2023 Article, including the activity and statements discussed therein.

**REQUEST FOR PRODUCTION NO. 3**:  All documents and communications describing any policies and practices X uses to identify Disputed Content on the Platform.

**REQUEST FOR PRODUCTION NO. 4**:  All documents and communications concerning content moderation on the Platform.

**REQUEST FOR PRODUCTION NO. 5**:  All documents and communications, including screenshots, reflecting or referring to Disputed Content on the Platform.

**REQUEST FOR PRODUCTION NO. 6**: All documents and communications, including draft and completed contracts, agreements, and memoranda of understanding, describing or showing evidence of existing or prospective business relationships between X and any of the advertisers referenced in the Amended Complaint or identified in response to Interrogatories 1 and 4 in Defendants' First Set of Interrogatories.

**REQUEST FOR PRODUCTION NO. 7**: All communications with X's past, present, or potential advertisers regarding their decision to advertise or not to advertise on the Platform, including but

**Appx. 034**

not limited to all communications reflecting the reasoning behind their decision to advertise or not to advertise on the Platform.

**REQUEST FOR PRODUCTION NO. 8**:   All documents and communications discussing or mentioning Media Matters, Mr. Hananoki, and/or Mr. Carusone.

**REQUEST FOR PRODUCTION NO. 9**:   All documents or communications showing X's business revenue generated from advertisements on the Platform in monthly installments or any term in which X maintains these records from April 14, 2021, to the present.

**REQUEST FOR PRODUCTION NO. 10**: All documents and communications regarding Your connection with or presence in the jurisdiction of the U.S. District Court for the Northern District of Texas.

**REQUEST FOR PRODUCTION NO. 11**: All communications with any elected or appointed public official, including but not limited to Texas Attorney General Ken Paxton and Missouri Attorney General Andrew Bailey, their staff, employees, and/or representatives regarding Media Matters, Mr. Hananoki, Mr. Carusone, and/or any of the allegations made in the Amended Complaint.

**REQUEST FOR PRODUCTION NO. 12**: All documents and communications regarding the removal or destruction of the personal or business physical cellular phone in the possession X's owner, Elon Musk, or the removal, discontinuation, or otherwise termination of Musk's personal or business cellular phone service, since November 2023.

**REQUEST FOR PRODUCTION NO. 13**: All documents and communications regarding payments made to X users related to X's revenue sharing programs, including their Subscription Creators and Creator Ads Revenue Sharing programs.

9

**Appx. 035**

**REQUEST FOR PRODUCTION NO. 14**: All documents and communications describing available means on X for users to control or change the advertisements they see on the Platform, including any filters for advertisements that can be used for new and existing users of the Platform.

**REQUEST FOR PRODUCTION NO. 15**: Documents sufficient to show X's organizational structure, including Board membership, leadership structure, and that of any affiliated or related entities.

**REQUEST FOR PRODUCTION NO. 16**: Documents sufficient to identify individuals, representatives, or employees responsible for or involved with content moderation on the Platform, including individuals, representatives, or employees responsible for or involved with developing policies for content moderation on the platform.

**REQUEST FOR PRODUCTION NO. 17**: All documents or communications regarding the cessation, suspension, termination, or otherwise discontinuance of a business or transactional relationship between X and its advertisers.

**REQUEST FOR PRODUCTION NO. 18**: All documents concerning, and communications with, any public relations, advertising, marketing, communications, or similar firm, group, or business that You have contracted with, or that you have contacted in any capacity in connection with the November 16, 2023 Article or the November 17, 2023 Article.

**REQUEST FOR PRODUCTION NO. 19**: All documents and communications related to or reflecting Your knowledge or understanding of Media Matters's business operations, strategies, partnerships, staff, donors, directors, reporting, or day-to-day activities.

**REQUEST FOR PRODUCTION NO. 20**: All documents and communications related to or reflecting X's Board's knowledge or understanding of Media Matters's business operations, strategies, partnerships, staff, donors, directors, reporting, or day-to-day activities.

10

**Appx. 036**

**REQUEST FOR PRODUCTION NO. 21**: All documents and communications related to or reflecting X's employees' knowledge or understanding of Media Matters's business operations, strategies, partnerships, staff, donors, directors, reporting, or day-to-day activities.

**REQUEST FOR PRODUCTION NO. 22:** All documents and communications related to or reflecting X's advertisers' and agencies' involvement in or knowledge or understanding of Media Matters's business operations, strategies, partnerships, staff, donors, directors, reporting, or day-to-day activities.

**REQUEST FOR PRODUCTION NO. 23**: All internal documents and communications with or about media organizations, reporters, or journalists regarding reporting about X, its employees, its directors, or Elon Musk.

**REQUEST FOR PRODUCTION NO. 24**: All documents and communications demonstrating a connection between the November 16, 2023 Article, the November 17, 2023 Article, and/or Mr. Carusone's November 26, 2023 interview statements and the withdrawal or attempted withdrawal of any of X's advertisers from the Platform.

**REQUEST FOR PRODUCTION NO. 25**: All documents and communications related to X suspending or terminating user accounts on the Platform, including but not limited to the processes by which such suspended or terminated user accounts are or have been reinstated.

**REQUEST FOR PRODUCTION NO. 26**: All documents and communications related to Elon Musk's activity on the X platform, including Musk's engagement with Disputed Content on the Platform, and any allegations that Musk has violated X's user agreement, terms of service, rules and policies, or content moderation policies.

**REQUEST FOR PRODUCTION NO. 27**: All documents and communications related to the manner in which "views," as that term is used on social media platforms, meaning a measure of

11

**Appx. 037**

how many times a visitor on a social media platform engages with certain content, are generated on X.

