**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **X CORP**., a Nevada corporation, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | **Case No. 4:23-cv-01175-O** |
| **MEDIA MATTERS FOR AMERICA,** a Washington, D.C. non-profit corporation, **ERIC HANANOKI**, and **ANGELO CARUSONE,** | § § § § § | |
| *Defendants.* | § § | |

---

**BRIEF IN SUPPORT OF MOTION TO COMPEL PRODUCTION
OF DOCUMENTS WITHHELD ON PRIVILEGE GROUNDS**

---

**TABLE OF CONTENTS**

Table of Contents.................................................................................................................... i

Table of Authorities ............................................................................................................... ii

Introduction............................................................................................................................ 1

Background ............................................................................................................................. 2

    I.   Defendants' Tortious Scheme to Defame X and "Eviscerate" Its Advertiser Base ........... 2

    II.  X's Efforts to Obtain Critical Discovery ................................................................. 4

    III. X's Objections to Defendants' Privilege Assertions .......................................... 5

Argument and Authorities..................................................................................................... 6

    I.   Defendants' Existing Redactions Should Be Removed.......................................... 6

        A.  Defendants' asserted First Amendment privilege lacks merit. .................................... 6

            i.  Defendants fail to make a prima facie showing of an infringement on protected rights. ................................................................................................................... 7

            ii.  X has established a sufficient need for the requested information. ....................... 9

        B.  Defendants' Texas Press Shield Law privilege assertion lacks merit........................ 19

    II.  Defendants Must Review Their Prior Productions to Ensure Their Existing Objections Are Proper............................................................................................................... 22

    III. X Should Be Awarded Its Expenses for This Motion and Any Other Sanctions the Court Deems Appropriate. ................................................................................................... 23

Conclusion ............................................................................................................................. 25

Certificate of Service ............................................................................................................. 27

TABLE OF AUTHORITIES

**Cases**

*Bagby Elevator Co., Inc. v. Schindler Elevator Corp.*,
    609 F.3d 768 (5th Cir. 2010) ................................................................................ 10

*Bldg. Four Shady Oaks Mgmt. LP v. Fed. Deposit Ins. Co.*,
    No. 3:10-CV-0970-O, 2011 WL 13229001 (N.D. Tex. June 10, 2011) .................................. 24

*Buckley v. Valeo*,
    424 U.S. 1 (1976) .................................................................................................. 7

*Counterman v. Colorado*,
    600 U.S. 66 (2023) ................................................................................................ 18

*Dolby Laboratories Licensing Corp. v. Adobe Inc.*,
    402 F. Supp. 3d 855 (N.D. Cal. 2019) ..................................................................... 23

*Herbert v. Lando*,
    441 U.S. 153 (1979) .............................................................................................. 10

*Hurlbut v. Gulf Atl. Life Ins. Co.*,
    749 S.W.2d 762 (Tex. 1987) .................................................................................. 9

*In re Blue Cross Blue Shield Antitrust Litig.*,
    2018 WL 2676165 (N.D. Ala. Jan. 29, 2018) ...................................................... 22, 23

*In re Motor Fuel Temp. Sales Practices Litig.*,
    707 F. Supp. 2d 1145 (D. Kans. 2012) .................................................................. 18

*In re Stone*,
    986 F.2d 898 (5th Cir. 1993) ................................................................................ 24

*Jackson v. Nassau County*,
    602 F. Supp. 3d 352 (E.D.N.Y. 2022) ................................................................... 24

*Johnson v. Hosp. Corp. of Am.*,
    95 F.3d 383 (5th Cir. 1996) .................................................................................. 10

*Johnston v. Transocean Offshore Deepwater Drilling, Inc.*,
    No. CV 18-491, 2019 WL 1558040 (E.D. La. Apr. 10, 2019) ............................... 22

*La Union Del Pueblo Entero v. Abbott*,
    No. SA-21-CV-00844-XR, 2022 WL 17574079 (W.D. Tex. Dec. 9, 2022) .......................... 7, 8

*Matta v. May*,
    118 F.3d 410 (5th Cir. 1997) ................................................................................ 24

*Meade v. General Motors, LLC*,
    250 F. Supp. 3d 1387 (N.D. Ga. 2017) .................................................................. 23

*Mi Familia Vota v. Fontes*,
    344 F.R.D. 496 (D. Arz. 2023) .............................................................................. 8

*Miller v. Transamerican Press, Inc.*,
   621 F.2d 721 (5th Cir. 1980) ................................................................................. 10

*NAACP v. State of Ala. ex rel. Patterson*,
   357 U.S. 449 (1958) ......................................................................................... 6, 7

*Perry v. Schwarzenegger,*
   591 F.3d 1147 (9th Cir. 2009) ................................................................................. 8

*Positive Software Solutions, Inc. v. New Century Mortg. Corp.*,
   619 F.3d 458 (5th Cir. 2010) ................................................................................. 24

*Roberts v. U.S. Jaycees*,
   468 U.S. 609 (1984) ............................................................................................... 6

*Shipyard Associates, L.P. v. City of Hoboken*,
   2015 WL 4623470 (D.N.J. Aug. 3, 2015) ................................................................ 23

*Sw. Insulation, Inc. v. Gen. Insulation Co.*,
   No. 4:15-CV-601-O, 2016 WL 9244822 (N.D. Tex. Apr. 25, 2016) ...................................... 24

*Urban 8 Fox Lake Corporation v. Nationwide Affordable Housing Fund 4, LLC*,
   334 F.R.D. 149 (N.D. Ill. 2020) ................................................................................. 24

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*,
   No. A-15-CV-134-RP, 2016 WL 5922315  (W.D. Tex. Oct. 11, 2016) ................................... 8

*X Corp. v. Media Matters for Am.*,
   120 F.4th 190 (5th Cir. 2024) ........................................................................... 19, 21

