## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **X CORP.**, a Nevada corporation, | § § § § | |
| *Plaintiff,* | § § | |
| v. | § § § | **Case No. 4:23-cv-01175-O** |
| **MEDIA MATTERS FOR AMERICA,** a Washington, D.C. non-profit corporation, **ERIC HANANOKI**, and **ANGELO CARUSONE**, | § § § § § | |
| *Defendants.* | § § § | |

## REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION
## OF DOCUMENTS WITHHELD ON PRIVILEGE GROUNDS

## TABLE OF CONTENTS

Table of Contents......................................................................................................................i

Table of Authorities ................................................................................................................ii

Introduction............................................................................................................................. 1

Argument and Authorities....................................................................................................... 2

    I.     The Court Should Reject Defendants' Proposal to Re-Review Their Prior Productions Limited to Topics They Hand-Picked............................................................................ 2

    II.    Defendants' Redactions of the Thirteen Disputed Documents Are Improper................. 4

    III.   X Preserved Its Objections to Defendants' Privilege Assertions and Properly Conferenced with Opposing Counsel Prior to Filing the Motion. .................................. 8

    IV.  X Should Be Awarded Its Expenses and Other Appropriate Sanctions. ....................... 10

Conclusion ........................................................................................................................... 10

Certificate of Service ........................................................................................................... 12

## TABLE OF AUTHORITIES

**Cases**

*Allied Tech. Grp., Inc. v. United States*,
  94 Fed. Cl. 16 (2010) ........................................................................................................... 7

*Atain Specialty Ins. Co. v. Structure Ace, LLC*,
  No. MC 24-2286, 2025 WL 1325307 (E.D. La. Jan. 13, 2025) ................................................ 7

*Harte-Hanks Communications, Inc. v. Connaughton*,
  491 U.S. 657 (1989)............................................................................................................... 3

*Long v. Arcell*,
  618 F.2d 1145 (5th Cir. 1980) ............................................................................................... 3

*Matta v. May*,
  118 F.3d 410 (5th Cir. 1997) ............................................................................................... 10

*Mi Familia Vota v. Fontes*,
  344 F.R.D. 496 (D. Ariz. 2023) ............................................................................................. 5

*Pierce v. Clarion Ledger*,
  No. 4:05-cv-75-LN, 2005 WL 8174870 (S.D. Miss. Oct. 24, 2005)......................................... 4

**Statutes**

Tex. Civ. Prac. & Rem. Code § 22.023(a) ...................................................................................... 5

**Rules**

Fed. R. Civ. P. 37(a)(5)(A) ......................................................................................................... 10

**INTRODUCTION**

Defendants' response to X's motion to compel is replete with concessions that their privilege review has been woefully deficient. They candidly acknowledge, for example, that their prior counsel made overly broad redactions to a host of documents. Resp. 3 n.1. And to avoid being ordered to undertake a full-scale review of their process, Defendants preemptively and unilaterally agree to re-review documents that they have previously logged as privileged—but only if those documents relate to what they define as the "core" issues in the case. Resp. 20.

These half-measures are far too little, too late. Defendants' proposal to re-review their prior productions for "core" documents is a complete non-starter. For avoidance of doubt, X strongly disputes that the issues in this case are limited to Defendants' list of seven narrow categories of topics, *see* Resp. 3, which notably excludes documents relating to Media Matters for America as an organization and the activist tactics that it frequently deploys to attack its enemies. That information is foundational to X's claims. Nothing more than a complete overhaul of Defendants' privilege review will suffice to ensure that these highly relevant and material documents are not being improperly redacted or withheld.

Indeed, the problems with Defendants' privilege assertions run so deep that Defendants do not seriously quibble with X's arguments on the merits. They instead mischaracterize the thirteen specific documents in dispute and make a corresponding request to burden the Court with a lengthy in camera review process. No such review is warranted; Defendants have not met their burden of establishing either the First Amendment or Texas Press Shield Law privileges as to those thirteen disputed documents.

