# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

X CORP., a Nevada corporation,

       Plaintiff,

       v.

MEDIA MATTERS FOR AMERICA, a
Washington, D.C. non-profit corporation,
ERIC HANANOKI, and ANGELO
CARUSONE,

       Defendants.

Civil Action No. 4:23-cv-01175-O

---

# DEFENDANTS' OPPOSITION TO X CORP.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD ON PRIVILEGE GROUNDS

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES...................................................................................................... ii

I.  Background ..................................................................................................................... 2

    A.  The Parties' Communications Regarding Defendants' Privilege Assertions. ............ 2

    B.  The Thirteen Documents at Issue ............................................................................. 5

II.  Argument ....................................................................................................................... 6

    A.  X Has Waived Its Objections with Respect to Twelve of the Documents. ................ 6

    B.  Defendants' First Amendment and Texas Press Shield Privilege Assertions Are
        Valid. ........................................................................................................................ 7

        1.  First Amendment Privilege.............................................................................. 7

            a.  Defendants have made a *prima facie* showing of infringement on
                protected rights......................................................................................... 8

        2.  Texas Press Shield Privilege......................................................................... 10

            a.  Defendants have made a *prima facie* showing that the privilege applies.
                ...............................................................................................................11

    C.  X Has Failed to Establish a Need for the Redacted Information at Issue................ 12

    D.  X Has Failed to Show the Existence of Any Systemic Deficiencies in Defendants'
        Privilege Review Processes. ................................................................................... 17

    E.  X Is Not Entitled to an Award of Expenses or Other Sanctions. ............................ 21

CONCLUSION...................................................................................................................... 22

## TABLE OF AUTHORITIES

**CASES**

*Americans for Prosperity Found. v. Bonta*,
  594 U.S. 595 (2021)..................................................................................................... 8

*Christ Covenant Church v. Town of Sw. Ranches*,
  No. 07-60516-CIV, 2008 WL 2686860 (S.D. Fla. June 29, 2008) ............................. 8

*Compass Bank v. Shamgochian*,
  287 F.R.D. 397 (S.D. Tex. 2012)............................................................................... 21

*Hastings v. N. E. Indep. Sch. Dist.*,
  615 F.2d 628 (5th Cir. 1980)................................................................................... 7, 8

*Heller v. City of Dallas*, 303 F.R.D. 466 (N.D. Tex. 2014)........................................... 22

*La Union Del Pueblo Entero v. Abbott*,
  No. SA-21-CV-00844-XR, 2022 WL 17574079 (W.D. Tex. Dec. 9, 2022) .............................. 9

*LEV Invs., Inc. v. Princeton Excess & Surplus Lines Ins. Co.*,
  350 F.R.D. 86 (N.D. Tex. 2025) ................................................................................ 22

*Matta v. May,*
  118 F.3d 410 (5th Cir. 1997) ..................................................................................... 22

*NAACP v. Alabama*,
  357 U.S. 449 (1958)................................................................................................. 7, 8

*Nafta Traders, Inc. v. Adidas Am., Inc.*,
  No. 3:19-CV-00915-N, 2023 WL 114703 (N.D. Tex. Jan. 4, 2023)...................................... 22

*Perry v. Schwarzenegger*,
  591 F.3d 1147 (9th Cir. 2010) ........................................................................... 8, 9, 12

*Pressey v. Patterson*,
  898 F.2d 1018 (5th Cir. 1990) ................................................................................... 22

*Shuffle Master, Inc. v. Progressive Games, Inc.*,
  170 F.R.D. 166 (D. Nev. 1996) .................................................................................. 21

*Spartan Composites, LLC v. Signature Sys. Grp., LLC*,
  No. 4:24-CV-609, 2025 WL 2982199 (E.D. Tex. Oct. 21, 2025).......................................... 22

*The Ohio Org. Collaborative v. Husted,*
  No. 2:15-CV-01802, 2015 WL 7008530 (S.D. Ohio Nov. 12, 2015) .................................... 10

*United States v. Gilbert*,
   198 F.3d 1293 (11th Cir. 1999) .............................................................................. 22

*Whole Woman's Health v. Smith*,
   896 F.3d 362 (5th Cir. 2018) .................................................................................. 9

*Young Conservatives of Texas Found. v. Univ. of N. Texas*,
   No. 4:20-CV-973-SDJ, 2022 WL 2901007 (E.D. Tex. Jan. 11, 2022).................................... 7, 9

## OTHER AUTHORITIES

Tex. Civ. Prac. & Rem. Code Ann. § 22.021(2) .....................................................................11, 12

Tex. Civ. Prac. & Rem. Code Ann. § 22.023(a)........................................................................... 10

Tex. Civ. Prac. & Rem. Code Ann. § 22.024(5)-(6) .................................................................... 12

## RULES

Fed. R. Civ P. 26(b)(1) ................................................................................................................. 8

Fed. R. Civ. P. 37(a)(2)(B) ......................................................................................................... 21

Fed. R. Civ. P. 37(a)(5)(A)(ii) .................................................................................................... 21

Fed. R. Civ. P. 37(a)(5)(A)(i) ..................................................................................................... 21

Defendants have worked diligently and in good faith to respond to X Corp.'s onslaught of overly burdensome and invasive discovery requests. To date, X has issued more than *two hundred* requests for production (many of them overbroad, cumulative, and otherwise objectionable), and Defendants have produced well over 400,000 pages of documents. Defendants also have, in some cases, withheld or produced in redacted form documents protected from disclosure under two qualified privileges: the First Amendment privilege and the Texas Press Shield privilege.

