# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

|  |  |
|---|---|
| X CORP., a Nevada corporation, | |
| **Plaintiff,** | Civil Action No. 4:23-cv-01175-O |
| v. | |
| MEDIA MATTERS FOR AMERICA, a Washington, D.C. non-profit corporation, ERIC HANANOKI, and ANGELO CARUSONE, | |
| **Defendants.** | |

## DEFENDANTS' REPLY BRIEF IN SUPPPORT OF MOTION TO COMPEL DISCOVERY RE IMPROPER REDACTIONS

**INTRODUCTION**

X's response confirms that it seeks to expand the Stored Communications Act ("SCA") far beyond where any court has taken it—so that X can pick and choose whether to produce content posted to X's "Global Town Square." X admitted that it *may* produce content under the provider protection exception, but it refuses to produce relevant content in this lawsuit. X *has not* alleged that any of the posts that it has withheld or redacted were ever subject to any privacy setting on X that prevented any user from seeing it. X completely ignores the fact that other social media providers have agreed to produce content that was formerly public before the provider removed it. X's inconsistent redactions demonstrate that this is simply a case of X trying to withhold relevant documents that would show the jury exactly the kind of content that X was promoting on its platform and placing next to ads.

This dispute is not about gutting the SCA. It is about whether a plaintiff that sued to vindicate its platform's alleged reputation for safety can invoke a federal privacy statute to bury the internal documents discussing content that proves its platform was not safe. X placed the effectiveness of its brand safety systems at the center of this case. Am. Compl. ¶¶ 5, 7, 42. The SCA's plain text, fundamental fairness, and binding Fifth Circuit precedent forbid X from hiding behind the statute now.

X devotes sixteen pages of its Response to attacking *Snap, Inc. v. Superior Court*, 103 Cal. App. 5th 1031 (2024), and tells this Court that *Snap*'s "departure from settled law" was "startling" because it disregarded "precedent holding that '***the provider's purposes for storing communications are irrelevant***.' *Crispin*, 717 F. Supp. 2d at 990." ECF 277 at 8 (emphasis added). The language X quotes as *Crispin*'s holding appears nowhere in *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965 (C.D. Cal. 2010), nor in the *Crispin* briefing, nor on Westlaw,

nor on Lexis. App. 2–23. And *Crispin*'s actual holding says nothing about the core issues here—whether X can refuse to produce relevant content in a suit that X filed to enforce its rights, whether X can redact or withhold formerly public posts that X removed from its platform, and whether X can redact its internal discussion and summaries of user content.

*Snap*, however, is only one of four independent grounds Defendants raised. X largely ignores the other three: (1) the provider-protection exception under 18 U.S.C. § 2702(b)(5), which X itself previously conceded is "permissive," ECF 246 at 13; (2) the lawful consent exception for public posts, as it is well-settled that "communications configured by a social media user to be public fall within section 2702(b)(3)'s lawful consent exception, presumptively permitting disclosure by a provider." *Facebook, Inc. v. Superior Court (Hunter)*, 4 Cal. 5th 1245, 1274 (2018); and (3) the distinction between protected user "contents" and X's own internal business records, which no court has ever treated as SCA-protected. The Court can grant Defendants' motion on any of these grounds, without reaching *Snap* at all.

## ARGUMENT

### I. The provider-protection exception that X concedes is "permissive" independently compels production.

The provider-protection exception allows X to produce every document at issue in this motion, regardless of whether the SCA applies to social media posts on X and regardless of how far it reaches. Section 2702(b)(5) permits a provider to disclose user communications "as may be necessarily incident to the rendition of the service or to the protection of the rights or property of the provider of that service." 18 U.S.C. § 2702(b)(5). X filed this lawsuit to protect its rights and property; in fact, in doing so, X asked the public to "[s]tand with X to protect free speech."[1] X's

---

[1] https://blog.x.com/en_us/topics/company/2023/stand-with-x-to-protect-free-speech ("We must defend our individual rights as if our lives, and flourishing society, depend on it.").

