**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **X CORP.**, a Nevada corporation,<br>*Plaintiff,*<br><br>vs.<br><br>**MEDIA MATTERS FOR AMERICA,** a Washington, D.C. non-profit corporation, **ERIC HANANOKI**, and **ANGELO CARUSONE**,<br><br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Case No. 4:23-cv-01175-O** |

**BRIEF IN SUPPORT OF MOTION TO COMPEL**
**PRODUCTION OF DOCUMENTS**

# TABLE OF CONTENTS


TABLE OF CONTENTS ..... ii

TABLE OF AUTHORITIES ..... iii

INTRODUCTION ..... 1

BACKGROUND ..... 1

ARGUMENT AND AUTHORITIES ..... 2

I. X is Entitled to Discovery of MMFA's Funding, Financial Support, Grants, and Marketing Efforts. ..... 3

II. X Is Entitled to Documents Relating to MMFA's Description of Its Mission. ..... 5

III. X Is Entitled to Discovery of Other Groups Affiliated with MMFA. ..... 7

IV. X Is Entitled to Discovery of Documents and Communications Related to the New York Times Article. ..... 8

A. Relevance of RFPs 200, 201, 203, 217, and 220. ..... 9

B. Relevance of RFPs 216, 218, and 219. ..... 10

V. X Is Entitled to Discovery of Publicly Disclosed Donors. ..... 11

CONCLUSION ..... 12

CERTIFICATE OF SERVICE ..... 13

# TABLE OF AUTHORITIES

## Cases

*Ala. State Fed'n of Teachers v. James*,
656 F.2d 193 (5th Cir. Unit B Sept. 1981)........ 12

*Ancor Holdings, L.P. v. Landon Cap. Partners, L.L.C.*,
114 F.4th 382 (5th Cir. 2024) ........ 7

*Brown v. Petrolite Corp.*,
965 F.2d 38, 42 (5th Cir. 1992) ........ 4

*Diplomat Elec., Inc. v. Westinghouse Elec. Supply Co.*,
430 F.2d 38 (5th Cir. 1970) ........ 10

*Duffy v. Leading Edge Prods., Inc.*,
44 F.3d 308 (5th Cir. 1995) ........ 4

*Hicks-Fields v. Harris County*,
860 F.3d 803 (5th Cir. 2017) ........ 2

*S.E.C. v. Brady*,
238 F.R.D. 429 (N.D. Tex. 2006) ........ 2

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*,
No. A-15-CV-134-RP, 2016 WL 5922315 (W.D. Tex. Oct. 11, 2016) ........ 12

## Other Authorities

Kenneth P. Vogel, Kate Conger & Ryan Mac,
*Under Siege From Trump and Musk, a Top Liberal Group Falls Into Crisis*, N.Y. TIMES (July 25, 2025), *available at* https://www.nytimes.com/2025/07/25/us/politics/media-matters-musk-crisis.html (last accessed May 11, 2026) ........ 8

## Rules

Fed. R. Civ. P. 26(b)(1)........ 2

## INTRODUCTION

Defendants are stonewalling discovery with baseless refusals to produce responsive documents. Under the guise of "journalism," Defendants engaged in an ideological campaign designed to cripple X's business after the platform was purchased by Elon Musk in 2022. The scheme was methodical: Defendants tracked which companies advertised on X, pressured those companies to stop advertising on X, paid employees to write hit pieces masquerading as journalism, and deliberately published false statements about X being "brand *un*safe." Now, Defendants deploy a cynical discovery strategy: they agreed to produce documents about X (the victim that was smeared) while refusing to produce documents about themselves, which is the very evidence that would expose them—not as truth-seeking journalists exercising First Amendment rights, but as activists using weaponized lies for ideological purposes.

