**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

**X CORP.**, a Nevada corporation,
Plaintiff,

vs.

**MEDIA MATTERS FOR AMERICA**, a Washington, D.C. non-profit corporation, **ERIC HANANOKI**, and **ANGELO CARUSONE**,
Defendants.

Case No. 4:23-CV-01175-O

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF**
**MOTION FOR PROTECTIVE ORDER**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii
ARGUMENT ........ 2
I. The Subpoenas Remain Outside Rule 26's Limits, Which X May Enforce. ........ 2
A. The record Defendants rely on confirms that the subpoenas are cumulative. ........ 3
B. The subpoenas reach far beyond the period this Court has held relevant. ........ 7
II. The Requested Relief Is Proper Under Rule 26. ........ 10
CONCLUSION ........ 10
CERTIFICATE OF SERVICE ........ 12

## TABLE OF AUTHORITIES

### Cases

*In re Terra Int'l*,
134 F.3d 302 (5th Cir. 1998) .......... 2

*Jim S. Adler, P.C. v. McNeil Consultants, LLC*,
2022 WL 1624785 (N.D. Tex. May 23, 2022) .......... 2

*Lexington Ins. Co. v. Harvia Oy*,
2013 WL 12330197 (N.D. Tex. Nov. 13, 2013) .......... 1

*Owens v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*,
695 F. Supp. 3d 750 (M.D. La. 2023) .......... 4

*Paisley Park Enters. v. Boxill*,
330 F.R.D. 226 (D. Minn. 2019) .......... 4

*Shukh v. Seagate Tech., LLC*,
295 F.R.D. 228 (D. Minn. 2013) .......... 2

*Sines v. Kessler*,
325 F.R.D. 563 (E.D. La. 2018) .......... 9

*Wiwa v. Royal Dutch Petroleum Co.*,
392 F.3d 812 (5th Cir. 2004) .......... 10

### Rules

Fed. R. Civ. P. 26(b)(1) .......... 3

Fed. R. Civ. P. 26(b)(2)(C) .......... 3

Fed. R. Civ. P. 26(b)(2)(C)(i) .......... 1, 4, 7

Fed. R. Civ. P. 26(c)(1) .......... 2

Fed. R. Civ. P. 26(c)(1)(A) .......... 10

Fed. R. Civ. P. 26(c)(1)(D) .......... 10

Fed. R. Civ. P. 45(d)(2)(B) .......... 3

## INTRODUCTION

Defendants' response confirms that their Rule 45 subpoenas are "unreasonably cumulative or duplicative" of existing discovery and seek information that "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). The subpoenas target eleven current and former X employees—non-parties whose work email, Slack, and other files X has collected, searched, and, where appropriate, produced. Mot. at 1–4. The subpoenas demand four years of personal text messages on subjects that X's 680,000-document production has already exhausted, through fifteen expansive requests that reach communications with friends and family and run nearly two years past the parties' own document-discovery cutoff. *Id.* at 6–11. And Defendants served these subpoenas while two of their own motions seeking the same communications from X remain pending.

None of this is proper, and Defendants concede that X has standing to challenge the subpoenas' overbreadth, relevance, and cumulativeness. Opp. at 7, 9. But to avoid yet more motion practice, X made significant efforts—and concessions—to resolve the parties' dispute without the Court's involvement. X offered to forgo this motion entirely if the nine recipients who objected to the subpoenas were permitted to search their own phones for messages on a narrowed but still substantial set of topics, first proposing a timeframe of November 2023 and later expanding that window to October through December 2023.[*] Defendants rejected both suggestions, insisting on

[*] Although Defendants repeatedly refer to eleven subpoenaed individuals, *e.g.*, Opp. at 5, 11, only nine of those individuals were served. Defendants have never served Elon Musk or Avantika Mankar, and X's conferral proposals were expressly limited to the nine recipients who served objections to the subpoenas. Defs.' App. 738. Nothing in X's motion, this reply, or the parties' negotiations relieves Defendants of their obligation to serve any non-party under Rule 45(b) before those non-parties are obligated to take any steps in response to the subpoenas. *See Lexington Ins. Co. v. Harvia Oy*, 2013 WL 12330197, at *1 (N.D. Tex. Nov. 13, 2013) ("In the Fifth Circuit, personal service of a subpoena is required under Rule 45(b).").

a 21-month window that would reach communications from before Elon Musk even acquired the platform and that cannot be squared with this Court's holding that "[t]he relevant period is November 2023." ECF No. 362 at 4. Their request to "permit Defendants to obtain the discovery sought through the Rule 45 subpoenas," Opp. at 25, runs headlong into both Rule 26's bar on cumulative discovery and this Court's holding on the "relevant period."

