**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **X CORP.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:23-CV-01175-O** |
| | § | |
| **MEDIA MATTERS FOR AMERICA, ET AL.,** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

**OPINION & ORDER**

Before the Court are Defendants' Motion to Compel Text Messages and Appendix in Support (ECF No. 317–18), Plaintiff's Response and Appendix in Support (ECF No. 326–27), and Defendants' Reply and Appendix (ECF No. 328–29). Having reviewed the Parties' briefing and the applicable law, the Court **DENIES** the Motion.

## I. BACKGROUND[1]

In November 2023, Plaintiff X Corp. ("X") initiated this lawsuit against Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone (collectively, "Defendants"). X asserts claims for business disparagement, tortious interference with contract, and tortious interference with prospective economic advantage. The claims arose from Defendants' publication of articles concerning advertisements appearing alongside objectionable content on X's social media platform. The Parties have since engaged in extensive discovery. To date, X has produced approximately 650,000 documents totaling nearly three million pages from 171 custodians.

[1] Unless otherwise specified, undisputed facts are taken from Plaintiff's Amended Complaint. ECF No. 37.

On April 21, 2025, Defendants filed a Motion to Compel seeking, among other things, the production of text messages from X's employees.[2] Since filing that motion, Defendants have obtained text messages from two former X employees, A.J. Brown and Elyana Thierry, through third-party subpoenas. Defendants also deposed Joe Benarroch ("Benarroch"), another former X employee, who testified that X issued him a work phone and retained the device following his departure from the company.

Based on this additional discovery, Defendants withdrew the portion of their earlier Motion to Compel concerning text messages. Defendants now seek an order compelling X to produce text messages sent between April 14, 2021, and November 1, 2024, from the company-issued and/or personal phones of eight former, and eleven purportedly current, X employees. X opposes the Motion. The Motion is now ripe for the Court's review.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26 permits parties to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). In determining proportionality, courts consider the importance of the issues at stake, the amount in controversy, the parties' relative access to information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id.*

Notwithstanding the broad scope of permissible discovery, Rule 26 "has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition." *Crosby v. La. Health Serv. & Indem. Co*. 647 F.3d 258, 264 (5th Cir. 2011). A court must limit discovery where the discovery sought is unreasonably cumulative or duplicative, can be obtained from a more

[2] Defs.' Mot. to Compel, ECF No. 183.

convenient or less burdensome source, or otherwise falls outside the scope of Rule 26(b)(1). FED. R. CIV. P. 26(b)(2)(C); *Gondola v. USMD PPM, LLC*, 223 F. Supp. 3d 575, 580 (N.D. Tex. 2016).

Moreover, Rule 34 requires a party to produce only those documents and electronically stored information within its "possession, custody, or control." FED. R. CIV. P. 34(a)(1). The party seeking production bears the burden of establishing that the responding party has possession, custody, or control over the requested materials. *Mir v. L-3 Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220, 231 (N.D. Tex. 2016). Where a party fails to produce documents properly requested under Rule 34, the requesting party may move for an order compelling production. FED. R. CIV. P. 37(a)(3)(B).

## III. ANALYSIS

### A. Defendants are not entitled to an order compelling further production from company-issued cell phones.

Defendants seek production of responsive text messages from company-issued cell phones used by current and former X employees.[3] In support of their request, Defendants rely principally on Benarroch's deposition testimony concerning X's issuance of work phones.[4]

Following an investigation, X represents that it identified two company-issued phones used by the identified custodians for their own communications: those issued to Benarroch and former X CEO Linda Yaccarino ("Yaccarino").[5] X further represents that, although it issued a phone to Brett Weitz, Weitz did not use the device for personal or business communications and instead his staff used the device for scheduling purposes.[6] With respect to Benarroch's phone, X has already agreed

---

[3] Defs.' Mot. to Compel, ECF No. 317.
[4] *Id.* at 2–3; 7–8; 10–13.
[5] Pl.s' Resp. to Defs.' Mot. to Compel 4, ECF No. 326.
[6] *Id.* at 8.

to search the device and produce responsive text messages.[7] Accordingly, the Court finds no present need to compel X to undertake a search it has already agreed to conduct. *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841,855 (5th Cir. 2000) ("A district court has 'broad discretion in all discovery matters', and 'such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse.'").

As to Yaccarino's phone, X represents that Yaccarino retained the device upon her departure from the company in July 2025.[8] Although X previously possessed the device, Defendants have not established that X presently has possession, custody, or control over it. *Mir*, 319 F.R.D. at 231. To the extent Defendants seek communications from Yaccarino's phone, Defendants may pursue such discovery pursuant to Federal Rule of Civil Procedure 45. Whether X satisfied its preservation obligations with respect to Yaccarino's phone is a separate inquiry that the Court need not address in resolving the instant Motion.

Finally, Defendants have not sufficiently rebutted X's representations concerning the remaining custodians' company-issued phones. As X clarified, Benarroch's testimony concerned the company's "standard" practice of providing technology its employees, including work laptops rather than a standard practice of issuing cell phones.[9] Thus, Benarroch's testimony does not establish that each identified custodian received a company-issued cell phone. As this Court has previously explained, it cannot compel the production of documents that do not exist.[10]

Defendants further contend that X waived its objections to the production of text messages from company-issued phones by failing to timely object.[11] Even assuming X waived such

---

[7] *Id*. at 4–5.
[8] *Id*. at 1.
[9] *Id*. at 4 ("[I]nstead, he [Benarroch] conveyed it was standard for X to give 'technology to employees, which would include work laptops…").
[10] *See* Order, ECF No. 288 at 9.
[11] Defs.' Mot. to Compel 17, ECF No. 317.

objections, waiver does not establish the existence of the requested communications or X's present possession, custody, or control over them.