**REQUEST FOR PRODUCTION NO. 28**: All documents and communications related to the termination or suspension of any current or former employee of X for reasons related to content moderation or Disputed Content on X.

**REQUEST FOR PRODUCTION NO. 29**: All public statements made by Musk—including but not limited to public statements made on the Platform, on other social media platforms, and in media interviews—as to Jewish people, Muslim people, Black people, Hispanic or Latino people, women, members of the LGBTQIA+ community, immigrants, non-English speakers, Asian people, and/or indigenous people, and any documents and communications regarding those statements.

**REQUEST FOR PRODUCTION NO. 30**: All documents and communications identified in response or related to any response provided to Defendants' Requests for Admission or Interrogatories.

Dated May 6, 2024.

*/s/ Andrew LeGrand*

12

**Appx. 038**

**GIBSON, DUNN & CRUTCHER LLP**
Andrew LeGrand (TX 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.* (CA 132099)
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed** (NY 4382040)
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

**ELIAS LAW GROUP LLP**
Abha Khanna* (WA 42612)
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Aria C. Branch (DC 1014541)
Jacob D. Shelly* (DC 90010127)
Elena Rodriguez Armenta* (DC 90018798)
Daniela Lorenzo* (DC 90022335)
250 Massachusetts Ave, NW Suite 400
Washington, D.C. 20001
T: (202) 968-4490
F: (202) 986-4498
jshelly@elias.law
erodriguezarmenta@elias.law

* Admitted *pro hac vice*

*Counsel for Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone*

**Appx. 039**

TAB 6

Appx. 040

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

|  |  |
|---|---|
| X CORP.,<br><br>    *Plaintiff*,<br><br>    v.<br><br>MEDIA MATTERS FOR AMERICA,<br>*et al.*,<br><br>    *Defendants*. | Civil Action No. 4:23-cv-01175-O |

**DEFENDANTS MEDIA MATTERS FOR AMERICA, ERIC HANANOKI, AND ANGELO CARUSONE'S SECOND SET OF REQUESTS FOR PRODUCTION**

Pursuant to Federal Rules of Civil Procedure 26 and 34, Defendants Media Matters for America ("Media Matters"), Mr. Eric Hananoki, and Mr. Angelo Carusone, through their undersigned counsel, serve this Second Set of Requests for Production ("Requests for Production" or "Requests") on Plaintiff X Corp.

Responses to these Requests are to be produced within 30 days of receipt. To arrange for electronic production, please contact counsel at xcorpsuit@elias.law. Anything that cannot be produced electronically should be produced to Andrew LeGrand at Gibson, Dunn & Crutcher, 2001 Ross Avenue Suite 2100, Dallas, Texas 75201.

Each Request for Production is subject to the Definitions and Instructions listed below.

**DEFINITIONS**

Except as specifically defined below, the terms used in this request shall be construed and defined in accordance with the Federal Rules of Civil Procedure and the Local Rules of the U.S.

1

**Appx. 041**

District Court for the Northern District of Texas, wherever applicable. Any terms not defined shall be given their ordinary meaning.

Defendants reserve their right to alter, supplement, amend, correct, clarify, or otherwise modify these Requests as discovery remains ongoing.

1. "Advertiser" means any company, organization, individual, or entity that pays to advertise or promote products, goods, services, or concepts, by purchasing space on the Platform—including but not limited to advertisers referenced in Plaintiff's First Amended Complaint, ECF No. 37, and advertisers identified in response Defendants' Interrogatories Nos. 1 and 4.

2. "Any" or "all" mean "any and all."

3. "Communication" is synonymous in meaning and scope with the term "communication" as used in Local Rule 26, and includes any transfer of information of any type, whether written, oral, electronic, or otherwise, and includes but is not limited to transfers of information via email, report, phone call, letter, text message, Slack, Signal, direct messages on social media platforms, ephemeral messaging applications, instant messaging applications, voicemail message, voice message, written memorandum, note, summary, and other means.

4. "Data" refers to any information, such as numbers, measurements, metrics, or statistics, that can be used as a basis for analysis or calculation, and includes information in a digital form that can be transmitted or processed.

5. "Date" means the exact day, month, and year, if ascertainably, or, if not, the best available approximation (including relationship to other events).

2

**Appx. 042**

6. "Disputed Content" means "extreme" and "fringe" content, as those terms are used in the Amended Complaint, *see* ECF No. 37 ¶ 9, and includes but is not limited to content expressing skepticism about the Holocaust, content expressing negative views or attitudes regarding Jewish people, Muslim people, Black people, Hispanic or Latino people, women, members of the LGBTQIA+ community, immigrants, non-English speakers, Asian people, or indigenous peoples, and content expressing positive views or attitudes regarding Adolf Hitler, white nationalism, or white supremacism.

7. "Document" is synonymous in meaning and scope to the term "document" as used in Federal Rule of Civil Procedure 34 and Local Rule 26 and includes, but is not limited to, records, reports, lists, data, statistics, summaries, analyses, communications (as defined above), computer discs, tapes, printouts, emails, databases, and any handwritten, typewritten, printed, electronically recorded, taped, graphic, machine-readable, or other material, of whatever nature and in whatever form, including all non-identical copies and drafts thereof, and all copies bearing any notation or mark not found on the original.

8. "Including" means "including, but not limited to."

9. The "November 16, 2023 Article" refers to the article written by Mr. Hananoki and originally published on November 16, 2023, titled "As Musk endorses antisemitic conspiracy theory, X has been placing ads for Apple, Bravo, IBM, Oracle, and Xfinity next to pro-Nazi content."

10. The "November 17, 2023 Article" refers to the article written by Mr. Hananoki and originally published on November 17, 2023, titled "X is placing ads for Amazon, NBA Mexico, NBCUniversal, and others next to content with white nationalist hashtags."