*Young Conservatives of Tex. Found. v. Univ. of N. Tex.*,
   No. 4:20-CV-973-SDJ, 2022 WL 2901007 (E.D. Tex. Jan. 11, 2022) ........................... 7, 9, 15

## Statutes and Rules

Tex. Civ. Prac. & Rem. Code §§ 22.021-.027 ........................................................... 5, 19, 20, 21

Fed. R. Civ. P. 37(a)(5) ........................................................................................... 23

**INTRODUCTION**

Defendants have weaponized privilege claims to hide evidence of their intent to destroy X's advertiser base and their coordinated efforts with third parties to achieve that objective. That evidence is central to this litigation, and Defendants' reliance on the First Amendment and the Texas Press Shield Law to justify their broad redactions does not withstand even the barest level of scrutiny. Defendants recently produced documents with heavy redactions purportedly justified by those privileges. After X noted that dozens of the redactions were facially unjustifiable, Defendants removed a number of them to avoid this Court's review. What emerged was damning. The unredacted material reveals ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████

Yet even as Defendants have removed some of their redactions, after X's repeated objections, Defendants have maintained many others. These redactions, spanning numerous internal documents related to the issues at the heart of this case, should be afforded no deference. This Court has already held that X can overcome Defendants' qualified privileges "on a proper showing of need and relevance." ECF Nos. 98, 136. That standard is more than satisfied here with respect to the thirteen documents at issue. Defendants have already tried to conceal highly relevant information behind purported First Amendment and Texas Press Shield Law privileges; meanwhile, the documents suggest that the remaining redactions almost certainly hide more of the same—what X can make out from the redacted documents indicates that they directly or indirectly support X's position in this case (for instance, by referring to Media Matters' plans to discredit and harm Twitter, X, and Elon Musk, or to other organizations' positive views of X's content

1

moderation efforts). And X can only guess as to what might be hiding in documents that Defendants have entirely withheld. It is clear that Defendants' privilege review process is at best seriously flawed and at worst willfully manipulated.

Because X is entitled to unobstructed access to Defendants' own admissions about the planning and execution of their defamatory campaign against X, the Court should order production of the thirteen challenged documents discussed below in full. And in light of these systemic issues and numerous bad faith assertions of privilege—demonstrating a seriously flawed privilege review that was at best deliberately obfuscatory—the Court should also require Defendants to re-review their prior privilege assertions, produce any wrongly withheld documents or portions of documents, and issue new privilege logs that adequately and accurately describe any withheld material. Finally, because Defendants' redactions lack any basis in law, X requests its expenses under Rule 37 both for drafting this motion and for the considerable time that X has spent to sort out the scale of Defendants' grossly deficient privilege review process.

**BACKGROUND**

I.      **Defendants' Tortious Scheme to Defame X and "Eviscerate" Its Advertiser Base.**

On November 16 and 17, 2023, Defendant Media Matters for America ("Media Matters" or "MMFA") published two articles (the "Articles") written by Defendant Eric Hananoki that claimed to uncover instances of antisemitic and hateful content being "placed" next to advertising posts on the X social media platform. ECF No. 37, Am. Compl. ¶¶ 30-38, 46-54. These publications were false. The Articles were not reflective of the experience of a typical user on the X platform and did not describe how the platform's algorithm was manipulated to generate the ad pairings shown. Appx. 0010-12 (Defendants' response to Interrogatory No. 14). By omitting material facts about how they conducted their so-called "investigation," Defendants intentionally created the substantially false impression that the X platform is unsafe for advertisers. Defendant

2

Angelo Carusone, Media Matters' president, doubled down in the days following the Articles' publications, claiming in a television interview that "[w]hat we did was use Twitter the way a normal user would and then log the advertisements that were received." Am. Compl. ¶ 13.

This was a lie. Defendants have admitted that Hananoki conducted a "test" to see whether he could force the Platform to create certain adjacencies. Appx. 0045-47 (Defendants' response to Interrogatory No. 7). Hananoki used an account that exclusively followed "pro-Nazi accounts" and the accounts of blue-chip advertisers like State Farm, TGI Fridays, Mountain Dew, and Ritz Crackers, among others. *See* Appx. 0045-50 (Defendants' response to Interrogatory Nos. 7 & 8). By endlessly refreshing his feed, Hananoki caused the algorithm to generate between 13 and 15 times more advertisements per hour than viewed by the average X user. Am. Compl. ¶ 11; *see also* Appx. 0010-12 (Defendants' response to Interrogatory No. 14). Far from reflecting a typical user's experience, Hananoki manipulated the platform to create ad adjacencies shown only to him. Am. Compl. ¶ 15.

The defamatory Articles were part of a larger, ongoing campaign by Media Matters to destroy X's advertising base and associated revenue. Am. Compl. ¶ 46. Defendants co-founded a group, Stop Toxic Twitter, that demanded major companies cease advertising on X. *See* Appx. 0117 (MMFA_112855). And in the days leading up to the Articles' publication, ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Appx. 0244 (MMFA_394626). ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ 0250, 0254 (MMFA_394097, MMFA_394537).

The Articles had the effect that Defendants intended. Significant advertisers, including Apple, AT&T, Coca-Cola, Comcast, Disney, Dropbox, ESPN, General Electric, IBM, Intel,

Warner Bros. Discovery, and the National Basketball Association stopped, paused, or continued to pause advertising spending on the Platform. *See* Appx. 0262-64 (X's second supplemental response to Interrogatory No. 4). In response, X sued Media Matters, Hananoki, and Carusone for business disparagement, tortious interference with contract, and tortious interference with prospective economic advantage. Am. Compl. ¶¶ 65-88.