Defendants also raise complaints about procedure: they maintain that X did not adequately conference the motion to compel prior to filing it, and they insist that X waived its objections to twelve of the thirteen documents at issue. Both assertions are meritless. As to the former, X filed

1

its motion after exchanging over half a dozen letters regarding Defendants' privilege assertions that spanned months of productions. The parties' communications also included two conferences between counsel and correspondence regarding over sixty specific documents on Defendants' privilege logs. Ultimately, Defendants made their positions clear by agreeing to produce some documents in unredacted form but holding back others in part or in full. The parties were at an impasse, and a motion to compel was not just appropriate but urgently needed given the rapidly closing window for document discovery before the commencement of depositions. Moreover, in these same communications (all of which are in the record for the Court's review), X clearly preserved its objections to the thirteen documents that are the subject of the motion to compel.

In other words, there is no procedural impediment to review, and the disputed documents are both extremely relevant and immune from Defendants' claims of privilege. The Court should grant X's motion to compel in full.

## ARGUMENT AND AUTHORITIES

### I. The Court Should Reject Defendants' Proposal to Re-Review Their Prior Productions Limited to Topics They Hand-Picked.

From the outset of their response, Defendants transparently recognize that they must conduct *some* form of re-review their old productions, but they wrongly claim they need only review and produce documents that relate to topics that Defendants have chosen, which they have presumptively deemed the "core" issues in the case.[1] Resp. 20. They have also agreed to review their prior productions for materials related to the Anti-Defamation League. *Id.* These limited proposals are wholly insufficient to solve the problems that X identified. The relevant question is

---

[1] Those seven topics (as Defendants describe them) are: the November 16 & 17, 2023, articles written by Mr. Hananoki; advertising on Twitter or X; communications with advertisers about their relationship to Twitter, X, or Elon Musk; content moderation on Twitter or X; Elon Musk's purchase of Twitter; the "Stop the Deal" or "Stop Toxic Twitter" coalitions; and MMFA commentary on Elon Musk. *See* Resp. 3.

not whether documents involve what Defendants consider to be "core" issues in the case. Rather, the disputes are: (1) whether documents are responsive to X's requests for production, and (2) whether Defendants have asserted valid privileges in response to those requests. The appropriate benchmark for a re-review, therefore, must begin with X's document requests as written, not with Defendants' self-imposed limitation on what constitutes information that is "core" to the parties' dispute. Those requests cover, among other topics, Defendants' marketing materials, their plans to implement advertiser boycott campaigns against X and any other entities, and their internal communications regarding Media Matters' operations and purpose. Reply Appx. 16, 18 (RFPs 187, 207, and 210).

Under Defendants' view of what a "core" topic is, documents responsive to several of these outstanding document requests would never see daylight. For example, documents discussing advertiser boycotts of companies that Defendants perceive to hold conservative viewpoints would be considered non-"core" documents and thus shielded from production. In turn, this means that Defendants' definition of "core" issues excludes important evidence of Defendants' objectives to malign perceived political opponents and the tactics that Defendants are willing to employ to attack those opponents—not just X—regardless of potential countervailing facts. At trial, this evidence will be crucial to establishing malice. *See, e.g.*, *Long v. Arcell*, 618 F.2d 1145, 1147 (5th Cir. 1980) (malice inquiry focuses on "the defendant's state of mind at the time of publication"). Defendants' proposed definition of "core" information would also appear to exclude responsive documents about internal resource allocation to fact checking or other journalism services—another crucial consideration to whether Defendants acted maliciously. *See, e.g., Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989). ("[I]t is likely that the newspaper's inaction was a product of a deliberate decision not to acquire knowledge of facts that might confirm the probable

falsity of Thompson's charges."); *Pierce v. Clarion Ledger*, No. 4:05-cv-75-LN, 2005 WL 8174870, at *3 (S.D. Miss. Oct. 24, 2005) ("[B]ecause evidence of the editorial process is the best direct evidence from which malice may be proved, a public official/public figure plaintiff may compel production of confidential information concerning the development of the publication."). In fact, Defendants' definition of "core" issues notably fails to extend to Defendants' broader journalistic practices, ideological agenda and internal goalposts, and worse still, shifts the spotlight away from Media Matters as an organization altogether, even though Media Matters' behavior is at the center of the parties' dispute. *E.g.*, Am. Compl. ¶¶ 2-3.