Mindful that both privileges may be overcome upon a proper showing of need, Defendants have invoked them relatively sparingly.  As Defendants previously communicated to X, both orally and in writing, Defendants have endeavored to produce any portion of a responsive document containing information that is "core" to the case. Defendants have defined "core" to include such subjects as advertising and content moderation on Twitter or X, Elon Musk's purchase of Twitter, the Stop Toxic Twitter coalition, and the two November 2023 articles at issue.  X has never objected to Defendants' broad definition of "core."

Each time X has challenged or raised questions regarding entries on Defendants' privilege logs, Defendants have promptly re-viewed the documents in question and agreed to meet and confer with X in good faith.  And in many cases, in an effort to avoid burdening the Court with unnecessary motions practice, Defendants ultimately have agreed to re-produce the documents with no redactions or substantially fewer redactions—a cooperative process that X now spins as a nefarious attempt "to avoid this Court's review." MTC at 1.

As to the thirteen documents at issue in X's motion—all of which are documents X previously challenged and Defendants voluntarily agreed to re-produce with fewer redactions—X has not come close to establishing the requisite need for the redacted information to overcome the asserted privileges.  Indeed, a review of the documents demonstrates that the redacted portions

1

have nothing whatsoever to do with Twitter, X, or Elon Musk and are utterly irrelevant to the claims and defenses in this case. Defendants invite the Court to review unredacted copies of the thirteen documents *in camera*, to confirm the redacted portions are not relevant to this case.

X also has failed to establish the existence of any "systemic deficiencies" in Defendants privilege review processes, any "bad faith assertions of privilege," any "deliberately obfuscatory" behavior, or any "shirking of their discovery obligations," all of which X has alleged without basis. To the contrary, the record shows that Defendants have approached their discovery obligations in a diligent, open, good-faith, and non-obstructionist manner, often by making significant concessions in efforts to resolve disputes without forcing X to engage in motion practice and burdening the Court.

Finally, and significantly, Defendants would have welcomed the opportunity to dissuade X from filing its motion, but X chose not to meet and confer with Defendants beforehand. Had the parties discussed the issues raised in X's motion, Defendants would have explained why X has no need for the redacted information in the thirteen documents at issue, and X also would have learned that Defendants will agree to much of the other relief X seeks and, in fact, already have begun the process of re-reviewing the documents listed on their privilege logs.

For these reasons and those set forth below, X's motion should be summarily denied.

## I.    BACKGROUND

### A.    The Parties' Communications Regarding Defendants' Privilege Assertions.

The thirteen documents at issue in X's motion are not the first documents listed on Defendants' privilege logs that X has challenged. On August 11, 2025, X identified eleven documents from Defendants' Ninth Privilege Log, which had been served two weeks earlier on July 28, 2025, that X believed contained improper redactions. Def. Appx. 05. One of those

documents—*MMFA_303061*—is among the thirteen documents at issue in this motion. By letter

dated August 27, 2025, Defendants advised X that it had reviewed the documents and determined

that the redactions were proper, explaining specifically why they had redacted the first 18 pages

of *MMFA_303061*. Def. Appx. 08. Separately, Defendants reiterated in the letter what they had

previously advised X orally: in an effort to avoid unnecessary motions practice, Defendants have

strived to draw careful lines to leave unredacted any portions of responsive documents that are

subject to the Texas Press Shield statute but also concern "core" issues in the case. These "core"

issues are broadly defined to include the following:

- the November 16 & 17, 2023, articles written by Mr. Hananoki;

- advertising on Twitter or X;

- communications with advertisers about their relationship to Twitter, X, or Elon Musk;

- content moderation on Twitter or X;

- Elon Musk's purchase of Twitter;

- the "Stop the Deal" or "Stop Toxic Twitter" coalitions; and

- MMFA commentary on Elon Musk.

*See* Def. Appx. 08.[1] X never objected to Defendants' broad definition of the "core" issues in the

case.

---

[1] As a general matter, Defendants also have largely refrained from asserting First Amendment privileges over documents, or portions thereof, that concern "core" issues in the case. Although Defendants initially redacted identifying information of third parties who collaborated with MMFA on matters relating to "core" issues, they no longer are doing so and, in fact, are in the process of re-reviewing previously logged documents to remove any such redactions. Current counsel arrived at these positions over time after careful consideration of many factors, including the number and scope of X's document requests, the volume of materials to be reviewed, the pretrial schedule, the sensitive nature of many MMFA documents, the qualified nature of the privileges at issue, and the desire to resolve discovery disputes in good faith without unnecessarily burdening the Court.

On September 29, 2025, X challenged thirteen documents listed on Defendants' Tenth Privilege Log, which had been served two weeks earlier on September 15, 2023. Pl. Appx. 0280-81. During a meet and confer over Zoom on October 1, 2025 (*see* Pl. Appx. 0283), Defendants advised X that, in an effort to avoid unnecessary motions practice, Defendants would remove many of the challenged redactions, including redactions of certain information that is plainly irrelevant. Defendants also explained why other redactions would remain in place and offered to meet and confer again if X had any questions or concerns after reviewing Defendants' overlay production. At no time did Defendants ever concede that their initial redactions on the thirteen documents were improper in any respect. Defendants made their production the following day, on October 2, 2025, and never heard a single complaint from X about the reproduced documents.