Amended Complaint alleges that Media Matters' reporting inflicted harm on X's business, brand, and advertiser relationships. Am. Compl. ¶ 5. X is litigating to protect its "rights" and "property," using the very language Congress chose for the § 2702(b)(5) exception. X cannot file a lawsuit to protect its claimed rights and then refuse to produce content that relates directly to the dispute.

X conceded § 2702(b)(5) is permissive. X plainly stated that the provider-protection exception may be used at the provider's discretion for "self-protection." ECF 246 at 13. That concession ends the inquiry. If X *may* disclose, the SCA does not *prohibit* disclosure. And if the SCA does not prohibit disclosure, the Court can compel it. *See Flagg v. City of Detroit*, 252 F.R.D. 346, 363 (E.D. Mich. 2008).

The provider-protection exception is not limited to criminal conduct. The language of the SCA makes clear that the relevant exception contains no subject-matter limitation. It says: "the protection of the rights or property of the provider of that service." 18 U.S.C. § 2702(b)(5). The statute's legislative history underscores this reading of the statute's plain text when it explains that "[t]he terms 'rights' and 'property' here refer to such rights as intellectual property rights, the right to be free from the theft of services." H.R. Rep. No. 99-647 at 67 (1986).[2]

X's attempt to narrow § 2702(b)(5) to child sexual abuse material cases has no textual basis. X argues that the provider-protection exception is "narrow" and "mostly relate[s] to criminal conduct," citing subparts (b)(6)–(8). ECF 277 at 18–19 & n.8. Yet, X's own citations refute its argument. Subparts (b)(6) and (7) deal with criminal conduct exclusively. Subpart (b)(8), the emergency exception, addresses imminent danger. But subpart (b)(5), the only subpart at issue

---

[2]    https://www.justice.gov/sites/default/files/jmd/legacy/2013/10/16/houserept-99-647-1986.pdf

here, has no limitation relating to "criminal investigations" or "cases involving child exploitation." 18 U.S.C. § 2702(b). X invents a limitation that Congress did not write.

X's cases are distinguishable because X is the plaintiff who brought this suit to vindicate its rights and protect its property—not a third-party provider staving off civil discovery requests. *See* ECF 277 at 20–21. In *Yoshimura, In re Facebook, Mintz*, and *In re Subpoena Duces Tecum to AOL*, the provider was a non-party resisting a subpoena. In *Viacom Int'l Inc. v. YouTube Inc.*, it was the *defendants* that the Court found were prohibited from disclosing private videos to *plaintiffs*. 253 F.R.D. 256, 264 (S.D.N.Y. 2008).

The court in *O'Grady v. Superior Court*, 139 Cal. App. 4th 1423, 1441–42 (2006), *as modified* (June 23, 2006), explained the rationale behind the holdings in X's cited cases, and why it does not apply here. *O'Grady* held that a subpoena could not compel a third-party provider to produce SCA-protected material because "[a] subpoena is not enforceable if compliance would violate the SCA" and "[a]ny disclosure violates the SCA unless it falls within an enumerated exception to [the] general prohibition." *Id.* at 1441. The court reasoned that construing a litigation threat as triggering the provider-protection exception "would be to permit disclosure whenever someone threatened the service provider with litigation. Arguably even a subpoena would be unnecessary; the mere threat would be enough." *Id.* at 1442. That concern has force when a third-party provider faces a subpoena in litigation to which it is a stranger.

The conundrum *O'Grady* contemplated is simply not present here. X is not a bystander provider being "threatened" with litigation. X *initiated* this litigation. X placed platform content at the center of its Amended Complaint. And X previously conceded that § 2702(b)(5) authorizes disclosure "at the provider's discretion for self-protection." ECF 246 at 8. When a provider-plaintiff invokes § 2702(b)(5) to protect the very rights and property it sued to vindicate, there is

4

no "mere threat." There is, in this case, a deliberate litigation choice that carries with it an obligation to produce relevant evidence.