To hide their tortious conduct, Defendants are refusing to produce the following types of documents requested by X: (1) documents relating to MMFA's description of its mission and the methods it will use to fulfill its mission; (2) documents relating to MMFA's funding, financial support, grants, and marketing efforts; (3) documents relating to other groups MMFA is affiliated with; (4) documents exchanged with the New York Times about this very litigation; and (5) documents related to MMFA's publicly disclosed donors.

## BACKGROUND

In November 2023, in the culmination of its months-long smear campaign, Defendant Media Matters for America ("Media Matters" or "MMFA") published two false and defamatory articles about controversial content appearing next to advertisements on X's social media platform. Am. Compl. ¶¶ 30-38, 46-54. As a result, major advertisers withdrew from the platform. *Id.* ¶¶ 30-38, 61-64. X subsequently brought claims against MMFA, Eric Hananoki (the articles' author),

and MMFA's president, Angelo Carusone, for business disparagement, tortious interference with contract, and tortious interference with prospective economic advantage. *Id.* ¶¶ 65-88.

X requested discovery relevant to its claims, but Defendants have stonewalled. Following a host of conferences and letters, *see* Appx. 6-15, the parties reached an impasse over the following twenty requests in X's Seventh Set of Requests for Production: RFPs 177-179, 183-89, 192, 200-201, 203, 212, and 216-220.[1] Defendants' objections to these requests are meritless and should be overruled in full.[2]

**ARGUMENT AND AUTHORITIES**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* Thus, "the bar is low" to meet the relevance standard in the Fifth Circuit. *Hicks-Fields v. Harris County*, 860 F.3d 803, 809 (5th Cir. 2017); *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) (discovery is allowed if there is a "'possibility' that the information sought may be relevant to the claim or defense of any party" (citation omitted)).

---

[1] Defendants served supplemental responses and objections to RFPs 177-79, 183-89, 192, 200-201, 203, 216, and 218-219, which are available at Appx. 95 et seq. Defendants' original responses and objections to RFPs 212, 217, and 220 are available at Appx. 32 et seq.

[2] Defendants also imposed arbitrary time limits on responsive documents. In response to RFP Nos. 167, 169, 171–173, 175–179, 183–187, 194–195, 200–201, 203–208, 210, 213–215, and 221–222, Defendants stated that they would only produce documents dated "from April 14, 2021, to December 31, 2023." *See, e.g.*, Appx. 97 (Supp. Resp. to RFP 167). For RFP Nos. 168 and 170, Defendants applied an even narrower cutoff of November 20, 2023. *See, e.g.*, Appx. 36 (Resp. to RFP 168). The parties have since agreed to a mutual document discovery cutoff date of November 1, 2024. ECF No. 298. In light of the parties' agreement, wherever Defendants have agreed to produce documents in response to a particular RFP, Defendants have agreed that their production will include all responsive documents through November 1, 2024.

## I. X is Entitled to Discovery of MMFA's Funding, Financial Support, Grants, and Marketing Efforts.

The first set of requests at issue seek documents concerning or regarding financial support and donations for Media Matters (RFP Nos. 177-179). These documents will reveal why Defendants received financial support, for what stated purposes, and subject to what conditions or restrictions—information directly probative of Defendants' financial motives and pressures and therefore their state of mind and culpability. Defendants agreed to conduct only a limited search for documents or communications regarding "Media Matters reporting, investigations, or campaigns regarding X, Elon Musk, or brand safety and/or content moderation relating to online platforms/social media..." Appx. 104-08. These unilateral limitations—both as to the types of activities ("reporting, investigations, or campaigns" only) and the subject matter ("X, Elon Musk, or brand safety and/or content moderation relating to online platforms/social media" only)—are unwarranted.