## ARGUMENT

### I. The Subpoenas Remain Outside Rule 26's Limits, Which X May Enforce.

Rule 26(c) permits a party to seek protection, in "the court where the action is pending," from discovery sought through non-party subpoenas. Mot. at 4–5 (quoting Fed. R. Civ. P. 26(c)(1)). A party that challenges such requests as irrelevant and cumulative asserts "[its] own right to reasonable discovery and efficient disposition of the case." *Id.* at 5 (quoting *Shukh v. Seagate Tech., LLC*, 295 F.R.D. 228, 236 (D. Minn. 2013)).

Defendants agree that a party may challenge a non-party subpoena as "facially overbroad" and "seek a protective order on the basis of lack of relevance or proportionality," Opp. at 7 (quoting *Jim S. Adler, P.C. v. McNeil Consultants, LLC*, 2022 WL 1624785, at *2 (N.D. Tex. May 23, 2022)), and may object that discovery is cumulative, *id.* at 9. They insist, however, that "[m]ost of X's arguments assert rights that belong to the subpoenaed non-parties"—their privacy, their burden, and their privileges, *id.* at 8–10—and they stress that good cause requires a "particular and specific demonstration of fact," *id.* at 8 (quoting *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998)). Neither point helps them.

X moved on the grounds Defendants concede it may raise: that the subpoenas are cumulative of X's production, facially overbroad, and disproportionate to the needs of the case. Mot. at 6–12. X did not seek relief to vindicate the recipients' privacy or burden. It noted the

personal nature of the devices because Rule 26 requires the Court to weigh whether intrusive discovery of marginal, cumulative information is proportional. *See* Fed. R. Civ. P. 26(b)(1), (b)(2)(C). The recipients have asserted their own interests through their own objections, Appx. 299–543, and Defendants have not moved to compel compliance in any court. *See* Fed. R. Civ. P. 45(d)(2)(B). As for good cause, X has made the "particular and specific demonstration of fact" Defendants demand through sworn custodian declarations, the overlap between the subpoenas and the requests X has answered, and the parties' conferral record—none of which Defendants meaningfully rebut.

### A. The record Defendants rely on confirms that the subpoenas are cumulative.

As X explained, everything Defendants seek from the non-parties is available from X's production. Mot. at 6. X searched the email, Slack, and other ESI of every subpoena recipient. *Id.* at 4, 6. The majority of the individuals that Defendants subpoenaed have attested that their "primary methods of written communication" with colleagues are email and Slack, that they communicate with clients primarily by email, and that X "does not direct employees to communicate with each other for business purposes via text message on personal devices." *Id.* at 6 (quoting ECF No. 307-4 at Appx. 36–37). And X's production covers each of the subpoenas' subjects in depth: hundreds of documents about the articles and the posts they depicted; thousands about brand safety, including third-party measurements from Integral Ad Science and DoubleVerify; and so many about advertisers' reasons for leaving that Defendants moved to compel on the theory that X identified too many. *Id.* at 7–8.

Much of Defendants' opposition is devoted to showing that brand safety, content moderation, and advertisers' decisions are relevant to the parties' claims and defenses. Opp. at 11–17. That is true enough, as far as it goes; that is why X's production on those subjects is so

voluminous. The question is whether Rule 26 also requires *non-parties* to search their personal phones for the *same* information. Defendants offer several justifications for that demand, but all lack merit.