**B. Defendants have failed to establish that X controls its employees' personal text messages.**

Defendants next seek production of responsive text messages from the personal cell phones of certain X employees.[12] In determining whether an employer exercises control over communications stored on its employees' personal devices, courts consider four factors: "(1) whether the employer issued the devices, (2) how frequently the devices were used for business purposes, (3) whether the employer had a legal right to obtain communications from the devices, and (4) whether company policies address access to communications on personal devices." *Miramontes v. Peraton, Inc.*, No. 3:21-CV-3019-B, 2023 WL 3855603, at *4 (N.D. Tex. June 6, 2023) (collecting cases).

Having considered these factors, the Court finds that Defendants have failed to establish that X exercises sufficient control over the requested communications. First, it is undisputed that X did not issue the personal devices at issue. Second, Defendants have not sufficiently established the frequency with which each identified custodian used his or her personal cell phone for business purposes. Defendants point to text messages obtained from former X employes, references to text messages in X's email productions, and Benarroch's deposition testimony. This evidence establishes that certain X employees communicated about business matters through text messages. It does not, however, establish that each of the identified custodians routinely conducted X's business through personal text messages. *See Krishnan v. Cambia Health Sols., Inc.*, No. 2:20-C-574-RAJ, 2021 WL 3129940, at *2 (W.D. Wash. July 23, 2021). Defendants emphasize that none

---

[12] *Id*. at 19–23.

of X's employees expressly disclaimed routine use of personal text messages for business purposes in their declarations. Rather, the employees represented that email and Slack were their primary means of written business communication. But the burden of establishing control rests with Defendants, not X. The absence of an express disclaimer of routine use does not, without more, satisfy that burden.

Third, Defendants have not established that X has a legal right to obtain communications stored on its employees' personal devices. The mere existence of an employment relationship does not establish an employer's right to obtain communications stored on an employee's personal device. *See In re Sun Coast Resources, Inc.*, 562 S.W.3d 138, 158 (Tex. App.—Houston [14th Dist.] 2018). Fourth, Defendants have not identified a company policy granting X access to text messages stored on its employees' personal devices. Defendants rely on legacy Twitter onboarding materials advising employees that information stored on personal devices may become implicated in litigation and recommending that employees keep their personal and business communications separate. But a warning that information stored on a personal device may be subject to litigation does not establish that an employer has the authority to access or obtain that information. *See Krishnan*, 2021 WL 3129940, at *2. Nor does X's agreement to search for responsive text messages in unrelated litigation establish that X controls the particular communications sought here. *Id.* Namely, Defendants conflate the existence of potentially relevant communications with X's control over those communications. Relevance, however, does not dispense with Rule 34's independent requirement that the requested materials be within the responding party's possession, custody, or control. FED. R. CIV. P. 34(a)(1).

**C. Defendants' request is disproportionate to the needs of the case.**

Defendants requested production, as presently framed, is also disproportionate to the needs of the case. X has produced approximately 650,000 documents totaling nearly three million pages from 171 custodians. These productions include communications from X's primary business communication platforms, including email and Slack. Although the volume of discovery already produced does not, standing alone, preclude further discovery, it bears on the likely benefit of the additional discovery sought. FED. R. CIV. P. 26(g)(1)(B)(iii).

Defendants rely principally on text messages obtained from two former X employees to justify the collection and review of communications stored on numerous other employees' personal devices over a period exceeding three years. While those messages demonstrate that certain relevant communications occurred through text messaging, Defendants have not sufficiently demonstrated that a search of each identified custodian's personal device is likely to yield additional, noncumulative information sufficient to justify the breadth of the requested production.

The Court reaches the same conclusion with respect to Elon Musk's personal text messages. Defendants contend that Musk's involvement in X's advertiser relationships and response to Defendants' reporting warrants production of his personal text messages. But X has already produced documents from Musk's email account, and Defendants have obtained or are pursuing discovery from other employees and third-party advertisers concerning these matters. Defendants have not sufficiently established that the requested search of Musk's personal device is likely to yield unique, relevant information that warrants the additional discovery sought. *See City of Chicago v. DoorDash, Inc.*, No. 21-CV-5162, 2024 WL 4119165, at *6 (N.D. Ill. Sept. 9, 2024) (considering whether additional discovery would yield relevant, nonduplicative information in assessing its proportionality to the needs of the case).

The Court recognizes the substantial amount in controversy and the importance of discovery concerning X's brand safety practices, advertiser relationships, and alleged damages. Nevertheless, having weighed the proportionality factors set forth in Rule 26(b)(1), the Court finds that the likely benefit of the requested production does not outweigh the attendant burdens. Accordingly, Rule 26 provides an independent basis for denying Defendants' request to compel production of personal text messages.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion to Compel Production of Text Messages (ECF No. 317).

**SO ORDERED** on this **26th day** of **November, 2026**.

Reed O'Connor
CHIEF UNITED STATES DISTRICT JUDGE