11. "Platform" means the social media website operated by X.

**Appx. 043**

12.    "X" or "Plaintiff" means the Plaintiff in this Matter, X Corp., as well as its predecessor in interest, Twitter, Inc., including its owner, officers, directors, partners, members, managers, employees, representatives, staff, agents, consultants, and anyone acting on its behalf.

13.    "You" and "your" means the Plaintiff in this Matter, X Corp., as well as its predecessor in interest, Twitter, Inc., including both entities' owners, officers, directors, partners, members, managers, employees, representatives, staff, agents, consultants, and anyone acting on their behalf.

## INSTRUCTIONS

1.    You shall produce materials and serve responses and any objections within 30 days after service of these Requests for Production.

2.    If you object to any part of a Request, set forth the basis of your objection and respond to all parts of the Request to which you do not object. Any ground not stated in a timely objection is waived.

3.    If, in responding to these Requests for Production, you encounter any ambiguities when construing a Request or definition, set forth the matter deemed ambiguous and the construction used in responding. Where you, in good faith, doubt the meaning or intended scope of a Request, and the sole objection would be to its vagueness, overbreadth, or ambiguity, please contact Defendants' counsel for clarification in advance of asserting an objection.

4.    Regarding any document withheld from production on a claim of privilege or work product protection, provide a written privilege log identifying each document individually and containing all information required by Federal Rule of Civil Procedure 26(b)(5), including

4

**Appx. 044**

a description of the basis of the claimed privilege and all information necessary for Defendants to assess the claim of privilege.

5. Produce all documents available to you or subject to your access or control that are responsive to the Requests for Production. This includes documents in your actual or constructive possession or control and in the actual or constructive possession or control of your attorneys, investigators, experts, and anyone else acting on your behalf.

6. Documents are to be produced as they are kept in the ordinary course of business. Accordingly, documents should be produced in their entirety, without abbreviation, redaction, or expurgation; file folders with tabs or labels identifying documents responsive to this request should be produced intact with the documents; and documents attached to each other should not be separated.

7. All documents are to be sequentially Bates numbered and produced in electronic form. Multi-page documents must bear a sequential Bates number on every page. Documents may include word-processing documents, spreadsheets, presentations, audio visual files, electronic calendar invites, and any other electronic documents not specifically discussed herein. Production of these items should include image files—produced as full color PDFs—with related searchable text, metadata, and bibliographic information. Wherever possible, passwords and encryption must be removed from electronic documents prior to production. If a document contains redlines, comments, presentation notes, or hidden fields, such information must be viewable in the imaged document.  If a native file type is not conducive to imaging (e.g., .xlsx, .mp3, or .mp4), those files must be produced in their native format, along with a PDF "placeholder" indicating the Bates number of the native file. All imaged PDFs and native files must be produced along with a

**Appx. 045**

corresponding "load file" (i.e., .OPT or .DAT files) containing all standard fielded information and metadata for all files within the production. Metadata and fielded information must include, at minimum, (1) BegBates, (2) EndBates, (3) BegAttach, (4) EndAttach, (5) Custodian, (6) All Custodians, (7) OCRTextPath, and (8) Confidentiality. Each imaged PDF document must be unitized by file (rather than by page). Parent-child or family relationships (i.e., the association between an attachment and its parent document) should be preserved to the extent they exist in the way the documents are maintained in the ordinary course of business. When applicable, parent emails and any of their attachments should be produced as separate, contiguous documents.  When applicable, parent-child relationships must be preserved, all families must be provided in sequential order of the parent document followed by all child documents, and the accompanying load file must indicate and memorialize the "parent" and "child" relationship between such documents.

8.    To the extent possible, you must de-duplicate responsive ESI using MD5 or SHA-1 hash values at the parent level. However, "near duplicate" documents must be produced rather than removed. To the extent possible, you should only produce a single copy of a particular ESI. However, (1) attachments to emails shall not be eliminated from their parent emails, and (2) hard-copy documents must not be eliminated as duplicates of responsive ESI. You must further make reasonable efforts to remove duplicate data across custodians for each produced document and to produce searchable metadata in the "All Custodians" and "Duplicate File Path" fields for each produced document sufficient for the receiving party to identify all custodians and file paths of a particular document that were eliminated from

6

review or production through de-duplication. Each document produced should be categorized by the number of the document request in response to which it is produced.

9. If any otherwise responsive document was, but is no longer, in existence or in your possession, custody, or control, identify the type of information contained in the document, its current or last known custodian, the location/address of such document, and the identity of all persons having knowledge or who had knowledge of the document, and also describe in full the circumstances surrounding its disposition from your possession or control.

10. These Requests for Production are continuing in nature, up to and including trial. Materials sought by these Requests that become available after you serve your responses must be disclosed to counsel for Defendants by supplementary response or responses.

11. Pursuant to Federal Rule of Civil Procedure 26(c), you are under a duty to promptly amend your responses to these Requests if you learn that an answer is in some material respect incomplete or incorrect. If you expect to obtain further information or expect the accuracy of a response given to change between the time responses are served and the time of trial, you are requested to state this fact in each response.

12. If you contend that it would be unreasonably burdensome to obtain and provide all of the documents called for in response to any Request for Production, then in response to the specific Request: (a) produce all such documents as are available to you without undertaking what you contend to be an unreasonable request; (b) describe with particularity the efforts made by you or on your behalf to produce such documents; and (c) state with particularity the grounds upon which you contend that additional efforts to produce such documents would be unreasonable.

**Appx. 047**

13.    The singular form of a noun or pronoun includes the plural form, and the plural form includes the singular.

14.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a Request for Production all responses that otherwise might be construed to be outside its scope.