## II.    X's Efforts to Obtain Critical Discovery.

After discovery commenced, X served Defendants with requests for production, requests for admission, and interrogatories. ECF No. 60-1 at 3-41. In response, among other objections, Defendants claimed First Amendment and Texas Press Shield Law privileges to withhold responsive documents across their productions. *E.g.*, ECF No. 97 at 29-60. Following multiple attempts to confer among counsel, X moved to compel and challenged both the applicability and the merits of these privileges. *See* ECF No. 59 (motion to compel concerning X's first 29 requests for production); ECF No. 83 (motion to compel regarding donor-related documents); ECF No. 95 (challenging applicability of the Texas Press Shield Law).

On June 6, 2024, the Court granted X's initial motion in part and denied it in part. ECF No. 65. Among other rulings, the Court deferred ruling on Defendants' First Amendment privilege objections. *Id.* The Court ordered that "Defendants must create and deliver a privilege log of any documents being withheld from production to Plaintiff," and that "[a]fter the parties meaningfully confer, Defendants must notify the Court whether any dispute regarding the assertion of First Amendment privileges remain." *Id.* at 3. Several months later, in a decision now on appeal in the United States Court of Appeals for the Fifth Circuit, this Court granted a second motion to compel regarding donor-related documents. ECF No. 98. Relevant here, the Court explained that although a qualified First Amendment privilege likely applied to the donor-related documents, X had overcome that privilege because: (1) the importance of the documents to the litigation overcame

any claimed burden on associational rights; (2) the information sought was unavailable from an alternative source; and (3) the requests were appropriately tailored. *Id.* at 13-22. In a separate order, the Court later held that the Texas Press Shield Law, Tex. Civ. Prac. & Rem. Code §§ 22.021-.027, is available for Defendants to assert on a document-by-document basis. ECF No. 136 at 3-8; ECF No. 169.

### III.    X's Objections to Defendants' Privilege Assertions.

Following the Court's orders regarding the First Amendment privilege and Press Shield Law, Defendants produced numerous heavily redacted documents. On September 29, 2025, X identified thirteen documents with redactions that X believed were improper and requested that the redactions be removed. Appx. 0280-81. Defendants did not dispute that almost all of the redactions were improper and agreed to reproduce the documents with substantially fewer redactions—and in most instances, with no redactions altogether. On November 7, 2025, X identified 51 other baseless redactions. Appx. 0283-84. Defendants again agreed to reproduce the challenged documents with fewer redactions. Appx. 0286-87.

X's efforts revealed two concerns that necessitate this Court's intervention. *First*, although there are fewer redactions in the documents that Defendants have re-produced, the significant redactions that remain in place appear improper. With respect to these thirteen documents, identified below, X respectfully requests that the Court order Defendants to remove all redactions that Defendants have not agreed to eliminate. *Second*, the improper motivation of Defendants' privilege designations has become obvious. As the now-unredacted material makes clear, many of the originally withheld conversations have nothing to do with journalism efforts that would merit First Amendment and Texas Press Shield Law protection. Worse still, those originally redacted conversations ███████████████████████████████████████—a topic this Court has *already* deemed relevant and ordered that Defendants produce. *See* ECF No. 65 at 3. To

5

cure this pervasive and concerning problem, X requests that the Court order Defendants to re-review *all* the material they have withheld as privileged, produce material that was wrongfully withheld, and revise their privilege logs to allow X to evaluate Defendants' remaining privilege claims.

**ARGUMENT AND AUTHORITIES**

**I.      Defendants' Existing Redactions Should Be Removed.**

Defendants assert both the First Amendment privilege and Texas Press Shield Law to justify redactions in the following thirteen documents: MMFA_298401, MMFA_299351, MMFA_300455, MMFA_301122, MMFA_302118, MMFA_302236, MMFA_302256, MMFA_302295, MMFA_303061, MMFA_394543, MMFA_394743, MMFA_394747, and MMFA_408432 (the "Redacted Documents"). Defendants' logs and in-text notations do not clearly specify which privilege purportedly supports which redaction. X therefore addresses both privileges below. Neither justifies withholding the redacted material.

**A.      Defendants' asserted First Amendment privilege lacks merit.**

To the extent it applies,[1] the First Amendment's associational privilege only protects against compelled disclosure when the disclosure would harm an organization by "inducing members to withdraw . . . and dissuading others from joining because of fear of exposure." *NAACP v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 463 (1958) (cleaned up). This protection is not absolute. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984). Within the Fifth Circuit, courts use "a burden-shifting test that "balances the interest in disclosure against the burden imposed on

---

[1] For avoidance of doubt, X maintains that Defendants cannot rely on the First Amendment or the Texas Press Shield Law as a basis to withhold or redact otherwise relevant documents from production. *See* ECF No. 84 at 10-14 (setting forth X's argument that Defendants have not shown the requisite state action for First Amendment purposes); ECF No. 96 at 6-10 (addressing applicability of the Texas Press Shield Law).

6

associational rights." *Young Conservatives of Tex. Found. v. Univ. of N. Tex.*, No. 4:20-CV-973-SDJ, 2022 WL 2901007, at \*2 (E.D. Tex. Jan. 11, 2022).

Under that framework, the party claiming the privilege must first show a "reasonable probability that the compelled disclosure" will expose them to "threats, harassment, or reprisals from either Government officials or private parties." *Buckley v. Valeo*, 424 U.S. 1, 74 (1976). If that showing is made, the burden shifts to the party opposing privilege to demonstrate "an interest in obtaining the disclosures which is sufficient to justify the deterrent effect which these disclosures may well have." *NAACP*, 357 U.S. at 463 (cleaned up). In determining whether the party opposing privilege has met its burden, courts consider the following factors: (1) the importance of the information to the case, (2) whether the information is available from other sources, (3) the strength of the First Amendment interests at stake, and (4) whether the request is narrowly drawn to avoid unnecessary interference with protected activity. *Young Conservatives of Tex. Found.*, 2022 WL 2901007, at \*3.