Thus, the re-review that Defendants envision is likely to cause the very same problems that led X to file its motion in the first instance. The Court should not oblige such obvious efforts to avoid basic discovery obligations. A comprehensive re-review is necessary to ensure that *all* relevant material is captured and that any redactions or withholding of documents are done consistently with the Court's decisions on the proper, and properly limited, scope of the First Amendment and the Texas Press Shield Law privileges that Defendants have asserted.

## II.    Defendants' Redactions of the Thirteen Disputed Documents Are Improper.

As X set out in its motion, the thirteen disputed documents are likely to shed light on Defendants' intent to ███████████████████████ by any means necessary.[2] Mot. 10-17, 21. To the extent that the First Amendment or the Texas Press Shield Law apply here, X has overcome those qualified privileges by showing that the documents relate to matters at the heart of the parties' claims and defenses. Mot. 6, 19.

---

[2] Defendants' recent overlay production of five of these documents solves none of the problems that X identified. *See* Resp. 13 n.5. X has reviewed the overlay production, and the documents remain riddled with whole-cloth redactions that make deciphering the content of the documents difficult if not impossible.

In their response, Defendants insist that caselaw recognizes a First Amendment privilege for "*internal* coalition communications regarding their advocacy-related work." Resp. 8-9 (emphasis in original). But they offer no on-point precedent for this novel assertion, and their rule contains no limiting principle. On their view, anyone Defendants have ever contacted for any support at any time could theoretically be part of their "coalition." The limited First Amendment privilege does not sweep so broadly. *See Mi Familia Vota v. Fontes*, 344 F.R.D. 496, 513-14 (D. Ariz. 2023) (recognizing the First Amendment's distinction between internal and external communications). And with respect to the Texas Press Shield Law, Defendants provide no explanation of how "organizational management" or "labor negotiation activities" have anything to do with journalism. Instead, they rewrite the statute to claim that the documents they have redacted or withheld "bear on journalistic processes and aims." Resp. 12. But that is not the statutory test. The proper question is whether the contested items were "obtained or prepared while acting as a journalist." TEX. CIV. PRAC. & REM. CODE § 22.023(a). Defendants' response makes clear that the documents at issue have nothing to do with anyone acting in any journalistic capacity.

X also noted that Defendants' privilege claims over the thirteen disputed documents should be afforded no deference based on Defendants' troubling redactions ████████████ ████████████████████ Mot. 15-17. If Defendants have already redacted communications about a matter of indisputable relevance to this case (and which were subject to a court order), only to remove those redactions when X raised concerns, what else might be lurking in the pages and pages of still-redacted material?

Defendants' response is not reassuring. ██████████████████

████████████████████████████

████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████

     That is not the only instance in which Defendants' characterizations of the documents at issue are incomplete at best. For example, ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████ As the Court and Defendants well know, X's claims revolve around Defendants' complicity in the cancellation of advertising spend on X based on falsehoods and misstatements. Defendants nonetheless continue to obfuscate about the contents of highly relevant documents.