On November 7, 2025, X challenged 51 documents listed across three of Defendants' privilege logs—the Ninth and Tenth Privilege Logs, as well as Defendants' Eighth Privilege Log, which had been served several months earlier on July 2, 2025. Pl. Appx. 0283-84. By letter dated December 8, 2025, Defendants advised X that, notwithstanding the untimeliness of X's challenges, Defendants would agree to reproduce most of the 51 documents with fewer redactions to allay X's unfounded concerns and in an effort to avoid burdening the Court with unnecessary motions practice. Pl. Appx. 0286-87. Once again, Defendants never conceded that their initial productions were improper in any respect. And, just as Defendants had done with each prior re-production, Defendants invited X to meet and confer if X had any questions or concerns after receiving the re-produced documents. *See id.*

X did not take Defendants up on their offer to meet and confer and instead simply informed Defendants by email on the morning of December 29, 2025, that X would be filing its motion to compel later that day seeking production of thirteen of the 51 documents in unredacted form,

4

among other relief.  Def. Appx. 11.  That email, which X chose not to include in its Appendix, did not disclose that X also would be seeking costs.  *See* Def. Appx. 11.  At no time did the parties ever discuss the thirteen documents at issue in X's motion, in person or over Zoom.  Nor did X ever convey to Defendants, either orally or in writing, any concerns that X had based on Defendants' voluntary disclosure of previously redacted information.

**B.      The Thirteen Documents at Issue**

Defendants have invoked the First Amendment privilege with respect to all thirteen documents at issue.  Seven of the challenged documents are ██████████████████████ ████████████████████████ *MMFA_298401*, *MMFA_299351*, *MMFA_300455*, *MMFA_301122*, *MMFA_302118*, *MMFA_302236*, *MMFA_302256* (Pl. Appx. 0817-878).  An eighth document consists of ████████████████████████ *MMFA_302295* (Pl. Appx. 0880-922).  ████████████████████████████

███████████████████████████████████████████████

████████████  Def. Appx. 15, ¶ 6.  MMFA is ██████████████  *Id.*  ██████████

███████████████████████████████████████████████

██████████  *Id.*  ████████████████████████████████

███████████████████████████████████████████████

████████████████████  *Id.*  ████████████████████████

███████████████████████████████████████████████

Pl. Appx. 0817-878; Def. Appx. 15, ¶ 7.

Four of the thirteen challenged documents are internal MMFA Slack message chains. *MMFA_303061*, *MMFA_394543*, *MMFA_394743*, *MMFA_394747* (Pl. Appx. 0924-81, 1034-37). Slack is a digital workspace communication platform.  Because of the way in which MMFA's Slack

messages were collected and processed for review and production, each individual document comprises every message between or among the participants in the chain during a single calendar day. As a result, the Slack message chains are lengthy and include discussions of multiple topics, often separated by long breaks. The four Slack message chains at issue concern such matters as strategies for reporting on public events and collaborating with like-minded organizations on advocacy efforts, processes involved in publishing news stories, and labor negotiations and organizational management and personnel issues at MMFA. For three of these Slack chains (*MMFA_303061*, *MMFA_394543*, *MMFA_394743*), Defendants have asserted the Texas Press Shield privilege in addition to the First Amendment privilege.

The last document at issue is a Zoom meeting invite from MMFA to a reporter at another publication relating to "Press Interviews." *MMFA_408432* (Pl. Appx. 0983). For this document as well, Defendants have asserted the Texas Press Shield privilege in addition to the First Amendment privilege.

## II.    ARGUMENT

### A.    X Has Waived Its Objections with Respect to Twelve of the Documents.

As an initial matter, X long ago waived its right to challenge twelve of the thirteen documents at issue. Under Section III of the parties' Stipulation for the Exchange of Privilege Logs, X had "14 days after a privilege log is produced to object to the privilege log designation of a document on said privilege log in writing." Def. Appx. 20-21; *see* ECF No. 68 at 4. Eight of the documents, *MMFA_298401*, *MMFA_299351*, *MMFA_300455*, *MMFA_301122*, *MMFA_302118*, *MMFA_302236*, *MMFA_302256*, *MMFA_302295* (Pl. Appx. 0817-922), are listed on Defendants' Eighth Privilege Log, which was served on July 2, 2025, along with the documents themselves. Pl. Appx. 0411, 0424, 0425, 0427, 0423, 0434, 0435, 0438; Def. Appx. 24. Four more of the documents, *MMFA_394543*, *MMFA_394743*, *MMFA_394747*, *MMFA_408432* (Pl. Appx. 0946-

83, 1034-37), are listed on Defendants' Tenth Privilege Log, which was served on September 15, 2025, along with the documents themselves.  Pl. Appx. 0680, 0684, 0795; Def. Appx. 26.  Because X did not specifically object to these twelve documents in writing until November 7, 2025—well over fourteen days after the documents and the logs on which they appear were produced—X's challenges to those documents have come too late.  For that reason alone, X's motion should be denied as to these twelve documents.

In any event, as explained below, X's motion to compel fails on the merits with regard to all thirteen documents at issue and in all other respects.

**B.    Defendants' First Amendment and Texas Press Shield Privilege Assertions Are Valid.**

**1.    First Amendment Privilege**

"The First Amendment's right to freedom of association provides a privilege that protects certain associational activities from discovery." *Young Conservatives of Texas Found. v. Univ. of N. Texas*, No. 4:20-CV-973-SDJ, 2022 WL 2901007, at *2 (E.D. Tex. Jan. 11, 2022) (citing *NAACP v. Alabama*, 357 U.S. 449, 462 (1958)). The First Amendment associational privilege is not absolute; when it applies, however, only those privileged documents that are "essential to the proper preparation and disposition of th[e] case" need be produced.  *Hastings v. N. E. Indep. Sch. Dist.*, 615 F.2d 628, 632 (5th Cir. 1980).