*Flagg* is the case that should guide the Court's analysis. X argues that *Flagg* is "inapposite" because it involved a subscriber (the City of Detroit), not a provider. ECF 277 at 19–20. This distinction is unavailing because *Flagg*'s holding rests on an animating principle that is the same regardless of the SCA subsection at issue: where a party controls the mechanism of disclosure— whether by consent under § 2702(b)(3) or by discretionary authorization under § 2702(b)(5)—it cannot wield that control as a sword in litigation while sheltering behind it as a shield. 252 F.R.D. at 355.

Further, X simply cannot claim it is powerless to disclose what it has already disclosed. X's response wholly ignores Defendants' central point: "the SCA redactions are an about-face on X's position with respect to the discoverability of user content in this very litigation." ECF 261-1 at 10. There are not a few one-off, erroneously produced pieces of user content in X's prior productions that X can explain away one at a time. There are hundreds if not thousands.[3]

The ████████████ (XCORP_1487489) illustrates the point. X tells the Court that ████████████████████ was permissible because "the underlying post remains publicly accessible on X's platform." ECF 277 at 18. But that is not true. X's source points to a post by Nancy Levine Stearns—the reporter (*id*. at n.6)—that screenshotted a post by

---

[3] X filed a lawsuit about user posts. X served discovery requests about user posts, briefed disputes about user posts, and produced thousands of documents containing user posts, all without mentioning the SCA. X responded to RFP 25 on June 12, 2024: no SCA objection. X briefed the RFP 25 dispute: no SCA objection. ECF 121 at 12–13. The Court ordered production on January 25, 2025: no SCA objection. ECF 135 at 9. X produced unredacted user content for another six months—until July 28, 2025, when X for the first time applied SCA redactions. X's claim that RFP 25 prompted its realization that the SCA applies (ECF 277 at 2) is belied by X's own conduct at every stage of this litigation.

5

@pepedownunder. *See id*. at n.7.[4] ███████████████████████████████████

█████████████████████████████████. And the @pepedownunder

post X contends is "publicly accessible" no longer exists on X's platform, as far as Defendants can

tell.[5] X has no problem producing content when it wants to while refusing to produce plainly

relevant documents that Defendants seek.

Finally, X suggests that "[i]f Defendant wishes to seek judicial intervention to compel the

consent of the users whose content is at issue here, it is welcome to do so." ECF 277 at 20. This

argument misapprehends Defendants' position, the statute, and X's role in this case. Defendants

are not seeking to compel user consent under § 2702(b)(3). Defendants invoke § 2702(b)(5), the

provider-protection exception, which requires no user consent at all.

## II.    X concedes that its redactions to public posts are improper.

The law is clear: "communications configured by a social media user to be public fall

within section 2702(b)(3)'s lawful consent exception, presumptively permitting disclosure by a

provider." *Facebook, Inc.,* 4 Cal. 5th at 1274. X concedes that "users have implicitly consented to

the disclosure of posts that are currently published to the public." ECF 277 at 5.

X's redactions of obviously public content are indefensible. X does not engage with the

specific examples in Defendants' Appendix A, and so abandons any arguments that these are

subject to SCA protections. *N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*,

952 F.3d 708, 716 n.11 (5th Cir. 2020). X does not explain why it redacted posts from Kanye

West's account, which was never private and has over thirty-million followers. ECF 261-2

---

[4]    https://thehill.com/policy/technology/4603761-hyundai-pauses-ads-on-x-over-antisemitic-posts/ ("Freelance journalist Nancy Levine Stearns posted a screenshot of the ad appearing in the feed of an X user who frequently posts Holocaust denial and antisemitic remarks.").

[5] https://x.com/pepedownunder

(App.152). It does not explain why it redacted posts that were the direct subject of Media Matters' own published reporting, the very articles X put at the center of this lawsuit. *See, e.g.,* App. 25–66 Nor does X explain how it can justify redacting formerly public posts from known neo-Nazi accounts @NewUnion76, which was previously the subject of reporting by Media Matters and other news organizations ████████████████████████████████████████████

████████████████████████

Defendants seek public posts, not emails or direct messages. The fact that X suspended some of the accounts at issue after Defendants' reporting does not allow X to use the SCA to shield this once-publicly available information. There is apparently no authority for X's position that the SCA protects formerly public posts—indeed, X points to none. X's "currently public" standard is an unprecedented expansion of the SCA's reach.