Defendants' refusal to produce documents relating to activities outside of "reporting, investigations, or campaigns" improperly excludes a range of relevant materials. This carve-out would exclude other types of relevant activities that relate to "X, Elon Musk, or brand safety and/or content moderation," such as:

- internal strategy sessions relating to proposed attacks on X or Elon Musk,
- internal planning documents or guides regarding soliciting donations and fundraising that relate to proposed attacks on X or Elon Musk,
- donor communications and grant negotiations relating to attacks on X or Elon Musk,
- budgeting and fund-allocation decisions relating to X or Elon Musk, and
- public advocacy or policy positions not packaged as formal "campaigns," and partnerships or collaborations with third-party organizations.

The foregoing materials will directly evidence donor expectations, earmarked restrictions, or economic incentives that shaped Defendants' conduct and state of mind.

Defendants' subject matter limitation is also unduly narrow. If the only documents produced are those that relate to "X, Elon Musk, or brand safety and/or content moderation relating to online platforms/social media," the production would exclude highly relevant categories such as:

- documents relating to efforts to silence conservative speech and attacks on conservative speech;
- documents concerning advocacy, research, or campaigns targeting conservative viewpoints, organizations, or figures (including efforts at suppression);
- documents reflecting donor influence on Defendants' positions regarding political or ideological issues;
- documents evidencing funding for broader ideological initiatives, lobbying, or public campaigns; and
- documents showing internal discussions about prioritizing donor-favored causes or avoiding positions that might jeopardize funding.

Evidence that Defendants profited from their campaign to silence conservative speech—or suffered consequences when they resisted donors' demands—is powerful proof of both intent and malice. Financial motives and economic incentives to lie are strong indicators of state of mind. *See Brown v. Petrolite Corp.*, 965 F.2d 38, 42, 47 (5th Cir. 1992) (finding on the basis of circumstantial evidence that "Petrolite had the motive to publish a false report" because it was "losing business" to the plaintiff and was "concerned by its loss of business"); *see, e.g.*, *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 315 n.10 (5th Cir. 1995) ("[E]vidence of ulterior motive can often bolster an inference of actual malice.").

Responsive documents will also reveal whether certain funds were earmarked or allocated for specific purposes. MMFA's financial reports show that it had millions of dollars classified as

"Net Assets with Donor Restrictions" that could only be spent on certain projects. Appx. 156. X is entitled to learn what those restrictions are and what promises MMFA made to receive this funding even if the specific words "X, Elon Musk, or brand safety and/or content moderation relating to online platforms/social media" are not explicitly mentioned.

## II. X Is Entitled to Documents Relating to MMFA's Description of Its Mission.

The next set of requests concern MMFA's own description of its mission and are likely to reveal the methods it uses to fulfill its mission, including its campaign of deception. Specifically, X has sought Defendants' grant applications (RFP No. 183), grant award letters and agreements with grantors (RFP No. 184), documents provided to potential Media Matters' funders or donors regarding objectives and performance targets and financial sustainability concerns (RFP Nos. 185-186), and Media Matters marketing materials and reports to donors and other groups (RFP No. 187).

These documents will reflect how Defendants present MMFA and its work to the public and its stakeholders.[3] For example, grant applications describe an organization's mission, aims, and activities and explain the problem or problems that the organization intends to address. As such, these materials construct a particular narrative about an organization's identity, priorities, and capacity. These documents will likely also include a description of an entity's planned methodology and expected outcomes. Similar information may be obtained from the remaining

[3] The appeal pending in the instant case concerns whether MMFA must disclose the *identities* of their donors. *See* ECF No. 98 (ordering MMFA to search for and produce documents responsive to RFPs 17, 18, 21, and 35, dealing with donors and their identities as well as funding); ECF No. 101 (MMFA's Notice of Interlocutory Appeal of ECF No. 98). Defendants' pending appeal provides no basis to absolve Defendants of their obligation to search for and produce responsive materials altogether.

types of requested documents such as marketing materials and other documents provided to potential and actual donors.