*First*, Defendants claim that X sent them down this path by insisting that Defendants "must proceed by subpoenaing [former employees]." Opp. at 1 (quoting ECF No. 360-4 at 8). But the quoted sentence solely concerned the X-issued phone that former CEO Linda Yaccarino kept when she left the company. *See* ECF No. 360-4 at 8. True, X has argued that Rule 45, rather than Rule 34, governs non-parties' personal devices. *See id.* at 9 n.2. But in so noting, X is not trying to "have it both ways." Opp. at 24. X's positions are entirely consistent. X cannot be compelled to produce texts that are not in its possession, custody, or control. And whether Defendants seek those texts from X or from the employees themselves, their substance is cumulative of what X has produced.

*Second*, Defendants argue that text messages cannot be cumulative because they are "a distinct communication channel." Opp. at 1, 21–22. Defendants' argument is circular: by their reasoning, text messages would necessarily be non-cumulative in any case where they have not already been produced. Rule 26 instead asks whether the discovery sought is "unreasonably cumulative or duplicative" of the information already produced, Fed. R. Civ. P. 26(b)(2)(C)(i)—not whether it arrives through a different channel. Defendants' cases address spoliation. Opp. at 22 (citing *Owens v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 695 F. Supp. 3d 750, 760 (M.D. La. 2023); *Paisley Park Enters. v. Boxill*, 330 F.R.D. 226, 235–36 (D. Minn. 2019)). In *Owens*, for example, the court asked whether emails could replace texts lost when two former employees' university-issued phones were wiped—Rule 37(e)'s threshold question—and held that "the mere potential for similar conversations" was not enough. 695 F. Supp. 3d at 760. That inquiry concerns the consequences of a failure to preserve relevant data, but does not displace

Rule 26's command that courts must limit cumulative discovery on a going forward basis.

Defendants also assert that X "has never reviewed the text messages in question" and therefore "cannot possibly know their content." Opp. at 1. X has said no such thing. In any event, it would not matter. The cumulativeness inquiry focuses on what the requesting party has already received in discovery. Were it otherwise, a party could invoke Rule 26(b)(2)(C)(i) only after incurring the very burden of sifting through duplicative data that the rule is designed to avoid.

*Third*, Defendants point to evidence that the individuals they subpoenaed texted about work. Opp. at 11. But that evidence consists almost entirely of X's own emails and Slack messages, collected from these custodians and produced. And that evidence shows only that texting occurred, not that texts hold substance missing from X's production. To the contrary, those documents confirm that X's production already reveals the substance of what was texted or show that any texts were logistical in nature. *E.g.*, Defs.' App. 70 (email following up on text with update and meeting script); Defs.' App. 104 (email discussing content-moderation policy, with passing reference to a text); Defs.' App. 145 (email confirming text to set up a meeting); Defs.' App. 159 (email confirming X "connected" via an advertiser via text with a call to follow).

Defendants call the texts that former employees A.J. Brown and Elyana Thierry produced in response to their own subpoenas "among the most significant evidence in the case." Opp. at 21. But the vast majority date from 2022, *see* Defs.' App. 1–50, more than a year before the articles and the sort of "internal development history" the Court has found has "no bearing on how the systems operated during the relevant period." ECF No. 362 at 4. And by Defendants' own description, those texts concern content-moderation staffing and the platform's safety protections, Opp. at 23—subjects within the discovery the Court has ordered from X, *see* ECF No. 135 at 5–6, and on which X has produced extensively. Defendants' own Stored Communications Act briefing

attaches more than a dozen such documents. *See* ECF No. 261-2 at 7–73, 124–343. As for the former employees Defendants say texted routinely, Opp. at 11, Joe Benarroch testified that he texted on a *work phone* X has searched, Defs.' App. 61, and Robin Wheeler said only that she texted about brand safety and advertising clients, *id.* at 65–68—subjects squarely within X's production. *See* ECF No. 135 at 5–8; ECF No. 197 at 8–9. In any event, that testimony goes to whether X controls its employees' personal phones—the question presented in Defendants' pending motions, *see* ECF Nos. 197, 360-4—not whether those texts hold anything new.