15.    A reference to an entity in this request shall be construed to include its officers, directors, partners, members, managers, employees, representatives, agents, consultants, and anyone acting on its behalf.

16.    These Requests for Production apply to the period from April 14, 2021, to the present, unless otherwise limited or expanded by a particular topic description.

**REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1**:  All documents, communications, and related data reflecting the number of times You and/or any social media account controlled or managed by You accessed the November 16, 2023 Article and/or the November 17, 2023 Article.

**REQUEST FOR PRODUCTION NO. 2**:  All documents, communications, and related data reflecting the number of times a computer or communication device owned, managed, or controlled by You (including laptops, phones, tablets, and any other electronic device) accessed the November 16, 2023 Article and/or the November 17, 2023 Article.

**REQUEST FOR PRODUCTION NO. 3**:  All documents and communications reflecting any individuals or entities to whom You have attributed responsibility or who You otherwise have blamed or do blame, in whole or in part, for the loss of advertisers on the Platform.

**Appx. 048**

Dated May 9, 2024

*/s/ Andrew LeGrand*

**GIBSON, DUNN & CRUTCHER LLP**
Andrew LeGrand (TX 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.* (CA 132099)
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed** (NY 4382040)
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

**ELIAS LAW GROUP LLP**
Abha Khanna* (WA 42612)
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Aria C. Branch (DC 1014541)
Jacob D. Shelly* (DC 90010127)
Elena Rodriguez Armenta* (DC 90018798)
Daniela Lorenzo* (DC 90022335)
250 Massachusetts Ave, NW Suite 400
Washington, D.C. 20001
T: (202) 968-4490
F: (202) 986-4498
abranch@elias.law
jshelly@elias.law
erodriguezarmenta@elias.law
dlorenzo@elias.law

* Admitted *pro hac vice*

*Counsel for Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone*

9

**Appx. 049**

TAB 7

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **X CORP.**, a Nevada corporation, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | **Case No. 4:23-cv-01175-O** |
| | § | |
| **MEDIA MATTERS FOR AMERICA,** a | § | |
| Washington, D.C. non-profit corporation, | § | |
| **ERIC HANANOKI**, and **ANGELO** | § | |
| **CARUSONE**, | § | |
| | § | |
| *Defendants.* | § | |

---

## PLAINTIFF'S SUPPLEMENTAL RESPONSES AND
## OBJECTIONS TO DEFENDANTS' FIFTH SET OF INTERROGATORIES

---

Plaintiff X Corp., though its undersigned counsel, submits its Supplemental Responses and Objections to Defendants' Fifth Set of Interrogatories to Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone pursuant to Federal Rules of Civil Procedure 26 and 33.

- 1 -

**Appx. 051**

Dated: October 3, 2025

John C. Sullivan
Texas Bar No. 24083920
**S|L Law PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

Respectfully submitted,

*/s/ Christopher D. Hilton*
Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
Ari Cuenin
Texas Bar No. 24078385
Michael R. Abrams
Texas Bar No. 24087072
Elizabeth Brown Fore
Texas Bar No. 24001795
Alithea Z. Sullivan
Texas Bar No. 24072376
Alexander M. Dvorscak
Texas Bar No. 24120461
Cody C. Coll
Texas Bar No. 24116214
**Stone Hilton PLLC**
600 Congress Ave., Ste. 2350
Austin, TX 78701
Telephone: (737) 465-3897
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
michael@stonehilton.com
elizabeth@stonehilton.com
alithea@stonehilton.com
alex@stonehilton.com
cody@stonehilton.com

***Counsel for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that this document was served on all counsel of record for Defendants via email on October 3, 2025, pursuant to counsel's agreement to accept service via electronic means.

*/s/ Alexander M. Dvorscak*
Alexander M. Dvorscak

- 2 -

**Appx. 052**

- 3 -

## SUPPLEMENTAL RESPONSES AND OBJECTIONS

**INTERROGATORY 21:** Identify every individual or entity whose reporting You claim or have claimed has contributed to lost revenue at X from January 1, 2022 to the present.

**OBJECTION:** X objects that the interrogatory is overly broad and unduly burdensome as it requests information regarding *every* individual or entity that has contributed to lost revenue without any materiality qualifier or limitation. X further objects that the information requested is not relevant. X is not seeking damages equal to its overall change in advertising revenue during the relevant time period. Accordingly, the Court has already upheld X's objections for burden and relevance with respect to production of aggregate advertising revenue that were lodged in response to Defendants' Request for Production No. 9. ECF No. 135 at 9. X further objects to the extent that the request calls for a legal conclusion regarding contribution.

**RESPONSE:** Pursuant to its objections, X will not respond to this interrogatory but is willing to meet and confer with Defendants.

**SUPPLEMENTAL RESPONSE:** X has conducted a reasonable investigation and, based on the information known to it at this time, contends that X has lost advertising revenue from 2022 to present, in part, because of the so-called reporting from Media Matters, Eric Hananoki, and Carusone. X additionally contends that the reporting of CCDH contributed to lost advertising revenue, as alleged and described in *X Corp. v. CCDH*, 3:23-cv-03836-CRB (C.D. Cal.). X reserves the right to amend this response if it subsequently concludes that this standard is met with regard to any other individual or entity.

**Appx. 053**

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **X CORP**., a Nevada corporation, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | **Case No. 4:23-cv-01175-O** |
| | § | |
| **MEDIA MATTERS FOR AMERICA,** a | § | |
| Washington, D.C. non-profit corporation, | § | |
| **ERIC HANANOKI**, and **ANGELO** | § | |
| **CARUSONE**, | § | |
| | § | |
| *Defendants.* | § | |

## VERIFICATION OF INTERROGATORY ANSWERS

I declare under penalty of perjury that the foregoing supplemental response to Defendants' Fifth Set of Interrogatories on behalf of X Corp. is true and correct to the best of my knowledge, information, belief, or recollection.