### i. Defendants fail to make a prima facie showing of an infringement on protected rights.

As an initial matter, the First Amendment's associational privilege does not create a presumption of a "protected associational relationship . . . between a party and every other person or entity with whom they share common beliefs or goals." *La Union Del Pueblo Entero v. Abbott*, No. SA-21-CV-00844-XR, 2022 WL 17574079, at \*8 (W.D. Tex. Dec. 9, 2022). Such an "expansive view . . . would swallow the discovery process altogether." *Id.* Here, Defendants ask this Court to assume that any communication with, or about, any third party would chill Defendants' First Amendment speech and association rights. *See, e.g.*, Appx. 0289-815 ("First Amendment Privilege: Disclosing the MMFA partner's identity and the journalist's identity would chill their and the MMFA's First Amendment speech and association rights."); *id*. ("[I]dentifying

information of [a] non-MMFA journalist to whom MMFA pitches content, expertise, or narratives from its journalistic research and advocacy projects."). Application of the privilege to third parties should thus be rejected at the outset because Defendants have not established any associational relationship entitled to the First Amendment's protections. *Pueblo Entero*, 2022 WL 17574079, at *8 ("*Perry* and its progeny have all dealt with the disclosure of either the identity of association members or internal communications—not communications with third parties."); *Mi Familia Vota v. Fontes*, 344 F.R.D. 496, 514 (D. Ariz. 2023) (citing, *inter alia*, *Pueblo Entero* and recognizing the First Amendment's distinction between internal and external communications).

But even if the Court concludes that Defendants' documents fall within the First Amendment's ambit, a party asserting an associational privilege first must meet its *prima facie* "evidentiary burden" of showing "an objectively reasonable probability of a chilling effect on their First Amendment rights if the discovery is permitted." *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, No. A-15-CV-134-RP, 2016 WL 5922315, at *6, *8 (W.D. Tex. Oct. 11, 2016) (citing *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160-61 (9th Cir. 2009)). Defendants have not made that showing. They submitted no evidence accompanying their privilege logs that would justify the privilege, thus leaving X and the Court to surmise what basis they have to assert the First Amendment privilege. This is all the more troubling in light of the vague and non-descriptive nature of their log entries. For instance, even after multiple conferences between counsel spanning months, it is unclear what Defendants mean by a "MMFA partner." *E.g.*, Appx. 0267-87; *see* ECF No. 98 at 8 ("When a withholding party 'fails to provide a privilege log' and 'fails to properly substantiate [its] objections by submitting evidence necessary to sustain its burden of proof to its objections,' privilege is waived." (citation and alterations omitted)).

8

Worse still, although Defendants have claimed that their association with the Articles has generally brought scrutiny on them, they have not, and cannot, demonstrate that the redacted information—which only provides further detail about how and why they committed the torts they did—will create harm in itself. Indeed, the only additional harm Defendants are likely to face from disclosure of their communications is legal liability arising from this case. The Court should conclude that Defendants have not shown an infringement on their associational rights under the First Amendment.

### ii. X has established a sufficient need for the requested information.

Even if Defendants could meet their burden to show a *prima facie* First Amendment interest (they cannot), X is nevertheless entitled to the withheld discovery because it meets its burden to overcome the privilege. X can establish a sufficient need for both the underlying communications and identities of the concealed third parties that outweighs any disclosure concerns. *Young Conservatives of Tex. Found.*, 2022 WL 2901007, at *3. Specifically, the information is unavailable from other sources, Defendants' First Amendment interests with respect to these specific documents are insubstantial, and the discovery sought is narrowly tailored. *See id.* (discussing framework).

***The withheld discovery is directly relevant to X's claims.*** The withheld communications and identities of third parties are directly relevant to the essential elements of X's claims. As explained above, X sued Defendants asserting theories of business disparagement, tortious interference with contract, and tortious interference with prospective economic advantage, and is also seeking exemplary damages for all three claims. Am. Compl. ¶¶ 65-88. To succeed on the business disparagement claim, X must prove malice. *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987) ("The general elements of a claim for business disparagement are publication by the defendant of the disparaging words, falsity, malice, lack of privilege, and special

9

damages."); *accord Johnson v. Hosp. Corp. of Am.*, 95 F.3d 383, 391 (5th Cir. 1996). In fact, malice is relevant to X's claim for exemplary damages as to all three claims. *See Bagby Elevator Co., Inc. v. Schindler Elevator Corp.*, 609 F.3d 768, 772 (5th Cir. 2010).

When state of mind is at issue, as it is here, courts have held that qualified privileges such as the press and editorial privilege can be overcome if the evidence withheld "substantially enhance[s] the burden of proving" that state of mind. *E.g.*, *Herbert v. Lando*, 441 U.S. 153, 169 (1979) (rejecting the editorial process privilege of a media defendant when malice is a required element of defamation); *see also Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 726-27 (5th Cir. 1980) (affirming disclosure of informant's identity upon showing that disclosure is necessary to establish malice and knowledge that the story was false or reckless in its reliance). The same reasoning holds true here. A careful review of the Redacted Documents demonstrates that Defendants redacted crucial information, obscured highly relevant facts, and shielded material that bears directly on Defendants' mental state and the veracity of the Articles.

**1.** For each of the following documents, Defendants assert that "[t]he document contains communications pertaining to MMFA and its third-party partners' missions and strategy protected by the First Amendment privilege." Appx. 0411, 0424, 0425, 0427, 0432, 0434, 0435, 0438. And Defendants claim to have "[r]edacted identifying information of MMFA partners that collaborate with MMFA on research and advocacy projects" and "redacted communications reflecting avenues of potential journalistic research and strategic advocacy unrelated to research for the November 16 and 17, 2023 articles or to advertising or content moderation on Twitter." *Id*. Even the lightest scrutiny of these documents reveals they are responsive and that Defendants' redactions are excessive.