     The first immediate remedy for this problem is the full and unredacted production of the thirteen disputed documents that X has identified. Defendants' response puts the burden on the Court to review each of the documents in camera, *see* Resp. 13, but they do not explain why in camera review is appropriate. To be sure, Defendants take the view that the "redacted portions [of

the 13 documents] have nothing to do with" X, Elon Musk, the November 2023 articles or "any other disputed issues in the case," Resp. 13, but they acknowledge that the unredacted portions of the documents do, in fact, relate to those subjects. Thus, at a minimum, the unredacted discussions will provide important background context illuminating internal discussions that Defendants have admitted are relevant. *E.g.*, ECF No. 255-2 at 937-43 ███████████████████████████████ ██████████████████████████████████. And even in Defendants' own words, the redactions in the documents include ███████████████████████████████████ ███████████████ which ███████████████████████████████████████ ████████████████████████████████████████████████████ Resp. 10. These admissions showcase that Defendants' redactions have shielded important conversations that are responsive to several of X's pending document requests and likely to bear on Defendants' mental state. *Supra* pp. 3-5. The importance of that evidence outweighs any asserted First Amendment or Texas Press Shield Law interests. *See* Mot. 11-12.

Put simply, Defendants identify no basis to slice-and-dice relevant documents such that purportedly irrelevant portions of the documents are excised. *See Atain Specialty Ins. Co. v. Structure Ace, LLC*, No. MC 24-2286, 2025 WL 1325307, at \*4 (E.D. La. Jan. 13, 2025) (production of heavily redacted documents was unacceptable gamesmanship and did not reflect a good faith effort to comply with the court's order). And the sheer scope and nature of Defendants' redactions would make it exceedingly difficult for any factfinder to understand the meaning of the documents. *Cf. Allied Tech. Grp., Inc. v. United States*, 94 Fed. Cl. 16, 23 n.1 (2010) ("[I]f the court were to accept all of [the] proposed redactions, it would . . . result[] in a nearly incomprehensible public document."). The Court should overrule Defendants' privilege assertions and order the full production of the thirteen disputed documents without an in camera review.

### III.    X Preserved Its Objections to Defendants' Privilege Assertions and Properly Conferenced with Opposing Counsel Prior to Filing the Motion.

Defendants have produced hundreds, if not thousands, of heavily redacted documents over the course of discovery. *See* Mot. 5. After X highlighted certain of those documents that appeared to contain improper redactions, Defendants agreed to produce some of those documents without redactions, but they maintained heavy redactions for others. Accordingly, X sought to compel the production of thirteen of those documents without any redactions. Mot. 6.

Yet Defendants insist that X "long ago waived its right to challenge twelve of the thirteen documents at issue." Resp. 6. Not so. As Defendants note, eight of the challenged documents were included on a privilege log served on July 2, 2025, and four others were listed on a privilege log served on September 15. *Id.* at 6-7. X timely and appropriately objected "to the assertions of First Amendment and Texas Press Shield Law privileges for *all* documents identified as such" on both logs. Reply Appx. 21-22; ECF No. 255-2 at 280. X framed its objections this way to ensure that it preserved its broad and overarching objections to the validity of Defendants' assertions of First Amendment and Texas Press Shield Law privileges. *See* ECF No. 84 at 10-14; ECF No. 96 at 6-10. What's more, X's letter concerning Defendants' September 15 privilege log noted that "X has previously set out the reasons for its objections to Defendants' broad assertions of these privilege claims in court filings and correspondence between the parties, and X *understands that the parties remain at an impasse* over both the general applicability of the privileges and the specific application of those privileges to all of the documents that Defendants have logged." ECF No. 255-2 at 280 (emphasis added); *see also* ECF No. 255-2 at 267-78 (describing X's objections to Defendants' privilege assertions in detail). X thus fully preserved its objections to all thirteen documents at issue, consistent with its legal arguments that the First Amendment and Texas Press Shield Law privileges are inapplicable to these facts. The parties' privilege log exchange

8

agreement, which simply requires an "object[ion] to the privilege designation of a document" within fourteen days of service of a privilege log, ECF No. 256-2 at 20, demands nothing further.