District courts within the Fifth Circuit (including this Court) have applied a two-step test for analyzing challenges to a party's assertion of a First Amendment associational privilege.  *See, e.g.*, ECF No. 98 at 5-6; *Young Conservatives*, 2022 WL 2901007, at *2.  At step one, courts determine whether the party asserting the privilege has made a *prima facie* showing of arguable First Amendment infringement.  *Id*.  "This is a light burden." ECF No. 98 at 5 (citing *Christ Covenant Church v. Town of Sw. Ranches*, No. 07-60516-CIV, 2008 WL 2686860, at *6 (S.D. Fla.

June 29, 2008)).  At step two, "[a]fter the *prima facie* showing is made, the burden then shifts to the party seeking discovery to show 'an interest in obtaining the disclosures ... which is sufficient to justify the deterrent effect which ... these disclosures may well have." *Id*. at 6 (citing *Hastings*, 615 F.2d at 632 (quoting *NAACP*, 357 U.S. at 463)).  To determine whether the interest outweighs the harm, courts consider, among other factors: "the importance of the information sought to the issues in the case, the substantiality of the First Amendment interests at stake, the availability of the information from alternative sources, and whether the request is carefully tailored to avoid unnecessary interference with protected activities."  *Id*. (*citing Perry v. Schwarzenegger*, 591 F.3d 1147, 1161 (9th Cir. 2010).  "[T]he party seeking the discovery must show that the information sought is highly relevant to the claims or defenses in the litigation—a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)."  *Perry*, 591 F.3d at 1161.

> ### a. Defendants have made a *prima facie* showing of infringement on protected rights.

Defendants, and the coalition participants with whom they collaborate on advocacy campaigns and other efforts, have a right to freely associate in furtherance of "a wide variety of political, social, economic, educational, religious, and cultural ends[.]" *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 606 (2021) (citation omitted).  X does not meaningfully dispute that such coalitional relationships fall squarely within the scope of the First Amendment's speech and associational privileges. Instead, X mischaracterizes Defendants' position by claiming that Defendants are asking the Court "to assume that *any* communication with, or about, *any* third party would chill" their First Amendment rights.  MTC at 7 (emphasis added).  That is false.  With respect to the documents before the Court—*e.g.*, ███████████████████████████ ████████████████████████—Defendants have made limited privilege assertions over *internal* coalition communications regarding their advocacy-related work. Such communications

are protected under the First Amendment.  *See Perry*, 591 F.3d at 1162-665 (holding that internal communications of a citizens' group opposing gay marriage were exempt from discovery); *Whole Woman's Health v. Smith*, 896 F.3d 362, 372 (5th Cir. 2018) (agreeing with the Ninth Circuit in *Perry* that "communications within such a group must be permitted to be broad, uninhibited, and fearless, and that protecting such deliberations is a seminal aspect of the freedom to associate").[2]

Attempting to invent a requirement that does not exist, X next argues, with no supporting authority, that Defendants cannot make a *prima facie* case of arguable First Amendment infringement because they "submitted no evidence accompanying their privilege logs" demonstrating an objectively reasonable probability of a chilling effect. MTC at 8.  As the Court may recall, the last time X filed a motion seeking discovery of information protected by First Amendment privileges, the Court found that Defendants' "examples of public hostility directed at" MMFA—provided not with their privilege logs but rather as exhibits to Defendants' opposition to X's motion to compel—were sufficient to support a *prima facie* case of First Amendment infringement.  *See* ECF No. 98 at 18 & n.21 (citing ECF No. 89 (Defendants' Notice of Exhibits)). In addition to those previously submitted examples "of harassment directed against the organization," *Young Conservatives*, WL 2901007, at *2, submitted herewith is a declaration from an MMFA Vice President describing additional associational harms MMFA is likely to face if X were to obtain discovery of private, internal coalition communications.  Def. Appx. 14-16.

---

[2] X's reliance on *La Union Del Pueblo Entero v. Abbott*, No. SA-21-CV-00844-XR, 2022 WL 17574079 (W.D. Tex. Dec. 9, 2022), is misplaced.  The court in *La Union* expressly distinguished the private, "internal communications" of an association of political organizations, which are subject to First Amendment protections, from external communications with third parties who just so happen to "share common beliefs of goals," which the court concluded are not protected.  *Id.* at *8.

The controversial nature of much of the advocacy work undertaken by MMFA and coalitions in which it participates further substantiates Defendants' infringement claim. On this point, the case *The Ohio Org. Collaborative v. Husted* is instructive. No. 2:15-CV-01802, 2015 WL 7008530 (S.D. Ohio Nov. 12, 2015). In *Husted*, the defendants sought to compel from the political party plaintiffs "a wealth of financial, donor, membership, and strategic information" that went "far beyond … the merits of th[e] action." *Id.* at \*3. In finding that the plaintiffs had "demonstrated an objectively reasonable probability" that producing the information sought would infringe upon their First Amendment rights, the court explained it had "no doubt that the compelled disclosure of such sensitive information in the context of highly charged litigation involving issues of great political controversy would have a chilling effect on plaintiffs' freedom of association by adversely impacting their ability to organize, promote their message(s), and conduct their affairs." *Id.* As the Court will see if it accepts Defendants' invitation (*see* p. 12, *infra*) to review *in camera* unredacted copies of the thirteen documents at issue, ███████████████████████

████████████████████████████████████████████

███████████████████████████████

### 2.  Texas Press Shield Privilege

The Texas Press Shield privilege applies to: (1) any confidential or nonconfidential information, document, or item obtained or prepared while acting as a journalist; and (2) the source of any information, document, or item obtained or prepared while acting as a journalist. Tex. Civ. Prac. & Rem. Code Ann. § 22.023(a). Like the First Amendment privilege, the Texas Press Shield privilege is not absolute; however, compelled disclosure of such privileged material is permissible only if the party seeking disclosure "makes a clear and specific showing" that the following factors are met:

10

(1) all reasonable efforts have been exhausted to obtain the information from alternative sources;

(2) the subpoena is not overbroad, unreasonable, or oppressive and, when appropriate, will be limited to the verification of published information and the surrounding circumstances relating to the accuracy of the published information;

(3) reasonable and timely notice was given of the demand for the information, document, or item;

(4) in this instance, the interest of the party subpoenaing the information outweighs the public interest in gathering and dissemination of news, including the concerns of the journalist;

(5) the subpoena or compulsory process is not being used to obtain peripheral, nonessential, or speculative information; and

(6) the information, document, or item is relevant and material to the proper administration of the official proceeding for which the testimony, production, or disclosure is sought and is essential to the maintenance of a claim or defense of the person seeking the testimony, production, or disclosure.

Tex. Civ. Prac. & Rem. Code Ann. § 22.024.

### a. Defendants have made a *prima facie* showing that the privilege applies.

As this Court has previously explained, a party asserting the Texas Press Shield privilege need make only a *prima facie* case that the privilege applies before the burden shifts to the opposing party. *See* Dkt. 136 at 6–7 (January 3, 2025, Order). Defendants easily satisfy that requirement with respect to the four documents at issue that are partially redacted on Texas Press Shield grounds. Defendants are, of course, "journalists" as defined by Tex. Civ. Prac. & Rem. Code Ann. § 22.021(2), *see* Dkt. 136 at 7, and the redacted portions reflect information prepared or obtained by Defendants in that capacity.[3]

---

[3] "Journalist" means a person, including a parent, subsidiary, division, or affiliate of a person, who for a substantial portion of the person's livelihood or for substantial financial gain, gathers, compiles, prepares, collects, photographs, records, writes, edits, reports, investigates, processes, or publishes news or information that is disseminated by a news medium or communication service

X asserts without citation that journalists are not "acting as journalists" when they engage in organizational management or labor negotiation activities. MTC at 20. X provides no reason this must be the case; indeed, such activities undoubtedly bear on journalistic processes and aims.[4] Further, while Defendants dispute X's characterization of certain communications as ███████ ████████████████████████ MTC at 20, it is obviously untrue that (as X baselessly asserts) discussions of public figures "have nothing to do with journalistic endeavors." *Id*. Internal communications among journalists about how to cover individuals, organizations, and events are heartland journalistic materials.  Nothing in the Texas Press Shield Law, nor in this Court's previous analysis, supports the carve-outs from the statute that X advances here.

### C.    X Has Failed to Establish a Need for the Redacted Information at Issue.

Moving to step two of the inquiry, X has not come close to establishing a requisite need for the redacted information to overcome either asserted privilege.  That is the case for one simple reason: as a review of the thirteen documents conclusively establishes, the redactions are utterly irrelevant to the claims and defenses in this case  *See Perry*, 591 F.3d at 1161 (holding that party "must show that the information sought is highly relevant" to obtain discovery of information subject to the First Amendment privilege); Tex. Civ. Prac. & Rem. Code Ann. § 22.024(5)-(6) (discovery of privileged material not available if the information sought is "peripheral, nonessential, or speculative," is not "relevant and material" and is not "essential to the maintenance of a claim or defense").

---

provider and includes … a person who supervises or assists in gathering, preparing, and disseminating the news or information … ." Tex. Civ. Prac. & Rem. Code Ann. § 22.021(2).

[4] In any event, as explained below herein, labor negotiations and organizational management discussions are not responsive to any of X's requests for production and otherwise are irrelevant.

To assist the Court in its consideration of X's motion, Defendants invite the Court to review *in camera* unredacted copies of the thirteen documents at issue. Defendants have submitted a proposed order to that effect and will promptly deliver the documents to chambers if and when the order is entered or otherwise upon request.

Tellingly, X does not even identify the specific requests for production to which it believes the redacted information is responsive. Instead, all X can muster is to generically assert that "the discovery requests at issue, and to which the documents discussed in this motion are responsive, sought information related to X, Musk, and the November articles." MTC at 19. To be sure, the *unredacted* portions of the thirteen documents do relate to X, Elon Musk, and/or the November 2023 articles written by Mr. Hananoki. But as summarized below, and as the Court will see firsthand if it chooses to review the documents *in camera*, the redacted portions have nothing to do with those topics or any other disputed issues in the case.

As noted above, *MMFA_298401*, *MMFA_299351*, *MMFA_300455*, *MMFA_301122*, *MMFA_302118*, *MMFA_302236*, *MMFA_302256*, and *MMFA_302295* are ███████████ ███████████████████████████████████████████████████████████████████████████ Pl. Appx. 0817-922. In addition to all "core" content (as defined above), Defendants also have left unredacted every mention of Twitter, X, or Elon Musk, including even incidental and wholly irrelevant references to individual Twitter posts.[5] The redacted portions of these documents, on

---

[5] Defendants recently reproduced five of these documents, removing a small handful of additional non-"core" references to Twitter or X, a few irrelevant references to items posted on the platform, and one non-substantive reference to the Stop the Deal Coalition (*MMFA_298401*, *MMFA_300455*, *MMFA_301122*, *MMFA_302256*, *MMFA_302295*). With respect to one of these five reproduced documents, *MMFA_302256*, which includes a copy of ████████████████ ████████████████████████████ that also appears elsewhere in Defendants' production, *see MMFA_302236* (Pl. Appx. 0868-70), it was discovered that certain redactions previously removed from *MMFA_302236* inadvertently were not also removed from *MMFA_302256*. In other

13

the other hand, are entirely *unrelated* to Twitter, X, or Elon Musk.  They include references to or discussions of—for example—specific legislation, legal issues, public health issues, child safety issues, other platform-specific matters, government agencies, and numerous other local, national and/or global public policy, social, cultural and political issues, as well as, in some instances, the identities of MMFA's coalition partners engaged on certain matters.  In other words, the redacted portions of these documents are not relevant to any claim or defense in this case.