X's purported compromise, ECF 277 at 2, is unacceptable because it is not Defendants' burden to ensure X complies with its discovery obligations. When SCA protection is asserted defensively to oppose disclosure, as X does here, courts require the party opposing disclosure to prove that protection applies. In *Republic of Gambia v. Facebook,* Facebook argued that deleted private social media content was protected under the SCA's backup protection provision. 575 F. Supp. 3d 8, 11 (D.D.C. 2021).The court's analysis in *Republic of Gambia* shows the practical burden allocation: the party opposing disclosure must present both factual evidence about how communications are stored and legal arguments about statutory interpretation. Facebook carried that burden. *Id*. at 13.[6]

---

[6] Federal appellate courts have also placed the burden of proving SCA protection elements on the party asserting that protection. *See Anzaldua v. Ne. Ambulance & Fire Prot. Dist*., 793 F.3d 822, 839 (8th Cir. 2015); *cf. Vista Mktg., LLC v. Burkett*, 812 F.3d 954, 962 (11th Cir. 2016).

7

X, as the party resisting discovery, bears the burden of establishing that a protection applies. *Cf. Jobe v. Nat'l Transportation Safety Bd.*, 1 F.4th 396, 403 (5th Cir. 2021) (noting that the "government bears the burden to prove that documents fall within an exemption," in the Freedom of Information Act context); *United States v. Fluitt*, 99 F.4th 753, 763 (5th Cir. 2024) ("A [privilege holder] asserting a privilege exemption from discovery bears the burden of demonstrating its applicability."); *Exxon Chem. Pats., Inc. v. Lubrizol Corp.*, 131 F.R.D. 668, 671 (S.D. Tex. 1990) ("In order to establish confidentiality, a person must establish that the information sought is a trade secret and then demonstrate that its disclosure might be harmful.").

At minimum, the Court should compel X to remove its improper SCA redactions from any post that is now or was ever public content.

### III.    X's internal discussions about posts are not protected by the SCA.

The statute's text forecloses X's argument that its internal documents constitute protected "contents" under 18 U.S.C. § 2510(8) whenever they paraphrase, describe, or summarize a user's post. ECF 277 at 21–22. The SCA expressly distinguishes "contents" from "a record or other information pertaining to a subscriber or customer." 18 U.S.C. § 2702(a)(3), (c). X's escalation tickets, spreadsheets, content moderation reports, and policy analyses are X's own records, not user communications.

The Ninth Circuit confirmed this distinction in *In re Zynga Privacy Litigation*, 750 F.3d 1098, 1106 (9th Cir. 2014), holding that "Congress intended the word 'contents' to mean a person's intended message to another." X's internal memoranda discussing the content of X posts are not any user's "intended message to another." They are X's own business analyses, or the kind of "record information" that courts have consistently held falls outside the SCA's protections. *See Gonzales v. Uber Technologies*, 305 F. Supp. 3d 1078, 1084–85 (N.D. Cal. 2018).

X's authority does not undermine Defendants' position. The courts in *Ward v. Thompson, No. 22-16473, 2022 WL 14955000, at \*3 (9th Cir. Oct. 22, 2022)* and *Systems Products and Solutions, Inc. v. Scramlin*, No. 13-CV-14947, 2014 WL 3894385, at \*8 (E.D. Mich. Aug 8, 2014) recognized that metadata is not content. True. But this conclusion says nothing about whether notes and communications about certain user posts qualifies as non-content information. X cites *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069 (N.D. Cal. 2022), for the proposition that subscriber information "may be contents when it is part of the substance of the message conveyed to the recipient." ECF 277 at 22. But *Hammerling* drew the line at the message conveyed "to the recipient." *Hammerling*, 615 F. Supp. 3d at 1092–93. X's internal escalation tickets were not "conveyed to" any "recipient" within the SCA's meaning. No court has adopted this sweeping expansion of the SCA. This Court should decline X's invitation to be the first.