Conceding the appropriateness of the foregoing RFPs, Defendants agreed to produce documents responsive to these requests but only if:

- the document directly relates to "Media Matters projects regarding online platform/social media disinformation or Musk" (RFP Nos. 183 and 184);
- the document was "provided to funders, donors, grantors, or other financial supporters who are identified in documents located that are responsive to RFP Nos. 177-79, 183, and 184." As described above, this limits the documents to those relating to only "X, Elon Musk, or brand safety and/or content moderation relating to online platforms/social media." (RFP Nos. 185-187).

Appx. 10, 110-16. Again, Defendants' unilateral limitations on X's discovery requests are unsupportable.

X is entitled to full discovery into MMFA as an organization regardless of whether Mr. Musk or "disinformation" is explicitly discussed. MMFA cannot limit responsive documents to terms that would exclude crucial contextual documents that illuminate Defendants' broader strategic initiatives and statements regarding the execution of their objectives. For instance, internal documents referring to Defendants' targeting of "right-wing" speech are relevant even without directly mentioning Mr. Musk or online platforms. *E.g.* Appx. 171-80. Other documents are likely to reflect similar efforts to squelch speech from groups Defendants dislike without hitting on the narrow terms that Defendants proposed. Although Defendants seek to make this case solely about X, as the party accused of tortious wrongdoing, MMFA must produce documents that reflect on its own conduct, including those that show how MMFA characterizes itself and its stated mission, as well as the methods it states uses to carry out its mission.

## III. X Is Entitled to Discovery of Other Groups Affiliated with MMFA.

Next, X requested information about the various groups with which MMFA is affiliated; specifically, X requested records of membership dues and documents relating to the organizations of which Media Matters is a part (RFP Nos. 188, 189 & 192). Appx. 116-20. Discovery has already revealed that MMFA publicly participated in groups including StopToxicTwitter and StoptheDeal (referring to Mr. Musk's acquisition of Twitter, Inc.). After they failed to "stop the deal," StopToxicTwitter was formed to, in their own words, "call[] on Twitter's top advertisers to notify Musk and publicly commit to cease all advertising on Twitter globally." Appx. 201.[4] [redacted]. Faced with these facts, Defendants concede the relevance of documents and communications with StopToxicTwitter and StoptheDeal. *See Ancor Holdings, L.P. v. Landon Cap. Partners, L.L.C.*, 114 F.4th 382, 399-400 (5th Cir. 2024) (finding circumstantial evidence of intent for tortious interference through secret communications and coordinated deception).

Yet Defendants still object on overbreadth grounds to providing information concerning *other groups* with which MMFA is affiliated and may have coordinated with in their campaign to

[4] https://web.archive.org/web/20250711113400/https://www.stoptoxictwitter.com/.

harm X. Appx. 6-7, 116-20. Instead of searching for and producing documents establishing this coordination and involvement, Defendants seek to place the burden to identify specific groups on X. *Id.* But that is not how discovery works. Defendants, not X, are in the best position to identify the groups with whom MMFA was affiliated. Indeed, because of the redactions and privileges asserted by Defendants, *see* X's Motion to Compel Production of Documents Withheld on Privilege Grounds, ECF No. 254, 255-1, X is unable to fully identify the third-party individuals and organizations with whom Defendants are affiliated.

Even beyond the groups that explicitly sought to harm X, documents concerning other organizations with whom Defendants are affiliated are likely to reveal evidence of intent and malice by demonstrating pre-existing animus toward X, ideological motivations to publish damaging information without proper investigation, and a reckless disregard for the truth driven by alignment with advocacy groups. For example, if MMFA was associated exclusively with leftwing organizations, this would support MMFA's intent to harm X as a means of reducing speech from conservatives or about conservative causes. Similarly, these affiliations may reveal MMFA as an advocacy group for whom any traditional journalism was an afterthought.