*Fourth*, Defendants invoke this Court's prior orders compelling causation and content-moderation discovery. Opp. at 2–3, 12–13. Those orders also cut the other way. The Court ordered X to produce its communications with all advertisers—not only those for which X seeks damages—about whether to advertise, precisely so that Defendants could pursue "other circumstantial evidence" of alternative causes for advertiser departures. ECF No. 135 at 8. X has committed to produce those communications for the full discovery period. ECF No. 197 at 8–9. The Court also ordered discovery into X's suspension of accounts for hateful content and its termination or suspension of employees over content moderation, ECF No. 135 at 4–6; into alternative causes of lost revenue, including the activities of the Center for Countering Digital Hate and the Anti-Defamation League, ECF No. 288 at 11; and into the technical workings and content policies of the systems at issue, ECF No. 362 at 3–6. Those are the very subjects of the subpoenas: brand safety, content moderation, and advertisers' reasons for pausing. *E.g.*, Appx. 18–20.

The Court has applied this logic before. When Defendants sought X's aggregate advertising revenue, the Court sustained X's objection in part because the advertiser communications it had ordered X to produce made that request "duplicative." ECF No. 135 at 9. The same reasoning applies here with more force: the information Defendants seek overlaps with discovery the Court

has ordered, and it would come not from a party's business records but from non-parties' personal phones. *See* Fed. R. Civ. P. 26(b)(2)(C)(i).

Finally, Defendants' remaining proportionality arguments fare no better. They contend that the stakes are high, that their self-search method imposes minimal burden, and that X's production has gaps. Opp. at 21–24. But Rule 26(b)(2)(C)(i) requires courts to limit cumulative discovery whatever the amount in controversy, and cheaper collection does not make duplicative information any less duplicative. And if Defendants believe X's production is deficient, their remedy lies against X, not against non-parties and their personal communications.

**B. The subpoenas reach far beyond the period this Court has held relevant.**

Even if the subpoenas sought something X's production lacks, they would still exceed Rule 26's limits because they are overbroad on their face. Each contains fifteen requests that reach messages with anyone, including friends and family, and string together broad, disjunctive topics—X, Musk, the platform, advertising, brand safety, content moderation, and this litigation—with nothing tying them to the claims in dispute. Mot. at 8–9. The definitions of "the Platform" and "X" have no discernible limiting principle. *Id.* at 9–10. And the subpoenas seek four years of texts, from April 2022 to the present, though the only period relevant to Defendants' truth defense is when they made their statements. *Id.* at 10.

Defendants do not defend the subpoenas' definitions or their four-year reach, and the narrowing proposals they offered during the meet and confer process reflect the overbroad nature of the subpoenas as drafted. They argue instead that the parties "agreed" on two narrower topic categories, rendering X's current objections "beside the point." Opp. at 11–12, 17. But X reserved its objections to the subpoenas throughout the parties' discussions and offered those categories as part of a package that included a defined timeframe, Defs.' App. 738, which Defendants rejected,

*id.* at 731; Opp. at 19. Nor did Defendants ever conform the subpoenas to the narrowed categories; they still broadly ask the Court to permit "the discovery sought through the Rule 45 subpoenas." Opp. at 25. And Defendants cannot hold X to the concessions in a proposal they rejected while declining to be bound by its terms themselves. Nor do Defendants' relevance arguments support the subpoenas as served. They defend only the narrower subjects X offered to search. Opp. at 11–17. But X disputes whether non-parties must search their personal phones for that material at all, *see supra* Part I.A, and over what period.

On the question of date range, the Court has provided the answer. In limiting Defendants' source-code-related requests, the Court held that "[t]he relevant period is November 2023," because the dispute "concerns whether the Relevant Functionality was functioning as designed only during the period at issue." ECF No. 362 at 4. Defendants were "not entitled to documents from outside the relevant period—November 2023—without more." *Id.* Requests reaching beyond it, the Court explained, would sweep in "internal development history" with "no bearing on how the systems operated during the relevant period." *Id.*

That reasoning, which Defendants do not address, let alone grapple with, applies with even greater force here. Defendants' defense "is, simply, that the reporting was substantially true." Opp. at 4. Whether Defendants' November 2023 articles accurately described the platform turns on the platform as it functioned in November 2023. If X's own technical documentation from other periods has no bearing on that question, neither can an employee's personal text messages from September 2022.