Executed: 10/2/2025 _____

Signed by:
/s/ Monique Pintarelli
—57B0B5EE17E54EE...
Monique Pintarelli
Head of the Americas
X Corp.

- 4 -

**Appx. 054**

TAB 8

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **X CORP.**, a Nevada corporation, | § § § | |
| *Plaintiff,* | § § | |
| vs. | § § | **Case No. 4:23-cv-01175-O** |
| **MEDIA MATTERS FOR AMERICA,** a Washington, D.C. non-profit corporation, **ERIC HANANOKI**, and **ANGELO CARUSONE,** | § § § § § § | |
| *Defendants.* | § § | |

---

**PLAINTIFF'S RESPONSES AND OBJECTIONS TO
DEFENDANTS' FIFTH SET OF INTERROGATORIES**

---

Plaintiff X Corp., though its undersigned counsel, submits its Responses and Objections to Defendants' Fifth Set of Interrogatories pursuant to Federal Rules of Civil Procedure 26 and 33.

- 1 -

**Appx. 056**

Dated: April 28, 2024

John C. Sullivan
Texas Bar No. 24083920
**S|L Law PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

Respectfully submitted.

*/s/* Christopher D. Hilton
Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
Ari Cuenin
Texas Bar No. 24078385
Michael R. Abrams
Texas Bar No. 24087072
Elizabeth Brown Fore
Texas Bar No. 24001795
Alexander M. Dvorscak
Texas Bar No. 24120461
Cody C. Coll
Texas Bar No. 24116214
**Stone Hilton PLLC**
600 Congress Ave., Ste. 2350
Austin, TX 78701
Telephone: (737) 465-3897
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
michael@stonehilton.com
elizabeth@stonehilton.com
alex@stonehilton.com
cody@stonehilton.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that this document was served on all counsel of record for Defendants via email on April 28, 2025, pursuant to counsel's agreement to accept service via electronic means.

*/s/ Alexander M. Dvorscak*
Alexander M. Dvorscak

- 2 -

**Appx. 057**

## RESPONSES AND OBJECTIONS

**INTERROGATORY 14:** Identify each article or statement by any Defendant that you contend was false or misleading and that you contend forms the basis of your claims that any advertiser stopped, reduced, or failed to resume advertising spending on X and describe the basis for your claim. Your answer should identify the specific sentences that you claim are false within each article or statement and should describe in general the basis for your claim that each specific statement was false.

**OBJECTION:** X objects to the extent that the request calls for a legal conclusion regarding the basis of X's claims, and specifically to the suggestion that X is required to identify statements that were "false or misleading" or to identify "specific sentences" that were "false."

**RESPONSE:** X contends that the entirety of the November 16, 2023 Article, November 17, 2023 Article, and the Carusone Interview are false or misleading. The publications' statements are neither true nor substantially true, or each publication, taken as a whole, creates a substantially false impression of X. For each, Plaintiffs' main theme, central idea, or thesis was that X is not a safe place for advertisers, which a person of ordinary intelligence would perceive as disparaging of X.

Specific sentences within the November 16, 2023 Article that X has identified as false, misleading, not substantially true, or creating a substantially false impression include, but are not limited to, the following:
- "The company's placements come after CEO Linda Yaccarino claimed that brands are 'protected from the risk of being next to' toxic posts on the platform."
- "[Musk's] social media platform has been placing ads for major brands like Apple, Bravo (NBCUniversal), IBM, Oracle, and Xfinity (Comcast) next to content that touts Adolf Hitler and his Nazi Party."
- "X has also reinstated numerous accounts of bigots and paid far-right extremists, apparently including a pro-Hitler and Holocaust denier account, as part of its creator ad revenue sharing program."
- "[C]orporate advertisements have also been appearing on pro-Hitler, Holocaust denial, white nationalist, pro-violence, and neo-Nazi accounts."
- "Yaccarino has attempted to placate companies by claiming that 'brands are now "protected from the risk of being next to" potentially toxic content.' But that certainly isn't the case for at least five major brands: We recently found ads for Apple, Bravo, Oracle, Xfinity, and IBM next to posts that tout Hitler and his Nazi Party on X."

Specific statements within the November 17, 2023 Article that X has identified as false, misleading, not substantially true, or creating a substantially false impression include, but are not limited to, the following:
- "IBM isn't alone in having issues when advertising on the platform: Following our report yesterday, we additionally found ads for Amazon, NBA Mexico, NBCUniversal Catalyst, Action Network, and Club for Growth next to white nationalist hashtags like 'KeepEuropeWhite,' 'white pride,' and 'WLM' ('White Lives Matter')."

**Appx. 058**

- "His company has also financially rewarded extremists, including apparently paying $3,000 to a pro-Hitler and Holocaust denial account through X's ad revenue sharing program."
- "But as hateful rhetoric flourishes on X, the platform's remaining advertisers are especially affected."
- "We reported yesterday that X has been placing ads for Apple, Bravo (owned by NBCUniversal), IBM, Oracle, and Xfinity (Comcast) next to content that touts Hitler and his Nazi Party."
- "X still has a problem: Since our report yesterday, we found that the company placed ads for Amazon, NBA Mexico, NBCUniversal Catalyst (and here), Action Network (and here, here), and Club for Growth next to the white nationalist hashtags 'WLM' (White Lives Matter), 'KeepEuropeWhite,' '14 Words' (a reference to the leading white nationalist slogan), 'white pride,' and 'WPWW' ('white pride world wide')."