*MMFA_298401* ███████████████████████████████████

Appx. 0817-48. This document plainly involves relevant topics, including ████████████

████████████████████████████████████████████

████████████ Appx. 0817-22, 0829-31, 0839. What's more, the document mentions

████████████████████████████████████████████

████████████████████████████ Appx. 0829. X challenged

Defendants' excessive redactions, and Defendants reproduced the document as part of an overlay

production, removing some of the original redactions. But even after those conferences, the vast

majority of the 32-page document remains redacted—even though it is rife with highly relevant

content. Appx. 0817-48.

*MMFA_299351* █████████████████████████████████████

██████ Appx. 0850-51, █████████████████████████████████

███████████████████████████████████ in their overlay production leaving

likely relevant material redacted. *Id.*

*MMFA_300455, MMFA_301122, MMFA_302118, MMFA_302236,* and *MMFA_302256*

████████████████████████████████████ Appx. 0853-

78. These include ████████████████████████████████████

████████████████████ *Id.* One of these documents refers to █████████████████

██████████████████ Appx. 0859-60. After agreeing to reduce redactions on

these documents, Defendants simply unredacted the titles of the documents, leaving nearly all of

the documents' text completely redacted. Appx. 0853-78.

*MMFA_302295* ██████████████████████████████ Appx. 0880-

0922. Again, nearly every page of the forty-three-page document is redacted despite multiple

11

references to ███████████████████████████████████ *Id*. The document

███████████████████████████████ Appx. 0886. And it ████████████

██████████████████████████ Appx. 0904-05. Nevertheless, Defendants

have abjectly refused to meaningfully remove redactions from this key document.

    **2.** Defendants' objections and descriptions with regard to the next tranche of documents

described here were more creative, but none show that Defendants' redactions are necessary or

appropriate.

    *MMFA_303061* ████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████ Appx. 0924-44. Defendants redacted the first eighteen of twenty-

one one pages in their entirety, and three more portions on page nineteen, asserting First

Amendment and Texas Press Shield Law objections. *Id*. Defendants claim that the "[r]edacted

internal communications relat[e] to organizational management and labor negotiations unrelated

to research for the November 16 and 17, 2023 articles or to advertising or content moderation on

Twitter." Appx. 0461. Defendants claim to have "[a]lso redacted identifying information of

MMFA partner that collaborates with MMFA on research and advocacy projects." *Id*. In the small,

unredacted portions of the document, ██████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████ Appx. 0942. On the next page, ███████████████

██████████████████████████ Appx. 0943. ██████████████████████

██████████████████████████████████████████████████████████

██████████████████████████ *Id*. This highly relevant ████████████████

██████████████████████████████████████████████████████████

But in Defendants' overlay production, the first eighteen pages are still entirely redacted, and only the three small redactions on page nineteen were removed. Appx. 0924-44. In other words, potentially highly relevant evidence remains inaccessible to X for no legally cognizable reason.

MMFA_394543 ███████████████████████████████████████████

████████████████████████████████████████████████████████

███████ Appx. 0946-50. Defendants redacted the entirety of the first three of five pages, asserting the First Amendment and Texas Press Shield Law. *Id*. Defendants say they "[r]edacted internal communications relating to organizational management and labor negotiations unrelated to research for the November 16 and 17, 2023 articles or to advertising or content moderation on Twitter" and "[a]lso redacted identifying information of MMFA partner that collaborates with MMFA on research and advocacy projects." Appx. 0680. But unredacted portions of pages four and five of the document clearly show ███████████████████████████████ ████████████████████████████ Appx. 0948-50. When Defendants reproduced the document in their overlay production, they unredacted just three messages, which only serve to further show the relevance of the document and the inappropriate nature of the redactions. Appx. 0946-50.

MMFA_394747 ███████████████████████████████████████

█████████████████████████████████████ Appx. 0952-81. Defendants originally redacted the vast majority of the thirty-page document on First Amendment grounds, asserting that they "[r]edacted identifying information of MMFA partners that collaborate with MMFA on

---

[2] *See* Eric Hananoki, *As Musk endorses antisemitic conspiracy theory, X has been placing ads for Apple, Bravo, IBM, Oracle, and Xfinity next to pro-Nazi content*, Media Matters for America (Nov. 16, 2023, 10:05AM), https://www.mediamatters.org/twitter/musk-endorses-antisemitic-conspiracy-theory-x-has-been-placing-ads-apple-bravo-ibm-oracle.

research and advocacy projects" and "communications relating to internal organizational management issues or reflecting avenues of potential journalistic research and strategic advocacy unrelated to research for the November 16 and 17, 2023 articles or to advertising or content moderation on Twitter." Appx. 0684. In their overlay production, Defendants have removed some redactions but maintain significant others despite the surrounding content of the ████████████

████████████████████████████████████████████████████████████████

████████████████ Appx. 0970. ████████████████████████████████████

████████████████████████████ Appx. 0953. ████████████████

████████████████████████████████ *Id*.

Finally, *MMFA_408432* ████████████████████████████████████████

████████████████████████████████████████████████████████████████

Appx. 0983. Defendants redacted the document on First Amendment and Texas Press Shield Law grounds, claiming to have "[r]edacted identifying information of non-MMFA journalist seeking information from MMFA for a potential news story." Appx. 0795. In other words, Defendants redacted this document on the basis that they believe gossiping with their friends is privileged if those friends are also journalists. In their overlay production, Defendants unredacted only ██████████

████████████████████████████████████████████████████████████ Appx.

0983. ████████████████████████████████████████████████████████████

████████████████████████████████

---

[3] *See* Eric Hananoki, *X is placing ads for Amazon, NBA Mexico, NBCUniversal, and others next to content with white nationalist hashtags*, Media Matters for America (Nov. 17, 2023, 12:16 PM), https://www.mediamatters.org/twitter/x-placing-ads-amazon-nba-mexico-nbcuniversal-and-others-next-content-white-nationalist.