X also adequately conferenced the motion with Defendants. The parties' discussions precipitating this motion began in May 2025, when X sent Defendants a comprehensive letter describing X's objections to Defendants' privilege assertions. *See* ECF No. 255-2 at 267-78. Two conferences and multiple letter exchanges followed. *See* ECF No. 254 at 3 (detailing parties' conferences); *e.g.*, ECF No. 255-2 at 280-81 (letter regarding Defendants' tenth privilege log). These discussions culminated in a final attempt from X to resolve the impasse. With respect to 51 documents that X identified on November 7, 2025, Defendants responded by grouping them into three categories: with respect to the first bucket of eighteen documents, Defendants agreed to produce the documents "in full with no redactions." ECF No. 255-2 at 286. For 31 others (including the thirteen documents now in dispute), Defendants provided an overlay production with what they called "substantially fewer redactions." *Id.* Finally, with respect to the remaining two documents, Defendants "determined that no further redactions are warranted" because the "topics discussed in the redacted portions of those documents, which include personnel matters, personal matters, and Media Matters reporting and advocacy unrelated to Twitter, X, or Elon Musk, are not relevant to the claims or defenses in this action." *Id.* at 287.

In other words, Defendants looked closely at each of the 51 documents in dispute and reached decisions as to each based on their long-stated positions about the applicability of the First Amendment and Texas Press Shield Law privileges. X had no reason to doubt the sincerity or finality of Defendants' determinations. Based on the length and intensity of the parties' discussions, the parties' longstanding disagreement over the scope of the privileges asserted, and Defendants' document-by-document judgment calls, X concluded that the parties had reached a

final impasse justifying a motion to compel. If anything, Defendants' response confirms that X was correct in that assessment: they note, for instance, that they gave "careful consideration of many factors" in making those privilege determinations. Resp. 3 n.1. In sum, this motion was ripe, and no additional conferences between the parties were needed.

## IV.    X Should Be Awarded Its Expenses and Other Appropriate Sanctions.

Finally, for the reasons that X has previously briefed, Mot. 23-25, Defendants' positions are not substantially justified, and an award of "reasonable expenses incurred in making" the motion is therefore appropriate. Fed. R. Civ. P. 37(a)(5)(A). In short, the Court should award X its expenses for uncovering these deficiencies and bringing them to the Court's attention. Defendants again chide X for failing to conference prior to filing the motion, but as X has explained, *supra* Part III, X only filed the motion after months of discussions between the parties after which the parties were indisputably at an impasse. X complied with the letter and spirit of Rule 37 prior to filing the motion, and the Court should exercise its considerable discretion under the Federal Rules of Civil Procedure and the Court's inherent authority to award expenses and deter future improper gamesmanship from infecting the parties' document production process. *See Matta v. May*, 118 F.3d 410, 416 (5th Cir. 1997).

**CONCLUSION**

X requests that the Court overrule Defendants' privilege assertions, compel production of the thirteen disputed documents in full and unredacted form, and order Defendants to review all prior document productions without limitation to documents they consider "core" to the case. X also requests any other relief to which it may be entitled.

Dated: February 3, 2026.

Respectfully submitted.

/s/ Christopher D. Hilton
Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
Ari Cuenin
Texas Bar No. 24078385
Elizabeth Brown Fore
Texas Bar No. 24001795
Michael R. Abrams
Texas Bar No. 24087072
Alithea Z. Sullivan
Texas Bar No. 24072376
Alexander M. Dvorscak
Texas Bar No. 24120461
Cody C. Coll
Texas Bar No. 24116214
**STONE HILTON PLLC**
600 Congress Ave., Ste. 2350
Austin, TX 78701
Telephone:(737) 465-3897
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
elizabeth@stonehilton.com
michael@stonehilton.com
alithea@stonehilton.com
alex@stonehilton.com
cody@stonehilton.com

John C. Sullivan
Texas Bar No. 24083920
**S|L LAW PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

*Attorneys for Plaintiff X Corp.*

11

CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2026, a copy of this document was served on all counsel of record via email and through the Court's CM/ECF system in accordance with the Federal Rules of Civil Procedure.

/s/ Michael R. Abrams
Michael R. Abrams