*MMFA_303061* is an October 30, 2023, Slack message chain between Mr. Carusone and MMFA's Chief Operating Officer.  Pl. Appx. 0924-944.  The document is 21 pages long, covering communications that occurred between 10:43 a.m. and 5:24 p.m.  The unredacted portion begins on page 19, at 3:36 p.m., and involves a discussion about ███████████████████████ ███████████████  That discussion, ██████████████████████████████████████████, ends at 4:21 p.m., and the two individuals begin messaging again nearly an hour later, at 5:10 p.m., when they discuss an entirely different topic related to CNN.  That latter discussion is not responsive to any X document request but nevertheless was unredacted to place the prior discussion in context and for purposes of avoiding unnecessary disputes about the document.

As X accurately notes, the first 18 pages of the document are redacted in their entirety.  Contrary to X's rank speculation, however, the redacted material does not concern Twitter, X, Elon Musk, or anything else related to this case.  As Defendants months ago advised X in writing, *see* Def. Appx. 08, and would have reaffirmed had X chosen to meet and confer with Defendants prior to filing its motion, those 18 pages are precisely as described on Defendants' Ninth Privilege Log, *see* Pl. Appx. 0461.  They exclusively concern communications about labor negotiations and

---

words, while Defendants have reproduced *MMFA_302256* to correct the error, X already had been produced a copy of ██████████████████████ with the correct, intended redactions.

organizational management and personnel issues at MMFA.  Those communications, which end more than a half hour before the discussion in the unredacted portion of the document, also include three messages (at 10:54 a.m., on the first page of the document) reflecting advice from counsel regarding an employment matter.  The redacted material on these 18 pages is not responsive to any of X's requests for production and is otherwise utterly irrelevant.

*MMFA_394543* is a November 16, 2023, Slack message chain between MMFA's News Director and an MMFA Vice President who oversees the organization's external affairs department. Pl. Appx. 0946-0950.  A review of the five-page document reveals that it contains two distinct conversations: one occurring between 1:07 p.m. and 2:31 p.m.; and a second one an hour later, between 3:32 p.m. and 4:04 p.m.  The second conversation, which is a non-substantive series of messages about an *Irish Times* article on IBM's decision to pull advertisements from X, is unredacted in its entirety.

The first conversation, on the other hand, is redacted in its entirety and is not remotely relevant to any claim or defense in the case.  It concerns the process involved in getting an MMFA article published and related personnel matters.  Despite the date of the document—November 16, 2023—the redacted messages do not concern the articles by Mr. Hananoki at issue in this case. Nor do they concern any of the articles identified in X's document requests.  Indeed, the redacted messages do not address the substance of any MMFA article.  The conversation, which is solely about process and personnel issues, has nothing to do with any disputed factual issue in the case.

*MMFA_394743* is an October 4, 2023, Slack message chain between MMFA's COO and an MMFA Vice President.  Pl. Appx. 1034-37.  The four-page document, which only has three lines redacted, relates to internal discussions at MMFA regarding ████████████████████ ██████████  The redacted lines, on the other hand, concern a single message that references

15

an unrelated MMFA HR matter that pre-dates the discovery period, does not concern antisemitism, and is not responsive to any of X's requests for production.

*MMFA_394747* is an October 4, 2023, Slack message chain between Mr. Carusone and MMFA's COO. Pl. Appx. 0952-81. The document is 30 pages long, covers communications that occurred between 12:08 p.m. and 9:42 p.m., and is almost entirely *un*redacted. The few, minor redactions that remain include the name of an MMFA donor, *MMFA_394750* (Pl. Appx. 0955); the name of an individual from whom MMFA was soliciting a donation, *MMFA_394767-68* (Pl. Appx. 0972, 0973); an unrelated HR matter that predates the discovery period and does not concern antisemitism, *MMFA_394751 & MMFA_394754* (Pl. Appx. 0956, 0959); and union negotiation strategy, *MMFA394770-71* (Pl. Appx. 0975-76). None of this redacted information concerns Twitter, X, or Elon Musk.

Finally, **MMFA_408432** is a Zoom meeting invite from MMFA to a reporter at ███████ Pl. Appx. 0983. The name of the reporter was redacted originally, but Defendants have since voluntarily removed that redaction. The body of the invite, however, immediately below the phrase "Join Zoom Meeting," remains redacted in its entirety. In its motion, X chides Defendants for supposedly redacting the substance of their "gossiping with their friends," speculating that the "body of the email likely contains details regarding the meeting, X, and this dispute given that it occurred on the day of [Mr. Hananoki's] second article." MTC at 14. X is mistaken. The only information that remains redacted are Zoom details that are still in active use by MMFA (*i.e.*, the Zoom link, meeting ID, passcode, and listing of dial-in telephone numbers by geographic location). In other words, no substance at all is redacted, let alone information relevant to the case.

As the foregoing demonstrates, none of the redacted information in the thirteen documents at issue is remotely relevant to this case. None is even a close call. Had X bothered to meet and

16

confer with Defendants before precipitously filing its motion, Defendants could have disabused X of its mistaken belief, asserted in its motion without any basis, that the redactions "almost certainly" "conceal highly relevant evidence." MTC at 1.