IV. **Should the Court choose to reach Defendants' *Snap* argument, there are several reasons to find the *Snap* court's reasoning persuasive.**

The Court need not reach *Snap* to grant this motion. The provider-protection exception, the public-posts exception, and the internal-commentary distinction each independently compel relief. X tells this Court that *Snap* held "the SCA does not bind [social media companies] *at all*." ECF 277 at 1. That is a straw man. *Snap* was a fact-specific decision holding that where "users have given the providers authorization to access and use their content for their own business purposes," the SCA's "underlying policy purpose . . . is belied." 323 Cal. Rptr. 3d at 601–02. X claims *Snap* "dismissed contrary circuit precedent in a single footnote." ECF 277 at 9. Wrong. The footnote distinguishes mostly district and state court cases, not circuit precedent, and correctly explains that none confronted the arguments made before the *Snap* court. 323 Cal. Rptr. 3d at 602 n.17. As far as Defendants can tell, the *Snap* court was the first to do so.

X points to a quotation it attributes to *Crispin*: that *Snap* "disregarded precedent holding that 'the provider's purposes for storing communications are irrelevant.' *Crispin*, 717 F. Supp. 2d at 990." ECF 277 at 9. That phrase appears nowhere in *Crispin.* What *Crispin* actually held was that Facebook and MySpace were classified as ECS and RCS providers without occasion to consider whether their terms of service or business uses of content affected that analysis—because no party raised the issue. 717 F. Supp. 2d at 980–82, 990–91; *id* at n.17.

V.    **Defendants' request is relevant and proportional, and Defendants adequately complied with the Court's meet-and-confer requirements.**

X has already produced (or, apparently, will produce) these documents with redactions, so the burden of removing them is minimal, and X cannot simultaneously argue that Defendants have "already made extensive use of public examples" (ECF 277 at 24–25) while hiding the documents that would show whether those examples are isolated incidents or evidence of systemic failure.

X claims Defendants rushed to impasse. ECF 277 at 4, 6. The record shows otherwise. Defendants raised SCA issues on January 23, 2026, (ECF 261-2 (App.078)), conferred on January 30 and February 18, and X's own counsel confirmed impasse on February 20. X's "offer" to remove redactions only if Defendants demonstrate publicness was not a compromise, it was a demand that Defendants perform a task X itself says is burdensome and practically impossible. ECF 277 at 3; 18. X promised a response on the Benarroch/Hill email by early the following week and then never provided an update. X's pattern of delaying the resolution of discovery disputes in this litigation is well documented. App. 68, 71-72. The law is clear that Defendants need not wait for X to utter magic words before an impasse is established. *See* ECF 211-1.

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion and compel X to remove its improper SCA redactions.

10

Dated: April 6, 2026.

Respectfully submitted,

/s/ *Justin A. Nelson*
Richard B. Roper, III
VARTABEDIAN HESTER & HAYNES LLP
301 Commerce St., Suite 2200
Fort Worth, Texas 76102
Telephone: (817) 309-9092
richard.roper@vhh.law

Justin A. Nelson
State Bar No. 24034766
Matthew Behncke
State Bar No. 24069355
Alexandra Foulkes Grafton *(admitted PHV)*
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone:  (713) 651-9366
Fax:  (713) 654-6666
jnelson@susmangodfrey.com
mbehncke@susmangodfrey.com
afoulkesgrafton@susmangodfrey.com

Katherine M. Peaslee
SUSMAN GODFREY L.L.P.
401 Union Street, Suite #3000
Seattle, WA 98101
Telephone:  (206) 516-3880
Facsimile:  (206) 505-3811
kpeaslee@susmangodfrey.com

Dwight P. Bostwick
Shawn P. Naunton
ZUCKERMAN SPAEDER LLP
485 Madison Ave., 19th Floor
New York, NY 10022
Telephone: (212) 704-9600
Facsimile: (202) 822-8106
dbostwick@zuckerman.com
snaunton@zuckerman.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I certify that on April 6, 2026, a true and correct copy of this pleading was properly served on counsel of record via email in accordance with the USDC, Northern District of Texas Procedures for Electronic Filing.

*s/ Alexandra Foulkes Grafton*
Alexandra Foulkes Grafton

2