## IV. X Is Entitled to Discovery of Documents and Communications Related to the New York Times Article.

On July 25, 2025, while discovery in this case was pending, the New York Times published an article entitled "Under Siege From Trump and Musk, a Top Liberal Group Falls Into Crisis" (the "July New York Times Article").[5] Appx. 287-96. MMFA is described as "struggling to withstand months of legal assaults," Appx. 287, and facing a "vendetta-driven campaign" from

[5] Kenneth P. Vogel, Kate Conger & Ryan Mac, *Under Siege From Trump and Musk, a Top Liberal Group Falls Into Crisis*, N.Y. TIMES (July 25, 2025), *available at* https://www.nytimes.com/2025/07/25/us/politics/media-matters-musk-crisis.html (last accessed May 11, 2026).

Mr. Musk, Appx. 293, while X is described as an aggressive bully relentlessly pursuing an innocent MMFA despite court losses, *see generally* Appx. 287-96. X is entitled to discovery regarding MMFA's participation in the July New York Times Article and efforts to sully X in the process.

**A. Relevance of RFPs 200, 201, 203, 217, and 220.**

These requests seek documents relating to the July New York Times Article (RFP Nos. 200, 201 & 203) and Media Matters documents referenced in the article (RFP Nos. 217 & 220). With respect to RFP Nos. 200, 201 and 203, Defendants' response demands that X propose a narrowing of these requests, but as written these three requests relate only to "X, Elon Musk, or the Litigation." Appx. 126-29. Further narrowing is unwarranted. Defendants refuse to produce any documents responsive to RFP Nos. 217 and 220.

Documents responsive to these five requests are relevant on multiple grounds. MMFA's self-serving statements to the New York Times about X will reveal MMFA's own narrative, justifications, and characterizations for its conduct. If MMFA made representations to the New York Times that contradict its litigation positions, that is evidence that would undermine Defendants' credibility. Further, Defendants' willingness to discuss this litigation and X with another media outlet is likely to demonstrate Defendants' continued animus toward X and its continued efforts to shape public perception of X. The internal memorandum referenced in the New York Times article that lays out the "chill and harms" of the lawsuits, which is the subject of RFP No. 217, is particularly probative because it represents Defendants' own assessment of the impact and consequences of its conduct, which assuredly will include admissions about numerous relevant issues, including whether Defendants' understood their original statements were harmful to X.

These documents also provide evidence of Defendants' continuation of their campaign to harm X, now utilizing third party proxies including the New York Times, to perpetuate their lies. Such evidence would show that Defendants have doubled down on their conduct rather than correcting the record. *Diplomat Elec., Inc. v. Westinghouse Elec. Supply Co.*, 430 F.2d 38, 47 (5th Cir. 1970) ("Where a person has published a false statement and information thereafter comes to him from a reliable source which would put a reasonable person on inquiry as to the truth of such statement, and instead of making such inquiry he wilfully [sic] republishes the false statement, the repetition of the defamation is strong evidence of malice.").

**B. Relevance of RFPs 216, 218, and 219.**

These requests seek documents relating to Defendants' litigation-related conduct. RFP No. 216 seeks documents relating to the parties' settlement discussions—a subject discussed in the July New York Times Article. Appx. 140. RFP No. 218 seeks documents relating to David Brock, the founder of Media Matters, and his involvement in this litigation. Appx. 141. According to the July New York Times Article, Mr. Brock left Media Matters in 2022 but returned to the organization to "help navigate the X litigation." Appx. 292. RFP No. 219 seeks documents relating to what the July New York Times Article described as the Spring 2025 Media Matters meeting regarding X, Elon Musk and this Litigation (RFP No. 219). Appx. 142. Each of these RFPs relate directly to this litigation.