Defendants' reliance on the scope of discovery between the parties is equally unhelpful. Opp. at 2, 19–20. The parties' stipulated cutoff governs only "the production of Documents in response to requests for production," ECF No. 298 at 1. It says nothing about non-parties, and it

predates the Court's source-code order. Furthermore, X's requests for Defendants' own text messages reflect the principle underlying the Court's source-code order: the "relevant period" depends on the issue. Malice turns on the speaker's state of mind, *see* ECF No. 288 at 4, so Defendants' own communications during their year-long campaign against X, *see* ECF No. 37 ¶ 63, bear directly on what they knew and intended when they published. And unlike Defendants, who have never disputed that they texted internally and externally, X's employees have sworn that X "does not direct employees to communicate with each other for business purposes via text message on personal devices." ECF No. 307-4 at 36–37.

Defendants' case for the "more" the Court's source-code order requires is that brand-safety problems "developed over months" after Musk's acquisition. Opp. at 19–20. But that is the very development history the Court found irrelevant. And for good reason: what Twitter employees said about Twitter under different ownership cannot show whether Defendants' statements about X were true more than a year later.

The back end of Defendants' window (stretching to June 1, 2024) fares no better. Defendants invoke *Sines v. Kessler*, in which the court extended a subpoena's reach to capture "systematic planning and coordination of the events and their aftermath." Opp. at 19 (citing 325 F.R.D. 563, 568 (E.D. La. 2018)). But *Sines* arose from conspiracy claims, where the planning and aftermath of the events were themselves at issue. As to whether the November 2023 articles were true, the truth of a publication is measured when it is published. *See* ECF No. 362 at 4. Texts sent months later about the platform as it then stood cannot answer that question. Nor does the "aftermath" Defendants describe—advertiser decision-making and X's internal attribution of the exodus, Opp. at 20—justify their expansive timeframe request. The advertiser pauses at issue followed immediately on the articles, ECF No. 37 ¶¶ 61–62, and therefore fall within the October–

December 2023 window X offered. Defs.' App. 733. And regardless, the advertiser communications X has committed to produce for the full discovery period and the causation discovery the Court has ordered from X cover that substance. *Supra* Part I.A.

**II. The Requested Relief Is Proper Under Rule 26.**

X asked the Court to do exactly what Rule 26(c) permits: enter an order "forbidding the disclosure or discovery" sought through improper subpoenas, or "limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(A), (D); Mot. at 12–13. Defendants call that relief "extraordinary," but they agree it is appropriate where a subpoena is "substantively improper." Opp. at 25. That is X's point. It is also what the Rules provide, and what courts in this Circuit have ordered. *See* Mot. at 13.

Alternatively, if the Court is inclined to permit some discovery, it should limit it. *See Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 822 (5th Cir. 2004) (modifying overbroad subpoena). As X proposed and Defendants agreed to, any evidence obtained through the subpoenas should be limited to: (1) text messages concerning Defendants, the November 2023 articles, X's investigation into the articles, or brand safety on the X platform; or (2) text messages exchanged with advertisers or their representatives about brand safety, content moderation, Musk's public statements, Defendants, the articles, or any related decision to pause advertising. If production is ordered at all, those messages should be limited to ones sent or received in November 2023 or, alternatively, between October 1 and December 31, 2023, by recipients employed by X during that period, and located through the recipients' own reasonable search. Defs.' App. 732–33.

**CONCLUSION**

The Court should grant X's motion and preclude the use of any evidence obtained through Defendants' Rule 45 subpoenas or, alternatively, limit it as described above.

Dated: October 23, 2026.

Respectfully submitted.

*/s/ Christopher D. Hilton*
Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
**STONE HILTON PLLC**
600 Congress Ave., Ste. 2000
Austin, TX 78701
Telephone: (737) 256-6025
judd@stonehilton.com
chris@stonehilton.com

John C. Sullivan
Texas Bar No. 24083920
**S|L LAW PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

*Attorneys for Plaintiff X Corp.*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 23, 2026, a copy of this document was served on all counsel of record via email and through the Court's CM/ECF system.

*<u>/s/ Michael R. Abrams</u>*
Michael R. Abrams