Specific statements within the MSNBC Carusone Interview that X has identified as false, misleading, not substantially true, or creating a substantially false impression include, but are not limited to, the following:

- "And so these reports and this was just one of many all were illustrating something that was at play here, which is that the tools that they claimed were in place to protect brands were not operating."
- "What we did was use Twitter the way a normal user would and then and then log the advertisements that were received."
- "And that's the issue – no matter how you slice it, the fact is their brand safety tools were not operating in the way that they claim they should have been."
- "And if you're an advertiser, when you put it all together, you're like the rot goes all the way to the top and they're never going to really be able to put in place the kinds of mechanisms that make it good for business, at least from an advertiser's perspective."

The above statements are false, misleading, not substantially true, or create a substantially false impression because they are not reflective of the experience of a typical user on the Platform and the articles do not describe how the Platform's algorithm was manipulated to generate the pairings shown in the articles. Including by omitting material facts about how they conducted their so-called "investigation," and by juxtaposing other material facts, Plaintiffs also intentionally created the substantially false impression that the X platform is unsafe for advertisers. X conducted an internal investigation into Defendants' usage of the platform that revealed this deception. X expressly incorporates its response to Interrogatory No. 11 that describes this investigation and its results. As MMFA has averred, to write both articles, Hananoki used an old X account, "@rwemails", that followed "both a number of pro-Nazi accounts" and "non-ideological corporate accounts" including "@StateFarm, @TGIFridays, @hardmountaindew, @Ritzcrackers, and @TheRealTriscuit" and repeatedly refreshed his feed over and over until he was able to generate the postings shown in the November 16, 2023 article. Hananoki also ran searches for white nationalist tags including "WLM", "KeepEuropeWhite," "14 Words", "white pride," and "WPWW" and likewise repeatedly refreshed his feed to generate the postings appearing in the November 17, 2023 article. By endlessly refreshing the feed, Hananoki caused the algorithm to generate between 13 and 15 times more advertisements per hour than viewed by the average X user. Accordingly, IBM's, Comcast's, and Oracle's paid

**Appx. 059**

**INTERROGATORY 17:** State whether you contend that Defendants' activities on X in researching the November 16, 2023 and November 17, 2023 articles violated any of X's Terms of Service, X's Rules and Policies, X's rules on platform manipulation, or any other X rules or regulations. If you do contend that Defendants' activities violated any rules or regulations, identify the specific rules or regulations and describe how you allege Defendants' activities violated those rules or regulations.

**RESPONSE:** X does not contend that any of Defendants' activities on X in researching the November 16, 2023 and November 17, 2023 articles violated any of X's Terms of Service, X's Rules and Policies, X's rules on platform manipulation, or any other X rules or regulations. X expressly reserves the right to amend this response throughout the course of discovery and after Defendants fully produce documents responsive to X's requests for production.

**INTERROGATORY 18:** Identify the communications and documents in which "every single media holding company" and "every single big brand marketer" asked X to deepen its relationship with DoubleVerify, according to the quote attributed to X's former head of business operations Joe Benarroch in the following article: https://nypost.com/2024/04/14/tech/x-platforms-brand-safety-score-for-advertisers-hurt-by-error-for-almost-5-months/."

**OBJECTION:** X objects that the request is vague as it calls for the identification of communications and documents related to "every single media holding company" and "every single big brand marketer" as described by an individual who is neither employed by X nor in the control of X. As such, X has no knowledge of what companies or marketers the former-employee was referring to at the time that he made his comment to the NY Post. X further objects that the request is overly broad and unduly burdensome as it would require an investigation into communications with advertisers who X is not claiming were affected by the Defendants' tortious conduct and seeks irrelevant information regarding their opinion about DoubleVerify, a company that is not part of this dispute. Accordingly, X objects to identifying communications from or regarding advertisers who are not listed in response to Defendants' Interrogatory No. 4.

**RESPONSE:** Pursuant to its objections, X has conducted a reasonable investigation and directs Defendants to documents Bates labeled XCORP_0477059-61, XCORP_0323676-80, XCORP_0162714-19; XCORP_0330614-29; XCORP_0110738-40; XCORP_0117434-37; XCORP_0163808-11; XCORP_0463937-39; XCORP_0794802-03; and XCORP_0794807-08 that are representative of communications from advertisers listed in response to Defendants' Interrogatory No. 4 regarding X's partnerships with DoubleVerify pursuant to Federal Rule of Civil Procedure 33(d).

**INTERROGATORY 19:** Identify every individual at X with responsibility for changes to brand safety at X from January 1, 2022, and their titles and dates of employment.

**Appx. 061**

**OBJECTION:** X objects that the word "responsibility" is vague as it could refer to individuals with only limited impact on brand safety or could refer to those individuals whose primary role and duties at X are to conduct activities regarding brand safety. X will interpret the request as if the request is referring to individuals where their primary job at X is related to brand safety, including creating, improving, or implementing X's brand safety tools. X additionally objects that the interrogatory is overbroad and unduly burdensome in scope as it calls for the identification of *every* individual over a three-year time period when the torts at issue occurred during the month of November 2023.

**RESPONSE:** Pursuant to its objections, X has conducted a reasonable investigation and directs Defendants to the attachment marked Exhibit A.


**INTERROGATORY 20:** Identify every individual at X with responsibility for communication with advertisers, advertisers' agents, or media buyers.

**OBJECTION:** X objects that the word "responsibility" is vague as it could refer to individuals with only limited communications with advertisers, advertisers' agents, or media buyers or could refer to those individuals whose primary role and duties at X are to conduct such activities. X will interpret the request as if the request is referring to individuals whose job titles or positions at X place them in a sales role.

**RESPONSE:** Pursuant to its objections, X has conducted a reasonable investigation and directs Defendants to the attachment marked Exhibit B that identifies all employees who worked in a sales role between April 14, 2021 and April 22, 2025.