In combination, Defendants' redacted evidence is certain to provide a fulsome picture of MMFA's intent to ███████████████████ as opposed to publishing truthful reports about X. Appx. 0244. For example, if, as the unredacted portions of various documents suggest, ████████████████████████████████████████ ████████████████████ a factfinder may reasonably infer that Defendants never intended to provide honest reporting and in fact only intended to manufacture stories to destroy X's advertising revenue.[4]

Moreover, as a general matter, the redacted content is likely to shed light on the ill intent behind Defendants' behavior, including their failure to abide by basic journalistic practices. Finally, the third parties that Defendants have redacted information about may provide an important outsider's perspective on Defendants' conduct in depositions or at trial. The information that X requests in unredacted form is thus significant to the litigation and to X's ability to prove its claims. *Young Conservatives of Tex. Found.*, 2022 WL 2901007, at *3.

**3.** Defendants' prior redactions—and subsequent concessions that those redactions lacked merit—counsel against the claimed privileges. For example:

*MMFA_304021* ████████████████████████████ Appx. 0985-1001. In their initial production, Defendants alleged First Amendment privilege, "[r]edact[ing] identifying information of MMFA partner that collaborates with MMFA on research and advocacy projects." Appx. 0481. However, Defendants' most recent overlay production removed certain redactions in that document and revealed that ████████████████

---

[4] Likewise, the fact that Defendants have █████████████████████████████, casts serious doubt on the notion that any other meetings involved a journalistic purpose.



██████████████████████████████████████ Appx. 1013. ████████████

████████████████████████████████ *Id.*

*MMFA_394558* ██████████████████████████████████

██████████████████████████████ Appx. 1021-23. Defendants

originally redacted almost all of the three-page document on First Amendment and Texas Press

Shield Law grounds. *Id.* They asserted the "[r]edacted internal communications relat[ed] to

organizational management and labor negotiations unrelated to research for the November 16 and

17, 2023 articles or to advertising or content moderation on Twitter," and contained "identifying

information of MMFA partners that collaborate with MMFA on research and advocacy projects."

Appx. 0681. Here again, subsequent removal of some of those redactions, which only occurred

after X flagged the document for additional review, revealed ████████████████████

████████████████ Appx. 1025-26. ████████████████████

████████████████████████████████████████████████

████████████████████ Appx. 1025. ████████████████████

████████████████████████████████████████████████

██████████████████████████ *Id.*

*MMFA_394743* ██████████████████████████████

██████████████████ Appx. 1029-32. Again, Defendants originally redacted

the majority of the four-page document, asserting First Amendment and Texas Press Shield Law

grounds. *Id*. They claimed they had "[r]edacted internal communications relating to organizational management and labor negotiations unrelated to research for the November 16 and 17, 2023 articles or to advertising or content moderation on Twitter," and "identifying information of MMFA partners that collaborate with MMFA on research and advocacy projects." Appx. 0684. Once Defendants partially unredacted the document, it became clear the ███████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████ Appx. 1036. Dubious redactions remain on page four of the document, sandwiched between ██████████████████████ Appx. 1037. As with the documents discussed above, no portion of this document should be redacted.

*MMFA_394808* ████████████████████████████████████████

██████████████████████ Appx. 1039-51. Here again, Defendants asserted First Amendment and Texas Press Shield Law grounds as bases to withhold relevant information. Appx. 0685. But in the updated overlay production, ██████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████ Appx. 1053.

Finally, *MMFA_396369* ██████████████████████████

Appx. 1067-76. Here, the newly unredacted portions reveal ████████████████████████

██████████████████████████████████████████████████████████

██████████ Appx. 1078. ████████████████████████████████

██████████████████████████████████ Appx. 1083-84.

The above examples have *nothing* to do with the claimed First Amendment and Texas Press Shield privileges that Defendants allege, and Defendants' redactions are nothing more than brazen

17

attempts to hide the most inculpatory portions of documents behind the cloak of privilege. Even more troubling, the redactions violate this Court's order that Defendants shall provide all documents where "Defendants themselves have been accused of—or investigated—antisemitism at Media Matters." ECF No. 65 at 3. In light of these improper redactions, which never should have been made in the first instance, the Court should afford no weight to Media Matters' assertions that they are exercising prudence or care in their privilege assertions and the accompanying redactions (and withholding of documents) that they have insisted on maintaining.

**The withheld discovery is unavailable from any other source.** With respect to the second factor in the balancing test, the information that is the subject of this motion to compel is unavailable through any other means. Defendants alone possess internal communications among personnel. And as for communications with third parties, through its improper privilege assertions, Defendants have largely hamstrung X from identifying those parties, much less contacting them directly.

**Defendants have failed to substantiate their First Amendment interests.** As discussed above, *supra* pp. 6-18, Defendants have not adequately alleged an infringement of their First Amendment interests. Defendants and their conspirators were vocal in the public sphere about their plans to target X and destroy the platform post-acquisition. *See Counterman v. Colorado*, 600 U.S. 66, 73 (2023) ("[F]alse and defamatory statements of fact, we have held, have 'no constitutional value.'" (citation omitted)). It strains credulity that disclosure of individuals who were part of that scheme and likely already made their presence known in the public sphere will burden any First Amendment rights. *In re Motor Fuel Temp. Sales Practices Litig.*, 707 F. Supp. 2d 1145, 1165 (D. Kans. 2010) ("When information is already publicly available, compelled

18

disclosure will presumably have much less of a chilling effect—if any—on First Amendment rights.").

***X's discovery requests are appropriately tailored.*** Finally, the discovery requests at issue, and to which the documents discussed in this motion are responsive, sought information related to X, Musk, and the November articles. This information is indisputably relevant to the claims and defenses in this litigation. *See X Corp. v. Media Matters for Am.*, 120 F.4th 190, 199 (5th Cir. 2024) (agreeing with this Court that communications regarding "this Matter, Elon Musk, Linda Yaccarino, X, Twitter, or the Platform, including misinformation, brand safety, or ad pairing on the Platform" are relevant to the dispute.). And X has tailored its requests even more through this motion by only moving at this juncture to compel selected documents that are facially critical to X's causes of action and theories of liability.