> **D.      X Has Failed to Show the Existence of Any Systemic Deficiencies in Defendants' Privilege Review Processes.**

Proving the adage that no good deed goes unpunished, X selectively quotes from a handful of Slack message chains that Defendants voluntarily reproduced at X's request—either without redactions or with substantially fewer redactions—in an attempt to impugn Defendants' entire privilege review process by baselessly claiming it suffers from "systemic issues and numerous bad faith assertions of privilege," which evince a process that is "at best seriously flawed and at worst willfully manipulated." MTC at 2. X seeks an order directing Defendants to review their prior document productions and privilege logs in their entirety, "from the first document to the most recent" to "ensure that they have not wrongly withheld or redacted any information." MTC at 23. X's arguments fail at every level and for many reasons.

For starters, X's claim that systemic failures pervade Defendants' privilege review process stems exclusively from *five* documents that concern a single event on a single day. Indeed, four of the five Slack chains it highlights involve messages among various MMFA personnel on October 4, 2023. On that date, the ADL, a member of the Stop Toxic Twitter coalition that Elon Musk had threatened to sue for defamation, publicly announced that it planned to resume advertising on X. *See* https://www.cnn.com/2023/10/04/tech/adl-makes-peace-with-x.[6] There is

---

[6] The fifth Slack chain X cites is a 17-page chain from November 17, 2023, that originally was produced with three short messages redacted from a single page. The redacted material includes ██████████████████████████ The entire document clearly falls within the Texas Press Shield statute. However, because the matters discussed concern various "core" issues—*e.g.*,

no basis to extrapolate anything regarding Defendants' processes as a whole from judgment calls made with respect to one narrow category of documents. X never attempts to explain otherwise.

By any objective measure, Defendants had a good faith basis for initially asserting privilege over the five documents. As reflected therein, ███████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

███████████████████████████ Pl. Appx. 1025-27; 1034-37; 1053-61; 1078-87. Such discussions concern an associational relationship that is subject to First Amendment privileges and otherwise constitute journalistic materials protected under the Texas Press Shield statute.

Defendants did not, however, withhold these documents in their entirety. Instead, Defendants produced them in redacted form, leaving unredacted references to advertising on X and discussions concerning the Stop Toxic Twitter coalition—*i.e.*, "core" issues in the case. Pl. Appx. 0985-1001, 1021-23, 1029-32, 1039-51, 1067-76. X's interest in the documents was no doubt piqued for that very reason. At X's request—which Defendants would have been well within their rights to reject as coming too late—Defendants voluntarily removed all redactions concerning the ADL and related internal MMFA discussions and reproduced the documents without forcing X to litigate the issue and thereby burdening the Court. Pl. Appx. 1003-19, 1025-27, 1034-37, 1053-65, 1078-87. That is the exact opposite of "deliberately obfuscatory" behavior. MTC at 2,

What emerged was far from "damning," as X exclaims. MTC at 1. Contrary to X's accusations, the formerly redacted messages are not evidence of ███████████████████

Mr. Hananoki's November 17, 2023, article, and advertising on X—Defendants produced the document originally in almost exclusively *un*redacted form.

18

████████████████████████████ MTC at 5.  Nor did their initial redaction violate this Court's Order that Defendants produce documents concerning "instances where Defendants themselves have been accused of—or investigated—antisemitism at Media Matters."  ECF No. 65 at 3.

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████ *See*, *e.g.*, Pl. Appx. 1031, 1053, 1078.

████████████████████████████████████████████

██████████████████████████████████████████ Pl. Appx. 1036.  But

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████ *See*, *e.g.*, Pl. Appx. 1025-26, 1036, 1053-55, 1057, 1078, 1080-82, 1085-86. Nevertheless, out of an abundance of caution given the Court's prior order, and as a measure of good faith, Defendants did not balk when X requested that Defendants remove the redactions.

\*     \*     \*

In summary, Defendants had a good faith basis to assert the First Amendment and Texas Press Shield privileges over the five documents that X discusses in its motion.  Mindful of the conditional nature of these privileges, Defendants nevertheless did not withhold the documents in their entirety but instead left unredacted discussions of "core" issues in the case.  At X's request, Defendants voluntarily reproduced the documents with little or no redactions so X would not need to file a motion to obtain the discovery.  Defendants agreed to do that even though X missed the

19

stipulated deadline for challenging the redactions. And Defendants reproduced the documents more than six months before the close of discovery and long before depositions have even been scheduled.   That is a far cry from "shirk[ing] … discovery obligations," MTC at 22, or "weaponize[ing] privilege claims to hide evidence," MTC at 1.  That is precisely how good faith, non-obstructionist civil discovery is supposed to proceed.  No "corrective measure," MTC at 22, needs to be ordered.

In fact, had X satisfied its obligation to meet and confer with Defendants before filing its motion, X would have learned that Defendants will agree to review the documents they have withheld or redacted on First Amendment or Texas Press Shield privilege grounds and produce any materials that relate to (1) the ADL's decision to resume advertising on X, (2) Elon Musk's prior threat to sue the ADL for defamation, or (3) the ADL's relationship with X or Elon Musk. Defendants also will agree to review those materials to confirm they have not erroneously withheld on First Amendment or Texas Press Shield privilege grounds any information relating to "instances where Defendants themselves have been accused of—or investigated—antisemitism at Media Matters."  ECF No. 65 at 3.

In addition, Defendants will agree to review the documents they have withheld or redacted on First Amendment or Texas Press Shield privilege grounds to confirm they have not erroneously withheld documents or portions thereof that relate to "core" issues in the case, as defined above and previously communicated to X.  Relatedly, Defendants also will agree to review those materials and remove any redactions of identifying information of third parties who collaborated with MMFA on matters relating to "core" issues.