Defendants conceded relevance regarding these requests, but only to the extent that they touch on the following topics: "articles identified in the Complaint and in X's RFPs, the Carusone Interview, the Stop Toxic Twitter and Stop the Deal coalitions, Musk's purchase of Twitter, advertising on X, brand safety on X, or content moderation on X." Appx. 10. Notably, Request No. 219 seeks documents relating to three discrete topics only—X, Elon Musk, and the instant

case—yet, Defendants attempt to further narrow even these very limited topics. Appx. 10, 143. For example, instead of agreeing to produce documents regarding "Elon Musk," as requested, Defendants' agreed to produce documents relating to only the narrower category of "Musk's purchase of Twitter." *Id.* Instead of agreeing to produce documents relating to "X"—already a narrow category—Defendants further narrowed to documents relating to "advertising on X, brand safety on X, or content moderation on X." *Id.*

Once again, Defendants are improperly trying to shift the focus away from MMFA and are seeking to exclude facts that will establish themselves as ideologues who engaged in a directed campaign to intentionally cause harm by any means necessary—including by tortiously spreading lies about X. By giving themselves the power to define the scope of responsive documents, Defendants are attempting to immunize from disclosure precisely the evidence most damaging to their defense: documents concerning Defendants' intent, ideological predilections, institutional bias, and systematic departure from journalistic standards. Accordingly, Defendants' self-serving limitation would conceal evidence of Defendants' true motives and reckless disregard for the truth.

**V. X Is Entitled to Discovery of Publicly Disclosed Donors.**

X has requested documents relating to "donations by George Soros, Susie Tompkins Buell, and/or Stephen F. Mandel Jr" who are publicly known donors of MMFA. Appx. 85 (RFP No. 212). These requests seek documents that will show, *inter alia*, Defendants' intent when they published their statements about X. *See also* ECF No. 98 at 18-19 (finding that broader requests related to all of Defendants' donors were relevant to proving Defendants' mental state). This includes evidence of what Defendants knew, believed, or consciously disregarded about the accuracy of their statements before publication, at the time of publication, and after the publication. This set of documents may also expose these donors' pressure on Defendants to attack X—and whether Media Matters profited when it complied, or suffered when it didn't, which is powerful proof of intent

and malice. Despite these donors being publicly known, Defendants claim a First Amendment privilege. Appx. 85.

Defendants' privilege claim fails for a different and distinct reason from any issue raised in the appeal currently pending before the Fifth Circuit: they have not demonstrated how the First Amendment privilege protects against disclosure of information about donors whose association with Defendants is *already* public record and public knowledge. *See, e.g.*, *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, No. A-15-CV-134-RP, 2016 WL 5922315, at *6-8 (W.D. Tex. Oct. 11, 2016) (rejecting argument that organization could shield its communications with public actors).

Consequently, Defendants fail to show that public disclosure of documents responsive to Request No. 212 "burden whatsoever [their] associational interests." *Ala. State Fed'n of Teachers v. James*, 656 F.2d 193, 198 (5th Cir. Unit B Sept. 1981) (rejecting right-of-association challenge for lack of evidence of chilling effect). Defendants' resistance to discovery concerning the publicly known donors is divorced from the purpose of Defendants' claimed privilege. Thus, neither the First Amendment, nor Defendants' pending appeal applies to this request.

## CONCLUSION

For the reasons discussed herein, X requests that the Court order Defendants to promptly produce all materials responsive to Request for Production Nos. 177-179, 183-189, 192, 200-201, 203, 212, and 216-220, including all responsive documents from April 14, 2021 to November 1, 2024.

Dated: May 12, 2026.

Respectfully submitted,

*/s/ Christopher D. Hilton*
Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
**STONE HILTON PLLC**
600 Congress Ave., Ste. 2350
Austin, TX 78701
Telephone:(737) 465-3897
judd@stonehilton.com
chris@stonehilton.com

John C. Sullivan
Texas Bar No. 24083920
**S|L LAW PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

*Attorneys for Plaintiff X Corp.*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 12, 2026, a copy of this document was served on all counsel of record via email and through the Court's CM/ECF system in accordance with the Federal Rules of Civil Procedure.

*/s/ Christopher D. Hilton*
Christopher D. Hilton