**INTERROGATORY 21:** Identify every individual or entity whose reporting You claim or have claimed has contributed to lost revenue at X from January 1, 2022 to the present.

**OBJECTION:** X objects that the interrogatory is overly broad and unduly burdensome as it requests information regarding *every* individual or entity that has contributed to lost revenue without any materiality qualifier or limitation. X further objects that the information requested is not relevant. X is not seeking damages equal to its overall change in advertising revenue during the relevant time period. Accordingly, the Court has already upheld X's objections for burden and relevance with respect to production of aggregate advertising revenue that were lodged in response to Defendants' Request for Production No. 9. ECF No. 135 at 9. X further objects to the extent that the request calls for a legal conclusion regarding contribution.

**RESPONSE:** Pursuant to its objections, X will not respond to this interrogatory but is willing to meet and confer with Defendants.

**Appx. 062**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**X CORP.**, a Nevada corporation,

      Plaintiff,

    vs.

**MEDIA MATTERS FOR AMERICA**, a
Washington, D.C. non-profit corporation,
**ERIC HANANOKI**, and **ANGELO
CARUSONE**,

      Defendants.

Case No. 4:23-cv-01175-O

### VERIFICATION OF INTERROGATORY ANSWERS

    I, Matthias Eck, declare under penalty of perjury that the foregoing answers to Defendants'

Fifth Set of Interrogatories on behalf of X Corp. are true and correct to the best of my knowledge,

information, belief, or recollection.

Executed: 4/28/2025 .

Signed by:

*Matthias Eck*
2D353C413744428...

Matthias Eck
X Corp.

Page **1** of **1**

**Appx. 063**

Appx. 054













**Appx. 069**

















**Appx. 077**











Appx. 082







**Appx. 085**







Appx. 088



Appx. 089



Appx. 090





**Appx. 092**





Appx. 094













Appx. 101







Appx. 103

































TAB 9

# STONE HILTON

February 21, 2025

***Via Electronic Mail***

Andrew LeGrand
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
(214) 698-3100
alegrand@gibsondunn.com

      Re:    *X Corp. v. Media Matters for America, et al.*
            No. 4:23-cv-01175-O

Dear Mr. LeGrand:

This letter serves as cover to Plaintiff X Corp.'s thirteenth production of documents. The production includes the following Bates ranges: XCORP_0737689-X CORP_0842150. As we indicated in the parties' correspondence, we will be making forthcoming productions on a rolling basis.

You will receive a separate link via Box to download the production. If you have any questions or difficulties downloading the production, please do not hesitate to contact us.

                  Very truly yours,

                  */s/ Christopher D. Hilton*
                  Christopher D. Hilton
                  **STONE | HILTON PLLC**
                  chris@stonehilton.com
                  737.465.3897

cc: Counsel of Record



**Appx. 121**

TAB 10

# STONE HILTON

May 28, 2025

Matt Behncke
Susman Godfrey LLP
1000 Louisiana St., Suite 5100
Houston, Texas 77002
mbehncke@susmangodfrey.com

*via e-mail*

**RE: X's Response to Defendants' Discovery Correspondence**

Counsel,

I am writing to provide a formal written response to your email dated May 6, 2025 and subsequent correspondence. We hope that this response will help aid in our ongoing discussions.

**Interrogatories:**

*With respect to Interrogatory No. 16*, X conducted a reasonable investigation and was unable to identify a specific document responsive to the question posed. Accordingly, X provided a narrative response explaining the filter in X's source code that limits ads to newly created accounts. It is unclear what additional information Defendants are seeking that was not provided in X's response; if more information is requested, Defendants should specifically state what they are looking for or serve an additional interrogatory.

*With respect to Interrogatory No. 21*, X disagrees with Defendants' contention that the Court's January 3, 2025 Order, ECF No. 135 ("Court's Order") requires a response that is different than the response originally provided. Specifically, X disagrees that questions regarding advertising revenue in the aggregate are relevant or are an appropriate topic for discovery. Indeed, the Court sustained an objection on this basis in the same order cited by Defendants in their correspondence. ECF No. 135 at 9. Further, if this interrogatory is directed at determining why advertisers left the platform, X has already identified hundreds of documents in response to Defendants' Interrogatory No. 8. To the extent that this interrogatory is instead an attempt to gain discovery into unrelated lawsuits, including *X Corp. v. World Federation of Advertisers, et al.*, this is improper, and X would instead direct Defendants to the pleadings docketed for Case 7:24-cv-00114-O, which describe the basis of those claims.

**Requests for Production:**

*With respect to RFP 79,* X maintains its objections to producing the posts from the identified users. If Defendants seek the public posts from these users, they can simply log onto X and gather any posts they believe are relevant to this dispute without imposing the burden or cost

**Appx. 123**

on X. Further, federal law, including the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 et seq., the Stored Communications Act, 18 U.S.C. §§ 2701 et seq. ("SCA"), prevents X from providing user posts. As stated in X's objections and response, the SCA does not permit private parties to compel production of the content of a user's electronic communications from service providers such as X Corp. by service of a subpoena or court order, and there is no exception for civil discovery demands. 18 U.S.C. §§ 2702(a)(1), (2); 2702(b)(1)-(9); *see also Suzlon Energy Ltd. v. Microsoft Corp.*, 671 F.3d 726, 730 (9th Cir. 2011) (holding that non-governmental entities may not obtain communications content with a civil discovery demand because it would "invade[] the specific interests that the [SCA] seeks to protect."); *Republic of Gambia v. Facebook, Inc.*, 575 F. Supp. 3d 8, 16 (D.D.C. 2021) (holding that the SCA prohibits disclosure in civil discovery of social media pages and associated communications, including deleted communications); *Optiver Australia Pty. Ltd. v. Tibra Trading Pty. Ltd.*, 2013 WL 256771, at *1 (N.D. Cal. 2013) ("By now it is well-established that civil subpoenas…are subject to the prohibitions of the Stored Communications Act."); *O'Grady v. Superior Court*, 139 Cal. App. 4th 1423, 1441-47 (2006) (holding that the SCA bars civil litigants from obtaining communications content from a service provider).