*        *        *

In sum, Defendants fail to establish a *prima facie* case that the First Amendment applies here. To the extent the Court concludes otherwise, X has overcome the qualified privilege because of the importance of the withheld information to the litigation. The Court should therefore reject Defendants' First Amendment privilege claims as to the documents identified in this brief.

**B.      Defendants' Texas Press Shield Law privilege assertion lacks merit.**

The same documents discussed above also appear to have been withheld on the basis of the Texas Press Shield Law, which applies a similar framework insofar as it also requires courts to weigh the relevance of the requested documents. The statute provides that someone "acting as a journalist" cannot be compelled to produce "any confidential or nonconfidential information, document, or item obtained or prepared while acting as a journalist" or the source of that information. TEX. CIV. PRAC. & REM. CODE § 22.023(a). The law also includes limitations on an assertion of privilege by allowing an opposing party to obtain that information if: (1) all

19

"reasonable efforts" have been exhausted; (2) the requests are not overbroad, unreasonable, or oppressive; (3) "reasonable and timely notice" was provided; (4) the interest in obtaining the information "outweighs the public interest in gathering and dissemination of news," including the journalist's concerns; (5) the information is not "peripheral, nonessential, or speculative;" and (6) the information is relevant and "essential to the maintenance of a claim or defense." TEX. CIV. PRAC. & REM. CODE § 22.024.

Defendants' invocation of the Texas Press Shield Law fails. At the outset, for many of the documents they log, Defendants were emphatically *not* acting as journalists. TEX. CIV. PRAC. & REM. CODE § 22.023(a). Issues pertaining to "organizational management" or "labor negotiations" are common to any workplace and do not reflect information "obtained or prepared" while acting as a journalist. Likewise, ███████████████████████████ have nothing to do with journalistic endeavors. But even where Defendants can clear that initial hurdle, X has made a sufficient showing to justify production of the information under Section 22.024. To start, there is no dispute that "(1) all reasonable efforts have been exhausted to obtain the information from alternative sources." *Id.* § 22.024(1). The documents in question are ███████████████████████████████████████████ ███████████ Only Defendants possess this internal information, and X cannot obtain it by any other means.

Next, the relevant requests for production that X served are not "overbroad, unreasonable, or oppressive" and "reasonable and timely notice was given." *Id.* § 22.024(2)-(3). X proactively sought "[a]ll documents and communications related to the November 16, 2023 Article," and "[a]ll documents and communications related to the November 17, 2023 Article" in their requests for

production, ECF No. 60-1 at 12, 38, the relevance of which Defendants do not challenge. *See also Media Matters*, 120 F.4th at 299. Thus, X's motion is both timely and not overbroad.

X has also shown that its interests in obtaining the withheld documents outweigh "the public interest in gathering and dissemination of news." *Id.* § 22.024(4). X's request that Defendants serve unredacted versions of core documents is appropriately tailored to its aim of proving Defendants' tortious conduct. After all, if Defendants' defamatory articles were drafted with malicious intent rather than as part of legitimate newsgathering—and Defendants' own statement that they sought to ███████████████ suggests that is the case—both X and the public have a right to know those facts in a full and open trial. Appx. 0244.

Finally, the fifth and sixth elements of the Section 22.024 analysis require that the information sought is not "peripheral, nonessential, or speculative," and that "the information, document, or item is relevant and material . . . and is essential to the maintenance of a claim." TEX. CIV. PRAC. & REM. CODE § 22.024(5)-(6). As shown above, *supra* pp. 10-17, the documents speak to the quality of Defendants' work and their intentions behind it. The ultimate factfinder needs to hear this information in assessing X's claims and any defenses that Defendants intend to raise. Although Defendants insist that they have only redacted peripheral and non-essential information, their history of overbroad redactions renders that argument non-credible. *Supra* pp. 10-17. Moreover, their redactions have rendered the documents they have produced barely intelligible. *E.g.*, Appx. 0817-1087. A factfinder without detailed knowledge of this case is likely to be unable to make heads or tails of the documents absent full context. And nothing in the plain text of the Texas Press Shield Law provides a party to litigation with a roving commission to redact portions of indisputably pertinent documents and thereby leave the document devoid of all meaning. The

21

Court need not and should not countenance this impermissible usage of the limited journalistic privilege the Legislature granted.

## II.    Defendants Must Review Their Prior Productions to Ensure Their Existing Objections Are Proper.

Following X's identification of suspected improper redactions, Defendants removed many of those redactions and thereby acknowledged that those redactions had been improper. Given the systemic problems with those redactions, Defendants should be required to re-review their prior productions and privilege logs to ensure that any documents they have withheld are in fact privileged and that any documents they have redacted are not being redacted for an improper purpose. The burden is not on X to identify each and every improper redaction given these systemic problems. *See* ECF No. 98 (noting that the party *asserting* privilege carries the burden of proof (citing *Johnston v. Transocean Offshore Deepwater Drilling, Inc.*, No. CV 18-491, 2019 WL 1558040, at *2 (E.D. La. Apr. 10, 2019))). The burden, rather, is on *Defendants* to ensure that they do not "advance a claim of privilege that is unfounded." *In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-CV-20000-RDP, 2018 WL 2676165, at *4 (N.D. Ala. Jan. 29, 2018).

But that's exactly what Defendants have done repeatedly in this case. They have shirked their discovery obligations and advanced privilege assertions in bad faith. For example, there is no good faith interpretation of the case law interpreting the First Amendment and the Texas Press Shield Law that could possibly have led Defendants to believe they could redact their numerous ████████████████████████████████████████████ But Defendants habitually redacted any internal conversations on the subject. In doing so, Defendants distorted the relevant law beyond recognition and knowingly flouted one of this Court's earliest orders in the litigation. *See* ECF No. 65 at 3. A corrective measure is urgently needed.