Defendants have begun the foregoing reviews and will promptly serve amended privilege logs when they complete those reviews.

**E.**    **X Is Not Entitled to an Award of Expenses or Other Sanctions.**

Because X's motion to compel should be denied, X has is not entitled to an award of reasonable expenses or attorney's fees or the imposition of any other sanction.  But even if its motion had merit, X's failure to adequately meet and confer with Defendants before filing the motion renders any such award unavailable as a matter of law.  Under Rule 37, the Court "must not order" the payment of expenses or attorney's fees if "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action."  Fed. R. Civ. P. 37(a)(5)(A)(i); *see Compass Bank v. Shamgochian*, 287 F.R.D. 397, 400 (S.D. Tex. 2012) ("The Court is explicitly forbidden from awarding such expenses if the movant filed the motion without first making a good faith attempt to obtain the discovery without court intervention.").

While X baldly asserts that it did, in fact, "confer[] in good faith with Defendants about these matters before filing this motion," MTC at 24, that simply is not true.  X's morning-of-filing email announcing that X would file its motion later that day is patently insufficient.  *See Shuffle Master, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 172 (D. Nev. 1996) (recognizing that "'conferring' under Rule 37(a)(2)(B) must be a personal or telephonic consultation during which the parties engage in meaningful negotiations or otherwise provide legal support for their position"); *Compass Bank*, 287 F.R.D. at 400 (finding that "Plaintiff's single letter unilaterally identifying flaws in Defendant's discovery responses and setting an arbitrary response deadline for Defendant" did not constitute good faith conferral).

In any event, even if X had satisfied its meet-and-confer obligations, an award of fees and expenses still would be unavailable.  Under Rule 37, the Court "must not order" such payment if "the opposing party's nondisclosure, response, or objection was substantially justified."  Fed. R. Civ. P.  37(a)(5)(A)(ii).  "'Substantial justification' entails a reasonable basis in both law and fact, such that there is a genuine dispute or if reasonable people could differ as to the appropriateness

21

of the contested action." *LEV Invs., Inc. v. Princeton Excess & Surplus Lines Ins. Co.*, 350 F.R.D. 86, 90 (N.D. Tex. 2025) (quoting *Heller v. City of Dallas*, 303 F.R.D. 466, 477 (N.D. Tex. 2014)); *see also Nafta Traders, Inc. v. Adidas Am., Inc.*, No. 3:19-CV-00915-N, 2023 WL 114703, at *6 (N.D. Tex. Jan. 4, 2023) (a party's resistance to discovery on the grounds of its reasonable interpretation of the at-issue agreement "d[id] not merit punishment"). For the reasons explained above, Defendants' redactions on the thirteen documents at issue and other actions challenged in X's motion easily satisfy this standard.

X's final, passing plea for the Court to exercise discretion under its inherent powers to sanction Defendants is similarly without merit, because:

> The threshold for the use of inherent power sanctions is high. A court may assess attorney's fees under its inherent powers when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, or has defiled the "very temple of justice." A court must make a specific finding that the sanctioned party acted in bad faith in order to impose such sanctions.

*Matta v. May,* 118 F.3d 410, 416 (5th Cir. 1997) (declining to impose sanctions) (citations omitted). "[I]n the context of the federal court's inherent power, 'bad faith' is judged by 'necessarily stringent' standards." *Pressey v. Patterson*, 898 F.2d 1018, 1021 (5th Cir. 1990) (citation omitted). "Bad faith is 'not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose of moral obliquity; ... it contemplates a state of mind affirmatively operating with furtive design or ill will.'" *Spartan Composites, LLC v. Signature Sys. Grp., LLC*, No. 4:24-CV-609, 2025 WL 2982199, at *3 (E.D. Tex. Oct. 21, 2025) (quoting *United States v. Gilbert*, 198 F.3d 1293, 1299 (11th Cir. 1999). For the reasons explained above, X has not shown and cannot show that any action by Defendants comes anywhere close to the high threshold required for imposition of inherent power sanctions.

## CONCLUSION

For the foregoing reasons, X's motion to compel should be denied.

Respectfully submitted,

ZUCKERMAN SPAEDER LLP

/s/ Shawn P. Naunton
Dwight P. Bostwick
Shawn P. Naunton
Zuckerman Spaeder LLP
485 Madison Ave., 19th Floor
New York, NY 10022
Telephone: (212) 704-9600
Facsimile: (202) 822-8106
dbostwick@zuckerman.com
snaunton@zuckerman.com

Justin Nelson
State Bar No. 24034766
Matthew Behncke
State Bar No. 24069355
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Fax: (713) 654-6666
jnelson@susmangodfrey.com
mbehncke@susmangodfrey.com

Katherina M. Peaslee
SUSMAN GODFREY L.L.P.
401 Union Street, Suite #3000
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (206) 505-3811
kpeaslee@susmangodfrey.com

Gregg Costa
GIBSON, DUNN & CRUTCHER LLP
811 Main Street, Suite 3000
Houston, TX 77002-6117
Telephone: (346) 718-6649
Facsimile: (346) 718-6979
GCosta@gibsondunn.com

*Attorneys for Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone*

23

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on January 20, 2026, a true and correct copy of Defendants' Opposition to X Corp.'s Motion to Compel Production of Documents Withheld on Privilege Grounds was properly served on counsel of record via electronic filing in accordance with the USDC, Northern District of Texas Procedures for Electronic Filing.

<u>/s/ Shawn P. Naunton</u>