*With respect to RFP 80 and 89,* X already confirmed in its responses that it conducted a reasonable search and there were no responsive documents to Request Nos. 80 and 89. X cannot produce documents which do not exist.

*With respect to RFP 81,* X is already committed to providing Defendants with the information sought by this request, including whether the specified users participated in the program and the amount that X paid these creators. To demand all documents relating to these accounts and associated payments is overbroad and would not be relevant to establishing or refuting the falsity of Defendants' statements. This includes many documents which would be routine or automated communications. Likewise, X cannot see how it would be necessary or appropriate to produce documents reflecting these third parties' payment or banking information. X also reminds Defendants that federal law prohibits X from producing documents reflecting user communications (*see* SCA discussion above). However, X invites Defendants to describe the specific relevance of any additional documents sought by Defendants so that X can determine if there is potential for compromise or an alternative way to narrow the request.

*With respect to RFP 82–83,* X has specifically identified what it is willing to produce in response to these requests pursuant to its objections. If Defendants have specific concerns with either the responses or the objections, please provide additional detail so that X can evaluate the concerns.

*With respect to RFP 86–87 and 98,* X maintains its objections regarding the production of documents about its litigation against CCDH and disagrees that the Court's Order mandates otherwise. X's own internal investigation related to CCDH's conduct, which was related to the unauthorized access and scraping of X that formed the basis of X's complaint, is not relevant to this dispute. If these Requests are limited to determining whether CCDH caused the advertisers at



issue in this litigation to pause their advertising, then X is already producing all documents concerning why advertisers paused or left the platform in response to Request No. 7, amongst others. Defendants' email does not clarify what additional, responsive documents that Defendants are looking for that are not responsive to the documents X is already producing in response to Defendants' 109 other requests. X further reiterates its objection that many of the documents responsive to the request as written are privileged. X invites Defendants to provide a potential compromise if there is a targeted set of otherwise non-responsive documents that it believes are relevant and limited to information reasonably calculated to lead to admissible evidence.

*With respect to RFP 88,* X has repeatedly objected to requests that target Musk—including in response to Defendants' motion to compel—and X will not repeat all of those objections here. To the extent that Musk's Dealbook comments relate to an advertisers' decision to advertise on the platform these documents are already being produced in response to Request No. 7, among other requests. Defendants' correspondence did not articulate what other documents they are seeking that would not be also responsive to Defendants' 109 other requests. Likewise, Defendants have not articulated why those otherwise non-responsive documents that do not relate to an advertisers' decision to advertise on the platform would be relevant.

*With respect to RFP 92,* as stated in its response, X is willing to confer regarding appropriate limiting criteria to Defendants' broad request. As an initial matter, X is willing to produce all Jira tickets that reference both brand safety and the advertisers it has identified as relevant. X invites Defendants to consider that proposal or to otherwise propose a narrowed version of this request, limited to information reasonably calculated to lead to relevant, admissible evidence, in the hope of achieving a compromise.

*With respect to RFP 93*, because broad minutes touch on many topics unrelated to this litigation, X added a materiality qualifier to make the request more proportional. To clarify, X will produce all board meetings that discuss brand safety to a substantive degree and only intends to withhold board minutes where there is an inconsequential mention of brand safety but where the minutes do not reflect any substantive discussion.

**Custodians:**

As Defendants are well aware, discovery remains ongoing, and X's document production is not complete. With respect to X's October 4, 2024 custodian list, X intends to amend its custodian list to also include the following individuals:

- Adnrew Duval
- Avantika Mankar
- Elizabeth ("Lizzie") Palumbo
- Kylie McRoberts
- Laurant Buanec
- Rob Pietsch
- Yale Cohen



X does not intend to add the following individuals to X's custodian list or its disclosures. If Defendants disagree with this decision, please provide a written explanation that sets out your position over which the parties can confer:

- Elyana Thierry
- Jeff Carlton

With respect to Joe Benarroch, he is a former employee. Nevertheless, X has listed him as a custodian, conducted a reasonable search, and produced responsive documents. This production remains ongoing.

$$* \quad * \quad * \quad * \quad *$$

As stated at the conclusion of all of Plaintiff's discovery letters, X takes its discovery obligations seriously. We remain committed to addressing your questions and, if possible, avoiding or amicably resolving any discovery disputes without the need for judicial intervention.

We look forward to discussing the compromises that we have suggested herein. Please do not hesitate to let us know if you have any questions regarding the issues addressed in this or any previous letter.

Sincerely,

*/s/ Alexander M Dvorscak*
Alexander M. Dvorscak
Stone Hilton PLLC
alex@stonehilton.com
(737) 465-3897

CC:
All counsel of record



**Appx. 126**

TAB 11

NK

**Appx. 128**

Confidential

XCORP_0749947

**Appx. 129**

Confidential

XCORP_0749948

**Appx. 130**

Confidential

XCORP_0749949

**Appx. 131**

Confidential

XCORP_0749950

**Appx. 132**

Confidential                                                    XCORP_0749951

**Appx. 133**

Confidential

XCORP_0749952

**Appx. 134**

Confidential

XCORP_0749953

**Appx. 135**

Confidential

XCORP_0749954

**Appx. 136**

Confidential

XCORP_0749955

**Appx. 137**

Confidential