22

In that vein, once a court has issued a decision on a representative sampling of documents, those rulings should "be applied to any similar documents being withheld." *Shipyard Associates, L.P. v. City of Hoboken*, No. 14-1145 (CCC), 2015 WL 4623470, at *2 (D.N.J. Aug. 3, 2015) (collecting cases); *see also Dolby Laboratories Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 862 (N.D. Cal. 2019) ("The purpose of this order is to adjudicate the disputes regarding these thirteen documents, as well as provide guidance to the parties so that they can attempt to resolve the remaining disputes regarding Adobe's privilege log without further court intervention."). Accordingly, courts have also authorized parties to request production of documents "of the same nature" as those a court has found are not privileged. *In re Blue Cross Blue Shield*, 2018 WL 2676165, at *3. In an analogous situation, a court determined that "it appeared the privilege had been improperly asserted over communications merely because an attorney had been copied." *Meade v. General Motors, LLC*, 250 F. Supp. 3d 1387, 1391 (N.D. Ga. 2017). "As a result, the Court directed Defendant to go back and review the documents to reevaluate whether the privilege was properly asserted in light of the Court's directives and guidance." *Id.* The same outcome should occur here. In light of Defendants' immediate concessions once their improper privilege assertions came to light, Defendants must review the entirety of their document production, from the first document to the most recent, and ensure that they have not wrongly withheld or redacted any information. *E.g.*, *Adobe Inc.*, 402 F. Supp. 3d at 862; *Meade*, 250 F. Supp. 3d at 1391. They must also submit revised privilege logs so that X and the Court can adequately test the assertions of privilege under Rule 26. No other corrective will suffice.

## III.   X Should Be Awarded Its Expenses for This Motion and Any Other Sanctions the Court Deems Appropriate.

A court may award "the movant's reasonable expenses incurred in making" a motion to compel, "including attorney's fees." Fed. R. Civ. P. 37(a)(5). This Court should do so here. As

23

described above, X conferred in good faith with Defendants about these matters before filing this motion, *see id.*, and Defendants' continued refusal to undo their improper redactions was not substantially justified. *See, e.g.*, *Sw. Insulation, Inc. v. Gen. Insulation Co.*, No. 4:15-CV-601-O, 2016 WL 9244822, at *6 (N.D. Tex. Apr. 25, 2016) (O'Connor, J.) (ordering, in calling for addition briefing, that "Defendant must explain whether its nondisclosure, responses, and objections were 'substantially justified'"); *Bldg. Four Shady Oaks Mgmt. LP v. Fed. Deposit Ins. Co.*, No. 3:10-CV-0970-O, 2011 WL 13229001, at *2 (N.D. Tex. June 10, 2011) (O'Connor, J.) (ordering an award of fees for motion to compel).

This award of "reasonable expenses" should include not just X's costs in drafting this motion (and any subsequent reply) but also the fees that X has incurred in reviewing Defendants' deficient productions to discover the scope of the problem. *See, e.g.*, *Urban 8 Fox Lake Corporation v. Nationwide Affordable Housing Fund 4, LLC*, 334 F.R.D. 149, 165 (N.D. Ill. 2020) (authorizing expenses incurred "dealing with" two deficient privilege logs and the costs of briefing regarding those logs); *Jackson v. Nassau County*, 602 F. Supp. 3d 352, 357 (E.D.N.Y. 2022) (authorizing expenses for attorney to obtain allegedly work-product privileged documents, meet and confer over the privilege claim, and conduct legal research as to the different documents).

Lastly, a "district court has the inherent authority to impose sanctions in order to control the litigation before it," *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 460 (5th Cir. 2010) (cleaned up), including "the power to levy sanctions in response to abusive litigation practices," *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993). A "court may assess attorney's fees under its inherent powers when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons" but "must make a specific finding that the sanctioned party acted in bad faith in order to impose such sanctions." *Matta v. May*, 118 F.3d 410, 416 (5th Cir. 1997). For the

24

reasons described extensively above, Defendants' conduct meets that standard, and the Court should therefore exercise its discretion to issue any other sanctions it deems appropriate.

## CONCLUSION

X requests that the Court overrule Defendants' privilege assertions, compel production of the Redacted Documents in unredacted form, and order Defendants to review all prior document productions consistent with their own prior concessions and the Court's directives. X also requests the expenses it has incurred in preparing for and drafting this motion and any subsequent briefing, as well as any other measures the Court considers proper.

Dated: December 29, 2025.

Respectfully submitted.

*/s/ Christopher D. Hilton*
Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
Ari Cuenin
Texas Bar No. 24078385
Elizabeth Brown Fore
Texas Bar No. 24001795
Michael R. Abrams
Texas Bar No. 24087072
Alithea Z. Sullivan
Texas Bar No. 24072376
Alexander M. Dvorscak
Texas Bar No. 24120461
Cody C. Coll
Texas Bar No. 24116214
**STONE HILTON PLLC**
600 Congress Ave., Ste. 2350
Austin, TX 78701
Telephone:(737) 465-3897
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
elizabeth@stonehilton.com
michael@stonehilton.com
alithea@stonehilton.com
alex@stonehilton.com
cody@stonehilton.com

John C. Sullivan
Texas Bar No. 24083920
**S|L LAW PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

*Attorneys for Plaintiff X Corp.*

26

**CERTIFICATE OF SERVICE**

I hereby certify that on December 29, 2025, a copy of this document was served on all counsel of record via email and through the Court's CM/ECF system in accordance with the Federal Rules of Civil Procedure.

*/s/ Michael R. Abrams*
Michael R. Abrams

27